ANDREW JANZ (SBN 287672)*
City Attorney
CITY OF FRESNO
2600 Fresno Street
Fresno, CA 93721
Telephone: (559) 621-7500
Facsimile: (559) 457-1084
* Application for admission pro hac vice
forthcoming

Attorney for Plaintiff
CITY OF FRESNO

JONATHAN V. HOLTZMAN (SBN 99795)
jholtzman@publiclawgroup.com
JAMES R. ROSS (SBN 149199)
jross@publiclawgroup.com
RYAN P. McGINLEY-STEMPEL (SBN 296182)
rmcginleystempel@publiclawgroup.com
JAKE D. FREITAS (SBN 341837)
jfreitas@publiclawgroup.com
MARIBEL LOPEZ (SBN 340907)
mlopez@publiclawgroup.com
RENNE PUBLIC LAW GROUP
350 Sansome Street, Suite 300
San Francisco, California 94104
Telephone: (415) 848-7200
Facsimile:  (415) 848-7230

Attorneys for Plaintiffs
CITY OF FRESNO; CITY OF EUREKA; CITY
OF SOUTH LAKE TAHOE; COUNTY OF
SACRAMENTO; COUNTY OF MONROE;
MONROE COUNTY AIRPORT AUTHORITY

LYNDSEY OLSON (MN Lic. #0332288)*
Saint Paul City Attorney
Lyndsey.olson@ci.stpaul.mn.us
KELSEY MCELVEEN (MN Lic. #0396744)*
Assistant City Attorney
Kelsey.McElveen@ci.stpaul.mn.us
SAINT PAUL CITY ATTORNEY'S OFFICE
400 City Hall and Courthouse
15 Kellogg Boulevard West
Saint Paul, Minnesota 55102
Telephone:  (651) 266-8710
Facsimile  (651) 298-5619
* Application for admission pro hac vice
forthcoming

Attorneys for Plaintiff
CITY OF SAINT PAUL

MELISSA C. ALLISON (MA Bar No. 657470)*
mallison@andersonkreiger.com
CHRISTINA S. MARSHALL
(MA Bar No. 688348)*
cmarshall@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, Floor 21
Boston, MA 02109
Telephone: (617) 621-6500
* Application for admission pro hac vice
forthcoming

Attorneys for Plaintiffs
COUNTY OF MONROE
MONROE COUNTY AIRPORT AUTHORITY

RENNE PUBLIC LAW GROUP
Attorneys at Law

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF FRESNO, et al. | Case No.:  3:25-cv-07070-RS |
| Plaintiffs, | **DECLARATION OF TAY-JYE CHEN IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, PRELIMINARY INJUNCTION** |
| v. | |
| SCOTT TURNER, et al. | |
| Defendants. | Complaint Filed: August 20, 2025 |
| | Hon. Richard Seeborg |

I, Tay-Jye Chen, declare as follows:

1.      I am over 18 years of age.  I have personal knowledge of the facts set forth in this declaration and am otherwise competent to testify to the matters contained herein.

2.      I obtained my Bachelor of Science and Master of Science degrees in Civil Engineering from San Jose State University and am a licensed civil engineer within the State of California.  Prior to joining the County of Sacramento ("County") in 2015, I held various executive management positions within the aviation industry and served as a program manager for the Federal Aviation Administration ("FAA") from 2003 to 2011.

3.      I am the Deputy Director for Planning and Development for the County's Department of Airports ("Department").  I oversee the Department's key initiatives in planning, environmental compliance, wildlife and noise management, sustainability, engineering, architectural design, project delivery, and capital improvements for the four airports comprising the County's airport system ("Airport System"):  Mather Airport ("MHR"), Sacramento Executive Airport ("SAC"), Franklin Field ("F72"), and Sacramento International Airport ("SMF").

## THE COUNTY'S AIRPORT SYSTEM

4.      The County is a political subdivision of the State of California and, except for SAC which is leased from the City of Sacramento, owns and operates the Airport System through the Department. The Airport System is operated as a self-supporting enterprise fund that relies entirely on airport-generated revenues and federal funding.  No local tax dollars are used to fund the Airport System.

5.      MHR was originally a United States Air Force base and opened as a civilian airport in 1995 pursuant to a lease between the County and the federal government.  Its ownership was transferred to the County in 2012.  MHR currently serves general aviation and cargo users and, as of June 2025, handles approximately 24.6 percent of all cargo handled at the Airport System.

6.      SAC is a designated reliever airport of SMF and provides tie-down and hangar facilities to accommodate 500 general aviation aircraft.  Over 31,000 general aviation and military flight operations have occurred at SAC in 2025 to date.

7.      F72 was acquired by the County from the federal government in 1947 and is a general aviation airport.  It is served by two runways and provides portable hangar facilities as well as flight training facilities.  Approximately 20,000 flight operations take place annually at F72.

8.      SMF is classified as a medium air traffic hub by the FAA and is the primary commercial airport serving Sacramento, the capital of California and hub of government and commerce within the Sacramento River Valley region between the San Francisco Bay area to the west and the Sierra Nevada mountain range to the east.  SMF's primary catchment area consists of Sacramento County and six other neighboring counties: El Dorado, Placer, San Joaquin, Sutter, Yolo, and Yuba.  SMF offers more than 205 peak day flights on 11 domestic and international carriers, connecting travelers to 52 nonstop destinations.  In 2024, it was ranked 41st in the United States in terms of total passengers by Airports Council International of North America.  In June 2025, SMF achieved the busiest month in its history with 1,296,818 passengers traveling though.

9.      The Airport System is critical not only to the region's economic growth but also to the state's transportation infrastructure.  For instance, in 2011 the Airport System generated approximately 11,000 jobs (including 4,170 direct jobs) and over $3 billion in air visitor expenditures, resulting in a total economic impact of over $4.2 billion. Additionally, the Airport System currently has 373 employees, representing a total payroll of $59.8 million.  The Greater Sacramento Economic Council awarded its annual Competitiveness Award to the Department in 2024, a recognition given to organizations that make significant contributions to the greater Sacramento region.

## FEDERAL FUNDING FOR THE COUNTY'S AIRPORT SYSTEM

10.      The County relies heavily on federal funding from the FAA and other federal agencies to support capital projects necessary for the safe and efficient operation of the Airport System.  Currently, the County relies on four different sources of federal grants from the FAA:  Airport Improvement Program ("AIP") entitlement grants; AIP discretionary grants; Airport Infrastructure Grants ("AIG") under the Infrastructure Investment and Jobs Act ("IIJA");[1] and Airport Terminal Program ("ATP") grants under the IIJA.

