ANDREW JANZ (SBN 287672)*
City Attorney
CITY OF FRESNO
2600 Fresno Street
Fresno, CA 93721
Telephone: (559) 621-7500
Facsimile: (559) 457-1084
* *Application for admission pro hac vice forthcoming*

*Attorney for Plaintiff*
CITY OF FRESNO

JONATHAN V. HOLTZMAN (SBN 99795)
jholtzman@publiclawgroup.com
JAMES R. ROSS (SBN 149199)
jross@publiclawgroup.com
RYAN P. McGINLEY-STEMPEL (SBN 296182)
rmcginleystempel@publiclawgroup.com
JAKE D. FREITAS (SBN 341837)
jfreitas@publiclawgroup.com
MARIBEL LOPEZ (SBN 340907)
mlopez@publiclawgroup.com
RENNE PUBLIC LAW GROUP
350 Sansome Street, Suite 300
San Francisco, California 94104
Telephone: (415) 848-7200
Facsimile:  (415) 848-7230

*Attorneys for Plaintiffs*
CITY OF FRESNO; CITY OF EUREKA; CITY OF SOUTH LAKE TAHOE; COUNTY OF SACRAMENTO; COUNTY OF MONROE; MONROE COUNTY AIRPORT AUTHORITY

LYNDSEY OLSON (MN Lic. #0332288)*
Saint Paul City Attorney
Lyndsey.olson@ci.stpaul.mn.us
KELSEY MCELVEEN (MN Lic. #0396744)*
Assistant City Attorney
Kelsey.McElveen@ci.stpaul.mn.us
SAINT PAUL CITY ATTORNEY'S OFFICE
400 City Hall and Courthouse
15 Kellogg Boulevard West
Saint Paul, Minnesota 55102
Telephone:  (651) 266-8710
Facsimile  (651) 298-5619
* *Application for admission pro hac vice forthcoming*

*Attorneys for Plaintiff*
CITY OF SAINT PAUL

MELISSA C. ALLISON (MA Bar No. 657470)*
mallison@andersonkreiger.com
CHRISTINA S. MARSHALL
(MA Bar No. 688348)*
cmarshall@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, Floor 21
Boston, MA 02109
Telephone: (617) 621-6500
* *Application for admission pro hac vice forthcoming*

*Attorneys for Plaintiffs*
COUNTY OF MONROE
MONROE COUNTY AIRPORT AUTHORITY

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF FRESNO, et al.<br><br>    Plaintiffs,<br><br>v.<br><br>SCOTT TURNER, et al.<br><br>    Defendants. | Case No.: 3:25-cv-07070-RS<br><br>**DECLARATION OF MATTHEW DARROW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, PRELIMINARY INJUNCTION**<br><br>Complaint Filed: August 20, 2025<br><br>Hon. Richard Seeborg |

RENNE PUBLIC LAW GROUP
Attorneys at Law

I, Matthew Darrow, declare as follows:

1.  I am over 18 years of age.  I have personal knowledge of the facts set forth in this declaration and am otherwise competent to testify to the matters contained herein.

2.  I have a Bachelor of Science in Civil Engineering with a minor in Mathematics.  I am a licensed Civil Engineer and Traffic Engineer within the State of California and am a certified Professional Traffic Operations Engineer.

3.  I am currently the Chief of Planning and Programs for the Sacramento County Department of Transportation (SacDOT or Department).  I have been with SacDOT for 23 years and have served in my current role since May 2021.  In this role, I am responsible for the management of transportation planning, development services, and programs, which includes managing all federal, state, and local grant applications.  Prior to joining the Department, I served as a Principal Civil Engineer, Senior Civil Engineer, and Associate Engineer in the Sacramento County Planning and Development Services section.

4.  SacDOT is responsible for planning, improving, operating and maintaining a transportation system that serves unincorporated Sacramento County residents, regional traffic and commerce.  SacDOT works to address community transportation needs with projects to improve the County system of 5,417 lane miles of roadways and approximately 226 bridges, as well as provide rural bus transit.  The Department delivers projects ranging from major roadway improvements to ongoing pavement repair and maintenance programs.  Between 2022 to 2024, the SacDOT Design Division contracted or delivered over $200,000,000 in capital roadway improvement projects throughout the unincorporated area.  For example, the Department is currently constructing the South Watt Avenue Widening project from Florin Road to Jackson Road at a $60 million construction cost.  In addition, SacDOT's Maintenance and Operations Division delivered over $175,000,000 in overlay projects and filled over 270,000 potholes.  SacDOT's South County Transit (SCT) Link rural bus program served approximately 113,431 passenger trips from FY 20/21 to FY 22/23.  The Department also partners on projects to revitalize communities, support economic development and improve the regional transportation network.

5.    SacDOT relies on federal funding from the Unites States Department of Transportation's (USDOT) Federal Highway Administration (FHWA) and Federal Transit Administration (FTA) to provide critical transportation planning and improvements.

6.    As mentioned above, SacDOT operates a rural bus program known as SCT Link to provide transit services for residents in the City of Galt and the southern portion of Sacramento County. SacDOT relies on FTA Section 5311 Formula Grants for Rural Areas program to support SCT Link. SacDOT has been allocated $ 463,882 of Section 5311 grant funds for FY 2025 and recently received the updated FY 2025 FTA Certifications and Assurances that must be executed by SacDOT within the next few weeks for continued FTA formula grant eligibility.  The FY 2025 FTA Certifications and Assurances includes as a standard condition that the applicant "[w]ill comply with all applicable requirements of all…executive orders…governing the program under which it is applying for assistance." (FY 2025 FTA Certifications and Assurances, Section 1.1.  Standard Assurances, subpart (r), a true and correct copy of which is included herewith as **Exhibit A**.)

7.    SacDOT anticipates receiving similar FTA Certifications and Assurances for other formula subgrants in the next year and will need to sign them expeditiously to keep its federal funding flowing.

8.    SacDOT also receives significant funding from the FHWA.  For Fiscal Years 2023-2024 and 2024-2025, SacDOT received approximately $ 47,991,689 in FHWA funds for various bridge replacement, street rehabilitation, and bicycle and pedestrian improvement, and other critical infrastructure projects.  For Fiscal Year 2025-2026, SacDOT has budgeted for approximately $ 33 million in FHWA funding for the same or similar projects.

9.    The County receives its FHWA funds pursuant to an Administering Agency-State Agreement for Federal Aid Projects between the County of Sacramento and the California Department of Transportation (Caltrans) dated August 12, 2016 (Caltrans Master Agreement).  This agreement generally governs the payment of federal funds by Caltrans to the County, together with Program Supplements that specify the type of work and amount of federal funds to be used for phases of the project.

-3-

10. Under Article I, Paragraph 9, of the Master Agreement, the County (referred to in the Agreement as the "Administering Agency") must "conform to…all applicable federal laws, regulations, and policy and procedural or instructional memoranda, unless otherwise specifically waived as designated in the executed project-specific PROGRAM SUPPLEMENT." A true and correct copy of the Caltrans Master Agreement is attached hereto as **Exhibit B**. A true and correct copy of a Program Supplement for one of the County's projects is attached as **Exhibit C**. Under Section 2(A) of that Supplement agreement, the County (again referred to as the "Administering Agency") is required to "conform to … all applicable federal laws, regulations, and policy and procedural or instructional memoranda, unless otherwise specifically waived as designated in the executed project-specific PROGRAM SUPPLEMENT." Other Program Supplements to the Caltrans Master Agreement have been in substantially the same form and included substantially the same language as quoted above.

11. Despite ongoing uncertainty, SacDOT could not forego timely executing the Program Supplement attached as **Exhibit C** and risk losing critical funding for ongoing projects. SacDOT anticipates needing to sign new Program Supplements in the coming months. It is anticipated that future Program Supplements will be in substantially the same form as the Program Supplement attached as **Exhibit C** and will include substantially the same language. Under Article I, Paragraph 5 of the Caltrans Master Agreement, SacDOT must execute a Program Supplement within ninety (90) days of receipt.

12. SacDOT was also awarded a discretionary competitive grant from the FHWA Bridge Investment Program in the amount of $800,000 for the Sunrise Blvd Bridge over American River Feasibility Study. This feasibility study project is proposed to guide Sacramento County toward a safe, cost-effective, and sustainable solution to address scour damage while enhancing the safety, efficiency, and reliability of people and freight movement over bridges. SacDOT anticipates receiving an agreement from FHWA to secure the funds any day and anticipates that said agreement will contain terms and conditions that require compliance with all federal laws, regulations, and policy and procedural or instructional memoranda and/or specifically with all executive orders as would be consistent with prior funding agreements executed by SacDOT for similar grant funds. If SacDOT is unable to sign the grant agreement when the funds become available, it would severely impact and potentially be detrimental to the County's ability to complete these important safety improvements.

-4-

13.     Earlier this year, SacDOT was also awarded a discretionary grant in the amount of $1,859,680 from the FHWA Advanced Transportation Technology and Innovation (ATTAIN) program for its Sacramento County Complete Pedestrian Trips project which will fund the development and deployment of a mobile application to reduce mobility barriers against vulnerable populations.  It is intended that funding to SacDOT from FHWA will pass through Caltrans which requires agreements between FHWA and Caltrans as well as between Caltrans and SacDOT.  Although these agreements have not been finalized, the most recent versions provided to SacDOT for its review require that SacDOT agree, amongst other things, to the following conditions as a recipient of the FHWA funding:

> "Section 18.02 Federal Law and Public Policy Requirements.
>   (a)     The Designated Subrecipient shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Designated Subrecipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.
>
> [¶]
>
> Section 18.04  Implementation of Executive Order 14173.
>   (a)     Pursuant to Section (3)(b)(iv)(A), Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, the Designated Subrecipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.
>   (b)     Pursuant to Section (3)(b)(iv)(B), Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, by entering into this agreement, the Designated Subrecipient certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws."

The proposed agreements do not define "programs promoting diversity, equity, and inclusion" nor provide examples as to how these programs run afoul of federal law.

14.     SacDOT anticipates receiving additional FHWA funding that has not yet been obligated. It applied for a grant under the Safe Streets and Roads for All program in June of 2025 for its Stockton Blvd Complete Streets Phase 2 project and plans to seek further FHWA funding in the future.  It

1   anticipates continuing to receive formula subgrants through state and regional entities and applying for

2   additional discretionary competitive grants.

3          15.    On April 24, 2025, the Secretary of Transportation issued a letter to all grant recipients

4   reminding them of their obligation to comply with federal law ("Duffy Memo"). The Duffy Memo

5   emphasized compliance with federal anti-discrimination laws and asserted USDOT's position that any

6   policy, program, or activity that is based on a prohibited classification, including diversity, equity, and

7   inclusion ("DEI") programs, "presumptively violate federal law." The Secretary also stated that federal

8   law requires all recipients of USDOT funding to cooperate with — and not impede — Immigration and

9   Customs Enforcement ("ICE") and other U.S. Department of Homeland Security ("DHS") agencies in

10   the performance of their duties. Finally, the Secretary warned that "non-compliance with applicable

11   federal laws, or failure to cooperate generally with Federal authorities in the enforcement of Federal law"

12   will jeopardize a grant recipient's continued receipt of federal financial assistance. A copy of the Duffy

13   Memo is attached as **Exhibit D**.

14          16.    If SacDOT does not accept the conditions set forth in the updated Certifications and

15   Assurances or the Caltrans Master Agreement and Program Supplements, it could be threatened with the

16   loss of funding for projects supported by FHWA and FTA grants. This places SacDOT in an untenable

17   situation of either agreeing to conditions to which it may not be able to comply or foregoing much

18   needed grant funding for the continued operation, maintenance, and improvement of critical

19   transportation infrastructure. Further, should SacDOT erroneously interpret said conditions it risks being

20   the subject of future USDOT enforcement action which may also result in a loss of grant funding for

21   capital projects that are already underway. This risk is compounded by additional financial uncertainty

22   arising from potential False Claims Act penalties, which on their own could be extensive.

23          17.    The County of Sacramento would face significant harm if its FHWA or FTA funding were

24   withheld or terminated. SacDOT relies on federal grant programs to support multimillion dollar projects

25   that are critical to maintaining the safety of County roadways and bridges. The loss of these funds would

26   be devastating to SacDOT's budget and its ability to carry out this work, which would ultimately result in

27   serious harm to public safety.

28

1         I declare under penalty of perjury under the laws of the State of California that the foregoing is

2   true and correct.  Executed August 20, 2025, at Sacramento, California.

DocuSigned by:

*Matt Darrow*

0497F2E0E2E7405...

Matthew Darrow

DARROW DEC. ISO TRO & OSC – CASE NO. 3:25-cv-07070-RS

# EXHIBIT A

Docusign Envelope ID: 720E8EC1-F960-43FB-9753-68C849FB1A3E

> *Not every provision of every certification will apply to every applicant or award. If a provision of a certification does not apply to the applicant or its award, FTA will not enforce that provision.*
>
> *Text in italic is not part of a certification and is of no legal effect. Its purpose is to provide explanation and context for the certification.*

## CATEGORY 1. CERTIFICATIONS AND ASSURANCES REQUIRED OF EVERY APPLICANT.

*All applicants must make the certifications in this category.*

### 1.1.  Standard Assurances.

*The certifications in this subcategory appear as part of the applicant's registration or annual registration renewal in the System for Award Management (SAM.gov) and on the Office of Management and Budget's standard form 424B "Assurances—Non-Construction Programs". This certification has been modified in places to include analogous certifications required by U.S. DOT statutes or regulations.*

As the duly authorized representative of the applicant, you certify that the applicant:

(a)     Has the legal authority to apply for Federal assistance and the institutional, managerial and financial capability (including funds sufficient to pay the non-Federal share of project cost) to ensure proper planning, management and completion of the project described in this application.

(b)     Will give the awarding agency, the Comptroller General of the United States and, if appropriate, the State, through any authorized representative, access to and the right to examine all records, books, papers, or documents related to the award; and will establish a proper accounting system in accordance with generally accepted accounting standards or agency directives.

(c)     Will establish safeguards to prohibit employees from using their positions for a purpose that constitutes or presents the appearance of personal or organizational conflict of interest, or personal gain.

(d)     Will initiate and complete the work within the applicable time frame after receipt of approval of the awarding agency.

(e)     Will comply with the Intergovernmental Personnel Act of 1970 (42 U.S.C. §§ 4728–4763) relating to prescribed standards for merit systems for programs funded under one of the 19 statutes or regulations specified in Appendix A of OPM's Standards for a Merit System of Personnel Administration (5 CFR 900, Subpart F).

(f)     Will comply with all Federal statutes relating to nondiscrimination. These include but are not limited to:

(1)    Title VI of the Civil Rights Act of 1964 (P.L. 88-352) which prohibits discrimination on the basis of race, color or national origin, as effectuated by U.S. DOT regulation 49 CFR Part 21, including any amendments thereto;

(2)    Title IX of the Education Amendments of 1972, as amended (20 U.S.C. §§ 1681–1683, and 1685–1686), which prohibits discrimination on the basis of sex, as effectuated by U.S. DOT regulation 49 CFR Part 25;

(3)    Section 5332 of the Federal Transit Law (49 U.S.C. § 5332), which prohibits any person being excluded from participating in, denied a benefit of, or discriminated against under, a project, program, or activity receiving financial assistance from FTA because of race, color, religion, national origin, sex, disability, or age.

(4)    Section 504 of the Rehabilitation Act of 1973, as amended (29 U.S.C. § 794), which prohibits discrimination on the basis of handicaps, as effectuated by U.S. DOT regulation 49 CFR Part 27;

(5)    The Age Discrimination Act of 1975, as amended (42 U.S.C. §§ 6101–6107), which prohibits discrimination on the basis of age;

(6)    The Drug Abuse Office and Treatment Act of 1972 (P.L. 92-255), as amended, relating to nondiscrimination on the basis of drug abuse;

(7)    The comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970 (P.L. 91–616), as amended, relating to nondiscrimination on the basis of alcohol abuse or alcoholism;

(8)    Sections 523 and 527 of the Public Health Service Act of 1912 (42 U.S.C. §§ 290 dd-3 and 290 ee-3), as amended, relating to confidentiality of alcohol and drug abuse patient records;

(9)    Title VIII of the Civil Rights Act of 1968 (42 U.S.C. §§ 3601 et seq.), as amended, relating to nondiscrimination in the sale, rental, or financing of housing;

(10)    Any other nondiscrimination provisions in the specific statute(s) under which application for Federal assistance is being made; and,

(11)    the requirements of any other nondiscrimination statute(s) which may apply to the application.

(g)    Will comply, or has already complied, with the requirements of Titles II and III of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("Uniform Act") (P.L. 91-646) which provide for fair and equitable treatment of persons displaced or whose property is acquired as a result of Federal or federally-assisted programs. These requirements apply to all interests in real property acquired for project purposes regardless of Federal participation in purchases. The requirements of the Uniform Act are effectuated by U.S. DOT regulation 49 CFR Part 24.

