1  ANDREW JANZ (SBN 287672)*
   City Attorney
2  CITY OF FRESNO
   2600 Fresno Street
3  Fresno, CA 93721
   Telephone: (559) 621-7500
4  Facsimile: (559) 457-1084
   * Application for admission pro hac vice
5  forthcoming

6  Attorney for Plaintiff
   CITY OF FRESNO
7

8

9

10

11

12 LYNDSEY OLSON (MN Lic. #0332288)*
   Saint Paul City Attorney
13 Lyndsey.olsen@ci.stpaul.mn.us
   KELSEY MCELVEEN (MN Lic. #0396744)*
14 Assistant City Attorney
   Kelsey.McElveen@ci.stpaul.mn.us
15 SAINT PAUL CITY ATTORNEY'S OFFICE
   400 City Hall and Courthouse
16 15 Kellogg Boulevard West
   Saint Paul, Minnesota 55102
17 Telephone:  (651) 266-8710
   Facsimile  (651) 298-5619
18 * Application for admission pro hac vice
   forthcoming
19
   Attorneys for Plaintiff
20 CITY OF SAINT PAUL

JONATHAN V. HOLTZMAN (SBN 99795)
jholtzman@publiclawgroup.com
JAMES R. ROSS (SBN 149199)
jross@publiclawgroup.com
RYAN P. McGINLEY-STEMPEL (SBN 296182)
rmcginleystempel@publiclawgroup.com
JAKE D. FREITAS (SBN 341837)
jfreitas@publiclawgroup.com
MARIBEL LOPEZ (SBN 340907)
mlopez@publiclawgroup.com
RENNE PUBLIC LAW GROUP
350 Sansome Street, Suite 300
San Francisco, California 94104
Telephone:  (415) 848-7200
Facsimile:  (415) 848-7230

Attorneys for Plaintiffs
CITY OF FRESNO; CITY OF EUREKA; CITY
OF SOUTH LAKE TAHOE; COUNTY OF
SACRAMENTO; COUNTY OF MONROE;
MONROE COUNTY AIRPORT AUTHORITY

MELISSA C. ALLISON (MA Bar No. 657470)*
mallison@andersonkreiger.com
CHRISTINA S. MARSHALL
(MA Bar No. 688348)*
cmarshall@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, Floor 21
Boston, MA 02109
Telephone: (617) 621-6500
* Application for admission pro hac vice
forthcoming

Attorneys for Plaintiffs
COUNTY OF MONROE
MONROE COUNTY AIRPORT AUTHORITY

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| CITY OF FRESNO et al. | Case No.: 3:25-cv-07070-RS |
|---|---|
| Plaintiffs, | **DECLARATION OF SCOTT MOZIER IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, PRELIMINARY INJUNCTION** |
| v. | |
| SCOTT TURNER et al. | |
| Defendants. | Complaint Filed: August 20, 2025 |

RENNE PUBLIC LAW GROUP
Attorneys at Law

I, Scott Mozier, declare:

1.      I am over the age of 18 years, am competent to testify as to the matters in this declaration, and make this declaration based on my own personal knowledge.

2.      I am the Public Works Director for the City of Fresno (the "City").  I have been in this position since January 2014.

3.      As the Public Works Director, I oversee all functions of the Public Works Department, including engineering, street work permits, engineering inspection, traffic engineering, transportation planning, street and landscape maintenance, community facilities district administration and graffiti abatement.  My responsibilities include preparing and administering the department's operating and capital improvement budgets, ensuring the department is properly funded, and prioritizing resources to meet current and future needs.

## FEDERAL GRANTS IN THE CITY OF FRESNO

5.      Currently, the City has approximately $75 million in DOT grant funding allocated to it for public works projects.  The grant funds are administered by DOT and its operating administrations, such as the Federal Highway Administration ("FHWA").  Of that amount, approximately $37 million has yet to be reimbursed.  These grants are critical to the City's ability to carry out transportation infrastructure projects that enhance safety, reduce congestion, improve air quality, and support economic development.

6.      Such grants include Surface Transportation Block Grant (STBG) funds, which the City relies on for street reconstruction and rehabilitation projects.  The City has been allocated approximately $26.5 million in STBG funds.

7.      The City also receives Congestion Mitigation and Air Quality (CMAQ) grants, which fund clean transportation projects such as bike lanes, trails, electric vehicle purchases, and traffic signal synchronization.  Approximately $28 million has been allocated to the City in CMAQ funding.

8.      In addition, the City receives Highway Safety Improvement Program (HSIP) funds, which are targeted for traffic safety projects aimed at reducing roadway injuries and fatalities.  The City has been allocated approximately $3.2 million in HSIP funding.

9.      The City also benefits from the Active Transportation Program (ATP), which supports safe routes to school, sidewalk construction, and traffic safety improvements near schools.  The City has

RENNE PUBLIC LAW GROUP
Attorneys at Law

been allocated approximately $3 million in ATP funding.

10.    In total, these and other federal grant programs represent a significant portion of the City's capital project funding and are foundational to our long-term infrastructure planning.

11.    Many of these federal transportation programs, particularly STBG and CMAQ, operate on multi-year cycles, with funding becoming available two to four years after project selection. The funds must be programmed and obligated years in advance to ensure that allocated funds are not lost or reallocated to other jurisdictions.

12.    These federal grants managed by the Department of Public Works are exclusively used for capital improvements, such as repaving roadways, installing traffic signals, or constructing sidewalks. Currently, the City faces more than a billion dollars in deferred street maintenance and infrastructure needs. Local revenue sources are insufficient to address these needs. Without continued access to these federal funds, the City would be unable to maintain safe and functional transportation infrastructure for its residents.

13.    On April 22, 2025, the FHWA issued Competitive Grant Program General Terms and Conditions purportedly applicable to all FHWA competitive grants ("2025 FHWA General Terms and Conditions"). (Attached is a true and correct copy of 2025 FHWA General Terms and Conditions as **Exhibit A**.) The 2025 FHWA General Terms and Conditions imposed a new condition on all FHWA competitive grants (including the STBG and CMAQ program discussed above), implementing President Trump's executive orders regarding DEI, immigration, and gender ideology. The DOT's broad conception of these new conditions is confirmed in a letter from DOT Secretary Sean Duffy to all recipients of DOT funding stating that "[w]hether or not described in neutral terms, any policy, program, or activity that is premised on a prohibited classification, including discriminatory policies or practices designed to achieve so-called [DEI] goals, presumptively violates Federal Law." (Attached is a true and correct copy of the April 24, 2025 Duffy Letter as **Exhibit B**.) While FHWA grants have long required compliance with nondiscrimination laws and have been subject to the FCA, the 2025 FHWA General Terms and Conditions provide:

> (b) Pursuant to Section (3)(b)(iv)(A), Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, the Recipient agrees that its compliance in all respects with all applicable

Federal anti-discrimination laws is material to the government's payment decisions for purposes of [the FCA].

(c) Pursuant to Section (3)(b)(iv)(B), Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, by entering into this agreement, the Recipient certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws.

14.    The 2025 FHWA General Terms and Conditions contain an additional condition requiring recipients to cooperate with federal immigration enforcement efforts (the "FHWA Enforcement Condition").

15.    These new conditions are unintelligibly vague and appear contradictory to the law.  This has caused delay and uncertainty in the City's budgeting and long-term planning processes.

16.    If the City were forced to forego reimbursements on already-obligated grant funds, we could be compelled to suspend or cancel critical public works contracts, default on financial commitments, or abandon projects already underway.  Likewise, if the City were unable to apply for future grants, we would lose access to essential and recurring sources of capital funding that we rely on year after year.  The consequences would be dire: public infrastructure would continue to deteriorate, traffic safety would decline, air quality improvements would stall, and the City's ability to meet its core responsibilities to residents and businesses would be severely compromised.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.  Executed at Fresno, California on August 21, 2025.



