BRETT A. SHUMATE
Assistant Attorney General
CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
JOSEPH E. BORSON
Assistant Branch Director
R. CHARLIE MERRITT (VA Bar No. 89400)
Senior Counsel
    U.S. Department of Justice
    Civil Division, Federal Programs Branch
    Washington, D.C. 20005
    Tel.: (202) 616-8098

PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
JEVECHIUS D. BERNARDONI (CABN 281892)
Assistant United States Attorney
    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone:  (415) 436-7224
    Facsimile:  (415) 436-6748
    jevechius.bernardoni@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY OF FRESNO, *et al.*, | Case No. 3:25-cv-07070-RS |
| Plaintiffs, | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER** |
| v. | |
| SCOTT TURNER, *et al.*, | Date:   August 26, 2025 |
| Defendants. | Time:  3:00 p.m. |
| | Place:  Videoconference |
| | The Honorable Richard Seeborg |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ISSUES TO BE DECIDED ....................................................................................... 1

BACKGROUND ....................................................................................................... 2

I.      Factual Background .................................................................................... 2

        A.      HUD ............................................................................................... 3

        B.      DOT ............................................................................................... 4

        C.      HHS ................................................................................................ 4

        D.      EPA ................................................................................................ 5

II.     Procedural Background ............................................................................. 5

LEGAL STANDARD ............................................................................................... 6

ARGUMENT ............................................................................................................ 7

I.      Plaintiffs Fail to Establish Irreparable Harm .......................................... 7

II.     Plaintiffs Fail to Establish This Court's Jurisdiction ............................. 8

III.    Plaintiffs Claims Are Not Likely to Succeed ......................................... 12

        A.      Plaintiffs Are Not Likely To Succeed On Their Constitutional Claims .............. 12

        B.      Plaintiffs APA Claims Are Not Likely To Succeed ............................... 16

IV.     The Balance of the Equities Weighs in the Federal Government's Favor ....................... 19

V.      Any Injunctive Relief Should Be Narrowly Tailored ........................................ 20

VI.     Any Injunctive Relief Should Be Stayed Pending Appeal, Be Accompanied By A Bond, And No Declaration Should Be Required ......................................................... 21

CONCLUSION ......................................................................................................... 22

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

*Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*,
  570 U.S. 205 (2013)................................................................................................................8

4

5

*Am. Cargo Transp., Inc. v. United States*,
  625 F.3d 1176 (9th Cir. 2010) .............................................................................................21

6

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
  750 F.2d 1470 (9th Cir. 1985) ..............................................................................................8

7

8

*Americopters, LLC v. FAA*,
  441 F.3d 726 (9th Cir. 2006) ................................................................................................9

9

10

*Amica Ctr. for Immigrant Rights v. U.S. Dep't of Justice*,
  No. 25-cv-298, 2025 WL 1852762 (D.D.C. July 6, 2025) ..................................................18

11

12

*Bd. of Regents of State Colls. v. Roth*,
  408 U.S. 564 (1972)..............................................................................................................13

13

*Bennett v. Spear*,
  520 U.S. 154 (1997)..............................................................................................................16

14

15

*Bldg. Constr. Trades Dep't, AFL-CIO v. Allbaugh*,
  295 F.3d 28 (D.C. Cir. 2002)...............................................................................................15

16

17

*Boaz Hous. Auth. v. United States*,
  994 F.3d 1359 (Fed. Cir. 2021)...........................................................................................10

18

19

*Caribbean Marine Servs. Co. v. Baldrige*,
  844 F.2d 668 (9th Cir. 1988) .................................................................................................7

20

*Cnty. of Santa Clara v. Trump*,
  250 F. Supp. 3d 497 (N.D. Cal. 2017) .................................................................................14

21

22

*Cobell v. Kempthorne*,
  455 F.3d 301 (D.C. Cir. 2006).............................................................................................17

23

24

*Consol. Edison Co. of N.Y. v. U.S. Dep't of Energy*,
  247 F.3d 1378 (Fed. Cir. 2001)...........................................................................................12

25

26

*Dep't of Homeland Sec. v. New York*,
  140 S. Ct. 599 (2020)...........................................................................................................20

27

28

*Eloyan v. United States*,
  No. 2:19-cv-9565, 2020 WL 7382316 (C.D. Cal. Oct. 21, 2020) .......................................13

*Env't Def. Ctr. v. U.S. E.P.A.*,
    344 F.3d 832 (9th Cir. 2003) ................................................................................. 15

*Faculty Senate of Fla. Int'l Univ. v. Winn*,
    477 F. Supp. 2d 1198 (S.D. Fla. 2007) ..................................................................... 8

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012) .............................................................................................. 12

*FERC v. Mississippi*,
    456 U.S. 742 (1982) .............................................................................................. 15

*Florida v. Dep't of Health & Hum. Servs.*,
    19 F.4th 1271 (11th Cir. 2021) .............................................................................. 20

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) ................................................................................... 6

*Goldberg v. Kelly*,
    397 U.S. 254 (1970) .............................................................................................. 13

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) .............................................................................................. 13

*Heckler v. Chaney*,
    470 U.S. 821 (1985) .............................................................................................. 17

*Heckler v. Turner*,
    468 U.S. 1305 (1984) ............................................................................................ 19

*Holley v. United States*,
    124 F.3d 1462 (Fed. Cir. 1997) .............................................................................. 11

*Jones v. United States*,
    625 F.3d 827 (5th Cir. 2010) ................................................................................... 9

*Kidwell v. Dep't of Army*,
    56 F.3d 279 (D.C. Cir. 1995) .................................................................................. 11

*Lewis v. Casey*,
    518 U.S. 343 (1996) .............................................................................................. 20

*Lincoln* v. *Vigil*,
    508 U.S. 182 (1993) .............................................................................................. 18

*Louisiana v. Biden*,
    64 F.4th 674 (5th Cir. 2023) .................................................................................. 16

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ................................................................................................ 16

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873 (9th Cir. 2009) ................................................................................. 6

*Maryland v. King*,
    567 U.S. 1301 (2012) .............................................................................................. 20

*Milk Train, Inc. v. Veneman*,
    310 F.3d 747 (D.C. Cir. 2002) ............................................................................. 18

*Munaf v. Geren*,
    553 U.S. 674 (2008) ................................................................................................ 6

*Nat'l Endowment for the Arts v. Finley*,
    524 U.S. 569 (1998) ......................................................................................... 13, 14

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*,
    2025 WL 2415669 (U.S. Aug. 21, 2025) ........................................................ 10, 20

*New York v. United States*,
    505 U.S. 144 (1992) .............................................................................................. 15

*Nken v. Holder*,
    556 U.S. 418 (2009) ........................................................................................... 6, 19

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) ........................................................................................... 16, 20

*Perry Cap. LLC v. Mnuchin*,
    864 F.3d 591 (D.C. Cir. 2017) ............................................................................. 11

