UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY OF FRESNO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> SCOTT TURNER, *et al.*, <br><br> Defendants. | Case No. 3:25-cv-07070-RS <br><br> **DECLARATION OF DAVID F. CUSHING IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER** <br><br> Date: August 26, 2025 <br> Time: 3:00 p.m. <br> Place: Videoconference <br><br> The Honorable Richard Seeborg |

I, DAVID F. CUSHING, pursuant to 28 U.S.C. section 1746, hereby declare as follows:

1. I have been employed by the U.S. Department of Transportation ("DOT"), Federal Aviation Administration ("FAA"), since September 30, 1996. Currently, I am the manager of the Airports Financial Assistance Division in the Office of Planning and Programming for FAA's Office of Airports in Washington, D.C. I make this declaration based upon personal knowledge and information made known to me in the course of my duties.

2. As the manager of the FAA Office of Airports' Financial Assistance Division, my duties and responsibilities include the administration of FAA's Federal financial assistance programs as well as providing FAA guidance and technical assistance regarding the administration of such FAA financial assistance.

3. FAA currently administers two primary airport development financial assistance programs: the Airport Improvement Program (AIP), 49 U.S.C. § 47101 *et seq.*, and programs authorized under the Infrastructure Investment and Jobs Act (IIJA), P.L. 117-58 (2021). The FAA

provides grants under both programs directly to airport grant recipients, known as airport sponsors.

4. Depending on the grant program, some grants are discretionary, while others are "formula" grants, in which Congress designates specific amounts to be made available for certain aviation projects based on a statutory formula through apportionment.

5. While the two financial assistance programs overlap regarding eligibility of specific airport owning entities; certain airport development projects; and overall financial implementation requirements, each is subject to separate statutory requirements. For example, funds made available by the FAA as part of AIP under subchapter I of chapter 471 or chapter 475 of title 49, United States Code, are not subject to the requirement to issue a Notice of Funding Opportunity. 49 U.S.C. § 47101 note.

6. IIJA comprises both discretionary and formula grant programs. Title VIII of Division J of the IIJA provides $25 billion for the National Aerospace System. Five billion dollars of the IIJA funds are administered by FAA's Air Traffic Organization. FAA's Office of Airports (ARP) administers the remaining approximately $20 billion in funds for grants supporting airport infrastructure, terminal development, including multimodal terminal development and on-airport rail access projects, and airport owned control towers. Of the ARP grant amount, $1 billion annually ($5 billion total) is for the Airport Terminal Program (ATP); $20 million annually ($100 million total) is for the Airport-owned FAA Contract Tower (FCT) Program. The remainder of the $20 billion dollars is for formula grants under the Airport Infrastructure Grant (AIG) grant program.

7. The IIJA directs funds that are unobligated at the end of the fourth fiscal year after the funds first were made available under the Airport Infrastructure grant program to be converted to a new competitive funding program for the fifth and final fiscal year of availability. Of those

amounts converted, the first $100 million will be made available to the IIJA's Airport-owned FAA Contract Tower Program grant program. Funds exceeding $100 million will then be awarded through the new competitive grant program, called the Airport Infrastructure Grant Funding Reallocation Program (AFR).

8. In general, to apply for discretionary grants under IIJA, an eligible applicant must submit an application in response to a Notice of Funding Opportunity (NOFO). *See, e.g.*, 89 FR 22468 (4/01/2024). A NOFO describes the overall grant program, including the Assistance Listing Number (ALN), the grant program's objectives, which largely reflect the program's statute, and the grant program's policy priorities. The NOFO establishes what applicants need to do to apply for the fiscal year funds advertised in the NOFO; how FAA will evaluate applications for such funds; and FAA's priorities for funding grant awards made available under that specific NOFO for a particular grant program. It also provides a general overview of the types of noteworthy terms and policy requirements that will be in the grant agreement.

9. AIP was established by the Airport and Airway Improvement Act of 1982 (P.L. 97-248). It is a hybrid non-competitive discretionary program (49 U.S.C. § 47115) and formula grant program (49 U.S.C. § 47114) that provides federal funding for airport infrastructure and equipment projects across the United States. AIP grants support airport capital development projects such as the construction and improvement of runways, taxiways, and lighting systems, as well as the acquisition of necessary equipment. Funds obligated for AIP are drawn from the Airport and Airway Trust Fund, which is supported by user fees, fuel taxes, and other aviation-related sources.

10. Eligible airport sponsors are entitled to a certain amount of AIP funding each year, based primarily on passenger and cargo volume. If their capital project needs exceed their available entitlement funds, then the FAA can supplement their entitlements with discretionary

funding. For large and medium primary hub airports, the AIP grant covers 75 percent of eligible costs (or 80 percent for noise program implementation). For small primary, reliever, and general aviation airports, the AIP grant covers a range of 90-95 percent of eligible costs, based on statutory requirements.

11. The demand for AIP funds exceeds the availability. FAA bases the distribution of these funds on national priorities and objectives, focusing on safety projects as our highest priority. AIP funds are typically first apportioned into major entitlement categories of airports such as primary, cargo, and general aviation. The remaining funds fill a noncompetitive discretionary fund. FAA's authorizing statute sets-aside certain funding by formula into a noncompetitive discretionary fund for specific purposes such as noise and environmental projects as defined by FAA's authorizing statute. The authorizing statute distributes remaining funds according to a national prioritization formula.

12. The period of availability of primary and cargo entitlements is three years total (current year and 2 years) while nonprimary entitlements remain available for 4 years total (current year plus 3 years), as set forth in 49 U.S.C. § 47117(b).

