ANDREW JANZ (SBN 287672)*
City Attorney
CITY OF FRESNO
2600 Fresno Street
Fresno, CA 93721
Telephone: (559) 621-7500
Facsimile: (559) 457-1084
* *Application for admission pro hac vice
forthcoming*

*Attorney for Plaintiff*
CITY OF FRESNO

JONATHAN V. HOLTZMAN (SBN 99795)
jholtzman@publiclawgroup.com
JAMES R. ROSS (SBN 149199)
jross@publiclawgroup.com
RYAN P. McGINLEY-STEMPEL (SBN 296182)
rmcginleystempel@publiclawgroup.com
JAKE D. FREITAS (SBN 341837)
jfreitas@publiclawgroup.com
MARIBEL LOPEZ (SBN 340907)
mlopez@publiclawgroup.com
RENNE PUBLIC LAW GROUP
350 Sansome Street, Suite 300
San Francisco, California 94104
Telephone: (415) 848-7200
Facsimile:  (415) 848-7230

*Attorneys for Plaintiffs*
CITY OF FRESNO; CITY OF EUREKA; CITY OF
SOUTH LAKE TAHOE; COUNTY OF
SACRAMENTO; COUNTY OF MONROE;
MONROE COUNTY AIRPORT AUTHORITY

LYNDSEY OLSON (MN Lic. #0332288)**
Saint Paul City Attorney
Lyndsey.olson@ci.stpaul.mn.us
KELSEY MCELVEEN (MN Lic.
#0396744)**
Assistant City Attorney
Kelsey.McElveen@ci.stpaul.mn.us
SAINT PAUL CITY ATTORNEY'S OFFICE
400 City Hall and Courthouse
15 Kellogg Boulevard West
Saint Paul, Minnesota 55102
Telephone:  (651) 266-8710
Facsimile  (651) 298-5619
**Appearing pro hac vice*

*Attorneys for Plaintiff*
CITY OF SAINT PAUL

MELISSA C. ALLISON (MA Bar No. 657470)**
mallison@andersonkreiger.com
CHRISTINA S. MARSHALL**
(MA Bar No. 688348) *Appearing pro hac vice*
cmarshall@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, Floor 21
Boston, MA 02109
Telephone: (617) 621-6500
**Appearing pro hac vice*

*Attorneys for Plaintiffs*
COUNTY OF MONROE
 MONROE COUNTY AIRPORT AUTHORITY

RENNE PUBLIC LAW GROUP
Attorneys at Law

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF FRESNO, et al,<br><br>                    Plaintiffs,<br><br>v.<br><br>SCOTT TURNER, et al,<br><br>                    Defendants. | Case No.: 3:25-cv-07070-RS<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION**<br><br>Hearing Date:  August 26, 2025<br>Judge:  Hon. Richard Seeborg<br>Location:  Videoconference |

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS..................................................................................................................i

TABLE OF AUTHORITIES ........................................................................................................ii

I.     INTRODUCTION ...........................................................................................................1

II.    ARGUMENT ....................................................................................................................2

    A.     This Court Has the Power to Review the Lawfulness of Defendants' Grant
    Conditions .............................................................................................................2

        1.     This Court Can Enjoin the DOT and the FAA from Imposing the Unlawful
        Grant Conditions.........................................................................................2

        2.     The Tucker Act Does Not Prevent This Court from Setting Aside the
        Unlawful Agency Directives at Issue Because Plaintiffs Do Not Challenge
        Grant Terminations. ....................................................................................3

        3.     Defendants' Unlawful Grant Conditions Are Not Committed to Agency
        Discretion by Law.......................................................................................6

    B.     Plaintiffs Are Likely to Prevail on the Merits of Their Claims .........................8

        1.     Constitutional Claims..................................................................................8

            a.     The Conditions are unconstitutionally vague under the Due Process
            Clause and the Spending Clause .....................................................8

            b.     Congress has not authorized the Grant Conditions, and even if it
            had, the Grant Conditions exceed Congress's Spending Clause
            power................................................................................................9

        2.     APA Claims ................................................................................................9

            a.     The federal agency actions at issue are "final agency action"
            reviewable under the APA. .............................................................9

            b.     Plaintiffs' APA claims are likely to succeed on the merits ......................10

    C.     Immediate Relief Is Necessary to Prevent Irreparable Harm to Plaintiffs........................10

    D.     The Equities Weigh in Plaintiffs' Favor ............................................................13

    E.     Plaintiffs Seek an Appropriately Tailored Prohibitory TRO ............................14

    F.     A TRO Serves the Public Interest; a Bond or Stay Does Not............................14

III.   CONCLUSION................................................................................................................15

RENNE PUBLIC LAW GROUP
Attorneys at Law

PLAINTIFFS' REPLY ISO MOTION FOR TRO AND OSC FOR A PRELIM INJUNCTION
Case No.: 3:25-cv-07070-RS

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Am. Trucking Ass'ns, Inc. v. City of L.A.*,
5
    559 F.3d 1046 (9th Cir. 2009) ...................................................................................11, 12

6

*Amica Ctr. for Immigrant Rights v. U.S. Dep't of Justice*,
    2025 WL 1852762 (D.D.C. July 6, 2025)..................................................................................7
7

8

*Ariz. Dream Act Coal.*, 757 F.3d 1069 (2018)............................................................................13

9

*Ariz. Dream Act Coal. v. Brewer*,
    757 F.3d 1053 (9th Cir. 2024) ................................................................................................14

10

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
11
    548 U.S. 291 (2006)....................................................................................................................8

12

*Bowen v. Massachusetts*,
    487 U.S. 879 (1988)................................................................................................................4, 7
13

14

*California v. U.S. Dep't of Educ.*,
    No. CV 25-10548-MJJ, 2025 WL 760825 (D. Mass. Mar. 10, 2025).....................................5

15

*California v. U.S. Dep't of Transp.*,
16
    --- F. Supp. 3d ---, 2025 WL 1711531 (D.R.I. June 19, 2025) ........................................1, 2, 14

17

*City & Cnty. of San Francisco v. Trump*,
    No. 25-CV-01350-WHO, 2025 WL 1282637 (N.D. Cal. May 3, 2025) ................................11

18

*City & Cnty. of San Francisco v. Trump*,
19
    No. 25-CV-01350-WHO, 2025 WL 2426858 (N.D. Cal. Aug. 22, 2025) .........................1, 12

20

*City of Chicago v. Sessions*,
21
    264 F. Supp. 3d 933 (N.D. Ill. 2017) ....................................................................................12

22

*City of Los Angeles v. Barr*,
    941 F.3d 931 (9th Cir. 2019) ...................................................................................................9

23

*City of Los Angeles v. F.A.A.*,
24
    2239 F.3d 1033 (9th Cir. 2001) ...............................................................................................3

