UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF FRESNO, et al,<br><br>    Plaintiffs,<br><br>    v.<br><br>SCOTT TURNER, et al,<br><br>    Defendants. | Case No. 25-cv-07070-RS<br><br>**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER** |

## I. INTRODUCTION

Plaintiffs, local government entities and a public benefit corporation that receive hundreds of millions of dollars of congressionally authorized grant money, bring this Motion for a Temporary Restraining Order to enjoin Defendants, agencies and their operating administrators, from using seemingly unauthorized and vague funding conditions to enforce compliance with recent Executive Orders. While the Executive may announce its policy priorities to agencies, "[a]n agency literally has no power to act… unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). Yet, Defendants have announced grant conditions embracing the Administration's recent Executive Orders requiring grantees to certify they prohibit DEI programs, prohibit promotion of gender ideology and elective abortion, and promote federal immigration enforcement efforts. Plaintiffs contend that these grant conditions violate the Separation of Powers, the Spending Clause, the Tenth Amendment, the Fifth Amendment, and the Administrative Procedure Act (APA).

The temporary restraining order (TRO) requested by Plaintiffs is granted as described

below. Plaintiffs are likely to succeed on the merits of at least some of their claims, and the irreparable harm that plaintiffs will suffer in the absence of injunctive relief outweighs any burden placed on the government by this temporary pause. In the context of a dynamic situation, the temporary order seeks to preserve the status quo and protect the power of the legislative branch.

## II. BACKGROUND

Between January and August 2025 President Trump issued a series of Executive Orders directing executive agencies to impose new conditions on federal grants (collectively, the "Grant Condition Executive Orders"). Exec. Order No. 14151, 90 Fed. Reg. 8339 (Jan. 29, 2025) (*Ending Radical and Wasteful Government DEI Programs and Preferencing*); Exec. Order No. 14168, 90 Fed. Reg. 8615 (Jan. 30, 2025) (*Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*); Exec. Order No. 14173, 90 Fed. Reg. 8633 (Jan. 31, 2025) (*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*); Exec. Order No. 14182, 90 Fed. Reg. 8751 (Jan. 31, 2025) (*Enforcing the Hyde Amendment*); Exec. Order No. 14332, 90 Fed. Reg. 38929 (Aug. 12, 2025) (*Improving Oversight of Federal Grantmaking*). Taking heed, the U.S. Department of Housing and Urban Development (HUD) and the U.S. Department of Transportation (DOT), including the Federal Transit Administration (FTA), Federal Highway Administration (FHWA), Federal Aviation Administration (FAA), the U.S. Department of Health and Human Services (HHS), and the U.S. Environmental Protection Agency (EPA) have announced new grant conditions requiring compliance with the Executive Orders. These conditions have been announced through revised grant terms and conditions, templates, assurance forms, certification forms, memoranda, policy statements, and letters. The grant conditions obligate grantees to certify that they do not operate any DEI programs, do not "promote" "gender ideology" or "elective abortion," are required to cooperate with federal immigration enforcements, and are liable for non-compliance under the False Claims Act.

The latest Executive Order, *Improving Oversight of Federal Grantmaking*, was issued on August 7, 2025. It reinforced the previous Executive Orders by requiring that discretionary grant awards "demonstrably advance the President's policy priorities" and are "not[] used to fund,

promote, encourage, subsidize, or facilitate" "racial preferences or other forms of racial discrimination by the grant recipient," "denial by the grant recipient of the sex binary in humans or the notion that sex is a chosen or mutable characteristic," "illegal immigration," or other "anti-American values." Exec. Order No. 14332, 90 Fed. Reg. 38929 (Aug. 12, 2025) (*Improving Oversight of Federal Grantmaking*).

