1  ANDREW JANZ (SBN 287672)**
   Fresno City Attorney
2  andrew.janz@fresno.gov
   CITY OF FRESNO
3  2600 Fresno Street
   Fresno, CA 93721
4  Telephone: (559) 621-7500
   Facsimile:  (559) 457-1084
5  *Attorney for Plaintiff*
   CITY OF FRESNO
6  ** *Application for admission pro hac vice*
   *forthcoming*
7

JONATHAN V. HOLTZMAN (SBN 99795)
jholtzman@publiclawgroup.com
JAMES R. ROSS (SBN 149199)
jross@publiclawgroup.com
RYAN P. McGINLEY-STEMPEL (SBN 296182)
rmcginleystempel@publiclawgroup.com
JAKE D. FREITAS (SBN 341837)
jfreitas@publiclawgroup.com
MARIBEL LOPEZ (SBN 340907)
mlopez@publiclawgroup.com
RENNE PUBLIC LAW GROUP
350 Sansome Street, Suite 300
San Francisco, California 94104
Telephone: (415) 848-7200
Facsimile:  (415) 848-7230
*Attorneys for Plaintiffs*
CITY OF FRESNO; CITY OF EUREKA; CITY OF SOUTH
LAKE TAHOE; COUNTY OF SACRAMENTO; COUNTY OF
MONROE; MONROE COUNTY AIRPORT AUTHORITY;
COUNTY OF SAN DIEGO, COUNTY OF MARIN, CITY OF
ALAMEDA, CITY OF REDWOOD CITY

12 YIBIN SHEN (SBN 233545)
   Alameda City Attorney
13 yshen@alamedaca.gov
   CARA SILVER (SBN 136992)
14 Special Counsel
   csilver@alamedaca.gov
15 DANIEL J. TURNER (SBN 336499)
   Deputy City Attorney
16 dturner@alamedaca.gov
   2263 Santa Clara Avenue, Rm 280
17 Alameda, CA 94501
   Telephone: (510) 747-4750
18 *Attorneys for Plaintiff*
   CITY OF ALAMEDA
19

MELISSA C. ALLISON (MA Bar No. 657470)*
mallison@andersonkreiger.com
CHRISTINA S. MARSHALL (MA Bar No. 688348)*
cmarshall@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, Floor 21
Boston, MA 02109
Telephone: (617) 621-6500
*Attorneys for Plaintiffs*
COUNTY OF MONROE
MONROE COUNTY AIRPORT AUTHORITY
* *Appearing pro hac vice*

20 BRIAN E. WASHINGTON (SBN 146807)
   Marin County Counsel
21 KATE K. STANFORD (SBN 302825)
   Deputy County Counsel
22 kate.stanford@marincounty.gov
   EDWARD F. SEARS (SBN 297775)
23 Deputy County Counsel
   ned.sears@marincounty.gov
24 OFFICE OF THE COUNTY COUNSEL
   COUNTY OF MARIN
25 3501 Civic Center Drive, Room 275
   San Rafael, CA 94903
26 Telephone: (415) 473-6117
   Facsimile:  (415) 473-3796
27 *Attorneys for Plaintiff*
   COUNTY OF MARIN
28

LYNDSEY OLSON (MN Lic. #0332288)*
Saint Paul City Attorney
Lyndsey.olson@ci.stpaul.mn.us
KELSEY MCELVEEN (MN Lic. #0396744)*
Assistant City Attorney
Kelsey.McElveen@ci.stpaul.mn.us
SAINT PAUL CITY ATTORNEY'S OFFICE
400 City Hall and Courthouse
15 Kellogg Boulevard West
Saint Paul, Minnesota 55102
Telephone: (651) 266-8710
Facsimile:  (651) 298-5619
*Attorneys for Plaintiff*
CITY OF SAINT PAUL
* *Appearing pro hac vice*

RENNE PUBLIC LAW GROUP
Attorneys at Law

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF FRESNO; CITY OF EUREKA; CITY OF SOUTH LAKE TAHOE; CITY OF SAINT PAUL; COUNTY OF SACRAMENTO; COUNTY OF MONROE; MONROE COUNTY AIRPORT AUTHORITY; COUNTY OF SAN DIEGO, COUNTY OF MARIN; CITY OF ALAMEDA; CITY OF REDWOOD CITY, | Case No.: 3:25-cv-07070-RS |
| | **DECLARATION OF CHRISTOPHER BLUNK IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| Plaintiffs, | Complaint Filed: August 20, 2025 |
| | FAC Filed: September 8, 2025 |
| v. | Hon. Richard Seeborg |
| SCOTT TURNER in his official capacity as Secretary of the U.S. Department of Housing and Urban Development; the U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; SEAN DUFFY in his official capacity as Secretary of the U.S. Department of Transportation; the U.S. DEPARTMENT OF TRANSPORTATION; MARCUS J. MOLINARO in his official capacity as the Administrator of the Federal Transit Administration ; the FEDERAL TRANSIT ADMINISTRATION; GLORIA M. SHEPHERD in her official capacity as the Executive Director of the Federal Highway Administration; the FEDERAL HIGHWAY ADMINISTRATION; BRYAN BEDFORD in his official capacity as the Administration of the Federal Aviation Administration; the FEDERAL AVIATION ADMINISTRATION; ROBERT F. KENNEDY, JR. in his official capacity as Secretary of the U.S. Department of Health and Human Services; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; LEE ZELDIN in his official capacity as Administrator of the Environmental Protection Agency; and the U.S. ENVIRONMENTAL PROTECTION AGENCY, | |
| Defendants. | |

RENNE PUBLIC LAW GROUP
Attorneys at Law

I, Christopher Blunk, do hereby declare as follows:

1.      I am over 18 years of age. I have personal knowledge of the facts set forth herein, based on my own observations, information provided to me in the performance of my job duties, and my review of relevant business records. If called as a witness, I could competently so testify.

## BACKGROUND

2.      I am the Interim Director for the Marin County Department of Public Works ("DPW"). The County of Marin ("County") is a political subdivision of the State of California and a governmental entity that serves the Marin County geographic region. I have been employed by the County for two years and have served in my current role since December 2024. Prior to joining the County, I served as Public Works Director for the City of Novato for four years. I hold a Bachelor of Science in Civil Engineering and am a licensed Civil Engineer by the State of California.

3.      As part of my work, I am responsible for overseeing all of DPW's divisions, budgets and strategic priorities, which includes managing grant applications at the federal, state, and local level. In addition to maintaining, repairing, and improving 420 miles of County-maintained roads, DPW is responsible for the County's watersheds and related flood mitigation, waste management franchises, radio towers and communications, infrastructure and capital projects, printing services and County-wide procurement, local airports, public building repair and maintenance, as well as general government administration services—ensuring public safety, sustainability, and operational efficiency throughout the County's unincorporated areas.

## FEDERAL HIGHWAY ADMINISTRATION FUNDING

4.      DPW relies on significant federal funding from the United States Department of Transportation's ("USDOT") Federal Highway Administration ("FHWA") to provide critical infrastructure projects including emergency road repairs, bridge replacements, and safety improvements. Key grant programs, administered through the California Department of Transportation ("Caltrans"), include the Emergency Relief Program ("ER"), the Highway Bridge Program ("HBP"), and the Highway Safety Improvement Program ("HSIP").

5.      For fiscal year 2023-2024, Department of Public Works received approximately $4 million in FHWA funding for various highway maintenance, roadwork, and traffic safety measures. For fiscal year 2024-2025, DPW has received approximately $6 million in federal funding to date. DPW

RENNE PUBLIC LAW GROUP
Attorneys at Law

BLUNK DEC ISO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION – CASE NO. 3:25-cv-07070-RS

anticipates receiving approximately $43 million in additional FHWA funding over the next five years for the same or similar projects.

6.    The County receives its FHWA funds pursuant to an Administering Agency-State Agreement for Federal Aid Projects between the County of Marin and Caltrans dated May 24, 2016 (Caltrans Master Agreement). This agreement generally governs the payment of federal funds by Caltrans to the County, together with Program Supplements that specify the type of work and amount of federal funds to be used for phases of the project.

7.    Under Article I, Paragraph 9, of the Master Agreement, the County (referred to in the Agreement as the "Administering Agency") must "conform to . . . all applicable federal laws, regulations, and policy and procedural or instructional memoranda, unless otherwise specifically waived as designated in the executed project-specific PROGRAM SUPPLEMENT." A true and correct copy of the Caltrans Master Agreement is attached hereto as **Exhibit A**. A true and correct copy of the most recently executed Program Supplement for one of the County's projects is attached as **Exhibit B**. Under Section 2(A) of that Supplement agreement, the County (again referred to as the "Administering Agency") is required to "conform to . . . all applicable federal laws, regulations, and policy and procedural or instructional memoranda, unless otherwise specifically waived as designated in the executed project-specific PROGRAM SUPPLEMENT." Other Program Supplements to the Caltrans Master Agreement have been in substantially the same form and included substantially the same language as quoted above.

8.    Despite ongoing uncertainty, DPW could not forego timely executing the Program Supplement attached as **Exhibit B** and risk losing critical funding for ongoing projects. DPW anticipates needing to sign new Program Supplements in the coming months. It is anticipated that future Program Supplements will be in substantially the same form as the Program Supplement attached as **Exhibit B** and will include substantially the same language. Under Article I, Paragraph 5 of the Caltrans Master Agreement, DPW must execute a Program Supplement within ninety (90) days of receipt.

## NEW FEDERAL GUIDANCE

9.    On April 24, 2025, the Secretary of Transportation issued a letter to all grant recipients reminding them of their obligation to comply with federal law ("Duffy Memo"). The Duffy Memo emphasized compliance with federal anti-discrimination laws and asserted USDOT's position that any

RENNE PUBLIC LAW GROUP
Attorneys at Law

policy, program, or activity that is based on a prohibited classification, including diversity, equity, and inclusion ("DEI") programs, "presumptively violate federal law." The Secretary also stated that federal law requires all recipients of USDOT funding to cooperate with – and not impede – Immigration and Customs Enforcement ("ICE") and other U.S. Department of Homeland Security ("DHS") agencies in the performance of their duties. Finally, the Secretary warned that "non-compliance with applicable federal laws, or failure to cooperate generally with Federal authorities in the enforcement of Federal law" will jeopardize a grant recipient's continued receipt of federal financial assistance. A copy of the Duffy Memo is attached as **Exhibit C**.

10.     The County implements various initiatives aimed at eliminating inequities and barriers to access and engagement for underserved communities, persons with disabilities, people of color, and other historically underrepresented or economically disadvantaged populations. These initiatives include expanded outreach efforts and disadvantaged business enterprise ("DBE") programs. Given the Duffy Memo's statement that DEI programs "presumptively violate" federal law, it is unclear how the County will be able to reconcile this new condition with existing County policies and programs.

## CONSEQUENCES OF FHWA FUNDING LOSS

11.     If DPW does not accept the conditions set forth in the Caltrans Master Agreement and Program Supplements, it could be threatened with the loss of funding for projects supported by FHWA grants. This places DPW in an untenable situation of either agreeing to conditions to which it may not be able to comply or foregoing much needed grant funding for the continued operation, maintenance, and improvement of critical transportation infrastructure. Further, should DPW erroneously interpret said conditions it risks being the subject of future USDOT enforcement action which may also result in a loss of grant funding for capital projects that are already underway. This risk is compounded by additional financial uncertainty arising from potential False Claims Act penalties, which on their own could be extensive.

12.     The County would face significant harm if its FHWA funding were withheld or terminated. DPW relies on federal grant programs to support projects of varying size, including multimillion dollar projects that are critical to maintaining the safety of County roadways and bridges. Should the County not receive the federal funds it relies upon, it would be forced to abandon or indefinitely delay critical transportation infrastructure projects. The loss of these funds would be

devastating to DPW's budget and its ability to carry out this work, which would ultimately result in serious harm to public safety.

### AIRPORT FUNDING

13.    As noted above, DPW manages the Marin County Airport at Gnoss Field ("Gnoss Field"). Gnoss Field provides a facility for local aviation, flight training, air charter operations, airplane and helicopter medical flights, and air-to-ground ambulance transfers for the Marin County area. Gnoss Field currently has an open $900,000 Federal Aviation Administration ("FAA") Airport Improvement Program ("AIP") grant that was awarded in August 2022, with a four-year budget period to fund preliminary designs, environmental mitigation, and permit applications associated with a runway extension project. Among other things, the AIP grant agreement requires compliance with 39 airport sponsor obligations ("Grant Assurances") mandating that grant recipients maintain and operate their facilities safely, efficiently, and in accordance with specified conditions. Grant Assurance (C)(1) requires the County to "comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements." This compliance obligation remains in force for the life of the project. A true and correct copy of the AIP grant agreement, dated August 31, 2022, containing these Grant Assurances is attached hereto as **Exhibit D.**

14.    FAA funds are granted on a reimbursement basis after qualifying projects are completed. To date, the County has not expended funds or been reimbursed under the AIP grant. Notwithstanding, losing FAA funding would mean the County would need to consider abandoning or indefinitely delaying this important project. A loss of funding would also forfeit the opportunity to recover already dedicated staff and consultant time.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed this ___8___ day of September 2025, in San Rafael, California.

By: _____
Christopher Blunk
Interim Director
Department of Public Works
County of Marin



EXHIBIT A

MASTER AGREEMENT
ADMINISTERING AGENCY-STATE AGREEMENT FOR
FEDERAL-AID PROJECTS

04        Marin County
--------  ------------------------------------------------
District  Administering Agency

Agreement No. 04-5927F15

This AGREEMENT, is entered into effective this ~~3nd~~ 24th day of __MAY__, 20_16_ , by and between Marin County, hereinafter referred to as "ADMINISTERING AGENCY," and the State of California, acting by and through its Department of Transportation (Caltrans), hereinafter referred to as "STATE", and together referred to as "PARTIES" or individually as a "PARTY."

RECITALS:

1. WHEREAS, the Congress of the United States has enacted the Intermodal Surface Transportation Efficiency Act (ISTEA) of 1991 and subsequent Transportation Authorization Bills to fund transportation programs; and

2. WHEREAS, the Legislature of the State of California has enacted legislation by which certain federal-aid funds may be made available for use on local transportation related projects of public entities qualified to act as recipients of these federal-aid funds in accordance with the intent of federal law; and

3. WHEREAS, before federal funds will be made available for a specific program project, ADMINISTERING AGENCY and STATE are required to enter into an agreement to establish terms and conditions applicable to the ADMINISTERING AGENCY when receiving federal funds for a designated PROJECT facility and to the subsequent operation and maintenance of that completed facility.

NOW, THEREFORE, the PARTIES agree as follows:

5/3/16
CA-61

## ARTICLE I - PROJECT ADMINISTRATION

1. This AGREEMENT shall have no force or effect with respect to any program project unless and until a project-specific "Authorization/Agreement Summary", herein referred to as "E-76" document, is approved by STATE and the Federal Highway Administration (FHWA).

2. The term "PROJECT", as used herein, means that authorized transportation related project and related activities financed in part with federal-aid funds as more fully-described in an "Authorization/ Agreement Summary" or "Amendment/Modification Summary", herein referred to as "E-76" or "E-76 (AMOD)" document authorized by STATE and the Federal Highway Administration (FHWA).

3. The E-76/E-76 (AMOD) shall designate the party responsible for implementing PROJECT, type of work and location of PROJECT.

4. The PROGRAM SUPPLEMENT sets out special covenants as a condition for the ADMINISTERING AGENCY to receive federal-aid funds from/through STATE for designated PROJECT. The PROGRAM SUPPLEMENT shall also show these federal funds that have been initially encumbered for PROJECT along with the matching funds to be provided by ADMINISTERING AGENCY and/or others. Execution of PROGRAM SUPPLEMENT by the PARTIES shall cause ADMINISTERING AGENCY to adopt all of the terms of this AGREEMENT as though fully set forth therein in the PROGRAM SUPPLEMENT. Unless otherwise expressly delegated in a resolution by the governing body of ADMINISTERING AGENCY, and with written concurrence by STATE, the PROGRAM SUPPLEMENT shall be approved and managed by the governing body of ADMINISTERING AGENCY.

5. ADMINISTERING AGENCY agrees to execute and return each project-specific PROGRAM SUPPLEMENT within ninety (90) days of receipt. The PARTIES agree that STATE may suspend future authorizations/obligations and invoice payments for any on-going or future federal-aid project performed by ADMINISTERING AGENCY if any project-specific PROGRAM SUPPLEMENT is not returned within that ninety (90) day period unless otherwise agreed by STATE in writing.

6. ADMINISTERING AGENCY further agrees, as a condition to the release and payment of federal funds encumbered for the PROJECT described in each PROGRAM SUPPLEMENT, to comply with the terms and conditions of this AGREEMENT and all of the agreed-upon Special Covenants or Remarks incorporated within the PROGRAM SUPPLEMENT, and Cooperative/Contribution Agreement where appropriate, defining and identifying the nature of the specific PROJECT.

7. Federal, state and matching funds will not participate in PROJECT work performed in advance of the approval of the E-76 or E-76 (AMOD), unless otherwise stated in the executed project-specific PROGRAM SUPPLEMENT. ADMINISTERING AGENCY agrees that it will only proceed with the work authorized for that specific phase(s) on the project-specific E-76 or E-76 (AMOD). ADMINISTERING AGENCY further agrees to not proceed with future phases of PROJECT prior to receiving an E-76 (AMOD) from STATE for that phase(s) unless no further federal funds are needed or for those future phase(s).

8. That PROJECT or portions thereof, must be included in a federally approved Federal Statewide Transportation Improvement Program (FSTIP) prior to ADMINISTERING AGENCY submitting the "Request for Authorization".

9. ADMINISTERING AGENCY shall conform to all state statutes, regulations and procedures (including those set forth in the Local Assistance Procedures Manual and the Local Assistance Program Guidelines, hereafter collectively referred to as "LOCAL ASSISTANCE PROCEDURES") relating to the federal-aid program, all Title 23 Code of Federal Regulation (CFR) and 2 CFR part 200 federal requirements, and all applicable federal laws, regulations, and policy and procedural or instructional memoranda, unless otherwise specifically waived as designated in the executed project-specific PROGRAM SUPPLEMENT.

10. If PROJECT is not on STATE-owned right of way, PROJECT shall be constructed in accordance with LOCAL ASSISTANCE PROCEDURES that describes minimum statewide design standards for local agency streets and roads. LOCAL ASSISTANCE PROCEDURES for projects off the National Highway System (NHS) allow STATE to accept either the STATE's minimum statewide design standards or the approved geometric design standards of ADMINISTERING AGENCY. Additionally, for projects off the NHS, STATE will accept ADMINISTERING AGENCY-approved standard specifications, standard plans, materials sampling and testing quality assurance programs that meet the conditions described in the then current LOCAL ASSISTANCE PROCEDURES.

11. If PROJECT involves work within or partially within STATE-owned right-of-way, that PROJECT shall also be subject to compliance with the policies, procedures and standards of the STATE Project Development Procedures Manual and Highway Design Manual and, where appropriate, an executed Cooperative Agreement between STATE and ADMINISTERING AGENCY that outlines the PROJECT responsibilities and respective obligations of the PARTIES. ADMINISTERING AGENCY and its contractors shall each obtain an encroachment permit through STATE prior to commencing any work within STATE rights of way or work which affects STATE facilities.

12. When PROJECT is not on the State Highway System but includes work to be performed by a railroad, the contract for such work shall be prepared by ADMINISTERING AGENCY or by STATE, as the PARTIES may hereafter agree. In either event, ADMINISTERING AGENCY shall enter into an agreement with the railroad providing for future maintenance of protective devices or other facilities installed under the contract.

13. If PROJECT is using STATE funds, the Department of General Services, Division of the State Architect, or its designee, shall review the contract PS&E for the construction of buildings, structures, sidewalks, curbs and related facilities for accessibility and usability. ADMINISTERING AGENCY shall not award a PROJECT construction contract for these types of improvements until the State Architect has issued written approval stating that the PROJECT plans and specifications comply with the provisions of sections 4450 and 4454 of the California Government Code, if applicable. Further requirements and guidance are provided in Title 24 of the California Code of Regulations.

14. ADMINISTERING AGENCY will advertise, award and administer PROJECT in accordance with the current LOCAL ASSISTANCE PROCEDURES unless otherwise stated in the executed project-specific PROGRAM SUPPLEMENT.

