ANDREW JANZ (SBN 287672)**
Fresno City Attorney
andrew.janz@fresno.gov
CITY OF FRESNO
2600 Fresno Street
Fresno, CA 93721
Telephone: (559) 621-7500
Facsimile: (559) 457-1084
*Attorney for Plaintiff*
CITY OF FRESNO
** *Application for admission pro hac vice*
*forthcoming*

JONATHAN V. HOLTZMAN (SBN 99795)
jholtzman@publiclawgroup.com
JAMES R. ROSS (SBN 149199)
jross@publiclawgroup.com
RYAN P. McGINLEY-STEMPEL (SBN 296182)
rmcginleystempel@publiclawgroup.com
JAKE D. FREITAS (SBN 341837)
jfreitas@publiclawgroup.com
MARIBEL LOPEZ (SBN 340907)
mlopez@publiclawgroup.com
RENNE PUBLIC LAW GROUP
350 Sansome Street, Suite 300
San Francisco, California 94104
Telephone: (415) 848-7200
Facsimile: (415) 848-7230
*Attorneys for Plaintiffs*
CITY OF FRESNO; CITY OF EUREKA; CITY OF SOUTH
LAKE TAHOE; COUNTY OF SACRAMENTO; COUNTY OF
MONROE; MONROE COUNTY AIRPORT AUTHORITY;
COUNTY OF SAN DIEGO, COUNTY OF MARIN, CITY OF
ALAMEDA, CITY OF REDWOOD CITY

YIBIN SHEN (SBN 233545)
Alameda City Attorney
yshen@alamedaca.gov
CARA SILVER (SBN 136992)
Special Counsel
csilver@alamedaca.gov
DANIEL J. TURNER (SBN 336499)
Deputy City Attorney
dturner@alamedaca.gov
2263 Santa Clara Avenue, Rm 280
Alameda, CA 94501
Telephone: (510) 747-4750
*Attorneys for Plaintiff*
CITY OF ALAMEDA

MELISSA C. ALLISON (MA Bar No. 657470)*
mallison@andersonkreiger.com
CHRISTINA S. MARSHALL (MA Bar No. 688348)*
cmarshall@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, Floor 21
Boston, MA 02109
Telephone: (617) 621-6500
*Attorneys for Plaintiffs*
COUNTY OF MONROE
MONROE COUNTY AIRPORT AUTHORITY
* *Appearing pro hac vice*

BRIAN E. WASHINGTON (SBN 146807)
Marin County Counsel
KATE K. STANFORD (SBN 302825)
Deputy County Counsel
kate.stanford@marincounty.gov
EDWARD F. SEARS (SBN 297775)
Deputy County Counsel
ned.sears@marincounty.gov
OFFICE OF THE COUNTY COUNSEL
COUNTY OF MARIN
3501 Civic Center Drive, Room 275
San Rafael, CA 94903
Telephone: (415) 473-6117
Facsimile: (415) 473-3796
*Attorneys for Plaintiff*
COUNTY OF MARIN

LYNDSEY OLSON (MN Lic. #0332288)*
Saint Paul City Attorney
Lyndsey.olson@ci.stpaul.mn.us
KELSEY MCELVEEN (MN Lic. #0396744)*
Assistant City Attorney
Kelsey.McElveen@ci.stpaul.mn.us
SAINT PAUL CITY ATTORNEY'S OFFICE
400 City Hall and Courthouse
15 Kellogg Boulevard West
Saint Paul, Minnesota 55102
Telephone: (651) 266-8710
Facsimile: (651) 298-5619
*Attorneys for Plaintiff*
CITY OF SAINT PAUL
* *Appearing pro hac vice*

RENNE PUBLIC LAW GROUP
Attorneys at Law

1

2

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

3

4

5

6

7

8

CITY OF FRESNO; CITY OF EUREKA; CITY OF SOUTH LAKE TAHOE; CITY OF SAINT PAUL; COUNTY OF SACRAMENTO; COUNTY OF MONROE; MONROE COUNTY AIRPORT AUTHORITY; COUNTY OF SAN DIEGO, COUNTY OF MARIN; CITY OF ALAMEDA; CITY OF REDWOOD CITY,

Plaintiffs,

v.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

SCOTT TURNER in his official capacity as Secretary of the U.S. Department of Housing and Urban Development; the U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; SEAN DUFFY in his official capacity as Secretary of the U.S. Department of Transportation; the U.S. DEPARTMENT OF TRANSPORTATION; MARCUS J. MOLINARO in his official capacity as the Administrator of the Federal Transit Administration ; the FEDERAL TRANSIT ADMINISTRATION; GLORIA M. SHEPHERD in her official capacity as the Executive Director of the Federal Highway Administration; the FEDERAL HIGHWAY ADMINISTRATION; BRYAN BEDFORD in his official capacity as the Administration of the Federal Aviation Administration; the FEDERAL AVIATION ADMINISTRATION; ROBERT F. KENNEDY, JR. in his official capacity as Secretary of the U.S. Department of Health and Human Services; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; LEE ZELDIN in his official capacity as Administrator of the Environmental Protection Agency; and the U.S. ENVIRONMENTAL PROTECTION AGENCY,

Defendants.

Case No.: 3:25-cv-07070-RS

**DECLARATION OF JUAN FRANCISCO PARTIDA DELGADO IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Complaint Filed: August 20, 2025
FAC Filed: September 8, 2025

Hon. Richard Seeborg

23

24

25

26

27

28

RENNE PUBLIC LAW GROUP
Attorneys at Law

I, Juan Francisco Partida Delgado, declare:

1.      I am over the age of 18 years, am competent to testify as to the matters in this declaration, and make this declaration based on my own personal knowledge.

2.      2.      I am the Interim Director of Aviation for the City of Fresno (the "City"). As the Interim Director, I am responsible for the management, operation, maintenance, development, marketing and promotion of Fresno's airport system, including Fresno Yosemite International ("FAT") and Chandler Executive ("FCH") Airports.

3.      I ensure the City's airports are properly funded to support any maintenance and operation needs as well as any development with the goal of ensuring safe and efficient travel.

## FEDERAL GRANTS IN THE CITY OF FRESNO

4.      The City's airports depend on federal funding through the Federal Aviation Administration ("FAA"), among other funding, to support critical capital projects and maintenance to comply with federally imposed safety requirements.

5.      Annually, the City receives about $ 4 million in Airport Improvement Program ("AIP") entitlement funds and under discretionary funds. In addition, the City receives about $3 million from the NOISE program.

6.      Currently, the City holds federal grant allocations, including AIP, totaling approximately $50,289,789. These grants have already been allocated, and the City is in the process of expending the allocated amount. The City will then apply for reimbursement via the grants for the amount that was already expended.

7.      Grants totaling $13,353,961 of the $50,289,789 are set to expire September 30, 2025.  The City must apply for reimbursement and receive the award by then or lose out on the funding.

8.      Some of the $13,353,961 was used in the City's FAT terminal expansion project.

9.      Along with the FAT terminal expansion project, Fresno has three other major projects in process, including the reconstruction of the primary runway, the construction of a new air traffic control tower, and airport runway rehabilitation.

10.      The City set aside $295,000 of the $13,353,961 set to expire September 30, 2025, for pavement rehabilitation work at Chandler Airport.

RENNE PUBLIC LAW GROUP
Attorneys at Law

-3-

11.     In addition, the City expects that it will need approximately $105 million for the runway reconstruction, and it will rely on applying for FAA grant money to fund approximately 91% of the reconstruction.

12.     Since May 2022, the City applied for and received federal grants with the understanding that it would comply with the FAA Assurances of May 2022. The May 2022 assurances have been applicable to the City since then until April 2025. (Attached is a true and correct copy of the 2022 Assurances as **Exhibit A**.)

13.     On or around April 2025, the City received a document from the FAA titled "Assurances Airport Sponsors," incorporating President Trump's newly enacted Executive Orders 14151, 14168, and 14173. (Attached is a true and correct copy of the 2025 Assurances as **Exhibit B**.)

14.     On or around August 14, 2025, the City received a Grant Offer and Agreement ("Grant Offer") from the FAA for the grant offer under the Infrastructure Investment and Jobs Act (IIJA). The Grant Offer included conditions, special conditions, and assurances the City must abide to receive the grant. In bold letters and underlined, the Grant Offer stated, "You may not make any modification to the text, terms or conditions of the grant offer. The 2025 Assurances referenced above as Exhibit B were attached. The Grant Offer stated that the City must fully execute and finalize the agreement process no later than August 29, 2025.  (Attached is a true and correct copy of the FAA's Grant Offer and Agreement as **Exhibit C**.)

15.     The City depends on FAA grants to maintain and develop its airports to meet FAA safety standards. The City cannot fund this on its own.

16.     As an immediate concern, Phase 1 of FAT's main runway reconstruction depends on approximately $23 million in federal grants. If those grants cannot be awarded, the City would have to stop the project completely.

17.     The City is also relying on $24 million in federal grant funds to complete the terminal expansion project. The grant funds are essential for the completion of this project and the payment of contracts and work already performed. The project cannot be stopped now without significant ramification. Any effort to attempt to internally cover the $24 million funding gap will result in detrimental financial challenges to the City.

-4-

RENNE PUBLIC LAW GROUP
Attorneys at Law

18.     If the City is unable to recover the above-mentioned federal grants—whether because the grants are denied or because the City is forced to forgo pursuing them—it stands to lose approximately $47 to $57 million in funding.

19.     All of the City's major capital improvement projects at its airports are designed to ensure compliance with federal safety standards and to maintain the operational integrity of both Fresno Yosemite International Airport and Fresno Chandler Executive Airport.  Without continued FAA funding, these capital improvements would come to a halt, placing the City at risk of noncompliance with federal safety mandates. The resulting delays or cancellations could compromise airport safety, disrupt commercial and general aviation operations, and have far reaching negative impacts on the area's economy.

20.     On August 20, 2025, the City, along with other public entity plaintiffs, brought the above-referenced action to enjoin Defendants from enforcing the unlawful grant conditions.  A motion for a Temporary Restraining Order (TRO) was filed on August 21, 2025, and an emergency TRO was ordered by Judge Seeborg on August 26, 2025.  *See* Dkt. 27 (Minute Order Granting Motion for TRO); see also Dkt. 28 (Order Granting Motion for TRO). The TRO prevents Defendants from imposing or enforcing the grant conditions or any materially similar conditions with respect to any grants awarded to Plaintiffs.  *Id.*  As ordered, Defendants have filed declarations asserting that they will not impose or enforce any EO Grant Conditions while the TRO remains in effect.  Dkt. 29.

21.     However, the TRO is set to expire on September 23, 2025.  When the TRO expires, Defendants will again be free to enforce the challenged conditions, placing Plaintiffs in the untenable position of either forgoing critical federal funding or accepting unlawful restrictions that threaten their operations and the well-being of their residents.  A preliminary injunction is necessary to preserve the status quo and prevent irreparable harm while this litigation proceeds.

22.     On September 2, 2025, I received an automated email from Kevin Luey via Adobe Acrobat Sign, stating that "Grant Agreement Agreement Exchange Canceled." (Attached is a true and correct copy of Kevin Luey's email via Adobe Acrobat Sign as Exhibit D.)

RENNE PUBLIC LAW GROUP
Attorneys at Law

PARTIDA DEC ISO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - CASE NO. 3:25-cv-07070-RS

1    I declare under penalty of perjury of the laws of the State of California that the foregoing is true

2  and correct.  Executed at Fresno, California on September 8, 2025.

3

4                                           Signed by:

5              By: _____  *Juan Francisco Partida*
                                           7169AC1AF5704A7...

6              Juan Francisco Partida Delgado
               Interim Director of Aviation
               City of Fresno

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RENNE PUBLIC LAW GROUP
Attorneys at Law



EXHIBIT A



**FAA
Airports**

# ASSURANCES

**AIRPORT SPONSORS**

**A. General.**

1. These assurances shall be complied with in the performance of grant agreements for airport development, airport planning, and noise compatibility program grants for airport sponsors.

2. These assurances are required to be submitted as part of the project application by sponsors requesting funds under the provisions of Title 49, U.S.C., subtitle VII, as amended. As used herein, the term "public agency sponsor" means a public agency with control of a public-use airport; the term "private sponsor" means a private owner of a public-use airport; and the term "sponsor" includes both public agency sponsors and private sponsors.

3. Upon acceptance of this grant offer by the sponsor, these assurances are incorporated in and become part of this Grant Agreement.

**B. Duration and Applicability.**

1. **Airport development or Noise Compatibility Program Projects Undertaken by a Public Agency Sponsor.**

   The terms, conditions and assurances of this Grant Agreement shall remain in full force and effect throughout the useful life of the facilities developed or equipment acquired for an airport development or noise compatibility program project, or throughout the useful life of the project items installed within a facility under a noise compatibility program project, but in any event not to exceed twenty (20) years from the date of acceptance of a grant offer of Federal funds for the project. However, there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport. There shall be no limit on the duration of the terms, conditions, and assurances with respect to real property acquired with federal funds. Furthermore, the duration of the Civil Rights assurance shall be specified in the assurances.

2. **Airport Development or Noise Compatibility Projects Undertaken by a Private Sponsor.**

   The preceding paragraph (1) also applies to a private sponsor except that the useful life of project items installed within a facility or the useful life of the facilities developed or equipment acquired under an airport development or noise compatibility program project shall be no less than ten (10) years from the date of acceptance of Federal aid for the project.

3. **Airport Planning Undertaken by a Sponsor.**

   Unless otherwise specified in this Grant Agreement, only Assurances 1, 2, 3, 5, 6, 13, 18, 23, 25, 30, 32, 33, 34, and 37 in Section C apply to planning projects. The terms, conditions, and

assurances of this Grant Agreement shall remain in full force and effect during the life of the project; there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport.

**C.  Sponsor Certification.**

The sponsor hereby assures and certifies, with respect to this grant that:

**1.  General Federal Requirements**

It will comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds for this Grant including but not limited to the following:

FEDERAL LEGISLATION

    a.  49 U.S.C. subtitle VII, as amended.

    b.  Davis-Bacon Act, as amended — 40 U.S.C. §§ 3141-3144, 3146, and 3147, et seq.[1]

    c.  Federal Fair Labor Standards Act – 29 U.S.C. § 201, et seq.

    d.  Hatch Act – 5 U.S.C. § 1501, et seq.[2]

    e.  Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601, et seq.[1, 2]

    f.  National Historic Preservation Act of 1966 – Section 106 – 54 U.S.C. § 306108.[1]

    g.  Archeological and Historic Preservation Act of 1974 – 54 U.S.C. § 312501, et seq.[1]

    h.  Native Americans Grave Repatriation Act – 25 U.S.C. § 3001, et seq.

    i.  Clean Air Act, P.L. 90-148, as amended – 42 U.S.C. § 7401, et seq.

    j.  Coastal Zone Management Act, P.L. 92-583, as amended – 16 U.S.C. § 1451, et seq.

    k.  Flood Disaster Protection Act of 1973 – Section 102(a) - 42 U.S.C. § 4012a.[1]

    l.  49 U.S.C. § 303, (formerly known as Section 4(f)).

    m.  Rehabilitation Act of 1973 – 29 U.S.C. § 794.

    n.  Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq., 78 stat. 252) (prohibits discrimination on the basis of race, color, national origin).

    o.  Americans with Disabilities Act of 1990, as amended, (42 U.S.C. § 12101 et seq.) (prohibits discrimination on the basis of disability).

    p.  Age Discrimination Act of 1975 – 42 U.S.C. § 6101, et seq.

    q.  American Indian Religious Freedom Act, P.L. 95-341, as amended.

    r.  Architectural Barriers Act of 1968, as amended – 42 U.S.C. § 4151, et seq.[1]

    s.  Powerplant and Industrial Fuel Use Act of 1978 – Section 403 – 42 U.S.C. § 8373.[1]

    t.  Contract Work Hours and Safety Standards Act – 40 U.S.C. § 3701, et seq.[1]

    u.  Copeland Anti-kickback Act – 18 U.S.C. § 874.[1]

v.  National Environmental Policy Act of 1969 – 42 U.S.C. § 4321, et seq.[1]

w.  Wild and Scenic Rivers Act, P.L. 90-542, as amended – 16 U.S.C. § 1271, et seq.

x.  Single Audit Act of 1984 – 31 U.S.C. § 7501, et seq.[2]

y.  Drug-Free Workplace Act of 1988 – 41 U.S.C. §§ 8101 through 8105.

z.  The Federal Funding Accountability and Transparency Act of 2006, as amended (P.L. 109-282, as amended by section 6202 of P.L. 110-252).

aa.  Civil Rights Restoration Act of 1987, P.L. 100-259.

bb.  Build America, Buy America Act, P.L. 117-58, Title IX.


## EXECUTIVE ORDERS

a.  Executive Order 11246 – Equal Employment Opportunity[1]

b.  Executive Order 11990 – Protection of Wetlands

c.  Executive Order 11998 – Flood Plain Management

d.  Executive Order 12372 – Intergovernmental Review of Federal Programs

e.  Executive Order 12699 – Seismic Safety of Federal and Federally Assisted New Building Construction[1]

f.  Executive Order 12898 – Environmental Justice

g.  Executive Order 13166 – Improving Access to Services for Persons with Limited English Proficiency

h.  Executive Order 13985 – Executive Order on Advancing Racial Equity and Support for Underserved Communities Through the Federal Government

i.  Executive Order 13988 – Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation

j.  Executive Order 14005 – Ensuring the Future is Made in all of America by All of America's Workers

k.  Executive Order 14008 – Tackling the Climate Crisis at Home and Abroad


## FEDERAL REGULATIONS

a.  2 CFR Part 180 – OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement).

b.  2 CFR Part 200 – Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards. [4, 5]

c.  2 CFR Part 1200 – Nonprocurement Suspension and Debarment.

d.  14 CFR Part 13 – Investigative and Enforcement Procedures.

e.  14 CFR Part 16 – Rules of Practice for Federally-Assisted Airport Enforcement Proceedings.

f.  14 CFR Part 150 – Airport Noise Compatibility Planning.

g.  28 CFR Part 35 – Nondiscrimination on the Basis of Disability in State and Local Government Services.

h.  28 CFR § 50.3 – U.S. Department of Justice Guidelines for the Enforcement of Title VI of the Civil Rights Act of 1964.

i.  29 CFR Part 1 – Procedures for Predetermination of Wage Rates.[1]

j.  29 CFR Part 3 – Contractors and Subcontractors on Public Building or Public Work Financed in Whole or in Part by Loans or Grants from the United States.[1]

k.  29 CFR Part 5 – Labor Standards Provisions Applicable to Contracts Covering Federally Financed and Assisted Construction (Also Labor Standards Provisions Applicable to Nonconstruction Contracts Subject to the Contract Work Hours and Safety Standards Act).[1]

l.  41 CFR Part 60 – Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor (Federal and Federally-assisted contracting requirements).[1]

m.  49 CFR Part 20 – New Restrictions on Lobbying.

n.  49 CFR Part 21 – Nondiscrimination in Federally-Assisted Programs of the Department of Transportation - Effectuation of Title VI of the Civil Rights Act of 1964.

o.  49 CFR Part 23 – Participation by Disadvantage Business Enterprise in Airport Concessions.

p.  49 CFR Part 24 – Uniform Relocation Assistance and Real Property Acquisition for Federal and Federally-Assisted Programs.[1, 2]

q.  49 CFR Part 26 – Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs.

r.  49 CFR Part 27 – Nondiscrimination on the Basis of Disability in Programs or Activities Receiving Federal Financial Assistance.[1]

s.  49 CFR Part 28 – Enforcement of Nondiscrimination on the Basis of Handicap in Programs or Activities Conducted by the Department of Transportation.

t.  49 CFR Part 30 – Denial of Public Works Contracts to Suppliers of Goods and Services of Countries That Deny Procurement Market Access to U.S. Contractors.

u.  49 CFR Part 32 – Governmentwide Requirements for Drug-Free Workplace (Financial Assistance).

v.  49 CFR Part 37 – Transportation Services for Individuals with Disabilities (ADA).

w.  49 CFR Part 38 – Americans with Disabilities Act (ADA) Accessibility Specifications for Transportation Vehicles.

x.  49 CFR Part 41 – Seismic Safety.

### *FOOTNOTES TO ASSURANCE (C)(1)*

[1]  These laws do not apply to airport planning sponsors.

[2]  These laws do not apply to private sponsors.

[3]  2 CFR Part 200 contains requirements for State and Local Governments receiving Federal assistance. Any requirement levied upon State and Local Governments by this regulation shall

apply where applicable to private sponsors receiving Federal assistance under Title 49, United States Code.

[4]   Cost principles established in 2 CFR part 200 subpart E must be used as guidelines for determining the eligibility of specific types of expenses.

[5]   Audit requirements established in 2 CFR part 200 subpart F are the guidelines for audits.

## SPECIFIC ASSURANCES

Specific assurances required to be included in grant agreements by any of the above laws, regulations or circulars are incorporated by reference in this Grant Agreement.

**2.   Responsibility and Authority of the Sponsor.**

    a.   Public Agency Sponsor:

    It has legal authority to apply for this Grant, and to finance and carry out the proposed project; that a resolution, motion or similar action has been duly adopted or passed as an official act of the applicant's governing body authorizing the filing of the application, including all understandings and assurances contained therein, and directing and authorizing the person identified as the official representative of the applicant to act in connection with the application and to provide such additional information as may be required.

    b.   Private Sponsor:

    It has legal authority to apply for this Grant and to finance and carry out the proposed project and comply with all terms, conditions, and assurances of this Grant Agreement. It shall designate an official representative and shall in writing direct and authorize that person to file this application, including all understandings and assurances contained therein; to act in connection with this application; and to provide such additional information as may be required.