---

[1] The IIJA is commonly known as the Bipartisan Infrastructure Law. Public Law No. 117-58.

11.    The AIP was originally established by the Airport and Airway Improvement Act of 1982,[2] with grant funding levels under the program set periodically by reauthorization bills such as the FAA Reauthorization Act of 2018[3] and the FAA Reauthorization Act of 2024[4] (collectively, the "Reauthorization Bills"). Within these Reauthorization Bills, Congress defines annual AIP funding levels and delegates to the FAA contracting authority to issue grants. As described in the Reauthorization Bills, the County is entitled to a certain amount of formulaic grant funding each year for the Airport System. These "entitlement grants" are based on passenger volume, landed cargo weight, and approved capital improvement projects. If an airport's capital project needs exceed available funding under entitlement grants, the FAA may distribute discretionary grants pursuant to a competitive application process, with such distributions and allocations based on prioritization under the National Plan of Integrated Airport Systems.

12.    Under the IIJA, the FAA distributes AIG and ATP grants equitably among eligible airports pursuant to a formulaic approach similar to that of AIP, considering factors such as airport size, classification, and role within the national airport system. The IIJA also allows for the distribution of discretionary grants through a competitive process.

13.    From 2021 through 2023, the County received a total of $22,498,822 in AIP grants, including approximately $4.6 million for the purchase of zero-emissions passenger shuttle buses and associated charging equipment; $11.9 million to rehabilitate the air cargo apron (i.e., designated areas for parking, maintenance, and servicing) at SMF; and $5.8 million to expand the "Remain Overnight Parking" for aircraft at SMF.

14.    In 2024, the FAA awarded the Airport System $14,573,636 in AIP grants, consisting of approximately $1.5 million to rehabilitate the aircraft apron at F72 and $13 million to rehabilitate Runway 4R/22L at MHR.

15.    To date, the FAA also has awarded $45,166,763 in IIJA grants to the Airport System, including $9.6 million in AIG funds to rehabilitate public restrooms at SMF's Terminal A; an $11.7

---

[2] 49 U.S.C. § 47101 et seq., as amended.
[3] Public Law No. 115-258.
[4] Public Law No. 118-63.

million ATP grant for preconstruction activities and conveyance systems associated with the new pedestrian walkway being constructed between Concourse B and Terminal B at SMF ("Pedestrian Walkway Project"); another ATP grant in the amount of $3.1 million for various demolition, foundation, and utility work for the Pedestrian Walkway Project; an additional $18.2 million in AIG funds for final construction buildout of the Pedestrian Walkway Project; and $2.4 million for equipment replacement, emergency system upgrades, and physical improvements to the air traffic control tower at MHR. In addition to these grants, the FAA also has set aside approximately $70 million to relocate and construct a new air traffic control tower at SMF.

16.     In addition, SMF became the first airport in the United States to secure a Transportation Infrastructure Finance and Innovation Act ("TIFIA") loan in 2024 from the U.S. Department of Transportation's ("USDOT") Build America Bureau, which provides low-cost loans to eligible large-scale infrastructure projects. The $36.1 million TIFIA loan is also financing the Pedestrian Walkway Project which is scheduled to open in the summer of 2026.

17.     On or around August 5, 2025, the FAA informed the Department that the County will receive approximately $9.5 million in grant funding for additional rehabilitation work on Runway 4R/22L at MHR. This amount will be comprised of a $5.8 million AIP grant and $3.7 million in AIG funds. The FAA indicated the Department should expect to receive documentation implementing these grants by the end of August 2025.

18.     To continue meeting the needs of the Airport System's rapidly growing catchment area, the Department also will apply for, and anticipates receiving, an additional $167.5 million in combined AIP and IIJA grants to finance the following capital projects:

- At MHR:  Rehabilitation of Taxiways D and D1; reconstruction and/or improvements to the general aviation apron;
- At SAC:  Rehabilitation of pavement for Runway 2/20; construction of a new connector taxiway at the Runway 20 threshold and associated runway safety area improvements; rehabilitation of Taxiways M, N, W, E, H, C and T (including taxiway realignment, removal, and the construction of safety improvements); and
- At SMF:  Construction of a new overlay for Taxiway A; construction of six additional gates in

-5-

Terminal B; rehabilitation of the west airfield apron; reconstruction and realignment of Taxiway A5 into a north flow high-speed taxiway; reconstruction of Taxiway A11 into a south flow high-speed taxiway; and reconfiguration of Taxiway P to provide direct access to Runway 17R/35L (including associated realignment and signage improvement work).

19.     Before the FAA disburses grant funds under the AIP and IIJA, the grant recipient must execute an agreement that requires compliance with numerous federal statutes, agency rules, and executive orders.  Among other things, these grant agreements require compliance with 39 airport sponsor obligations ("Grant Assurances") mandating that grant recipients maintain and operate their facilities safely, efficiently, and in accordance with specified conditions.  A copy of a grant agreement recently executed by the County and containing these Grant Assurances is attached as **Exhibit A**.  The County's TIFIA loan agreement also incorporates these obligations and requires that the County comply with Grant Assurances "in all material respects."

## NEW CONDITIONS ON FAA GRANT FUNDING

20.     On April 24, 2025, the Secretary of Transportation issued a letter to all grant recipients reminding them of their obligation to comply with federal law ("Duffy Memo").  The Duffy Memo emphasized compliance with federal anti-discrimination laws and asserted USDOT's position that any policy, program, or activity that is based on a prohibited classification, including diversity, equity, and inclusion ("DEI") programs, "presumptively violate federal law."  The Secretary also stated that federal law requires airports to cooperate with — and not impede — Immigration and Customs Enforcement ("ICE") and other U.S. Department of Homeland Security ("DHS") agencies in the performance of their duties.  Finally, the Secretary warned that "non-compliance with applicable federal laws, or failure to cooperate generally with Federal authorities in the enforcement of Federal law" will jeopardize a grant recipient's continued receipt of federal financial assistance.  A copy of the Duffy Memo is attached as **Exhibit B**.