(h)    Will comply, as applicable, with provisions of the Hatch Act (5 U.S.C. §§ 1501–1508 and 7324–7328) which limit the political activities of employees whose principal employment activities are funded in whole or in part with Federal funds.

Certifications and Assurances                                    Fiscal Year 2025

(i)     Will comply, as applicable, with the provisions of the Davis–Bacon Act (40 U.S.C. §§ 276a to 276a-7), the Copeland Act (40 U.S.C. § 276c and 18 U.S.C. § 874), and the Contract Work Hours and Safety Standards Act (40 U.S.C. §§ 327–333), regarding labor standards for federally assisted construction sub-agreements.

(j)     Will comply, if applicable, with flood insurance purchase requirements of Section 102(a) of the Flood Disaster Protection Act of 1973 (P.L. 93-234) which requires recipients in a special flood hazard area to participate in the program and to purchase flood insurance if the total cost of insurable construction and acquisition is $10,000 or more.

(k)     Will comply with environmental standards which may be prescribed pursuant to the following:

        (1)     Institution of environmental quality control measures under the National Environmental Policy Act of 1969 (P.L. 91-190) and Executive Order (EO) 11514;

        (2)     Notification of violating facilities pursuant to EO 11738;

        (3)     Protection of wetlands pursuant to EO 11990;

        (4)     Evaluation of flood hazards in floodplains in accordance with EO 11988;

        (5)     Assurance of project consistency with the approved State management program developed under the Coastal Zone Management Act of 1972 (16 U.S.C. §§ 1451 et seq.);

        (6)     Conformity of Federal actions to State (Clean Air) Implementation Plans under Section 176(c) of the Clean Air Act of 1955, as amended (42 U.S.C. §§ 7401 et seq.);

        (7)     Protection of underground sources of drinking water under the Safe Drinking Water Act of 1974, as amended (P.L. 93-523); and

        (8)     Protection of endangered species under the Endangered Species Act of 1973, as amended (P.L. 93–205).

(l)     Will comply with the Wild and Scenic Rivers Act of 1968 (16 U.S.C. §§ 1271 et seq.) related to protecting components or potential components of the national wild and scenic rivers system.

(m)    Will assist the awarding agency in assuring compliance with Section 106 of the National Historic Preservation Act of 1966, as amended (16 U.S.C. § 470), EO 11593 (identification and protection of historic properties), and the Archaeological and Historic Preservation Act of 1974 (16 U.S.C. §§ 469a-1 et seq.).

(n)     Will comply with P.L. 93-348 regarding the protection of human subjects involved in research, development, and related activities supported by this award of assistance.

(o)     Will comply with the Laboratory Animal Welfare Act of 1966 (P.L. 89-544, as amended, 7 U.S.C. §§ 2131 et seq.) pertaining to the care, handling, and treatment of warm blooded animals held for research, teaching, or other activities supported by this award of assistance.

(p)    Will comply with the Lead-Based Paint Poisoning Prevention Act (42 U.S.C. §§ 4801 et seq.) which prohibits the use of lead-based paint in construction or rehabilitation of residence structures.

(q)    Will cause to be performed the required financial and compliance audits in accordance with the Single Audit Act Amendments of 1996 and 2 CFR Part 200, Subpart F, "Audit Requirements", as adopted and implemented by U.S. DOT at 2 CFR Part 1201.

(r)    Will comply with all applicable requirements of all other Federal laws, executive orders, regulations, and policies governing the program under which it is applying for assistance.

(s)    Will comply with the requirements of Section 106(g) of the Trafficking Victims Protection Act (TVPA) of 2000, as amended (22 U.S.C. § 7104) which prohibits grant award recipients or a subrecipient from:

    (1)    Engaging in severe forms of trafficking in persons during the period of time that the award is in effect;

    (2)    Procuring a commercial sex act during the period of time that the award is in effect; or

    (3)    Using forced labor in the performance of the award or subawards under the award.

## 1.2.  Standard Assurances: Additional Assurances for Construction Projects.

*This certification appears on the Office of Management and Budget's standard form 424D "Assurances—Construction Programs" and applies specifically to federally assisted projects for construction. This certification has been modified in places to include analogous certifications required by U.S. DOT statutes or regulations.*

As the duly authorized representative of the applicant, you certify that the applicant:

(a)    Will not dispose of, modify the use of, or change the terms of the real property title or other interest in the site and facilities without permission and instructions from the awarding agency; will record the Federal awarding agency directives; and will include a covenant in the title of real property acquired in whole or in part with Federal assistance funds to assure nondiscrimination during the useful life of the project.

(b)    Will comply with the requirements of the assistance awarding agency with regard to the drafting, review, and approval of construction plans and specifications.

(c)    Will provide and maintain competent and adequate engineering supervision at the construction site to ensure that the complete work confirms with the approved plans and specifications, and will furnish progressive reports and such other information as may be required by the assistance awarding agency or State.

Docusign Envelope ID: 730E8EC1-F060-43FB-97F2-68G849FB1A7E

### 1.3.  Procurement.

*The Uniform Administrative Requirements, 2 CFR § 200.325, allow a recipient to self-certify that its procurement system complies with Federal requirements, in lieu of submitting to certain pre-procurement reviews.*

The applicant certifies that its procurement system complies with:

(a)  U.S. DOT regulations, "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards," 2 CFR Part 1201, which incorporates by reference U.S. OMB regulatory guidance, "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards," 2 CFR Part 200, particularly 2 CFR §§ 200.317–200.327 "Procurement Standards;

(b)  Federal laws, regulations, and requirements applicable to FTA procurements; and

(c)  The latest edition of FTA Circular 4220.1 and other applicable Federal guidance.

### 1.4.  Increased Micro-Purchase Threshold.

*A recipient may establish a micro-purchase threshold that is higher than the Federal micro-purchase threshold. Pursuant to 2 CFR § 200.320(a)(1)(iv), the recipient may self-certify a micro-purchase threshold up to $50,000. Pursuant to 2 CFR § 200.320(a)(1)(v), the recipient may set a micro-purchase threshold higher than $50,000, but only with the approval of the recipient's Federal cognizant agency for indirect costs. To determine an applicant's cognizant agency for indirect costs, consult the definition of "cognizant agency for indirect costs" in 2 CFR § 200.1.*

If the recipient uses a micro-purchase threshold that is higher than the Federal micro-purchase threshold, the recipient certifies:

(a)  The recipient's micro-purchase threshold does not exceed $50,000, or the recipient has approval from its Federal cognizant agency for indirect costs to use a higher micro-purchase threshold;

(b)  The recipient has a written justification for its micro-purchase threshold; and

(c)  The recipient has supporting documentation of any of the following:

    (1)  The recipient qualifies as a low-risk auditee, in accordance with the criteria in 2 CFR § 200.520 for the most recent audit;

    (2)  The recipient has an annual internal institutional risk assessment to identify, mitigate, and manage financial risks; or

    (3)  For public institutions, a higher threshold is consistent with State law.

### 1.5.  Suspension and Debarment.

*Pursuant to Executive Order 12549, as implemented at 2 CFR Parts 180 and 1200, prior to entering into a covered transaction with an applicant, FTA must determine whether the applicant is excluded from participating in covered non-procurement transactions. For this purpose, FTA is authorized to collect a certification from each applicant regarding the applicant's exclusion status. 2 CFR § 180.300. Additionally, each applicant must disclose any information required by 2 CFR § 180.335 about the applicant and the applicant's principals prior to entering into an award agreement with FTA. This certification serves both purposes.*

The applicant certifies, to the best of its knowledge and belief, that the applicant and each of its principals:

(a)    Is not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily or involuntarily excluded from covered transactions by any Federal department or agency;

(b)    Has not, within the preceding three years, been convicted of or had a civil judgment rendered against him or her for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; violation of Federal or State antitrust statutes, including those proscribing price fixing between competitors, allocation of customers between competitors, and bid rigging; commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, receiving stolen property, making false claims, or obstruction of justice; or commission of any other offense indicating a lack of business integrity or business honesty;

(c)    Is not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, or local) with commission of any offense described in paragraph (b) of this certification; and

(d)    Has not, within the preceding three years, had one or more public transactions (Federal, State, or local) terminated for cause or default.

### 1.6.  Lobbying.

*If the applicant will apply for a grant or cooperative agreement exceeding $100,000, or a loan, line of credit, loan guarantee, or loan insurance exceeding $150,000, it must make the following certification and, if applicable, make a disclosure regarding the applicant's lobbying activities. This certification is required by 49 CFR § 20.110 and app. A to that part.*

*This certification does not apply to an applicant that is an Indian Tribe, Indian organization, or an Indian tribal organization exempt from the requirements of 49 CFR Part 20.*

### *1.6.1. Certification for Contracts, Grants, Loans, and Cooperative Agreements.*

The undersigned certifies, to the best of his or her knowledge and belief, that:

(a)     No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of an agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

(b)     If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan, or cooperative agreement, the undersigned shall complete and submit Standard Form-LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(c)     The undersigned shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants, and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by section 1352, title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

### *1.6.2. Statement for Loan Guarantees and Loan Insurance.*

The undersigned states, to the best of his or her knowledge and belief, that:

If any funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this commitment providing for the United States to insure or guarantee a loan, the undersigned shall complete and submit Standard Form-LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

Submission of this statement is a prerequisite for making or entering into this transaction imposed by section 1352, title 31, U.S. Code. Any person who fails to file the required statement

shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

## 1.7.  Real Property Use

*This certification responds to Recommendation #7 in the U.S. Department of Transportation's Office of Inspector General Report FS2024025 (May 20, 2024).*

If the applicant will use assistance provided by the Federal Transit Administration to acquire or improve real property, the applicant certifies that it will comply with the requirements of 2 CFR § 200.311, including but not limited to, requirements to use the property for the purposes authorized in its award, and to seek disposition instructions from FTA when the property no longer is needed for any authorized purpose.

## CATEGORY 2. PUBLIC TRANSPORTATION AGENCY SAFETY PLANS

*This certification is required of each applicant under the Urbanized Area Formula Grants Program (49 U.S.C. § 5307), each rail operator that is subject to FTA's state safety oversight programs, and each State that is required to draft and certify a Public Transportation Agency Safety Plan on behalf of a Small Public Transportation Provider (as that term is defined at 49 CFR § 673.5) pursuant to 49 CFR § 673.11(d).*

*This certification is required by 49 U.S.C. § 5307(c)(1)(L), 49 U.S.C. § 5329(d)(1), and 49 CFR § 673.13. This certification is a condition of receipt of Urbanized Area Formula Grants Program (49 U.S.C. § 5307) funding.*

*This certification does not apply to any applicant that only receives financial assistance from FTA under the Formula Grants for the Enhanced Mobility of Seniors Program (49 U.S.C. § 5310), the Formula Grants for Rural Areas Program (49 U.S.C. § 5311), or combination of these two programs, unless it operates a rail fixed guideway public transportation system.*

If the applicant is an operator, the applicant certifies that it has established a Public Transportation Agency Safety Plan meeting the requirements of 49 U.S.C. § 5329(d)(1) and 49 CFR Part 673; including, specifically, that the board of directors (or equivalent entity) of the applicant has approved, or, in the case of an applicant that will apply for assistance under 49 U.S.C. § 5307 that is serving an urbanized area with a population of 200,000 or more, the safety committee of the entity established under 49 U.S.C. § 5329(d)(5), followed by the board of directors (or equivalent entity) of the applicant has approved, the Public Transportation Agency Safety Plan or any updates thereto; and, for each recipient serving an urbanized area with a population of fewer than 200,000, that the Public Transportation Agency Safety Plan has been developed in cooperation with frontline employee representatives.

If the applicant is a State that drafts and certifies a Public Transportation Agency Safety Plan on behalf of a public transportation operator, the applicant certifies that:

(a) It has drafted and certified a Public Transportation Agency Safety Plan meeting the requirements of 49 U.S.C. § 5329(d)(1) and 49 CFR Part 673 for each Small Public Transportation Provider (as that term is defined at 49 CFR § 673.5) in the State, unless the Small Public Transportation Provider provided notification to the State that it was opting out of the State-drafted plan and drafting its own Public Transportation Agency Safety Plan; and

(b) Each Small Public Transportation Provider within the State that opts to use a State-drafted Public Transportation Agency Safety Plan has a plan that has been approved by the provider's Accountable Executive (as that term is defined at 49 CFR § 673.5), Board of Directors or Equivalent Authority (as that term is defined at 49 CFR § 673.5), and, if the Small Public Transportation Provider serves an urbanized area with a population of 200,000 or more, the safety committee of the Small Public Transportation Provider established under 49 U.S.C. § 5329(d)(5).

### CATEGORY 3. TAX LIABILITY AND FELONY CONVICTIONS.

*If the applicant is a business association (regardless of for-profit, not for-profit, or tax-exempt status), it must make this certification. Federal appropriations acts since at least 2014 have prohibited FTA from using funds to enter into an agreement with any corporation that has unpaid Federal tax liabilities or recent felony convictions without first considering the corporation for debarment. E.g., Further Consolidated Appropriations Act, 2024, Pub. L. 118-47, div. B, tit. VII, §§ 744-745. U.S. DOT Order 4200.6 defines a "corporation" as "any private corporation, partnership, trust, joint-stock company, sole proprietorship, or other business association", and applies the restriction to all tiers of subawards. As prescribed by U.S. DOT Order 4200.6, FTA requires each business association applicant to certify as to its tax and felony status.*

If the applicant is a private corporation, partnership, trust, joint-stock company, sole proprietorship, or other business association, the applicant certifies that:

(a)     It has no unpaid Federal tax liability that has been assessed, for which all judicial and administrative remedies have been exhausted or have lapsed, and that is not being paid in a timely manner pursuant to an agreement with the authority responsible for collecting the tax liability; and

(b)     It has not been convicted of a felony criminal violation under any Federal law within the preceding 24 months.

## CATEGORY 4. PRIVATE SECTOR PROTECTIONS.

*If the applicant will apply for funds that it will use to acquire or operate public transportation facilities or equipment, the applicant must make the following certification regarding protections for the private sector.*

### 4.1.   Charter Service Agreement.

*To enforce the provisions of 49 U.S.C. § 5323(d), FTA's charter service regulation requires each applicant seeking assistance from FTA for the purpose of acquiring or operating any public transportation equipment or facilities to make the following Charter Service Agreement. 49 CFR § 604.4.*

The applicant agrees that it, and each of its subrecipients, and thirdparty contractors at any level who use FTA-funded vehicles, may provide charter service using equipment or facilities acquired with Federal assistance authorized under the Federal Transit Laws only in compliance with the regulations set out in 49 CFR Part 604, the terms and conditions of which are incorporated herein by reference.

### 4.2.   School Bus Agreement.

*To enforce the provisions of 49 U.S.C. § 5323(f), FTA's school bus regulation requires each applicant seeking assistance from FTA for the purpose of acquiring or operating any public transportation equipment or facilities to make the following agreement regarding the provision of school bus services. 49 CFR § 605.15.*

(a)     If the applicant is not authorized by the FTA Administrator under 49 CFR § 605.11 to engage in school bus operations, the applicant agrees and certifies as follows:
   (1)     The applicant and any operator of project equipment agrees that it will not engage in school bus operations in competition with private school bus operators.
   (2)     The applicant agrees that it will not engage in any practice which constitutes a means of avoiding the requirements of this agreement, part 605 of the Federal Mass Transit Regulations, or section 164(b) of the Federal-Aid Highway Act of 1973 (49 U.S.C. 1602a(b)).
(b)     If the applicant is authorized or obtains authorization from the FTA Administrator to engage in school bus operations under 49 CFR § 605.11, the applicant agrees as follows:
   (1)     The applicant agrees that neither it nor any operator of project equipment will engage in school bus operations in competition with private school bus operators except as provided herein.
   (2)     The applicant, or any operator of project equipment, agrees to promptly notify the FTA Administrator of any changes in its operations which might jeopardize the continuation of an exemption under § 605.11.

Docusign Envelope ID: 730E8EC1-F060-43FB-97F2-68G849FB1A7E

(3)     The applicant agrees that it will not engage in any practice which constitutes a means of avoiding the requirements of this agreement, part 605 of the Federal Transit Administration regulations or section 164(b) of the Federal-Aid Highway Act of 1973 (49 U.S.C. 1602a(b)).

(4)     The applicant agrees that the project facilities and equipment shall be used for the provision of mass transportation services within its urban area and that any other use of project facilities and equipment will be incidental to and shall not interfere with the use of such facilities and equipment in mass transportation service to the public.

## CATEGORY 5. TRANSIT ASSET MANAGEMENT PLAN.

*If the applicant owns, operates, or manages capital assets used to provide public transportation, the following certification is required by 49 U.S.C. § 5326(a).*

The applicant certifies that it is in compliance with 49 CFR Part 625.