Scott Mozier
Public Works Director
City of Fresno

RENNE PUBLIC LAW GROUP
Attorneys at Law



# EXHIBIT A

# FEDERAL HIGHWAY ADMINISTRATION

## COMPETITIVE GRANT PROGRAM GENERAL TERMS AND CONDITIONS

## Date: April 22, 2025

# TABLE OF CONTENTS

GENERAL TERMS AND CONDITIONS ....................................................................... 6
Article 1 PURPOSE ...................................................................................................... 6
    1.1    Purpose ................................................................................................................ 6
Article 2 FHWA ROLE ................................................................................................ 6
    2.1    Federal Highway Administration (FHWA) Responsibilities. ............................ 6
Article 3 RECIPIENT ROLE ....................................................................................... 6
    3.1    Statements on the Project ................................................................................... 6
    3.2    Statements on Authority and Capacity .............................................................. 6
    3.3    USDOT FHWA Reliance ................................................................................... 7
    3.4    Project Delivery. ................................................................................................ 7
    3.5    Rights and Powers Affecting the Project. .......................................................... 7
    3.6    Subaward to Designated Subrecipient ............................................................... 8
    3.7    Designated Subrecipient Statements and Responsibilities ............................... 8
Article 4 AWARD AMOUNT, OBLIGATION, AND TIME PERIODS ...................... 8
    4.1    Federal Award Amount ...................................................................................... 8
    4.2    Federal Obligations. .......................................................................................... 8
    4.3    Budget Period. ................................................................................................... 9
    4.4    Period of Performance. .................................................................................... 10
Article 5 STATEMENT OF WORK, SCHEDULE, AND BUDGET CHANGES ..... 10
    5.1    Notification Requirement ................................................................................ 10
    5.2    Scope and Statement of Work Changes .......................................................... 10
    5.3    Schedule Changes ............................................................................................ 10
    5.4    Budget Changes. .............................................................................................. 11
    5.5    FHWA Acceptance of Changes. ..................................................................... 12
Article 6 GENERAL REPORTING TERMS .............................................................. 12
    6.1    Report Submission ........................................................................................... 12
    6.2    Alternative Reporting Methods ....................................................................... 12
Article 7 PROGRESS AND FINANCIAL REPORTING ........................................... 12
    7.1    Project Progress and Financial Reports and Recertifications. ......................... 12
    7.2    Final Progress Reports and Financial Information .......................................... 13
Article 8 PERFORMANCE REPORTING .................................................................. 13
    8.1    Baseline Performance Measurement. .............................................................. 13
    8.2    Post-construction Performance Measurement. ................................................ 14
    8.3    Project Outcomes Report. ................................................................................ 14
    8.4    General Performance Measures ....................................................................... 14
    8.5    Performance Reporting Survival. .................................................................... 15
Article 9 NONCOMPLIANCE AND REMEDIES ..................................................... 15
    9.1    Noncompliance Determinations. ..................................................................... 15
    9.2    Remedies. ......................................................................................................... 15
    9.3    Other Oversight Entities .................................................................................. 16
Article 10 AGREEMENT TERMINATION ................................................................ 16
    10.1    FHWA Termination. ....................................................................................... 16
    10.2    Closeout Termination. ..................................................................................... 17
    10.3    Post-Termination Adjustments ....................................................................... 17
    10.4    Non-Terminating Events.................................................................................. 17

10.5   Other Remedies ......................................................................................... 18
Article 11 MONITORING, FINANCIAL MANAGEMENT, CONTROLS, AND RECORDS
............................................................................................................................... 18
11.1   Recipient Monitoring and Record Retention. ......................................... 18
11.2   Financial Records and Audits. ................................................................ 18
11.3   Internal Controls .................................................................................... 19
11.4   USDOT Record Access .......................................................................... 19
11.5   Title 23 Oversight Responsibilities ....................................................... 19
Article 12 CONTRACTING AND SUBAWARDS ............................................ 19
12.1   Minimum Wage Rates ............................................................................ 19
12.2   Buy America. .......................................................................................... 19
12.3   Small and Disadvantaged Business Requirements .................................. 19
12.4   Engineering and Design Services ........................................................... 20
12.5   Prohibition on Certain Telecommunications and Video Surveillance Services or
          Equipment. ............................................................................................. 20
12.6   Pass-through Entity Responsibilities ...................................................... 20
12.7   Subaward and Contract Authorization. ................................................... 20
Article 13 COSTS, PAYMENTS, AND UNEXPENDED FUNDS ..................... 20
13.1   Limitation of Federal Award Amount. .................................................... 20
13.2   Projects Costs. ........................................................................................ 21
13.3   Timing of Project Costs. ......................................................................... 21
13.4   Recipient Recovery of Federal Funds ..................................................... 21
13.5   Unexpended Federal Funds ..................................................................... 21
13.6   Timing of Payments to the Recipient. ..................................................... 21
13.7   Payment Method. .................................................................................... 21
13.8   Information Supporting Expenditures. ..................................................... 22
13.9   Reimbursement Frequency ...................................................................... 22
Article 14 LIQUIDATION, ADJUSTMENTS, AND FUNDS AVAILABILITY ..... 22
14.1   Liquidation of Recipient Obligations. ..................................................... 22
Article 15 AGREEMENT MODIFICATIONS .................................................... 23
15.1   Bilateral Modifications ........................................................................... 23
15.2   Unilateral Contact Modifications. ........................................................... 23
15.3   FHWA Unilateral Modifications. ............................................................ 23
15.4   Other Modifications. ............................................................................... 23
Article 16 Civil Rights and Title VI ................................................................... 23
16.1   Title VI. .................................................................................................. 23
16.2   Legacy Infrastructure and Facilities. ...................................................... 24
Article 17 CRITICAL INFRASTRUCTURE SECURITY AND RESILIENCE ..... 24
17.1   Critical Infrastructure Security and Resilience. ...................................... 24
Article 18 FEDERAL FINANCIAL ASSISTANCE, ADMINISTRATIVE, AND NATIONAL
POLICY REQUIREMENTS ............................................................................... 25
18.1   Uniform Administrative Requirements for Federal Awards ..................... 25
18.2   Federal Law and Public Policy Requirements. ....................................... 25
18.3   Implementation of Executive Order 14025 ............................................. 25
18.4   Implementation of Executive Order 14173 ............................................. 25
18.5   Federal Freedom of Information Act. ...................................................... 26

18.6    History of Performance ............................................................................ 26
18.7    Whistleblower Protection ......................................................................... 26
18.8    External Award Terms and Obligations .................................................... 26
18.9    Incorporated Certifications ....................................................................... 27
Article 19 ASSIGNMENT ....................................................................................... 27
19.1    Assignment Prohibited. ............................................................................ 27
Article 20 WAIVER ................................................................................................. 27
20.1    Waivers. .................................................................................................... 27
Article 21 ADDITIONAL TERMS AND CONDITIONS ........................................ 27
21.1    Effect of Urban or Rural Designation. ...................................................... 27
21.2    Disclaimer of Federal Liability ................................................................ 28
21.3    Relocation and Real Property Acquisition. ............................................... 28
21.4    Equipment Disposition. ............................................................................ 28
21.5    Environmental Review. ............................................................................. 28
21.6    Railroad Coordination .............................................................................. 30
Article 22 MANDATORY AWARD INFORMATION ............................................ 30
22.1    Information Contained in a Federal Award ............................................... 30
22.2    Federal Award Identification Number. ...................................................... 30
22.3    Recipient's Unique Entity Identifier. ........................................................ 30
Article 23 CONSTRUCTION AND DEFINITIONS ................................................ 31
23.1    Schedules .................................................................................................. 31
23.2    Exhibits .................................................................................................... 31
23.3    Construction. ............................................................................................ 31
23.4    Integration. ............................................................................................... 31
23.5    Definitions ................................................................................................ 32
Article 24 AGREEMENT EXECUTION AND EFFECTIVE DATE ........................ 32
24.1    Counterparts.............................................................................................. 32
24.2    Effective Date ........................................................................................... 32

## Index of Definitions

Environmental Review Entity ............................................................................ 29

Federal Share ............................................................................................... 12

FHWA ......................................................................................................... 6

General Terms and Conditions ......................................................................... 32

Grant .......................................................................................................... 32

Grant Amount .............................................................................................. 32

Grant Program ............................................................................................. 32

Program Statute ........................................................................................... 32

Project ........................................................................................................ 32

Project Closeout ........................................................................................... 17

Project Cost Savings ..................................................................................... 11

Technical Application ..................................................................................... 32

Title VI ....................................................................................................... 24

## GENERAL TERMS AND CONDITIONS

These General Terms and Conditions are incorporated by reference in this grant agreement under the Grant Program. The term "Recipient" is defined in this grant agreement. This grant agreement includes schedules A through H. The grant agreement may include special terms and conditions in grant agreement articles or schedules.

## ARTICLE 1
## PURPOSE

1.1    **Purpose.** The purpose of this award is to fund the eligible project defined in this grant agreement that has been selected to receive an award for the Grant Program. The parties will accomplish that purpose by achieving the following objectives:

(1)    timely completing the Project; and

(2)    ensuring that this award does not substitute for non-Federal investment in the Project, except as proposed in the Technical Application, as modified by schedule E.

## ARTICLE 2
## FHWA ROLE

2.1    **Federal Highway Administration (FHWA) Responsibilities.**

(a)    The FHWA is the operating administration under the United States Department of Transportation ("USDOT") responsible for the administration of the Grant Program, the approval and execution of this grant agreement, and any modifications to this grant agreement under section 15.1.

## ARTICLE 3
## RECIPIENT ROLE

3.1    **Statements on the Project.** The Recipient states that:

(1)    all material statements of fact in the Technical Application were accurate when that application was submitted; and

(2)    schedule E documents all material changes in the information contained in that application.

3.2    **Statements on Authority and Capacity.** The Recipient states that:

(1)    it has the authority to receive Federal financial assistance under this grant agreement;

(2)    it has the legal authority to complete the Project;

(3)    it has the capacity, including institutional, managerial, and financial capacity, to comply with its obligations under this grant agreement;

(4)    not less than the difference between the total eligible project costs listed in section 3 of schedule D and the Grant Amount listed in section 1 of schedule D is committed to fund the Project;

(5)    it has sufficient funds available to ensure that infrastructure completed or improved under this grant agreement will be operated and maintained in compliance with this agreement and applicable Federal law; and

(6)    the individual executing this grant agreement on behalf of the Recipient has authority to enter this grant agreement and make the statements in this article 3 and in section 18.9 on behalf of the Recipient.