*Perry v. Sindermann*,
    408 U.S. 593 (1972) .............................................................................................. 13

*Pol'y & Rsch., LLC v. U.S. Dep't of Health & Hum. Servs.*,
    313 F. Supp. 3d 62 (D.D.C. 2018) ....................................................................... 18

*Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*,
    944 F.2d 597 (9th Cir. 1991) ................................................................................. 8

*Sampson v. Murray*,
    415 U.S. 61 (1974) ................................................................................................. 8

*Sessions v. Dimaya*,
    584 U.S. 148 (2018) .............................................................................................. 12

*Sharp v. Weinberger*,
    798 F.2d 1521 (D.C. Cir. 1986) ................................................................................. 11

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
    739 F.2d 1415 (9th Cir. 1984) ................................................................................... 6

*Spectrum Leasing Corp. v. United States*,
    764 F.2d 891 (D.C. Cir. 1985) .................................................................................. 11

*Stanley v. Univ. of S. Cal.*,
    13 F.3d 1313 (9th Cir. 1994) ..................................................................................... 8

*Steel Co. v. Citizens for a Better Env't.*,
    523 U.S. 83 (1998) ..................................................................................................... 9

*Thakur v. Trump*,
    --- F.4th ----, 2025 WL 2414835 (9th Cir. Aug. 21, 2025) ...................................... 10

*Town of Castle Rock v. Gonzalez*,
    545 U.S. 748 (2005) ................................................................................................. 13

*U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*,
    ---F. Supp. 3d---, 2025 WL 763738 (D.D.C. Mar. 11, 2025) .................................. 11

*U.S. Dep't of Educ. v. California*,
    145 S. Ct. 966 (2025) ................................................................................... 10, 19, 21

*U.S. Term Limits, Inc. v. Thornton*,
    514 U.S. 779 (1995) ................................................................................................. 15

*United States v. Salerno*,
    481 U.S. 739 (1987) ................................................................................................. 12

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981) ................................................................................................. 20

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................................................. 6, 7

**CONSTITUTION**

U.S. Const. Art. I, § 8, cl. 1 ......................................................................................... 14


**STATUTES**

5 U.S.C. § 553(a)(2) ..................................................................................................... 19

5 U.S.C. § 701(a)(2) .................................................................................................................. 17

5 U.S.C. § 702 ........................................................................................................... 9, 10, 17

5 U.S.C. § 704 ................................................................................................................. 16

5 U.S.C. § 706(1) ...................................................................................................... 17, 20

20 U.S.C. § 954(d)(1) ...................................................................................................... 13

28 U.S.C. § 1491(a)(1) .................................................................................................. 9

49 U.S.C. § 46110(a) ..................................................................................................... 9

**RULES**

Fed. R. Civ. P. 65(c) ..................................................................................................... 21

**REGULATIONS**

Executive Order No. 14151, 90 Fed. Reg. 8339 (Jan. 20, 2025) .......................................... 2, 6

Executive Order No. 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025) .......................................... 2, 6

Executive Order No. 14173, 90 Fed. Reg. 8633 (Jan. 21, 2025) .......................................... 2, 6

Executive Order No. 14182, 90 Fed. Reg. 8751 (Jan. 31, 2025) .......................................... 2, 6

Executive Order No. 14332, 90 Fed. Reg. 38929 (Aug. 7, 2025) ........................................ 6

2 C.F.R. Part 200 ............................................................................................................ 2

2 C.F.R. §200.340(a)(4) .................................................................................................. 13

# INTRODUCTION

Plaintiffs—an assortment of municipal governments from across the country with little in common other than an apparent desire to litigate in this forum—bring an emergency motion that would provide them with truly extraordinary relief.  In the guise of preserving the status quo, they seek an injunction that would dictate the terms of their grants with the federal government and entitle them to continue receiving federal funds from the defendant agencies free from any conditions that Plaintiffs disagree with or that promote the President's policy priorities.  But that is not how federal grants law or emergency temporary relief works, and the Court should deny Plaintiffs' motion for a temporary restraining order ("TRO") for at least three reasons.  First, this case does not present the emergency Plaintiffs say it does.  No Plaintiff faces an immediate threat of having its federal funding terminated as a result of the grant conditions at issue in this case or that any impending voluntary choice to accept such funding will cause irreparable harm during the pendency of this lawsuit.  In short, Plaintiffs claim solely economic injury, but those asserted harms are recoverable, do not threaten Plaintiffs' existence, and are quintessentially reparable.  Second, Plaintiffs have failed to establish this Court's subject matter jurisdiction.  To the extent they seek to enforce an obligation to pay money pursuant to federal grants, their claims fall within the exclusive jurisdiction of the Court of Federal Claims.  Third, Plaintiffs otherwise fail, for a variety of reasons, to show that their claims are likely to succeed on the merits.

Because Plaintiffs have failed to satisfy their burden of proving entitlement to the extraordinary remedy they request, the Court should deny their motion for a TRO.

## ISSUES TO BE DECIDED

1. Have Plaintiffs carried their burden of establishing their entitlement to the extraordinary remedy of a temporary restraining order, *i.e.*, that they are likely to succeed on the merits of their claims; that they are likely to suffer irreparable harm in the next 14 days in the absence of emergency injunctive relief; that the balance of equities tips in their favor; and that the proposed injunction is in the public interest?

2. Is this case, which arises out of contracts between Plaintiffs and the United States,

outside the jurisdiction of this Court and within the exclusive jurisdiction of the Court of Federal Claims?

# BACKGROUND

## I.    Factual Background

On January 20, 2025, President Trump assumed the office of President of the United States. On that day, and in the weeks after, he issued a variety of Executive Orders setting the policy priorities for his administration.  Many of these focus on the expenditure of federal funds and generally instruct federal agencies to terminate, review, or revise federal grants based on those priorities.  The Executive Orders that Plaintiffs appear to have the most objection to are Executive Order No. 14151, 90 Fed. Reg. 8339 (Jan. 20, 2025) (*Ending Radical and Wasteful Government DEI Program and Preferencin*g); Executive Order No. 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025) (*Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*); Executive Order No. 14173, 90 Fed. Reg. 8633 (Jan. 21, 2025) (*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*); and Executive Order No. 14182, 90 Fed. Reg. 8751 (Jan. 31, 2025) (*Enforcing the Hyde Amendment*).  Each of these orders make clear that it must be "implemented consistent with applicable law." *See* EO 14151 § 4(b); EO 14168 § 8(b); 14173 § 8(b); EO 14182 § 4(b).

In response, agencies with grantmaking authority began to review existing grants and consider next steps.  The federal government, through various agencies, provides funding to state and local governments and other eligible stakeholders using federal financial assistance (through grants and cooperative agreements) that are subject to specified terms and conditions, and those terms govern the recipients' use of and continued receipt of the federal funds.  As a default matter, Office of Management and Budget regulations generally provide guidance for federal agencies relating to federal financial assistance. *See generally* 2 C.F.R. Part 200.  Agencies also promulgate their own standard terms and conditions to govern the specific grants that they issue.