13. City of Fresno, CA (Fresno): To the best of my knowledge and belief, Fresno is an FAA airport sponsor, and there is no risk of anything happening to its FAA grant monies prior to September 18, 2025. Fresno owns and operates two airports: Fresno Yosemite International Airport (FAT) and Fresno Chandler Executive Airport (FCH). FAT has various grants in process, including for the reconstruction of a runway 11L/29R under the AIG. Fresno may gain access to certain portions of these awards at the end of Fiscal Year (FY) 2025 if it accepts the FAA's grant offer by September 18, 2025. $295,000 of AIG FY2022 funds not under award at the end of FY 2025 will become available only to a specialized use, allowed by the IIJA, namely airport traffic control towers, as referenced above. This permits the FAA

to reallocate unobligated remaining funds to grant recipients who are able to execute a grant agreement before the end of FY 2025 for a grant-eligible project. While the FAA sent Fresno a grant offer for ATP Project No. 3-06-0087-105-2025 with a deadline of August 29, 2025; the local FAA office set that date for administrative purposes. The local FAA office can extend that date but no later than September 18, 2025.

14. City of Eureka, CA (Eureka): To the best of my knowledge and belief, Eureka does not own an airport eligible for FAA airport grants.

15. City of South Lake Tahoe, CA: To the best of my knowledge and belief, the City of South Lake Tahoe is a FAA airport sponsor. South Lake Tahoe owns and operates one airport eligible for FAA airport grants: Lake Tahoe International Airport (TVL). South Lake Tahoe has one grant in process for TVL under the AIP that resurfaces an existing taxiway. FAA can rescind the grant offer and carry over (protect) TVL's formula funding, which would become available again in FY 2026. No funds would be lost.

16. City of St. Paul, MN: To the best of my knowledge and belief, the City of St. Paul does not own an airport eligible for Federal funding from the FAA.

17. County of Sacramento, CA (Sacramento): To the best of my knowledge and belief, Sacramento is an FAA airport sponsor. Sacramento operates four airports eligible for FAA airport grants: Sacramento International Airport (SMF), Sacramento Executive Airport (SAC), Sacramento Mather Airport (MHR), and Franklin Field Airport (F72). All available formula funding was carried over (protected) until FY 2026 for SAC, SMF, and F72. Sacramento has various grants in process for MHR under AIP and IIJA, for the rehabilitation of runway 4R/22L. Sacramento will lose its claim to certain portions of these awards at the end of FY 2025. For IIJA, this amount is about $867,000 in entitlement funds dedicated by formula in FY 2022 that are set to be reallocated. Regarding AIP funding, Sacramento will

lose access to $2.9 million in AIP entitlement funds. To retain access to these funds, Sacramento must fully execute grant agreements no later than September 18, 2025.

18. County of Monroe, New York, and Monroe County Airport Authority: To the best of my knowledge and belief the County of Monroe (Monroe County) is an FAA airport sponsor, with the Monroe County Airport Authority as the operator of Greater Rochester International Airport (ROC). Monroe County has various grants in process for ROC under AIP and IIJA, for various projects including terminal reconstruction, acquiring an Airport Rescue and Fire Fighting vehicle, and rehabilitation of various airfield pavements. Monroe County could forego its claim to certain portions of these awards at the end of FY 2025. For IIJA, this amount is about $2.5 million in entitlement funds dedicated by formula in FY 2022 that are set to be reallocated. Regarding AIP funding, Monroe County will lose access to $600,000 in AIP entitlement funds. To retain access to these funds, Sacramento must fully execute grant agreements no later than September 18, 2025. While the FAA sent Monroe County a grant offer for AIP Project No. 3-36-0102-131-2025 with a deadline of August 27, 2025; the local FAA office set that date for administrative purposes. The local FAA office can extend that date but no later than September 18, 2025.

19. General End of Year Process Summary: To the best of my knowledge and belief, the Federal FY ends on September 30, 2025. Each year, depending on the grant program, FAA performs actions to ensure the timely closeout and expenditure of funds per statutory and administrative requirements. Under AIP, a single-year grant program, FAA will obligate (put under award) all funds available for grants that were originally appropriated in the FY. For FY 2025, FAA was originally appropriated $4 billion in March 2025.

20. To the best of my knowledge and belief, in early September 2025, FAA begins financial end-of-year processing. This means FAA is working with airports to finalize the remaining grant

offers and obligate those funds. For any grant offers that do not go forward for various reasons (e.g., an airport withdraws its application), FAA must withdraw the grant offer, protect the funds as allowed under statute, and redistribute to other projects to ensure all funds are awarded in the given year. The FAA's grant accounting system will shut down for the end-of-year reconciliation on September 22, 2025, after which no further grant obligations can be processed. Any withdrawing of grant awards and redistributions must happen no later than September 18, 2025. This ensures FAA can make final adjustments, Congressional notifications as required by law, and have grant offers signed before the FAA's grant accounting system shuts down for end-of-year reconciliation. The FAA would need time to reallocate funds to grant recipients that can execute a grant in a timely manner for an eligible project so to account for such a contingency, the FAA needs to award any grant by September 18, 2025.

21. To the best of my knowledge and belief, for funds under the IIJA, ATP funds that were awarded as part of a competitive discretionary process can be held pending the outcome of litigation. AIG formula funds can also be held, except for FY 2022 AIG funds that will be reallocated at the end of the fourth year per statute and become unavailable as entitlement funds to those airports to which they were originally allocated.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.  Executed at Atco, New Jersey on August 25, 2025.

DAVID F CUSHING  
Digitally signed by DAVID F CUSHING  
Date: 2025.08.25 17:35:08 -04'00'

_____
DAVID F. CUSHING