25

*City of Los Angeles v. Sessions*,
    CV 17-7215-R, 2018 WL 6071072 (C.D. Cal. Sept. 13, 2018), *aff'd sub nom. City of*
26
    *Los Angeles v. Barr*, 941 F.3d 931 (9th Cir. 2019)................................................................11

27

*Climate United Fund v. Citibank, N.A.*,
28
    No. 25-CV-698, 2025 WL 842360 (D.D.C. Mar. 18, 2025) ....................................................5

RENNE PUBLIC LAW GROUP
Attorneys at Law

RENNE PUBLIC LAW GROUP
Attorneys at Law

*Cnty. of Santa Clara v. Trump,*
   250 F. Supp. 3d 497 (N.D. Cal. 2017) ..................................................................9

*Community Legal Services in East Palo Alto v. United States Department of Health and Human Services,*
   137 F.4th 932 (9th Cir. 2025) ...........................................................................5

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills,*
   321 F.3d 878 (9th Cir. 2003) ...........................................................................14

*Dep't of Commerce v. New York,*
   588 U.S. 752 (2019) ......................................................................................6

*Department of Education v. California,*
   145 S. Ct. 966 (2025) ...................................................................................13

*Department of Education v. California,*
   145 S. Ct. 966 (2025) (per curiam) ...................................................................5

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.,*
   82 F.4th 664 (9th Cir. 2023) ..........................................................................14

*Gilmore v. Wells Fargo Bank, N.A.,*
   No. C 14-2389 CW, 2014 WL 3749984 (N.D. Cal. July 29, 2014) ......................14

*Grayned v. City of Rockford,*
   408 U.S. 104 (1972) ......................................................................................8

*J.G.G. v. Trump,*
   No. 25-00766 ..............................................................................................12

*Jajati v. U.S. Customs & Border Prot.,*
   102 F.4th 1011 (9th Cir. 2024) ........................................................................6

*Kidwell v. Dep't of Army, Bd. for Correction of Military Records,*
   56 F.3d 279 (D.C. Cir. 1995) ..........................................................................4

*Latif v. Holder,*
   686 F.3d 1122 (9th Cir. 2012) ........................................................................3

*LeBlanc v. United States,*
   50 F.3d 1025 (Fed. Cir. 1995) ........................................................................4

*Lincoln v. Vigil,*
   508 U.S. 182 (1993) ...................................................................................6, 7

*Loan Syndications & Trading Ass'n v. S.E.C.,*
   818 F.3d 716 (D.C. Cir. 2016) ........................................................................3

*MacLean v. Dep't of Homeland Sec.*,
   543 F.3d 1145 (9th Cir. 2008) ..................................................................................2

*Magassa v. Mayorkas*,
   52 F.4th 1156 (9th Cir. 2022) ..................................................................................3

*Maine Cmty. Health Options v. United States*,
   590 U.S. 296 (2020)..................................................................................................4

*Maine v. U.S. Dep't of Agric.*,
   1:25-CV-00131-JAW, 2025 WL 1088946 (D. Me. Apr. 11, 2025) ..........................5

*Martin Luther King Jr. County v. Turner*,
   --- F. Supp. 3d ---, 2025 WL 1582368 (W.D. Wash. June 3, 2025) ............................1, 7, 9, 14

*Megapulse, Inc. v. Lewis*,
   672 F.2d 959 (D.C. Cir. 1982) ..................................................................................4

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) ..................................................................................11

*National Ass'n of Mfrs. v. Dep't of Defense*,
   583 U.S. 109 (2018)..................................................................................................2

*National Institutes of Health v. American Public Health Association*,
   606 U.S. ---, 2025 WL 2415669 (U.S. Aug. 21, 2025) ....................................1, 5, 6

*Nguyen v. Kissinger*,
   528 F.2d 1194 (9th Cir. 1975) ..................................................................................8

*Ohio v. Env't Prot. Agency*,
   603 U.S. 279 (2024)................................................................................................10

*Pennhurst State Sch. & Hosp. v. Halderman*,
   451 U.S. 1 (1981)......................................................................................................8

*PFLAG, Inc. v. Trump*,
   No. 25-337-BAH, 2025 WL 685124 (D. Md. Mar. 4, 2025)..................................13

*Rhode Island Coalition Against Domestic Violence v. Bondi*,
   --- F. Supp. 3d ---, 2025 WL 2271867 (D.R.I. Aug. 8, 2025) ................................10

*San Francisco Unified Sch. Dist. v. AmeriCorps*,
   No. 25-cv-02425-EMC, 2025 WL 1180729 (N.D. Cal. Apr. 23, 2025)..................... *passim*

*San Francisco Unified School Dist.*, 2025 WL 1713360 (2025)........................................10

*South Dakota v. Dole ("South Dakota")*,
   483 U.S. 203 (1987)..................................................................................................9

RENNE PUBLIC LAW GROUP
Attorneys at Law

*United Aeronautical Corp. v. U.S. Air Force*,
   80 F.4th 1017 (9th Cir. 2023) ...........................................................................4

*Webster v. Doe*,
   486 U.S. 592 (1988) ......................................................................................6, 7

*Wong v. Warden, FCI Raybrook*,
   171 F.3d 148 (2d Cir. 1999) ...............................................................................8

*Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*,
   No. 1:25-cv- 00097-MSM-PAS, 2025 WL 1116157 (D.R.I. Apr. 15, 2025), *appeal*
   *docketed*, No. 25-1428 (1st Cir.)....................................................................13

**Statutes**

5 U.S.C.
   §553(a)(2) .........................................................................................................10
   § 701(a)(2) ...................................................................................................6, 7, 8
   § 702 ....................................................................................................................3
   § 706(2) ...............................................................................................................3
   § 706(2)(A) ........................................................................................................10

18 U.S.C.
   § 287 ..................................................................................................................13

23 U.S.C
   § 24112 ................................................................................................................7

28 U.S.C.
   § 1331 ..................................................................................................................3
   § 1491(a) ..............................................................................................................4

42 U.S.C.
   § 254(b) ................................................................................................................7
   § 9604(k) ..............................................................................................................7
   § 11372 .................................................................................................................7
   § 12475 .................................................................................................................7
   § 12476 .................................................................................................................7
   § 12742 .................................................................................................................7
   § 12744 .................................................................................................................7
   §§ 12903(d)(1)-(6) ...............................................................................................7
   §§ ¶ 5303–5 .........................................................................................................7

49 U.S.C.
   § 46110 ........................................................................................................1, 2, 3
   § 46110(a) ............................................................................................................2
   § 47106 .................................................................................................................7

RENNE PUBLIC LAW GROUP
Attorneys at Law

-v-

**Other Authorities**

24 C.F.R. § 10.1 ............................................................................................................10

*NIH*, 606 U.S. ---, 2025 WL 2415669 .............................................................3, 5, 15

United States Constitution, Fifth Amendment.............................................................4

PLAINTIFFS' REPLY ISO MOTION FOR TRO AND OSC FOR A PRELIM INJUNCTION
Case No.: 3:25-cv-07070-RS

RENNE PUBLIC LAW GROUP
Attorneys at Law

1

## I.    INTRODUCTION

2          The Administration is right in one respect: the jurisdictions in this lawsuit, and other jurisdictions

3   considering joining this lawsuit or filing separately, are divergent geographically and politically.  They

4   are brought together not by a "desire" to sue the federal government, but the urgent need to do so because

5   of actions the government has taken impermissibly to enforce the President's executive orders ("EOs").