Then, on or around August 18, 2025, the City of Fresno received an email from HUD stating "that the Department is questioning the accuracy of the City of Fresno's certification that the Community Development Block Grant (CDBG) funds described in its Fiscal Year 2025 Consolidated Plan/Action Plan (the Plan) will be administered in conformity with applicable laws, including Executive Orders." Dkt. 9-35, Ex. A. HUD directed the City to remove or replace all references to "equity," "environmental justice," "transgender" in the Plan; agree not to "promote 'gender ideology,' as defined in Executive Order (E.O.) 14168[;]" and agree that "its compliance… with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code"—which imposes liability for material misrepresentations affecting applicable government payment decisions—by 12:00 pm EDT Thursday, August 21, 2025. *Id.* 31 U.S.C. §§ 3729 et seq. HUD warned that "[f]ailure to address HUD's concerns regarding the certification may result in HUD determining that the certification is inaccurate or unsatisfactory, which will result in disapproval of the Plan." Dkt. 9-35, Ex. A.

The City of Fresno contends HUD's demands jeopardize federal grants the City relies upon to deliver core public services, including transportation, public health, and housing services, and make imminent the threat of enforcement of not only HUD's grant conditions but also similarly worded DOT, HSS, and EPA grant conditions embracing the Grant Condition Executive Orders (collectively, "E.O. Grant Conditions"). The E.O. Grant Conditions jeopardize these funds because to receive them Plaintiffs must certify compliance with potentially unconstitutional and vague conditions and risk liability under the False Claims Act. This implicates not only grants already awarded, which in some cases are forfeited if not promptly used, but also the grants

Case 3:25-cv-07070-RS   Document 28   Filed 08/27/25   Page 4 of 14

Plaintiffs normally apply for and receive on a continuous basis. Plaintiffs stand to lose not only crucial funding but also their abilities to budget and plan.

### III. LEGAL STANDARD

A party may seek a temporary restraining order to preserve the status quo and prevent irreparable harm until a preliminary injunction hearing may be held. *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (citing *Granny Goose Foods, Inc. v. Brotherhood of Teamsters* ("*Granny Goose*"), 415 U.S. 423, 438-39 (1974)); Fed. R. Civ. P. 65(b). The standard for issuing a temporary restraining order mirrors that for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). "A plaintiff seeking [such relief] must establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the Ninth Circuit, a sliding scale may be used at the preliminary injunction stage: "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). The "TRO 'should be restricted to… preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose*, 415 U.S. at 439).

### IV. DISCUSSION

The Court has jurisdiction over the subject matter of this action. Contrary to the Government's assertions, this is not a contract dispute in which Plaintiffs seek money damages such that their suit belongs before the Federal Court of Claims. *See United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) ("If rights and remedies are *statutorily* or *constitutionally* based, then districts courts have jurisdiction; if rights and remedies

are *contractually* based then only the Court of Federal Claims does[.]").[1]

The Government also argues that the E.O. Grant Conditions are not final agency action as required by the APA for judicial review, 5 U.S.C. § 704, but "finality[] must be interpreted in a pragmatic and flexible manner," *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.* ("*Oregon Nat. Desert*"), 465 F.3d 977, 982 (9th Cir. 2006) (cleaned up). The E.O. Grant Conditions are reviewable here as final agency action: they "take[] 'definitive' legal position[s]" that the Executive Orders and Executive Grant Conditions are enforceable against Plaintiffs; this position poses an "immediate and significant practical burden" on Plaintiffs; and "the disputed [legal] authority underlying the [positions are] fully fit for judicial review[.]" *See CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 412, 414 (D.C. Cir. 2011) (quoting *Ciba–Geigy Corp. v. EPA,* 801 F.2d 430, 436 (D.C.Cir.1986)). *See also Oregon Nat. Desert*., 465 F.3d at 987 (citing *Ukiah Valley Med. Ctr. v. F.T.C.*, 911 F.2d 261, 264 (9th Cir. 1990)) (cleaned up) ("[A]n agency action may be final if it has a direct and immediate effect on the day-to-day business of the subject party," "has the status of law or comparable legal force, and[] immediate compliance with its terms is expected."); *Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.*, 565 F.3d 545, 554 (9th Cir. 2009) (Plaintiffs' challenge to "the Forest Service's actions taken pursuant to its interpretation of [an agency mining regulation]… constitute[d] more than a programmatic attack or a vague reference to Forest Service action or inaction" and was subject to the court's jurisdiction as a final agency action.). Other courts have taken the same position regarding funding conditions. *Martin Luther King, Jr. Cnty. v. Turner*, No. 2:25-CV-814, 2025 WL 1582368, *14 n.18 (W.D. Wash.