15. ADMINISTERING AGENCY shall provide or arrange for adequate supervision and inspection of each PROJECT. While consultants may perform supervision and inspection work for PROJECT with a fully qualified and licensed engineer, ADMINISTERING AGENCY shall provide a full-time employee to be in responsible charge of each PROJECT who is not a consultant.

16. ADMINISTERING AGENCY shall submit PROJECT-specific contract award documents to STATE's District Local Assistance Engineer within sixty (60) days after contract award. A copy of the award documents shall also be included with the submittal of the first invoice for a construction contract by ADMINISTERING AGENCY.

17. ADMINISTERING AGENCY shall submit the final report documents that collectively constitute a "Report of Expenditures" within one hundred eighty (180) days of PROJECT completion. Failure by ADMINISTERING AGENCY to submit a "Report of Expenditures" within one hundred eighty (180) days of project completion will result in STATE imposing sanctions upon ADMINISTERING AGENCY in accordance with the current LOCAL ASSISTANCE PROCEDURES.

18. ADMINISTERING AGENCY shall comply with: (i) section 504 of the Rehabilitation Act of 1973 which prohibits discrimination on the basis of disability in federally assisted programs; (ii) the Americans with Disabilities Act (ADA) of 1990 which prohibits discrimination on the basis of disability irrespective of funding; and (iii) all applicable regulations and guidelines issued pursuant to both the Rehabilitation Act and the ADA.

19. The Congress of the United States, the Legislature of the State of California and the Governor of the State of California, each within their respective jurisdictions, have prescribed certain nondiscrimination requirements with respect to contract and other work financed with public funds. ADMINISTERING AGENCY agrees to comply with the requirements of the FAIR EMPLOYMENT PRACTICES ADDENDUM (Exhibit A attached hereto) and the NONDISCRIMINATION ASSURANCES (Exhibit B attached hereto). ADMINISTERING AGENCY further agrees that any agreement entered into by ADMINISTERING AGENCY with a third party for performance of PROJECT-related work shall incorporate Exhibits A and B (with third party's name replacing ADMINISTERING AGENCY) as essential parts of such agreement to be enforced by that third party as verified by ADMINISTERING AGENCY.

ARTICLE II - RIGHTS OF WAY

1. No contract for the construction of a federal-aid PROJECT shall be awarded until all necessary rights of way have been secured. Prior to the advertising for construction of PROJECT, ADMINISTERING AGENCY shall certify and, upon request, shall furnish STATE with evidence that all necessary rights of way are available for construction purposes or will be available by the time of award of the construction contract.

2. ADMINISTERING AGENCY agrees to indemnify and hold STATE harmless from any liability that may result in the event the right of way for a PROJECT, including, but not limited to, being clear as certified or if said right of way is found to contain hazardous materials requiring treatment or removal to remediate in accordance with Federal and State laws. The furnishing of right of way as provided for herein includes, in addition to all real property required for the PROJECT, title free and clear of obstructions and encumbrances affecting PROJECT and the payment, as required by applicable law, of relocation costs and damages to remainder real property not actually taken but injuriously affected by PROJECT. ADMINISTERING AGENCY shall pay, from its own non-matching funds, any costs which arise out of delays to the construction of PROJECT because utility facilities have not been timely removed or relocated, or because rights of way were not available to ADMINISTERING AGENCY for the orderly prosecution of PROJECT work.

3. Subject to STATE approval and such supervision as is required by LOCAL ASSISTANCE PROCEDURES over ADMINISTERING AGENCY's right of way acquisition procedures, ADMINISTERING AGENCY may claim reimbursement from federal funds for expenditures incurred in purchasing only the necessary rights of way needed for the PROJECT after crediting PROJECT with the fair market value of any excess property retained and not disposed of by ADMINISTERING AGENCY.

4. When real property rights are to be acquired by ADMINISTERING AGENCY for a PROJECT, said ADMINISTERING AGENCY must carry out that acquisition in compliance with all applicable State and Federal laws and regulations, in accordance with State procedures as published in State's current LOCAL ASSISTANCE PROCEDURES and STATE's Right-of-Way Manual, subject to STATE oversight to ensure that the completed work is acceptable under the Federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, as amended.

5. Whether or not federal-aid is to be requested for right of way, should ADMINISTERING AGENCY, in acquiring right of way for PROJECT, displace an individual, family, business, farm operation, or non-profit organization, relocation payments and services will be provided as set forth in 49 CFR, Part 24. The public will be adequately informed of the relocation payments and services which will be available, and, to the greatest extent practicable, no person lawfully occupying real property shall be required to move from his/her dwelling or to move his/her business or farm operation without at least ninety (90) days written notice from ADMINISTERING AGENCY. ADMINISTERING AGENCY will provide STATE with specific assurances, on each portion of the PROJECT, that no person will be displaced until comparable decent, safe and sanitary replacement housing is available within a reasonable period of time prior to displacement, and that ADMINISTERING AGENCY's relocation program is realistic and adequate to provide orderly, timely and efficient relocation of PROJECT-displaced persons as provided in 49 CFR, Part 24.

6. ADMINISTERING AGENCY shall, along with recording the deed or instrument evidencing title in the name of the ADMINISTERING AGENCY or their assignee, also record an Agreement Declaring Restrictive Covenants (ADRC) as a separate document incorporating the assurances included within Exhibits A and B and Appendices A, B, C and D of this AGREEMENT, as appropriate.

ARTICLE III - MAINTENANCE AND MANAGEMENT

1. ADMINISTERING AGENCY will maintain and operate the property acquired, developed, constructed, rehabilitated, or restored by PROJECT for its intended public use until such time as the parties might amend this AGREEMENT to otherwise provide. With the approval of STATE, ADMINISTERING AGENCY or its successors in interest in the PROJECT property may transfer this obligation and responsibility to maintain and operate PROJECT property for that intended public purpose to another public entity.

2. Upon ADMINISTERING AGENCY's acceptance of the completed federal-aid construction contract or upon contractor being relieved of the responsibility for maintaining and protecting PROJECT, ADMINISTERING AGENCY will be responsible for the maintenance, ownership, liability, and the expense thereof, for PROJECT in a manner satisfactory to the authorized representatives of STATE and FHWA and if PROJECT falls within the jurisdictional limits of another Agency or Agencies, it is the duty of ADMINISTERING AGENCY to facilitate a separate maintenance agreement(s) between itself and the other jurisdictional Agency or Agencies providing for the operation, maintenance, ownership and liability of PROJECT. Until those agreements are executed, ADMINISTERING AGENCY will be responsible for all PROJECT operations, maintenance, ownership and liability in a manner satisfactory to the authorized representatives of STATE and FHWA. If, within ninety (90) days after receipt of notice from STATE that a PROJECT, or any portion thereof, is not being properly operated and maintained and ADMINISTERING AGENCY has not satisfactorily remedied the conditions complained of, the approval of future federal-aid projects of ADMINISTERING AGENCY will be withheld until the PROJECT shall have been put in a condition of operation and maintenance satisfactory to STATE and FHWA. The provisions of this section shall not apply to a PROJECT that has been vacated through due process of law with STATE's concurrence.

3. PROJECT and its facilities shall be maintained by an adequate and well-trained staff of engineers and/or such other professionals and technicians as PROJECT reasonably requires. Said operations and maintenance staff may be employees of ADMINISTERING AGENCY, another unit of government, or a contractor under agreement with ADMINISTERING AGENCY. All maintenance will be performed at regular intervals or as required for efficient operation of the complete PROJECT improvements.

## ARTICLE IV - FISCAL PROVISIONS

1. All contractual obligations of STATE are subject to the appropriation of resources by the Legislature and the allocation of resources by the California Transportation Commission (CTC).

2. STATE'S financial commitment of federal funds will occur only upon the execution of this AGREEMENT, the authorization of the project-specific E-76 or E-76 (AMOD), the execution of each project-specific PROGRAM SUPPLEMENT, and STATE's approved finance letter.

3. ADMINISTERING AGENCY may submit signed invoices in arrears for reimbursement of participating PROJECT costs on a regular basis once the project-specific PROGRAM SUPPLEMENT has been executed by STATE.

4. ADMINISTERING AGENCY agrees, as a minimum, to submit invoices at least once every six (6) months commencing after the funds are encumbered on either the project-specific PROGRAM SUPPLEMENT or through a project-specific finance letter approved by STATE. STATE reserves the right to suspend future authorizations/obligations, and invoice payments for any on-going or future federal-aid project by ADMINISTERING AGENCY if PROJECT costs have not been invoiced by ADMINISTERING AGENCY for a six (6) month period.

5. Invoices shall be submitted on ADMINISTERING AGENCY letterhead that includes the address of ADMINISTERING AGENCY and shall be formatted in accordance with LOCAL ASSISTANCE PROCEDURES.

6. ADMINISTERING AGENCY must have at least one copy of supporting backup documentation for costs incurred and claimed for reimbursement by ADMINISTERING AGENCY. ADMINISTERING AGENCY agrees to submit supporting backup documentation with invoices if requested by State. Acceptable backup documentation includes, but is not limited to, agency's progress payment to the contractors, copies of cancelled checks showing amounts made payable to vendors and contractors, and/or a computerized summary of PROJECT costs.

7. Payments to ADMINISTERING AGENCY can only be released by STATE as reimbursement of actual allowable PROJECT costs already incurred and paid for by ADMINISTERING AGENCY.

8. Indirect Cost Allocation Plans/Indirect Cost Rate Proposals (ICAP/ICRP), Central Service Cost Allocation Plans and related documentation are to be prepared and provided to STATE (Caltrans Audits & Investigations) for review and approval prior to ADMINISTERING AGENCY seeking reimbursement of indirect costs incurred within each fiscal year being claimed for State and federal reimbursement. ICAPs/ICRPs must be prepared in accordance with the requirements set forth in 2 CFR, Part 200, Chapter 5 of the Local Assistance Procedural Manual, and the ICAP/ICRP approval procedures established by STATE.

9. Once PROJECT has been awarded, STATE reserves the right to de-obligate any excess federal funds from the construction phase of PROJECT if the contract award amount is less than the obligated amount, as shown on the PROJECT E-76 or E-76 (AMOD).

10. STATE will withhold the greater of either two (2) percent of the total of all federal funds encumbered for each PROGRAM SUPPLEMENT or $40,000 until ADMINISTERING AGENCY submits the Final Report of Expenditures for each completed PROGRAM SUPPLEMENT PROJECT.

11. The estimated total cost of PROJECT, the amount of federal funds obligated, and the required matching funds may be adjusted by mutual consent of the PARTIES hereto with a finance letter, a detailed estimate, if required, and approved E-76 (AMOD). Federal-aid funding may be increased to cover PROJECT cost increases only if such funds are available and FHWA concurs with that increase.

12. When additional federal-aid funds are not available, ADMINISTERING AGENCY agrees that the payment of federal funds will be limited to the amounts authorized on the PROJECT specific E-76 / E-76 (AMOD) and agrees that any increases in PROJECT costs must be defrayed with ADMINISTERING AGENCY's own funds.

13. ADMINISTERING AGENCY shall use its own non-federal funds to finance the local share of eligible costs and all expenditures or contract items ruled ineligible for financing with federal funds. STATE shall make the determination of ADMINISTERING AGENCY's cost eligibility for federal fund financing of PROJECT costs.

14. ADMINISTERING AGENCY will reimburse STATE for STATE's share of costs for work performed by STATE at the request of ADMINISTERING AGENCY. STATE's costs shall include overhead assessments in accordance with section 8755.1 of the State Administrative Manual.

15. Federal and state funds allocated from the State Transportation Improvement Program (STIP) are subject to the timely use of funds provisions enacted by Senate Bill 45, approved in 1997, and subsequent STIP Guidelines and State procedures approved by the CTC and STATE.

16. Federal funds encumbered for PROJECT are available for liquidation for a period of six (6) years from the beginning of the State fiscal year the funds were appropriated in the State Budget. State funds encumbered for PROJECT are available for liquidation only for six (6) years from the beginning of the State fiscal year the funds were appropriated in the State Budget. Federal or state funds not liquidated within these periods will be reverted unless a Cooperative Work Agreement (CWA) is submitted by ADMINISTERING AGENCY and approved by the California Department of Finance (per Government Code section 16304). The exact date of fund reversion will be reflected in the STATE signed finance letter for PROJECT.

17. Payments to ADMINISTERING AGENCY for PROJECT-related travel and subsistence (per diem) expenses of ADMINISTERING AGENCY forces and its contractors and subcontractors claimed for reimbursement or as local match credit shall not exceed rates authorized to be paid rank and file STATE employees under current State Department of Personnel Administration (DPA) rules. If the rates invoiced by ADMINISTERING AGENCY are in excess of DPA rates, ADMINISTERING AGENCY is responsible for the cost difference, and any overpayments inadvertently paid by STATE shall be reimbursed to STATE by ADMINISTERING AGENCY on demand within thirty (30) days of such invoice.

18. ADMINISTERING AGENCY agrees to comply with 2 CFR, Part 200, Uniform Administrative Requirements, Cost Principles and Audit Requirement for Federal Awards.

19. ADMINISTERING AGENCY agrees, and will assure that its contractors and subcontractors will be obligated to agree, that Contract Cost Principles and Procedures, 48 CFR, Federal Acquisition Regulations System, Chapter 1, Part 31, et seq., shall be used to determine the allowability of individual PROJECT cost items.

20. Every sub-recipient receiving PROJECT funds under this AGREEMENT shall comply with 2 CFR, Part 200, 23 CFR, 48 CFR Chapter 1, Part 31, Local Assistance Procedures, Public Contract Code (PCC) 10300-10334 (procurement of goods), PCC 10335-10381 (non-A&E services), and other applicable STATE and FEDERAL regulations.

21. Any PROJECT costs for which ADMINISTERING AGENCY has received payment or credit that are determined by subsequent audit to be unallowable under 2 CFR, Part 200, 23 CFR, 48 CFR, Chapter 1, Part 31, and other applicable STATE and FEDERAL regulations, are subject to repayment by ADMINISTERING AGENCY to STATE.

22. Should ADMINISTERING AGENCY fail to refund any moneys due upon written demand by STATE as provided hereunder or should ADMINISTERING AGENCY breach this AGREEMENT by failing to complete PROJECT without adequate justification and approval by STATE, then, within thirty 30 days of demand, or within such other period as may be agreed to in writing between the PARTIES, STATE, acting through the State Controller, the State Treasurer, or any other public entity or agency, may withhold or demand a transfer of an amount equal to the amount paid by or owed to STATE from future apportionments, or any other funds due ADMINISTERING AGENCY from the Highway Users Tax Fund or any other sources of funds, and/or may withhold approval of future ADMINISTERING AGENCY federal-aid projects.

23. Should ADMINISTERING AGENCY be declared to be in breach of this AGREEMENT or otherwise in default thereof by STATE, and if ADMINISTERING AGENCY is constituted as a joint powers authority, special district, or any other public entity not directly receiving funds through the State Controller, STATE is authorized to obtain reimbursement from whatever sources of funding are available, including the withholding or transfer of funds, pursuant to Article IV - 22, from those constituent entities comprising a joint powers authority or by bringing of an action against ADMINISTERING AGENCY or its constituent member entities, to recover all funds provided by STATE hereunder.

24. ADMINISTERING AGENCY acknowledges that the signatory party represents the ADMINISTERING AGENCY and further warrants that there is nothing within a Joint Powers Agreement, by which ADMINISTERING AGENCY was created, if any exists, that would restrict or otherwise limit STATE's ability to recover State funds improperly spent by ADMINISTERING AGENCY in contravention of the terms of this AGREEMENT.

ARTICLE V
AUDITS, THIRD PARTY CONTRACTING, RECORDS RETENTION AND REPORTS

1. STATE reserves the right to conduct technical and financial audits of PROJECT work and records and ADMINISTERING AGENCY agrees, and shall require its contractors and subcontractors to agree, to cooperate with STATE by making all appropriate and relevant PROJECT records available for audit and copying as required by paragraph three (3) of ARTICLE V.

2. ADMINISTERING AGENCY, its contractors and subcontractors shall establish and maintain a financial management system and records that properly accumulate and segregate reasonable, allowable, and allocable incurred PROJECT costs and matching funds by line item for the PROJECT. The financial management system of ADMINISTERING AGENCY, its contractors and all subcontractors shall conform to Generally Accepted Accounting Principles, enable the determination of incurred costs at interim points of completion, and provide support for reimbursement payment vouchers or invoices sent to or paid by STATE.

3. ADMINISTERING AGENCY, ADMINISTERING AGENCY's contractors and subcontractors, and STATE shall each maintain and make available for inspection and audit by STATE, the California State Auditor, or any duly authorized representative of STATE or the United States all books, documents, papers, accounting records, and other evidence pertaining to the performance of such contracts, including, but not limited to, the costs of administering those various contracts and ADMINISTERING AGENCY shall furnish copies thereof if requested. All of the above referenced parties shall make such AGREEMENT, PROGRAM SUPPLEMENT and contract materials available at their respective offices at all reasonable times during the entire PROJECT period and for three (3) years from the date of submission of the final expenditure report by the STATE to the FHWA.

4. ADMINISTERING AGENCY is required to have an audit in accordance with the Single Audit Act of 2 CFR 200 if it expends $750,000 or more in Federal Funds in a single fiscal year. The Federal Funds received under a PROGRAM SUPPLEMENT are a part of the Catalogue of Federal Domestic Assistance (CFDA) 20.205.

5. ADMINISTERING AGENCY agrees to include all PROGRAM SUPPLEMENTS adopting the terms of this AGREEMENT in the schedule of projects to be examined in ADMINISTERING AGENCY's annual audit and in the schedule of projects to be examined under its single audit prepared in accordance with 2 CFR, Part 200.

6. ADMINISTERING AGENCY shall not award a non-A&E contract over $5,000, construction contract over $10,000, or other contracts over $25,000 (excluding professional service contracts of the type which are required to be procured in accordance with Government Code sections 4525 (d), (e) and (f)) on the basis of a noncompetitive negotiation for work to be performed under this AGREEMENT without the prior written approval of STATE. Contracts awarded by ADMINISTERING AGENCY, if intended as local match credit, must meet the requirements set forth in this AGREEMENT regarding local match funds.

7. Any subcontract entered into by ADMINISTERING AGENCY as a result of this AGREEMENT shall contain provisions 5, 6, 17, 19 and 20 of ARTICLE IV, FISCAL PROVISIONS, and provisions 1, 2, and 3 of this ARTICLE V, AUDITS, THIRD-PARTY CONTRACTING RECORDS RETENTION AND REPORTS,

8. To be eligible for local match credit, ADMINISTERING AGENCY must ensure that local match funds used for a PROJECT meet the fiscal provisions requirements outlined in ARTICLE IV in the same manner as required of all other PROJECT expenditures.

9. In addition to the above, the pre-award requirements of third-party contractor/consultants with ADMINISTERING AGENCY should be consistent with the LOCAL ASSISTANCE PROCEDURES.

ARTICLE VI - FEDERAL LOBBYING ACTIVITIES CERTIFICATION

1. By execution of this AGREEMENT, ADMINISTERING AGENCY certifies, to the best of the signatory officer's knowledge and belief, that:

A. No federal or state appropriated funds have been paid or will be paid, by or on behalf of ADMINISTERING AGENCY, to any person for influencing or attempting to influence an officer or employee of any STATE or federal agency, a member of the State Legislature or United States Congress, an officer or employee of the Legislature or Congress, or any employee of a Member of the Legislature or Congress in connection with the awarding of any STATE or federal contract, including this AGREEMENT, the making of any STATE or federal loan, the entering into of any cooperative contract, and the extension, continuation, renewal, amendment, or modification of any STATE or federal contract, grant, loan, or cooperative contract.

B. If any funds other than federal appropriated funds have been paid, or will be paid, to any person for influencing or attempting to influence an officer or employee of any federal agency, a member of Congress, an officer or employee of Congress or an employee of a member of Congress in connection with this AGREEMENT, grant, local, or cooperative contract, ADMINISTERING AGENCY shall complete and submit Standard Form-LLL, "Disclosure Form to Rep Lobbying," in accordance with the form instructions.