**3.   Sponsor Fund Availability.**

It has sufficient funds available for that portion of the project costs which are not to be paid by the United States. It has sufficient funds available to assure operation and maintenance of items funded under this Grant Agreement which it will own or control.

**4.   Good Title.**

    a.   It, a public agency or the Federal government, holds good title, satisfactory to the Secretary, to the landing area of the airport or site thereof, or will give assurance satisfactory to the Secretary that good title will be acquired.

    b.   For noise compatibility program projects to be carried out on the property of the sponsor, it holds good title satisfactory to the Secretary to that portion of the property upon which Federal funds will be expended or will give assurance to the Secretary that good title will be obtained.

**5.   Preserving Rights and Powers.**

    a.   It will not take or permit any action which would operate to deprive it of any of the rights and powers necessary to perform any or all of the terms, conditions, and assurances in this Grant Agreement without the written approval of the Secretary, and will act promptly to acquire, extinguish or modify any outstanding rights or claims of right of others which would interfere

with such performance by the sponsor. This shall be done in a manner acceptable to the Secretary.

b.  Subject to the FAA Act of 2018, Public Law 115-254, Section 163, it will not sell, lease, encumber, or otherwise transfer or dispose of any part of its title or other interests in the property shown on Exhibit A to this application or, for a noise compatibility program project, that portion of the property upon which Federal funds have been expended, for the duration of the terms, conditions, and assurances in this Grant Agreement without approval by the Secretary. If the transferee is found by the Secretary to be eligible under Title 49, United States Code, to assume the obligations of this Grant Agreement and to have the power, authority, and financial resources to carry out all such obligations, the sponsor shall insert in the contract or document transferring or disposing of the sponsor's interest, and make binding upon the transferee all of the terms, conditions, and assurances contained in this Grant Agreement.

c.  For all noise compatibility program projects which are to be carried out by another unit of local government or are on property owned by a unit of local government other than the sponsor, it will enter into an agreement with that government. Except as otherwise specified by the Secretary, that agreement shall obligate that government to the same terms, conditions, and assurances that would be applicable to it if it applied directly to the FAA for a grant to undertake the noise compatibility program project. That agreement and changes thereto must be satisfactory to the Secretary. It will take steps to enforce this agreement against the local government if there is substantial non-compliance with the terms of the agreement.

d.  For noise compatibility program projects to be carried out on privately owned property, it will enter into an agreement with the owner of that property which includes provisions specified by the Secretary. It will take steps to enforce this agreement against the property owner whenever there is substantial non-compliance with the terms of the agreement.

e.  If the sponsor is a private sponsor, it will take steps satisfactory to the Secretary to ensure that the airport will continue to function as a public-use airport in accordance with these assurances for the duration of these assurances.

f.  If an arrangement is made for management and operation of the airport by any agency or person other than the sponsor or an employee of the sponsor, the sponsor will reserve sufficient rights and authority to ensure that the airport will be operated and maintained in accordance with Title 49, United States Code, the regulations and the terms, conditions and assurances in this Grant Agreement and shall ensure that such arrangement also requires compliance therewith.

g.  Sponsors of commercial service airports will not permit or enter into any arrangement that results in permission for the owner or tenant of a property used as a residence, or zoned for residential use, to taxi an aircraft between that property and any location on airport. Sponsors of general aviation airports entering into any arrangement that results in permission for the owner of residential real property adjacent to or near the airport must comply with the requirements of Sec. 136 of Public Law 112-95 and the sponsor assurances.

**6.  Consistency with Local Plans.**

The project is reasonably consistent with plans (existing at the time of submission of this application) of public agencies that are authorized by the State in which the project is located to plan for the development of the area surrounding the airport.

**7. Consideration of Local Interest.**

It has given fair consideration to the interest of communities in or near where the project may be located.

**8. Consultation with Users.**

In making a decision to undertake any airport development project under Title 49, United States Code, it has undertaken reasonable consultations with affected parties using the airport at which project is proposed.

**9. Public Hearings.**

In projects involving the location of an airport, an airport runway, or a major runway extension, it has afforded the opportunity for public hearings for the purpose of considering the economic, social, and environmental effects of the airport or runway location and its consistency with goals and objectives of such planning as has been carried out by the community and it shall, when requested by the Secretary, submit a copy of the transcript of such hearings to the Secretary. Further, for such projects, it has on its management board either voting representation from the communities where the project is located or has advised the communities that they have the right to petition the Secretary concerning a proposed project.

**10. Metropolitan Planning Organization.**

In projects involving the location of an airport, an airport runway, or a major runway extension at a medium or large hub airport, the sponsor has made available to and has provided upon request to the metropolitan planning organization in the area in which the airport is located, if any, a copy of the proposed amendment to the airport layout plan to depict the project and a copy of any airport master plan in which the project is described or depicted.

**11. Pavement Preventive Maintenance-Management.**

With respect to a project approved after January 1, 1995, for the replacement or reconstruction of pavement at the airport, it assures or certifies that it has implemented an effective airport pavement maintenance-management program and it assures that it will use such program for the useful life of any pavement constructed, reconstructed or repaired with Federal financial assistance at the airport. It will provide such reports on pavement condition and pavement management programs as the Secretary determines may be useful.

**12. Terminal Development Prerequisites.**

For projects which include terminal development at a public use airport, as defined in Title 49, it has, on the date of submittal of the project grant application, all the safety equipment required for certification of such airport under 49 U.S.C. § 44706, and all the security equipment required by rule or regulation, and has provided for access to the passenger enplaning and deplaning area of such airport to passengers enplaning and deplaning from aircraft other than air carrier aircraft.

**13. Accounting System, Audit, and Record Keeping Requirements.**

    a.  It shall keep all project accounts and records which fully disclose the amount and disposition by the recipient of the proceeds of this Grant, the total cost of the project in connection with which this Grant is given or used, and the amount or nature of that portion of the cost of the project supplied by other sources, and such other financial records pertinent to the project. The

accounts and records shall be kept in accordance with an accounting system that will facilitate an effective audit in accordance with the Single Audit Act of 1984.

b. It shall make available to the Secretary and the Comptroller General of the United States, or any of their duly authorized representatives, for the purpose of audit and examination, any books, documents, papers, and records of the recipient that are pertinent to this Grant. The Secretary may require that an appropriate audit be conducted by a recipient. In any case in which an independent audit is made of the accounts of a sponsor relating to the disposition of the proceeds of a grant or relating to the project in connection with which this Grant was given or used, it shall file a certified copy of such audit with the Comptroller General of the United States not later than six (6) months following the close of the fiscal year for which the audit was made.

## 14. Minimum Wage Rates.

It shall include, in all contracts in excess of $2,000 for work on any projects funded under this Grant Agreement which involve labor, provisions establishing minimum rates of wages, to be predetermined by the Secretary of Labor under 40 U.S.C. §§ 3141-3144, 3146, and 3147, Public Building, Property, and Works), which contractors shall pay to skilled and unskilled labor, and such minimum rates shall be stated in the invitation for bids and shall be included in proposals or bids for the work.

## 15. Veteran's Preference.

It shall include in all contracts for work on any project funded under this Grant Agreement which involve labor, such provisions as are necessary to insure that, in the employment of labor (except in executive, administrative, and supervisory positions), preference shall be given to Vietnam era veterans, Persian Gulf veterans, Afghanistan-Iraq war veterans, disabled veterans, and small business concerns owned and controlled by disabled veterans as defined in 49 U.S.C. § 47112. However, this preference shall apply only where the individuals are available and qualified to perform the work to which the employment relates.

## 16. Conformity to Plans and Specifications.

It will execute the project subject to plans, specifications, and schedules approved by the Secretary. Such plans, specifications, and schedules shall be submitted to the Secretary prior to commencement of site preparation, construction, or other performance under this Grant Agreement, and, upon approval of the Secretary, shall be incorporated into this Grant Agreement. Any modification to the approved plans, specifications, and schedules shall also be subject to approval of the Secretary, and incorporated into this Grant Agreement.

## 17. Construction Inspection and Approval.

It will provide and maintain competent technical supervision at the construction site throughout the project to assure that the work conforms to the plans, specifications, and schedules approved by the Secretary for the project. It shall subject the construction work on any project contained in an approved project application to inspection and approval by the Secretary and such work shall be in accordance with regulations and procedures prescribed by the Secretary. Such regulations and procedures shall require such cost and progress reporting by the sponsor or sponsors of such project as the Secretary shall deem necessary.

18. **Planning Projects.**

In carrying out planning projects:

a. It will execute the project in accordance with the approved program narrative contained in the project application or with the modifications similarly approved.

b. It will furnish the Secretary with such periodic reports as required pertaining to the planning project and planning work activities.

c. It will include in all published material prepared in connection with the planning project a notice that the material was prepared under a grant provided by the United States.

d. It will make such material available for examination by the public, and agrees that no material prepared with funds under this project shall be subject to copyright in the United States or any other country.

e. It will give the Secretary unrestricted authority to publish, disclose, distribute, and otherwise use any of the material prepared in connection with this grant.

f. It will grant the Secretary the right to disapprove the sponsor's employment of specific consultants and their subcontractors to do all or any part of this project as well as the right to disapprove the proposed scope and cost of professional services.

g. It will grant the Secretary the right to disapprove the use of the sponsor's employees to do all or any part of the project.

h. It understands and agrees that the Secretary's approval of this project grant or the Secretary's approval of any planning material developed as part of this grant does not constitute or imply any assurance or commitment on the part of the Secretary to approve any pending or future application for a Federal airport grant.

19. **Operation and Maintenance.**

a. The airport and all facilities which are necessary to serve the aeronautical users of the airport, other than facilities owned or controlled by the United States, shall be operated at all times in a safe and serviceable condition and in accordance with the minimum standards as may be required or prescribed by applicable Federal, state, and local agencies for maintenance and operation. It will not cause or permit any activity or action thereon which would interfere with its use for airport purposes. It will suitably operate and maintain the airport and all facilities thereon or connected therewith, with due regard to climatic and flood conditions. Any proposal to temporarily close the airport for non-aeronautical purposes must first be approved by the Secretary. In furtherance of this assurance, the sponsor will have in effect arrangements for:

1. Operating the airport's aeronautical facilities whenever required;

2. Promptly marking and lighting hazards resulting from airport conditions, including temporary conditions; and

3. Promptly notifying pilots of any condition affecting aeronautical use of the airport. Nothing contained herein shall be construed to require that the airport be operated for aeronautical use during temporary periods when snow, flood, or other climatic conditions interfere with such operation and maintenance. Further, nothing herein shall be construed as requiring the maintenance, repair, restoration, or replacement of any structure or

facility which is substantially damaged or destroyed due to an act of God or other condition or circumstance beyond the control of the sponsor.

b.  It will suitably operate and maintain noise compatibility program items that it owns or controls upon which Federal funds have been expended.

## 20. Hazard Removal and Mitigation.

It will take appropriate action to assure that such terminal airspace as is required to protect instrument and visual operations to the airport (including established minimum flight altitudes) will be adequately cleared and protected by removing, lowering, relocating, marking, or lighting or otherwise mitigating existing airport hazards and by preventing the establishment or creation of future airport hazards.

## 21. Compatible Land Use.

It will take appropriate action, to the extent reasonable, including the adoption of zoning laws, to restrict the use of land adjacent to or in the immediate vicinity of the airport to activities and purposes compatible with normal airport operations, including landing and takeoff of aircraft. In addition, if the project is for noise compatibility program implementation, it will not cause or permit any change in land use, within its jurisdiction, that will reduce its compatibility, with respect to the airport, of the noise compatibility program measures upon which Federal funds have been expended.

## 22. Economic Nondiscrimination.

a.  It will make the airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities, including commercial aeronautical activities offering services to the public at the airport.

b.  In any agreement, contract, lease, or other arrangement under which a right or privilege at the airport is granted to any person, firm, or corporation to conduct or to engage in any aeronautical activity for furnishing services to the public at the airport, the sponsor will insert and enforce provisions requiring the contractor to:

1.  Furnish said services on a reasonable, and not unjustly discriminatory, basis to all users thereof, and

2.  Charge reasonable, and not unjustly discriminatory, prices for each unit or service, provided that the contractor may be allowed to make reasonable and nondiscriminatory discounts, rebates, or other similar types of price reductions to volume purchasers.

c.  Each fixed-based operator at the airport shall be subject to the same rates, fees, rentals, and other charges as are uniformly applicable to all other fixed-based operators making the same or similar uses of such airport and utilizing the same or similar facilities.

d.  Each air carrier using such airport shall have the right to service itself or to use any fixed-based operator that is authorized or permitted by the airport to serve any air carrier at such airport.

e.  Each air carrier using such airport (whether as a tenant, non-tenant, or subtenant of another air carrier tenant) shall be subject to such nondiscriminatory and substantially comparable rules, regulations, conditions, rates, fees, rentals, and other charges with respect to facilities directly and substantially related to providing air transportation as are applicable to all such air carriers which make similar use of such airport and utilize similar facilities, subject to reasonable

classifications such as tenants or non-tenants and signatory carriers and non-signatory carriers. Classification or status as tenant or signatory shall not be unreasonably withheld by any airport provided an air carrier assumes obligations substantially similar to those already imposed on air carriers in such classification or status.

f.   It will not exercise or grant any right or privilege which operates to prevent any person, firm, or corporation operating aircraft on the airport from performing any services on its own aircraft with its own employees (including, but not limited to maintenance, repair, and fueling) that it may choose to perform.

g.   In the event the sponsor itself exercises any of the rights and privileges referred to in this assurance, the services involved will be provided on the same conditions as would apply to the furnishing of such services by commercial aeronautical service providers authorized by the sponsor under these provisions.

h.   The sponsor may establish such reasonable, and not unjustly discriminatory, conditions to be met by all users of the airport as may be necessary for the safe and efficient operation of the airport.

i.   The sponsor may prohibit or limit any given type, kind or class of aeronautical use of the airport if such action is necessary for the safe operation of the airport or necessary to serve the civil aviation needs of the public.

## 23. Exclusive Rights.

It will permit no exclusive right for the use of the airport by any person providing, or intending to provide, aeronautical services to the public. For purposes of this paragraph, the providing of the services at an airport by a single fixed-based operator shall not be construed as an exclusive right if both of the following apply:

a.   It would be unreasonably costly, burdensome, or impractical for more than one fixed-based operator to provide such services, and

b.   If allowing more than one fixed-based operator to provide such services would require the reduction of space leased pursuant to an existing agreement between such single fixed-based operator and such airport. It further agrees that it will not, either directly or indirectly, grant or permit any person, firm, or corporation, the exclusive right at the airport to conduct any aeronautical activities, including, but not limited to charter flights, pilot training, aircraft rental and sightseeing, aerial photography, crop dusting, aerial advertising and surveying, air carrier operations, aircraft sales and services, sale of aviation petroleum products whether or not conducted in conjunction with other aeronautical activity, repair and maintenance of aircraft, sale of aircraft parts, and any other activities which because of their direct relationship to the operation of aircraft can be regarded as an aeronautical activity, and that it will terminate any exclusive right to conduct an aeronautical activity now existing at such an airport before the grant of any assistance under Title 49, United States Code.

## 24. Fee and Rental Structure.

It will maintain a fee and rental structure for the facilities and services at the airport which will make the airport as self-sustaining as possible under the circumstances existing at the particular airport, taking into account such factors as the volume of traffic and economy of collection. No part of the Federal share of an airport development, airport planning or noise compatibility project for

which a Grant is made under Title 49, United States Code, the Airport and Airway Improvement Act of 1982, the Federal Airport Act or the Airport and Airway Development Act of 1970 shall be included in the rate basis in establishing fees, rates, and charges for users of that airport.

**25. Airport Revenues.**

a. All revenues generated by the airport and any local taxes on aviation fuel established after December 30, 1987, will be expended by it for the capital or operating costs of the airport; the local airport system; or other local facilities which are owned or operated by the owner or operator of the airport and which are directly and substantially related to the actual air transportation of passengers or property; or for noise mitigation purposes on or off the airport. The following exceptions apply to this paragraph:

1. If covenants or assurances in debt obligations issued before September 3, 1982, by the owner or operator of the airport, or provisions enacted before September 3, 1982, in governing statutes controlling the owner or operator's financing, provide for the use of the revenues from any of the airport owner or operator's facilities, including the airport, to support not only the airport but also the airport owner or operator's general debt obligations or other facilities, then this limitation on the use of all revenues generated by the airport (and, in the case of a public airport, local taxes on aviation fuel) shall not apply.

2. If the Secretary approves the sale of a privately owned airport to a public sponsor and provides funding for any portion of the public sponsor's acquisition of land, this limitation on the use of all revenues generated by the sale shall not apply to certain proceeds from the sale. This is conditioned on repayment to the Secretary by the private owner of an amount equal to the remaining unamortized portion (amortized over a 20-year period) of any airport improvement grant made to the private owner for any purpose other than land acquisition on or after October 1, 1996, plus an amount equal to the federal share of the current fair market value of any land acquired with an airport improvement grant made to that airport on or after October 1, 1996.

3. Certain revenue derived from or generated by mineral extraction, production, lease, or other means at a general aviation airport (as defined at 49 U.S.C. § 47102), if the FAA determines the airport sponsor meets the requirements set forth in Section 813 of Public Law 112-95.

b. As part of the annual audit required under the Single Audit Act of 1984, the sponsor will direct that the audit will review, and the resulting audit report will provide an opinion concerning, the use of airport revenue and taxes in paragraph (a), and indicating whether funds paid or transferred to the owner or operator are paid or transferred in a manner consistent with Title 49, United States Code and any other applicable provision of law, including any regulation promulgated by the Secretary or Administrator.

c. Any civil penalties or other sanctions will be imposed for violation of this assurance in accordance with the provisions of 49 U.S.C. § 47107.

**26. Reports and Inspections.**

It will:

a. submit to the Secretary such annual or special financial and operations reports as the Secretary may reasonably request and make such reports available to the public; make available to the

public at reasonable times and places a report of the airport budget in a format prescribed by the Secretary;

b. for airport development projects, make the airport and all airport records and documents affecting the airport, including deeds, leases, operation and use agreements, regulations and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request;

c. for noise compatibility program projects, make records and documents relating to the project and continued compliance with the terms, conditions, and assurances of this Grant Agreement including deeds, leases, agreements, regulations, and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request; and

d. in a format and time prescribed by the Secretary, provide to the Secretary and make available to the public following each of its fiscal years, an annual report listing in detail:

   1. all amounts paid by the airport to any other unit of government and the purposes for which each such payment was made; and

   2. all services and property provided by the airport to other units of government and the amount of compensation received for provision of each such service and property.

**27. Use by Government Aircraft.**

It will make available all of the facilities of the airport developed with Federal financial assistance and all those usable for landing and takeoff of aircraft to the United States for use by Government aircraft in common with other aircraft at all times without charge, except, if the use by Government aircraft is substantial, charge may be made for a reasonable share, proportional to such use, for the cost of operating and maintaining the facilities used. Unless otherwise determined by the Secretary, or otherwise agreed to by the sponsor and the using agency, substantial use of an airport by Government aircraft will be considered to exist when operations of such aircraft are in excess of those which, in the opinion of the Secretary, would unduly interfere with use of the landing areas by other authorized aircraft, or during any calendar month that:

a. Five (5) or more Government aircraft are regularly based at the airport or on land adjacent thereto; or

b. The total number of movements (counting each landing as a movement) of Government aircraft is 300 or more, or the gross accumulative weight of Government aircraft using the airport (the total movement of Government aircraft multiplied by gross weights of such aircraft) is in excess of five million pounds.

**28. Land for Federal Facilities.**

It will furnish without cost to the Federal Government for use in connection with any air traffic control or air navigation activities, or weather-reporting and communication activities related to air traffic control, any areas of land or water, or estate therein as the Secretary considers necessary or desirable for construction, operation, and maintenance at Federal expense of space or facilities for such purposes. Such areas or any portion thereof will be made available as provided herein within four months after receipt of a written request from the Secretary.

29. **Airport Layout Plan.**

   a. Subject to the FAA Reauthorization Act of 2018, Public Law 115-254, Section 163, it will keep up to date at all times an airport layout plan of the airport showing:

      1. boundaries of the airport and all proposed additions thereto, together with the boundaries of all offsite areas owned or controlled by the sponsor for airport purposes and proposed additions thereto;

      2. the location and nature of all existing and proposed airport facilities and structures (such as runways, taxiways, aprons, terminal buildings, hangars and roads), including all proposed extensions and reductions of existing airport facilities;

      3. the location of all existing and proposed non-aviation areas and of all existing improvements thereon; and

      4. all proposed and existing access points used to taxi aircraft across the airport's property boundary.

      Such airport layout plans and each amendment, revision, or modification thereof, shall be subject to the approval of the Secretary which approval shall be evidenced by the signature of a duly authorized representative of the Secretary on the face of the airport layout plan. The sponsor will not make or permit any changes or alterations in the airport or any of its facilities which are not in conformity with the airport layout plan as approved by the Secretary and which might, in the opinion of the Secretary, adversely affect the safety, utility or efficiency of the airport.

   b. Subject to the FAA Reauthorization Act of 2018, Public Law 115-254, Section 163, if a change or alteration in the airport or the facilities is made which the Secretary determines adversely affects the safety, utility, or efficiency of any federally owned, leased, or funded property on or off the airport and which is not in conformity with the airport layout plan as approved by the Secretary, the owner or operator will, if requested, by the Secretary:

      1. eliminate such adverse effect in a manner approved by the Secretary; or

      2. bear all costs of relocating such property (or replacement thereof) to a site acceptable to the Secretary and all costs of restoring such property (or replacement thereof) to the level of safety, utility, efficiency, and cost of operation existing before the unapproved change in the airport or its facilities except in the case of a relocation or replacement of an existing airport facility due to a change in the Secretary's design standards beyond the control of the airport sponsor.