21.     On April 25, 2025, the FAA issued a "Notice of modification of Airport Improvement Program grant assurances; opportunity to comment," a copy of which is attached as **Exhibit C**.  As described in the notice, the proposed modifications would implement several mandates contained in the FAA Reauthorization Act of 2024.  They also require compliance with new Executive Orders issued by

-6-

the current administration while eliminating the obligation to comply with others issued by prior administrations, including those regarding environmental justice, improving access to services for persons with limited English proficiency, the advancement of racial equity and support for underserved communities, and climate change. While the notice indicated the FAA would accept comments regarding these modifications for 14 days in accordance with statutory requirements, the FAA implemented the updated Grant Assurances ("Modified Grant Assurances") immediately. (*See* https://www.faa.gov/airports/aip/grant_assurances, which now designates the prior version of the Grant Assurances as "historical.")

22.     On or about April 28, 2025, the FAA posted on its website an updated AIP grant template for fiscal year 2025 that includes, in addition to the Modified Grant Assurances, additional terms and conditions that do not appear in prior grant agreements executed by the County. The FAA made additional minor updates to this new template on or about May 6, 2025. (*See* https://www.faa.gov/airports/aip/grantapportion_data.) The Department has been informed that IIJA grant agreements awarded in 2025 and future years also will reflect these additional terms and conditions.

23.     For example, a new condition in section 31 of the updated AIP grant template requires the airport sponsor (i.e., the County as grant recipient) to certify that "it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws." It further requires that the sponsor agree "its compliance *in all respects* with all applicable Federal-anti-discrimination laws *is material* to the government's payment decisions for purposes of 31 U.S.C. 3729(b)(4)" (i.e., the federal False Claims Act). Section 31 neither defines "programs promoting diversity, equity, and inclusion" nor provides examples as to how these programs may violate federal law.

24.     The County implements various initiatives aimed at eliminating inequities and barriers to access and engagement for underserved communities, persons with disabilities, people of color, and other historically underrepresented or economically disadvantaged populations. These initiatives include expanded outreach efforts and disadvantaged business enterprise ("DBE") programs modeled after USDOT programs and regulations promulgated by the FAA. (*See*

1  https://www.faa.gov/about/office_org/headquarters_offices/acr/bus_ent_program; *see also* the

2  Department's DBE program at https://sacramento.aero/scas/opportunities/dbe.)  Given the Duffy Memo's

3  statement that DEI programs "presumptively violate" federal law, it is unclear how the County will be

4  able to reconcile this new condition with existing County policies and programs.  As written, section 31

5  makes it impossible to determine what is required to comply with this condition and what it means to

6  comply "in all respects."  This, in turn, makes it deeply problematic for the County to guarantee its

7  compliance or otherwise agree that such compliance should be material to the FAA's payment decisions

8  regarding the underlying AIP grant.

9          25.     As an additional example, the updated AIP grant template includes Modified Grant

10  Assurances which omit the prohibition on discrimination based on sexual orientation and gender identity,

11  leaving only "creed and sex." (*See* section 30 of the Modified Grant Assurances for airport sponsors,

12  *available at* https://www.faa.gov/airports/aip/grant_assurances.)  The County's third-party agreements

13  with contractors hired to perform work funded by AIP, IIJA, and TIFIA funds incorporate the previous

14  version of the Grant Assurances which include sexual orientation and gender identity as protected

15  categories.  Among other things, this discrepancy raises questions as to (i) whether initiatives that

16  previously were required but are now disfavored under new Executive Orders would be considered

17  "illegal DEI," and (ii) whether the Department can continue invoicing the FAA for reimbursements

18  governed by the prior Grant Assurances without potentially placing its federal funding at risk or incurring

19  liability under the False Claims Act.  It is also unclear whether and to what extent the County will be

20  required to verify that contractors operating under already-executed grant and loan agreements are able to

21  comply with the Modified Grant Assurances.

22          26.     Another new condition, set forth in section 32 of the updated AIP grant template, requires

23  the airport sponsor to "ensure that Federal funding is expended in full accordance with the United States

24  Constitution, Federal law, and statutory and *public policy requirements* . . ." and "cooperate with Federal

25  officials in the enforcement of Federal law, including *cooperating with and not impeding*" ICE and other

26  components within DHS "in the enforcement of Federal immigration law."  It is unclear what specific

27  "public policy requirements" apply to AIP grant expenditures outside available AIP guidance and the

28  specific statutes, regulations, and orders listed in the updated AIP grant template.  Moreover, it is unclear

-8-

1   what "cooperating with and not impeding" the enforcement of federal immigration law will entail.  The

2   Sacramento County Sheriff's Office ("Sheriff"), which provides numerous law enforcement services

3   throughout the County and maintains a dedicated unit at SMF, is bound by Senate Bill 54 (Chapter 495,

4   Statutes of 2017; codified in California Government Code sections 7282 through 7284.12, inclusive).

5   Among other things, this state law limits cooperation between the Sheriff and ICE and protects

6   noncitizens in certain contexts.  Without additional guidance from the FAA regarding how section 32

7   will be implemented, it is impossible for the County to determine if it will be able to comply with this

8   condition.

9          27.     It is also unclear from section 32's language whether "cooperation" extends beyond

10  assistance provided by local law enforcement.  For example, the Department collects personal

11  information and conducts fingerprint-based criminal history records checks to process Security

12  Identification Display Area ("SIDA") badge applications for individuals requiring access to SMF's

13  secure areas.  (*See* https://sacramento.aero/smf/about/airport-badging.)  Such information may only be

14  used for specific security-related airport purposes typically unrelated to immigration enforcement, as

15  required by applicable privacy rules.[5]  It is impossible for the County to determine whether agreement to

16  "cooperate with and not impede" ICE and other DHS agencies would require the Department to share

17  with ICE information gleaned during the SIDA badging process even if doing so would conflict with

18  applicable Transportation Security Administration regulations.

19         28.     Finally, section 2 of the updated AIP grant template contains new language allowing the

20  FAA to terminate the grant agreement if, among other things, it determines that such termination "*is in

21  the public interest*."  Section 2 further provides that, in terminating the grant agreement, the FAA "may

22  elect to consider *only the interests* of the FAA."  These additional termination provisions are extremely

23  broad and vague; they do not clarify what matters, in the context of ceasing FAA funding for airports,

24  would undermine "the public interest" or identify specific FAA interests that, if implicated, would justify

25  the FAA's unilateral termination of an AIP grant award, including those to which the County is entitled

26

27

28  [5] See 49 CFR §§ 1542.205 et seq.; 5 U.S.C. § 552a(b).

under the Reauthorization Bills. Such unlimited discretion creates an unacceptable level of uncertainty for the County given its heavy reliance on federal funding to operate the Airport System.