## CATEGORY 6. ROLLING STOCK BUY AMERICA REVIEWS AND BUS TESTING.

### 6.1.    Rolling Stock Buy America Reviews.

*If the applicant will apply for an award to acquire rolling stock for use in revenue service, it must make this certification. This certification is required by 49 CFR § 663.7.*

The applicant certifies that it will conduct or cause to be conducted the pre-award and post-delivery audits prescribed by 49 CFR Part 663 and will maintain on file the certifications required by Subparts B, C, and D of 49 CFR Part 663.

### 6.2.    Bus Testing.

*If the applicant will apply for funds for the purchase or lease of any new bus model, or any bus model with a major change in configuration or components, the applicant must make this certification. This certification is required by 49 CFR § 665.7.*

The applicant certifies that the bus was tested at the Bus Testing Facility established in accordance with 49 U.S.C. § 5318 (currently the Larson Transportation Institute's Bus Research and Testing Center at Pennsylvania State University) and that the bus received a passing test score as required by 49 CFR Part 665. The applicant has received or will receive the appropriate full Bus Testing Report and any applicable partial testing reports before final acceptance of the first vehicle.

Certifications and Assurances                                              Fiscal Year 2025

### CATEGORY 7. URBANIZED AREA FORMULA GRANTS PROGRAM.

*If the applicant will apply for an award under the Urbanized Area Formula Grants Program (49 U.S.C. § 5307), or any other program or award that is subject to the requirements of 49 U.S.C. § 5307, including the Formula Grants for the Enhanced Mobility of Seniors Program (49 U.S.C. § 5310); "flex funds" from infrastructure programs administered by the Federal Highways Administration (see 49 U.S.C. § 5334(i)); projects that will receive an award authorized by the Transportation Infrastructure Finance and Innovation Act ("TIFIA") (23 U.S.C. §§ 601–609) or State Infrastructure Bank Program (23 U.S.C. § 610) (see 49 U.S.C. § 5323(o)); formula awards or competitive awards to urbanized areas under the Grants for Buses and Bus Facilities Program (49 U.S.C. § 5339(a) and (b)); or low or no emission awards to any area under the Grants for Buses and Bus Facilities Program (49 U.S.C. § 5339(c)), the applicant must make the following certification. This certification is required by 49 U.S.C. § 5307(c)(1).*

The applicant certifies that it:

(a)     Has or will have the legal, financial, and technical capacity to carry out the program of projects (developed pursuant 49 U.S.C. § 5307(b)), including safety and security aspects of the program;

(b)     Has or will have satisfactory continuing control over the use of equipment and facilities;

(c)     Will maintain equipment and facilities in accordance with the applicant's transit asset management plan;

(d)     Will ensure that, during non-peak hours for transportation using or involving a facility or equipment of a project financed under this section, a fare that is not more than 50 percent of the peak hour fare will be charged for any—

(1)     Senior;

(2)     Individual who, because of illness, injury, age, congenital malfunction, or any other incapacity or temporary or permanent disability (including an individual who is a wheelchair user or has semi-ambulatory capability), cannot use a public transportation service or a public transportation facility effectively without special facilities, planning, or design; and

(3)     Individual presenting a Medicare card issued to that individual under title II or XVIII of the Social Security Act (42 U.S.C. §§ 401 et seq., and 1395 et seq.);

(e)     In carrying out a procurement under 49 U.S.C. § 5307, will comply with 49 U.S.C. §§ 5323 (general provisions) and 5325 (contract requirements);

(f)     Has complied with 49 U.S.C. § 5307(b) (program of projects requirements);

(g)     Has available and will provide the required amounts as provided by 49 U.S.C. § 5307(d) (cost sharing);

(h)     Will comply with 49 U.S.C. §§ 5303 (metropolitan transportation planning) and 5304 (statewide and nonmetropolitan transportation planning);

(i)    Has a locally developed process to solicit and consider public comment before raising a fare or carrying out a major reduction of transportation;

(j)    Either—

    (1)    Will expend for each fiscal year for public transportation security projects, including increased lighting in or adjacent to a public transportation system (including bus stops, subway stations, parking lots, and garages), increased camera surveillance of an area in or adjacent to that system, providing an emergency telephone line to contact law enforcement or security personnel in an area in or adjacent to that system, and any other project intended to increase the security and safety of an existing or planned public transportation system, at least 1 percent of the amount the recipient receives for each fiscal year under 49 U.S.C. § 5336; or

    (2)    Has decided that the expenditure for security projects is not necessary;

(k)    In the case of an applicant for an urbanized area with a population of not fewer than 200,000 individuals, as determined by the Bureau of the Census, will submit an annual report listing projects carried out in the preceding fiscal year under 49 U.S.C. § 5307 for associated transit improvements as defined in 49 U.S.C. § 5302; and

(l)    Will comply with 49 U.S.C. § 5329(d) (public transportation agency safety plan).

### CATEGORY 8. FORMULA GRANTS FOR RURAL AREAS.

*If the applicant will apply for funds made available to it under the Formula Grants for Rural Areas Program (49 U.S.C. § 5311), it must make this certification. Paragraph (a) of this certification helps FTA make the determinations required by 49 U.S.C. § 5311(b)(2)(C). Paragraph (b) of this certification is required by 49 U.S.C. § 5311(f)(2). Paragraph (c) of this certification, which applies to funds apportioned for the Appalachian Development Public Transportation Assistance Program, is necessary to enforce the conditions of 49 U.S.C. § 5311(c)(2)(D).*

(a)    The applicant certifies that its State program for public transportation service projects, including agreements with private providers for public transportation service—

    (1)    Provides a fair distribution of amounts in the State, including Indian reservations; and

    (2)    Provides the maximum feasible coordination of public transportation service assisted under 49 U.S.C. § 5311 with transportation service assisted by other Federal sources; and

(b)    If the applicant will in any fiscal year expend less than 15% of the total amount made available to it under 49 U.S.C. § 5311 to carry out a program to develop and support intercity bus transportation, the applicant certifies that it has consulted with affected

intercity bus service providers, and the intercity bus service needs of the State are being met adequately.

(c)    If the applicant will use for a highway project amounts that cannot be used for operating expenses authorized under 49 U.S.C. § 5311(c)(2) (Appalachian Development Public Transportation Assistance Program), the applicant certifies that—

    (1)    It has approved the use in writing only after providing appropriate notice and an opportunity for comment and appeal to affected public transportation providers; and

    (2)    It has determined that otherwise eligible local transit needs are being addressed.

## CATEGORY 9. FIXED GUIDEWAY CAPITAL INVESTMENT GRANTS AND THE EXPEDITED PROJECT DELIVERY FOR CAPITAL INVESTMENT GRANTS PILOT PROGRAM.

*If the applicant will apply for an award under any subsection of the Fixed Guideway Capital Investment Program (49 U.S.C. § 5309), including an award made pursuant to the FAST Act's Expedited Project Delivery for Capital Investment Grants Pilot Program (Pub. L. 114-94, div. A, title III, § 3005(b)), the applicant must make the following certification. This certification is required by 49 U.S.C. § 5309(c)(2) and Pub. L. 114-94, div. A, title III, § 3005(b)(3)(B).*

The applicant certifies that it:

(a)    Has or will have the legal, financial, and technical capacity to carry out its Award, including the safety and security aspects of that Award,

(b)    Has or will have satisfactory continuing control over the use of equipment and facilities acquired or improved under its Award.

(c)    Will maintain equipment and facilities acquired or improved under its Award in accordance with its transit asset management plan; and

(d)    Will comply with 49 U.S.C. §§ 5303 (metropolitan transportation planning) and 5304 (statewide and nonmetropolitan transportation planning).

## CATEGORY 10. GRANTS FOR BUSES AND BUS FACILITIES AND LOW OR NO EMISSION VEHICLE DEPLOYMENT GRANT PROGRAMS.

*If the applicant is in an urbanized area and will apply for an award under subsection (a) (formula grants), subsection (b) (buses and bus facilities competitive grants), or subsection (c) (low or no emissions grants) of the Grants for Buses and Bus Facilities Program (49 U.S.C. § 5339), the applicant must make the certification in Category 7 for Urbanized Area Formula Grants (49 U.S.C. § 5307). This certification is required by 49 U.S.C. § 5339(a)(3), (b)(6), and (c)(3), respectively.*

*If the applicant is in a rural area and will apply for an award under subsection (a) (formula grants), subsection (b) (bus and bus facilities competitive grants), or subsection (c) (low or no emissions grants) of the Grants for Buses and Bus Facilities Program (49 U.S.C. § 5339), the applicant must make the certification in Category 8 for Formula Grants for Rural Areas (49 U.S.C. § 5311). This certification is required by 49 U.S.C. § 5339(a)(3), (b)(6), and (c)(3), respectively.*

*Making this certification will incorporate by reference the applicable certifications in Category 7 or Category 8.*

*If the applicant will receive a competitive award under subsection (b) (buses and bus facilities competitive grants), or subsection (c) (low or no emissions grants) of the Grants for Buses and Bus Facilities Program (49 U.S.C. § 5339) related to zero emissions vehicles or related infrastructure, it must make the following certification. This certification is required by 49 U.S.C. § 5339(d).*

The applicant will use 5 percent of grants related to zero emissions vehicles (as defined in  49 U.S.C. § 5339(c)(1)) or related infrastructure under 49 U.S.C. § 5339(b) or (c) to fund workforce development training as described in section 49 U.S.C. § 5314(b)(2) (including registered apprenticeships and other labor-management training programs) under the recipient's plan to address the impact of the transition to zero emission vehicles on the applicant's current workforce; or the applicant certifies a smaller percentage is necessary to carry out that plan.

## CATEGORY 11. ENHANCED MOBILITY OF SENIORS AND INDIVIDUALS WITH DISABILITIES PROGRAMS.

*If the applicant will apply for an award under the Formula Grants for the Enhanced Mobility of Seniors and Individuals with Disabilities Program (49 U.S.C. § 5310), it must make the certification in Category 7 for Urbanized Area Formula Grants (49 U.S.C. § 5307). This certification is required by 49 U.S.C. § 5310(e)(1). Making this certification will incorporate by reference the certification in Category 7, except that FTA has determined that (d), (f), (i), (j), and (k) of Category 7 do not apply to awards made under 49 U.S.C. § 5310 and will not be enforced.*

*In addition to the certification in Category 7, the applicant must make the following certification that is specific to the Formula Grants for the Enhanced Mobility of Seniors and Individuals with Disabilities Program. This certification is required by 49 U.S.C. § 5310(e)(2).*

The applicant certifies that:

(a)     The projects selected by the applicant are included in a locally developed, coordinated public transit-human services transportation plan;

(b)    The plan described in clause (a) was developed and approved through a process that included participation by seniors, individuals with disabilities, representatives of public, private, and nonprofit transportation and human services providers, and other members of the public;

(c)    To the maximum extent feasible, the services funded under 49 U.S.C. § 5310 will be coordinated with transportation services assisted by other Federal departments and agencies, including any transportation activities carried out by a recipient of a grant from the Department of Health and Human Services; and

(d)    If the applicant will allocate funds received under 49 U.S.C. § 5310 to subrecipients, it will do so on a fair and equitable basis.

## CATEGORY 12. STATE OF GOOD REPAIR GRANTS.

*If the applicant will apply for an award under FTA's State of Good Repair Grants Program (49 U.S.C. § 5337), it must make the following certification. Because FTA generally does not review the transit asset management plans of public transportation providers, the asset management certification is necessary to enforce the provisions of 49 U.S.C. § 5337(a)(4). The certification with regard to acquiring restricted rail rolling stock is required by 49 U.S.C. § 5323(u)(4). Note that this certification is not limited to the use of Federal funds.*

The applicant certifies that the projects it will carry out using assistance authorized by the State of Good Repair Grants Program, 49 U.S.C. § 5337, are aligned with the applicant's most recent transit asset management plan and are identified in the investment and prioritization section of such plan, consistent with the requirements of 49 CFR Part 625.

If the applicant operates a rail fixed guideway service, the applicant certifies that, in the fiscal year for which an award is available to the applicant under the State of Good Repair Grants Program, 49 U.S.C. § 5337, the applicant will not award any contract or subcontract for the procurement of rail rolling stock for use in public transportation with a rail rolling stock manufacturer described in 49 U.S.C. § 5323(u)(1).

## CATEGORY 13. INFRASTRUCTURE FINANCE PROGRAMS.

*If the applicant will apply for an award for a project that will include assistance under the Transportation Infrastructure Finance and Innovation Act ("TIFIA") Program (23 U.S.C. §§ 601–609) or the State Infrastructure Banks ("SIB") Program (23 U.S.C. § 610), it must make the certifications in Category 7 for the Urbanized Area Formula Grants Program, Category 9 for the Fixed Guideway Capital Investment Grants program, and Category 12 for the State of Good Repair Grants program. These certifications are required by 49 U.S.C. § 5323(o).*

*Making this certification will incorporate the certifications in Categories 7, 9, and 12 by reference.*

### CATEGORY 14. ALCOHOL AND CONTROLLED SUBSTANCES TESTING.

*If the applicant will apply for an award under FTA's Urbanized Area Formula Grants Program (49 U.S.C. § 5307), Fixed Guideway Capital Investment Program (49 U.S.C. § 5309), Formula Grants for Rural Areas Program (49 U.S.C. § 5311), or Grants for Buses and Bus Facilities Program (49 U.S.C. § 5339) programs, the applicant must make the following certification. The applicant must make this certification on its own behalf and on behalf of its subrecipients and contractors. This certification is required by 49 CFR § 655.83.*

The applicant certifies that it, its subrecipients, and its contractors are compliant with FTA's regulation for the Prevention of Alcohol Misuse and Prohibited Drug Use in Transit Operations, 49 CFR Part 655.

### CATEGORY 15. RAIL SAFETY TRAINING AND OVERSIGHT.

*If the applicant is a State with at least one rail fixed guideway system, or is a State Safety Oversight Agency, or operates a rail fixed guideway system, it must make the following certification. The elements of this certification are required by 49 CFR §§ 672.31 and 674.39.*

The applicant certifies that the rail fixed guideway public transportation system and the State Safety Oversight Agency for the State are:

(a)     Compliant with the requirements of 49 CFR Part 672, "Public Transportation Safety Certification Training Program"; and

(b)     Compliant with the requirements of 49 CFR Part 674, "Sate Safety Oversight".

### CATEGORY 16. DEMAND RESPONSIVE SERVICE.

*If the applicant operates demand responsive service and will apply for an award to purchase a non-rail vehicle that is not accessible within the meaning of 49 CFR Part 37, it must make the following certification. This certification is required by 49 CFR § 37.77.*

The applicant certifies that the service it provides to individuals with disabilities is equivalent to that provided to other persons. A demand responsive system, when viewed in its entirety, is deemed to provide equivalent service if the service available to individuals with disabilities, including individuals who use wheelchairs, is provided in the most integrated setting appropriate to the needs of the individual and is equivalent to the service provided other individuals with respect to the following service characteristics:

(a)     Response time;

(b)     Fares;

(c)     Geographic area of service;

(d)     Hours and days of service;

(e)      Restrictions or priorities based on trip purpose;

(f)      Availability of information and reservation capability; and

(g)      Any constraints on capacity or service availability.

## CATEGORY 17. INTEREST AND FINANCING COSTS.

*If the applicant will pay for interest or other financing costs of a project using assistance awarded under the Urbanized Area Formula Grants Program (49 U.S.C. § 5307), the Fixed Guideway Capital Investment Grants Program (49 U.S.C. § 5309), or any program that must comply with the requirements of 49 U.S.C. § 5307, including the Formula Grants for the Enhanced Mobility of Seniors Program (49 U.S.C. § 5310), "flex funds" from infrastructure programs administered by the Federal Highways Administration (see 49 U.S.C. § 5334(i)), or awards to urbanized areas under the Grants for Buses and Bus Facilities Program (49 U.S.C. § 5339), the applicant must make the following certification. This certification is required by 49 U.S.C. §§ 5307(e)(3) and 5309(k)(2)(D).*

The applicant certifies that:

(a)      Its application includes the cost of interest earned and payable on bonds issued by the applicant only to the extent proceeds of the bonds were or will be expended in carrying out the project identified in its application; and

(b)      The applicant has shown or will show reasonable diligence in seeking the most favorable financing terms available to the project at the time of borrowing.

## CATEGORY 18. CYBERSECURITY CERTIFICATION FOR RAIL ROLLING STOCK AND OPERATIONS.

*If the applicant operates a rail fixed guideway public transportation system, it must make this certification. This certification is required by 49 U.S.C. § 5323(v). For information about standards or practices that may apply to a rail fixed guideway public transportation system, visit* https://www.nist.gov/cyberframework *and* https://www.cisa.gov/.

The applicant certifies that it has established a process to develop, maintain, and execute a written plan for identifying and reducing cybersecurity risks that complies with the requirements of 49 U.S.C. § 5323(v)(2).

## CATEGORY 19. PUBLIC TRANSPORTATION ON INDIAN RESERVATIONS FORMULA AND DISCRETIONARY PROGRAM (TRIBAL TRANSIT PROGRAMS).