**3.3    USDOT FHWA Reliance.** The Recipient acknowledges that:

(1)    the USDOT FHWA relied on statements of fact in the Technical Application to select the Project to receive this award;

(2)    the USDOT FHWA relied on statements of fact in both the Technical Application and this grant agreement to determine that the Recipient and the Project are eligible under the terms of the Notice of Funding Opportunity ("NOFO") in section 7 of schedule D.

(3)    the USDOT FHWA's selection of the Project to receive this award prevented awards under the NOFO to other eligible applicants.

**3.4    Project Delivery.**

(a) The Recipient shall complete the Project under the terms of this grant agreement.

(b) The Recipient shall ensure that the Project is financed, constructed, operated, and maintained in accordance with all Federal laws, regulations, and policies that are applicable to the Project.

**3.5    Rights and Powers Affecting the Project.**

(a) The Recipient shall not take or permit any action that deprive it of any rights or powers necessary to the Recipient's performance under this grant agreement without written approval of the FHWA.

(b) The Recipient shall act promptly, in a manner acceptable to the FHWA, to

acquire, extinguish, or modify any outstanding rights or claims of right of others that would interfere with the Recipient's performance under this grant agreement.

**3.6    Subaward to Designated Subrecipient.** If section 7 of schedule A identifies a Designated Subrecipient:

(1)    the Recipient hereby awards a subaward to the Designated Subrecipient for the purpose described in section 1.1;

(2)    the Recipient and the Designated Subrecipient may enter into a separate agreement, to which the FHWA is not a party, assigning responsibilities, including administrative and oversight responsibilities, among the Recipient and the Designated Subrecipient; and

(3)    for the purpose of 2 C.F.R. parts 200 and 1201, the Recipient is a pass-through entity.

**3.7    Designated Subrecipient Statements and Responsibilities.** If section 7 of schedule A identifies a Designated Subrecipient:

(1)    the Designated Subrecipient affirms all statements and acknowledgments that are attributed to the Recipient under sections 3.1 and 3.2; and

(2)    the Designated Subrecipient assumes the Recipient's reporting obligations under article 7.


## ARTICLE 4
## AWARD AMOUNT, OBLIGATION, AND TIME PERIODS


**4.1    Federal Award Amount.** The FHWA hereby awards a Grant to the Recipient in the amount listed in section 1 of schedule D as the Grant Amount.

**4.2    Federal Obligations.**

(a)    If the Federal Obligation Type identified in section 2 of schedule D is "Single," then this grant agreement obligates for the budget period the amount listed in section 1 of schedule D as the Grant Amount and sections 4.2(c)–4.2(h) do not apply to this grant agreement.

(b)    If the Federal Obligation Type identified in section 2 of schedule D is "Multiple," then an amount up to the Grant Amount listed in section 1 of schedule D will be obligated with one initial obligation and one or more subsequent, optional obligations, as described in sections 4.2(c)–4.2(h).

(c)    The Fund Obligation Table in section 2 of schedule D allocates the Grant among

separate portions of the Project for the purpose of the Federal obligation of funds. The scope of each portion of the Project that is identified in that table is described in the Technical Application, as modified by schedule E.

(d) This grant agreement obligates for the budget period only for the amounts allocated in the Fund Obligation Table in section 2 of schedule D to the portion of the project described under "First Fund Obligation" in section 1 of schedule C.

(e) This grant agreement does not obligate amounts allocated in the Fund Obligation Table in section 2 of schedule D to any portion of the project except the portion described under "First Fund Obligation" in section 1 of schedule C. The parties may obligate the amounts allocated to those portions of the Project only as described in section 4.2(f) or by modifying this grant agreement under article 15.

(f) If the USDOT Payment System identified in section 5 of schedule A is "FMIS," then for each portion of the Project except the portion described under "First Fund Obligation" in section 1 of schedule C, the amount allocated in section 2 of schedule D to that portion of the Project is obligated if, not later than the statutory lapse date identified in this grant agreement as applicable to the Grant Program, the parties execute an instrument, in the form provided in Exhibit D, documenting that:

(1) the FHWA determines that all applicable Federal requirements for obligating the amount are satisfied; and

(2) the Recipient states that it is not required to request a modification of this grant agreement under article 5.

(g) The Recipient shall not request reimbursement of costs for a portion of the Project described in section 1 of Schedule C except for the portion described under "First Fund Obligation", unless the amount allocated in section 2 of schedule D to that portion is obligated under section 4.2(f).

(h) The Recipient acknowledges that:

(1) the FHWA is not liable for payments for a portion of the Project described in section 1 of Schedule C except for the portion described under "First Fund Obligation", unless the amount allocated in section 2 of schedule D to that portion of the Project is obligated under section 4.2(f);

(2) any portion of the Grant that is not obligated under this section 4.2 by the statutory lapse date identified in section 6 of schedule For those funds lapses on the day after that date and becomes unavailable for the Project; and

(3) the FHWA may consider the failure to obligate funds by the statutory lapse date identified in section 6 of schedule F for those funds to be a basis for terminating this grant agreement under section 10.1.

**4.3    Budget Period.**

(a) If the Federal Obligation Type identified in section 1 of schedule C is "Single," then the budget period for this award begins on the effective date of this grant agreement and ends on the budget period end date that is listed in section 1 of schedule C or as determined in FMIS.

(b) If the Federal Obligation Type identified in section 1 of schedule C is "Multiple," then the first budget period for this award begins on the effective date of this grant agreement and the last budget period end date shall be no later than the end of the period of performance dated identified in section 4.4.

(c) In this grant agreement, "budget period" is used as defined at 2 C.F.R. 200.1.

**4.4    Period of Performance.**

(a) The period of performance for this award begins on the effective date of this grant agreement and ends on the period of performance end date that is listed in section 1 of schedule C.

(b) In this grant agreement, "period of performance" is used as defined at 2 C.F.R. 200.1.

## ARTICLE 5
## STATEMENT OF WORK, SCHEDULE, AND BUDGET CHANGES

**5.1    Notification Requirement.** The Recipient shall notify all FHWA representatives who are identified in section 4 of schedule A in writing within 30 calendar days of any change in circumstances or commitments that adversely affect the Recipient's plan to complete the Project. In that notification, the Recipient shall describe the change and what actions the Recipient has taken or plans to take to ensure completion of the Project. This notification requirement under this section 5.1 is separate from any requirements under this article 5 that the Recipient request modification of this grant agreement.

**5.2    Scope and Statement of Work Changes.** If the Project's activities differ from the activities described in the Technical Application, then the Recipient shall request a modification of this grant agreement in schedule E.

**5.3    Schedule Changes.** If one or more of the following conditions are satisfied, then the Recipient shall request a modification of this grant agreement to update schedule C:

(1)    a completion date for the Project or a portion of the Project is listed in section 2 of schedule C and the Recipient's estimate for that milestone changes to a date that is more than six months after the date listed in section 2 of schedule C;

(2)    a schedule change would require the budget period to continue after the budget period end date listed in section 1 of schedule C; and

(3)     a schedule change would require the period of performance to continue
         after the Period of Performance End Date listed in section 1 of schedule C.

For other schedule changes, the Recipient shall follow the applicable procedures of the
FHWA and document the changes in writing.

### 5.4    Budget Changes.

(a) The Recipient acknowledges that if the cost of completing the Project increases:

(1)     that increase does not affect the Recipient's obligation under this grant
         agreement to complete the Project; and

(2)     the FHWA will not increase the amount of this award to address any funding
         shortfall.

(b) The Recipient shall request a modification of this grant agreement to update schedule
D if, in comparing the Project's budget to the amounts listed in section 3 of
schedule D:

(1)     the total "Non-Federal Funds" amount decreases; or

(2)     the total eligible Project costs amount decreases.

(c) For budget changes that are not identified in section 5.4(b), the Recipient shall follow
the applicable procedures of the FHWA and document the changes in writing.

(d) If there are Project Cost Savings, then the Recipient may propose to the FHWA, in
writing consistent with the FHWA's requirements, to include in this grant agreement
specific additional activities that are within the scope of this award, as defined in
section 1.1 and schedule B, and that the Recipient could complete with the Project
Cost Savings.

In this grant agreement, "**Project Cost Savings**" means the difference between the
actual eligible project costs and the total eligible project costs that are listed in
section 3 of schedule D, but only if the actual eligible project costs are less than the
total eligible project costs that are listed in section 3 of schedule D. There are no
Project Cost Savings if the actual eligible project costs are equal to or greater than the
total eligible project costs that are listed in section 3 of schedule D.

(e) If there are Project Cost Savings and either the Recipient does not make a proposal
under section 5.4(d) or the FHWA does not accept the Recipient's proposal under
section 5.4(d), then:

(1)     in a request under section 5.4(b), the Recipient shall reduce the Federal Share
         by the Project Cost Savings; and

(2)     if that modification reduces this award and the FHWA had reimbursed

costs exceeding the revised award, the Recipient shall refund to the FHWA the difference between the reimbursed costs and the revised award.

In this agreement, "**Federal Share**" means the sum of the total "Grant Funds" and "Other Federal Funds" amounts that are listed in section 3 of schedule D.

(f) The Recipient acknowledges that amounts that are required to be refunded under section 5.4(e)(2) constitute a debt to the Federal Government that the FHWA may collect under 2 C.F.R. 200.346 and the Standards for Administrative Collection of Claims (31 C.F.R. part 901).