As discussed elsewhere in this brief, Plaintiffs do not focus their complaint on discrete agency grants, instead attempting to enjoin all grant conditions "implementing the President's

1  executive orders and policies" across a potentially limitless universe of grants.  *See* Pls.' Mem. of

2  P&A in Supp. Of Mot. for TRO at 1, ECF No. 9-1 ("TRO Mot.").  The only limitation Plaintiffs

3  offer is on the agencies who happen to be named as defendants: the Department of Housing and

4  Urban Development ("HUD"); the Department of Transportation ("DOT"); the Department of

5  Health and Human Services ("HHS"); and the Environmental Protection Agency ("EPA").

6       To the extent Plaintiffs—the City of Fresno, CA the County of Sacramento, CA the City

7  of South Lake Tahoe, CA the City of Eureka, CA the City of Saint Paul, MN, and the County of

8  Monroe, NY—have identified particular conditions attached to actual grants and/or programs in

9  their pleadings, Defendants attempt to provide relevant background below.

10      **A.     HUD**

11      Through its Office of Community Planning and Development ("CPD"), HUD administers

12  the Community Development Block Grant ("CDBG") and the Emergency Solutions Grant

13  ("ESG"), as well as the Housing Opportunities for Persons With AIDS ("HOPWA") and HOME

14  Investment Partnerships ("HOME") programs.  *See* Decl. of Claudette Fernandez ¶ 1 ("Fernandez

15  Decl.").  CPD administers each of these formula programs through grant agreements with eligible

16  grantees, which require the grantees to administer the program in compliance with applicable

17  statutes, regulations, and executive orders, including the executive orders to which Plaintiffs

18  object.  *Id*. ¶¶ 9-13.  For Fiscal Year 25, eligible grantees were required to submit a Consolidated

19  Plan and/or Annual Action Plan for HUD's review by August 16, 2025.  *Id*. ¶ 11.

20      Most relevant to Plaintiffs' claims, HUD determined that the City of Fresno's plan was

21  deficient.  Pursuant to applicable regulations, HUD has until September 6, 2025 to provide Fresno

22  its reasons for that disapproval, and Fresno has forty-five days after receiving that notice to

23  resubmit its plan.  *Id*. ¶ 14.  The other plaintiffs in this case are either not direct recipients of HUD

24  grants (Eureka; South Lake Tahoe) or have had their plans approved, subject to executing grant

25  agreements with the agency (Saint Paul; Sacramento County; Monroe County).  *Id*. ¶ 15.  "HUD

26  has not taken any action to pause or terminate grants provided to any plaintiff city or county, and

27

28

1    no previously approved grants are subject to risk of being frozen or terminated at least for the next

2    14 days and not for the foreseeable future after that." *Id*. ¶ 16.

3    **B.    DOT**

4        In their TRO motion, Plaintiffs identify three DOT components, the Federal Highway

5    Administration ("FHWA"), the Federal Transit Administration ("FTA"), and the Federal Aviation

6    Administration ("FAA"), but focus almost exclusively on airport development financial assistance

7    grants administered by the FAA. *See, e.g.*, TRO Mot. at 23-25 (irreparable harm section). FAA

8    administers two such grants, the Airport Improvement Program ("AIP") and the Infrastructure

9    Investment and Jobs Act ("IIJA"). *See generally* Decl. of Dave Cushing ("Cushing Decl.").

10   Fresno, Sacramento County, and Monroe County are all FAA airport sponsors. Fresno and

11   Sacramento County are required to accept FAA grant offers by September 18 to access certain

12   FAA funds. *See id*. ¶¶ 13, 17. While Monroe County has an earlier deadline to accept FAA funds,

13   FAA can extend that deadline to September 18. *Id*. ¶ 18; *see also id*. ¶ 20. The agency has not

14   initiated any actions to terminate the existing FAA grants of any named plaintiff based on the

15   conditions at issue in this lawsuit.

16       FHWA and FTA also administer various DOT grant programs, as further explained in the

17   attached declarations. *See* Decl. of Arlan Finfrock ("Finfrock Decl."); Decl. of Ray Tellis ("Tellis

18   Decl."). Fresno is the only named plaintiff with a grant application pending with FTA, and its

19   application is currently pending with the Department of Labor for certification and need not be

20   awarded until September 25. Tellis Decl. ¶¶ 13-14. Many plaintiffs receive FHWA grants, but

21   none of their relevant awards are expiring this fiscal year or are at risk of losing funding. Finfrock

22   Decl. ¶ 23.

23   **C.    HHS**

24       Plaintiffs' TRO motion makes no allegations about any specific HHS grants, but refers

25   generally to grants administered by the Health Resources and Services Administration ("HRSA"),

26   Substance Abuse and Mental Health Services Administration ("SAMHSA"), and Centers for

27   Disease Control and Prevention ("CDC"). *See* TRO Mot. at 4-5 (containing only the general

28

allegation that HHS "has attached unlawful Federal Grant Conditions to its grants"). Their allegations against HHS provide no basis for emergency relief. As described in the attached declarations, the County of Sacramento has awards with CDC and HRSA. Neither component has taken any action to pause funding or terminate funding under these awards based on the challenged grant conditions. *See* Decl. of Jamie Legier ¶ 7 ("Legier Decl."); Decl. of Cynthia Baugh ¶ 8, ("Baugh Decl."). Nor is either component aware of any planned or imminent deadlines in the immediate future with respect to Sacramento's awards. *See* Legier Decl. ¶¶ 6-8; Baugh Decl. ¶ 8; *see also* Decl. of Odessa Crocker (explaining that the State of California is a SAMHSA grant recipient but faces no immediate deadlines to certify compliance with the challenged grant terms or accept the challenged grants terms).

**D.    EPA**

Plaintiffs' allegations against the EPA are also very limited, pertaining only to Fresno's award of a Brownfields Revolving Loan Fund ("RLF"). *See* Decl. of Ellen Blake ¶ 5 ("Blake Decl."). As asserted in the TRO motion, Fresno is required to execute an amendment to its RLF grant by August 26. *See* TRO Mot. at 24. But the amendment document itself explains that if a party disagrees—as Fresno apparently does—with the terms and conditions of its award it "must furnish a notice of disagreement to the EPA Award Official within 21 days." Blake Decl. ¶ 7. EPA has not yet received any such notice of disagreement, but if it did, it would "engage with [Fresno] in an effort to resolve the disagreement." *Id.* ¶ 8.