6   The harm here is not just the potential loss of critical federal funds, but being required to attest to

7   compliance with conditions the executive has no legal right to insist upon, which are alternately vague,

8   contradictory, illegal and even unconstitutional.

9          The Administration protests that the harm is not imminent because extensions "could" be granted,

10  attestations could be delayed by weeks, or other grants might not contain the conditions allegedly

11  mandated by the Executive Orders.  Yet, the Administration's briefing does not say it will grant

12  extensions, that other grants will not have the same conditions, or that it will not continue to set arbitrary

13  and unreasonable deadlines.  Also, absent from the brief is the slightest suggestion that the

14  Administration can permissibly impose the conditions it seeks.  The Administration's continued

15  insistence on these conditions is the reason an injunction preventing the inclusion of those terms in grant

16  agreements – both current and future – is required.  The direction – which is express and in writing – is

17  coming from the top, and the Administration certainly does not suggest Defendants are free to ignore it.

18          Additionally, virtually all of the government's jurisdictional arguments have been addressed in

19  Judge Barbara Rothstein's decision in *Martin Luther King Jr. County v. Turner*, --- F. Supp. 3d ---, 2025

20  WL 1582368 (W.D. Wash. June 3, 2025) ("*King County*"), the language and reasoning of which Judge

21  Orrick adopted in a recent order.  *See City & Cnty. of San Francisco v. Trump*, No. 25-CV-01350-WHO,

22  2025 WL 2426858, at *3 (N.D. Cal. Aug. 22, 2025).  The Supreme Court's order in *National Institutes of

23  Health v. American Public Health Association*, 606 U.S. ---, 2025 WL 2415669 (U.S. Aug. 21, 2025)

24  (per curiam) ("*NIH*") supports Plaintiffs to the extent it is applicable here, holding that APA challenges

25  to grant policies are properly brought in district court.  The only decision that Plaintiffs are aware of

26  involving the unlawful grant conditions rejected Defendants' argument that 49 U.S.C. § 46110 forecloses

27  jurisdiction over the claims involving the FAA.  *See California v. U.S. Dep't of Transp.*, --- F. Supp. 3d -

28  --, 2025 WL 1711531, at *1 (D.R.I. June 19, 2025).

RENNE PUBLIC LAW GROUP
Attorneys at Law

-1-

1    Local governments who receive these grants are responsible for providing the public services they

2    fund.  These essential programs require planning, staffing, and significant financial commitments.  The

3    Administration appears to suggest, without any assurances, it may not do what it threatens; but the people

4    who run and benefit from these programs cannot function with that level of uncertainty and irregularity.

5    **II.    ARGUMENT**

6    **A.    This Court Has the Power to Review the Lawfulness of Defendants' Grant
        Conditions**

7

8    **1.    This Court Can Enjoin the DOT and the FAA from Imposing the Unlawful
            Grant Conditions**

9    Defendants briefly assert that this Court lacks jurisdiction under 49 U.S.C. § 46110 "[t]o the

10   extent Plaintiffs challenge DOT and FAA orders here."  Dkt. 24 at 16.  Not so.  Section 46110 specifies

11   that the federal appellate courts have exclusive jurisdiction only for challenges to an "order issued" by

12   the Secretary of Transportation or the FAA Administrator "with respect to aviation duties and powers

13   designated to be carried out by the Administrator of the Federal Aviation Administration . . . in whole or

14   in part *under this part, part B, or subsection (l) or (r) of section 114*."  49 U.S.C. § 46110(a) (emphasis

15   added).  As one court has explained, this "jurisdictional statute[] does not apply here because the U.S.

16   DOT is not exercising its authority '*under*' the specific statutes listed in these jurisdictional provisions.

17   Rather, it is the Duffy Directive issued by the U.S. DOT that the States challenge, and thus jurisdiction is

18   proper in the district court."  *California v. U.S. Dep't of Transp.*, 2025 WL 1711531, at *1; *see National

19   *Ass'n of Mfrs. v. Dep't of Defense*, 583 U.S. 109, 124 (2018) ("the prepositional phrase—'under section

20   1311'—is most naturally read to mean that the effluent limitation or other limitation must be approved or

21   promulgated 'pursuant to' or 'by reason of authority of' § 1311").

22   Further, the Ninth Circuit has explained that an agency decision qualifies as an "order" under 49

23   U.S.C. § 46110 if it possesses four qualities: (1) it is supported by a "reviewable administrative record,"

24   (2) it is a " 'definitive' statement of the agency's position," (3) it has a " 'direct and immediate effect' on

25   the day-to-day business on the party asserting wrongdoing," and (4) it " 'envisions immediate

26   compliance with [the order's] terms."  *MacLean v. Dep't of Homeland Sec.*, 543 F.3d 1145, 1149 (9th

27   Cir. 2008).  Here, while the FAA has taken action to condition the receipt of federal grant funds, it has

28   not had a legal effect on the DOT Plaintiffs like a rule, regulation, or administration determination would.

RENNE PUBLIC LAW GROUP
Attorneys at Law

-2-

Finally, under a well-established "exception[]" to section 46110, "[c]laims remain in district court if they (1) involve agencies not covered by § 46110." *Magassa v. Mayorkas*, 52 F.4th 1156, 1165 (9th Cir. 2022); *see, e.g.*, *Latif v. Holder*, 686 F.3d 1122, 1128-29 (9th Cir. 2012) ("Plaintiffs' procedural challenge requires judicial review of orders issued both by TSA, which is named in § 46110, and by TSC, which is not."). For claims challenging the DOT's overarching policies, "jurisdiction rests with the district court," in contrast to the cases Defendants cite (*see* Dkt. 24 at 16:8-12), which "tended to involve relatively simple rules issued by a single [sub-]agency." *Loan Syndications & Trading Ass'n v. S.E.C.*, 818 F.3d 716, 722 (D.C. Cir. 2016); *see also City of Los Angeles v. F.A.A.*, 2239 F.3d 1033, 1036-37 (9th Cir. 2001) ("In essence, the City seems to be making a 'broad constitutional challenge' to either the FAA's actions (to the extent that the FAA is making policy) or to the Reauthorization Act itself (to the extent that it establishes policy as set by Congress); however, such a claim is not one subject to judicial review in the court of appeals but rather is reviewable by the district court."). Because Plaintiffs' claims involve various agencies not covered by section 46110 and challenge EOs and agency guidance not issued under the relevant statutes, this Court has jurisdiction to proceed.