---

[1] Plaintiffs do not seek reinstatement—on non-constitutional grounds or without contrary congressional directives—of terminated grants such that the relief sought would constitute only an "obligation to pay money pursuant to those grants" and jurisdiction would be barred. *See Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, No. 25A103, 2025 WL 2415669, at *1 (U.S. Aug. 21, 2025) (per curiam) (citing *Dep't of Educ. v. California*, 604 U. S. ——, 145 S.Ct. 966, 221 L.Ed.2d 515 (2025). Instead, Plaintiffs seek declaratory and injunctive relief on constitutional grounds. *See id.* at *2 (Barrett, J., concurring in part) ("The Government is not entitled to a stay of the judgments insofar as they vacate the guidance documents."); *Dep't of Educ*, 145 S. Ct. at 968 (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988)) ("True, a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds."); *Harris Cnty., Texas v. Kennedy*, No. 25-CV-1275 (CRC), 2025 WL 1707665, at *14 (D.D.C. June 17, 2025) (collecting cases distinguishing *Dep't of Ed. v. California* and finding jurisdiction over grant termination claims).

June 3, 2025); *Rhode Island Coal. Against Domestic Violence v. Bondi*, No. CV 25-279 WES, 2025 WL 2271867, at *1 (D.R.I. Aug. 8, 2025).

### A. Other Courts Already Have Enjoined Enforcement of E.O. Grant Conditions

Notably, courts across the country already have granted injunctive relief to halt enforcement of grant conditions requiring compliance with the President's Executive Orders. *See e.g., Chi. Women in Trades v. Trump*, No. 25 C 2005, 2025 WL 1114466 (N.D. Ill. Apr. 14, 2025); *City & Cnty. of San Francisco v. Trump*, No. 25-CV-01350-WHO, 2025 WL 1186310 (N.D. Cal. Apr. 24, 2025), *opinion clarified*, No. 25-CV-01350-WHO, 2025 WL 1358492 (N.D. Cal. May 9, 2025); *S. Educ. Found. v. United States Dep't of Educ.*, No. CV 25-1079 (PLF), 2025 WL 1453047 (D.D.C. May 21, 2025); *Martin Luther King, Jr. Cnty. v. Turner*, No. 2:25-CV-814, 2025 WL 1582368 (W.D. Wash. June 3, 2025); *San Francisco A.I.D.S. Found. v. Trump*, No. 25-CV-01824-JST, 2025 WL 1621636 (N.D. Cal. June 9, 2025).

### B. Justiciability

#### i. Standing

"A 'loss of funds promised under federal law[ ]satisfies Article III's standing requirement.'" *City & Cnty. of San Francisco v. Trump* ("*San Francisco I*"), 897 F.3d 1225, 1235 (9th Cir. 2018) (citing *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 965 (9th Cir. 2015)). "It [i]s enough that, if the plaintiffs' interpretation [of the law i]s correct, the plaintiffs []face serious repercussions in the absence of significant and costly compliance measures." *Id.* at 1236 (cleaned up) (citing *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392 (1988)).

Here, HUD's August 18, 2025 email to the City of Fresno evinces Plaintiffs' interpretation of the Grant Conditions Executive Orders and E.O. Grant Conditions as directives that soon will be enforced—despite the strong possibility that they are unauthorized—and thus pose direct and imminent threats to Plaintiffs' funding.