C. This certification is a material representation of fact upon which reliance was placed when this AGREEMENT and each PROGRAM SUPPLEMENT was or will be made or entered into. Submission of this certification is a prerequisite for making or entering into this AGREEMENT imposed by Section 1352, Title 31, United States Code. Any party who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

2. ADMINISTERING AGENCY also agrees by signing this AGREEMENT that the language of this certification will be included in all lower tier sub-agreements which exceed $100,000 and that all such sub-recipients shall certify and disclose accordingly.

ARTICLE VII – MISCELLANEOUS PROVISIONS

1. ADMINISTERING AGENCY agrees to use all state funds reimbursed hereunder only for transportation purposes that are in conformance with Article XIX of the California State Constitution and the relevant Federal Regulations.

2. This AGREEMENT is subject to any additional restrictions, limitations, conditions, or any statute enacted by the State Legislature or adopted by the CTC that may affect the provisions, terms, or funding of this AGREEMENT in any manner.

3. ADMINISTERING AGENCY and the officers and employees of ADMINISTERING AGENCY, when engaged in the performance of this AGREEMENT, shall act in an independent capacity and not as officers, employees or agents of STATE or the federal government.

4. Each project-specific E-76 or E-76 (AMOD), PROGRAM SUPPLEMENT and Finance Letter shall separately establish the terms and funding limits for each described PROJECT funded under the AGREEMENT. No federal or state funds are obligated against this AGREEMENT.

5. ADMINISTERING AGENCY certifies that neither ADMINISTERING AGENCY nor its principals are suspended or debarred at the time of the execution of this AGREEMENT. ADMINISTERING AGENCY agrees that it will notify STATE immediately in the event a suspension or a debarment occurs after the execution of this AGREEMENT.

6. ADMINISTERING AGENCY certifies, by execution of this AGREEMENT, that no person or selling agency has been employed or retained to solicit or secure this AGREEMENT upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by ADMINISTERING AGENCY for the purpose of securing business. For breach or violation of this warranty, STATE has the right to annul this AGREEMENT without liability, pay only for the value of the work actually performed, or in STATE's discretion, to deduct from the price of consideration, or otherwise recover, the full amount of such commission, percentage, brokerage, or contingent fee.

7. In accordance with Public Contract Code section 10296, ADMINISTERING AGENCY hereby certifies under penalty of perjury that no more than one final unappealable finding of contempt of court by a federal court has been issued against ADMINISTERING AGENCY within the immediate preceding two (2) year period because of ADMINISTERING AGENCY's failure to comply with an order of a federal court that orders ADMINISTERING AGENCY to comply with an order of the National Labor Relations Board.

8. ADMINISTERING AGENCY shall disclose any financial, business, or other relationship with STATE, FHWA or Federal Transit Administration (FTA) that may have an impact upon the outcome of this AGREEMENT. ADMINISTERING AGENCY shall also list current contractors who may have a financial interest in the outcome of this AGREEMENT.

9. ADMINISTERING AGENCY hereby certifies that it does not have nor shall it acquire any financial or business interest that would conflict with the performance of PROJECT under this AGREEMENT.

10. ADMINISTERING AGENCY certifies that this AGREEMENT was not obtained or secured through rebates, kickbacks or other unlawful consideration either promised or paid to any STATE employee. For breach or violation of this warranty, STATE shall have the right, in its discretion, to terminate this AGREEMENT without liability, to pay only for the work actually performed, or to deduct from the PROGRAM SUPPLEMENT price or otherwise recover the full amount of such rebate, kickback, or other unlawful consideration.

11. Any dispute concerning a question of fact arising under this AGREEMENT that is not disposed of by agreement shall be decided by the STATE's Contract Officer who may consider any written or verbal evidence submitted by ADMINISTERING AGENCY. The decision of the Contract Officer, issued in writing, shall be conclusive and binding on the PARTIES on all questions of fact considered and determined by the Contract Officer.

12. Neither the pending of a dispute nor its consideration by the Contract Officer will excuse ADMINISTERING AGENCY from full and timely performance in accordance with the terms of this AGREEMENT.

13. Neither ADMINISTERING AGENCY nor any officer or employee thereof is responsible for any injury, damage or liability occurring by reason of anything done or omitted to be done by STATE, under or in connection with any work, authority or jurisdiction arising under this AGREEMENT. It is understood and agreed that STATE shall fully defend, indemnify and save harmless the ADMINISTERING AGENCY and all of its officers and employees from all claims, suits or actions of every name, kind and description brought forth under, including, but not limited to, tortious, contractual, inverse condemnation and other theories or assertions of liability occurring by reason of anything done or omitted to be done by STATE under this AGREEMENT.

14. Neither STATE nor any officer or employee thereof shall be responsible for any injury, damage or liability occurring by reason of anything done or omitted to be done by ADMINISTERING AGENCY under, or in connection with, any work, authority or jurisdiction arising under this AGREEMENT. It is understood and agreed that ADMINISTERING AGENCY shall fully defend, indemnify and save harmless STATE and all of its officers and employees from all claims, suits or actions of every name, kind and description brought forth under, including, but not limited to, tortious, contractual, inverse condemnation or other theories or assertions of liability occurring by reason of anything done or omitted to be done by ADMINISTERING AGENCY under this AGREEMENT.

15. STATE reserves the right to terminate funding for any PROJECT upon written notice to ADMINISTERING AGENCY in the event that ADMINISTERING AGENCY fails to proceed with PROJECT work in accordance with the project-specific PROGRAM SUPPLEMENT, the bonding requirements if applicable, or otherwise violates the conditions of this AGREEMENT and/or PROGRAM SUPPLEMENT, or the funding allocation such that substantial performance is significantly endangered.

16. No termination shall become effective if, within thirty (30) days after receipt of a Notice of Termination, ADMINISTERING AGENCY either cures the default involved or, if not reasonably susceptible of cure within said thirty (30) day period, ADMINISTERING AGENCY proceeds thereafter to complete the cure in a manner and time line acceptable to STATE. Any such termination shall be accomplished by delivery to ADMINISTERING AGENCY of a Notice of Termination, which notice shall become effective not less than thirty (30) days after receipt, specifying the reason for the termination, the extent to which funding of work under this AGREEMENT is terminated and the date upon which such termination becomes effective, if beyond thirty (30) days after receipt. During the period before the effective termination date, ADMINISTERING AGENCY and STATE shall meet to attempt to resolve any dispute. In the event of such termination, STATE may proceed with the PROJECT work in a manner deemed proper by STATE. If STATE terminates funding for PROJECT with ADMINISTERING AGENCY, STATE shall pay ADMINISTERING AGENCY the sum due ADMINISTERING AGENCY under the PROGRAM SUPPLEMENT and/or STATE approved finance letter prior to termination, provided, however, ADMINISTERING AGENCY is not in default of the terms and conditions of this AGREEMENT or the project-specific PROGRAM SUPPLEMENT and that the cost of PROJECT completion to STATE shall first be deducted from any sum due ADMINISTERING AGENCY.

17. In case of inconsistency or conflicts with the terms of this AGREEMENT and that of a project-specific PROGRAM SUPPLEMENT, the terms stated in that PROGRAM SUPPLEMENT shall prevail over those in this AGREEMENT.

18. Without the written consent of STATE, this AGREEMENT is not assignable by ADMINISTERING AGENCY either in whole or in part.

19. No alteration or variation of the terms of this AGREEMENT shall be valid unless made in writing and signed by the PARTIES, and no oral understanding or agreement not incorporated herein shall be binding on any of the PARTIES.

IN WITNESS WHEREOF, the PARTIES have executed this AGREEMENT by their duly authorized officers.

STATE OF CALIFORNIA
DEPARTMENT OF TRANSPORTATION

By _____

_____

Chief, Office of Project Implementation
Division of Local Assistance

Date _May 24, 2016_

Marin County

By _____

STEVE KINSEY

PRESIDENT

Marin County
Representative Name & Title
(Authorized Governing Body Representative)

Date _5/3/1c_

EXHIBIT A

FAIR EMPLOYMENT PRACTICES ADDENDUM

1. In the performance of this Agreement, ADMINISTERING AGENCY will not discriminate against any employee for employment because of race, color, sex, sexual orientation, religion, ancestry or national origin, physical disability, medical condition, marital status, political affiliation, family and medical care leave, pregnancy leave, or disability leave. ADMINISTERING AGENCY will take affirmative action to ensure that employees are treated during employment without regard to their race, sex, sexual orientation, color, religion, ancestry, or national origin, physical disability, medical condition, marital status, political affiliation, family and medical care leave, pregnancy leave, or disability leave. Such action shall include, but not be limited to, the following: employment; upgrading; demotion or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. ADMINISTERING AGENCY shall post in conspicuous places, available to employees for employment, notices to be provided by STATE setting forth the provisions of this Fair Employment section.

2. ADMINISTERING AGENCY, its contractor(s) and all subcontractors shall comply with the provisions of the Fair Employment and Housing Act (Government Code Section 1290-0 et seq.), and the applicable regulations promulgated thereunder (California code of Regulations, Title 2, Section 7285.0 et seq.). The applicable regulations of the Fair Employment and Housing Commission implementing Government Code, Section 12900(a-f), set forth in Chapter 5 of Division 4 of Title 2 of the California Code of Regulations are incorporated into this AGREEMENT by reference and made a part hereof as if set forth in full. Each of the ADMINISTERING AGENCY'S contractors and all subcontractors shall give written notice of their obligations under this clause to labor organizations with which they have a collective bargaining or other agreements, as appropriate.

3. ADMINISTERING AGENCY shall include the nondiscrimination and compliance provisions of this clause in all contracts and subcontracts to perform work under this AGREEMENT.

4. ADMINISTERING AGENCY will permit access to the records of employment, employment advertisements, application forms, and other pertinent data and records by STATE, the State Fair Employment and Housing Commission, or any other agency of the State of California designated by STATE, for the purposes of investigation to ascertain compliance with the Fair Employment section of this Agreement.

5. Remedies for Willful Violation:

(a) STATE may determine a willful violation of the Fair Employment provision to have occurred upon receipt of a final judgment to that effect from a court in an action to which ADMINISTERING AGENCY was a party, or upon receipt of a written notice from the Fair Employment and Housing Commission that it has investigated and determined that ADMINISTERING AGENCY has violated the Fair Employment Practices Act and had issued an order under Labor Code Section 1426 which has become final or has obtained an injunction under Labor Code Section 1429.

(b) For willful violation of this Fair Employment Provision, STATE shall have the right to terminate this Agreement either in whole or in part, and any loss or damage sustained by STATE in securing the goods or services thereunder shall be borne and paid for by ADMINISTERING AGENCY and by the surety under the performance bond, if any, and STATE may deduct from any moneys due or thereafter may become due to ADMINISTERING AGENCY, the difference between the price named in the Agreement and the actual cost thereof to STATE to cure ADMINISTERING AGENCY's breach of this Agreement.

EXHIBIT B

NONDISCRIMINATION ASSURANCES

ADMINISTERING AGENCY HEREBY AGREES THAT, as a condition to receiving any federal financial assistance from the STATE, acting for the U.S. Department of Transportation, it will comply with Title VI of the Civil Rights Act of 1964, 78 Stat. 252, 42 U.S.C. 2000d-42 U.S.C. 2000d-4 (hereinafter referred to as the ACT), and all requirements imposed by or pursuant to Title 49, Code of Federal Regulations, Department of Transportation, Subtitle A, Office of the Secretary, Part 21, "Nondiscrimination in Federally-Assisted Programs of the Department of Transportation - Effectuation of Title VI of the Civil Rights Act of 1964" (hereinafter referred to as the REGULATIONS), the Federal-aid Highway Act of 1973, and other pertinent directives, to the end that in accordance with the ACT, REGULATIONS, and other pertinent directives, no person in the United States shall, on the grounds of race, color, sex, national origin, religion, age or disability, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program or activity for which ADMINISTERING AGENCY receives federal financial assistance from the Federal Department of Transportation. ADMINISTERING AGENCY HEREBY GIVES ASSURANCE THAT ADMINISTERING AGENCY will promptly take any measures necessary to effectuate this agreement. This assurance is required by subsection 21.7(a) (1) of the REGULATIONS.

More specifically, and without limiting the above general assurance, ADMINISTERING AGENCY hereby gives the following specific assurances with respect to its federal-aid Program:

1. That ADMINISTERING AGENCY agrees that each "program" and each "facility" as defined in subsections 21.23 (e) and 21.23 (b) of the REGULATIONS, will be (with regard to a "program") conducted, or will be (with regard to a "facility") operated in compliance with all requirements imposed by, or pursuant to, the REGULATIONS.

2. That ADMINISTERING AGENCY shall insert the following notification in all solicitations for bids for work or material subject to the REGULATIONS made in connection with the federal-aid Program and, in adapted form, in all proposals for negotiated agreements:

ADMINISTERING AGENCY hereby notifies all bidders that it will affirmatively insure that in any agreement entered into pursuant to this advertisement, minority business enterprises will be afforded full opportunity to submit bids in response to this invitation and will not be discriminated against on the grounds of race, color, sex, national origin, religion, age, or disability in consideration for an award.

3. That ADMINISTERING AGENCY shall insert the clauses of Appendix A of this assurance in every agreement subject to the ACT and the REGULATIONS.

4. That the clauses of Appendix B of this Assurance shall be included as a covenant running with the land, in any deed effecting a transfer of real property, structures, or improvements thereon, or interest therein.

5. That where ADMINISTERING AGENCY receives federal financial assistance to construct a facility, or part of a facility, the Assurance shall extend to the entire facility and facilities operated in connection therewith.

6. That where ADMINISTERING AGENCY receives federal financial assistance in the form, or for the acquisition, of real property or an interest in real property, the Assurance shall extend to rights to space on, over, or under such property.

7. That ADMINISTERING AGENCY shall include the appropriate clauses set forth in Appendix C and D of this Assurance, as a covenant running with the land, in any future deeds, leases, permits, licenses, and similar agreements entered into by the ADMINISTERING AGENCY with other parties:

Appendix C;

(a) for the subsequent transfer of real property acquired or improved under the federal-aid Program; and

Appendix D;

(b) for the construction or use of or access to space on, over, or under real property acquired, or improved under the federal-aid Program.

8. That this assurance obligates ADMINISTERING AGENCY for the period during which federal financial assistance is extended to the program, except where the federal financial assistance is to provide, or is in the form of, personal property or real property or interest therein, or structures, or improvements thereon, in which case the assurance obligates ADMINISTERING AGENCY or any transferee for the longer of the following periods:

(a) the period during which the property is used for a purpose for which the federal financial assistance is extended, or for another purpose involving the provision of similar services or benefits; or

(b) the period during which ADMINISTERING AGENCY retains ownership or possession of the property.

9. That ADMINISTERING AGENCY shall provide for such methods of administration for the program as are found by the U.S. Secretary of Transportation, or the official to whom he delegates specific authority, to give reasonable guarantee that ADMINISTERING AGENCY, other recipients, sub-grantees, applicants, sub-applicants, transferees, successors in interest, and other participants of federal financial assistance under such program will comply with all requirements imposed by, or pursuant to, the ACT, the REGULATIONS, this Assurance and the Agreement.

10. That ADMINISTERING AGENCY agrees that the United States and the State of California have a right to seek judicial enforcement with regard to any matter arising under the ACT, the REGULATIONS, and this Assurance.

11. ADMINISTERING AGENCY shall not discriminate on the basis of race, religion, age, disability, color, national origin or sex in the award and performance of any STATE assisted contract or in the administration on its DBE Program or the requirements of 49 CFR Part 26. ADMINISTERING AGENCY shall take all necessary and reasonable steps under 49 CFR Part 26 to ensure non-discrimination in the award and administration of STATE assisted contracts. ADMINISTERING AGENCY'S DBE Implementation Agreement is incorporated by reference in this AGREEMENT. Implementation of this program is a legal obligation and failure to carry out its terms shall be treated as a violation of this agreement. Upon notification to the recipient of its failure to carry out its approved DBE Implementation Agreement, STATE may impose sanctions as provided for under 49 CFR Part 26 and may, in appropriate cases, refer the matter for enforcement under 18 USC 1001 and/or the Program Fraud Civil Remedies Act of 1985 (31USC 3801 et seq.)

THESE ASSURANCES are given in consideration of and for the purpose of obtaining any and all federal grants, loans, agreements, property, discounts or other federal financial assistance extended after the date hereof to ADMINISTERING AGENCY by STATE, acting for the U.S. Department of Transportation, and is binding on ADMINISTERING AGENCY, other recipients, subgrantees, applicants, sub-applicants, transferees, successors in interest and other participants in the federal-aid Highway Program.

APPENDIX A TO EXHIBIT B

During the performance of this Agreement, ADMINISTERING AGENCY, for itself, its assignees and successors in interest (hereinafter collectively referred to as ADMINISTERING AGENCY) agrees as follows:

(1) Compliance with Regulations: ADMINISTERING AGENCY shall comply with the regulations relative to nondiscrimination in federally assisted programs of the Department of Transportation, Title 49, Code of Federal Regulations, Part 21, as they may be amended from time to time, (hereinafter referred to as the REGULATIONS), which are herein incorporated by reference and made a part of this agreement.

(2) Nondiscrimination: ADMINISTERING AGENCY, with regard to the work performed by it during the AGREEMENT, shall not discriminate on the grounds of race, color, sex, national origin, religion, age, or disability in the selection and retention of sub-applicants, including procurements of materials and leases of equipment. ADMINISTERING AGENCY shall not participate either directly or indirectly in the discrimination prohibited by Section 21.5 of the REGULATIONS, including employment practices when the agreement covers a program set forth in Appendix B of the REGULATIONS.

(3) Solicitations for Sub-agreements, Including Procurements of Materials and Equipment: In all solicitations either by competitive bidding or negotiation made by ADMINISTERING AGENCY for work to be performed under a Sub-agreement, including procurements of materials or leases of equipment, each potential sub-applicant or supplier shall be notified by ADMINISTERING AGENCY of the ADMINISTERING AGENCY's obligations under this Agreement and the REGULATIONS relative to nondiscrimination on the grounds of race, color, or national origin.

(4) Information and Reports: ADMINISTERING AGENCY shall provide all information and reports required by the REGULATIONS, or directives issued pursuant thereto, and shall permit access to ADMINISTERING AGENCY's books, records, accounts, other sources of information, and its facilities as may be determined by STATE or FHWA to be pertinent to ascertain compliance with such REGULATIONS or directives. Where any information required of ADMINISTERING AGENCY is in the exclusive possession of another who fails or refuses to furnish this information, ADMINISTERING AGENCY shall so certify to STATE or the FHWA as appropriate, and shall set forth what efforts ADMINISTERING AGENCY has made to obtain the information.

(5) Sanctions for Noncompliance: In the event of ADMINISTERING AGENCY's noncompliance with the nondiscrimination provisions of this agreement, STATE shall impose such agreement sanctions as it or the FHWA may determine to be appropriate, including, but not limited to:

(a) withholding of payments to ADMINISTERING AGENCY under the Agreement within a reasonable period of time, not to exceed 90 days; and/or

(b) cancellation, termination or suspension of the Agreement, in whole or in part.

(6) Incorporation of Provisions: ADMINISTERING AGENCY shall include the provisions of paragraphs (1) through (6) in every sub-agreement, including procurements of materials and leases of equipment, unless exempt by the REGULATIONS, or directives issued pursuant thereto. ADMINISTERING AGENCY shall take such action with respect to any sub-agreement or procurement as STATE or FHWA may direct as a means of enforcing such provisions including sanctions for noncompliance, provided, however, that, in the event ADMINISTERING AGENCY becomes involved in, or is threatened with, litigation with a sub-applicant or supplier as a result of such direction, ADMINISTERING AGENCY may request STATE enter into such litigation to protect the interests of STATE, and, in addition, ADMINISTERING AGENCY may request the United States to enter into such litigation to protect the interests of the United States.

APPENDIX B TO EXHIBIT B

The following clauses shall be included in any and all deeds effecting or recording the transfer of PROJECT real property, structures or improvements thereon, or interest therein from the United States.