30. **Civil Rights.**

   It will promptly take any measures necessary to ensure that no person in the United States shall, on the grounds of race, color, and national origin (including limited English proficiency) in accordance with the provisions of  Title VI of the Civil Rights Act of 1964 (78 Stat. 252, 42 U.S.C. §§ 2000d to 2000d-4); creed and sex (including sexual orientation and gender identity) per 49 U.S.C. § 47123 and related requirements; age per the Age Discrimination Act of 1975 and related requirements; or disability per the Americans with Disabilities Act of 1990 and related requirements, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination in any program and activity conducted with, or benefiting from, funds received from this Grant.

a.  Using the definitions of activity, facility, and program as found and defined in 49 CFR §§ 21.23(b) and 21.23(e), the sponsor will facilitate all programs, operate all facilities, or conduct all programs in compliance with all non-discrimination requirements imposed by or pursuant to these assurances.

b.  Applicability

1.  Programs and Activities. If the sponsor has received a grant (or other federal assistance) for any of the sponsor's program or activities, these requirements extend to all of the sponsor's programs and activities.

2.  Facilities. Where it receives a grant or other federal financial assistance to construct, expand, renovate, remodel, alter, or acquire a facility, or part of a facility, the assurance extends to the entire facility and facilities operated in connection therewith.

3.  Real Property. Where the sponsor receives a grant or other Federal financial assistance in the form of, or for the acquisition of real property or an interest in real property, the assurance will extend to rights to space on, over, or under such property.

c.  Duration.

The sponsor agrees that it is obligated to this assurance for the period during which Federal financial assistance is extended to the program, except where the Federal financial assistance is to provide, or is in the form of, personal property, or real property, or interest therein, or structures or improvements thereon, in which case the assurance obligates the sponsor, or any transferee for the longer of the following periods:

1.  So long as the airport is used as an airport, or for another purpose involving the provision of similar services or benefits; or

2.  So long as the sponsor retains ownership or possession of the property.

d.  Required Solicitation Language. It will include the following notification in all solicitations for bids, Requests For Proposals for work, or material under this Grant Agreement and in all proposals for agreements, including airport concessions, regardless of funding source:

"The (**[Selection Criteria: Sponsor Name]**), in accordance with the provisions of Title VI of the Civil Rights Act of 1964 (78 Stat. 252, 42 U.S.C. §§ 2000d to 2000d-4) and the Regulations, hereby notifies all bidders or offerors that it will affirmatively ensure that for any contract entered into pursuant to this advertisement, [select businesses, or disadvantaged business enterprises or airport concession disadvantaged business enterprises] will be afforded full and fair opportunity to submit bids in response to this invitation and no businesses will be discriminated against on the grounds of race, color, national origin (including limited English proficiency), creed, sex (including sexual orientation and gender identity), age, or disability in consideration for an award."

e.  Required Contract Provisions.

1.  It will insert the non-discrimination contract clauses requiring compliance with the acts and regulations relative to non-discrimination in Federally-assisted programs of the Department of Transportation (DOT), and incorporating the acts and regulations into the contracts by reference in every contract or agreement subject to the non-discrimination in Federally-assisted programs of the DOT acts and regulations.

2.  It will include a list of the pertinent non-discrimination authorities in every contract that is subject to the non-discrimination acts and regulations.

3.  It will insert non-discrimination contract clauses as a covenant running with the land, in any deed from the United States effecting or recording a transfer of real property, structures, use, or improvements thereon or interest therein to a sponsor.

4.  It will insert non-discrimination contract clauses prohibiting discrimination on the basis of race, color, national origin (including limited English proficiency), creed, sex (including sexual orientation and gender identity), age, or disability as a covenant running with the land, in any future deeds, leases, license, permits, or similar instruments entered into by the sponsor with other parties:

    a.  For the subsequent transfer of real property acquired or improved under the applicable activity, project, or program; and

    b.  For the construction or use of, or access to, space on, over, or under real property acquired or improved under the applicable activity, project, or program.

f.  It will provide for such methods of administration for the program as are found by the Secretary to give reasonable guarantee that it, other recipients, sub-recipients, sub-grantees, contractors, subcontractors, consultants, transferees, successors in interest, and other participants of Federal financial assistance under such program will comply with all requirements imposed or pursuant to the acts, the regulations, and this assurance.

g.  It agrees that the United States has a right to seek judicial enforcement with regard to any matter arising under the acts, the regulations, and this assurance.

**31. Disposal of Land.**

a.  For land purchased under a grant for airport noise compatibility purposes, including land serving as a noise buffer, it will dispose of the land, when the land is no longer needed for such purposes, at fair market value, at the earliest practicable time. That portion of the proceeds of such disposition which is proportionate to the United States' share of acquisition of such land will be, at the discretion of the Secretary, (1) reinvested in another project at the airport, or (2) transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

    1.  Reinvestment in an approved noise compatibility project;

    2.  Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. § 47117(e);

    3.  Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. §§ 47114, 47115, or 47117;

    4.  Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

    5.  Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

    If land acquired under a grant for noise compatibility purposes is leased at fair market value and consistent with noise buffering purposes, the lease will not be considered a disposal of the land. Revenues derived from such a lease may be used for an approved airport development

project that would otherwise be eligible for grant funding or any permitted use of airport revenue.

b.  For land purchased under a grant for airport development purposes (other than noise compatibility), it will, when the land is no longer needed for airport purposes, dispose of such land at fair market value or make available to the Secretary an amount equal to the United States' proportionate share of the fair market value of the land. That portion of the proceeds of such disposition which is proportionate to the United States' share of the cost of acquisition of such land will, upon application to the Secretary, be reinvested or transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

   1.  Reinvestment in an approved noise compatibility project;

   2.  Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. § 47117(e);

   3.  Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. §§ 47114, 47115, or 47117;

   4.  Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

   5.  Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

c.  Land shall be considered to be needed for airport purposes under this assurance if (1) it may be needed for aeronautical purposes (including runway protection zones) or serve as noise buffer land, and (2) the revenue from interim uses of such land contributes to the financial self-sufficiency of the airport. Further, land purchased with a grant received by an airport operator or owner before December 31, 1987, will be considered to be needed for airport purposes if the Secretary or Federal agency making such grant before December 31, 1987, was notified by the operator or owner of the uses of such land, did not object to such use, and the land continues to be used for that purpose, such use having commenced no later than December 15, 1989.

d.  Disposition of such land under (a), (b), or (c) will be subject to the retention or reservation of any interest or right therein necessary to ensure that such land will only be used for purposes which are compatible with noise levels associated with operation of the airport.

## 32. Engineering and Design Services.

If any phase of such project has received Federal funds under Chapter 471 subchapter 1 of Title 49 U.S.C., it will award each contract, or sub-contract for program management, construction management, planning studies, feasibility studies, architectural services, preliminary engineering, design, engineering, surveying, mapping or related services in the same manner as a contract for architectural and engineering services is negotiated under Chapter 11 of Title 40 U S.C., or an equivalent qualifications-based requirement prescribed for or by the sponsor of the airport.

## 33. Foreign Market Restrictions.

It will not allow funds provided under this Grant to be used to fund any project which uses any product or service of a foreign country during the period in which such foreign country is listed by

the United States Trade Representative as denying fair and equitable market opportunities for products and suppliers of the United States in procurement and construction.

**34. Policies, Standards, and Specifications.**

It will carry out any project funded under an Airport Improvement Program Grant in accordance with policies, standards, and specifications approved by the Secretary including, but not limited to, current FAA Advisory Circulars (https://www.faa.gov/airports/aip/aip_pfc_checklist) for AIP projects as of [Selection Criteria: Project Application Date].

**35. Relocation and Real Property Acquisition.**

   a.  It will be guided in acquiring real property, to the greatest extent practicable under State law, by the land acquisition policies in Subpart B of 49 CFR Part 24 and will pay or reimburse property owners for necessary expenses as specified in Subpart B.

   b.  It will provide a relocation assistance program offering the services described in Subpart C of 49 CFR Part 24 and fair and reasonable relocation payments and assistance to displaced persons as required in Subpart D and E of 49 CFR Part 24.

   c.  It will make available within a reasonable period of time prior to displacement, comparable replacement dwellings to displaced persons in accordance with Subpart E of 49 CFR Part 24.

**36. Access By Intercity Buses.**

The airport owner or operator will permit, to the maximum extent practicable, intercity buses or other modes of transportation to have access to the airport; however, it has no obligation to fund special facilities for intercity buses or for other modes of transportation.

**37. Disadvantaged Business Enterprises.**

The sponsor shall not discriminate on the basis of race, color, national origin, or sex, in the award and performance of any DOT-assisted contract covered by 49 CFR Part 26, or in the award and performance of any concession activity contract covered by 49 CFR Part 23. In addition, the sponsor shall not discriminate on the basis of race, color, national origin or sex in the administration of its Disadvantaged Business Enterprise (DBE) and Airport Concessions Disadvantaged Business Enterprise (ACDBE) programs or the requirements of 49 CFR Parts 23 and 26. The sponsor shall take all necessary and reasonable steps under 49 CFR Parts 23 and 26 to ensure nondiscrimination in the award and administration of DOT-assisted contracts, and/or concession contracts. The sponsor's DBE and ACDBE programs, as required by 49 CFR Parts 26 and 23, and as approved by DOT, are incorporated by reference in this agreement. Implementation of these programs is a legal obligation and failure to carry out its terms shall be treated as a violation of this agreement. Upon notification to the sponsor of its failure to carry out its approved program, the Department may impose sanctions as provided for under Parts 26 and 23 and may, in appropriate cases, refer the matter for enforcement under 18 U.S.C. § 1001 and/or the Program Fraud Civil Remedies Act of 1986 (31 U.S.C. §§ 3801-3809, 3812).

**38. Hangar Construction.**

If the airport owner or operator and a person who owns an aircraft agree that a hangar is to be constructed at the airport for the aircraft at the aircraft owner's expense, the airport owner or operator will grant to the aircraft owner for the hangar a long term lease that is subject to such terms and conditions on the hangar as the airport owner or operator may impose.

**39. Competitive Access.**

a.  If the airport owner or operator of a medium or large hub airport (as defined in 49 U.S.C. § 47102) has been unable to accommodate one or more requests by an air carrier for access to gates or other facilities at that airport in order to allow the air carrier to provide service to the airport or to expand service at the airport, the airport owner or operator shall transmit a report to the Secretary that:

1.  Describes the requests;

2.  Provides an explanation as to why the requests could not be accommodated; and

3.  Provides a time frame within which, if any, the airport will be able to accommodate the requests.

b.  Such report shall be due on either February 1 or August 1 of each year if the airport has been unable to accommodate the request(s) in the six month period prior to the applicable due date.



EXHIBIT B

# ASSURANCES
## AIRPORT SPONSORS

**A. General.**

1. These assurances shall be complied with in the performance of grant agreements for airport development, airport planning, and noise compatibility program grants for airport sponsors.

2. These assurances are required to be submitted as part of the project application by sponsors requesting funds under the provisions of Title 49, U.S.C., subtitle VII, as amended. As used herein, the term "public agency sponsor" means a public agency with control of a public-use airport; the term "private sponsor" means a private owner of a public-use airport; and the term "sponsor" includes both public agency sponsors and private sponsors.

3. Upon acceptance of this grant offer by the sponsor, these assurances are incorporated in and become part of this Grant Agreement.

**B. Duration and Applicability.**

1. **Airport Development or Noise Compatibility Program Projects Undertaken by a Public Agency Sponsor.**

   The terms, conditions, and assurances of this Grant Agreement shall remain in full force and effect throughout the useful life of the facilities developed or equipment acquired for an airport development or noise compatibility program project, or throughout the useful life of the project items installed within a facility under a noise compatibility program project, but in any event not to exceed twenty (20) years from the date of acceptance of a grant offer of Federal funds for the project. However, there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport. There shall be no limit on the duration of the terms, conditions, and assurances with respect to real property acquired with federal funds. Furthermore, the duration of the Civil Rights assurance shall be specified in the assurances.

2. **Airport Development or Noise Compatibility Projects Undertaken by a Private Sponsor.**

   The preceding paragraph (1) also applies to a private sponsor except that the useful life of project items installed within a facility or the useful life of the facilities developed or equipment acquired under an airport development or noise compatibility program project shall be no less than ten (10) years from the date of acceptance of Federal aid for the project.

3. **Airport Planning Undertaken by a Sponsor.**

   Unless otherwise specified in this Grant Agreement, only Assurances 1, 2, 3, 5, 6, 13, 18, 23, 25, 30, 32, 33, 34, 37, and 40 in Section C apply to planning projects. The terms, conditions, and assurances of this Grant Agreement shall remain in full force and effect during the life of the project; there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport.

**C. Sponsor Certification.**

The sponsor hereby assures and certifies, with respect to this grant that:

**1. General Federal Requirements**

The Sponsor will comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds for this Grant. Performance under this agreement shall be governed by and in compliance with the following requirements, as applicable, to the type of organization of the Sponsor and any applicable sub-recipients. The applicable provisions to this agreement include, but are not limited to, the following:

FEDERAL LEGISLATION

    a.   49 U.S.C. subtitle VII, as amended.

    b.   Davis-Bacon Act, as amended — 40 U.S.C. §§ 3141-3144, 3146, and 3147, et seq.[1]

    c.   Federal Fair Labor Standards Act – 29 U.S.C. § 201, et seq.

    d.   Hatch Act – 5 U.S.C. § 1501, et seq.[2]

    e.   Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. 4601, et seq.[1, 2]

    f.   National Historic Preservation Act of 1966 – Section 106 – 54 U.S.C. § 306108.[1]

    g.   Archeological and Historic Preservation Act of 1974 – 54 U.S.C. § 312501, et seq.[1]

    h.   Native Americans Grave Repatriation Act – 25 U.S.C. § 3001, et seq.

    i.   Clean Air Act, P.L. 90-148, as amended – 42 U.S.C. § 7401, et seq.

    j.   Coastal Zone Management Act, P.L. 92-583, as amended – 16 U.S.C. § 1451, et seq.

    k.   Flood Disaster Protection Act of 1973 – Section 102(a) - 42 U.S.C. § 4012a.[1]

    l.   49 U.S.C. § 303, (formerly known as Section 4(f)).

    m.   Rehabilitation Act of 1973 – 29 U.S.C. § 794.

    n.   Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.) (prohibits discrimination on the basis of race, color, national origin).

    o.   Americans with Disabilities Act of 1990, as amended, (42 U.S.C. § 12101 et seq.) (prohibits discrimination on the basis of disability).

    p.   Age Discrimination Act of 1975 – 42 U.S.C. § 6101, et seq.

    q.   American Indian Religious Freedom Act, P.L. 95-341, as amended.

    r.   Architectural Barriers Act of 1968, as amended – 42 U.S.C. § 4151, et seq.[1]

    s.   Powerplant and Industrial Fuel Use Act of 1978 – Section 403 – 42 U.S.C. § 8373.[1]

    t.   Contract Work Hours and Safety Standards Act – 40 U.S.C. § 3701, et seq.[1]

    u.   Copeland Anti-kickback Act – 18 U.S.C. § 874.[1]

    v.   National Environmental Policy Act of 1969 – 42 U.S.C. § 4321, et seq.[1]

w.  Wild and Scenic Rivers Act, P.L. 90-542, as amended – 16 U.S.C. § 1271, et seq.

x.  Single Audit Act of 1984 – 31 U.S.C. § 7501, et seq.[2]

y.  Drug-Free Workplace Act of 1988 – 41 U.S.C. §§ 8101 through 8105.

z.  The Federal Funding Accountability and Transparency Act of 2006, as amended (P.L. 109-282, as amended by section 6202 of P.L. 110-252).

aa. Civil Rights Restoration Act of 1987, P.L. 100-259.

bb. Infrastructure Investment and Jobs Act, P.L. 117-58, Title VIII.

cc. Build America, Buy America Act, P.L. 117-58, Title IX.

dd. Endangered Species Act – 16 U.S.C. 1531, et seq.

ee. Title IX of the Education Amendments of 1972, as amended – 20 U.S.C. 1681–1683 and 1685–1687.

ff.  Drug Abuse Office and Treatment Act of 1972, as amended – 21 U.S.C. 1101, et seq.

gg. Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, P.L. 91-616, as amended – 42 U.S.C. § 4541, et seq.

hh. Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, P.L. 91-616, as amended – 42 U.S.C. § 4541, et seq.

ii.  Appropriated Funds to Influence Certain Federal Contracting and Financial Transactions – 31 U.S.C. § 1352.


EXECUTIVE ORDERS

a.  Executive Order 11990 – Protection of Wetlands

b.  Executive Order 11988 – Floodplain Management

c.  Executive Order 12372 – Intergovernmental Review of Federal Programs

d.  Executive Order 12699 – Seismic Safety of Federal and Federally Assisted New Building Construction[1]

e.  Executive Order 14005 – Ensuring the Future is Made in all of America by All of America's Workers

f.  Executive Order 14149 – Restoring Freedom of Speech and Ending Federal Censorship

g.  Executive Order 14151 – Ending Radical and Wasteful Government DEI Programs and Preferencing

h.  Executive Order 14154 – Unleashing American Energy

i.  Executive Order 14168 – Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government

j.  Executive Order 14173 – Ending Illegal Discrimination and Restoring Merit-Based Opportunity


FEDERAL REGULATIONS

a. 2 CFR Part 180 – OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement).

b. 2 CFR Part 200 and 1201 – Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards. [3, 4, 5]

c. 2 CFR Part 1200 – Nonprocurement Suspension and Debarment.

d. 14 CFR Part 13 – Investigative and Enforcement Procedures.

e. 14 CFR Part 16 – Rules of Practice for Federally-Assisted Airport Enforcement Proceedings.

f. 14 CFR Part 150 – Airport Noise Compatibility Planning.

g. 28 CFR Part 35 – Nondiscrimination on the Basis of Disability in State and Local Government Services.

h. 28 CFR § 50.3 – U.S. Department of Justice Guidelines for the Enforcement of Title VI of the Civil Rights Act of 1964.

i. 29 CFR Part 1 – Procedures for Predetermination of Wage Rates.[1]

j. 29 CFR Part 3 – Contractors and Subcontractors on Public Building or Public Work Financed in Whole or in Part by Loans or Grants from the United States.[1]

k. 29 CFR Part 5 – Labor Standards Provisions Applicable to Contracts Covering Federally Financed and Assisted Construction (Also Labor Standards Provisions Applicable to Nonconstruction Contracts Subject to the Contract Work Hours and Safety Standards Act).[1]

l. 41 CFR Part 60 – Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor (Federal and Federally-assisted contracting requirements).[1]

m. 49 CFR Part 20 – New Restrictions on Lobbying.

n. 49 CFR Part 21 – Nondiscrimination in Federally-Assisted Programs of the Department of Transportation - Effectuation of Title VI of the Civil Rights Act of 1964.

o. 49 CFR Part 23 – Participation by Disadvantage Business Enterprise in Airport Concessions.

p. 49 CFR Part 24 – Uniform Relocation Assistance and Real Property Acquisition for Federal and Federally-Assisted Programs.[1, 2]

q. 49 CFR Part 26 – Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs.

r. 49 CFR Part 27 – Nondiscrimination on the Basis of Disability in Programs or Activities Receiving Federal Financial Assistance.[1]

s. 49 CFR Part 28 – Enforcement of Nondiscrimination on the Basis of Handicap in Programs or Activities Conducted by the Department of Transportation.

t. 49 CFR Part 30 – Denial of Public Works Contracts to Suppliers of Goods and Services of Countries That Deny Procurement Market Access to U.S. Contractors.

u. 49 CFR Part 32 – Governmentwide Requirements for Drug-Free Workplace (Financial Assistance).

v. 49 CFR Part 37 – Transportation Services for Individuals with Disabilities (ADA).

w.  49 CFR Part 38 – Americans with Disabilities Act (ADA) Accessibility Specifications for Transportation Vehicles.

x.  49 CFR Part 41 – Seismic Safety.

### FOOTNOTES TO ASSURANCE (C)(1)

[1]  These laws do not apply to airport planning sponsors.

[2]  These laws do not apply to private sponsors.

[3]  2 CFR Part 200 contains requirements for State and Local Governments receiving Federal assistance. Any requirement levied upon State and Local Governments by this regulation shall apply where applicable to private sponsors receiving Federal assistance under Title 49, United States Code.

[4]  Cost principles established in 2 CFR Part 200 subpart E must be used as guidelines for determining the eligibility of specific types of expenses.

[5]  Audit requirements established in 2 CFR Part 200 subpart F are the guidelines for audits.

### SPECIFIC ASSURANCES

Specific assurances required to be included in grant agreements by any of the above laws, regulations or circulars are incorporated by reference in this Grant Agreement.

**2.  Responsibility and Authority of the Sponsor.**

a.  Public Agency Sponsor:

It has legal authority to apply for this Grant, and to finance and carry out the proposed project; that a resolution, motion or similar action has been duly adopted or passed as an official act of the applicant's governing body authorizing the filing of the application, including all understandings and assurances contained therein, and directing and authorizing the person identified as the official representative of the applicant to act in connection with the application and to provide such additional information as may be required.

b.  Private Sponsor:

It has legal authority to apply for this Grant and to finance and carry out the proposed project and comply with all terms, conditions, and assurances of this Grant Agreement. It shall designate an official representative and shall in writing direct and authorize that person to file this application, including all understandings and assurances contained therein; to act in connection with this application; and to provide such additional information as may be required.

**3.  Sponsor Fund Availability.**

It has sufficient funds available for that portion of the project costs which are not to be paid by the United States. It has sufficient funds available to assure operation and maintenance of items funded under this Grant Agreement which it will own or control.

**4.  Good Title.**

a.  It, a public agency or the Federal government, holds good title, satisfactory to the Secretary, to the landing area of the airport or site thereof, or will give assurance satisfactory to the Secretary that good title will be acquired.

b. For noise compatibility program projects to be carried out on the property of the sponsor, it holds good title satisfactory to the Secretary to that portion of the property upon which Federal funds will be expended or will give assurance to the Secretary that good title will be obtained.