29.    The consequences of erroneously interpreting the Modified Grant Assurances and new terms and conditions contained in the updated AIP grant template — which the Department will be required to execute any day now — are dire and places the County in an untenable situation of either agreeing to conditions to which it may not be able to comply or foregoing much needed grant funding for the continued operation, maintenance, and improvement of Airport System infrastructure. If the County were to agree to such new terms and conditions for future federal grants or loans without fully understanding their scope, then it risks being the subject of future USDOT and FAA enforcement action which also may result in a loss of grant funding for capital projects that already are underway. This risk is compounded by additional financial uncertainty arising from potential False Claims Act penalties, which on their own could be extensive.

30.    If the County is denied the $167.5 million in grant funding for which it will apply or otherwise loses access to federal funding for ongoing projects because of its inability to comply with new grant agreement terms and conditions, it will be forced to delay or reduce the scope of planned projects; revise its financing plan by replacing grant funds with bonds at a significant additional cost; or cancel projects entirely. Being forced to pursue any of these alternatives will result in immediate harm to the County and will not only impact the Department's overall capacity to fund the Airport System in the long term but also diminish its important economic contributions to the region.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed August 20, 2025, at Sacramento, California.



Tay-Jye Chen
Deputy Director, Planning and Development
Sacramento County Department of Airports

CHEN DEC. ISO TRO & OSC – CASE NO. 3:25-cv-07070-RS

# EXHIBIT A

3-06-0363-025-2024



| U.S. Department of Transportation Federal Aviation Administration | Airports Division Western-Pacific Region California | San Francisco Airports District Office: 2999 Oak Road, Suite 200 Walnut Creek, CA 94597 |

September 5, 2024

Ms. Cynthia A. Nichol
Director of Airports
County of Sacramento
6900 Airport Boulevard
Sacramento, CA 95837

Dear Ms. Nichol:

The Grant Offer for Airport Improvement Program (AIP) Project No. 3-06-0363-025-2024 at Sacramento Mather Airport is attached for execution. This letter outlines the steps you must take to properly enter into this agreement and provides other useful information. Please read the conditions, special conditions, and assurances that comprise the grant offer carefully.

**You may not make any modification to the text, terms or conditions of the grant offer.**

***Steps You Must Take to Enter Into Agreement.***

To properly enter into this agreement, you must do the following:

1. The governing body must give authority to execute the grant to the individual(s) signing the grant, i.e., the person signing the document must be the sponsor's authorized representative(s) (hereinafter "authorized representative").

2. The authorized representative must execute the grant by adding their electronic signature to the appropriate certificate at the end of the agreement.

3. Once the authorized representative has electronically signed the grant, the sponsor's attorney(s) will automatically receive an email notification.

4. On the **same day or after** the authorized representative has signed the grant, the sponsor's attorney(s) will add their electronic signature to the appropriate certificate at the end of the agreement.

5. If there are co-sponsors, the authorized representative(s) and sponsor's attorney(s) must follow the above procedures to fully execute the grant and finalize the process. Signatures must be obtained and finalized no later than ==September 12, 2024.==

6. The fully executed grant will then be automatically sent to all parties as an email attachment.

***Payment.*** Subject to the requirements in 2 CFR § 200.305 (Federal Payment), each payment request for reimbursement under this grant must be made electronically via the Delphi eInvoicing System. Please see the attached Grant Agreement for more information regarding the use of this System.

***Project Timing.*** The terms and conditions of this agreement require you to complete the project without undue delay and no later than the Period of Performance end date (1,460 days from the grant execution date). We will be monitoring your progress to ensure proper stewardship of these Federal funds. We expect you to submit payment requests for reimbursement of allowable incurred project expenses

1

3-06-0363-025-2024

consistent with project progress. Your grant may be placed in "inactive" status if you do not make draws on a regular basis, which will affect your ability to receive future grant offers. Costs incurred after the Period of Performance ends are generally not allowable and will be rejected unless authorized by the FAA in advance.

***Reporting.*** Until the grant is completed and closed, you are responsible for submitting formal reports as follows:

> For all grants, you must submit by December 31st of each year this grant is open:
>   1. A signed/dated SF-270 (Request for Advance or Reimbursement for non-construction projects) or SF-271 or equivalent (Outlay Report and Request for Reimbursement for Construction Programs), and
>
>   2. An SF-425 (Federal Financial Report).
>
> For non-construction projects, you must submit FAA Form 5100-140, Performance Report within 30 days of the end of the Federal fiscal year.
>
> For construction projects, you must submit FAA Form 5370-1, Construction Progress and Inspection Report, within 30 days of the end of each Federal fiscal quarter.

***Audit Requirements.*** As a condition of receiving Federal assistance under this award, you must comply with audit requirements as established under 2 CFR Part 200. Subpart F requires non-Federal entities that expend $750,000 or more in Federal awards to conduct a single or program specific audit for that year. Note that this includes Federal expenditures made under other Federal-assistance programs. Please take appropriate and necessary action to ensure your organization will comply with applicable audit requirements and standards.

***Closeout.*** Once the project(s) is completed and all costs are determined, we ask that you work with your FAA contact indicated below to close the project without delay and submit the necessary final closeout documentation as required by your Region/Airports District Office.

***FAA Contact Information.*** Ron Biaoco, (405) 666-1062, ron.biaoco@faa.gov is the assigned program manager for this grant and is readily available to assist you and your designated representative with the requirements stated herein.

We sincerely value your cooperation in these efforts and look forward to working with you to complete this important project.

Sincerely,

*Amy Choi*

Amy Choi (Sep 5, 2024 15:42 PDT)

Amy L. Choi
Manager

2

3-06-0363-025-2024



**U.S. Department
of Transportation
Federal Aviation
Administration**

### FEDERAL AVIATION ADMINISTRATION AIRPORT IMPROVEMENT PROGRAM (AIP)

### FY 2024 AIP

### GRANT AGREEMENT

### Part I - Offer

---

Federal Award Offer Date | September 5, 2024

Airport/Planning Area | Sacramento Mather Airport

Airport Infrastructure Grant Number | 3-06-0363-025-2024

Unique Entity Identifier | MGZ1KM6QPHQ3

TO: | County of Sacramento

(herein called the "Sponsor") (For Co-Sponsors, list all Co-Sponsor names. The word "Sponsor" in this Grant Agreement also applies to a Co-Sponsor.)