*Before FTA may provide Federal assistance for an Award financed under either the Public Transportation on Indian Reservations Formula or Discretionary Program authorized under 49 U.S.C. § 5311(c)(1), as amended by the FAST Act, (Tribal Transit Programs), the applicant*

*must select the Certifications in this Category, except as FTA determines otherwise in writing. Tribal Transit Program applicants may certify to this Category and Category 1 (Certifications and Assurances Required of Every Applicant) and need not make any other certification, to meet Tribal Transit Program certification requirements. If an applicant will apply for any program in addition to the Tribal Transit Program, additional certifications may be required.*

FTA has established terms and conditions for Tribal Transit Program grants financed with Federal assistance appropriated or made available under 49 U.S.C. § 5311(c)(1). The applicant certifies that:

(a) It has or will have the legal, financial, and technical capacity to carry out its Award, including the safety and security aspects of that Award.

(b) It has or will have satisfactory continuing control over the use of its equipment and facilities acquired or improved under its Award.

(c) It will maintain its equipment and facilities acquired or improved under its Award, in accordance with its transit asset management plan and consistent with FTA regulations, "Transit Asset Management," 49 CFR Part 625. Its Award will achieve maximum feasible coordination with transportation service financed by other federal sources.

(d) With respect to its procurement system:

    (1) It will have a procurement system that complies with U.S. DOT regulations, "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards," 2 CFR Part 1201, which incorporates by reference U.S. OMB regulatory guidance, "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards," 2 CFR Part 200, for Awards made on or after December 26, 2014,

    (2) It will have a procurement system that complies with U.S. DOT regulations, "Uniform Administrative Requirements for Grants and Cooperative Agreements to State and Local Governments," 49 CFR Part 18, specifically former 49 CFR § 18.36, for Awards made before December 26, 2014, or

    (3) It will inform FTA promptly if its procurement system does not comply with either of those U.S. DOT regulations.

(e) It will comply with the Certifications, Assurances, and Agreements in:

    (1) Category 4.1 and 4.2 (Charter Service Agreement and School Bus Agreement),

    (2) Category 5 (Transit Asset Management Plan),

    (3) Category 6.1 and 6.2 (Rolling Stock Buy America Reviews and Bus Testing),

    (4) Category 8 (Formula Grants for Rural Areas),

    (5) Category 14 (Alcohol and Controlled Substances Testing), and

    (6) Category 16 (Demand Responsive Service).

Certifications and Assurances                                    Fiscal Year 2025

## CATEGORY 20. EMERGENCY RELIEF PROGRAM.

*An applicant to the Public Transportation Emergency Relief Program, 49 U.S.C. § 5324, must make the following certification. The certification is required by 49 U.S.C. § 5324(f) and must be made before the applicant can receive a grant under the Emergency Relief program.*

The applicant certifies that the applicant has insurance required under State law for all structures related to the emergency relief program grant application.

## FEDERAL FISCAL YEAR 2025 CERTIFICATIONS AND ASSURANCES FOR FTA ASSISTANCE PROGRAMS

(Signature pages alternate to providing Certifications and Assurances in TrAMS.)

Name of Applicant: _____

The Applicant certifies to the applicable provisions of all categories: (*check here*) _____.

*Or*,

The Applicant certifies to the applicable provisions of the categories it has selected:

| Category | | Certification |
|---|---|---|
| 01 | Certifications and Assurances Required of Every Applicant | _____ |
| 02 | Public Transportation Agency Safety Plans | _____ |
| 03 | Tax Liability and Felony Convictions | _____ |
| 04 | Private Sector Protections | _____ |
| 05 | Transit Asset Management Plan | _____ |
| 06 | Rolling Stock Buy America Reviews and Bus Testing | _____ |
| 07 | Urbanized Area Formula Grants Program | _____ |
| 08 | Formula Grants for Rural Areas | _____ |
| 09 | Fixed Guideway Capital Investment Grants and the Expedited Project Delivery for Capital Investment Grants Pilot Program | _____ |
| 10 | Grants for Buses and Bus Facilities and Low or No Emission Vehicle Deployment Grant Programs | _____ |
| 11 | Enhanced Mobility of Seniors and Individuals with Disabilities Programs | _____ |

Certifications and Assurances                                      Fiscal Year 2025

| | | |
|---|---|---|
| 12 | State of Good Repair Grants | _____ |
| 13 | Infrastructure Finance Programs | _____ |
| 14 | Alcohol and Controlled Substances Testing | _____ |
| 15 | Rail Safety Training and Oversight | _____ |
| 16 | Demand Responsive Service | _____ |
| 17 | Interest and Financing Costs | _____ |
| 18 | Cybersecurity Certification for Rail Rolling Stock and Operations | _____ |
| 19 | Tribal Transit Programs | _____ |
| 20 | Emergency Relief Program | _____ |

## CERTIFICATIONS AND ASSURANCES SIGNATURE PAGE

### AFFIRMATION OF APPLICANT

Name of the Applicant: _____

BY SIGNING BELOW, on behalf of the Applicant, I declare that it has duly authorized me to make these Certifications and Assurances and bind its compliance. Thus, it agrees to comply with all federal laws, regulations, and requirements, follow applicable federal guidance, and comply with the Certifications and Assurances as indicated on the foregoing page applicable to each application its Authorized Representative makes to the Federal Transit Administration (FTA) in the federal fiscal year, irrespective of whether the individual that acted on his or her Applicant's behalf continues to represent it.

The Certifications and Assurances the Applicant selects apply to each Award for which it now seeks, or may seek in the future, of federal assistance to be awarded by FTA during the federal fiscal year.

The Applicant affirms the truthfulness and accuracy of the Certifications and Assurances it has selected in the statements submitted with this document and any other submission made to FTA, and acknowledges that the Program Fraud Civil Remedies Act of 1986, 31 U.S.C. § 3801 *et seq*., and implementing U.S. DOT regulations, "Program Fraud Civil Remedies," 49 CFR part 31, apply to any certification, assurance or submission made to FTA. The criminal provisions of 18 U.S.C. § 1001 apply to any certification, assurance, or submission made in connection with a federal public transportation program authorized by 49 U.S.C. chapter 53 or any other statute.

In signing this document, I declare under penalties of perjury that the foregoing Certifications and Assurances, and any other statements made by me on behalf of the Applicant are true and accurate.

Signature_____    Date: _____

Certifications and Assurances                                                    Fiscal Year 2025

Name_____ Authorized Representative of Applicant

### AFFIRMATION OF APPLICANT'S ATTORNEY

For (Name of Applicant): _____

As the undersigned Attorney for the above-named Applicant, I hereby affirm the Applicant has the authority under state, local, or tribal government law, as applicable, to make and comply with the Certifications and Assurances as indicated on the foregoing pages. I further affirm that, in my opinion, the Certifications and Assurances have been legally made and constitute legal and binding obligations on it.

I further affirm that, to the best of my knowledge, there is no legislation or litigation pending or imminent that might adversely affect the validity of these Certifications and Assurances, or of the performance of its FTA assisted Award.

Signature_____    Date: _____

Name_____ Attorney for Applicant

*Each Applicant for federal assistance to be awarded by FTA must provide an Affirmation of Applicant's Attorney pertaining to the Applicant's legal capacity. The Applicant may enter its electronic signature in lieu of the Attorney's signature within TrAMS, provided the Applicant has on file and uploaded to TrAMS this hard-copy Affirmation, signed by the attorney and dated this federal fiscal year.*

# EXHIBIT B

# MASTER AGREEMENT
## ADMINISTERING AGENCY-STATE AGREEMENT FOR
## FEDERAL-AID PROJECTS

| 03 | Sacramento County |
|----|-------------------|
| -------- | ---------------------------------------------- |
| District | Administering Agency |

Agreement No. 03-5924F15

This AGREEMENT, is entered into effective this _12 th_ day of _AUGUST_ , 20_16_ , by and between Sacramento County, hereinafter referred to as "ADMINISTERING AGENCY," and the State of California, acting by and through its Department of Transportation (Caltrans), hereinafter referred to as "STATE", and together referred to as "PARTIES" or individually as a "PARTY."

RECITALS:

1. WHEREAS,  the Congress of the United States  has enacted the  Intermodal Surface Transportation Efficiency Act (ISTEA) of 1991 and subsequent Transportation Authorization Bills to fund transportation programs; and

2. WHEREAS, the Legislature of the State of California has enacted legislation by which certain federal-aid funds may be made available for use on local transportation related projects of public entities qualified to act as recipients of these federal-aid funds in accordance with the intent of federal law; and

3. WHEREAS, before federal funds will be made available for a specific program project, ADMINISTERING AGENCY and STATE are required to enter into an agreement to establish terms and conditions applicable to the ADMINISTERING AGENCY when receiving federal funds for a designated PROJECT facility and to the subsequent operation and maintenance of that completed facility.

NOW, THEREFORE, the PARTIES agree as follows:

## ARTICLE I - PROJECT ADMINISTRATION

1. This AGREEMENT shall have no force or effect with respect to any program project unless and until a project-specific "Authorization/Agreement Summary", herein referred to as "E-76" document, is approved by STATE and the Federal Highway Administration (FHWA).

2. The term "PROJECT", as used herein, means that authorized transportation related project and related activities financed in part with federal-aid funds as more fully-described in an "Authorization/ Agreement Summary" or "Amendment/Modification Summary", herein referred to as "E-76" or "E-76 (AMOD)" document authorized by STATE and the Federal Highway Administration (FHWA).

3. The E-76/E-76 (AMOD) shall designate the party responsible for implementing PROJECT, type of work and location of PROJECT.

4. The PROGRAM SUPPLEMENT sets out special covenants as a condition for the ADMINISTERING AGENCY to receive federal-aid funds from/through STATE for designated PROJECT. The PROGRAM SUPPLEMENT shall also show these federal funds that have been initially encumbered for PROJECT along with the matching funds to be provided by ADMINISTERING AGENCY and/or others. Execution of PROGRAM SUPPLEMENT by the PARTIES shall cause ADMINISTERING AGENCY to adopt all of the terms of this AGREEMENT as though fully set forth therein in the PROGRAM SUPPLEMENT. Unless otherwise expressly delegated in a resolution by the governing body of ADMINISTERING AGENCY, and with written concurrence by STATE, the PROGRAM SUPPLEMENT shall be approved and managed by the governing body of ADMINISTERING AGENCY.

5. ADMINISTERING AGENCY agrees to execute and return each project-specific PROGRAM SUPPLEMENT within ninety (90) days of receipt. The PARTIES agree that STATE may suspend future authorizations/obligations and invoice payments for any on-going or future federal-aid project performed by ADMINISTERING AGENCY if any project-specific PROGRAM SUPPLEMENT is not returned within that ninety (90) day period unless otherwise agreed by STATE in writing.

6. ADMINISTERING AGENCY further agrees, as a condition to the release and payment of federal funds encumbered for the PROJECT described in each PROGRAM SUPPLEMENT, to comply with the terms and conditions of this AGREEMENT and all of the agreed-upon Special Covenants or Remarks incorporated within the PROGRAM SUPPLEMENT, and Cooperative/Contribution Agreement where appropriate, defining and identifying the nature of the specific PROJECT.

7. Federal, state and matching funds will not participate in PROJECT work performed in advance of the approval of the E-76 or E-76 (AMOD), unless otherwise stated in the executed project-specific PROGRAM SUPPLEMENT. ADMINISTERING AGENCY agrees that it will only proceed with the work authorized for that specific phase(s) on the project-specific E-76 or E-76 (AMOD). ADMINISTERING AGENCY further agrees to not proceed with future phases of PROJECT prior to receiving an E-76 (AMOD) from STATE for that phase(s) unless no further federal funds are needed or for those future phase(s).

8. That PROJECT or portions thereof, must be included in a federally approved Federal Statewide Transportation Improvement Program (FSTIP) prior to ADMINISTERING AGENCY submitting the "Request for Authorization".

9. ADMINISTERING AGENCY shall conform to all state statutes, regulations and procedures (including those set forth in the Local Assistance Procedures Manual and the Local Assistance Program Guidelines, hereafter collectively referred to as "LOCAL ASSISTANCE PROCEDURES") relating to the federal-aid program, all Title 23 Code of Federal Regulation (CFR) and 2 CFR part 200 federal requirements, and all applicable federal laws, regulations, and policy and procedural or instructional memoranda, unless otherwise specifically waived as designated in the executed project-specific PROGRAM SUPPLEMENT.

10. If PROJECT is not on STATE-owned right of way, PROJECT shall be constructed in accordance with LOCAL ASSISTANCE PROCEDURES that describes minimum statewide design standards for local agency streets and roads. LOCAL ASSISTANCE PROCEDURES for projects off the National Highway System (NHS) allow STATE to accept either the STATE's minimum statewide design standards or the approved geometric design standards of ADMINISTERING AGENCY. Additionally, for projects off the NHS, STATE will accept ADMINISTERING AGENCY-approved standard specifications, standard plans, materials sampling and testing quality assurance programs that meet the conditions described in the then current LOCAL ASSISTANCE PROCEDURES.

11. If PROJECT involves work within or partially within STATE-owned right-of-way, that PROJECT shall also be subject to compliance with the policies, procedures and standards of the STATE Project Development Procedures Manual and Highway Design Manual and, where appropriate, an executed Cooperative Agreement between STATE and ADMINISTERING AGENCY that outlines the PROJECT responsibilities and respective obligations of the PARTIES. ADMINISTERING AGENCY and its contractors shall each obtain an encroachment permit through STATE prior to commencing any work within STATE rights of way or work which affects STATE facilities.

12. When PROJECT is not on the State Highway System but includes work to be performed by a railroad, the contract for such work shall be prepared by ADMINISTERING AGENCY or by STATE, as the PARTIES may hereafter agree. In either event, ADMINISTERING AGENCY shall enter into an agreement with the railroad providing for future maintenance of protective devices or other facilities installed under the contract.

13. If PROJECT is using STATE funds, the Department of General Services, Division of the State Architect, or its designee, shall review the contract PS&E for the construction of buildings, structures, sidewalks, curbs and related facilities for accessibility and usability. ADMINISTERING AGENCY shall not award a PROJECT construction contract for these types of improvements until the State Architect has issued written approval stating that the PROJECT plans and specifications comply with the provisions of sections 4450 and 4454 of the California Government Code, if applicable. Further requirements and guidance are provided in Title 24 of the California Code of Regulations.

14. ADMINISTERING AGENCY will advertise, award and administer PROJECT in accordance with the current LOCAL ASSISTANCE PROCEDURES unless otherwise stated in the executed project-specific PROGRAM SUPPLEMENT.

15. ADMINISTERING AGENCY shall provide or arrange for adequate supervision and inspection of each PROJECT. While consultants may perform supervision and inspection work for PROJECT with a fully qualified and licensed engineer, ADMINISTERING AGENCY shall provide a full-time employee to be in responsible charge of each PROJECT who is not a consultant.

16. ADMINISTERING AGENCY shall submit PROJECT-specific contract award documents to STATE's District Local Assistance Engineer within sixty (60) days after contract award. A copy of the award documents shall also be included with the submittal of the first invoice for a construction contract by ADMINISTERING AGENCY.

17. ADMINISTERING AGENCY shall submit the final report documents that collectively constitute a "Report of Expenditures" within one hundred eighty (180) days of PROJECT completion. Failure by ADMINISTERING AGENCY to submit a "Report of Expenditures" within one hundred eighty (180) days of project completion will result in STATE imposing sanctions upon ADMINISTERING AGENCY in accordance with the current LOCAL ASSISTANCE PROCEDURES.

18. ADMINISTERING AGENCY shall comply with: (i) section 504 of the Rehabilitation Act of 1973 which prohibits discrimination on the basis of disability in federally assisted programs; (ii) the Americans with Disabilities Act (ADA) of 1990 which prohibits discrimination on the basis of disability irrespective of funding; and (iii) all applicable regulations and guidelines issued pursuant to both the Rehabilitation Act and the ADA.

19. The Congress of the United States, the Legislature of the State of California and the Governor of the State of California, each within their respective jurisdictions, have prescribed certain nondiscrimination requirements with respect to contract and other work financed with public funds. ADMINISTERING AGENCY agrees to comply with the requirements of the FAIR EMPLOYMENT PRACTICES ADDENDUM (Exhibit A attached hereto) and the NONDISCRIMINATION ASSURANCES (Exhibit B attached hereto). ADMINISTERING AGENCY further agrees that any agreement entered into by ADMINISTERING AGENCY with a third party for performance of PROJECT-related work shall incorporate Exhibits A and B (with third party's name replacing ADMINISTERING AGENCY) as essential parts of such agreement to be enforced by that third party as verified by ADMINISTERING AGENCY.

## ARTICLE II - RIGHTS OF WAY

1. No contract for the construction of a federal-aid PROJECT shall be awarded until all necessary rights of way have been secured. Prior to the advertising for construction of PROJECT, ADMINISTERING AGENCY shall certify and, upon request, shall furnish STATE with evidence that all necessary rights of way are available for construction purposes or will be available by the time of award of the construction contract.