**5.5**     **FHWA Acceptance of Changes.** The FHWA may accept or reject modifications requested under this article 5, and in doing so may elect to consider only the interests of the Grant Program and the FHWA. The Recipient acknowledges that requesting a modification under this article 5 does not amend, modify, or supplement this grant agreement unless the FHWA accepts that modification request and the parties modify this grant agreement under section 15.1.


# ARTICLE 6
# GENERAL REPORTING TERMS


**6.1**     **Report Submission.** The Recipient shall send all reports required by this grant agreement to all FHWA contacts who are listed in section 4 of schedule A.

**6.2**     **Alternative Reporting Methods.** The FHWA may establish processes for the Recipient to submit reports required by this grant agreement, including electronic submission processes. If the Recipient is notified of those processes in writing, the Recipient shall use the processes required by the FHWA.


# ARTICLE 7
# PROGRESS AND FINANCIAL REPORTING


**7.1**     **Project Progress and Financial Reports and Recertifications.**

(a) The Recipient will submit to FHWA project progress and financial reports and recertifications based on the frequency defined in the NOFO and section 8 of schedule A. If "Quarterly" or "Semiannual" are selected in section 8 of schedule A, then the reporting period and report submission due dates are defined in the table below.

| Quarterly Reporting Periods | | Semiannual Reporting Periods | |
|---|---|---|---|
| **Reporting Period** | **Due Date** | **Reporting Period** | **Due Date** |
| Quarter 1 | January 1 – March 31 | April 20 | Half Year 1 | January 1 – June 30 | July 20 |

| Quarter 2 | April 1 – June 30 | July 20 | Half Year 2 | July 1 – December 31 | January 20 of the next calendar year |
| Quarter 3 | July 1 – September 30 | October 20 | | | |
| Quarter 4 | October 1 – December 31 | January 20 of the next calendar year | | | |

If "Annual" is selected in section 8 of schedule A, then the reporting period is from January 1 to December 31 and the Recipient must submit reports to FHWA by January 20 of the next calendar year.

(b) If the date of this grant agreement is in the final month of a calendar year reporting period, then the Recipient shall submit the first Project Progress Report and Recertification in the second reporting period for the subsequent that begins after the date of this grant agreement.

(c) The Recipient shall submit to the FHWA a Project Progress Report and Recertification in the format and with the content described in exhibit C.

**7.2    Final Progress Reports and Financial Information.** No later than 120 days after the end of the period of performance, the Recipient shall submit:

(1)    a Final Project Progress Report and Recertification in the format and with the content described in exhibit C for each Project Progress Report and Recertification, including a final Federal Financial Report (SF-425); and

(2)    any other information required under FHWA award closeout procedures.

**ARTICLE 8
PERFORMANCE REPORTING**

**8.1    Baseline Performance Measurement.**

(a) The Recipient shall collect data for each performance measure that is identified in the Performance Measure Table in schedule G, accurate as of the Baseline Measurement Date that is identified in schedule G; and

(b) On or before the Baseline Report Date that is stated in schedule G, the Recipient shall submit a Baseline Performance Measurement Report that contains the data collected under this section 8.1 and a detailed description of the data sources, assumptions, variability, and estimated levels of precision for each performance measure that is

identified in the Performance Measure Table in schedule G.

**8.2    Post-construction Performance Measurement.**

(a)  For each performance measure that is identified in the Performance Measure Table in schedule G with quarterly measurement frequency, for each of 12 consecutive calendar quarters, beginning with the first calendar quarter that begins after the Project substantial completion date, at least once during the quarter, the Recipient shall collect data for that performance measure;

(b)  For each performance measure that is identified in the Performance Measure Table in schedule G with annual measurement frequency, the Recipient shall collect data for that performance measure on at least three separate occasions: (i) once during the four consecutive calendar quarters that begin after the Project substantial completion date; (ii) once during the fourth calendar quarter after the first collection; and (iii) once during the eighth calendar quarter after the first collection; and

(c)  Not later than January 31 of each year that follows a calendar year during which data was collected under this section 8.2, the Recipient shall submit to the USDOT a Post-Project Performance Measurement Report containing the data collected under this section 8.2 in the previous calendar year and stating the dates when the data was collected.

(d)  If an external factor significantly affects the value of a performance measure collected under this section 8.2, then the Recipient shall identify that external factor in the Post-Project Performance Measurement Report and discuss its influence on the performance measure.

**8.3    Project Outcomes Report.** The Recipient shall submit to the FHWA, not later than January 31 of the year that follows the final calendar year during which data was collected under section 8.2, a Project Outcomes Report that contains:

(1)  a narrative discussion detailing project successes and the influence of external factors on project expectations;

(2)  all baseline and post-Project performance measurement data that the Recipient reported in the Baseline Performance Measurement Report and the Post-Project Performance Measurement Reports; and

(3)  an *ex post* examination of project effectiveness relative to the baseline data that the Recipient reported in the Baseline Performance Measurement Report.

**8.4    General Performance Measures.** For each performance measure that is enumerated in schedule G, the Recipient shall ensure that all data collections under this article 8 are completed in a manner consistent with the description, location, and other attributes associated with that performance measure in schedule G.

**8.5**     **Performance Reporting Survival.** The data collection and reporting requirements in this article 8 survive the termination of this agreement.

## ARTICLE 9
## NONCOMPLIANCE AND REMEDIES

**9.1**     **Noncompliance Determinations.**

(a) If the FHWA determines that the Recipient may have failed to comply with the United States Constitution, Federal law, or the terms and conditions of this grant agreement, the FHWA may notify the Recipient of a proposed determination of noncompliance. For the notice to be effective, it must be written and the FHWA must include an explanation of the nature of the noncompliance, describe a remedy, state whether that remedy is proposed or effective at an already determined date, and describe the process through and form in which the Recipient may respond to the notice.

(b) If the FHWA notifies the Recipient of a proposed determination of noncompliance under section 9.1(a), the Recipient may, not later than 7 calendar days after the notice, respond to that notice in the form and through the process described in that notice. In its response, the Recipient may:

    (1)     accept the remedy;

    (2)     acknowledge the noncompliance, but propose an alternative remedy; or

    (3)     dispute the noncompliance.

To dispute the noncompliance, the Recipient must include in its response documentation or other information supporting the Recipient's compliance.

(c) The FHWA may make a final determination of noncompliance only:

    (1)     after considering the Recipient's response under section 9.1(b); or

    (2)     if the Recipient fails to respond under section 9.1(b), after the time for that response has passed.

(d) To make a final determination of noncompliance, the FHWA must provide a notice to the Recipient that states the bases for that determination.

**9.2**     **Remedies.**

(a) If the FHWA makes a final determination of noncompliance under section 9.1, the FHWA may impose a remedy, including:

    (1)     additional conditions on the award;

(2)     any remedy permitted under 2 C.F.R. 200.339–200.340, including withholding of payments; disallowance of previously reimbursed costs, requiring refunds from the Recipient to the FHWA; suspension or termination of the award; or suspension and debarment under 2 C.F.R. part 180; or

(3)     any other remedy legally available.

(b) To impose a remedy, the FHWA must provide a written notice to the Recipient that describes the remedy, but the FHWA may make the remedy effective before the Recipient receives that notice.

(c) If the FHWA determines that it is in the public interest, the FHWA may impose a remedy, including all remedies described in section 9.2(a), before making a final determination of noncompliance under section 9.1. If it does so, then the notice provided under section 9.1(d) must also state whether the remedy imposed will continue, be rescinded, or modified.

(d) In imposing a remedy under this section 9.2 or making a public interest determination under section 9.2(c), the FHWA may elect to consider the interests of only the FHWA.

(e) The Recipient acknowledges that amounts that the FHWA requires the Recipient to refund to the FHWA due to a remedy under this section 9.2 constitute a debt to the Federal Government that the FHWA may collect under 2 C.F.R. 200.346 and the Standards for Administrative Collection of Claims (31 C.F.R. part 901).

**9.3    Other Oversight Entities.** Nothing in this article 9 limits any party's authority to report activity under this grant agreement to the United States Department of Transportation Inspector General or other appropriate oversight entities.

## ARTICLE 10
## AGREEMENT TERMINATION

**10.1    FHWA Termination.**

(a) The FHWA may terminate this grant agreement and all of its obligations under this agreement if any of the following occurs:

(1)     the Recipient fails to obtain or provide any non- Grant contribution or alternatives approved by the FHWA as provided in this grant agreement and consistent with schedule D;

(2)     a completion date for the Project or a component of the Project is listed in section 2 of schedule C and the Recipient fails to meet that milestone by six months after the date listed in section 2 of schedule C;

(3)     the Recipient fails to meet a milestone listed in section 3 of schedule C by the deadline date listed in that section for that milestone;

(4)     the Recipient fails to comply with the terms and conditions of this grant agreement, including a material failure to comply with the project schedule in schedule C even if it is beyond the reasonable control of the Recipient;

(5)     circumstances cause changes to the Project that the FHWA determines are inconsistent with the FHWA's basis for selecting the Project to receive a Grant; or

(6)     the FHWA determines that termination of this grant agreement is in the public interest.

(b) In terminating this grant agreement under this section, the FHWA may elect to consider only the interests of the FHWA.

(c) This section 10.1 does not limit the FHWA's ability to terminate this grant agreement as a remedy under section 9.2.