**II.    Procedural Background**

The plaintiff municipalities filed their complaint on Wednesday, August 20, seeking broad relief against a vague and unspecified set of grant conditions assertedly imposed by HUD, HHS, EPA, and DOT. *See, e.g.*, Compl. ¶¶ 183, 201, 250, 261 (defining challenged agency "grant conditions" as those that "implemented President Trump's Executive Orders by attaching new and unlawful conditions"). The next day, they moved for a temporary restraining order preventing the defendant agencies broadly from "enforcing unlawful and unauthorized conditions imposed on critical federal grant programs." TRO Mot. at 1. Plaintiffs assert that they are likely to succeed

on their vagueness, separation of powers, and APA claims.  As relief, they seek an order enjoining each defendant agency from "imposing or enforcing grant conditions implementing and incorporating executive orders and policies, including"—but apparently not limited to—EOs 14151, 14168, 14173, 14182, and 14332.  *See* Proposed TRO, ECF No. 9-19.  They also seek to enjoin Defendants from "rescinding, withholding, cancelling, or otherwise not processing" any grant agreement, or "pausing, freezing, impeding, blocking, cancelling, terminating, delaying, withholding, or conditioning" funds, "based on such terms or conditions." *Id.*

## LEGAL STANDARD

A "preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008).  A district court should enter a preliminary injunction only "upon a clear showing that the [movant] is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  To obtain a preliminary injunction, the moving party must demonstrate (1) that it is likely to succeed on the merits of its claims; (2) that it is likely to suffer an irreparable harm in the absence of injunctive relief; (3) that the balance of equities tips in its favor; and (4) that the proposed injunction is in the public interest.  *Id.* at 20.  Finally, when "the Government is the opposing party," the assessment of "harm to the opposing party" and "the public interest" merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Preliminary relief is meant to preserve the status quo pending final judgment.  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).  When preliminary relief would change the status quo and "order a responsible party to take action," it is "particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009).  In such cases, the moving party "must establish that the law and facts *clearly favor* [his] position, not simply that [he] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

1

**ARGUMENT**

2

**I.    Plaintiffs Fail to Establish Irreparable Harm.**

3

The "most important" *Winter* factor Plaintiffs have the burden of demonstrating is

4

irreparable harm. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

5

That standard requires plaintiffs seeking the extraordinary remedy of a temporary restraining order

6

to "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S.

7

at 22.  The "possibility" of such harm is insufficient, *id.*, as is "[s]peculative injury"; Plaintiffs

8

must show both immediacy and likelihood that they will be irreparably harmed absent a TRO.  *See*

9

*Baldridge*, 844 F.2d at 674.

10

Plaintiffs have failed to make that showing here because, fundamentally, they fail to

11

identify any action resulting in the actual loss—or likely imminent future loss—of any concrete

12

grant funds at all, much less during the relevant window during which a TRO could be in effect.

13

Although they describe various potential consequences that they fear will flow from hypothesized

14

alleged action from the agencies, they do not identify any grants that have been terminated or any

15

funding that has been withheld, and as a result any injury is hypothetical and speculative.  *See*

16

Fernandez Decl. ¶ 16 (confirming that HUD has not taken any action to pause or terminate grants

17

provided to any plaintiff entity).  Indeed, the agency communication that Plaintiffs have identified

18

as most "necessitating immediate injunctive relief," TRO Mot. at 24—HUD's requirement that

19

Fresno make certain assurances concerning its compliance with executive orders by August 21—

20

imposes no concrete consequences.  As explained, Fresno has at least 45 days from September 6

21

(or whenever HUD identifies the reasons for its disapproval) to resubmit and thus, its funding is

22

not at risk during that time.  *See* Fernandez Decl. ¶ 14.

23

Further, the harms Plaintiffs assert are entirely economic.  *See, e.g.*, TRO Mot. at 23

24

(describing allegedly negative impacts flowing from the "loss of . . . funds at issue," including

25

"upending [Plaintiffs'] budgets and forcing Plaintiffs to divert resources from other public

26

services").  They seek the payment—on the terms that they prefer—of federal funds pursuant to

27

their contracts with the federal government and, as discussed elsewhere, Plaintiffs have an

28

adequate avenue to pursue such relief in the Court of Federal Claims.  The associated injuries Plaintiffs assert are thus definitionally not irreparable, *see, e.g.*, *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320-21 (9th Cir. 1994); *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991), particularly because the local government plaintiffs allege no "[t]hreat of being driven out of business."  *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985).  The most they can muster is that, in the absence of injunctive relief, they will "need to divert resources from other projects," which would "strain[] their resources and put[] other projects in jeopardy."  TRO Mot. at 24.  But as the Supreme Court had made clear, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough." *See Sampson v. Murray*, 415 U.S. 61, 90 (1974); *see also Faculty Senate of Fla. Int'l Univ. v. Winn*, 477 F. Supp. 2d 1198, 1208 (S.D. Fla. 2007) ("There is no irreparable harm here because the plaintiffs can fund the desired travel themselves and then, if they prevail in this suit, obtain reimbursement. In other words, the harm is financial.").

Plaintiffs also assert that they face "a series of imminent deadlines requiring them to either accept the unlawful federal grant conditions or forgo millions of dollars in federal funding." TRO Mot. at 23-24.  As an initial matter, "if a party objects to a condition on the receipt of federal funding, its recourse is to decline the funds."  *Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013).  If a party makes the voluntary choice to forego those funds, any resulting economic harm cannot constitute an irreparable injury attributable to the federal government, particularly where, as here, Plaintiffs can seek to recover any funds they believe to be unlawfully withheld.  Nor do Plaintiffs demonstrate that the mere acceptance of terms they consider to be "unlawful"—but that generally require them to comply with otherwise applicable federal law, such as antidiscrimination and immigration laws and the Hyde Amendment, *see* Fernandez Decl. ¶ 12—imposes any concrete, imminent harm necessitating judicial intervention in the next 14 days.

## II.    Plaintiffs Fail To Establish This Court's Jurisdiction.

The burden of proving subject matter jurisdiction rests with the plaintiff, and the

requirement that a plaintiff establish subject matter jurisdiction "as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Steel Co v. Citizens for a Better Env't.*, 523 U.S. 83, 93-102 (1998).

Plaintiffs fail to carry this burden in two respects. *First*, Congress has vested exclusive jurisdiction over orders of the DOT Secretary, the Administrator of the Transportation Security Administration, or the Administrator of the FAA in federal circuit courts. *See* 49 U.S. § 46110(a). To the extent Plaintiffs challenge DOT and FAA orders here, they have failed to establish this Court's jurisdiction over such claims. *See, e.g.*, *Americopters, LLC v. FAA*, 441 F.3d 726, 732 (9th Cir. 2006) ("We have direct and exclusive jurisdiction over the review of FAA final orders under 49 U.S.C. § 46110."); *Jones v. United States,* 625 F.3d 827, 829 (5th Cir. 2010) ("Section 46110(a) of the Federal Aviation Act vests the exclusive jurisdiction over challenges to FAA orders in certain United States Courts of Appeals.").