### 2. The Tucker Act Does Not Prevent This Court from Setting Aside the Unlawful Agency Directives at Issue Because Plaintiffs Do Not Challenge Grant Terminations.

Contrary to Defendants' assertions, Plaintiffs' claims do not enforce contractual rights and do not seek an order mandating payment by the government. Instead, they seek an order holding the action unlawful and setting it aside. *See* 5 U.S.C. § 706(2); *NIH*, 606 U.S. ---, 2025 WL 2415669, at *2 (Barrett, J., concurring in the partial grant of the application for stay) ("[T]he District Court was likely correct to conclude that it had jurisdiction to entertain an APA challenge to the [internal agency] guidance, and it would be confusing for our disposition of this application to suggest that the CFC [Court of Federal Claims] is the right forum for that claim"). Their claims "aris[e] under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, are subject to the APA's waiver of sovereign immunity, 5 U.S.C. § 702, and thus are squarely within this Court's jurisdiction. Nothing in the Tucker Act deprives this Court of jurisdiction to grant the declaratory and injunctive relief Plaintiffs seek pursuant to the Constitution and APA.

The Tucker Act confers jurisdiction on the CFC and waives federal sovereign immunity for

PLAINTIFFS' REPLY ISO MOTION FOR TRO AND OSC FOR A PRELIM INJUNCTION
Case No.: 3:25-cv-07070-RS

damages claims "founded . . . upon any express or implied contract with the United States" or upon certain constitutional or statutory provisions that mandate the payment of money. 28 U.S.C. § 1491(a). Defendants do not contend the separation of powers, the Spending Clause, the Fifth Amendment, or the APA establish the type of "money-mandating" constitutional or statutory obligation to which the Tucker Act applies. *See Maine Cmty. Health Options v. United States*, 590 U.S. 296, 322 (2020) (citation omitted). Instead, they assert Plaintiffs' claims are essentially contract claims seeking money damages. Dkt. 24 at 16-18. But this suit is not "'at its essence' a contract action." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). Claims involving "rights and remedies" that "are statutorily or constitutionally based" are not subject to the Tucker Act. *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) (cleaned up).

First, the Constitution and the APA is the source of Plaintiffs' rights, not the grant agreements that contain the unlawful conditions. Plaintiffs seek to vindicate their rights to participate in congressionally authorized grant programs pursuant to the eligibility criteria Congress authorized, free from unlawful conditions that violate the separation of powers, the Spending Clause, the Fifth Amendment, and the APA. *See San Francisco Unified Sch. Dist. v. AmeriCorps* ("*SFUSD*"), No. 25-cv-02425-EMC, 2025 WL 1180729, at *7-8 (N.D. Cal. Apr. 23, 2025) ("The source of Plaintiffs' claims does not lie in any contractual provision of their grants. Instead, the sources of their rights claimed reside in statute and the Constitution, not the contractual obligations of the agency.").

Second, Plaintiffs seek only equitable relief, not the payment of money damages. *See* Dkt. 1 at 93–94. A request for equitable relief does not become subject to the Tucker Act merely because "success on the merits may obligate the United States to pay the complainant." *Kidwell v. Dep't of Army, Bd. for Correction of Military Records*, 56 F.3d 279, 284 (D.C. Cir. 1995). Not only did Plaintiffs properly bring their claims in this Court, the CFC lacks jurisdiction over constitutional claims, like Plaintiffs', seeking equitable relief that would not "mandate payment of money by the government." *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995). Moreover, the Tucker Act "yields when . . . the [APA] provides an avenue for relief." *Maine Cmty. Health Options,* 590 U.S. at 323–24. In *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988), the Supreme Court made clear that district courts, not the CFC, have jurisdiction to set aside unlawful agency action even when that order may result in the disbursement

RENNE PUBLIC LAW GROUP
Attorneys at Law

-4-

RENNE PUBLIC LAW GROUP
Attorneys at Law

of funds. *Id.* at 909–10 (quoting 5 U.S.C. § 706(2)); *see also Department of Education v. California*, 145 S. Ct. 966, 968 (2025) (per curiam) ("True, a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds" (quoting *Bowen*)). That is precisely the nature of the relief sought here.

As courts have held in similar cases, constitutional and APA claims seeking declaratory and injunctive relief from unlawful grant conditions are properly subject to the jurisdiction of the district courts. *See, e.g., SFUSD*, 2025 WL 1180729, at *6–11 (Tucker Act did not deprive court of jurisdiction to enter a TRO enjoining defendants from imposing and enforcing new conditions on plaintiff's AmeriCorps grants); *Climate United Fund v. Citibank, N.A.*, No. 25-CV-698, 2025 WL 842360, at *6 (D.D.C. Mar. 18, 2025) (Tucker Act did not deprive court of jurisdiction over claims that EPA unlawfully terminated plaintiffs' grants); *Maine v. U.S. Dep't of Agric.*, 1:25-CV-00131-JAW, 2025 WL 1088946, at *18–20 (D. Me. Apr. 11, 2025) (court had jurisdiction to enter TRO enjoining agencies from freezing or terminating grants because claims were subject to APA's waiver of sovereign immunity).

Defendants primarily rely on the Supreme Court's recent decisions in *Department of Education v. California*, 145 S. Ct. 966 (per curiam), and *NIH*, 606 U.S. ---, 2025 WL 2415669 (per curiam). But those cases are distinguishable. In *California*, the Supreme Court stayed an order enjoining the defendants "from terminating any individual . . . grant for recipients in Plaintiff States, except to the extent the final agency action is consistent with . . . the grant terms and conditions," *California v. U.S. Dep't of Educ.*, No. CV 25-10548-MJJ, 2025 WL 760825, at *5 (D. Mass. Mar. 10, 2025). Thus, the Supreme Court construed the injunction as effectively an order "'to enforce a contractual obligation to pay money.'" *Community Legal Services in East Palo Alto v. United States Department of Health and Human Services*, 137 F.4th 932, 939 (9th Cir. 2025) (quoting *California*, 145 S. Ct. at 968).