#### ii. Ripeness

For purposes of ripeness the Ninth Circuit uses three factors to "evaluat[e] the genuineness of a claimed threat of prosecution": "(1) 'whether the plaintiffs have articulated a concrete plan to

violate the law in question'; (2) 'whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings'; and (3) 'the history of past prosecution or enforcement under the challenged statute.'" *San Francisco I*, 897 F.3d at 1236 (cleaned up).

As to the first and second, the latest Executive Order issued on August 7, 2025 is a renewed directive to agencies to condition grant funding that has already spurred specific agency warnings. Last week HUD threatened to cut-off some of the City of Fresno's funding if its demands were not met, and as of 12:00 pm EDT August 21, 2025 the City had failed to comply with those demands. HUD provided that "failure to address HUD's concerns regarding the certification may result in HUD determining that the certification is inaccurate or unsatisfactory, which will result in disapproval of the [City's Fiscal Year 2025 Consolidated] Plan." Dkt. 9-35, Ex. A. With respect to the third factor, which considers any history of past enforcement, past actions by the first and the second Trump administrations suggest that future enforcement is likely.[2]

### C. Serious Questions Going to the Merits

Plaintiffs contend that the E.O. Grant Conditions violate Separation of Powers as action not authorized by Congress, the Spending Clause, the Tenth Amendment, the Fifth Amendment, and the APA. To satisfy the *Winter* factor of likelihood of success on the merits, Plaintiffs at this stage must show serious questions going to the merits of a challenge. *See All. for the Wild Rockies*, 865 F.3d at 1217 (citing *Shell Offshore, Inc.*, 709 F.3d at 1291); *Washington*, 847 F.3d at 1159 n.3 ("[T]he legal standards applicable to TROs and preliminary injunctions are "substantially identical.").

### ii. Lacking Congressional Authority

When agency action is "not in accordance with law" or "in excess of statutory jurisdiction,

---

[2] For example, in February the U.S. Centers for Disease Control and Prevention (CDC) terminated a $1.6 million grant to St. John's Community Health in order to comply with the Gender Ideology Order. *See* Kristen Hwang, LA clinics lose funding for transgender health care as Trump Executive Orders take hold, Cal Matters (Feb. 4, 2025), https://calmatters.org/health/2025/02/trump-executive-order-transgender-health/.

authority, or limitations," courts must set aside the action and hold it to be unlawful. 5 U.S.C. § 706(2)(A)&(C). *See also La. Pub. Serv. Comm'n*, 476 U.S. at 374 ("An agency literally has no power to act… unless and until Congress confers power upon it."). With respect to spending in particular, the Constitution "exclusively grants the power of the purse to Congress, not the President." *San Francisco I*, 897 F.3d at 1231. In deciding whether an agency has acted within its statutory authority, "[c]ourts must exercise their independent judgment." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). *See also* 5 U.S.C. § 706 (Courts must "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.").

Plaintiffs have shown serious questions as to whether the E.O. Grant Conditions are authorized by Congress. In fact, they have shown that in many cases the conditions squarely contradict the congressional acts that establish the grant programs in the first instance. For example, the E.O. Grant Conditions that prohibit promotion of DEI programs fly in the face of express congressional directives to invest in marginalize communities that appear in statutes that authorize these grant programs. *See e.g.*, *N.A.A.C.P. v. Sec'y of Hous. & Urb. Dev.*, 817 F.2d 149, 154–55 (1st Cir. 1987) (Title 42 U.S.C. § 3608(e)(5) imposes a mandatory duty on HUD to remedy past patterns of segregation and discrimination); 42 U.S.C. § 5307(b)–(c) (The Housing and Community Development Act of 1974, which established CBDG grants, provides for grants to "historically Black colleges" and institutions of higher education "for the purpose of providing assistance to economically disadvantaged and minority students who participate in community development work study programs and are enrolled in" qualifying degree programs); *Id.* § 9604(k)(6)(C)(x) (The EPA's Brownfields and Land Revitalization Program requires the EPA to consider "the extent to which a grant would address or facilitate the identification and reduction of threats to the health or welfare of children, pregnant women, minority or low-income communities, or other sensitive populations.").