(GRANTING CLAUSE)

NOW, THEREFORE, the U.S. Department of Transportation, as authorized by law, and upon the condition that ADMINISTERING AGENCY will accept title to the lands and maintain the project constructed thereon, in accordance with Title 23, United States Code, the Regulations for the Administration of federal-aid for Highways and the policies and procedures prescribed by the Federal Highway Administration of the Department of Transportation and, also in accordance with and in compliance with the Regulations pertaining to and effectuating the provisions of Title VI of the Civil Rights Act of 1964 (78 Stat. 252; 42 U.S.C. 2000d to 2000d-4), does hereby remise, release, quitclaim and convey unto the ADMINISTERING AGENCY all the right, title, and interest of the U.S. Department of Transportation in, and to, said lands described in Exhibit "A" attached hereto and made a part hereof.

(HABENDUM CLAUSE)

TO HAVE AND TO HOLD said lands and interests therein unto ADMINISTERING AGENCY and its successors forever, subject, however, to the covenant, conditions, restrictions and reservations herein contained as follows, which will remain in effect for the period during which the real property or structures are used for a purpose for which federal financial assistance is extended or for another purpose involving the provision of similar services or benefits and shall be binding on ADMINISTERING AGENCY, its successors and assigns.

ADMINISTERING AGENCY, in consideration of the conveyance of said lands and interests in lands, does hereby covenant and agree as a covenant running with the land for itself, its successors and assigns,

(1) that no person shall on the grounds of race, color, sex, national origin, religion, age or disability, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination with regard to any facility located wholly or in part on, over, or under such lands hereby conveyed (;) (and) *

(2) that ADMINISTERING AGENCY shall use the lands and interests in lands so conveyed, in compliance with all requirements imposed by or pursuant to Title 49, Code of Federal Regulations, Department of Transportation, Subtitle A, Office of the Secretary, Part 21, Non-discrimination in federally-assisted programs of the Department of Transportation - Effectuation of Title VI of the Civil Rights Act of 1964, and as said Regulations may be amended (;) and

(3) that in the event of breach of any of the above-mentioned nondiscrimination conditions, the U.S. Department of Transportation shall have a right to re-enter said lands and facilities on said land, and the above-described land and facilities shall thereon revert to and vest in and become the absolute property of the U.S. Department of Transportation and its assigns as such interest existed prior to this deed.*

* Reverter clause and related language to be used only when it is determined that such a clause is necessary in order to effectuate the purposes of Title VI of the Civil Rights Act of 1964.

APPENDIX C TO EXHIBIT B

The following clauses shall be included in any and all deeds, licenses, leases, permits, or similar instruments entered into by ADMINISTERING AGENCY, pursuant to the provisions of Assurance 7(a) of Exhibit B.

The grantee (licensee, lessee, permittee, etc., as appropriate) for himself, his heirs, personal representatives, successors in interest, and assigns, as a part of the consideration hereof, does hereby covenant and agree (in the case of deeds and leases add "as covenant running with the land") that in the event facilities are constructed, maintained, or otherwise operated on the said property described in this (deed, license, lease, permit, etc.) for a purpose for which a U.S. Department of Transportation program or activity is extended or for another purpose involving the provision of similar services or benefits, the (grantee, licensee, lessee, permittee, etc.), shall maintain and operate such facilities and services in compliance with all other requirements imposed pursuant to Title 49, Code of Federal Regulations, U.S. Department of Transportation, Subtitle A, Office of Secretary, Part 21, Nondiscrimination in federally-assisted programs of the Department of Transportation - Effectuation of Title VI of the Civil Rights Act of 1964, and as said Regulations may be amended.

(Include in licenses, leases, permits, etc.)*

That in the event of breach of any of the above nondiscrimination covenants, ADMINISTERING AGENCY shall have the right to terminate the (license, lease, permit etc.) and to re-enter and repossess said land and the facilities thereon, and hold the same as if said (license, lease, permit, etc.) had never been made or issued.

(Include in deeds)*

That in the event of breach of any of the above nondiscrimination covenants, ADMINISTERING AGENCY shall have the right to re-enter said land and facilities thereon, and the above-described lands and facilities shall thereupon revert to and vest in and become the absolute property of ADMINISTERING AGENCY and its assigns.

* Reverter clause and related language to be used only when it is determined that such a clause is necessary in order to effectuate the purposes of Title VI of the Civil Rights Act of 1964.

APPENDIX D TO EXHIBIT B

The following shall be included in all deeds, licenses, leases, permits, or similar agreements entered into by the ADMINISTERING AGENCY, pursuant to the provisions of Assurance 7 (b) of Exhibit B.

The grantee (licensee, lessee, permittee, etc., as appropriate) for himself, his personal representatives, successors in interest and assigns, as a part of the consideration hereof, does hereby covenant and agree (in the case of deeds, and leases add "as a covenant running with the land") that:

(1) no person on the ground of race, color, sex, national origin, religion, age or disability, shall be excluded from participation in, denied the benefits of, or otherwise subjected to discrimination in the use of said facilities;

(2) that in the construction of any improvements on, over, or under such land and the furnishing of services thereon, no person on the ground of race, color, sex, national origin, religion, age or disability shall be excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination; and

(3) that the (grantee, licensee, lessee, permittee, etc.,) shall use the premises in compliance with the Regulations.

(Include in licenses, leases, permits, etc.)*

That in the event of breach of any of the above nondiscrimination covenants, ADMINISTERING AGENCY shall have the right to terminate the (license, lease, permit, etc.) and to re-enter and repossess said land and the facilities thereon, and hold the same as if said (license, lease, permit, etc.) had never been made or issued.

(Include in deeds)*

That in the event of breach of any of the above nondiscrimination covenants, ADMINISTERING AGENCY shall have the right to re-enter said land and facilities thereon, and the above-described lands and facilities shall thereupon revert to and vest in and become the absolute property of ADMINISTERING AGENCY, and its assigns.

---

* Reverter clause and related language to be used only when it is determined that such a clause is necessary in order to effectuate the purposes of Title VI of the Civil Rights Act of 1964.

**RESOLUTION NO. 2016-37**
**RESOLUTION OF THE MARIN COUNTY BOARD OF SUPERVISORS**
**AUTHORIZING THE DIRECTOR OF PUBLIC WORKS, THE CHIEF ASSISTANT DIRECTOR,**
**THE ASSISTANT DIRECTOR, OR THE DEPUTY DIRECTOR TO EXECUTE INDIVIDUAL**
**"PROGRAM SUPPLEMENT" AGREEMENTS FOR VARIOUS FEDERAL-AID PROJECTS**

      **WHEREAS,** on May 3, 2016 the Board of Supervisors approved the "Local Agency – State Agreement for Federal-Aid Projects" Master Agreement No. 04-5927F15 between the County of Marin and the State of California relative to federally funded transportation related projects; and

      **WHEREAS,** Marin County is eligible to receive Federal and/or State funding for certain transportation projects, through the California Department of Transportation; and

      **WHEREAS,** Master Agreements, Program Supplemental Agreements, Fund Exchange Agreements and/or Fund Transfer Agreements need to be executed with the California Department of Transportation before such funds could be claimed.

      **NOW, THEREFORE, BE IT RESOLVED** that Marin County wishes to delegate authorization to execute these agreements and any amendments thereto that the Director of Public Works, or in his/her absence the Chief Assistant Director, Assistant Director, or the Deputy Director of Public Works, is hereby authorized to execute all Master Agreements, Program Supplemental Agreements, Fund Exchange Agreements, Fund Transfer Agreements and/or any amendments thereto with the California Department of Transportation.

      **PASSED AND ADOPTED** at a regular meeting of the Board of Supervisors of the County of Marin held on this 3rd day of May, 2016, by the following vote:

AYES:      SUPERVISORS  Judy Arnold, Katie Rice, Damon Connolly, Kathrin Sears, Steve Kinsey

NOES:      NONE

ABSENT:    NONE

 

_____
PRESIDENT, BOARD OF SUPERVISORS

ATTEST:

_____
DEPUTY CLERK

Resolution No. 2016-37



EXHIBIT B

| PROGRAM SUPPLEMENT NO.  F120 | Adv. Project ID | **Date:** July 11, 2025 |
|---|---|---|
| **to** | 0424000234 | **Location:** 04-MRN-0-CR |
| **ADMINISTERING AGENCY-STATE AGREEMENT** | | **Project Number:** ER-15J9(187) |
| **FOR FEDERAL-AID PROJECTS NO**    04-5927F15 | | **E.A. Number:** |
| | | **Locode:** 5927 |

This Program Supplement hereby adopts and incorporates the Administering Agency-State Agreement for Federal Aid which was entered into between the Administering Agency and the State on 05/24/2016 and is subject to all the terms and conditions thereof. This Program Supplement is executed in accordance with Article I of the aforementioned Master Agreement under authority of Resolution No. ~~2021 82~~ approved by the Administering Agency on ~~9-14-21~~ (See copy attached).

The Administering Agency further stipulates that as a condition to the payment by the State of any funds derived from sources noted below obligated to this PROJECT, the Administering Agency accepts and will comply with the special covenants or remarks set forth on the following pages.

**PROJECT LOCATION:** 340 Highland Ave

**TYPE OF WORK:**    Emergency Opening                                    **LENGTH:** 0.1(MILES)

| Estimated Cost | Federal Funds | | Matching Funds | | |
|---|---|---|---|---|---|
| | ER05    $12,572.14 | LOCAL | | | OTHER |
| $14,201.00 | | $1,628.86 | | | $0.00 |

**COUNTY OF MARIN**

By ~~[signature]~~                    MICHAEL FROST

Title ~~ASSISTANT DIRECTOR~~

Date ~~7-23-25~~

Attest ~~[signature]~~

**STATE OF CALIFORNIA**
**Department of Transportation**

By ~~Bill Huang~~

For: **Chief, Office of Project Management Oversight**
**Division of Local Assistance**

Date    08/05/2025

I hereby certify upon my personal knowledge that budgeted funds are available for this encumbrance:

**Accounting Officer** ~~[signature]~~                    Date    07/15/2025                    $12,572.14

**Program Supplement   04-5927F15-F120- ISTEA**                                    **Page  1   of 8**

## SPECIAL COVENANTS OR REMARKS

1.     A. ADMINISTERING AGENCY agrees that it will only proceed with work authorized for specific phase(s) with an "Authorization to Proceed" and will not proceed with future phase(s) of this project prior to receiving an "Authorization to Proceed" from the STATE for that phase(s) unless no further State or Federal funds are needed for those future phase(s).

    B. STATE and ADMINISTERING AGENCY agree that any additional funds which might be made available by future Federal obligations will be encumbered on this PROJECT by use of a STATE-approved "Authorization to Proceed" and Finance Letter. ADMINISTERING AGENCY agrees that Federal funds available for reimbursement will be limited to the amounts obligated by the Federal Highway Administration.

    C. Award information shall be submitted by the ADMINISTERING AGENCY to the District Local Assistance Engineer within 60 days of project contract award and prior to the submittal of the ADMINISTERING AGENCY'S first invoice for the construction contract.

    Failure to do so will cause a delay in the State processing invoices for the construction phase. Attention is directed to Section 15.7 "Award Package" of the Local Assistance Procedures Manual.

    D. ADMINISTERING AGENCY agrees, as a minimum, to submit invoices at least once every six months commencing after the funds are encumbered for each phase by the execution of this Project Program Supplement Agreement, or by STATE's approval of an applicable Finance Letter. STATE reserves the right to suspend future authorizations/obligations for Federal aid projects, or encumbrances for State funded projects, as well as to suspend invoice payments for any on-going or future project by ADMINISTERING AGENCY if PROJECT costs have not been invoiced by ADMINISTERING AGENCY for a six-month period.

    If no costs have been invoiced for a six-month period, ADMINISTERING AGENCY agrees to submit for each phase a written explanation of the absence of PROJECT activity along with target billing date and target billing amount.

    ADMINISTERING AGENCY agrees to submit the final report documents that collectively constitute a "Report of Expenditures" within one hundred eighty (180) days of PROJECT completion. Failure of ADMINISTERING AGENCY to submit a "Final Report of Expenditures" within 180 days of PROJECT completion will result in STATE imposing sanctions upon ADMINISTERING AGENCY in accordance with the current Local Assistance Procedures Manual.

    E. Administering Agency shall not discriminate on the basis of race, religion, age, disability, color, national origin, or sex in the award and performance of any Federal-assisted contract or in the administration of its DBE Program

**SPECIAL COVENANTS OR REMARKS**

Implementation Agreement. The Administering Agency shall take all necessary and reasonable steps under 49 CFR Part 26 to ensure nondiscrimination in the award and administration of
Federal-assisted contracts. The Administering Agency's DBE Implementation Agreement is incorporated by reference in this Agreement. Implementation of the DBE Implementation Agreement, including but not limited to timely reporting of DBE commitments and utilization, is a legal obligation and failure to carry out its terms shall be treated as a violation of this Agreement. Upon notification to the Administering Agency of its failure to carry out its DBE Implementation Agreement, the State may impose sanctions as provided for under 49 CFR Part 26 and may, in appropriate cases, refer the matter for enforcement under 18 U.S.C. 1001 and/or the Program Fraud Civil Remedies Act of 1986 (31 U.S.C. 3801 et seq.).

F. Any State and Federal funds that may have been encumbered for this project are available for disbursement for limited periods of time. For each fund encumbrance the limited period is from the start of the fiscal year that the specific fund was appropriated within the State Budget Act to the applicable fund Reversion Date shown on the State approved project finance letter. Per Government Code Section 16304, all project funds not liquidated within these periods will revert unless an executed Cooperative Work Agreement extending these dates is requested by the ADMINISTERING AGENCY and approved by the California Department of Finance.

G. The ADMINISTERING AGENCY agrees that payment of Federal funds will be limited to the amounts approved by the Federal Highway Administration (FHWA) in the Federal-Aid Project Authorization/Agreement or Amendment/Modification (E-76) and accepts any resultant increases in ADMINISTERING AGENCY funds as shown on the Finance Letter, any modification thereof as approved by the Division of Local Assistance, Office of Program Management.

ADMINISTERING AGENCY should ensure that invoices are submitted to the District Local Assistance Engineer at least 75 days prior to the applicable fund Reversion Date to avoid the lapse of applicable funds. Pursuant to a directive from the State Controller's Office and the Department of Finance; in order for payment to be made, the last date the District Local Assistance Engineer can forward an invoice for payment to the Department's Local Programs Accounting Office for reimbursable work for funds that are going to revert at the end of a particular fiscal year is May 15th of the particular fiscal year. Notwithstanding the unliquidated sums of project specific State and Federal funding remaining and available to fund project work, any invoice for reimbursement involving applicable funds that is not received by the Department's Local Programs Accounting Office at least 45 days prior to the applicable fixed fund Reversion Date will not be paid. These unexpended funds will be irrevocably reverted by the Department's Division of Accounting on the applicable fund Reversion Date.

**SPECIAL COVENANTS OR REMARKS**

H. "ADMINISTERING AGENCY certifies that neither the ADMINISTERING AGENCY nor its principals are suspended or debarred at the time of the execution of this agreement. ADMINISTERING AGENCY agrees that it will notify the STATE immediately, in the event a suspension or a debarment happened after the execution of this agreement."

I. All project repair, replacement and maintenance involving the physical condition and the operation of project improvements referred to in Article III MAINTENANCE, of the aforementioned Master Agreement will be the responsibility of the ADMINISTERING AGENCY and shall be performed at regular intervals and as required for efficient operation of the completed project improvements.

J. ADMINISTERING AGENCY shall conform to all State statutes, regulations and procedures (including those set forth in the Local Assistance Procedures Manual and the Local Assistance Program Guidelines, hereafter collectively referred to as "LOCAL ASSISTANCE PROCEDURES") relating to the federal-aid program, all Title 23 Code of Federal Regulation (CFR) and 2 CFR Part 200 federal requirements, and all applicable federal laws, regulations, and policy and procedural or instructional memoranda, unless otherwise specifically waived as designated in the executed project-specific PROGRAM SUPPLEMENT.

K. Invoices shall be submitted on ADMINISTERING AGENCY letterhead that includes the address of ADMINISTERING AGENCY and shall be formatted in accordance with LOCAL ASSISTANCE PROCEDURES.

L. ADMINISTERING AGENCY must have at least one copy of supporting backup documentation for costs incurred and claimed for reimbursement by ADMINISTERING AGENCY. ADMINISTERING AGENCY agrees to submit supporting backup documentation with invoices if requested by State. Acceptable backup documentation includes, but is not limited to, agency's progress payment to the contractors, and copies of cancelled checks showing amounts made payable to vendors and contractors, and/or a computerized summary of PROJECT costs.

M. Indirect Cost Allocation Plan/Indirect Cost Rate Proposals (ICAP/ICRP), Central Service Cost Allocation Plans and related documentation are to be prepared and provided to STATE (Caltrans Audits & Investigations) for review and approval prior to ADMINISTERING AGENCY seeking reimbursement of
indirect costs incurred within each fiscal year being claimed for State and federal reimbursement. ICAPs/ICRPs must be prepared in accordance with the requirements set forth in 2 CFR, Part 200, Chapter 5 of the Local Assistance Procedural Manual, and the ICAP/ICRP approval procedures established by STATE.

N. STATE will withhold the greater of either two (2) percent of the total of all federal funds encumbered for each PROGRAM SUPPLEMENT or $40,000 until

**SPECIAL COVENANTS OR REMARKS**

ADMINISTERING AGENCY submits the Final Report of Expenditures for each completed PROGRAM SUPPLEMENT PROJECT.

O. ADMINISTERING AGENCY agrees to comply with 2 CFR, Part 200, Uniform Administrative Requirements, Cost Principles and Audit Requirement for Federal Awards.

P. ADMINISTERING AGENCY agrees, and will assure that its contractors, subcontractors, and will be obligated to agree, that Contract Cost Principles and Procedures, 48 CFR, Federal Acquisition Regulations System, Chapter 1, Part 31, et seq., shall be used to determine the allowability of individual PROJECT cost items.

Q. The work eligible for Federal Reimbursement shall be performed by the ADMINISTERING AGENCY either by using their own forces or by contract. The ADMINISTERING AGENCY must be able to identify the costs incurred at each site and be subject to an audit for verification.

R. Every sub-recipient receiving PROJECT funds under this AGREEMENT shall comply with 2 CFR, Part 200, 23 CFR, 48 CFR Chapter 1, Part 31, Local Assistance Procedures, Public Contract Code (PCC) 10300-10334 (procurement of goods), PCC 10335-10381 (non-A&E services), and other applicable
STATE and FEDERAL regulations.

S. Any PROJECT costs for which ADMINISTERING AGENCY has received payment or credit that are determined by subsequent audit to be unallowable under 2 CFR, Part 200, 23 CFR, 48 CFR, Chapter 1, Part 31, and other applicable STATE and FEDERAL regulations, are subject to repayment by
ADMINISTERING AGENCY to STATE.

T. STATE reserves the right to conduct technical and financial audits of PROJECT WORK and records and ADMINISTERING AGENCY agrees, and shall require its contractors and subcontractors to agree, to cooperate with STATE by making all appropriate and relevant PROJECT records available for audit and copying as required by the following paragraph:

ADMINISTERING AGENCY, ADMINISTERING AGENCY'S contractors and subcontractors, and Federal Agency performing work on behalf of the ADMINISTERING AGENCY, and STATE shall each maintain and make available for inspection and audit by STATE, the California State Auditor, or any duly authorized representative of STATE or the United States all books, documents, papers, accounting records, and other evidence pertaining to the performance of such contracts, including, but not limited to, the costs of administering those various contracts and ADMINISTERING AGENCY shall furnish copies thereof if requested. All of the above referenced parties shall make such AGREEMENT, PROGRAM

## SPECIAL COVENANTS OR REMARKS

SUPPLEMENT, and contract materials available at their respective offices at all reasonable times during the entire PROJECT period and for three (3) years from the date of submission of the final expenditure report by the STATE to the FHWA (a.k.a. Final Voucher).

U. ADMINISTERING AGENCY, its contractors and subcontractors shall establish and maintain a financial
management system and records that properly accumulate and segregate reasonable, allowable, and authorized incurred PROJECT costs and matching funds by line item for the PROJECT. The financial management system of ADMINISTERING AGENCY, its contractors and all subcontractors and shall conform to Generally Accepted Accounting Principles, enable the determination of incurred costs at interim points of completion, and provide support for reimbursement payment vouchers or invoices sent to or paid by STATE.

V. ADMINISTERING AGENCY is required to have an audit in accordance with the Single Audit Act of 2 CFR 200 if it expends $750,000 or more in Federal Funds in a single fiscal year of the Catalogue of Federal Domestic Assistance.