**5. Preserving Rights and Powers.**

a. It will not take or permit any action which would operate to deprive it of any of the rights and powers necessary to perform any or all of the terms, conditions, and assurances in this Grant Agreement without the written approval of the Secretary, and will act promptly to acquire, extinguish or modify any outstanding rights or claims of right of others which would interfere with such performance by the sponsor. This shall be done in a manner acceptable to the Secretary.

b. Subject to 49 U.S.C. 47107(a)(16) and (x), it will not sell, lease, encumber, or otherwise transfer or dispose of any part of its title or other interests in the property shown on Exhibit A to this application or, for a noise compatibility program project, that portion of the property upon which Federal funds have been expended, for the duration of the terms, conditions, and assurances in this Grant Agreement without approval by the Secretary. If the transferee is found by the Secretary to be eligible under Title 49, United States Code, to assume the obligations of this Grant Agreement and to have the power, authority, and financial resources to carry out all such obligations, the sponsor shall insert in the contract or document transferring or disposing of the sponsor's interest, and make binding upon the transferee all of the terms, conditions, and assurances contained in this Grant Agreement.

c. For all noise compatibility program projects which are to be carried out by another unit of local government or are on property owned by a unit of local government other than the sponsor, it will enter into an agreement with that government. Except as otherwise specified by the Secretary, that agreement shall obligate that government to the same terms, conditions, and assurances that would be applicable to it if it applied directly to the FAA for a grant to undertake the noise compatibility program project. That agreement and changes thereto must be satisfactory to the Secretary. It will take steps to enforce this agreement against the local government if there is substantial non-compliance with the terms of the agreement.

d. For noise compatibility program projects to be carried out on privately owned property, it will enter into an agreement with the owner of that property which includes provisions specified by the Secretary. It will take steps to enforce this agreement against the property owner whenever there is substantial non-compliance with the terms of the agreement.

e. If the sponsor is a private sponsor, it will take steps satisfactory to the Secretary to ensure that the airport will continue to function as a public-use airport in accordance with these assurances for the duration of these assurances.

f. If an arrangement is made for management and operation of the airport by any agency or person other than the sponsor or an employee of the sponsor, the sponsor will reserve sufficient rights and authority to ensure that the airport will be operated and maintained in accordance with Title 49, United States Code, the regulations and the terms, conditions and assurances in this Grant Agreement and shall ensure that such arrangement also requires compliance therewith.

g. Sponsors of commercial service airports will not permit or enter into any arrangement that results in permission for the owner or tenant of a property used as a residence, or zoned for

residential use, to taxi an aircraft between that property and any location on airport. Sponsors of general aviation airports entering into any arrangement that results in permission for the owner of residential real property adjacent to or near the airport must comply with the requirements of Sec. 136 of Public Law 112-95 and the sponsor assurances.

**6. Consistency with Local Plans.**

The project is reasonably consistent with plans (existing at the time of submission of this application) of public agencies that are authorized by the State in which the project is located to plan for the development of the area surrounding the airport.

**7. Consideration of Local Interest.**

It has given fair consideration to the interest of communities in or near where the project may be located.

**8. Consultation with Users.**

In making a decision to undertake any airport development project under Title 49, United States Code, it has undertaken reasonable consultations with affected parties using the airport at which project is proposed.

**9. Public Hearings.**

In projects involving the location of an airport, an airport runway, or a major runway extension, it has afforded the opportunity for public hearings for the purpose of considering the economic, social, and environmental effects of the airport or runway location and its consistency with goals and objectives of such planning as has been carried out by the community and it shall, when requested by the Secretary, submit a copy of the transcript of such hearings to the Secretary. Further, for such projects, it has on its management board either voting representation from the communities where the project is located or has advised the communities that they have the right to petition the Secretary concerning a proposed project.

**10. Metropolitan Planning Organization.**

In projects involving the location of an airport, an airport runway, or a major runway extension at a medium or large hub airport, the sponsor has made available to and has provided upon request to the metropolitan planning organization in the area in which the airport is located, if any, a copy of the proposed amendment to the airport layout plan to depict the project and a copy of any airport master plan in which the project is described or depicted.

**11. Pavement Preventive Maintenance-Management.**

With respect to a project approved after January 1, 1995, for the replacement or reconstruction of pavement at the airport, it assures or certifies that it has implemented an effective airport pavement maintenance-management program, and it assures that it will use such program for the useful life of any pavement constructed, reconstructed, or repaired with Federal financial assistance at the airport. It will provide such reports on pavement condition and pavement management programs as the Secretary determines may be useful.

**12. Terminal Development Prerequisites.**

For projects which include terminal development at a public use airport, as defined in Title 49, it has, on the date of submittal of the project grant application, all the safety equipment required for

certification of such airport under 49 U.S.C. 44706, and all the security equipment required by rule or regulation, and has provided for access to the passenger enplaning and deplaning area of such airport to passengers enplaning and deplaning from aircraft other than air carrier aircraft.

13. **Accounting System, Audit, and Record Keeping Requirements.**

   a.  It shall keep all project accounts and records which fully disclose the amount and disposition by the recipient of the proceeds of this Grant, the total cost of the project in connection with which this Grant is given or used, and the amount or nature of that portion of the cost of the project supplied by other sources, and such other financial records pertinent to the project. The accounts and records shall be kept in accordance with an accounting system that will facilitate an effective audit in accordance with the Single Audit Act of 1984.

   b.  It shall make available to the Secretary and the Comptroller General of the United States, or any of their duly authorized representatives, for the purpose of audit and examination, any books, documents, papers, and records of the recipient that are pertinent to this Grant. The Secretary may require that an appropriate audit be conducted by a recipient. In any case in which an independent audit is made of the accounts of a sponsor relating to the disposition of the proceeds of a grant or relating to the project in connection with which this Grant was given or used, it shall file a certified copy of such audit with the Comptroller General of the United States not later than six (6) months following the close of the fiscal year for which the audit was made.

14. **Minimum Wage Rates.**

   It shall include, in all contracts in excess of $2,000 for work on any projects funded under this Grant Agreement which involve labor, provisions establishing minimum rates of wages, to be predetermined by the Secretary of Labor under 40 U.S.C. 3141-3144, 3146, and 3147, Public Building, Property, and Works), which contractors shall pay to skilled and unskilled labor, and such minimum rates shall be stated in the invitation for bids and shall be included in proposals or bids for the work.

15. **Veteran's Preference.**

   It shall include in all contracts for work on any project funded under this Grant Agreement which involve labor, such provisions as are necessary to insure that, in the employment of labor (except in executive, administrative, and supervisory positions), preference shall be given to Vietnam era veterans, Persian Gulf veterans, Afghanistan-Iraq war veterans, disabled veterans, and small business concerns owned and controlled by disabled veterans as defined in 49 U.S.C. 47112. However, this preference shall apply only where the individuals are available and qualified to perform the work to which the employment relates.

16. **Conformity to Plans and Specifications.**

   It will execute the project subject to plans, specifications, and schedules approved by the Secretary. Such plans, specifications, and schedules shall be submitted to the Secretary prior to commencement of site preparation, construction, or other performance under this Grant Agreement, and, upon approval of the Secretary, shall be incorporated into this Grant Agreement. Any modification to the approved plans, specifications, and schedules shall also be subject to approval of the Secretary and incorporated into this Grant Agreement.

17. **Construction Inspection and Approval.**

It will provide and maintain competent technical supervision at the construction site throughout the project to assure that the work conforms to the plans, specifications, and schedules approved by the Secretary for the project. It shall subject the construction work on any project contained in an approved project application to inspection and approval by the Secretary and such work shall be in accordance with regulations and procedures prescribed by the Secretary. Such regulations and procedures shall require such cost and progress reporting by the sponsor or sponsors of such project as the Secretary shall deem necessary.

18. **Planning Projects.**

In carrying out planning projects:

a.  It will execute the project in accordance with the approved program narrative contained in the project application or with the modifications similarly approved.

b.  It will furnish the Secretary with such periodic reports as required pertaining to the planning project and planning work activities.

c.  It will include in all published material prepared in connection with the planning project a notice that the material was prepared under a grant provided by the United States.

d.  It will make such material available for examination by the public and agrees that no material prepared with funds under this project shall be subject to copyright in the United States or any other country.

e.  It will give the Secretary unrestricted authority to publish, disclose, distribute, and otherwise use any of the material prepared in connection with this grant.

f.  It will grant the Secretary the right to disapprove the sponsor's employment of specific consultants and their subcontractors to do all or any part of this project as well as the right to disapprove the proposed scope and cost of professional services.

g.  It will grant the Secretary the right to disapprove the use of the sponsor's employees to do all or any part of the project.

h.  It understands and agrees that the Secretary's approval of this project grant or the Secretary's approval of any planning material developed as part of this grant does not constitute or imply any assurance or commitment on the part of the Secretary to approve any pending or future application for a Federal airport grant.

19. **Operation and Maintenance.**

a.  The airport and all facilities which are necessary to serve the aeronautical users of the airport, other than facilities owned or controlled by the United States, shall be operated at all times in a safe and serviceable condition and in accordance with the minimum standards as may be required or prescribed by applicable Federal, state, and local agencies for maintenance and operation. It will not cause or permit any activity or action thereon which would interfere with its use for airport purposes. It will suitably operate and maintain the airport and all facilities thereon or connected therewith, with due regard to climatic and flood conditions. Any proposal to temporarily close the airport for non-aeronautical purposes must first be approved by the Secretary. In furtherance of this assurance, the sponsor will have in effect arrangements for:

1. Operating the airport's aeronautical facilities whenever required;

2. Promptly marking and lighting hazards resulting from airport conditions, including temporary conditions; and

3. Promptly notifying pilots of any condition affecting aeronautical use of the airport. Nothing contained herein shall be construed to require that the airport be operated for aeronautical use during temporary periods when snow, flood, or other climatic conditions interfere with such operation and maintenance. Further, nothing herein shall be construed as requiring the maintenance, repair, restoration, or replacement of any structure or facility which is substantially damaged or destroyed due to an act of God or other condition or circumstance beyond the control of the sponsor.

b. It will suitably operate and maintain noise compatibility program items that it owns or controls upon which Federal funds have been expended.

**20. Hazard Removal and Mitigation.**

It will take appropriate action to assure that such terminal airspace as is required to protect instrument and visual operations to the airport (including established minimum flight altitudes) will be adequately cleared and protected by removing, lowering, relocating, marking, or lighting or otherwise mitigating existing airport hazards and by preventing the establishment or creation of future airport hazards.

**21. Compatible Land Use.**

It will take appropriate action, to the extent reasonable, including the adoption of zoning laws, to restrict the use of land adjacent to or in the immediate vicinity of the airport to activities and purposes compatible with normal airport operations, including landing and takeoff of aircraft. In addition, if the project is for noise compatibility program implementation, it will not cause or permit any change in land use, within its jurisdiction, that will reduce its compatibility, with respect to the airport, of the noise compatibility program measures upon which Federal funds have been expended.

**22. Economic Nondiscrimination.**

a. It will make the airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities, including commercial aeronautical activities offering services to the public at the airport.

b. In any agreement, contract, lease, or other arrangement under which a right or privilege at the airport is granted to any person, firm, or corporation to conduct or to engage in any aeronautical activity for furnishing services to the public at the airport, the sponsor will insert and enforce provisions requiring the contractor to:

1. Furnish said services on a reasonable, and not unjustly discriminatory, basis to all users thereof, and

2. Charge reasonable, and not unjustly discriminatory, prices for each unit or service, provided that the contractor may be allowed to make reasonable and nondiscriminatory discounts, rebates, or other similar types of price reductions to volume purchasers.

c. Each fixed-based operator at the airport shall be subject to the same rates, fees, rentals, and other charges as are uniformly applicable to all other fixed-based operators making the same or similar uses of such airport and utilizing the same or similar facilities.

d. Each air carrier using such airport shall have the right to service itself or to use any fixed-based operator that is authorized or permitted by the airport to serve any air carrier at such airport.

e. Each air carrier using such airport (whether as a tenant, non-tenant, or subtenant of another air carrier tenant) shall be subject to such nondiscriminatory and substantially comparable rules, regulations, conditions, rates, fees, rentals, and other charges with respect to facilities directly and substantially related to providing air transportation as are applicable to all such air carriers which make similar use of such airport and utilize similar facilities, subject to reasonable classifications such as tenants or non-tenants and signatory carriers and non-signatory carriers. Classification or status as tenant or signatory shall not be unreasonably withheld by any airport provided an air carrier assumes obligations substantially similar to those already imposed on air carriers in such classification or status.

f. It will not exercise or grant any right or privilege which operates to prevent any person, firm, or corporation operating aircraft on the airport from performing any services on its own aircraft with its own employees (including, but not limited to maintenance, repair, and fueling) that it may choose to perform.

g. In the event the sponsor itself exercises any of the rights and privileges referred to in this assurance, the services involved will be provided on the same conditions as would apply to the furnishing of such services by commercial aeronautical service providers authorized by the sponsor under these provisions.

h. The sponsor may establish such reasonable, and not unjustly discriminatory, conditions to be met by all users of the airport as may be necessary for the safe and efficient operation of the airport.

i. The sponsor may prohibit or limit any given type, kind or class of aeronautical use of the airport if such action is necessary for the safe operation of the airport or necessary to serve the civil aviation needs of the public.

## 23. Exclusive Rights.

It will permit no exclusive right for the use of the airport by any person providing, or intending to provide, aeronautical services to the public. For purposes of this paragraph, the providing of the services at an airport by a single fixed-based operator shall not be construed as an exclusive right if both of the following apply:

a. It would be unreasonably costly, burdensome, or impractical for more than one fixed-based operator to provide such services, and

b. If allowing more than one fixed-based operator to provide such services would require the reduction of space leased pursuant to an existing agreement between such single fixed-based operator and such airport. It further agrees that it will not, either directly or indirectly, grant or permit any person, firm, or corporation, the exclusive right at the airport to conduct any aeronautical activities, including, but not limited to charter flights, pilot training, aircraft rental and sightseeing, aerial photography, crop dusting, aerial advertising and surveying, air carrier operations, aircraft sales and services, sale of aviation petroleum products whether or not

conducted in conjunction with other aeronautical activity, repair and maintenance of aircraft, sale of aircraft parts, and any other activities which because of their direct relationship to the operation of aircraft can be regarded as an aeronautical activity, and that it will terminate any exclusive right to conduct an aeronautical activity now existing at such an airport before the grant of any assistance under Title 49, United States Code.

**24. Fee and Rental Structure.**

It will maintain a fee and rental structure for the facilities and services at the airport which will make the airport as self-sustaining as possible under the circumstances existing at the particular airport, taking into account such factors as the volume of traffic and economy of collection. No part of the Federal share of an airport development, airport planning or noise compatibility project for which a Grant is made under Title 49, United States Code, the Airport and Airway Improvement Act of 1982, the Federal Airport Act or the Airport and Airway Development Act of 1970 shall be included in the rate basis in establishing fees, rates, and charges for users of that airport.

**25. Airport Revenues.**

a. All revenues generated by the airport and any local taxes on aviation fuel established after December 30, 1987, will be expended by it for the capital or operating costs of the airport; the local airport system; or other local facilities which are owned or operated by the owner or operator of the airport and which are directly and substantially related to the actual air transportation of passengers or property; or for noise mitigation purposes on or off the airport. The following exceptions apply to this paragraph:

   1. If covenants or assurances in debt obligations issued before September 3, 1982, by the owner or operator of the airport, or provisions enacted before September 3, 1982, in governing statutes controlling the owner or operator's financing, provide for the use of the revenues from any of the airport owner or operator's facilities, including the airport, to support not only the airport but also the airport owner or operator's general debt obligations or other facilities, then this limitation on the use of all revenues generated by the airport (and, in the case of a public airport, local taxes on aviation fuel) shall not apply.

   2. If the Secretary approves the sale of a privately owned airport to a public sponsor and provides funding for any portion of the public sponsor's acquisition of land, this limitation on the use of all revenues generated by the sale shall not apply to certain proceeds from the sale. This is conditioned on repayment to the Secretary by the private owner of an amount equal to the remaining unamortized portion (amortized over a 20-year period) of any airport improvement grant made to the private owner for any purpose other than land acquisition on or after October 1, 1996, plus an amount equal to the federal share of the current fair market value of any land acquired with an airport improvement grant made to that airport on or after October 1, 1996.

   3. Certain revenue derived from or generated by mineral extraction, production, lease, or other means at a general aviation airport (as defined at 49 U.S.C. 47102), if the FAA determines the airport sponsor meets the requirements set forth in Section 813 of Public Law 112-95.

b. As part of the annual audit required under the Single Audit Act of 1984, the sponsor will direct that the audit will review, and the resulting audit report will provide an opinion concerning, the use of airport revenue and taxes in paragraph (a), and indicating whether funds paid or

transferred to the owner or operator are paid or transferred in a manner consistent with Title 49, United States Code and any other applicable provision of law, including any regulation promulgated by the Secretary or Administrator.

c. Any civil penalties or other sanctions will be imposed for violation of this assurance in accordance with the provisions of 49 U.S.C. 47107.

**26. Reports and Inspections.**

It will:

a. submit to the Secretary such annual or special financial and operations reports as the Secretary may reasonably request and make such reports available to the public; make available to the public at reasonable times and places a report of the airport budget in a format prescribed by the Secretary;

b. for airport development projects, make the airport and all airport records and documents affecting the airport, including deeds, leases, operation and use agreements, regulations and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request;

c. for noise compatibility program projects, make records and documents relating to the project and continued compliance with the terms, conditions, and assurances of this Grant Agreement including deeds, leases, agreements, regulations, and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request; and

d. in a format and time prescribed by the Secretary, provide to the Secretary and make available to the public following each of its fiscal years, an annual report listing in detail:

1. all amounts paid by the airport to any other unit of government and the purposes for which each such payment was made; and

2. all services and property provided by the airport to other units of government and the amount of compensation received for provision of each such service and property.

**27. Use by Government Aircraft.**

It will make available all of the facilities of the airport developed with Federal financial assistance and all those usable for landing and takeoff of aircraft to the United States for use by Government aircraft in common with other aircraft at all times without charge, except, if the use by Government aircraft is substantial, charge may be made for a reasonable share, proportional to such use, for the cost of operating and maintaining the facilities used. Unless otherwise determined by the Secretary, or otherwise agreed to by the sponsor and the using agency, substantial use of an airport by Government aircraft will be considered to exist when operations of such aircraft are in excess of those which, in the opinion of the Secretary, would unduly interfere with use of the landing areas by other authorized aircraft, or during any calendar month that:

a. Five (5) or more Government aircraft are regularly based at the airport or on land adjacent thereto; or

b. The total number of movements (counting each landing as a movement) of Government aircraft is 300 or more, or the gross accumulative weight of Government aircraft using the airport (the total movement of Government aircraft multiplied by gross weights of such aircraft) is in excess of five million pounds.

**28. Land for Federal Facilities.**

It will furnish without cost to the Federal Government for use in connection with any air traffic control or air navigation activities, or weather-reporting and communication activities related to air traffic control, any areas of land or water, or estate therein as the Secretary considers necessary or desirable for construction, operation, and maintenance at Federal expense of space or facilities for such purposes. Such areas or any portion thereof will be made available as provided herein within four months after receipt of a written request from the Secretary.

**29. Airport Layout Plan.**

    a.  The airport owner or operator will maintain a current airport layout plan of the airport showing:

        1.  boundaries of the airport and all proposed additions thereto, together with the boundaries of all offsite areas owned or controlled by the sponsor for airport purposes and proposed additions thereto;

        2.  the location and nature of all existing and proposed airport facilities and structures (such as runways, taxiways, aprons, terminal buildings, hangars and roads), including all proposed extensions and reductions of existing airport facilities;

        3.  the location of all existing and proposed non-aviation areas and of all existing improvements thereon; and

        4.  all proposed and existing access points used to taxi aircraft across the airport's property boundary.

    b.  Subject to subsection 49 U.S.C. 47107(x), the Secretary will review and approve or disapprove the plan and any revision or modification of the plan before the plan, revision, or modification takes effect.

    c.  The owner or operator will not make or allow any alteration in the airport or any of its facilities unless the alteration—

    1. is outside the scope of the Secretary's review and approval authority as set forth in subsection (x); or

    2. complies with the portions of the plan approved by the Secretary.

    d.  When the airport owner or operator makes a change or alteration in the airport or the facilities which the Secretary determines adversely affects the safety, utility, or efficiency of any federally owned, leased, or funded property on or off the airport and which is not in conformity with the airport layout plan as approved by the Secretary, the owner or operator will, if requested, by the Secretary:

        1.  eliminate such adverse effect in a manner approved by the Secretary; or

        2.  bear all costs of relocating such property or its replacement to a site acceptable to the Secretary and of restoring the property or its replacement to the level of safety, utility, efficiency, and cost of operation that existed before the alteration was made, except in the case of a relocation or replacement of an existing airport facility due to a change in the Secretary's design standards beyond the control of the airport sponsor.

**30. Civil Rights.**

It will promptly take any measures necessary to ensure that no person in the United States shall, on the grounds of race, color, and national origin (including limited English proficiency) in accordance with the provisions of  Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d to 2000d-4); creed and sex per 49 U.S.C. 47123 and related requirements; age per the Age Discrimination Act of 1975 and related requirements; or disability per the Americans with Disabilities Act of 1990 and related requirements, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination in any program and activity conducted with, or benefiting from, funds received from this Grant.

a. Using the definitions of activity, facility, and program as found and defined in 49 CFR 21.23(b) and 21.23(e), the sponsor will facilitate all programs, operate all facilities, or conduct all programs in compliance with all non-discrimination requirements imposed by or pursuant to these assurances.

b. Applicability

1. Programs and Activities. If the sponsor has received a grant (or other federal assistance) for any of the sponsor's program or activities, these requirements extend to all of the sponsor's programs and activities.