FROM: **The United States of America** (acting through the Federal Aviation Administration, herein called the "FAA")

**WHEREAS**, the Sponsor has submitted to the FAA a Project Application dated August 15, 2024, for a grant of Federal funds for a project at or associated with the Sacramento Mather Airport, which is included as part of this Grant Agreement; and

**WHEREAS**, the FAA has approved a project for the Sacramento Mather Airport (herein called the "Project") consisting of the following:

Rehabilitate Runway 4R/22L - Construction (Phase 1)

which is more fully described in the Project Application.

**NOW THEREFORE**, Pursuant to and for the purpose of carrying out the Title 49, United States Code (U.S.C.), Chapters 471 and 475; 49 U.S.C. §§ 40101 et seq., and 48103; FAA Reauthorization Act of 2018

3

3-06-0363-025-2024

(Public Law Number (P.L.) 115-254); the Department of Transportation Appropriations Act, 2021 ( P.L. 116-260, Division L); the Consolidated Appropriations Act, 2022 ( P.L. 117-103); Consolidated Appropriations Act, 2023 ( P.L. 117-328); Consolidated Appropriations Act, 2024 (P.L. 118-42); FAA Reauthorization Act of 2024 (P.L. 118-63); and the representations contained in the Project Application; and in consideration of: (a) the Sponsor's adoption and ratification of the Grant Assurances dated May 2022, interpreted and applied consistent with the FAA Reauthorization Act of 2024 per Reauthorization Grant Condition 30 below; (b) the Sponsor's acceptance of this Offer; and (c) the benefits to accrue to the United States and the public from the accomplishment of the Project and compliance with the Grant Assurance and conditions as herein provided;

**THE FEDERAL AVIATION ADMINISTRATION, FOR AND ON BEHALF OF THE UNITED STATES, HEREBY OFFERS AND AGREES to pay (90) % of the allowable costs incurred accomplishing the Project as the United States share of the Project.**

**Assistance Listings Number (Formerly CFDA Number): 20.106**

**This Offer is made on and SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS:**

## CONDITIONS

1. **Maximum Obligation.** The maximum obligation of the United States payable under this Offer is $13,044,668.

   The following amounts represent a breakdown of the maximum obligation for the purpose of establishing allowable amounts for any future grant amendment, which may increase the foregoing maximum obligation of the United States under the provisions of 49 U.S.C. § 47108(b):
   $0 for planning
   $13,044,668 for airport development or noise program implementation; and,
   $0 for land acquisition.

   The source of this Grant includes funding from the Small Airport Fund, in accordance with 49 U.S.C. § 47116.

2. **Grant Performance.** This Grant Agreement is subject to the following Federal award requirements:

   a. Period of Performance:

      1. Shall start on the date the Sponsor formally accepts this Agreement and is the date signed by the last Sponsor signatory to the Agreement. The end date of the Period of Performance is 4 years (1,460 calendar days) from the date of acceptance. The Period of Performance end date shall not affect, relieve, or reduce Sponsor obligations and assurances that extend beyond the closeout of this Grant Agreement.

      2. Means the total estimated time interval between the start of an initial Federal award and the planned end date, which may include one or more funded portions or budget periods (2 Code of Federal Regulations (CFR) § 200.1).

   b. Budget Period:

      1. For this Grant is 4 years (1,460 calendar days) and follows the same start and end date as the Period of Performance provided in paragraph 2(a)(1). Pursuant to 2 CFR § 200.403(h), the Sponsor may charge to the Grant only allowable costs incurred during the Budget Period.

4

3-06-0363-025-2024

2. Means the time interval from the start date of a funded portion of an award to the end date of that funded portion during which the Sponsor is authorized to expend the funds awarded, including any funds carried forward or other revisions pursuant to 2 CFR § 200.308.

c. Close Out and Termination

1. Unless the FAA authorizes a written extension, the Sponsor must submit all Grant closeout documentation and liquidate (pay-off) all obligations incurred under this award no later than 120 calendar days after the end date of the Period of Performance. If the Sponsor does not submit all required closeout documentation within this time period, the FAA will proceed to close out the grant within one year of the Period of Performance end date with the information available at the end of 120 days (2 CFR § 200.344).

2. The FAA may terminate this Grant, in whole or in part, in accordance with the conditions set forth in 2 CFR § 200.340, or other Federal regulatory or statutory authorities as applicable.

3. **Ineligible or Unallowable Costs.** The Sponsor must not include any costs in the project that the FAA has determined to be ineligible or unallowable.

4. **Indirect Costs - Sponsor.** The Sponsor may charge indirect costs under this award by applying the indirect cost rate identified in the project application as accepted by the FAA, to allowable costs for Sponsor direct salaries and wages.

5. **Determining the Final Federal Share of Costs.** The United States' share of allowable project costs will be made in accordance with 49 U.S.C. § 47109, the regulations, policies, and procedures of the Secretary of Transportation ("Secretary"), and any superseding legislation. Final determination of the United States' share will be based upon the final audit of the total amount of allowable project costs and settlement will be made for any upward or downward adjustments to the Federal share of costs.

6. **Completing the Project Without Delay and in Conformance with Requirements.** The Sponsor must carry out and complete the project without undue delays and in accordance with this Agreement, 49 U.S.C. Chapters 471 and 475, the regulations, policies, and procedures of the Secretary. Per 2 CFR § 200.308, the Sponsor agrees to report and request prior FAA approval for any disengagement from performing the project that exceeds three months or a 25 percent reduction in time devoted to the project. The report must include a reason for the project stoppage. The Sponsor also agrees to comply with the grant assurances, which are part of this Agreement.

7. **Amendments or Withdrawals before Grant Acceptance.** The FAA reserves the right to amend or withdraw this offer at any time prior to its acceptance by the Sponsor.

8. **Offer Expiration Date.** This offer will expire and the United States will not be obligated to pay any part of the costs of the project unless this offer has been accepted by the Sponsor on or before September 12, 2024, or such subsequent date as may be prescribed in writing by the FAA.

9. **Improper Use of Federal Funds.** The Sponsor must take all steps, including litigation if necessary, to recover Federal funds spent fraudulently, wastefully, or in violation of Federal antitrust statutes, or misused in any other manner for any project upon which Federal funds have been expended. For the purposes of this Grant Agreement, the term "Federal funds" means funds however used or dispersed by the Sponsor, that were originally paid pursuant to this or any other Federal grant agreement. The Sponsor must obtain the approval of the Secretary as to any determination of the amount of the Federal share of such funds. The Sponsor must return the recovered Federal share, including funds recovered by settlement, order, or judgment, to the Secretary. The Sponsor must

3-06-0363-025-2024

furnish to the Secretary, upon request, all documents and records pertaining to the determination of the amount of the Federal share or to any settlement, litigation, negotiation, or other efforts taken to recover such funds. All settlements or other final positions of the Sponsor, in court or otherwise, involving the recovery of such Federal share require advance approval by the Secretary.