2. ADMINISTERING AGENCY agrees to indemnify and hold STATE harmless from any liability that may result in the event the right of way for a PROJECT, including, but not limited to, being clear as certified or if said right of way is found to contain hazardous materials requiring treatment or removal to remediate in accordance with Federal and State laws. The furnishing of right of way as provided for herein includes, in addition to all real property required for the PROJECT, title free and clear of obstructions and encumbrances affecting PROJECT and the payment, as required by applicable law, of relocation costs and damages to remainder real property not actually taken but injuriously affected by PROJECT. ADMINISTERING AGENCY shall pay, from its own non-matching funds, any costs which arise out of delays to the construction of PROJECT because utility facilities have not been timely removed or relocated, or because rights of way were not available to ADMINISTERING AGENCY for the orderly prosecution of PROJECT work.

3. Subject to STATE approval and such supervision as is required by LOCAL ASSISTANCE PROCEDURES over ADMINISTERING AGENCY's right of way acquisition procedures, ADMINISTERING AGENCY may claim reimbursement from federal funds for expenditures incurred in purchasing only the necessary rights of way needed for the PROJECT after crediting PROJECT with the fair market value of any excess property retained and not disposed of by ADMINISTERING AGENCY.

4. When real property rights are to be acquired by ADMINISTERING AGENCY for a PROJECT, said ADMINISTERING AGENCY must carry out that acquisition in compliance with all applicable State and Federal laws and regulations, in accordance with State procedures as published in State's current LOCAL ASSISTANCE PROCEDURES and STATE's Right-of-Way Manual, subject to STATE oversight to ensure that the completed work is acceptable under the Federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, as amended.

5. Whether or not federal-aid is to be requested for right of way, should ADMINISTERING AGENCY, in acquiring right of way for PROJECT, displace an individual, family, business, farm operation, or non-profit organization, relocation payments and services will be provided as set forth in 49 CFR, Part 24. The public will be adequately informed of the relocation payments and services which will be available, and, to the greatest extent practicable, no person lawfully occupying real property shall be required to move from his/her dwelling or to move his/her business or farm operation without at least ninety (90) days written notice from ADMINISTERING AGENCY. ADMINISTERING AGENCY will provide STATE with specific assurances, on each portion of the PROJECT, that no person will be displaced until comparable decent, safe and sanitary replacement housing is available within a reasonable period of time prior to displacement, and that ADMINISTERING AGENCY's relocation program is realistic and adequate to provide orderly, timely and efficient relocation of PROJECT-displaced persons as provided in 49 CFR, Part 24.

6. ADMINISTERING AGENCY shall, along with recording the deed or instrument evidencing title in the name of the ADMINISTERING AGENCY or their assignee, also record an Agreement Declaring Restrictive Covenants (ADRC) as a separate document incorporating the assurances included within Exhibits A and B and Appendices A, B, C and D of this AGREEMENT, as appropriate.

## ARTICLE III - MAINTENANCE AND MANAGEMENT

1. ADMINISTERING AGENCY will maintain and operate the property acquired, developed, constructed, rehabilitated, or restored by PROJECT for its intended public use until such time as the parties might amend this AGREEMENT to otherwise provide. With the approval of STATE, ADMINISTERING AGENCY or its successors in interest in the PROJECT property may transfer this obligation and responsibility to maintain and operate PROJECT property for that intended public purpose to another public entity.

2. Upon ADMINISTERING AGENCY's acceptance of the completed federal-aid construction contract or upon contractor being relieved of the responsibility for maintaining and protecting PROJECT, ADMINISTERING AGENCY will be responsible for the maintenance, ownership, liability, and the expense thereof, for PROJECT in a manner satisfactory to the authorized representatives of STATE and FHWA and if PROJECT falls within the jurisdictional limits of another Agency or Agencies, it is the duty of ADMINISTERING AGENCY to facilitate a separate maintenance agreement(s) between itself and the other jurisdictional Agency or Agencies providing for the operation, maintenance, ownership and liability of PROJECT. Until those agreements are executed, ADMINISTERING AGENCY will be responsible for all PROJECT operations, maintenance, ownership and liability in a manner satisfactory to the authorized representatives of STATE and FHWA. If, within ninety (90) days after receipt of notice from STATE that a PROJECT, or any portion thereof, is not being properly operated and maintained and ADMINISTERING AGENCY has not satisfactorily remedied the conditions complained of, the approval of future federal-aid projects of ADMINISTERING AGENCY will be withheld until the PROJECT shall have been put in a condition of operation and maintenance satisfactory to STATE and FHWA. The provisions of this section shall not apply to a PROJECT that has been vacated through due process of law with STATE's concurrence.

3. PROJECT and its facilities shall be maintained by an adequate and well-trained staff of engineers and/or such other professionals and technicians as PROJECT reasonably requires. Said operations and maintenance staff may be employees of ADMINISTERING AGENCY, another unit of government, or a contractor under agreement with ADMINISTERING AGENCY. All maintenance will be performed at regular intervals or as required for efficient operation of the complete PROJECT improvements.

## ARTICLE IV - FISCAL PROVISIONS

1. All contractual obligations of STATE are subject to the appropriation of resources by the Legislature and the allocation of resources by the California Transportation Commission (CTC).

2. STATE'S financial commitment of federal funds will occur only upon the execution of this AGREEMENT, the authorization of the project-specific E-76 or E-76 (AMOD), the execution of each project-specific PROGRAM SUPPLEMENT, and STATE's approved finance letter.

3. ADMINISTERING AGENCY may submit signed invoices in arrears for reimbursement of participating PROJECT costs on a regular basis once the project-specific PROGRAM SUPPLEMENT has been executed by STATE.

4. ADMINISTERING AGENCY agrees, as a minimum, to submit invoices at least once every six (6) months commencing after the funds are encumbered on either the project-specific PROGRAM SUPPLEMENT or through a project-specific finance letter approved by STATE. STATE reserves the right to suspend future authorizations/obligations, and invoice payments for any on-going or future federal-aid project by ADMINISTERING AGENCY if PROJECT costs have not been invoiced by ADMINISTERING AGENCY for a six (6) month period.

5. Invoices shall be submitted on ADMINISTERING AGENCY letterhead that includes the address of ADMINISTERING AGENCY and shall be formatted in accordance with LOCAL ASSISTANCE PROCEDURES.

6. ADMINISTERING AGENCY must have at least one copy of supporting backup documentation for costs incurred and claimed for reimbursement by ADMINISTERING AGENCY. ADMINISTERING AGENCY agrees to submit supporting backup documentation with invoices if requested by State. Acceptable backup documentation includes, but is not limited to, agency's progress payment to the contractors, copies of cancelled checks showing amounts made payable to vendors and contractors, and/or a computerized summary of PROJECT costs.

7. Payments to ADMINISTERING AGENCY can only be released by STATE as reimbursement of actual allowable PROJECT costs already incurred and paid for by ADMINISTERING AGENCY.

8. Indirect Cost Allocation Plans/Indirect Cost Rate Proposals (ICAP/ICRP), Central Service Cost Allocation Plans and related documentation are to be prepared and provided to STATE (Caltrans Audits & Investigations) for review and approval prior to ADMINISTERING AGENCY seeking reimbursement of indirect costs incurred within each fiscal year being claimed for State and federal reimbursement. ICAPs/ICRPs must be prepared in accordance with the requirements set forth in 2 CFR, Part 200, Chapter 5 of the Local Assistance Procedural Manual, and the ICAP/ICRP approval procedures established by STATE.

9. Once PROJECT has been awarded, STATE reserves the right to de-obligate any excess federal funds from the construction phase of PROJECT if the contract award amount is less than the obligated amount, as shown on the PROJECT E-76 or E-76 (AMOD).

10. STATE will withhold the greater of either two (2) percent of the total of all federal funds encumbered for each PROGRAM SUPPLEMENT or $40,000 until ADMINISTERING AGENCY submits the Final Report of Expenditures for each completed PROGRAM SUPPLEMENT PROJECT.

11. The estimated total cost of PROJECT, the amount of federal funds obligated, and the required matching funds may be adjusted by mutual consent of the PARTIES hereto with a finance letter, a detailed estimate, if required, and approved E-76 (AMOD). Federal-aid funding may be increased to cover PROJECT cost increases only if such funds are available and FHWA concurs with that increase.

12. When additional federal-aid funds are not available, ADMINISTERING AGENCY agrees that the payment of federal funds will be limited to the amounts authorized on the PROJECT specific E-76 / E-76 (AMOD) and agrees that any increases in PROJECT costs must be defrayed with ADMINISTERING AGENCY's own funds.

13. ADMINISTERING AGENCY shall use its own non-federal funds to finance the local share of eligible costs and all expenditures or contract items ruled ineligible for financing with federal funds. STATE shall make the determination of ADMINISTERING AGENCY's cost eligibility for federal fund financing of PROJECT costs.

14. ADMINISTERING AGENCY will reimburse STATE for STATE's share of costs for work performed by STATE at the request of ADMINISTERING AGENCY. STATE's costs shall include overhead assessments in accordance with section 8755.1 of the State Administrative Manual.

15. Federal and state funds allocated from the State Transportation Improvement Program (STIP) are subject to the timely use of funds provisions enacted by Senate Bill 45, approved in 1997, and subsequent STIP Guidelines and State procedures approved by the CTC and STATE.

16. Federal funds encumbered for PROJECT are available for liquidation for a period of six (6) years from the beginning of the State fiscal year the funds were appropriated in the State Budget. State funds encumbered for PROJECT are available for liquidation only for six (6) years from the beginning of the State fiscal year the funds were appropriated in the State Budget. Federal or state funds not liquidated within these periods will be reverted unless a Cooperative Work Agreement (CWA) is submitted by ADMINISTERING AGENCY and approved by the California Department of Finance (per Government Code section 16304). The exact date of fund reversion will be reflected in the STATE signed finance letter for PROJECT.

17. Payments to ADMINISTERING AGENCY for PROJECT-related travel and subsistence (per diem) expenses of ADMINISTERING AGENCY forces and its contractors and subcontractors claimed for reimbursement or as local match credit shall not exceed rates authorized to be paid rank and file STATE employees under current State Department of Personnel Administration (DPA) rules. If the rates invoiced by ADMINISTERING AGENCY are in excess of DPA rates, ADMINISTERING AGENCY is responsible for the cost difference, and any overpayments inadvertently paid by STATE shall be reimbursed to STATE by ADMINISTERING AGENCY on demand within thirty (30) days of such invoice.

18. ADMINISTERING AGENCY agrees to comply with 2 CFR, Part 200, Uniform Administrative Requirements, Cost Principles and Audit Requirement for Federal Awards.

19. ADMINISTERING AGENCY agrees, and will assure that its contractors and subcontractors will be obligated to agree, that Contract Cost Principles and Procedures, 48 CFR, Federal Acquisition Regulations System, Chapter 1, Part 31, et seq., shall be used to determine the allowability of individual PROJECT cost items.

20. Every sub-recipient receiving PROJECT funds under this AGREEMENT shall comply with 2 CFR, Part 200, 23 CFR, 48 CFR Chapter 1, Part 31, Local Assistance Procedures, Public Contract Code (PCC) 10300-10334 (procurement of goods), PCC 10335-10381 (non-A&E services), and other applicable STATE and FEDERAL regulations.

21. Any PROJECT costs for which ADMINISTERING AGENCY has received payment or credit that are determined by subsequent audit to be unallowable under 2 CFR, Part 200, 23 CFR, 48 CFR, Chapter 1, Part 31, and other applicable STATE and FEDERAL regulations, are subject to repayment by ADMINISTERING AGENCY to STATE.

22. Should ADMINISTERING AGENCY fail to refund any moneys due upon written demand by STATE as provided hereunder or should ADMINISTERING AGENCY breach this AGREEMENT by failing to complete PROJECT without adequate justification and approval by STATE, then, within thirty 30 days of demand, or within such other period as may be agreed to in writing between the PARTIES, STATE, acting through the State Controller, the State Treasurer, or any other public entity or agency, may withhold or demand a transfer of an amount equal to the amount paid by or owed to STATE from future apportionments, or any other funds due ADMINISTERING AGENCY from the Highway Users Tax Fund or any other sources of funds, and/or may withhold approval of future ADMINISTERING AGENCY federal-aid projects.

23. Should ADMINISTERING AGENCY be declared to be in breach of this AGREEMENT or otherwise in default thereof by STATE, and if ADMINISTERING AGENCY is constituted as a joint powers authority, special district, or any other public entity not directly receiving funds through the State Controller, STATE is authorized to obtain reimbursement from whatever sources of funding are available, including the withholding or transfer of funds, pursuant to Article IV - 22, from those constituent entities comprising a joint powers authority or by bringing of an action against ADMINISTERING AGENCY or its constituent member entities, to recover all funds provided by STATE hereunder.

24. ADMINISTERING AGENCY acknowledges that the signatory party represents the ADMINISTERING AGENCY and further warrants that there is nothing within a Joint Powers Agreement, by which ADMINISTERING AGENCY was created, if any exists, that would restrict or otherwise limit STATE's ability to recover State funds improperly spent by ADMINISTERING AGENCY in contravention of the terms of this AGREEMENT.

## ARTICLE V
## AUDITS, THIRD PARTY CONTRACTING, RECORDS RETENTION AND REPORTS

1. STATE reserves the right to conduct technical and financial audits of PROJECT work and records and ADMINISTERING AGENCY agrees, and shall require its contractors and subcontractors to agree, to cooperate with STATE by making all appropriate and relevant PROJECT records available for audit and copying as required by paragraph three (3) of ARTICLE V.

2. ADMINISTERING AGENCY, its contractors and subcontractors shall establish and maintain a financial management system and records that properly accumulate and segregate reasonable, allowable, and allocable incurred PROJECT costs and matching funds by line item for the PROJECT. The financial management system of ADMINISTERING AGENCY, its contractors and all subcontractors shall conform to Generally Accepted Accounting Principles, enable the determination of incurred costs at interim points of completion, and provide support for reimbursement payment vouchers or invoices sent to or paid by STATE.

3. ADMINISTERING AGENCY, ADMINISTERING AGENCY's contractors and subcontractors, and STATE shall each maintain and make available for inspection and audit by STATE, the California State Auditor, or any duly authorized representative of STATE or the United States all books, documents, papers, accounting records, and other evidence pertaining to the performance of such contracts, including, but not limited to, the costs of administering those various contracts and ADMINISTERING AGENCY shall furnish copies thereof if requested. All of the above referenced parties shall make such AGREEMENT, PROGRAM SUPPLEMENT and contract materials available at their respective offices at all reasonable times during the entire PROJECT period and for three (3) years from the date of submission of the final expenditure report by the STATE to the FHWA.

4. ADMINISTERING AGENCY is required to have an audit in accordance with the Single Audit Act of 2 CFR 200 if it expends $750,000 or more in Federal Funds in a single fiscal year. The Federal Funds received under a PROGRAM SUPPLEMENT are a part of the Catalogue of Federal Domestic Assistance (CFDA) 20.205.

5. ADMINISTERING AGENCY agrees to include all PROGRAM SUPPLEMENTS adopting the terms of this AGREEMENT in the schedule of projects to be examined in ADMINISTERING AGENCY's annual audit and in the schedule of projects to be examined under its single audit prepared in accordance with 2 CFR, Part 200.

6. ADMINISTERING AGENCY shall not award a non-A&E contract over $5,000, construction contract over $10,000, or other contracts over $25,000 (excluding professional service contracts of the type which are required to be procured in accordance with Government Code sections 4525 (d), (e) and (f)) on the basis of a noncompetitive negotiation for work to be performed under this AGREEMENT without the prior written approval of STATE. Contracts awarded by ADMINISTERING AGENCY, if intended as local match credit, must meet the requirements set forth in this AGREEMENT regarding local match funds.

7. Any subcontract entered into by ADMINISTERING AGENCY as a result of this AGREEMENT shall contain provisions 5, 6, 17, 19 and 20 of ARTICLE IV, FISCAL PROVISIONS, and provisions 1, 2, and 3 of this ARTICLE V, AUDITS, THIRD-PARTY CONTRACTING RECORDS RETENTION AND REPORTS.

8. To be eligible for local match credit, ADMINISTERING AGENCY must ensure that local match funds used for a PROJECT meet the fiscal provisions requirements outlined in ARTICLE IV in the same manner as required of all other PROJECT expenditures.

9. In addition to the above, the pre-award requirements of third-party contractor/consultants with ADMINISTERING AGENCY should be consistent with the LOCAL ASSISTANCE PROCEDURES.