(d) The Recipient may request that the FHWA terminate this grant agreement under this section 10.1.

**10.2    Closeout Termination.**

(a) This grant agreement terminates on Project Closeout.

(b) In this grant agreement, "**Project Closeout**" means the date that the FHWA notifies the Recipient that the award is closed out. Under 2 C.F.R. 200.344, Project Closeout should occur no later than one year after the end of the period of performance.

**10.3    Post-Termination Adjustments.** The Recipient acknowledges that under 2 C.F.R. 200.345–200.346, termination of this grant agreement does not extinguish the FHWA's authority to disallow costs, including costs that the FHWA reimbursed before termination, and recover funds from the Recipient.

**10.4    Non-Terminating Events.**

(a) The end of the budget period described under section 4.3 does not terminate this grant agreement or the Recipient's obligations under this grant agreement.

(b) The end of the period of performance described under section 4.4 does not terminate this grant agreement or the Recipient's obligations under this grant agreement.

(c) The cancellation of funds under section 7 of schedule F does not terminate this grant agreement or the Recipient's obligations under this grant agreement.

**10.5**   **Other Remedies.** The termination authority under this article 10 supplements and does not limit the FHWA's remedial authority under article 9 or 2 C.F.R. part 200, including 2 C.F.R. 200.339–200.340.

# ARTICLE 11
## MONITORING, FINANCIAL MANAGEMENT, CONTROLS, AND RECORDS

**11.1**   **Recipient Monitoring and Record Retention.**

(a) The Recipient shall monitor activities under this award, including activities under subawards and contracts, to ensure:

  (1)   that those activities comply with this grant agreement; and

  (2)   that funds provided under this award are not expended on costs that are not allowable under this award or not allocable to this award.

(b) If the Recipient makes a subaward under this award, the Recipient shall monitor the activities of the subrecipient in compliance with 2 C.F.R. 200.332(e).

(c) The Recipient shall retain records relevant to the award as required under 2 C.F.R. 200.334.

**11.2**   **Financial Records and Audits.**

(a) The Recipient shall keep all project accounts and records that fully disclose the amount and disposition by the Recipient of the award funds, the total cost of the Project, and the amount or nature of that portion of the cost of the Project supplied by other sources, and any other financial records related to the project.

(b) The Recipient shall keep accounts and records described under section 11.2(a) in accordance with a financial management system that meets the requirements of 2 C.F.R. 200.302–200.307, 2 C.F.R. 200 subpart F, and title 23, United States Code, and will facilitate an effective audit in accordance with 31 U.S.C. 7501–7506.

(c) The Recipient shall separately identify expenditures under the fiscal year of the Grant Program in financial records required for audits under 31 U.S.C. 7501–7506. Specifically, the Recipient shall:

  (1)   list expenditures under that program separately on the schedule of expenditures of Federal awards required under 2 C.F.R. 200 subpart F, including the Federal Fiscal Year ("FY") in the program name; and

  (2)   list expenditures under that program on a separate row under Part II, Item 1 ("Federal Awards Expended During Fiscal Period") of Form SF-SAC, including the Federal Fiscal Year ("FY") in column c ("Additional Award

Identification").

**11.3    Internal Controls.** The Recipient shall establish and maintain internal controls as required under 2 C.F.R. 200.303.

**11.4    USDOT Record Access.** The FHWA may access Recipient records related to this award under 2 C.F.R. 200.337.

**11.5    Title 23 Oversight Responsibilities.** This award is subject to the oversight requirements of title 23, United States Code.

**ARTICLE 12**
**CONTRACTING AND SUBAWARDS**

**12.1    Minimum Wage Rates.** The Recipient shall include, in all contracts in excess of $2,000 for construction work to be performed on a Federal-aid highway (or work that is treated as if performed on a Federal-aid highway) under the Project that involves labor, provisions establishing minimum rates of wages, to be predetermined by the United States Secretary of Labor, in accordance with 23 U.S.C. 113, as applicable, that contractors shall pay to skilled and unskilled labor, and such minimum rates shall be stated in the invitation for bids and shall be included in proposals or bids for the work.

**12.2    Buy America.**

(a) Steel, iron, and manufactured products used in the Project are subject to 23 U.S.C. 313, as implemented by the FHWA. The Recipient acknowledges that this grant agreement is neither a waiver of 23 U.S.C. 313(a) nor a finding under 23 U.S.C. 313(b).

(b) Construction materials used in the Project are subject to the domestic preference requirement at § 70914 of the Build America, Buy America Act, Pub. L. No. 117-58, div. G, tit. IX, subtit. A, 135 Stat. 429, 1298 (2021), as implemented by OMB, USDOT, and FHWA. The Recipient acknowledges that this grant agreement is neither a waiver of § 70914(a) nor a finding under § 70914(b).

(c) Under 2 C.F.R. 200.322, as appropriate and to the extent consistent with law, the Recipient should, to the greatest extent practicable under this award, provide a preference for the purchase, acquisition, or use of goods, products, or materials produced in the United States (including but not limited to iron, aluminum, steel, cement, and other manufactured products). The Recipient shall include the requirements of 2 C.F.R. 200.322 in all subawards including all contracts and purchase orders for work or products under this award.

**12.3    Small and Disadvantaged Business Requirements.**

(a) If any funds under this award are administered by or through a State Department of Transportation, the Recipient shall expend those funds in compliance with the requirements at 49 C.F.R. part 26, including any amendments thereto.

(b) If any funds under this award are not administered by or through a State Department of Transportation, the Recipient shall expend those funds in compliance with the requirements at 2 C.F.R. 200.321, including any amendments thereto.

**12.4    Engineering and Design Services.** As applicable, the Recipient shall award each contract or sub- contract for program management, construction management, planning studies, feasibility studies, architectural services, preliminary engineering, design, engineering, surveying, mapping, or related services with respect to the Project in the same manner that a contract for architectural and engineering services that is negotiated under the Brooks Act, 40 U.S.C. 1101-1104 as implemented in 23 U.S.C. 112(b)(2), or an equivalent qualifications-based requirement prescribed for or by the Recipient and approved in writing by the USDOT.

**12.5    Prohibition on Certain Telecommunications and Video Surveillance Services or Equipment.** The Recipient acknowledges that Section 889 of Pub. L. No. 115-232 and 2 C.F.R. 200.216 prohibit the Recipient and all subrecipients from procuring or obtaining certain telecommunications and video surveillance services or equipment under the Grant award.

**12.6    Pass-through Entity Responsibilities.** If the Recipient makes a subaward under the Grant award, the Recipient shall comply with the requirements on pass-through entities under 2 C.F.R. parts 200 and 1201, including 2 C.F.R. 200.331–200.333.

**12.7    Subaward and Contract Authorization.**

(a) If the FHWA Office for Subaward and Contract Authorization identified in section 6 of schedule A is "FHWA Division," then the Recipient shall comply with subaward and contract authorization requirements under 23 C.F.R chapter I.

(b) If the FHWA Office for Subaward and Contract Authorization identified in section 6 of schedule A is "FHWA Office of Acquisition and Grants Management," then the Recipient must follow the requirements in 2 C.F.R. 200.308, 2 C.F.R. 200.333, and 23 C.F.R. 172, as applicable. Approvals under 2 C.F.R. 200.308(f)(6) do not apply to the procurement of goods and services.

## ARTICLE 13
## COSTS, PAYMENTS, AND UNEXPENDED FUNDS

**13.1    Limitation of Federal Award Amount.** Under the Grant Program award, the FHWA shall not provide funding greater than the amount obligated under section 4.2, and FMIS as applicable. The Recipient acknowledges that the FHWA is not liable for

payments exceeding that amount, and the Recipient shall not request reimbursement of costs exceeding that amount.

**13.2    Projects Costs.** The Grant Program award is subject to the cost principles at 2 C.F.R. 200 subpart E, including provisions on determining allocable costs and determining allowable costs.

**13.3    Timing of Project Costs.**

(a) The Recipient shall not charge to the Grant Program award costs that are incurred after the budget period.

(b) Except as permitted under section 13.3(d), the Recipient shall not charge to the Grant award costs that were incurred before the date of this grant agreement.

(c) The execution of this grant agreement will terminate and supersede any previous FHWA approval for the Recipient to incur costs under the Grant Program award for the Project. Section 4 of schedule D is the exclusive FHWA approval of costs incurred before the date of this grant agreement.

(d) If section 4 of schedule D identifies an advance construction authorization under 23 U.S.C. 115 or identifies a pre-award approval under 2 C.F.R. 200.458, then the Recipient may charge to the Grant Program award, for payment from the Grant Program grant or other Federal amounts, costs that were incurred before the date of this grant agreement, were consistent with that authorization, and would have been allowable if incurred during the budget period.

**13.4    Recipient Recovery of Federal Funds.** The Recipient shall make all reasonable efforts, including initiating litigation, if necessary, to recover Federal funds if the FHWA determines, after consultation with the Recipient, that those funds have been spent fraudulently, wastefully, or in violation of Federal laws, or misused in any manner under this award. The Recipient shall not enter a settlement or other final position, in court or otherwise, involving the recovery of funds under the Grant award unless approved in advance in writing by the FHWA.

**13.5    Unexpended Federal Funds.** Any Federal funds that are awarded at section 4.1 but not expended on allocable, allowable costs remain the property of the United States.