*Second*, to the extent Plaintiffs' claims arise from contracts with the federal government, those claims must be heard in the Court of Federal Claims and this Court lacks jurisdiction.[1] The Tucker Act grants exclusive jurisdiction to the Court of Federal Claims over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Thus, where a party seeks funding that it believes the federal government is obligated to pay under a contract, its suit must proceed only in the Court of Federal Claims. Critically, the Tucker Act precludes relief under the APA or otherwise because the APA's waiver of sovereign immunity is limited to claims "seeking relief other than money damages," 5 U.S.C. § 702, and the APA does not apply "'if any other statute that grants consent to suit expressly or impliedly forbids the relief

---

[1] This is certainly true with respect to claims that Defendant agencies are seeking to modify the terms of existing contracts with the plaintiff grantees. And while claims based on conditions allegedly imposed in completely new or future contracts might present a closer case, such claims (to the extent they are asserted here) would necessarily involve contingent future economic injuries and be insufficient to justify the award of emergency TRO relief. *See supra* Sec. I (explaining why such injuries do not constitute irreparable harm).

1   which is sought,'" *U.S. Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (quoting 5 U.S.C.

2   § 702).  The Tucker Act does so for actions founded upon contracts with the United States, and its

3   prohibition on district court jurisdiction extends to claims founded on grants, like those at issue

4   here, that are implemented through "contracts to set the terms of and receive commitments from

5   recipients." *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021).

6       On multiple recent occasions, the Supreme Court has emphasized the preclusive scope of

7   the Tucker Act in litigation brought by the recipients of federal grants.  In April, the Supreme Court

8   stayed a district court order to make payments based on grants because the federal government

9   was "likely to succeed in showing the District Court lacked jurisdiction" to bar termination of

10  various education-related grants.  *California*, 145 S. Ct. at 968.  The Supreme Court held the

11  injunction was effectively an order "to enforce a contractual obligation to pay money," and thus

12  not covered by the APA's limited waiver of sovereign immunity; instead, the Tucker Act grants the

13  Court of Federal Claims exclusive jurisdiction over such suits.  *Id.* (citation omitted).  Then, less

14  than one week ago, the Supreme Court stayed another judgment vacating the federal government's

15  termination of grants, reiterating its view that the APA's limited waiver of sovereign immunity

16  does not grant district courts jurisdiction "to order relief designed to enforce any 'obligation to pay

17  money'" pursuant to the grants.  *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 2025 WL

18  2415669, at *1 (U.S. Aug. 21, 2025) ("*NIH*").

19      This Court should follow the Supreme Court's stay rulings to the extent that Plaintiffs are

20  seeking to enforce an obligation to pay money pursuant to the grants at issue in this case.[2]

21  Although they purport to seek an injunction, the relief Plaintiffs request—uninterrupted grant

22

23      [2] On August 21, 2025, the Ninth Circuit issued a decision denying the federal government's
    application for a stay in *Thakur v. Trump*, --- F.4th ----, 2025 WL 2414835 (9th Cir. Aug. 21,
24  2025).  Although that decision rejected the government's Tucker Act argument, its reasoning is
    largely overridden by the Supreme Court's *NIH* decision, issued hours later.  As Justice Gorsuch
25  emphasized, "regardless of a decision's procedural posture, its 'reasoning—its *ratio decidendi*'—
    carries precedential weight in 'future cases.'"  *NIH*, 2025 WL 2415669, at *4 (Gorsuch, J.,
26  concurring in part and dissenting in part); *see also id*. (confirming that the "reasoning" from
    *California*—that "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based
27  on any express or implied contract with the United States"—"binds lower courts a matter of
    vertical *stare decisis*").

28

funding pursuant to their federal grant agreements—is fundamentally contractual. Indeed, Plaintiffs explicitly request that the Court prevent Defendants from "rescinding, withholding, cancelling, or otherwise not processing any [agency] grant agreements," or from "pausing, freezing, impeding, blocking, cancelling, terminating, delaying, withholding, or conditioning" funds made pursuant to such agreements on the basis of the challenged condition. *See* Proposed TRO, ECF No. 9-19. As in *California* and *NIH*, any entitlement that plaintiffs may have to the funding they seek to preserve arises solely on the basis of their federal grant award; they have no statutory or constitutional right to such funding. Because their theories of standing, relief, and irreparable harm hinge entirely on contractual routing of funding to them as provided for in their grant agreements, the fact that they cloak their claims as seeking equitable relief under the Constitution and the APA is of no moment. *See, e.g.*, *Kidwell v. Dep't of Army*, 56 F.3d 279, 284 (D.C. Cir. 1995) (courts must look to claims' "substance, not merely [their] form"); *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (district court lacks jurisdiction over any case that "is in 'its essence' contractual"); *Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) ("The presence of a constitutional issue does not erase the jurisdiction of the Court of Federal Claims based on a properly brought claim under the Tucker Act, or bar the court from considering the constitutional issue in the course of determining whether the [challenged action] was wrongful.").

At bottom, insofar as they seek an injunction to maintain payments pursuant to a contract with the United States, Plaintiffs "want[] the Government to keep paying up." *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, ---F. Supp. 3d---, 2025 WL 763738, at *5-6 (D.D.C. Mar. 11, 2025). Such claims are "founded upon a contract," and they "must be heard in Claims Court." *Id.* at *7 (quoting *Sharp v. Weinberger*, 798 F.2d 1521, 1524 (D.C. Cir. 1986) (Scalia, J.) ("We know of no case in which a court has asserted jurisdiction . . . to issue an injunction compelling the United States to fulfill its contractual obligations.")). That Plaintiffs' claims could not "exist[] prior to and apart from rights created under the [agreements]" weighs sharply against district court jurisdiction. *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985)*; see*

1  *also Consol. Edison Co. of N.Y. v. U.S. Dep't of Energy*, 247 F.3d 1378, 1385-86 (Fed. Cir. 2001)

2  (directing court to transfer case asserting constitutional, including due process, claims to the Court

3  of Federal Claims in a case sounding in contract).

4  **III.    Plaintiffs' Claims Are Not Likely To Succeed.**

5         For the reasons discussed above—*i.e.*, because Plaintiffs have not proven irreparable harm

6  or that this Court has jurisdiction—Plaintiffs have fundamentally failed to demonstrate their

7  entitlement to a TRO, and the Court should deny their motion on those bases alone.  Defendants

8  respectfully submit that the weighty issues presented by Plaintiffs' claim on the merits are best

9  decided on the basis of fulsome briefing submitted on an appropriate timeline allowing for

10  adequate client consultation and preparation.

11         For present purposes, and on the limited amount of investigation undersigned counsel has

12  so far been able to conduct in the time available, Defendants highlight multiple deficiencies with

13  Plaintiffs' legal theories that prevent them from carrying their burden of demonstrating a likelihood

14  of success on the merits.  And at the outset, Defendants emphasize that because Plaintiffs bring

15  sweeping, facial claims to general grant conditions, they face the heavy burden—which they have

16  not carried—of proving that the conditions would be unconstitutional in all applications.  *See*

17  *United States v. Salerno*, 481 U.S. 739, 745 (1987) (explaining that a facial challenge must

18  establish that "no set of circumstances exists under which the [enactment] would be valid").