In *NIH*, the Supreme Court granted the Government's application to stay "as to the District Court's judgments vacating the Government's termination of various research-related grants" since the APA's "'limited waiver of [sovereign] immunity' does not provide the District Court with jurisdiction to adjudicate claims 'based on' the research-related grants or to order relief designed to enforce any 'obligation to pay money' pursuant to those grants." *NIH*, 606 U.S. ---, 2025 WL 2415669, at *1. But it "otherwise denied" a stay of the judgments insofar as they vacated internal agency guidance. *Id.*

-5-

Here, by contrast, Plaintiffs seek to enjoin Defendants from newly attaching unlawful conditions to grant agreements, not enforcing the terms of existing grant agreements. Indeed, Justice Barrett's concurrence is instructive as to this distinction, particularly when viewed along with Chief Justice Roberts' concurrence (which was joined by Justices Sotomayor, Kagan, and Jackson). *See NIH*, 2025 WL 2415669, at *3 (Barrett, J., concurring) ("my preliminary judgment is that the plaintiffs' challenges to the grant terminations belong in the CFC, and their APA challenges to the guidance belong in district court"); *id.* at *3 (Roberts, C.J., concurring in part) (explaining that "the District Court's vacatur of the challenged directives distinguishes this case from *Department of Ed. v. California*," "has prospective and generally applicable implications beyond the reinstatement of specific grants," and "falls well within the scope of the District Court's jurisdiction under the Administrative Procedure Act"); *cf. id.* at *5 n.2 (Gorsuch, J., concurring and dissenting in part) (noting that the plaintiffs "also asserted injuries from the guidance based on the government's alleged failure to process *new* grant applications" but that those allegations could not form a basis for the judgments vacating internal agency guidance because "the district court declined to pass on those allegations").

### 3. Defendants' Unlawful Grant Conditions Are Not Committed to Agency Discretion by Law.

Defendants erroneously argue 5 U.S.C. § 701(a)(2) precludes judicial review. Dkt. 24 at 24-25. Under that section, a court may not conduct APA review if the "agency action is committed to agency discretion by law." This "quite narrow[]" exception to the "basic presumption of judicial review" under the APA does not apply here. *Dep't of Commerce v. New York*, 588 U.S. 752, 771, 772 (2019) (cleaned up); *see also SFUSD*, 2025 WL 1180729, at *3 (rejecting similar argument).

First, an agency action "is committed to agency discretion by law" only "where a statute is drawn in such broad terms that in a given case there is no law to apply, and the court would have no meaningful standard against which to judge the agency's exercise of discretion." *Webster v. Doe*, 486 U.S. 592, 592 (1988). Only in those "rare instances" in which there is "truly no law to apply" is it appropriate to follow section 701(a)(2). *Jajati v. U.S. Customs & Border Prot.*, 102 F.4th 1011, 1017 (9th Cir. 2024). Even when Congress intended to create a wide zone of agency discretion, the agency still must meet "permissible statutory objectives." *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993).

1    Defendants rely heavily on *Lincoln*, 508 U.S. 182, and *Amica Ctr. for Immigrant Rights v. U.S.*

2    *Dep't of Justice*, 2025 WL 1852762 (D.D.C. July 6, 2025). Dkt. 24 at 25. But *Lincoln* involved a

3    "'lump sum appropriation,'" which "'reflects a congressional recognition that an agency must be allowed

4    flexibility to shift funds within a particular appropriation account so that the agency can make necessary

5    adjustments for unforeseen developments and changing requirements.'" *SFUSD*, 2025 WL 1180729, at

6    *4 (quoting *Lincoln*). Indeed, in *Amica Ctr. for Immigrant Rights*, two of the three cancelled programs

7    "were discretionarily funded through EOIR's lump sum appropriations." 2025 WL 1852762 at *14. As

8    for the third program, "'no statute or regulation even mention[ed]'" it, and it was also not specifically

9    referenced in the relevant earmark or appropriations act. 2025 WL 1852762 at *14 (quoting *Lincoln*).

10    Here, in stark contrast, there is no indication that Congress, in authorizing the grant programs at

11    issue, intended to commit Defendants' imposition of grant conditions to agency discretion, thereby

12    exempting such actions entirely from judicial review. The grant programs are authorized and governed

13    by statutes setting forth the purpose, selection criteria, recipient requirements, and grant conditions,

14    among other things. *See, e.g.*, 23 U.S.C § 24112 (SS4A); 42 U.S.C. §§ ¶ 5303–5 (CDBG); *id*. §§ 11372,

15    11374–11375 (ESG); *id*. §§ 12742, 12744, 12475, 12476 (HOME); *id*. §§ 12903(d)(1)–(6) (HOPWA);

16    *id*. § 254b(HCP); *id*. § 9604(k) (Brownfields); 49 U.S. Code § 47106 (AIP).

17    Defendants' new conditions exceed their statutory authority under those provisions. Because the

18    statutes provide a basis for this Court to provide judicial review, Defendants' actions are not "committed

19    to agency discretion by law" and thus section 701(a)(2) does not preclude Plaintiffs' APA claim. *See*

20    *King County*, 2025 WL 1582368 at *12-13 ("each of these enabling statutes provides substantial

21    guidance as to how the agencies' discretion should be exercised in implementing these programs, and for

22    the Court to evaluate whether that discretion is being exercised in a reasonable manner"); *SFUSD*, 2025

23    WL 1180729, at *3–5 (concluding similarly in APA challenge to AmeriCorps grant conditions); *see also*

24    *Bowen*, 487 U.S. at 898 (noting legislative history indicates Congress understood APA would "authorize

25    judicial review of the 'administration of Federal grant-in-aid programs'").

26    Even if Defendants' actions were "discretionary," section 701(a)(2) does not preclude judicial

27    review of Plaintiffs' constitutional claims. Absent clear congressional intent, section 701(a)(2) does not

28    bar review of colorable constitutional claims arising from agency actions. *See Webster*, 486 U.S. at 603

RENNE PUBLIC LAW GROUP
Attorneys at Law

-7-

("heightened showing" is required "in part to avoid the serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim" (cleaned up)); *see also Nguyen v. Kissinger*, 528 F.2d 1194, 1199 (9th Cir. 1975) ("nothing in the [APA] purports to sanction the violation of constitutional rights committed under the guise of the exercise of discretion"); *Wong v. Warden, FCI Raybrook*, 171 F.3d 148, 149 (2d Cir. 1999) ("It is well-established that judicial review exists over allegations of constitutional violations even when the agency decisions underlying the allegations are discretionary"); *SFUSD*, 2025 WL 1180729, at *6 (section 701(a)(2) did not bar review of constitutional challenge to AmeriCorps directive imposing new grant conditions).

**B.    Plaintiffs Are Likely to Prevail on the Merits of Their Claims**

        **1.    Constitutional Claims**

                **a.    The Conditions are unconstitutionally vague under the Due Process Clause and the Spending Clause**

Contrary to Defendants' argument, a plaintiff does not need to establish a protected property interest to bring a void-for-vagueness claim under the Due Process Clause. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Furthermore, Defendants' arguments that Plaintiffs are unlikely to succeed on their vagueness claim only address vagueness under the Due Process Clause. Dkt. 24 at 19–21. However, Plaintiffs argue that the conditions are impermissibly vague under the Spending Clause as well. Under the Spending Clause, "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). When determining the ambiguity of conditions on federal grants, the Court evaluates "whether [a recipient]…would clearly understand…the obligations of the [conditions]." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006). Here, the vagueness of the conditions leaves Plaintiffs guessing whether ordinary activities—such as hosting community workshops, providing space to local affinity groups programs and events, or even just using words like "diversity" or equity"— violate the Grant Conditions.[1] Even if the Due Process Clause's does not apply, the conditions are still

---

[1] Significantly, where the grant recipient is a city or county, compliance with the new grant conditions requires conformity of *all city or county policies* with the EOs, not only the airport or community development organization utilizing the funds.