### ii. Spending Clause[3]

The Spending Clause of the U.S. Constitution provides that "Congress[,]" not the Executive, "shall have Power to lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States[.]" U.S. Const. art. I, § 8, cl. 1. "[I]f Congress intends to impose a condition on the grant of federal [moneys], it must do so unambiguously," *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981), and those conditions must be "'reasonable conditions relevant to federal interest in the project and to the over-all objectives thereof,'" *South Dakota v. Dole*, 483 U.S. 203, 208 (1987) (quoting *Ivanhoe Irrigation Dist. v. McCracken*, 357 U.S. 275, 295 (1958)). Here, Plaintiffs have shown serious questions as to whether Congress authorized the E.O. Grant Conditions at all, as discussed above, let alone unambiguously and whether the Conditions are germane to the relevant federal grant programs.

### iii. Tenth Amendment

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend X. Federal grant conditions may not "coerce[] a State to adopt a federal regulatory system as its own." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 577–78 (2012). Here, Plaintiffs have shown serious questions as to whether the E.O. Grant Conditions coerce the state and local entities to adopt the federal policies reflected in the Executive Orders.

### iv. Fifth Amendment

A government-imposed requirement is unconstitutionally vague under the Fifth Amendment if it either (1) fails to provide a "person of ordinary intelligence a reasonable opportunity to know what is prohibited" or (2) fails to "provide explicit standards for those who apply" the requirement, thereby encouraging "arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). When determining the ambiguity of conditions

---

[3] As discussed at oral argument, the parties should address in their preliminary injunction briefing whether the private right of action arises for the non-APA claims.

on federal grants, courts evaluate "whether [a recipient]…would clearly understand… the obligations of the [conditions]." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006).

Here, it is not clear what compliance with the Executive Orders requires of Plaintiffs since Executive Orders bind only executive agencies, officers, and employees—not private parties or local governments—and the Executive Orders use vague language. For example, Executive Order 14173 *Ending Illegal Discrimination and Restoring Merit-Based Opportunity* directs each federal agency head to require each grant recipient to "certify that it does not operate any programs promoting DEI" that would violate federal antidiscrimination laws. Exec. Order 14173 § 3(b)(iv)(B), 90 Fed. Reg. 8633 (Jan. 31, 2025) (emphasis added). Executive Order No. 14168 *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* directs agency heads to "take all necessary steps, as permitted by law, to end the Federal funding of gender ideology" and to "ensure grant funds do not promote gender ideology." Exec. Order No. 14168 § 3(e), (g), 90 Fed. Reg. 8615 (Jan. 30, 2025) (emphasis added). Executive Order No. 14182 *Enforcing the Hyde Amendment* declares it "the policy of the United States… to end the forced use of Federal taxpayer dollars to fund or promote elective abortion." Exec. Order No. 14182, 90 Fed. Reg. 8751 (Jan. 31, 2025) (emphasis added). Executive Order No. 14332 *Improving Oversight of Federal Grantmaking* requires that grant awards are not "used to fund, promote, encourage, subsidize, or facilitate" "racial preferences," "denial… of the sex binary," "illegal immigration," or "any other initiatives that compromise public safety or promote anti-American values." Exec. Order No. 14332, 90 Fed. Reg. 38929 (Aug. 12, 2025) (emphasis added).

Plaintiffs demonstrate that Defendants have announced grant guidelines requiring compliance with the Executive Orders by pointing back to the Orders and repeating their vague directives. This language does not give grant recipients fair notice of what is required of them because the plain language is vague and the conditions contradict other grant conditions, agency

regulations,[4] congressional law as discussed above, and case law interpreting that law[5].