W. ADMINISTERING AGENCY agrees to include all PROGRAM SUPPLEMENTS adopting the terms of this AGREEMENT in the schedule of projects to be examined in ADMINISTERING AGENCY's annual audit and in the schedule of projects to be examined under its single audit prepared in accordance with 2 CFR, Part 200.

X. ADMINISTERING AGENCY shall not award a non-A&E contract over $5,000, construction contracts over $10,000, or other contracts over $25,000 [excluding professional service contracts of the type which are required to be procured in accordance with Government Code sections 4525 (d), (e) and (f)] on the basis of a noncompetitive negotiation for work to be performed under this AGREEMENT without the prior written approval of STATE or as permitted under Emergency Opening procedures.

Y. Any subcontract entered into by ADMINISTERING AGENCY as a result of this AGREEMENT shall contain provisions K, L, P, R, T and U under Section 2 of this agreement.

2.    Appendix E of the Title VI Assurances (US DOT Order 1050.2A)

During the performance of this agreement, the ADMINISTERING AGENCY, ADMINISTERING AGENCY'S contractors and subcontractor, (hereinafter referred to as the "contractor") agrees to comply with the following nondiscrimination statutes and authorities; including but not limited to:

Pertinent Nondiscrimination Authorities:

## SPECIAL COVENANTS OR REMARKS

A. Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq., 78 stat. 252), (prohibits discrimination on the basis of race, color, national origin); and 49 CFR Part 21.

B. The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, (42 U.S.C. 4601), (prohibits unfair treatment of persons displaced or whose property has been acquired because of Federal or Federal-aid programs and projects);

C. Federal-Aid Highway Act of 1973, (23 U.S.C. 324 et seq.), (prohibits discrimination on the basis of sex);

D. Section 504 of the Rehabilitation Act of 1973, (29 U.S.C. 794 et seq.), as amended, (prohibits discrimination on the basis of disability); and 49 CFR Part 27;

E. The Age Discrimination Act of 1975, as amended, (42 U.S.C. 6101 et seq.), (prohibits discrimination on the basis of age);

F. Airport and Airway Improvement Act of 1982, (49 U.S.C. 4 71, Section 4 7123), as amended, (prohibits discrimination based on race, creed, color, national origin, or sex);

G. The Civil Rights Restoration Act of 1987, (PL 100-209), (Broadened the scope, coverage and applicability of Title VI of the Civil Rights Act of 1964, The Age Discrimination Act of 1975 and Section 504 of the Rehabilitation Act of 1973, by expanding the definition of the terms "programs or

activities" to include all of the programs or activities of the Federal-aid recipients, subrecipients and contractors, whether such programs or activities are Federally funded or not);

H. Titles II and III of the Americans with Disabilities Act, which prohibit discrimination on the basis of disability in the operation of public entities, public and private transportation systems, places of public accommodation, and certain testing entities (42 U.S.C. 12131-12189) as implemented by Department of Transportation regulations at 49 C.F.R. parts 37 and 38;

I. The Federal Aviation Administration's Nondiscrimination statute (49 U.S.C. 47123) (prohibits discrimination on the basis of race, color, national origin, and sex);

J. Executive Order 13166, Improving Access to Services for Persons with Limited English Proficiency, and resulting agency guidance, national origin discrimination includes discrimination because of limited English proficiency (LEP). To ensure compliance with Title VI, you must take reasonable steps to ensure that LEP persons have meaningful access to your programs (70 Fed. Reg. at 74087 to 74100);

K. Title IX of the Education Amendments of 1972, as amended, which prohibits you from discriminating because of sex in education programs or activities (20 U.S.C. 1681 et seq).

3.    Disaster No. CA 23-3 (Late February 2023 Winter Storms) - Emergency Opening work will be reimbursed at 100% if completed within 270 days from the date of the disaster.  The disaster occurred on February 21, 2023.  ADMINISTERING AGENCY records must clearly identify those costs incurred on or after February 21, 2023. Incurred costs are defined as disbursements        made        or        in        process        goods        and

**SPECIAL COVENANTS OR REMARKS**

services delivered. Emergency Opening work completed on or after November 18, 2023, will be funded at the federal-aid reimbursement ratio of 88.53%. Restoration work, including preliminary engineering will be reimbursed at an 88.53% ratio. The ADMINISTERING AGENCY will be responsible for the matching requirement.

4.      The ADMINISTERING AGENCY will advertise, award and administer this project in accordance with the current published Local Assistance Procedures Manual.

**RESOLUTION NO.  2021-82**
**RESOLUTION OF THE MARIN COUNTY BOARD OF SUPERVISORS**
**ESTABLISHING THE DIRECTOR OF PUBLIC WORKS OR ASSISTANT DIRECTOR OF**
**PUBLIC WORKS TO EXECUTE VARIOUS AGREEMENTS WITH THE CALIFORNIA**
**DEPARTMENT OF TRANSPORTATION**

**WHEREAS,** the County of Marin is eligible to receive Federal and/or State funding for certain Transportation Projects, through the California Department of Transportation; and

**WHEREAS,** Federal and/or State Master Agreements, Program Supplemental Agreements, Fund Exchange Agreements and/or Fund Transfer Agreements need to be executed with the California Department of Transportation before such funds could be claimed; and

**WHEREAS,** the County of Marin wishes to delegate authorization to execute these agreements and any amendments thereto to the Director of Public Works or Assistant Director of Public Works.

**NOW, THEREFORE, BE IT RESOLVED** that the Director of Public Works or Assistant Director of Public Works be authorized to execute all Master Agreements, Program Supplemental Agreements, Fund Exchange Agreements and any amendments thereto with the California Department of Transportation.

**PASSED AND ADOPTED** at a regular meeting of the Board of Supervisors of the County of Marin held on this 14th day of September 2021, by the following vote:

AYES:        SUPERVISORS   Damon Connolly, Katie Rice, Stephanie Moulton-Peters,
                           Judy Arnold, Dennis Rodoni

NOES:       NONE

ABSENT:    NONE

_____
PRESIDENT, BOARD OF SUPERVISORS

ATTEST:

_____
DEPUTY CLERK

Resolution No. 2021-82

# 15J9187 PSA draft

**Final Audit Report** 2025-08-05

| | |
|---|---|
| Created: | 2025-08-05 |
| By: | James Stanger (s140768@dot.ca.gov) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAZHMIL9CafVay5f9XDy33omqz8Gsn07ol |

## "15J9187 PSA draft" History

📄 Document created by James Stanger (s140768@dot.ca.gov)
2025-08-05 - 5:15:48 PM GMT- IP address: 149.136.17.252

📧 Document emailed to Bill Huang (bill.huang@dot.ca.gov) for signature
2025-08-05 - 5:16:49 PM GMT

🖋 Document e-signed by Bill Huang (bill.huang@dot.ca.gov)
Signature Date: 2025-08-05 - 5:17:08 PM GMT - Time Source: server- IP address: 149.136.17.249

✅ Agreement completed.
2025-08-05 - 5:17:08 PM GMT



Powered by
Adobe
Acrobat Sign



# EXHIBIT C



**THE SECRETARY OF TRANSPORTATION**
WASHINGTON, DC 20590

April 24, 2025

To All Recipients of U.S. Department of Transportation Funding:

The U.S. Department of Transportation (Department or DOT) distributes substantial Federal financial assistance for thousands of projects, programs, and activities operated or initiated by diverse entities, including but not limited to State and local governments. The Department administers this Federal financial assistance to support the development and maintenance of the Nation's transportation infrastructure, pursuant to statutory authority and in accordance with binding contractual agreements in the form of Federal financial assistance agreements, usually grants, cooperative agreements, and loans. Accordingly, I write to clarify and reaffirm pertinent legal requirements, to outline the Department's expectations, and to provide a reminder of your responsibilities and the consequences of noncompliance with Federal law and the terms of your financial assistance agreements. It is the policy of the Department to award and to continue to provide Federal financial assistance only to those recipients who comply with their legal obligations.

As recipients of such DOT funds, you have entered into legally enforceable agreements with the United States Government and are obligated to comply fully with all applicable Federal laws and regulations. These laws and regulations include the United States Constitution, Federal statutes, applicable rules, and public policy requirements, including, among others, those protecting free speech and religious liberty and those prohibiting discrimination and enforcing controls on illegal immigration. As Secretary of Transportation, I am responsible for ensuring recipients of DOT financial assistance are aware of and comply with all applicable legal obligations.

The Equal Protection principles of the Constitution prohibit State and Federal governmental entities from discriminating on the basis of protected characteristics, including race. Indeed, as the Supreme Court declared in *Students for Fair Admission, Inc. v. Harvard (SFFA)*, 600 U.S. 181, 206 (2023), "[t]he clear and central purpose of the Fourteenth Amendment was to eliminate all official state sources of invidious racial discrimination in the States." The Court further noted that "[o]ne of the principal reasons race is treated as a forbidden classification is that it demeans the dignity and worth of a person to be judged by ancestry instead of by his or her own merit and essential qualities." *Id.* at 220. In ruling that race-based admissions programs at universities violated the Equal Protection Clause, the Court made clear that discrimination based on race is, has been, and will continue to be unlawful, except in rare circumstances. *Id.* at 220-21. Similarly, sex-based classifications violate the Equal Protection Clause absent "exceedingly persuasive" justification. *See United States v. Virginia*, 518 U.S. 515, 533 (1996).

These constitutional principles are reinforced by the Civil Rights Act of 1964, which prohibits discrimination based on protected characteristics in the Federal funding and employment contexts in Title VI (42 U.S.C. § 2000d *et seq*.) and Title VII (42 U.S.C. § 2000e-2), as well as the applicable non-discrimination clauses in the Federal Aid Highway Act of 1973 (23 U.S.C. §§ 140 and 324 *et seq*.), the Airport and Airway Improvement Act of 1982, (49 U.S.C. § 47123), and Title IX of the Education Amendments of 1972, as amended (20 U.S.C. § 1681 *et seq*.).

Based on binding Supreme Court precedent and these Federal laws, DOT is prohibited from discriminating based on race, color, national origin, sex, or religion in any of its programs or activities. Moreover, because DOT may not establish, induce, or endorse prohibited discrimination indirectly,[1] it must ensure that discrimination based on race, color, national origin, sex, or religion does not exist in the programs or activities it funds or financially assists.

These same principles apply to recipients of Federal financial assistance from DOT, as both a matter of Federal law and by virtue of contractual provisions governing receipt of DOT funding. Accordingly, DOT recipients are prohibited from engaging in discriminatory actions in their own policies, programs, and activities, including in administering contracts, and their employment practices.

Whether or not described in neutral terms, any policy, program, or activity that is premised on a prohibited classification, including discriminatory policies or practices designed to achieve so-called "diversity, equity, and inclusion," or "DEI," goals, presumptively violates Federal law. Recipients of DOT financial assistance must ensure that the personnel practices (including hiring, promotions, and terminations) within their organizations are merit-based and do not discriminate based on prohibited categories. Recipients are also precluded from allocating money received under DOT awards—such as through contracts or the provision of other benefits—based on suspect classifications. Any discriminatory actions in your policies, programs, and activities based on prohibited categories constitute a clear violation of Federal law and the terms of your grant agreements.

In addition, your legal obligations require cooperation generally with Federal authorities in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law. DOT has noted reported instances where some recipients of Federal financial assistance have declined to cooperate with ICE investigations, have issued driver's licenses to individuals present in the United States in violation of Federal immigration law, or have otherwise acted in a manner that impedes Federal law enforcement. Such actions undermine Federal sovereignty in the enforcement of immigration law, compromise the safety and security of the transportation systems supported by DOT

---

[1] *See SFFA*, 600 U.S. at 230; Norwood v. Harrison, 413 U.S. 455, 465 (1973).

financial assistance, and prioritize illegal aliens over the safety and welfare of the American people whose Federal taxes fund DOT's financial assistance programs.

Under the Constitution, Federal law is "the supreme Law of the Land." U.S. Const. Art. VI. That means that where Federal and State legal requirements conflict, States and State entities must follow Federal law. Declining to cooperate with the enforcement of Federal immigration law or otherwise taking action intended to shield illegal aliens from ICE detection contravenes Federal law and may give rise to civil and criminal liability. *See* 8 U.S.C. § 1324 and 8 U.S.C. § 1373. Accordingly, DOT expects its recipients to comply with Federal law enforcement directives and to cooperate with Federal officials in the enforcement of Federal immigration law. The Department also expects its recipients to ensure that the Federal financial assistance they receive from DOT is provided only to subrecipients, businesses, or service providers that are U.S. Citizens or U.S. Nationals and Lawful Permanent Residents (LPRs) or legal entities allowed to do business in the U.S. and which do not employ illegal aliens.

This letter provides notice of the Department's existing interpretation of Federal law. The Department will vigorously enforce the law on equal terms as to all its recipients and intends to take appropriate measures to assess their compliance based on the interpretation of Federal law set forth in this letter. Adherence to your legal obligations is a prerequisite for receipt of DOT financial assistance. Noncompliance with applicable Federal laws, or failure to cooperate generally with Federal authorities in the enforcement of Federal law, will jeopardize your continued receipt of Federal financial assistance from DOT and could lead to a loss of Federal funding from DOT.

The Department retains authority, pursuant to its oversight responsibilities and the terms of your agreements, to initiate enforcement actions, such as comprehensive audits and possible recovery of funds expended in a manner contrary to the terms of the funding agreement. DOT may also terminate funding in response to substantiated breaches of the terms of the agreement, or if DOT determines that continued funding is no longer in the public interest. These steps, within DOT's discretion, are intended to ensure accountability and protect the integrity of Federal programs.

To assist grant recipients in meeting their legal obligations, DOT offers technical guidance and support through its program offices. Should you require clarification regarding your obligations, you are encouraged to contact your designated DOT representative promptly. Proactive engagement is strongly advised to prevent inadvertent noncompliance.

DOT remains committed to advancing a transportation system that serves the public interest efficiently and unleashes economic prosperity and a superior quality of life for American families. This mission depends upon your strict adherence to the legal framework governing our partnership, and I trust you will take all necessary steps to comply with Federal law and satisfy your legal obligations.

Sincerely,

Sean P. Duffy



EXHIBIT D

3-06-0167-030-2022

 **U.S. Department
of Transportation
Federal Aviation
Administration**

**Airports Division
Western-Pacific Region
California**

**San Francisco Airports
District Office:
1000 Marina Blvd, Ste 115
Brisbane, CA 94005-1863**

August 31, 2022

Mr. Daniel Jensen
Airport Manager
County of Marin
451-A Airport Road
Novato, CA 94945

Dear Mr. Jensen:

The Grant Offer for Airport Improvement Program (AIP) Project No. 3-06-0167-030-2022 at Gnoss Field Airport is attached to execution. This letter outlines the steps you must take to properly enter into this agreement and provides other useful information. Please read the conditions, special conditions, and assurances that comprise the grant offer carefully.

**You may not make any modification to the text, terms or conditions of the grant offer.**

***Steps You Must Take to Enter Into Agreement.***

To properly enter into this agreement, you must do the following:

1. The governing body must give authority to execute the grant to the individual(s) signing the grant, i.e., the person signing the document must be the sponsor's authorized representative(s) (hereinafter "authorized representative").

2. The authorized representative must execute the grant by adding their electronic signature to the appropriate certificate at the end of the agreement.

3. Once the authorized representative has electronically signed the grant, the sponsor's attorney(s) will automatically receive an email notification.

4. On the **same day or after** the authorized representative has signed the grant, the sponsor's attorney(s) will add their electronic signature to the appropriate certificate at the end of the agreement.

5. If there are co-sponsors, the authorized representative(s) and sponsor's attorney(s) must follow the above procedures to fully execute the grant and finalize the process. Signatures must be obtained and finalized no later than <mark>September 12, 2022.</mark>

6. The fully executed grant will then be automatically sent to all parties as an email attachment.

***Payment.*** Subject to the requirements in 2 CFR § 200.305 (Federal Payment), each payment request for reimbursement under this grant must be made electronically via the Delphi eInvoicing System. Please see the attached Grant Agreement for more information regarding the use of this System.

***Project Timing.*** The terms and conditions of this agreement require you to complete the project without undue delay and no later than the Period of Performance end date (1,460 days from the grant execution

1

date). We will be monitoring your progress to ensure proper stewardship of these Federal funds. <u>We expect you to submit payment requests for reimbursement of allowable incurred project expenses consistent with project progress.</u> Your grant may be placed in "inactive" status if you do not make draws on a regular basis, which will affect your ability to receive future grant offers. Costs incurred after the Period of Performance ends are generally not allowable and will be rejected unless authorized by the FAA in advance.

***Reporting.*** Until the grant is completed and closed, you are responsible for submitting formal reports as follows:

- For all grants, you must submit by December 31st of each year this grant is open:

    1. A signed/dated SF-270 (Request for Advance or Reimbursement for non-construction projects) or SF-271 or equivalent (Outlay Report and Request for Reimbursement for Construction Programs), and

    2. An SF-425 (Federal Financial Report).

- For non-construction projects, you must submit FAA Form 5100-140, Performance Report within 30 days of the end of the Federal fiscal year.

- For construction projects, you must submit FAA Form 5370-1, Construction Progress and Inspection Report, within 30 days of the end of each Federal fiscal quarter.

***Audit Requirements.*** As a condition of receiving Federal assistance under this award, you must comply with audit requirements as established under 2 CFR part 200. Subpart F requires non-Federal entities that expend <u>$750,000 or more in Federal awards</u> to conduct a single or program specific audit for that year. Note that this includes Federal expenditures made under other Federal-assistance programs. Please take appropriate and necessary action to ensure your organization will comply with applicable audit requirements and standards.

***Closeout.*** Once the project(s) is completed and all costs are determined, we ask that you work with your FAA contact indicated below to close the project without delay and submit the necessary final closeout documentation as required by your Region/Airports District Office.

***FAA Contact Information.*** Barry Franklin, (405) 666-1067, barry.franklin@faa.gov is the assigned program manager for this grant and is readily available to assist you and your designated representative with the requirements stated herein.

We sincerely value your cooperation in these efforts and look forward to working with you to complete this important project.

Sincerely,

*Amy Choi for Laurie J. Suttmeier*
Amy Choi for Laurie J. Suttmeier (Aug 31, 2022 08:51 PDT)


Laurie J. Suttmeier
Manager



**U.S. Department
of Transportation
Federal Aviation
Administration**

## FAA Airport Improvement Program (AIP)

## GRANT AGREEMENT
### Part I - Offer

---

| | |
|---|---|
| Federal Award Offer Date | August 31, 2022 |
| Airport/Planning Area | Gnoss Field Airport |
| FY2022 AIP Grant Number | 3-06-0167-030-2022 |
| Unique Entity Identifier | CM95BHCK27S8 |

TO:   County of Marin

**(herein called the "Sponsor")**

FROM:   **The United States of America** (acting through the Federal Aviation Administration, herein called the "FAA")

**WHEREAS**, the Sponsor has submitted to the FAA a Project Application dated August 8, 2022, for a grant of Federal funds for a project at or associated with the Gnoss Field Airport, which is included as part of this Grant Agreement; and

**WHEREAS**, the FAA has approved a project for the Gnoss Field Airport (herein called the "Project") consisting of the following:

25% Design, Environmental Mitigation and Permit Applications

which is more fully described in the Project Application.

**NOW THEREFORE**, Pursuant to and for the purpose of carrying out the Title 49, United States Code (U.S.C.), Chapters 471 and 475; 49 U.S.C. §§ 40101 et seq., and 48103; FAA Reauthorization Act of 2018 (Public Law Number 115-254); the Department of Transportation Appropriations Act, 2021 (Public Law 116-260, Division L); the Consolidated Appropriations Act, 2022 (Public Law 117-103); and the representations contained in the Project Application; and in consideration of: (a) the Sponsor's adoption and ratification of the Grant Assurances attached hereto; (b) the Sponsor's acceptance of this Offer; and (c) the benefits to accrue to the United States and the public from the accomplishment of the Project and compliance with the Grant Assurance and conditions as herein provided;

3-06-0167-030-2022

**THE FEDERAL AVIATION ADMINISTRATION, FOR AND ON BEHALF OF THE UNITED STATES, HEREBY OFFERS AND AGREES to pay ninety (90) percent of the allowable costs incurred accomplishing the Project as the United States share of the Project.**

**Assistance Listings Number (Formerly CFDA Number): 20.106**

**This Offer is made on and SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS**:

## CONDITIONS

1. **Maximum Obligation.** The maximum obligation of the United States payable under this Offer is $900,000.