2. Facilities. Where it receives a grant or other federal financial assistance to construct, expand, renovate, remodel, alter, or acquire a facility, or part of a facility, the assurance extends to the entire facility and facilities operated in connection therewith.

3. Real Property. Where the sponsor receives a grant or other Federal financial assistance in the form of, or for the acquisition of real property or an interest in real property, the assurance will extend to rights to space on, over, or under such property.

c. Duration.

The sponsor agrees that it is obligated to this assurance for the period during which Federal financial assistance is extended to the program, except where the Federal financial assistance is to provide, or is in the form of, personal property, or real property, or interest therein, or structures or improvements thereon, in which case the assurance obligates the sponsor, or any transferee for the longer of the following periods:

1. So long as the airport is used as an airport, or for another purpose involving the provision of similar services or benefits; or

2. So long as the sponsor retains ownership or possession of the property.

d. Required Solicitation Language. It will include the following notification in all solicitations for bids, Requests For Proposals for work, or material under this Grant Agreement and in all proposals for agreements, including airport concessions, regardless of funding source:

"The (**[Selection Criteria: Sponsor Name]**), in accordance with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d to 2000d-4) and the Regulations, hereby notifies all bidders or offerors that it will affirmatively ensure that for any contract entered into pursuant to this advertisement,  all businesses will be afforded full and fair opportunity to submit bids in response to this invitation and no businesses will be discriminated against on the grounds of

race, color, national origin (including limited English proficiency), creed, sex , age, or disability in consideration for an award."

e. Required Contract Provisions.

1. It will insert the non-discrimination contract clauses requiring compliance with the acts and regulations relative to non-discrimination in Federally-assisted programs of the Department of Transportation (DOT), and incorporating the acts and regulations into the contracts by reference in every contract or agreement subject to the non-discrimination in Federally-assisted programs of the DOT acts and regulations.

2. It will include a list of the pertinent non-discrimination authorities in every contract that is subject to the non-discrimination acts and regulations.

3. It will insert non-discrimination contract clauses as a covenant running with the land, in any deed from the United States effecting or recording a transfer of real property, structures, use, or improvements thereon or interest therein to a sponsor.

4. It will insert non-discrimination contract clauses prohibiting discrimination on the basis of race, color, national origin (including limited English proficiency), creed, sex, age, or disability as a covenant running with the land, in any future deeds, leases, license, permits, or similar instruments entered into by the sponsor with other parties:

    a. For the subsequent transfer of real property acquired or improved under the applicable activity, project, or program; and

    b. For the construction or use of, or access to, space on, over, or under real property acquired or improved under the applicable activity, project, or program.

f. It will provide for such methods of administration for the program as are found by the Secretary to give reasonable guarantee that it, other recipients, sub-recipients, sub-grantees, contractors, subcontractors, consultants, transferees, successors in interest, and other participants of Federal financial assistance under such program will comply with all requirements imposed or pursuant to the acts, the regulations, and this assurance.

g. It agrees that the United States has a right to seek judicial enforcement with regard to any matter arising under the acts, the regulations, and this assurance.

**31. Disposal of Land.**

a. For land purchased under a grant for airport noise compatibility purposes, including land serving as a noise buffer, it will dispose of the land, when the land is no longer needed for such purposes, at fair market value, at the earliest practicable time. That portion of the proceeds of such disposition which is proportionate to the United States' share of acquisition of such land will be, at the discretion of the Secretary, (1) reinvested in another project at the airport, or (2) transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

1. Reinvestment in an approved noise compatibility project;

2. Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. 47117(e);

3. Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. 47114, 47115, or 47117;

4. Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

5. Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

If land acquired under a grant for noise compatibility purposes is leased at fair market value and consistent with noise buffering purposes, the lease will not be considered a disposal of the land. Revenues derived from such a lease may be used for an approved airport development project that would otherwise be eligible for grant funding or any permitted use of airport revenue.

b. For land purchased under a grant for airport development purposes (other than noise compatibility), it will, when the land is no longer needed for airport purposes, dispose of such land at fair market value or make available to the Secretary an amount equal to the United States' proportionate share of the fair market value of the land. That portion of the proceeds of such disposition which is proportionate to the United States' share of the cost of acquisition of such land will, upon application to the Secretary, be reinvested or transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

1. Reinvestment in an approved noise compatibility project;

2. Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. 47117(e);

3. Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. 47114, 47115, or 47117;

4. Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

5. Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

c. Land shall be considered to be needed for airport purposes under this assurance if (1) it may be needed for aeronautical purposes (including runway protection zones) or serve as noise buffer land, and (2) the revenue from interim uses of such land contributes to the financial self-sufficiency of the airport. Further, land purchased with a grant received by an airport operator or owner before December 31, 1987, will be considered to be needed for airport purposes if the Secretary or Federal agency making such grant before December 31, 1987, was notified by the operator or owner of the uses of such land, did not object to such use, and the land continues to be used for that purpose, such use having commenced no later than December 15, 1989.

d. Disposition of such land under (a), (b), or (c) will be subject to the retention or reservation of any interest or right therein necessary to ensure that such land will only be used for purposes which are compatible with noise levels associated with operation of the airport.

## 32. Engineering and Design Services.

If any phase of such project has received Federal funds under Chapter 471 subchapter 1 of Title 49 U.S.C., it will award each contract, or sub-contract for program management, construction

management, planning studies, feasibility studies, architectural services, preliminary engineering, design, engineering, surveying, mapping or related services in the same manner as a contract for architectural and engineering services is negotiated under Chapter 11 of Title 40 U S.C., or an equivalent qualifications-based requirement prescribed for or by the sponsor of the airport.

**33. Foreign Market Restrictions.**

It will not allow funds provided under this Grant to be used to fund any project which uses any product or service of a foreign country during the period in which such foreign country is listed by the United States Trade Representative as denying fair and equitable market opportunities for products and suppliers of the United States in procurement and construction.

**34. Policies, Standards, and Specifications.**

It will carry out any project funded under an Airport Improvement Program Grant in accordance with policies, standards, and specifications approved by the Secretary including, but not limited to, current FAA Advisory Circulars for AIP projects as of [Selection Criteria: Project Application Date].

**35. Relocation and Real Property Acquisition.**

   a.  It will be guided in acquiring real property, to the greatest extent practicable under State law, by the land acquisition policies in Subpart B of 49 CFR Part 24 and will pay or reimburse property owners for necessary expenses as specified in Subpart B.

   b.  It will provide a relocation assistance program offering the services described in Subpart C of 49 CFR Part 24 and fair and reasonable relocation payments and assistance to displaced persons as required in Subpart D and E of 49 CFR Part 24.

   c.  It will make available within a reasonable period of time prior to displacement, comparable replacement dwellings to displaced persons in accordance with Subpart E of 49 CFR Part 24.

**36. Access By Intercity Buses.**

The airport owner or operator will permit, to the maximum extent practicable, intercity buses or other modes of transportation to have access to the airport; however, it has no obligation to fund special facilities for intercity buses or for other modes of transportation.

**37. Disadvantaged Business Enterprises.**

The sponsor shall not discriminate on the basis of race, color, national origin, or sex, in the award and performance of any DOT-assisted contract covered by 49 CFR Part 26, or in the award and performance of any concession activity contract covered by 49 CFR Part 23. In addition, the sponsor shall not discriminate on the basis of race, color, national origin or sex in the administration of its Disadvantaged Business Enterprise (DBE) and Airport Concessions Disadvantaged Business Enterprise (ACDBE) programs or the requirements of 49 CFR Parts 23 and 26. The sponsor shall take all necessary and reasonable steps under 49 CFR Parts 23 and 26 to ensure nondiscrimination in the award and administration of DOT-assisted contracts, and/or concession contracts. The sponsor's DBE and ACDBE programs, as required by 49 CFR Parts 26 and 23, and as approved by DOT, are incorporated by reference in this agreement. Implementation of these programs is a legal obligation and failure to carry out its terms shall be treated as a violation of this agreement. Upon notification to the sponsor of its failure to carry out its approved program, the Department may impose sanctions as provided for under Parts 26 and 23 and may, in appropriate cases, refer the matter for

enforcement under 18 U.S.C. § 1001 and/or the Program Fraud Civil Remedies Act of 1986 (31 U.S.C. §§ 3801-3809, 3812).

**38. Hangar Construction.**

If the airport owner or operator and a person who owns an aircraft agree that a hangar is to be constructed at the airport for the aircraft at the aircraft owner's expense, the airport owner or operator will grant to the aircraft owner for the hangar a long term lease that is subject to such terms and conditions on the hangar as the airport owner or operator may impose.

**39. Competitive Access.**

a. If the airport owner or operator of a medium or large hub airport (as defined in 49 U.S.C. § 47102) has been unable to accommodate one or more requests by an air carrier for access to gates or other facilities at that airport in order to allow the air carrier to provide service to the airport or to expand service at the airport, the airport owner or operator shall transmit a report to the Secretary that:

    1. Describes the requests;

    2. Provides an explanation as to why the requests could not be accommodated; and

    3. Provides a time frame within which, if any, the airport will be able to accommodate the requests.

b. Such report shall be due on either February 1 or August 1 of each year if the airport has been unable to accommodate the request(s) in the six-month period prior to the applicable due date.

**40. Access to Leaded Aviation Gasoline**

a. If 100-octane low lead aviation gasoline (100LL) was made available at an airport, at any time during calendar year 2022, an airport owner or operator may not restrict or prohibit the sale of, or self-fueling with 100-octane low lead aviation gasoline.

b. This requirement remains until the earlier of December 31, 2030, or the date on which the airport or any retail fuel seller at the airport makes available an unleaded aviation gasoline that has been authorized for use by the FAA as a replacement for 100-octane low lead aviation gasoline for use in nearly all piston-engine aircraft and engine models; and meets either an industry consensus standard or other standard that facilitates the safe use, production, and distribution of such unleaded aviation gasoline, as determined appropriate by the FAA.

c. An airport owner or operator understands and agrees, that any violation of this grant assurance is subject to civil penalties as provided for in 49 U.S.C. § 46301(a)(8).



EXHIBIT C

3-06-0087-105-2025

 **U.S. Department
of Transportation
Federal Aviation
Administration**

**Airports Division
Western-Pacific
Region
California**

**San Francisco Airports
District Office:
2999 Oak Road, Suite 200
Walnut Creek, CA 94597**

Mr. Francisco Partida
Assistant Director of Aviation
City of Fresno
4995 E Clinton Way
Fresno, CA 93727

Dear Mr. Partida:

The Grant Offer for the Infrastructure Investment and Jobs Act (IIJA) - Airport Terminal Program Grant (ATP) Project No. 3-06-0087-105-2025 at Fresno Yosemite International Airport is attached for execution. This letter outlines the steps you must take to properly enter into this agreement and provides other useful information. Please read the conditions, special conditions, and assurances that comprise the grant offer carefully.

**<u>You may not make any modification to the text, terms or conditions of the grant offer.</u>**

***Steps You Must Take to Enter Into Agreement.***

To properly enter into this agreement, you must do the following:

1. The governing body must give authority to execute the grant to the individual(s) signing the grant, i.e., the person signing the document must be the sponsor's authorized representative(s) (hereinafter "authorized representative").

2. The authorized representative must execute the grant by adding their electronic signature to the appropriate certificate at the end of the agreement.

3. Once the authorized representative has electronically signed the grant, the sponsor's attorney(s) will automatically receive an email notification.

4. On the **<u>same day or after</u>** the authorized representative has signed the grant, the sponsor's attorney(s) will add their electronic signature to the appropriate certificate at the end of the agreement.

5. If there are co-sponsors, the authorized representative(s) and sponsor's attorney(s) must follow the above procedures to fully execute the grant and finalize the process. Signatures must be obtained and finalized no later than **August 29, 2025**.

6. The fully executed grant will then be automatically sent to all parties as an email attachment.

***Payment.*** Subject to the requirements in 2 CFR § 200.305 (Federal Payment), each payment request for reimbursement under this grant must be made electronically via the Delphi eInvoicing System. Please see the attached Grant Agreement for more information regarding the use of this System.

1

***Project Timing.*** The terms and conditions of this agreement require you to complete the project without undue delay and no later than the Period of Performance end date (1,460 days from the grant execution date). We will be monitoring your progress to ensure proper stewardship of these Federal funds. <u>We expect you to submit payment requests for reimbursement of allowable incurred project expenses consistent with project progress.</u> Your grant may be placed in "inactive" status if you do not make draws on a regular basis, which will affect your ability to receive future grant offers. Costs incurred after the Period of Performance ends are generally not allowable and will be rejected unless authorized by the FAA in advance.

***Reporting.*** Until the grant is completed and closed, you are responsible for submitting formal reports as follows:

> ➤ For all grants, you must submit by December 31st of each year this grant is open:
>> 1. A signed/dated SF-270 (Request for Advance or Reimbursement for non-construction projects) or SF-271 or equivalent (Outlay Report and Request for Reimbursement for Construction Programs), and
>> 2. An SF-425 (Federal Financial Report).

> ➤ For non-construction projects, you must submit <u>FAA Form 5100-140, Performance Report</u> within 30 days of the end of the Federal fiscal year.

> ➤ For construction projects, you must submit <u>FAA Form 5370-1, Construction Progress and Inspection Report</u>, within 30 days of the end of each Federal fiscal quarter.

***Audit Requirements.*** As a condition of receiving Federal assistance under this award, you must comply with audit requirements as established under 2 CFR Part 200. Subpart F requires non-Federal entities that expend <u>$1,000,000 or more in Federal awards</u> to conduct a single or program specific audit for that year. Note that this includes Federal expenditures made under other Federal-assistance programs. Please take appropriate and necessary action to ensure your organization will comply with applicable audit requirements and standards.

***Closeout.*** Once the project(s) is completed and all costs are determined, we ask that you work with your FAA contact indicated below to close the project without delay and submit the necessary final closeout documentation as required by your Region/Airports District Office.

***FAA Contact Information.*** Lemuel del Castillo, (925) 546-6440, lemuel.del.castillo@faa.gov is the assigned program manager for this grant and is readily available to assist you and your designated representative with the requirements stated herein.

We sincerely value your cooperation in these efforts and look forward to working with you to complete this important project.

Sincerely,

Amy Choi
Manager



**U.S. Department
of Transportation
Federal Aviation
Administration**

## FY 2025 AIRPORT TERMINAL PROGRAM GRANT
## GRANT AGREEMENT
### Part I - Offer

Federal Award Offer Date

Airport/Planning Area — Fresno Yosemite International Airport

Airport Terminal Program
Grant Number — 3-06-0087-105-2025

Unique Entity Identifier — CGDFXTJZJBG7

TO:   City of Fresno

**(herein called the "Sponsor") (For Co-Sponsors, list all Co-Sponsor names. The word "Sponsor" in this Grant Agreement also applies to a Co-Sponsor.)**

FROM:   **The United States of America** (acting through the Federal Aviation Administration, herein called the "FAA")

**WHEREAS**, the Sponsor has submitted to the FAA a Project Application dated June 20, 2025, for a grant of Federal funds for a project at or associated with the Fresno Yosemite International Airport, which is included as part of this Grant Agreement; and

**WHEREAS**, the FAA has approved a project for the Fresno Yosemite International Airport (herein called the "Project") consisting of the following:

**Expand Terminal Concourse, excluding passenger boarding bridges - Construction**

which is more fully described in the Project Application submitted in response to the Notice of Funding Opportunity (NOFO) published on July 5, 2024.

**NOW THEREFORE**, Pursuant to and for the purpose of carrying out the Infrastructure Investment and Jobs Act (IIJA) (Public Law (P.L.) 117-58) of 2021; FAA Reauthorization Act of 2024 (P.L. 118-63); and the representations contained in the Project Application; and in consideration of: (a) the Sponsor's adoption and ratification of the attached Grant Assurances dated April 2025, interpreted and applied consistent with the FAA Reauthorization Act of 2024; (b) the Sponsor's acceptance of this Offer; and (c) the

1

benefits to accrue to the United States and the public from the accomplishment of the Project and compliance with the Grant Assurance and conditions as herein provided;

**THE FEDERAL AVIATION ADMINISTRATION, FOR AND ON BEHALF OF THE UNITED STATES, HEREBY OFFERS AND AGREES to pay (95)% of the allowable costs incurred accomplishing the Project as the United States share of the Project.**

**Assistance Listings Number (Formerly CFDA Number): 20.106**

**This Offer is made on and SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS:**

**CONDITIONS**

1. **Maximum Obligation.** The maximum obligation of the United States payable under this Offer is $6,000,000.

   The following amounts represent a breakdown of the maximum obligation for the purpose of establishing allowable amounts for any future grant amendment, which may increase the foregoing maximum obligation of the United States under the provisions of 49 U.S.C. § 47108(b):
   $0 for planning
   $6,000,000 for airport development; and,
   $0 for land acquisition.

2. **Grant Performance.** This Grant Agreement is subject to the following Federal award requirements:

   a. Period of Performance:

      1. Shall start on the date the Sponsor formally accepts this Agreement and is the date signed by the last Sponsor signatory to the Agreement. The end date of the Period of Performance is 4 years (1,460 calendar days) from the date of acceptance. The Period of Performance end date shall not affect, relieve, or reduce Sponsor obligations and assurances that extend beyond the closeout of this Grant Agreement.

      2. Means the total estimated time interval between the start of an initial Federal award and the planned end date, which may include one or more funded portions or budget periods. (2 Code of Federal Regulations (CFR) § 200.1) except as noted in 49 U.S.C § 47142(b).

   b. Budget Period:

      1. For this Grant is 4 years (1,460 calendar days) and follows the same start and end date as the Period of Performance provided in paragraph (2)(a)(1). Pursuant to 2 CFR § 200.403(h), the Sponsor may charge to the Grant only allowable costs incurred during the Budget Period and as stated in 49 U.S.C § 47142(b). All project costs must be incurred after the grant execution date unless specifically permitted under 49 U.S.C. § 47110(c). Certain airport development costs incurred before execution of the grant agreement, but after November 15, 2021, are allowable only if certain conditions under 49 U.S.C. § 47110(c) are met.

      2. Means the time interval from the start date of a funded portion of an award to the end date of that funded portion during which the Sponsor is authorized to expend the funds awarded, including any funds carried forward or other revisions pursuant to 2 CFR § 200.308.

   c. Close Out and Termination:

2

Unless the FAA authorizes a written extension, the Sponsor must submit all Grant closeout documentation and liquidate (pay-off) all obligations incurred under this award no later than 120 calendar days after the end date of the Period of Performance. If the Sponsor does not submit all required closeout documentation within this time period, the FAA will proceed to close out the grant within one year of the Period of Performance end date with the information available at the end of 120 days (2 CFR § 200.344). The FAA may terminate this agreement and all of its obligations under this agreement if any of the following occurs:

(a) (1) The Sponsor fails to obtain or provide any Sponsor grant contribution as required by the agreement;

(2) A completion date for the Project or a component of the Project is listed in the agreement and the Recipient fails to meet that milestone by six months after the date listed in the agreement;

(3) The Sponsor fails to comply with the terms and conditions of this agreement, including a material failure to comply with the Project Schedule even if it is beyond the reasonable control of the Sponsor;

(4) Circumstances cause changes to the Project that the FAA determines are inconsistent with the FAA's basis for selecting the Project to receive a grant; or

(5) The FAA determines that termination of this agreement is in the public interest.

(b) In terminating this agreement under this section, the FAA may elect to consider only the interests of the FAA.

(c) The Sponsor may request that the FAA terminate the agreement under this section.

3. **Ineligible or Unallowable Costs.** In accordance with P.L. 117-58, Division J, Title VIII  49 U.S.C. § 49 U.S.C. § 47110, the Sponsor is prohibited from including any costs in the grant funded portions of the project that the FAA has determined to be ineligible or unallowable, including costs incurred to carry out airport development implementing policies and initiatives repealed by Executive Order 14148, provided such costs are not otherwise permitted by statute.

4. **Indirect Costs - Sponsor.** The Sponsor may charge indirect costs under this award by applying the indirect cost rate identified in the project application as accepted by the FAA, to allowable costs for Sponsor direct salaries and wages.

5. **Determining the Final Federal Share of Costs.** The United States' share of allowable project costs will be made in accordance with 49 U.S.C. § 47109, the regulations, policies, and procedures of the Secretary of Transportation ("Secretary"), and any superseding legislation. Final determination of the United States' share will be based upon the final audit of the total amount of allowable project costs and settlement will be made for any upward or downward adjustments to the Federal share of costs.

6. **Completing the Project Without Delay and in Conformance with Requirements.** The Sponsor must carry out and complete the project without undue delays and in accordance with this Agreement, IIJA (P.L. 117-58), and the regulations, policies, and procedures of the Secretary. Per 2 CFR § 200.308, the Sponsor agrees to report and request prior FAA approval for any disengagement from performing the project that exceeds three months or a 25 percent reduction in time devoted to the project. The report must include a reason for the project stoppage. The Sponsor also agrees to comply with the grant assurances, which are part of this Agreement.

7. **Amendments or Withdrawals before Grant Acceptance.** The FAA reserves the right to amend or withdraw this offer at any time prior to its acceptance by the Sponsor.

8. **Offer Expiration Date.** This offer will expire and the United States will not be obligated to pay any part of the costs of the project unless this offer has been accepted by the Sponsor on or before August 29, 2025, or such subsequent date as may be prescribed in writing by the FAA.