10. **United States Not Liable for Damage or Injury.** The United States is not responsible or liable for damage to property or injury to persons which may arise from, or be incident to, compliance with this Grant Agreement.

11. **System for Award Management (SAM) Registration and Unique Entity Identifier (UEI).**

   a.  Requirement for System for Award Management (SAM): Unless the Sponsor is exempted from this requirement under 2 CFR § 25.110, the Sponsor must maintain the currency of its information in the SAM until the Sponsor submits the final financial report required under this Grant, or receives the final payment, whichever is later. This requires that the Sponsor review and update the information at least annually after the initial registration and more frequently if required by changes in information or another award term. Additional information about registration procedures may be found at the SAM website (currently at http://www.sam.gov).

   b.  Unique entity identifier (UEI) means a 12-character alpha-numeric value used to identify a specific commercial, nonprofit or governmental entity. A UEI may be obtained from SAM.gov at https://sam.gov/content/entity-registration.

12. **Electronic Grant Payment(s).** Unless otherwise directed by the FAA, the Sponsor must make each payment request under this Agreement electronically via the Delphi eInvoicing System for Department of Transportation (DOT) Financial Assistance Awardees.

13. **Informal Letter Amendment of AIP Projects.** If, during the life of the project, the FAA determines that the maximum grant obligation of the United States exceeds the expected needs of the Sponsor by $25,000 or five percent (5%), whichever is greater, the FAA can issue a letter amendment to the Sponsor unilaterally reducing the maximum obligation.

   The FAA can also issue a letter to the Sponsor increasing the maximum obligation if there is an overrun in the total actual eligible and allowable project costs to cover the amount of the overrun provided it will not exceed the statutory limitations for grant amendments. The FAA's authority to increase the maximum obligation does not apply to the "planning" component of Condition No. 1, Maximum Obligation.

   The FAA can also issue an informal letter amendment that modifies the grant description to correct administrative errors or to delete work items if the FAA finds it advantageous and in the best interests of the United States.

   An informal letter amendment has the same force and effect as a formal grant amendment.

14. **Environmental Standards.** The Sponsor is required to comply with all applicable environmental standards, as further defined in the Grant Assurances, for all projects in this grant. If the Sponsor fails to comply with this requirement, the FAA may suspend, cancel, or terminate this Grant Agreement.

15. **Financial Reporting and Payment Requirements.** The Sponsor will comply with all Federal financial reporting requirements and payment requirements, including submittal of timely and accurate reports.

6

3-06-0363-025-2024

16. **Buy American.** Unless otherwise approved in advance by the FAA, in accordance with 49 U.S.C. § 50101, the Sponsor will not acquire or permit any contractor or subcontractor to acquire any steel or manufactured goods produced outside the United States to be used for any project for which funds are provided under this Grant. The Sponsor will include a provision implementing Buy American in every contract and subcontract awarded under this Grant.

17. **Build America, Buy America.** The Sponsor must comply with the requirements under the Build America, Buy America Act (P.L. 117-58).

18. **Maximum Obligation Increase.** In accordance with 49 U.S.C. § 47108(b)(3), as amended, the maximum obligation of the United States, as stated in Condition No. 1, Maximum Obligation, of this Grant:

    a.  May not be increased for a planning project;

    b.  May be increased by not more than 15 percent for development projects, if funds are available;

    c.  May be increased by not more than the greater of the following for a land project, if funds are available:

        1.  15 percent; or

        2.  25 percent of the total increase in allowable project costs attributable to acquiring an interest in the land.

    If the Sponsor requests an increase, any eligible increase in funding will be subject to the United States Government share as provided in 49 U.S.C. § 47110, or other superseding legislation if applicable, for the fiscal year appropriation with which the increase is funded. The FAA is not responsible for the same Federal share provided herein for any amount increased over the initial grant amount. The FAA may adjust the Federal share as applicable through an informal letter of amendment.

19. **Audits for Sponsors.**

    PUBLIC SPONSORS. The Sponsor must provide for a Single Audit or program-specific audit in accordance with 2 CFR Part 200. The Sponsor must submit the audit reporting package to the Federal Audit Clearinghouse on the Federal Audit Clearinghouse's Internet Data Entry System at http://harvester.census.gov/facweb/. Upon request of the FAA, the Sponsor shall provide one copy of the completed audit to the FAA. Sponsors that expend less than $750,000 in Federal awards and are exempt from Federal audit requirements must make records available for review or audit by the appropriate Federal agency officials, State, and Government Accountability Office. The FAA and other appropriate Federal agencies may request additional information to meet all Federal audit requirements.

20. **Suspension or Debarment.** When entering into a "covered transaction" as defined by 2 CFR § 180.200, the Sponsor must:

    a.  Verify the non-Federal entity is eligible to participate in this Federal program by:

        1.  Checking the System for Award Management Exclusions in the System for Award Management (SAM) to determine if the non-Federal entity is excluded or disqualified; or

        2.  Collecting a certification statement from the non-Federal entity attesting they are not excluded or disqualified from participating; or

        3.  Adding a clause or condition to covered transactions attesting the individual or firm are not excluded or disqualified from participating.

    b. Require prime contractors to comply with 2 CFR § 180.330 when entering into lower-tier transactions with their contractors and sub-contractors.

    c. Immediately disclose in writing to the FAA whenever (1) the Sponsor learns they have entered into a covered transaction with an ineligible entity or (2) the Public Sponsor suspends or debars a contractor, person, or entity.

21. **Ban on Texting While Driving.**

    a. In accordance with Executive Order 13513, Federal Leadership on Reducing Text Messaging While Driving, October 1, 2009, and DOT Order 3902.10, Text Messaging While Driving, December 30, 2009, the Sponsor is encouraged to:

        1. Adopt and enforce workplace safety policies to decrease crashes caused by distracted drivers including policies to ban text messaging while driving when performing any work for, or on behalf of, the Federal government, including work relating to a grant or subgrant.

        2. Conduct workplace safety initiatives in a manner commensurate with the size of the business, such as:

           i. Establishment of new rules and programs or re-evaluation of existing programs to prohibit text messaging while driving; and

           ii. Education, awareness, and other outreach to employees about the safety risks associated with texting while driving.

    b. The Sponsor must insert the substance of this clause on banning texting while driving in all subgrants, contracts, and subcontracts funded with this Grant.