## ARTICLE VI - FEDERAL LOBBYING ACTIVITIES CERTIFICATION

1. By execution of this AGREEMENT, ADMINISTERING AGENCY certifies, to the best of the signatory officer's knowledge and belief, that:

A. No federal or state appropriated funds have been paid or will be paid, by or on behalf of ADMINISTERING AGENCY, to any person for influencing or attempting to influence an officer or employee of any STATE or federal agency, a member of the State Legislature or United States Congress, an officer or employee of the Legislature or Congress, or any employee of a Member of the Legislature or Congress in connection with the awarding of any STATE or federal contract, including this AGREEMENT, the making of any STATE or federal loan, the entering into of any cooperative contract, and the extension, continuation, renewal, amendment, or modification of any STATE or federal contract, grant, loan, or cooperative contract.

B. If any funds other than federal appropriated funds have been paid, or will be paid, to any person for influencing or attempting to influence an officer or employee of any federal agency, a member of Congress, an officer or employee of Congress or an employee of a member of Congress in connection with this AGREEMENT, grant, local, or cooperative contract, ADMINISTERING AGENCY shall complete and submit Standard Form-LLL, "Disclosure Form to Rep Lobbying," in accordance with the form instructions.

C. This certification is a material representation of fact upon which reliance was placed when this AGREEMENT and each PROGRAM SUPPLEMENT was or will be made or entered into. Submission of this certification is a prerequisite for making or entering into this AGREEMENT imposed by Section 1352, Title 31, United States Code. Any party who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

2. ADMINISTERING AGENCY also agrees by signing this AGREEMENT that the language of this certification will be included in all lower tier sub-agreements which exceed $100,000 and that all such sub-recipients shall certify and disclose accordingly.

Docusign Envelope ID: 730E8EC1-F060-43F8-97F2-68G849FB1A7E

1. ADMINISTERING AGENCY agrees to use all state funds reimbursed hereunder only for transportation purposes that are in conformance with Article XIX of the California State Constitution and the relevant Federal Regulations.

2. This AGREEMENT is subject to any additional restrictions, limitations, conditions, or any statute enacted by the State Legislature or adopted by the CTC that may affect the provisions, terms, or funding of this AGREEMENT in any manner.

3. ADMINISTERING AGENCY and the officers and employees of ADMINISTERING AGENCY, when engaged in the performance of this AGREEMENT, shall act in an independent capacity and not as officers, employees or agents of STATE or the federal government.

4. Each project-specific E-76 or E-76 (AMOD), PROGRAM SUPPLEMENT and Finance Letter shall separately establish the terms and funding limits for each described PROJECT funded under the AGREEMENT. No federal or state funds are obligated against this AGREEMENT.

5. ADMINISTERING AGENCY certifies that neither ADMINISTERING AGENCY nor its principals are suspended or debarred at the time of the execution of this AGREEMENT. ADMINISTERING AGENCY agrees that it will notify STATE immediately in the event a suspension or a debarment occurs after the execution of this AGREEMENT.

6. ADMINISTERING AGENCY warrants, by execution of this AGREEMENT, that no person or selling agency has been employed or retained to solicit or secure this AGREEMENT upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by ADMINISTERING AGENCY for the purpose of securing business. For breach or violation of this warranty, STATE has the right to annul this AGREEMENT without liability, pay only for the value of the work actually performed, or in STATE's discretion, to deduct from the price of consideration, or otherwise recover, the full amount of such commission, percentage, brokerage, or contingent fee.

7. In accordance with Public Contract Code section 10296, ADMINISTERING AGENCY hereby certifies under penalty of perjury that no more than one final unappealable finding of contempt of court by a federal court has been issued against ADMINISTERING AGENCY within the immediate preceding two (2) year period because of ADMINISTERING AGENCY's failure to comply with an order of a federal court that orders ADMINISTERING AGENCY to comply with an order of the National Labor Relations Board.

8. ADMINISTERING AGENCY shall disclose any financial, business, or other relationship with STATE, FHWA or Federal Transit Administration (FTA) that may have an impact upon the outcome of this AGREEMENT. ADMINISTERING AGENCY shall also list current contractors who may have a financial interest in the outcome of this AGREEMENT.

9. ADMINISTERING AGENCY hereby certifies that it does not have nor shall it acquire any financial or business interest that would conflict with the performance of PROJECT under this AGREEMENT.

10. ADMINISTERING AGENCY warrants that this AGREEMENT was not obtained or secured through rebates, kickbacks or other unlawful consideration either promised or paid to any STATE employee. For breach or violation of this warranty, STATE shall have the right, in its discretion, to terminate this AGREEMENT without liability, to pay only for the work actually performed, or to deduct from the PROGRAM SUPPLEMENT price or otherwise recover the full amount of such rebate, kickback, or other unlawful consideration.

11. Any dispute concerning a question of fact arising under this AGREEMENT that is not disposed of by agreement shall be decided by the STATE's Contract Officer who may consider any written or verbal evidence submitted by ADMINISTERING AGENCY. The decision of the Contract Officer, issued in writing, shall be conclusive and binding on the PARTIES on all questions of fact considered and determined by the Contract Officer.

12. Neither the pending of a dispute nor its consideration by the Contract Officer will excuse ADMINISTERING AGENCY from full and timely performance in accordance with the terms of this AGREEMENT.

13. Neither ADMINISTERING AGENCY nor any officer or employee thereof is responsible for any injury, damage or liability occurring by reason of anything done or omitted to be done by STATE, under or in connection with any work, authority or jurisdiction arising under this AGREEMENT. It is understood and agreed that STATE shall fully defend, indemnify and save harmless the ADMINISTERING AGENCY and all of its officers and employees from all claims, suits or actions of every name, kind and description brought forth under, including, but not limited to, tortious, contractual, inverse condemnation and other theories or assertions of liability occurring by reason of anything done or omitted to be done by STATE under this AGREEMENT.

14. Neither STATE nor any officer or employee thereof shall be responsible for any injury, damage or liability occurring by reason of anything done or omitted to be done by ADMINISTERING AGENCY under, or in connection with, any work, authority or jurisdiction arising under this AGREEMENT. It is understood and agreed that ADMINISTERING AGENCY shall fully defend, indemnify and save harmless STATE and all of its officers and employees from all claims, suits or actions of every name, kind and description brought forth under, including, but not limited to, tortious, contractual, inverse condemnation or other theories or assertions of liability occurring by reason of anything done or omitted to be done by ADMINISTERING AGENCY under this AGREEMENT.

15. STATE reserves the right to terminate funding for any PROJECT upon written notice to ADMINISTERING AGENCY in the event that ADMINISTERING AGENCY fails to proceed with PROJECT work in accordance with the project-specific PROGRAM SUPPLEMENT, the bonding requirements if applicable, or otherwise violates the conditions of this AGREEMENT and/or PROGRAM SUPPLEMENT, or the funding allocation such that substantial performance is significantly endangered.

16. No termination shall become effective if, within thirty (30) days after receipt of a Notice of Termination, ADMINISTERING AGENCY either cures the default involved or, if not reasonably susceptible of cure within said thirty (30) day period, ADMINISTERING AGENCY proceeds thereafter to complete the cure in a manner and time line acceptable to STATE. Any such termination shall be accomplished by delivery to ADMINISTERING AGENCY of a Notice of Termination, which notice shall become effective not less than thirty (30) days after receipt, specifying the reason for the termination, the extent to which funding of work under this AGREEMENT is terminated and the date upon which such termination becomes effective, if beyond thirty (30) days after receipt. During the period before the effective termination date, ADMINISTERING AGENCY and STATE shall meet to attempt to resolve any dispute. In the event of such termination, STATE may proceed with the PROJECT work in a manner deemed proper by STATE. If STATE terminates funding for PROJECT with ADMINISTERING AGENCY, STATE shall pay ADMINISTERING AGENCY the sum due ADMINISTERING AGENCY under the PROGRAM SUPPLEMENT and/or STATE approved finance letter prior to termination, provided, however, ADMINISTERING AGENCY is not in default of the terms and conditions of this AGREEMENT or the project-specific PROGRAM SUPPLEMENT and that the cost of PROJECT completion to STATE shall first be deducted from any sum due ADMINISTERING AGENCY.

17. In case of inconsistency or conflicts with the terms of this AGREEMENT and that of a project-specific PROGRAM SUPPLEMENT, the terms stated in that PROGRAM SUPPLEMENT shall prevail over those in this AGREEMENT.

18. Without the written consent of STATE, this AGREEMENT is not assignable by ADMINISTERING AGENCY either in whole or in part.

19. No alteration or variation of the terms of this AGREEMENT shall be valid unless made in writing and signed by the PARTIES, and no oral understanding or agreement not incorporated herein shall be binding on any of the PARTIES.

IN WITNESS WHEREOF, the PARTIES have executed this AGREEMENT by their duly authorized officers.

STATE OF CALIFORNIA
DEPARTMENT OF TRANSPORTATION                    Sacramento County

By *Adam Ambrosini*                             By *Roberta MacGlashan*

*ADAM AMBROSINI*                                *Chair, Board of Supervisors*
*SR. TRANSPORTATION ENGINEER*
Chief, Office of Project Implementation
Division of Local Assistance                    _____
                                                Sacramento County
                                                Representative Name & Title
                                                (Authorized Governing Body Representative)

Date  *8/12/16*                                 Date  *8/1/2016*

EXHIBIT A

FAIR EMPLOYMENT PRACTICES ADDENDUM

1. In the performance of this Agreement, ADMINISTERING AGENCY will not discriminate against any employee for employment because of race, color, sex, sexual orientation, religion, ancestry or national origin, physical disability, medical condition, marital status, political affiliation, family and medical care leave, pregnancy leave, or disability leave. ADMINISTERING AGENCY will take affirmative action to ensure that employees are treated during employment without regard to their race, sex, sexual orientation, color, religion, ancestry, or national origin, physical disability, medical condition, marital status, political affiliation, family and medical care leave, pregnancy leave, or disability leave. Such action shall include, but not be limited to, the following: employment; upgrading; demotion or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. ADMINISTERING AGENCY shall post in conspicuous places, available to employees for employment, notices to be provided by STATE setting forth the provisions of this Fair Employment section.

2. ADMINISTERING AGENCY, its contractor(s) and all subcontractors shall comply with the provisions of the Fair Employment and Housing Act (Government Code Section 1290-0 et seq.), and the applicable regulations promulgated thereunder (California Code of Regulations, Title 2, Section 7285.0 et seq.). The applicable regulations of the Fair Employment and Housing Commission implementing Government Code, Section 12900(a-f), set forth in Chapter 5 of Division 4 of Title 2 of the California Code of Regulations are incorporated into this AGREEMENT by reference and made a part hereof as if set forth in full. Each of the ADMINISTERING AGENCY'S contractors and all subcontractors shall give written notice of their obligations under this clause to labor organizations with which they have a collective bargaining or other agreements, as appropriate.

3. ADMINISTERING AGENCY shall include the nondiscrimination and compliance provisions of this clause in all contracts and subcontracts to perform work under this AGREEMENT.

4. ADMINISTERING AGENCY will permit access to the records of employment, employment advertisements, application forms, and other pertinent data and records by STATE, the State Fair Employment and Housing Commission, or any other agency of the State of California designated by STATE, for the purposes of investigation to ascertain compliance with the Fair Employment section of this Agreement.

5. Remedies for Willful Violation:

(a) STATE may determine a willful violation of the Fair Employment provision to have occurred upon receipt of a final judgment to that effect from a court in an action to which ADMINISTERING AGENCY was a party, or upon receipt of a written notice from the Fair Employment and Housing Commission that it has investigated and determined that ADMINISTERING AGENCY has violated the Fair Employment Practices Act and had issued an order under Labor Code Section 1426 which has become final or has obtained an injunction under Labor Code Section 1429.

(b) For willful violation of this Fair Employment Provision, STATE shall have the right to terminate this Agreement either in whole or in part, and any loss or damage sustained by STATE in securing the goods or services thereunder shall be borne and paid for by ADMINISTERING AGENCY and by the surety under the performance bond, if any, and STATE may deduct from any moneys due or thereafter may become due to ADMINISTERING AGENCY, the difference between the price named in the Agreement and the actual cost thereof to STATE to cure ADMINISTERING AGENCY's breach of this Agreement.

EXHIBIT B

NONDISCRIMINATION ASSURANCES

ADMINISTERING AGENCY HEREBY AGREES THAT, as a condition to receiving any federal financial assistance from the STATE, acting for the U.S. Department of Transportation, it will comply with Title VI of the Civil Rights Act of 1964, 78 Stat. 252, 42 U.S.C. 2000d-42 U.S.C. 2000d-4 (hereinafter referred to as the ACT), and all requirements imposed by or pursuant to Title 49, Code of Federal Regulations, Department of Transportation, Subtitle A, Office of the Secretary, Part 21, "Nondiscrimination in Federally-Assisted Programs of the Department of Transportation - Effectuation of Title VI of the Civil Rights Act of 1964" (hereinafter referred to as the REGULATIONS), the Federal-aid Highway Act of 1973, and other pertinent directives, to the end that in accordance with the ACT, REGULATIONS, and other pertinent directives, no person in the United States shall, on the grounds of race, color, sex, national origin, religion, age or disability, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program or activity for which ADMINISTERING AGENCY receives federal financial assistance from the Federal Department of Transportation. ADMINISTERING AGENCY HEREBY GIVES ASSURANCE THAT ADMINISTERING AGENCY will promptly take any measures necessary to effectuate this agreement. This assurance is required by subsection 21.7(a) (1) of the REGULATIONS.

More specifically, and without limiting the above general assurance, ADMINISTERING AGENCY hereby gives the following specific assurances with respect to its federal-aid Program:

1. That ADMINISTERING AGENCY agrees that each "program" and each "facility" as defined in subsections 21.23 (e) and 21.23 (b) of the REGULATIONS, will be (with regard to a "program") conducted, or will be (with regard to a "facility") operated in compliance with all requirements imposed by, or pursuant to, the REGULATIONS.

2. That ADMINISTERING AGENCY shall insert the following notification in all solicitations for bids for work or material subject to the REGULATIONS made in connection with the federal-aid Program and, in adapted form, in all proposals for negotiated agreements:

ADMINISTERING AGENCY hereby notifies all bidders that it will affirmatively insure that in any agreement entered into pursuant to this advertisement, minority business enterprises will be afforded full opportunity to submit bids in response to this invitation and will not be discriminated against on the grounds of race, color, sex, national origin, religion, age, or disability in consideration for an award.

3. That ADMINISTERING AGENCY shall insert the clauses of Appendix A of this assurance in every agreement subject to the ACT and the REGULATIONS.

4. That the clauses of Appendix B of this Assurance shall be included as a covenant running with the land, in any deed effecting a transfer of real property, structures, or improvements thereon, or interest therein.

5. That where ADMINISTERING AGENCY receives federal financial assistance to construct a facility, or part of a facility, the Assurance shall extend to the entire facility and facilities operated in connection therewith.

6. That where ADMINISTERING AGENCY receives federal financial assistance in the form, or for the acquisition, of real property or an interest in real property, the Assurance shall extend to rights to space on, over, or under such property.

7. That ADMINISTERING AGENCY shall include the appropriate clauses set forth in Appendix C and D of this Assurance, as a covenant running with the land, in any future deeds, leases, permits, licenses, and similar agreements entered into by the ADMINISTERING AGENCY with other parties:

Appendix C;

(a) for the subsequent transfer of real property acquired or improved under the federal-aid Program; and

Appendix D;

(b) for the construction or use of or access to space on, over, or under real property acquired, or improved under the federal-aid Program.

8. That this assurance obligates ADMINISTERING AGENCY for the period during which federal financial assistance is extended to the program, except where the federal financial assistance is to provide, or is in the form of, personal property or real property or interest therein, or structures, or improvements thereon, in which case the assurance obligates ADMINISTERING AGENCY or any transferee for the longer of the following periods:

(a) the period during which the property is used for a purpose for which the federal financial assistance is extended, or for another purpose involving the provision of similar services or benefits; or

(b) the period during which ADMINISTERING AGENCY retains ownership or possession of the property.

9. That ADMINISTERING AGENCY shall provide for such methods of administration for the program as are found by the U.S. Secretary of Transportation, or the official to whom he delegates specific authority, to give reasonable guarantee that ADMINISTERING AGENCY, other recipients, sub-grantees, applicants, sub-applicants, transferees, successors in interest, and other participants of federal financial assistance under such program will comply with all requirements imposed by, or pursuant to, the ACT, the REGULATIONS, this Assurance and the Agreement.

10. That ADMINISTERING AGENCY agrees that the United States and the State of California have a right to seek judicial enforcement with regard to any matter arising under the ACT, the REGULATIONS, and this Assurance.

11. ADMINISTERING AGENCY shall not discriminate on the basis of race, religion, age, disability, color, national origin or sex in the award and performance of any STATE assisted contract or in the administration on its DBE Program or the requirements of 49 CFR Part 26. ADMINISTERING AGENCY shall take all necessary and reasonable steps under 49 CFR Part 26 to ensure non-discrimination in the award and administration of STATE assisted contracts. ADMINISTERING AGENCY'S DBE Implementation Agreement is incorporated by reference in this AGREEMENT. Implementation of this program is a legal obligation and failure to carry out its terms shall be treated as a violation of this agreement. Upon notification to the recipient of its failure to carry out its approved DBE Implementation Agreement, STATE may impose sanctions as provided for under 49 CFR Part 26 and may, in appropriate cases, refer the matter for enforcement under 18 USC 1001 and/or the Program Fraud Civil Remedies Act of 1985 (31USC 3801 et seq.)