**13.6    Timing of Payments to the Recipient.**

(a) Reimbursement is the payment method for the Grant Program.

(b) The Recipient shall not request reimbursement of a cost before the Recipient has entered into an obligation for that cost.

**13.7    Payment Method.**

(a) If the USDOT Payment System identified in section 5 of schedule A is "FMIS," then

the Recipient shall follow FMIS procedures to request and receive reimbursement payments under this award.

(b) If the USDOT Payment System identified in section 5 of schedule A is "DELPHI eInvoicing," then the Recipient shall use the DELPHI eInvoicing System to request reimbursement under this award unless the FHWA agreement officer provides written approval for the Recipient to use a different request and payment method.

(c) The FHWA may deny a payment request that is not submitted using the method identified in this section 13.7.

### 13.8    Information Supporting Expenditures.

(a) If the USDOT Payment System identified in section 5 of schedule A is "DELPHI eInvoicing," then when requesting reimbursement of costs incurred or credit for cost share incurred, the Recipient shall electronically submit the SF 271 (Outlay Report and Request for Reimbursement for Construction Programs), shall identify the Federal share and the Recipient's share of costs, and shall submit supporting cost detail to clearly document all costs incurred. As supporting cost detail, the Recipient shall include a detailed breakout of all costs incurred, including direct labor, indirect costs, other direct costs, and travel.

(b) If the Recipient submits a request for reimbursement that the FHWA determines does not include or is not supported by sufficient detail, the FHWA may deny the request or withhold processing the request until the Recipient provides sufficient detail.

### 13.9    Reimbursement Frequency. If the USDOT Payment System identified in section 5 of schedule A is "DELPHI eInvoicing," then the Recipient shall not request reimbursement more frequently than monthly.

### ARTICLE 14
### LIQUIDATION, ADJUSTMENTS, AND FUNDS AVAILABILITY

### 14.1    Liquidation of Recipient Obligations.

(a) The Recipient shall liquidate all obligations of award funds under this grant agreement not later than the earlier of (1) 120 days after the end of the period of performance or (2) the statutory funds cancellation date identified in section 7 of schedule F.

(b) Liquidation of obligations and adjustment of costs under the project-specific agreement follow the requirements of 2 C.F.R. 200.344–200.346.

## ARTICLE 15
## AGREEMENT MODIFICATIONS

**15.1    Bilateral Modifications.** The parties may amend, modify, or supplement this grant agreement by mutual agreement in writing signed by the FHWA and the Recipient. Either party may request to amend, modify, or supplement this grant agreement by written notice to the other party.

**15.2    Unilateral Contact Modifications.**

(a) The Recipient may update the contacts who are listed in section 3 of schedule A by written notice to all of the FHWA contacts who are listed in section 4 of schedule A.

(b) The FHWA may update the contacts who are listed in section 4 of schedule A by written notice to all of the Recipient contacts who are listed in section 3 of schedule A.

**15.3    FHWA Unilateral Modifications.**

(a) The FHWA may unilaterally modify this grant agreement to comply with Federal law, including the Program Statute.

(b) To unilaterally modify this grant agreement under this section 15.3, the FHWA must provide a notice to the Recipient that includes a description of the modification and state the date that the modification is effective.

**15.4    Other Modifications.** The parties shall not amend, modify, or supplement this grant agreement except as permitted under sections 15.1, 15.2, or 15.3. If an amendment, modification, or supplement is not permitted under section 15.1, not permitted under section 15.2, and not permitted under section 15.3, it is void.

## ARTICLE 16
## CIVIL RIGHTS AND TITLE VI

**16.1    Title VI.**

(a)  The purpose of sections 16.1(b)-16.1(c) is to ensure that the Recipient has a plan to comply with Title VI and 49 C.F.R. part 21, including any amendments thereto.

(b) If the Recipient is a State DOT recipient of apportioned (formula) Federal-aid highway funding or a non-State DOT who has received other Federal funds and has a current Title VI Plan on file with the FHWA, then the Recipient shall submit to the FHWA before signing this grant agreement documentation showing that the Recipient has a current Title VI Plan on file with FHWA.

(c) If the Recipient is a non-State DOT and does not have a current Title VI Plan on file with the FHWA then as described in chapter II, section 2 of DOT Order 1000.12C, including any amendments or updates thereto, FHWA must complete a Title VI Assessment of the Recipient before entering this grant agreement. Until DOT guidance on conducting such an assessment is finalized, FHWA may rely on the date of Title VI assurances provided with the signing of the grant agreement.

(d) In this section 12.1, **"Title VI"** means Title VI of the Civil Rights Act of 1964, Pub. L. No. 88-352 (codified at 42 U.S.C. 2000d to 2000d-4a).

## 16.2    Legacy Infrastructure and Facilities.

In furtherance of the Americans with Disabilities Act of 1990 (ADA), Pub. L. No. 101-336 (codified at 42 U.S.C. 12101-12213), and Section 504 of the Rehabilitation Act of 1973, Pub. L. No. 93-112 (codified at 29 U.S.C. 794), not later than one year after the date of this agreement, the Recipient shall develop a plan to address any legacy infrastructure or facilities that are not compliant with ADA standards and are involved in, or closely associated with, the Project. Consistent with 49 C.F.R. part 27, even in the absence of prior discriminatory practice or usage, a Recipient administering a program or activity receiving Federal financial assistance is expected to take action to ensure that no person is excluded from participation in or denied the benefits of the program or activity on the basis of disability.

# ARTICLE 17
# CRITICAL INFRASTRUCTURE SECURITY AND RESILIENCE

## 17.1    Critical Infrastructure Security and Resilience.

(a) Consistent with Presidential Policy Directive 21, "Critical Infrastructure Security and Resilience" (Feb. 12, 2013), and the National Security Presidential Memorandum on Critical Infrastructure Security and Resilience (NSM-22), the Recipient shall consider physical and cyber security and resilience in planning, design, and oversight of the Project.

(b) If the Security Risk Designation in section 3 of schedule F is "Elevated," then, not later that than two years after the date of this agreement, the Recipient shall submit to the FHWA a report that:

    (1)    identifies a cybersecurity Point of Contact for the transportation infrastructure being improved in the Project;

    (2)    summarizes or contains a cybersecurity incident reporting plan for the transportation infrastructure being improved in the Project;

    (3)    summarizes or contains a cybersecurity incident response plan for the transportation infrastructure being improved in the Project;

(4)    documents the results of a self-assessment of the Recipient's cybersecurity posture and capabilities; and

(5)    describes any additional actions that the Recipient has taken to consider or address cybersecurity risk of the transportation infrastructure being improved in the Project.

# ARTICLE 18
## FEDERAL FINANCIAL ASSISTANCE, ADMINISTRATIVE, AND NATIONAL POLICY REQUIREMENTS

**18.1    Uniform Administrative Requirements for Federal Awards.** The Recipient shall comply with the obligations on non-Federal entities under 2 C.F.R. parts 200 and 1201.

**18.2    Federal Law and Public Policy Requirements.**

(a) The Recipient shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

(b) The failure of this grant agreement to expressly identify Federal law applicable to the Recipient or activities under this grant agreement does not make that law inapplicable.

**18.3    Implementation of Executive Order 14025.** Consistent with Executive Order 14025, "Worker Organizing and Empowerment" (Apr. 26, 2021), Schedule H, Labor and Work, documents the consideration of job quality and labor rights, standards, and protections related to the Project.

**18.4    Implementation of Executive Order 14173**

(a) Pursuant to Section (3)(b)(iv)(A), Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, the Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

(b) Pursuant to Section (3)(b)(iv)(B), Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, by entering into this agreement, the Recipient certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal

anti-discrimination laws.

**18.5    Federal Freedom of Information Act.**

(a) The FHWA is subject to the Freedom of Information Act, 5 U.S.C. 552.

(b) The Recipient acknowledges that the Technical Application and materials submitted to the FHWA by the Recipient related to this grant agreement may become FHWA records subject to public release under 5 U.S.C. 552.

**18.6    History of Performance.** Under 2 C.F.R 200.206, any Federal agency may consider the Recipient's performance under this grant agreement, when evaluating the risks of making a future Federal financial assistance award to the Recipient.

**18.7    Whistleblower Protection.**

(a) The Recipient acknowledges that it is a "grantee" within the scope of 41 U.S.C. 4712, which prohibits the Recipient from taking certain actions against an employee for certain disclosures of information that the employee reasonably believes are evidence of gross mismanagement of the Grant Program award, gross waste of Federal funds, or a violation of Federal law related this this award.

(b) The Recipient shall inform its employees in writing of the rights and remedies provided under 41 U.S.C. 4712, in the predominant native language of the workforce.

**18.8    External Award Terms and Obligations.**

(a) In addition to this document and the contents described in article 25 this grant agreement includes the following additional terms as integral parts:

  (1)    Appendix A to 2 C.F.R. part 25: System for Award Management and Universal Identifier Requirements;

  (2)    Appendix A to 2 C.F.R. part 170: Reporting Subawards and Executive Compensation;

  (3)    2 C.F.R. part 175: Award Term for Trafficking in Persons; and

  (4)    Appendix XII to 2 C.F.R. part 200: Award Term and Condition for Recipient Integrity and Performance Matters.