19         **A.    Plaintiffs Are Not Likely To Succeed On Their Constitutional Claims.**

20         *Void for Vagueness*

21         To begin, the void-for-vagueness doctrine that Plaintiffs seek to invoke here is

22  inapplicable.  That doctrine traditionally "guarantees that ordinary people have 'fair notice' of the

23  conduct *a statute* proscribes."  *Sessions v. Dimaya*, 584 U.S. 148, 156 (2018) (plurality op.)

24  (emphasis added).  When courts have applied the doctrine outside of the statutory context, they

25  have done so with respect to direct regulation of primary conduct.  *See, e.g.*, *FCC v. Fox Television*

26  *Stations, Inc.*, 567 U.S. 239, 253 (2012) ("A conviction or punishment fails to comply with due

27  process if the statute or regulation under which it is obtained fails to provide a person of ordinary

28

1    intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages

2    seriously discriminatory enforcement." (citation omitted)).  There is good reason for the doctrine's

3    limited reach.  The Due Process Clause prohibits uneven enforcement, of coercive sanctions; not

4    the discretion to affirmatively fund the work of grant recipients.  *See Grayned v. City of Rockford*,

5    408 U.S. 104, 108 (1972).  No vagueness concerns arise in this context.

6          Moreover, Plaintiffs have not established a protectable property interest.  "The procedural

7    component of the Due Process Clause does not protect everything that might be described as a

8    'benefit': 'To have a property interest in a benefit, a person clearly must have more than an abstract

9    need or desire'" and "more than a unilateral expectation of it. He must, instead, have a legitimate

10   claim of entitlement to it." *Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 756 (2005) (citation

11   omitted).  Applying these principles, the Supreme Court has identified a narrow set of government

12   benefits, so-called "new property," that are protected under the Due Process Clause.  *See Perry v.*

13   *Sindermann*, 408 U.S. 593 (1972) (tenured teaching position); *Goldberg v. Kelly*, 397 U.S. 254

14   (1970) (welfare benefits); *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972)

15   (collecting cases).  The Due Process protections afforded to this set of entitlement-like benefits,

16   however, have not been extended to "'ordinary' or 'routine' government contracts." *See generally*

17   *Eloyan v. United States*, No. 2:19-cv-9565, 2020 WL 7382316, at *5-6 (C.D. Cal. Oct. 21, 2020).

18   Such an extension would be particularly inappropriate in the grant context where agencies, by

19   regulation, may generally terminate a grant at any time if they determine the grant "no longer

20   effectuates the program goals or agency priorities." 2 C.F.R. §200.340(a)(4).

21         Even setting all that aside, Plaintiffs cannot establish a due process vagueness claim.  In

22   *National Endowment for the Arts v. Finley*, the Supreme Court rejected application of demanding

23   vagueness standards to government funding decisions.  524 U.S. 569, 572 (1998). There, plaintiffs

24   brought vagueness challenges under the First and Fifth Amendments to a funding provision that

25   required the National Endowment for the Arts to "take[] into consideration general standards of

26   decency and respect for the diverse beliefs and values of the American public." *Id.* at 572 (quoting

27   20 U.S.C. § 954(d)(1)). The Court recognized that these standards were "undeniably opaque,"

28

1  such that they would raise "substantial vagueness concerns" in the context of a "criminal statute

2  or regulatory scheme[.]"  *Finley*, 524 U.S. at 588.  But in the context of competitive grants,

3  however, the Court explained that this imprecision raised no such concerns.  That is because "when

4  the Government is acting as patron rather than as sovereign, the consequences of imprecision are

5  not constitutionally severe."  *Id.* at 589.  The challenged statute "merely add[ed] some imprecise

6  considerations to an already subjective selection process," and neither these considerations nor the

7  underlying selection process "impermissibly infringe[d] on First or Fifth Amendment rights."  *Id.*

8  at 590.  A contrary conclusion would render unconstitutional "all Government programs awarding

9  scholarships and grants on the basis of subjective criteria such as 'excellence,'" which the Supreme

10  Court declined to do.  *Id.* at 589 (citation omitted).

11      *Separation of Powers*

12      Plaintiffs also contend that the various grant conditions they challenge "violate bedrock

13  separation of powers principles."  TRO Mot. at 12.  Contrary to Plaintiffs' contentions,

14  Defendants' imposition of routine requirements that recipients of federal funds comply with

15  various provisions of federal law does not "usurp Congress's 'power of the purse.'"  *Id*.

16      Article I of the Constitution confers on Congress the authority to "lay and collect Taxes,

17  Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general

18  Welfare of the United States."  U.S. Const. Art. I, § 8, cl. 1.  Congress therefore may, "[i]ncident

19  to" its spending power, "attach conditions on the receipt of federal funds," *Cnty. of Santa Clara v.*

20  *Trump*, 250 F. Supp. 3d 497, 530 (N.D. Cal. 2017), and "Congress can delegate some discretion

21  to the President to decide how to spend appropriated funds" so long as "any delegation and

22  discretion is cabined by [relevant] constitutional boundaries."  *Id.* at 531. Consistent with that

23  authority, Congress has authorized agencies administering certain grant programs—including

24  those at issue here—to impose conditions on their receipt.  Plaintiffs have failed to establish that

25  the challenged conditions are beyond the agencies' authority or that their separation of powers

26  claim is likely to succeed.

27      Moreover, Defendants are not attempting to withhold funds or unilaterally impose

28

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER
No. 3:25-cv-07070-RS                    14

conditions on federal funds without Congressional authorization.  As noted above, each of the executive orders Plaintiffs reference requires consistency with applicable law, and Plaintiffs fail to establish that the grant conditions they challenge (to the extent they identify such conditions with any particularity) would violate any applicable constitutional or statutory limitation.  *See Bldg. Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002) (rejecting separation of powers challenge to executive order where the President is merely exercising his "supervisory authority over the Executive Branch" when he "directs his subordinates" to take certain action "but only '[t]o the extent permitted by law'" (alteration in original) (citation omitted)).

Plaintiffs' Tenth Amendment argument similarly fails.  The Tenth Amendment embodies the principle that the "pre-existing sovereign States" (and their subdivisions) retain their sovereignty under the Constitution and that the federal government may not encroach upon that sovereignty.  *See U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 801 (1995); *New York v. United States*, 505 U.S. 144, 156 (1992).  Plaintiffs claim that Defendants' use of immigration enforcement conditions (none of which they actually identify in any specific federal grant) violate the Tenth Amendment by "holding a gun to recipients' heads to force them to use local resources to cooperate with federal officials in enforcing immigration law." TRO Mot. at 19.  But because Plaintiffs may decline to apply for the specific grants to which any offensive conditions are attached, there is no commandeering of their sovereignty. *See FERC v. Mississippi*, 456 U.S. 742, 766 (1982) ("[I]t cannot be constitutionally determinative that the federal regulation is likely to move the States to act in a given way[.]"); *see also Env't Def. Ctr v. U.S. EPA*, 344 F.3d 832, 847 (9th Cir. 2003) ("[A]s long as the alternative to implementing a federal regulatory program does not offend the Constitution's guarantees of federalism, the fact that the alternative is difficult, expensive or otherwise unappealing is insufficient to establish a Tenth Amendment violation." (citation omitted)).