RENNE PUBLIC LAW GROUP
Attorneys at Law

unconstitutionally vague under the Spending Clause. *See SFUSD*, 2025 WL 1713360, at *18 (finding similar DEI Condition "likely unconstitutionally ambiguous under the Spending Clause").

> **b.    Congress has not authorized the Grant Conditions, and even if it had, the Grant Conditions exceed Congress's Spending Clause power**

Defendants argue that Congress authorized Defendants to impose conditions on these grant programs. Dkt. 24 at 21. However, they do not cite to any statute that supposedly grants such authority. There is no inherent executive authority to place conditions on the receipt of federal funds—any such authority must be given to the executive by the legislature. *See City of Los Angeles v. Barr*, 941 F.3d 931, 945 (9th Cir. 2019) (agency grant conditions imposed without statutory authority were "ultra vires"). Through its enacting legislation, Congress has precisely defined both the purposes for which federal funds may be used and the conditions recipients must meet. *See* Dkt. 9-1 at 19–22. Those statutory conditions are comprehensive, specific, and limited to program-related requirements. Where, as here, Congress has spoken and has not authorized the conditions now asserted through EO, the Executive Branch lacks authority to impose them unilaterally.

Furthermore, even Congress may only impose new conditions that are germane to the program's objectives. *See South Dakota v. Dole ("South Dakota")*, 483 U.S. 203, 206–08 (1987). Across all programs, the Federal Grant Conditions are unconnected to the purposes of the federal programs and instead impose broad social policy restrictions divorced from the statutory objectives Congress enacted. Their enforcement exceeds even Congress's spending authority, let alone the Executive's. *See, e.g.*, *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 532 (N.D. Cal. 2017) (holding immigration enforcement has no connection to programs focused on transportation, health, or housing).

> **2.    APA Claims**

> **a.    The federal agency actions at issue are "final agency action" reviewable under the APA.**

Defendants take issue with the "particularity" of the agency action challenged by Plaintiffs. Dkt. 24 at 23. Defendants ignore that Plaintiffs' claims are concerned with the new conditions already imposed, not a decision regarding particular grant applications or agreements. Courts have regularly found that "the new funding conditions at issue here are 'final agency actions' for purposes of APA review." *King County v. Turner*, --- F. Supp. 3d ---, 2025 WL 1582368, at *14 n.18 (W.D. Wash. June 3,

-9-

RENNE PUBLIC LAW GROUP
Attorneys at Law

2025); *Rhode Island Coalition Against Domestic Violence v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2271867, at *6 (D.R.I. Aug. 8, 2025) ("Accordingly, the Court sides with courts that have found that agency placement of new conditions on grant funding amounts to final agency action"); *San Francisco Unified School Dist.*, 2025 WL 1713360, at *13-15 (concluding that AmeriCorps Directive stating that "All aspects of AmeriCorps grants/awards must comply with President Trump's executive orders …" was final agency action under the APA). Defendants' contention that Plaintiffs fail to identify a reviewable action is unmeritorious.

### b.    Plaintiffs' APA claims are likely to succeed on the merits

Defendants offer only cursory arguments regarding the merits of Plaintiffs' APA claims, all of which are unconvincing. First, Defendants argue that 5 U.S.C. §553(a)(2) explicitly exclude APA rule-making requirements as to matters related to grants. Dkt. 24 at 26. However, Defendants can waive this exemption by their own regulations. *See, e.g.*, 24 C.F.R. § 10.1 ("It is the policy of [HUD] to provide for public participation in rulemaking with respect to all HUD programs and functions, including matters that relate to . . . grants . . . even though such matters would not otherwise be subject to rulemaking by law or Executive policy."). Second, Plaintiffs argue that because grants are not subject to rule-making the conditions they impose are not subject to the same level of scrutiny. Dkt. 24 at 26. This argument is meritless and unsupported by any caselaw. The prohibition of arbitrary or capricious agency action arises directly from the judicial review provision of the APA, specifically 5 U.S.C. § 706(2)(A). Whether an agency is required to follow certain rule-making requirements or not, it must meet the requirements of 5 U.S.C. § 706(2)(A). "An agency action qualifies as 'arbitrary' or 'capricious' if it is not 'reasonable and reasonably explained.'" *Ohio v. Env't Prot. Agency*, 603 U.S. 279, 292 (2024). Defendants' imposition of the Grant Conditions is neither reasonable nor supported by a reasoned explanation, and Defendants have offered no argument to the contrary.

### C.    Immediate Relief Is Necessary to Prevent Irreparable Harm to Plaintiffs

Defendants contend Plaintiffs' alleged harm is "hypothetical and speculative" because they have not terminated or withheld any funds. Dkt. 24 at 7. First, although Defendants provide some grant agreement deadlines could be extended, they concede that the FAA grant agreements at issue must be fully executed by September 18, 2025. Cushing Decl. ¶¶ 13, 17–18, 20. For any grant offers that do not

PLAINTIFFS' REPLY ISO MOTION FOR TRO AND OSC FOR A PRELIM INJUNCTION
Case No.: 3:25-cv-07070-RS

RENNE PUBLIC LAW GROUP
Attorneys at Law

go forward, FAA will redistribute the funds to other projects by September 22. *Id*. ¶ 20.  Without an injunction, the FAA Plaintiffs cannot execute their grant agreements, and the funds will be permanently reallocated.  The resulting loss constitutes immediate and irreparable harm

Furthermore, Defendants' argument demonstrates a misunderstanding of the cause of Plaintiffs' harm and the remedy they seek.  The harm here is caused by the imposition of vague, unauthorized, and unconstitutional conditions that Defendants have embedded across practically all sources of federal funding, not the termination of any specific grant.  The harm arises from the overarching, unlawful conditions themselves, which place local governments in an untenable position: either forgo essential federal funds or agree to unlawful conditions.  *See Am. Trucking Ass'ns, Inc. v. City of L.A.*, 559 F.3d 1046, 1058–59 (9th Cir. 2009) (plaintiffs were irreparably injured where they faced choice of signing unconstitutional agreements or loss of customer goodwill and significant business).