### v. The Administrative Procedure Act

The APA requires courts to "hold unlawful and set aside agency action" that is "arbitrary" and "capricious," "not in accordance with law," "contrary to constitutional right," "in excess of statutory jurisdiction," or "without observance of procedure required by law." 5 U.S.C. § 706(2). Here, as discussed above, Plaintiffs are likely to prevail in showing that Defendants' imposition of the unlawful Federal Grant Conditions are not in accordance with law, contrary to constitutional right, and in excess of statutory jurisdiction.

### c.    Plaintiffs Will Suffer Irreparable Harm If the Conditions Are Not Enjoined

A plaintiff seeking a preliminary injunction must establish that it is likely to suffer irreparable harm in the absence of preliminary relief. *Winter*, 555 U.S. at 20. Such harm "is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (citing *Rent–A–Ctr., Inc. v. Canyon Television & Appliance Rental, Inc*., 944 F.2d 597, 603 (9th Cir. 1991)).

Plaintiffs must choose between certifying compliance with likely unconstitutional conditions or forgoing key federal grant funding.[6] Choosing the former not only causes irreparable

---

[4] Federal agencies' own regulations regarding these grants often conflict with their new conditions. *See e.g.*, 49 C.F.R. Part 26 (requiring Disadvantaged Business Enterprise programs); 49 C.F.R. Part 23 (requiring disadvantaged businesses receive equitable access to airport concession contracts); 24 C.F.R. § 5.106(b)–(c) (requiring "[e]qual access to CPD programs, shelters, other buildings and facilities, benefits, services, and accommodations [be] provided to an individual in accordance with the individual's gender identity, and in a manner that affords equal access to the individual's family," including facilities with "shared sleeping quarters or shared bathing facilities").

[5] For example, the E.O. Grant Conditions demand compliance with federal anti-discrimination laws while the E.O.s, statements from executive department heads, and the actual enforcement of the E.O. Grant Conditions against Plaintiffs shows Defendants are broadly interpreting the law to prohibit essentially all DEI programs contrary to previous rulings. *See e.g.*, Dkt. 9-18 (Letter from Sean Duffy, DOT Secretary, to All Recipients of DOT Funding (April 24, 2025)) (announcing that DOT interprets federal nondiscrimination law to presumptively prohibit "any policy, program, or activity that" —even if "described in neutral terms"—"is premised on a prohibited classification, including discriminatory policies or practices designed to achieve so-called [DEI] goals.").

[6] Plaintiffs' need to budget and plan is not abstract or distant. According to Plaintiffs, the City of Fresno had to certify compliance with HUD's grant conditions by August 20, 2021 or risk losing funding for its Fiscal Year 2025 Consolidated Plan/Action Plan, Dkt. 9-35, Ex. A, and it must

ORDER GRANTING TRO
CASE NO.  3:25-CV-07070

11

injury because "deprivation of constitutional rights 'unquestionably constitutes irreparable injury,'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017), but also because the ambiguity of the conditions, as discussed above, creates uncertainty as to whether the Defendant agencies will consider the conditions satisfied. In other words, even if Plaintiffs choose to certify and attempt compliance with the conditions, they risk liability under the False Claims Act and more importantly the possibility that their grants will be withdrawn or blocked. This budgetary "uncertainty" causes irreparable harm by "interfere[ing] with [Plaintiffs'] ability to budget, plan for the future, and properly serve their residents," and requires "placing funds in reserve and making cuts to services." *See Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 537 (N.D. Cal. 2017).

**d. Balance of Equities and Public Interest**

A party seeking a preliminary injunction must "establish ... that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. When the federal government is a party, these factors merge. *Nken v. Holder*, 556 U.S. 418, 435. "[T]he legal standards applicable to TROs and preliminary injunctions are "substantially identical." *Washington v. Trump*, 847 F.3d at 1159 n.3.