   The following amounts represent a breakdown of the maximum obligation for the purpose of establishing allowable amounts for any future grant amendment, which may increase the foregoing maximum obligation of the United States under the provisions of 49 U.S.C. § 47108(b):
   $ 0 for planning
   $ 900,000 airport development or noise program implementation; and,
   $ 0 for land acquisition.

2. **Grant Performance.** This Grant Agreement is subject to the following Federal award requirements:

   a. Period of Performance:

      1. Shall start on the date the Sponsor formally accepts this Agreement and is the date signed by the last Sponsor signatory to the Agreement. The end date of the Period of Performance is 4 years (1,460 calendar days) from the date of acceptance. The Period of Performance end date shall not affect, relieve, or reduce Sponsor obligations and assurances that extend beyond the closeout of this Grant Agreement.

      2. Means the total estimated time interval between the start of an initial Federal award and the planned end date, which may include one or more funded portions or budget periods. (2 Code of Federal Regulations (CFR) § 200.1).

   b. Budget Period:

      1. For this Grant is 4 years (1,460 calendar days) and follows the same start and end date as the period of performance provided in paragraph (2)(a)(1). Pursuant to 2 CFR § 200.403(h), the Sponsor may charge to the Grant only allowable costs incurred during the Budget Period.

      2. Means the time interval from the start date of a funded portion of an award to the end date of that funded portion during which the Sponsor is authorized to expend the funds awarded, including any funds carried forward or other revisions pursuant to 2 CFR § 200.308.

   c. Close Out and Termination

      1. Unless the FAA authorizes a written extension, the Sponsor must submit all Grant closeout documentation and liquidate (pay-off) all obligations incurred under this award no later than 120 calendar days after the end date of the period of performance. If the Sponsor does not submit all required closeout documentation within this time period, the FAA will proceed to close out the grant within one year of the period of performance end date with the information available at the end of 120 days. (2 CFR § 200.344).

2. The FAA may terminate this Grant, in whole or in part, in accordance with the conditions set forth in 2 CFR § 200.340, or other Federal regulatory or statutory authorities as applicable.

3. **Ineligible or Unallowable Costs.** The Sponsor must not include any costs in the project that the FAA has determined to be ineligible or unallowable.

4. **Indirect Costs - Sponsor.** The Sponsor may charge indirect costs under this award by applying the indirect cost rate identified in the project application as accepted by the FAA, to allowable costs for Sponsor direct salaries and wages.

5. **Determining the Final Federal Share of Costs.** The United States' share of allowable project costs will be made in accordance with 49 U.S.C. § 47109, the regulations, policies, and procedures of the Secretary of Transportation ("Secretary"), and any superseding legislation. Final determination of the United States' share will be based upon the final audit of the total amount of allowable project costs and settlement will be made for any upward or downward adjustments to the Federal share of costs.

6. **Completing the Project Without Delay and in Conformance with Requirements.** The Sponsor must carry out and complete the project without undue delays and in accordance with this Agreement, 49 U.S.C. Chapters 471 and 475, and the regulations, and the Secretary's policies and procedures. Per 2 CFR § 200.308, the Sponsor agrees to report and request prior FAA approval for any disengagement from performing the project that exceeds three months or a 25 percent reduction in time devoted to the project. The report must include a reason for the project stoppage. The Sponsor also agrees to comply with the grant assurances, which are part of this Agreement.

7. **Amendments or Withdrawals before Grant Acceptance.** The FAA reserves the right to amend or withdraw this offer at any time prior to its acceptance by the Sponsor.

8. **Offer Expiration Date.** This offer will expire and the United States will not be obligated to pay any part of the costs of the project unless this offer has been accepted by the Sponsor on or before September 12, 2022, or such subsequent date as may be prescribed in writing by the FAA.

9. **Improper Use of Federal Funds.** The Sponsor must take all steps, including litigation if necessary, to recover Federal funds spent fraudulently, wastefully, or in violation of Federal antitrust statutes, or misused in any other manner for any project upon which Federal funds have been expended. For the purposes of this Grant Agreement, the term "Federal funds" means funds however used or dispersed by the Sponsor, that were originally paid pursuant to this or any other Federal grant agreement. The Sponsor must obtain the approval of the Secretary as to any determination of the amount of the Federal share of such funds. The Sponsor must return the recovered Federal share, including funds recovered by settlement, order, or judgment, to the Secretary. The Sponsor must furnish to the Secretary, upon request, all documents and records pertaining to the determination of the amount of the Federal share or to any settlement, litigation, negotiation, or other efforts taken to recover such funds. All settlements or other final positions of the Sponsor, in court or otherwise, involving the recovery of such Federal share require advance approval by the Secretary.

10. **United States Not Liable for Damage or Injury.** The United States is not responsible or liable for damage to property or injury to persons which may arise from, or be incident to, compliance with this Grant Agreement.

11. **System for Award Management (SAM) Registration and Unique Entity Identifier (UEI).**

a. Requirement for System for Award Management (SAM): Unless the Sponsor is exempted from this requirement under 2 CFR § 25.110, the Sponsor must maintain the currency of its information in the SAM until the Sponsor submits the final financial report required under this Grant, or receives the final payment, whichever is later. This requires that the Sponsor review and update the information at least annually after the initial registration and more frequently if required by changes in information or another award term. Additional information about registration procedures may be found at the SAM website (currently at http://www.sam.gov).

b. Unique entity identifier (UEI) means a 12-character alpha-numeric value used to identify a specific commercial, nonprofit or governmental entity. A UEI may be obtained from SAM.gov at https://sam.gov/content/entity-registration.

12. **Electronic Grant Payment(s).** Unless otherwise directed by the FAA, the Sponsor must make each payment request under this Agreement electronically via the Delphi eInvoicing System for Department of Transportation (DOT) Financial Assistance Awardees.

13. **Informal Letter Amendment of AIP Projects.** If, during the life of the project, the FAA determines that the maximum grant obligation of the United States exceeds the expected needs of the Sponsor by $25,000 or five percent (5%), whichever is greater, the FAA can issue a letter amendment to the Sponsor unilaterally reducing the maximum obligation.

The FAA can also issue a letter to the Sponsor increasing the maximum obligation if there is an overrun in the total actual eligible and allowable project costs to cover the amount of the overrun provided it will not exceed the statutory limitations for grant amendments. The FAA's authority to increase the maximum obligation does not apply to the "planning" component of Condition No. 1, Maximum Obligation.

The FAA can also issue an informal letter amendment that modifies the grant description to correct administrative errors or to delete work items if the FAA finds it advantageous and in the best interests of the United States.

An informal letter amendment has the same force and effect as a formal grant amendment.

14. **Air and Water Quality.** The Sponsor is required to comply with all applicable air and water quality standards for all projects in this grant. If the Sponsor fails to comply with this requirement, the FAA may suspend, cancel, or terminate this Grant Agreement.

15. **Financial Reporting and Payment Requirements.** The Sponsor will comply with all Federal financial reporting requirements and payment requirements, including submittal of timely and accurate reports.

16. **Buy American.** Unless otherwise approved in advance by the FAA, in accordance with 49 U.S.C. § 50101, the Sponsor will not acquire or permit any contractor or subcontractor to acquire any steel or manufactured products produced outside the United States to be used for any project for which funds are provided under this grant. The Sponsor will include a provision implementing Buy American in every contract and subcontract awarded under this Grant.

17. **Build America, Buy America.** The sponsor must comply with the requirements under the Build America, Buy America Act (Public Law 117-58).

18. **Maximum Obligation Increase.** In accordance with 49 U.S.C. § 47108(b)(3), as amended, the maximum obligation of the United States, as stated in Condition No. 1, Maximum Obligation, of this Grant Offer:

a.  May not be increased for a planning project;

b.  May be increased by not more than 15 percent for development projects if funds are available;

c.  May be increased by not more than the greater of the following for a land project, if funds are available:

  1.  15 percent; or

  2.  25 percent of the total increase in allowable project costs attributable to acquiring an interest in the land.

If the sponsor requests an increase, any eligible increase in funding will be subject to the United States Government share as provided in 49 U.S.C. § 47110, or other superseding legislation if applicable, for the fiscal year appropriation with which the increase is funded. The FAA is not responsible for the same Federal share provided herein for any amount increased over the initial grant amount. The FAA may adjust the Federal share as applicable through an informal letter of amendment.

19. **Audits for Sponsors.**

PUBLIC SPONSORS. The Sponsor must provide for a Single Audit or program-specific audit in accordance with 2 CFR Part 200. The Sponsor must submit the audit reporting package to the Federal Audit Clearinghouse on the Federal Audit Clearinghouse's Internet Data Entry System at http://harvester.census.gov/facweb/. Upon request of the FAA, the Sponsor shall provide one copy of the completed audit to the FAA. Sponsors that expend less than $750,000 in Federal awards and are exempt from Federal audit requirements must make records available for review or audit by the appropriate Federal agency officials, State, and Government Accountability Office. The FAA and other appropriate Federal agencies may request additional information to meet all Federal audit requirements.

20. **Suspension or Debarment.** When entering into a "covered transaction" as defined by 2 CFR § 180.200, the Sponsor must:

a.  Verify the non-Federal entity is eligible to participate in this Federal program by:

  1.  Checking the excluded parties list system (EPLS) as maintained within the System for Award Management (SAM) to determine if the non-Federal entity is excluded or disqualified; or

  2.  Collecting a certification statement from the non-Federal entity attesting they are not excluded or disqualified from participating; or

  3.  Adding a clause or condition to covered transactions attesting the individual or firm are not excluded or disqualified from participating.

b.  Require prime contractors to comply with 2 CFR § 180.330 when entering into lower-tier transactions (e.g., Sub-contracts).

c.  Immediately disclose in writing to the FAA whenever (1) the Sponsor learns they have entered into a covered transaction with an ineligible entity or (2) the Public Sponsor suspends or debars a contractor, person, or entity.

21. **Ban on Texting While Driving.**

a.  In accordance with Executive Order 13513, Federal Leadership on Reducing Text Messaging While Driving, October 1, 2009, and DOT Order 3902.10, Text Messaging While Driving, December 30, 2009, the Sponsor is encouraged to:

　　1.  Adopt and enforce workplace safety policies to decrease crashes caused by distracted drivers including policies to ban text messaging while driving when performing any work for, or on behalf of, the Federal government, including work relating to a grant or subgrant.

　　2.  Conduct workplace safety initiatives in a manner commensurate with the size of the business, such as:

　　　　a.  Establishment of new rules and programs or re-evaluation of existing programs to prohibit text messaging while driving; and

　　　　b.  Education, awareness, and other outreach to employees about the safety risks associated with texting while driving.

b.  The Sponsor must insert the substance of this clause on banning texting while driving in all subgrants, contracts, and subcontracts funded with this Grant.

22.  **Trafficking in Persons.**

a.  You as the recipient, your employees, subrecipients under this Grant, and subrecipients' employees may not:

　　1.  Engage in severe forms of trafficking in persons during the period of time that the Grant and applicable conditions are in effect;

　　2.  Procure a commercial sex act during the period of time that the Grant and applicable conditions are in effect; or

　　3.  Use forced labor in the performance of the Grant or any subgrants under this Grant.

b.  We as the Federal awarding agency, may unilaterally terminate this Grant, without penalty, if you or a subrecipient that is a private entity:

　　1.  Is determined to have violated a prohibition in paragraph (a) of this condition; or

　　2.  Has an employee who is determined by the agency official authorized to terminate the Grant to have violated a prohibition in paragraph (a) of this Condition through conduct that is either –

　　　　a.  Associated with performance under this Grant; or

　　　　b.  Imputed to the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR Part 180, OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement), as implemented by our agency at 2 CFR Part 1200.

c.  You must inform us immediately of any information you receive from any source alleging a violation of a prohibition in paragraph (a) of this Condition.

d.  Our right to terminate unilaterally that is described in paragraph (a) of this Condition:

　　1.  Implements section 106(g) of the Trafficking Victims Protection Act of 2000 (TVPA), as amended (22 U.S.C. § 7104(g)), and

2.  Is in addition to all other remedies for noncompliance that are available to us under this Grant Agreement.

23. **AIP Funded Work Included in a PFC Application.** Within 90 days of acceptance of this Grant Agreement, the Sponsor must submit to the FAA an amendment to any approved Passenger Facility Charge (PFC) application that contains an approved PFC project also covered under this Grant Agreement as described in the project application. The airport sponsor may not make any expenditure under this Grant Agreement until project work addressed under this Grant Agreement is removed from an approved PFC application by amendment.

24. **Exhibit "A" Property Map.** The Exhibit "A" Property Map dated 04/14/2000, is incorporated herein by reference or is submitted with the project application and made part of this Grant Agreement.

25. **Employee Protection from Reprisal.**

a.  Prohibition of Reprisals

1.  In accordance with 41 U.S.C. § 4712, an employee of a Sponsor, grantee, subgrantee, contractor, or subcontractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in sub-paragraph (a)(2) below, information that the employee reasonably believes is evidence of:

    i.  Gross mismanagement of a Federal grant;
    ii.  Gross waste of Federal funds;
    iii.  An abuse of authority relating to implementation or use of Federal funds;
    iv.  A substantial and specific danger to public health or safety; or
    v.  A violation of law, rule, or regulation related to a Federal grant.

2.  Persons and bodies covered. The persons and bodies to which a disclosure by an employee is covered are as follows:

    i.  A member of Congress or a representative of a committee of Congress;
    ii.  An Inspector General;
    iii.  The Government Accountability Office;
    iv.  A Federal employee responsible for contract or grant oversight or management at the relevant agency;
    v.  A court or grand jury;
    vi.  A management official or other employee of the Sponsor, contractor, or subcontractor who has the responsibility to investigate, discover, or address misconduct; or
    vii.  An authorized official of the Department of Justice or other law enforcement agency.

3.  Submission of Complaint. A person who believes that they have been subjected to a reprisal prohibited by paragraph (a) of this Condition may submit a complaint regarding the reprisal to the Office of Inspector General (OIG) for the U.S. Department of Transportation.

4.  Time Limitation for Submittal of a Complaint. A complaint may not be brought under this subsection more than three years after the date on which the alleged reprisal took place.

5.  Required Actions of the Inspector General. Actions, limitations, and exceptions of the Inspector General's office are established under 41 U.S.C. § 4712(b).

6.  Assumption of Rights to Civil Remedy. Upon receipt of an explanation of a decision not to conduct or continue an investigation by the OIG, the person submitting a complaint assumes the right to a civil remedy under 41 U.S.C. § 4712(c)(2).

## SPECIAL CONDITIONS

26. **Preliminary Engineering.** This Phase 1 Grant is being issued in order to to obtain preliminary designs, environmental mitigation, and permit applications.

    The Sponsor understands and agrees that within two (2) years from the execution of this Grant Agreement that the Sponsor will accept a grant to complete the final design phase for the Project identified in the Airport Capital Improvement Plan, subject to the availability of Federal funding. The Sponsor further understands that if the FAA has provided Federal funding to complete the final design for the Project, and the Sponsor has not completed the final design within four (4) years from the execution of this Grant Agreement, the FAA may suspend or terminate grants related to the design.

27. **Buy American Executive Orders.** The Sponsor agrees to abide by applicable Executive Orders in effect at the time this Grant Agreement is executed, including Executive Order 14005, Ensuring the Future Is Made in All of America by All of America's Workers.

3-06-0167-030-2022

The Sponsor's acceptance of this Offer and ratification and adoption of the Project Application incorporated herein shall be evidenced by execution of this instrument by the Sponsor, as hereinafter provided, and this Offer and Acceptance shall comprise a Grant Agreement, constituting the contractual obligations and rights of the United States and the Sponsor with respect to the accomplishment of the Project and compliance with the Grant Assurances, terms, and conditions as provided herein. Such Grant Agreement shall become effective upon the Sponsor's acceptance of this Offer.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[1]

UNITED STATES OF AMERICA
FEDERAL AVIATION ADMINISTRATION

*Amy Choi for Laurie J. Suttmeier*
Amy Choi for Laurie J. Suttmeier (Aug 31, 2022 08:51 PDT)

*(Signature)*

Amy Choi for Laurie J. Suttmeier

*(Typed Name)*

Assistant Manager SFO ADO

*(Title of FAA Official)*

---

[1] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

## Part II - Acceptance

The Sponsor does hereby ratify and adopt all assurances, statements, representations, warranties, covenants, and agreements contained in the Project Application and incorporated materials referred to in the foregoing Offer, and does hereby accept this Offer and by such acceptance agrees to comply with all of the Grant Assurances, terms, and conditions in this Offer and in the Project Application.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[2]

Dated  August 31, 2022
_____

                                        County of Marin
                            _____
                                        *(Name of Sponsor)*

                                        *Pauletta Jordan*
                            _____
                                        *(Signature of Sponsor's Authorized Official)*

                    **By:**  Pauletta Jordan
                            _____
                                        *(Typed Name of Sponsor's Authorized Official)*

                    **Title:**  Assistant Director, Public Works
                            _____
                                        *(Title of Sponsor's Authorized Official)*

---

[2] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

## CERTIFICATE OF SPONSOR'S ATTORNEY

I, Jenna Brady                              , acting as Attorney for the Sponsor do hereby certify:

That in my opinion the Sponsor is empowered to enter into the foregoing Grant Agreement under the laws of the State of ___California___ . Further, I have examined the foregoing Grant Agreement and the actions taken by said Sponsor and Sponsor's official representative, who has been duly authorized to execute this Grant Agreement, which is in all respects due and proper and in accordance with the laws of the said State; and Title 49, United States Code (U.S.C.), Chapters 471 and 475; 49 U.S.C. §§ 40101 et seq., and 48103; FAA Reauthorization Act of 2018 (Public Law Number 115-254); the Department of Transportation Appropriations Act, 2021 (Public Law 116-260, Division L); the Consolidated Appropriations Act, 2022 (Public Law 117-103); and the representations contained in the Project Application. In addition, for grants involving projects to be carried out on property not owned by the Sponsor, there are no legal impediments that will prevent full performance by the Sponsor. Further, it is my opinion the said Grant Agreement constitutes a legal and binding obligation of the Sponsor in accordance with the terms thereof.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[3]

Dated at ___September 3, 2022___

By: *Jenna Brady*
Jenna Brady (Sep 3, 2022 07:21 PDT)

*(Signature of Sponsor's Attorney)*

---

[3] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

13

## ASSURANCES
### AIRPORT SPONSORS

**A. General.**

1. These assurances shall be complied with in the performance of grant agreements for airport development, airport planning, and noise compatibility program grants for airport sponsors.

2. These assurances are required to be submitted as part of the project application by sponsors requesting funds under the provisions of Title 49, U.S.C., subtitle VII, as amended. As used herein, the term "public agency sponsor" means a public agency with control of a public-use airport; the term "private sponsor" means a private owner of a public-use airport; and the term "sponsor" includes both public agency sponsors and private sponsors.

3. Upon acceptance of this grant offer by the sponsor, these assurances are incorporated in and become part of this Grant Agreement.

**B. Duration and Applicability.**

1. **Airport development or Noise Compatibility Program Projects Undertaken by a Public Agency Sponsor.**

   The terms, conditions and assurances of this Grant Agreement shall remain in full force and effect throughout the useful life of the facilities developed or equipment acquired for an airport development or noise compatibility program project, or throughout the useful life of the project items installed within a facility under a noise compatibility program project, but in any event not to exceed twenty (20) years from the date of acceptance of a grant offer of Federal funds for the project. However, there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport. There shall be no limit on the duration of the terms, conditions, and assurances with respect to real property acquired with federal funds. Furthermore, the duration of the Civil Rights assurance shall be specified in the assurances.

2. **Airport Development or Noise Compatibility Projects Undertaken by a Private Sponsor.**

   The preceding paragraph (1) also applies to a private sponsor except that the useful life of project items installed within a facility or the useful life of the facilities developed or equipment acquired under an airport development or noise compatibility program project shall be no less than ten (10) years from the date of acceptance of Federal aid for the project.