9. **Improper Use of Federal Funds and Mandatory Disclosure.**

   a. The Sponsor must take all steps, including litigation if necessary, to recover Federal funds spent fraudulently, wastefully, or in violation of Federal antitrust statutes, or misused in any other manner for any project upon which Federal funds have been expended. For the purposes of this Grant Agreement, the term "Federal funds" means funds however used or dispersed by the Sponsor, that were originally paid pursuant to this or any other Federal grant agreement. The Sponsor must obtain the approval of the Secretary as to any determination of the amount of the Federal share of such funds. The Sponsor must return the recovered Federal share, including funds recovered by settlement, order, or judgment, to the Secretary. The Sponsor must furnish to the Secretary, upon request, all documents and records pertaining to the determination of the amount of the Federal share or to any settlement, litigation, negotiation, or other efforts taken to recover such funds. All settlements or other final positions of the Sponsor, in court or otherwise, involving the recovery of such Federal share require advance approval by the Secretary.

   b. The Sponsor, a recipient, and a subrecipient under this Federal grant must promptly comply with the mandatory disclosure requirements as established under 2 CFR § 200.113, including reporting requirements related to recipient integrity and performance in accordance with Appendix XII to 2 CFR Part 200.

10. **United States Not Liable for Damage or Injury.** The United States is not responsible or liable for damage to property or injury to persons which may arise from, or be incident to, compliance with this Grant Agreement.

11. **System for Award Management (SAM) Registration and Unique Entity Identifier (UEI).**

    a. Requirement for System for Award Management (SAM): Unless the Sponsor is exempted from this requirement under 2 CFR § 25.110, the Sponsor must maintain the currency of its information in the SAM until the Sponsor submits the final financial report required under this Grant, or receives the final payment, whichever is later. This requires that the Sponsor review and update the information at least annually after the initial registration and more frequently if required by changes in information or another award term. Additional information about registration procedures may be found at the SAM website (currently at http://www.sam.gov).

b.  Unique entity identifier (UEI) means a 12-character alpha-numeric value used to identify a specific commercial, nonprofit or governmental entity. A UEI may be obtained from SAM.gov at https://sam.gov/content/entity-registration.

12. **Electronic Grant Payment(s).** Unless otherwise directed by the FAA, the Sponsor must make each payment request under this Agreement electronically via the Delphi eInvoicing System for Department of Transportation (DOT) Financial Assistance Awardees.

13. **Informal Letter Amendment of IIJA Projects.** If, during the life of the project, the FAA determines that the maximum grant obligation of the United States exceeds the expected needs of the Sponsor by $25,000 or five percent (5%), whichever is greater, the FAA can issue a letter amendment to the Sponsor unilaterally reducing the maximum obligation.

The FAA can, subject to the availability of Federal funds, also issue a letter to the Sponsor increasing the maximum obligation if there is an overrun in the total actual eligible and allowable project costs to cover the amount of the overrun provided it will not exceed the statutory limitations for grant amendments. The FAA's authority to increase the maximum obligation does not apply to the "planning" component of Condition No. 1, Maximum Obligation.

The FAA can also issue an informal letter amendment that modifies the grant description to correct administrative errors or to delete work items if the FAA finds it advantageous and in the best interests of the United States.

An informal letter amendment has the same force and effect as a formal grant amendment.

14. **Environmental Standards.** The Sponsor is required to comply with all applicable environmental standards, as further defined in the Grant Assurances, for all projects in this grant. If the Sponsor fails to comply with this requirement, the FAA may suspend, cancel, or terminate this Grant Agreement.

15. **Financial Reporting and Payment Requirements.** The Sponsor will comply with all Federal financial reporting requirements and payment requirements, including submittal of timely and accurate reports.

16. **Buy American.** Unless otherwise approved in advance by the FAA, in accordance with 49 U.S.C. § 50101, the Sponsor will not acquire or permit any contractor or subcontractor to acquire any steel or manufactured goods produced outside the United States to be used for any project for which funds are provided under this Grant. The Sponsor will include a provision implementing Buy American in every contract and subcontract awarded under this Grant.

17. **Build America, Buy American.** The Sponsor must comply with the requirements under the Build America, Buy America Act (P.L. 117-58).

18. **Maximum Obligation Increase.** In accordance with 49 U.S.C. § 47108(b)(3), as amended, the maximum obligation of the United States, as stated in Condition No. 1, Maximum Obligation, of this Grant:

a.  May not be increased for a planning project;

b.  May be increased by not more than 15 percent for development projects, if funds are available;

c.  May be increased by not more than the greater of the following for a land project, if funds are available:

1. 15 percent; or

2. 25 percent of the total increase in allowable project costs attributable to acquiring an interest in the land.

If the Sponsor requests an increase, any eligible increase in funding will be subject to the United States Government share as provided in IIJA (P.L. 117-58), or other superseding legislation if applicable, for the fiscal year appropriation with which the increase is funded. The FAA is not responsible for the same Federal share provided herein for any amount increased over the initial grant amount. The FAA may adjust the Federal share as applicable through an informal letter of amendment.

19. **Audits for Sponsors.**

PUBLIC SPONSORS. The Sponsor must provide for a Single Audit or program-specific audit in accordance with 2 CFR Part 200. The Sponsor must submit the audit reporting package to the Federal Audit Clearinghouse on the Federal Audit Clearinghouse's Internet Data Entry System at http://harvester.census.gov/facweb/. Upon request of the FAA, the Sponsor shall provide one copy of the completed audit to the FAA. Sponsors that expend less than $1,000,000 in Federal awards and are exempt from Federal audit requirements must make records available for review or audit by the appropriate Federal agency officials, State, and Government Accountability Office. The FAA and other appropriate Federal agencies may request additional information to meet all Federal audit requirements.

20. **Suspension or Debarment.** When entering into a "covered transaction" as defined by 2 CFR § 180.200, the Sponsor must:

a. Verify the non-Federal entity is eligible to participate in this Federal program by:

   1. Checking the Responsibility/Qualification records in the Federal Awardee Performance and Integrity Information System (FAPIIS) as maintained within the System for Award Management (SAM) to determine if the non-Federal entity is excluded or disqualified; or

   2. Collecting a certification statement from the non-Federal entity attesting they are not excluded or disqualified from participating; or

   3. Adding a clause or condition to covered transactions attesting the individual or firm are not excluded or disqualified from participating.

b. Require prime contractors to comply with 2 CFR § 180.330 when entering into lower-tier transactions with their contractors and sub-contractors.

c. Immediately disclose in writing to the FAA whenever (1) the Sponsor learns it has entered into a covered transaction with an ineligible entity or (2) the Public Sponsor suspends or debars a contractor, person, or entity.

21. **Ban on Texting While Driving.**

a. In accordance with Executive Order 13513, Federal Leadership on Reducing Text Messaging While Driving, October 1, 2009, and DOT Order 3902.10, Text Messaging While Driving, December 30, 2009, the Sponsor is encouraged to:

1. Adopt and enforce workplace safety policies to decrease crashes caused by distracted drivers including policies to ban text messaging while driving when performing any work for, or on behalf of, the Federal government, including work relating to a grant or subgrant.

2. Conduct workplace safety initiatives in a manner commensurate with the size of the business, such as:

    i. Establishment of new rules and programs or re-evaluation of existing programs to prohibit text messaging while driving; and

    ii. Education, awareness, and other outreach to employees about the safety risks associated with texting while driving.

b. The Sponsor must insert the substance of this clause on banning texting while driving in all subgrants, contracts, and subcontracts funded with this Grant.

22. **Trafficking in Persons.**

1. *Posting of contact information.*

    a. The Sponsor must post the contact information of the national human trafficking hotline (including options to reach out to the hotline such as through phone, text, or TTY) in all public airport restrooms.

2. *Provisions applicable to a recipient that is a private entity.*

    a. Under this Grant, the recipient, its employees, subrecipients under this Grant, and subrecipients employees must not engage in:

    i. Severe forms of trafficking in persons;

    ii. The procurement of commercial sex act during the period of time that the grant or cooperative agreement is in effect;

    iii. The use of forced labor in the performance of this grant; or any subaward; or

    iv. Acts that directly support or advance trafficking in person, including the following acts;

        a) Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;

        b) Failing to provide return transportation of pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:

            1. Exempted from the requirement to provide or pay for such return transportation by the federal department or agency providing or entering into the grant; or

            2. The employee is a victim of human trafficking seeking victim services or legal redress in the country of employment or witness in a human trafficking enforcement action;

        c) Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;

d)   Charging recruited employees a placement or recruitment fee; or

e)   Providing or arranging housing that fails to meet the host country's housing and safety standards.

b.   The FAA, may unilaterally terminate this Grant, or take any remedial actions authorized by 22 U.S.C § 7104b(c), without penalty, if any private entity under this Grant;

i.   Is determined to have violated a prohibition in paragraph (2)(a) of this Grant;

ii.  Has an employee that is determined to have violated a prohibition in paragraph (2)(a) of this Grant through conduct that is either:

a)   Associated with performance under this Grant; or

b)   Imputed to the recipient or subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR Part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by the FAA at 2 CFR Part 1200.

3.   *Provision applicable to a recipient other than a private entity.*

a.   The FAA may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C 7104b(c), without penalty, if subrecipient than is a private entity under this award;

i.   Is determined to have violated a prohibition in paragraph (2)(a) of this Grant or

ii.  Has an employee that is determined to have violated a prohibition in paragraph (2)(a) of this Grant through conduct that is either:

a)   Associated with performance under this Grant; or

b)   Imputed to the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR Part 180, "OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)," as implemented by our agency at 2 CFR Part 1200.

4.   *Provisions applicable to any recipient.*

a.   The recipient must inform the FAA and the DOT Inspector General, immediately of any information you receive from any source alleging a violation of a prohibition in paragraph (2)(a) of this Grant.

b.   The FAA's right to unilaterally terminate this Grant as described in paragraph (2)(b) or (3)(a) of this Grant, implements the requirements of 22 U.S.C. § chapter 78 and is addition to all other remedies for noncompliance that are available to the FAA under this Grant;

c.   The recipient must include the requirements of paragraph (2)(a) of this Grant award term in any subaward it makes to a private entity.

d.   If applicable, the recipient must also comply with the compliance plan and certification requirements in 2 CFR 175.105(b).

5.   *Definitions.* For purposes of this Grant award, term:

a.   "Employee" means either:

8

    i.   An individual employed by the recipient or a subrecipient who is engaged in the performance of the project or program under this Grant; or

    ii.   Another person engaged in the performance of the project or program under this Grant and not compensated by the recipient including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing or requirements.

  b.  "Private entity" means:

    i.   Any entity, including for profit organizations, nonprofit organizations, institutions of higher education, and hospitals. The term does not include foreign public entities, Indian Tribes, local governments, or states as defined in 2 CFR 200.1.

    ii.   The terms "severe forms of trafficking in persons," "commercial sex act," "sex trafficking," "Abuse or threatened abuse of law or legal process," "coercion," "debt bondage," and "involuntary servitude" have the meaning given at section 103 of the TVPA, as amended (22 U.S.C. §7102).

23. **IIJA Funded Work Included in a PFC Application.** Within 120 days of acceptance of this Grant Agreement, the Sponsor must submit to the FAA an amendment to any approved Passenger Facility Charge (PFC) application that contains an approved PFC project also covered under this Grant Agreement as described in the project application. The airport sponsor may not make any expenditure under this Grant Agreement until project work addressed under this Grant Agreement is removed from an approved PFC application by amendment.

24. **Exhibit "A" Property Map.** The Exhibit "A" Property Map dated January 09, 2020, is incorporated herein by reference or is submitted with the project application and made part of this Grant Agreement.

25. **Employee Protection from Reprisal.** In accordance with 2 CFR § 200.217 and 41 U.S.C. § 4712, an employee of a grantee, subgrantee contractor, recipient or subrecipient must not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (a)(2) of 41 U.S.C. 4712 information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant. The grantee, subgrantee, contractor, recipient, or subrecipient must inform their employees in writing of employee whistleblower rights and protections under 41 U.S.C. § 4712. See statutory requirements for whistleblower protections at 10 U.S.C. § 4701, 41 U.S.C. § 4712, 41 U.S.C. § 4304, and 10 U.S.C. § 4310.

26. **Prohibited Telecommunications and Video Surveillance Services and Equipment.** The Sponsor agrees to comply with mandatory standards and policies relating to use and procurement of certain telecommunications and video surveillance services or equipment in compliance with the National Defense Authorization Act [Public Law 115-232 § 889(f)(1)] and 2 CFR § 200.216.

27. **Critical Infrastructure Security and Resilience.** The Sponsor acknowledges that it has considered and addressed physical and cybersecurity and resilience in their project planning, design, and oversight, as determined by the DOT and the Department of Homeland Security (DHS). For airports that do not have specific DOT or DHS cybersecurity requirements, the FAA encourages the voluntary

adoption of the cybersecurity requirements from the Transportation Security Administration and Federal Security Director identified for security risk Category X airports.

28. **Title VI of the Civil Rights Act.**  As a condition of a grant award, the Sponsor shall demonstrate that it complies with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d et seq) and implementing regulations (49 CFR part 21), the Airport and Airway Improvement Act of 1982 (49 U.S.C. § 47123), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 et seq.), the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101, et seq.), U.S. Department of Transportation and Federal Aviation Administration (FAA) Assurances, and other relevant civil rights statutes, regulations, or authorities, including any amendments or updates thereto. This may include, as applicable, providing a current Title VI Program Plan to the FAA for approval, in the format and according to the timeline required by the FAA, and other information about the communities that will be benefited and impacted by the project. A completed FAA Title VI Pre-Grant Award Checklist is required for every grant application, unless excused by the FAA. The Sponsor shall affirmatively ensure that when carrying out any project supported by this grant that it complies with all federal nondiscrimination and civil rights laws based on race, color, national origin, sex, creed, age, disability, genetic information, in consideration for federal financial assistance. The Department's and FAA's Office of Civil Rights may provide resources and technical assistance to recipients to ensure full and sustainable compliance with Federal civil rights requirements. Failure to comply with civil rights requirements will be considered a violation of the agreement or contract and be subject to any enforcement action as authorized by law.

29. **FAA Reauthorization Act of 2024**. This grant agreement is subject to the terms and conditions contained herein including the terms known as the Grant Assurances as they were published in the Federal Register April 2025. On May 16, 2024, the FAA Reauthorization Act of 2024 made certain amendments to 49 U.S.C. chapter 471. The Reauthorization Act will require the FAA to make certain amendments to the assurances in order to best achieve consistency with the statute. Federal law requires that the FAA publish any amendments to the assurances in the Federal Register along with an opportunity to comment. In order not to delay the offer of this grant, the existing assurances are attached herein; however, the FAA shall interpret and apply these assurances consistent with the Reauthorization Act. To the extent there is a conflict between the assurances and Federal statutes, the statutes shall apply. The full text of the FAA Reauthorization Act of 2024 is at: https://www.congress.gov/bill/118th-congress/house-bill/3935/text

30. **Applicable Federal Anti-Discrimination Laws.** Pursuant to Section (3)(b)(iv), Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, the sponsor:

    a.  Agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of 31 U.S.C. 3729(b)(4); and
    b.  certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws.

31. **Federal Law and Public Policy Requirements.** The Sponsor shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Sponsor will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and

not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in and the enforcement of Federal immigration law.

32. **National Airspace System Requirements**
   a.  The Sponsor shall cooperate with FAA activities installing, maintaining, replacing, improving, or operating equipment and facilities in or supporting the National Airspace System, including waiving permitting requirements and other restrictions affecting those activities to the maximum extent possible, and assisting the FAA in securing waivers of permitting or other restrictions from other authorities. The Sponsor shall not take actions that frustrate or prevent the FAA from installing, maintaining, replacing, improving, or operating equipment and facilities in or supporting the National Airspace System.

   b.  If the FAA determines that the Sponsor has violated subsection (a), the FAA may impose a remedy, including:

       i.  additional conditions on the award;

       ii.  consistent with 49 U.S.C chapter 471, any remedy permitted under 2 C.F.R. 200.339–200.340, including withholding of payments; disallowance of previously reimbursed costs, requiring refunds from the Recipient to the USDOT; suspension or termination of the award; or suspension and debarment under 2 CFR part 180; or

       iii.  any other remedy legally available.

   c.  In imposing a remedy under this condition, the FAA may elect to consider the interests of only the FAA.

   d.  The Sponsor acknowledges that amounts that the FAA requires the Sponsor to refund to the FAA due to a remedy under this condition constitute a debt to the Federal Government that the FAA may collect under 2 CFR 200.346 and the Federal Claims Collection Standards (31 CFR parts 900–904).

33. **Signage Costs for Construction Projects.**  The airport grant recipient hereby agrees that it will require the prime contractor of a Federally- assisted airport improvement project to post signs consistent with a DOT/FAA-prescribed format, as may be requested by the DOT/FAA, and further agrees to remove any signs posted in response to requests received prior to February 1, 2025.

34. **Title 8 - U.S.C., Chapter 12, Subchapter II - Immigration**. The sponsor will follow applicable federal laws pertaining to Subchapter 12, and be subject to the penalties set forth in U.S.C. § 1324, Bringing in and harboring certain aliens, and 8 U.S.C. § 1327, Aiding or assisting certain aliens to enter.

**SPECIAL CONDITIONS**

35. **Mothers' Rooms.** As a small, medium, or large hub airport, the sponsor certifies it is in compliance with 49 U.S.C. § 47107(w).

36. **Buy American Executive Orders.** The Sponsor agrees to abide by applicable Executive Orders in effect at the time this Grant Agreement is executed, including Executive Order 14005, Ensuring the Future Is Made in All of America by All of America's Workers.

37. **Usable Unit of Development**. The FAA and the Sponsor agree this grant only funds a portion of the overall project. The FAA makes no commitment of funding beyond what is provided herein. In accepting this award, the airport Sponsor understands and agrees that the work described in this grant agreement must be incorporated into a safe, useful, and usable unit of development completed within a reasonable timeframe [49 USC § 47106(a)(4)]. This safe, useful, usable unit of development must be completed regardless of whether the sponsor receives any additional federal funding.

38. **Duffy Plaintiff Special Term.** Pursuant to the court's preliminary injunction order in State of California v. Duffy, 1:25-cv-00208-JJM-PAS (D.R.I.) (June 19, 2025), DOT will not impose or enforce the challenged immigration enforcement condition* or any materially similar terms and conditions, to any grant funds awarded, directly or indirectly, to Plaintiff States or local government entities within those States (collectively referred to as "Plaintiff State Entities"), or otherwise rescind, withhold, terminate, or take other adverse action, absent specific statutory authority, based on the challenged immigration enforcement condition while DOT is subject to an injunction. DOT will not require Plaintiff State Entities to make any certification or other representation related to compliance the challenged immigration enforcement condition nor will DOT construe acceptance of funding from DOT as certification as to the challenged immigration enforcement condition.

*The challenged immigration enforcement condition:

"[T]he Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law."

The Sponsor's acceptance of this Offer and ratification and adoption of the Project Application incorporated herein shall be evidenced by execution of this instrument by the Sponsor, as hereinafter provided, and this Offer and Acceptance shall comprise a Grant Agreement, constituting the contractual obligations and rights of the United States and the Sponsor with respect to the accomplishment of the Project and compliance with the Grant Assurances, terms, and conditions as provided herein. Such Grant Agreement shall become effective upon the Sponsor's acceptance of this Offer.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[1]

**UNITED STATES OF AMERICA**
**FEDERAL AVIATION ADMINISTRATION**

_____

*(Signature)*

_____

*(Typed Name)*

_____

*(Title of FAA Official)*

---

[1] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

**Part II - Acceptance**

The Sponsor does hereby ratify and adopt all assurances, statements, representations, warranties, covenants, and agreements contained in the Project Application and incorporated materials referred to in the foregoing Offer, and does hereby accept this Offer and by such acceptance agrees to comply with all of the Grant Assurances, terms, and conditions in this Offer and in the Project Application.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[2]

Dated _____

_____

City of Fresno

*(Name of Sponsor)*

_____

*(Signature of Sponsor's Authorized Official)*

By: _____

*(Typed Name of Sponsor's Authorized Official)*

Title: _____

*(Title of Sponsor's Authorized Official)*

---

[2] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

## CERTIFICATE OF SPONSOR'S ATTORNEY

I, _____ , acting as Attorney for the Sponsor do hereby certify:

That in my opinion the Sponsor is empowered to enter into the foregoing Grant Agreement under the laws of the State of __California__ . Further, I have examined the foregoing Grant Agreement and the actions taken by said Sponsor and Sponsor's official representative, who has been duly authorized to execute this Grant Agreement, which is in all respects due and proper and in accordance with the laws of the said State; the Infrastructure Investment and Jobs Act (IIJA) (P.L. 117-58) of 2021; and the representations contained in the Project Application. In addition, for grants involving projects to be carried out on property not owned by the Sponsor, there are no legal impediments that will prevent full performance by the Sponsor. Further, it is my opinion that the said Grant Agreement constitutes a legal and binding obligation of the Sponsor in accordance with the terms thereof.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[3]

Dated at _____

By: _____

*(Signature of Sponsor's Attorney)*

---

[3] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

# ASSURANCES
### AIRPORT SPONSORS

**A. General.**

1. These assurances shall be complied with in the performance of grant agreements for airport development, airport planning, and noise compatibility program grants for airport sponsors.

2. These assurances are required to be submitted as part of the project application by sponsors requesting funds under the provisions of Title 49, U.S.C., subtitle VII, as amended. As used herein, the term "public agency sponsor" means a public agency with control of a public-use airport; the term "private sponsor" means a private owner of a public-use airport; and the term "sponsor" includes both public agency sponsors and private sponsors.

3. Upon acceptance of this grant offer by the sponsor, these assurances are incorporated in and become part of this Grant Agreement.