22. **Trafficking in Persons.**

    a. *Posting of contact information.*

        1. The Sponsor must post the contact information of the national human trafficking hotline (including options to reach out to the hotline such as through phone, text, or TTY) in all public airport restrooms.

    b. *Provisions applicable to a recipient that is a private entity.*

        1. You as the recipient, your employees, subrecipients under this Grant, and subrecipients' employees may not:

           i. Engage in severe forms of trafficking in persons during the period of time that the Grant and applicable conditions are in effect;

           ii. Procure a commercial sex act during the period of time that the Grant and applicable conditions are in effect; or

           iii. Use forced labor in the performance of the Grant or any subgrants under this Grant.

        2. We as the Federal awarding agency, may unilaterally terminate this Grant, without penalty, if you or a subrecipient that is a private entity –

           i. Is determined to have violated a prohibition in paragraph (b) of this Grant Condition; or

           ii. Has an employee who is determined by the agency official authorized to terminate the Grant to have violated a prohibition in paragraph (b) of this Grant Condition through conduct that is either –

    a) Associated with performance under this Grant; or

    b) Imputed to you or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR Part 180, "OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)," as implemented by our agency at 2 CFR Part 1200.

c. *Provision applicable to a recipient other than a private entity.* We as the Federal awarding agency may unilaterally terminate this Grant, without penalty, if a subrecipient that is a private entity –

    1. Is determined to have violated an applicable prohibition in paragraph (b) of this Grant Condition; or

    2. Has an employee who is determined by the agency official authorized to terminate the Grant to have violated an applicable prohibition in paragraph (b) of this Grant Condition through conduct that is either –

        i. Associated with performance under this Grant; or

        ii. Imputed to the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR Part 180, "OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)," as implemented by our agency at 2 CFR Part 1200.

d. *Provisions applicable to any recipient.*

    1. You must inform us immediately of any information you receive from any source alleging a violation of a prohibition in paragraph (b) of this Grant Condition.

    2. Our right to terminate unilaterally that is described in paragraph (b) or (c) of this Grant Condition:

        i. Implements section 106(g) of the Trafficking Victims Protection Act of 2000 (TVPA), as amended [22 U.S.C. § 7104(g)], and

        ii. Is in addition to all other remedies for noncompliance that are available to us under this Grant.

    3. You must include the requirements of paragraph (b) of this Grant Condition in any subgrant you make to a private entity.

e. *Definitions.* For purposes of this Grant Condition:

    1. "Employee" means either:

        i. An individual employed by you or a subrecipient who is engaged in the performance of the project or program under this Grant; or

        ii. Another person engaged in the performance of the project or program under this Grant and not compensated by you including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing or matching requirements.

    2. "Forced labor" means labor obtained by any of the following methods: the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.

3-06-0363-025-2024

3. "Private entity":

    i. Means any entity other than a State, local government, Indian tribe, or foreign public entity, as those terms are defined in 2 CFR § 175.25.

    ii. Includes:

        a) A nonprofit organization, including any nonprofit institute of higher education, hospital, or tribal organization other than one included in the definition of Indian tribe at 2 CFR § 175.25(b).

        b) A for-profit organization.

4. "Severe forms of trafficking in persons," "commercial sex act," and "coercion" have the meanings given at section 103 of the TVPA, as amended (22 U.S.C. § 7102).

23. **AIP Funded Work Included in a PFC Application.** Within 120 days of acceptance of this Grant Agreement, the Sponsor must submit to the FAA an amendment to any approved Passenger Facility Charge (PFC) application that contains an approved PFC project also covered under this Grant Agreement as described in the project application. The airport sponsor may not make any expenditure under this Grant Agreement until project work addressed under this Grant Agreement is removed from an approved PFC application by amendment.

24. **Exhibit "A" Property Map.** The Exhibit "A" Property Map dated March 16, 2020, is incorporated herein by reference or is submitted with the project application and made part of this Grant Agreement.

25. **Employee Protection from Reprisal.**

  a. Prohibition of Reprisals.

    1. In accordance with 41 U.S.C. § 4712, an employee of a Sponsor, grantee, subgrantee, contractor, or subcontractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in sub-paragraph (a)(2) below, information that the employee reasonably believes is evidence of:

        i. Gross mismanagement of a Federal grant;

        ii. Gross waste of Federal funds;

        iii. An abuse of authority relating to implementation or use of Federal funds;

        iv. A substantial and specific danger to public health or safety; or

        v. A violation of law, rule, or regulation related to a Federal grant.

    2. Persons and bodies covered. The persons and bodies to which a disclosure by an employee is covered are as follows:

        i. A member of Congress or a representative of a committee of Congress;

        ii. An Inspector General;

        iii. The Government Accountability Office;

        iv. A Federal employee responsible for contract or grant oversight or management at the relevant agency;

        v. A court or grand jury;

      vi. A management official or other employee of the Sponsor, contractor, or subcontractor who has the responsibility to investigate, discover, or address misconduct; or

     vii. An authorized official of the Department of Justice or other law enforcement agency.

  b. Investigation of Complaints.

    1. Submission of Complaint. A person who believes that they have been subjected to a reprisal prohibited by paragraph (a) of this Condition may submit a complaint regarding the reprisal to the Office of Inspector General (OIG) for the U.S. Department of Transportation.

    2. Time Limitation for Submittal of a Complaint. A complaint may not be brought under this subsection more than three years after the date on which the alleged reprisal took place.

    3. Required Actions of the Inspector General. Actions, limitations, and exceptions of the Inspector General's office are established under 41 U.S.C. § 4712(b).

  c. Remedy and Enforcement Authority.

    1. Assumption of Rights to Civil Remedy. Upon receipt of an explanation of a decision not to conduct or continue an investigation by the OIG, the person submitting a complaint assumes the right to a civil remedy under 41 U.S.C. § 4712(c)(2).

26. **Prohibited Telecommunications and Video Surveillance Services and Equipment**. The Sponsor agrees to comply with mandatory standards and policies relating to use and procurement of certain telecommunications and video surveillance services or equipment in compliance with the National Defense Authorization Act [P.L. 115-232 § 889(f)(1)] and 2 CFR § 200.216.

27. **Critical Infrastructure Security and Resilience**. *The Sponsor* acknowledges that it has considered and addressed physical and cybersecurity and resilience in their project planning, design, and oversight, as determined by the DOT and the Department of Homeland Security (DHS). For airports that do not have specific DOT or DHS cybersecurity requirements, the FAA encourages the voluntary adoption of the cybersecurity requirements from the Transportation Security Administration and Federal Security Director identified for security risk Category X airports.