THESE ASSURANCES are given in consideration of and for the purpose of obtaining any and all federal grants, loans, agreements, property, discounts or other federal financial assistance extended after the date hereof to ADMINISTERING AGENCY by STATE, acting for the U.S. Department of Transportation, and is binding on ADMINISTERING AGENCY, other recipients, subgrantees, applicants, sub-applicants, transferees, successors in interest and other participants in the federal-aid Highway Program.

APPENDIX A TO EXHIBIT B

During the performance of this Agreement, ADMINISTERING AGENCY, for itself, its assignees and successors in interest (hereinafter collectively referred to as ADMINISTERING AGENCY) agrees as follows:

(1) Compliance with Regulations: ADMINISTERING AGENCY shall comply with the regulations relative to nondiscrimination in federally assisted programs of the Department of Transportation, Title 49, Code of Federal Regulations, Part 21, as they may be amended from time to time, (hereinafter referred to as the REGULATIONS), which are herein incorporated by reference and made a part of this agreement.

(2) Nondiscrimination: ADMINISTERING AGENCY, with regard to the work performed by it during the AGREEMENT, shall not discriminate on the grounds of race, color, sex, national origin, religion, age, or disability in the selection and retention of sub-applicants, including procurements of materials and leases of equipment. ADMINISTERING AGENCY shall not participate either directly or indirectly in the discrimination prohibited by Section 21.5 of the REGULATIONS, including employment practices when the agreement covers a program set forth in Appendix B of the REGULATIONS.

(3) Solicitations for Sub-agreements, Including Procurements of Materials and Equipment: In all solicitations either by competitive bidding or negotiation made by ADMINISTERING AGENCY for work to be performed under a Sub-agreement, including procurements of materials or leases of equipment, each potential sub-applicant or supplier shall be notified by ADMINISTERING AGENCY of the ADMINISTERING AGENCY's obligations under this Agreement and the REGULATIONS relative to nondiscrimination on the grounds of race, color, or national origin.

(4) Information and Reports: ADMINISTERING AGENCY shall provide all information and reports required by the REGULATIONS, or directives issued pursuant thereto, and shall permit access to ADMINISTERING AGENCY's books, records, accounts, other sources of information, and its facilities as may be determined by STATE or FHWA to be pertinent to ascertain compliance with such REGULATIONS or directives. Where any information required of ADMINISTERING AGENCY is in the exclusive possession of another who fails or refuses to furnish this information, ADMINISTERING AGENCY shall so certify to STATE or the FHWA as appropriate, and shall set forth what efforts ADMINISTERING AGENCY has made to obtain the information.

(5) Sanctions for Noncompliance: In the event of ADMINISTERING AGENCY's noncompliance with the nondiscrimination provisions of this agreement, STATE shall impose such agreement sanctions as it or the FHWA may determine to be appropriate, including, but not limited to:

(a) withholding of payments to ADMINISTERING AGENCY under the Agreement within a reasonable period of time, not to exceed 90 days; and/or

(b) cancellation, termination or suspension of the Agreement, in whole or in part.

(6) Incorporation of Provisions: ADMINISTERING AGENCY shall include the provisions of paragraphs (1) through (6) in every sub-agreement, including procurements of materials and leases of equipment, unless exempt by the REGULATIONS, or directives issued pursuant thereto. ADMINISTERING AGENCY shall take such action with respect to any sub-agreement or procurement as STATE or FHWA may direct as a means of enforcing such provisions including sanctions for noncompliance, provided, however, that, in the event ADMINISTERING AGENCY becomes involved in, or is threatened with, litigation with a sub-applicant or supplier as a result of such direction, ADMINISTERING AGENCY may request STATE enter into such litigation to protect the interests of STATE, and, in addition, ADMINISTERING AGENCY may request the United States to enter into such litigation to protect the interests of the United States.

APPENDIX B TO EXHIBIT B

The following clauses shall be included in any and all deeds effecting or recording the transfer of PROJECT real property, structures or improvements thereon, or interest therein from the United States.

(GRANTING CLAUSE)

NOW, THEREFORE, the U.S. Department of Transportation, as authorized by law, and upon the condition that ADMINISTERING AGENCY will accept title to the lands and maintain the project constructed thereon, in accordance with Title 23, United States Code, the Regulations for the Administration of federal-aid for Highways and the policies and procedures prescribed by the Federal Highway Administration of the Department of Transportation and, also in accordance with and in compliance with the Regulations pertaining to and effectuating the provisions of Title VI of the Civil Rights Act of 1964 (78 Stat. 252; 42 U.S.C. 2000d to 2000d-4), does hereby remise, release, quitclaim and convey unto the ADMINISTERING AGENCY all the right, title, and interest of the U.S. Department of Transportation in, and to, said lands described in Exhibit "A" attached hereto and made a part hereof.

(HABENDUM CLAUSE)

TO HAVE AND TO HOLD said lands and interests therein unto ADMINISTERING AGENCY and its successors forever, subject, however, to the covenant, conditions, restrictions and reservations herein contained as follows, which will remain in effect for the period during which the real property or structures are used for a purpose for which federal financial assistance is extended or for another purpose involving the provision of similar services or benefits and shall be binding on ADMINISTERING AGENCY, its successors and assigns.

ADMINISTERING AGENCY, in consideration of the conveyance of said lands and interests in lands, does hereby covenant and agree as a covenant running with the land for itself, its successors and assigns,

(1) that no person shall on the grounds of race, color, sex, national origin, religion, age or disability, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination with regard to any facility located wholly or in part on, over, or under such lands hereby conveyed (;) (and) *

(2) that ADMINISTERING AGENCY shall use the lands and interests in lands so conveyed, in compliance with all requirements imposed by or pursuant to Title 49, Code of Federal Regulations, Department of Transportation, Subtitle A, Office of the Secretary, Part 21, Non-discrimination in federally-assisted programs of the Department of Transportation - Effectuation of Title VI of the Civil Rights Act of 1964, and as said Regulations may be amended (;) and

(3) that in the event of breach of any of the above-mentioned nondiscrimination conditions, the U.S. Department of Transportation shall have a right to re-enter said lands and facilities on said land, and the above-described land and facilities shall thereon revert to and vest in and become the absolute property of the U.S. Department of Transportation and its assigns as such interest existed prior to this deed.*

* Reverter clause and related language to be used only when it is determined that such a clause is necessary in order to effectuate the purposes of Title VI of the Civil Rights Act of 1964.

APPENDIX C TO EXHIBIT B

The following clauses shall be included in any and all deeds, licenses, leases, permits, or similar instruments entered into by ADMINISTERING AGENCY, pursuant to the provisions of Assurance 7(a) of Exhibit B.

The grantee (licensee, lessee, permittee, etc., as appropriate) for himself, his heirs, personal representatives, successors in interest, and assigns, as a part of the consideration hereof, does hereby covenant and agree (in the case of deeds and leases add "as covenant running with the land") that in the event facilities are constructed, maintained, or otherwise operated on the said property described in this (deed, license, lease, permit, etc.) for a purpose for which a U.S. Department of Transportation program or activity is extended or for another purpose involving the provision of similar services or benefits, the (grantee, licensee, lessee, permittee, etc.), shall maintain and operate such facilities and services in compliance with all other requirements imposed pursuant to Title 49, Code of Federal Regulations, U.S. Department of Transportation, Subtitle A, Office of Secretary, Part 21, Nondiscrimination in federally-assisted programs of the Department of Transportation - Effectuation of Title VI of the Civil Rights Act of 1964, and as said Regulations may be amended.

(Include in licenses, leases, permits, etc.)*

That in the event of breach of any of the above nondiscrimination covenants, ADMINISTERING AGENCY shall have the right to terminate the (license, lease, permit etc.) and to re-enter and repossess said land and the facilities thereon, and hold the same as if said (license, lease, permit, etc.) had never been made or issued.

(Include in deeds)*

That in the event of breach of any of the above nondiscrimination covenants, ADMINISTERING AGENCY shall have the right to re-enter said land and facilities thereon, and the above-described lands and facilities shall thereupon revert to and vest in and become the absolute property of ADMINISTERING AGENCY and its assigns.

* Reverter clause and related language to be used only when it is determined that such a clause is necessary in order to effectuate the purposes of Title VI of the Civil Rights Act of 1964.

## APPENDIX D TO EXHIBIT B

The following shall be included in all deeds, licenses, leases, permits, or similar agreements entered into by the ADMINISTERING AGENCY, pursuant to the provisions of Assurance 7 (b) of Exhibit B.

The grantee (licensee, lessee, permittee, etc., as appropriate) for himself, his personal representatives, successors in interest and assigns, as a part of the consideration hereof, does hereby covenant and agree (in the case of deeds, and leases add "as a covenant running with the land") that:

(1) no person on the ground of race, color, sex, national origin, religion, age or disability, shall be excluded from participation in, denied the benefits of, or otherwise subjected to discrimination in the use of said facilities;

(2) that in the construction of any improvements on, over, or under such land and the furnishing of services thereon, no person on the ground of race, color, sex, national origin, religion, age or disability shall be excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination; and

(3) that the (grantee, licensee, lessee, permittee, etc.,) shall use the premises in compliance with the Regulations.

 (Include in licenses, leases, permits, etc.)*

That in the event of breach of any of the above nondiscrimination covenants, ADMINISTERING AGENCY shall have the right to terminate the (license, lease, permit, etc.) and to re-enter and repossess said land and the facilities thereon, and hold the same as if said (license, lease, permit, etc.) had never been made or issued.

 (Include in deeds)*

That in the event of breach of any of the above nondiscrimination covenants, ADMINISTERING AGENCY shall have the right to re-enter said land and facilities thereon, and the above-described lands and facilities shall thereupon revert to and vest in and become the absolute property of ADMINISTERING AGENCY, and its assigns.

---

* Reverter clause and related language to be used only when it is determined that such a clause is necessary in order to effectuate the purposes of Title VI of the Civil Rights Act of 1964.

# EXHIBIT C

| PROGRAM SUPPLEMENT NO.     F282 to ADMINISTERING AGENCY-STATE AGREEMENT FOR FEDERAL-AID PROJECTS NO     03-5924F15 | Adv. Project ID 0325000244 | **Date:** July 09, 2025 **Location:** 03-SAC-0-CR **Project Number:** HSIPL-5924(295) **E.A. Number:** **Locode:** 5924 |

This Program Supplement hereby adopts and incorporates the Administering Agency-State Agreement for Federal Aid which was entered into between the Administering Agency and the State on 08/12/2016 and is subject to all the terms and conditions thereof. This Program Supplement is executed in accordance with Article I of the aforementioned Master Agreement under authority of Resolution No. 2016-0576 approved by the Administering Agency on 7/26/2016 (See copy attached).

The Administering Agency further stipulates that as a condition to the payment by the State of any funds derived from sources noted below obligated to this PROJECT, the Administering Agency accepts and will comply with the special covenants or remarks set forth on the following pages.

**PROJECT LOCATION:** In Sacramento County, Intersection of Elkhorn Boulevard and 28th St.

**TYPE OF WORK:**    Install traffic signal.                    **LENGTH:** 0.0(MILES)

| Estimated Cost | Federal Funds | | Matching Funds | | |
|---|---|---|---|---|---|
| | YS30 | $218,700.00 | LOCAL | | OTHER |
| $243,000.00 | | | $24,300.00 | | $0.00 |

**COUNTY OF SACRAMENTO**

By _Ron Vicari_
DocuSigned by:
A0EDF200A0DA439...

Title _Director_

Date 7/16/2025
DocuSigned by:

Attest _Raven Raimond_
883DD0EA87F847D...

**STATE OF CALIFORNIA**
**Department of Transportation**

For: By _Omid Asaar_

**Chief, Office of Project Management Oversight**
**Division of Local Assistance**

Date 07/22/2025

I hereby certify upon my personal knowledge that budgeted funds are available for this encumbrance:

**Accounting Officer** _[signature]_          Date  07/09/2025          $218,700.00

## SPECIAL COVENANTS OR REMARKS

1.    A.   The ADMINISTERING AGENCY will advertise, award and administer this project in accordance with the current published Local Assistance Procedures Manual.

B.   ADMINISTERING AGENCY agrees that it will only proceed with work authorized for specific phase(s) with an "Authorization to Proceed" and will not proceed with future phase(s) of this project prior to receiving an "Authorization to Proceed" from the STATE for that phase(s) unless no further State or Federal funds are needed for those future phase(s).

C.   STATE and ADMINISTERING AGENCY agree that any additional funds which might be made available by future Federal obligations will be encumbered on this PROJECT by use of a STATE-approved "Authorization to Proceed" and Finance Letter.   ADMINISTERING AGENCY agrees that Federal funds available for reimbursement will be limited to the amounts obligated by the Federal Highway Administration.

D.   Award information shall be submitted by the ADMINISTERING AGENCY to the District Local Assistance Engineer within 60 days of project contract award and prior to the submittal of the ADMINISTERING AGENCY'S first invoice for the construction contract.

Failure to do so will cause a delay in the State processing invoices for the construction phase. Attention is directed to Section 15.6 "Award Package" of the Local Assistance Procedures Manual.

E.   ADMINISTERING AGENCY agrees, as a minimum, to submit invoices at least once every six months commencing after the funds are encumbered for each phase by the execution of this Project Program Supplement Agreement, or by STATE's approval of an applicable Finance Letter.   STATE reserves the right to suspend future authorizations/obligations for Federal aid projects, or encumbrances for State funded projects, as well as to suspend invoice payments for any on-going or future project by ADMINISTERING AGENCY if PROJECT costs have not been invoiced by ADMINISTERING AGENCY for a six-month period.

If no costs have been invoiced for a six-month period, ADMINISTERING AGENCY agrees to submit for each phase a written explanation of the absence of PROJECT activity along with target billing date and target billing amount.

ADMINISTERING AGENCY agrees to submit the final report documents that collectively constitute a "Report of Expenditures" within one hundred eighty (180) days of PROJECT completion.  Failure of ADMINISTERING AGENCY to submit a "Final Report of Expenditures" within 180 days of PROJECT completion will result in STATE imposing sanctions upon ADMINISTERING AGENCY in accordance with the current Local Assistance Procedures Manual.

## SPECIAL COVENANTS OR REMARKS

F.  Administering Agency shall not discriminate on the basis of race, religion, age, disability, color, national origin, or sex in the award and performance of any Federal-assisted contract or in the administration of its DBE Program Implementation Agreement.  The Administering Agency shall take all necessary and reasonable steps under 49 CFR Part 26 to ensure nondiscrimination in the award and administration of Federal-assisted contracts.  The Administering Agency's DBE Implementation Agreement is incorporated by reference in this Agreement.  Implementation of the DBE Implementation Agreement, including but not limited to timely reporting of DBE commitments and utilization, is a legal obligation and failure to carry out its terms shall be treated as a violation of this Agreement.  Upon notification to the Administering Agency of its failure to carry out its DBE Implementation Agreement, the State may impose sanctions as provided for under 49 CFR Part 26 and may, in appropriate cases, refer the matter for enforcement under 18 U.S.C. 1001 and/or the Program Fraud Civil Remedies Act of 1986 (31 U.S.C. 3801 et seq.).

G.  Any State and Federal funds that may have been encumbered for this project are available for disbursement for limited periods of time.  For each fund encumbrance the limited period is from the start of the fiscal year that the specific fund was appropriated within the State Budget Act to the applicable fund Reversion Date shown on the State approved project finance letter.  Per Government Code Section 16304, all project funds not liquidated within these periods will revert unless an executed Cooperative Work Agreement extending these dates is requested by the ADMINISTERING AGENCY and approved by the California Department of Finance.

ADMINISTERING AGENCY should ensure that invoices are submitted to the District Local Assistance Engineer at least 75 days prior to the applicable fund Reversion Date to avoid the lapse of applicable funds. Pursuant to a directive from the State Controller's Office and the Department of Finance; in order for payment to be made, the last date the District Local Assistance Engineer can forward an invoice for payment to the Department's Local Programs Accounting Office for reimbursable work for funds that are going to revert at the end of a particular fiscal year is May 15th of the particular fiscal year.  Notwithstanding the unliquidated sums of project specific State and Federal funding remaining and available to fund project work, any invoice for reimbursement involving applicable funds that is not received by the Department's Local Programs Accounting Office at least 45 days prior to the applicable fixed fund Reversion Date will not be paid.  These unexpended funds will be irrevocably reverted by the Department's Division of Accounting on the applicable fund Reversion Date.