(b) The Recipient shall comply with:

  (1)    49 C.F.R. part 20: New Restrictions on Lobbying;

  (2)    49 C.F.R. part 21: Nondiscrimination in Federally-Assisted Programs of the Department of Transportation—Effectuation of Title VI of the Civil Rights Act of 1964, including any amendments thereto;

(3)     49 C.F.R. part 27: Nondiscrimination on the Basis of Disability in
Programs or Activities Receiving Federal Financial Assistance;

(4)     23 C.F.R. Chapter 1: Federal Highway Administration, Department of
Transportation as, applicable to the Recipient.

(5)     Subpart B of 49 C.F.R. part 32: Governmentwide Requirements for Drug-
free Workplace (Financial Assistance).

**18.9    Incorporated Certifications.** The Recipient makes the statements in the following
certifications, which are incorporated by reference:

(1)     Appendix A to 49 C.F.R. part 20 (Certification Regarding Lobbying).


# ARTICLE 19
# ASSIGNMENT


**19.1    Assignment Prohibited.** The Recipient shall not transfer to any other entity any
discretion granted under this grant agreement, any right to satisfy a condition under
this grant agreement, any remedy under this grant agreement, or any obligation
imposed under this grant agreement.


# ARTICLE 20
# WAIVER


**20.1    Waivers.**

(a) A waiver of a term of this grant agreement granted by the FHWA will not be effective
unless it is in writing and signed by an authorized representative of the FHWA.

(b) A waiver of a term of this grant agreement granted by the FHWA on one occasion
will not operate as a waiver on other occasions.

(c) If the FHWA fails to require strict performance of a term of this grant agreement,
fails to exercise a remedy for a breach of this grant agreement, or fails to reject a
payment during a breach of this grant agreement, that failure does not constitute a
waiver of that term or breach.


# ARTICLE 21
# ADDITIONAL TERMS AND CONDITIONS


**21.1    Effect of Urban or Rural Designation.** As applicable to the Grant Program, based
on information that the Recipient provided to the FHWA, including the Technical

Application, if section 1 of schedule F designates the Grant award as an urban award or a rural award, as defined in the NOFO, then the Recipient shall comply with the requirements that accompany that designation on minimum award size, geographic location, and cost sharing.

**21.2   Disclaimer of Federal Liability.** The FHWA shall not be responsible or liable for any damage to property or any injury to persons that may arise from, or be incident to, performance or compliance with this grant agreement.

**21.3   Relocation and Real Property Acquisition.**

(a) The Recipient shall comply with the land acquisition policies in 49 C.F.R. part 24 subpart B and shall pay or reimburse property owners for necessary expenses as specified in that subpart.

(b) The Recipient shall provide a relocation assistance program offering the services described in 49 C.F.R. part 24 subpart C and shall provide reasonable relocation payments and assistance to displaced persons as required in 49 C.F.R. part 24 subparts D–E.

(c) The Recipient shall make available to displaced persons comparable replacement dwellings in accordance with 49 C.F.R. part 24.

**21.4   Equipment Disposition.**

(a) In accordance with 2 C.F.R. 200.313 and 1201.313, if the Recipient, a Designated Subrecipient, or a subrecipient acquires equipment under the Grant Program award, then when that equipment is no longer needed for the Project:

    (1) if the entity that acquired the equipment is a State, the State shall dispose of that equipment in accordance with State laws and procedures; and

    (2) if the entity that acquired the equipment is an Indian Tribe, the Indian Tribe shall dispose of that equipment in accordance with tribal laws and procedures. If such laws and procedures do not exist, Indian Tribes must follow the guidance in 2 C.F.R. 200.313; and

    (3) if the entity that acquired the equipment is neither a State nor an Indian Tribe, that entity shall request disposition instructions from the FHWA.

(b) In accordance with 2 C.F.R. 200.443(d), the distribution of the proceeds from the disposition of equipment must be made in accordance with 2 C.F.R. 200.310-200.316 and 2 C.F.R. 1201.313.

(c) The Recipient shall ensure compliance with this section 21.4 for all tiers of subawards under the Grant Program award.

**21.5   Environmental Review.**

(a) In this section, "**Environmental Review Entity**" means:

    (1)    if the Project is located in a State that has assumed responsibilities for environmental review activities under 23 U.S.C. 326 or 23 U.S.C. 327 and the Project is within the scope of the assumed responsibilities, the State; and

    (2)    for all other cases, the FHWA.

(b) Except as authorized under section 21.5(c), the Recipient shall not begin final design; acquire real property, construction materials, or equipment; begin construction; or take other actions that represent an irretrievable commitment of resources for the Project unless and until:

    (1)    the Environmental Review Entity complies with the National Environmental Policy Act, 42 U.S.C. 4321 et seq. and any other applicable environmental laws and regulations; and

    (2)    if the Environmental Review Entity is not the Recipient, the Environmental Review Entity provides the Recipient with written notice that the environmental review process is complete.

(c) If the Recipient is using procedures for early acquisition of real property under 23 C.F.R. 710.501 or hardship and protective acquisitions of real property 23 C.F.R. 710.503, the Recipient shall comply with 23 C.F.R. 771.113(d)(1).

(d) The Recipient acknowledges that:

    (1)    the Environmental Review Entity's actions under section 21.5(a) depend on the Recipient conducting necessary environmental analyses and submitting necessary documents to the Environmental Review Entity; and

    (2)    applicable environmental statutes and regulation may require the Recipient to prepare and submit documents to other Federal, State, and local agencies.

(e) Consistent with 23 C.F.R. 771.105(a), to the extent practicable and consistent with Federal law, the Recipient shall coordinate all environmental investigations, reviews, and consultations as a single process.

(f) The activities described in schedule B and other information described in this grant agreement may inform environmental decision-making processes, but the parties do not intend this grant agreement to document the alternatives under consideration under those processes. If a build alternative is selected that does not align with schedule B or other information in this grant agreement, then:

    (1)    the parties may amend the grant agreement under section 15.1 for consistency with the selected build alternative; or

(2)    if the FHWA determines that the condition at section 10.1(a)(5) is satisfied, the FHWA may terminate this grant agreement under section 10.1(a)(5).

(g)  The Recipient shall complete any mitigation activities described in the environmental document or documents for the Project, including the terms and conditions contained in the required permits and authorizations for the Project.

**21.6**    **Railroad Coordination.** If section 3 of schedule C includes one or more milestones identified as a "Railroad Coordination Agreement," then for each of those milestones, the Recipient shall enter a standard written railroad coordination agreement, consistent with 23 C.F.R. 646.216(d), no later than the deadline date identified for that milestone, with the identified railroad for work and operation within that railroad's right-of-way.

## ARTICLE 22
## MANDATORY AWARD INFORMATION

**22.1**    **Information Contained in a Federal Award.** For 2 C.F.R. 200.211

(1)    the "Federal Award Date" is the date of this grant agreement, as defined under section 24.2;

(2)    the "Assistance Listings Number" is provided in section 7 of schedule D; and

(3)    this award is not for research and development.

**22.2**    **Federal Award Identification Number.**

(a)  The Federal Award Identification Number ("FAIN") will be generated when the FHWA authorizes the project in FMIS. If the Recipient is a State DOT, they acknowledge that they have access to FMIS and can retrieve the FAIN from FMIS. If the Recipient is a non-State DOT, they acknowledge that the FAIN is on the FMIS project authorization.

**22.3**    **Recipient's Unique Entity Identifier.**

(a)  If the USDOT Payment System identified in section 5 of schedule A is "FMIS," then the Recipient's Unique Entity Identifier, as defined at 2 C.F.R. 25.400, is available in FMIS or GrantSolutions, as applicable. The Recipient acknowledges that it has access to FMIS or GrantSolutions and can retrieve the unique entity identifier from FMIS or GrantSolutions, as applicable.

(b)  If the USDOT Payment System identified in section 5 of schedule A is "DELPHI eInvoicing," then the Recipient's Unique Entity Identifier, as defined at 2 C.F.R. 25.400, is listed on page 1, line 4 of the Non-State DOT Recipient Signature Page.

# ARTICLE 23
## CONSTRUCTION AND DEFINITIONS

**23.1    Schedules.** This grant agreement includes the following schedules as integral parts:

| | |
|---|---|
| Schedule A | Administrative Information |
| Schedule B | Project Activities |
| Schedule C | Award Dates and Project Schedule |
| Schedule D | Award and Project Financial Information |
| Schedule E | Project Changes |
| Schedule F | Grant Program Designations |
| Schedule G | Grant Performance Measurement Information |
| Schedule H | Labor and Work |

**23.2    Exhibits.** The following exhibits, which are located in the document titled "Federal Highway Administration Exhibits to Competitive Grant Agreements", and available at https://www.fhwa.dot.gov/pgc/, are part of this grant agreement.

| | |
|---|---|
| Exhibit A | Applicable Federal Laws and Regulations |
| Exhibit B | Additional Standard Terms |
| Exhibit C | Project Progress Reports and Recertifications: Format and Content |
| Exhibit D | Form for Subsequent Obligation of Funds |

**23.3    Construction.**

(a) In these General Terms and Conditions:

    (1)    unless expressly specified, a reference to a section or article refers to that section or article in these General Terms and Conditions;

    (2)    a reference to a section or other subdivision of a schedule listed in section 23.1 will expressly identify the relevant schedule; and

    (3)    there are no references to articles or sections in this grant agreement portions of this grant agreement that are not contained in schedules listed in section 23.1.