1    **B.      Plaintiffs' APA Claims Are Not Likely To Succeed.**

2    Plaintiffs also fail to establish a likelihood of success with respect to their APA claims for

3    at least the following reasons.

4    _Plaintiffs do not challenge discrete final agency action._

5    To start, Plaintiffs fail to identify with sufficient particularity the agency action (much less

6    final agency action) they seek to challenge.

7    "[F]inal agency action" is a requirement for APA review.  5 U.S.C. § 704.  Agency action

8    requires a specific "rule, order, license, sanction, relief, or the equivalent." _Id._ § 551(13).  It must

9    be a "discrete" act, and a plaintiff may not bring a "broad programmatic attack." _Norton v. S. Utah_

10   _Wilderness All._, 542 U.S. 55, 64 (2004).  Meanwhile, the Supreme Court has laid out a two-part

11   test for finality, including that (1) "the action must mark the 'consummation' of the agency's

12   decisionmaking process," rather than being "of a merely tentative or interlocutory nature[;]" and

13   (2) "the action must be one by which "rights or obligations have been determined," or from which

14   "legal consequences will flow[.]"  _Bennett v. Spear_, 520 U.S. 154, 177–78 (1997) (citations

15   omitted).

16   Plaintiffs here challenge _any_ grant condition "implementing the President's executive

17   orders and policies."  TRO Mot. at 1 (referring to the "Federal Grant Conditions" "defined in

18   Plaintiffs' Complaint," which define the conditions Plaintiffs seek to challenge as broadly "new

19   and unlawful conditions" that "implement[] President Trump's Executive Orders," _e.g._, Compl. ¶

20   183); _see also_ ECF No. 9-19 (seeking injunction against "imposing or enforcing grant conditions

21   implementing and incorporating executive orders and policy," "including" but not limited to

22   specified executive orders).  The APA forbids this kind of broad programmatic attack against

23   agency grant conditions writ large:  a plaintiff may not "in a single swipe at the duly elected

24   executive" seek judicial superintendence over the entire grantmaking structure of the Executive

25   Branch.  _See Louisiana v. Biden_, 64 F.4th 674, 684 (5th Cir. 2023).  Indeed, the APA does not

26   permit Plaintiffs to "seek _wholesale_ improvement" of agency management "by court decree"—

27   even in the face of allegations of "rampant" violations of law. _Lujan v. Nat'l Wildlife Fed'n_, 497

28

U.S. 871, 891 (1990).  "Because 'an on-going program or policy is not, in itself, a "final agency action" under the APA,' [a court's] jurisdiction does not extend to reviewing generalized complaints about agency behavior."  *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) (citation omitted).  "Consequently, as each case only presents the court with a narrow question to resolve, [the court] can have no occasion to order wholesale reform." *Id.*

Moreover, while Plaintiffs purport to be challenging the "impos[ition of] new conditions on recipients," TRO Mot. at 19, their actual arguments appear to be much broader.  For example, they at times rely on press releases or other statements from agency officials to define the scope of the conditions at issue in this case.  *See, e.g.*, TRO Mot. at 3 (citing a HUD press release as evidence for HUD's "commitment to the President's agenda"); *id.* at 4 (citing letter from DOT Secretary to all agency funding recipients).  To the extent Plaintiffs seek to challenge such general directives in the abstract, unconnected from Plaintiffs' specific grant programs, they fail to challenge final agency action.

For these threshold reasons, the Court should reject Plaintiffs' grab bag of APA challenges as being beyond the bounds Congress has set out for such review.

### *Plaintiffs challenge a realm of decisions that are committed to agency discretion by law.*

An agency's determination of how best to condition appropriate funds to fulfill its legal mandates is classic discretionary agency action.  As a general matter, federal funding decisions are quintessential agency actions "committed to agency discretion by law," for which the APA does not provide an avenue for review.  5 U.S.C. § 701(a)(2).  While the APA establishes a waiver of sovereign immunity and a cause of action for injunctive relief for parties adversely affected by either final agency action or an agency's failure to act, 5 U.S.C. §§ 702, 706(1)-(2), the waiver of sovereign immunity is limited.  It does not apply in circumstances where "agency action is committed to agency discretion by law," *id.* § 701(a)(2).  Review under the APA therefore is unavailable "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

1    The Supreme Court has long recognized that an agency's determination of how to allocate

2    and condition appropriated funds among competing priorities and recipients is classic discretionary

3    agency action.  *See Lincoln* v. *Vigil*, 508 U.S. 182, 193 (1993).  In *Lincoln*, the Court explained

4    that there is no waiver of sovereign immunity where agency action requires "a complicated

5    balancing of a number of factors which are peculiarly within [the agency's] expertise," including

6    whether "resources are best spent on one program or another; whether it is likely to succeed in

7    fulfilling its statutory mandate; whether a particular program best fits the agency's overall policies;

8    and, indeed, whether the agency has enough resources to fund a program at all."  *Id.* (citations and

9    internal quotation marks omitted).  An "agency is far better equipped than the courts to deal with

10   the many variables involved in the proper ordering of its priorities."  *Id.*  The APA "gives the courts

11   no leave to intrude" via arbitrary-and-capricious review.  *Id.*

12   Moreover, Courts have made clear that *Lincoln*'s logic extends to funding programs that

13   leave to the agency "the decision about how the moneys" for a particular program "could best be

14   distributed consistent with" the statute.  *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751 (D.C. Cir.

15   2002).  Such decisions—like decisions regarding how best to allocate lump-sum appropriations—

16   "clearly require[] a complicated balancing of a number of factors which are peculiarly within [the

17   agency's] expertise."  *Id.* at 752 (quotation omitted); *see also Pol'y & Rsch., LLC v. U.S. Dep't of

18   Health & Hum. Servs.*, 313 F. Supp. 3d 62, 75-76 (D.D.C. 2018).  As another court recently held,

19   although an agency

> is required to use earmarked funds for their specified purpose, an agency may still
> exercise discretion *within* the earmark. If, for example, Congress earmarks funds
> for the Navy to build a certain type of ship, the Navy has discretion to use the money
> to complete construction of two less expensive ships or to spend the money on one
> more expensive ship.

24   *Amica Ctr. for Immigrant Rights v. U.S. Dep't of Justice*, No. 25-cv-298, 2025 WL 1852762, at *14

25   (D.D.C. July 6, 2025) (emphasis in original) (agency's decision to terminate certain grant programs

26   not subject to judicial review under the APA).