Defendants' assertion that "the harms Plaintiffs assert are entirely economic" (*see* Dkt. 24 at 7) ignores Plaintiffs' allegations of constitutional violations.  *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("deprivation of constitutional rights 'unquestionably constitutes irreparable injury'" (citation omitted)).  Defendants similarly ignore Plaintiffs supporting declarations establishing the short- and long-term impacts of suspension or termination of this funding on its operations, planning, and budgeting.  Darrow Decl. ¶¶ 4, 8, 17; Moore Decl. ¶ 9; Skei Decl. ¶¶ 6-12; Lutz Decl. ¶¶ 8, 34, 36, 39-40; Dickinson Decl. ¶¶ 9-11; Chen Decl. ¶¶ 12-18; Partida Decl. ¶¶ 21, 23; *see also City & Cnty. of San Francisco v. Trump*, No. 25-CV-01350-WHO, 2025 WL 1282637 at *38 (N.D. Cal. May 3, 2025) (finding irreparable harm where "present and future budgetary uncertainty" undermined plaintiffs' "budgetary planning process").  The uncertainty surrounding continuity of federal funding is already forcing difficult budgeting decisions and impacting Plaintiffs' ability to provide essential services. Darrow Decl. ¶¶ 4, 8, 17; Moore Decl. ¶ 5; Skei Decl. ¶¶ 14-16; Clark Decl. ¶ 13; Slattery Decl. ¶¶ 6-8; Bacher Decl. ¶¶ 32-36, 38-40; Barfield Decl. ¶ 10; Lutz Decl. ¶ 24; Dickinson Decl. ¶15; Chen Decl. ¶¶ 10, 18; Partida Decl. ¶ 25.  These harms are precisely the sort that the Ninth Circuit and district courts have found warrant temporary relief.  *See, e.g., City of Los Angeles v. Sessions*, CV 17-7215-R, 2018 WL 6071072, at *3 (C.D. Cal. Sept. 13, 2018) (ruling plaintiff cities and counties were irreparably harmed by "impossible choice" to "certify compliance with unconstitutional" directives or "lose congressionally

PLAINTIFFS' REPLY ISO MOTION FOR TRO AND OSC FOR A PRELIM INJUNCTION
Case No.: 3:25-cv-07070-RS

authorized [grant] funding"), *aff'd sub nom. City of Los Angeles v. Barr*, 941 F.3d 931 (9th Cir. 2019);

*Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058–59 (9th Cir. 2009) (holding

that forced choice between signing unconstitutional agreement and suffering loss of customer goodwill

was irreparable harm); *City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 950 (N.D. Ill. 2017) (similar).

 While Defendants contend that they have "not taken any action to pause or terminate grants

provided to any plaintiff" (*see* Dkt. 24 at 3–4), they make no promises about what they actually will do

(or refrain from doing) at some future point if Plaintiffs refuse to capitulate to the unlawful conditions.

This is a familiar tune.  In response to credible reports the Trump administration was loading Venezuelan

immigrants on flights for rendition to El Salvador's terrorist prison, a DOJ lawyer told a district judge:

"[T]here are no flights tonight, and the people I spoke to were not aware of any plans for flights

tomorrow."  *J.G.G. v. Trump*, No. 25-00766, Tr. at 9 (April 18, 2025).  In an extraordinary emergency

order, the Supreme Court rejected this obfuscation and prohibited these flights.  Reporting later

confirmed buses taking immigrants to the airport and then turning around after the Supreme Court's

order.  Vaughn Hillyard et al., NBC News, *As legal fight raged, ICE buses filled with Venezuelans

heading toward airport turned around, video shows* (April 20, 2025).  This Court should reject this most

recent attempt by the administration to create a loophole to later exploit.  *See City & Cnty. of San

Francisco v. Trump*, 2025 WL 1282637, at *38 (N.D. Cal. May 3, 2025) (rejecting government's

argument that plaintiffs "have just identified speculative harm because no funds have been impacted yet"

where plaintiffs "demonstrated through numerous declarations . . . [t]hey are unable to plan their budgets

for the upcoming fiscal year in the shadow of the 2025 Executive Orders and Bondi Directive, which

threaten all federal funding, they are being forced to subordinate their local policies and practices to the

preferences of the Federal Government, and their relationships with their communities suffer for it").  In

light of the terms of the Executive Orders, and the Administration's actions to date to place those orders

in grant conditions, it is the Administration, not Plaintiffs, that is speculating it might *not* include these

conditions which it appears to believe bind agency actions in future grants.

 Regardless, if Defendants have terminated any particular grant, they have imposed the unlawful

conditions and EOs against Plaintiffs.  *See* Skei Decl.¶ 13, Skei Supp. Decl. ¶ 6 (HUD rejecting Fresno's

2025 Consolidated Plan/Action Plan "that is not consistent with [the President's EOs]"), Bacher Decl.

PLAINTIFFS' REPLY ISO MOTION FOR TRO AND OSC FOR A PRELIM INJUNCTION
Case No.: 3:25-cv-07070-RS

RENNE PUBLIC LAW GROUP
Attorneys at Law

¶¶ 18-20 (HUD providing Saint Paul one day's notice to revise and resubmit its Fiscal Year 2023 Action Plan "in conformity with applicable laws, including [EOs]"), 30 (DOT stating that it could not accept or countersign Saint Paul's grant agreement with the City's strikethroughs of the unlawful conditions).[2]  On this record, Plaintiffs have demonstrated concrete, imminent, and irreparable harm.

Finally, Defendants' argument ignores that the new directives threaten the use of the False Claims Act ("FCA"), encourages third parties to utilize the FCA to enforce the new directives and seeks to exact an admission of materiality from the entities subject to these new conditions.  The FCA threat to coerce entities and employees to comply with unlawful directives is more than "speculative or hypothetical" and is not strictly economic due to the potential for criminal prosecution.  *See* 18 U.S.C. § 287.

**D.    The Equities Weigh in Plaintiffs' Favor**

The balance of equities weighs heavily in Plaintiffs' favor.  By establishing the likelihood of a constitutional violation, "Plaintiffs have also established that both the public interest and the balance of the equities favor a preliminary injunction."  *Ariz. Dream Act Coal.*, 757 F.3d at 1069.  Unlike in *Department of Education v. California*, 145 S. Ct. 966 (2025), Plaintiffs do not seek an order to pay out previously terminated grant funds.  The remedy sought is a TRO prohibiting Defendants from attaching or enforcing these conditions preserves the status quo.  Defendants are not harmed by maintaining the status quo.  *See Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, No. 1:25-cv- 00097-MSM-PAS, 2025 WL 1116157, at *23–24 (D.R.I. Apr. 15, 2025), *appeal docketed*, No. 25-1428 (1st Cir.) ("Government [was] not harmed where an order require[d] them to disburse funds that Congress ha[d] appropriated and that Agencies ha[d] already awarded," but grant recipients faced "substantial uncertainty about whether the Government w[ould] comply with federal law"); *PFLAG, Inc. v. Trump*, No. 25-337-BAH, 2025 WL 685124, at *2 (D. Md. Mar. 4, 2025) ("balance of equities and the public interest weigh in favor of a preliminary injunction as Defendants are not harmed by a prohibition that maintains the status quo and enjoins the enforcement of restrictions likely to be found unconstitutional"); *SFUSD*, 2025 WL 1713360, at *12 ("The Government's interest in banning all diversity, equity, inclusion, and accessibility or equity or equity-related programs – even where those programs do not

RENNE PUBLIC LAW GROUP
Attorneys at Law

---

[2] To the extent it is not clear from the Complaint, St. Paul is a "HUD Plaintiff."  *See* Bacher Decl.