Here, the public interest is served by allowing the Plaintiffs clarity about their budgets and programmatic capacities which provide key services to the public. Plaintiffs have a strong interest in avoiding unconstitutional federal enforcement and significant budget uncertainty.[7]

---

execute an FAA grant agreement with Fresno by August 29, 2025, Dkt. 9-33 (Partida Delgado Decl.) ¶ 14, and a Brownfields and Land Revitalization revolving loan fund grant agreement by August 26, 2025, Dkt. 9-26 (Clark Decl.) ¶ 9; Monroe County is subject to seven FAA FY 2025 grant agreement deadlines on August 27, 28, and 29, 2025, Dkt. 9-31 (Moore Decl.) ¶ 10; the City of South Lake Tahoe must execute its FAA grant agreement by September 16, 2025, Dkt. 9-28 (Dickinson Decl.) ¶ 13–14; and the City of Fresno must apply for and receive reimbursement for millions of dollars in FAA funding already spent in reliance on the availability of reimbursement, Dkt. 9-34 (Partida Delgado Decl.) ¶ 7–10. While at oral argument the Government suggested the opportunity to contest the grant conditions through dispute processes, which would render the matter no longer urgent, the description is too indefinite a basis on which Plaintiffs can rely.

[7] The Government argues that public interest suffers "substantial harm" by an "injunction interfering with the President's priorities" but also insists that there is "no immediate threat of… having federal funding terminated" and points to various instances where an agency has "not taken any action to pause or terminate grants." There can be no substantial harm in temporarily

**D.  SCOPE OF REMEDY AND ORDER**

For the foregoing reasons and for good cause shown, the Court hereby ORDERS that as to the Plaintiffs only:

(1) HUD, DOT and their operating administrators, HHS, and the EPA and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them (collectively "Enjoined Parties"), are enjoined from, as to the Plaintiffs, (1) imposing or enforcing the E.O. Grant Conditions, as defined above, or any materially similar terms or conditions with respect to any grants awarded to Plaintiffs; (2) rescinding, withholding, cancelling, or otherwise not processing grant agreements, or pausing, freezing, impeding, blocking, cancelling, terminating, delaying, withholding, or conditioning funds based on such terms or conditions enjoined by this Order, including without limitation failing or refusing to process and otherwise implement grants signed with changes or other objections to conditions enjoined by this Order; (3) requiring the Plaintiffs to make any "certification" or other representation related to compliance with such terms or conditions; or (4) refusing to issue process, or sign grant agreements based on Plaintiffs' participation in this lawsuit.

(2) The Enjoined Parties shall immediately treat any actions taken to implement or enforce the E.O. Grant Conditions or any materially similar terms or conditions as to the Plaintiffs, including any delays or withholding of funds based on such conditions, as null, void, and rescinded.

(3) The Enjoined Parties shall immediately take every step necessary to effectuate this order, including clearing any administrative, operational, or technical hurdles to implementation.

(4) By August 28, 2025**,** Enjoined Parties shall serve and file a declaration(s) verifying

---

enjoining threats and conduct the Government suggests it does not intend to pursue in the near term.

that they have complied with this Order, including serving a copy of this order on every defendant agency head, and detailing what additional steps, if any, they have taken to comply.

To afford time for the parties to provide complete briefing and in light of the complexity of the issues raised, good cause exists to extend the TRO an additional fourteen days beyond the initial fourteen-day period. *See* Fed. R. Civ. P. 65(b)(2). Accordingly, this restraining order shall remain in place until September 23, 2025 pending further order of this Court.

### E. SECURITY

Rule 65(c) of the Federal Rules of Civil Procedure provides that a district court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The district court retains discretion "as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks and citations omitted). The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* (cleaned up).

Here, Defendants have not demonstrated that they will suffer any material harm from the injunction the Court issues today. Accordingly, the Court denies Defendants' requests for a bond.

### F. CONCLUSION

For the foregoing reasons, Plaintiffs motion is GRANTED as set forth above.

**IT IS SO ORDERED**.

Dated: August 27, 2025

_____
RICHARD SEEBORG
Chief United States District Judge