3. **Airport Planning Undertaken by a Sponsor.**

   Unless otherwise specified in this Grant Agreement, only Assurances 1, 2, 3, 5, 6, 13, 18, 23, 25, 30, 32, 33, 34, and 37 in Section C apply to planning projects. The terms, conditions, and assurances of this Grant Agreement shall remain in full force and effect during the life of the project; there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport.

**C. Sponsor Certification.**

The sponsor hereby assures and certifies, with respect to this grant that:

1.  **General Federal Requirements**

It will comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds for this Grant including but not limited to the following:

### FEDERAL LEGISLATION

a.  49, U.S.C., subtitle VII, as amended.

b.  Davis-Bacon Act, as amended — 40 U.S.C. §§ 3141-3144, 3146, and 3147, et seq.[1]

c.  Federal Fair Labor Standards Act - 29 U.S.C. § 201, et seq.

d.  Hatch Act – 5 U.S.C. § 1501, et seq.[2]

e.  Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601, et seq.[1], [2]

f.  National Historic Preservation Act of 1966 – Section 106 - 54 U.S.C. § 306108.1.[1]

g.  Archeological and Historic Preservation Act of 1974 - 54 U.S.C. § 312501, et seq.[1]

h.  Native Americans Grave Repatriation Act - 25 U.S.C. Section § 3001, et seq.

i.  Clean Air Act, P.L. 90-148, as amended - 42 U.S.C. § 7401, et seq.

j.  Coastal Zone Management Act, P.L. 92-583, as amended - 16 U.S.C. § 1451, et seq.

k.  Flood Disaster Protection Act of 1973 – Section 102(a) - 42 U.S.C. § 4012a.[1]

l.  49 U.S.C. § 303, (formerly known as Section 4(f)).

m.  Rehabilitation Act of 1973 - 29 U.S.C. § 794.

n.  Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq., 78 stat. 252) (prohibits discrimination on the basis of race, color, national origin).

o.  Americans with Disabilities Act of 1990, as amended, (42 U.S.C. § 12101 et seq.) (prohibits discrimination on the basis of disability).

p.  Age Discrimination Act of 1975 - 42 U.S.C. § 6101, et seq.

q.  American Indian Religious Freedom Act, P.L. 95-341, as amended.

r.  Architectural Barriers Act of 1968, as amended - 42 U.S.C. § 4151, et seq.[1]

s.  Powerplant and Industrial Fuel Use Act of 1978 – Section 403 - 42 U.S.C. § 8373.[1]

t.  Contract Work Hours and Safety Standards Act - 40 U.S.C. § 3701, et seq.[1]

u.  Copeland Anti-kickback Act - 18 U.S.C. § 874.[1]

v.  National Environmental Policy Act of 1969 - 42 U.S.C. § 4321, et seq.[1]

w.  Wild and Scenic Rivers Act, P.L. 90-542, as amended – 16 U.S.C. § 1271, et seq.

x.  Single Audit Act of 1984 - 31 U.S.C. § 7501, et seq.[2]

y.  Drug-Free Workplace Act of 1988 - 41 U.S.C. §§ 8101 through 8105.

z.  The Federal Funding Accountability and Transparency Act of 2006, as amended (P.L. 109-282, as amended by section 6202 of P.L. 110-252).

aa.  Civil Rights Restoration Act of 1987, P.L. 100-259.

bb.  Build America, Buy America Act, P.L. 117-58, Title IX.

## EXECUTIVE ORDERS

a.  Executive Order 11246 – Equal Employment Opportunity[1]

b.  Executive Order 11990 – Protection of Wetlands

c.  Executive Order 11998 – Flood Plain Management

d.  Executive Order 12372 – Intergovernmental Review of Federal Programs

e.  Executive Order 12699 – Seismic Safety of Federal and Federally Assisted New Building Construction[1]

f.  Executive Order 12898 – Environmental Justice

g.  Executive Order 13166 – Improving Access to Services for Persons with Limited English Proficiency

h.  Executive Order 13985 – Executive Order on Advancing Racial Equity and Support for Underserved Communities Through the Federal Government

i.  Executive Order 13988 – Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation

j.  Executive Order 14005 – Ensuring the Future is Made in all of America by All of America's Workers

k.  Executive Order 14008 – Tackling the Climate Crisis at Home and Abroad

## FEDERAL REGULATIONS

a.  2 CFR Part 180 – OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement).

b.  2 CFR Part 200 – Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards.[4,5]

c.  2 CFR Part 1200 – Nonprocurement Suspension and Debarment.

d.  14 CFR Part 13 – Investigative and Enforcement Procedures.

e.  14 CFR Part 16 – Rules of Practice For Federally-Assisted Airport Enforcement Proceedings.

f.  14 CFR Part 150 – Airport Noise Compatibility Planning.

g.  28 CFR Part 35 – Nondiscrimination on the Basis of Disability in State and Local Government Services.

h.  28 CFR § 50.3 – U.S. Department of Justice Guidelines for the Enforcement of Title VI of the Civil Rights Act of 1964.

i.  29 CFR Part 1 – Procedures for Predetermination of Wage Rates.[1]

j.  29 CFR Part 3 – Contractors and Subcontractors on Public Building or Public Work Financed in Whole or in Part by Loans or Grants from the United States.[1]

k.  29 CFR Part 5 – Labor Standards Provisions Applicable to Contracts Covering Federally Financed and Assisted Construction (Also Labor Standards Provisions Applicable to Nonconstruction Contracts Subject to the Contract Work Hours and Safety Standards Act).[1]

l.  41 CFR Part 60 – Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor (Federal and Federally-assisted contracting requirements).[1]

m.  49 CFR Part 20 – New Restrictions on Lobbying.

n.  49 CFR Part 21 – Nondiscrimination in Federally-Assisted Programs of the Department of Transportation - Effectuation of Title VI of the Civil Rights Act of 1964.

o.  49 CFR Part 23 – Participation by Disadvantage Business Enterprise in Airport Concessions.

p.  49 CFR Part 24 – Uniform Relocation Assistance and Real Property Acquisition for Federal and Federally-Assisted Programs.[1,2]

q.  49 CFR Part 26 – Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs.

r.  49 CFR Part 27 – Nondiscrimination on the Basis of Disability in Programs or Activities Receiving Federal Financial Assistance.[1]

s.  49 CFR Part 28 – Enforcement of Nondiscrimination on the Basis of Handicap in Programs or Activities Conducted by the Department of Transportation.

t.  49 CFR Part 30 – Denial of Public Works Contracts to Suppliers of Goods and Services of Countries That Deny Procurement Market Access to U.S. Contractors.

u.  49 CFR Part 32 – Governmentwide Requirements for Drug-Free Workplace (Financial Assistance).

v.  49 CFR Part 37 – Transportation Services for Individuals with Disabilities (ADA).

w.  49 CFR Part 38 – Americans with Disabilities Act (ADA) Accessibility Specifications for Transportation Vehicles.

x.  49 CFR Part 41 – Seismic Safety.

### *FOOTNOTES TO ASSURANCE (C)(1)*

[1]  These laws do not apply to airport planning sponsors.

[2]  These laws do not apply to private sponsors.

[3]  2 CFR Part 200 contains requirements for State and Local Governments receiving Federal assistance. Any requirement levied upon State and Local Governments by this regulation shall apply where applicable to private sponsors receiving Federal assistance under Title 49, United States Code.

[4]  Cost principles established in 2 CFR part 200 subpart E must be used as guidelines for determining the eligibility of specific types of expenses.

[5]  Audit requirements established in 2 CFR part 200 subpart F are the guidelines for audits.

### SPECIFIC ASSURANCES

Specific assurances required to be included in grant agreements by any of the above laws, regulations or circulars are incorporated by reference in this grant agreement.

2.  **Responsibility and Authority of the Sponsor.**

   a.  Public Agency Sponsor:

   It has legal authority to apply for this Grant, and to finance and carry out the proposed project; that a resolution, motion or similar action has been duly adopted or passed as an official act of the applicant's governing body authorizing the filing of the application, including all understandings and assurances contained therein, and directing and authorizing the person identified as the official representative of the applicant to act in connection with the application and to provide such additional information as may be required.

   b.  Private Sponsor:

   It has legal authority to apply for this Grant and to finance and carry out the proposed project and comply with all terms, conditions, and assurances of this Grant Agreement. It shall designate an official representative and shall in writing direct and authorize that person to file this application, including all understandings and assurances contained therein; to act in connection with this application; and to provide such additional information as may be required.

3.  **Sponsor Fund Availability.**

   It has sufficient funds available for that portion of the project costs which are not to be paid by the United States. It has sufficient funds available to assure operation and maintenance of items funded under this Grant Agreement which it will own or control.

4.  **Good Title.**

   a.  It, a public agency or the Federal government, holds good title, satisfactory to the Secretary, to the landing area of the airport or site thereof, or will give assurance satisfactory to the Secretary that good title will be acquired.

   b.  For noise compatibility program projects to be carried out on the property of the sponsor, it holds good title satisfactory to the Secretary to that portion of the property upon which Federal funds will be expended or will give assurance to the Secretary that good title will be obtained.

5.  **Preserving Rights and Powers.**

   a.  It will not take or permit any action which would operate to deprive it of any of the rights and powers necessary to perform any or all of the terms, conditions, and assurances in this Grant Agreement without the written approval of the Secretary, and will act promptly to acquire, extinguish or modify any outstanding rights or claims of right of others which would interfere with such performance by the sponsor. This shall be done in a manner acceptable to the Secretary.

   b.  Subject to the FAA Act of 2018, Public Law 115-254, Section 163, it will not sell, lease, encumber, or otherwise transfer or dispose of any part of its title or other interests in the property shown on Exhibit A to this application or, for a noise compatibility program project, that portion of the property upon which Federal funds have been expended, for the duration of the terms, conditions, and assurances in this Grant Agreement without approval by the Secretary. If the transferee is found by the Secretary to be eligible under Title 49, United States Code, to assume the obligations of this Grant Agreement and to have the power, authority, and financial resources to carry out all such obligations, the sponsor shall insert in the contract or

document transferring or disposing of the sponsor's interest, and make binding upon the transferee all of the terms, conditions, and assurances contained in this Grant Agreement.

c.  For all noise compatibility program projects which are to be carried out by another unit of local government or are on property owned by a unit of local government other than the sponsor, it will enter into an agreement with that government. Except as otherwise specified by the Secretary, that agreement shall obligate that government to the same terms, conditions, and assurances that would be applicable to it if it applied directly to the FAA for a grant to undertake the noise compatibility program project. That agreement and changes thereto must be satisfactory to the Secretary. It will take steps to enforce this agreement against the local government if there is substantial non-compliance with the terms of the agreement.

d.  For noise compatibility program projects to be carried out on privately owned property, it will enter into an agreement with the owner of that property which includes provisions specified by the Secretary. It will take steps to enforce this agreement against the property owner whenever there is substantial non-compliance with the terms of the agreement.

e.  If the sponsor is a private sponsor, it will take steps satisfactory to the Secretary to ensure that the airport will continue to function as a public-use airport in accordance with these assurances for the duration of these assurances.

f.  If an arrangement is made for management and operation of the airport by any agency or person other than the sponsor or an employee of the sponsor, the sponsor will reserve sufficient rights and authority to ensure that the airport will be operated and maintained in accordance with Title 49, United States Code, the regulations and the terms, conditions and assurances in this Grant Agreement and shall ensure that such arrangement also requires compliance therewith.

g.  Sponsors of commercial service airports will not permit or enter into any arrangement that results in permission for the owner or tenant of a property used as a residence, or zoned for residential use, to taxi an aircraft between that property and any location on airport. Sponsors of general aviation airports entering into any arrangement that results in permission for the owner of residential real property adjacent to or near the airport must comply with the requirements of Sec. 136 of Public Law 112-95 and the sponsor assurances.

**6.  Consistency with Local Plans.**

The project is reasonably consistent with plans (existing at the time of submission of this application) of public agencies that are authorized by the State in which the project is located to plan for the development of the area surrounding the airport.

**7.  Consideration of Local Interest.**

It has given fair consideration to the interest of communities in or near where the project may be located.

**8.  Consultation with Users.**

In making a decision to undertake any airport development project under Title 49, United States Code, it has undertaken reasonable consultations with affected parties using the airport at which project is proposed.

9.  **Public Hearings.**

In projects involving the location of an airport, an airport runway, or a major runway extension, it has afforded the opportunity for public hearings for the purpose of considering the economic, social, and environmental effects of the airport or runway location and its consistency with goals and objectives of such planning as has been carried out by the community and it shall, when requested by the Secretary, submit a copy of the transcript of such hearings to the Secretary. Further, for such projects, it has on its management board either voting representation from the communities where the project is located or has advised the communities that they have the right to petition the Secretary concerning a proposed project.

10.  **Metropolitan Planning Organization.**

In projects involving the location of an airport, an airport runway, or a major runway extension at a medium or large hub airport, the sponsor has made available to and has provided upon request to the metropolitan planning organization in the area in which the airport is located, if any, a copy of the proposed amendment to the airport layout plan to depict the project and a copy of any airport master plan in which the project is described or depicted.

11.  **Pavement Preventive Maintenance-Management.**

With respect to a project approved after January 1, 1995, for the replacement or reconstruction of pavement at the airport, it assures or certifies that it has implemented an effective airport pavement maintenance-management program and it assures that it will use such program for the useful life of any pavement constructed, reconstructed or repaired with Federal financial assistance at the airport. It will provide such reports on pavement condition and pavement management programs as the Secretary determines may be useful.

12.  **Terminal Development Prerequisites.**

For projects which include terminal development at a public use airport, as defined in Title 49, it has, on the date of submittal of the project grant application, all the safety equipment required for certification of such airport under 49 U.S.C. § 44706, and all the security equipment required by rule or regulation, and has provided for access to the passenger enplaning and deplaning area of such airport to passengers enplaning and deplaning from aircraft other than air carrier aircraft.

13.  **Accounting System, Audit, and Record Keeping Requirements.**

   a.  It shall keep all project accounts and records which fully disclose the amount and disposition by the recipient of the proceeds of this Grant, the total cost of the project in connection with which this Grant is given or used, and the amount or nature of that portion of the cost of the project supplied by other sources, and such other financial records pertinent to the project. The accounts and records shall be kept in accordance with an accounting system that will facilitate an effective audit in accordance with the Single Audit Act of 1984.

   b.  It shall make available to the Secretary and the Comptroller General of the United States, or any of their duly authorized representatives, for the purpose of audit and examination, any books, documents, papers, and records of the recipient that are pertinent to this Grant. The Secretary may require that an appropriate audit be conducted by a recipient. In any case in which an independent audit is made of the accounts of a sponsor relating to the disposition of the proceeds of a Grant or relating to the project in connection with which this Grant was given or used, it shall file a certified copy of such audit with the Comptroller General of the United

States not later than six (6) months following the close of the fiscal year for which the audit was made.

**14. Minimum Wage Rates.**

It shall include, in all contracts in excess of $2,000 for work on any projects funded under this Grant Agreement which involve labor, provisions establishing minimum rates of wages, to be predetermined by the Secretary of Labor under 40 U.S.C. §§ 3141-3144, 3146, and 3147, Public Building, Property, and Works), which contractors shall pay to skilled and unskilled labor, and such minimum rates shall be stated in the invitation for bids and shall be included in proposals or bids for the work.

**15. Veteran's Preference.**

It shall include in all contracts for work on any project funded under this Grant Agreement which involve labor, such provisions as are necessary to insure that, in the employment of labor (except in executive, administrative, and supervisory positions), preference shall be given to Vietnam era veterans, Persian Gulf veterans, Afghanistan-Iraq war veterans, disabled veterans, and small business concerns owned and controlled by disabled veterans as defined in 49 U.S.C. § 47112. However, this preference shall apply only where the individuals are available and qualified to perform the work to which the employment relates.

**16. Conformity to Plans and Specifications.**

It will execute the project subject to plans, specifications, and schedules approved by the Secretary. Such plans, specifications, and schedules shall be submitted to the Secretary prior to commencement of site preparation, construction, or other performance under this Grant Agreement, and, upon approval of the Secretary, shall be incorporated into this Grant Agreement. Any modification to the approved plans, specifications, and schedules shall also be subject to approval of the Secretary, and incorporated into this Grant Agreement.

**17. Construction Inspection and Approval.**

It will provide and maintain competent technical supervision at the construction site throughout the project to assure that the work conforms to the plans, specifications, and schedules approved by the Secretary for the project. It shall subject the construction work on any project contained in an approved project application to inspection and approval by the Secretary and such work shall be in accordance with regulations and procedures prescribed by the Secretary. Such regulations and procedures shall require such cost and progress reporting by the sponsor or sponsors of such project as the Secretary shall deem necessary.

**18. Planning Projects.**

In carrying out planning projects:

a.  It will execute the project in accordance with the approved program narrative contained in the project application or with the modifications similarly approved.

b.  It will furnish the Secretary with such periodic reports as required pertaining to the planning project and planning work activities.

c.  It will include in all published material prepared in connection with the planning project a notice that the material was prepared under a grant provided by the United States.

d.  It will make such material available for examination by the public, and agrees that no material prepared with funds under this project shall be subject to copyright in the United States or any other country.

e.  It will give the Secretary unrestricted authority to publish, disclose, distribute, and otherwise use any of the material prepared in connection with this grant.

f.  It will grant the Secretary the right to disapprove the sponsor's employment of specific consultants and their subcontractors to do all or any part of this project as well as the right to disapprove the proposed scope and cost of professional services.

g.  It will grant the Secretary the right to disapprove the use of the sponsor's employees to do all or any part of the project.

h.  It understands and agrees that the Secretary's approval of this project grant or the Secretary's approval of any planning material developed as part of this grant does not constitute or imply any assurance or commitment on the part of the Secretary to approve any pending or future application for a Federal airport grant.

**19. Operation and Maintenance.**

a.  The airport and all facilities which are necessary to serve the aeronautical users of the airport, other than facilities owned or controlled by the United States, shall be operated at all times in a safe and serviceable condition and in accordance with the minimum standards as may be required or prescribed by applicable Federal, State and local agencies for maintenance and operation. It will not cause or permit any activity or action thereon which would interfere with its use for airport purposes. It will suitably operate and maintain the airport and all facilities thereon or connected therewith, with due regard to climatic and flood conditions. Any proposal to temporarily close the airport for non-aeronautical purposes must first be approved by the Secretary. In furtherance of this assurance, the sponsor will have in effect arrangements for:

1.  Operating the airport's aeronautical facilities whenever required;

2.  Promptly marking and lighting hazards resulting from airport conditions, including temporary conditions; and

3.  Promptly notifying pilots of any condition affecting aeronautical use of the airport. Nothing contained herein shall be construed to require that the airport be operated for aeronautical use during temporary periods when snow, flood, or other climatic conditions interfere with such operation and maintenance. Further, nothing herein shall be construed as requiring the maintenance, repair, restoration, or replacement of any structure or facility which is substantially damaged or destroyed due to an act of God or other condition or circumstance beyond the control of the sponsor.

b.  It will suitably operate and maintain noise compatibility program items that it owns or controls upon which Federal funds have been expended.

**20. Hazard Removal and Mitigation.**

It will take appropriate action to assure that such terminal airspace as is required to protect instrument and visual operations to the airport (including established minimum flight altitudes) will be adequately cleared and protected by removing, lowering, relocating, marking, or lighting or otherwise mitigating existing airport hazards and by preventing the establishment or creation of future airport hazards.

**21. Compatible Land Use.**

It will take appropriate action, to the extent reasonable, including the adoption of zoning laws, to restrict the use of land adjacent to or in the immediate vicinity of the airport to activities and purposes compatible with normal airport operations, including landing and takeoff of aircraft. In addition, if the project is for noise compatibility program implementation, it will not cause or permit any change in land use, within its jurisdiction, that will reduce its compatibility, with respect to the airport, of the noise compatibility program measures upon which Federal funds have been expended.