**B. Duration and Applicability.**

1. **Airport Development or Noise Compatibility Program Projects Undertaken by a Public Agency Sponsor.**

   The terms, conditions, and assurances of this Grant Agreement shall remain in full force and effect throughout the useful life of the facilities developed or equipment acquired for an airport development or noise compatibility program project, or throughout the useful life of the project items installed within a facility under a noise compatibility program project, but in any event not to exceed twenty (20) years from the date of acceptance of a grant offer of Federal funds for the project. However, there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport. There shall be no limit on the duration of the terms, conditions, and assurances with respect to real property acquired with federal funds. Furthermore, the duration of the Civil Rights assurance shall be specified in the assurances.

2. **Airport Development or Noise Compatibility Projects Undertaken by a Private Sponsor.**

   The preceding paragraph (1) also applies to a private sponsor except that the useful life of project items installed within a facility or the useful life of the facilities developed or equipment acquired under an airport development or noise compatibility program project shall be no less than ten (10) years from the date of acceptance of Federal aid for the project.

3. **Airport Planning Undertaken by a Sponsor.**

   Unless otherwise specified in this Grant Agreement, only Assurances 1, 2, 3, 5, 6, 13, 18, 23, 25, 30, 32, 33, 34, 37, and 40 in Section C apply to planning projects. The terms, conditions, and assurances of this Grant Agreement shall remain in full force and effect during the life of the project; there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport.

**C. Sponsor Certification.**

The sponsor hereby assures and certifies, with respect to this grant that:

1. **General Federal Requirements**

The Sponsor will comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds for this Grant. Performance under this agreement shall be governed by and in compliance with the following requirements, as applicable, to the type of organization of the Sponsor and any applicable sub-recipients. The applicable provisions to this agreement include, but are not limited to, the following:

FEDERAL LEGISLATION

a. 49 U.S.C. subtitle VII, as amended.

b. Davis-Bacon Act, as amended — 40 U.S.C. §§ 3141-3144, 3146, and 3147, et seq.[1]

c. Federal Fair Labor Standards Act – 29 U.S.C. § 201, et seq.

d. Hatch Act – 5 U.S.C. § 1501, et seq.[2]

e. Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. 4601, et seq.[1, 2]

f. National Historic Preservation Act of 1966 – Section 106 – 54 U.S.C. § 306108.[1]

g. Archeological and Historic Preservation Act of 1974 – 54 U.S.C. § 312501, et seq.[1]

h. Native Americans Grave Repatriation Act – 25 U.S.C. § 3001, et seq.

i. Clean Air Act, P.L. 90-148, as amended – 42 U.S.C. § 7401, et seq.

j. Coastal Zone Management Act, P.L. 92-583, as amended – 16 U.S.C. § 1451, et seq.

k. Flood Disaster Protection Act of 1973 – Section 102(a) - 42 U.S.C. § 4012a.[1]

l. 49 U.S.C. § 303, (formerly known as Section 4(f)).

m. Rehabilitation Act of 1973 – 29 U.S.C. § 794.

n. Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.) (prohibits discrimination on the basis of race, color, national origin).

o. Americans with Disabilities Act of 1990, as amended, (42 U.S.C. § 12101 et seq.) (prohibits discrimination on the basis of disability).

p. Age Discrimination Act of 1975 – 42 U.S.C. § 6101, et seq.

q. American Indian Religious Freedom Act, P.L. 95-341, as amended.

r. Architectural Barriers Act of 1968, as amended – 42 U.S.C. § 4151, et seq.[1]

s. Powerplant and Industrial Fuel Use Act of 1978 – Section 403 – 42 U.S.C. § 8373.[1]

t. Contract Work Hours and Safety Standards Act – 40 U.S.C. § 3701, et seq.[1]

u. Copeland Anti-kickback Act – 18 U.S.C. § 874.[1]

v. National Environmental Policy Act of 1969 – 42 U.S.C. § 4321, et seq.[1]

w.  Wild and Scenic Rivers Act, P.L. 90-542, as amended – 16 U.S.C. § 1271, et seq.

x.  Single Audit Act of 1984 – 31 U.S.C. § 7501, et seq.[2]

y.  Drug-Free Workplace Act of 1988 – 41 U.S.C. §§ 8101 through 8105.

z.  The Federal Funding Accountability and Transparency Act of 2006, as amended (P.L. 109-282, as amended by section 6202 of P.L. 110-252).

aa. Civil Rights Restoration Act of 1987, P.L. 100-259.

bb. Infrastructure Investment and Jobs Act, P.L. 117-58, Title VIII.

cc. Build America, Buy America Act, P.L. 117-58, Title IX.

dd. Endangered Species Act – 16 U.S.C. 1531, et seq.

ee. Title IX of the Education Amendments of 1972, as amended – 20 U.S.C. 1681–1683 and 1685–1687.

ff. Drug Abuse Office and Treatment Act of 1972, as amended – 21 U.S.C. 1101, et seq.

gg. Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, P.L. 91-616, as amended – 42 U.S.C. § 4541, et seq.

hh. Appropriated Funds to Influence Certain Federal Contracting and Financial Transactions – 31 U.S.C. § 1352.

## EXECUTIVE ORDERS

a.  Executive Order 11990 – Protection of Wetlands

b.  Executive Order 11988 – Floodplain Management

c.  Executive Order 12372 – Intergovernmental Review of Federal Programs

d.  Executive Order 12699 – Seismic Safety of Federal and Federally Assisted New Building Construction[1]

e.  Executive Order 14005 – Ensuring the Future is Made in all of America by All of America's Workers

f.  Executive Order 14149 – Restoring Freedom of Speech and Ending Federal Censorship

g.  Executive Order 14151 – Ending Radical and Wasteful Government DEI Programs and Preferencing

h.  Executive Order 14154 – Unleashing American Energy

i.  Executive Order 14168 – Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government

j.  Executive Order 14173 – Ending Illegal Discrimination and Restoring Merit-Based Opportunity

## FEDERAL REGULATIONS

a.  2 CFR Part 180 – OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement).

b.  2 CFR Part 200 and 1201 – Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards. [3, 4, 5]

c.  2 CFR Part 1200 – Nonprocurement Suspension and Debarment.

d.  14 CFR Part 13 – Investigative and Enforcement Procedures.

e.  14 CFR Part 16 – Rules of Practice for Federally-Assisted Airport Enforcement Proceedings.

f.  14 CFR Part 150 – Airport Noise Compatibility Planning.

g.  28 CFR Part 35 – Nondiscrimination on the Basis of Disability in State and Local Government Services.

h.  28 CFR § 50.3 – U.S. Department of Justice Guidelines for the Enforcement of Title VI of the Civil Rights Act of 1964.

i.  29 CFR Part 1 – Procedures for Predetermination of Wage Rates.[1]

j.  29 CFR Part 3 – Contractors and Subcontractors on Public Building or Public Work Financed in Whole or in Part by Loans or Grants from the United States.[1]

k.  29 CFR Part 5 – Labor Standards Provisions Applicable to Contracts Covering Federally Financed and Assisted Construction (Also Labor Standards Provisions Applicable to Nonconstruction Contracts Subject to the Contract Work Hours and Safety Standards Act).[1]

l.  41 CFR Part 60 – Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor (Federal and Federally-assisted contracting requirements).[1]

m.  49 CFR Part 20 – New Restrictions on Lobbying.

n.  49 CFR Part 21 – Nondiscrimination in Federally-Assisted Programs of the Department of Transportation - Effectuation of Title VI of the Civil Rights Act of 1964.

o.  49 CFR Part 23 – Participation by Disadvantage Business Enterprise in Airport Concessions.

p.  49 CFR Part 24 – Uniform Relocation Assistance and Real Property Acquisition for Federal and Federally-Assisted Programs.[1, 2]

q.  49 CFR Part 26 – Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs.

r.  49 CFR Part 27 – Nondiscrimination on the Basis of Disability in Programs or Activities Receiving Federal Financial Assistance.[1]

s.  49 CFR Part 28 – Enforcement of Nondiscrimination on the Basis of Handicap in Programs or Activities Conducted by the Department of Transportation.

t.  49 CFR Part 30 – Denial of Public Works Contracts to Suppliers of Goods and Services of Countries That Deny Procurement Market Access to U.S. Contractors.

u.  49 CFR Part 32 – Governmentwide Requirements for Drug-Free Workplace (Financial Assistance).

v.  49 CFR Part 37 – Transportation Services for Individuals with Disabilities (ADA).

w.  49 CFR Part 38 – Americans with Disabilities Act (ADA) Accessibility Specifications for Transportation Vehicles.

x.  49 CFR Part 41 – Seismic Safety.

### FOOTNOTES TO ASSURANCE (C)(1)

[1]  These laws do not apply to airport planning sponsors.
[2]  These laws do not apply to private sponsors.

[3]   2 CFR Part 200 contains requirements for State and Local Governments receiving Federal assistance. Any requirement levied upon State and Local Governments by this regulation shall apply where applicable to private sponsors receiving Federal assistance under Title 49, United States Code.

[4]   Cost principles established in 2 CFR Part 200 subpart E must be used as guidelines for determining the eligibility of specific types of expenses.

[5]   Audit requirements established in 2 CFR Part 200 subpart F are the guidelines for audits.

## SPECIFIC ASSURANCES

Specific assurances required to be included in grant agreements by any of the above laws, regulations or circulars are incorporated by reference in this Grant Agreement.

**1.  Responsibility and Authority of the Sponsor.**

a.   Public Agency Sponsor:

It has legal authority to apply for this Grant, and to finance and carry out the proposed project; that a resolution, motion or similar action has been duly adopted or passed as an official act of the applicant's governing body authorizing the filing of the application, including all understandings and assurances contained therein, and directing and authorizing the person identified as the official representative of the applicant to act in connection with the application and to provide such additional information as may be required.

b.   Private Sponsor:

It has legal authority to apply for this Grant and to finance and carry out the proposed project and comply with all terms, conditions, and assurances of this Grant Agreement. It shall designate an official representative and shall in writing direct and authorize that person to file this application, including all understandings and assurances contained therein; to act in connection with this application; and to provide such additional information as may be required.

**2.  Sponsor Fund Availability.**

It has sufficient funds available for that portion of the project costs which are not to be paid by the United States. It has sufficient funds available to assure operation and maintenance of items funded under this Grant Agreement which it will own or control.

**3.  Good Title.**

a.   It, a public agency or the Federal government, holds good title, satisfactory to the Secretary, to the landing area of the airport or site thereof, or will give assurance satisfactory to the Secretary that good title will be acquired.

b.   For noise compatibility program projects to be carried out on the property of the sponsor, it holds good title satisfactory to the Secretary to that portion of the property upon which Federal funds will be expended or will give assurance to the Secretary that good title will be obtained.

**4.  Preserving Rights and Powers.**

a.   It will not take or permit any action which would operate to deprive it of any of the rights and powers necessary to perform any or all of the terms, conditions, and assurances in this Grant Agreement without the written approval of the Secretary, and will act promptly to acquire, extinguish or modify any outstanding rights or claims of right of others which would interfere

3-06-0087-105-2025

with such performance by the sponsor. This shall be done in a manner acceptable to the Secretary.

b.  Subject to 49 U.S.C. 47107(a)(16) and (x), it will not sell, lease, encumber, or otherwise transfer or dispose of any part of its title or other interests in the property shown on Exhibit A to this application or, for a noise compatibility program project, that portion of the property upon which Federal funds have been expended, for the duration of the terms, conditions, and assurances in this Grant Agreement without approval by the Secretary. If the transferee is found by the Secretary to be eligible under Title 49, United States Code, to assume the obligations of this Grant Agreement and to have the power, authority, and financial resources to carry out all such obligations, the sponsor shall insert in the contract or document transferring or disposing of the sponsor's interest, and make binding upon the transferee all of the terms, conditions, and assurances contained in this Grant Agreement.

c.  For all noise compatibility program projects which are to be carried out by another unit of local government or are on property owned by a unit of local government other than the sponsor, it will enter into an agreement with that government. Except as otherwise specified by the Secretary, that agreement shall obligate that government to the same terms, conditions, and assurances that would be applicable to it if it applied directly to the FAA for a grant to undertake the noise compatibility program project. That agreement and changes thereto must be satisfactory to the Secretary. It will take steps to enforce this agreement against the local government if there is substantial non-compliance with the terms of the agreement.

d.  For noise compatibility program projects to be carried out on privately owned property, it will enter into an agreement with the owner of that property which includes provisions specified by the Secretary. It will take steps to enforce this agreement against the property owner whenever there is substantial non-compliance with the terms of the agreement.

e.  If the sponsor is a private sponsor, it will take steps satisfactory to the Secretary to ensure that the airport will continue to function as a public-use airport in accordance with these assurances for the duration of these assurances.

f.  If an arrangement is made for management and operation of the airport by any agency or person other than the sponsor or an employee of the sponsor, the sponsor will reserve sufficient rights and authority to ensure that the airport will be operated and maintained in accordance with Title 49, United States Code, the regulations and the terms, conditions and assurances in this Grant Agreement and shall ensure that such arrangement also requires compliance therewith.

g.  Sponsors of commercial service airports will not permit or enter into any arrangement that results in permission for the owner or tenant of a property used as a residence, or zoned for residential use, to taxi an aircraft between that property and any location on airport. Sponsors of general aviation airports entering into any arrangement that results in permission for the owner of residential real property adjacent to or near the airport must comply with the requirements of Sec. 136 of Public Law 112-95 and the sponsor assurances.

**5.  Consistency with Local Plans.**

The project is reasonably consistent with plans (existing at the time of submission of this application) of public agencies that are authorized by the State in which the project is located to plan for the development of the area surrounding the airport.

**6.  Consideration of Local Interest.**

It has given fair consideration to the interest of communities in or near where the project may be located.

**7.  Consultation with Users.**

In making a decision to undertake any airport development project under Title 49, United States Code, it has undertaken reasonable consultations with affected parties using the airport at which project is proposed.

**8.  Public Hearings.**

In projects involving the location of an airport, an airport runway, or a major runway extension, it has afforded the opportunity for public hearings for the purpose of considering the economic, social, and environmental effects of the airport or runway location and its consistency with goals and objectives of such planning as has been carried out by the community and it shall, when requested by the Secretary, submit a copy of the transcript of such hearings to the Secretary. Further, for such projects, it has on its management board either voting representation from the communities where the project is located or has advised the communities that they have the right to petition the Secretary concerning a proposed project.

**9.  Metropolitan Planning Organization.**

In projects involving the location of an airport, an airport runway, or a major runway extension at a medium or large hub airport, the sponsor has made available to and has provided upon request to the metropolitan planning organization in the area in which the airport is located, if any, a copy of the proposed amendment to the airport layout plan to depict the project and a copy of any airport master plan in which the project is described or depicted.

**10. Pavement Preventive Maintenance-Management.**

With respect to a project approved after January 1, 1995, for the replacement or reconstruction of pavement at the airport, it assures or certifies that it has implemented an effective airport pavement maintenance-management program, and it assures that it will use such program for the useful life of any pavement constructed, reconstructed, or repaired with Federal financial assistance at the airport. It will provide such reports on pavement condition and pavement management programs as the Secretary determines may be useful.

**11. Terminal Development Prerequisites.**

For projects which include terminal development at a public use airport, as defined in Title 49, it has, on the date of submittal of the project grant application, all the safety equipment required for certification of such airport under 49 U.S.C. 44706, and all the security equipment required by rule or regulation, and has provided for access to the passenger enplaning and deplaning area of such airport to passengers enplaning and deplaning from aircraft other than air carrier aircraft.

**12. Accounting System, Audit, and Record Keeping Requirements.**

   a.  It shall keep all project accounts and records which fully disclose the amount and disposition by the recipient of the proceeds of this Grant, the total cost of the project in connection with which this Grant is given or used, and the amount or nature of that portion of the cost of the project supplied by other sources, and such other financial records pertinent to the project. The accounts and records shall be kept in accordance with an accounting system that will facilitate an effective audit in accordance with the Single Audit Act of 1984.

b.  It shall make available to the Secretary and the Comptroller General of the United States, or any of their duly authorized representatives, for the purpose of audit and examination, any books, documents, papers, and records of the recipient that are pertinent to this Grant. The Secretary may require that an appropriate audit be conducted by a recipient. In any case in which an independent audit is made of the accounts of a sponsor relating to the disposition of the proceeds of a grant or relating to the project in connection with which this Grant was given or used, it shall file a certified copy of such audit with the Comptroller General of the United States not later than six (6) months following the close of the fiscal year for which the audit was made.

**13. Minimum Wage Rates.**

It shall include, in all contracts in excess of $2,000 for work on any projects funded under this Grant Agreement which involve labor, provisions establishing minimum rates of wages, to be predetermined by the Secretary of Labor under 40 U.S.C. §§ 3141-3144, 3146, and 3147, Public Building, Property, and Works), which contractors shall pay to skilled and unskilled labor, and such minimum rates shall be stated in the invitation for bids and shall be included in proposals or bids for the work.

**14. Veteran's Preference.**

It shall include in all contracts for work on any project funded under this Grant Agreement which involve labor, such provisions as are necessary to insure that, in the employment of labor (except in executive, administrative, and supervisory positions), preference shall be given to Vietnam era veterans, Persian Gulf veterans, Afghanistan-Iraq war veterans, disabled veterans, and small business concerns owned and controlled by disabled veterans as defined in 49 U.S.C. 47112. However, this preference shall apply only where the individuals are available and qualified to perform the work to which the employment relates.

**15. Conformity to Plans and Specifications.**

It will execute the project subject to plans, specifications, and schedules approved by the Secretary. Such plans, specifications, and schedules shall be submitted to the Secretary prior to commencement of site preparation, construction, or other performance under this Grant Agreement, and, upon approval of the Secretary, shall be incorporated into this Grant Agreement. Any modification to the approved plans, specifications, and schedules shall also be subject to approval of the Secretary and incorporated into this Grant Agreement.

**16. Construction Inspection and Approval.**

It will provide and maintain competent technical supervision at the construction site throughout the project to assure that the work conforms to the plans, specifications, and schedules approved by the Secretary for the project. It shall subject the construction work on any project contained in an approved project application to inspection and approval by the Secretary and such work shall be in accordance with regulations and procedures prescribed by the Secretary. Such regulations and procedures shall require such cost and progress reporting by the sponsor or sponsors of such project as the Secretary shall deem necessary.

**17. Planning Projects.**

In carrying out planning projects:

a.  It will execute the project in accordance with the approved program narrative contained in the project application or with the modifications similarly approved.

b. It will furnish the Secretary with such periodic reports as required pertaining to the planning project and planning work activities.

c. It will include in all published material prepared in connection with the planning project a notice that the material was prepared under a grant provided by the United States.

d. It will make such material available for examination by the public and agrees that no material prepared with funds under this project shall be subject to copyright in the United States or any other country.

e. It will give the Secretary unrestricted authority to publish, disclose, distribute, and otherwise use any of the material prepared in connection with this grant.

f. It will grant the Secretary the right to disapprove the sponsor's employment of specific consultants and their subcontractors to do all or any part of this project as well as the right to disapprove the proposed scope and cost of professional services.

g. It will grant the Secretary the right to disapprove the use of the sponsor's employees to do all or any part of the project.

h. It understands and agrees that the Secretary's approval of this project grant or the Secretary's approval of any planning material developed as part of this grant does not constitute or imply any assurance or commitment on the part of the Secretary to approve any pending or future application for a Federal airport grant.

**18. Operation and Maintenance.**

a. The airport and all facilities which are necessary to serve the aeronautical users of the airport, other than facilities owned or controlled by the United States, shall be operated at all times in a safe and serviceable condition and in accordance with the minimum standards as may be required or prescribed by applicable Federal, state, and local agencies for maintenance and operation. It will not cause or permit any activity or action thereon which would interfere with its use for airport purposes. It will suitably operate and maintain the airport and all facilities thereon or connected therewith, with due regard to climatic and flood conditions. Any proposal to temporarily close the airport for non-aeronautical purposes must first be approved by the Secretary. In furtherance of this assurance, the sponsor will have in effect arrangements for:

  1. Operating the airport's aeronautical facilities whenever required;

  2. Promptly marking and lighting hazards resulting from airport conditions, including temporary conditions; and

  3. Promptly notifying pilots of any condition affecting aeronautical use of the airport. Nothing contained herein shall be construed to require that the airport be operated for aeronautical use during temporary periods when snow, flood, or other climatic conditions interfere with such operation and maintenance. Further, nothing herein shall be construed as requiring the maintenance, repair, restoration, or replacement of any structure or facility which is substantially damaged or destroyed due to an act of God or other condition or circumstance beyond the control of the sponsor.

b. It will suitably operate and maintain noise compatibility program items that it owns or controls upon which Federal funds have been expended.

**19. Hazard Removal and Mitigation.**

It will take appropriate action to assure that such terminal airspace as is required to protect instrument and visual operations to the airport (including established minimum flight altitudes) will be adequately cleared and protected by removing, lowering, relocating, marking, or lighting or otherwise mitigating existing airport hazards and by preventing the establishment or creation of future airport hazards.

**20. Compatible Land Use.**

It will take appropriate action, to the extent reasonable, including the adoption of zoning laws, to restrict the use of land adjacent to or in the immediate vicinity of the airport to activities and purposes compatible with normal airport operations, including landing and takeoff of aircraft. In addition, if the project is for noise compatibility program implementation, it will not cause or permit any change in land use, within its jurisdiction, that will reduce its compatibility, with respect to the airport, of the noise compatibility program measures upon which Federal funds have been expended.