28. **Title VI of the Civil Rights Act.** As a condition of a grant award, the Sponsor shall demonstrate that it complies with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d et seq) and implementing regulations (49 CFR part 21), the Airport and Airway Improvement Act of 1982 (49 U.S.C. § 47123), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 et seq.), the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101, et seq.), U.S. Department of Transportation and Federal Aviation Administration (FAA) Assurances, and other relevant civil rights statutes, regulations, or authorities. This may include, as applicable, providing a current Title VI Program Plan and a Community Participation Plan (alternatively may be called a Public Participation Plan) to the FAA for approval, in the format and according to the timeline required by the FAA, and other information about the communities that will be benefited and impacted by the project. A completed FAA Title VI Pre-Grant Award Checklist is also required for every grant application, unless excused by the FAA. The Sponsor shall affirmatively ensure that when carrying out any project supported by this grant that it complies with all federal nondiscrimination and civil rights laws based on race, color, national origin (including limited English proficiency), sex (including sexual orientation and gender identity), creed, age, disability, genetic information, or environmental justice in consideration for federal financial assistance. The Sponsor, who has not sufficiently demonstrated the conditions of compliance with civil rights requirements will be required to do so before receiving funds. The Department's and FAA's Office of Civil Rights

3-06-0363-025-2024

may provide resources and technical assistance to recipients to ensure full and sustainable compliance with Federal civil rights requirements. Failure to comply with civil rights requirements will be considered a violation of the agreement or contract and be subject to any enforcement action as authorized by law.

29. **FAA Reauthorization Act of 2024.** This grant agreement is subject to the terms and conditions contained herein including the terms known as the Grant Assurances as they were published in the Federal Register on May 2022. On May 16, 2024, the FAA Reauthorization Act of 2024 made certain amendments to 49 U.S.C. chapter 471. The Reauthorization Act will require FAA to make certain amendments to the assurances in order to best achieve consistency with the statute. Federal law requires that FAA publish any amendments to the assurances in the Federal Register along with an opportunity to comment. In order not to delay the offer of this grant, the existing assurances are attached herein; however, FAA shall interpret and apply these assurances consistent with the Reauthorization Act. To the extent there is a conflict between the assurances and Federal statutes, the statutes shall apply. The full text of the FAA Reauthorization Act of 2024 is at https://www.congress.gov/bill/118th-congress/house-bill/3935/text.

## SPECIAL CONDITIONS

30. **Project Containing Paving Work in Excess of $500,000.** The Sponsor agrees to:

   a. Furnish a construction management program to the FAA prior to the start of construction which details the measures and procedures to be used to comply with the quality control provisions of the construction contract, including, but not limited to, all quality control provisions and tests required by the Federal specifications. The program must include as a minimum:

      1. The name of the person representing the Sponsor who has overall responsibility for contract administration for the project and the authority to take necessary actions to comply with the contract;

      2. Names of testing laboratories and consulting engineer firms with quality control responsibilities on the project, together with a description of the services to be provided;

      3. Procedures for determining that the testing laboratories meet the requirements of the ASTM International standards on laboratory evaluation referenced in the contract specifications (i.e., ASTM D 3666, ASTM C 1077);

      4. Qualifications of engineering supervision and construction inspection personnel;

      5. A listing of all tests required by the contract specifications, including the type and frequency of tests to be taken, the method of sampling, the applicable test standard, and the acceptance criteria or tolerances permitted for each type of test; and

      6. Procedures for ensuring that the tests are taken in accordance with the program, that they are documented daily, and that the proper corrective actions, where necessary, are undertaken.

   b. Submit at completion of the project, a final test and quality assurance report documenting the summary results of all tests performed and highlighting those tests that indicated failure or that did not meet the applicable test standard. The report must include the pay

3-06-0363-025-2024

reductions applied and the reasons for accepting any out-of-tolerance material. Submit interim test and quality assurance reports when requested by the FAA.

c.  Failure to provide a complete report as described above, or failure to perform such tests, will, absent any compelling justification, result in a reduction in Federal participation for costs incurred in connection with construction of the applicable pavement. Such reduction will be at the discretion of the FAA and will be based on the type or types of required tests not performed or not documented and will be commensurate with the proportion of applicable pavement with respect to the total pavement constructed under the Grant Agreement.

d.  The FAA, at its discretion, reserves the right to conduct independent tests and to reduce grant payments accordingly if such independent tests determine that Sponsor test results are inaccurate.

31. **Plans and Specifications Approval Based Upon Certification.** The FAA and the Sponsor agree that the FAA's approval of the Sponsor's Plans and Specification is based primarily upon the Sponsor's certification to carry out the project in accordance with policies, standards, and specifications approved by the FAA. The Sponsor understands that:

a.  The Sponsor's certification does not relieve the Sponsor of the requirement to obtain prior FAA approval for modifications to published FAA airport development grant standards or to notify the FAA of any limitations to competition within the project;

b.  The FAA's acceptance of a Sponsor's certification does not limit the FAA from reviewing appropriate project documentation for the purpose of validating the certification statements; and

c.  If the FAA determines that the Sponsor has not complied with their certification statements, the FAA will review the associated project costs to determine whether such costs are allowable under this Grant and associated grants.

32. **Consultant Contract and Cost Analysis.** The Sponsor understands and agrees that no reimbursement will be made on the consultant contract portion of this Grant until the FAA has received the consultant contract, the Sponsor's analysis of costs, and the independent fee estimate.

33. **Buy American Executive Orders.** The Sponsor agrees to abide by applicable Executive Orders in effect at the time this Grant Agreement is executed, including Executive Order 14005, Ensuring the Future Is Made in All of America by All of America's Workers.

34. **Leaded Fuel.** FAA Reauthorization Act of 2024 (P.L. 118-63) Section 770 "Grant Assurances" requires airports that made 100-octane low lead aviation gasoline (100LL) available, any time during calendar year 2022, to not prohibit or restrict the sale, or self-fueling, of such aviation gasoline. This requirement remains until the earlier of 2030, or the date on which the airport or any retail fuel seller at the airport makes available an FAA-authorized unleaded aviation gasoline replacement for 100LL meeting either an industry consensus standard or other standard that facilitates the safe use, production, and distribution of such unleaded aviation gasoline as deemed appropriate by the Administrator. The Sponsor understands and agrees, that any violations are subject to civil penalties.