H.  As a condition for receiving federal-aid highway funds for the PROJECT, the Administering Agency certifies that NO members of the elected board, council, or other key decision makers are on the Federal Government Exclusion List.  Exclusions can be found at www.sam.gov.

## SPECIAL COVENANTS OR REMARKS

2.    A.  ADMINISTERING AGENCY shall conform to all State statutes, regulations and procedures (including those set forth in the Local Assistance Procedures Manual and the Local Assistance Program Guidelines, hereafter collectively referred to as "LOCAL ASSISTANCE PROCEDURES") relating to the federal-aid program, all Title 23 Code of Federal Regulation (CFR) and 2 CFR Part 200 federal requirements, and all applicable federal laws, regulations, and policy and procedural or instructional memoranda, unless otherwise specifically waived as designated in the executed project-specific PROGRAM SUPPLEMENT.

B.  Invoices shall be formatted in accordance with LOCAL ASSISTANCE PROCEDURES.

C.  ADMINISTERING AGENCY must have at least one copy of supporting backup documentation for costs incurred and claimed for reimbursement by ADMINISTERING AGENCY.  ADMINISTERING AGENCY agrees to submit supporting backup documentation with invoices if requested by State.  Acceptable backup documentation includes, but is not limited to, agency's progress payment to the contractors, copies of cancelled checks showing amounts made payable to vendors and contractors, and/or a computerized summary of PROJECT costs.

D.  Indirect Cost Allocation Plan/Indirect Cost Rate Proposals (ICAP/ICRP), Central Service Cost Allocation Plans and related documentation are to be prepared and provided to STATE (Caltrans Audits & Investigations) for review and approval prior to ADMINISTERING AGENCY seeking reimbursement of indirect costs incurred within each fiscal year being claimed for State and federal reimbursement.  ICAPs/ICRPs must be prepared in accordance with the requirements set forth in 2 CFR, Part 200, Chapter 5 of the Local Assistance Procedural Manual, and the ICAP/ICRP approval procedures established by STATE.

E.  STATE will withhold the greater of either two (2) percent of the total of all federal funds encumbered for each PROGRAM SUPPLEMENT or $40,000 until ADMINISTERING AGENCY submits the Final Report of Expenditures for each completed PROGRAM SUPPLEMENT PROJECT.

F.  Payments to ADMINISTERING AGENCY for PROJECT-related travel and subsistence (per diem) expenses of ADMINISTERING AGENCY forces and its contractors and subcontractors claimed for reimbursement or as local match credit shall not exceed rates authorized to be paid rank and file STATE employees under current State Department of Personnel Administration (DPA) rules.  If the rates invoiced by ADMINISTERING AGENCY are in excess of DPA rates, ADMINISTERING AGENCY is responsible for the cost difference, and any overpayments inadvertently paid by STATE shall be reimbursed to STATE by ADMINISTERING AGENCY on demand within thirty (30) days of such invoice.

## SPECIAL COVENANTS OR REMARKS

G.   ADMINISTERING AGENCY agrees to comply with 2 CFR, Part 200, Uniform Administrative Requirements, Cost Principles and Audit Requirement for Federal Awards.

H.   ADMINISTERING AGENCY agrees, and will assure that its contractors and subcontractors will be obligated to agree, that Contract Cost Principles and Procedures, 48 CFR, Federal Acquisition Regulations System, Chapter 1, Part 31, et seq., shall be used to determine the allowability of individual PROJECT cost items.

I.  Every sub-recipient receiving PROJECT funds under this AGREEMENT shall comply with 2 CFR, Part 200, 23 CFR, 48 CFR Chapter 1, Part 31, Local Assistance Procedures, Public Contract Code (PCC) 10300-10334 (procurement of goods), PCC 10335-10381 (non-A&E services), and other applicable STATE and FEDERAL regulations.

J.  Any PROJECT costs for which ADMINISTERING AGENCY has received payment or credit that are determined by subsequent audit to be unallowable under 2 CFR, Part 200, 23 CFR, 48 CFR, Chapter 1, Part 31, and other applicable STATE and FEDERAL regulations, are subject to repayment by ADMINISTERING AGENCY to STATE.

K.  STATE reserves the right to conduct technical and financial audits of PROJECT WORK and records and ADMINISTERING AGENCY agrees, and shall require its contractors and subcontractors to agree, to cooperate with STATE by making all appropriate and relevant PROJECT records available for audit and copying as required by the following paragraph:

ADMINISTERING AGENCY, ADMINISTERING AGENCY'S contractors and subcontractors, and STATE shall each maintain and make available for inspection and audit by STATE, the California State Auditor, or any duly authorized representative of STATE or the United States all books, documents, papers, accounting records, and other evidence pertaining to the performance of such contracts, including, but not limited to, the costs of administering those various contracts and ADMINISTERING AGENCY shall furnish copies thereof if requested. All of the above referenced parties shall make such AGREEMENT, PROGRAM SUPPLEMENT, and contract materials available at their respective offices at all reasonable times during the entire PROJECT period and for three (3) years from the date of submission of the final expenditure report by the STATE to the FHWA.

L.   ADMINISTERING AGENCY, its contractors and subcontractors shall establish and maintain a financial management system and records that properly accumulate and segregate reasonable, allowable, and allocable incurred PROJECT costs and matching funds by line item for the PROJECT. The financial management system

**SPECIAL COVENANTS OR REMARKS**

of ADMINISTERING AGENCY, its contractors and all subcontractors shall conform to Generally Accepted Accounting Principles, enable the determination of incurred costs at interim points of completion, and provide support for reimbursement payment vouchers or invoices set to or paid by STATE.

M.  ADMINISTERING AGENCY is required to have an audit in accordance with the Single Audit Act of 2 CFR 200 if it expends $750,000 or more in Federal Funds in a single fiscal year of the Catalogue of Federal Domestic Assistance.

N.  ADMINISTERING AGENCY agrees to include all PROGRAM SUPPLEMENTS adopting the terms of this AGREEMENT in the schedule of projects to be examined in ADMINISTERING AGENCY's annual audit and in the schedule of projects to be examined under its single audit prepared in accordance with 2 CFR, Part 200.

O.  ADMINISTERING AGENCY shall not award a non-A&E contract over $5,000, construction contracts over $10,000, or other contracts over $25,000 [excluding professional service contracts of the type which are required to be procured in accordance with Government Code sections 4525 (d), (e) and (f)] on the basis of a noncompetitive negotiation for work to be performed under this AGREEMENT without the prior written approval of STATE.  Contracts awarded by ADMINISTERING AGENCY, if intended as local match credit, must meet the requirements set forth in this AGREEMENT regarding local match funds.

P.   Any subcontract entered into by ADMINISTERING AGENCY as a result of this AGREEMENT shall contain provisions B, C, F, H, I, K, and L under Section 2 of this agreement.

3.    Appendix E of the Title VI Assurances (US DOT Order 1050.2A)

During the performance of this agreement, the ADMINISTERING AGENCY, ADMINISTERING AGENCY'S contractors and subcontractor, (hereinafter referred to as the "contractor") agrees to comply with the following nondiscrimination statutes and authorities; including but not limited to:

Pertinent Nondiscrimination Authorities:

A. Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq., 78 stat. 252), (prohibits discrimination on the basis of race, color, national origin); and 49 CFR Part 21.
B. The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, (42 U.S.C. 4601), (prohibits unfair treatment of persons displaced or whose property has been acquired because of Federal or Federal-aid programs and projects);
C. Federal-Aid Highway Act of 1973, (23 U.S.C. 324 et seq.), (prohibits discrimination on the basis of sex);
D. Section 504 of the Rehabilitation Act of 1973, (29 U.S.C. 794 et seq.), as

## SPECIAL COVENANTS OR REMARKS

amended, (prohibits discrimination on the basis of disability); and 49 CFR Part 27;

E. The Age Discrimination Act of 1975, as amended, (42 U.S.C. 6101 et seq.), (prohibits discrimination on the basis of age);

F. Airport and Airway Improvement Act of 1982, (49 U.S.C. 4 71, Section 4 7123), as amended, (prohibits discrimination based on race, creed, color, national origin, or sex);

G. The Civil Rights Restoration Act of 1987, (PL 100-209), (Broadened the scope, coverage and applicability of Title VI of the Civil Rights Act of 1964, The Age Discrimination Act of 1975 and Section 504 of the Rehabilitation Act of 1973, by expanding the definition of the terms "programs or

activities" to include all of the programs or activities of the Federal-aid recipients, subrecipients and contractors, whether such programs or activities are Federally funded or not);

H. Titles II and III of the Americans with Disabilities Act, which prohibit discrimination on the basis of disability in the operation of public entities, public and private transportation systems, places of public accommodation, and certain testing entities (42 U.S.C. 12131-12189) as implemented by Department of Transportation regulations at 49 C.F.R. parts 37 and 38;

I. The Federal Aviation Administration's Nondiscrimination statute (49 U.S.C. 47123) (prohibits discrimination on the basis of race, color, national origin, and sex);

J. Executive Order 13166, Improving Access to Services for Persons with Limited English Proficiency, and resulting agency guidance, national origin discrimination includes discrimination because of limited English proficiency (LEP). To ensure compliance with Title VI, you must take reasonable steps to ensure that LEP persons have meaningful access to your programs (70 Fed. Reg. at 74087 to 74100);

K. Title IX of the Education Amendments of 1972, as amended, which prohibits you from discriminating because of sex in education programs or activities (20 U.S.C. 1681 et seq).

4.  In the event that construction of this project of the initial federal authorization for right of way is not started by the close of the twentieth fiscal year following the fiscal year in which the right of way is authorized, the ADMINISTERING AGENCY shall repay the Federal Highway Administration through Caltrans the sum of Federal funds paid under the terms of this agreement.

   Authorizing the ROW phase of a project as Advance Construction does not exempt the project from the provisions of 23 U.S.C. 108(a)(2), and 23 CFR 630.112(c)(1).

# EXHIBIT D



**THE SECRETARY OF TRANSPORTATION**
WASHINGTON, DC 20590

April 24, 2025

To All Recipients of U.S. Department of Transportation Funding:

The U.S. Department of Transportation (Department or DOT) distributes substantial Federal financial assistance for thousands of projects, programs, and activities operated or initiated by diverse entities, including but not limited to State and local governments. The Department administers this Federal financial assistance to support the development and maintenance of the Nation's transportation infrastructure, pursuant to statutory authority and in accordance with binding contractual agreements in the form of Federal financial assistance agreements, usually grants, cooperative agreements, and loans. Accordingly, I write to clarify and reaffirm pertinent legal requirements, to outline the Department's expectations, and to provide a reminder of your responsibilities and the consequences of noncompliance with Federal law and the terms of your financial assistance agreements. It is the policy of the Department to award and to continue to provide Federal financial assistance only to those recipients who comply with their legal obligations.

As recipients of such DOT funds, you have entered into legally enforceable agreements with the United States Government and are obligated to comply fully with all applicable Federal laws and regulations. These laws and regulations include the United States Constitution, Federal statutes, applicable rules, and public policy requirements, including, among others, those protecting free speech and religious liberty and those prohibiting discrimination and enforcing controls on illegal immigration. As Secretary of Transportation, I am responsible for ensuring recipients of DOT financial assistance are aware of and comply with all applicable legal obligations.

The Equal Protection principles of the Constitution prohibit State and Federal governmental entities from discriminating on the basis of protected characteristics, including race. Indeed, as the Supreme Court declared in *Students for Fair Admission, Inc. v. Harvard (SFFA)*, 600 U.S. 181, 206 (2023), "[t]he clear and central purpose of the Fourteenth Amendment was to eliminate all official state sources of invidious racial discrimination in the States." The Court further noted that "[o]ne of the principal reasons race is treated as a forbidden classification is that it demeans the dignity and worth of a person to be judged by ancestry instead of by his or her own merit and essential qualities." *Id.* at 220. In ruling that race-based admissions programs at universities violated the Equal Protection Clause, the Court made clear that discrimination based on race is, has been, and will continue to be unlawful, except in rare circumstances. *Id.* at 220-21. Similarly, sex-based classifications violate the Equal Protection Clause absent "exceedingly persuasive" justification. *See United States v. Virginia*, 518 U.S. 515, 533 (1996).

These constitutional principles are reinforced by the Civil Rights Act of 1964, which prohibits discrimination based on protected characteristics in the Federal funding and employment contexts in Title VI (42 U.S.C. § 2000d *et seq.*) and Title VII (42 U.S.C. § 2000e-2), as well as the applicable non-discrimination clauses in the Federal Aid Highway Act of 1973 (23 U.S.C. §§ 140 and 324 *et seq.*), the Airport and Airway Improvement Act of 1982, (49 U.S.C. § 47123), and Title IX of the Education Amendments of 1972, as amended (20 U.S.C. § 1681 *et seq.*).

Based on binding Supreme Court precedent and these Federal laws, DOT is prohibited from discriminating based on race, color, national origin, sex, or religion in any of its programs or activities. Moreover, because DOT may not establish, induce, or endorse prohibited discrimination indirectly,[1] it must ensure that discrimination based on race, color, national origin, sex, or religion does not exist in the programs or activities it funds or financially assists.

These same principles apply to recipients of Federal financial assistance from DOT, as both a matter of Federal law and by virtue of contractual provisions governing receipt of DOT funding. Accordingly, DOT recipients are prohibited from engaging in discriminatory actions in their own policies, programs, and activities, including in administering contracts, and their employment practices.

Whether or not described in neutral terms, any policy, program, or activity that is premised on a prohibited classification, including discriminatory policies or practices designed to achieve so-called "diversity, equity, and inclusion," or "DEI," goals, presumptively violates Federal law. Recipients of DOT financial assistance must ensure that the personnel practices (including hiring, promotions, and terminations) within their organizations are merit-based and do not discriminate based on prohibited categories. Recipients are also precluded from allocating money received under DOT awards—such as through contracts or the provision of other benefits—based on suspect classifications. Any discriminatory actions in your policies, programs, and activities based on prohibited categories constitute a clear violation of Federal law and the terms of your grant agreements.

In addition, your legal obligations require cooperation generally with Federal authorities in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law. DOT has noted reported instances where some recipients of Federal financial assistance have declined to cooperate with ICE investigations, have issued driver's licenses to individuals present in the United States in violation of Federal immigration law, or have otherwise acted in a manner that impedes Federal law enforcement. Such actions undermine Federal sovereignty in the enforcement of immigration law, compromise the safety and security of the transportation systems supported by DOT

---

[1] *See SFFA*, 600 U.S. at 230; Norwood v. Harrison, 413 U.S. 455, 465 (1973).

financial assistance, and prioritize illegal aliens over the safety and welfare of the American people whose Federal taxes fund DOT's financial assistance programs.

Under the Constitution, Federal law is "the supreme Law of the Land." U.S. Const. Art. VI. That means that where Federal and State legal requirements conflict, States and State entities must follow Federal law. Declining to cooperate with the enforcement of Federal immigration law or otherwise taking action intended to shield illegal aliens from ICE detection contravenes Federal law and may give rise to civil and criminal liability. *See* 8 U.S.C. § 1324 and 8 U.S.C. § 1373. Accordingly, DOT expects its recipients to comply with Federal law enforcement directives and to cooperate with Federal officials in the enforcement of Federal immigration law. The Department also expects its recipients to ensure that the Federal financial assistance they receive from DOT is provided only to subrecipients, businesses, or service providers that are U.S. Citizens or U.S. Nationals and Lawful Permanent Residents (LPRs) or legal entities allowed to do business in the U.S. and which do not employ illegal aliens.

This letter provides notice of the Department's existing interpretation of Federal law. The Department will vigorously enforce the law on equal terms as to all its recipients and intends to take appropriate measures to assess their compliance based on the interpretation of Federal law set forth in this letter. Adherence to your legal obligations is a prerequisite for receipt of DOT financial assistance. Noncompliance with applicable Federal laws, or failure to cooperate generally with Federal authorities in the enforcement of Federal law, will jeopardize your continued receipt of Federal financial assistance from DOT and could lead to a loss of Federal funding from DOT.

The Department retains authority, pursuant to its oversight responsibilities and the terms of your agreements, to initiate enforcement actions, such as comprehensive audits and possible recovery of funds expended in a manner contrary to the terms of the funding agreement. DOT may also terminate funding in response to substantiated breaches of the terms of the agreement, or if DOT determines that continued funding is no longer in the public interest. These steps, within DOT's discretion, are intended to ensure accountability and protect the integrity of Federal programs.

To assist grant recipients in meeting their legal obligations, DOT offers technical guidance and support through its program offices. Should you require clarification regarding your obligations, you are encouraged to contact your designated DOT representative promptly. Proactive engagement is strongly advised to prevent inadvertent noncompliance.

DOT remains committed to advancing a transportation system that serves the public interest efficiently and unleashes economic prosperity and a superior quality of life for American families. This mission depends upon your strict adherence to the legal framework governing our partnership, and I trust you will take all necessary steps to comply with Federal law and satisfy your legal obligations.

Sincerely,

Sean P. Duffy