(b) If a provision in these General Terms and Conditions or the exhibits conflicts with a provision in this grant agreement, then this grant agreement prevails. If a provision in the exhibits conflicts with a provision in these General Terms and Conditions, then the provision in these General Terms and Conditions prevails.

**23.4    Integration.** This grant agreement constitutes the entire agreement of the parties relating to the Grant Program and awards under that program and supersedes any previous agreements, oral or written, relating to the Grant Program and awards under that program.

23.5    **Definitions.** In this grant agreement,, the following definitions apply:

"**General Terms and Conditions**" means this document, including articles 1–24.

"**Grant**" means an award of Federal Highway Administration grant program funds that were made available under the Notice of Funding Opportunity ("NOFO") identified in section 7 of schedule D.

"**Grant Amount**" means the amount of the grant funds awarded to the Recipient in section 1 of schedule D.

"**Grant Program**" means the grant program on the title page of Schedules A to H to the Grant Agreement.

"**Program Statute**" means the collective statutory text in schedule F.

"**Project**" means the project proposed in the Technical Application, as modified by the negotiated provisions of this grant agreement, including schedules A to H.

"**Technical Application**" means the application identified in section 1 of schedule A, including Standard Form 424 and all information and attachments submitted with that form through Grants.gov.

## ARTICLE 24
## AGREEMENT EXECUTION AND EFFECTIVE DATE

24.1    **Counterparts.** This grant agreement may be executed in counterparts, which constitute one document. The parties intend each countersigned original to have identical legal effect.

24.2    **Effective Date.** This grant agreement will become effective when all parties have signed it. The date of this grant agreement will be the date this grant agreement is signed by the last party to sign it. This instrument constitutes a Grant when the FHWA's authorized representative signs it.



EXHIBIT B



**THE SECRETARY OF TRANSPORTATION**
WASHINGTON, DC 20590

April 24, 2025

To All Recipients of U.S. Department of Transportation Funding:

The U.S. Department of Transportation (Department or DOT) distributes substantial Federal financial assistance for thousands of projects, programs, and activities operated or initiated by diverse entities, including but not limited to State and local governments. The Department administers this Federal financial assistance to support the development and maintenance of the Nation's transportation infrastructure, pursuant to statutory authority and in accordance with binding contractual agreements in the form of Federal financial assistance agreements, usually grants, cooperative agreements, and loans. Accordingly, I write to clarify and reaffirm pertinent legal requirements, to outline the Department's expectations, and to provide a reminder of your responsibilities and the consequences of noncompliance with Federal law and the terms of your financial assistance agreements. It is the policy of the Department to award and to continue to provide Federal financial assistance only to those recipients who comply with their legal obligations.

As recipients of such DOT funds, you have entered into legally enforceable agreements with the United States Government and are obligated to comply fully with all applicable Federal laws and regulations. These laws and regulations include the United States Constitution, Federal statutes, applicable rules, and public policy requirements, including, among others, those protecting free speech and religious liberty and those prohibiting discrimination and enforcing controls on illegal immigration. As Secretary of Transportation, I am responsible for ensuring recipients of DOT financial assistance are aware of and comply with all applicable legal obligations.

The Equal Protection principles of the Constitution prohibit State and Federal governmental entities from discriminating on the basis of protected characteristics, including race. Indeed, as the Supreme Court declared in *Students for Fair Admission, Inc. v. Harvard (SFFA)*, 600 U.S. 181, 206 (2023), "[t]he clear and central purpose of the Fourteenth Amendment was to eliminate all official state sources of invidious racial discrimination in the States." The Court further noted that "[o]ne of the principal reasons race is treated as a forbidden classification is that it demeans the dignity and worth of a person to be judged by ancestry instead of by his or her own merit and essential qualities." *Id.* at 220. In ruling that race-based admissions programs at universities violated the Equal Protection Clause, the Court made clear that discrimination based on race is, has been, and will continue to be unlawful, except in rare circumstances. *Id.* at 220-21. Similarly, sex-based classifications violate the Equal Protection Clause absent "exceedingly persuasive" justification. *See United States v. Virginia*, 518 U.S. 515, 533 (1996).

These constitutional principles are reinforced by the Civil Rights Act of 1964, which prohibits discrimination based on protected characteristics in the Federal funding and employment contexts in Title VI (42 U.S.C. § 2000d *et seq.*) and Title VII (42 U.S.C. § 2000e-2), as well as the applicable non-discrimination clauses in the Federal Aid Highway Act of 1973 (23 U.S.C. §§ 140 and 324 *et seq.*), the Airport and Airway Improvement Act of 1982, (49 U.S.C. § 47123), and Title IX of the Education Amendments of 1972, as amended (20 U.S.C. § 1681 *et seq.*).

Based on binding Supreme Court precedent and these Federal laws, DOT is prohibited from discriminating based on race, color, national origin, sex, or religion in any of its programs or activities. Moreover, because DOT may not establish, induce, or endorse prohibited discrimination indirectly,[1] it must ensure that discrimination based on race, color, national origin, sex, or religion does not exist in the programs or activities it funds or financially assists.

These same principles apply to recipients of Federal financial assistance from DOT, as both a matter of Federal law and by virtue of contractual provisions governing receipt of DOT funding. Accordingly, DOT recipients are prohibited from engaging in discriminatory actions in their own policies, programs, and activities, including in administering contracts, and their employment practices.

Whether or not described in neutral terms, any policy, program, or activity that is premised on a prohibited classification, including discriminatory policies or practices designed to achieve so-called "diversity, equity, and inclusion," or "DEI," goals, presumptively violates Federal law. Recipients of DOT financial assistance must ensure that the personnel practices (including hiring, promotions, and terminations) within their organizations are merit-based and do not discriminate based on prohibited categories. Recipients are also precluded from allocating money received under DOT awards—such as through contracts or the provision of other benefits—based on suspect classifications. Any discriminatory actions in your policies, programs, and activities based on prohibited categories constitute a clear violation of Federal law and the terms of your grant agreements.

In addition, your legal obligations require cooperation generally with Federal authorities in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law. DOT has noted reported instances where some recipients of Federal financial assistance have declined to cooperate with ICE investigations, have issued driver's licenses to individuals present in the United States in violation of Federal immigration law, or have otherwise acted in a manner that impedes Federal law enforcement. Such actions undermine Federal sovereignty in the enforcement of immigration law, compromise the safety and security of the transportation systems supported by DOT

---

[1] *See SFFA*, 600 U.S. at 230; Norwood v. Harrison, 413 U.S. 455, 465 (1973).

financial assistance, and prioritize illegal aliens over the safety and welfare of the American people whose Federal taxes fund DOT's financial assistance programs.

Under the Constitution, Federal law is "the supreme Law of the Land." U.S. Const. Art. VI. That means that where Federal and State legal requirements conflict, States and State entities must follow Federal law. Declining to cooperate with the enforcement of Federal immigration law or otherwise taking action intended to shield illegal aliens from ICE detection contravenes Federal law and may give rise to civil and criminal liability. *See* 8 U.S.C. § 1324 and 8 U.S.C. § 1373. Accordingly, DOT expects its recipients to comply with Federal law enforcement directives and to cooperate with Federal officials in the enforcement of Federal immigration law. The Department also expects its recipients to ensure that the Federal financial assistance they receive from DOT is provided only to subrecipients, businesses, or service providers that are U.S. Citizens or U.S. Nationals and Lawful Permanent Residents (LPRs) or legal entities allowed to do business in the U.S. and which do not employ illegal aliens.

This letter provides notice of the Department's existing interpretation of Federal law. The Department will vigorously enforce the law on equal terms as to all its recipients and intends to take appropriate measures to assess their compliance based on the interpretation of Federal law set forth in this letter. Adherence to your legal obligations is a prerequisite for receipt of DOT financial assistance. Noncompliance with applicable Federal laws, or failure to cooperate generally with Federal authorities in the enforcement of Federal law, will jeopardize your continued receipt of Federal financial assistance from DOT and could lead to a loss of Federal funding from DOT.

The Department retains authority, pursuant to its oversight responsibilities and the terms of your agreements, to initiate enforcement actions, such as comprehensive audits and possible recovery of funds expended in a manner contrary to the terms of the funding agreement. DOT may also terminate funding in response to substantiated breaches of the terms of the agreement, or if DOT determines that continued funding is no longer in the public interest. These steps, within DOT's discretion, are intended to ensure accountability and protect the integrity of Federal programs.

To assist grant recipients in meeting their legal obligations, DOT offers technical guidance and support through its program offices. Should you require clarification regarding your obligations, you are encouraged to contact your designated DOT representative promptly. Proactive engagement is strongly advised to prevent inadvertent noncompliance.

Docusign Envelope ID: DCAEZB40-5EAB-4052-AC86-DEC33662C31E    Case 3:25-cv-07070-RS    Document 9-32    Filed 08/21/25    Page 42 of 42

Page 4

DOT remains committed to advancing a transportation system that serves the public interest efficiently and unleashes economic prosperity and a superior quality of life for American families. This mission depends upon your strict adherence to the legal framework governing our partnership, and I trust you will take all necessary steps to comply with Federal law and satisfy your legal obligations.

Sincerely,

Sean P. Duffy