27

28

As noted above, the overbroad nature of Plaintiffs' complaint makes it difficult to determine precisely which agency grants and statutory programs they seek to challenge. To the extent they challenge the kind of discretionary grants that fit within *Lincoln's* analytical framework for agency discretion, however, APA review is foreclosed.

### *Plaintiffs' APA claims fail on their merits.*

Even if APA review is available, Plaintiffs' arguments fail. Plaintiffs primarily contend that the agencies were required to follow notice-and-comment procedures before adding grant terms and that the agencies failed to adequately explain their reasoning for adding such terms. *See* TRO Mot. at 20-23. But grants are explicitly excluded from APA rule-making requirements. *See* 5 U.S.C. § 553(a)(2) (rule-making procedures do not apply to "a matter relating to . . . grants, benefits, or contracts"). Because grants are not subject to rule-making requirements, the conditions they impose are not subject to the level of explanation Plaintiffs seek to impose. In any event, conditions that require grant recipients to certify their compliance with "Federal anti-discrimination laws" and other restrictions on the use of federal funds, such as the Hyde Amendment, *see* Fernandez Decl. ¶ 12, can hardly be considered arbitrary or capricious.

## IV. The Balance of the Equities Weighs in the Federal Government's Favor

Lastly, Plaintiffs cannot establish that the balance of equities and public interest favor granting the extraordinary remedy of a preliminary relief. These final two factors merge in cases where relief is sought from the government. *Nken*, 556 U.S. at 435.

The Supreme Court in *California* squarely explained that the balance of the equities favors the federal government in this context. The public interest is harmed when the United States is forced to pay out funds that it may not be able to recover. *California*, 145 S. Ct. at 969. And the grantees have the choice of whether "to keep the programs operating," and if they choose not to, "then any ensuing irreparable harm would be of their own making." *Id.*; *see also Heckler v. Turner*, 468 U.S. 1305, 1307-08 (1984) (Rehnquist, J., in chambers) (prospect of the government being forced to make $1.3 million in improper payments per month supported a stay of injunction). In *NIH*, the Supreme Court reaffirmed this conclusion, emphasizing that the federal government is

1  irreparably harmed if its funds "cannot be recouped," such as when federal grant recipients "do

2  not state that they will repay grant money if the Government ultimately prevails"). *NIH*, 2025 WL

3  2415669, at *1; *see also id.* at 6 (Kavanaugh, J., concurring in part).

4     This is all in addition to the fact that any injunction interfering with the President's

5  priorities is itself a substantial harm in the balance of the equities analysis. For, "[a]ny time [the

6  Government] is enjoined by a court from effectuating [laws], it suffers a form of irreparable

7  injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation

8  omitted). To the extent the Court finds the balance of various factors close, this equities analysis

9  should tip against an injunction.

10  **V.    Any Injunctive Relief Should Be Narrowly Tailored.**

11     Relief under the APA is limited; courts may either "compel agency action unlawfully

12  withheld or unreasonably delayed" or "hold unlawful and set aside agency action." 5 U.S.C. §

13  706(1); *see also Norton*, 542 U.S. at 66-67 (explaining how the APA's limits on relief are intended

14  to "protect agencies from undue judicial interference with their lawful discretion, and to avoid

15  judicial entanglement in abstract policy disagreements").

16     Emergency temporary injunctive relief should not provide "a remedy beyond what [is]

17  necessary to provide relief" to injured parties. *Lewis v. Casey*, 518 U.S. 343, 360 (1996).

18  Accordingly, to the extent the Court is inclined to grant the Plaintiffs' request for a TRO, and

19  particularly in light of Plaintiffs' overbroad definition of the "conditions" they seek to enjoin, any

20  such relief should be narrowly tailored to apply only to the grants identified in Plaintiffs'

21  Complaint and declarations. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The

22  purpose of a preliminary injunction is merely to preserve the relative positions of the parties until

23  a trial on the merits can be held."); *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600

24  (2020) (Gorsuch, J., concurring) ("Universal injunctions have little basis in traditional equitable

25  practice."); *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1282 (11th Cir. 2021) (noting

26  that the "appropriate circumstances" for issuing a nationwide injunction "are rare"). Moreover,

27  that relief should flow only to any plaintiff that is able to demonstrate all the requirements for

28

1    emergency injunctive relief and only against those Defendants for which particular grants are

2    actually identified and against whom all such requirements are met.

3        Finally, any TRO should at most enjoin only those portions of Defendants' identified grant

4    conditions which can be read to require actions beyond complying with federal law (something

5    Plaintiffs are independently required to do).

6    **VI.    Any Injunctive Relief Should Be Stayed Pending Appeal, Be Accompanied By A**
     **Bond, And No Declaration Should Be Required.**

7

8        To the extent the Court issues any injunctive relief, Defendants respectfully request that

9    such relief be stayed pending the disposition of any appeal that is authorized by the Solicitor

10    General, or at a minimum, administratively stayed for a period of seven days to allow the United

11    States to consider whether to seek an emergency, expedited stay from the court of appeals if an

12    appeal is authorized.

13        Defendants also respectfully request that any injunctive relief accompany a bond under

14    Fed. R. Civ. P. 65(c), which provides that "[t]he court may issue a preliminary injunction or a

15    temporary restraining order only if the movant gives security in an amount that the court considers

16    proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined

17    or restrained."  A bond is appropriate here given that any preliminary relief would potentially

18    mandate that the Executive spend money that may be lost forever once distributed. *California*,

19    145 S. Ct. at 969.

20        Finally, Plaintiffs ask that Defendants be made to file a status report "by the end of the

21    business on the second day after issuance of [any TRO] . . . documenting the actions that they have

22    taken to comply with [the TRO], including a copy of" "written notice of [the TRO] to all

23    Defendants and their employees."  Proposed TRO, ECF No. 9-19.  The Court should not order

24    such an extraordinary filing.  Instead, if the Court orders relief, the presumption of regularity

25    should apply, and the Court should presume the federal government will comply with any such

26    order.  *See Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010).

27

28

**CONCLUSION**

For the foregoing reasons, this Court should deny Plaintiffs' motion for a temporary restraining order.

DATED:  August 25, 2025                        Respectfully submitted,

                                              BRETT A. SHUMATE
                                              Assistant Attorney General

                                              CRAIG H. MISSAKIAN
                                              United States Attorney

                                              JOSEPH E. BORSON
                                              Assistant Branch Director

                                              JEVECHIUS D. BERNARDONI
                                              Assistant United States Attorney

                                              */s/ R. Charlie Merritt*
                                              R. CHARLIE MERRITT
                                              Senior Counsel (VA Bar No. 89400)
                                              U.S. Department of Justice
                                              Civil Division, Federal Programs Branch
                                              1100 L St. NW
                                              Washinton, D.C. 20005
                                              (202) 616-8098
                                              robert.c.merritt@usdoj.gov

                                              *Attorneys for Defendants*