1    violate existing anti-discrimination law – is difficult to discern from the record herein.").

2        **E.**    **Plaintiffs Seek an Appropriately Tailored Prohibitory TRO**

3        Defendants argue that any injunctive relief should be narrowly tailored. Dkt. 24 at 27. The relief

4    sought is tailored to the harm caused. Defendants have imposed vague and unlawful conditions without

5    the authority to do so. Accordingly, Plaintiffs seek a prohibitory TRO to maintain the status quo. The

6    status quo is "the legally relevant relationship between the parties *before* the controversy arose." *Ariz.*

7    *Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2024) (cleaned up) (emphasis added). Here,

8    Plaintiffs challenge Defendants' new conditions. Thus, a TRO prohibiting Defendants from attaching or

9    enforcing these conditions preserves the status quo. *See Fellowship of Christian Athletes v. San Jose*

10    *Unified Sch. Dist.*, 82 F.4th 664, 684 (9th Cir. 2023) (district court erred in applying mandatory burden of

11    proof to plaintiffs' motion for a preliminary injunction barring Arizona officials from implementing new

12    policy preventing DACA recipients from obtaining driver's licenses).

13        **F.**    **A TRO Serves the Public Interest; a Bond or Stay Does Not**

14        The public interest favors enjoining Defendants from imposing their new unlawful grant

15    conditions, without undermining the protections of a bond or a seven-day stay. *See King County v.*

16    *Turner*, --- F. Supp. 3d ---, 2025 WL 1582368, at *20 (denying enjoined federal-government defendants'

17    request for bond); *SFUSD*, 2025 WL 1713360, at *26 (same); *California*, 2025 WL 1711531, at *4

18    (same). It is within this Court's "wide discretion" to waive the bond requirement "if there is no evidence

19    the party will suffer damages from the injunction," *Conn. Gen. Life Ins. Co. v. New Images of Beverly*

20    *Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (citations omitted), or if "there is a high probability of success

21    that equity compels waiving the bond, the balance of the equities overwhelmingly favors the movant . . .

22    or the requirement of a bond would negatively impact the movant's constitutional rights," *Gilmore v.*

23    *Wells Fargo Bank, N.A.*, No. C 14-2389 CW, 2014 WL 3749984, at *6 (N.D. Cal. July 29, 2014).

24        Here, Plaintiffs allege constitutional injuries (based on Defendants' violations of the Spending

25    Clause and the Separation of Powers), that will "negatively impact [Plaintiffs'] constitutional rights,"

26    *Gilmore*, 2014 WL 3749984, at *6. Furthermore, Defendants will incur no damages if somehow they are

27    wrongly enjoined—Defendants have already stated that they do not plan to terminate any of Plaintiffs'

28    grants and, while Plaintiffs take no comfort from that, it at least indicates that Defendants have no

RENNE PUBLIC LAW GROUP
Attorneys at Law

-14-

reliance interest in retaining this money and have no plan to use it for other things (nor could they, for a variety of reasons). On the other hand, a bond in the full amount of Plaintiffs' grants would deprive Plaintiffs of the very funds the TRO would protect. In the alternative, if the Court decides that a bond is needed, Plaintiffs request that the amount be nominal to reflect the hardship that would result from losing access to the very funds Plaintiffs seek to protect.

Just as a bond would undermine the Court's possible TRO so too would Defendants' request for a seven-day administrative stay to allow them to seek a further stay from the Ninth Circuit, Dkt. 24 at 28, even a one-week lapse in Plaintiffs' protections against the Federal Grant Conditions could entirely undermine the TRO and impose further irreparable harm on Plaintiffs. Without a TRO, many of the Plaintiffs will be put to an unlawful Hobson's Choice in the next seven days, requiring them to accept ambiguous and unconstitutional funding conditions under threat of severe FCA liability or forego the substantial funding entirely.[3] What's more, in seven days, the federal government could re-impose the new conditions. *See SFUSD*, 2025 WL 1713360, at *26 ("Plaintiffs have demonstrated that a stay would irreparably harm Plaintiffs because, *inter alia*, '[i]n seven days, the federal government could re-impose the new conditions, identify some purported violation by Plaintiffs, [or] terminate Plaintiffs' grants entirely.'"); *cf. NIH*, 606 U.S. ---, 2025 WL 2415669, at *2 (Barrett, J., concurring in the partial grant and partial denial of the application for stay) ("the Government is not entitled to a stay of the judgments insofar as they vacate the guidance documents").

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue a temporary restraining order enjoining Defendants from imposing or enforcing the Federal Grant Conditions or any materially similar terms or conditions to any federal funds received by or awarded to Plaintiffs, directly or indirectly.

---

[3] Defendants have issued grant agreements to the City of Fresno and Monroe County that require a response within the next seven days. *See* Partida Delgado Decl. ¶ 14; Moore Decl. ¶ 9. Monroe County has asked for (but not received) an extension of its August deadlines.

PLAINTIFFS' REPLY ISO MOTION FOR TRO AND OSC FOR A PRELIM INJUNCTION
Case No.: 3:25-cv-07070-RS

RENNE PUBLIC LAW GROUP
Attorneys at Law

1    Dated:  August 26, 2025                    RENNE PUBLIC LAW GROUP

2

3                                              By: _____/s/ Jonathan V. Holtzman_____
                                                    JONATHAN V. HOLTZMAN
4
                                               Attorneys for Plaintiffs
5                                              City of Fresno; City of Eureka; City of South
                                               Lake Tahoe; County of Sacramento; County of
6                                              Monroe; and Monroe County Airport Authority

7

8    Dated:  August 26, 2025                    SAINT PAUL CITY ATTORNEY'S OFFICE

9

10                                             By: _____/s/ Kelsey McElveen_____
                                                    LYNDSEY OLSON *
11                                                  KELSEY MCELVEEN *
                                               * Application for admission pro hac vice
12                                             forthcoming

13                                             Attorneys for Plaintiff
                                               City of Saint Paul

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY ISO MOTION FOR TRO AND OSC FOR A PRELIM INJUNCTION
Case No.: 3:25-cv-07070-RS

**ECF ATTESTATION**

I, JONATHAN V. HOLTZMAN, am the ECF user whose identification and password are being used to file PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION.  Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other above-named signatories concur in this filing.

Dated:  August 26, 2025                                    RENNE PUBLIC LAW GROUP


By: _____*/s/ Jonathan V. Holtzman*_____
       JONATHAN V. HOLTZMAN

RENNE PUBLIC LAW GROUP
Attorneys at Law