**22. Economic Nondiscrimination.**

  a.  It will make the airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities, including commercial aeronautical activities offering services to the public at the airport.

  b.  In any agreement, contract, lease, or other arrangement under which a right or privilege at the airport is granted to any person, firm, or corporation to conduct or to engage in any aeronautical activity for furnishing services to the public at the airport, the sponsor will insert and enforce provisions requiring the contractor to:

  1.  Furnish said services on a reasonable, and not unjustly discriminatory, basis to all users thereof, and

  2.  Charge reasonable, and not unjustly discriminatory, prices for each unit or service, provided that the contractor may be allowed to make reasonable and nondiscriminatory discounts, rebates, or other similar types of price reductions to volume purchasers.

  c.  Each fixed-based operator at the airport shall be subject to the same rates, fees, rentals, and other charges as are uniformly applicable to all other fixed-based operators making the same or similar uses of such airport and utilizing the same or similar facilities.

  d.  Each air carrier using such airport shall have the right to service itself or to use any fixed-based operator that is authorized or permitted by the airport to serve any air carrier at such airport.

  e.  Each air carrier using such airport (whether as a tenant, non-tenant, or subtenant of another air carrier tenant) shall be subject to such nondiscriminatory and substantially comparable rules, regulations, conditions, rates, fees, rentals, and other charges with respect to facilities directly and substantially related to providing air transportation as are applicable to all such air carriers which make similar use of such airport and utilize similar facilities, subject to reasonable classifications such as tenants or non-tenants and signatory carriers and non-signatory carriers. Classification or status as tenant or signatory shall not be unreasonably withheld by any airport provided an air carrier assumes obligations substantially similar to those already imposed on air carriers in such classification or status.

  f.  It will not exercise or grant any right or privilege which operates to prevent any person, firm, or corporation operating aircraft on the airport from performing any services on its own aircraft with its own employees (including, but not limited to maintenance, repair, and fueling) that it may choose to perform.

  g.  In the event the sponsor itself exercises any of the rights and privileges referred to in this assurance, the services involved will be provided on the same conditions as would apply to the furnishing of such services by commercial aeronautical service providers authorized by the sponsor under these provisions.

h.  The sponsor may establish such reasonable, and not unjustly discriminatory, conditions to be met by all users of the airport as may be necessary for the safe and efficient operation of the airport.

i.  The sponsor may prohibit or limit any given type, kind or class of aeronautical use of the airport if such action is necessary for the safe operation of the airport or necessary to serve the civil aviation needs of the public.

## 23. Exclusive Rights.

It will permit no exclusive right for the use of the airport by any person providing, or intending to provide, aeronautical services to the public. For purposes of this paragraph, the providing of the services at an airport by a single fixed-based operator shall not be construed as an exclusive right if both of the following apply:

a.  It would be unreasonably costly, burdensome, or impractical for more than one fixed-based operator to provide such services, and

b.  If allowing more than one fixed-based operator to provide such services would require the reduction of space leased pursuant to an existing agreement between such single fixed-based operator and such airport. It further agrees that it will not, either directly or indirectly, grant or permit any person, firm, or corporation, the exclusive right at the airport to conduct any aeronautical activities, including, but not limited to charter flights, pilot training, aircraft rental and sightseeing, aerial photography, crop dusting, aerial advertising and surveying, air carrier operations, aircraft sales and services, sale of aviation petroleum products whether or not conducted in conjunction with other aeronautical activity, repair and maintenance of aircraft, sale of aircraft parts, and any other activities which because of their direct relationship to the operation of aircraft can be regarded as an aeronautical activity, and that it will terminate any exclusive right to conduct an aeronautical activity now existing at such an airport before the grant of any assistance under Title 49, United States Code.

## 24. Fee and Rental Structure.

It will maintain a fee and rental structure for the facilities and services at the airport which will make the airport as self-sustaining as possible under the circumstances existing at the particular airport, taking into account such factors as the volume of traffic and economy of collection. No part of the Federal share of an airport development, airport planning or noise compatibility project for which a Grant is made under Title 49, United States Code, the Airport and Airway Improvement Act of 1982, the Federal Airport Act or the Airport and Airway Development Act of 1970 shall be included in the rate basis in establishing fees, rates, and charges for users of that airport.

## 25. Airport Revenues.

a.  All revenues generated by the airport and any local taxes on aviation fuel established after December 30, 1987, will be expended by it for the capital or operating costs of the airport; the local airport system; or other local facilities which are owned or operated by the owner or operator of the airport and which are directly and substantially related to the actual air transportation of passengers or property; or for noise mitigation purposes on or off the airport. The following exceptions apply to this paragraph:

1.  If covenants or assurances in debt obligations issued before September 3, 1982, by the owner or operator of the airport, or provisions enacted before September 3, 1982, in governing statutes controlling the owner or operator's financing, provide for the use of the

revenues from any of the airport owner or operator's facilities, including the airport, to support not only the airport but also the airport owner or operator's general debt obligations or other facilities, then this limitation on the use of all revenues generated by the airport (and, in the case of a public airport, local taxes on aviation fuel) shall not apply.

2. If the Secretary approves the sale of a privately owned airport to a public sponsor and provides funding for any portion of the public sponsor's acquisition of land, this limitation on the use of all revenues generated by the sale shall not apply to certain proceeds from the sale. This is conditioned on repayment to the Secretary by the private owner of an amount equal to the remaining unamortized portion (amortized over a 20-year period) of any airport improvement grant made to the private owner for any purpose other than land acquisition on or after October 1, 1996, plus an amount equal to the federal share of the current fair market value of any land acquired with an airport improvement grant made to that airport on or after October 1, 1996.

3. Certain revenue derived from or generated by mineral extraction, production, lease, or other means at a general aviation airport (as defined at 49 U.S.C. § 47102), if the FAA determines the airport sponsor meets the requirements set forth in Section 813 of Public Law 112-95

b. As part of the annual audit required under the Single Audit Act of 1984, the sponsor will direct that the audit will review, and the resulting audit report will provide an opinion concerning, the use of airport revenue and taxes in paragraph (a), and indicating whether funds paid or transferred to the owner or operator are paid or transferred in a manner consistent with Title 49, United States Code and any other applicable provision of law, including any regulation promulgated by the Secretary or Administrator.

c. Any civil penalties or other sanctions will be imposed for violation of this assurance in accordance with the provisions of 49 U.S.C. § 47107.

**26. Reports and Inspections.**

It will:

a. submit to the Secretary such annual or special financial and operations reports as the Secretary may reasonably request and make such reports available to the public; make available to the public at reasonable times and places a report of the airport budget in a format prescribed by the Secretary;

b. for airport development projects, make the airport and all airport records and documents affecting the airport, including deeds, leases, operation and use agreements, regulations and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request;

c. for noise compatibility program projects, make records and documents relating to the project and continued compliance with the terms, conditions, and assurances of this Grant Agreement including deeds, leases, agreements, regulations, and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request; and

d. in a format and time prescribed by the Secretary, provide to the Secretary and make available to the public following each of its fiscal years, an annual report listing in detail:

1. all amounts paid by the airport to any other unit of government and the purposes for which each such payment was made; and

2. all services and property provided by the airport to other units of government and the amount of compensation received for provision of each such service and property.

## 27. Use by Government Aircraft.

It will make available all of the facilities of the airport developed with Federal financial assistance and all those usable for landing and takeoff of aircraft to the United States for use by Government aircraft in common with other aircraft at all times without charge, except, if the use by Government aircraft is substantial, charge may be made for a reasonable share, proportional to such use, for the cost of operating and maintaining the facilities used. Unless otherwise determined by the Secretary, or otherwise agreed to by the sponsor and the using agency, substantial use of an airport by Government aircraft will be considered to exist when operations of such aircraft are in excess of those which, in the opinion of the Secretary, would unduly interfere with use of the landing areas by other authorized aircraft, or during any calendar month that:

a. Five (5) or more Government aircraft are regularly based at the airport or on land adjacent thereto; or

b. The total number of movements (counting each landing as a movement) of Government aircraft is 300 or more, or the gross accumulative weight of Government aircraft using the airport (the total movement of Government aircraft multiplied by gross weights of such aircraft) is in excess of five million pounds.

## 28. Land for Federal Facilities.

It will furnish without cost to the Federal Government for use in connection with any air traffic control or air navigation activities, or weather-reporting and communication activities related to air traffic control, any areas of land or water, or estate therein as the Secretary considers necessary or desirable for construction, operation, and maintenance at Federal expense of space or facilities for such purposes. Such areas or any portion thereof will be made available as provided herein within four months after receipt of a written request from the Secretary.

## 29. Airport Layout Plan.

a. Subject to the FAA Reauthorization Act of 2018, Public Law 115-254, Section 163, it will keep up to date at all times an airport layout plan of the airport showing:

1. boundaries of the airport and all proposed additions thereto, together with the boundaries of all offsite areas owned or controlled by the sponsor for airport purposes and proposed additions thereto;

2. the location and nature of all existing and proposed airport facilities and structures (such as runways, taxiways, aprons, terminal buildings, hangars and roads), including all proposed extensions and reductions of existing airport facilities;

3. the location of all existing and proposed non-aviation areas and of all existing improvements thereon; and

4. all proposed and existing access points used to taxi aircraft across the airport's property boundary.

Such airport layout plans and each amendment, revision, or modification thereof, shall be subject to the approval of the Secretary which approval shall be evidenced by the signature of a duly authorized representative of the Secretary on the face of the airport layout plan. The

sponsor will not make or permit any changes or alterations in the airport or any of its facilities which are not in conformity with the airport layout plan as approved by the Secretary and which might, in the opinion of the Secretary, adversely affect the safety, utility or efficiency of the airport.

b.  Subject to the FAA Reauthorization Act of 2018, Public Law 115-254, Section 163, if a change or alteration in the airport or the facilities is made which the Secretary determines adversely affects the safety, utility, or efficiency of any federally owned, leased, or funded property on or off the airport and which is not in conformity with the airport layout plan as approved by the Secretary, the owner or operator will, if requested, by the Secretary:

1.  eliminate such adverse effect in a manner approved by the Secretary; or

2.  bear all costs of relocating such property (or replacement thereof) to a site acceptable to the Secretary and all costs of restoring such property (or replacement thereof) to the level of safety, utility, efficiency, and cost of operation existing before the unapproved change in the airport or its facilities except in the case of a relocation or replacement of an existing airport facility due to a change in the Secretary's design standards beyond the control of the airport sponsor.

**30. Civil Rights.**

It will promptly take any measures necessary to ensure that no person in the United States shall, on the grounds of race, color, and national origin (including limited English proficiency) in accordance with the provisions of Title VI of the Civil Rights Act of 1964 (78 Stat. 252, 42 U.S.C. §§ 2000d to 2000d-4); creed and sex (including sexual orientation and gender identity) per 49 U.S.C. § 47123 and related requirements; age per the Age Discrimination Act of 1975 and related requirements; or disability per the Americans with Disabilities Act of 1990 and related requirements, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination in any program and activity conducted with, or benefiting from, funds received from this Grant.

a.  Using the definitions of activity, facility, and program as found and defined in 49 CFR §§ 21.23(b) and 21.23(e), the sponsor will facilitate all programs, operate all facilities, or conduct all programs in compliance with all non-discrimination requirements imposed by or pursuant to these assurances.

b.  Applicability

1.  Programs and Activities. If the sponsor has received a grant (or other federal assistance) for any of the sponsor's program or activities, these requirements extend to all of the sponsor's programs and activities.

2.  Facilities. Where it receives a grant or other federal financial assistance to construct, expand, renovate, remodel, alter, or acquire a facility, or part of a facility, the assurance extends to the entire facility and facilities operated in connection therewith.

3.  Real Property. Where the sponsor receives a grant or other Federal financial assistance in the form of, or for the acquisition of real property or an interest in real property, the assurance will extend to rights to space on, over, or under such property.

c.  Duration.

The sponsor agrees that it is obligated to this assurance for the period during which Federal financial assistance is extended to the program, except where the Federal financial assistance is

to provide, or is in the form of, personal property, or real property, or interest therein, or structures or improvements thereon, in which case the assurance obligates the sponsor, or any transferee for the longer of the following periods:

1. So long as the airport is used as an airport, or for another purpose involving the provision of similar services or benefits; or

2. So long as the sponsor retains ownership or possession of the property.

d. Required Solicitation Language. It will include the following notification in all solicitations for bids, Requests For Proposals for work, or material under this Grant Agreement and in all proposals for agreements, including airport concessions, regardless of funding source:

"The (**County of Marin**), in accordance with the provisions of Title VI of the Civil Rights Act of 1964 (78 Stat. 252, 42 U.S.C. §§ 2000d to 2000d-4) and the Regulations, hereby notifies all bidders or offerors that it will affirmatively ensure that for any contract entered into pursuant to this advertisement, [select businesses, or disadvantaged business enterprises or airport concession disadvantaged business enterprises] will be afforded full and fair opportunity to submit bids in response to this invitation and no businesses will be discriminated against on the grounds of race, color, national origin (including limited English proficiency), creed, sex (including sexual orientation and gender identity), age, or disability in consideration for an award."

e. Required Contract Provisions.

1. It will insert the non-discrimination contract clauses requiring compliance with the acts and regulations relative to non-discrimination in Federally-assisted programs of the Department of Transportation (DOT), and incorporating the acts and regulations into the contracts by reference in every contract or agreement subject to the non-discrimination in Federally-assisted programs of the DOT acts and regulations.

2. It will include a list of the pertinent non-discrimination authorities in every contract that is subject to the non-discrimination acts and regulations.

3. It will insert non-discrimination contract clauses as a covenant running with the land, in any deed from the United States effecting or recording a transfer of real property, structures, use, or improvements thereon or interest therein to a sponsor.

4. It will insert non-discrimination contract clauses prohibiting discrimination on the basis of race, color, national origin (including limited English proficiency), creed, sex (including sexual orientation and gender identity), age, or disability as a covenant running with the land, in any future deeds, leases, license, permits, or similar instruments entered into by the sponsor with other parties:

   a. For the subsequent transfer of real property acquired or improved under the applicable activity, project, or program; and

   b. For the construction or use of, or access to, space on, over, or under real property acquired or improved under the applicable activity, project, or program.

f. It will provide for such methods of administration for the program as are found by the Secretary to give reasonable guarantee that it, other recipients, sub-recipients, sub-grantees, contractors, subcontractors, consultants, transferees, successors in interest, and other

participants of Federal financial assistance under such program will comply with all requirements imposed or pursuant to the acts, the regulations, and this assurance.

g. It agrees that the United States has a right to seek judicial enforcement with regard to any matter arising under the acts, the regulations, and this assurance.

**31. Disposal of Land.**

a. For land purchased under a grant for airport noise compatibility purposes, including land serving as a noise buffer, it will dispose of the land, when the land is no longer needed for such purposes, at fair market value, at the earliest practicable time. That portion of the proceeds of such disposition which is proportionate to the United States' share of acquisition of such land will be, at the discretion of the Secretary, (1) reinvested in another project at the airport, or (2) transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

1. Reinvestment in an approved noise compatibility project;

2. Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. § 47117(e);

3. Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. §§ 47114, 47115, or 47117

4. Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

5. Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

If land acquired under a grant for noise compatibility purposes is leased at fair market value and consistent with noise buffering purposes, the lease will not be considered a disposal of the land. Revenues derived from such a lease may be used for an approved airport development project that would otherwise be eligible for grant funding or any permitted use of airport revenue.

b. For land purchased under a grant for airport development purposes (other than noise compatibility), it will, when the land is no longer needed for airport purposes, dispose of such land at fair market value or make available to the Secretary an amount equal to the United States' proportionate share of the fair market value of the land. That portion of the proceeds of such disposition which is proportionate to the United States' share of the cost of acquisition of such land will, upon application to the Secretary, be reinvested or transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

1. Reinvestment in an approved noise compatibility project;

2. Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. § 47117(e);

3. Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. §§ 47114, 47115, or 47117

4. Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

5. Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

c.  Land shall be considered to be needed for airport purposes under this assurance if (1) it may be needed for aeronautical purposes (including runway protection zones) or serve as noise buffer land, and (2) the revenue from interim uses of such land contributes to the financial self-sufficiency of the airport. Further, land purchased with a grant received by an airport operator or owner before December 31, 1987, will be considered to be needed for airport purposes if the Secretary or Federal agency making such grant before December 31, 1987, was notified by the operator or owner of the uses of such land, did not object to such use, and the land continues to be used for that purpose, such use having commenced no later than December 15, 1989.

d.  Disposition of such land under (a), (b), or (c) will be subject to the retention or reservation of any interest or right therein necessary to ensure that such land will only be used for purposes which are compatible with noise levels associated with operation of the airport.

**32. Engineering and Design Services.**

If any phase of such project has received Federal funds under Chapter 471 subchapter 1 of Title 49 U.S.C., it will award each contract, or sub-contract for program management, construction management, planning studies, feasibility studies, architectural services, preliminary engineering, design, engineering, surveying, mapping or related services in the same manner as a contract for architectural and engineering services is negotiated under Chapter 11 of Title 40 U.S.C., or an equivalent qualifications-based requirement prescribed for or by the sponsor of the airport.

**33. Foreign Market Restrictions.**

It will not allow funds provided under this Grant to be used to fund any project which uses any product or service of a foreign country during the period in which such foreign country is listed by the United States Trade Representative as denying fair and equitable market opportunities for products and suppliers of the United States in procurement and construction.

**34. Policies, Standards, and Specifications.**

It will carry out any project funded under an Airport Improvement Program Grant in accordance with policies, standards, and specifications approved by the Secretary including, but not limited to, current FAA Advisory Circulars (https://www.faa.gov/airports/aip/media/aip-pfc-checklist.pdf) for AIP projects as of August 8, 2022.

**35. Relocation and Real Property Acquisition.**

a.  It will be guided in acquiring real property, to the greatest extent practicable under State law, by the land acquisition policies in Subpart B of 49 CFR Part 24 and will pay or reimburse property owners for necessary expenses as specified in Subpart B.

b.  It will provide a relocation assistance program offering the services described in Subpart C of 49 CFR Part 24 and fair and reasonable relocation payments and assistance to displaced persons as required in Subpart D and E of 49 CFR Part 24.

c.  It will make available within a reasonable period of time prior to displacement, comparable replacement dwellings to displaced persons in accordance with Subpart E of 49 CFR Part 24.

**36. Access By Intercity Buses.**

The airport owner or operator will permit, to the maximum extent practicable, intercity buses or other modes of transportation to have access to the airport; however, it has no obligation to fund special facilities for intercity buses or for other modes of transportation.

**37. Disadvantaged Business Enterprises.**

The sponsor shall not discriminate on the basis of race, color, national origin, or sex, in the award and performance of any DOT-assisted contract covered by 49 CFR Part 26, or in the award and performance of any concession activity contract covered by 49 CFR Part 23. In addition, the sponsor shall not discriminate on the basis of race, color, national origin or sex in the administration of its Disadvantaged Business Enterprise (DBE) and Airport Concessions Disadvantaged Business Enterprise (ACDBE) programs or the requirements of 49 CFR Parts 23 and 26. The sponsor shall take all necessary and reasonable steps under 49 CFR Parts 23 and 26 to ensure nondiscrimination in the award and administration of DOT-assisted contracts, and/or concession contracts. The sponsor's DBE and ACDBE programs, as required by 49 CFR Parts 26 and 23, and as approved by DOT, are incorporated by reference in this agreement. Implementation of these programs is a legal obligation and failure to carry out its terms shall be treated as a violation of this agreement. Upon notification to the sponsor of its failure to carry out its approved program, the Department may impose sanctions as provided for under Parts 26 and 23 and may, in appropriate cases, refer the matter for enforcement under 18 U.S.C. § 1001 and/or the Program Fraud Civil Remedies Act of 1986 (31 U.S.C. §§ 3801-3809, 3812).

**38. Hangar Construction.**

If the airport owner or operator and a person who owns an aircraft agree that a hangar is to be constructed at the airport for the aircraft at the aircraft owner's expense, the airport owner or operator will grant to the aircraft owner for the hangar a long term lease that is subject to such terms and conditions on the hangar as the airport owner or operator may impose.

**39. Competitive Access.**

a. If the airport owner or operator of a medium or large hub airport (as defined in 49 U.S.C. § 47102) has been unable to accommodate one or more requests by an air carrier for access to gates or other facilities at that airport in order to allow the air carrier to provide service to the airport or to expand service at the airport, the airport owner or operator shall transmit a report to the Secretary that:

   1. Describes the requests;

   2. Provides an explanation as to why the requests could not be accommodated; and

   3. Provides a time frame within which, if any, the airport will be able to accommodate the requests.

b. Such report shall be due on either February 1 or August 1 of each year if the airport has been unable to accommodate the request(s) in the six month period prior to the applicable due date.