**21. Economic Nondiscrimination.**

   a. It will make the airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities, including commercial aeronautical activities offering services to the public at the airport.

   b. In any agreement, contract, lease, or other arrangement under which a right or privilege at the airport is granted to any person, firm, or corporation to conduct or to engage in any aeronautical activity for furnishing services to the public at the airport, the sponsor will insert and enforce provisions requiring the contractor to:

      1. Furnish said services on a reasonable, and not unjustly discriminatory, basis to all users thereof, and

      2. Charge reasonable, and not unjustly discriminatory, prices for each unit or service, provided that the contractor may be allowed to make reasonable and nondiscriminatory discounts, rebates, or other similar types of price reductions to volume purchasers.

   c. Each fixed-based operator at the airport shall be subject to the same rates, fees, rentals, and other charges as are uniformly applicable to all other fixed-based operators making the same or similar uses of such airport and utilizing the same or similar facilities.

   d. Each air carrier using such airport shall have the right to service itself or to use any fixed-based operator that is authorized or permitted by the airport to serve any air carrier at such airport.

   e. Each air carrier using such airport (whether as a tenant, non-tenant, or subtenant of another air carrier tenant) shall be subject to such nondiscriminatory and substantially comparable rules, regulations, conditions, rates, fees, rentals, and other charges with respect to facilities directly and substantially related to providing air transportation as are applicable to all such air carriers which make similar use of such airport and utilize similar facilities, subject to reasonable classifications such as tenants or non-tenants and signatory carriers and non-signatory carriers. Classification or status as tenant or signatory shall not be unreasonably withheld by any airport provided an air carrier assumes obligations substantially similar to those already imposed on air carriers in such classification or status.

f.  It will not exercise or grant any right or privilege which operates to prevent any person, firm, or corporation operating aircraft on the airport from performing any services on its own aircraft with its own employees (including, but not limited to maintenance, repair, and fueling) that it may choose to perform.

g.  In the event the sponsor itself exercises any of the rights and privileges referred to in this assurance, the services involved will be provided on the same conditions as would apply to the furnishing of such services by commercial aeronautical service providers authorized by the sponsor under these provisions.

h.  The sponsor may establish such reasonable, and not unjustly discriminatory, conditions to be met by all users of the airport as may be necessary for the safe and efficient operation of the airport.

i.  The sponsor may prohibit or limit any given type, kind or class of aeronautical use of the airport if such action is necessary for the safe operation of the airport or necessary to serve the civil aviation needs of the public.

## 22. Exclusive Rights.

It will permit no exclusive right for the use of the airport by any person providing, or intending to provide, aeronautical services to the public. For purposes of this paragraph, the providing of the services at an airport by a single fixed-based operator shall not be construed as an exclusive right if both of the following apply:

a.  It would be unreasonably costly, burdensome, or impractical for more than one fixed-based operator to provide such services, and

b.  If allowing more than one fixed-based operator to provide such services would require the reduction of space leased pursuant to an existing agreement between such single fixed-based operator and such airport. It further agrees that it will not, either directly or indirectly, grant or permit any person, firm, or corporation, the exclusive right at the airport to conduct any aeronautical activities, including, but not limited to charter flights, pilot training, aircraft rental and sightseeing, aerial photography, crop dusting, aerial advertising and surveying, air carrier operations, aircraft sales and services, sale of aviation petroleum products whether or not conducted in conjunction with other aeronautical activity, repair and maintenance of aircraft, sale of aircraft parts, and any other activities which because of their direct relationship to the operation of aircraft can be regarded as an aeronautical activity, and that it will terminate any exclusive right to conduct an aeronautical activity now existing at such an airport before the grant of any assistance under Title 49, United States Code.

## 23. Fee and Rental Structure.

It will maintain a fee and rental structure for the facilities and services at the airport which will make the airport as self-sustaining as possible under the circumstances existing at the particular airport, taking into account such factors as the volume of traffic and economy of collection. No part of the Federal share of an airport development, airport planning or noise compatibility project for which a Grant is made under Title 49, United States Code, the Airport and Airway Improvement Act of 1982, the Federal Airport Act or the Airport and Airway Development Act of 1970 shall be included in the rate basis in establishing fees, rates, and charges for users of that airport.

**24. Airport Revenues.**

a.  All revenues generated by the airport and any local taxes on aviation fuel established after December 30, 1987, will be expended by it for the capital or operating costs of the airport; the local airport system; or other local facilities which are owned or operated by the owner or operator of the airport and which are directly and substantially related to the actual air transportation of passengers or property; or for noise mitigation purposes on or off the airport. The following exceptions apply to this paragraph:

    1.  If covenants or assurances in debt obligations issued before September 3, 1982, by the owner or operator of the airport, or provisions enacted before September 3, 1982, in governing statutes controlling the owner or operator's financing, provide for the use of the revenues from any of the airport owner or operator's facilities, including the airport, to support not only the airport but also the airport owner or operator's general debt obligations or other facilities, then this limitation on the use of all revenues generated by the airport (and, in the case of a public airport, local taxes on aviation fuel) shall not apply.

    2.  If the Secretary approves the sale of a privately owned airport to a public sponsor and provides funding for any portion of the public sponsor's acquisition of land, this limitation on the use of all revenues generated by the sale shall not apply to certain proceeds from the sale. This is conditioned on repayment to the Secretary by the private owner of an amount equal to the remaining unamortized portion (amortized over a 20-year period) of any airport improvement grant made to the private owner for any purpose other than land acquisition on or after October 1, 1996, plus an amount equal to the federal share of the current fair market value of any land acquired with an airport improvement grant made to that airport on or after October 1, 1996.

    3.  Certain revenue derived from or generated by mineral extraction, production, lease, or other means at a general aviation airport (as defined at 49 U.S.C. 47102), if the FAA determines the airport sponsor meets the requirements set forth in Section 813 of Public Law 112-95.

b.  As part of the annual audit required under the Single Audit Act of 1984, the sponsor will direct that the audit will review, and the resulting audit report will provide an opinion concerning, the use of airport revenue and taxes in paragraph (a), and indicating whether funds paid or transferred to the owner or operator are paid or transferred in a manner consistent with Title 49, United States Code and any other applicable provision of law, including any regulation promulgated by the Secretary or Administrator.

c.  Any civil penalties or other sanctions will be imposed for violation of this assurance in accordance with the provisions of 49 U.S.C. 47107.

**25. Reports and Inspections.**

It will:

a.  submit to the Secretary such annual or special financial and operations reports as the Secretary may reasonably request and make such reports available to the public; make available to the public at reasonable times and places a report of the airport budget in a format prescribed by the Secretary;

b.  for airport development projects, make the airport and all airport records and documents affecting the airport, including deeds, leases, operation and use agreements, regulations and

other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request;

c.  for noise compatibility program projects, make records and documents relating to the project and continued compliance with the terms, conditions, and assurances of this Grant Agreement including deeds, leases, agreements, regulations, and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request; and

d.  in a format and time prescribed by the Secretary, provide to the Secretary and make available to the public following each of its fiscal years, an annual report listing in detail:

   1.  all amounts paid by the airport to any other unit of government and the purposes for which each such payment was made; and

   2.  all services and property provided by the airport to other units of government and the amount of compensation received for provision of each such service and property.

**26. Use by Government Aircraft.**

It will make available all of the facilities of the airport developed with Federal financial assistance and all those usable for landing and takeoff of aircraft to the United States for use by Government aircraft in common with other aircraft at all times without charge, except, if the use by Government aircraft is substantial, charge may be made for a reasonable share, proportional to such use, for the cost of operating and maintaining the facilities used. Unless otherwise determined by the Secretary, or otherwise agreed to by the sponsor and the using agency, substantial use of an airport by Government aircraft will be considered to exist when operations of such aircraft are in excess of those which, in the opinion of the Secretary, would unduly interfere with use of the landing areas by other authorized aircraft, or during any calendar month that:

a.  Five (5) or more Government aircraft are regularly based at the airport or on land adjacent thereto; or

b.  The total number of movements (counting each landing as a movement) of Government aircraft is 300 or more, or the gross accumulative weight of Government aircraft using the airport (the total movement of Government aircraft multiplied by gross weights of such aircraft) is in excess of five million pounds.

**27. Land for Federal Facilities.**

It will furnish without cost to the Federal Government for use in connection with any air traffic control or air navigation activities, or weather-reporting and communication activities related to air traffic control, any areas of land or water, or estate therein as the Secretary considers necessary or desirable for construction, operation, and maintenance at Federal expense of space or facilities for such purposes. Such areas or any portion thereof will be made available as provided herein within four months after receipt of a written request from the Secretary.

**28. Airport Layout Plan.**

a.  The airport owner or operator will maintain a current airport layout plan of the airport showing:

   1.  boundaries of the airport and all proposed additions thereto, together with the boundaries of all offsite areas owned or controlled by the sponsor for airport purposes and proposed additions thereto;

2. the location and nature of all existing and proposed airport facilities and structures (such as runways, taxiways, aprons, terminal buildings, hangars and roads), including all proposed extensions and reductions of existing airport facilities;

3. the location of all existing and proposed non-aviation areas and of all existing improvements thereon; and

4. all proposed and existing access points used to taxi aircraft across the airport's property boundary.

b. Subject to subsection 49 U.S.C. 47107(x), the Secretary will review and approve or disapprove the plan and any revision or modification of the plan before the plan, revision, or modification takes effect.

c. The owner or operator will not make or allow any alteration in the airport or any of its facilities unless the alteration—

1. is outside the scope of the Secretary's review and approval authority as set forth in subsection (x); or

2. complies with the portions of the plan approved by the Secretary.

d. When the airport owner or operator makes a change or alteration in the airport or the facilities  which the Secretary determines adversely affects the safety, utility, or efficiency of any federally owned, leased, or funded property on or off the airport and which is not in conformity with the airport layout plan as approved by the Secretary, the owner or operator will, if requested, by the Secretary:

1. eliminate such adverse effect in a manner approved by the Secretary; or

2. bear all costs of relocating such property or its replacement to a site acceptable to the Secretary and of restoring the property or its replacement to the level of safety, utility, efficiency, and cost of operation that existed before the alteration was made, except in the case of a relocation or replacement of an existing airport facility due to a change in the Secretary's design standards beyond the control of the airport sponsor.

**29. Civil Rights.**

It will promptly take any measures necessary to ensure that no person in the United States shall, on the grounds of race, color, and national origin (including limited English proficiency) in accordance with the provisions of  Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d to 2000d-4); creed and sex per 49 U.S.C. 47123 and related requirements; age per the Age Discrimination Act of 1975 and related requirements; or disability per the Americans with Disabilities Act of 1990 and related requirements, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination in any program and activity conducted with, or benefiting from, funds received from this Grant.

a. Using the definitions of activity, facility, and program as found and defined in 49 CFR 21.23(b) and 21.23(e), the sponsor will facilitate all programs, operate all facilities, or conduct all programs in compliance with all non-discrimination requirements imposed by or pursuant to these assurances.

b. Applicability

1. Programs and Activities. If the sponsor has received a grant (or other federal assistance) for any of the sponsor's program or activities, these requirements extend to all of the sponsor's programs and activities.

2. Facilities. Where it receives a grant or other federal financial assistance to construct, expand, renovate, remodel, alter, or acquire a facility, or part of a facility, the assurance extends to the entire facility and facilities operated in connection therewith.

3. Real Property. Where the sponsor receives a grant or other Federal financial assistance in the form of, or for the acquisition of real property or an interest in real property, the assurance will extend to rights to space on, over, or under such property.

c. Duration.

The sponsor agrees that it is obligated to this assurance for the period during which Federal financial assistance is extended to the program, except where the Federal financial assistance is to provide, or is in the form of, personal property, or real property, or interest therein, or structures or improvements thereon, in which case the assurance obligates the sponsor, or any transferee for the longer of the following periods:

1. So long as the airport is used as an airport, or for another purpose involving the provision of similar services or benefits; or

2. So long as the sponsor retains ownership or possession of the property.

d. Required Solicitation Language. It will include the following notification in all solicitations for bids, Requests For Proposals for work, or material under this Grant Agreement and in all proposals for agreements, including airport concessions, regardless of funding source:

"The (**City of Fresno**), in accordance with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d to 2000d-4) and the Regulations, hereby notifies all bidders or offerors that it will affirmatively ensure that for any contract entered into pursuant to this advertisement,  all businesses will be afforded full and fair opportunity to submit bids in response to this invitation and no businesses will be discriminated against on the grounds of race, color, national origin (including limited English proficiency), creed, sex , age, or disability in consideration for an award."

e. Required Contract Provisions.

1. It will insert the non-discrimination contract clauses requiring compliance with the acts and regulations relative to non-discrimination in Federally-assisted programs of the Department of Transportation (DOT), and incorporating the acts and regulations into the contracts by reference in every contract or agreement subject to the non-discrimination in Federally-assisted programs of the DOT acts and regulations.

2. It will include a list of the pertinent non-discrimination authorities in every contract that is subject to the non-discrimination acts and regulations.

3. It will insert non-discrimination contract clauses as a covenant running with the land, in any deed from the United States effecting or recording a transfer of real property, structures, use, or improvements thereon or interest therein to a sponsor.

4. It will insert non-discrimination contract clauses prohibiting discrimination on the basis of race, color, national origin (including limited English proficiency), creed, sex, age, or

disability as a covenant running with the land, in any future deeds, leases, license, permits, or similar instruments entered into by the sponsor with other parties:

    a. For the subsequent transfer of real property acquired or improved under the applicable activity, project, or program; and

    b. For the construction or use of, or access to, space on, over, or under real property acquired or improved under the applicable activity, project, or program.

f. It will provide for such methods of administration for the program as are found by the Secretary to give reasonable guarantee that it, other recipients, sub-recipients, sub-grantees, contractors, subcontractors, consultants, transferees, successors in interest, and other participants of Federal financial assistance under such program will comply with all requirements imposed or pursuant to the acts, the regulations, and this assurance.

g. It agrees that the United States has a right to seek judicial enforcement with regard to any matter arising under the acts, the regulations, and this assurance.

## 30. Disposal of Land.

a. For land purchased under a grant for airport noise compatibility purposes, including land serving as a noise buffer, it will dispose of the land, when the land is no longer needed for such purposes, at fair market value, at the earliest practicable time. That portion of the proceeds of such disposition which is proportionate to the United States' share of acquisition of such land will be, at the discretion of the Secretary, (1) reinvested in another project at the airport, or (2) transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

    1. Reinvestment in an approved noise compatibility project;

    2. Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. 47117(e);

    3. Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C.  47114, 47115, or 47117;

    4. Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

    5. Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

If land acquired under a grant for noise compatibility purposes is leased at fair market value and consistent with noise buffering purposes, the lease will not be considered a disposal of the land. Revenues derived from such a lease may be used for an approved airport development project that would otherwise be eligible for grant funding or any permitted use of airport revenue.

b. For land purchased under a grant for airport development purposes (other than noise compatibility), it will, when the land is no longer needed for airport purposes, dispose of such land at fair market value or make available to the Secretary an amount equal to the United States' proportionate share of the fair market value of the land. That portion of the proceeds of such disposition which is proportionate to the United States' share of the cost of acquisition of such land will, upon application to the Secretary, be reinvested or transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

1. Reinvestment in an approved noise compatibility project;

2. Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. 47117(e);

3. Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. 47114, 47115, or 47117;

4. Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

5. Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

c. Land shall be considered to be needed for airport purposes under this assurance if (1) it may be needed for aeronautical purposes (including runway protection zones) or serve as noise buffer land, and (2) the revenue from interim uses of such land contributes to the financial self-sufficiency of the airport. Further, land purchased with a grant received by an airport operator or owner before December 31, 1987, will be considered to be needed for airport purposes if the Secretary or Federal agency making such grant before December 31, 1987, was notified by the operator or owner of the uses of such land, did not object to such use, and the land continues to be used for that purpose, such use having commenced no later than December 15, 1989.

d. Disposition of such land under (a), (b), or (c) will be subject to the retention or reservation of any interest or right therein necessary to ensure that such land will only be used for purposes which are compatible with noise levels associated with operation of the airport.

## 31. Engineering and Design Services.

If any phase of such project has received Federal funds under Chapter 471 subchapter 1 of Title 49 U.S.C., it will award each contract, or sub-contract for program management, construction management, planning studies, feasibility studies, architectural services, preliminary engineering, design, engineering, surveying, mapping or related services in the same manner as a contract for architectural and engineering services is negotiated under Chapter 11 of Title 40 U S.C., or an equivalent qualifications-based requirement prescribed for or by the sponsor of the airport.

## 32. Foreign Market Restrictions.

It will not allow funds provided under this Grant to be used to fund any project which uses any product or service of a foreign country during the period in which such foreign country is listed by the United States Trade Representative as denying fair and equitable market opportunities for products and suppliers of the United States in procurement and construction.

## 33. Policies, Standards, and Specifications.

It will carry out any project funded under an Airport Improvement Program Grant in accordance with policies, standards, and specifications approved by the Secretary including, but not limited to, current FAA Advisory Circulars (https://www.faa.gov/sites/faa/files/aip-pfc-checklist_0.pdf) for AIP projects as of June 20, 2025.

## 34. Relocation and Real Property Acquisition.

a. It will be guided in acquiring real property, to the greatest extent practicable under State law, by the land acquisition policies in Subpart B of 49 CFR Part 24 and will pay or reimburse property owners for necessary expenses as specified in Subpart B.

b.  It will provide a relocation assistance program offering the services described in Subpart C of 49 CFR Part 24 and fair and reasonable relocation payments and assistance to displaced persons as required in Subpart D and E of 49 CFR Part 24.

c.  It will make available within a reasonable period of time prior to displacement, comparable replacement dwellings to displaced persons in accordance with Subpart E of 49 CFR Part 24.

**35. Access By Intercity Buses.**

The airport owner or operator will permit, to the maximum extent practicable, intercity buses or other modes of transportation to have access to the airport; however, it has no obligation to fund special facilities for intercity buses or for other modes of transportation.

**36. Disadvantaged Business Enterprises.**

The sponsor shall not discriminate on the basis of race, color, national origin, or sex, in the award and performance of any DOT-assisted contract covered by 49 CFR Part 26, or in the award and performance of any concession activity contract covered by 49 CFR Part 23. In addition, the sponsor shall not discriminate on the basis of race, color, national origin or sex in the administration of its Disadvantaged Business Enterprise (DBE) and Airport Concessions Disadvantaged Business Enterprise (ACDBE) programs or the requirements of 49 CFR Parts 23 and 26. The sponsor shall take all necessary and reasonable steps under 49 CFR Parts 23 and 26 to ensure nondiscrimination in the award and administration of DOT-assisted contracts, and/or concession contracts. The sponsor's DBE and ACDBE programs, as required by 49 CFR Parts 26 and 23, and as approved by DOT, are incorporated by reference in this agreement. Implementation of these programs is a legal obligation and failure to carry out its terms shall be treated as a violation of this agreement. Upon notification to the sponsor of its failure to carry out its approved program, the Department may impose sanctions as provided for under Parts 26 and 23 and may, in appropriate cases, refer the matter for enforcement under 18 U.S.C. § 1001 and/or the Program Fraud Civil Remedies Act of 1986 (31 U.S.C. §§ 3801-3809, 3812).

**37. Hangar Construction.**

If the airport owner or operator and a person who owns an aircraft agree that a hangar is to be constructed at the airport for the aircraft at the aircraft owner's expense, the airport owner or operator will grant to the aircraft owner for the hangar a long term lease that is subject to such terms and conditions on the hangar as the airport owner or operator may impose.

**38. Competitive Access.**

a.  If the airport owner or operator of a medium or large hub airport (as defined in 49 U.S.C. § 47102) has been unable to accommodate one or more requests by an air carrier for access to gates or other facilities at that airport in order to allow the air carrier to provide service to the airport or to expand service at the airport, the airport owner or operator shall transmit a report to the Secretary that:

1.  Describes the requests;

2.  Provides an explanation as to why the requests could not be accommodated; and

3.  Provides a time frame within which, if any, the airport will be able to accommodate the requests.

b.  Such report shall be due on either February 1 or August 1 of each year if the airport has been unable to accommodate the request(s) in the six-month period prior to the applicable due date.

39. **Access to Leaded Aviation Gasoline**

a.  If 100-octane low lead aviation gasoline (100LL) was made available at an airport, at any time during calendar year 2022, an airport owner or operator may not restrict or prohibit the sale of, or self-fueling with 100-octane low lead aviation gasoline.

b.  This requirement remains until the earlier of December 31, 2030, or the date on which the airport or any retail fuel seller at the airport makes available an unleaded aviation gasoline that has been authorized for use by the FAA as a replacement for 100-octane low lead aviation gasoline for use in nearly all piston-engine aircraft and engine models; and meets either an industry consensus standard or other standard that facilitates the safe use, production, and distribution of such unleaded aviation gasoline, as determined appropriate by the FAA.

c.  An airport owner or operator understands and agrees, that any violation of this grant assurance is subject to civil penalties as provided for in 49 U.S.C. § 46301(a)(8).



EXHIBIT D

| | |
|---|---|
| **From:** | Kevin Luey via Adobe Acrobat Sign |
| **To:** | Francisco Partida |
| **Subject:** | FAT-WPG-3-06-0087-105-2025-Grant Agreement Agreement Exchange Canceled |
| **Date:** | Tuesday, September 2, 2025 9:36:04 AM |

**External Email:** Use caution with links and attachments





# FAT-WPG-3-06-0087-105-2025-Grant Agreement Agreement Exchange Canceled

*Canceled by sender*

**Document Title:** FAT-WPG-3-06-0087-105-2025-Grant Agreement
**Status:** Canceled
**Parties:**
manson.wong@faa.gov
Amy Choi (amy.l.choi@faa.gov)
joshua.castellano-gonzalez@fresno.gov
francisco.partida@fresno.gov
brandon.collet@fresno.gov
tracy.parvanian@fresno.gov
Kevin Luey (FAA)

I have canceled the agreement exchange for **FAT-WPG-3-06-0087-105-2025-Grant Agreement.** This transaction has been terminated by Adobe Acrobat Sign and the document has been removed from our Adobe Acrobat Sign accounts.

To ensure that you continue receiving our emails, please add echosign@echosign.com to your address book or safe list.