ANDREW JANZ (SBN 287672)**
Fresno City Attorney
andrew.janz@fresno.gov
CITY OF FRESNO
2600 Fresno Street
Fresno, CA 93721
Telephone: (559) 621-7500
Facsimile: (559) 457-1084
*Attorney for Plaintiff*
CITY OF FRESNO
** *Application for admission pro hac vice
forthcoming*

JONATHAN V. HOLTZMAN (SBN 99795)
jholtzman@publiclawgroup.com
JAMES R. ROSS (SBN 149199)
jross@publiclawgroup.com
RYAN P. McGINLEY-STEMPEL (SBN 296182)
rmcginleystempel@publiclawgroup.com
JAKE D. FREITAS (SBN 341837)
jfreitas@publiclawgroup.com
MARIBEL LOPEZ (SBN 340907)
mlopez@publiclawgroup.com
RENNE PUBLIC LAW GROUP
350 Sansome Street, Suite 300
San Francisco, California 94104
Telephone: (415) 848-7200
Facsimile: (415) 848-7230
*Attorneys for Plaintiffs*
CITY OF FRESNO; CITY OF EUREKA; CITY OF SOUTH
LAKE TAHOE; COUNTY OF SACRAMENTO; COUNTY OF
MONROE; MONROE COUNTY AIRPORT AUTHORITY;
COUNTY OF SAN DIEGO, COUNTY OF MARIN, CITY OF
ALAMEDA, CITY OF REDWOOD CITY

YIBIN SHEN (SBN 233545)
Alameda City Attorney
yshen@alamedaca.gov
CARA SILVER (SBN 136992)
Special Counsel
csilver@alamedaca.gov
DANIEL J. TURNER (SBN 336499)
Deputy City Attorney
dturner@alamedaca.gov
2263 Santa Clara Avenue, Rm 280
Alameda, CA 94501
Telephone: (510) 747-4750
*Attorneys for Plaintiff*
CITY OF ALAMEDA

MELISSA C. ALLISON (MA Bar No. 657470)*
mallison@andersonkreiger.com
CHRISTINA S. MARSHALL (MA Bar No. 688348)*
cmarshall@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, Floor 21
Boston, MA 02109
Telephone: (617) 621-6500
*Attorneys for Plaintiffs*
COUNTY OF MONROE
MONROE COUNTY AIRPORT AUTHORITY
* *Appearing pro hac vice*

BRIAN E. WASHINGTON (SBN 146807)
Marin County Counsel
KATE K. STANFORD (SBN 302825)
Deputy County Counsel
kate.stanford@marincounty.gov
EDWARD F. SEARS (SBN 297775)
Deputy County Counsel
ned.sears@marincounty.gov
OFFICE OF THE COUNTY COUNSEL
COUNTY OF MARIN
3501 Civic Center Drive, Room 275
San Rafael, CA 94903
Telephone: (415) 473-6117
Facsimile: (415) 473-3796
*Attorneys for Plaintiff*
COUNTY OF MARIN

LYNDSEY OLSON (MN Lic. #0332288)*
Saint Paul City Attorney
Lyndsey.olsen@ci.stpaul.mn.us
KELSEY MCELVEEN (MN Lic. #0396744)*
Assistant City Attorney
Kelsey.McElveen@ci.stpaul.mn.us
SAINT PAUL CITY ATTORNEY'S OFFICE
400 City Hall and Courthouse
15 Kellogg Boulevard West
Saint Paul, Minnesota 55102
Telephone: (651) 266-8710
Facsimile: (651) 298-5619
*Attorneys for Plaintiff*
CITY OF SAINT PAUL
* *Appearing pro hac vice*

RENNE PUBLIC LAW GROUP
Attorneys at Law

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CITY OF FRESNO; CITY OF EUREKA; CITY
OF SOUTH LAKE TAHOE; CITY OF SAINT
PAUL; COUNTY OF SACRAMENTO; COUNTY
OF MONROE; MONROE COUNTY AIRPORT
AUTHORITY; COUNTY OF SAN DIEGO,
COUNTY OF MARIN; CITY OF ALAMEDA;
CITY OF REDWOOD CITY,

      Plaintiffs,

v.

SCOTT TURNER in his official capacity as
Secretary of the U.S. Department of Housing and
Urban Development; the U.S. DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT;
SEAN DUFFY in his official capacity as Secretary
of the U.S. Department of Transportation; the U.S.
DEPARTMENT OF TRANSPORTATION;
MARCUS J. MOLINARO in his official capacity
as the Administrator of the Federal Transit
Administration ; the FEDERAL TRANSIT
ADMINISTRATION; GLORIA M. SHEPHERD in
her official capacity as the Executive Director of
the Federal Highway Administration; the
FEDERAL HIGHWAY ADMINISTRATION;
BRYAN BEDFORD in his official capacity as the
Administration of the Federal Aviation
Administration; the FEDERAL AVIATION
ADMINISTRATION; ROBERT F. KENNEDY,
JR. in his official capacity as Secretary of the U.S.
Department of Health and Human Services; U.S.
DEPARTMENT OF HEALTH AND HUMAN
SERVICES; LEE ZELDIN in his official capacity
as Administrator of the Environmental Protection
Agency; and the U.S. ENVIRONMENTAL
PROTECTION AGENCY,

      Defendants.

Case No.: 3:25-cv-07070-RS

**DECLARATION OF ANDREW G. MOORE
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION**

Complaint Filed: August 20, 2025
FAC Filed: September 8, 2025

Hon. Richard Seeborg

RENNE PUBLIC LAW GROUP
Attorneys at Law

I, Andrew G. Moore, declare as follows:

1.    I am a resident of the State of New York.  I am over the age of eighteen, competent to testify, and make this declaration based on my personal knowledge and on my review of relevant business records.

2.    I have been employed by the County of Monroe as the Director of Aviation for the Frederick Douglass Greater Rochester International Airport (the "Airport") since 2018.  I am also the Administrative Director for the Monroe County Airport Authority and have held that position since 2018. Before that, I was the Interim Director of Aviation from 2017-2018, and the Deputy Director of Aviation from 2013-2017.

3.    The Monroe County Airport Authority leases the Airport from the County of Monroe under the terms of a lease and operating agreement dated September 15, 1989, as amended.  The Airport is an important economic driver in Upstate New York; it serves nine airlines, with 26 nonstop destinations; passenger air traffic has increased for five years in a row; and in 2024, the Airport's total number of enplanements and deplanements totaled 2,668,461.  The Airport is responsible for creating and sustaining nearly 10,000 jobs, generating $295 million in income, and contributing over $800 million to the local economy each year.

4.    As the Director of Aviation, I am responsible for the safe, reliable, and efficient operation of the Airport.  My work focuses on passenger experience, commercial development to maximize revenue and profit from Airport assets, ongoing capital investment and maintenance, outreach with stakeholder groups, security, emergency response and preparedness programs, and operational compliance with state and federal regulations.

5.    The Airport relies on federal grants as a critically important source of funding for airport capital projects that are necessary to operate a safe and efficient Airport.  Losing federal grants for capital construction and improvements would limit the Airport's funding capacity to complete future projects tied to safety, security, and operational efficiencies.  Between 2015 and 2024, for example, the Airport obtained over $57 million in federal grants for projects focused on Airport safety, and modernizing the Airport terminal and airfield (plus over $30 million in Covid relief funds).

RENNE PUBLIC LAW GROUP
Attorneys at Law

6.      Currently, the Airport relies on four different sources of federal grants:  Airport Improvement Program ("AIP") Entitlement Grants (the amount of which are set by statutory formula), AIP Discretionary Grants (competitively bid, but allocated by FAA based on National Plan of Integrated Airport Systems prioritization), Infrastructure Investment and Jobs Act ("IIJA"), Airport Infrastructure Grants (set by statutory formula), and IIJA Airport Terminal Program Grants (competitively awarded annually through 2026).  In 2025 and 2026, the financing for airport capital projects is premised on these grants providing over $19 million in capital funding for projects including terminal redevelopment and airfield rehabilitation and improvements.

7.      For FY 2025 alone, the Airport has applied for federal grants totaling over $12 million.  This includes over $9 million in IIJA Airport Infrastructure grants to carry out a critically important Terminal rehabilitation project for the Airport, which includes replacing vestibule doors and elevators in the Terminal, replacing the existing fire alarm system for the Terminal, and rehabilitating the Terminal viaduct and bridge.  The anticipated FY 2025 grants also include over $2.5 million in AIP Grants for projects to acquire Aircraft Rescue & Firefighting ("ARFF") safety vehicles and equipment, and several projects involving rehabilitation of the Airport's ARFF building, pavement, and protection zones, and design for a project to reconstruct the Airport's taxiway fillets.  These projects are critically important in bringing the Airport into compliance with FAA standards and requirements.

8.      For FY 2026, the Airport plans to apply for FAA grants totaling over $6 million, for projects ranging from the rehabilitation of the taxiway fillets, significant improvements to the airfield and apron lighting throughout the Airport, and design for projects to rehabilitate the Airport's sand barn complex and the interior baggage belt assembly.  The Airport is also working to relocate its Customs and Border Protection facility out of the Terminal.  Without this anticipated federal funding in FY 2026, these projects cannot move forward as planned, which would have a profound impact on the Airport's ability to serve the traveling public.

9.      The Airport's reliance on federal grants is not only long-term, but immediate.  The Airport received the following agreements from FAA between July 28, 2025 and July 30, 2025: an agreement (**Exhibit A**) for $229,041 to evaluate the existing airfield pavement at the Airport and developing a pavement management program; an agreement (**Exhibit B**) for $360,180 to bring Taxiways A1, E and C

-4-

RENNE PUBLIC LAW GROUP
Attorneys at Law

to current FAA design standards for Taxiway edge fillets onto Runway 4-22 at the Airport; an agreement (**Exhibit C**) for $4,750,433 to replace three elevators and six terminal entry vestibules at the Airport; an agreement (**Exhibit D**) for $1,620,848 to replace the Terminal fire alarm system; an agreement (**Exhibit E**) for $703,440 to rehabilitate the Airport's existing ARFF station, including repairing windows, reconfiguring and updating interior spaces and finishes throughout, replacing a portion of the HVAC and mechanical system, and replacing lighting fixtures; an agreement (**Exhibit F**) for $256,122 to remove trees in the approach and departure corridors of Runway 10; and an agreement (**Exhibit G**) for $288,393 to replace exterior glass at Terminal Concourse B.

10.     The deadlines for the Airport to sign these seven FY 2025 grant agreements are, respectively, August 27, 28, and 29, 2025.  Based on my experience with and understanding of the FAA grant funding processes, if the agreements are not signed and returned by those deadlines the Airport will permanently lose these grant funding opportunities.

11.     The new federal grant agreements the Airport has received, attached as **Exhibits A – G**, include conditions that were not included in prior federal grant agreements.  These new conditions are entirely unrelated to FAA grant programs.  For example, the new FAA grant conditions would require the County to certify that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives "that violate any applicable Federal anti-discrimination laws" (including other similar conditions in the agreements, the "DEI Conditions").  They would also require the County to agree to "cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law," and to specifically acknowledge applicability of certain criminal immigration statutes (including other similar conditions in the agreements, the "Immigration Conditions").  None of these conditions appeared in prior FAA agreements.

12.     On April 24, 2025, the Secretary of Transportation, Sean Duffy, sent a letter to transportation agencies nationwide, which purports to "provide a reminder" of funding recipients' statutory and contractual obligations. The Duffy Letter references the Immigration Conditions and the DEI Conditions.  Regarding the Immigration Conditions, it states that "declining to cooperate with the enforcement of Federal immigration law or otherwise taking action intended to shield illegal aliens from

RENNE PUBLIC LAW GROUP
Attorneys at Law

1  ICE detection contravenes Federal law and may give rise to civil and criminal liability. See 8 U.S.C. §

2  1324 and 8 U.S.C. § 1373." Regarding the DEI Conditions, it states "[w]hether or not described in

3  neutral terms, any policy, program, or activity that is premised on a prohibited classification, including

4  discriminatory policies or practices designed to achieve so-called "diversity, equity, and inclusion," or

5  "DEI," presumptively violates federal law.

6        13.    More recently, on July 29, 2025, the Office of the Attorney General issued a

7  memorandum addressed to all federal agencies titled "Guidance for Recipients of Federal Funding

8  Regarding Unlawful Discrimination" (the "Bondi Memorandum") which states an intention to "clarif[y]

9  the application of federal antidiscrimination laws to programs or initiatives that may involve

10  discriminatory practices, including those labeled as Diversity, Equity, and Inclusion ("DEI") programs."

11  The Bondi Memorandum states that the use of "[f]acially neutral criteria (e.g., 'cultural competence,'

12  'lived experience,' geographic targeting) that functions as proxies for protected characteristics violate

13  federal law if designed or applied with the intention of advantaging or disadvantaging individuals based

14  on protected characteristics."

15        14.    The Monroe County Sheriff's Office is the primary local law enforcement presence at the

16  Airport. The Immigration Conditions do not define what it means for local law enforcement to

17  "cooperate with and not impede" Federal immigration enforcement efforts, which raises concerns about

18  the scope of the required "cooperation" and makes it difficult, if not impossible, for the County to

19  determine if it is able to comply with these conditions.

20        15.    Similarly, the DEI Conditions do not define what it means by "programs promoting

21  diversity, equity, and inclusion (DEI) initiatives." The Duffy letter states that even a policy "described in

22  neutral terms" that is "designed to achieve" this undefined concept of DEI "presumptively violates

23  federal law," and the Bondi Memorandum suggests that even "facially neutral criteria" may violate

24  federal law if it "functions as proxies for protected characteristics." This language makes it difficult, if

25  not impossible, to determine what is required to comply with these conditions.

26        16.    If the County is denied access to over $12 million in federal funding this fiscal year, and

27  another $6 million in funding next fiscal year, it will require the County to change course with respect to

28  these planned infrastructure projects. The forced alternatives could include cancelling, delaying or

RENNE PUBLIC LAW GROUP
Attorneys at Law

modifying projects, where possible, or altering the financing plan for critical projects by replacing grant funds with bonds that could increase the costs of projects and impact what tenants and passengers pay to use the airport. Being forced to pursue any of these alternatives instead of obtaining the anticipated federal grant funding would result in immediate harm to the County and the Airport. The loss of federal funding would also materially impair the County's ability to fund capital projects over the long-term and to maintain its position as a major economic and employment driver in the region and jeopardize safety and security.

17.    On August 20, 2025, the County and the Authority, along with other public entity plaintiffs, brought the above-referenced action to enjoin Defendants from enforcing the unlawful grant conditions. A motion for a Temporary Restraining Order (TRO) was filed on August 21, 2025, and an emergency TRO was ordered by Judge Seeborg on August 26, 2025. See Dkt. 27 (Minute Order Granting Motion for TRO); see also Dkt. 28 (Order Granting Motion for TRO). The TRO prohibits Defendants from "imposing or enforcing the [challenged grant conditions] or any materially similar terms or conditions with respect to any grants awarded to Plaintiffs; and from "failing or refusing to process and otherwise implement grants signed with changes or other objections to conditions enjoined by [the TRO]." Id. As ordered, Defendants have filed declarations asserting that they will not impose or enforce any challenged grant conditions while the TRO remains in effect. Dkt. 29.

18.    After filing its Declaration, however, Defendant DOT issued revised grant agreements to the County that did not comply with the terms of the TRO. On September 4 and 5, the County received a total of nine (9) revised FAA grant agreements from the New York Airports District Office, with execution deadlines of September 18. Each grant agreement does include a new "City of Fresno v. Turner Special Term" that purports to incorporate the requirements of this Court's TRO. Each new agreement, however, still includes the challenged grant conditions, and the cover letter accompanying each agreement states: **You may not make any modification to the text, terms or conditions of the grant offer**. (Emphasis in originals). This is contrary to the TRO's requirement that DOT must accept "grants signed with changes or other objections to conditions enjoined by the TRO."

19.    On September 8, 2025, the County received the same nine (9) revised FAA grant agreements from the New York Airports District Office in Word format. The FAA requested that the

County review and provide FAA with a redlined version, presumably in accordance with the TRO.  The County will supply those redlines to FAA, but does not yet know if FAA will accept them and finalize the agreements.

20.     In addition, the TRO is set to expire on September 23, 2025.  When the TRO expires, Defendants will again be free to enforce the challenged conditions, placing Plaintiffs in the untenable position of either forgoing critical federal funding or accepting unlawful restrictions that threaten their operations and the well-being of their residents.

21.     For all of reasons above, a preliminary injunction is necessary to preserve the status quo and prevent irreparable harm while this litigation proceeds.

I declare under penalty of perjury under the laws of the United States of America that this Declaration is true and correct.

Executed this 8th day of September 2025, at Rochester, New York.

By: _____
                Andrew G. Moore
                Director of Aviation
                Frederick Douglass Greater Rochester Int'l Airport
                Administrative Director
                Monroe County Airport Authority

RENNE PUBLIC LAW GROUP
Attorneys at Law

# EXHIBIT A

3-36-0102-131-2025

 **U.S. Department**
**of Transportation**
**Federal Aviation**
**Administration**

**Airports Division**
**Eastern Region**
**New York**

**New York Airports**
**District Office:**
**159-30 Rockaway**
**Blvd, Rm 111**
**Jamaica, NY 11434-**
**4848**

Adam Bello
County Executive
Monroe County
1200 Brooks Avenue
Rochester, New York 14624

Dear Mr. Bello:

The Grant Offer for Airport Improvement Program (AIP) Project No. 3-36-0102-131-2025 at Frederick Douglass/Greater Rochester International Airport is attached for execution. This letter outlines the steps you must take to properly enter into this agreement and provides other useful information. Please read the conditions, special conditions, and assurances that comprise the grant offer carefully. **You may not make any modification to the text, terms or conditions of the grant offer.**

***Steps You Must Take to Enter Into Agreement.***

To properly enter into this agreement, you must do the following:

1. The governing body must give authority to execute the grant to the individual(s) signing the grant, i.e., the person signing the document must be the sponsor's authorized representative(s) (hereinafter "authorized representative").

2. The authorized representative must execute the grant by adding their electronic signature to the appropriate certificate at the end of the agreement.

3. Once the authorized representative has electronically signed the grant, the sponsor's attorney(s) will automatically receive an email notification.

4. On the **same day or after** the authorized representative has signed the grant, the sponsor's attorney(s) will add their electronic signature to the appropriate certificate at the end of the agreement.

5. If there are co-sponsors, the authorized representative(s) and sponsor's attorney(s) must follow the above procedures to fully execute the grant and finalize the process. Signatures must be obtained and finalized no later than **August 27, 2025.**

6. The fully executed grant will then be automatically sent to all parties as an email attachment.

***Payment.*** Subject to the requirements in 2 CFR § 200.305 (Federal Payment), each payment request for reimbursement under this grant must be made electronically via the Delphi eInvoicing System. Please see the attached Grant Agreement for more information regarding the use of this System.

1

3-36-0102-131-2025

*Project Timing.* The terms and conditions of this agreement require you to complete the project without undue delay and no later than the Period of Performance end date (1,460 days from the grant execution date). We will be monitoring your progress to ensure proper stewardship of these Federal funds. <u>We expect you to submit payment requests for reimbursement of allowable incurred project expenses consistent with project progress.</u> Your grant may be placed in "inactive" status if you do not make draws on a regular basis, which will affect your ability to receive future grant offers. Costs incurred after the Period of Performance ends are generally not allowable and will be rejected unless authorized by the FAA in advance.

*Reporting.* Until the grant is completed and closed, you are responsible for submitting formal reports as follows:

> ➢ For all grants, you must submit by December 31st of each year this grant is open:
>> 1. A signed/dated SF-270 (Request for Advance or Reimbursement for non-construction projects) or SF-271 or equivalent (Outlay Report and Request for Reimbursement for Construction Programs), and
>>
>> 2. An SF-425 (Federal Financial Report).
>
> ➢ For non-construction projects, you must submit FAA Form 5100-140, Performance Report within 30 days of the end of the Federal fiscal year.
>
> ➢ For construction projects, you must submit FAA Form 5370-1, Construction Progress and Inspection Report, within 30 days of the end of each Federal fiscal quarter.

*Audit Requirements.* As a condition of receiving Federal assistance under this award, you must comply with audit requirements as established under 2 CFR Part 200. Subpart F requires non-Federal entities that expend $1,000,000 or more in Federal awards to conduct a single or program specific audit for that year. Note that this includes Federal expenditures made under other Federal-assistance programs. Please take appropriate and necessary action to ensure your organization will comply with applicable audit requirements and standards.

*Closeout.* Once the project(s) is completed and all costs are determined, we ask that you work with your FAA contact indicated below to close the project without delay and submit the necessary final closeout documentation as required by your Region/Airports District Office.

*FAA Contact Information.* Nakeshia Brown, (718) 995-5772, nakeshia.brown@faa.gov is the assigned program manager for this grant and is readily available to assist you and your designated representative with the requirements stated herein.

We sincerely value your cooperation in these efforts and look forward to working with you to complete this important project.

Sincerely,

Evelyn Martinez
Manager, New York Airports District Office

2

3-36-0102-131-2025



**U.S. Department
of Transportation
Federal Aviation
Administration**

### FEDERAL AVIATION ADMINISTRATION AIRPORT IMPROVEMENT PROGRAM (AIP)

### FY 2025 AIP

### GRANT AGREEMENT

### Part I - Offer

| | |
|---|---|
| Federal Award Offer Date | |
| Airport/Planning Area | Frederick Douglass/Greater Rochester International Airport |
| Airport Infrastructure Grant Number | 3-36-0102-131-2025 |
| Unique Entity Identifier | DYHNLRKCH117 |

TO:    County of Monroe

**(herein called the "Sponsor") (For Co-Sponsors, list all Co-Sponsor names. The word "Sponsor" in this Grant Agreement also applies to a Co-Sponsor.)**

FROM:    **The United States of America** (acting through the Federal Aviation Administration, herein called the "FAA")

**WHEREAS,** the Sponsor has submitted to the FAA a Project Application dated February 19, 2025, for a grant of Federal funds for a project at or associated with the Frederick Douglass/Greater Rochester International Airport, which is included as part of this Grant Agreement; and

**WHEREAS,** the FAA has approved a project for the Frederick Douglass/Greater Rochester International Airport (herein called the "Project") consisting of the following:

**Update the existing pavement management plan and the existing pavement survey**

which is more fully described in the Project Application.

**NOW THEREFORE,** Pursuant to and for the purpose of carrying out the Title 49, United States Code (U.S.C.), Chapters 471 and 475; 49 U.S.C. §§ 40101 et seq., and 48103; FAA Reauthorization Act of 2018

3

(Public Law Number (P.L.) 115-254); the Department of Transportation Appropriations Act, 2021 ( P.L. 116-260, Division L); the Consolidated Appropriations Act, 2022 ( P.L. 117-103); Consolidated Appropriations Act, 2023 ( P.L. 117-328); Consolidated Appropriations Act, 2024 (P.L. 118-42); FAA Reauthorization Act of 2024 (P.L. 118-63); and the representations contained in the Project Application; and in consideration of: (a) the Sponsor's adoption and ratification of the Grant Assurances dated April 2025, interpreted and applied consistent with the FAA Reauthorization Act of 2024; (b) the Sponsor's acceptance of this Offer; and (c) the benefits to accrue to the United States and the public from the accomplishment of the Project and compliance with the Grant Assurance and conditions as herein provided;

**THE FEDERAL AVIATION ADMINISTRATION, FOR AND ON BEHALF OF THE UNITED STATES, HEREBY OFFERS AND AGREES to pay (90) % of the allowable costs incurred accomplishing the Project as the United States share of the Project.**

**Assistance Listings Number (Formerly CFDA Number): 20.106**

**This Offer is made on and SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS:**

## CONDITIONS

1. **Maximum Obligation.** The maximum obligation of the United States payable under this Offer is $229,041.

   The following amounts represent a breakdown of the maximum obligation for the purpose of establishing allowable amounts for any future grant amendment, which may increase the foregoing maximum obligation of the United States under the provisions of 49 U.S.C. § 47108(b):
   $229,041 for planning
   $0 for airport development or noise program implementation; and,
   $0 for land acquisition.

2. **Grant Performance.** This Grant Agreement is subject to the following Federal award requirements:

   a. Period of Performance:

      1. Shall start on the date the Sponsor formally accepts this Agreement and is the date signed by the last Sponsor signatory to the Agreement. The end date of the Period of Performance is 4 years (1,460 calendar days) from the date of acceptance. The Period of Performance end date shall not affect, relieve, or reduce Sponsor obligations and assurances that extend beyond the closeout of this Grant Agreement.

      2. Means the total estimated time interval between the start of an initial Federal award and the planned end date, which may include one or more funded portions or budget periods (2 Code of Federal Regulations (CFR) § 200.1) except as noted in 49 U.S.C § 47142(b).

   b. Budget Period:

      1. For this Grant is 4 years (1,460 calendar days) and follows the same start and end date as the Period of Performance provided in paragraph 2(a)(1). Pursuant to 2 CFR § 200.403(h), the Sponsor may charge to the Grant only allowable costs incurred during the Budget Period except as stated in 49 U.S.C § 47142(b).

      2. Means the time interval from the start date of a funded portion of an award to the end date of that funded portion during which the Sponsors are authorized to expend the funds awarded, including any funds carried forward or other revisions pursuant to 2 CFR § 200.308.

c.   Close Out and Termination

Unless the FAA authorizes a written extension, the Sponsor must submit all Grant closeout documentation and liquidate (pay-off) all obligations incurred under this award no later than 120 calendar days after the end date of the Period of Performance. If the Sponsor does not submit all required closeout documentation within this time period, the FAA will proceed to close out the grant within one year of the Period of Performance end date with the information available at the end of 120 days (2 CFR § 200.344). The FAA may terminate this agreement and all of its obligations under this agreement if any of the following occurs:

(a)  (1) The Sponsor fails to obtain or provide any Sponsor grant contribution as required by the agreement;

(2) A completion date for the Project or a component of the Project is listed in the agreement and the Recipient fails to meet that milestone by six months after the date listed in the agreement;

(3) The Sponsor fails to comply with the terms and conditions of this agreement, including a material failure to comply with the Project Schedule even if it is beyond the reasonable control of the Sponsor;

(4) Circumstances cause changes to the Project that the FAA determines are inconsistent with the FAA's basis for selecting the Project to receive a grant; or

(5) The FAA determines that termination of this agreement is in the public interest.

(b) In terminating this agreement under this section, the FAA may elect to consider only the interests of the FAA.

(c) The Sponsor may request that the FAA terminate the agreement under this section.

3. **Ineligible or Unallowable Costs.** In accordance with 49 U.S.C. § 49 U.S.C. § 47110, the Sponsor is prohibited from including any costs in the grant funded portions of the project that the FAA has determined to be ineligible or unallowable, including costs incurred to carry out airport development implementing policies and initiatives repealed by Executive Order 14148, provided such costs are not otherwise permitted by statute.

4. **Indirect Costs - Sponsor.** The Sponsor may charge indirect costs under this award by applying the indirect cost rate identified in the project application as accepted by the FAA, to allowable costs for Sponsor direct salaries and wages.

5. **Determining the Final Federal Share of Costs.** The United States' share of allowable project costs will be made in accordance with 49 U.S.C. § 47109, the regulations, policies, and procedures of the Secretary of Transportation ("Secretary"), and any superseding legislation. Final determination of the United States' share will be based upon the final audit of the total amount of allowable project costs and settlement will be made for any upward or downward adjustments to the Federal share of costs.

6. **Completing the Project Without Delay and in Conformance with Requirements.** The Sponsor must carry out and complete the project without undue delays and in accordance with this Agreement, 49

U.S.C. Chapters 471 and 475, the regulations, policies, and procedures of the Secretary. Per 2 CFR § 200.308, the Sponsor agrees to report and request prior FAA approval for any disengagement from performing the project that exceeds three months or a 25 percent reduction in time devoted to the project. The report must include a reason for the project stoppage. The Sponsor also agrees to comply with the grant assurances, which are part of this Agreement.

7. **Amendments or Withdrawals before Grant Acceptance.** The FAA reserves the right to amend or withdraw this offer at any time prior to its acceptance by the Sponsor.

8. **Offer Expiration Date.** This offer will expire and the United States will not be obligated to pay any part of the costs of the project unless this offer has been accepted by the Sponsor on or before August 27, 2025 or such subsequent date as may be prescribed in writing by the FAA.

9. **Improper Use of Federal Funds and Mandatory Disclosure.**

    a. The Sponsor must take all steps, including litigation if necessary, to recover Federal funds spent fraudulently, wastefully, or in violation of Federal antitrust statutes, or misused in any other manner for any project upon which Federal funds have been expended. For the purposes of this Grant Agreement, the term "Federal funds" means funds however used or dispersed by the Sponsor, that were originally paid pursuant to this or any other Federal grant agreement. The Sponsor must obtain the approval of the Secretary as to any determination of the amount of the Federal share of such funds. The Sponsor must return the recovered Federal share, including funds recovered by settlement, order, or judgment, to the Secretary. The Sponsor must furnish to the Secretary, upon request, all documents and records pertaining to the determination of the amount of the Federal share or to any settlement, litigation, negotiation, or other efforts taken to recover such funds. All settlements or other final positions of the Sponsor, in court or otherwise, involving the recovery of such Federal share require advance approval by the Secretary.

    b. The Sponsor, a recipient, and a subrecipient under this Federal grant must promptly comply with the mandatory disclosure requirements as established under 2 CFR § 200.113, including reporting requirements related to recipient integrity and performance in accordance with Appendix XII to 2 CFR Part 200.

10. **United States Not Liable for Damage or Injury.** The United States is not responsible or liable for damage to property or injury to persons which may arise from, or be incident to, compliance with this Grant Agreement.

11. **System for Award Management (SAM) Registration and Unique Entity Identifier (UEI).**

    a. Requirement for System for Award Management (SAM): Unless the Sponsor is exempted from this requirement under 2 CFR § 25.110, the Sponsor must maintain the currency of its information in the SAM until the Sponsor submits the final financial report required under this Grant, or receives the final payment, whichever is later. This requires that the Sponsor review and update the information at least annually after the initial registration and more frequently if required by changes in information or another award term. Additional information about registration procedures may be found at the SAM website (currently at http://www.sam.gov).

    b. Unique entity identifier (UEI) means a 12-character alpha-numeric value used to identify a specific commercial, nonprofit or governmental entity. A UEI may be obtained from SAM.gov at https://sam.gov/content/entity-registration.

3-36-0102-131-2025

12. **Electronic Grant Payment(s).** Unless otherwise directed by the FAA, the Sponsor must make each payment request under this Agreement electronically via the Delphi eInvoicing System for Department of Transportation (DOT) Financial Assistance Awardees.

13. **Informal Letter Amendment of AIP Projects.** If, during the life of the project, the FAA determines that the maximum grant obligation of the United States exceeds the expected needs of the Sponsor by $25,000 or five percent (5%), whichever is greater, the FAA can issue a letter amendment to the Sponsor unilaterally reducing the maximum obligation.

    The FAA can also issue a letter to the Sponsor increasing the maximum obligation if there is an overrun in the total actual eligible and allowable project costs to cover the amount of the overrun provided it will not exceed the statutory limitations for grant amendments. The FAA's authority to increase the maximum obligation does not apply to the "planning" component of Condition No. 1, Maximum Obligation.

    The FAA can also issue an informal letter amendment that modifies the grant description to correct administrative errors or to delete work items if the FAA finds it advantageous and in the best interests of the United States.

    An informal letter amendment has the same force and effect as a formal grant amendment.

14. **Environmental Standards.** The Sponsor is required to comply with all applicable environmental standards, as further defined in the Grant Assurances, for all projects in this grant. If the Sponsor fails to comply with this requirement, the FAA may suspend, cancel, or terminate this Grant Agreement.

15. **Financial Reporting and Payment Requirements.** The Sponsor will comply with all Federal financial reporting requirements and payment requirements, including submittal of timely and accurate reports.

16. **Buy American.** Unless otherwise approved in advance by the FAA, in accordance with 49 U.S.C. § 50101, the Sponsor will not acquire or permit any contractor or subcontractor to acquire any steel or manufactured goods produced outside the United States to be used for any project for which funds are provided under this Grant. The Sponsor will include a provision implementing Buy American in every contract and subcontract awarded under this Grant.

17. **Build America, Buy America.** The Sponsor must comply with the requirements under the Build America, Buy America Act (P.L. 117-58).

18. **Maximum Obligation Increase.** In accordance with 49 U.S.C. § 47108(b)(3), as amended, the maximum obligation of the United States, as stated in Condition No. 1, Maximum Obligation, of this Grant:

    a. May not be increased for a planning project;

    b. May be increased by not more than 15 percent for development projects, if funds are available;

    c. May be increased by not more than the greater of the following for a land project, if funds are available:

        1. 15 percent; or

        2. 25 percent of the total increase in allowable project costs attributable to acquiring an interest in the land.

3-36-0102-131-2025

If the Sponsor requests an increase, any eligible increase in funding will be subject to the United States Government share as provided in 49 U.S.C. § 47110, or other superseding legislation if applicable, for the fiscal year appropriation with which the increase is funded. The FAA is not responsible for the same Federal share provided herein for any amount increased over the initial grant amount. The FAA may adjust the Federal share as applicable through an informal letter of amendment.

19. **Audits for Sponsors.**

PUBLIC SPONSORS. The Sponsor must provide for a Single Audit or program-specific audit in accordance with 2 CFR Part 200. The Sponsor must submit the audit reporting package to the Federal Audit Clearinghouse on the Federal Audit Clearinghouse's Internet Data Entry System at http://harvester.census.gov/facweb/. Upon request of the FAA, the Sponsor shall provide one copy of the completed audit to the FAA. Sponsors that expend less than $1,000,000 in Federal awards and are exempt from Federal audit requirements must make records available for review or audit by the appropriate Federal agency officials, State, and Government Accountability Office. The FAA and other appropriate Federal agencies may request additional information to meet all Federal audit requirements.

20. **Suspension or Debarment.** When entering into a "covered transaction" as defined by 2 CFR § 180.200, the Sponsor must:

    a. Verify the non-Federal entity is eligible to participate in this Federal program by:

        1. Checking the System for Award Management (SAM.gov) exclusions to determine if the non-Federal entity is excluded or disqualified; or
        2. Collecting a certification statement from the non-Federal entity attesting they are not excluded or disqualified from participating; or

        3. Adding a clause or condition to covered transactions attesting the individual or firm are not excluded or disqualified from participating.

    b. Require prime contractors to comply with 2 CFR § 180.330 when entering into lower-tier transactions with their contractors and sub-contractors.

    c. Immediately disclose in writing to the FAA whenever (1) the Sponsor learns it has entered into a covered transaction with an ineligible entity or (2) the Public Sponsor suspends or debars a contractor, person, or entity.

21. **Ban on Texting While Driving.**

    a. In accordance with Executive Order 13513, Federal Leadership on Reducing Text Messaging While Driving, October 1, 2009, and DOT Order 3902.10, Text Messaging While Driving, December 30, 2009, the Sponsor is encouraged to:

        1. Adopt and enforce workplace safety policies to decrease crashes caused by distracted drivers including policies to ban text messaging while driving when performing any work for, or on behalf of, the Federal government, including work relating to a grant or subgrant.

        2. Conduct workplace safety initiatives in a manner commensurate with the size of the business, such as:

            i. Establishment of new rules and programs or re-evaluation of existing programs to prohibit text messaging while driving; and

    ii.    Education, awareness, and other outreach to employees about the safety risks associated with texting while driving.

  b.  The Sponsor must insert the substance of this clause on banning texting while driving in all subgrants, contracts, and subcontracts funded with this Grant.

22. **Trafficking in Persons.**

  1.  *Posting of contact information.*

    a.  The Sponsor must post the contact information of the national human trafficking hotline (including options to reach out to the hotline such as through phone, text, or TTY) in all public airport restrooms.

  2.  *Provisions applicable to a recipient that is a private entity.*

    a.  Under this Grant, the recipient, its employees, subrecipients under this Grant, and subrecipient's employees must not engage in:

      i.    Severe forms of trafficking in persons;

      ii.   The procurement of a commercial sex act during the period of time that the grant or cooperative agreement is in effect;

      iii.  The use of forced labor in the performance of this grant; or any subaward; or

      iv.  Acts that directly support or advance trafficking in persons, including the following acts:

        a)  Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;

        b)  Failing to provide return transportation of pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:

          1.  Exempted from the requirement to provide or pay for such return transportation by the federal department or agency providing or entering into the grant; or

          2.  The employee is a victim of human trafficking seeking victim services or legal redress in the country of employment or witness in a human trafficking enforcement action;

        c)  Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;

        d)  Charging recruited employees a placement or recruitment fee; or

        e)  Providing or arranging housing that fails to meet the host country's housing and safety standards.

    b.  The FAA may unilaterally terminate this Grant or take any remedial actions authorized by 22 U.S.C. § 7104b(c), without penalty, if any private entity under this Grant:

      i.    Is determined to have violated a prohibition in paragraph (2)(a) of this Grant; or

      ii.   Has an employee that is determined to have violated a prohibition in paragraph(2)(a) of this Grant through conduct that is either:

        a)  Associated with the performance under this Grant; or

     b) Imputed to the recipient or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR Part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by the FAA at 2 CFR Part 1200.

3. *Provisions applicable to a recipient other than a private entity.*

   a. The FAA may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C. § 7104b(c), without penalty, if subrecipient than is a private entity under this award:

     i. Is determined to have violated a prohibition in paragraph (2)(a) of this Grant or

     ii. Has an employee that is determined to have violated a prohibition in paragraph (2)(a) of this Grant through conduct that is either:

       a) Associated with the performance under this Grant; or

       b) Imputed to the recipient or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR Part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by the FAA at 2 CFR Part 1200.

4. *Provisions applicable to any recipient.*

   a. The recipient must inform the FAA and the DOT Inspector General immediately of any information you receive from any source alleging a violation of a prohibition in paragraph (2)(a) of this Grant.

   b. The FAA's right to unilaterally terminate this Grant as described in paragraphs (2)(b) or (3)(a) of this Grant, implements the requirements of 22 U.S.C. chapter 78, and is in addition to all other remedies for noncompliance that are available to the FAA under this Grant.

   c. The recipient must include the requirements of paragraph (2)(a) of this Grant award term in any subaward it makes to a private entity.

   d. If applicable, the recipient must also comply with the compliance plan and certification requirements in 2 CFR 175.105(b).

5. *Definitions. For purposes of this Grant award, term:*

   a. "Employee" means either:

     i. An individual employed by the recipient or a subrecipient who is engaged in the performance of the project or program under this Grant; or

     ii. Another person engaged in the performance of the project or program under this Grant and not compensated by the recipient including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing requirements.

   b. "Private Entity" means:

3-36-0102-131-2025

    i.    Any entity, including for-profit organizations, nonprofit organizations, institutions of higher education, and hospitals. The term does not include foreign public entities, Indian Tribes, local governments, or states as defined in 2 CFR 200.1.

    ii.    The terms "severe forms of trafficking in persons," "commercial sex act," "sex trafficking," "Abuse or threatened abuse of law or legal process," "coercion," "debt bondage," and "involuntary servitude" have the meanings given at section 103 of the TVPA, as amended (22 U.S.C. § 7102).

23. **AIP Funded Work Included in a PFC Application.** Within 120 days of acceptance of this Grant Agreement, the Sponsor must submit to the FAA an amendment to any approved Passenger Facility Charge (PFC) application that contains an approved PFC project also covered under this Grant Agreement as described in the project application. The airport sponsor may not make any expenditure under this Grant Agreement until project work addressed under this Grant Agreement is removed from an approved PFC application by amendment.

24. **Exhibit "A" Property Map.** The Exhibit "A" Property Map dated May 09, 2016, is incorporated herein by reference or is submitted with the project application and made part of this Grant Agreement.

25. **Employee Protection from Reprisal.** In accordance with 2 CFR § 200.217 and 41 U.S.C. § 4712, an employee of a grantee, subgrantee contractor, recipient or subrecipient must not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (a)(2) of 41 U.S.C. 4712 information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant. The grantee, subgrantee, contractor, recipient, or subrecipient must inform their employees in writing of employee whistleblower rights and protections under 41 U.S.C. § 4712. See statutory requirements for whistleblower protections at 10 U.S.C. § 4701, 41 U.S.C. § 4712, 41 U.S.C. § 4304, and 10 U.S.C. § 4310.

26. **Prohibited Telecommunications and Video Surveillance Services and Equipment.** The Sponsor agrees to comply with mandatory standards and policies relating to use and procurement of certain telecommunications and video surveillance services or equipment in compliance with the National Defense Authorization Act [P.L. 115-232 § 889(f)] and 2 CFR § 200.216.

27. **Critical Infrastructure Security and Resilience.** The Sponsor acknowledges that it has considered and addressed physical and cybersecurity and resilience in its project planning, design, and oversight, as determined by the DOT and the Department of Homeland Security (DHS). For airports that do not have specific DOT or DHS cybersecurity requirements, the FAA encourages the voluntary adoption of the cybersecurity requirements from the Transportation Security Administration and Federal Security Director identified for security risk Category X airports.

28. **Title VI of the Civil Rights Act.** As a condition of a grant award, the Sponsor shall demonstrate that it complies with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d et seq) and implementing regulations (49 CFR part 21), the Airport and Airway Improvement Act of 1982 (49 U.S.C. § 47123), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 et seq.), the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101, et seq.), U.S. Department of Transportation and Federal Aviation Administration (FAA) Assurances, and other relevant civil rights statutes, regulations, or authorities, including any amendments or updates thereto. This may include, as applicable, providing a current Title VI

Program Plan to the FAA for approval, in the format and according to the timeline required by the FAA, and other information about the communities that will be benefited and impacted by the project. A completed FAA Title VI Pre-Grant Award Checklist is required for every grant application, unless excused by the FAA. The Sponsor shall affirmatively ensure that when carrying out any project supported by this grant that it complies with all federal nondiscrimination and civil rights laws based on race, color, national origin, sex, creed, age, disability, genetic information, in consideration for federal financial assistance. The Department's and FAA's Office of Civil Rights may provide resources and technical assistance to recipients to ensure full and sustainable compliance with Federal civil rights requirements. Failure to comply with civil rights requirements will be considered a violation of the agreement or contract and be subject to any enforcement action as authorized by law.

29. **FAA Reauthorization Act of 2024.** This grant agreement is subject to the terms and conditions contained herein including the terms known as the Grant Assurances as they were published in the Federal Register April 2025. On May 16, 2024, the FAA Reauthorization Act of 2024 made certain amendments to 49 U.S.C. chapter 471. The Reauthorization Act will require FAA to make certain amendments to the assurances in order to best achieve consistency with the statute. Federal law requires that FAA publish any amendments to the assurances in the Federal Register along with an opportunity to comment. In order not to delay the offer of this grant, the existing assurances are attached herein; however, FAA shall interpret and apply these assurances consistent with the Reauthorization Act. To the extent there is a conflict between the assurances and Federal statutes, the statutes shall apply. The full text of the FAA Reauthorization Act of 2024 is at https://www.congress.gov/bill/118th-congress/house-bill/3935/text.

30. **Applicable Federal Anti-Discrimination Laws.** Pursuant to Section (3)(b)(iv), Executive Order 1473, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, the sponsor:

    a. Agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of 31 U.S.C. 3729(b)(4) and

    b. certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws.

31. **Federal Law and Public Policy Requirements.** The Sponsor shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Sponsor will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in and the enforcement of Federal immigration law.

32. **National Airspace System Requirements**

    a. The Sponsor shall cooperate with FAA activities installing, maintaining, replacing, improving, or operating equipment and facilities in or supporting the National Airspace System, including waiving permitting requirements and other restrictions affecting those activities to the

maximum extent possible, and assisting the FAA in securing waivers of permitting or other restrictions from other authorities. The Sponsor shall not take actions that frustrate or prevent the FAA from installing, maintaining, replacing, improving, or operating equipment and facilities in or supporting the National Airspace System.

b.   If FAA determines that the Sponsor has violated subsection (a), the FAA may impose a remedy, including:

    (1)   additional conditions on the award;
    (2)    consistent with 49 U.S.C chapter 471,.any remedy permitted under 2 C.F.R. 200.339–200.340, including withholding of payments; disallowance of previously reimbursed costs, requiring refunds from the Recipient to the DOT; suspension or termination of the award; or suspension and debarment under 2 C.F.R. part 180; or
    (3)   any other remedy legally available.

c.   (In imposing a remedy under this condition, the FAA may elect to consider the interests of only the FAA.

d.   The Sponsor acknowledges that amounts that the FAA requires the Sponsor to refund to the FAA due to a remedy under this condition constitute a debt to the Federal Government that the FAA may collect under 2 C.F.R. 200.346 and the Federal Claims Collection Standards (31 C.F.R. parts 900–904).

33. **Signage Costs for Construction Projects.** The Sponsor agrees that it will require the prime contractor of a Federally- assisted airport improvement project to post signs consistent with a DOT/FAA-prescribed format, as may be requested by the DOT/FAA, and further agrees to remove any signs posted in response to requests received prior to February 1, 2025.

34. **Title 8 - U.S.C., Chapter 12, Subchapter II - Immigration**. The sponsor will follow applicable federal laws pertaining to Subchapter 12, and be subject to the penalties set forth in 8 U.S.C. § 1324, Bringing in and harboring certain aliens, and 8 U.S.C. § 1327, Aiding or assisting certain aliens to enter

## SPECIAL CONDITIONS

35. **Disadvantaged Business Enterprise (DBE)/Airport Concessions Disadvantaged Business Enterprise (ACDBE) Program.** The Sponsor understands and agrees that it will not submit payment reimbursement requests until the Sponsor has received from the FAA Office of Civil Rights approval of its DBE Program (reflecting compliance with 49 CFR Part 26 including any amendments thereto), and if applicable, its ACDBE program (reflecting compliance with 49 CFR Part 23, including any amendments thereto).

36. **Pavement Maintenance Management Program.** The Sponsor agrees that it will implement an effective airport pavement maintenance management program as required by Airport Sponsor Grant Assurance 11, Pavement Preventive Maintenance-Management, which is codified at 49 U.S.C. § 47105(e). The Sponsor agrees that it will use the program for the useful life of any pavement

3-36-0102-131-2025

constructed, reconstructed, rehabilitated, or repaired with Federal financial assistance at the airport. The Sponsor further agrees that the program will:

a. Follow the current version of FAA Advisory Circular 150/5380-6, "Guidelines and Procedures for Maintenance of Airport Pavements," for specific guidelines and procedures for maintaining airport pavements, establishing an effective maintenance program, specific types of distress and its probable cause, inspection guidelines, and recommended methods of repair;

b. Detail the procedures to be followed to assure that proper pavement maintenance, both preventive and repair, is performed;

c. Include a Pavement Inventory, Inspection Schedule, Record Keeping, Information Retrieval, and Reference, meeting the following requirements:

   1. Pavement Inventory. The following must be depicted in an appropriate form and level of detail:

      i. Location of all runways, taxiways, and aprons;

      ii. Dimensions;

      iii. Type of pavement; and,

      iv. Year of construction or most recent major reconstruction, rehabilitation, or repair.

   2. Inspection Schedule.

      i. Detailed Inspection. A detailed inspection must be performed at least once a year. If a history of recorded pavement deterioration is available, i.e., Pavement Condition Index (PCI) survey as set forth in the current version of Advisory Circular 150/5380-6, the frequency of inspections may be extended to three years.

      ii. Drive-By Inspection. A drive-by inspection must be performed a minimum of once per month to detect unexpected changes in the pavement condition. For drive-by inspections, the date of inspection and any maintenance performed must be recorded.

   3. Record Keeping. Complete information on the findings of all detailed inspections and on the maintenance performed must be recorded and kept on file for a minimum of five years. The type of distress, location, and remedial action, scheduled or performed, must be documented. The minimum information is:

      i. Inspection date;

      ii. Location;

      iii. Distress types; and

      iv. Maintenance scheduled or performed.

   4. Information Retrieval System. The Sponsor must be able to retrieve the information and records produced by the pavement survey to provide a report to the FAA as may be required.

37. **Protection of Runway Protection Zone - Airport Property.** The Sponsor agrees to prevent the erection or creation of any structure, place of public assembly, or other use in the Runway Protection Zone, as depicted on the Exhibit "A": Property Map, except for Navigational Aids (NAVAIDS) that are fixed by their functional purposes or any other structure permitted by the FAA.

3-36-0102-131-2025

The Sponsor further agrees that any existing structures or uses within the Runway Protection Zone will be cleared or discontinued by the Sponsor unless approved by the FAA.

38. **Consultant Contract and Cost Analysis.** The Sponsor understands and agrees that no reimbursement will be made on the consultant contract portion of this Grant until the FAA has received the consultant contract, the Sponsor's analysis of costs, and the independent fee estimate.

39. **Preliminary Scope of Work.** This Grant is made and accepted upon the basis of a preliminary scope of work. The parties agree that within 30 days from the date of acceptance of this Grant, the Sponsor will furnish a final scope of work to the FAA and that no work will commence, nor will there be any contract signed for accomplishment of such work, until the final scope of work has been approved by the FAA. The Sponsor and the FAA further agree that any reference to the scope of work made in this Grant or in the Project Application is in respect to the final scope of work.

40. **Mothers' Rooms.** As a small, medium, or large hub airport, the sponsor certifies it is in compliance with 49 U.S.C. § 47107(w).

41. **Buy American Executive Orders.** The Sponsor agrees to abide by applicable Executive Orders in effect at the time this Grant Agreement is executed, including Executive Order 14005, Ensuring the Future Is Made in All of America by All of America's Workers.

42. **Duffy Plaintiff Special Term.** Pursuant to the court's preliminary injunction order in State of California v. Duffy, 1:25-cv-00208-JJM-PAS (D.R.I.) (June 19, 2025), DOT will not impose or enforce the challenged immigration enforcement condition* or any materially similar terms and conditions, to any grant funds awarded, directly or indirectly, to Plaintiff States or local government entities within those States (collectively referred to as "Plaintiff State Entities"), or otherwise rescind, withhold, terminate, or take other adverse action, absent specific statutory authority, based on the challenged immigration enforcement condition while DOT is subject to an injunction. DOT will not require Plaintiff State Entities to make any certification or other representation related to compliance with the challenged immigration enforcement condition nor will DOT construe acceptance of funding from DOT as certification as to the challenged immigration enforcement condition.

*The challenged immigration enforcement condition:

"[T]he Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law."

3-36-0102-131-2025

The Sponsor's acceptance of this Offer and ratification and adoption of the Project Application incorporated herein shall be evidenced by execution of this instrument by the Sponsor, as hereinafter provided, and this Offer and Acceptance shall comprise a Grant Agreement, constituting the contractual obligations and rights of the United States and the Sponsor with respect to the accomplishment of the Project and compliance with the Grant Assurances, terms, and conditions as provided herein. Such Grant Agreement shall become effective upon the Sponsor's acceptance of this Offer.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[1]

**UNITED STATES OF AMERICA**
**FEDERAL AVIATION ADMINISTRATION**

_____
*(Signature)*

_____
*(Typed Name)*

_____
*(Title of FAA Official)*

---

[1] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

3-36-0102-131-2025

## Part II - Acceptance

The Sponsor does hereby ratify and adopt all assurances, statements, representations, warranties, covenants, and agreements contained in the Project Application and incorporated materials referred to in the foregoing Offer, and does hereby accept this Offer and by such acceptance agrees to comply with all of the Grant Assurances, terms, and conditions in this Offer and in the Project Application.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[2]

Dated _____

County of Monroe
_____
*(Name of Sponsor)*

_____
*(Signature of Sponsor's Authorized Official)*

By: _____
*(Typed Name of Sponsor's Authorized Official)*

Title: _____
*(Title of Sponsor's Authorized Official)*

---

[2] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

3-36-0102-131-2025

## CERTIFICATE OF SPONSOR'S ATTORNEY

I, _____, acting as Attorney for the Sponsor do hereby certify:

That in my opinion the Sponsor is empowered to enter into the foregoing Grant Agreement under the laws of the State of ___New York___. Further, I have examined the foregoing Grant Agreement and the actions taken by said Sponsor and Sponsor's official representative, who has been duly authorized to execute this Grant Agreement, which is in all respects due and proper and in accordance with the laws of the said State; and Title 49, United States Code (U.S.C.), Chapters 471 and 475; 49 U.S.C. §§ 40101 et seq., and 48103; FAA Reauthorization Act of 2018 (P.L. 115-254); the Department of Transportation Appropriations Act, 2021 (P.L. 116-260, Division L); the Consolidated Appropriations Act, 2022 ( P.L. 117-103); Consolidated Appropriations Act, 2023 ( P.L. 117-328); Consolidated Appropriations Act, 2024 (P.L. 118-42); FAA Reauthorization Act of 2024 (P.L. 118-63); and the representations contained in the Project Application. In addition, for grants involving projects to be carried out on property not owned by the Sponsor, there are no legal impediments that will prevent full performance by the Sponsor. Further, it is my opinion that the said Grant Agreement constitutes a legal and binding obligation of the Sponsor in accordance with the terms thereof.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[3]

Dated at _____

By: _____

*(Signature of Sponsor's Attorney)*

---

[3] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

18

3-36-0102-131-2025

## ASSURANCES
### AIRPORT SPONSORS

**A. General.**

1. These assurances shall be complied with in the performance of grant agreements for airport development, airport planning, and noise compatibility program grants for airport sponsors.

2. These assurances are required to be submitted as part of the project application by sponsors requesting funds under the provisions of Title 49, U.S.C., subtitle VII, as amended. As used herein, the term "public agency sponsor" means a public agency with control of a public-use airport; the term "private sponsor" means a private owner of a public-use airport; and the term "sponsor" includes both public agency sponsors and private sponsors.

3. Upon acceptance of this grant offer by the sponsor, these assurances are incorporated in and become part of this Grant Agreement.

**B. Duration and Applicability.**

**1. Airport Development or Noise Compatibility Program Projects Undertaken by a Public Agency Sponsor.**

The terms, conditions and assurances of this Grant Agreement shall remain in full force and effect throughout the useful life of the facilities developed or equipment acquired for an airport development or noise compatibility program project, or throughout the useful life of the project items installed within a facility under a noise compatibility program project, but in any event not to exceed twenty (20) years from the date of acceptance of a grant offer of Federal funds for the project. However, there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport. There shall be no limit on the duration of the terms, conditions, and assurances with respect to real property acquired with federal funds. Furthermore, the duration of the Civil Rights assurance shall be specified in the assurances.

**2. Airport Development or Noise Compatibility Projects Undertaken by a Private Sponsor.**

The preceding paragraph (1) also applies to a private sponsor except that the useful life of project items installed within a facility or the useful life of the facilities developed or equipment acquired under an airport development or noise compatibility program project shall be no less than ten (10) years from the date of acceptance of Federal aid for the project.

**3. Airport Planning Undertaken by a Sponsor.**

Unless otherwise specified in this Grant Agreement, only Assurances 1, 2, 3, 5, 6, 13, 18, 23, 25, 30, 32, 33, 34, 37, and 40 in Section C apply to planning projects. The terms, conditions, and assurances of this Grant Agreement shall remain in full force and effect during the life of the project; there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport.

3-36-0102-131-2025

### C. Sponsor Certification.

The sponsor hereby assures and certifies, with respect to this grant that:

### 1. General Federal Requirements

It will comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds for this Grant. Performance under this agreement shall be governed by and in compliance with the following requirements, as applicable, to the type of organization of the Sponsor and any applicable sub-recipients. The applicable provisions to this agreement include, but are not limited to, the following:

FEDERAL LEGISLATION

a.  49 U.S.C. subtitle VII, as amended.

b.  Davis-Bacon Act, as amended — 40 U.S.C. §§ 3141-3144, 3146, and 3147, et seq.[1]

c.  Federal Fair Labor Standards Act – 29 U.S.C. § 201, et seq.

d.  Hatch Act – 5 U.S.C. § 1501, et seq.[2]

e.  Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601, et seq.[1, 2]

f.  National Historic Preservation Act of 1966 – Section 106 – 54 U.S.C. § 306108.[1]

g.  Archeological and Historic Preservation Act of 1974 – 54 U.S.C. § 312501, et seq.[1]

h.  Native Americans Grave Repatriation Act – 25 U.S.C. § 3001, et seq.

i.  Clean Air Act, P.L. 90-148, as amended – 42 U.S.C. § 7401, et seq.

j.  Coastal Zone Management Act, P.L. 92-583, as amended – 16 U.S.C. § 1451, et seq.

k.  Flood Disaster Protection Act of 1973 – Section 102(a) - 42 U.S.C. § 4012a.[1]

l.  49 U.S.C. § 303, (formerly known as Section 4(f)).

m.  Rehabilitation Act of 1973 – 29 U.S.C. § 794.

n.  Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.) (prohibits discrimination on the basis of race, color, national origin).

o.  Americans with Disabilities Act of 1990, as amended, (42 U.S.C. § 12101 et seq.) (prohibits discrimination on the basis of disability).

p.  Age Discrimination Act of 1975 – 42 U.S.C. § 6101, et seq.

q.  American Indian Religious Freedom Act, P.L. 95-341, as amended.

r.  Architectural Barriers Act of 1968, as amended – 42 U.S.C. § 4151, et seq.[1]

s.  Powerplant and Industrial Fuel Use Act of 1978 – Section 403 – 42 U.S.C. § 8373.[1]

t.  Contract Work Hours and Safety Standards Act – 40 U.S.C. § 3701, et seq.[1]

u.  Copeland Anti-kickback Act – 18 U.S.C. § 874.[1]

v.  National Environmental Policy Act of 1969 – 42 U.S.C. § 4321, et seq.[1]

w.  Wild and Scenic Rivers Act, P.L. 90-542, as amended – 16 U.S.C. § 1271, et seq.

x.  Single Audit Act of 1984 – 31 U.S.C. § 7501, et seq.[2]

y.  Drug-Free Workplace Act of 1988 – 41 U.S.C. §§ 8101 through 8105.

z.  The Federal Funding Accountability and Transparency Act of 2006, as amended (P.L. 109-282, as amended by section 6202 of P.L. 110-252).

aa. Civil Rights Restoration Act of 1987, P.L. 100-259.

bb. Infrastructure Investment and Jobs Act, P.L. 117-58, Title VIII.

cc. Build America, Buy America Act, P.L. 117-58, Title IX.

dd. Endangered Species Act – 16 U.S.C. 1531, et seq.

ee. Title IX of the Education Amendments of 1972, as amended – 20 U.S.C. 1681–1683 and 1685–1687.

ff.  Drug Abuse Office and Treatment Act of 1972, as amended – 21 U.S.C. 1101, et seq.

gg. Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, P.L. 91-616, as amended – 42 U.S.C. § 4541, et seq.

hh. Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, P.L. 91-616, as amended – 42 U.S.C. § 4541, et seq.

ii.  Appropriated Funds to Influence Certain Federal Contracting and Financial Transactions – 31 U.S.C. § 1352.

## EXECUTIVE ORDERS

a.  Executive Order 11990 – Protection of Wetlands

b.  Executive Order 11988 – Floodplain Management

c.  Executive Order 12372 – Intergovernmental Review of Federal Programs

d.  Executive Order 12699 – Seismic Safety of Federal and Federally Assisted New Building Construction[1]

e.  Executive Order 14005 – Ensuring the Future is Made in all of America by All of America's Workers

f.  Executive Order 14149 – Restoring Freedom of Speech and Ending Federal Censorship

g.  Executive Order 14151 – Ending Radical and Wasteful Government DEI Programs and Preferencing

h.  Executive Order 14154 – Unleashing American Energy

i.  Executive Order 14168 – Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government

j.  Executive Order 14173 – Ending Illegal Discrimination and Restoring Merit-Based Opportunity

**FEDERAL REGULATIONS**

a. 2 CFR Part 180 – OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement).

b. 2 CFR Part 200 and 1201 – Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards. [3, 4, 5]

c. 2 CFR Part 1200 – Nonprocurement Suspension and Debarment.

d. 14 CFR Part 13 – Investigative and Enforcement Procedures.

e. 14 CFR Part 16 – Rules of Practice for Federally-Assisted Airport Enforcement Proceedings.

f. 14 CFR Part 150 – Airport Noise Compatibility Planning.

g. 28 CFR Part 35 – Nondiscrimination on the Basis of Disability in State and Local Government Services.

h. 28 CFR § 50.3 – U.S. Department of Justice Guidelines for the Enforcement of Title VI of the Civil Rights Act of 1964.

i. 29 CFR Part 1 – Procedures for Predetermination of Wage Rates.[1]

j. 29 CFR Part 3 – Contractors and Subcontractors on Public Building or Public Work Financed in Whole or in Part by Loans or Grants from the United States.[1]

k. 29 CFR Part 5 – Labor Standards Provisions Applicable to Contracts Covering Federally Financed and Assisted Construction (Also Labor Standards Provisions Applicable to Nonconstruction Contracts Subject to the Contract Work Hours and Safety Standards Act).[1]

l. 41 CFR Part 60 – Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor (Federal and Federally-assisted contracting requirements).[1]

m. 49 CFR Part 20 – New Restrictions on Lobbying.

n. 49 CFR Part 21 – Nondiscrimination in Federally-Assisted Programs of the Department of Transportation - Effectuation of Title VI of the Civil Rights Act of 1964.

o. 49 CFR Part 23 – Participation by Disadvantage Business Enterprise in Airport Concessions.

p. 49 CFR Part 24 – Uniform Relocation Assistance and Real Property Acquisition for Federal and Federally-Assisted Programs.[1, 2]

q. 49 CFR Part 26 – Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs.

r. 49 CFR Part 27 – Nondiscrimination on the Basis of Disability in Programs or Activities Receiving Federal Financial Assistance.[1]

s. 49 CFR Part 28 – Enforcement of Nondiscrimination on the Basis of Handicap in Programs or Activities Conducted by the Department of Transportation.

t. 49 CFR Part 30 – Denial of Public Works Contracts to Suppliers of Goods and Services of Countries That Deny Procurement Market Access to U.S. Contractors.

u. 49 CFR Part 32 – Governmentwide Requirements for Drug-Free Workplace (Financial Assistance).

    v.   49 CFR Part 37 – Transportation Services for Individuals with Disabilities (ADA).

    w.   49 CFR Part 38 – Americans with Disabilities Act (ADA) Accessibility Specifications for Transportation Vehicles.

    x.   49 CFR Part 41 – Seismic Safety.

### FOOTNOTES TO ASSURANCE (C)(1)

[1]  These laws do not apply to airport planning sponsors.

[2]  These laws do not apply to private sponsors.

[3]  2 CFR Part 200 contains requirements for State and Local Governments receiving Federal assistance. Any requirement levied upon State and Local Governments by this regulation shall apply where applicable to private sponsors receiving Federal assistance under Title 49, United States Code.

[4]  Cost principles established in 2 CFR Part 200 subpart E must be used as guidelines for determining the eligibility of specific types of expenses.

[5]  Audit requirements established in 2 CFR Part 200 subpart F are the guidelines for audits.

### SPECIFIC ASSURANCES

Specific assurances required to be included in grant agreements by any of the above laws, regulations or circulars are incorporated by reference in this Grant Agreement.

**2.  Responsibility and Authority of the Sponsor.**

    a.   Public Agency Sponsor:

        It has legal authority to apply for this Grant, and to finance and carry out the proposed project; that a resolution, motion or similar action has been duly adopted or passed as an official act of the applicant's governing body authorizing the filing of the application, including all understandings and assurances contained therein, and directing and authorizing the person identified as the official representative of the applicant to act in connection with the application and to provide such additional information as may be required.

    b.   Private Sponsor:

        It has legal authority to apply for this Grant and to finance and carry out the proposed project and comply with all terms, conditions, and assurances of this Grant Agreement. It shall designate an official representative and shall in writing direct and authorize that person to file this application, including all understandings and assurances contained therein; to act in connection with this application; and to provide such additional information as may be required.

**3.  Sponsor Fund Availability.**

    It has sufficient funds available for that portion of the project costs which are not to be paid by the United States. It has sufficient funds available to assure operation and maintenance of items funded under this Grant Agreement which it will own or control.

**4.  Good Title.**

    a.   It, a public agency or the Federal government, holds good title, satisfactory to the Secretary, to the landing area of the airport or site thereof, or will give assurance satisfactory to the Secretary that good title will be acquired.

b. For noise compatibility program projects to be carried out on the property of the sponsor, it holds good title satisfactory to the Secretary to that portion of the property upon which Federal funds will be expended or will give assurance to the Secretary that good title will be obtained.

**5. Preserving Rights and Powers.**

a. It will not take or permit any action which would operate to deprive it of any of the rights and powers necessary to perform any or all of the terms, conditions, and assurances in this Grant Agreement without the written approval of the Secretary, and will act promptly to acquire, extinguish or modify any outstanding rights or claims of right of others which would interfere with such performance by the sponsor. This shall be done in a manner acceptable to the Secretary.

b. Subject to 49 U.S.C. § 47107(a)(16) and (x), it will not sell, lease, encumber, or otherwise transfer or dispose of any part of its title or other interests in the property shown on Exhibit A to this application or, for a noise compatibility program project, that portion of the property upon which Federal funds have been expended, for the duration of the terms, conditions, and assurances in this Grant Agreement without approval by the Secretary. If the transferee is found by the Secretary to be eligible under Title 49, United States Code, to assume the obligations of this Grant Agreement and to have the power, authority, and financial resources to carry out all such obligations, the sponsor shall insert in the contract or document transferring or disposing of the sponsor's interest, and make binding upon the transferee all of the terms, conditions, and assurances contained in this Grant Agreement.

c. For all noise compatibility program projects which are to be carried out by another unit of local government or are on property owned by a unit of local government other than the sponsor, it will enter into an agreement with that government. Except as otherwise specified by the Secretary, that agreement shall obligate that government to the same terms, conditions, and assurances that would be applicable to it if it applied directly to the FAA for a grant to undertake the noise compatibility program project. That agreement and changes thereto must be satisfactory to the Secretary. It will take steps to enforce this agreement against the local government if there is substantial non-compliance with the terms of the agreement.

d. For noise compatibility program projects to be carried out on privately owned property, it will enter into an agreement with the owner of that property which includes provisions specified by the Secretary. It will take steps to enforce this agreement against the property owner whenever there is substantial non-compliance with the terms of the agreement.

e. If the sponsor is a private sponsor, it will take steps satisfactory to the Secretary to ensure that the airport will continue to function as a public-use airport in accordance with these assurances for the duration of these assurances.

f. If an arrangement is made for management and operation of the airport by any agency or person other than the sponsor or an employee of the sponsor, the sponsor will reserve sufficient rights and authority to ensure that the airport will be operated and maintained in accordance with Title 49, United States Code, the regulations and the terms, conditions and assurances in this Grant Agreement and shall ensure that such arrangement also requires compliance therewith.

g. Sponsors of commercial service airports will not permit or enter into any arrangement that results in permission for the owner or tenant of a property used as a residence, or zoned for residential use, to taxi an aircraft between that property and any location on airport. Sponsors

of general aviation airports entering into any arrangement that results in permission for the owner of residential real property adjacent to or near the airport must comply with the requirements of Sec. 136 of Public Law 112-95 and the sponsor assurances.

6. **Consistency with Local Plans.**

The project is reasonably consistent with plans (existing at the time of submission of this application) of public agencies that are authorized by the State in which the project is located to plan for the development of the area surrounding the airport.

7. **Consideration of Local Interest.**

It has given fair consideration to the interest of communities in or near where the project may be located.

8. **Consultation with Users.**

In making a decision to undertake any airport development project under Title 49, United States Code, it has undertaken reasonable consultations with affected parties using the airport at which project is proposed.

9. **Public Hearings.**

In projects involving the location of an airport, an airport runway, or a major runway extension, it has afforded the opportunity for public hearings for the purpose of considering the economic, social, and environmental effects of the airport or runway location and its consistency with goals and objectives of such planning as has been carried out by the community and it shall, when requested by the Secretary, submit a copy of the transcript of such hearings to the Secretary. Further, for such projects, it has on its management board either voting representation from the communities where the project is located or has advised the communities that they have the right to petition the Secretary concerning a proposed project.

10. **Metropolitan Planning Organization.**

In projects involving the location of an airport, an airport runway, or a major runway extension at a medium or large hub airport, the sponsor has made available to and has provided upon request to the metropolitan planning organization in the area in which the airport is located, if any, a copy of the proposed amendment to the airport layout plan to depict the project and a copy of any airport master plan in which the project is described or depicted.

11. **Pavement Preventive Maintenance-Management.**

With respect to a project approved after January 1, 1995, for the replacement or reconstruction of pavement at the airport, it assures or certifies that it has implemented an effective airport pavement maintenance-management program and it assures that it will use such program for the useful life of any pavement constructed, reconstructed or repaired with Federal financial assistance at the airport. It will provide such reports on pavement condition and pavement management programs as the Secretary determines may be useful.

12. **Terminal Development Prerequisites.**

For projects which include terminal development at a public use airport, as defined in Title 49, it has, on the date of submittal of the project grant application, all the safety equipment required for certification of such airport under 49 U.S.C. § 44706, and all the security equipment required by rule or regulation, and has provided for access to the passenger enplaning and deplaning area of such airport to passengers enplaning and deplaning from aircraft other than air carrier aircraft.

13. **Accounting System, Audit, and Record Keeping Requirements.**

   a. It shall keep all project accounts and records which fully disclose the amount and disposition by the recipient of the proceeds of this Grant, the total cost of the project in connection with which this Grant is given or used, and the amount or nature of that portion of the cost of the project supplied by other sources, and such other financial records pertinent to the project. The accounts and records shall be kept in accordance with an accounting system that will facilitate an effective audit in accordance with the Single Audit Act of 1984.

   b. It shall make available to the Secretary and the Comptroller General of the United States, or any of their duly authorized representatives, for the purpose of audit and examination, any books, documents, papers, and records of the recipient that are pertinent to this Grant. The Secretary may require that an appropriate audit be conducted by a recipient. In any case in which an independent audit is made of the accounts of a sponsor relating to the disposition of the proceeds of a grant or relating to the project in connection with which this Grant was given or used, it shall file a certified copy of such audit with the Comptroller General of the United States not later than six (6) months following the close of the fiscal year for which the audit was made.

14. **Minimum Wage Rates.**

   It shall include, in all contracts in excess of $2,000 for work on any projects funded under this Grant Agreement which involve labor, provisions establishing minimum rates of wages, to be predetermined by the Secretary of Labor under 40 U.S.C. §§ 3141-3144, 3146, and 3147, Public Building, Property, and Works), which contractors shall pay to skilled and unskilled labor, and such minimum rates shall be stated in the invitation for bids and shall be included in proposals or bids for the work.

15. **Veteran's Preference.**

   It shall include in all contracts for work on any project funded under this Grant Agreement which involve labor, such provisions as are necessary to insure that, in the employment of labor (except in executive, administrative, and supervisory positions), preference shall be given to Vietnam era veterans, Persian Gulf veterans, Afghanistan-Iraq war veterans, disabled veterans, and small business concerns owned and controlled by disabled veterans as defined in 49 U.S.C. § 47112. However, this preference shall apply only where the individuals are available and qualified to perform the work to which the employment relates.

16. **Conformity to Plans and Specifications.**

   It will execute the project subject to plans, specifications, and schedules approved by the Secretary. Such plans, specifications, and schedules shall be submitted to the Secretary prior to commencement of site preparation, construction, or other performance under this Grant Agreement, and, upon approval of the Secretary, shall be incorporated into this Grant Agreement. Any modification to the approved plans, specifications, and schedules shall also be subject to approval of the Secretary, and incorporated into this Grant Agreement.

17. **Construction Inspection and Approval.**

   It will provide and maintain competent technical supervision at the construction site throughout the project to assure that the work conforms to the plans, specifications, and schedules approved by the Secretary for the project. It shall subject the construction work on any project contained in an approved project application to inspection and approval by the Secretary and such work shall be in

accordance with regulations and procedures prescribed by the Secretary. Such regulations and procedures shall require such cost and progress reporting by the sponsor or sponsors of such project as the Secretary shall deem necessary.

18. **Planning Projects.**

In carrying out planning projects:

a. It will execute the project in accordance with the approved program narrative contained in the project application or with the modifications similarly approved.

b. It will furnish the Secretary with such periodic reports as required pertaining to the planning project and planning work activities.

c. It will include in all published material prepared in connection with the planning project a notice that the material was prepared under a grant provided by the United States.

d. It will make such material available for examination by the public, and agrees that no material prepared with funds under this project shall be subject to copyright in the United States or any other country.

e. It will give the Secretary unrestricted authority to publish, disclose, distribute, and otherwise use any of the material prepared in connection with this grant.

f. It will grant the Secretary the right to disapprove the sponsor's employment of specific consultants and their subcontractors to do all or any part of this project as well as the right to disapprove the proposed scope and cost of professional services.

g. It will grant the Secretary the right to disapprove the use of the sponsor's employees to do all or any part of the project.

h. It understands and agrees that the Secretary's approval of this project grant or the Secretary's approval of any planning material developed as part of this grant does not constitute or imply any assurance or commitment on the part of the Secretary to approve any pending or future application for a Federal airport grant.

19. **Operation and Maintenance.**

a. The airport and all facilities which are necessary to serve the aeronautical users of the airport, other than facilities owned or controlled by the United States, shall be operated at all times in a safe and serviceable condition and in accordance with the minimum standards as may be required or prescribed by applicable Federal, state, and local agencies for maintenance and operation. It will not cause or permit any activity or action thereon which would interfere with its use for airport purposes. It will suitably operate and maintain the airport and all facilities thereon or connected therewith, with due regard to climatic and flood conditions. Any proposal to temporarily close the airport for non-aeronautical purposes must first be approved by the Secretary. In furtherance of this assurance, the sponsor will have in effect arrangements for:

   1. Operating the airport's aeronautical facilities whenever required;

   2. Promptly marking and lighting hazards resulting from airport conditions, including temporary conditions; and

   3. Promptly notifying pilots of any condition affecting aeronautical use of the airport. Nothing contained herein shall be construed to require that the airport be operated for aeronautical use during temporary periods when snow, flood, or other climatic conditions

interfere with such operation and maintenance. Further, nothing herein shall be construed as requiring the maintenance, repair, restoration, or replacement of any structure or facility which is substantially damaged or destroyed due to an act of God or other condition or circumstance beyond the control of the sponsor.

b.   It will suitably operate and maintain noise compatibility program items that it owns or controls upon which Federal funds have been expended.

## 20. Hazard Removal and Mitigation.

It will take appropriate action to assure that such terminal airspace as is required to protect instrument and visual operations to the airport (including established minimum flight altitudes) will be adequately cleared and protected by removing, lowering, relocating, marking, or lighting or otherwise mitigating existing airport hazards and by preventing the establishment or creation of future airport hazards.

## 21. Compatible Land Use.

It will take appropriate action, to the extent reasonable, including the adoption of zoning laws, to restrict the use of land adjacent to or in the immediate vicinity of the airport to activities and purposes compatible with normal airport operations, including landing and takeoff of aircraft. In addition, if the project is for noise compatibility program implementation, it will not cause or permit any change in land use, within its jurisdiction, that will reduce its compatibility, with respect to the airport, of the noise compatibility program measures upon which Federal funds have been expended.

## 22. Economic Nondiscrimination.

a.   It will make the airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities, including commercial aeronautical activities offering services to the public at the airport.

b.   In any agreement, contract, lease, or other arrangement under which a right or privilege at the airport is granted to any person, firm, or corporation to conduct or to engage in any aeronautical activity for furnishing services to the public at the airport, the sponsor will insert and enforce provisions requiring the contractor to:

1.   Furnish said services on a reasonable, and not unjustly discriminatory, basis to all users thereof, and

2.   Charge reasonable, and not unjustly discriminatory, prices for each unit or service, provided that the contractor may be allowed to make reasonable and nondiscriminatory discounts, rebates, or other similar types of price reductions to volume purchasers.

c.   Each fixed-based operator at the airport shall be subject to the same rates, fees, rentals, and other charges as are uniformly applicable to all other fixed-based operators making the same or similar uses of such airport and utilizing the same or similar facilities.

d.   Each air carrier using such airport shall have the right to service itself or to use any fixed-based operator that is authorized or permitted by the airport to serve any air carrier at such airport.

e.   Each air carrier using such airport (whether as a tenant, non-tenant, or subtenant of another air carrier tenant) shall be subject to such nondiscriminatory and substantially comparable rules, regulations, conditions, rates, fees, rentals, and other charges with respect to facilities directly and substantially related to providing air transportation as are applicable to all such air carriers

3-36-0102-131-2025

which make similar use of such airport and utilize similar facilities, subject to reasonable classifications such as tenants or non-tenants and signatory carriers and non-signatory carriers. Classification or status as tenant or signatory shall not be unreasonably withheld by any airport provided an air carrier assumes obligations substantially similar to those already imposed on air carriers in such classification or status.

f.   It will not exercise or grant any right or privilege which operates to prevent any person, firm, or corporation operating aircraft on the airport from performing any services on its own aircraft with its own employees (including, but not limited to maintenance, repair, and fueling) that it may choose to perform.

g.   In the event the sponsor itself exercises any of the rights and privileges referred to in this assurance, the services involved will be provided on the same conditions as would apply to the furnishing of such services by commercial aeronautical service providers authorized by the sponsor under these provisions.

h.   The sponsor may establish such reasonable, and not unjustly discriminatory, conditions to be met by all users of the airport as may be necessary for the safe and efficient operation of the airport.

i.   The sponsor may prohibit or limit any given type, kind or class of aeronautical use of the airport if such action is necessary for the safe operation of the airport or necessary to serve the civil aviation needs of the public.

**23. Exclusive Rights.**

It will permit no exclusive right for the use of the airport by any person providing, or intending to provide, aeronautical services to the public. For purposes of this paragraph, the providing of the services at an airport by a single fixed-based operator shall not be construed as an exclusive right if both of the following apply:

a.   It would be unreasonably costly, burdensome, or impractical for more than one fixed-based operator to provide such services, and

b.   If allowing more than one fixed-based operator to provide such services would require the reduction of space leased pursuant to an existing agreement between such single fixed-based operator and such airport. It further agrees that it will not, either directly or indirectly, grant or permit any person, firm, or corporation, the exclusive right at the airport to conduct any aeronautical activities, including, but not limited to charter flights, pilot training, aircraft rental and sightseeing, aerial photography, crop dusting, aerial advertising and surveying, air carrier operations, aircraft sales and services, sale of aviation petroleum products whether or not conducted in conjunction with other aeronautical activity, repair and maintenance of aircraft, sale of aircraft parts, and any other activities which because of their direct relationship to the operation of aircraft can be regarded as an aeronautical activity, and that it will terminate any exclusive right to conduct an aeronautical activity now existing at such an airport before the grant of any assistance under Title 49, United States Code.

**24. Fee and Rental Structure.**

It will maintain a fee and rental structure for the facilities and services at the airport which will make the airport as self-sustaining as possible under the circumstances existing at the particular airport, taking into account such factors as the volume of traffic and economy of collection. No part of the Federal share of an airport development, airport planning or noise compatibility project for

which a Grant is made under Title 49, United States Code, the Airport and Airway Improvement Act of 1982, the Federal Airport Act or the Airport and Airway Development Act of 1970 shall be included in the rate basis in establishing fees, rates, and charges for users of that airport.

**25. Airport Revenues.**

a. All revenues generated by the airport and any local taxes on aviation fuel established after December 30, 1987, will be expended by it for the capital or operating costs of the airport; the local airport system; or other local facilities which are owned or operated by the owner or operator of the airport and which are directly and substantially related to the actual air transportation of passengers or property; or for noise mitigation purposes on or off the airport. The following exceptions apply to this paragraph:

1. If covenants or assurances in debt obligations issued before September 3, 1982, by the owner or operator of the airport, or provisions enacted before September 3, 1982, in governing statutes controlling the owner or operator's financing, provide for the use of the revenues from any of the airport owner or operator's facilities, including the airport, to support not only the airport but also the airport owner or operator's general debt obligations or other facilities, then this limitation on the use of all revenues generated by the airport (and, in the case of a public airport, local taxes on aviation fuel) shall not apply.

2. If the Secretary approves the sale of a privately owned airport to a public sponsor and provides funding for any portion of the public sponsor's acquisition of land, this limitation on the use of all revenues generated by the sale shall not apply to certain proceeds from the sale. This is conditioned on repayment to the Secretary by the private owner of an amount equal to the remaining unamortized portion (amortized over a 20-year period) of any airport improvement grant made to the private owner for any purpose other than land acquisition on or after October 1, 1996, plus an amount equal to the federal share of the current fair market value of any land acquired with an airport improvement grant made to that airport on or after October 1, 1996.

3. Certain revenue derived from or generated by mineral extraction, production, lease, or other means at a general aviation airport (as defined at 49 U.S.C. § 47102), if the FAA determines the airport sponsor meets the requirements set forth in Section 813 of Public Law 112-95.

b. As part of the annual audit required under the Single Audit Act of 1984, the sponsor will direct that the audit will review, and the resulting audit report will provide an opinion concerning, the use of airport revenue and taxes in paragraph (a), and indicating whether funds paid or transferred to the owner or operator are paid or transferred in a manner consistent with Title 49, United States Code and any other applicable provision of law, including any regulation promulgated by the Secretary or Administrator.

c. Any civil penalties or other sanctions will be imposed for violation of this assurance in accordance with the provisions of 49 U.S.C. § 47107.

**26. Reports and Inspections.**

It will:

a. submit to the Secretary such annual or special financial and operations reports as the Secretary may reasonably request and make such reports available to the public; make available to the

public at reasonable times and places a report of the airport budget in a format prescribed by the Secretary;

b.  for airport development projects, make the airport and all airport records and documents affecting the airport, including deeds, leases, operation and use agreements, regulations and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request;

c.  for noise compatibility program projects, make records and documents relating to the project and continued compliance with the terms, conditions, and assurances of this Grant Agreement including deeds, leases, agreements, regulations, and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request; and

d.  in a format and time prescribed by the Secretary, provide to the Secretary and make available to the public following each of its fiscal years, an annual report listing in detail:

1.  all amounts paid by the airport to any other unit of government and the purposes for which each such payment was made; and

2.  all services and property provided by the airport to other units of government and the amount of compensation received for provision of each such service and property.

**27. Use by Government Aircraft.**

It will make available all of the facilities of the airport developed with Federal financial assistance and all those usable for landing and takeoff of aircraft to the United States for use by Government aircraft in common with other aircraft at all times without charge, except, if the use by Government aircraft is substantial, charge may be made for a reasonable share, proportional to such use, for the cost of operating and maintaining the facilities used. Unless otherwise determined by the Secretary, or otherwise agreed to by the sponsor and the using agency, substantial use of an airport by Government aircraft will be considered to exist when operations of such aircraft are in excess of those which, in the opinion of the Secretary, would unduly interfere with use of the landing areas by other authorized aircraft, or during any calendar month that:

a.  Five (5) or more Government aircraft are regularly based at the airport or on land adjacent thereto; or

b.  The total number of movements (counting each landing as a movement) of Government aircraft is 300 or more, or the gross accumulative weight of Government aircraft using the airport (the total movement of Government aircraft multiplied by gross weights of such aircraft) is in excess of five million pounds.

**28. Land for Federal Facilities.**

It will furnish without cost to the Federal Government for use in connection with any air traffic control or air navigation activities, or weather-reporting and communication activities related to air traffic control, any areas of land or water, or estate therein as the Secretary considers necessary or desirable for construction, operation, and maintenance at Federal expense of space or facilities for such purposes. Such areas or any portion thereof will be made available as provided herein within four months after receipt of a written request from the Secretary.

29. **Airport Layout Plan.**

    a.   The airport owner or operator will maintain a current airport layout plan of the airport showing:

          1.   boundaries of the airport and all proposed additions thereto, together with the boundaries of all offsite areas owned or controlled by the sponsor for airport purposes and proposed additions thereto;

          2.   the location and nature of all existing and proposed airport facilities and structures (such as runways, taxiways, aprons, terminal buildings, hangars and roads), including all proposed extensions and reductions of existing airport facilities;

          3.   the location of all existing and proposed non-aviation areas and of all existing improvements thereon; and

          4.   all proposed and existing access points used to taxi aircraft across the airport's property boundary.

    b.   Subject to subsection 49 U.S.C. § 47107(x), the Secretary will review and approve or disapprove the plan and any revision or modification of the plan before the plan, revision, or modification takes effect.

    c.   The owner or operator will not make or allow any alteration in the airport or any of its facilities unless the alteration—

        1. is outside the scope of the Secretary's review and approval authority as set forth in subsection (x); or

        2. complies with the portions of the plan approved by the Secretary.

    d.   When the airport owner or operator makes a change or alteration in the airport or the facilities which the Secretary determines adversely affects the safety, utility, or efficiency of any federally owned, leased, or funded property on or off the airport and which is not in conformity with the airport layout plan as approved by the Secretary, the owner or operator will, if requested, by the Secretary:

          1.   eliminate such adverse effect in a manner approved by the Secretary; or

          2.   bear all costs of relocating such property or its replacement to a site acceptable to the Secretary and of restoring the property or its replacement to the level of safety, utility, efficiency, and cost of operation that existed before the alteration was made, except in the case of a relocation or replacement of an existing airport facility due to a change in the Secretary's design standards beyond the control of the airport sponsor.

30. **Civil Rights.**
It will promptly take any measures necessary to ensure that no person in the United States shall, on the grounds of race, color, and national origin (including limited English proficiency) in accordance with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d to 2000d-4); creed and sex per 49 U.S.C. § 47123 and related requirements; age per the Age Discrimination Act of 1975 and related requirements; or disability per the Americans with Disabilities Act of 1990 and related requirements, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination in any program and activity conducted with, or benefiting from, funds received from this Grant.

a.  Using the definitions of activity, facility, and program as found and defined in 49 CFR §§ 21.23(b) and 21.23(e), the sponsor will facilitate all programs, operate all facilities, or conduct all programs in compliance with all non-discrimination requirements imposed by or pursuant to these assurances.

b.  Applicability

1.  Programs and Activities. If the sponsor has received a grant (or other federal assistance) for any of the sponsor's program or activities, these requirements extend to all of the sponsor's programs and activities.

2.  Facilities. Where it receives a grant or other federal financial assistance to construct, expand, renovate, remodel, alter, or acquire a facility, or part of a facility, the assurance extends to the entire facility and facilities operated in connection therewith.

3.  Real Property. Where the sponsor receives a grant or other Federal financial assistance in the form of, or for the acquisition of real property or an interest in real property, the assurance will extend to rights to space on, over, or under such property.

c.  Duration.

The sponsor agrees that it is obligated to this assurance for the period during which Federal financial assistance is extended to the program, except where the Federal financial assistance is to provide, or is in the form of, personal property, or real property, or interest therein, or structures or improvements thereon, in which case the assurance obligates the sponsor, or any transferee for the longer of the following periods:

1.  So long as the airport is used as an airport, or for another purpose involving the provision of similar services or benefits; or

2.  So long as the sponsor retains ownership or possession of the property.

d.  Required Solicitation Language. It will include the following notification in all solicitations for bids, Requests For Proposals for work, or material under this Grant Agreement and in **all** proposals for agreements, including airport concessions, regardless of funding source:

"The (**County of Monroe**), in accordance with the provisions of Title VI of the Civil Rights Act of 1964 ( 42 U.S.C. §§ 2000d to 2000d-4) and the Regulations, hereby notifies all bidders or offerors that it will affirmatively ensure that for any contract entered into pursuant to this advertisement,  all businesses will be afforded full and fair opportunity to submit bids in response to this invitation and no businesses will be discriminated against on the grounds of race, color, national origin (including limited English proficiency), creed, sex , age, or disability in consideration for an award."

e.  Required Contract Provisions.

1.  It will insert the non-discrimination contract clauses requiring compliance with the acts and regulations relative to non-discrimination in Federally-assisted programs of the Department of Transportation (DOT), and incorporating the acts and regulations into the contracts by reference in every contract or agreement subject to the non-discrimination in Federally-assisted programs of the DOT acts and regulations.

2.  It will include a list of the pertinent non-discrimination authorities in every contract that is subject to the non-discrimination acts and regulations.

3.   It will insert non-discrimination contract clauses as a covenant running with the land, in any deed from the United States effecting or recording a transfer of real property, structures, use, or improvements thereon or interest therein to a sponsor.

4.   It will insert non-discrimination contract clauses prohibiting discrimination on the basis of race, color, national origin (including limited English proficiency), creed, sex, age, or disability as a covenant running with the land, in any future deeds, leases, license, permits, or similar instruments entered into by the sponsor with other parties:

   a.   For the subsequent transfer of real property acquired or improved under the applicable activity, project, or program; and

   b.   For the construction or use of, or access to, space on, over, or under real property acquired or improved under the applicable activity, project, or program.

f.   It will provide for such methods of administration for the program as are found by the Secretary to give reasonable guarantee that it, other recipients, sub-recipients, sub-grantees, contractors, subcontractors, consultants, transferees, successors in interest, and other participants of Federal financial assistance under such program will comply with all requirements imposed or pursuant to the acts, the regulations, and this assurance.

g.   It agrees that the United States has a right to seek judicial enforcement with regard to any matter arising under the acts, the regulations, and this assurance.

**31. Disposal of Land.**

a.   For land purchased under a grant for airport noise compatibility purposes, including land serving as a noise buffer, it will dispose of the land, when the land is no longer needed for such purposes, at fair market value, at the earliest practicable time. That portion of the proceeds of such disposition which is proportionate to the United States' share of acquisition of such land will be, at the discretion of the Secretary, (1) reinvested in another project at the airport, or (2) transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

   1.   Reinvestment in an approved noise compatibility project;

   2.   Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. § 47117(e);

   3.   Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. §§ 47114, 47115, or 47117;

   4.   Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

   5.   Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

   If land acquired under a grant for noise compatibility purposes is leased at fair market value and consistent with noise buffering purposes, the lease will not be considered a disposal of the land. Revenues derived from such a lease may be used for an approved airport development project that would otherwise be eligible for grant funding or any permitted use of airport revenue.

b.   For land purchased under a grant for airport development purposes (other than noise compatibility), it will, when the land is no longer needed for airport purposes, dispose of such land at fair market value or make available to the Secretary an amount equal to the United

3-36-0102-131-2025

States' proportionate share of the fair market value of the land. That portion of the proceeds of such disposition which is proportionate to the United States' share of the cost of acquisition of such land will, upon application to the Secretary, be reinvested or transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

1. Reinvestment in an approved noise compatibility project;

2. Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. § 47117(e);

3. Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. §§ 47114, 47115, or 47117;

4. Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

5. Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

c. Land shall be considered to be needed for airport purposes under this assurance if (1) it may be needed for aeronautical purposes (including runway protection zones) or serve as noise buffer land, and (2) the revenue from interim uses of such land contributes to the financial self-sufficiency of the airport. Further, land purchased with a grant received by an airport operator or owner before December 31, 1987, will be considered to be needed for airport purposes if the Secretary or Federal agency making such grant before December 31, 1987, was notified by the operator or owner of the uses of such land, did not object to such use, and the land continues to be used for that purpose, such use having commenced no later than December 15, 1989.

d. Disposition of such land under (a), (b), or (c) will be subject to the retention or reservation of any interest or right therein necessary to ensure that such land will only be used for purposes which are compatible with noise levels associated with operation of the airport.

**32. Engineering and Design Services.**

If any phase of such project has received Federal funds under Chapter 471 subchapter 1 of Title 49 U.S.C., it will award each contract, or sub-contract for program management, construction management, planning studies, feasibility studies, architectural services, preliminary engineering, design, engineering, surveying, mapping or related services in the same manner as a contract for architectural and engineering services is negotiated under Chapter 11 of Title 40 U S.C., or an equivalent qualifications-based requirement prescribed for or by the sponsor of the airport.

**33. Foreign Market Restrictions.**

It will not allow funds provided under this Grant to be used to fund any project which uses any product or service of a foreign country during the period in which such foreign country is listed by the United States Trade Representative as denying fair and equitable market opportunities for products and suppliers of the United States in procurement and construction.

**34. Policies, Standards, and Specifications.**

It will carry out any project funded under an Airport Improvement Program Grant in accordance with policies, standards, and specifications approved by the Secretary including, but not limited to, current FAA Advisory Circulars (https://www.faa.gov/sites/faa.gov/files/aip-pfc-checklist_0.pdf) for AIP projects as of February 19, 2025.

35. **Relocation and Real Property Acquisition.**

   a. It will be guided in acquiring real property, to the greatest extent practicable under State law, by the land acquisition policies in Subpart B of 49 CFR Part 24 and will pay or reimburse property owners for necessary expenses as specified in Subpart B.

   b. It will provide a relocation assistance program offering the services described in Subpart C of 49 CFR Part 24 and fair and reasonable relocation payments and assistance to displaced persons as required in Subpart D and E of 49 CFR Part 24.

   c. It will make available within a reasonable period of time prior to displacement, comparable replacement dwellings to displaced persons in accordance with Subpart E of 49 CFR Part 24.

36. **Access By Intercity Buses.**

   The airport owner or operator will permit, to the maximum extent practicable, intercity buses or other modes of transportation to have access to the airport; however, it has no obligation to fund special facilities for intercity buses or for other modes of transportation.

37. **Disadvantaged Business Enterprises.**

   The sponsor shall not discriminate on the basis of race, color, national origin, or sex, in the award and performance of any DOT-assisted contract covered by 49 CFR Part 26, or in the award and performance of any concession activity contract covered by 49 CFR Part 23. In addition, the sponsor shall not discriminate on the basis of race, color, national origin or sex in the administration of its Disadvantaged Business Enterprise (DBE) and Airport Concessions Disadvantaged Business Enterprise (ACDBE) programs or the requirements of 49 CFR Parts 23 and 26. The sponsor shall take all necessary and reasonable steps under 49 CFR Parts 23 and 26 to ensure nondiscrimination in the award and administration of DOT-assisted contracts, and/or concession contracts. The sponsor's DBE and ACDBE programs, as required by 49 CFR Parts 26 and 23, and as approved by DOT, are incorporated by reference in this agreement. Implementation of these programs is a legal obligation and failure to carry out its terms shall be treated as a violation of this agreement. Upon notification to the sponsor of its failure to carry out its approved program, the Department may impose sanctions as provided for under Parts 26 and 23 and may, in appropriate cases, refer the matter for enforcement under 18 U.S.C. § 1001 and/or the Program Fraud Civil Remedies Act of 1986 (31 U.S.C. §§ 3801-3809, 3812).

38. **Hangar Construction.**

   If the airport owner or operator and a person who owns an aircraft agree that a hangar is to be constructed at the airport for the aircraft at the aircraft owner's expense, the airport owner or operator will grant to the aircraft owner for the hangar a long term lease that is subject to such terms and conditions on the hangar as the airport owner or operator may impose.

39. **Competitive Access.**

   a. If the airport owner or operator of a medium or large hub airport (as defined in 49 U.S.C. § 47102) has been unable to accommodate one or more requests by an air carrier for access to gates or other facilities at that airport in order to allow the air carrier to provide service to the airport or to expand service at the airport, the airport owner or operator shall transmit a report to the Secretary that:

      1. Describes the requests;

      2. Provides an explanation as to why the requests could not be accommodated; and

3-36-0102-131-2025

    3. Provides a time frame within which, if any, the airport will be able to accommodate the requests.

  b. Such report shall be due on either February 1 or August 1 of each year if the airport has been unable to accommodate the request(s) in the six month period prior to the applicable due date.

**40. Access to Leaded Aviation Gasoline**

  a. If 100-octane low lead aviation gasoline (100LL) was made available at an airport, at any time during calendar year 2022, an airport owner or operator may not restrict or prohibit the sale of, or self-fueling with, 100-octane low lead aviation gasoline.

  b. This requirement remains until the earlier of December 31, 2030, or the date on which the airport or any retail fuel seller at the airport makes available an unleaded aviation gasoline that has been authorized for use by the FAA as a replacement for 100-octane low lead aviation gasoline for use in nearly all piston-engine aircraft and engine models; and meets either an industry consensus standard or other standard that facilitates the safe use, production, and distribution of such unleaded aviation gasoline, as determined appropriate by the FAA.

  c. An airport owner or operator understands and agrees, that any violation of this grant assurance is subject to civil penalties as provided for in 49 U.S.C. § 46301(a)(8).

OMB Number: 4040-0004
Expiration Date: 11/30/2025

## Application for Federal Assistance SF-424

| *1. Type of Submission: | *2. Type of Application | * If Revision, select appropriate letter(s): |
|---|---|---|
| ☐ Preapplication | ☒ New | |
| ☒ Application | ☐ Continuation | * Other (Specify) |
| ☐ Changed/Corrected Application | ☐ Revision | |

| *3. Date Received: | 4. Applicant Identifier: |
|---|---|
| 02/17/2025 | ROC |

| 5a. Federal Entity Identifier: | *5b. Federal Award Identifier: |
|---|---|
| 36-0102 | FY-2025 |

**State Use Only:**

| 6. Date Received by State: | 7. State Application Identifier: |
|---|---|

**8. APPLICANT INFORMATION:**

*a. Legal Name: Monroe County, NY Aviation Department

| *b. Employer/Taxpayer Identification Number (EIN/TIN): | *c. UEI: |
|---|---|
| 16-60002563 | DYHNLRKCH117 |

**d. Address:**

*Street 1:     1200 Brooks Avenue
Street 2:
*City:        Rochester
County/Parish:  Monroe County
*State:       NY
*Province:
*Country:      USA: United States
*Zip / Postal Code   14624-0000

**e. Organizational Unit:**

| Department Name: | Division Name: |
|---|---|

**f. Name and contact information of person to be contacted on matters involving this application:**

Prefix:     Ms.     *First Name: Allison
Middle Name:
*Last Name:  Lia
Suffix:

Title: Airport Engineer

Organizational Affiliation:
Frederick Douglass Greater Rochester International Airport (ROC)

| *Telephone Number: (585)753-7109 | Fax Number: |
|---|---|

*Email: allisonlia@monroecounty.gov

**Application for Federal Assistance SF-424**

**\*9. Type of Applicant 1: Select Applicant Type:**

  B: County Government

Type of Applicant 2: Select Applicant Type:

  Pick an applicant type

Type of Applicant 3: Select Applicant Type:

  Pick an applicant type

\*Other (Specify)

---

**\*10. Name of Federal Agency:**

  Federal Aviation Administration

**11. Catalog of Federal Domestic Assistance Number:**

  20.106

CFDA Title:

  Airport Improvement Program

---

**\*12. Funding Opportunity Number:**

  -

\*Title:

  -

---

**13. Competition Identification Number:**

  -

Title:

  -

---

**14. Areas Affected by Project (Cities, Counties, States, etc.):**

---

**\*15. Descriptive Title of Applicant's Project:**

  Pavement Management Study & Maintenance Evaluation [Design]

---

**Attach supporting documents as specified in agency instructions.**

**Application for Federal Assistance SF-424**

**16. Congressional Districts Of:**

*a. Applicant: NY-025                    *b. Program/Project:  NY-025

Attach an additional list of Program/Project Congressional Districts if needed.

**17.  Proposed Project:**

*a. Start Date:  05/01/2025                    *b. End Date:  12/31/2026

**18. Estimated Funding ($):**

| | |
|---|---|
| *a.  Federal | $ 229,041 |
| *b.  Applicant | $ 12,725 |
| *c.  State | $ 12,724 |
| *d.  Local | $ 0 |
| *e.  Other | $ 0 |
| *f.  Program Income | $ 0 |
| *g.  TOTAL | $ 254,490 |

**\*19.  Is Application Subject to Review By State Under Executive Order 12372 Process?**

☐ a. This application was made available to the State under the Executive Order 12372 Process for review on _____ .

☐ b. Program is subject to E.O. 12372 but has not been selected by the State for review.

☒ c. Program is not covered by E.O. 12372.

**\*20.  Is the Applicant Delinquent On Any Federal Debt?**

☐ Yes ☒ No

**If "Yes", explain:**

21. *By signing this application, I certify (1) to the statements contained in the list of certifications** and (2) that the statements herein are true, complete and accurate to the best of my knowledge.  I also provide the required assurances** and agree to comply with any resulting terms if I accept an award.  I am aware that any false, fictitious, or fraudulent statements or claims may subject me to criminal, civil, or administrative penalties.  (U. S. Code, Title 218, Section 1001)

☒ ** I AGREE

** The list of certifications and assurances, or an internet site where you may obtain this list, is contained in the announcement or agency specific instructions.

**Authorized Representative:**

| | |
|---|---|
| Prefix: | *First Name:  Allison |
| Middle Name: | |
| *Last Name:  Lia | |
| Suffix: | |

*Title:  Airport Engineer

| | |
|---|---|
| *Telephone Number: (585) 783-7109 | Fax Number: |

* Email: allisonlia@monroecounty.gov

| *Signature of Authorized Representative: | Sign Here ▶ | *Date Signed:  02/19/2025 |



U.S. Department of Transportation
**Federal Aviation Administration**

OMB CONTROL NUMBER: 2120-0569
EXPIRATION DATE: 12/31/2026

## Application for Federal Assistance (Planning Projects)

## Part II – Project Approval Information

### Section A – Statutory Requirements

The term "Sponsor" refers to the applicant name as provided in box 8 of the associated SF-424 form.

| | |
|---|---|
| **Item 1**<br><br>Does Sponsor maintain an active registration in the System for Award Management (www.SAM.gov)? | ☒ Yes  ☐ No |
| **Item 2**<br><br>Can Sponsor commence the work identified in the application in the fiscal year the grant is made or within six months after the grant is made, whichever is later? | ☒ Yes  ☐ No  ☐ N/A |
| **Item 3**<br><br>Are there any foreseeable events that would delay completion of the project? If yes, provide attachment to this form that lists the events. | ☐ Yes  ☐ No  ☐ N/A |
| **Item 4**<br><br>Is the project covered by another Federal assistance program? If yes, please identify other funding sources by the Catalog of Federal Domestic Assistance (CFDA) number.<br><br>**CFDA:** _____ | ☐ Yes  ☐ No  ☐ N/A |
| **Item 5**<br><br>Will the requested Federal assistance include Sponsor indirect costs as described in 2 CFR Appendix VII to Part 200, States and Local Government and Indian Tribe Indirect Cost Proposals?<br><br>If the request for Federal assistance includes a claim for allowable indirect costs, select the applicable indirect cost rate the Sponsor proposes to apply:<br><br>☐ De Minimis rate of 10% as permitted by 2 CFR § 200.414<br><br>☐ Negotiated Rate equal to ____% as approved by _____ (the Cognizant Agency) on _____ (Date) (2 CFR part 200, appendix VII)<br><br>*Note: Refer to the instructions for limitations of application associated with claiming Sponsor indirect costs.* | ☐ Yes  ☐ No  ☐ N/A |

## Section B – Certification Regarding Lobbying

The declarations made on this page are under the signature of the authorized representative as identified in box 21 of form SF-424, to which this form is attached. The term "Sponsor" refers to the applicant name provided in box 8 of the associated SF-424 form.

---

The Authorized Representative certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the Sponsor, to any person for influencing or attempting to influence an officer or employee of an agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan, or cooperative agreement, the Authorized Representative shall complete and submit Standard Form-LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions

(3) The Authorized Representative shall require that the language of this certification be included in the award documents for all sub-awards at all tiers (including subcontracts, subgrants, and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify and disclose accordingly

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by section 1352, title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

---

# Part III – Budget Information

## Section A – Budget Summary

| Grant Program (a) | Federal Catalog No (b) | New or Revised Budget | | |
| --- | --- | --- | --- | --- |
| | | Federal (c) | Non-Federal (d) | Total (e) |
| 1. Airport Improvement Program | 20-106 | $ 229,041 | $ 25,449 | $ 254,490 |
| 2. | | | | |
| 3. TOTALS | | $ 229,041 | $ 25,449 | $ 254,490 |

## Section B – Budget Categories (All Grant Programs)

| 4. Object Class Categories | Airport Improvement Program (1) | | Other Program (2) | | Total |
| --- | --- | --- | --- | --- | --- |
| | Amount | Adjustment + or (-) Amount (Use only for revisions) | Amount | Adjustment + or (-) Amount (Use only for revisions) | |
| a. Administrative expense | $ 4,990 | $ | $ | $ | $ 4,990 |
| b. Airport Planning | 249,500 | | | | 249,500 |
| c. Environmental Planning | | | | | |
| d. Noise Compatibility Planning | | | | | |
| e. Subtotal | 254,490 | | | | 254,490 |
| f. Program Income | 0 | | | | |
| g. TOTALS (line e minus line f) | $ 254,490 | $ | $ | $ | $ 254,490 |

## Section C – Non-Federal Resources

| Grant Program (a) | Applicant (b) | State (c) | Other Sources (d) | Total (e) |
| --- | --- | --- | --- | --- |
| 5. Airport Improvement Program | $ 12,725 | $ 12,724 | $ 0 | $ 25,449 |
| 6. | | | | |
| 7. TOTALS | $ 12,725 | $ 12,724 | $ 0 | $ 25,449 |

## Section D – Forecasted Cash Needs

| Source of funds | Total for Project | 1st Year | 2nd Year | 3rd Year | 4th Year |
| --- | --- | --- | --- | --- | --- |
| 8. Federal | $ 229,041 | $ 229,041 | $ | $ | $ |
| 9. Non-Federal | 25,449 | 25,449 | | | |
| 10. TOTAL | $ 254,490 | $ 254,490 | $ | $ | $ |

## Section E – Other Budget Information

11. Other Remarks: (attach sheets if necessary)

Exhibit A: On-File with FAA [10/29/20 ]

DBE Requirement/Goal = 6.1%

## Part IV - Program Narrative

(Suggested Format)

| | |
|---|---|
| **PROJECT:** Pavement Management Study & Maintenance Evaluation [Design] | |

| | |
|---|---|
| **AIRPORT:** Frederick Douglass Greater Rochester International Airport (ROC) | |

**1. Objective:**

This project will update ROC's Airport Pavement Management System (APMS). The project includes updates to the pavement network definition, updates to the associated mapping and PAVER™ pavement management database, and a visual evaluation of the pavement condition using the pavement condition index (PCI) and pavement classification rating (PCR) procedure.

**2. Benefits Anticipated:**

Provide a consistent, objective, and systematic procedure for establishing facility policies, setting priorities and schedules, allocating resources, and budgeting for pavement maintenance and rehabilitation; Quantify information and provide specific recommendations for actions required to maintain airfield pavement at and acceptable level of service, while minimizing the cost of maintenance and rehabilitation.

**3. Approach:** *(See approved Scope of Work in Final Application)*

-Data Collection and Pavement Inspection
-Data Analysis and Computations
-Maintenance and Rehabilitation Planning, Recommendations, and Reporting
-Develop Final Report

Project Scope of Services - Attached to Application

**4. Geographic Location:**

Frederick Douglass Greater Rochester International Airport (ROC) 43° 7' 8.917" N / 77° 40' 18.728" W

**5. If Applicable, Provide Additional Information:**

-

**6. Sponsor's Representative:** *(include address & telephone number)*

Allison Lia
(585)753-7109
allisonlia@monroecounty.gov

Submit by Email

# Frederick Douglass Greater Rochester International Airport (ROC)
### Pavement Management Study & Maintenance Evaluation [Design]

## Project Cost Breakdown

| | |
|---|---|
| Administration [Including IFE] | $4,990.00 |
| Engineering [Design Fee] | $249,500.00 |
| **TOTALS** | **$254,490.00** |
| Federal Share (Entitlement) | $229,041.00 |
| Non-Federal Share | $25,449.00 |
| Sponsor | $12,725.00 |
| State | $12,724.00 |

# EXHIBIT B

3-36-0102-132-2025



| U.S. Department | Airports Division | New York Airports |
|---|---|---|
| of Transportation | Eastern Region | District Office: |
| Federal Aviation | New York | 159-30 Rockaway |
| Administration | | Blvd, Rm 111 |
| | | Jamaica, NY 11434- |
| | | 4848 |

Mr. Adam Bello
County Executive
Monroe County
1200 Brooks Avenue
Rochester, NY 14624

Dear Mr. Bello:

The Grant Offer for Airport Improvement Program (AIP) Project No. 3-36-0102-132-2025 at Frederick Douglass/Greater Rochester International Airport is attached for execution. This letter outlines the steps you must take to properly enter into this agreement and provides other useful information. Please read the conditions, special conditions, and assurances that comprise the grant offer carefully.

**You may not make any modification to the text, terms or conditions of the grant offer.**

*Steps You Must Take to Enter Into Agreement.*

To properly enter into this agreement, you must do the following:

1. The governing body must give authority to execute the grant to the individual(s) signing the grant, i.e., the person signing the document must be the sponsor's authorized representative(s) (hereinafter "authorized representative").

2. The authorized representative must execute the grant by adding their electronic signature to the appropriate certificate at the end of the agreement.

3. Once the authorized representative has electronically signed the grant, the sponsor's attorney(s) will automatically receive an email notification.

4. On the **same day or after** the authorized representative has signed the grant, the sponsor's attorney(s) will add their electronic signature to the appropriate certificate at the end of the agreement.

5. If there are co-sponsors, the authorized representative(s) and sponsor's attorney(s) must follow the above procedures to fully execute the grant and finalize the process. Signatures must be obtained and finalized no later than **August 28, 2025**.

6. The fully executed grant will then be automatically sent to all parties as an email attachment.

*Payment.* Subject to the requirements in 2 CFR § 200.305 (Federal Payment), each payment request for reimbursement under this grant must be made electronically via the Delphi eInvoicing System. Please see the attached Grant Agreement for more information regarding the use of this System.

3-36-0102-132-2025

**Project Timing.** The terms and conditions of this agreement require you to complete the project without undue delay and no later than the Period of Performance end date (1,460 days from the grant execution date). We will be monitoring your progress to ensure proper stewardship of these Federal funds. We expect you to submit payment requests for reimbursement of allowable incurred project expenses consistent with project progress. Your grant may be placed in "inactive" status if you do not make draws on a regular basis, which will affect your ability to receive future grant offers. Costs incurred after the Period of Performance ends are generally not allowable and will be rejected unless authorized by the FAA in advance.

**Reporting.** Until the grant is completed and closed, you are responsible for submitting formal reports as follows:

> For all grants, you must submit by December 31st of each year this grant is open:

>   1. A signed/dated SF-270 (Request for Advance or Reimbursement for non-construction projects) or SF-271 or equivalent (Outlay Report and Request for Reimbursement for Construction Programs), and

>   2. An SF-425 (Federal Financial Report).

> For non-construction projects, you must submit FAA Form 5100-140, Performance Report within 30 days of the end of the Federal fiscal year.

> For construction projects, you must submit FAA Form 5370-1, Construction Progress and Inspection Report, within 30 days of the end of each Federal fiscal quarter.

**Audit Requirements.** As a condition of receiving Federal assistance under this award, you must comply with audit requirements as established under 2 CFR Part 200. Subpart F requires non-Federal entities that expend $1,000,000 or more in Federal awards to conduct a single or program specific audit for that year. Note that this includes Federal expenditures made under other Federal-assistance programs. Please take appropriate and necessary action to ensure your organization will comply with applicable audit requirements and standards.

**Closeout.** Once the project(s) is completed and all costs are determined, we ask that you work with your FAA contact indicated below to close the project without delay and submit the necessary final closeout documentation as required by your Region/Airports District Office.

**FAA Contact Information.** Glen Conacchio, (718) 995-5761, glen.l.conacchio@faa.gov is the assigned program manager for this grant and is readily available to assist you and your designated representative with the requirements stated herein.

We sincerely value your cooperation in these efforts and look forward to working with you to complete this important project.

Sincerely,

Ms. Evelyn Martinez
Manager, New York Airports District Office

2

3-36-0102-132-2025



**U.S. Department
of Transportation
Federal Aviation
Administration**

**FEDERAL AVIATION ADMINISTRATION AIRPORT IMPROVEMENT PROGRAM (AIP)**

**FY 2025 AIP**

**GRANT AGREEMENT**

**Part I - Offer**

---

Federal Award Offer Date

| | |
|---|---|
| Airport/Planning Area | Frederick Douglass/Greater Rochester International Airport |
| Airport Infrastructure Grant Number | 3-36-0102-132-2025 |
| Unique Entity Identifier | DYHNLRKCH117 |

TO:    County of Monroe

(herein called the "Sponsor") (For Co-Sponsors, list all Co-Sponsor names. The word "Sponsor" in this Grant Agreement also applies to a Co-Sponsor.)

FROM:  **The United States of America** (acting through the Federal Aviation Administration, herein called the "FAA")

**WHEREAS**, the Sponsor has submitted to the FAA a Project Application dated March 25, 2025, for a grant of Federal funds for a project at or associated with the Frederick Douglass/Greater Rochester International Airport, which is included as part of this Grant Agreement; and

**WHEREAS**, the FAA has approved a project for the Frederick Douglass/Greater Rochester International Airport (herein called the "Project") consisting of the following:

> Rehabilitate 1,180 feet of Taxiway pavements (700 feet of existing T/W A, 280 feet of existing T/W A1,100 feet of existing T/W C, and 100 feet of existing T/W E) - Design

which is more fully described in the Project Application.

3

3-36-0102-132-2025

**NOW THEREFORE**, Pursuant to and for the purpose of carrying out the Title 49, United States Code (U.S.C.), Chapters 471 and 475; 49 U.S.C. §§ 40101 et seq., and 48103; FAA Reauthorization Act of 2018 (Public Law  Number (P.L.) 115-254); the Department of Transportation Appropriations Act, 2021 ( P.L. 116-260, Division L); the Consolidated Appropriations Act, 2022 ( P.L. 117-103); Consolidated Appropriations Act, 2023 ( P.L. 117-328); Consolidated Appropriations Act, 2024 (P.L. 118-42); FAA Reauthorization Act of 2024 (P.L. 118-63); and the representations contained in the Project Application; and in consideration of: (a) the Sponsor's adoption and ratification of the Grant Assurances dated April 2025, interpreted and applied consistent with the FAA Reauthorization Act of 2024; (b) the Sponsor's acceptance of this Offer; and (c) the benefits to accrue to the United States and the public from the accomplishment of the Project and compliance with the Grant Assurance and conditions as herein provided;

**THE FEDERAL AVIATION ADMINISTRATION, FOR AND ON BEHALF OF THE UNITED STATES, HEREBY OFFERS AND AGREES to pay (90) % of the allowable costs incurred accomplishing the Project as the United States share of the Project.**

**Assistance Listings Number (Formerly CFDA Number): 20.106**

**This Offer is made on and SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS**:

## CONDITIONS

1. **Maximum Obligation.** The maximum obligation of the United States payable under this Offer is $360,180.

   The following amounts represent a breakdown of the maximum obligation for the purpose of establishing allowable amounts for any future grant amendment, which may increase the foregoing maximum obligation of the United States under the provisions of 49 U.S.C. § 47108(b):
   $0 for planning
   $360,180 for airport development or noise program implementation; and,
   $0 for land acquisition.

2. **Grant Performance.** This Grant Agreement is subject to the following Federal award requirements:

   a. Period of Performance:

      1. Shall start on the date the Sponsor formally accepts this Agreement and is the date signed by the last Sponsor signatory to the Agreement. The end date of the Period of Performance is 4 years (1,460 calendar days) from the date of acceptance. The Period of Performance end date shall not affect, relieve, or reduce Sponsor obligations and assurances that extend beyond the closeout of this Grant Agreement.

      2. Means the total estimated time interval between the start of an initial Federal award and the planned end date, which may include one or more funded portions or budget periods (2 Code of Federal Regulations (CFR) § 200.1) except as noted in 49 U.S.C § 47142(b).

   b. Budget Period:

      1. For this Grant is 4 years (1,460 calendar days) and follows the same start and end date as the Period of Performance provided in paragraph 2(a)(1). Pursuant to 2 CFR § 200.403(h), the Sponsor may charge to the Grant only allowable costs incurred during the Budget Period except as noted in 49 U.S.C § 47142(b).

      2. Means the time interval from the start date of a funded portion of an award to the end date of that funded portion during which the Sponsor is authorized to expend the funds awarded, including any funds carried forward or other revisions pursuant to 2 CFR § 200.308.

4

c.  Close Out and Termination

Unless the FAA authorizes a written extension, the Sponsor must submit all Grant closeout documentation and liquidate (pay-off) all obligations incurred under this award no later than 120 calendar days after the end date of the Period of Performance. If the Sponsor does not submit all required closeout documentation within this time period, the FAA will proceed to close out the grant within one year of the Period of Performance end date with the information available at the end of 120 days (2 CFR § 200.344). The FAA may terminate this agreement and all of its obligations under this agreement if any of the following occurs:

(a)  (1) The Sponsor fails to obtain or provide any Sponsor grant contribution as required by the agreement;

(2) A completion date for the Project or a component of the Project is listed in the agreement and the Recipient fails to meet that milestone by six months after the date listed in the agreement;

(3) The Sponsor fails to comply with the terms and conditions of this agreement, including a material failure to comply with the Project Schedule even if it is beyond the reasonable control of the Sponsor;

(4) Circumstances cause changes to the Project that the FAA determines are inconsistent with the FAA's basis for selecting the Project to receive a grant; or

(5) The FAA determines that termination of this agreement is in the public interest.

(b) In terminating this agreement under this section, the FAA may elect to consider only the interests of the FAA.

(c) The Sponsor may request that the FAA terminate the agreement under this section.

3. **Ineligible or Unallowable Costs.** In accordance with 49 U.S.C. § 49 U.S.C. § 47110, the Sponsor is prohibited from including any costs in the grant funded portions of the project that the FAA has determined to be ineligible or unallowable, including costs incurred to carry out airport development implementing policies and initiatives repealed by Executive Order 14148, provided such costs are not otherwise permitted by statute.

4. **Indirect Costs - Sponsor.** The Sponsor may charge indirect costs under this award by applying the indirect cost rate identified in the project application as accepted by the FAA, to allowable costs for Sponsor direct salaries and wages.

5. **Determining the Final Federal Share of Costs.** The United States' share of allowable project costs will be made in accordance with 49 U.S.C. § 47109, the regulations, policies, and procedures of the Secretary of Transportation ("Secretary"), and any superseding legislation. Final determination of the United States' share will be based upon the final audit of the total amount of allowable project costs and settlement will be made for any upward or downward adjustments to the Federal share of costs.

6. **Completing the Project Without Delay and in Conformance with Requirements.** The Sponsor must carry out and complete the project without undue delays and in accordance with this Agreement, 49

5

3-36-0102-132-2025

U.S.C. Chapters 471 and 475, the regulations, policies, and procedures of the Secretary. Per 2 CFR § 200.308, the Sponsor agrees to report and request prior FAA approval for any disengagement from performing the project that exceeds three months or a 25 percent reduction in time devoted to the project. The report must include a reason for the project stoppage. The Sponsor also agrees to comply with the grant assurances, which are part of this Agreement.

7. **Amendments or Withdrawals before Grant Acceptance.** The FAA reserves the right to amend or withdraw this offer at any time prior to its acceptance by the Sponsor.

8. **Offer Expiration Date.** This offer will expire and the United States will not be obligated to pay any part of the costs of the project unless this offer has been accepted by the Sponsor on or before August 28, 2025, or such subsequent date as may be prescribed in writing by the FAA.

9. **Improper Use of Federal Funds and Mandatory Disclosure.**

   a. The Sponsor must take all steps, including litigation if necessary, to recover Federal funds spent fraudulently, wastefully, or in violation of Federal antitrust statutes, or misused in any other manner for any project upon which Federal funds have been expended. For the purposes of this Grant Agreement, the term "Federal funds" means funds however used or dispersed by the Sponsor, that were originally paid pursuant to this or any other Federal grant agreement. The Sponsor must obtain the approval of the Secretary as to any determination of the amount of the Federal share of such funds. The Sponsor must return the recovered Federal share, including funds recovered by settlement, order, or judgment, to the Secretary. The Sponsor must furnish to the Secretary, upon request, all documents and records pertaining to the determination of the amount of the Federal share or to any settlement, litigation, negotiation, or other efforts taken to recover such funds. All settlements or other final positions of the Sponsor, in court or otherwise, involving the recovery of such Federal share require advance approval by the Secretary.

   b. The Sponsor, a recipient, and a subrecipient under this Federal grant must promptly comply with the mandatory disclosure requirements as established under 2 CFR § 200.113, including reporting requirements related to recipient integrity and performance in accordance with Appendix XII to 2 CFR Part 200.

10. **United States Not Liable for Damage or Injury.** The United States is not responsible or liable for damage to property or injury to persons which may arise from, or be incident to, compliance with this Grant Agreement.

11. **System for Award Management (SAM) Registration and Unique Entity Identifier (UEI).**

   a. Requirement for System for Award Management (SAM): Unless the Sponsor is exempted from this requirement under 2 CFR § 25.110, the Sponsor must maintain the currency of its information in the SAM until the Sponsor submits the final financial report required under this Grant, or receives the final payment, whichever is later. This requires that the Sponsor review and update the information at least annually after the initial registration and more frequently if required by changes in information or another award term. Additional information about registration procedures may be found at the SAM website (currently at http://www.sam.gov).

   b. Unique entity identifier (UEI) means a 12-character alpha-numeric value used to identify a specific commercial, nonprofit or governmental entity. A UEI may be obtained from SAM.gov at https://sam.gov/content/entity-registration.

3-36-0102-132-2025

12. **Electronic Grant Payment(s).** Unless otherwise directed by the FAA, the Sponsor must make each payment request under this Agreement electronically via the Delphi eInvoicing System for Department of Transportation (DOT) Financial Assistance Awardees.

13. **Informal Letter Amendment of AIP Projects.** If, during the life of the project, the FAA determines that the maximum grant obligation of the United States exceeds the expected needs of the Sponsor by $25,000 or five percent (5%), whichever is greater, the FAA can issue a letter amendment to the Sponsor unilaterally reducing the maximum obligation.

    The FAA can also issue a letter to the Sponsor increasing the maximum obligation if there is an overrun in the total actual eligible and allowable project costs to cover the amount of the overrun provided it will not exceed the statutory limitations for grant amendments. The FAA's authority to increase the maximum obligation does not apply to the "planning" component of Condition No. 1, Maximum Obligation.

    The FAA can also issue an informal letter amendment that modifies the grant description to correct administrative errors or to delete work items if the FAA finds it advantageous and in the best interests of the United States.

    An informal letter amendment has the same force and effect as a formal grant amendment.

14. **Environmental Standards.** The Sponsor is required to comply with all applicable environmental standards, as further defined in the Grant Assurances, for all projects in this grant. If the Sponsor fails to comply with this requirement, the FAA may suspend, cancel, or terminate this Grant Agreement.

15. **Financial Reporting and Payment Requirements.** The Sponsor will comply with all Federal financial reporting requirements and payment requirements, including submittal of timely and accurate reports.

16. **Buy American.** Unless otherwise approved in advance by the FAA, in accordance with 49 U.S.C. § 50101, the Sponsor will not acquire or permit any contractor or subcontractor to acquire any steel or manufactured goods produced outside the United States to be used for any project for which funds are provided under this Grant. The Sponsor will include a provision implementing Buy American in every contract and subcontract awarded under this Grant.

17. **Build America, Buy America.** The Sponsor must comply with the requirements under the Build America, Buy America Act (P.L. 117-58).

18. **Maximum Obligation Increase.** In accordance with 49 U.S.C. § 47108(b), as amended, the maximum obligation of the United States, as stated in Condition No. 1, Maximum Obligation, of this Grant:

    a. May not be increased for a planning project;

    b. May be increased by not more than 15 percent for development projects, if funds are available;

    c. May be increased by not more than the greater of the following for a land project, if funds are available:

        1. 15 percent; or

        2. 25 percent of the total increase in allowable project costs attributable to acquiring an interest in the land.

If the Sponsor requests an increase, any eligible increase in funding will be subject to the United States Government share as provided in 49 U.S.C. § 47110, or other superseding legislation if applicable, for the fiscal year appropriation with which the increase is funded. The FAA is not responsible for the same Federal share provided herein for any amount increased over the initial grant amount. The FAA may adjust the Federal share as applicable through an informal letter of amendment.

19. **Audits for Sponsors.**

PUBLIC SPONSORS. The Sponsor must provide for a Single Audit or program-specific audit in accordance with 2 CFR Part 200. The Sponsor must submit the audit reporting package to the Federal Audit Clearinghouse on the Federal Audit Clearinghouse's Internet Data Entry System at http://harvester.census.gov/facweb/. Upon request of the FAA, the Sponsor shall provide one copy of the completed audit to the FAA. Sponsors that expend less than $1,000,000 in Federal awards and are exempt from Federal audit requirements must make records available for review or audit by the appropriate Federal agency officials, State, and Government Accountability Office. The FAA and other appropriate Federal agencies may request additional information to meet all Federal audit requirements.

20. **Suspension or Debarment.** When entering into a "covered transaction" as defined by 2 CFR § 180.200, the Sponsor must:

    a. Verify the non-Federal entity is eligible to participate in this Federal program by:

        1. Checking the System for Award Management (SAM.gov) exclusions to determine if the non-Federal entity is excluded or disqualified; or

        2. Collecting a certification statement from the non-Federal entity attesting they are not excluded or disqualified from participating; or

        3. Adding a clause or condition to covered transactions attesting the individual or firm are not excluded or disqualified from participating.

    b. Require prime contractors to comply with 2 CFR § 180.330 when entering into lower-tier transactions with their contractors and sub-contractors.

    c. Immediately disclose in writing to the FAA whenever (1) the Sponsor learns they have entered into a covered transaction with an ineligible entity or (2) the Public Sponsor suspends or debars a contractor, person, or entity.

21. **Ban on Texting While Driving.**

    a. In accordance with Executive Order 13513, Federal Leadership on Reducing Text Messaging While Driving, October 1, 2009, and DOT Order 3902.10, Text Messaging While Driving, December 30, 2009, the Sponsor is encouraged to:

        1. Adopt and enforce workplace safety policies to decrease crashes caused by distracted drivers including policies to ban text messaging while driving when performing any work for, or on behalf of, the Federal government, including work relating to a grant or subgrant.

        2. Conduct workplace safety initiatives in a manner commensurate with the size of the business, such as:

            i. Establishment of new rules and programs or re-evaluation of existing programs to prohibit text messaging while driving; and

3-36-0102-132-2025

ii.     Education, awareness, and other outreach to employees about the safety risks associated with texting while driving.

b.  The Sponsor must insert the substance of this clause on banning texting while driving in all subgrants, contracts, and subcontracts funded with this Grant.

22. **Trafficking in Persons.**

1.  *Posting of contact information.*

    a.  The Sponsor must post the contact information of the national human trafficking hotline (including options to reach out to the hotline such as through phone, text, or TTY) in all public airport restrooms.

2.  *Provisions applicable to a recipient that is a private entity.*

    a.  Under this Grant, the recipient, its employees, subrecipients under this Grant, and subrecipient's employees must not engage in:

        i.    Severe forms of trafficking in persons;
        ii.   The procurement of a commercial sex act during the period of time that the grant or cooperative agreement is in effect;
        iii.  The use of forced labor in the performance of this grant; or any subaward; or
        iv.   Acts that directly support or advance trafficking in persons, including the following acts:
            a)  Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;
            b)  Failing to provide return transportation of pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:
                1.  Exempted from the requirement to provide or pay for such return transportation by the federal department or agency providing or entering into the grant; or
                2.  The employee is a victim of human trafficking seeking victim services or legal redress in the country of employment or witness in a human trafficking enforcement action;
            c)  Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;
            d)  Charging recruited employees a placement or recruitment fee; or
            e)  Providing or arranging housing that fails to meet the host country's housing and safety standards.

    b.  The FAA may unilaterally terminate this Grant or take any remedial actions authorized by 22 U.S.C. § 7104b(c), without penalty, if any private entity under this Grant:

        i.   Is determined to have violated a prohibition in paragraph (2)(a) of this Grant; or
        ii.  Has an employee that is determined to have violated a prohibition in paragraph(2)(a) of this Grant through conduct that is either:

            a)  Associated with the performance under this Grant; or

9

   b) Imputed to the recipient or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR Part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by the FAA at 2 CFR Part 1200.

3. *Provisions applicable to a recipient other than a private entity.*

   a. The FAA may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C. § 7104b(c), without penalty, if subrecipient than is a private entity under this award:

      i. Is determined to have violated a prohibition in paragraph (2)(a) of this Grant or

      ii. Has an employee that is determined to have violated a prohibition in paragraph (2)(a) of this Grant through conduct that is either:

         a) Associated with the performance under this Grant; or

         b) Imputed to the recipient or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR Part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by the FAA at 2 CFR Part 1200.

4. *Provisions applicable to any recipient.*

   a. The recipient must inform the FAA and the DOT Inspector General immediately of any information you receive from any source alleging a violation of a prohibition in paragraph (2)(a) of this Grant.

   b. The FAA's right to unilaterally terminate this Grant as described in paragraphs (2)(b) or (3)(a) of this Grant, implements the requirements of 22 U.S.C. chapter 78, and is in addition to all other remedies for noncompliance that are available to the FAA under this Grant.

   c. The recipient must include the requirements of paragraph (2)(a) of this Grant award term in any subaward it makes to a private entity.

   d. If applicable, the recipient must also comply with the compliance plan and certification requirements in 2 CFR 175.105(b).

5. *Definitions. For purposes of this Grant award, term:*

   a. "Employee" means either:

      i. An individual employed by the recipient or a subrecipient who is engaged in the performance of the project or program under this Grant; or

      ii. Another person engaged in the performance of the project or program under this Grant and not compensated by the recipient including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing requirements.

   b. "Private Entity" means:

i.   Any entity, including for-profit organizations, nonprofit organizations, institutions of higher education, and hospitals. The term does not include foreign public entities, Indian Tribes, local governments, or states as defined in 2 CFR 200.1.

ii.   The terms "severe forms of trafficking in persons," "commercial sex act," "sex trafficking," "Abuse or threatened abuse of law or legal process," "coercion," "debt bondage," and "involuntary servitude" have the meanings given at section 103 of the TVPA, as amended (22 U.S.C. § 7102).

23. **AIP Funded Work Included in a PFC Application.** Within 120 days of acceptance of this Grant Agreement, the Sponsor must submit to the FAA an amendment to any approved Passenger Facility Charge (PFC) application that contains an approved PFC project also covered under this Grant Agreement as described in the project application. The airport sponsor may not make any expenditure under this Grant Agreement until project work addressed under this Grant Agreement is removed from an approved PFC application by amendment.

24. **Exhibit "A" Property Map.** The Exhibit "A" Property Map dated June 21, 2021, is incorporated herein by reference or is submitted with the project application and made part of this Grant Agreement.

25. **Employee Protection from Reprisal.** In accordance with 2 CFR § 200.217 and 41 U.S.C. § 4701, an employee of a grantee, subgrantee contractor, recipient or subrecipient must not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (a)(2) of 41 U.S.C. 4712 information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant. The grantee, subgrantee, contractor, recipient, or subrecipient must inform their employees in writing of employee whistleblower rights and protections under 41 U.S.C. § 4712. See statutory requirements for whistleblower protections at 10 U.S.C. § 4701, 41 U.S.C. § 4712, 41 U.S.C. § 4304, and 10 U.S.C. § 4310.

26. **Prohibited Telecommunications and Video Surveillance Services and Equipment.** The Sponsor agrees to comply with mandatory standards and policies relating to use and procurement of certain telecommunications and video surveillance services or equipment in compliance with the National Defense Authorization Act [P.L. 115-232 § 889(f)(1)] and 2 CFR § 200.216.

27. **Critical Infrastructure Security and Resilience.** The Sponsor acknowledges that it has considered and addressed physical and cybersecurity and resilience in its project planning, design, and oversight, as determined by the DOT and the Department of Homeland Security (DHS).  For airports that do not have specific DOT or DHS cybersecurity requirements, the FAA encourages the voluntary adoption of the cybersecurity requirements from the Transportation Security Administration and Federal Security Director identified for security risk Category X airports.

28. **Title VI of the Civil Rights Act.** As a condition of a grant award, the Sponsor shall demonstrate that it complies with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d et seq) and implementing regulations (49 CFR part 21), the Airport and Airway Improvement Act of 1982 (49 U.S.C. § 47123), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 et seq.), the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101, et seq.), U.S. Department of Transportation and Federal Aviation Administration (FAA) Assurances, and other relevant civil rights statutes, regulations, or authorities, including any amendments or updates thereto. This may include, as applicable, providing a current Title VI

3-36-0102-132-2025

Program Plan to the FAA for approval, in the format and according to the timeline required by the FAA, and other information about the communities that will be benefited and impacted by the project. A completed FAA Title VI Pre-Grant Award Checklist is required for every grant application, unless excused by the FAA. The Sponsor shall affirmatively ensure that when carrying out any project supported by this grant that it complies with all federal nondiscrimination and civil rights laws based on race, color, national origin, sex, creed, age, disability, genetic information, in consideration for federal financial assistance. The Department's and FAA's Office of Civil Rights may provide resources and technical assistance to recipients to ensure full and sustainable compliance with Federal civil rights requirements. Failure to comply with civil rights requirements will be considered a violation of the agreement or contract and be subject to any enforcement action as authorized by law.

29. **FAA Reauthorization Act of 2024.** This grant agreement is subject to the terms and conditions contained herein including the terms known as the Grant Assurances as they were published in the Federal Register on April 2025. On May 16, 2024, the FAA Reauthorization Act of 2024 made certain amendments to 49 U.S.C. chapter 471. The Reauthorization Act will require FAA to make certain amendments to the assurances in order to best achieve consistency with the statute. Federal law requires that FAA publish any amendments to the assurances in the Federal Register along with an opportunity to comment. In order not to delay the offer of this grant, the existing assurances are attached herein; however, FAA shall interpret and apply these assurances consistent with the Reauthorization Act. To the extent there is a conflict between the assurances and Federal statutes, the statutes shall apply. The full text of the FAA Reauthorization Act of 2024 is at https://www.congress.gov/bill/118th-congress/house-bill/3935/text.

30. **Applicable Federal Anti-Discrimination Laws.** The sponsor agrees:

    a. that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code; and

    b. to certify that it does not operate any programs promoting diversity, equity, and inclusion (DEI) that violate any applicable Federal anti-discrimination laws.

31. **Federal Law and Public Policy Requirements.** The Sponsor shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Sponsor will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in and the enforcement of Federal immigration law.

32. **National Airspace System Requirements**

    a. The Sponsor shall cooperate with FAA activities installing, maintaining, replacing, improving, or operating equipment and facilities in or supporting the National Airspace System, including

3-36-0102-132-2025

waiving permitting requirements and other restrictions affecting those activities to the maximum extent possible, and assisting the FAA in securing waivers of permitting or other restrictions from other authorities. The Sponsor shall not take actions that frustrate or prevent the FAA from installing, maintaining, replacing, improving, or operating equipment and facilities in or supporting the National Airspace System.

b. If FAA determines that the Sponsor has violated subsection (a), the FAA may impose a remedy, including:

(1) additional conditions on the award;

(2)  consistent with 49 U.S.C chapter 471,.any remedy permitted under 2 C.F.R. 200.339–200.340, including withholding of payments; disallowance of previously reimbursed costs, requiring refunds from the Recipient to the DOT; suspension or termination of the award; or suspension and debarment under 2 C.F.R. part 180; or

(3) any other remedy legally available.

c. (In imposing a remedy under this condition, the FAA may elect to consider the interests of only the FAA.

d. The Sponsor acknowledges that amounts that the FAA requires the Sponsor to refund to the FAA due to a remedy under this condition constitute a debt to the Federal Government that the FAA may collect under 2 C.F.R. 200.346 and the Federal Claims Collection Standards (31 C.F.R. parts 900–904).

33. **Signage Costs for Construction Projects.** The Sponsor agrees that it will require the prime contractor of a Federally- assisted airport improvement project to post signs consistent with a DOT/FAA-prescribed format, as may be requested by the DOT/FAA, and further agrees to remove any signs posted in response to requests received prior to February 1, 2025.

34. **Title 8 - U.S.C., Chapter 12, Subchapter II - Immigration**. The sponsor will follow applicable federal laws pertaining to Subchapter 12, and be subject to the penalties set forth in 8 U.S.C. § 1324, Bringing in and harboring certain aliens, and 8 U.S.C. § 1327, Aiding or assisting certain aliens to enter

## SPECIAL CONDITIONS

35. **Airport Layout Plan.** The Sponsor understands and agrees to update the Airport Layout Plan to reflect the construction to standards satisfactory to the FAA and submit it in final form to the FAA as prescribed by 49 U.S.C. § 47107(a)(16). It is further mutually agreed that the reasonable cost of developing said Airport Layout Plan Map is an allowable cost within the scope of this project, if applicable. Airport Sponsors Grant Assurance 29 further addresses the Sponsor's statutory obligations to maintain an airport layout plan in accordance with 49 U.S.C. § 47107(a)(16).

36. **Disadvantaged Business Enterprise (DBE)/Airport Concessions Disadvantaged Business Enterprise (ACDBE) Program.** The Sponsor understands and agrees that it will not submit payment reimbursement requests until the Sponsor has received from the FAA Office of Civil Rights approval

3-36-0102-132-2025

of its DBE Program (reflecting compliance with 49 CFR Part 26 including any amendments thereto), and if applicable, its ACDBE program (reflecting compliance with 49 CFR Part 23, including any amendments thereto).

37. **Protection of Runway Protection Zone - Airport Property.** The Sponsor agrees to prevent the erection or creation of any structure, place of public assembly, or other use in the Runway Protection Zone, as depicted on the Exhibit "A": Property Map, except for Navigational Aids (NAVAIDS) that are fixed by their functional purposes or any other structure permitted by the FAA. The Sponsor further agrees that any existing structures or uses within the Runway Protection Zone will be cleared or discontinued by the Sponsor unless approved by the FAA.

38. **Plans and Specifications Prior to Bidding.** The Sponsor agrees that it will submit plans and specifications for FAA review prior to advertising for bids.

39. **Plans and Specifications Approval Based Upon Certification.** The FAA and the Sponsor agree that the FAA's approval of the Sponsor's Plans and Specification is based primarily upon the Sponsor's certification to carry out the project in accordance with policies, standards, and specifications approved by the FAA. The Sponsor understands that:

    a.  The Sponsor's certification does not relieve the Sponsor of the requirement to obtain prior FAA approval for modifications to published FAA airport development grant standards or to notify the FAA of any limitations to competition within the project;

    b.  The FAA's acceptance of a Sponsor's certification does not limit the FAA from reviewing appropriate project documentation for the purpose of validating the certification statements; and

    c.  If the FAA determines that the Sponsor has not complied with their certification statements, the FAA will review the associated project costs to determine whether such costs are allowable under this Grant and associated grants.

40. **Consultant Contract and Cost Analysis.** The Sponsor understands and agrees that no reimbursement will be made on the consultant contract portion of this Grant until the FAA has received the consultant contract, the Sponsor's analysis of costs, and the independent fee estimate.

41. **Design Grant.** This Grant Agreement is being issued in order to complete the design of the project. The Sponsor understands and agrees that within two (2) years after the design is completed that the Sponsor will accept, subject to the availability of the amount of Federal funding identified in the Airport Capital Improvement Plan (ACIP), a grant to complete the construction of the project in order to provide a useful and usable unit of work. The Sponsor also understands that if the FAA has provided Federal funding to complete the design for the project, and the Sponsor has not completed the design within four (4) years from the execution of this Grant Agreement, the FAA may suspend or terminate grants related to the design.

42. **Mothers' Rooms.** As a small, medium, or large hub airport, the sponsor certifies it is in compliance with 49 U.S.C. § 47107(w).

43. **Buy American Executive Orders.** The Sponsor agrees to abide by applicable Executive Orders in effect at the time this Grant Agreement is executed, including Executive Order 14005, Ensuring the Future Is Made in All of America by All of America's Workers.

44. **Usable Unit of Development.** The FAA and the Sponsor agree this Grant only funds a portion of the overall project. The FAA makes no commitment of funding beyond what is provided herein. In accepting this award, the Sponsor understands and agrees that the work described in this Grant

Agreement must be incorporated into a safe, useful, and usable unit of development completed within a reasonable timeframe [49 USC § 47106(a)(4)]. This safe, useful, usable unit of development must be completed regardless of whether the Sponsor receives any additional federal funding.

45. **Duffy Plaintiff Special Term**. Pursuant to the court's preliminary injunction order in State of California v. Duffy, 1:25-cv-00208-JJM-PAS (D.R.I.) (June 19, 2025), DOT will not impose or enforce the challenged immigration enforcement condition* or any materially similar terms and conditions, to any grant funds awarded, directly or indirectly, to Plaintiff States or local government entities within those States (collectively referred to as "Plaintiff State Entities"), or otherwise rescind, withhold, terminate, or take other adverse action, absent specific statutory authority, based on the challenged immigration enforcement condition while DOT is subject to an injunction. DOT will not require Plaintiff State Entities to make any certification or other representation related to compliance with the challenged immigration enforcement condition nor will DOT construe acceptance of funding from DOT as certification as to the challenged immigration enforcement condition.

*The challenged immigration enforcement condition:

"[T]he Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law."

3-36-0102-132-2025

The Sponsor's acceptance of this Offer and ratification and adoption of the Project Application incorporated herein shall be evidenced by execution of this instrument by the Sponsor, as hereinafter provided, and this Offer and Acceptance shall comprise a Grant Agreement, constituting the contractual obligations and rights of the United States and the Sponsor with respect to the accomplishment of the Project and compliance with the Grant Assurances, terms, and conditions as provided herein. Such Grant Agreement shall become effective upon the Sponsor's acceptance of this Offer.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[1]

**UNITED STATES OF AMERICA
FEDERAL AVIATION ADMINISTRATION**

_____
*(Signature)*

_____
*(Typed Name)*

_____
*(Title of FAA Official)*

---

[1] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

3-36-0102-132-2025

## Part II - Acceptance

The Sponsor does hereby ratify and adopt all assurances, statements, representations, warranties, covenants, and agreements contained in the Project Application and incorporated materials referred to in the foregoing Offer, and does hereby accept this Offer and by such acceptance agrees to comply with all of the Grant Assurances, terms, and conditions in this Offer and in the Project Application.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[2]

Dated _____

County of Monroe
_____
*(Name of Sponsor)*


_____
*(Signature of Sponsor's Authorized Official)*

By: _____
*(Typed Name of Sponsor's Authorized Official)*

Title: _____
*(Title of Sponsor's Authorized Official)*

---

[2] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

17

3-36-0102-132-2025

## CERTIFICATE OF SPONSOR'S ATTORNEY

I, _____, acting as Attorney for the Sponsor do hereby certify:

That in my opinion the Sponsor is empowered to enter into the foregoing Grant Agreement under the laws of the State of ____New York____. Further, I have examined the foregoing Grant Agreement and the actions taken by said Sponsor and Sponsor's official representative, who has been duly authorized to execute this Grant Agreement, which is in all respects due and proper and in accordance with the laws of the said State; and Title 49, United States Code (U.S.C.), Chapters 471 and 475; 49 U.S.C. §§ 40101 et seq., and 48103; FAA Reauthorization Act of 2018 (P.L. 115-254); the Department of Transportation Appropriations Act, 2021 (P.L. 116-260, Division L); the Consolidated Appropriations Act, 2022 ( P.L. 117-103); Consolidated Appropriations Act, 2023 ( P.L. 117-328); Consolidated Appropriations Act, 2024 (P.L. 118-42); FAA Reauthorization Act of 2024 (P.L. 118-63); and the representations contained in the Project Application. In addition, for grants involving projects to be carried out on property not owned by the Sponsor, there are no legal impediments that will prevent full performance by the Sponsor. Further, it is my opinion that the said Grant Agreement constitutes a legal and binding obligation of the Sponsor in accordance with the terms thereof.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[3]

Dated at _____

By: _____

*(Signature of Sponsor's Attorney)*

---

[3] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

18

3-36-0102-132-2025

# ASSURANCES
## AIRPORT SPONSORS

---

**A. General.**

1. These assurances shall be complied with in the performance of grant agreements for airport development, airport planning, and noise compatibility program grants for airport sponsors.

2. These assurances are required to be submitted as part of the project application by sponsors requesting funds under the provisions of Title 49, U.S.C., subtitle VII, as amended. As used herein, the term "public agency sponsor" means a public agency with control of a public-use airport; the term "private sponsor" means a private owner of a public-use airport; and the term "sponsor" includes both public agency sponsors and private sponsors.

3. Upon acceptance of this grant offer by the sponsor, these assurances are incorporated in and become part of this Grant Agreement.

**B. Duration and Applicability.**

**1.      Airport Development or Noise Compatibility Program Projects Undertaken by a Public Agency Sponsor.**

The terms, conditions and assurances of this Grant Agreement shall remain in full force and effect throughout the useful life of the facilities developed or equipment acquired for an airport development or noise compatibility program project, or throughout the useful life of the project items installed within a facility under a noise compatibility program project, but in any event not to exceed twenty (20) years from the date of acceptance of a grant offer of Federal funds for the project. However, there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport. There shall be no limit on the duration of the terms, conditions, and assurances with respect to real property acquired with federal funds. Furthermore, the duration of the Civil Rights assurance shall be specified in the assurances.

**2.      Airport Development or Noise Compatibility Projects Undertaken by a Private Sponsor.**

The preceding paragraph (1) also applies to a private sponsor except that the useful life of project items installed within a facility or the useful life of the facilities developed or equipment acquired under an airport development or noise compatibility program project shall be no less than ten (10) years from the date of acceptance of Federal aid for the project.

**3.      Airport Planning Undertaken by a Sponsor.**

Unless otherwise specified in this Grant Agreement, only Assurances 1, 2, 3, 5, 6, 13, 18, 23, 25, 30, 32, 33, 34, 37, and 40 in Section C apply to planning projects. The terms, conditions, and assurances of this Grant Agreement shall remain in full force and effect during the life of the project; there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport.

3-36-0102-132-2025

### C. Sponsor Certification.

The sponsor hereby assures and certifies, with respect to this grant that:

### 1. General Federal Requirements

It will comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds for this Grant. Performance under this agreement shall be governed by and in compliance with the following requirements, as applicable, to the type of organization of the Sponsor and any applicable sub-recipients. The applicable provisions to this agreement include, but are not limited to, the following:

FEDERAL LEGISLATION

a. 49 U.S.C. subtitle VII, as amended.

b. Davis-Bacon Act, as amended — 40 U.S.C. §§ 3141-3144, 3146, and 3147, et seq.[1]

c. Federal Fair Labor Standards Act – 29 U.S.C. § 201, et seq.

d. Hatch Act – 5 U.S.C. § 1501, et seq.[2]

e. Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601, et seq.[1, 2]

f. National Historic Preservation Act of 1966 – Section 106 – 54 U.S.C. § 306108.[1]

g. Archeological and Historic Preservation Act of 1974 – 54 U.S.C. § 312501, et seq.[1]

h. Native Americans Grave Repatriation Act – 25 U.S.C. § 3001, et seq.

i. Clean Air Act, P.L. 90-148, as amended – 42 U.S.C. § 7401, et seq.

j. Coastal Zone Management Act, P.L. 92-583, as amended – 16 U.S.C. § 1451, et seq.

k. Flood Disaster Protection Act of 1973 – Section 102(a) - 42 U.S.C. § 4012a.[1]

l. 49 U.S.C. § 303, (formerly known as Section 4(f)).

m. Rehabilitation Act of 1973 – 29 U.S.C. § 794.

n. Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.) (prohibits discrimination on the basis of race, color, national origin).

o. Americans with Disabilities Act of 1990, as amended, (42 U.S.C. § 12101 et seq.) (prohibits discrimination on the basis of disability).

p. Age Discrimination Act of 1975 – 42 U.S.C. § 6101, et seq.

q. American Indian Religious Freedom Act, P.L. 95-341, as amended.

r. Architectural Barriers Act of 1968, as amended – 42 U.S.C. § 4151, et seq.[1]

s. Powerplant and Industrial Fuel Use Act of 1978 – Section 403 – 42 U.S.C. § 8373.[1]

t. Contract Work Hours and Safety Standards Act – 40 U.S.C. § 3701, et seq.[1]

u. Copeland Anti-kickback Act – 18 U.S.C. § 874.[1]

v.   National Environmental Policy Act of 1969 – 42 U.S.C. § 4321, et seq.[1]

w.   Wild and Scenic Rivers Act, P.L. 90-542, as amended – 16 U.S.C. § 1271, et seq.

x.   Single Audit Act of 1984 – 31 U.S.C. § 7501, et seq.[2]

y.   Drug-Free Workplace Act of 1988 – 41 U.S.C. §§ 8101 through 8105.

z.   The Federal Funding Accountability and Transparency Act of 2006, as amended (P.L. 109-282, as amended by section 6202 of P.L. 110-252).

aa.  Civil Rights Restoration Act of 1987, P.L. 100-259.

bb.  Infrastructure Investment and Jobs Act, P.L. 117-58, Title VIII.

cc.  Build America, Buy America Act, P.L. 117-58, Title IX.

dd.  Endangered Species Act – 16 U.S.C. 1531, et seq.

ee.  Title IX of the Education Amendments of 1972, as amended – 20 U.S.C. 1681–1683 and 1685–1687.

ff.  Drug Abuse Office and Treatment Act of 1972, as amended – 21 U.S.C. 1101, et seq.

gg.  Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, P.L. 91-616, as amended – 42 U.S.C. § 4541, et seq.

hh.  Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, P.L. 91-616, as amended – 42 U.S.C. § 4541, et seq.

ii.  Appropriated Funds to Influence Certain Federal Contracting and Financial Transactions – 31 U.S.C. § 1352.

**EXECUTIVE ORDERS**

a.   Executive Order 11990 – Protection of Wetlands

b.   Executive Order 11988 – Floodplain Management

c.   Executive Order 12372 – Intergovernmental Review of Federal Programs

d.   Executive Order 12699 – Seismic Safety of Federal and Federally Assisted New Building Construction[1]

e.   Executive Order 14005 – Ensuring the Future is Made in all of America by All of America's Workers

f.   Executive Order 14149 – Restoring Freedom of Speech and Ending Federal Censorship

g.   Executive Order 14151 – Ending Radical and Wasteful Government DEI Programs and Preferencing

h.   Executive Order 14154 – Unleashing American Energy

i.   Executive Order 14168 – Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government

j.   Executive Order 14173 – Ending Illegal Discrimination and Restoring Merit-Based Opportunity

**FEDERAL REGULATIONS**

a. 2 CFR Part 180 – OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement).

b. 2 CFR Part 200 and 1201 – Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards. [3, 4, 5]

c. 2 CFR Part 1200 – Nonprocurement Suspension and Debarment.

d. 14 CFR Part 13 – Investigative and Enforcement Procedures.

e. 14 CFR Part 16 – Rules of Practice for Federally-Assisted Airport Enforcement Proceedings.

f. 14 CFR Part 150 – Airport Noise Compatibility Planning.

g. 28 CFR Part 35 – Nondiscrimination on the Basis of Disability in State and Local Government Services.

h. 28 CFR § 50.3 – U.S. Department of Justice Guidelines for the Enforcement of Title VI of the Civil Rights Act of 1964.

i. 29 CFR Part 1 – Procedures for Predetermination of Wage Rates.[1]

j. 29 CFR Part 3 – Contractors and Subcontractors on Public Building or Public Work Financed in Whole or in Part by Loans or Grants from the United States.[1]

k. 29 CFR Part 5 – Labor Standards Provisions Applicable to Contracts Covering Federally Financed and Assisted Construction (Also Labor Standards Provisions Applicable to Nonconstruction Contracts Subject to the Contract Work Hours and Safety Standards Act).[1]

l. 41 CFR Part 60 – Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor (Federal and Federally-assisted contracting requirements).[1]

m. 49 CFR Part 20 – New Restrictions on Lobbying.

n. 49 CFR Part 21 – Nondiscrimination in Federally-Assisted Programs of the Department of Transportation - Effectuation of Title VI of the Civil Rights Act of 1964.

o. 49 CFR Part 23 – Participation by Disadvantage Business Enterprise in Airport Concessions.

p. 49 CFR Part 24 – Uniform Relocation Assistance and Real Property Acquisition for Federal and Federally-Assisted Programs.[1, 2]

q. 49 CFR Part 26 – Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs.

r. 49 CFR Part 27 – Nondiscrimination on the Basis of Disability in Programs or Activities Receiving Federal Financial Assistance.[1]

s. 49 CFR Part 28 – Enforcement of Nondiscrimination on the Basis of Handicap in Programs or Activities Conducted by the Department of Transportation.

t. 49 CFR Part 30 – Denial of Public Works Contracts to Suppliers of Goods and Services of Countries That Deny Procurement Market Access to U.S. Contractors.

u. 49 CFR Part 32 – Governmentwide Requirements for Drug-Free Workplace (Financial Assistance).

3-36-0102-132-2025

    v.   49 CFR Part 37 – Transportation Services for Individuals with Disabilities (ADA).

    w.  49 CFR Part 38 – Americans with Disabilities Act (ADA) Accessibility Specifications for Transportation Vehicles.

    x.   49 CFR Part 41 – Seismic Safety.

### FOOTNOTES TO ASSURANCE (C)(1)

[1]  These laws do not apply to airport planning sponsors.
[2]  These laws do not apply to private sponsors.
[3]  2 CFR Part 200 contains requirements for State and Local Governments receiving Federal assistance. Any requirement levied upon State and Local Governments by this regulation shall apply where applicable to private sponsors receiving Federal assistance under Title 49, United States Code.
[4]  Cost principles established in 2 CFR Part 200 subpart E must be used as guidelines for determining the eligibility of specific types of expenses.
[5]  Audit requirements established in 2 CFR Part 200 subpart F are the guidelines for audits.

### SPECIFIC ASSURANCES

Specific assurances required to be included in grant agreements by any of the above laws, regulations or circulars are incorporated by reference in this Grant Agreement.

**2.  Responsibility and Authority of the Sponsor.**

    a.   Public Agency Sponsor:

    It has legal authority to apply for this Grant, and to finance and carry out the proposed project; that a resolution, motion or similar action has been duly adopted or passed as an official act of the applicant's governing body authorizing the filing of the application, including all understandings and assurances contained therein, and directing and authorizing the person identified as the official representative of the applicant to act in connection with the application and to provide such additional information as may be required.

    b.  Private Sponsor:

    It has legal authority to apply for this Grant and to finance and carry out the proposed project and comply with all terms, conditions, and assurances of this Grant Agreement. It shall designate an official representative and shall in writing direct and authorize that person to file this application, including all understandings and assurances contained therein; to act in connection with this application; and to provide such additional information as may be required.

**3.  Sponsor Fund Availability.**

It has sufficient funds available for that portion of the project costs which are not to be paid by the United States. It has sufficient funds available to assure operation and maintenance of items funded under this Grant Agreement which it will own or control.

**4.  Good Title.**

    a.   It, a public agency or the Federal government, holds good title, satisfactory to the Secretary, to the landing area of the airport or site thereof, or will give assurance satisfactory to the Secretary that good title will be acquired.

3-36-0102-132-2025

b. For noise compatibility program projects to be carried out on the property of the sponsor, it holds good title satisfactory to the Secretary to that portion of the property upon which Federal funds will be expended or will give assurance to the Secretary that good title will be obtained.

**5. Preserving Rights and Powers.**

a. It will not take or permit any action which would operate to deprive it of any of the rights and powers necessary to perform any or all of the terms, conditions, and assurances in this Grant Agreement without the written approval of the Secretary, and will act promptly to acquire, extinguish or modify any outstanding rights or claims of right of others which would interfere with such performance by the sponsor. This shall be done in a manner acceptable to the Secretary.

b. Subject to 49 U.S.C. § 47107(a)(16) and (x), it will not sell, lease, encumber, or otherwise transfer or dispose of any part of its title or other interests in the property shown on Exhibit A to this application or, for a noise compatibility program project, that portion of the property upon which Federal funds have been expended, for the duration of the terms, conditions, and assurances in this Grant Agreement without approval by the Secretary. If the transferee is found by the Secretary to be eligible under Title 49, United States Code, to assume the obligations of this Grant Agreement and to have the power, authority, and financial resources to carry out all such obligations, the sponsor shall insert in the contract or document transferring or disposing of the sponsor's interest, and make binding upon the transferee all of the terms, conditions, and assurances contained in this Grant Agreement.

c. For all noise compatibility program projects which are to be carried out by another unit of local government or are on property owned by a unit of local government other than the sponsor, it will enter into an agreement with that government. Except as otherwise specified by the Secretary, that agreement shall obligate that government to the same terms, conditions, and assurances that would be applicable to it if it applied directly to the FAA for a grant to undertake the noise compatibility program project. That agreement and changes thereto must be satisfactory to the Secretary. It will take steps to enforce this agreement against the local government if there is substantial non-compliance with the terms of the agreement.

d. For noise compatibility program projects to be carried out on privately owned property, it will enter into an agreement with the owner of that property which includes provisions specified by the Secretary. It will take steps to enforce this agreement against the property owner whenever there is substantial non-compliance with the terms of the agreement.

e. If the sponsor is a private sponsor, it will take steps satisfactory to the Secretary to ensure that the airport will continue to function as a public-use airport in accordance with these assurances for the duration of these assurances.

f. If an arrangement is made for management and operation of the airport by any agency or person other than the sponsor or an employee of the sponsor, the sponsor will reserve sufficient rights and authority to ensure that the airport will be operated and maintained in accordance with Title 49, United States Code, the regulations and the terms, conditions and assurances in this Grant Agreement and shall ensure that such arrangement also requires compliance therewith.

g. Sponsors of commercial service airports will not permit or enter into any arrangement that results in permission for the owner or tenant of a property used as a residence, or zoned for residential use, to taxi an aircraft between that property and any location on airport. Sponsors

of general aviation airports entering into any arrangement that results in permission for the owner of residential real property adjacent to or near the airport must comply with the requirements of Sec. 136 of Public Law 112-95 and the sponsor assurances.

6. **Consistency with Local Plans.**

The project is reasonably consistent with plans (existing at the time of submission of this application) of public agencies that are authorized by the State in which the project is located to plan for the development of the area surrounding the airport.

7. **Consideration of Local Interest.**

It has given fair consideration to the interest of communities in or near where the project may be located.

8. **Consultation with Users.**

In making a decision to undertake any airport development project under Title 49, United States Code, it has undertaken reasonable consultations with affected parties using the airport at which project is proposed.

9. **Public Hearings.**

In projects involving the location of an airport, an airport runway, or a major runway extension, it has afforded the opportunity for public hearings for the purpose of considering the economic, social, and environmental effects of the airport or runway location and its consistency with goals and objectives of such planning as has been carried out by the community and it shall, when requested by the Secretary, submit a copy of the transcript of such hearings to the Secretary. Further, for such projects, it has on its management board either voting representation from the communities where the project is located or has advised the communities that they have the right to petition the Secretary concerning a proposed project.

10. **Metropolitan Planning Organization.**

In projects involving the location of an airport, an airport runway, or a major runway extension at a medium or large hub airport, the sponsor has made available to and has provided upon request to the metropolitan planning organization in the area in which the airport is located, if any, a copy of the proposed amendment to the airport layout plan to depict the project and a copy of any airport master plan in which the project is described or depicted.

11. **Pavement Preventive Maintenance-Management.**

With respect to a project approved after January 1, 1995, for the replacement or reconstruction of pavement at the airport, it assures or certifies that it has implemented an effective airport pavement maintenance-management program and it assures that it will use such program for the useful life of any pavement constructed, reconstructed or repaired with Federal financial assistance at the airport. It will provide such reports on pavement condition and pavement management programs as the Secretary determines may be useful.

12. **Terminal Development Prerequisites.**

For projects which include terminal development at a public use airport, as defined in Title 49, it has, on the date of submittal of the project grant application, all the safety equipment required for certification of such airport under 49 U.S.C. § 44706, and all the security equipment required by rule or regulation, and has provided for access to the passenger enplaning and deplaning area of such airport to passengers enplaning and deplaning from aircraft other than air carrier aircraft.

3-36-0102-132-2025

**13. Accounting System, Audit, and Record Keeping Requirements.**

    a.  It shall keep all project accounts and records which fully disclose the amount and disposition by the recipient of the proceeds of this Grant, the total cost of the project in connection with which this Grant is given or used, and the amount or nature of that portion of the cost of the project supplied by other sources, and such other financial records pertinent to the project. The accounts and records shall be kept in accordance with an accounting system that will facilitate an effective audit in accordance with the Single Audit Act of 1984.

    b.  It shall make available to the Secretary and the Comptroller General of the United States, or any of their duly authorized representatives, for the purpose of audit and examination, any books, documents, papers, and records of the recipient that are pertinent to this Grant. The Secretary may require that an appropriate audit be conducted by a recipient. In any case in which an independent audit is made of the accounts of a sponsor relating to the disposition of the proceeds of a grant or relating to the project in connection with which this Grant was given or used, it shall file a certified copy of such audit with the Comptroller General of the United States not later than six (6) months following the close of the fiscal year for which the audit was made.

**14. Minimum Wage Rates.**

It shall include, in all contracts in excess of $2,000 for work on any projects funded under this Grant Agreement which involve labor, provisions establishing minimum rates of wages, to be predetermined by the Secretary of Labor under 40 U.S.C. §§ 3141-3144, 3146, and 3147, Public Building, Property, and Works), which contractors shall pay to skilled and unskilled labor, and such minimum rates shall be stated in the invitation for bids and shall be included in proposals or bids for the work.

**15. Veteran's Preference.**

It shall include in all contracts for work on any project funded under this Grant Agreement which involve labor, such provisions as are necessary to insure that, in the employment of labor (except in executive, administrative, and supervisory positions), preference shall be given to Vietnam era veterans, Persian Gulf veterans, Afghanistan-Iraq war veterans, disabled veterans, and small business concerns owned and controlled by disabled veterans as defined in 49 U.S.C. § 47112. However, this preference shall apply only where the individuals are available and qualified to perform the work to which the employment relates.

**16. Conformity to Plans and Specifications.**

It will execute the project subject to plans, specifications, and schedules approved by the Secretary. Such plans, specifications, and schedules shall be submitted to the Secretary prior to commencement of site preparation, construction, or other performance under this Grant Agreement, and, upon approval of the Secretary, shall be incorporated into this Grant Agreement. Any modification to the approved plans, specifications, and schedules shall also be subject to approval of the Secretary, and incorporated into this Grant Agreement.

**17. Construction Inspection and Approval.**

It will provide and maintain competent technical supervision at the construction site throughout the project to assure that the work conforms to the plans, specifications, and schedules approved by the Secretary for the project. It shall subject the construction work on any project contained in an approved project application to inspection and approval by the Secretary and such work shall be in

accordance with regulations and procedures prescribed by the Secretary. Such regulations and procedures shall require such cost and progress reporting by the sponsor or sponsors of such project as the Secretary shall deem necessary.

**18. Planning Projects.**

In carrying out planning projects:

a. It will execute the project in accordance with the approved program narrative contained in the project application or with the modifications similarly approved.

b. It will furnish the Secretary with such periodic reports as required pertaining to the planning project and planning work activities.

c. It will include in all published material prepared in connection with the planning project a notice that the material was prepared under a grant provided by the United States.

d. It will make such material available for examination by the public, and agrees that no material prepared with funds under this project shall be subject to copyright in the United States or any other country.

e. It will give the Secretary unrestricted authority to publish, disclose, distribute, and otherwise use any of the material prepared in connection with this grant.

f. It will grant the Secretary the right to disapprove the sponsor's employment of specific consultants and their subcontractors to do all or any part of this project as well as the right to disapprove the proposed scope and cost of professional services.

g. It will grant the Secretary the right to disapprove the use of the sponsor's employees to do all or any part of the project.

h. It understands and agrees that the Secretary's approval of this project grant or the Secretary's approval of any planning material developed as part of this grant does not constitute or imply any assurance or commitment on the part of the Secretary to approve any pending or future application for a Federal airport grant.

**19. Operation and Maintenance.**

a. The airport and all facilities which are necessary to serve the aeronautical users of the airport, other than facilities owned or controlled by the United States, shall be operated at all times in a safe and serviceable condition and in accordance with the minimum standards as may be required or prescribed by applicable Federal, state, and local agencies for maintenance and operation. It will not cause or permit any activity or action thereon which would interfere with its use for airport purposes. It will suitably operate and maintain the airport and all facilities thereon or connected therewith, with due regard to climatic and flood conditions. Any proposal to temporarily close the airport for non-aeronautical purposes must first be approved by the Secretary. In furtherance of this assurance, the sponsor will have in effect arrangements for:

1. Operating the airport's aeronautical facilities whenever required;

2. Promptly marking and lighting hazards resulting from airport conditions, including temporary conditions; and

3. Promptly notifying pilots of any condition affecting aeronautical use of the airport. Nothing contained herein shall be construed to require that the airport be operated for aeronautical use during temporary periods when snow, flood, or other climatic conditions

interfere with such operation and maintenance. Further, nothing herein shall be construed as requiring the maintenance, repair, restoration, or replacement of any structure or facility which is substantially damaged or destroyed due to an act of God or other condition or circumstance beyond the control of the sponsor.

b.   It will suitably operate and maintain noise compatibility program items that it owns or controls upon which Federal funds have been expended.

**20. Hazard Removal and Mitigation.**

It will take appropriate action to assure that such terminal airspace as is required to protect instrument and visual operations to the airport (including established minimum flight altitudes) will be adequately cleared and protected by removing, lowering, relocating, marking, or lighting or otherwise mitigating existing airport hazards and by preventing the establishment or creation of future airport hazards.

**21. Compatible Land Use.**

It will take appropriate action, to the extent reasonable, including the adoption of zoning laws, to restrict the use of land adjacent to or in the immediate vicinity of the airport to activities and purposes compatible with normal airport operations, including landing and takeoff of aircraft. In addition, if the project is for noise compatibility program implementation, it will not cause or permit any change in land use, within its jurisdiction, that will reduce its compatibility, with respect to the airport, of the noise compatibility program measures upon which Federal funds have been expended.

**22. Economic Nondiscrimination.**

a.   It will make the airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities, including commercial aeronautical activities offering services to the public at the airport.

b.   In any agreement, contract, lease, or other arrangement under which a right or privilege at the airport is granted to any person, firm, or corporation to conduct or to engage in any aeronautical activity for furnishing services to the public at the airport, the sponsor will insert and enforce provisions requiring the contractor to:

1.   Furnish said services on a reasonable, and not unjustly discriminatory, basis to all users thereof, and

2.   Charge reasonable, and not unjustly discriminatory, prices for each unit or service, provided that the contractor may be allowed to make reasonable and nondiscriminatory discounts, rebates, or other similar types of price reductions to volume purchasers.

c.   Each fixed-based operator at the airport shall be subject to the same rates, fees, rentals, and other charges as are uniformly applicable to all other fixed-based operators making the same or similar uses of such airport and utilizing the same or similar facilities.

d.   Each air carrier using such airport shall have the right to service itself or to use any fixed-based operator that is authorized or permitted by the airport to serve any air carrier at such airport.

e.   Each air carrier using such airport (whether as a tenant, non-tenant, or subtenant of another air carrier tenant) shall be subject to such nondiscriminatory and substantially comparable rules, regulations, conditions, rates, fees, rentals, and other charges with respect to facilities directly and substantially related to providing air transportation as are applicable to all such air carriers

which make similar use of such airport and utilize similar facilities, subject to reasonable classifications such as tenants or non-tenants and signatory carriers and non-signatory carriers. Classification or status as tenant or signatory shall not be unreasonably withheld by any airport provided an air carrier assumes obligations substantially similar to those already imposed on air carriers in such classification or status.

f.  It will not exercise or grant any right or privilege which operates to prevent any person, firm, or corporation operating aircraft on the airport from performing any services on its own aircraft with its own employees (including, but not limited to maintenance, repair, and fueling) that it may choose to perform.

g.  In the event the sponsor itself exercises any of the rights and privileges referred to in this assurance, the services involved will be provided on the same conditions as would apply to the furnishing of such services by commercial aeronautical service providers authorized by the sponsor under these provisions.

h.  The sponsor may establish such reasonable, and not unjustly discriminatory, conditions to be met by all users of the airport as may be necessary for the safe and efficient operation of the airport.

i.  The sponsor may prohibit or limit any given type, kind or class of aeronautical use of the airport if such action is necessary for the safe operation of the airport or necessary to serve the civil aviation needs of the public.

## 23. Exclusive Rights.

It will permit no exclusive right for the use of the airport by any person providing, or intending to provide, aeronautical services to the public. For purposes of this paragraph, the providing of the services at an airport by a single fixed-based operator shall not be construed as an exclusive right if both of the following apply:

a.  It would be unreasonably costly, burdensome, or impractical for more than one fixed-based operator to provide such services, and

b.  If allowing more than one fixed-based operator to provide such services would require the reduction of space leased pursuant to an existing agreement between such single fixed-based operator and such airport. It further agrees that it will not, either directly or indirectly, grant or permit any person, firm, or corporation, the exclusive right at the airport to conduct any aeronautical activities, including, but not limited to charter flights, pilot training, aircraft rental and sightseeing, aerial photography, crop dusting, aerial advertising and surveying, air carrier operations, aircraft sales and services, sale of aviation petroleum products whether or not conducted in conjunction with other aeronautical activity, repair and maintenance of aircraft, sale of aircraft parts, and any other activities which because of their direct relationship to the operation of aircraft can be regarded as an aeronautical activity, and that it will terminate any exclusive right to conduct an aeronautical activity now existing at such an airport before the grant of any assistance under Title 49, United States Code.

## 24. Fee and Rental Structure.

It will maintain a fee and rental structure for the facilities and services at the airport which will make the airport as self-sustaining as possible under the circumstances existing at the particular airport, taking into account such factors as the volume of traffic and economy of collection. No part of the Federal share of an airport development, airport planning or noise compatibility project for

which a Grant is made under Title 49, United States Code, the Airport and Airway Improvement Act of 1982, the Federal Airport Act or the Airport and Airway Development Act of 1970 shall be included in the rate basis in establishing fees, rates, and charges for users of that airport.

**25. Airport Revenues.**

a. All revenues generated by the airport and any local taxes on aviation fuel established after December 30, 1987, will be expended by it for the capital or operating costs of the airport; the local airport system; or other local facilities which are owned or operated by the owner or operator of the airport and which are directly and substantially related to the actual air transportation of passengers or property; or for noise mitigation purposes on or off the airport. The following exceptions apply to this paragraph:

1. If covenants or assurances in debt obligations issued before September 3, 1982, by the owner or operator of the airport, or provisions enacted before September 3, 1982, in governing statutes controlling the owner or operator's financing, provide for the use of the revenues from any of the airport owner or operator's facilities, including the airport, to support not only the airport but also the airport owner or operator's general debt obligations or other facilities, then this limitation on the use of all revenues generated by the airport (and, in the case of a public airport, local taxes on aviation fuel) shall not apply.

2. If the Secretary approves the sale of a privately owned airport to a public sponsor and provides funding for any portion of the public sponsor's acquisition of land, this limitation on the use of all revenues generated by the sale shall not apply to certain proceeds from the sale. This is conditioned on repayment to the Secretary by the private owner of an amount equal to the remaining unamortized portion (amortized over a 20-year period) of any airport improvement grant made to the private owner for any purpose other than land acquisition on or after October 1, 1996, plus an amount equal to the federal share of the current fair market value of any land acquired with an airport improvement grant made to that airport on or after October 1, 1996.

3. Certain revenue derived from or generated by mineral extraction, production, lease, or other means at a general aviation airport (as defined at 49 U.S.C. § 47102), if the FAA determines the airport sponsor meets the requirements set forth in Section 813 of Public Law 112-95.

b. As part of the annual audit required under the Single Audit Act of 1984, the sponsor will direct that the audit will review, and the resulting audit report will provide an opinion concerning, the use of airport revenue and taxes in paragraph (a), and indicating whether funds paid or transferred to the owner or operator are paid or transferred in a manner consistent with Title 49, United States Code and any other applicable provision of law, including any regulation promulgated by the Secretary or Administrator.

c. Any civil penalties or other sanctions will be imposed for violation of this assurance in accordance with the provisions of 49 U.S.C. § 47107.

**26. Reports and Inspections.**

It will:

a. submit to the Secretary such annual or special financial and operations reports as the Secretary may reasonably request and make such reports available to the public; make available to the

public at reasonable times and places a report of the airport budget in a format prescribed by the Secretary;

b.  for airport development projects, make the airport and all airport records and documents affecting the airport, including deeds, leases, operation and use agreements, regulations and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request;

c.  for noise compatibility program projects, make records and documents relating to the project and continued compliance with the terms, conditions, and assurances of this Grant Agreement including deeds, leases, agreements, regulations, and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request; and

d.  in a format and time prescribed by the Secretary, provide to the Secretary and make available to the public following each of its fiscal years, an annual report listing in detail:

1.  all amounts paid by the airport to any other unit of government and the purposes for which each such payment was made; and

2.  all services and property provided by the airport to other units of government and the amount of compensation received for provision of each such service and property.

**27. Use by Government Aircraft.**

It will make available all of the facilities of the airport developed with Federal financial assistance and all those usable for landing and takeoff of aircraft to the United States for use by Government aircraft in common with other aircraft at all times without charge, except, if the use by Government aircraft is substantial, charge may be made for a reasonable share, proportional to such use, for the cost of operating and maintaining the facilities used. Unless otherwise determined by the Secretary, or otherwise agreed to by the sponsor and the using agency, substantial use of an airport by Government aircraft will be considered to exist when operations of such aircraft are in excess of those which, in the opinion of the Secretary, would unduly interfere with use of the landing areas by other authorized aircraft, or during any calendar month that:

a.  Five (5) or more Government aircraft are regularly based at the airport or on land adjacent thereto; or

b.  The total number of movements (counting each landing as a movement) of Government aircraft is 300 or more, or the gross accumulative weight of Government aircraft using the airport (the total movement of Government aircraft multiplied by gross weights of such aircraft) is in excess of five million pounds.

**28. Land for Federal Facilities.**

It will furnish without cost to the Federal Government for use in connection with any air traffic control or air navigation activities, or weather-reporting and communication activities related to air traffic control, any areas of land or water, or estate therein as the Secretary considers necessary or desirable for construction, operation, and maintenance at Federal expense of space or facilities for such purposes. Such areas or any portion thereof will be made available as provided herein within four months after receipt of a written request from the Secretary.

**29. Airport Layout Plan.**

a.  The airport owner or operator will maintain a current airport layout plan of the airport showing:

1.  boundaries of the airport and all proposed additions thereto, together with the boundaries of all offsite areas owned or controlled by the sponsor for airport purposes and proposed additions thereto;

2.  the location and nature of all existing and proposed airport facilities and structures (such as runways, taxiways, aprons, terminal buildings, hangars and roads), including all proposed extensions and reductions of existing airport facilities;

3.  the location of all existing and proposed non-aviation areas and of all existing improvements thereon; and

4.  all proposed and existing access points used to taxi aircraft across the airport's property boundary.

b.  Subject to subsection 49 U.S.C. § 47107(x), the Secretary will review and approve or disapprove the plan and any revision or modification of the plan before the plan, revision, or modification takes effect.

c.  The owner or operator will not make or allow any alteration in the airport or any of its facilities unless the alteration—

1. is outside the scope of the Secretary's review and approval authority as set forth in subsection (x); or

2. complies with the portions of the plan approved by the Secretary.

d.  When the airport owner or operator makes a change or alteration in the airport or the facilities  which the Secretary determines adversely affects the safety, utility, or efficiency of any federally owned, leased, or funded property on or off the airport and which is not in conformity with the airport layout plan as approved by the Secretary, the owner or operator will, if requested, by the Secretary:

1.  eliminate such adverse effect in a manner approved by the Secretary; or

2.  bear all costs of relocating such property or its replacement to a site acceptable to the Secretary and of restoring the property or its replacement to the level of safety, utility, efficiency, and cost of operation that existed before the alteration was made, except in the case of a relocation or replacement of an existing airport facility due to a change in the Secretary's design standards beyond the control of the airport sponsor.

**30. Civil Rights.**
It will promptly take any measures necessary to ensure that no person in the United States shall, on the grounds of race, color, and national origin (including limited English proficiency) in accordance with the provisions of  Title VI of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d to 2000d-4); creed and sex per 49 U.S.C. § 47123 and related requirements; age per the Age Discrimination Act of 1975 and related requirements; or disability per the Americans with Disabilities Act of 1990 and related requirements, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination in any program and activity conducted with, or benefiting from, funds received from this Grant.

a. Using the definitions of activity, facility, and program as found and defined in 49 CFR §§ 21.23(b) and 21.23(e), the sponsor will facilitate all programs, operate all facilities, or conduct all programs in compliance with all non-discrimination requirements imposed by or pursuant to these assurances.

b. Applicability

1. Programs and Activities. If the sponsor has received a grant (or other federal assistance) for any of the sponsor's program or activities, these requirements extend to all of the sponsor's programs and activities.

2. Facilities. Where it receives a grant or other federal financial assistance to construct, expand, renovate, remodel, alter, or acquire a facility, or part of a facility, the assurance extends to the entire facility and facilities operated in connection therewith.

3. Real Property. Where the sponsor receives a grant or other Federal financial assistance in the form of, or for the acquisition of real property or an interest in real property, the assurance will extend to rights to space on, over, or under such property.

c. Duration.

The sponsor agrees that it is obligated to this assurance for the period during which Federal financial assistance is extended to the program, except where the Federal financial assistance is to provide, or is in the form of, personal property, or real property, or interest therein, or structures or improvements thereon, in which case the assurance obligates the sponsor, or any transferee for the longer of the following periods:

1. So long as the airport is used as an airport, or for another purpose involving the provision of similar services or benefits; or

2. So long as the sponsor retains ownership or possession of the property.

d. Required Solicitation Language. It will include the following notification in all solicitations for bids, Requests For Proposals for work, or material under this Grant Agreement and in all proposals for agreements, including airport concessions, regardless of funding source:

"The (**County of Monroe**), in accordance with the provisions of Title VI of the Civil Rights Act of 1964 ( 42 U.S.C. §§ 2000d to 2000d-4) and the Regulations, hereby notifies all bidders or offerors that it will affirmatively ensure that for any contract entered into pursuant to this advertisement, all businesses will be afforded full and fair opportunity to submit bids in response to this invitation and no businesses will be discriminated against on the grounds of race, color, national origin (including limited English proficiency), creed, sex , age, or disability in consideration for an award."

e. Required Contract Provisions.

1. It will insert the non-discrimination contract clauses requiring compliance with the acts and regulations relative to non-discrimination in Federally-assisted programs of the Department of Transportation (DOT), and incorporating the acts and regulations into the contracts by reference in every contract or agreement subject to the non-discrimination in Federally-assisted programs of the DOT acts and regulations.

2. It will include a list of the pertinent non-discrimination authorities in every contract that is subject to the non-discrimination acts and regulations.

3. It will insert non-discrimination contract clauses as a covenant running with the land, in any deed from the United States effecting or recording a transfer of real property, structures, use, or improvements thereon or interest therein to a sponsor.

4. It will insert non-discrimination contract clauses prohibiting discrimination on the basis of race, color, national origin (including limited English proficiency), creed, sex, age, or disability as a covenant running with the land, in any future deeds, leases, license, permits, or similar instruments entered into by the sponsor with other parties:

    a. For the subsequent transfer of real property acquired or improved under the applicable activity, project, or program; and

    b. For the construction or use of, or access to, space on, over, or under real property acquired or improved under the applicable activity, project, or program.

f. It will provide for such methods of administration for the program as are found by the Secretary to give reasonable guarantee that it, other recipients, sub-recipients, sub-grantees, contractors, subcontractors, consultants, transferees, successors in interest, and other participants of Federal financial assistance under such program will comply with all requirements imposed or pursuant to the acts, the regulations, and this assurance.

g. It agrees that the United States has a right to seek judicial enforcement with regard to any matter arising under the acts, the regulations, and this assurance.

**31. Disposal of Land.**

a. For land purchased under a grant for airport noise compatibility purposes, including land serving as a noise buffer, it will dispose of the land, when the land is no longer needed for such purposes, at fair market value, at the earliest practicable time. That portion of the proceeds of such disposition which is proportionate to the United States' share of acquisition of such land will be, at the discretion of the Secretary, (1) reinvested in another project at the airport, or (2) transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

    1. Reinvestment in an approved noise compatibility project;

    2. Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. § 47117(e);

    3. Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. §§ 47114, 47115, or 47117;

    4. Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

    5. Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

If land acquired under a grant for noise compatibility purposes is leased at fair market value and consistent with noise buffering purposes, the lease will not be considered a disposal of the land. Revenues derived from such a lease may be used for an approved airport development project that would otherwise be eligible for grant funding or any permitted use of airport revenue.

b. For land purchased under a grant for airport development purposes (other than noise compatibility), it will, when the land is no longer needed for airport purposes, dispose of such land at fair market value or make available to the Secretary an amount equal to the United

States' proportionate share of the fair market value of the land. That portion of the proceeds of such disposition which is proportionate to the United States' share of the cost of acquisition of such land will, upon application to the Secretary, be reinvested or transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

1. Reinvestment in an approved noise compatibility project;

2. Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. § 47117(e);

3. Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. §§ 47114, 47115, or 47117;

4. Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

5. Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

c. Land shall be considered to be needed for airport purposes under this assurance if (1) it may be needed for aeronautical purposes (including runway protection zones) or serve as noise buffer land, and (2) the revenue from interim uses of such land contributes to the financial self-sufficiency of the airport. Further, land purchased with a grant received by an airport operator or owner before December 31, 1987, will be considered to be needed for airport purposes if the Secretary or Federal agency making such grant before December 31, 1987, was notified by the operator or owner of the uses of such land, did not object to such use, and the land continues to be used for that purpose, such use having commenced no later than December 15, 1989.

d. Disposition of such land under (a), (b), or (c) will be subject to the retention or reservation of any interest or right therein necessary to ensure that such land will only be used for purposes which are compatible with noise levels associated with operation of the airport.

## 32. Engineering and Design Services.

If any phase of such project has received Federal funds under Chapter 471 subchapter 1 of Title 49 U.S.C., it will award each contract, or sub-contract for program management, construction management, planning studies, feasibility studies, architectural services, preliminary engineering, design, engineering, surveying, mapping or related services in the same manner as a contract for architectural and engineering services is negotiated under Chapter 11 of Title 40 U S.C., or an equivalent qualifications-based requirement prescribed for or by the sponsor of the airport.

## 33. Foreign Market Restrictions.

It will not allow funds provided under this Grant to be used to fund any project which uses any product or service of a foreign country during the period in which such foreign country is listed by the United States Trade Representative as denying fair and equitable market opportunities for products and suppliers of the United States in procurement and construction.

## 34. Policies, Standards, and Specifications.

It will carry out any project funded under an Airport Improvement Program Grant in accordance with policies, standards, and specifications approved by the Secretary including, but not limited to, current FAA Advisory Circulars (https://www.faa.gov/sites/faa.gov/files/aip-pfc-checklist_0.pdf) for AIP projects as of **March 25, 2025.**

35. **Relocation and Real Property Acquisition.**

   a. It will be guided in acquiring real property, to the greatest extent practicable under State law, by the land acquisition policies in Subpart B of 49 CFR Part 24 and will pay or reimburse property owners for necessary expenses as specified in Subpart B.

   b. It will provide a relocation assistance program offering the services described in Subpart C of 49 CFR Part 24 and fair and reasonable relocation payments and assistance to displaced persons as required in Subpart D and E of 49 CFR Part 24.

   c. It will make available within a reasonable period of time prior to displacement, comparable replacement dwellings to displaced persons in accordance with Subpart E of 49 CFR Part 24.

36. **Access By Intercity Buses.**

   The airport owner or operator will permit, to the maximum extent practicable, intercity buses or other modes of transportation to have access to the airport; however, it has no obligation to fund special facilities for intercity buses or for other modes of transportation.

37. **Disadvantaged Business Enterprises.**

   The sponsor shall not discriminate on the basis of race, color, national origin, or sex, in the award and performance of any DOT-assisted contract covered by 49 CFR Part 26, or in the award and performance of any concession activity contract covered by 49 CFR Part 23. In addition, the sponsor shall not discriminate on the basis of race, color, national origin or sex in the administration of its Disadvantaged Business Enterprise (DBE) and Airport Concessions Disadvantaged Business Enterprise (ACDBE) programs or the requirements of 49 CFR Parts 23 and 26. The sponsor shall take all necessary and reasonable steps under 49 CFR Parts 23 and 26 to ensure nondiscrimination in the award and administration of DOT-assisted contracts, and/or concession contracts. The sponsor's DBE and ACDBE programs, as required by 49 CFR Parts 26 and 23, and as approved by DOT, are incorporated by reference in this agreement. Implementation of these programs is a legal obligation and failure to carry out its terms shall be treated as a violation of this agreement. Upon notification to the sponsor of its failure to carry out its approved program, the Department may impose sanctions as provided for under Parts 26 and 23 and may, in appropriate cases, refer the matter for enforcement under 18 U.S.C. § 1001 and/or the Program Fraud Civil Remedies Act of 1986 (31 U.S.C. §§ 3801-3809, 3812).

38. **Hangar Construction.**

   If the airport owner or operator and a person who owns an aircraft agree that a hangar is to be constructed at the airport for the aircraft at the aircraft owner's expense, the airport owner or operator will grant to the aircraft owner for the hangar a long term lease that is subject to such terms and conditions on the hangar as the airport owner or operator may impose.

39. **Competitive Access.**

   a. If the airport owner or operator of a medium or large hub airport (as defined in 49 U.S.C. § 47102) has been unable to accommodate one or more requests by an air carrier for access to gates or other facilities at that airport in order to allow the air carrier to provide service to the airport or to expand service at the airport, the airport owner or operator shall transmit a report to the Secretary that:

      1. Describes the requests;

      2. Provides an explanation as to why the requests could not be accommodated; and

3-36-0102-132-2025

    3. Provides a time frame within which, if any, the airport will be able to accommodate the requests.

b. Such report shall be due on either February 1 or August 1 of each year if the airport has been unable to accommodate the request(s) in the six month period prior to the applicable due date.

**40. Access to Leaded Aviation Gasoline**

a. If 100-octane low lead aviation gasoline (100LL) was made available at an airport, at any time during calendar year 2022, an airport owner or operator may not restrict or prohibit the sale of, or self-fueling with, 100-octane low lead aviation gasoline.

b. This requirement remains until the earlier of December 31, 2030, or the date on which the airport or any retail fuel seller at the airport makes available an unleaded aviation gasoline that has been authorized for use by the FAA as a replacement for 100-octane low lead aviation gasoline for use in nearly all piston-engine aircraft and engine models; and meets either an industry consensus standard or other standard that facilitates the safe use, production, and distribution of such unleaded aviation gasoline, as determined appropriate by the FAA.

c. An airport owner or operator understands and agrees, that any violation of this grant assurance is subject to civil penalties as provided for in 49 U.S.C. § 46301(a)(8).

3-36-0102-132-2025

# AIP Grant Application

## Monroe County, NY Aviation Department
## Frederick Douglass Greater Rochester International Airport (ROC)

#3-36-0102-  -2025

*March 25, 2025*

**Projects:**

**Runway 4-22 Connector Taxiway Fillets (Design)**

**Prepared For:**

Federal Aviation Administration
New York Airports District Office



**Prepared By:**



March 25, 2025

Glen L. Conacchio
Civil Engineer
New York Airports District Office
Federal Aviation Administration
1 Aviation Plaza, RM 111
Jamaica, NY 11434

RE: Final Grant Application
    Runway 4-22 Connector Taxiway Fillets (Design)
    Frederick Douglass Greater Rochester International Airport (ROC)

Dear Mr. Conacchio,

I am submitting the Final Grant Application for AIP Grant 3-36-0102-  -2025 on behalf of Monroe County, NY Aviation Department and Frederick Douglass Greater Rochester International Airport (ROC) for the Runway 4-22 Connector Taxiway Fillets (Design) project.

The contents of this Application are as follows:

- AIP Grant Application Checklist
- Application for Federal Assistance SF-424
- FAA Form 5100-100
- Project Cost Breakdown
- Supporting Documentation
  - Statement by the Sponsor of Cost Reasonableness
  - Project Data Sheet
  - Project Scope & Fee
  - Project Sketch
  - Environmental Documentation
  - Exhibit A
- Sponsor Certifications
  - FAA Forms 5100-130, -132, -134, -135
  - Certification Regarding Lobbying
- FAA Advisory Circulars & Grant Assurances

Thank you,

Allison Lia
Airport Engineer
Frederick Douglass Greater Rochester International Airport (ROC)

# AIP Grant Application Checklist

**AIRPORT NAME:** **Frederick Douglass Greater Rochester International Airport (ROC)**          **DATE:** **March 25, 2025**

**SYSTEM FOR AWARD MANAGEMENT (SAM) CAGE CODE #:** __69UP1__

**SYSTEM FOR AWARD MANAGEMENT (SAM) EXPIRATION DATE:** __October 1, 2025__

| Ref. | | Yes | No | N/A | Comments Attached |
|---|---|---|---|---|---|
| | **ITEMS REQUIRED TO COMPLETE APPLICATION REVIEW:** | | | | |
| 1. | Standard Form 424 *(signed)* | X | | | |
| 2. | Project Cost Breakdown *(attached)* | X | | | |
| 3. | Project Sketch *(at the request of the ADO)* | X | | | |
| 4. | Project Narrative *(attached or within Form 5100-100 Part IV)* | X | | | |
| 5. | Form 5100-100 (parts II – IV) *(airport development grants)* | X | | | |
| 6. | Bid Tabulations/Negotiated Amounts *(attached or previously submitted to the ADO)* | | | X | |
| 7. | Exhibit A *(attached or previously submitted to the ADO)* | X | | | On-File |
| 8. | Title Certificate or Long-Term Lease Agreement *(at the request of the ADO)* | | | X | |

OMB Number: 4040-0004
Expiration Date: 11/30/2025

## Application for Federal Assistance SF-424

| *1. Type of Submission: | *2. Type of Application | * If Revision, select appropriate letter(s): |
|---|---|---|
| ☐ Preapplication | ☒ New | |
| ☒ Application | ☐ Continuation | * Other (Specify) |
| ☐ Changed/Corrected Application | ☐ Revision | |

| *3. Date Received: | 4. Applicant Identifier: |
|---|---|
| 03/25/2025 | ROC |

| 5a. Federal Entity Identifier: | *5b. Federal Award Identifier: |
|---|---|
| 36-0102 | FY-2025 |

### State Use Only:

| 6. Date Received by State: | 7. **State** Application Identifier: |
|---|---|

### 8. APPLICANT INFORMATION:

*a. Legal Name: Monroe County, NY Aviation Department

| *b. Employer/Taxpayer Identification Number (EIN/TIN): | *c. UEI: |
|---|---|
| 16-60002563 | DYHNLRKCH117 |

**d. Address:**

| | |
|---|---|
| *Street 1: | 1200 Brooks Avenue |
| Street 2: | |
| *City: | Rochester |
| County/Parish: | Monroe County |
| *State: | NY |
| *Province: | |
| *Country: | USA: United States |
| *Zip / Postal Code | 14624-0000 |

**e. Organizational Unit:**

| Department Name: | Division Name: |
|---|---|

**f. Name and contact information of person to be contacted on matters involving this application:**

| Prefix: | Ms. | *First Name: | Allison |
|---|---|---|---|
| Middle Name: | | | |
| *Last Name: | Lia | | |
| Suffix: | | | |

Title: Airport Engineer

Organizational Affiliation:
Frederick Douglass Greater Rochester International Airport (ROC)

| *Telephone Number: (585) 753-7109 | Fax Number: |
|---|---|

*Email: allisonlia@monroecounty.gov

**Application for Federal Assistance SF-424**

**\*9. Type of Applicant 1: Select Applicant Type:**

  B: County Government

Type of Applicant 2:  Select Applicant Type:

  Pick an applicant type

Type of Applicant 3:  Select  Applicant Type:

  Pick an applicant type

\*Other (Specify)

---

**\*10. Name of Federal Agency:**

  Federal Aviation Administration

---

**11. Catalog of Federal Domestic Assistance Number:**

  20.106

CFDA Title:

  Airport Improvement Program

---

**\*12.  Funding Opportunity Number:**

  -

\*Title:

  -

---

**13. Competition Identification Number:**

  -

Title:

  -

---

**14. Areas Affected by Project (Cities, Counties, States, etc.):**

---

**\*15. Descriptive Title of Applicant's Project:**

  Runway 4-22 Connector Taxiway Fillets (Design)

  Exhibit A: On-File with FAA [10/29/20]

---

**Attach supporting documents as specified in agency instructions.**

**Application for Federal Assistance SF-424**

**16. Congressional Districts Of:**

*a. Applicant: NY-025                              *b. Program/Project:  NY-025

Attach an additional list of Program/Project Congressional Districts if needed.

**17.  Proposed Project:**

*a. Start Date:  02/01/2024                        *b. End Date:  09/01/2026

**18. Estimated Funding ($):**

| | |
|---|---:|
| *a.  Federal | $ 360,180 |
| *b.  Applicant | $ 20,010 |
| *c.  State | $ 20,010 |
| *d.  Local | $ 0 |
| *e.  Other | $ 0 |
| *f.  Program Income | $ 0 |
| *g.  TOTAL | $ 400,200 |

**\*19.  Is Application Subject to Review By State Under Executive Order 12372 Process?**

☐ a. This application was made available to the State under the Executive Order 12372 Process for review on _____ .

☐ b. Program is subject to E.O. 12372 but has not been selected by the State for review.

☒ c. Program is not covered by E.O. 12372.

**\*20.  Is the Applicant Delinquent On Any Federal Debt?**
☐ Yes  ☒ No

**If "Yes", explain:**

21. *By signing this application, I certify (1) to the statements contained in the list of certifications** and (2) that the statements herein are true, complete and accurate to the best of my knowledge.  I also provide the required assurances** and agree to comply with any resulting terms if I accept an award.  I am aware that any false, fictitious, or fraudulent statements or claims may subject me to criminal, civil, or administrative penalties. (U. S. Code, Title 218, Section 1001)

☒ ** I AGREE

** The list of certifications and assurances, or an internet site where you may obtain this list, is contained in the announcement or agency specific instructions.

**Authorized Representative:**

| | |
|---|---|
| Prefix: | *First Name:  Allison |
| Middle Name: | |
| *Last Name:  Lia | |
| Suffix: | |

*Title: Airport Engineer

| *Telephone Number: (585) 753-7109 | Fax Number: |
|---|---|

* Email: allisonlia@monroecounty.gov

| *Signature of Authorized Representative: | *Date Signed:  03/25/2025 |
|---|---|



U.S. Department of Transportation
**Federal Aviation Administration**

OMB CONTROL NUMBER: 2120-0569
EXPIRATION DATE: 12/31/2026

## Application for Federal Assistance (Development and Equipment Projects)

## PART II – PROJECT APPROVAL INFORMATION

| Part II - SECTION A |
|---|

The term "Sponsor" refers to the applicant name provided in box 8 of the associated SF-424 form.

**Item 1.**
Does Sponsor maintain an active registration in the System for Award Management (www.SAM.gov)?
☒ Yes  ☐ No

**Item 2.**
Can Sponsor commence the work identified in the application in the fiscal year the grant is made or within six months after the grant is made, whichever is later?
☒ Yes  ☐ No  ☐ N/A

**Item 3.**
Are there any foreseeable events that would delay completion of the project? If yes, provide attachment to this form that lists the events.
☐ Yes  ☒ No  ☐ N/A

**Item 4.**
Will the project(s) covered by this request have impacts or effects on the environment that require mitigating measures? If yes, attach a summary listing of mitigating measures to this application and identify the name and date of the environmental document(s).
☐ Yes  ☒ No  ☐ N/A

**Item 5.**
Is the project covered by this request included in an approved Passenger Facility Charge (PFC) application or other Federal assistance program? If yes, please identify other funding sources by checking all applicable boxes.
☐ Yes  ☒ No  ☐ N/A

☐ The project is included in an *approved* PFC application.

    If included in an approved PFC application,

    does the application *only* address AIP matching share?  ☐ Yes  ☐ No

☐ The project is included in another Federal Assistance program. Its CFDA number is below.

**Item 6.**
Will the requested Federal assistance include Sponsor indirect costs as described in 2 CFR Appendix VII to Part 200, States and Local Government and Indian Tribe Indirect Cost Proposals?
☐ Yes  ☒ No  ☐ N/A

If the request for Federal assistance includes a claim for allowable indirect costs, select the applicable indirect cost rate the Sponsor proposes to apply:

    ☐ De Minimis rate of 10% as permitted by 2 CFR § 200.414.

    ☐ Negotiated Rate equal to _____ % as approved by _____ (the Cognizant Agency)
    on _____ (Date) (2 CFR part 200, appendix VII).

*Note: Refer to the instructions for limitations of application associated with claiming Sponsor indirect costs.*

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| PART II - SECTION B |
|---|
| **Certification Regarding Lobbying** |

The declarations made on this page are under the signature of the authorized representative as identified in box 21 of form SF-424, to which this form is attached. The term "Sponsor" refers to the applicant name provided in box 8 of the associated SF-424 form.

The Authorized Representative certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the Sponsor, to any person for influencing or attempting to influence an officer or employee of an agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan, or cooperative agreement, the Authorized Representative shall complete and submit Standard Form-LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Authorized Representative shall require that the language of this certification be included in the award documents for all sub-awards at all tiers (including subcontracts, subgrants, and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by section 1352, title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| PART II – SECTION C |
|---|

The Sponsor hereby represents and certifies as follows:

**1. Compatible Land Use** – The Sponsor has taken the following actions to assure compatible usage of land adjacent to or in the vicinity of the airport:

The project is contained within airport-owned property.

**2. Defaults** – The Sponsor is not in default on any obligation to the United States or any agency of the United States Government relative to the development, operation, or maintenance of any airport, except as stated herewith:

The Sponsor is not in default on any obligation to the U.S. or any agency of the U.S. Government relative to the development, operation, or maintenance of any airport.

**3. Possible Disabilities** – There are no facts or circumstances (including the existence of effective or proposed leases, use agreements or other legal instruments affecting use of the Airport or the existence of pending litigation or other legal proceedings) which in reasonable probability might make it impossible for the Sponsor to carry out and complete the Project or carry out the provisions of the Grant Assurances, either by limiting its legal or financial ability or otherwise, except as follows:

The Sponsor has no facts/circumstances which would prevent completion of the project or compliance with Assurances

**4. Consistency with Local Plans** – The project is reasonably consistent with plans existing at the time of submission of this application) of public agencies that are authorized by the State in which the project is located to plan for the development of the area surrounding the airport.

The project is consistent with plans of public agencies authorized by the State of New York.

**5. Consideration of Local Interest** – It has given fair consideration to the interest of communities in or near where the project may be located.

The Project has given fair consideration of the interest of the communities in or near the project area.

**6. Consultation with Users** – In making a decision to undertake an airport development project under Title 49, United States Code, it has consulted with airport users that will potentially be affected by the project (§ 47105(a)(2)).

Yes, consultation has occurred.

**7. Public Hearings** – In projects involving the location of an airport, an airport runway or a major runway extension, it has afforded the opportunity for public hearings for the purpose of considering the economic, social, and environmental effects of the airport or runway location and its consistency with goals and objectives of such planning as has been carried out by the community and it shall, when requested by the Secretary, submit a copy of the transcript of such hearings to the Secretary. Further, for such projects, it has on its management board either voting representation from the communities where the project is located or has advised the communities that they have the right to petition the Secretary concerning a proposed project.

N/A

**8. Air and Water Quality Standards** – In projects involving airport location, a major runway extension, or runway location it will provide for the Governor of the state in which the project is located to certify in writing to the Secretary that the project will be located, designed, constructed, and operated so as to comply with applicable and air and water quality standards. In any case where such standards have not been approved and where applicable air and water quality standards have been promulgated by the Administrator of the Environmental Protection Agency, certification shall be obtained from such Administrator. Notice of certification or refusal to certify shall be provided within sixty days after the project application has been received by the Secretary.

N/A

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| PART II – SECTION C (Continued) |
|---|

9. **Exclusive Rights** – There is no grant of an exclusive right for the conduct of any aeronautical activity at any airport owned or controlled by the Sponsor except as follows:

There is no grant of an exclusive right for the conduct of any aeronautical activity.

10. **Land** – (a) The sponsor holds the following property interest in the following areas of land, which are to be developed or used as part of or in connection with the Airport subject to the following exceptions, encumbrances, and adverse interests, all of which areas are identified on the aforementioned property map designated as Exhibit "A". [1]

N/A

The Sponsor further certifies that the above is based on a title examination by a qualified attorney or title company and that such attorney or title company has determined that the Sponsor holds the above property interests.

(b) The Sponsor will acquire within a reasonable time, but in any event prior to the start of any construction work under the Project, the following property interest in the following areas of land on which such construction work is to be performed, all of which areas are identified on the aforementioned property map designated as Exhibit "A". [1]

N/A

(c) The Sponsor will acquire within a reasonable time, and if feasible prior to the completion of all construction work under the Project, the following property interest in the following areas of land which are to be developed or used as part of or in connection with the Airport as it will be upon completion of the Project, all of which areas are identified on the aforementioned property map designated as Exhibit "A". [1]

N/A

---

[1] State the character of property interest in each area and list and identify for each all exceptions, encumbrances, and adverse interests of every kind and nature, including liens, easements, leases, etc. The separate areas of land need only be identified here by the area numbers shown on the property map.

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

## PART III – BUDGET INFORMATION – CONSTRUCTION

| SECTION A – GENERAL | |
|---|---|
| 1. Assistance Listing Number: | 20.106 |
| 2. Functional or Other Breakout: | AIP |

| SECTION B – CALCULATION OF FEDERAL GRANT | | | |
|---|---|---|---|
| Cost Classification | Latest Approved Amount (Use only for revisions) | Adjustment + or (-) Amount (Use only for revisions) | Total Amount Required |
| 1.  Administration expense | | | $ 7,200 |
| 2.  Preliminary expense | | | |
| 3.  Land, structures, right-of-way | | | |
| 4.  Architectural engineering basic fees | | | 393,000 |
| 5.  Other Architectural engineering fees | | | |
| 6.  Project inspection fees | | | |
| 7.  Land development | | | |
| 8.  Relocation Expenses | | | |
| 9.  Relocation payments to Individuals and Businesses | | | |
| 10. Demolition and removal | | | |
| 11. Construction and project improvement | | | |
| 12. Equipment | | | |
| 13. Miscellaneous | | | |
| 14. **Subtotal** (Lines 1 through 13) | | | $ 400,200 |
| 15. Estimated Income (if applicable) | | | |
| 16. Net Project Amount (Line 14 minus 15) | | | |
| 17. **Less**: Ineligible Exclusions (Section C, line 23 g.) | | | |
| 18. **Subtotal** (Lines 16 through 17) | | | $ 400,200 |
| 19. Federal Share requested of Line 18 | | | 360,180 |
| 20. Grantee share | | | 20,010 |
| 21. Other shares | | | 20,010 |
| 22. **TOTAL PROJECT** (Lines 19, 20 & 21) | | | $ 400,200 |

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| SECTION C – EXCLUSIONS | |
| --- | --- |
| **23. Classification (Description of non-participating work)** | **Amount Ineligible for Participation** |
| a. | |
| b. | |
| c. | |
| d. | |
| e. | |
| f. | |
| g.                                                                  **Total** | |

| SECTION D – PROPOSED METHOD OF FINANCING NON-FEDERAL SHARE | |
| --- | --- |
| **24. Grantee Share – Fund Categories** | **Amount** |
| a. Securities | |
| b. Mortgages | |
| c. Appropriations (by Applicant) | 20,010 |
| d. Bonds | |
| e. Tax Levies | |
| f. Non-Cash | |
| g. Other (Explain): | |
| h. **TOTAL** - Grantee share | $ 20,010 |
| **25. Other Shares** | **Amount** |
| a. State | 20,010 |
| b. Other | |
| c. **TOTAL** - Other Shares | $ 20,010 |
| **26. TOTAL NON-FEDERAL FINANCING** | $ 40,020 |

| SECTION E – REMARKS |
| --- |
| (Attach sheets if additional space is required) |
| Exhibit A: On-File with FAA [10/29/20 ]

DBE Requirement/Goal = 6.1% |

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

## PART IV – PROGRAM NARRATIVE
*(Suggested Format)*

| | |
|---|---|
| **PROJECT:** Runway 4-22 Connector Taxiway Fillets (Design) | |
| **AIRPORT:** Frederick Douglass Greater Rochester International Airport (ROC) | |

**1. Objective:**

In 2018, ROC submitted a MOS request for the connector taxiway tie-in fillets to Runway 4-22, which was granted for 5-years. This program will include addressing the MOS and updating Runway 4-22 Connector Taxiways A, A1, E, and C fillets to meet current FAA design criteria.

**2. Benefits Anticipated:**

Address the MOS and update Runway 4-22 Connector Taxiways A, A1, E, and C fillets to meet current FAA design criteria.
Updated runway edge lighting components and airfield pavement markings to accommodate the taxiway fillet configurations.

**3. Approach:** (See approved Scope of Work in Final Application)

Scope of Work Attached

**4. Geographic Location:**

Frederick Douglass Greater Rochester International Airport (ROC)
43° 7' 8.917" N / 77° 40' 18.728" W

**5. If Applicable, Provide Additional Information:**

-

**6. Sponsor's Representative:** (include address & telephone number)

Allison Lia
(585)753-7109
allisonlia@monroecounty.gov

## Frederick Douglass Greater Rochester International Airport (ROC)
### Runway 4-22 Connector Taxiway Fillets (Design)

### Project Cost Breakdown

| | |
|---|---:|
| Administration (Includes IFE) | $7,200 |
| Engineering (Design Fee) | $338,000 |
| Engineering (Subconsultant Fees) | $55,000 |
| **TOTALS** | **400,200** |
| Federal Share | $360,180 |
| Non-Federal Share | $40,020 |
| State | $20,010 |
| Sponsor | $20,010 |

**Frederick Douglass Greater Rochester International Airport (ROC)**
**Runway 4-22 Connector Taxiway Fillets**
**Project Cost Breakdown (Design & Estimated Construction)**

| Brief Item Description | Work Codes | % Project Share | Estimated Construction | This Application Engineering (Design Only) | IFE | Admin. Cost | Total Cost | Federal Share | Non Federal |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 90% | 10% |
| T/W A (Fillets at intersections A1 & C) | RE TW IM | 46.6% | $ 559,200.00 | $ 183,138.00 | $ 559.20 | $ 2,796.00 | $ 745,693.20 | $ 671,123.88 | $ 74,569.32 |
| Rehabilitate Taxiway A1 (A1 Fillets) | RE TW IM | 39.8% | $ 477,600.00 | $ 156,414.00 | $ 477.60 | $ 2,388.00 | $ 636,879.60 | $ 573,191.64 | $ 63,687.96 |
| Rehabilitate Taxiway E (E E/W side Fillets) | RE TW IM | 8.9% | $ 106,800.00 | $ 34,977.00 | $ 106.80 | $ 534.00 | $ 142,417.80 | $ 128,176.02 | $ 14,241.78 |
| Rehabilitate Taxiway C (C Eastside Fillet) | RE TW IM | 4.7% | $ 56,400.00 | $ 18,471.00 | $ 56.40 | $ 282.00 | $ 75,209.40 | $ 67,688.46 | $ 7,520.94 |
| | | | | | | | | | |
| Totals | | 100% | $ 1,200,000.00 | $ 393,000.00 | $1,200.00 | $ 6,000.00 | $ 1,600,200.00 | $ 1,440,180.00 | $ 160,020.00 |

↑ ↑ ↑ ↑

↑ ↑ ↑ ↑

↑ ↑ ↑ ↑

Total Construction costs should be divided out into each Item Description line

Total Eng /CACO costs should be divided out into each Item Description line .

Total IFE costs should be divided out into each Item Description line .

Total Admin costs should be divided out into each Item Description line .

**Description:** Rehabilitate approximately 700' of existing Taxiway A [reconstruct fillet on Taxiway A at intersection with Taxiway A1
(approximately 300' in length)] [reconstruct fillet on Taxiway A at intersection with Taxiway C (approximately 400' in length)].
Rehabilitate approximately 280' of existing Taxiway A1(reconstruct north & south side fillets of taxiway A1 between Taxiway A
and Runway 4/22).  Rehabilitate approximately 290' of existing Taxiway E [(reconstruct approximately 80' of fillet east side of
Runway 4/22) (reconstruct approximately 210' of fillet west of Runway 4/22)]. Rehabilitate approximately 100' of existing Taxiway C
(reconstruct approximately 100' of fillet on Taxiway C between Taxiway A and Runway 4/22) – Design

# EXHIBIT C

3-36-0102-133-2025

 **U.S. Department**
**of Transportation**
**Federal Aviation**
**Administration**

**Airports Division**
**Eastern Region**
**New York**

**New York Airports**
**District Office:**
**159-30 Rockaway**
**Blvd, Rm 111**
**Jamaica, NY 11434-**
**4848**

Mr. Adam Bello
County Executive
Monroe County
1200 Brooks Avenue
Rochester, NY 14624

Dear Mr. Bello:

The Grant Offer for Infrastructure Investment and Jobs Act (IIJA)  Airport Infrastructure Grant (AIG) Project No. 3-36-0102-133-2025 at Frederick Douglass/Greater Rochester International Airport is attached for execution. This letter outlines the steps you must take to properly enter into this agreement and provides other useful information. Please read the conditions, special conditions, and assurances that comprise the grant offer carefully.

**You may not make any modification to the text, terms or conditions of the grant offer.**

***Steps You Must Take to Enter Into Agreement.***

To properly enter into this agreement, you must do the following:

1. The governing body must give authority to execute the grant to the individual(s) signing the grant, i.e., the person signing the document must be the sponsor's authorized representative(s) (hereinafter "authorized representative").

2. The authorized representative must execute the grant by adding their electronic signature to the appropriate certificate at the end of the agreement.

3. Once the authorized representative has electronically signed the grant, the sponsor's attorney(s) will automatically receive an email notification.

4. On the **same day or after** the authorized representative has signed the grant, the sponsor's attorney(s) will add their electronic signature to the appropriate certificate at the end of the agreement.

5. If there are co-sponsors, the authorized representative(s) and sponsor's attorney(s) must follow the above procedures to fully execute the grant and finalize the process.  Signatures must be obtained and finalized no later than **August 28, 2025**.

6. The fully executed grant will then be automatically sent to all parties as an email attachment.

***Payment.*** Subject to the requirements in 2 CFR § 200.305 (Federal Payment), each payment request for reimbursement under this grant must be made electronically via the Delphi eInvoicing System. Please see the attached Grant Agreement for more information regarding the use of this System.

3-36-0102-133-2025

**Project Timing.** The terms and conditions of this agreement require you to complete the project without undue delay and no later than the Period of Performance end date (1,460 days from the grant execution date). We will be monitoring your progress to ensure proper stewardship of these Federal funds. <u>We expect you to submit payment requests for reimbursement of allowable incurred project expenses consistent with project progress.</u> Your grant may be placed in "inactive" status if you do not make draws on a regular basis, which will affect your ability to receive future grant offers. Costs incurred after the Period of Performance ends are generally not allowable and will be rejected unless authorized by the FAA in advance.

**Reporting.** Until the grant is completed and closed, you are responsible for submitting formal reports as follows:

> ➢ For all grants, you must submit by December 31st of each year this grant is open:
>   1. A signed/dated SF-270 (Request for Advance or Reimbursement for non-construction projects) or SF-271 or equivalent (Outlay Report and Request for Reimbursement for Construction Programs), and
>
>   2. An SF-425 (Federal Financial Report).
>
> ➢ For non-construction projects, you must submit <u>FAA Form 5100-140, Performance Report</u> within 30 days of the end of the Federal fiscal year.
>
> ➢ For construction projects, you must submit <u>FAA Form 5370-1, Construction Progress and Inspection Report,</u> within 30 days of the end of each Federal fiscal quarter.

**Audit Requirements.** As a condition of receiving Federal assistance under this award, you must comply with audit requirements as established under 2 CFR Part 200. Subpart F requires non-Federal entities that expend <u>$1,000,000 or more in Federal awards</u> to conduct a single or program specific audit for that year. Note that this includes Federal expenditures made under other Federal-assistance programs. Please take appropriate and necessary action to ensure your organization will comply with applicable audit requirements and standards.

**Closeout.** Once the project(s) is completed and all costs are determined, we ask that you work with your FAA contact indicated below to close the project without delay and submit the necessary final closeout documentation as required by your Region/Airports District Office.

**FAA Contact Information.** Glen Conacchio, (718) 995-5761, glen.l.conacchio@faa.gov is the assigned program manager for this grant and is readily available to assist you and your designated representative with the requirements stated herein.

We sincerely value your cooperation in these efforts and look forward to working with you to complete this important project.

Sincerely,

Ms. Evelyn Martinez
Manager, New York Airports District Office

2

3-36-0102-133-2025



**U.S. Department
of Transportation
Federal Aviation
Administration**

## FY 2025 AIRPORT INFRASTRUCTURE GRANT
## GRANT AGREEMENT
### Part I - Offer

Federal Award Offer Date

Airport/Planning Area              Frederick Douglass/Greater Rochester International Airport

Airport Infrastructure Grant       3-36-0102-133-2025
Number

Unique Entity Identifier           DYHNLRKCH117

TO:    County of Monroe
       (herein called the "Sponsor") (For Co-Sponsors, list all Co-Sponsor names. The word "Sponsor" in this Grant Agreement also
       applies to a Co-Sponsor.)

FROM:  **The United States of America** (acting through the Federal Aviation Administration, herein
       called the "FAA")

**WHEREAS**, the Sponsor has submitted to the FAA a Project Application dated February 28, 2025, for a
grant of Federal funds for a project at or associated with the Frederick Douglass/Greater Rochester
International Airport, which is included as part of this Grant Agreement; and

**WHEREAS**, the FAA has approved a project for the Frederick Douglass/Greater Rochester International
Airport (herein called the "Project") consisting of the following:

    Reconstruct the existing terminal building including six vestibule doors and three elevators -
    Phase 1 Design and Construction

which is more fully described in the Project Application.

**NOW THEREFORE**, Pursuant to and for the purpose of carrying out the Infrastructure Investment and
Jobs Act(IIJA)  (Public Law (P.L.) 117-58) of 2021; FAA Reauthorization Act of 2024 (P.L. 118-63); and the
representations contained in the Project Application; and in consideration of (a) the Sponsor's adoption

3

3-36-0102-133-2025

and ratification of the attached Grant Assurances dated April 2025, interpreted and applied consistent with the FAA Reauthorization Act of 2024; (b) the Sponsor's acceptance of this Offer; and (c) the benefits to accrue to the United States and the public from the accomplishment of the Project and compliance with the Grant Assurance and conditions as herein provided;

**THE FEDERAL AVIATION ADMINISTRATION, FOR AND ON BEHALF OF THE UNITED STATES, HEREBY OFFERS AND AGREES to pay (90) % of the allowable costs incurred accomplishing the Project as the United States share of the Project.**

**Assistance Listings Number (Formerly CFDA Number): 20.106**

**This Offer is made on and SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS:**

## CONDITIONS

1. **Maximum Obligation.** The maximum obligation of the United States payable under this Offer is $4,750,433.

   The following amounts represent a breakdown of the maximum obligation for the purpose of establishing allowable amounts for any future grant amendment, which may increase the foregoing maximum obligation of the United States under the provisions of 49 U.S.C. § 47108(b):
   $0 for planning
   $4,750,433 for airport development or noise program implementation; and,
   $0 for land acquisition.

2. **Grant Performance.** This Grant Agreement is subject to the following Federal award requirements:

   a. Period of Performance:

      1. Shall start on the date the Sponsor formally accepts this Agreement and is the date signed by the last Sponsor signatory to the Agreement. The end date of the Period of Performance is 4 years (1,460 calendar days) from the date of acceptance. The Period of Performance end date shall not affect, relieve, or reduce Sponsor obligations and assurances that extend beyond the closeout of this Grant Agreement.

      2. Means the total estimated time interval between the start of an initial Federal award and the planned end date, which may include one or more funded portions or budget periods (2 Code of Federal Regulations (CFR) § 200.1) except as noted in 49 U.S.C § 47142(b).

   b. Budget Period:

      1. For this Grant is 4 years (1,460 calendar days) and follows the same start and end date as the Period of Performance provided in paragraph 2(a)(1). Pursuant to 2 CFR § 200.403(h), the Sponsor may charge to the Grant only allowable costs incurred during the Budget Period and as stated in 49 U.S.C § 47142(b). Eligible project-related costs incurred on or after November 15, 2021 that comply with all Federal funding procurement requirements and FAA standards are allowable costs.

      2. Means the time interval from the start date of a funded portion of an award to the end date of that funded portion during which Sponsors are authorized to expend the funds awarded, including any funds carried forward or other revisions pursuant to 2 CFR § 200.308.

   c. Close Out and Termination

4

3-36-0102-133-2025

Unless the FAA authorizes a written extension, the Sponsor must submit all Grant closeout documentation and liquidate (pay-off) all obligations incurred under this award no later than 120 calendar days after the end date of the Period of Performance. If the Sponsor does not submit all required closeout documentation within this time period, the FAA will proceed to close out the grant within one year of the Period of Performance end date with the information available at the end of 120 days (2 CFR § 200.344). The FAA may terminate this agreement and all of its obligations under this agreement if any of the following occurs:

(a) (1) The Sponsor fails to obtain or provide any Sponsor grant contribution as required by the agreement;

(2) A completion date for the Project or a component of the Project is listed in the agreement and the Recipient fails to meet that milestone by six months after the date listed in the agreement;

(3) The Sponsor fails to comply with the terms and conditions of this agreement, including a material failure to comply with the Project Schedule even if it is beyond the reasonable control of the Sponsor;

(4) Circumstances cause changes to the Project that the FAA determines are inconsistent with the FAA's basis for selecting the Project to receive a grant; or

(5) The FAA determines that termination of this agreement is in the public interest.

(b) In terminating this agreement under this section, the FAA may elect to consider only the interests of the FAA.

(c) The Sponsor may request that the FAA terminate the agreement under this section.

3. **Ineligible or Unallowable Costs.** In accordance with P.L. 117-58, Division J, Title VIII, and 49 U.S.C. § 47110, the Sponsor is prohibited from including any costs in the grant funded portions of the project that the FAA has determined to be ineligible or unallowable, including costs incurred to carry out airport development implementing policies and initiatives repealed by Executive Order 14148, provided such costs are not otherwise permitted by statute.

4. **Indirect Costs - Sponsor.** The Sponsor may charge indirect costs under this award by applying the indirect cost rate identified in the project application as accepted by the FAA, to allowable costs for Sponsor direct salaries and wages.

5. **Determining the Final Federal Share of Costs.** The United States' share of allowable project costs will be made in accordance with 49 U.S.C. § 47109, the regulations, policies, and procedures of the Secretary of Transportation ("Secretary"), and any superseding legislation. Final determination of the United States' share will be based upon the final audit of the total amount of allowable project costs and settlement will be made for any upward or downward adjustments to the Federal share of costs.

6. **Completing the Project Without Delay and in Conformance with Requirements.** The Sponsor must carry out and complete the project without undue delays and in accordance with this Agreement, IIJA (P.L. 117-58), and the regulations, policies, and procedures of the Secretary. Per 2 CFR

3-36-0102-133-2025

§ 200.308, the Sponsor agrees to report and request prior FAA approval for any disengagement from performing the project that exceeds three months or a 25 percent reduction in time devoted to the project. The report must include a reason for the project stoppage. The Sponsor also agrees to comply with the grant assurances, which are part of this Agreement.

7. **Amendments or Withdrawals before Grant Acceptance.** The FAA reserves the right to amend or withdraw this offer at any time prior to its acceptance by the Sponsor.

8. **Offer Expiration Date.** This offer will expire and the United States will not be obligated to pay any part of the costs of the project unless this offer has been accepted by the Sponsor on or before August 28, 2025, or such subsequent date as may be prescribed in writing by the FAA.

9. **Improper Use of Federal Funds and Mandatory Disclosure.**

   a. The Sponsor must take all steps, including litigation if necessary, to recover Federal funds spent fraudulently, wastefully, or in violation of Federal antitrust statutes, or misused in any other manner for any project upon which Federal funds have been expended. For the purposes of this Grant Agreement, the term "Federal funds" means funds however used or dispersed by the Sponsor, that were originally paid pursuant to this or any other Federal grant agreement. The Sponsor must obtain the approval of the Secretary as to any determination of the amount of the Federal share of such funds. The Sponsor must return the recovered Federal share, including funds recovered by settlement, order, or judgment, to the Secretary. The Sponsor must furnish to the Secretary, upon request, all documents and records pertaining to the determination of the amount of the Federal share or to any settlement, litigation, negotiation, or other efforts taken to recover such funds. All settlements or other final positions of the Sponsor, in court or otherwise, involving the recovery of such Federal share require advance approval by the Secretary.

   b. The Sponsor, a recipient, and a subrecipient under this Federal grant must promptly comply with the mandatory disclosure requirements as established under 2 CFR § 200.113, including reporting requirements related to recipient integrity and performance in accordance with Appendix XII to 2 CFR Part 200.

10. **United States Not Liable for Damage or Injury.** The United States is not responsible or liable for damage to property or injury to persons which may arise from, or be incident to, compliance with this Grant Agreement.

11. **System for Award Management (SAM) Registration and Unique Entity Identifier (UEI).**

    a. Requirement for System for Award Management (SAM): Unless the Sponsor is exempted from this requirement under 2 CFR § 25.110, the Sponsor must maintain the currency of its information in the SAM until the Sponsor submits the final financial report required under this Grant, or receives the final payment, whichever is later. This requires that the Sponsor review and update the information at least annually after the initial registration and more frequently if required by changes in information or another award term. Additional information about registration procedures may be found at the SAM website (currently at http://www.sam.gov).

    b. Unique entity identifier (UEI) means a 12-character alpha-numeric value used to identify a specific commercial, nonprofit or governmental entity. A UEI may be obtained from SAM.gov at https://sam.gov/content/entity-registration.

6

3-36-0102-133-2025

12. **Electronic Grant Payment(s).** Unless otherwise directed by the FAA, the Sponsor must make each payment request under this Agreement electronically via the Delphi eInvoicing System for Department of Transportation (DOT) Financial Assistance Awardees.

13. **Informal Letter Amendment of IIJA Projects.** If, during the life of the project, the FAA determines that the maximum grant obligation of the United States exceeds the expected needs of the Sponsor by $25,000 or five percent (5%), whichever is greater, the FAA can issue a letter amendment to the Sponsor unilaterally reducing the maximum obligation.

The FAA can, subject to the availability of Federal funds, also issue a letter to the Sponsor increasing the maximum obligation if there is an overrun in the total actual eligible and allowable project costs to cover the amount of the overrun provided it will not exceed the statutory limitations for grant amendments. The FAA's authority to increase the maximum obligation does not apply to the "planning" component of Condition No. 1, Maximum Obligation.

The FAA can also issue an informal letter amendment that modifies the grant description to correct administrative errors or to delete work items if the FAA finds it advantageous and in the best interests of the United States.

An informal letter amendment has the same force and effect as a formal grant amendment.

14. **Environmental Standards.** The Sponsor is required to comply with all applicable environmental standards, as further defined in the Grant Assurances, for all projects in this grant. If the Sponsor fails to comply with this requirement, the FAA may suspend, cancel, or terminate this Grant Agreement.

15. **Financial Reporting and Payment Requirements.** The Sponsor will comply with all Federal financial reporting requirements and payment requirements, including submittal of timely and accurate reports.

16. **Buy American.** Unless otherwise approved in advance by the FAA, in accordance with 49 U.S.C. § 50101, the Sponsor will not acquire or permit any contractor or subcontractor to acquire any steel or manufactured goods produced outside the United States to be used for any project for which funds are provided under this Grant. The Sponsor will include a provision implementing Buy American in every contract and subcontract awarded under this Grant.

17. **Build America, Buy American.** The Sponsor must comply with the requirements under the Build America, Buy America Act (P.L. 117-58).

18. **Maximum Obligation Increase.** In accordance with 49 U.S.C. § 47108(b), as amended, the maximum obligation of the United States, as stated in Condition No. 1, Maximum Obligation, of this Grant:

   a. May not be increased for a planning project;

   b. May be increased by not more than 15 percent for development projects, if funds are available;

   c. May be increased by not more than the greater of the following for a land project, if funds are available:

      1. 15 percent; or

      2. 25 percent of the total increase in allowable project costs attributable to acquiring an interest in the land.

3-36-0102-133-2025

If the Sponsor requests an increase, any eligible increase in funding will be subject to the United States Government share as provided in IIJA (P.L. 117-58), or other superseding legislation if applicable, for the fiscal year appropriation with which the increase is funded. The FAA is not responsible for the same Federal share provided herein for any amount increased over the initial grant amount. The FAA may adjust the Federal share as applicable through an informal letter of amendment.

19. **Audits for Sponsors.**

    PUBLIC SPONSORS. The Sponsor must provide for a Single Audit or program-specific audit in accordance with 2 CFR Part 200. The Sponsor must submit the audit reporting package to the Federal Audit Clearinghouse on the Federal Audit Clearinghouse's Internet Data Entry System at http://harvester.census.gov/facweb/. Upon request of the FAA, the Sponsor shall provide one copy of the completed audit to the FAA. Sponsors that expend less than $1,000,000 in Federal awards and are exempt from Federal audit requirements must make records available for review or audit by the appropriate Federal agency officials, State, and Government Accountability Office. The FAA and other appropriate Federal agencies may request additional information to meet all Federal audit requirements.

20. **Suspension or Debarment.** When entering into a "covered transaction" as defined by 2 CFR § 180.200, the Sponsor must:

    a. Verify the non-Federal entity is eligible to participate in this Federal program by:

        1. Checking the System for Award Management (SAM.gov) exclusions to determine if the non-Federal entity is excluded or disqualified; or

        2. Collecting a certification statement from the non-Federal entity attesting they are not excluded or disqualified from participating; or

        3. Adding a clause or condition to covered transactions attesting the individual or firm are not excluded or disqualified from participating.

    b. Require prime contractors to comply with 2 CFR § 180.330 when entering into lower-tier transactions with their contractors and sub-contractors.

    c. Immediately disclose in writing to the FAA whenever (1) the Sponsor learns it has entered into a covered transaction with an ineligible entity or (2) the Public Sponsor suspends or debars a contractor, person, or entity.

21. **Ban on Texting While Driving.**

    a. In accordance with Executive Order 13513, Federal Leadership on Reducing Text Messaging While Driving, October 1, 2009, and DOT Order 3902.10, Text Messaging While Driving, December 30, 2009, the Sponsor is encouraged to:

        1. Adopt and enforce workplace safety policies to decrease crashes caused by distracted drivers including policies to ban text messaging while driving when performing any work for, or on behalf of, the Federal government, including work relating to a grant or subgrant.

        2. Conduct workplace safety initiatives in a manner commensurate with the size of the business, such as:

            i. Establishment of new rules and programs or re-evaluation of existing programs to prohibit text messaging while driving; and

    ii.    Education, awareness, and other outreach to employees about the safety risks associated with texting while driving.

  b.  The Sponsor must insert the substance of this clause on banning texting while driving in all subgrants, contracts, and subcontracts funded with this Grant.

22. **Trafficking in Persons.**

    *1.*  *Posting of contact information.*

      a.  The Sponsor must post the contact information of the national human trafficking hotline (including options to reach out to the hotline such as through phone, text, or TTY) in all public airport restrooms.

    *2.*  *Provisions applicable to a recipient that is a private entity.*

      a.  Under this Grant, the recipient, its employees, subrecipients under this Grant, and subrecipients employees must not engage in:

        i.   Severe forms of trafficking in persons;

        ii.  The procurement of commercial sex act during the period of time that the grant or cooperative agreement is in effect;

        iii.  The use of forced labor in the performance of this grant; or any subaward; or

        iv.  Acts that directly support or advance trafficking in person, including the following acts;

          a)  Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;

          b)  Failing to provide return transportation of pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:

            1.  Exempted from the requirement to provide or pay for such return transportation by the federal department or agency providing or entering into the grant; or

            2.  The employee is a victim of human trafficking seeking victim services or legal redress in the country of employment or witness in a human trafficking enforcement action;

          c)  Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;

          d)  Charging recruited employees a placement or recruitment fee; or

          e)  Providing or arranging housing that fails to meet the host country's housing and safety standards.

      b.  The FAA, may unilaterally terminate this Grant, or take any remedial actions authorized by 22 U.S.C 7104b(c), without penalty, if any private entity under this Grant;

        i.   Is determined to have violated a prohibition in paragraph (2)(a) of this Grant;

      ii.  Has an employee that is determined to have violated a prohibition in paragraph (2)(a) of this Grant through conduct that is either:

         a)  Associated with performance under this Grant; or

         b)  Imputed to the recipient or subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR Part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by the FAA at 2 CFR Part 1200.

3. *Provision applicable to a recipient other than a private entity.*

    a.  The FAA may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C 7104b(c), without penalty, if subrecipient than is a private entity under this award;

      i.  Is determined to have violated a prohibition in paragraph (2)(a) of this Grant or

      ii.  Has an employee that is determined to have violated a prohibition in paragraph (2)(a) of this Grant through conduct that is either:

         a)  Associated with performance under this Grant; or

         b)  Imputed to the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR Part 180, "OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)," as implemented by our agency at 2 CFR Part 1200.

4. *Provisions applicable to any recipient.*

    a.  The recipient must inform the FAA and the DOT Inspector General, immediately of any information you receive from any source alleging a violation of a prohibition in paragraph (2)(a) of this Grant.

    b.  The FAA's right to unilaterally terminate this Grant as described in paragraph (2)(b) or (3)(a) of this Grant, implements the requirements of 22 U.S.C. chapter 78 and is addition to all other remedies for noncompliance that are available to the FAA under this Grant:

    c.  The recipient must include the requirements of paragraph (2)(a) of this Grant award term in any subaward it makes to a private entity.

    d.  If applicable, the recipient must also comply with the compliance plan and certification requirements in 2 CFR 175.105(b).

5. *Definitions.* For purposes of this Grant award, term:

    a.  "Employee" means either:

      i.  An individual employed by the recipient or a subrecipient who is engaged in the performance of the project or program under this Grant; or

      ii.  Another person engaged in the performance of the project or program under this Grant and not compensated by the recipient including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing or requirements.

    b.  "Private entity" means:

    i. Any entity, including for profit organizations, nonprofit organizations, institutions of higher education, and hospitals. The term does not include foreign public entities, Indian Tribes, local governments, or states as defined in 2 CFR 200.1.

    ii. The terms "severe forms of trafficking in persons," "commercial sex act," "sex trafficking," "Abuse or threatened abuse of law or legal process," "coercion," "debt bondage," and "involuntary servitude" have the meaning given at section 103 of the TVPA, as amended (22 U.S.C. 7102).

23. **IIJA Funded Work Included in a PFC Application.** Within 120 days of acceptance of this Grant Agreement, the Sponsor must submit to the FAA an amendment to any approved Passenger Facility Charge (PFC) application that contains an approved PFC project also covered under this Grant Agreement as described in the project application. The airport sponsor may not make any expenditure under this Grant Agreement until project work addressed under this Grant Agreement is removed from an approved PFC application by amendment.

24. **Exhibit "A" Property Map.** The Exhibit "A" Property Map dated June 21, 2021, is incorporated herein by reference or is submitted with the project application and made part of this Grant Agreement.

25. **Employee Protection from Reprisal.** In accordance with 2 CFR § 200.217 and 41 U.S.C. § 4701, an employee of a grantee, subgrantee contractor, recipient or subrecipient must not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (a)(2) of 41 U.S.C. 4712 information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant. The grantee, subgrantee, contractor, recipient, or subrecipient must inform their employees in writing of employee whistleblower rights and protections under 41 U.S.C. § 4712. See statutory requirements for whistleblower protections at 10 U.S.C. § 4701, 41 U.S.C. § 4712, 41 U.S.C. § 4304, and 10 U.S.C. § 4310.

26. **Prohibited Telecommunications and Video Surveillance Services and Equipment.** The Sponsor agrees to comply with mandatory standards and policies relating to use and procurement of certain telecommunications and video surveillance services or equipment in compliance with the National Defense Authorization Act [P.L. 115-232 § 889(f)] and 2 CFR § 200.216.

27. **Critical Infrastructure Security and Resilience.** The Sponsor acknowledges that it has considered and addressed physical and cybersecurity and resilience in its project planning, design, and oversight, as determined by the DOT and the Department of Homeland Security (DHS). For airports that do not have specific DOT or DHS cybersecurity requirements, the FAA encourages the voluntary adoption of the cybersecurity requirements from the Transportation Security Administration and Federal Security Director identified for security risk Category X airports.

28. **Title VI of the Civil Rights Act.** As a condition of a grant award, the Sponsor shall demonstrate that it complies with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d et seq) and implementing regulations (49 CFR part 21), the Airport and Airway Improvement Act of 1982 (49 U.S.C. § 47123), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 et seq.), the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101, et seq.), U.S. Department of Transportation and Federal Aviation Administration (FAA) Assurances, and other relevant civil rights statutes, regulations, or authorities, including any amendments or updates thereto. This may include, as applicable, providing a current Title VI

3-36-0102-133-2025

Program Plan to the FAA for approval, in the format and according to the timeline required by the FAA, and other information about the communities that will be benefited and impacted by the project. A completed FAA Title VI Pre-Grant Award Checklist is required for every grant application, unless excused by the FAA. The Sponsor shall affirmatively ensure that when carrying out any project supported by this grant that it complies with all federal nondiscrimination and civil rights laws based on race, color, national origin, sex, creed, age, disability, genetic information, in consideration for federal financial assistance. The Department's and FAA's Office of Civil Rights may provide resources and technical assistance to recipients to ensure full and sustainable compliance with Federal civil rights requirements. Failure to comply with civil rights requirements will be considered a violation of the agreement or contract and be subject to any enforcement action as authorized by law.

29. **FAA Reauthorization Act of 2024**. This grant agreement is subject to the terms and conditions contained herein including the terms known as the Grant Assurances as they were published in the Federal Register April 2025. On May 16, 2024, the FAA Reauthorization Act of 2024 made certain amendments to 49 U.S.C. chapter 471. The Reauthorization Act will require the FAA to make certain amendments to the assurances in order to best achieve consistency with the statute. Federal law requires that the FAA publish any amendments to the assurances in the Federal Register along with an opportunity to comment. In order not to delay the offer of this grant, the existing assurances are attached herein; however, the FAA shall interpret and apply these assurances consistent with the Reauthorization Act. To the extent there is a conflict between the assurances and Federal statutes, the statutes shall apply. The full text of the FAA Reauthorization Act of 2024 is at

    https://www.congress.gov/bill/118th-congress/house-bill/3935/text

30. **Applicable Federal Anti-Discrimination Laws.** Pursuant to Section (3)(b)(iv), Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, the sponsor:

    a. Agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of 31 U.S.C. 3729(b)(4); and
    b. certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws.

31. **Federal Law and Public Policy Requirements.** The Sponsor shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Sponsor will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in and the enforcement of Federal immigration law.

32. **National Airspace System Requirements**
    a. The Sponsor shall cooperate with FAA activities installing, maintaining, replacing, improving, or operating equipment and facilities in or supporting the National Airspace System, including waiving permitting requirements and other restrictions affecting those activities to the maximum extent possible, and assisting the FAA in securing waivers of permitting or other

restrictions from other authorities. The Sponsor shall not take actions that frustrate or prevent the FAA from installing, maintaining, replacing, improving, or operating equipment and facilities in or supporting the National Airspace System.

b. If the FAA determines that the Sponsor has violated subsection (a), the FAA may impose a remedy, including:

    (1) additional conditions on the award;

    (2) consistent with 49 U.S.C chapter 471, any remedy permitted under 2 C.F.R. 200.339–200.340, including withholding of payments; disallowance of previously reimbursed costs, requiring refunds from the Recipient to the USDOT; suspension or termination of the award; or suspension and debarment under 2 CFR part 180; or

    (3) any other remedy legally available.

c. In imposing a remedy under this condition, the FAA may elect to consider the interests of only the FAA.

d. The Sponsor acknowledges that amounts that the FAA requires the Sponsor to refund to the FAA due to a remedy under this condition constitute a debt to the Federal Government that the FAA may collect under 2 CFR 200.346 and the Federal Claims Collection Standards (31 CFR parts 900–904).

33. **Signage Costs for Construction Projects.** The airport grant recipient hereby agrees that it will require the prime contractor of a Federally- assisted airport improvement project to post signs consistent with a DOT/FAA-prescribed format, as may be requested by the DOT/FAA, and further agrees to remove any signs posted in response to requests received prior to February 1, 2025.

34. **Title 8 - U.S.C., Chapter 12, Subchapter II - Immigration.** The sponsor will follow applicable federal laws pertaining to Subchapter 12, and be subject to the penalties set forth in 8 U.S.C. § 1324, Bringing in and harboring certain aliens, and 8 U.S.C. § 1327, Aiding or assisting certain aliens to enter.

## SPECIAL CONDITIONS

35. **Airport Layout Plan (ALP).** The Sponsor understands and agrees to update the ALP to reflect the construction to standards satisfactory to the FAA and submit it in final form to the FAA as prescribed by 49 U.S.C. § 47107(a)(16). It is further mutually agreed that the reasonable cost of developing said ALP is an allowable cost within the scope of this project, if applicable. Airport Sponsors Grant Assurance 29 further addresses the Sponsor's statutory obligations to maintain an ALP in accordance with 49 U.S.C. § 47107(a)(16).

36. **Disadvantaged Business Enterprise (DBE)/Airport Concessions Disadvantaged Business Enterprise (ACDBE) Program.** The Sponsor understands and agrees that they will not submit payment reimbursement requests until the Sponsor has received from the FAA Office of Civil Rights approval of its DBE Program (reflecting compliance with 49 CFR Part 26, including any amendments thereto), and, if applicable, its ACDBE program (reflecting compliance with 49 CFR Part 23, including any amendments thereto).

37. **Equipment Acquisition.** The Sponsor understands and agrees that any equipment acquired through this Grant is considered a *facility* as that term is used in the Grant Assurances. Further, the equipment must be only operated by the Sponsor. The Sponsor agrees that it will maintain the equipment and use it exclusively at the airport for airport purposes.

38. **Protection of Runway Protection Zone - Airport Property.** The Sponsor agrees to prevent the erection or creation of any structure, place of public assembly, or other use in the Runway Protection Zone, as depicted on the Exhibit "A": Property Map, except for Navigational Aids (NAVAIDS) that are fixed by their functional purposes or any other structure permitted by the FAA. The Sponsor further agrees that any existing structures or uses within the Runway Protection Zone will be cleared or discontinued by the Sponsor unless approved by the FAA.

39. **Plans and Specifications Prior to Bidding.** The Sponsor agrees that it will submit plans and specifications for FAA review prior to advertising for bids.

40. **Plans and Specifications Approval Based Upon Certification.** The FAA and the Sponsor agree that the FAA's approval of the Sponsor's Plans and Specification is based primarily upon the Sponsor's certification to carry out the project in accordance with policies, standards, and specifications approved by the FAA. The Sponsor understands that:

    a. The Sponsor's certification does not relieve the Sponsor of the requirement to obtain prior FAA approval for modifications to published FAA airport development grant standards or to notify the FAA of any limitations to competition within the project;

    b. The FAA's acceptance of a Sponsor's certification does not limit the FAA from reviewing appropriate project documentation for the purpose of validating the certification statements; and

    c. If the FAA determines that the Sponsor has not complied with their certification statements, the FAA will review the associated project costs to determine whether such costs are allowable under this Grant and associated grants.

41. **Consultant Contract and Cost Analysis.** The Sponsor understands and agrees that no reimbursement will be made on the consultant contract portion of this Grant until the FAA has received the consultant contract, the Sponsor's analysis of costs, and the independent fee estimate.

42. **Mothers' Rooms.** As a small, medium, or large hub airport, the sponsor certifies it is in compliance with 49 U.S.C. § 47107(w).

43. **Buy American Executive Orders.** The Sponsor agrees to abide by applicable Executive Orders in effect at the time this Grant Agreement is executed, including Executive Order 14005, Ensuring the Future Is Made in All of America by All of America's Workers.

44. **Usable Unit of Development**. The FAA and the Sponsor agree this Grant only funds a portion of the overall project. The FAA makes no commitment of funding beyond what is provided herein. In accepting this award, the airport Sponsor understands and agrees that the work described in this Grant Agreement must be incorporated into a safe, useful, and usable unit of development completed within a reasonable timeframe [49 USC § 47106(a)(4)]. This safe, useful, usable unit of development must be completed regardless of whether the Sponsor receives any additional federal funding.

45. **Duffy Plaintiff Special Term**. Pursuant to the court's preliminary injunction order in State of California v. Duffy, 1:25-cv-00208-JJM-PAS (D.R.I.) (June 19, 2025), DOT will not impose or enforce the challenged immigration enforcement condition* or any materially similar terms and conditions, to any grant funds awarded, directly or indirectly, to Plaintiff States or local government entities within those States (collectively referred to as "Plaintiff State Entities"), or otherwise rescind, withhold, terminate, or take other adverse action, absent specific statutory authority, based on the challenged immigration enforcement condition while DOT is subject to an injunction. DOT will not require Plaintiff State Entities to make any certification or other representation related to compliance with the challenged immigration enforcement condition nor will DOT construe acceptance of funding from DOT as certification as to the challenged immigration enforcement condition.

*The challenged immigration enforcement condition:

"[T]he Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law."

3-36-0102-133-2025

The Sponsor's acceptance of this Offer and ratification and adoption of the Project Application incorporated herein shall be evidenced by execution of this instrument by the Sponsor, as hereinafter provided, and this Offer and Acceptance shall comprise a Grant Agreement, constituting the contractual obligations and rights of the United States and the Sponsor with respect to the accomplishment of the Project and compliance with the Grant Assurances, terms, and conditions as provided herein. Such Grant Agreement shall become effective upon the Sponsor's acceptance of this Offer.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[1]

**UNITED STATES OF AMERICA**
**FEDERAL AVIATION ADMINISTRATION**

_____
*(Signature)*

_____
*(Typed Name)*

_____
*(Title of FAA Official)*

---

[1] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

3-36-0102-133-2025

**Part II - Acceptance**

The Sponsor does hereby ratify and adopt all assurances, statements, representations, warranties, covenants, and agreements contained in the Project Application and incorporated materials referred to in the foregoing Offer, and does hereby accept this Offer and by such acceptance agrees to comply with all of the Grant Assurances, terms, and conditions in this Offer and in the Project Application.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[2]

Dated _____

County of Monroe
_____
*(Name of Sponsor)*

_____
*(Signature of Sponsor's Authorized Official)*

By: _____
*(Typed Name of Sponsor's Authorized Official)*

Title: _____
*(Title of Sponsor's Authorized Official)*

---

[2] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

3-36-0102-133-2025

## CERTIFICATE OF SPONSOR'S ATTORNEY

I, _____, acting as Attorney for the Sponsor do hereby certify:

That in my opinion the Sponsor is empowered to enter into the foregoing Grant Agreement under the laws of the State of ___New York___. Further, I have examined the foregoing Grant Agreement and the actions taken by said Sponsor and Sponsor's official representative, who has been duly authorized to execute this Grant Agreement, which is in all respects due and proper and in accordance with the laws of the said State; the Infrastructure Investment and Jobs Act (IIJA) (P.L. 117-58) of 2021; FAA Reauthorization Act of 2024 (P.L. 118-63); and the representations contained in the Project Application. In addition, for grants involving projects to be carried out on property not owned by the Sponsor, there are no legal impediments that will prevent full performance by the Sponsor. Further, it is my opinion that the said Grant Agreement constitutes a legal and binding obligation of the Sponsor in accordance with the terms thereof.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[3]

Dated at _____

                                              **By:** _____
                                                       *(Signature of Sponsor's Attorney)*

---

[3] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

18

3-36-0102-133-2025

## ASSURANCES

### AIRPORT SPONSORS

**A. General.**

1. These assurances shall be complied with in the performance of grant agreements for airport development, airport planning, and noise compatibility program grants for airport sponsors.

2. These assurances are required to be submitted as part of the project application by sponsors requesting funds under the provisions of Title 49, U.S.C., subtitle VII, as amended. As used herein, the term "public agency sponsor" means a public agency with control of a public-use airport; the term "private sponsor" means a private owner of a public-use airport; and the term "sponsor" includes both public agency sponsors and private sponsors.

3. Upon acceptance of this grant offer by the sponsor, these assurances are incorporated in and become part of this Grant Agreement.

**B. Duration and Applicability.**

1. **Airport Development or Noise Compatibility Program Projects Undertaken by a Public Agency Sponsor.**

   The terms, conditions, and assurances of this Grant Agreement shall remain in full force and effect throughout the useful life of the facilities developed or equipment acquired for an airport development or noise compatibility program project, or throughout the useful life of the project items installed within a facility under a noise compatibility program project, but in any event not to exceed twenty (20) years from the date of acceptance of a grant offer of Federal funds for the project. However, there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport. There shall be no limit on the duration of the terms, conditions, and assurances with respect to real property acquired with federal funds. Furthermore, the duration of the Civil Rights assurance shall be specified in the assurances.

2. **Airport Development or Noise Compatibility Projects Undertaken by a Private Sponsor.**

   The preceding paragraph (1) also applies to a private sponsor except that the useful life of project items installed within a facility or the useful life of the facilities developed or equipment acquired under an airport development or noise compatibility program project shall be no less than ten (10) years from the date of acceptance of Federal aid for the project.

3. **Airport Planning Undertaken by a Sponsor.**

   Unless otherwise specified in this Grant Agreement, only Assurances 1, 2, 3, 5, 6, 13, 18, 23, 25, 30, 32, 33, 34, 37, and 40 in Section C apply to planning projects. The terms, conditions, and assurances of this Grant Agreement shall remain in full force and effect during the life of the project; there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport.

C. **Sponsor Certification.**

The sponsor hereby assures and certifies, with respect to this grant that:

1. **General Federal Requirements**

The Sponsor will comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds for this Grant. Performance under this agreement shall be governed by and in compliance with the following requirements, as applicable, to the type of organization of the Sponsor and any applicable sub-recipients. The applicable provisions to this agreement include, but are not limited to, the following:

FEDERAL LEGISLATION

a. 49 U.S.C. subtitle VII, as amended.

b. Davis-Bacon Act, as amended — 40 U.S.C. §§ 3141-3144, 3146, and 3147, et seq.[1]

c. Federal Fair Labor Standards Act – 29 U.S.C. § 201, et seq.

d. Hatch Act – 5 U.S.C. § 1501, et seq.[2]

e. Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. 4601, et seq.[1, 2]

f. National Historic Preservation Act of 1966 – Section 106 – 54 U.S.C. § 306108.[1]

g. Archeological and Historic Preservation Act of 1974 – 54 U.S.C. § 312501, et seq.[1]

h. Native Americans Grave Repatriation Act – 25 U.S.C. § 3001, et seq.

i. Clean Air Act, P.L. 90-148, as amended – 42 U.S.C. § 7401, et seq.

j. Coastal Zone Management Act, P.L. 92-583, as amended – 16 U.S.C. § 1451, et seq.

k. Flood Disaster Protection Act of 1973 – Section 102(a) - 42 U.S.C. § 4012a.[1]

l. 49 U.S.C. § 303, (formerly known as Section 4(f)).

m. Rehabilitation Act of 1973 – 29 U.S.C. § 794.

n. Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.) (prohibits discrimination on the basis of race, color, national origin).

o. Americans with Disabilities Act of 1990, as amended, (42 U.S.C. § 12101 et seq.) (prohibits discrimination on the basis of disability).

p. Age Discrimination Act of 1975 – 42 U.S.C. § 6101, et seq.

q. American Indian Religious Freedom Act, P.L. 95-341, as amended.

r. Architectural Barriers Act of 1968, as amended – 42 U.S.C. § 4151, et seq.[1]

s. Powerplant and Industrial Fuel Use Act of 1978 – Section 403 – 42 U.S.C. § 8373.[1]

t. Contract Work Hours and Safety Standards Act – 40 U.S.C. § 3701, et seq.[1]

u. Copeland Anti-kickback Act – 18 U.S.C. § 874.[1]

v. National Environmental Policy Act of 1969 – 42 U.S.C. § 4321, et seq.[1]

w.  Wild and Scenic Rivers Act, P.L. 90-542, as amended – 16 U.S.C. § 1271, et seq.

x.  Single Audit Act of 1984 – 31 U.S.C. § 7501, et seq.[2]

y.  Drug-Free Workplace Act of 1988 – 41 U.S.C. §§ 8101 through 8105.

z.  The Federal Funding Accountability and Transparency Act of 2006, as amended (P.L. 109-282, as amended by section 6202 of P.L. 110-252).

aa.  Civil Rights Restoration Act of 1987, P.L. 100-259.

bb.  Infrastructure Investment and Jobs Act, P.L. 117-58, Title VIII.

cc.  Build America, Buy America Act, P.L. 117-58, Title IX.

dd.  Endangered Species Act – 16 U.S.C. 1531, et seq.

ee.  Title IX of the Education Amendments of 1972, as amended – 20 U.S.C. 1681–1683 and 1685–1687.

ff.  Drug Abuse Office and Treatment Act of 1972, as amended – 21 U.S.C. 1101, et seq.

gg.  Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, P.L. 91-616, as amended – 42 U.S.C. § 4541, et seq.

hh.  Appropriated Funds to Influence Certain Federal Contracting and Financial Transactions – 31 U.S.C. § 1352.

## EXECUTIVE ORDERS

a.  Executive Order 11990 – Protection of Wetlands

b.  Executive Order 11988 – Floodplain Management

c.  Executive Order 12372 – Intergovernmental Review of Federal Programs

d.  Executive Order 12699 – Seismic Safety of Federal and Federally Assisted New Building Construction[1]

e.  Executive Order 14005 – Ensuring the Future is Made in all of America by All of America's Workers

f.  Executive Order 14149 – Restoring Freedom of Speech and Ending Federal Censorship

g.  Executive Order 14151 – Ending Radical and Wasteful Government DEI Programs and Preferencing

h.  Executive Order 14154 – Unleashing American Energy

i.  Executive Order 14168 – Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government

j.  Executive Order 14173 – Ending Illegal Discrimination and Restoring Merit-Based Opportunity

## FEDERAL REGULATIONS

a.  2 CFR Part 180 – OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement).

b.  2 CFR Part 200 and 1201 – Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards. [3, 4, 5]

c.  2 CFR Part 1200 – Nonprocurement Suspension and Debarment.

d.  14 CFR Part 13 – Investigative and Enforcement Procedures.

e.  14 CFR Part 16 – Rules of Practice for Federally-Assisted Airport Enforcement Proceedings.

f.  14 CFR Part 150 – Airport Noise Compatibility Planning.

g.  28 CFR Part 35 – Nondiscrimination on the Basis of Disability in State and Local Government Services.

h.  28 CFR § 50.3 – U.S. Department of Justice Guidelines for the Enforcement of Title VI of the Civil Rights Act of 1964.

i.  29 CFR Part 1 – Procedures for Predetermination of Wage Rates.[1]

j.  29 CFR Part 3 – Contractors and Subcontractors on Public Building or Public Work Financed in Whole or in Part by Loans or Grants from the United States.[1]

k.  29 CFR Part 5 – Labor Standards Provisions Applicable to Contracts Covering Federally Financed and Assisted Construction (Also Labor Standards Provisions Applicable to Nonconstruction Contracts Subject to the Contract Work Hours and Safety Standards Act).[1]

l.  41 CFR Part 60 – Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor (Federal and Federally-assisted contracting requirements).[1]

m.  49 CFR Part 20 – New Restrictions on Lobbying.

n.  49 CFR Part 21 – Nondiscrimination in Federally-Assisted Programs of the Department of Transportation - Effectuation of Title VI of the Civil Rights Act of 1964.

o.  49 CFR Part 23 – Participation by Disadvantage Business Enterprise in Airport Concessions.

p.  49 CFR Part 24 – Uniform Relocation Assistance and Real Property Acquisition for Federal and Federally-Assisted Programs.[1, 2]

q.  49 CFR Part 26 – Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs.

r.  49 CFR Part 27 – Nondiscrimination on the Basis of Disability in Programs or Activities Receiving Federal Financial Assistance.[1]

s.  49 CFR Part 28 – Enforcement of Nondiscrimination on the Basis of Handicap in Programs or Activities Conducted by the Department of Transportation.

t.  49 CFR Part 30 – Denial of Public Works Contracts to Suppliers of Goods and Services of Countries That Deny Procurement Market Access to U.S. Contractors.

u.  49 CFR Part 32 – Governmentwide Requirements for Drug-Free Workplace (Financial Assistance).

v.  49 CFR Part 37 – Transportation Services for Individuals with Disabilities (ADA).

w.  49 CFR Part 38 – Americans with Disabilities Act (ADA) Accessibility Specifications for Transportation Vehicles.

x.  49 CFR Part 41 – Seismic Safety.

*FOOTNOTES TO ASSURANCE (C)(1)*

---

[1]  These laws do not apply to airport planning sponsors.

[2]  These laws do not apply to private sponsors.

3   2 CFR Part 200 contains requirements for State and Local Governments receiving Federal assistance. Any requirement levied upon State and Local Governments by this regulation shall apply where applicable to private sponsors receiving Federal assistance under Title 49, United States Code.

4   Cost principles established in 2 CFR Part 200 subpart E must be used as guidelines for determining the eligibility of specific types of expenses.

5   Audit requirements established in 2 CFR Part 200 subpart F are the guidelines for audits.

## SPECIFIC ASSURANCES

Specific assurances required to be included in grant agreements by any of the above laws, regulations or circulars are incorporated by reference in this Grant Agreement.

1. **Responsibility and Authority of the Sponsor.**

   a. Public Agency Sponsor:

   It has legal authority to apply for this Grant, and to finance and carry out the proposed project; that a resolution, motion or similar action has been duly adopted or passed as an official act of the applicant's governing body authorizing the filing of the application, including all understandings and assurances contained therein, and directing and authorizing the person identified as the official representative of the applicant to act in connection with the application and to provide such additional information as may be required.

   b. Private Sponsor:

   It has legal authority to apply for this Grant and to finance and carry out the proposed project and comply with all terms, conditions, and assurances of this Grant Agreement. It shall designate an official representative and shall in writing direct and authorize that person to file this application, including all understandings and assurances contained therein; to act in connection with this application; and to provide such additional information as may be required.

2. **Sponsor Fund Availability.**

   It has sufficient funds available for that portion of the project costs which are not to be paid by the United States. It has sufficient funds available to assure operation and maintenance of items funded under this Grant Agreement which it will own or control.

3. **Good Title.**

   a. It, a public agency or the Federal government, holds good title, satisfactory to the Secretary, to the landing area of the airport or site thereof, or will give assurance satisfactory to the Secretary that good title will be acquired.

   b. For noise compatibility program projects to be carried out on the property of the sponsor, it holds good title satisfactory to the Secretary to that portion of the property upon which Federal funds will be expended or will give assurance to the Secretary that good title will be obtained.

4. **Preserving Rights and Powers.**

   a. It will not take or permit any action which would operate to deprive it of any of the rights and powers necessary to perform any or all of the terms, conditions, and assurances in this Grant Agreement without the written approval of the Secretary, and will act promptly to acquire, extinguish or modify any outstanding rights or claims of right of others which would interfere

with such performance by the sponsor. This shall be done in a manner acceptable to the Secretary.

b.  Subject to 49 U.S.C. 47107(a)(16) and (x), it will not sell, lease, encumber, or otherwise transfer or dispose of any part of its title or other interests in the property shown on Exhibit A to this application or, for a noise compatibility program project, that portion of the property upon which Federal funds have been expended, for the duration of the terms, conditions, and assurances in this Grant Agreement without approval by the Secretary. If the transferee is found by the Secretary to be eligible under Title 49, United States Code, to assume the obligations of this Grant Agreement and to have the power, authority, and financial resources to carry out all such obligations, the sponsor shall insert in the contract or document transferring or disposing of the sponsor's interest, and make binding upon the transferee all of the terms, conditions, and assurances contained in this Grant Agreement.

c.  For all noise compatibility program projects which are to be carried out by another unit of local government or are on property owned by a unit of local government other than the sponsor, it will enter into an agreement with that government. Except as otherwise specified by the Secretary, that agreement shall obligate that government to the same terms, conditions, and assurances that would be applicable to it if it applied directly to the FAA for a grant to undertake the noise compatibility program project. That agreement and changes thereto must be satisfactory to the Secretary. It will take steps to enforce this agreement against the local government if there is substantial non-compliance with the terms of the agreement.

d.  For noise compatibility program projects to be carried out on privately owned property, it will enter into an agreement with the owner of that property which includes provisions specified by the Secretary. It will take steps to enforce this agreement against the property owner whenever there is substantial non-compliance with the terms of the agreement.

e.  If the sponsor is a private sponsor, it will take steps satisfactory to the Secretary to ensure that the airport will continue to function as a public-use airport in accordance with these assurances for the duration of these assurances.

f.  If an arrangement is made for management and operation of the airport by any agency or person other than the sponsor or an employee of the sponsor, the sponsor will reserve sufficient rights and authority to ensure that the airport will be operated and maintained in accordance with Title 49, United States Code, the regulations and the terms, conditions and assurances in this Grant Agreement and shall ensure that such arrangement also requires compliance therewith.

g.  Sponsors of commercial service airports will not permit or enter into any arrangement that results in permission for the owner or tenant of a property used as a residence, or zoned for residential use, to taxi an aircraft between that property and any location on airport. Sponsors of general aviation airports entering into any arrangement that results in permission for the owner of residential real property adjacent to or near the airport must comply with the requirements of Sec. 136 of Public Law 112-95 and the sponsor assurances.

**5. Consistency with Local Plans.**

The project is reasonably consistent with plans (existing at the time of submission of this application) of public agencies that are authorized by the State in which the project is located to plan for the development of the area surrounding the airport.

3-36-0102-133-2025

6. **Consideration of Local Interest.**

It has given fair consideration to the interest of communities in or near where the project may be located.

7. **Consultation with Users.**

In making a decision to undertake any airport development project under Title 49, United States Code, it has undertaken reasonable consultations with affected parties using the airport at which project is proposed.

8. **Public Hearings.**

In projects involving the location of an airport, an airport runway, or a major runway extension, it has afforded the opportunity for public hearings for the purpose of considering the economic, social, and environmental effects of the airport or runway location and its consistency with goals and objectives of such planning as has been carried out by the community and it shall, when requested by the Secretary, submit a copy of the transcript of such hearings to the Secretary. Further, for such projects, it has on its management board either voting representation from the communities where the project is located or has advised the communities that they have the right to petition the Secretary concerning a proposed project.

9. **Metropolitan Planning Organization.**

In projects involving the location of an airport, an airport runway, or a major runway extension at a medium or large hub airport, the sponsor has made available to and has provided upon request to the metropolitan planning organization in the area in which the airport is located, if any, a copy of the proposed amendment to the airport layout plan to depict the project and a copy of any airport master plan in which the project is described or depicted.

10. **Pavement Preventive Maintenance-Management.**

With respect to a project approved after January 1, 1995, for the replacement or reconstruction of pavement at the airport, it assures or certifies that it has implemented an effective airport pavement maintenance-management program, and it assures that it will use such program for the useful life of any pavement constructed, reconstructed, or repaired with Federal financial assistance at the airport. It will provide such reports on pavement condition and pavement management programs as the Secretary determines may be useful.

11. **Terminal Development Prerequisites.**

For projects which include terminal development at a public use airport, as defined in Title 49, it has, on the date of submittal of the project grant application, all the safety equipment required for certification of such airport under 49 U.S.C. 44706, and all the security equipment required by rule or regulation, and has provided for access to the passenger enplaning and deplaning area of such airport to passengers enplaning and deplaning from aircraft other than air carrier aircraft.

12. **Accounting System, Audit, and Record Keeping Requirements.**

a. It shall keep all project accounts and records which fully disclose the amount and disposition by the recipient of the proceeds of this Grant, the total cost of the project in connection with which this Grant is given or used, and the amount or nature of that portion of the cost of the project supplied by other sources, and such other financial records pertinent to the project. The accounts and records shall be kept in accordance with an accounting system that will facilitate an effective audit in accordance with the Single Audit Act of 1984.

b.   It shall make available to the Secretary and the Comptroller General of the United States, or any of their duly authorized representatives, for the purpose of audit and examination, any books, documents, papers, and records of the recipient that are pertinent to this Grant. The Secretary may require that an appropriate audit be conducted by a recipient. In any case in which an independent audit is made of the accounts of a sponsor relating to the disposition of the proceeds of a grant or relating to any project in connection with which this Grant was given or used, it shall file a certified copy of such audit with the Comptroller General of the United States not later than six (6) months following the close of the fiscal year for which the audit was made.

**13. Minimum Wage Rates.**

It shall include, in all contracts in excess of $2,000 for work on any projects funded under this Grant Agreement which involve labor, provisions establishing minimum rates of wages, to be predetermined by the Secretary of Labor under 40 U.S.C. §§ 3141-3144, 3146, and 3147, Public Building, Property, and Works), which contractors shall pay to skilled and unskilled labor, and such minimum rates shall be stated in the invitation for bids and shall be included in proposals or bids for the work.

**14. Veteran's Preference.**

It shall include in all contracts for work on any project funded under this Grant Agreement which involve labor, such provisions as are necessary to insure that, in the employment of labor (except in executive, administrative, and supervisory positions), preference shall be given to Vietnam era veterans, Persian Gulf veterans, Afghanistan-Iraq war veterans, disabled veterans, and small business concerns owned and controlled by disabled veterans as defined in 49 U.S.C. 47112. However, this preference shall apply only where the individuals are available and qualified to perform the work to which the employment relates.

**15. Conformity to Plans and Specifications.**

It will execute the project subject to plans, specifications, and schedules approved by the Secretary. Such plans, specifications, and schedules shall be submitted to the Secretary prior to commencement of site preparation, construction, or other performance under this Grant Agreement, and, upon approval of the Secretary, shall be incorporated into this Grant Agreement. Any modification to the approved plans, specifications, and schedules shall also be subject to approval of the Secretary and incorporated into this Grant Agreement.

**16. Construction Inspection and Approval.**

It will provide and maintain competent technical supervision at the construction site throughout the project to assure that the work conforms to the plans, specifications, and schedules approved by the Secretary for the project. It shall subject the construction work on any project contained in an approved project application to inspection and approval by the Secretary and such work shall be in accordance with regulations and procedures prescribed by the Secretary. Such regulations and procedures shall require such cost and progress reporting by the sponsor or sponsors of such project as the Secretary shall deem necessary.

**17. Planning Projects.**

In carrying out planning projects:

a.   It will execute the project in accordance with the approved program narrative contained in the project application or with the modifications similarly approved.

b. It will furnish the Secretary with such periodic reports as required pertaining to the planning project and planning work activities.

c. It will include in all published material prepared in connection with the planning project a notice that the material was prepared under a grant provided by the United States.

d. It will make such material available for examination by the public and agrees that no material prepared with funds under this project shall be subject to copyright in the United States or any other country.

e. It will give the Secretary unrestricted authority to publish, disclose, distribute, and otherwise use any of the material prepared in connection with this grant.

f. It will grant the Secretary the right to disapprove the sponsor's employment of specific consultants and their subcontractors to do all or any part of this project as well as the right to disapprove the proposed scope and cost of professional services.

g. It will grant the Secretary the right to disapprove the use of the sponsor's employees to do all or any part of the project.

h. It understands and agrees that the Secretary's approval of this project grant or the Secretary's approval of any planning material developed as part of this grant does not constitute or imply any assurance or commitment on the part of the Secretary to approve any pending or future application for a Federal airport grant.

**18. Operation and Maintenance.**

a. The airport and all facilities which are necessary to serve the aeronautical users of the airport, other than facilities owned or controlled by the United States, shall be operated at all times in a safe and serviceable condition and in accordance with the minimum standards as may be required or prescribed by applicable Federal, state, and local agencies for maintenance and operation. It will not cause or permit any activity or action thereon which would interfere with its use for airport purposes. It will suitably operate and maintain the airport and all facilities thereon or connected therewith, with due regard to climatic and flood conditions. Any proposal to temporarily close the airport for non-aeronautical purposes must first be approved by the Secretary. In furtherance of this assurance, the sponsor will have in effect arrangements for:

   1. Operating the airport's aeronautical facilities whenever required;

   2. Promptly marking and lighting hazards resulting from airport conditions, including temporary conditions; and

   3. Promptly notifying pilots of any condition affecting aeronautical use of the airport. Nothing contained herein shall be construed to require that the airport be operated for aeronautical use during temporary periods when snow, flood, or other climatic conditions interfere with such operation and maintenance. Further, nothing herein shall be construed as requiring the maintenance, repair, restoration, or replacement of any structure or facility which is substantially damaged or destroyed due to an act of God or other condition or circumstance beyond the control of the sponsor.

b. It will suitably operate and maintain noise compatibility program items that it owns or controls upon which Federal funds have been expended.

**19. Hazard Removal and Mitigation.**

It will take appropriate action to assure that such terminal airspace as is required to protect instrument and visual operations to the airport (including established minimum flight altitudes) will be adequately cleared and protected by removing, lowering, relocating, marking, or lighting or otherwise mitigating existing airport hazards and by preventing the establishment or creation of future airport hazards.

**20. Compatible Land Use.**

It will take appropriate action, to the extent reasonable, including the adoption of zoning laws, to restrict the use of land adjacent to or in the immediate vicinity of the airport to activities and purposes compatible with normal airport operations, including landing and takeoff of aircraft. In addition, if the project is for noise compatibility program implementation, it will not cause or permit any change in land use, within its jurisdiction, that will reduce its compatibility, with respect to the airport, of the noise compatibility program measures upon which Federal funds have been expended.

**21. Economic Nondiscrimination.**

a.  It will make the airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities, including commercial aeronautical activities offering services to the public at the airport.

b.  In any agreement, contract, lease, or other arrangement under which a right or privilege at the airport is granted to any person, firm, or corporation to conduct or to engage in any aeronautical activity for furnishing services to the public at the airport, the sponsor will insert and enforce provisions requiring the contractor to:

   1.  Furnish said services on a reasonable, and not unjustly discriminatory, basis to all users thereof, and

   2.  Charge reasonable, and not unjustly discriminatory, prices for each unit or service, provided that the contractor may be allowed to make reasonable and nondiscriminatory discounts, rebates, or other similar types of price reductions to volume purchasers.

c.  Each fixed-based operator at the airport shall be subject to the same rates, fees, rentals, and other charges as are uniformly applicable to all other fixed-based operators making the same or similar uses of such airport and utilizing the same or similar facilities.

d.  Each air carrier using such airport shall have the right to service itself or to use any fixed-based operator that is authorized or permitted by the airport to serve any air carrier at such airport.

e.  Each air carrier using such airport (whether as a tenant, non-tenant, or subtenant of another air carrier tenant) shall be subject to such nondiscriminatory and substantially comparable rules, regulations, conditions, rates, fees, rentals, and other charges with respect to facilities directly and substantially related to providing air transportation as are applicable to all such air carriers which make similar use of such airport and utilize similar facilities, subject to reasonable classifications such as tenants or non-tenants and signatory carriers and non-signatory carriers. Classification or status as tenant or signatory shall not be unreasonably withheld by any airport provided an air carrier assumes obligations substantially similar to those already imposed on air carriers in such classification or status.

3-36-0102-133-2025

f.  It will not exercise or grant any right or privilege which operates to prevent any person, firm, or corporation operating aircraft on the airport from performing any services on its own aircraft with its own employees (including, but not limited to maintenance, repair, and fueling) that it may choose to perform.

g.  In the event the sponsor itself exercises any of the rights and privileges referred to in this assurance, the services involved will be provided on the same conditions as would apply to the furnishing of such services by commercial aeronautical service providers authorized by the sponsor under these provisions.

h.  The sponsor may establish such reasonable, and not unjustly discriminatory, conditions to be met by all users of the airport as may be necessary for the safe and efficient operation of the airport.

i.  The sponsor may prohibit or limit any given type, kind or class of aeronautical use of the airport if such action is necessary for the safe operation of the airport or necessary to serve the civil aviation needs of the public.

**22. Exclusive Rights.**

It will permit no exclusive right for the use of the airport by any person providing, or intending to provide, aeronautical services to the public. For purposes of this paragraph, the providing of the services at an airport by a single fixed-based operator shall not be construed as an exclusive right if both of the following apply:

a.  It would be unreasonably costly, burdensome, or impractical for more than one fixed-based operator to provide such services, and

b.  If allowing more than one fixed-based operator to provide such services would require the reduction of space leased pursuant to an existing agreement between such single fixed-based operator and such airport. It further agrees that it will not, either directly or indirectly, grant or permit any person, firm, or corporation, the exclusive right at the airport to conduct any aeronautical activities, including, but not limited to charter flights, pilot training, aircraft rental and sightseeing, aerial photography, crop dusting, aerial advertising and surveying, air carrier operations, aircraft sales and services, sale of aviation petroleum products whether or not conducted in conjunction with other aeronautical activity, repair and maintenance of aircraft, sale of aircraft parts, and any other activities which because of their direct relationship to the operation of aircraft can be regarded as an aeronautical activity, and that it will terminate any exclusive right to conduct an aeronautical activity now existing at such an airport before the grant of any assistance under Title 49, United States Code.

**23. Fee and Rental Structure.**

It will maintain a fee and rental structure for the facilities and services at the airport which will make the airport as self-sustaining as possible under the circumstances existing at the particular airport, taking into account such factors as the volume of traffic and economy of collection. No part of the Federal share of an airport development, airport planning or noise compatibility project for which a Grant is made under Title 49, United States Code, the Airport and Airway Improvement Act of 1982, the Federal Airport Act or the Airport and Airway Development Act of 1970 shall be included in the rate basis in establishing fees, rates, and charges for users of that airport.

3-36-0102-133-2025

**24. Airport Revenues.**

a. All revenues generated by the airport and any local taxes on aviation fuel established after December 30, 1987, will be expended by it for the capital or operating costs of the airport; the local airport system; or other local facilities which are owned or operated by the owner or operator of the airport and which are directly and substantially related to the actual air transportation of passengers or property; or for noise mitigation purposes on or off the airport. The following exceptions apply to this paragraph:

   1. If covenants or assurances in debt obligations issued before September 3, 1982, by the owner or operator of the airport, or provisions enacted before September 3, 1982, in governing statutes controlling the owner or operator's financing, provide for the use of the revenues from any of the airport owner or operator's facilities, including the airport, to support not only the airport but also the airport owner or operator's general debt obligations or other facilities, then this limitation on the use of all revenues generated by the airport (and, in the case of a public airport, local taxes on aviation fuel) shall not apply.

   2. If the Secretary approves the sale of a privately owned airport to a public sponsor and provides funding for any portion of the public sponsor's acquisition of land, this limitation on the use of all revenues generated by the sale shall not apply to certain proceeds from the sale. This is conditioned on repayment to the Secretary by the private owner of an amount equal to the remaining unamortized portion (amortized over a 20-year period) of any airport improvement grant made to the private owner for any purpose other than land acquisition on or after October 1, 1996, plus an amount equal to the federal share of the current fair market value of any land acquired with an airport improvement grant made to that airport on or after October 1, 1996.

   3. Certain revenue derived from or generated by mineral extraction, production, lease, or other means at a general aviation airport (as defined at 49 U.S.C. 47102), if the FAA determines the airport sponsor meets the requirements set forth in Section 813 of Public Law 112-95.

b. As part of the annual audit required under the Single Audit Act of 1984, the sponsor will direct that the audit will review, and the resulting audit report will provide an opinion concerning, the use of airport revenue and taxes in paragraph (a), and indicating whether funds paid or transferred to the owner or operator are paid or transferred in a manner consistent with Title 49, United States Code and any other applicable provision of law, including any regulation promulgated by the Secretary or Administrator.

c. Any civil penalties or other sanctions will be imposed for violation of this assurance in accordance with the provisions of 49 U.S.C. 47107.

**25. Reports and Inspections.**

It will:

a. submit to the Secretary such annual or special financial and operations reports as the Secretary may reasonably request and make such reports available to the public; make available to the public at reasonable times and places a report of the airport budget in a format prescribed by the Secretary;

b. for airport development projects, make the airport and all airport records and documents affecting the airport, including deeds, leases, operation and use agreements, regulations and

other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request;

c.  for noise compatibility program projects, make records and documents relating to the project and continued compliance with the terms, conditions, and assurances of this Grant Agreement including deeds, leases, agreements, regulations, and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request; and

d.  in a format and time prescribed by the Secretary, provide to the Secretary and make available to the public following each of its fiscal years, an annual report listing in detail:

   1.  all amounts paid by the airport to any other unit of government and the purposes for which each such payment was made; and

   2.  all services and property provided by the airport to other units of government and the amount of compensation received for provision of each such service and property.

## 26. Use by Government Aircraft.

It will make available all of the facilities of the airport developed with Federal financial assistance and all those usable for landing and takeoff of aircraft to the United States for use by Government aircraft in common with other aircraft at all times without charge, except, if the use by Government aircraft is substantial, charge may be made for a reasonable share, proportional to such use, for the cost of operating and maintaining the facilities used. Unless otherwise determined by the Secretary, or otherwise agreed to by the sponsor and the using agency, substantial use of an airport by Government aircraft will be considered to exist when operations of such aircraft are in excess of those which, in the opinion of the Secretary, would unduly interfere with use of the landing areas by other authorized aircraft, or during any calendar month that:

a.  Five (5) or more Government aircraft are regularly based at the airport or on land adjacent thereto; or

b.  The total number of movements (counting each landing as a movement) of Government aircraft is 300 or more, or the gross accumulative weight of Government aircraft using the airport (the total movement of Government aircraft multiplied by gross weights of such aircraft) is in excess of five million pounds.

## 27. Land for Federal Facilities.

It will furnish without cost to the Federal Government for use in connection with any air traffic control or air navigation activities, or weather-reporting and communication activities related to air traffic control, any areas of land or water, or estate therein as the Secretary considers necessary or desirable for construction, operation, and maintenance at Federal expense of space or facilities for such purposes. Such areas or any portion thereof will be made available as provided herein within four months after receipt of a written request from the Secretary.

## 28. Airport Layout Plan.

a.  The airport owner or operator will maintain a current airport layout plan of the airport showing:

   1.  boundaries of the airport and all proposed additions thereto, together with the boundaries of all offsite areas owned or controlled by the sponsor for airport purposes and proposed additions thereto;

2.  the location and nature of all existing and proposed airport facilities and structures (such as runways, taxiways, aprons, terminal buildings, hangars and roads), including all proposed extensions and reductions of existing airport facilities;

3.  the location of all existing and proposed non-aviation areas and of all existing improvements thereon; and

4.  all proposed and existing access points used to taxi aircraft across the airport's property boundary.

b.  Subject to subsection 49 U.S.C. 47107(x), the Secretary will review and approve or disapprove the plan and any revision or modification of the plan before the plan, revision, or modification takes effect.

c.  The owner or operator will not make or allow any alteration in the airport or any of its facilities unless the alteration—

1. is outside the scope of the Secretary's review and approval authority as set forth in subsection (x); or

2. complies with the portions of the plan approved by the Secretary.

d.  When the airport owner or operator makes a change or alteration in the airport or the facilities which the Secretary determines adversely affects the safety, utility, or efficiency of any federally owned, leased, or funded property on or off the airport and which is not in conformity with the airport layout plan as approved by the Secretary, the owner or operator will, if requested, by the Secretary:

1.  eliminate such adverse effect in a manner approved by the Secretary; or

2.  bear all costs of relocating such property or its replacement to a site acceptable to the Secretary and of restoring the property or its replacement to the level of safety, utility, efficiency, and cost of operation that existed before the alteration was made, except in the case of a relocation or replacement of an existing airport facility due to a change in the Secretary's design standards beyond the control of the airport sponsor.

**29. Civil Rights.**

It will promptly take any measures necessary to ensure that no person in the United States shall, on the grounds of race, color, and national origin (including limited English proficiency) in accordance with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d to 2000d-4); creed and sex per 49 U.S.C. 47123 and related requirements; age per the Age Discrimination Act of 1975 and related requirements; or disability per the Americans with Disabilities Act of 1990 and related requirements, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination in any program and activity conducted with, or benefiting from, funds received from this Grant.

a.  Using the definitions of activity, facility, and program as found and defined in 49 CFR 21.23(b) and 21.23(e), the sponsor will facilitate all programs, operate all facilities, or conduct all programs in compliance with all non-discrimination requirements imposed by or pursuant to these assurances.

b.  Applicability

3-36-0102-133-2025

1.  Programs and Activities. If the sponsor has received a grant (or other federal assistance) for any of the sponsor's program or activities, these requirements extend to all of the sponsor's programs and activities.

2.  Facilities. Where it receives a grant or other federal financial assistance to construct, expand, renovate, remodel, alter, or acquire a facility, or part of a facility, the assurance extends to the entire facility and facilities operated in connection therewith.

3.  Real Property. Where the sponsor receives a grant or other Federal financial assistance in the form of, or for the acquisition of real property or an interest in real property, the assurance will extend to rights to space on, over, or under such property.

c.  Duration.

The sponsor agrees that it is obligated to this assurance for the period during which Federal financial assistance is extended to the program, except where the Federal financial assistance is to provide, or is in the form of, personal property, or real property, or interest therein, or structures or improvements thereon, in which case the assurance obligates the sponsor, or any transferee for the longer of the following periods:

1.  So long as the airport is used as an airport, or for another purpose involving the provision of similar services or benefits; or

2.  So long as the sponsor retains ownership or possession of the property.

d.  Required Solicitation Language. It will include the following notification in all solicitations for bids, Requests For Proposals for work, or material under this Grant Agreement and in all proposals for agreements, including airport concessions, regardless of funding source:

"The (**County of Monroe**), in accordance with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d to 2000d-4) and the Regulations, hereby notifies all bidders or offerors that it will affirmatively ensure that for any contract entered into pursuant to this advertisement,  all businesses will be afforded full and fair opportunity to submit bids in response to this invitation and no businesses will be discriminated against on the grounds of race, color, national origin (including limited English proficiency), creed, sex , age, or disability in consideration for an award."

e.  Required Contract Provisions.

1.  It will insert the non-discrimination contract clauses requiring compliance with the acts and regulations relative to non-discrimination in Federally-assisted programs of the Department of Transportation (DOT), and incorporating the acts and regulations into the contracts by reference in every contract or agreement subject to the non-discrimination in Federally-assisted programs of the DOT acts and regulations.

2.  It will include a list of the pertinent non-discrimination authorities in every contract that is subject to the non-discrimination acts and regulations.

3.  It will insert non-discrimination contract clauses as a covenant running with the land, in any deed from the United States effecting or recording a transfer of real property, structures, use, or improvements thereon or interest therein to a sponsor.

4.  It will insert non-discrimination contract clauses prohibiting discrimination on the basis of race, color, national origin (including limited English proficiency), creed, sex, age, or

disability as a covenant running with the land, in any future deeds, leases, license, permits, or similar instruments entered into by the sponsor with other parties:

    a.  For the subsequent transfer of real property acquired or improved under the applicable activity, project, or program; and

    b.  For the construction or use of, or access to, space on, over, or under real property acquired or improved under the applicable activity, project, or program.

f.  It will provide for such methods of administration for the program as are found by the Secretary to give reasonable guarantee that it, other recipients, sub-recipients, sub-grantees, contractors, subcontractors, consultants, transferees, successors in interest, and other participants of Federal financial assistance under such program will comply with all requirements imposed or pursuant to the acts, the regulations, and this assurance.

g.  It agrees that the United States has a right to seek judicial enforcement with regard to any matter arising under the acts, the regulations, and this assurance.

**30. Disposal of Land.**

a.  For land purchased under a grant for airport noise compatibility purposes, including land serving as a noise buffer, it will dispose of the land, when the land is no longer needed for such purposes, at fair market value, at the earliest practicable time. That portion of the proceeds of such disposition which is proportionate to the United States' share of acquisition of such land will be, at the discretion of the Secretary, (1) reinvested in another project at the airport, or (2) transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

    1.  Reinvestment in an approved noise compatibility project;

    2.  Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. 47117(e);

    3.  Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. 47114, 47115, or 47117;

    4.  Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

    5.  Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

If land acquired under a grant for noise compatibility purposes is leased at fair market value and consistent with noise buffering purposes, the lease will not be considered a disposal of the land. Revenues derived from such a lease may be used for an approved airport development project that would otherwise be eligible for grant funding or any permitted use of airport revenue.

b.  For land purchased under a grant for airport development purposes (other than noise compatibility), it will, when the land is no longer needed for airport purposes, dispose of such land at fair market value or make available to the Secretary an amount equal to the United States' proportionate share of the fair market value of the land. That portion of the proceeds of such disposition which is proportionate to the United States' share of the cost of acquisition of such land will, upon application to the Secretary, be reinvested or transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

1. Reinvestment in an approved noise compatibility project;

2. Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. 47117(e);

3. Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. 47114, 47115, or 47117;

4. Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

5. Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

c. Land shall be considered to be needed for airport purposes under this assurance if (1) it may be needed for aeronautical purposes (including runway protection zones) or serve as noise buffer land, and (2) the revenue from interim uses of such land contributes to the financial self-sufficiency of the airport. Further, land purchased with a grant received by an airport operator or owner before December 31, 1987, will be considered to be needed for airport purposes if the Secretary or Federal agency making such grant before December 31, 1987, was notified by the operator or owner of the uses of such land, did not object to such use, and the land continues to be used for that purpose, such use having commenced no later than December 15, 1989.

d. Disposition of such land under (a), (b), or (c) will be subject to the retention or reservation of any interest or right therein necessary to ensure that such land will only be used for purposes which are compatible with noise levels associated with operation of the airport.

**31. Engineering and Design Services.**

If any phase of such project has received Federal funds under Chapter 471 subchapter 1 of Title 49 U.S.C., it will award each contract, or sub-contract for program management, construction management, planning studies, feasibility studies, architectural services, preliminary engineering, design, engineering, surveying, mapping or related services in the same manner as a contract for architectural and engineering services is negotiated under Chapter 11 of Title 40 U S.C., or an equivalent qualifications-based requirement prescribed for or by the sponsor of the airport.

**32. Foreign Market Restrictions.**

It will not allow funds provided under this Grant to be used to fund any project which uses any product or service of a foreign country during the period in which such foreign country is listed by the United States Trade Representative as denying fair and equitable market opportunities for products and suppliers of the United States in procurement and construction.

**33. Policies, Standards, and Specifications.**

It will carry out any project funded under an Airport Improvement Program Grant in accordance with policies, standards, and specifications approved by the Secretary including, but not limited to, current FAA Advisory Circulars (https://www.faa.gov/sites/faa.gov/files/aip-pfc-checklist_0.pdf) for AIP projects as of February 28, 2025.

**34. Relocation and Real Property Acquisition.**

a. It will be guided in acquiring real property, to the greatest extent practicable under State law, by the land acquisition policies in Subpart B of 49 CFR Part 24 and will pay or reimburse property owners for necessary expenses as specified in Subpart B.

b.  It will provide a relocation assistance program offering the services described in Subpart C of 49 CFR Part 24 and fair and reasonable relocation payments and assistance to displaced persons as required in Subpart D and E of 49 CFR Part 24.

c.  It will make available within a reasonable period of time prior to displacement, comparable replacement dwellings to displaced persons in accordance with Subpart E of 49 CFR Part 24.

**35. Access By Intercity Buses.**

The airport owner or operator will permit, to the maximum extent practicable, intercity buses or other modes of transportation to have access to the airport; however, it has no obligation to fund special facilities for intercity buses or for other modes of transportation.

**36. Disadvantaged Business Enterprises.**

The sponsor shall not discriminate on the basis of race, color, national origin, or sex, in the award and performance of any DOT-assisted contract covered by 49 CFR Part 26, or in the award and performance of any concession activity contract covered by 49 CFR Part 23. In addition, the sponsor shall not discriminate on the basis of race, color, national origin or sex in the administration of its Disadvantaged Business Enterprise (DBE) and Airport Concessions Disadvantaged Business Enterprise (ACDBE) programs or the requirements of 49 CFR Parts 23 and 26. The sponsor shall take all necessary and reasonable steps under 49 CFR Parts 23 and 26 to ensure nondiscrimination in the award and administration of DOT-assisted contracts, and/or concession contracts. The sponsor's DBE and ACDBE programs, as required by 49 CFR Parts 26 and 23, and as approved by DOT, are incorporated by reference in this agreement. Implementation of these programs is a legal obligation and failure to carry out its terms shall be treated as a violation of this agreement. Upon notification to the sponsor of its failure to carry out its approved program, the Department may impose sanctions as provided for under Parts 26 and 23 and may, in appropriate cases, refer the matter for enforcement under 18 U.S.C. § 1001 and/or the Program Fraud Civil Remedies Act of 1986 (31 U.S.C. §§ 3801-3809, 3812).

**37. Hangar Construction.**

If the airport owner or operator and a person who owns an aircraft agree that a hangar is to be constructed at the airport for the aircraft at the aircraft owner's expense, the airport owner or operator will grant to the aircraft owner for the hangar a long term lease that is subject to such terms and conditions on the hangar as the airport owner or operator may impose.

**38. Competitive Access.**

a.  If the airport owner or operator of a medium or large hub airport (as defined in 49 U.S.C. § 47102) has been unable to accommodate one or more requests by an air carrier for access to gates or other facilities at that airport in order to allow the air carrier to provide service to the airport or to expand service at the airport, the airport owner or operator shall transmit a report to the Secretary that:

1.  Describes the requests;

2.  Provides an explanation as to why the requests could not be accommodated; and

3.  Provides a time frame within which, if any, the airport will be able to accommodate the requests.

3-36-0102-133-2025

    b. Such report shall be due on either February 1 or August 1 of each year if the airport has been unable to accommodate the request(s) in the six-month period prior to the applicable due date.

39. **Access to Leaded Aviation Gasoline**

    a. If 100-octane low lead aviation gasoline (100LL) was made available at an airport, at any time during calendar year 2022, an airport owner or operator may not restrict or prohibit the sale of, or self-fueling with 100-octane low lead aviation gasoline.

    b. This requirement remains until the earlier of December 31, 2030, or the date on which the airport or any retail fuel seller at the airport makes available an unleaded aviation gasoline that has been authorized for use by the FAA as a replacement for 100-octane low lead aviation gasoline for use in nearly all piston-engine aircraft and engine models; and meets either an industry consensus standard or other standard that facilitates the safe use, production, and distribution of such unleaded aviation gasoline, as determined appropriate by the FAA.

    c. An airport owner or operator understands and agrees, that any violation of this grant assurance is subject to civil penalties as provided for in 49 U.S.C. § 46301(a)(8).

ARP SOP No. 6.00                                Effective Date: 10/1/2015

# AIP Grant Application Checklist

**AIRPORT NAME:** Frederick Douglass Greater Rochester International **DATE:** 2/28/2025

**SYSTEM FOR AWARD MANAGEMENT (SAM) CAGE CODE #:** **69UP1**

**SYSTEM FOR AWARD MANAGEMENT (SAM) EXPIRATION DATE:** **October 1, 2025**

This checklist (and attached instructions) is a tool to assist a grantee (airport sponsor) in identifying the requirements and considerations associated with preparing an Airport Improvement Program (AIP) grant application package for submittal to the FAA. Airport sponsors should read and consider each of the items carefully. **Some of the items can be answered by simply checking the "Yes" and "No" boxes while others require providing additional information as part of the airport's request for AIP funds.**

| Ref. | | Yes | No | N/A | Comments Attached |
|------|---|:---:|:--:|:---:|:---:|
| | **ITEMS REQUIRED TO COMPLETE APPLICATION REVIEW:** | | | | |
| 1. | Standard Form 424 *(signed)* | ☒ | ☐ | ☐ | ☐ |
| 2. | Project Cost Breakdown *(attached)* | ☒ | ☐ | ☐ | ☐ |
| 3. | Project Sketch *(at the request of the ADO)* | ☒ | ☐ | ☐ | ☐ |
| 4. | Project Narrative *(attached or within Form 5100-100/101 Part IV)* | ☒ | ☐ | ☐ | ☐ |
| 5. | Form 5100-100 (parts II – IV) *(airport development grants)* <br> Form 5100-101 (parts II- IV) *(planning grants)* | ☒ | ☐ | ☐ | ☐ |
| 6. | Bid Tabulations/Negotiated Amounts *(attached or previously submitted to the ADO)* | ☒ | ☐ | ☐ | ☐ |
| 7. | Exhibit A *(attached or previously submitted to the ADO)* | ☒ | ☐ | ☐ | ☐ |
| 8. | Title Certificate or Long Term Lease Agreement *(at the request of the ADO)* | ☐ | ☐ | ☒ | ☐ |

A-2

OMB Number: 4040-0004
Expiration Date: 11/30/2025

## Application for Federal Assistance SF-424

| *1. Type of Submission: | *2. Type of Application | * If Revision, select appropriate letter(s): |
|---|---|---|
| ☐ Preapplication | ☒ New | |
| ☒ Application | ☐ Continuation | * Other (Specify) |
| ☐ Changed/Corrected Application | ☐ Revision | |

| *3. Date Received: | 4. Applicant Identifier: |
|---|---|
| | ROC |

| 5a. Federal Entity Identifier: | *5b. Federal Award Identifier: |
|---|---|
| 3-36-0102-___-2025 | |

## State Use Only:

| 6. Date Received by State: | 7. State Application Identifier: 4908 |
|---|---|

## 8. APPLICANT INFORMATION:

*a. Legal Name: County of Monroe

| *b. Employer/Taxpayer Identification Number (EIN/TIN): | *c. UEI: |
|---|---|
| 16-6002563 | DYHNLRKCH117 |

### d. Address:

| *Street 1: | 1200 Brooks Avenue |
|---|---|
| Street 2: | |
| *City: | Rochester |
| County/Parish: | Monroe |
| *State: Province: | NY |
| *Country: | USA |
| *Zip / Postal Code | 14624-1000 |

### e. Organizational Unit:

| Department Name: | Division Name: |
|---|---|

### f. Name and contact information of person to be contacted on matters involving this application:

| Prefix: | Mrs. | *First Name: | Allison |
|---|---|---|---|
| Middle Name: | | | |
| *Last Name: | Lia | | |
| Suffix: | | | |

Title: Airport Engineer

Organizational Affiliation:
County of Monroe

| *Telephone Number: (585) 753-7109 | Fax Number: (585) 753-7009 |
|---|---|

*Email: allisonlia@monroecounty.gov

**Application for Federal Assistance SF-424**

**\*9. Type of Applicant 1: Select Applicant Type:**

  B: County Government

Type of Applicant 2:  Select Applicant Type:

  Pick an applicant type

Type of Applicant 3:  Select  Applicant Type:

  Pick an applicant type

\*Other (Specify)

**\*10. Name of Federal Agency:**

 Federal Aviation Administration

**11. Catalog of Federal Domestic Assistance Number**:

  20-106

CFDA Title:

 Airport Improvement Program

**\*12.  Funding Opportunity Number**:

\*Title:

Bipartisan Infrastructure Law (BIL) Airport Infrastructure Grant (AIG)

**13. Competition Identification Number**:

Title:

**14. Areas Affected by Project (Cities, Counties, States, etc.):**

**\*15.  Descriptive Title of Applicant's Project**:

 Terminal Rehabilitation (Design/Construction)

**Attach supporting documents as specified in agency instructions.**

**Application for Federal Assistance SF-424**

**16. Congressional Districts Of:**

*a. Applicant: NY-25                    *b. Program/Project: NY-25

Attach an additional list of Program/Project Congressional Districts if needed.

**17. Proposed Project:**

*a. Start Date: 9/1/23                    *b. End Date: 10/1/25

**18. Estimated Funding ($):**

| | |
|---|---|
| *a. Federal | $ 4,750,433 |
| *b. Applicant | |
| *c. State | $ 263,913 |
| *d. Local | $ 263,913 |
| *e. Other | $ 2,143,194 |
| *f. Program Income | $ 0 |
| *g. TOTAL | $7,421,453 |

**\*19. Is Application Subject to Review By State Under Executive Order 12372 Process?**

☐ a. This application was made available to the State under the Executive Order 12372 Process for review on _____ .

☐ b. Program is subject to E.O. 12372 but has not been selected by the State for review.

☒ c. Program is not covered by E.O. 12372.

**\*20. Is the Applicant Delinquent On Any Federal Debt?**
☐ Yes  ☒ No

**If "Yes", explain:**

21. *By signing this application, I certify (1) to the statements contained in the list of certifications** and (2) that the statements herein are true, complete and accurate to the best of my knowledge. I also provide the required assurances** and agree to comply with any resulting terms if I accept an award. I am aware that any false, fictitious, or fraudulent statements or claims may subject me to criminal, civil, or administrative penalties. (U. S. Code, Title 218, Section 1001)

☒ ** I AGREE

** The list of certifications and assurances, or an internet site where you may obtain this list, is contained in the announcement or agency specific instructions.

**Authorized Representative:**

| | | | |
|---|---|---|---|
| Prefix: | Mrs. | *First Name: | Allison |
| Middle Name: | | | |
| *Last Name: | Lia | | |
| Suffix: | | | |

*Title: Airport Engineer

| | |
|---|---|
| *Telephone Number: (585) 753-7109 | Fax Number: (585) 753-7009 |

* Email: allisonlia@monroecounty.gov

| | |
|---|---|
| *Signature of Authorized Representative: | *Date Signed: 2/28/2025 |

 U.S. Department of Transportation
**Federal Aviation Administration**

OMB CONTROL NUMBER: 2120-0569
EXPIRATION DATE: 12/31/2026

## Application for Federal Assistance (Development and Equipment Projects)

### PART II – PROJECT APPROVAL INFORMATION

| Part II - SECTION A |
|---|
| The term "Sponsor" refers to the applicant name provided in box 8 of the associated SF-424 form. |

| | |
|---|---|
| **Item 1.** Does Sponsor maintain an active registration in the System for Award Management (www.SAM.gov)? | ☒ Yes ☐ No |
| **Item 2.** Can Sponsor commence the work identified in the application in the fiscal year the grant is made or within six months after the grant is made, whichever is later? | ☒ Yes ☐ No ☐ N/A |
| **Item 3.** Are there any foreseeable events that would delay completion of the project? If yes, provide attachment to this form that lists the events. | ☐ Yes ☒ No ☐ N/A |
| **Item 4.** Will the project(s) covered by this request have impacts or effects on the environment that require mitigating measures? If yes, attach a summary listing of mitigating measures to this application and identify the name and date of the environmental document(s). | ☐ Yes ☒ No ☐ N/A |

| |
|---|
| **Item 5.** Is the project covered by this request included in an approved Passenger Facility Charge (PFC) application or other Federal assistance program? If yes, please identify other funding sources by checking all applicable boxes.    ☐ Yes ☒ No ☐ N/A |

☐ The project is included in an *approved* PFC application.

If included in an approved PFC application,

does the application *only* address AIP matching share?  ☐ Yes  ☐ No

☐ The project is included in another Federal Assistance program. Its CFDA number is below.

| |
|---|
| **Item 6.** Will the requested Federal assistance include Sponsor indirect costs as described in 2 CFR Appendix VII to Part 200, States and Local Government and Indian Tribe Indirect Cost Proposals?    ☐ Yes ☒ No ☐ N/A |

If the request for Federal assistance includes a claim for allowable indirect costs, select the applicable indirect cost rate the Sponsor proposes to apply:

☐ De Minimis rate of 10% as permitted by 2 CFR § 200.414.

☐ Negotiated Rate equal to _____ % as approved by _____ (the Cognizant Agency)
on _____ (Date) (2 CFR part 200, appendix VII).

*Note: Refer to the instructions for limitations of application associated with claiming Sponsor indirect costs.*

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| PART II - SECTION B |
| :---: |
| **Certification Regarding Lobbying** |

The declarations made on this page are under the signature of the authorized representative as identified in box 21 of form SF-424, to which this form is attached. The term "Sponsor" refers to the applicant name provided in box 8 of the associated SF-424 form.

The Authorized Representative certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the Sponsor, to any person for influencing or attempting to influence an officer or employee of an agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan, or cooperative agreement, the Authorized Representative shall complete and submit Standard Form-LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Authorized Representative shall require that the language of this certification be included in the award documents for all sub-awards at all tiers (including subcontracts, subgrants, and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by section 1352, title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

## PART II – SECTION C

The Sponsor hereby represents and certifies as follows:

**1. Compatible Land Use** – The Sponsor has taken the following actions to assure compatible usage of land adjacent to or in the vicinity of the airport:

The project is contained within airport-owned property.

**2. Defaults** – The Sponsor is not in default on any obligation to the United States or any agency of the United States Government relative to the development, operation, or maintenance of any airport, except as stated herewith:

The Sponsor is not in default on any obligation to the U.S. or any agency of the U.S. Government relative to the development, operations, and maintenance of any airport.

**3. Possible Disabilities** – There are no facts or circumstances (including the existence of effective or proposed leases, use agreements or other legal instruments affecting use of the Airport or the existence of pending litigation or other legal proceedings) which in reasonable probability might make it impossible for the Sponsor to carry out and complete the Project or carry out the provisions of the Grant Assurances, either by limiting its legal or financial ability or otherwise, except as follows:

The Sponsor has no facts/circumstances which would prevent completion of the project or compliance with Assurances.

**4. Consistency with Local Plans** – The project is reasonably consistent with plans existing at the time of submission of this application) of public agencies that are authorized by the State in which the project is located to plan for the development of the area surrounding the airport.

The project is consistent with plans of public agencies authorized by the State of New York.

**5. Consideration of Local Interest** – It has given fair consideration to the interest of communities in or near where the project may be located.

The project has given fair consideration of the interest.

**6. Consultation with Users** – In making a decision to undertake an airport development project under Title 49, United States Code, it has consulted with airport users that will potentially be affected by the project (§ 47105(a)(2)).

Yes, consultation has occurred.

**7. Public Hearings** – In projects involving the location of an airport, an airport runway or a major runway extension, it has afforded the opportunity for public hearings for the purpose of considering the economic, social, and environmental effects of the airport or runway location and its consistency with goals and objectives of such planning as has been carried out by the community and it shall, when requested by the Secretary, submit a copy of the transcript of such hearings to the Secretary. Further, for such projects, it has on its management board either voting representation from the communities where the project is located or has advised the communities that they have the right to petition the Secretary concerning a proposed project.

N/A

**8. Air and Water Quality Standards** – In projects involving airport location, a major runway extension, or runway location it will provide for the Governor of the state in which the project is located to certify in writing to the Secretary that the project will be located, designed, constructed, and operated so as to comply with applicable and air and water quality standards. In any case where such standards have not been approved and where applicable air and water quality standards have been promulgated by the Administrator of the Environmental Protection Agency, certification shall be obtained from such Administrator. Notice of certification or refusal to certify shall be provided within sixty days after the project application has been received by the Secretary.

N/A

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| PART II – SECTION C (Continued) |
| --- |

9. **Exclusive Rights** – There is no grant of an exclusive right for the conduct of any aeronautical activity at any airport owned or controlled by the Sponsor except as follows:

N/A

10. **Land** – (a) The sponsor holds the following property interest in the following areas of land, which are to be developed or used as part of or in connection with the Airport subject to the following exceptions, encumbrances, and adverse interests, all of which areas are identified on the aforementioned property map designated as Exhibit "A". [1]

N/A

The Sponsor further certifies that the above is based on a title examination by a qualified attorney or title company and that such attorney or title company has determined that the Sponsor holds the above property interests.

(b) The Sponsor will acquire within a reasonable time, but in any event prior to the start of any construction work under the Project, the following property interest in the following areas of land on which such construction work is to be performed, all of which areas are identified on the aforementioned property map designated as Exhibit "A". [1]

N/A

(c) The Sponsor will acquire within a reasonable time, and if feasible prior to the completion of all construction work under the Project, the following property interest in the following areas of land which are to be developed or used as part of or in connection with the Airport as it will be upon completion of the Project, all of which areas are identified on the aforementioned property map designated as Exhibit "A". [1]

N/A

---

[1] State the character of property interest in each area and list and identify for each all exceptions, encumbrances, and adverse interests of every kind and nature, including liens, easements, leases, etc. The separate areas of land need only be identified here by the area numbers shown on the property map.

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

## PART III – BUDGET INFORMATION – CONSTRUCTION

| SECTION A – GENERAL | |
|---|---|
| 1. Assistance Listing Number: | 20.106 |
| 2. Functional or Other Breakout: | |

| SECTION B – CALCULATION OF FEDERAL GRANT | | | |
|---|---|---|---|
| Cost Classification | Latest Approved Amount (Use only for revisions) | Adjustment + or (-) Amount (Use only for revisions) | Total Amount Required |
| 1.  Administration expense | 10,000 | 0 | 10,000 |
| 2.  Preliminary expense | 0 | 0 | 0 |
| 3.  Land, structures, right-of-way | 0 | 0 | 0 |
| 4.  Architectural engineering basic fees | 419,866 | 0 | 419,866 |
| 5.  Other Architectural engineering fees | 0 | 0 | 0 |
| 6.  Project inspection fees | 279,898 | 0 | 279,898 |
| 7.  Land development | 0 | 0 | 0 |
| 8.  Relocation Expenses | 0 | 0 | 0 |
| 9.  Relocation payments to Individuals and Businesses | 0 | 0 | 0 |
| 10. Demolition and removal | 0 | 0 | 0 |
| 11. Construction and project improvement | 6,711,689 | 0 | 6,711,689 |
| 12. Equipment | 0 | 0 | 0 |
| 13. Miscellaneous | 0 | 0 | 0 |
| 14. **Subtotal** (Lines 1 through 13) | 7,421,453 | 0 | 7,421,453 |
| 15. Estimated Income (if applicable)   New York State Grant | 2,143,194 | 0 | 2,143,194 |
| 16. Net Project Amount (Line 14 minus 15) | 5,278,259 | 0 | 5,278,259 |
| 17. **Less**: Ineligible Exclusions (Section C, line 23 g.) | 0 | 0 | 0 |
| 18. Subtotal (Lines 16 through 17) | 5,278,259 | 0 | 5,278,259 |
| 19. Federal Share requested of Line 18 | 4,750,433 | 0 | 6,750,433 |
| 20. Grantee share | 263,913 | 0 | 263,913 |
| 21. Other shares   State Share + New York State Grant | 2,407,107 | 0 | 2,407,107 |
| 22. **TOTAL PROJECT** (Lines 19, 20 & 21) | 7,421,453 | 0 | 7,421,453 |

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| SECTION C – EXCLUSIONS | |
|---|---|
| **23. Classification (Description of non-participating work)** | **Amount Ineligible for Participation** |
| a. | |
| b. | |
| c. | |
| d. | |
| e. | |
| f. | |
| g.                 Total | |

| SECTION D – PROPOSED METHOD OF FINANCING NON-FEDERAL SHARE | |
|---|---|
| **24. Grantee Share – Fund Categories** | **Amount** |
| a. Securities | 0 |
| b. Mortgages | 0 |
| c. Appropriations (by Applicant) | 263,913 |
| d. Bonds | 0 |
| e. Tax Levies | 0 |
| f. Non-Cash | 0 |
| g. Other (Explain): | 0 |
| h. **TOTAL** - Grantee share | 263,913 |
| **25. Other Shares** | **Amount** |
| a. State | 263,913 |
| b. Other | 2,143,194 |
| c. **TOTAL** - Other Shares | 2,407,107 |
| **26. TOTAL NON-FEDERAL FINANCING** | 2,671,020 |

| SECTION E – REMARKS<br>(Attach sheets if additional space is required) |
|---|
| |

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

**PART IV – PROGRAM NARRATIVE**
*(Suggested Format)*

| | |
|---|---|
| **PROJECT:** Terminal Rehabilitation (Design/Construction) | |

| | |
|---|---|
| **AIRPORT:** Frederick Douglass - Greater Rochester International Airport (ROC) | |

**1. Objective:**

The proposed project includes replacement of six public vestibules and replacement of three public elevators on the north side of the Terminal.  Three vestibules are on the upper (departures) level and three are on the lower (arrivals) level.  The original vestibules were installed in 1990, grades on the exterior walkway causes problems for the existing entrances.  The elevators were installed in 2000 and are too small to adequately serve passengers using wheelchairs.

**2. Benefits Anticipated:**

The existing vestibules and public elevators are past their useful life and increasingly out of order while replacement parts are hard to acquire.  When vestibules or elevators are out of order or restricted, the airport capacity is reduced. An aim of this project is to enhance the current vestibules to boost passenger capacity by improving efficiency and reconfiguring the existing space.

**3. Approach:** (See approved Scope of Work in Final Application)

See the Design scope in application.
The construction project will be progess with a terminal rehabilitation project funded by New York State.

**4. Geographic Location:**

Frederick Douglass - Greater Rochester International Airport (ROC) Terminal is located in Monroe County, New York.

**5. If Applicable, Provide Additional Information:**

**6. Sponsor's Representative:** (include address & telephone number)

Mr. Andrew Moore
585-753-7009
amoore@monroecounty.gov

**Project Narrative**
**Rehabilitate Terminal Building – Design/Build *BIL AIG***
**Frederick Douglass Greater Rochester International Airport (ROC)**

## Project Description

The proposed project includes rehabilitation of six public vestibules and three public elevators on the north side of the Terminal.  Three vestibules are on the upper (departures) level and three are on the lower (arrivals) level.  The original vestibules were installed in 1990, grades on the exterior walkway causes problems for the existing entrances.  The elevators were installed in 2000 and are too small to adequately serve passengers using wheelchairs. Extensive demolition and renovation of existing six sets of vestibules and elevators will be performed all within the footprint of the current building and viaduct. This project will modernize the main entrance and departure exit while significantly saving on heating and cooling costs. MEP/FP/security systems, lighting, and signage improvements will be required.

## Project Justification

The existing vestibules and public elevators are past their useful life and are increasingly out of order while replacement parts are hard to acquire.  When vestibules or elevators are out of order or restricted, the airport capacity is reduced.  An aim of this project is to enhance the current vestibules to boost passenger capacity by improving efficiency and reconfiguring the existing space.

## Project Funding

| Source | Amount |
|---|---|
| FAA BIL AIG (90%) | $4,750,433 |
| NYSDOT Share (5%) | $263,913 |
| Sponsor (5%) | $263,913 |
| Other sources (New York State Grant) | $2,143,194 |
| **Total** | **$7,421,453** |

## Project Budget

| Task | Cost |
|---|---|
| Sponsor's Admin | $ 10,000 |
| Design | $419,866 |
| Construction Inspection | $279,898 |
| Construction | $6,711,689 |
| **Total** | **$7,421,453** |

**Monroe County**
**Frederick Douglass Greater Rochester Airport**
**Terminal Rehabilitation (Design/Construct)**

## PROJECT COST BREAKDOWN

| Description | Work Code | Admin | Design/CA/CI | Construction | Total Cost | NYS GRANT FUNDED | BIL FUNDED | BIL FEDERAL SHARE 90% | BIL STATE SHARE 5.0% | BIL LOCAL SHARE 5.0% |
|---|---|---|---|---|---|---|---|---|---|---|
| Vestibules and Elevators | ST TE IM | $ 10,000 | $ 699,764 | $ 6,711,689 | $ 7,421,453 | $ 2,143,194 | $ 5,278,259 | $ 4,750,433 | $ 263,913 | $ 263,913 |
| **Totals** | | $ 10,000 | $ 699,764 | $ 6,711,689 | $ 7,421,453 | $ 2,143,194 | $ 5,278,259 | $ 4,750,433 | $ 263,913 | $ 263,913 |



TERMINAL ARRIVALS LEVEL

TERMINAL DEPARTURES LEVEL

VESTIBULE CONSTRUCTION (TYP.)

ELEVATOR CONSTRUCTION (TYP.)

VESTIBULE CONSTRUCTION

ELEVATOR CONSTRUCTION

FREDERICK DOUGLASS GREATER ROCHESTER INTERNATIONAL AIRPORT

MONROE COUNTY, NEW YORK

TERMINAL IMPROVEMENTS SKETCH

B1L GRANT

FIG-1

# EXHIBIT D

3-36-0102-134-2025

 **U.S. Department
of Transportation
Federal Aviation
Administration**

**Airports Division
Eastern Region
New York**

**New York Airports
District Office:
159-30 Rockaway
Blvd, Rm 111
Jamaica, NY 11434-
4848**

Mr. Adam Bello
County Executive
Monroe County
1200 Brooks Avenue
Rochester, NY 14624

Dear Mr. Bello:

The Grant Offer for Infrastructure Investment and Jobs Act (IIJA) Airport Infrastructure Grant (AIG) Project No. 3-36-0102-134-2025 at Frederick Douglass/Greater Rochester International Airport is attached for execution. This letter outlines the steps you must take to properly enter into this agreement and provides other useful information. Please read the conditions, special conditions, and assurances that comprise the grant offer carefully.

**You may not make any modification to the text, terms or conditions of the grant offer.**

***Steps You Must Take to Enter Into Agreement.***

To properly enter into this agreement, you must do the following:

1. The governing body must give authority to execute the grant to the individual(s) signing the grant, i.e., the person signing the document must be the sponsor's authorized representative(s) (hereinafter "authorized representative").

2. The authorized representative must execute the grant by adding their electronic signature to the appropriate certificate at the end of the agreement.

3. Once the authorized representative has electronically signed the grant, the sponsor's attorney(s) will automatically receive an email notification.

4. On the **same day or after** the authorized representative has signed the grant, the sponsor's attorney(s) will add their electronic signature to the appropriate certificate at the end of the agreement.

5. If there are co-sponsors, the authorized representative(s) and sponsor's attorney(s) must follow the above procedures to fully execute the grant and finalize the process. Signatures must be obtained and finalized no later than **August 28, 2025.**

6. The fully executed grant will then be automatically sent to all parties as an email attachment.

***Payment.*** Subject to the requirements in 2 CFR § 200.305 (Federal Payment), each payment request for reimbursement under this grant must be made electronically via the Delphi eInvoicing System. Please see the attached Grant Agreement for more information regarding the use of this System.

1

3-36-0102-134-2025

**Project Timing.** The terms and conditions of this agreement require you to complete the project without undue delay and no later than the Period of Performance end date (1,460 days from the grant execution date). We will be monitoring your progress to ensure proper stewardship of these Federal funds. We expect you to submit payment requests for reimbursement of allowable incurred project expenses consistent with project progress. Your grant may be placed in "inactive" status if you do not make draws on a regular basis, which will affect your ability to receive future grant offers. Costs incurred after the Period of Performance ends are generally not allowable and will be rejected unless authorized by the FAA in advance.

**Reporting.** Until the grant is completed and closed, you are responsible for submitting formal reports as follows:

> ➤ For all grants, you must submit by December 31st of each year this grant is open:
>   1. A signed/dated SF-270 (Request for Advance or Reimbursement for non-construction projects) or SF-271 or equivalent (Outlay Report and Request for Reimbursement for Construction Programs), and
>
>   2. An SF-425 (Federal Financial Report).
>
> ➤ For non-construction projects, you must submit FAA Form 5100-140, Performance Report within 30 days of the end of the Federal fiscal year.
>
> ➤ For construction projects, you must submit FAA Form 5370-1, Construction Progress and Inspection Report, within 30 days of the end of each Federal fiscal quarter.

**Audit Requirements.** As a condition of receiving Federal assistance under this award, you must comply with audit requirements as established under 2 CFR Part 200. Subpart F requires non-Federal entities that expend $1,000,000 or more in Federal awards to conduct a single or program specific audit for that year. Note that this includes Federal expenditures made under other Federal-assistance programs. Please take appropriate and necessary action to ensure your organization will comply with applicable audit requirements and standards.

**Closeout.** Once the project(s) is completed and all costs are determined, we ask that you work with your FAA contact indicated below to close the project without delay and submit the necessary final closeout documentation as required by your Region/Airports District Office.

**FAA Contact Information.** Glen Conacchio, (718) 995-5761, glen.l.conacchio@faa.gov is the assigned program manager for this grant and is readily available to assist you and your designated representative with the requirements stated herein.

We sincerely value your cooperation in these efforts and look forward to working with you to complete this important project.

Sincerely,

Ms. Evelyn Martinez
Manager, New York Airports District Office

2

3-36-0102-134-2025



**U.S. Department
of Transportation
Federal Aviation
Administration**

## FY 2025 AIRPORT INFRASTRUCTURE GRANT
## GRANT AGREEMENT
### Part I - Offer

Federal Award Offer Date

Airport/Planning Area                Frederick Douglass/Greater Rochester International Airport

Airport Infrastructure Grant
Number                               3-36-0102-134-2025

Unique Entity Identifier             DYHNLRKCH117

TO:     County of Monroe
        **(herein called the "Sponsor") (For Co-Sponsors, list all Co-Sponsor names. The word "Sponsor" in this Grant Agreement also
        applies to a Co-Sponsor.)**

FROM:   **The United States of America** (acting through the Federal Aviation Administration, herein
        called the "FAA")

**WHEREAS**, the Sponsor has submitted to the FAA a Project Application dated April 30, 2025, for a grant
of Federal funds for a project at or associated with the Frederick Douglass/Greater Rochester
International Airport, which is included as part of this Grant Agreement; and

**WHEREAS**, the FAA has approved a project for the Frederick Douglass/Greater Rochester International
Airport (herein called the "Project") consisting of the following:

    Reconstruct the existing terminal building including fire alarm system - 69% eligibility (limited
to wiring, conduit and labor only) - Phase 2 Design and Construction

which is more fully described in the Project Application.

**NOW THEREFORE**, Pursuant to and for the purpose of carrying out the Infrastructure Investment and
Jobs Act(IIJA)  (Public Law (P.L.) 117-58) of 2021; FAA Reauthorization Act of 2024 (P.L. 118-63); and the
representations contained in the Project Application; and in consideration of (a) the Sponsor's
adoption and ratification of the attached Grant Assurances dated April 2025, interpreted and applied
consistent

3

3-36-0102-134-2025

with the FAA Reauthorization Act of 2024; (b) the Sponsor's acceptance of this Offer; and (c) the benefits to accrue to the United States and the public from the accomplishment of the Project and compliance with the Grant Assurance and conditions as herein provided;

**THE FEDERAL AVIATION ADMINISTRATION, FOR AND ON BEHALF OF THE UNITED STATES, HEREBY OFFERS AND AGREES to pay (90) % of the allowable costs incurred accomplishing the Project as the United States share of the Project.**

**Assistance Listings Number (Formerly CFDA Number): 20.106**

**This Offer is made on and SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS:**

## CONDITIONS

1. **Maximum Obligation.** The maximum obligation of the United States payable under this Offer is $1,620,848.

   The following amounts represent a breakdown of the maximum obligation for the purpose of establishing allowable amounts for any future grant amendment, which may increase the foregoing maximum obligation of the United States under the provisions of 49 U.S.C. § 47108(b):
   $0 for planning
   $1,620,848 for airport development or noise program implementation; and,
   $0 for land acquisition.

2. **Grant Performance.** This Grant Agreement is subject to the following Federal award requirements:

   a.  Period of Performance:

      1.  Shall start on the date the Sponsor formally accepts this Agreement and is the date signed by the last Sponsor signatory to the Agreement. The end date of the Period of Performance is 4 years (1,460 calendar days) from the date of acceptance. The Period of Performance end date shall not affect, relieve, or reduce Sponsor obligations and assurances that extend beyond the closeout of this Grant Agreement.

      2.  Means the total estimated time interval between the start of an initial Federal award and the planned end date, which may include one or more funded portions or budget periods (2 Code of Federal Regulations (CFR) § 200.1) except as noted in 49 U.S.C § 47142(b).

   b.  Budget Period:

      1.  For this Grant is 4 years (1,460 calendar days) and follows the same start and end date as the Period of Performance provided in paragraph 2(a)(1). Pursuant to 2 CFR § 200.403(h), the Sponsor may charge to the Grant only allowable costs incurred during the Budget Period and as stated in 49 U.S.C § 47142(b). Eligible project-related costs incurred on or after November 15, 2021 that comply with all Federal funding procurement requirements and FAA standards are allowable costs.

      2.  Means the time interval from the start date of a funded portion of an award to the end date of that funded portion during which Sponsors are authorized to expend the funds awarded, including any funds carried forward or other revisions pursuant to 2 CFR § 200.308.

   c.  Close Out and Termination

4

Unless the FAA authorizes a written extension, the Sponsor must submit all Grant closeout documentation and liquidate (pay-off) all obligations incurred under this award no later than 120 calendar days after the end date of the Period of Performance. If the Sponsor does not submit all required closeout documentation within this time period, the FAA will proceed to close out the grant within one year of the Period of Performance end date with the information available at the end of 120 days (2 CFR § 200.344). The FAA may terminate this agreement and all of its obligations under this agreement if any of the following occurs:

(a) (1) The Sponsor fails to obtain or provide any Sponsor grant contribution as required by the agreement;

(2) A completion date for the Project or a component of the Project is listed in the agreement and the Recipient fails to meet that milestone by six months after the date listed in the agreement;

(3) The Sponsor fails to comply with the terms and conditions of this agreement, including a material failure to comply with the Project Schedule even if it is beyond the reasonable control of the Sponsor;

(4) Circumstances cause changes to the Project that the FAA determines are inconsistent with the FAA's basis for selecting the Project to receive a grant; or

(5) The FAA determines that termination of this agreement is in the public interest.

(b) In terminating this agreement under this section, the FAA may elect to consider only the interests of the FAA.

(c) The Sponsor may request that the FAA terminate the agreement under this section.

3. **Ineligible or Unallowable Costs.** In accordance with P.L. 117-58, Division J, Title VIII, and 49 U.S.C. § 47110, the Sponsor is prohibited from including any costs in the grant funded portions of the project that the FAA has determined to be ineligible or unallowable, including costs incurred to carry out airport development implementing policies and initiatives repealed by Executive Order 14148, provided such costs are not otherwise permitted by statute.

4. **Indirect Costs - Sponsor.** The Sponsor may charge indirect costs under this award by applying the indirect cost rate identified in the project application as accepted by the FAA, to allowable costs for Sponsor direct salaries and wages.

5. **Determining the Final Federal Share of Costs.** The United States' share of allowable project costs will be made in accordance with 49 U.S.C. § 47109, the regulations, policies, and procedures of the Secretary of Transportation ("Secretary"), and any superseding legislation. Final determination of the United States' share will be based upon the final audit of the total amount of allowable project costs and settlement will be made for any upward or downward adjustments to the Federal share of costs.

6. **Completing the Project Without Delay and in Conformance with Requirements.** The Sponsor must carry out and complete the project without undue delays and in accordance with this Agreement, IIJA (P.L. 117-58), and the regulations, policies, and procedures of the Secretary. Per 2 CFR

§ 200.308, the Sponsor agrees to report and request prior FAA approval for any disengagement from performing the project that exceeds three months or a 25 percent reduction in time devoted to the project. The report must include a reason for the project stoppage. The Sponsor also agrees to comply with the grant assurances, which are part of this Agreement.

7. **Amendments or Withdrawals before Grant Acceptance.** The FAA reserves the right to amend or withdraw this offer at any time prior to its acceptance by the Sponsor.

8. **Offer Expiration Date.** This offer will expire and the United States will not be obligated to pay any part of the costs of the project unless this offer has been accepted by the Sponsor on or before August 28, 2025, or such subsequent date as may be prescribed in writing by the FAA.

9. **Improper Use of Federal Funds and Mandatory Disclosure.**

    a.  The Sponsor must take all steps, including litigation if necessary, to recover Federal funds spent fraudulently, wastefully, or in violation of Federal antitrust statutes, or misused in any other manner for any project upon which Federal funds have been expended. For the purposes of this Grant Agreement, the term "Federal funds" means funds however used or dispersed by the Sponsor, that were originally paid pursuant to this or any other Federal grant agreement. The Sponsor must obtain the approval of the Secretary as to any determination of the amount of the Federal share of such funds. The Sponsor must return the recovered Federal share, including funds recovered by settlement, order, or judgment, to the Secretary. The Sponsor must furnish to the Secretary, upon request, all documents and records pertaining to the determination of the amount of the Federal share or to any settlement, litigation, negotiation, or other efforts taken to recover such funds. All settlements or other final positions of the Sponsor, in court or otherwise, involving the recovery of such Federal share require advance approval by the Secretary.

    b.  The Sponsor, a recipient, and a subrecipient under this Federal grant must promptly comply with the mandatory disclosure requirements as established under 2 CFR § 200.113, including reporting requirements related to recipient integrity and performance in accordance with Appendix XII to 2 CFR Part 200.

10. **United States Not Liable for Damage or Injury.** The United States is not responsible or liable for damage to property or injury to persons which may arise from, or be incident to, compliance with this Grant Agreement.

11. **System for Award Management (SAM) Registration and Unique Entity Identifier (UEI).**

    a.  Requirement for System for Award Management (SAM): Unless the Sponsor is exempted from this requirement under 2 CFR § 25.110, the Sponsor must maintain the currency of its information in the SAM until the Sponsor submits the final financial report required under this Grant, or receives the final payment, whichever is later. This requires that the Sponsor review and update the information at least annually after the initial registration and more frequently if required by changes in information or another award term. Additional information about registration procedures may be found at the SAM website (currently at http://www.sam.gov).

    b.  Unique entity identifier (UEI) means a 12-character alpha-numeric value used to identify a specific commercial, nonprofit or governmental entity. A UEI may be obtained from SAM.gov at https://sam.gov/content/entity-registration.

12. **Electronic Grant Payment(s).** Unless otherwise directed by the FAA, the Sponsor must make each payment request under this Agreement electronically via the Delphi eInvoicing System for Department of Transportation (DOT) Financial Assistance Awardees.

13. **Informal Letter Amendment of IIJA Projects.** If, during the life of the project, the FAA determines that the maximum grant obligation of the United States exceeds the expected needs of the Sponsor by $25,000 or five percent (5%), whichever is greater, the FAA can issue a letter amendment to the Sponsor unilaterally reducing the maximum obligation.

The FAA can, subject to the availability of Federal funds, also issue a letter to the Sponsor increasing the maximum obligation if there is an overrun in the total actual eligible and allowable project costs to cover the amount of the overrun provided it will not exceed the statutory limitations for grant amendments. The FAA's authority to increase the maximum obligation does not apply to the "planning" component of Condition No. 1, Maximum Obligation.

The FAA can also issue an informal letter amendment that modifies the grant description to correct administrative errors or to delete work items if the FAA finds it advantageous and in the best interests of the United States.

An informal letter amendment has the same force and effect as a formal grant amendment.

14. **Environmental Standards.** The Sponsor is required to comply with all applicable environmental standards, as further defined in the Grant Assurances, for all projects in this grant. If the Sponsor fails to comply with this requirement, the FAA may suspend, cancel, or terminate this Grant Agreement.

15. **Financial Reporting and Payment Requirements.** The Sponsor will comply with all Federal financial reporting requirements and payment requirements, including submittal of timely and accurate reports.

16. **Buy American.** Unless otherwise approved in advance by the FAA, in accordance with 49 U.S.C. § 50101, the Sponsor will not acquire or permit any contractor or subcontractor to acquire any steel or manufactured goods produced outside the United States to be used for any project for which funds are provided under this Grant. The Sponsor will include a provision implementing Buy American in every contract and subcontract awarded under this Grant.

17. **Build America, Buy American.** The Sponsor must comply with the requirements under the Build America, Buy America Act (P.L. 117-58).

18. **Maximum Obligation Increase.** In accordance with 49 U.S.C. § 47108(b)(3), as amended, the maximum obligation of the United States, as stated in Condition No. 1, Maximum Obligation, of this Grant:

    a. May not be increased for a planning project;

    b. May be increased by not more than 15 percent for development projects, if funds are available;

    c. May be increased by not more than the greater of the following for a land project, if funds are available:

        1. 15 percent; or

        2. 25 percent of the total increase in allowable project costs attributable to acquiring an interest in the land.

If the Sponsor requests an increase, any eligible increase in funding will be subject to the United States Government share as provided in IIJA (P.L. 117-58), or other superseding legislation if applicable, for the fiscal year appropriation with which the increase is funded. The FAA is not responsible for the same Federal share provided herein for any amount increased over the initial grant amount. The FAA may adjust the Federal share as applicable through an informal letter of amendment.

19. **Audits for Sponsors.**

PUBLIC SPONSORS. The Sponsor must provide for a Single Audit or program-specific audit in accordance with 2 CFR Part 200. The Sponsor must submit the audit reporting package to the Federal Audit Clearinghouse on the Federal Audit Clearinghouse's Internet Data Entry System at http://harvester.census.gov/facweb/. Upon request of the FAA, the Sponsor shall provide one copy of the completed audit to the FAA. Sponsors that expend less than $1,000,000 in Federal awards and are exempt from Federal audit requirements must make records available for review or audit by the appropriate Federal agency officials, State, and Government Accountability Office. The FAA and other appropriate Federal agencies may request additional information to meet all Federal audit requirements.

20. **Suspension or Debarment.** When entering into a "covered transaction" as defined by 2 CFR § 180.200, the Sponsor must:

   a. Verify the non-Federal entity is eligible to participate in this Federal program by:

      1. Checking the System for Award Management (SAM.gov) exclusions to determine if the non-Federal entity is excluded or disqualified; or

      2. Collecting a certification statement from the non-Federal entity attesting they are not excluded or disqualified from participating; or

      3. Adding a clause or condition to covered transactions attesting the individual or firm are not excluded or disqualified from participating.

   b. Require prime contractors to comply with 2 CFR § 180.330 when entering into lower-tier transactions with their contractors and sub-contractors.

   c. Immediately disclose in writing to the FAA whenever (1) the Sponsor learns it has entered into a covered transaction with an ineligible entity or (2) the Public Sponsor suspends or debars a contractor, person, or entity.

21. **Ban on Texting While Driving.**

   a. In accordance with Executive Order 13513, Federal Leadership on Reducing Text Messaging While Driving, October 1, 2009, and DOT Order 3902.10, Text Messaging While Driving, December 30, 2009, the Sponsor is encouraged to:

      1. Adopt and enforce workplace safety policies to decrease crashes caused by distracted drivers including policies to ban text messaging while driving when performing any work for, or on behalf of, the Federal government, including work relating to a grant or subgrant.

      2. Conduct workplace safety initiatives in a manner commensurate with the size of the business, such as:

         i. Establishment of new rules and programs or re-evaluation of existing programs to prohibit text messaging while driving; and

    ii.   Education, awareness, and other outreach to employees about the safety risks associated with texting while driving.

  b.  The Sponsor must insert the substance of this clause on banning texting while driving in all subgrants, contracts, and subcontracts funded with this Grant.

22. **Trafficking in Persons.**

   *1. Posting of contact information.*

    a.  The Sponsor must post the contact information of the national human trafficking hotline (including options to reach out to the hotline such as through phone, text, or TTY) in all public airport restrooms.

   *2. Provisions applicable to a recipient that is a private entity.*

    a.  Under this Grant, the recipient, its employees, subrecipients under this Grant, and subrecipients employees must not engage in:

      i.   Severe forms of trafficking in persons;

      ii.   The procurement of commercial sex act during the period of time that the grant or cooperative agreement is in effect;

      iii.   The use of forced labor in the performance of this grant; or any subaward; or

      iv.   Acts that directly support or advance trafficking in person, including the following acts:

        a)  Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;

        b)  Failing to provide return transportation of pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:

          1.   Exempted from the requirement to provide or pay for such return transportation by the federal department or agency providing or entering into the grant; or

          2.   The employee is a victim of human trafficking seeking victim services or legal redress in the country of employment or witness in a human trafficking enforcement action;

        c)  Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;

        d)  Charging recruited employees a placement or recruitment fee; or

        e)  Providing or arranging housing that fails to meet the host country's housing and safety standards.

    b.  The FAA, may unilaterally terminate this Grant, or take any remedial actions authorized by 22 U.S.C 7104b(c), without penalty, if any private entity under this Grant;

      i.   Is determined to have violated a prohibition in paragraph (2)(a) of this Grant;

  ii. Has an employee that is determined to have violated a prohibition in paragraph (2)(a) of this Grant through conduct that is either:

   a) Associated with performance under this Grant; or

   b) Imputed to the recipient or subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR Part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by the FAA at 2 CFR Part 1200.

3. *Provision applicable to a recipient other than a private entity.*

 a. The FAA may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C 7104b(c), without penalty, if subrecipient than is a private entity under this award;

  i. Is determined to have violated a prohibition in paragraph (2)(a) of this Grant or

  ii. Has an employee that is determined to have violated a prohibition in paragraph (2)(a) of this Grant through conduct that is either:

   a) Associated with performance under this Grant; or

   b) Imputed to the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR Part 180, "OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)," as implemented by our agency at 2 CFR Part 1200.

4. *Provisions applicable to any recipient.*

 a. The recipient must inform the FAA and the DOT Inspector General, immediately of any information you receive from any source alleging a violation of a prohibition in paragraph (2)(a) of this Grant.

 b. The FAA's right to unilaterally terminate this Grant as described in paragraph (2)(b) or (3)(a) of this Grant, implements the requirements of 22 U.S.C. chapter 78 and is addition to all other remedies for noncompliance that are available to the FAA under this Grant:

 c. The recipient must include the requirements of paragraph (2)(a) of this Grant award term in any subaward it makes to a private entity.

 d. If applicable, the recipient must also comply with the compliance plan and certification requirements in 2 CFR 175.105(b).

5. *Definitions.* For purposes of this Grant award, term:

 a. "Employee" means either:

  i. An individual employed by the recipient or a subrecipient who is engaged in the performance of the project or program under this Grant; or

  ii. Another person engaged in the performance of the project or program under this Grant and not compensated by the recipient including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing or requirements.

 b. "Private entity" means:

3-36-0102-134-2025

    i. Any entity, including for profit organizations, nonprofit organizations, institutions of higher education, and hospitals. The term does not include foreign public entities, Indian Tribes, local governments, or states as defined in 2 CFR 200.1.

    ii. The terms "severe forms of trafficking in persons," "commercial sex act," "sex trafficking," "Abuse or threatened abuse of law or legal process," "coercion," "debt bondage," and "involuntary servitude" have the meaning given at section 103 of the TVPA, as amended (22 U.S.C. 7102).

23. **IIJA Funded Work Included in a PFC Application.** Within 120 days of acceptance of this Grant Agreement, the Sponsor must submit to the FAA an amendment to any approved Passenger Facility Charge (PFC) application that contains an approved PFC project also covered under this Grant Agreement as described in the project application. The airport sponsor may not make any expenditure under this Grant Agreement until project work addressed under this Grant Agreement is removed from an approved PFC application by amendment.

24. **Exhibit "A" Property Map.** The Exhibit "A" Property Map dated June 21, 2021, is incorporated herein by reference or is submitted with the project application and made part of this Grant Agreement.

25. **Employee Protection from Reprisal.** In accordance with 2 CFR § 200.217 and 41 U.S.C. § 4701, an employee of a grantee, subgrantee contractor, recipient or subrecipient must not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (a)(2) of 41 U.S.C. 4712 information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant. The grantee, subgrantee, contractor, recipient, or subrecipient must inform their employees in writing of employee whistleblower rights and protections under 41 U.S.C. § 4712. See statutory requirements for whistleblower protections at 10 U.S.C. § 4701, 41 U.S.C. § 4712, 41 U.S.C. § 4304, and 10 U.S.C. § 4310.

26. **Prohibited Telecommunications and Video Surveillance Services and Equipment.** The Sponsor agrees to comply with mandatory standards and policies relating to use and procurement of certain telecommunications and video surveillance services or equipment in compliance with the National Defense Authorization Act [P.L. 115-232 § 889(f)] and 2 CFR § 200.216.

27. **Critical Infrastructure Security and Resilience.** The Sponsor acknowledges that it has considered and addressed physical and cybersecurity and resilience in its  project planning, design, and oversight, as determined by the DOT and the Department of Homeland Security (DHS).  For airports that do not have specific DOT or DHS cybersecurity requirements, the FAA encourages the voluntary adoption of the cybersecurity requirements from the Transportation Security Administration and Federal Security Director identified for security risk Category X airports.

28. **Title VI of the Civil Rights Act.**  As a condition of a grant award, the Sponsor shall demonstrate that it complies with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d et seq) and implementing regulations (49 CFR part 21), the Airport and Airway Improvement Act of 1982 (49 U.S.C. § 47123), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 et seq.), the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101, et seq.), U.S. Department of Transportation and Federal Aviation Administration (FAA) Assurances, and other relevant civil rights statutes, regulations, or authorities, including any amendments or updates thereto. This may include, as applicable, providing a current Title VI

11

3-36-0102-134-2025

Program Plan to the FAA for approval, in the format and according to the timeline required by the FAA, and other information about the communities that will be benefited and impacted by the project. A completed FAA Title VI Pre-Grant Award Checklist is required for every grant application, unless excused by the FAA. The Sponsor shall affirmatively ensure that when carrying out any project supported by this grant that it complies with all federal nondiscrimination and civil rights laws based on race, color, national origin, sex, creed, age, disability, genetic information, in consideration for federal financial assistance. The Department's and FAA's Office of Civil Rights may provide resources and technical assistance to recipients to ensure full and sustainable compliance with Federal civil rights requirements. Failure to comply with civil rights requirements will be considered a violation of the agreement or contract and be subject to any enforcement action as authorized by law.

29. **FAA Reauthorization Act of 2024.** This grant agreement is subject to the terms and conditions contained herein including the terms known as the Grant Assurances as they were published in the Federal Register April 2025. On May 16, 2024, the FAA Reauthorization Act of 2024 made certain amendments to 49 U.S.C. chapter 471. The Reauthorization Act will require the FAA to make certain amendments to the assurances in order to best achieve consistency with the statute. Federal law requires that the FAA publish any amendments to the assurances in the Federal Register along with an opportunity to comment. In order not to delay the offer of this grant, the existing assurances are attached herein; however, the FAA shall interpret and apply these assurances consistent with the Reauthorization Act. To the extent there is a conflict between the assurances and Federal statutes, the statutes shall apply. The full text of the FAA Reauthorization Act of 2024 is at

https://www.congress.gov/bill/118th-congress/house-bill/3935/text

30. **Applicable Federal Anti-Discrimination Laws.** Pursuant to Section (3)(b)(iv), Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, the sponsor:

    a. Agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of 31 U.S.C. 3729(b)(4); and
    b. certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws.

31. **Federal Law and Public Policy Requirements.** The Sponsor shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Sponsor will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in and the enforcement of Federal immigration law.

32. **National Airspace System Requirements**
    a. The Sponsor shall cooperate with FAA activities installing, maintaining, replacing, improving, or operating equipment and facilities in or supporting the National Airspace System, including waiving permitting requirements and other restrictions affecting those activities to the maximum extent possible, and assisting the FAA in securing waivers of permitting or other

12

restrictions from other authorities. The Sponsor shall not take actions that frustrate or prevent the FAA from installing, maintaining, replacing, improving, or operating equipment and facilities in or supporting the National Airspace System.

b.  If the FAA determines that the Sponsor has violated subsection (a), the FAA may impose a remedy, including:

    (1)  additional conditions on the award;

    (2)  consistent with 49 U.S.C chapter 471, any remedy permitted under 2 C.F.R. 200.339–200.340, including withholding of payments; disallowance of previously reimbursed costs, requiring refunds from the Recipient to the USDOT; suspension or termination of the award; or suspension and debarment under 2 CFR part 180; or

    (3)  any other remedy legally available.

c.  In imposing a remedy under this condition, the FAA may elect to consider the interests of only the FAA.

d.  The Sponsor acknowledges that amounts that the FAA requires the Sponsor to refund to the FAA due to a remedy under this condition constitute a debt to the Federal Government that the FAA may collect under 2 CFR 200.346 and the Federal Claims Collection Standards (31 CFR parts 900–904).

33. **Signage Costs for Construction Projects.**  The airport grant recipient hereby agrees that it will require the prime contractor of a Federally- assisted airport improvement project to post signs consistent with a DOT/FAA-prescribed format, as may be requested by the DOT/FAA, and further agrees to remove any signs posted in response to requests received prior to February 1, 2025.

34. **Title 8 - U.S.C., Chapter 12, Subchapter II - Immigration.** The sponsor will follow applicable federal laws pertaining to Subchapter 12, and be subject to the penalties set forth in 8 U.S.C. § 1324, Bringing in and harboring certain aliens, and 8 U.S.C. § 1327, Aiding or assisting certain aliens to enter.

3-36-0102-134-2025

## SPECIAL CONDITIONS

35. **Airport Layout Plan (ALP).** The Sponsor understands and agrees to update the ALP to reflect the construction to standards satisfactory to the FAA and submit it in final form to the FAA as prescribed by 49 U.S.C. § 47107(a)(16). It is further mutually agreed that the reasonable cost of developing said ALP is an allowable cost within the scope of this project, if applicable. Airport Sponsors Grant Assurance 29 further addresses the Sponsor's statutory obligations to maintain an ALP in accordance with 49 U.S.C. § 47107(a)(16).

36. **Disadvantaged Business Enterprise (DBE)/Airport Concessions Disadvantaged Business Enterprise (ACDBE) Program.** The Sponsor understands and agrees that they will not submit payment reimbursement requests until the Sponsor has received from the FAA Office of Civil Rights approval of its DBE Program (reflecting compliance with 49 CFR Part 26, including any amendments thereto), and, if applicable, its ACDBE program (reflecting compliance with 49 CFR Part 23, including any amendments thereto).

37. **Equipment Acquisition.** The Sponsor understands and agrees that any equipment acquired through this Grant is considered a *facility* as that term is used in the Grant Assurances. Further, the equipment must be only operated by the Sponsor. The Sponsor agrees that it will maintain the equipment and use it exclusively at the airport for airport purposes.

38. **Protection of Runway Protection Zone - Airport Property.** The Sponsor agrees to prevent the erection or creation of any structure, place of public assembly, or other use in the Runway Protection Zone, as depicted on the Exhibit "A": Property Map, except for Navigational Aids (NAVAIDS) that are fixed by their functional purposes or any other structure permitted by the FAA. The Sponsor further agrees that any existing structures or uses within the Runway Protection Zone will be cleared or discontinued by the Sponsor unless approved by the FAA.

39. **Building IIJA Proration.** For purposes of computing the United States' share of the allowable project costs of the project, the allowable cost of the Fire Alarm System Labor and Wiring included in the project must not exceed 69.0 percent of the actual cost of the entire building.

40. **Plans and Specifications Prior to Bidding.** The Sponsor agrees that it will submit plans and specifications for FAA review prior to advertising for bids.

41. **Plans and Specifications Approval Based Upon Certification.** The FAA and the Sponsor agree that the FAA's approval of the Sponsor's Plans and Specification is based primarily upon the Sponsor's certification to carry out the project in accordance with policies, standards, and specifications approved by the FAA. The Sponsor understands that:

    a. The Sponsor's certification does not relieve the Sponsor of the requirement to obtain prior FAA approval for modifications to published FAA airport development grant standards or to notify the FAA of any limitations to competition within the project;

    b. The FAA's acceptance of a Sponsor's certification does not limit the FAA from reviewing appropriate project documentation for the purpose of validating the certification statements; and

    c. If the FAA determines that the Sponsor has not complied with their certification statements, the FAA will review the associated project costs to determine whether such costs are allowable under this Grant and associated grants.

3-36-0102-134-2025

42. **Consultant Contract and Cost Analysis.** The Sponsor understands and agrees that no reimbursement will be made on the consultant contract portion of this Grant until the FAA has received the consultant contract, the Sponsor's analysis of costs, and the independent fee estimate.

43. **Mothers' Rooms.** As a small, medium, or large hub airport, the sponsor certifies it is in compliance with 49 U.S.C. § 47107(w).

44. **Buy American Executive Orders.** The Sponsor agrees to abide by applicable Executive Orders in effect at the time this Grant Agreement is executed, including Executive Order 14005, Ensuring the Future Is Made in All of America by All of America's Workers.

45. **Usable Unit of Development.** The FAA and the Sponsor agree this Grant only funds a portion of the overall project. The FAA makes no commitment of funding beyond what is provided herein. In accepting this award, the airport Sponsor understands and agrees that the work described in this Grant Agreement must be incorporated into a safe, useful, and usable unit of development completed within a reasonable timeframe [49 USC § 47106(a)(4)]. This safe, useful, usable unit of development must be completed regardless of whether the Sponsor receives any additional federal funding.

46. **Duffy Plaintiff Special Term**. Pursuant to the court's preliminary injunction order in State of California v. Duffy, 1:25-cv-00208-JJM-PAS (D.R.I.) (June 19, 2025), DOT will not impose or enforce the challenged immigration enforcement condition* or any materially similar terms and conditions, to any grant funds awarded, directly or indirectly, to Plaintiff States or local government entities within those States (collectively referred to as "Plaintiff State Entities"), or otherwise rescind, withhold, terminate, or take other adverse action, absent specific statutory authority, based on the challenged immigration enforcement condition while DOT is subject to an injunction. DOT will not require Plaintiff State Entities to make any certification or other representation related to compliance with the challenged immigration enforcement condition nor will DOT construe acceptance of funding from DOT as certification as to the challenged immigration enforcement condition.

*The challenged immigration enforcement condition:

"[T]he Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law."

15

3-36-0102-134-2025

The Sponsor's acceptance of this Offer and ratification and adoption of the Project Application incorporated herein shall be evidenced by execution of this instrument by the Sponsor, as hereinafter provided, and this Offer and Acceptance shall comprise a Grant Agreement, constituting the contractual obligations and rights of the United States and the Sponsor with respect to the accomplishment of the Project and compliance with the Grant Assurances, terms, and conditions as provided herein. Such Grant Agreement shall become effective upon the Sponsor's acceptance of this Offer.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[1]

                                    UNITED STATES OF AMERICA
                                    FEDERAL AVIATION ADMINISTRATION


                                    _____
                                                *(Signature)*


                                    _____
                                                *(Typed Name)*


                                    _____
                                            *(Title of FAA Official)*

---

[1] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

16

3-36-0102-134-2025

**Part II - Acceptance**

The Sponsor does hereby ratify and adopt all assurances, statements, representations, warranties, covenants, and agreements contained in the Project Application and incorporated materials referred to in the foregoing Offer, and does hereby accept this Offer and by such acceptance agrees to comply with all of the Grant Assurances, terms, and conditions in this Offer and in the Project Application.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[2]

Dated _____

County of Monroe
_____
*(Name of Sponsor)*

_____
*(Signature of Sponsor's Authorized Official)*

By: _____
*(Typed Name of Sponsor's Authorized Official)*

Title: _____
*(Title of Sponsor's Authorized Official)*

---

[2] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

3-36-0102-134-2025

## CERTIFICATE OF SPONSOR'S ATTORNEY

I, _____, acting as Attorney for the Sponsor do hereby certify:

That in my opinion the Sponsor is empowered to enter into the foregoing Grant Agreement under the laws of the State of ___New York___. Further, I have examined the foregoing Grant Agreement and the actions taken by said Sponsor and Sponsor's official representative, who has been duly authorized to execute this Grant Agreement, which is in all respects due and proper and in accordance with the laws of the said State; the Infrastructure Investment and Jobs Act (IIJA) (P.L. 117-58) of 2021; FAA Reauthorization Act of 2024 (P.L. 118-63); and the representations contained in the Project Application. In addition, for grants involving projects to be carried out on property not owned by the Sponsor, there are no legal impediments that will prevent full performance by the Sponsor. Further, it is my opinion that the said Grant Agreement constitutes a legal and binding obligation of the Sponsor in accordance with the terms thereof.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[3]

Dated at _____

By: _____
*(Signature of Sponsor's Attorney)*

---

[3] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

18

3-36-0102-134-2025

# ASSURANCES
## AIRPORT SPONSORS

**A. General.**

1. These assurances shall be complied with in the performance of grant agreements for airport development, airport planning, and noise compatibility program grants for airport sponsors.

2. These assurances are required to be submitted as part of the project application by sponsors requesting funds under the provisions of Title 49, U.S.C., subtitle VII, as amended. As used herein, the term "public agency sponsor" means a public agency with control of a public-use airport; the term "private sponsor" means a private owner of a public-use airport; and the term "sponsor" includes both public agency sponsors and private sponsors.

3. Upon acceptance of this grant offer by the sponsor, these assurances are incorporated in and become part of this Grant Agreement.

**B. Duration and Applicability.**

1. **Airport Development or Noise Compatibility Program Projects Undertaken by a Public Agency Sponsor.**

   The terms, conditions, and assurances of this Grant Agreement shall remain in full force and effect throughout the useful life of the facilities developed or equipment acquired for an airport development or noise compatibility program project, or throughout the useful life of the project items installed within a facility under a noise compatibility program project, but in any event not to exceed twenty (20) years from the date of acceptance of a grant offer of Federal funds for the project. However, there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport. There shall be no limit on the duration of the terms, conditions, and assurances with respect to real property acquired with federal funds. Furthermore, the duration of the Civil Rights assurance shall be specified in the assurances.

2. **Airport Development or Noise Compatibility Projects Undertaken by a Private Sponsor.**

   The preceding paragraph (1) also applies to a private sponsor except that the useful life of project items installed within a facility or the useful life of the facilities developed or equipment acquired under an airport development or noise compatibility program project shall be no less than ten (10) years from the date of acceptance of Federal aid for the project.

3. **Airport Planning Undertaken by a Sponsor.**

   Unless otherwise specified in this Grant Agreement, only Assurances 1, 2, 3, 5, 6, 13, 18, 23, 25, 30, 32, 33, 34, 37, and 40 in Section C apply to planning projects. The terms, conditions, and assurances of this Grant Agreement shall remain in full force and effect during the life of the project; there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport.

### C. Sponsor Certification.

The sponsor hereby assures and certifies, with respect to this grant that:

### 1. General Federal Requirements

The Sponsor will comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds for this Grant. Performance under this agreement shall be governed by and in compliance with the following requirements, as applicable, to the type of organization of the Sponsor and any applicable sub-recipients. The applicable provisions to this agreement include, but are not limited to, the following:

FEDERAL LEGISLATION

a. 49 U.S.C. subtitle VII, as amended.

b. Davis-Bacon Act, as amended — 40 U.S.C. §§ 3141-3144, 3146, and 3147, et seq.[1]

c. Federal Fair Labor Standards Act – 29 U.S.C. § 201, et seq.

d. Hatch Act – 5 U.S.C. § 1501, et seq.[2]

e. Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. 4601, et seq.[1, 2]

f. National Historic Preservation Act of 1966 – Section 106 – 54 U.S.C. § 306108.[1]

g. Archeological and Historic Preservation Act of 1974 – 54 U.S.C. § 312501, et seq.[1]

h. Native Americans Grave Repatriation Act – 25 U.S.C. § 3001, et seq.

i. Clean Air Act, P.L. 90-148, as amended – 42 U.S.C. § 7401, et seq.

j. Coastal Zone Management Act, P.L. 92-583, as amended – 16 U.S.C. § 1451, et seq.

k. Flood Disaster Protection Act of 1973 – Section 102(a) - 42 U.S.C. § 4012a.[1]

l. 49 U.S.C. § 303, (formerly known as Section 4(f)).

m. Rehabilitation Act of 1973 – 29 U.S.C. § 794.

n. Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.) (prohibits discrimination on the basis of race, color, national origin).

o. Americans with Disabilities Act of 1990, as amended, (42 U.S.C. § 12101 et seq.) (prohibits discrimination on the basis of disability).

p. Age Discrimination Act of 1975 – 42 U.S.C. § 6101, et seq.

q. American Indian Religious Freedom Act, P.L. 95-341, as amended.

r. Architectural Barriers Act of 1968, as amended – 42 U.S.C. § 4151, et seq.[1]

s. Powerplant and Industrial Fuel Use Act of 1978 – Section 403 – 42 U.S.C. § 8373.[1]

t. Contract Work Hours and Safety Standards Act – 40 U.S.C. § 3701, et seq.[1]

u. Copeland Anti-kickback Act – 18 U.S.C. § 874.[1]

v. National Environmental Policy Act of 1969 – 42 U.S.C. § 4321, et seq.[1]

3-36-0102-134-2025

w.  Wild and Scenic Rivers Act, P.L. 90-542, as amended – 16 U.S.C. § 1271, et seq.

x.  Single Audit Act of 1984 – 31 U.S.C. § 7501, et seq.[2]

y.  Drug-Free Workplace Act of 1988 – 41 U.S.C. §§ 8101 through 8105.

z.  The Federal Funding Accountability and Transparency Act of 2006, as amended (P.L. 109-282, as amended by section 6202 of P.L. 110-252).

aa. Civil Rights Restoration Act of 1987, P.L. 100-259.

bb. Infrastructure Investment and Jobs Act, P.L. 117-58, Title VIII.

cc. Build America, Buy America Act, P.L. 117-58, Title IX.

dd. Endangered Species Act – 16 U.S.C. 1531, et seq.

ee. Title IX of the Education Amendments of 1972, as amended – 20 U.S.C. 1681–1683 and 1685–1687.

ff. Drug Abuse Office and Treatment Act of 1972, as amended – 21 U.S.C. 1101, et seq.

gg. Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, P.L. 91-616, as amended – 42 U.S.C. § 4541, et seq.

hh. Appropriated Funds to Influence Certain Federal Contracting and Financial Transactions – 31 U.S.C. § 1352.

## EXECUTIVE ORDERS

a.  Executive Order 11990 – Protection of Wetlands

b.  Executive Order 11988 – Floodplain Management

c.  Executive Order 12372 – Intergovernmental Review of Federal Programs

d.  Executive Order 12699 – Seismic Safety of Federal and Federally Assisted New Building Construction[1]

e.  Executive Order 14005 – Ensuring the Future is Made in all of America by All of America's Workers

f.  Executive Order 14149 – Restoring Freedom of Speech and Ending Federal Censorship

g.  Executive Order 14151 – Ending Radical and Wasteful Government DEI Programs and Preferencing

h.  Executive Order 14154 – Unleashing American Energy

i.  Executive Order 14168 – Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government

j.  Executive Order 14173 – Ending Illegal Discrimination and Restoring Merit-Based Opportunity

## FEDERAL REGULATIONS

a.  2 CFR Part 180 – OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement).

b.  2 CFR Part 200 and 1201 – Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards. [3, 4, 5]

c.  2 CFR Part 1200 – Nonprocurement Suspension and Debarment.

d.  14 CFR Part 13 – Investigative and Enforcement Procedures.

e.  14 CFR Part 16 – Rules of Practice for Federally-Assisted Airport Enforcement Proceedings.

f.  14 CFR Part 150 – Airport Noise Compatibility Planning.

g.  28 CFR Part 35 – Nondiscrimination on the Basis of Disability in State and Local Government Services.

h.  28 CFR § 50.3 – U.S. Department of Justice Guidelines for the Enforcement of Title VI of the Civil Rights Act of 1964.

i.  29 CFR Part 1 – Procedures for Predetermination of Wage Rates.[1]

j.  29 CFR Part 3 – Contractors and Subcontractors on Public Building or Public Work Financed in Whole or in Part by Loans or Grants from the United States.[1]

k.  29 CFR Part 5 – Labor Standards Provisions Applicable to Contracts Covering Federally Financed and Assisted Construction (Also Labor Standards Provisions Applicable to Nonconstruction Contracts Subject to the Contract Work Hours and Safety Standards Act).[1]

l.  41 CFR Part 60 – Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor (Federal and Federally-assisted contracting requirements).[1]

m.  49 CFR Part 20 – New Restrictions on Lobbying.

n.  49 CFR Part 21 – Nondiscrimination in Federally-Assisted Programs of the Department of Transportation - Effectuation of Title VI of the Civil Rights Act of 1964.

o.  49 CFR Part 23 – Participation by Disadvantage Business Enterprise in Airport Concessions.

p.  49 CFR Part 24 – Uniform Relocation Assistance and Real Property Acquisition for Federal and Federally-Assisted Programs.[1, 2]

q.  49 CFR Part 26 – Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs.

r.  49 CFR Part 27 – Nondiscrimination on the Basis of Disability in Programs or Activities Receiving Federal Financial Assistance.[1]

s.  49 CFR Part 28 – Enforcement of Nondiscrimination on the Basis of Handicap in Programs or Activities Conducted by the Department of Transportation.

t.  49 CFR Part 30 – Denial of Public Works Contracts to Suppliers of Goods and Services of Countries That Deny Procurement Market Access to U.S. Contractors.

u.  49 CFR Part 32 – Governmentwide Requirements for Drug-Free Workplace (Financial Assistance).

v.  49 CFR Part 37 – Transportation Services for Individuals with Disabilities (ADA).

w.  49 CFR Part 38 – Americans with Disabilities Act (ADA) Accessibility Specifications for Transportation Vehicles.

x.  49 CFR Part 41 – Seismic Safety.

## FOOTNOTES TO ASSURANCE (C)(1)

[1]  These laws do not apply to airport planning sponsors.

[2]  These laws do not apply to private sponsors.

³   2 CFR Part 200 contains requirements for State and Local Governments receiving Federal assistance. Any requirement levied upon State and Local Governments by this regulation shall apply where applicable to private sponsors receiving Federal assistance under Title 49, United States Code.

⁴   Cost principles established in 2 CFR Part 200 subpart E must be used as guidelines for determining the eligibility of specific types of expenses.

⁵   Audit requirements established in 2 CFR Part 200 subpart F are the guidelines for audits.

## SPECIFIC ASSURANCES

Specific assurances required to be included in grant agreements by any of the above laws, regulations or circulars are incorporated by reference in this Grant Agreement.

1.  **Responsibility and Authority of the Sponsor.**

    a.  Public Agency Sponsor:

    It has legal authority to apply for this Grant, and to finance and carry out the proposed project; that a resolution, motion or similar action has been duly adopted or passed as an official act of the applicant's governing body authorizing the filing of the application, including all understandings and assurances contained therein, and directing and authorizing the person identified as the official representative of the applicant to act in connection with the application and to provide such additional information as may be required.

    b.  Private Sponsor:

    It has legal authority to apply for this Grant and to finance and carry out the proposed project and comply with all terms, conditions, and assurances of this Grant Agreement. It shall designate an official representative and shall in writing direct and authorize that person to file this application, including all understandings and assurances contained therein; to act in connection with this application; and to provide such additional information as may be required.

2.  **Sponsor Fund Availability.**

    It has sufficient funds available for that portion of the project costs which are not to be paid by the United States. It has sufficient funds available to assure operation and maintenance of items funded under this Grant Agreement which it will own or control.

3.  **Good Title.**

    a.  It, a public agency or the Federal government, holds good title, satisfactory to the Secretary, to the landing area of the airport or site thereof, or will give assurance satisfactory to the Secretary that good title will be acquired.

    b.  For noise compatibility program projects to be carried out on the property of the sponsor, it holds good title satisfactory to the Secretary to that portion of the property upon which Federal funds will be expended or will give assurance to the Secretary that good title will be obtained.

4.  **Preserving Rights and Powers.**

    a.  It will not take or permit any action which would operate to deprive it of any of the rights and powers necessary to perform any or all of the terms, conditions, and assurances in this Grant Agreement without the written approval of the Secretary, and will act promptly to acquire, extinguish or modify any outstanding rights or claims of right of others which would interfere

3-36-0102-134-2025

with such performance by the sponsor. This shall be done in a manner acceptable to the Secretary.

b.  Subject to 49 U.S.C. 47107(a)(16) and (x), it will not sell, lease, encumber, or otherwise transfer or dispose of any part of its title or other interests in the property shown on Exhibit A to this application or, for a noise compatibility program project, that portion of the property upon which Federal funds have been expended, for the duration of the terms, conditions, and assurances in this Grant Agreement without approval by the Secretary. If the transferee is found by the Secretary to be eligible under Title 49, United States Code, to assume the obligations of this Grant Agreement and to have the power, authority, and financial resources to carry out all such obligations, the sponsor shall insert in the contract or document transferring or disposing of the sponsor's interest, and make binding upon the transferee all of the terms, conditions, and assurances contained in this Grant Agreement.

c.  For all noise compatibility program projects which are to be carried out by another unit of local government or are on property owned by a unit of local government other than the sponsor, it will enter into an agreement with that government. Except as otherwise specified by the Secretary, that agreement shall obligate that government to the same terms, conditions, and assurances that would be applicable to it if it applied directly to the FAA for a grant to undertake the noise compatibility program project. That agreement and changes thereto must be satisfactory to the Secretary. It will take steps to enforce this agreement against the local government if there is substantial non-compliance with the terms of the agreement.

d.  For noise compatibility program projects to be carried out on privately owned property, it will enter into an agreement with the owner of that property which includes provisions specified by the Secretary. It will take steps to enforce this agreement against the property owner whenever there is substantial non-compliance with the terms of the agreement.

e.  If the sponsor is a private sponsor, it will take steps satisfactory to the Secretary to ensure that the airport will continue to function as a public-use airport in accordance with these assurances for the duration of these assurances.

f.  If an arrangement is made for management and operation of the airport by any agency or person other than the sponsor or an employee of the sponsor, the sponsor will reserve sufficient rights and authority to ensure that the airport will be operated and maintained in accordance with Title 49, United States Code, the regulations and the terms, conditions and assurances in this Grant Agreement and shall ensure that such arrangement also requires compliance therewith.

g.  Sponsors of commercial service airports will not permit or enter into any arrangement that results in permission for the owner or tenant of a property used as a residence, or zoned for residential use, to taxi an aircraft between that property and any location on airport. Sponsors of general aviation airports entering into any arrangement that results in permission for the owner of residential real property adjacent to or near the airport must comply with the requirements of Sec. 136 of Public Law 112-95 and the sponsor assurances.

**5. Consistency with Local Plans.**

The project is reasonably consistent with plans (existing at the time of submission of this application) of public agencies that are authorized by the State in which the project is located to plan for the development of the area surrounding the airport.

6. **Consideration of Local Interest.**

It has given fair consideration to the interest of communities in or near where the project may be located.

7. **Consultation with Users.**

In making a decision to undertake any airport development project under Title 49, United States Code, it has undertaken reasonable consultations with affected parties using the airport at which project is proposed.

8. **Public Hearings.**

In projects involving the location of an airport, an airport runway, or a major runway extension, it has afforded the opportunity for public hearings for the purpose of considering the economic, social, and environmental effects of the airport or runway location and its consistency with goals and objectives of such planning as has been carried out by the community and it shall, when requested by the Secretary, submit a copy of the transcript of such hearings to the Secretary. Further, for such projects, it has on its management board either voting representation from the communities where the project is located or has advised the communities that they have the right to petition the Secretary concerning a proposed project.

9. **Metropolitan Planning Organization.**

In projects involving the location of an airport, an airport runway, or a major runway extension at a medium or large hub airport, the sponsor has made available to and has provided upon request to the metropolitan planning organization in the area in which the airport is located, if any, a copy of the proposed amendment to the airport layout plan to depict the project and a copy of any airport master plan in which the project is described or depicted.

10. **Pavement Preventive Maintenance-Management.**

With respect to a project approved after January 1, 1995, for the replacement or reconstruction of pavement at the airport, it assures or certifies that it has implemented an effective airport pavement maintenance-management program, and it assures that it will use such program for the useful life of any pavement constructed, reconstructed, or repaired with Federal financial assistance at the airport. It will provide such reports on pavement condition and pavement management programs as the Secretary determines may be useful.

11. **Terminal Development Prerequisites.**

For projects which include terminal development at a public use airport, as defined in Title 49, it has, on the date of submittal of the project grant application, all the safety equipment required for certification of such airport under 49 U.S.C. 44706, and all the security equipment required by rule or regulation, and has provided for access to the passenger enplaning and deplaning area of such airport to passengers enplaning and deplaning from aircraft other than air carrier aircraft.

12. **Accounting System, Audit, and Record Keeping Requirements.**

   a. It shall keep all project accounts and records which fully disclose the amount and disposition by the recipient of the proceeds of this Grant, the total cost of the project in connection with which this Grant is given or used, and the amount or nature of that portion of the cost of the project supplied by other sources, and such other financial records pertinent to the project. The accounts and records shall be kept in accordance with an accounting system that will facilitate an effective audit in accordance with the Single Audit Act of 1984.

3-36-0102-134-2025

b.  It shall make available to the Secretary and the Comptroller General of the United States, or any of their duly authorized representatives, for the purpose of audit and examination, any books, documents, papers, and records of the recipient that are pertinent to this Grant. The Secretary may require that an appropriate audit be conducted by a recipient. In any case in which an independent audit is made of the accounts of a sponsor relating to the disposition of the proceeds of a grant or relating to the project in connection with which this Grant was given or used, it shall file a certified copy of such audit with the Comptroller General of the United States not later than six (6) months following the close of the fiscal year for which the audit was made.

**13. Minimum Wage Rates.**

It shall include, in all contracts in excess of $2,000 for work on any projects funded under this Grant Agreement which involve labor, provisions establishing minimum rates of wages, to be predetermined by the Secretary of Labor under 40 U.S.C. §§ 3141-3144, 3146, and 3147, Public Building, Property, and Works), which contractors shall pay to skilled and unskilled labor, and such minimum rates shall be stated in the invitation for bids and shall be included in proposals or bids for the work.

**14. Veteran's Preference.**

It shall include in all contracts for work on any project funded under this Grant Agreement which involve labor, such provisions as are necessary to insure that, in the employment of labor (except in executive, administrative, and supervisory positions), preference shall be given to Vietnam era veterans, Persian Gulf veterans, Afghanistan-Iraq war veterans, disabled veterans, and small business concerns owned and controlled by disabled veterans as defined in 49 U.S.C. 47112. However, this preference shall apply only where the individuals are available and qualified to perform the work to which the employment relates.

**15. Conformity to Plans and Specifications.**

It will execute the project subject to plans, specifications, and schedules approved by the Secretary. Such plans, specifications, and schedules shall be submitted to the Secretary prior to commencement of site preparation, construction, or other performance under this Grant Agreement, and, upon approval of the Secretary, shall be incorporated into this Grant Agreement. Any modification to the approved plans, specifications, and schedules shall also be subject to approval of the Secretary and incorporated into this Grant Agreement.

**16. Construction Inspection and Approval.**

It will provide and maintain competent technical supervision at the construction site throughout the project to assure that the work conforms to the plans, specifications, and schedules approved by the Secretary for the project. It shall subject the construction work on any project contained in an approved project application to inspection and approval by the Secretary and such work shall be in accordance with regulations and procedures prescribed by the Secretary. Such regulations and procedures shall require such cost and progress reporting by the sponsor or sponsors of such project as the Secretary shall deem necessary.

**17. Planning Projects.**

In carrying out planning projects:

a.  It will execute the project in accordance with the approved program narrative contained in the project application or with the modifications similarly approved.

b.  It will furnish the Secretary with such periodic reports as required pertaining to the planning project and planning work activities.

c.  It will include in all published material prepared in connection with the planning project a notice that the material was prepared under a grant provided by the United States.

d.  It will make such material available for examination by the public and agrees that no material prepared with funds under this project shall be subject to copyright in the United States or any other country.

e.  It will give the Secretary unrestricted authority to publish, disclose, distribute, and otherwise use any of the material prepared in connection with this grant.

f.  It will grant the Secretary the right to disapprove the sponsor's employment of specific consultants and their subcontractors to do all or any part of this project as well as the right to disapprove the proposed scope and cost of professional services.

g.  It will grant the Secretary the right to disapprove the use of the sponsor's employees to do all or any part of the project.

h.  It understands and agrees that the Secretary's approval of this project grant or the Secretary's approval of any planning material developed as part of this grant does not constitute or imply any assurance or commitment on the part of the Secretary to approve any pending or future application for a Federal airport grant.

**18. Operation and Maintenance.**

a.  The airport and all facilities which are necessary to serve the aeronautical users of the airport, other than facilities owned or controlled by the United States, shall be operated at all times in a safe and serviceable condition and in accordance with the minimum standards as may be required or prescribed by applicable Federal, state, and local agencies for maintenance and operation. It will not cause or permit any activity or action thereon which would interfere with its use for airport purposes. It will suitably operate and maintain the airport and all facilities thereon or connected therewith, with due regard to climatic and flood conditions. Any proposal to temporarily close the airport for non-aeronautical purposes must first be approved by the Secretary. In furtherance of this assurance, the sponsor will have in effect arrangements for:

1.  Operating the airport's aeronautical facilities whenever required;

2.  Promptly marking and lighting hazards resulting from airport conditions, including temporary conditions; and

3.  Promptly notifying pilots of any condition affecting aeronautical use of the airport. Nothing contained herein shall be construed to require that the airport be operated for aeronautical use during temporary periods when snow, flood, or other climatic conditions interfere with such operation and maintenance. Further, nothing herein shall be construed as requiring the maintenance, repair, restoration, or replacement of any structure or facility which is substantially damaged or destroyed due to an act of God or other condition or circumstance beyond the control of the sponsor.

b.  It will suitably operate and maintain noise compatibility program items that it owns or controls upon which Federal funds have been expended.

**19. Hazard Removal and Mitigation.**

It will take appropriate action to assure that such terminal airspace as is required to protect instrument and visual operations to the airport (including established minimum flight altitudes) will be adequately cleared and protected by removing, lowering, relocating, marking, or lighting or otherwise mitigating existing airport hazards and by preventing the establishment or creation of future airport hazards.

**20. Compatible Land Use.**

It will take appropriate action, to the extent reasonable, including the adoption of zoning laws, to restrict the use of land adjacent to or in the immediate vicinity of the airport to activities and purposes compatible with normal airport operations, including landing and takeoff of aircraft. In addition, if the project is for noise compatibility program implementation, it will not cause or permit any change in land use, within its jurisdiction, that will reduce its compatibility, with respect to the airport, of the noise compatibility program measures upon which Federal funds have been expended.

**21. Economic Nondiscrimination.**

a.  It will make the airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities, including commercial aeronautical activities offering services to the public at the airport.

b.  In any agreement, contract, lease, or other arrangement under which a right or privilege at the airport is granted to any person, firm, or corporation to conduct or to engage in any aeronautical activity for furnishing services to the public at the airport, the sponsor will insert and enforce provisions requiring the contractor to:

1.  Furnish said services on a reasonable, and not unjustly discriminatory, basis to all users thereof, and

2.  Charge reasonable, and not unjustly discriminatory, prices for each unit or service, provided that the contractor may be allowed to make reasonable and nondiscriminatory discounts, rebates, or other similar types of price reductions to volume purchasers.

c.  Each fixed-based operator at the airport shall be subject to the same rates, fees, rentals, and other charges as are uniformly applicable to all other fixed-based operators making the same or similar uses of such airport and utilizing the same or similar facilities.

d.  Each air carrier using such airport shall have the right to service itself or to use any fixed-based operator that is authorized or permitted by the airport to serve any air carrier at such airport.

e.  Each air carrier using such airport (whether as a tenant, non-tenant, or subtenant of another air carrier tenant) shall be subject to such nondiscriminatory and substantially comparable rules, regulations, conditions, rates, fees, rentals, and other charges with respect to facilities directly and substantially related to providing air transportation as are applicable to all such air carriers which make similar use of such airport and utilize similar facilities, subject to reasonable classifications such as tenants or non-tenants and signatory carriers and non-signatory carriers. Classification or status as tenant or signatory shall not be unreasonably withheld by any airport provided an air carrier assumes obligations substantially similar to those already imposed on air carriers in such classification or status.

f.  It will not exercise or grant any right or privilege which operates to prevent any person, firm, or corporation operating aircraft on the airport from performing any services on its own aircraft with its own employees (including, but not limited to maintenance, repair, and fueling) that it may choose to perform.

g.  In the event the sponsor itself exercises any of the rights and privileges referred to in this assurance, the services involved will be provided on the same conditions as would apply to the furnishing of such services by commercial aeronautical service providers authorized by the sponsor under these provisions.

h.  The sponsor may establish such reasonable, and not unjustly discriminatory, conditions to be met by all users of the airport as may be necessary for the safe and efficient operation of the airport.

i.  The sponsor may prohibit or limit any given type, kind or class of aeronautical use of the airport if such action is necessary for the safe operation of the airport or necessary to serve the civil aviation needs of the public.

**22. Exclusive Rights.**

It will permit no exclusive right for the use of the airport by any person providing, or intending to provide, aeronautical services to the public. For purposes of this paragraph, the providing of the services at an airport by a single fixed-based operator shall not be construed as an exclusive right if both of the following apply:

a.  It would be unreasonably costly, burdensome, or impractical for more than one fixed-based operator to provide such services, and

b.  If allowing more than one fixed-based operator to provide such services would require the reduction of space leased pursuant to an existing agreement between such single fixed-based operator and such airport. It further agrees that it will not, either directly or indirectly, grant or permit any person, firm, or corporation, the exclusive right at the airport to conduct any aeronautical activities, including, but not limited to charter flights, pilot training, aircraft rental and sightseeing, aerial photography, crop dusting, aerial advertising and surveying, air carrier operations, aircraft sales and services, sale of aviation petroleum products whether or not conducted in conjunction with other aeronautical activity, repair and maintenance of aircraft, sale of aircraft parts, and any other activities which because of their direct relationship to the operation of aircraft can be regarded as an aeronautical activity, and that it will terminate any exclusive right to conduct an aeronautical activity now existing at such an airport before the grant of any assistance under Title 49, United States Code.

**23. Fee and Rental Structure.**

It will maintain a fee and rental structure for the facilities and services at the airport which will make the airport as self-sustaining as possible under the circumstances existing at the particular airport, taking into account such factors as the volume of traffic and economy of collection. No part of the Federal share of an airport development, airport planning or noise compatibility project for which a Grant is made under Title 49, United States Code, the Airport and Airway Improvement Act of 1982, the Federal Airport Act or the Airport and Airway Development Act of 1970 shall be included in the rate basis in establishing fees, rates, and charges for users of that airport.

3-36-0102-134-2025

**24. Airport Revenues.**

a. All revenues generated by the airport and any local taxes on aviation fuel established after December 30, 1987, will be expended by it for the capital or operating costs of the airport; the local airport system; or other local facilities which are owned or operated by the owner or operator of the airport and which are directly and substantially related to the actual air transportation of passengers or property; or for noise mitigation purposes on or off the airport. The following exceptions apply to this paragraph:

1. If covenants or assurances in debt obligations issued before September 3, 1982, by the owner or operator of the airport, or provisions enacted before September 3, 1982, in governing statutes controlling the owner or operator's financing, provide for the use of the revenues from any of the airport owner or operator's facilities, including the airport, to support not only the airport but also the airport owner or operator's general debt obligations or other facilities, then this limitation on the use of all revenues generated by the airport (and, in the case of a public airport, local taxes on aviation fuel) shall not apply.

2. If the Secretary approves the sale of a privately owned airport to a public sponsor and provides funding for any portion of the public sponsor's acquisition of land, this limitation on the use of all revenues generated by the sale shall not apply to certain proceeds from the sale. This is conditioned on repayment to the Secretary by the private owner of an amount equal to the remaining unamortized portion (amortized over a 20-year period) of any airport improvement grant made to the private owner for any purpose other than land acquisition on or after October 1, 1996, plus an amount equal to the federal share of the current fair market value of any land acquired with an airport improvement grant made to that airport on or after October 1, 1996.

3. Certain revenue derived from or generated by mineral extraction, production, lease, or other means at a general aviation airport (as defined at 49 U.S.C. 47102), if the FAA determines the airport sponsor meets the requirements set forth in Section 813 of Public Law 112-95.

b. As part of the annual audit required under the Single Audit Act of 1984, the sponsor will direct that the audit will review, and the resulting audit report will provide an opinion concerning, the use of airport revenue and taxes in paragraph (a), and indicating whether funds paid or transferred to the owner or operator are paid or transferred in a manner consistent with Title 49, United States Code and any other applicable provision of law, including any regulation promulgated by the Secretary or Administrator.

c. Any civil penalties or other sanctions will be imposed for violation of this assurance in accordance with the provisions of 49 U.S.C. 47107.

**25. Reports and Inspections.**

It will:

a. submit to the Secretary such annual or special financial and operations reports as the Secretary may reasonably request and make such reports available to the public; make available to the public at reasonable times and places a report of the airport budget in a format prescribed by the Secretary;

b. for airport development projects, make the airport and all airport records and documents affecting the airport, including deeds, leases, operation and use agreements, regulations and

other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request;

c.  for noise compatibility program projects, make records and documents relating to the project and continued compliance with the terms, conditions, and assurances of this Grant Agreement including deeds, leases, agreements, regulations, and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request; and

d.  in a format and time prescribed by the Secretary, provide to the Secretary and make available to the public following each of its fiscal years, an annual report listing in detail:

1.  all amounts paid by the airport to any other unit of government and the purposes for which each such payment was made; and

2.  all services and property provided by the airport to other units of government and the amount of compensation received for provision of each such service and property.

**26. Use by Government Aircraft.**

It will make available all of the facilities of the airport developed with Federal financial assistance and all those usable for landing and takeoff of aircraft to the United States for use by Government aircraft in common with other aircraft at all times without charge, except, if the use by Government aircraft is substantial, charge may be made for a reasonable share, proportional to such use, for the cost of operating and maintaining the facilities used. Unless otherwise determined by the Secretary, or otherwise agreed to by the sponsor and the using agency, substantial use of an airport by Government aircraft will be considered to exist when operations of such aircraft are in excess of those which, in the opinion of the Secretary, would unduly interfere with use of the landing areas by other authorized aircraft, or during any calendar month that:

a.  Five (5) or more Government aircraft are regularly based at the airport or on land adjacent thereto; or

b.  The total number of movements (counting each landing as a movement) of Government aircraft is 300 or more, or the gross accumulative weight of Government aircraft using the airport (the total movement of Government aircraft multiplied by gross weights of such aircraft) is in excess of five million pounds.

**27. Land for Federal Facilities.**

It will furnish without cost to the Federal Government for use in connection with any air traffic control or air navigation activities, or weather-reporting and communication activities related to air traffic control, any areas of land or water, or estate therein as the Secretary considers necessary or desirable for construction, operation, and maintenance at Federal expense of space or facilities for such purposes. Such areas or any portion thereof will be made available as provided herein within four months after receipt of a written request from the Secretary.

**28. Airport Layout Plan.**

a.  The airport owner or operator will maintain a current airport layout plan of the airport showing:

1.  boundaries of the airport and all proposed additions thereto, together with the boundaries of all offsite areas owned or controlled by the sponsor for airport purposes and proposed additions thereto;

2.  the location and nature of all existing and proposed airport facilities and structures (such as runways, taxiways, aprons, terminal buildings, hangars and roads), including all proposed extensions and reductions of existing airport facilities;

3.  the location of all existing and proposed non-aviation areas and of all existing improvements thereon; and

4.  all proposed and existing access points used to taxi aircraft across the airport's property boundary.

b.  Subject to subsection 49 U.S.C. 47107(x), the Secretary will review and approve or disapprove the plan and any revision or modification of the plan before the plan, revision, or modification takes effect.

c.  The owner or operator will not make or allow any alteration in the airport or any of its facilities unless the alteration—

1. is outside the scope of the Secretary's review and approval authority as set forth in subsection (x); or

2. complies with the portions of the plan approved by the Secretary.

d.  When the airport owner or operator makes a change or alteration in the airport or the facilities  which the Secretary determines adversely affects the safety, utility, or efficiency of any federally owned, leased, or funded property on or off the airport and which is not in conformity with the airport layout plan as approved by the Secretary, the owner or operator will, if requested, by the Secretary:

1.  eliminate such adverse effect in a manner approved by the Secretary; or

2.  bear all costs of relocating such property or its replacement to a site acceptable to the Secretary and of restoring the property or its replacement to the level of safety, utility, efficiency, and cost of operation that existed before the alteration was made, except in the case of a relocation or replacement of an existing airport facility due to a change in the Secretary's design standards beyond the control of the airport sponsor.

**29. Civil Rights.**

It will promptly take any measures necessary to ensure that no person in the United States shall, on the grounds of race, color, and national origin (including limited English proficiency) in accordance with the provisions of  Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d to 2000d-4); creed and sex per 49 U.S.C. 47123 and related requirements; age per the Age Discrimination Act of 1975 and related requirements; or disability per the Americans with Disabilities Act of 1990 and related requirements, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination in any program and activity conducted with, or benefiting from, funds received from this Grant.

a.  Using the definitions of activity, facility, and program as found and defined in 49 CFR 21.23(b) and 21.23(e), the sponsor will facilitate all programs, operate all facilities, or conduct all programs in compliance with all non-discrimination requirements imposed by or pursuant to these assurances.

b.  Applicability

1. Programs and Activities. If the sponsor has received a grant (or other federal assistance) for any of the sponsor's program or activities, these requirements extend to all of the sponsor's programs and activities.

2. Facilities. Where it receives a grant or other federal financial assistance to construct, expand, renovate, remodel, alter, or acquire a facility, or part of a facility, the assurance extends to the entire facility and facilities operated in connection therewith.

3. Real Property. Where the sponsor receives a grant or other Federal financial assistance in the form of, or for the acquisition of real property or an interest in real property, the assurance will extend to rights to space on, over, or under such property.

c. Duration.

The sponsor agrees that it is obligated to this assurance for the period during which Federal financial assistance is extended to the program, except where the Federal financial assistance is to provide, or is in the form of, personal property, or real property, or interest therein, or structures or improvements thereon, in which case the assurance obligates the sponsor, or any transferee for the longer of the following periods:

1. So long as the airport is used as an airport, or for another purpose involving the provision of similar services or benefits; or

2. So long as the sponsor retains ownership or possession of the property.

d. Required Solicitation Language. It will include the following notification in all solicitations for bids, Requests For Proposals for work, or material under this Grant Agreement and in all proposals for agreements, including airport concessions, regardless of funding source:

"The (**County of Monroe**), in accordance with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d to 2000d-4) and the Regulations, hereby notifies all bidders or offerors that it will affirmatively ensure that for any contract entered into pursuant to this advertisement, all businesses will be afforded full and fair opportunity to submit bids in response to this invitation and no businesses will be discriminated against on the grounds of race, color, national origin (including limited English proficiency), creed, sex , age, or disability in consideration for an award."

e. Required Contract Provisions.

1. It will insert the non-discrimination contract clauses requiring compliance with the acts and regulations relative to non-discrimination in Federally-assisted programs of the Department of Transportation (DOT), and incorporating the acts and regulations into the contracts by reference in every contract or agreement subject to the non-discrimination in Federally-assisted programs of the DOT acts and regulations.

2. It will include a list of the pertinent non-discrimination authorities in every contract that is subject to the non-discrimination acts and regulations.

3. It will insert non-discrimination contract clauses as a covenant running with the land, in any deed from the United States effecting or recording a transfer of real property, structures, use, or improvements thereon or interest therein to a sponsor.

4. It will insert non-discrimination contract clauses prohibiting discrimination on the basis of race, color, national origin (including limited English proficiency), creed, sex, age, or

3-36-0102-134-2025

disability as a covenant running with the land, in any future deeds, leases, license, permits, or similar instruments entered into by the sponsor with other parties:

    a. For the subsequent transfer of real property acquired or improved under the applicable activity, project, or program; and

    b. For the construction or use of, or access to, space on, over, or under real property acquired or improved under the applicable activity, project, or program.

    f. It will provide for such methods of administration for the program as are found by the Secretary to give reasonable guarantee that it, other recipients, sub-recipients, sub-grantees, contractors, subcontractors, consultants, transferees, successors in interest, and other participants of Federal financial assistance under such program will comply with all requirements imposed or pursuant to the acts, the regulations, and this assurance.

    g. It agrees that the United States has a right to seek judicial enforcement with regard to any matter arising under the acts, the regulations, and this assurance.

**30. Disposal of Land.**

    a. For land purchased under a grant for airport noise compatibility purposes, including land serving as a noise buffer, it will dispose of the land, when the land is no longer needed for such purposes, at fair market value, at the earliest practicable time. That portion of the proceeds of such disposition which is proportionate to the United States' share of acquisition of such land will be, at the discretion of the Secretary, (1) reinvested in another project at the airport, or (2) transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

    1. Reinvestment in an approved noise compatibility project;

    2. Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. 47117(e);

    3. Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. 47114, 47115, or 47117;

    4. Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

    5. Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

If land acquired under a grant for noise compatibility purposes is leased at fair market value and consistent with noise buffering purposes, the lease will not be considered a disposal of the land. Revenues derived from such a lease may be used for an approved airport development project that would otherwise be eligible for grant funding or any permitted use of airport revenue.

    b. For land purchased under a grant for airport development purposes (other than noise compatibility), it will, when the land is no longer needed for airport purposes, dispose of such land at fair market value or make available to the Secretary an amount equal to the United States' proportionate share of the fair market value of the land. That portion of the proceeds of such disposition which is proportionate to the United States' share of the cost of acquisition of such land will, upon application to the Secretary, be reinvested or transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

1. Reinvestment in an approved noise compatibility project;

2. Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. 47117(e);

3. Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. 47114, 47115, or 47117;

4. Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

5. Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

c. Land shall be considered to be needed for airport purposes under this assurance if (1) it may be needed for aeronautical purposes (including runway protection zones) or serve as noise buffer land, and (2) the revenue from interim uses of such land contributes to the financial self-sufficiency of the airport. Further, land purchased with a grant received by an airport operator or owner before December 31, 1987, will be considered to be needed for airport purposes if the Secretary or Federal agency making such grant before December 31, 1987, was notified by the operator or owner of the uses of such land, did not object to such use, and the land continues to be used for that purpose, such use having commenced no later than December 15, 1989.

d. Disposition of such land under (a), (b), or (c) will be subject to the retention or reservation of any interest or right therein necessary to ensure that such land will only be used for purposes which are compatible with noise levels associated with operation of the airport.

**31. Engineering and Design Services.**

If any phase of such project has received Federal funds under Chapter 471 subchapter 1 of Title 49 U.S.C., it will award each contract, or sub-contract for program management, construction management, planning studies, feasibility studies, architectural services, preliminary engineering, design, engineering, surveying, mapping or related services in the same manner as a contract for architectural and engineering services is negotiated under Chapter 11 of Title 40 U S.C., or an equivalent qualifications-based requirement prescribed for or by the sponsor of the airport.

**32. Foreign Market Restrictions.**

It will not allow funds provided under this Grant to be used to fund any project which uses any product or service of a foreign country during the period in which such foreign country is listed by the United States Trade Representative as denying fair and equitable market opportunities for products and suppliers of the United States in procurement and construction.

**33. Policies, Standards, and Specifications.**

It will carry out any project funded under an Airport Improvement Program Grant in accordance with policies, standards, and specifications approved by the Secretary including, but not limited to, current FAA Advisory Circulars (https://www.faa.gov/sites/faa.gov/files/aip-pfc-checklist_0.pdf) for AIP projects as of April 30, 2025.

**34. Relocation and Real Property Acquisition.**

a. It will be guided in acquiring real property, to the greatest extent practicable under State law, by the land acquisition policies in Subpart B of 49 CFR Part 24 and will pay or reimburse property owners for necessary expenses as specified in Subpart B.

b.  It will provide a relocation assistance program offering the services described in Subpart C of 49 CFR Part 24 and fair and reasonable relocation payments and assistance to displaced persons as required in Subpart D and E of 49 CFR Part 24.

c.  It will make available within a reasonable period of time prior to displacement, comparable replacement dwellings to displaced persons in accordance with Subpart E of 49 CFR Part 24.

**35. Access By Intercity Buses.**

The airport owner or operator will permit, to the maximum extent practicable, intercity buses or other modes of transportation to have access to the airport; however, it has no obligation to fund special facilities for intercity buses or for other modes of transportation.

**36. Disadvantaged Business Enterprises.**

The sponsor shall not discriminate on the basis of race, color, national origin, or sex, in the award and performance of any DOT-assisted contract covered by 49 CFR Part 26, or in the award and performance of any concession activity contract covered by 49 CFR Part 23. In addition, the sponsor shall not discriminate on the basis of race, color, national origin or sex in the administration of its Disadvantaged Business Enterprise (DBE) and Airport Concessions Disadvantaged Business Enterprise (ACDBE) programs or the requirements of 49 CFR Parts 23 and 26. The sponsor shall take all necessary and reasonable steps under 49 CFR Parts 23 and 26 to ensure nondiscrimination in the award and administration of DOT-assisted contracts, and/or concession contracts. The sponsor's DBE and ACDBE programs, as required by 49 CFR Parts 26 and 23, and as approved by DOT, are incorporated by reference in this agreement. Implementation of these programs is a legal obligation and failure to carry out its terms shall be treated as a violation of this agreement. Upon notification to the sponsor of its failure to carry out its approved program, the Department may impose sanctions as provided for under Parts 26 and 23 and may, in appropriate cases, refer the matter for enforcement under 18 U.S.C. § 1001 and/or the Program Fraud Civil Remedies Act of 1986 (31 U.S.C. §§ 3801-3809, 3812).

**37. Hangar Construction.**

If the airport owner or operator and a person who owns an aircraft agree that a hangar is to be constructed at the airport for the aircraft at the aircraft owner's expense, the airport owner or operator will grant to the aircraft owner for the hangar a long term lease that is subject to such terms and conditions on the hangar as the airport owner or operator may impose.

**38. Competitive Access.**

a.  If the airport owner or operator of a medium or large hub airport (as defined in 49 U.S.C. § 47102) has been unable to accommodate one or more requests by an air carrier for access to gates or other facilities at that airport in order to allow the air carrier to provide service to the airport or to expand service at the airport, the airport owner or operator shall transmit a report to the Secretary that:

1.  Describes the requests;

2.  Provides an explanation as to why the requests could not be accommodated; and

3.  Provides a time frame within which, if any, the airport will be able to accommodate the requests.

3-36-0102-134-2025

b.  Such report shall be due on either February 1 or August 1 of each year if the airport has been unable to accommodate the request(s) in the six-month period prior to the applicable due date.

39. **Access to Leaded Aviation Gasoline**

a.  If 100-octane low lead aviation gasoline (100LL) was made available at an airport, at any time during calendar year 2022, an airport owner or operator may not restrict or prohibit the sale of, or self-fueling with 100-octane low lead aviation gasoline.

b.  This requirement remains until the earlier of December 31, 2030, or the date on which the airport or any retail fuel seller at the airport makes available an unleaded aviation gasoline that has been authorized for use by the FAA as a replacement for 100-octane low lead aviation gasoline for use in nearly all piston-engine aircraft and engine models; and meets either an industry consensus standard or other standard that facilitates the safe use, production, and distribution of such unleaded aviation gasoline, as determined appropriate by the FAA.

c.  An airport owner or operator understands and agrees, that any violation of this grant assurance is subject to civil penalties as provided for in 49 U.S.C. § 46301(a)(8).



# IIJA Grant Application

## Monroe County, NY Aviation Department
### Frederick Douglass Greater Rochester International Airport (ROC)

#3-36-0102-  -2025

*May 12, 2025*

**Projects:**

**Project 4: Fire Alarm Systems Upgrades**

**[Design, Bid, & Construction]**

NYSDOT Upstate Economic Revitalization Projects

**Prepared For:**

Federal Aviation Administration
New York Airports District Office



**Prepared By:**



April 30, 2025

Glen L. Conacchio
Civil Engineer
New York Airports District Office
Federal Aviation Administration
1 Aviation Plaza, RM 111
Jamaica, NY 11434

RE: Final Grant Application
    Project 4: Fire Alarm Systems Upgrade
    [Design, Bid, & Construction]
    Frederick Douglass Greater Rochester International Airport (ROC)

Dear Mr. Conacchio,

On behalf of Monroe County, NY Aviation Department and Frederick Douglass Greater Rochester International Airport (ROC), I am submitting the Final Grant Application for IIJA Grant 3-36-0102--2025 for *Project 4: Fire Alarm Systems Upgrade [Design, Bid, & Construction]* project [under the NYSDOT Upstate Economic Revitalization Projects].

The contents of this Application are as follows:

- IIJA Grant Application Checklist
- Application for Federal Assistance SF-424
- FAA Form 5100-100
- Project Cost Breakdown
- Supporting Documentation
    - Statement by the Sponsor of Cost Reasonableness
    - Project Scope & Fee
    - Professional Services Agreement
    - Bid Recommendation Letter & Bids Received
    - Environmental Documentation
- Sponsor Certifications
    - FAA Forms 5100-129, 130, -131, -132, -134, -135
    - Certification Regarding Lobbying
- FAA Advisory Circulars & Grant Assurances

Thank you,

Allison Lia
Airport Engineer
Frederick Douglass Greater Rochester International Airport (ROC)

# IIJA Grant Application Checklist

**AIRPORT NAME:** **Frederick Douglass Greater Rochester International Airport (ROC)**          **DATE:** **April 30, 2025**

**SYSTEM FOR AWARD MANAGEMENT (SAM) CAGE CODE #:** **69UP1**

**SYSTEM FOR AWARD MANAGEMENT (SAM) EXPIRATION DATE:** **October 1, 2025**

| Ref. | | Yes | No | N/A | Comments Attached |
|---|---|---|---|---|---|
| | **ITEMS REQUIRED TO COMPLETE APPLICATION REVIEW:** | | | | |
| 1. | Standard Form 424 *(signed)* | X | | | |
| 2. | Project Cost Breakdown *(attached)* | X | | | |
| 3. | Project Sketch *(at the request of the ADO)* | X | | | |
| 4. | Project Narrative *(attached or within Form 5100-100 Part IV)* | X | | | |
| 5. | Form 5100-100 (parts II – IV) *(airport development grants)* | X | | | |
| 6. | Bid Tabulations/Negotiated Amounts *(attached or previously submitted to the ADO)* | X | | | |
| 7. | Exhibit A *(attached or previously submitted to the ADO)* | X | | | On-File |
| 8. | Title Certificate or Long-Term Lease Agreement *(at the request of the ADO)* | | | X | |

OMB Number: 4040-0004
Expiration Date: 11/30/2025

## Application for Federal Assistance SF-424

**\*1. Type of Submission:**
☐ Preapplication
☒ Application
☐ Changed/Corrected Application

**\*2. Type of Application**
☒ New
☐ Continuation
☐ Revision

**\* If Revision, select appropriate letter(s):**

**\* Other (Specify)**

**\*3. Date Received:**
04/30/2025

**4. Applicant Identifier:**
ROC

**5a. Federal Entity Identifier:**
36-0102

**\*5b. Federal Award Identifier:**
FY-2025

### State Use Only:

**6. Date Received by State:**

**7. State Application Identifier:**

### 8. APPLICANT INFORMATION:

**\*a. Legal Name:** Monroe County, NY Aviation Department

**\*b. Employer/Taxpayer Identification Number (EIN/TIN):**
16-60002563

**\*c. UEI:**
DYHNLRKCH117

**d. Address:**

| | |
|---|---|
| **\*Street 1:** | 1200 Brooks Avenue |
| Street 2: | |
| **\*City:** | Rochester |
| County/Parish: | Monroe County |
| **\*State:** | NY |
| **\*Province:** | |
| **\*Country:** | USA: United States |
| **\*Zip / Postal Code** | 14624-0000 |

**e. Organizational Unit:**

| Department Name: | Division Name: |
|---|---|

**f. Name and contact information of person to be contacted on matters involving this application:**

| | | |
|---|---|---|
| Prefix: | Ms. | **\*First Name:** Allison |
| Middle Name: | | |
| **\*Last Name:** | Lia | |
| Suffix: | | |

**Title:** Airport Engineer

**Organizational Affiliation:**
Frederick Douglass Greater Rochester International Airport (ROC)

**\*Telephone Number:** (585)753-7109     **Fax Number:**

**\*Email:** allisonlia@monroecounty.gov

**Application for Federal Assistance SF-424**

**\*9. Type of Applicant 1: Select Applicant Type:**

  B: County Government

Type of Applicant 2:  Select Applicant Type:

  Pick an applicant type

Type of Applicant 3:  Select  Applicant Type:

  Pick an applicant type

\*Other (Specify)

---

**\*10. Name of Federal Agency:**

  Federal Aviation Administration

**11. Catalog of Federal Domestic Assistance Number:**

  -

CFDA Title:

  -

---

**\*12.  Funding Opportunity Number:**

  -

\*Title:

  Bipartisan Infrastructure Law (BIL) Funding

---

**13. Competition Identification Number:**

  -

Title:

  -

---

**14. Areas Affected by Project (Cities, Counties, States, etc.):**

---

**\*15.  Descriptive Title of Applicant's Project:**

  Project 4: Fire Alarm Systems Upgrade - Design, Bid, & Construction
  [NYSDOT Upstate Economic Revitalization Projects]

  Exhibit A: On-File with FAA [10/29/20]

---

**Attach supporting documents as specified in agency instructions.**

**Application for Federal Assistance SF-424**

**16. Congressional Districts Of:**

*a. Applicant: NY-025                              *b. Program/Project:  NY-025

Attach an additional list of Program/Project Congressional Districts if needed.

**17.  Proposed Project:**

*a. Start Date: 03/31/2023                        *b. End Date:  07/31/2025

**18. Estimated Funding ($):**

| | |
|---|---|
| *a. Federal | $ 1,620,848 |
| *b. Applicant | $ 90,047 |
| *c. State | $ 90,047 |
| *d. Local | $ 0 |
| *e. Other | $ 0 |
| *f. Program Income | $ 0 |
| *g. TOTAL | $ 1,800,943 |

**\*19.  Is Application Subject to Review By State Under Executive Order 12372 Process?**

☐ a. This application was made available to the State under the Executive Order 12372 Process for review on _____ .

☐ b. Program is subject to E.O. 12372 but has not been selected by the State for review.

☒ c. Program is not covered by E.O. 12372.

**\*20.  Is the Applicant Delinquent On Any Federal Debt?**
☐ Yes  ☒ No

**If "Yes", explain:**

21. *By signing this application, I certify (1) to the statements contained in the list of certifications** and (2) that the statements herein are true, complete and accurate to the best of my knowledge.  I also provide the required assurances** and agree to comply with any resulting terms if I accept an award.  I am aware that any false, fictitious, or fraudulent statements or claims may subject me to criminal, civil, or administrative penalties. (U. S. Code, Title 218, Section 1001)

☒ ** I AGREE

** The list of certifications and assurances, or an internet site where you may obtain this list, is contained in the announcement or agency specific instructions.

**Authorized Representative:**

| | |
|---|---|
| Prefix: _____ | *First Name:  Allison |
| Middle Name: _____ | |
| *Last Name:  Lia | |
| Suffix: _____ | |

*Title: Director Airport Engineer

| *Telephone Number: (585)783-7109 | Fax Number: |
|---|---|

* Email: allisonlia@monroecounty.gov

| *Signature of Authorized Representative: | *Date Signed: 04/30/2025 |
|---|---|

 U.S. Department of Transportation
**Federal Aviation Administration**

OMB CONTROL NUMBER: 2120-0569
EXPIRATION DATE: 12/31/2026

## Application for Federal Assistance (Development and Equipment Projects)

### PART II – PROJECT APPROVAL INFORMATION

| Part II - SECTION A |
|---|
| The term "Sponsor" refers to the applicant name provided in box 8 of the associated SF-424 form. |

**Item 1.**
Does Sponsor maintain an active registration in the System for Award Management (www.SAM.gov)?    ☒ Yes   ☐ No

**Item 2.**
Can Sponsor commence the work identified in the application in the fiscal year the grant is made or within six months after the grant is made, whichever is later?    ☒ Yes   ☐ No   ☐ N/A

**Item 3.**
Are there any foreseeable events that would delay completion of the project? If yes, provide attachment to this form that lists the events.    ☐ Yes   ☒ No   ☐ N/A

**Item 4.**
Will the project(s) covered by this request have impacts or effects on the environment that require mitigating measures? If yes, attach a summary listing of mitigating measures to this application and identify the name and date of the environmental document(s).    ☐ Yes   ☒ No   ☐ N/A

**Item 5.**
Is the project covered by this request included in an approved Passenger Facility Charge (PFC) application or other Federal assistance program? If yes, please identify other funding sources by checking all applicable boxes.    ☐ Yes   ☒ No   ☐ N/A

   ☐ The project is included in an *approved* PFC application.

     If included in an approved PFC application,

     does the application *only* address AIP matching share?   ☐ Yes   ☐ No

   ☐ The project is included in another Federal Assistance program. Its CFDA number is below.

**Item 6.**
Will the requested Federal assistance include Sponsor indirect costs as described in 2 CFR Appendix VII to Part 200, States and Local Government and Indian Tribe Indirect Cost Proposals?    ☐ Yes   ☒ No   ☐ N/A

If the request for Federal assistance includes a claim for allowable indirect costs, select the applicable indirect cost rate the Sponsor proposes to apply:

   ☐ De Minimis rate of 10% as permitted by 2 CFR § 200.414.

   ☐ Negotiated Rate equal to     % as approved by        (the Cognizant Agency)
     on        (Date) (2 CFR part 200, appendix VII).

*Note: Refer to the instructions for limitations of application associated with claiming Sponsor indirect costs.*

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| PART II - SECTION B |
|---|
| **Certification Regarding Lobbying** |

The declarations made on this page are under the signature of the authorized representative as identified in box 21 of form SF-424, to which this form is attached. The term "Sponsor" refers to the applicant name provided in box 8 of the associated SF-424 form.

The Authorized Representative certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the Sponsor, to any person for influencing or attempting to influence an officer or employee of an agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan, or cooperative agreement, the Authorized Representative shall complete and submit Standard Form-LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Authorized Representative shall require that the language of this certification be included in the award documents for all sub-awards at all tiers (including subcontracts, subgrants, and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by section 1352, title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

## PART II – SECTION C

The Sponsor hereby represents and certifies as follows:

**1. Compatible Land Use –** The Sponsor has taken the following actions to assure compatible usage of land adjacent to or in the vicinity of the airport:

The project is contained within airport-owned property.

**2. Defaults –** The Sponsor is not in default on any obligation to the United States or any agency of the United States Government relative to the development, operation, or maintenance of any airport, except as stated herewith:

The Sponsor is not in default on any obligation to the U.S. or any agency of the U.S. Government relative to the development, operation, or maintenance of any airport.

**3. Possible Disabilities –** There are no facts or circumstances (including the existence of effective or proposed leases, use agreements or other legal instruments affecting use of the Airport or the existence of pending litigation or other legal proceedings) which in reasonable probability might make it impossible for the Sponsor to carry out and complete the Project or carry out the provisions of the Grant Assurances, either by limiting its legal or financial ability or otherwise, except as follows:

The Sponsor has no facts/circumstances which would prevent completion of the project or compliance with Assurances

**4. Consistency with Local Plans –** The project is reasonably consistent with plans existing at the time of submission of this application) of public agencies that are authorized by the State in which the project is located to plan for the development of the area surrounding the airport.

The project is consistent with plans of public agencies authorized by the State of New York.

**5. Consideration of Local Interest –** It has given fair consideration to the interest of communities in or near where the project may be located.

The Project has given fair consideration of the interest of the communities in or near the project area.

**6. Consultation with Users –** In making a decision to undertake an airport development project under Title 49, United States Code, it has consulted with airport users that will potentially be affected by the project (§ 47105(a)(2)).

Yes, consultation has occurred.

**7. Public Hearings –** In projects involving the location of an airport, an airport runway or a major runway extension, it has afforded the opportunity for public hearings for the purpose of considering the economic, social, and environmental effects of the airport or runway location and its consistency with goals and objectives of such planning as has been carried out by the community and it shall, when requested by the Secretary, submit a copy of the transcript of such hearings to the Secretary. Further, for such projects, it has on its management board either voting representation from the communities where the project is located or has advised the communities that they have the right to petition the Secretary concerning a proposed project.

N/A

**8. Air and Water Quality Standards –** In projects involving airport location, a major runway extension, or runway location it will provide for the Governor of the state in which the project is located to certify in writing to the Secretary that the project will be located, designed, constructed, and operated so as to comply with applicable and air and water quality standards. In any case where such standards have not been approved and where applicable air and water quality standards have been promulgated by the Administrator of the Environmental Protection Agency, certification shall be obtained from such Administrator. Notice of certification or refusal to certify shall be provided within sixty days after the project application has been received by the Secretary.

N/A

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| PART II – SECTION C (Continued) |
| --- |

9. **Exclusive Rights –** There is no grant of an exclusive right for the conduct of any aeronautical activity at any airport owned or controlled by the Sponsor except as follows:

There is no grant of an exclusive right for the conduct of any aeronautical activity.

10. **Land –** (a) The sponsor holds the following property interest in the following areas of land, which are to be developed or used as part of or in connection with the Airport subject to the following exceptions, encumbrances, and adverse interests, all of which areas are identified on the aforementioned property map designated as Exhibit "A". [1]

N/A

The Sponsor further certifies that the above is based on a title examination by a qualified attorney or title company and that such attorney or title company has determined that the Sponsor holds the above property interests.

(b) The Sponsor will acquire within a reasonable time, but in any event prior to the start of any construction work under the Project, the following property interest in the following areas of land on which such construction work is to be performed, all of which areas are identified on the aforementioned property map designated as Exhibit "A". [1]

N/A

(c) The Sponsor will acquire within a reasonable time, and if feasible prior to the completion of all construction work under the Project, the following property interest in the following areas of land which are to be developed or used as part of or in connection with the Airport as it will be upon completion of the Project, all of which areas are identified on the aforementioned property map designated as Exhibit "A". [1]

N/A

---

[1] State the character of property interest in each area and list and identify for each all exceptions, encumbrances, and adverse interests of every kind and nature, including liens, easements, leases, etc. The separate areas of land need only be identified here by the area numbers shown on the property map.

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

## PART III – BUDGET INFORMATION – CONSTRUCTION

| SECTION A – GENERAL | |
|---|---|
| 1. Assistance Listing Number: | - |
| 2. Functional or Other Breakout: | IIJA Funding |

| SECTION B – CALCULATION OF FEDERAL GRANT | | | |
|---|---|---|---|
| Cost Classification | Latest Approved Amount (Use only for revisions) | Adjustment + or (-) Amount (Use only for revisions) | Total Amount Required |
| 1.  Administration expense | | | $ 10,000 |
| 2.  Preliminary expense | | | |
| 3.  Land, structures, right-of-way | | | |
| 4.  Architectural engineering basic fees | | | 305,569 |
| 5.  Other Architectural engineering fees | | | |
| 6.  Project inspection fees | | | |
| 7.  Land development | | | |
| 8.  Relocation Expenses | | | |
| 9.  Relocation payments to Individuals and Businesses | | | |
| 10. Demolition and removal | | | |
| 11. Construction and project improvement | | | 2,290,000 |
| 12. Equipment | | | |
| 13. Miscellaneous | | | |
| 14. **Subtotal** (Lines 1 through 13) | | | $ 2,605,569 |
| 15. Estimated Income (if applicable) | | | |
| 16. Net Project Amount (Line 14 minus 15) | | | |
| 17. **Less**: Ineligible Exclusions (Section C, line 23 g.) | | | 804,626 |
| 18. **Subtotal** (Lines 16 through 17) | | | $ 1,800,943 |
| 19. Federal Share requested of Line 18 | | | 1,620,848 |
| 20. Grantee share | | | 90,047 |
| 21. Other shares | | | 90,047 |
| 22. **TOTAL PROJECT** (Lines 19, 20 & 21) | | | $ 2,605,569 |

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| SECTION C – EXCLUSIONS | |
|---|---|
| **23. Classification (Description of non-participating work)** | **Amount Ineligible for Participation** |
| a.  New York State Grant (For the Fire Alarm Devices) | $ 804,626 |
| b. | |
| c. | |
| d. | |
| e. | |
| f. | |
| g.                                                        Total | $ 804,626 |

| SECTION D – PROPOSED METHOD OF FINANCING NON-FEDERAL SHARE | |
|---|---|
| **24. Grantee Share – Fund Categories** | **Amount** |
| a. Securities | |
| b. Mortgages | |
| c. Appropriations (by Applicant) | 90,047 |
| d. Bonds | |
| e. Tax Levies | |
| f. Non-Cash | |
| g. Other (Explain): | |
| h. **TOTAL** - Grantee share | $ 90,047 |
| **25. Other Shares** | **Amount** |
| a. State | 90,047 |
| b. Other | |
| c. **TOTAL** - Other Shares | $ 90,047 |
| **26. TOTAL NON-FEDERAL FINANCING** | $ 180,095 |

| SECTION E – REMARKS |
|---|
| (Attach sheets if additional space is required) |

Exhibit A: On-File with FAA [10/29/20 ]

DBE Requirement/Goal = 6%. * Note that since we have a single contract with the airport , that includes three projects, our DBE subcontractor is not assigned to this project and did not need to be.

The Sponsor received a New York State (NYS) Grant which covers $804,626.39 of the costs identified in Section B, Line 14. This amount is being shown in this application as non-participating work (Section C) since this portion is covered under a NYS Grant. Note, the fire alarm devices are being funded with the NYS Grant. This IIJA grant application is requesting funding for the remaining engineering and construction costs, as well as the administration fees associated with this project, that were not previously included under the NYS Grant. The breakdown is further provided and shown in the Project Cost Breakdown, attached.

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

## PART IV – PROGRAM NARRATIVE
*(Suggested Format)*

| | |
|---|---|
| **PROJECT:** Project 4: Fire Alarm Systems Upgrade (Design, Bid, & Construction) | |

**AIRPORT:** Frederick Douglass Greater Rochester International Airport (ROC)

**1. Objective:**

The proposed project includes design, bid, and construction for the installation of a new terminal fire alarm system. This grant application will cover the conduit, wire and labor only for the new fire alarm system. The fire alarm devices are being funded with a separate New York State Grant.

See attached narrative

**2. Benefits Anticipated:**

The new system will have the ability to monitor various alarms and sense problems with connections and wiring that might prevent the system from working properly, while allowing the system to pinpoint where the problems are located. This new software will also give select approved users the ability to remotely monitor the system. Paging devises will be built into the system, allowing for emergency evacuation messages to be broadcast to precise locations from various areas on the Airport campus.

**3. Approach:** (See approved Scope of Work in Final Application)

Design, Bid, and Construction

The IIJA Grant will cover the conduit, wire and labor only for the construction of the fire alarm system. The fire alarm devices are being funded with the NYS Grant.

Scope of Work - Attached to Application
Bid Recommendation Letter & Bid - Attached to Application

**4. Geographic Location:**

Frederick Douglass Greater Rochester International Airport (ROC)
43° 7' 8.917" N / 77° 40' 18.728" W

**5. If Applicable, Provide Additional Information:**

-

**6. Sponsor's Representative:** (include address & telephone number)

Allison Lia
(585)753-7109
allisonlia@monroecounty.gov

FREDRICK DOUGLASS GREATER ROCHESTER INTERNATIONAL AIRPORT (ROC)
FIRE ALARM SYSTEMS UPGRADES
PROJECT NARRATIVE

*Description*:

The proposed project includes design, bid, and construction for the installation of a new terminal fire alarm system. The existing fire alarm system was installed during projects between 1990 and 2000 and is not compatible with updated systems.

This grant application will cover the conduit, wire, and labor only for the new fire alarm system. The hardware devices for the new fire alarm system are being funded with a separate New York State Grant.

The Owner (through Johnson Controls) will furnish the fire alarm system hardware (smoke detectors, heat detectors, strobes, speakers/strobes, addressable modules, control panels, air aspiration detection system, true site workstations, etc.) to be installed and wired by the contractor. The contractor will coordinate closely with Johnson Controls. Programming of the new fire alarm system will be provided by the Owner (through Johnson Controls). The contractor will provide final testing and certification of the new fire alarm system, coordinating closely with Johnson controls during the process.

# Frederick Douglass Greater Rochester International Airport (ROC)

**Project 4: Fire Alarm Systems Upgrade [Design, Bid, & Construction]**

## Project Cost Breakdown

| Type of Work | IIJA Grant Application | | | | NYS Grant | Total |
|---|---|---|---|---|---|---|
| | Federal | State | Sponsor | Total | | |
| Administration | $9,000.00 | $500.00 | $500.00 | $10,000.00 | $0.00 | $10,000.00 |
| Engineering (Design, Bid, & Construction Phase Services) | $189,758.00 | $10,542.30 | $10,542.31 | $210,842.61 | $94,726.39 | $305,569.00 |
| Construction | $1,422,090.00 | $79,005.00 | $79,005.00 | $1,580,100.00 | $709,900.00 | $2,290,000.00 |
| **Total** | **$1,620,848.00** | **$90,047.30** | **$90,047.31** | **$1,800,942.61** | **$804,626.39** | **$2,605,569.00** |

Engineering [CHA Consulting, Inc & Pathfinder]
Construction [Schuler Haas]

# EXHIBIT E

3-36-0102-135-2025

 **U.S. Department**          **Airports Division**                                    **New York Airports**
**of Transportation**        **Eastern Region**                                      **District Office:**
**Federal Aviation**         **New York**                                            **159-30 Rockaway**
**Administration**                                                                   **Blvd, Rm 111**
                                                                                     **Jamaica, NY 11434-**
                                                                                     **4848**

Mr. Adam Bello
County Executive
Monroe County
1200 Brooks Avenue
Rochester, NY 14624

Dear Mr. Bello:

The Grant Offer for Airport Improvement Program (AIP) Project No. 3-36-0102-135-2025 at Frederick Douglass/Greater Rochester International Airport is attached for execution. This letter outlines the steps you must take to properly enter into this agreement and provides other useful information. Please read the conditions, special conditions, and assurances that comprise the grant offer carefully.

**<u>You may not make any modification to the text, terms or conditions of the grant offer.</u>**

***Steps You Must Take to Enter Into Agreement.***

To properly enter into this agreement, you must do the following:

1. The governing body must give authority to execute the grant to the individual(s) signing the grant, i.e., the person signing the document must be the sponsor's authorized representative(s) (hereinafter "authorized representative").

2. The authorized representative must execute the grant by adding their electronic signature to the appropriate certificate at the end of the agreement.

3. Once the authorized representative has electronically signed the grant, the sponsor's attorney(s) will automatically receive an email notification.

4. On the **<u>same day or after</u>** the authorized representative has signed the grant, the sponsor's attorney(s) will add their electronic signature to the appropriate certificate at the end of the agreement.

5. If there are co-sponsors, the authorized representative(s) and sponsor's attorney(s) must follow the above procedures to fully execute the grant and finalize the process. Signatures must be obtained and finalized no later than **August 28, 2025**.

6. The fully executed grant will then be automatically sent to all parties as an email attachment.

***Payment.*** Subject to the requirements in 2 CFR § 200.305 (Federal Payment), each payment request for reimbursement under this grant must be made electronically via the Delphi eInvoicing System. Please see the attached Grant Agreement for more information regarding the use of this System.

1

3-36-0102-135-2025

**Project Timing.** The terms and conditions of this agreement require you to complete the project without undue delay and no later than the Period of Performance end date (1,460 days from the grant execution date). We will be monitoring your progress to ensure proper stewardship of these Federal funds. We expect you to submit payment requests for reimbursement of allowable incurred project expenses consistent with project progress. Your grant may be placed in "inactive" status if you do not make draws on a regular basis, which will affect your ability to receive future grant offers. Costs incurred after the Period of Performance ends are generally not allowable and will be rejected unless authorized by the FAA in advance.

**Reporting.** Until the grant is completed and closed, you are responsible for submitting formal reports as follows:

> For all grants, you must submit by December 31st of each year this grant is open:
>   1. A signed/dated SF-270 (Request for Advance or Reimbursement for non-construction projects) or SF-271 or equivalent (Outlay Report and Request for Reimbursement for Construction Programs), and
>   2. An SF-425 (Federal Financial Report).

> For non-construction projects, you must submit FAA Form 5100-140, Performance Report within 30 days of the end of the Federal fiscal year.

> For construction projects, you must submit FAA Form 5370-1, Construction Progress and Inspection Report, within 30 days of the end of each Federal fiscal quarter.

**Audit Requirements.** As a condition of receiving Federal assistance under this award, you must comply with audit requirements as established under 2 CFR Part 200. Subpart F requires non-Federal entities that expend $1,000,000 or more in Federal awards to conduct a single or program specific audit for that year. Note that this includes Federal expenditures made under other Federal-assistance programs. Please take appropriate and necessary action to ensure your organization will comply with applicable audit requirements and standards.

**Closeout.** Once the project(s) is completed and all costs are determined, we ask that you work with your FAA contact indicated below to close the project without delay and submit the necessary final closeout documentation as required by your Region/Airports District Office.

**FAA Contact Information.** Glen Conacchio, (718) 995-5761, glen.l.conacchio@faa.gov is the assigned program manager for this grant and is readily available to assist you and your designated representative with the requirements stated herein.

We sincerely value your cooperation in these efforts and look forward to working with you to complete this important project.

Sincerely,

Ms. Evelyn Martinez
Manager, New York Airports District Office

2

3-36-0102-135-2025



**U.S. Department
of Transportation
Federal Aviation
Administration**

**FEDERAL AVIATION ADMINISTRATION AIRPORT IMPROVEMENT PROGRAM (AIP)**

**FY 2025 AIP**

**GRANT AGREEMENT**

**Part I - Offer**

Federal Award Offer Date

Airport/Planning Area          Frederick Douglass/Greater Rochester International Airport

Airport Infrastructure Grant
Number                         3-36-0102-135-2025

Unique Entity Identifier       DYHNLRKCH117

TO:     County of Monroe
        (herein called the "Sponsor") (For Co-Sponsors, list all Co-Sponsor names. The word "Sponsor" in this Grant Agreement also
        applies to a Co-Sponsor.)

FROM:  **The United States of America** (acting through the Federal Aviation Administration, herein
       called the "FAA")

**WHEREAS,** the Sponsor has submitted to the FAA a Project Application dated May 19, 2025, for a grant
of Federal funds for a project at or associated with the Frederick Douglass/Greater Rochester
International Airport, which is included as part of this Grant Agreement; and

**WHEREAS,** the FAA has approved a project for the Frederick Douglass/Greater Rochester International
Airport (herein called the "Project") consisting of the following:

Rehabilitate 15,500 square feet of existing ARFF Building - Design and Construction

which is more fully described in the Project Application.

3

3-36-0102-135-2025

**NOW THEREFORE,** Pursuant to and for the purpose of carrying out the Title 49, United States Code (U.S.C.), Chapters 471 and 475; 49 U.S.C. §§ 40101 et seq., and 48103; FAA Reauthorization Act of 2018 (Public Law  Number (P.L.) 115-254); the Department of Transportation Appropriations Act, 2021 ( P.L. 116-260, Division L); the Consolidated Appropriations Act, 2022 ( P.L. 117-103); Consolidated Appropriations Act, 2023 ( P.L. 117-328); Consolidated Appropriations Act, 2024 (P.L. 118-42); FAA Reauthorization Act of 2024 (P.L. 118-63); and the representations contained in the Project Application; and in consideration of: (a) the Sponsor's adoption and ratification of the Grant Assurances dated April 2025, interpreted and applied consistent with the FAA Reauthorization Act of 2024; (b) the Sponsor's acceptance of this Offer; and (c) the benefits to accrue to the United States and the public from the accomplishment of the Project and compliance with the Grant Assurance and conditions as herein provided;

**THE FEDERAL AVIATION ADMINISTRATION, FOR AND ON BEHALF OF THE UNITED STATES, HEREBY OFFERS AND AGREES to pay (90) % of the allowable costs incurred accomplishing the Project as the United States share of the Project.**

**Assistance Listings Number (Formerly CFDA Number): 20.106**

**This Offer is made on and SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS**:

## CONDITIONS

1. **Maximum Obligation.** The maximum obligation of the United States payable under this Offer is $703,440.

   The following amounts represent a breakdown of the maximum obligation for the purpose of establishing allowable amounts for any future grant amendment, which may increase the foregoing maximum obligation of the United States under the provisions of 49 U.S.C. § 47108(b):
   $0 for planning
   $703,440 for airport development or noise program implementation; and,
   $0 for land acquisition.

2. **Grant Performance.** This Grant Agreement is subject to the following Federal award requirements:

   a.  Period of Performance:

       1.  Shall start on the date the Sponsor formally accepts this Agreement and is the date signed by the last Sponsor signatory to the Agreement. The end date of the Period of Performance is 4 years (1,460 calendar days) from the date of acceptance. The Period of Performance end date shall not affect, relieve, or reduce Sponsor obligations and assurances that extend beyond the closeout of this Grant Agreement.

       2.  Means the total estimated time interval between the start of an initial Federal award and the planned end date, which may include one or more funded portions or budget periods (2 Code of Federal Regulations (CFR) § 200.1) except as noted in 49 U.S.C § 47142(b).

   b.  Budget Period:

       1.  For this Grant is 4 years (1,460 calendar days) and follows the same start and end date as the Period of Performance provided in paragraph 2(a)(1). Pursuant to 2 CFR § 200.403(h), the Sponsor may charge to the Grant only allowable costs incurred during the Budget Period except as noted in 49 U.S.C § 47142(b).

       2.  Means the time interval from the start date of a funded portion of an award to the end date of that funded portion during which the Sponsor is authorized to expend the funds awarded, including any funds carried forward or other revisions pursuant to 2 CFR § 200.308.

3-36-0102-135-2025

c.  Close Out and Termination

Unless the FAA authorizes a written extension, the Sponsor must submit all Grant closeout documentation and liquidate (pay-off) all obligations incurred under this award no later than 120 calendar days after the end date of the Period of Performance. If the Sponsor does not submit all required closeout documentation within this time period, the FAA will proceed to close out the grant within one year of the Period of Performance end date with the information available at the end of 120 days (2 CFR § 200.344). The FAA may terminate this agreement and all of its obligations under this agreement if any of the following occurs:

(a)  (1) The Sponsor fails to obtain or provide any Sponsor grant contribution as required by the agreement;

(2) A completion date for the Project or a component of the Project is listed in the agreement and the Recipient fails to meet that milestone by six months after the date listed in the agreement;

(3) The Sponsor fails to comply with the terms and conditions of this agreement, including a material failure to comply with the Project Schedule even if it is beyond the reasonable control of the Sponsor;

(4) Circumstances cause changes to the Project that the FAA determines are inconsistent with the FAA's basis for selecting the Project to receive a grant; or

(5) The FAA determines that termination of this agreement is in the public interest.

(b) In terminating this agreement under this section, the FAA may elect to consider only the interests of the FAA.

(c) The Sponsor may request that the FAA terminate the agreement under this section.

3. **Ineligible or Unallowable Costs.** In accordance with 49 U.S.C. § 49 U.S.C. § 47110, the Sponsor is prohibited from including any costs in the grant funded portions of the project that the FAA has determined to be ineligible or unallowable, including costs incurred to carry out airport development implementing policies and initiatives repealed by Executive Order 14148, provided such costs are not otherwise permitted by statute.

4. **Indirect Costs - Sponsor.** The Sponsor may charge indirect costs under this award by applying the indirect cost rate identified in the project application as accepted by the FAA, to allowable costs for Sponsor direct salaries and wages.

5. **Determining the Final Federal Share of Costs.** The United States' share of allowable project costs will be made in accordance with 49 U.S.C. § 47109, the regulations, policies, and procedures of the Secretary of Transportation ("Secretary"), and any superseding legislation. Final determination of the United States' share will be based upon the final audit of the total amount of allowable project costs and settlement will be made for any upward or downward adjustments to the Federal share of costs.

6. **Completing the Project Without Delay and in Conformance with Requirements.** The Sponsor must carry out and complete the project without undue delays and in accordance with this Agreement, 49

3-36-0102-135-2025

U.S.C. Chapters 471 and 475, the regulations, policies, and procedures of the Secretary. Per 2 CFR § 200.308, the Sponsor agrees to report and request prior FAA approval for any disengagement from performing the project that exceeds three months or a 25 percent reduction in time devoted to the project. The report must include a reason for the project stoppage. The Sponsor also agrees to comply with the grant assurances, which are part of this Agreement.

7. **Amendments or Withdrawals before Grant Acceptance.** The FAA reserves the right to amend or withdraw this offer at any time prior to its acceptance by the Sponsor.

8. **Offer Expiration Date.** This offer will expire and the United States will not be obligated to pay any part of the costs of the project unless this offer has been accepted by the Sponsor on or before August 28, 2025, or such subsequent date as may be prescribed in writing by the FAA.

9. **Improper Use of Federal Funds and Mandatory Disclosure.**

   a. The Sponsor must take all steps, including litigation if necessary, to recover Federal funds spent fraudulently, wastefully, or in violation of Federal antitrust statutes, or misused in any other manner for any project upon which Federal funds have been expended. For the purposes of this Grant Agreement, the term "Federal funds" means funds however used or dispersed by the Sponsor, that were originally paid pursuant to this or any other Federal grant agreement. The Sponsor must obtain the approval of the Secretary as to any determination of the amount of the Federal share of such funds. The Sponsor must return the recovered Federal share, including funds recovered by settlement, order, or judgment, to the Secretary. The Sponsor must furnish to the Secretary, upon request, all documents and records pertaining to the determination of the amount of the Federal share or to any settlement, litigation, negotiation, or other efforts taken to recover such funds. All settlements or other final positions of the Sponsor, in court or otherwise, involving the recovery of such Federal share require advance approval by the Secretary.

   b. The Sponsor, a recipient, and a subrecipient under this Federal grant must promptly comply with the mandatory disclosure requirements as established under 2 CFR § 200.113, including reporting requirements related to recipient integrity and performance in accordance with Appendix XII to 2 CFR Part 200.

10. **United States Not Liable for Damage or Injury.** The United States is not responsible or liable for damage to property or injury to persons which may arise from, or be incident to, compliance with this Grant Agreement.

11. **System for Award Management (SAM) Registration and Unique Entity Identifier (UEI).**

   a. Requirement for System for Award Management (SAM): Unless the Sponsor is exempted from this requirement under 2 CFR § 25.110, the Sponsor must maintain the currency of its information in the SAM until the Sponsor submits the final financial report required under this Grant, or receives the final payment, whichever is later. This requires that the Sponsor review and update the information at least annually after the initial registration and more frequently if required by changes in information or another award term. Additional information about registration procedures may be found at the SAM website (currently at http://www.sam.gov).

   b. Unique entity identifier (UEI) means a 12-character alpha-numeric value used to identify a specific commercial, nonprofit or governmental entity. A UEI may be obtained from SAM.gov at https://sam.gov/content/entity-registration.

6

12. **Electronic Grant Payment(s).** Unless otherwise directed by the FAA, the Sponsor must make each payment request under this Agreement electronically via the Delphi eInvoicing System for Department of Transportation (DOT) Financial Assistance Awardees.

13. **Informal Letter Amendment of AIP Projects.** If, during the life of the project, the FAA determines that the maximum grant obligation of the United States exceeds the expected needs of the Sponsor by $25,000 or five percent (5%), whichever is greater, the FAA can issue a letter amendment to the Sponsor unilaterally reducing the maximum obligation.

    The FAA can also issue a letter to the Sponsor increasing the maximum obligation if there is an overrun in the total actual eligible and allowable project costs to cover the amount of the overrun provided it will not exceed the statutory limitations for grant amendments. The FAA's authority to increase the maximum obligation does not apply to the "planning" component of Condition No. 1, Maximum Obligation.

    The FAA can also issue an informal letter amendment that modifies the grant description to correct administrative errors or to delete work items if the FAA finds it advantageous and in the best interests of the United States.

    An informal letter amendment has the same force and effect as a formal grant amendment.

14. **Environmental Standards.** The Sponsor is required to comply with all applicable environmental standards, as further defined in the Grant Assurances, for all projects in this grant. If the Sponsor fails to comply with this requirement, the FAA may suspend, cancel, or terminate this Grant Agreement.

15. **Financial Reporting and Payment Requirements.** The Sponsor will comply with all Federal financial reporting requirements and payment requirements, including submittal of timely and accurate reports.

16. **Buy American.** Unless otherwise approved in advance by the FAA, in accordance with 49 U.S.C. § 50101, the Sponsor will not acquire or permit any contractor or subcontractor to acquire any steel or manufactured goods produced outside the United States to be used for any project for which funds are provided under this Grant. The Sponsor will include a provision implementing Buy American in every contract and subcontract awarded under this Grant.

17. **Build America, Buy America.** The Sponsor must comply with the requirements under the Build America, Buy America Act (P.L. 117-58).

18. **Maximum Obligation Increase.** In accordance with 49 U.S.C. § 47108(b), as amended, the maximum obligation of the United States, as stated in Condition No. 1, Maximum Obligation, of this Grant:

    a. May not be increased for a planning project;

    b. May be increased by not more than 15 percent for development projects, if funds are available;

    c. May be increased by not more than the greater of the following for a land project, if funds are available:

        1. 15 percent; or

        2. 25 percent of the total increase in allowable project costs attributable to acquiring an interest in the land.

3-36-0102-135-2025

If the Sponsor requests an increase, any eligible increase in funding will be subject to the United States Government share as provided in 49 U.S.C. § 47110, or other superseding legislation if applicable, for the fiscal year appropriation with which the increase is funded. The FAA is not responsible for the same Federal share provided herein for any amount increased over the initial grant amount. The FAA may adjust the Federal share as applicable through an informal letter of amendment.

19. **Audits for Sponsors.**

PUBLIC SPONSORS. The Sponsor must provide for a Single Audit or program-specific audit in accordance with 2 CFR Part 200. The Sponsor must submit the audit reporting package to the Federal Audit Clearinghouse on the Federal Audit Clearinghouse's Internet Data Entry System at http://harvester.census.gov/facweb/. Upon request of the FAA, the Sponsor shall provide one copy of the completed audit to the FAA. Sponsors that expend less than $1,000,000 in Federal awards and are exempt from Federal audit requirements must make records available for review or audit by the appropriate Federal agency officials, State, and Government Accountability Office. The FAA and other appropriate Federal agencies may request additional information to meet all Federal audit requirements.

20. **Suspension or Debarment.** When entering into a "covered transaction" as defined by 2 CFR § 180.200, the Sponsor must:

    a. Verify the non-Federal entity is eligible to participate in this Federal program by:

        1. Checking the System for Award Management (SAM.gov) exclusions to determine if the non-Federal entity is excluded or disqualified; or

        2. Collecting a certification statement from the non-Federal entity attesting they are not excluded or disqualified from participating; or

        3. Adding a clause or condition to covered transactions attesting the individual or firm are not excluded or disqualified from participating.

    b. Require prime contractors to comply with 2 CFR § 180.330 when entering into lower-tier transactions with their contractors and sub-contractors.

    c. Immediately disclose in writing to the FAA whenever (1) the Sponsor learns they have entered into a covered transaction with an ineligible entity or (2) the Public Sponsor suspends or debars a contractor, person, or entity.

21. **Ban on Texting While Driving.**

    a. In accordance with Executive Order 13513, Federal Leadership on Reducing Text Messaging While Driving, October 1, 2009, and DOT Order 3902.10, Text Messaging While Driving, December 30, 2009, the Sponsor is encouraged to:

        1. Adopt and enforce workplace safety policies to decrease crashes caused by distracted drivers including policies to ban text messaging while driving when performing any work for, or on behalf of, the Federal government, including work relating to a grant or subgrant.

        2. Conduct workplace safety initiatives in a manner commensurate with the size of the business, such as:

            i. Establishment of new rules and programs or re-evaluation of existing programs to prohibit text messaging while driving; and

    ii.    Education, awareness, and other outreach to employees about the safety risks associated with texting while driving.

b.  The Sponsor must insert the substance of this clause on banning texting while driving in all subgrants, contracts, and subcontracts funded with this Grant.

22. **Trafficking in Persons.**

1. *Posting of contact information.*

    a.  The Sponsor must post the contact information of the national human trafficking hotline (including options to reach out to the hotline such as through phone, text, or TTY) in all public airport restrooms.

2. *Provisions applicable to a recipient that is a private entity.*

    a.  Under this Grant, the recipient, its employees, subrecipients under this Grant, and subrecipient's employees must not engage in:

        i.    Severe forms of trafficking in persons;

        ii.   The procurement of a commercial sex act during the period of time that the grant or cooperative agreement is in effect;

        iii.  The use of forced labor in the performance of this grant; or any subaward; or

        iv.  Acts that directly support or advance trafficking in persons, including the following acts:

           a)  Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;

           b)  Failing to provide return transportation of pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:

              1.  Exempted from the requirement to provide or pay for such return transportation by the federal department or agency providing or entering into the grant; or

              2.  The employee is a victim of human trafficking seeking victim services or legal redress in the country of employment or witness in a human trafficking enforcement action;

           c)  Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;

           d)  Charging recruited employees a placement or recruitment fee; or

           e)  Providing or arranging housing that fails to meet the host country's housing and safety standards.

    b.  The FAA may unilaterally terminate this Grant or take any remedial actions authorized by 22 U.S.C. § 7104b(c), without penalty, if any private entity under this Grant:

        i.    Is determined to have violated a prohibition in paragraph (2)(a) of this Grant; or

        ii.   Has an employee that is determined to have violated a prohibition in paragraph(2)(a) of this Grant through conduct that is either:

           a)  Associated with the performance under this Grant; or

      b) Imputed to the recipient or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR Part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by the FAA at 2 CFR Part 1200.

3. *Provisions applicable to a recipient other than a private entity.*

    a. The FAA may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C. § 7104b(c), without penalty, if subrecipient than is a private entity under this award:

      i. Is determined to have violated a prohibition in paragraph (2)(a) of this Grant or

      ii. Has an employee that is determined to have violated a prohibition in paragraph (2)(a) of this Grant through conduct that is either:

        a) Associated with the performance under this Grant; or

        b) Imputed to the recipient or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR Part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by the FAA at 2 CFR Part 1200.

4. *Provisions applicable to any recipient.*

    a. The recipient must inform the FAA and the DOT Inspector General immediately of any information you receive from any source alleging a violation of a prohibition in paragraph (2)(a) of this Grant.

    b. The FAA's right to unilaterally terminate this Grant as described in paragraphs (2)(b) or (3)(a) of this Grant, implements the requirements of 22 U.S.C. chapter 78, and is in addition to all other remedies for noncompliance that are available to the FAA under this Grant.

    c. The recipient must include the requirements of paragraph (2)(a) of this Grant award term in any subaward it makes to a private entity.

    d. If applicable, the recipient must also comply with the compliance plan and certification requirements in 2 CFR 175.105(b).

5. *Definitions. For purposes of this Grant award, term:*

    a. "Employee" means either:

      i. An individual employed by the recipient or a subrecipient who is engaged in the performance of the project or program under this Grant; or

      ii. Another person engaged in the performance of the project or program under this Grant and not compensated by the recipient including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing requirements.

    b. "Private Entity" means:

3-36-0102-135-2025

    i.    Any entity, including for-profit organizations, nonprofit organizations, institutions of higher education, and hospitals. The term does not include foreign public entities, Indian Tribes, local governments, or states as defined in 2 CFR 200.1.

    ii.    The terms "severe forms of trafficking in persons," "commercial sex act," "sex trafficking," "Abuse or threatened abuse of law or legal process," "coercion," "debt bondage," and "involuntary servitude" have the meanings given at section 103 of the TVPA, as amended (22 U.S.C. § 7102).

23. **AIP Funded Work Included in a PFC Application.** Within 120 days of acceptance of this Grant Agreement, the Sponsor must submit to the FAA an amendment to any approved Passenger Facility Charge (PFC) application that contains an approved PFC project also covered under this Grant Agreement as described in the project application. The airport sponsor may not make any expenditure under this Grant Agreement until project work addressed under this Grant Agreement is removed from an approved PFC application by amendment.

24. **Exhibit "A" Property Map.** The Exhibit "A" Property Map dated June 07, 2021, is incorporated herein by reference or is submitted with the project application and made part of this Grant Agreement.

25. **Employee Protection from Reprisal.** In accordance with 2 CFR § 200.217 and 41 U.S.C. § 4701, an employee of a grantee, subgrantee contractor, recipient or subrecipient must not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (a)(2) of 41 U.S.C. 4712 information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant. The grantee, subgrantee, contractor, recipient, or subrecipient must inform their employees in writing of employee whistleblower rights and protections under 41 U.S.C. § 4712. See statutory requirements for whistleblower protections at 10 U.S.C. § 4701, 41 U.S.C. § 4712, 41 U.S.C. § 4304, and 10 U.S.C. § 4310.

26. **Prohibited Telecommunications and Video Surveillance Services and Equipment.** The Sponsor agrees to comply with mandatory standards and policies relating to use and procurement of certain telecommunications and video surveillance services or equipment in compliance with the National Defense Authorization Act [P.L. 115-232 § 889(f)(1)] and 2 CFR § 200.216.

27. **Critical Infrastructure Security and Resilience.** The Sponsor acknowledges that it has considered and addressed physical and cybersecurity and resilience in its project planning, design, and oversight, as determined by the DOT and the Department of Homeland Security (DHS). For airports that do not have specific DOT or DHS cybersecurity requirements, the FAA encourages the voluntary adoption of the cybersecurity requirements from the Transportation Security Administration and Federal Security Director identified for security risk Category X airports.

28. **Title VI of the Civil Rights Act.** As a condition of a grant award, the Sponsor shall demonstrate that it complies with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d et seq) and implementing regulations (49 CFR part 21), the Airport and Airway Improvement Act of 1982 (49 U.S.C. § 47123), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 et seq.), the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101, et seq.), U.S. Department of Transportation and Federal Aviation Administration (FAA) Assurances, and other relevant civil rights statutes, regulations, or authorities, including any amendments or updates thereto. This may include, as applicable, providing a current Title VI

Program Plan to the FAA for approval, in the format and according to the timeline required by the FAA, and other information about the communities that will be benefited and impacted by the project. A completed FAA Title VI Pre-Grant Award Checklist is required for every grant application, unless excused by the FAA. The Sponsor shall affirmatively ensure that when carrying out any project supported by this grant that it complies with all federal nondiscrimination and civil rights laws based on race, color, national origin, sex, creed, age, disability, genetic information, in consideration for federal financial assistance. The Department's and FAA's Office of Civil Rights may provide resources and technical assistance to recipients to ensure full and sustainable compliance with Federal civil rights requirements. Failure to comply with civil rights requirements will be considered a violation of the agreement or contract and be subject to any enforcement action as authorized by law.

29. **FAA Reauthorization Act of 2024.** This grant agreement is subject to the terms and conditions contained herein including the terms known as the Grant Assurances as they were published in the Federal Register on April 2025. On May 16, 2024, the FAA Reauthorization Act of 2024 made certain amendments to 49 U.S.C. chapter 471. The Reauthorization Act will require FAA to make certain amendments to the assurances in order to best achieve consistency with the statute. Federal law requires that FAA publish any amendments to the assurances in the Federal Register along with an opportunity to comment. In order not to delay the offer of this grant, the existing assurances are attached herein; however, FAA shall interpret and apply these assurances consistent with the Reauthorization Act. To the extent there is a conflict between the assurances and Federal statutes, the statutes shall apply. The full text of the FAA Reauthorization Act of 2024 is at https://www.congress.gov/bill/118th-congress/house-bill/3935/text.

30. **Applicable Federal Anti-Discrimination Laws.** The sponsor agrees:

    a. that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code; and

    b. to certify that it does not operate any programs promoting diversity, equity, and inclusion (DEI) that violate any applicable Federal anti-discrimination laws.

31. **Federal Law and Public Policy Requirements.** The Sponsor shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Sponsor will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in and the enforcement of Federal immigration law.

32. **National Airspace System Requirements**

    a. The Sponsor shall cooperate with FAA activities installing, maintaining, replacing, improving, or operating equipment and facilities in or supporting the National Airspace System, including

waiving permitting requirements and other restrictions affecting those activities to the maximum extent possible, and assisting the FAA in securing waivers of permitting or other restrictions from other authorities. The Sponsor shall not take actions that frustrate or prevent the FAA from installing, maintaining, replacing, improving, or operating equipment and facilities in or supporting the National Airspace System.

   b.  If FAA determines that the Sponsor has violated subsection (a), the FAA may impose a remedy, including:

       (1)  additional conditions on the award;
       (2)  consistent with 49 U.S.C chapter 471,.any remedy permitted under 2 C.F.R. 200.339–200.340, including withholding of payments; disallowance of previously reimbursed costs, requiring refunds from the Recipient to the DOT; suspension or termination of the award; or suspension and debarment under 2 C.F.R. part 180; or
       (3)  any other remedy legally available.

   c.  (In imposing a remedy under this condition, the FAA may elect to consider the interests of only the FAA.

   d.  The Sponsor acknowledges that amounts that the FAA requires the Sponsor to refund to the FAA due to a remedy under this condition constitute a debt to the Federal Government that the FAA may collect under 2 C.F.R. 200.346 and the Federal Claims Collection Standards (31 C.F.R. parts 900–904).

33. **Signage Costs for Construction Projects.** The Sponsor agrees that it will require the prime contractor of a Federally- assisted airport improvement project to post signs consistent with a DOT/FAA-prescribed format, as may be requested by the DOT/FAA, and further agrees to remove any signs posted in response to requests received prior to February 1, 2025.

34. **Title 8 - U.S.C., Chapter 12, Subchapter II - Immigration.** The sponsor will follow applicable federal laws pertaining to Subchapter 12, and be subject to the penalties set forth in 8 U.S.C. § 1324, Bringing in and harboring certain aliens, and 8 U.S.C. § 1327, Aiding or assisting certain aliens to enter

## SPECIAL CONDITIONS

35. **Airport Layout Plan.** The Sponsor understands and agrees to update the Airport Layout Plan to reflect the construction to standards satisfactory to the FAA and submit it in final form to the FAA as prescribed by 49 U.S.C. § 47107(a)(16). It is further mutually agreed that the reasonable cost of developing said Airport Layout Plan Map is an allowable cost within the scope of this project, if applicable. Airport Sponsors Grant Assurance 29 further addresses the Sponsor's statutory obligations to maintain an airport layout plan in accordance with 49 U.S.C. § 47107(a)(16).

36. **Disadvantaged Business Enterprise (DBE)/Airport Concessions Disadvantaged Business Enterprise (ACDBE) Program.** The Sponsor understands and agrees that it will not submit payment reimbursement requests until the Sponsor has received from the FAA Office of Civil Rights approval

3-36-0102-135-2025

of its DBE Program (reflecting compliance with 49 CFR Part 26 including any amendments thereto), and if applicable, its ACDBE program (reflecting compliance with 49 CFR Part 23, including any amendments thereto).

37. **Plans and Specifications Prior to Bidding.** The Sponsor agrees that it will submit plans and specifications for FAA review prior to advertising for bids.

38. **Plans and Specifications Approval Based Upon Certification.** The FAA and the Sponsor agree that the FAA's approval of the Sponsor's Plans and Specification is based primarily upon the Sponsor's certification to carry out the project in accordance with policies, standards, and specifications approved by the FAA. The Sponsor understands that:

   a. The Sponsor's certification does not relieve the Sponsor of the requirement to obtain prior FAA approval for modifications to published FAA airport development grant standards or to notify the FAA of any limitations to competition within the project;

   b. The FAA's acceptance of a Sponsor's certification does not limit the FAA from reviewing appropriate project documentation for the purpose of validating the certification statements; and

   c. If the FAA determines that the Sponsor has not complied with their certification statements, the FAA will review the associated project costs to determine whether such costs are allowable under this Grant and associated grants.

39. **Consultant Contract and Cost Analysis.** The Sponsor understands and agrees that no reimbursement will be made on the consultant contract portion of this Grant until the FAA has received the consultant contract, the Sponsor's analysis of costs, and the independent fee estimate.

40. **Mothers' Rooms.** As a small, medium, or large hub airport, the sponsor certifies it is in compliance with 49 U.S.C. § 47107(w).

41. **Buy American Executive Orders.** The Sponsor agrees to abide by applicable Executive Orders in effect at the time this Grant Agreement is executed, including Executive Order 14005, Ensuring the Future Is Made in All of America by All of America's Workers.

42. **Usable Unit of Development.** The FAA and the Sponsor agree this Grant only funds a portion of the overall project. The FAA makes no commitment of funding beyond what is provided herein. In accepting this award, the Sponsor understands and agrees that the work described in this Grant Agreement must be incorporated into a safe, useful, and usable unit of development completed within a reasonable timeframe [49 USC § 47106(a)(4)]. This safe, useful, usable unit of development must be completed regardless of whether the Sponsor receives any additional federal funding.

43. **Duffy Plaintiff Special Term.** Pursuant to the court's preliminary injunction order in State of California v. Duffy, 1:25-cv-00208-JJM-PAS (D.R.I.) (June 19, 2025), DOT will not impose or enforce the challenged immigration enforcement condition* or any materially similar terms and conditions, to any grant funds awarded, directly or indirectly, to Plaintiff States or local government entities within those States (collectively referred to as "Plaintiff State Entities"), or otherwise rescind, withhold, terminate, or take other adverse action, absent specific statutory authority, based on the challenged immigration enforcement condition while DOT is subject to an injunction. DOT will not require Plaintiff State Entities to make any certification or other representation related to compliance with the challenged immigration enforcement condition nor will DOT construe acceptance of funding from DOT as certification as to the challenged immigration enforcement condition.

3-36-0102-135-2025

*The challenged immigration enforcement condition:

"[T]he Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law."

3-36-0102-135-2025

The Sponsor's acceptance of this Offer and ratification and adoption of the Project Application incorporated herein shall be evidenced by execution of this instrument by the Sponsor, as hereinafter provided, and this Offer and Acceptance shall comprise a Grant Agreement, constituting the contractual obligations and rights of the United States and the Sponsor with respect to the accomplishment of the Project and compliance with the Grant Assurances, terms, and conditions as provided herein. Such Grant Agreement shall become effective upon the Sponsor's acceptance of this Offer.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[1]

**UNITED STATES OF AMERICA**
**FEDERAL AVIATION ADMINISTRATION**

_____
*(Signature)*

_____
*(Typed Name)*

_____
*(Title of FAA Official)*

---

[1] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

3-36-0102-135-2025

**Part II - Acceptance**

The Sponsor does hereby ratify and adopt all assurances, statements, representations, warranties, covenants, and agreements contained in the Project Application and incorporated materials referred to in the foregoing Offer, and does hereby accept this Offer and by such acceptance agrees to comply with all of the Grant Assurances, terms, and conditions in this Offer and in the Project Application.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[2]

Dated _____

County of Monroe
_____
*(Name of Sponsor)*


_____
*(Signature of Sponsor's Authorized Official)*

By: _____
*(Typed Name of Sponsor's Authorized Official)*

Title: _____
*(Title of Sponsor's Authorized Official)*

---

[2] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

3-36-0102-135-2025

## CERTIFICATE OF SPONSOR'S ATTORNEY

I, _____ , acting as Attorney for the Sponsor do hereby certify:

That in my opinion the Sponsor is empowered to enter into the foregoing Grant Agreement under the laws of the State of ____New York____. Further, I have examined the foregoing Grant Agreement and the actions taken by said Sponsor and Sponsor's official representative, who has been duly authorized to execute this Grant Agreement, which is in all respects due and proper and in accordance with the laws of the said State; and Title 49, United States Code (U.S.C.), Chapters 471 and 475; 49 U.S.C. §§ 40101 et seq., and 48103; FAA Reauthorization Act of 2018 (P.L. 115-254); the Department of Transportation Appropriations Act, 2021 (P.L. 116-260, Division L); the Consolidated Appropriations Act, 2022 ( P.L. 117-103); Consolidated Appropriations Act, 2023 ( P.L. 117-328); Consolidated Appropriations Act, 2024 (P.L. 118-42); FAA Reauthorization Act of 2024 (P.L. 118-63); and the representations contained in the Project Application. In addition, for grants involving projects to be carried out on property not owned by the Sponsor, there are no legal impediments that will prevent full performance by the Sponsor. Further, it is my opinion that the said Grant Agreement constitutes a legal and binding obligation of the Sponsor in accordance with the terms thereof.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[3]

Dated at _____

By: _____
*(Signature of Sponsor's Attorney)*

---

[3] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

3-36-0102-135-2025

# ASSURANCES
### AIRPORT SPONSORS

**A.  General.**

1.  These assurances shall be complied with in the performance of grant agreements for airport development, airport planning, and noise compatibility program grants for airport sponsors.

2.  These assurances are required to be submitted as part of the project application by sponsors requesting funds under the provisions of Title 49, U.S.C., subtitle VII, as amended. As used herein, the term "public agency sponsor" means a public agency with control of a public-use airport; the term "private sponsor" means a private owner of a public-use airport; and the term "sponsor" includes both public agency sponsors and private sponsors.

3.  Upon acceptance of this grant offer by the sponsor, these assurances are incorporated in and become part of this Grant Agreement.

**B.  Duration and Applicability.**

**1.    Airport Development or Noise Compatibility Program Projects Undertaken by a Public Agency Sponsor.**

The terms, conditions and assurances of this Grant Agreement shall remain in full force and effect throughout the useful life of the facilities developed or equipment acquired for an airport development or noise compatibility program project, or throughout the useful life of the project items installed within a facility under a noise compatibility program project, but in any event not to exceed twenty (20) years from the date of acceptance of a grant offer of Federal funds for the project. However, there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport. There shall be no limit on the duration of the terms, conditions, and assurances with respect to real property acquired with federal funds. Furthermore, the duration of the Civil Rights assurance shall be specified in the assurances.

**2.    Airport Development or Noise Compatibility Projects Undertaken by a Private Sponsor.**

The preceding paragraph (1) also applies to a private sponsor except that the useful life of project items installed within a facility or the useful life of the facilities developed or equipment acquired under an airport development or noise compatibility program project shall be no less than ten (10) years from the date of acceptance of Federal aid for the project.

**3.    Airport Planning Undertaken by a Sponsor.**

Unless otherwise specified in this Grant Agreement, only Assurances 1, 2, 3, 5, 6, 13, 18, 23, 25, 30, 32, 33, 34, 37, and 40 in Section C apply to planning projects. The terms, conditions, and assurances of this Grant Agreement shall remain in full force and effect during the life of the project; there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport.

C. **Sponsor Certification.**

The sponsor hereby assures and certifies, with respect to this grant that:

1. **General Federal Requirements**

It will comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds for this Grant. Performance under this agreement shall be governed by and in compliance with the following requirements, as applicable, to the type of organization of the Sponsor and any applicable sub-recipients. The applicable provisions to this agreement include, but are not limited to, the following:

FEDERAL LEGISLATION

   a. 49 U.S.C. subtitle VII, as amended.

   b. Davis-Bacon Act, as amended — 40 U.S.C. §§ 3141-3144, 3146, and 3147, et seq.[1]

   c. Federal Fair Labor Standards Act – 29 U.S.C. § 201, et seq.

   d. Hatch Act – 5 U.S.C. § 1501, et seq.[2]

   e. Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601, et seq.[1, 2]

   f. National Historic Preservation Act of 1966 – Section 106 – 54 U.S.C. § 306108.[1]

   g. Archeological and Historic Preservation Act of 1974 – 54 U.S.C. § 312501, et seq.[1]

   h. Native Americans Grave Repatriation Act – 25 U.S.C. § 3001, et seq.

   i. Clean Air Act, P.L. 90-148, as amended – 42 U.S.C. § 7401, et seq.

   j. Coastal Zone Management Act, P.L. 92-583, as amended – 16 U.S.C. § 1451, et seq.

   k. Flood Disaster Protection Act of 1973 – Section 102(a) - 42 U.S.C. § 4012a.[1]

   l. 49 U.S.C. § 303, (formerly known as Section 4(f)).

   m. Rehabilitation Act of 1973 – 29 U.S.C. § 794.

   n. Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.) (prohibits discrimination on the basis of race, color, national origin).

   o. Americans with Disabilities Act of 1990, as amended, (42 U.S.C. § 12101 et seq.) (prohibits discrimination on the basis of disability).

   p. Age Discrimination Act of 1975 – 42 U.S.C. § 6101, et seq.

   q. American Indian Religious Freedom Act, P.L. 95-341, as amended.

   r. Architectural Barriers Act of 1968, as amended – 42 U.S.C. § 4151, et seq.[1]

   s. Powerplant and Industrial Fuel Use Act of 1978 – Section 403 – 42 U.S.C. § 8373.[1]

   t. Contract Work Hours and Safety Standards Act – 40 U.S.C. § 3701, et seq.[1]

   u. Copeland Anti-kickback Act – 18 U.S.C. § 874.[1]

3-36-0102-135-2025

v.   National Environmental Policy Act of 1969 – 42 U.S.C. § 4321, et seq.[1]

w.   Wild and Scenic Rivers Act, P.L. 90-542, as amended – 16 U.S.C. § 1271, et seq.

x.   Single Audit Act of 1984 – 31 U.S.C. § 7501, et seq.[2]

y.   Drug-Free Workplace Act of 1988 – 41 U.S.C. §§ 8101 through 8105.

z.   The Federal Funding Accountability and Transparency Act of 2006, as amended (P.L. 109-282, as amended by section 6202 of P.L. 110-252).

aa.  Civil Rights Restoration Act of 1987, P.L. 100-259.

bb.  Infrastructure Investment and Jobs Act, P.L. 117-58, Title VIII.

cc.  Build America, Buy America Act, P.L. 117-58, Title IX.

dd.  Endangered Species Act – 16 U.S.C. 1531, et seq.

ee.  Title IX of the Education Amendments of 1972, as amended – 20 U.S.C. 1681–1683 and 1685–1687.

ff.  Drug Abuse Office and Treatment Act of 1972, as amended – 21 U.S.C. 1101, et seq.

gg.  Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, P.L. 91-616, as amended – 42 U.S.C. § 4541, et seq.

hh.  Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, P.L. 91-616, as amended – 42 U.S.C. § 4541, et seq.

ii.  Appropriated Funds to Influence Certain Federal Contracting and Financial Transactions – 31 U.S.C. § 1352.


**EXECUTIVE ORDERS**

a.   Executive Order 11990 – Protection of Wetlands

b.   Executive Order 11988 – Floodplain Management

c.   Executive Order 12372 – Intergovernmental Review of Federal Programs

d.   Executive Order 12699 – Seismic Safety of Federal and Federally Assisted New Building Construction[1]

e.   Executive Order 14005 – Ensuring the Future is Made in all of America by All of America's Workers

f.   Executive Order 14149 – Restoring Freedom of Speech and Ending Federal Censorship

g.   Executive Order 14151 – Ending Radical and Wasteful Government DEI Programs and Preferencing

h.   Executive Order 14154 – Unleashing American Energy

i.   Executive Order 14168 – Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government

j.   Executive Order 14173 – Ending Illegal Discrimination and Restoring Merit-Based Opportunity

3-36-0102-135-2025

**FEDERAL REGULATIONS**

    a.  2 CFR Part 180 – OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement).

    b.  2 CFR Part 200 and 1201 – Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards. [3, 4, 5]

    c.  2 CFR Part 1200 – Nonprocurement Suspension and Debarment.

    d.  14 CFR Part 13 – Investigative and Enforcement Procedures.

    e.  14 CFR Part 16 – Rules of Practice for Federally-Assisted Airport Enforcement Proceedings.

    f.  14 CFR Part 150 – Airport Noise Compatibility Planning.

    g.  28 CFR Part 35 – Nondiscrimination on the Basis of Disability in State and Local Government Services.

    h.  28 CFR § 50.3 – U.S. Department of Justice Guidelines for the Enforcement of Title VI of the Civil Rights Act of 1964.

    i.  29 CFR Part 1 – Procedures for Predetermination of Wage Rates.[1]

    j.  29 CFR Part 3 – Contractors and Subcontractors on Public Building or Public Work Financed in Whole or in Part by Loans or Grants from the United States.[1]

    k.  29 CFR Part 5 – Labor Standards Provisions Applicable to Contracts Covering Federally Financed and Assisted Construction (Also Labor Standards Provisions Applicable to Nonconstruction Contracts Subject to the Contract Work Hours and Safety Standards Act).[1]

    l.  41 CFR Part 60 – Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor (Federal and Federally-assisted contracting requirements).[1]

    m.  49 CFR Part 20 – New Restrictions on Lobbying.

    n.  49 CFR Part 21 – Nondiscrimination in Federally-Assisted Programs of the Department of Transportation - Effectuation of Title VI of the Civil Rights Act of 1964.

    o.  49 CFR Part 23 – Participation by Disadvantage Business Enterprise in Airport Concessions.

    p.  49 CFR Part 24 – Uniform Relocation Assistance and Real Property Acquisition for Federal and Federally-Assisted Programs.[1, 2]

    q.  49 CFR Part 26 – Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs.

    r.  49 CFR Part 27 – Nondiscrimination on the Basis of Disability in Programs or Activities Receiving Federal Financial Assistance.[1]

    s.  49 CFR Part 28 – Enforcement of Nondiscrimination on the Basis of Handicap in Programs or Activities Conducted by the Department of Transportation.

    t.  49 CFR Part 30 – Denial of Public Works Contracts to Suppliers of Goods and Services of Countries That Deny Procurement Market Access to U.S. Contractors.

    u.  49 CFR Part 32 – Governmentwide Requirements for Drug-Free Workplace (Financial Assistance).

v. 49 CFR Part 37 – Transportation Services for Individuals with Disabilities (ADA).

w. 49 CFR Part 38 – Americans with Disabilities Act (ADA) Accessibility Specifications for Transportation Vehicles.

x. 49 CFR Part 41 – Seismic Safety.

### FOOTNOTES TO ASSURANCE (C)(1)

1  These laws do not apply to airport planning sponsors.

2  These laws do not apply to private sponsors.

3  2 CFR Part 200 contains requirements for State and Local Governments receiving Federal assistance. Any requirement levied upon State and Local Governments by this regulation shall apply where applicable to private sponsors receiving Federal assistance under Title 49, United States Code.

4  Cost principles established in 2 CFR Part 200 subpart E must be used as guidelines for determining the eligibility of specific types of expenses.

5  Audit requirements established in 2 CFR Part 200 subpart F are the guidelines for audits.

### SPECIFIC ASSURANCES

Specific assurances required to be included in grant agreements by any of the above laws, regulations or circulars are incorporated by reference in this Grant Agreement.

2.  **Responsibility and Authority of the Sponsor.**

    a.  Public Agency Sponsor:

        It has legal authority to apply for this Grant, and to finance and carry out the proposed project; that a resolution, motion or similar action has been duly adopted or passed as an official act of the applicant's governing body authorizing the filing of the application, including all understandings and assurances contained therein, and directing and authorizing the person identified as the official representative of the applicant to act in connection with the application and to provide such additional information as may be required.

    b.  Private Sponsor:

        It has legal authority to apply for this Grant and to finance and carry out the proposed project and comply with all terms, conditions, and assurances of this Grant Agreement. It shall designate an official representative and shall in writing direct and authorize that person to file this application, including all understandings and assurances contained therein; to act in connection with this application; and to provide such additional information as may be required.

3.  **Sponsor Fund Availability.**

    It has sufficient funds available for that portion of the project costs which are not to be paid by the United States. It has sufficient funds available to assure operation and maintenance of items funded under this Grant Agreement which it will own or control.

4.  **Good Title.**

    a.  It, a public agency or the Federal government, holds good title, satisfactory to the Secretary, to the landing area of the airport or site thereof, or will give assurance satisfactory to the Secretary that good title will be acquired.

b. For noise compatibility program projects to be carried out on the property of the sponsor, it holds good title satisfactory to the Secretary to that portion of the property upon which Federal funds will be expended or will give assurance to the Secretary that good title will be obtained.

5. **Preserving Rights and Powers.**

a. It will not take or permit any action which would operate to deprive it of any of the rights and powers necessary to perform any or all of the terms, conditions, and assurances in this Grant Agreement without the written approval of the Secretary, and will act promptly to acquire, extinguish or modify any outstanding rights or claims of right of others which would interfere with such performance by the sponsor. This shall be done in a manner acceptable to the Secretary.

b. Subject to 49 U.S.C. § 47107(a)(16) and (x), it will not sell, lease, encumber, or otherwise transfer or dispose of any part of its title or other interests in the property shown on Exhibit A to this application or, for a noise compatibility program project, that portion of the property upon which Federal funds have been expended, for the duration of the terms, conditions, and assurances in this Grant Agreement without approval by the Secretary. If the transferee is found by the Secretary to be eligible under Title 49, United States Code, to assume the obligations of this Grant Agreement and to have the power, authority, and financial resources to carry out all such obligations, the sponsor shall insert in the contract or document transferring or disposing of the sponsor's interest, and make binding upon the transferee all of the terms, conditions, and assurances contained in this Grant Agreement.

c. For all noise compatibility program projects which are to be carried out by another unit of local government or are on property owned by a unit of local government other than the sponsor, it will enter into an agreement with that government. Except as otherwise specified by the Secretary, that agreement shall obligate that government to the same terms, conditions, and assurances that would be applicable to it if it applied directly to the FAA for a grant to undertake the noise compatibility program project. That agreement and changes thereto must be satisfactory to the Secretary. It will take steps to enforce this agreement against the local government if there is substantial non-compliance with the terms of the agreement.

d. For noise compatibility program projects to be carried out on privately owned property, it will enter into an agreement with the owner of that property which includes provisions specified by the Secretary. It will take steps to enforce this agreement against the property owner whenever there is substantial non-compliance with the terms of the agreement.

e. If the sponsor is a private sponsor, it will take steps satisfactory to the Secretary to ensure that the airport will continue to function as a public-use airport in accordance with these assurances for the duration of these assurances.

f. If an arrangement is made for management and operation of the airport by any agency or person other than the sponsor or an employee of the sponsor, the sponsor will reserve sufficient rights and authority to ensure that the airport will be operated and maintained in accordance with Title 49, United States Code, the regulations and the terms, conditions and assurances in this Grant Agreement and shall ensure that such arrangement also requires compliance therewith.

g. Sponsors of commercial service airports will not permit or enter into any arrangement that results in permission for the owner or tenant of a property used as a residence, or zoned for residential use, to taxi an aircraft between that property and any location on airport. Sponsors

of general aviation airports entering into any arrangement that results in permission for the owner of residential real property adjacent to or near the airport must comply with the requirements of Sec. 136 of Public Law 112-95 and the sponsor assurances.

6. **Consistency with Local Plans.**

The project is reasonably consistent with plans (existing at the time of submission of this application) of public agencies that are authorized by the State in which the project is located to plan for the development of the area surrounding the airport.

7. **Consideration of Local Interest.**

It has given fair consideration to the interest of communities in or near where the project may be located.

8. **Consultation with Users.**

In making a decision to undertake any airport development project under Title 49, United States Code, it has undertaken reasonable consultations with affected parties using the airport at which project is proposed.

9. **Public Hearings.**

In projects involving the location of an airport, an airport runway, or a major runway extension, it has afforded the opportunity for public hearings for the purpose of considering the economic, social, and environmental effects of the airport or runway location and its consistency with goals and objectives of such planning as has been carried out by the community and it shall, when requested by the Secretary, submit a copy of the transcript of such hearings to the Secretary. Further, for such projects, it has on its management board either voting representation from the communities where the project is located or has advised the communities that they have the right to petition the Secretary concerning a proposed project.

10. **Metropolitan Planning Organization.**

In projects involving the location of an airport, an airport runway, or a major runway extension at a medium or large hub airport, the sponsor has made available to and has provided upon request to the metropolitan planning organization in the area in which the airport is located, if any, a copy of the proposed amendment to the airport layout plan to depict the project and a copy of any airport master plan in which the project is described or depicted.

11. **Pavement Preventive Maintenance-Management.**

With respect to a project approved after January 1, 1995, for the replacement or reconstruction of pavement at the airport, it assures or certifies that it has implemented an effective airport pavement maintenance-management program and it assures that it will use such program for the useful life of any pavement constructed, reconstructed or repaired with Federal financial assistance at the airport. It will provide such reports on pavement condition and pavement management programs as the Secretary determines may be useful.

12. **Terminal Development Prerequisites.**

For projects which include terminal development at a public use airport, as defined in Title 49, it has, on the date of submittal of the project grant application, all the safety equipment required for certification of such airport under 49 U.S.C. § 44706, and all the security equipment required by rule or regulation, and has provided for access to the passenger enplaning and deplaning area of such airport to passengers enplaning and deplaning from aircraft other than air carrier aircraft.

13. **Accounting System, Audit, and Record Keeping Requirements.**

   a. It shall keep all project accounts and records which fully disclose the amount and disposition by the recipient of the proceeds of this Grant, the total cost of the project in connection with which this Grant is given or used, and the amount or nature of that portion of the cost of the project supplied by other sources, and such other financial records pertinent to the project. The accounts and records shall be kept in accordance with an accounting system that will facilitate an effective audit in accordance with the Single Audit Act of 1984.

   b. It shall make available to the Secretary and the Comptroller General of the United States, or any of their duly authorized representatives, for the purpose of audit and examination, any books, documents, papers, and records of the recipient that are pertinent to this Grant. The Secretary may require that an appropriate audit be conducted by a recipient. In any case in which an independent audit is made of the accounts of a sponsor relating to the disposition of the proceeds of a grant or relating to the project in connection with which this Grant was given or used, it shall file a certified copy of such audit with the Comptroller General of the United States not later than six (6) months following the close of the fiscal year for which the audit was made.

14. **Minimum Wage Rates.**

   It shall include, in all contracts in excess of $2,000 for work on any projects funded under this Grant Agreement which involve labor, provisions establishing minimum rates of wages, to be predetermined by the Secretary of Labor under 40 U.S.C. §§ 3141-3144, 3146, and 3147, Public Building, Property, and Works), which contractors shall pay to skilled and unskilled labor, and such minimum rates shall be stated in the invitation for bids and shall be included in proposals or bids for the work.

15. **Veteran's Preference.**

   It shall include in all contracts for work on any project funded under this Grant Agreement which involve labor, such provisions as are necessary to insure that, in the employment of labor (except in executive, administrative, and supervisory positions), preference shall be given to Vietnam era veterans, Persian Gulf veterans, Afghanistan-Iraq war veterans, disabled veterans, and small business concerns owned and controlled by disabled veterans as defined in 49 U.S.C. § 47112. However, this preference shall apply only where the individuals are available and qualified to perform the work to which the employment relates.

16. **Conformity to Plans and Specifications.**

   It will execute the project subject to plans, specifications, and schedules approved by the Secretary. Such plans, specifications, and schedules shall be submitted to the Secretary prior to commencement of site preparation, construction, or other performance under this Grant Agreement, and, upon approval of the Secretary, shall be incorporated into this Grant Agreement. Any modification to the approved plans, specifications, and schedules shall also be subject to approval of the Secretary, and incorporated into this Grant Agreement.

17. **Construction Inspection and Approval.**

   It will provide and maintain competent technical supervision at the construction site throughout the project to assure that the work conforms to the plans, specifications, and schedules approved by the Secretary for the project. It shall subject the construction work on any project contained in an approved project application to inspection and approval by the Secretary and such work shall be in

3-36-0102-135-2025

accordance with regulations and procedures prescribed by the Secretary. Such regulations and procedures shall require such cost and progress reporting by the sponsor or sponsors of such project as the Secretary shall deem necessary.

18. **Planning Projects.**

In carrying out planning projects:

a. It will execute the project in accordance with the approved program narrative contained in the project application or with the modifications similarly approved.

b. It will furnish the Secretary with such periodic reports as required pertaining to the planning project and planning work activities.

c. It will include in all published material prepared in connection with the planning project a notice that the material was prepared under a grant provided by the United States.

d. It will make such material available for examination by the public, and agrees that no material prepared with funds under this project shall be subject to copyright in the United States or any other country.

e. It will give the Secretary unrestricted authority to publish, disclose, distribute, and otherwise use any of the material prepared in connection with this grant.

f. It will grant the Secretary the right to disapprove the sponsor's employment of specific consultants and their subcontractors to do all or any part of this project as well as the right to disapprove the proposed scope and cost of professional services.

g. It will grant the Secretary the right to disapprove the use of the sponsor's employees to do all or any part of the project.

h. It understands and agrees that the Secretary's approval of this project grant or the Secretary's approval of any planning material developed as part of this grant does not constitute or imply any assurance or commitment on the part of the Secretary to approve any pending or future application for a Federal airport grant.

19. **Operation and Maintenance.**

a. The airport and all facilities which are necessary to serve the aeronautical users of the airport, other than facilities owned or controlled by the United States, shall be operated at all times in a safe and serviceable condition and in accordance with the minimum standards as may be required or prescribed by applicable Federal, state, and local agencies for maintenance and operation. It will not cause or permit any activity or action thereon which would interfere with its use for airport purposes. It will suitably operate and maintain the airport and all facilities thereon or connected therewith, with due regard to climatic and flood conditions. Any proposal to temporarily close the airport for non-aeronautical purposes must first be approved by the Secretary. In furtherance of this assurance, the sponsor will have in effect arrangements for:

1. Operating the airport's aeronautical facilities whenever required;

2. Promptly marking and lighting hazards resulting from airport conditions, including temporary conditions; and

3. Promptly notifying pilots of any condition affecting aeronautical use of the airport. Nothing contained herein shall be construed to require that the airport be operated for aeronautical use during temporary periods when snow, flood, or other climatic conditions

interfere with such operation and maintenance. Further, nothing herein shall be construed as requiring the maintenance, repair, restoration, or replacement of any structure or facility which is substantially damaged or destroyed due to an act of God or other condition or circumstance beyond the control of the sponsor.

b.  It will suitably operate and maintain noise compatibility program items that it owns or controls upon which Federal funds have been expended.

**20. Hazard Removal and Mitigation.**

It will take appropriate action to assure that such terminal airspace as is required to protect instrument and visual operations to the airport (including established minimum flight altitudes) will be adequately cleared and protected by removing, lowering, relocating, marking, or lighting or otherwise mitigating existing airport hazards and by preventing the establishment or creation of future airport hazards.

**21. Compatible Land Use.**

It will take appropriate action, to the extent reasonable, including the adoption of zoning laws, to restrict the use of land adjacent to or in the immediate vicinity of the airport to activities and purposes compatible with normal airport operations, including landing and takeoff of aircraft. In addition, if the project is for noise compatibility program implementation, it will not cause or permit any change in land use, within its jurisdiction, that will reduce its compatibility, with respect to the airport, of the noise compatibility program measures upon which Federal funds have been expended.

**22. Economic Nondiscrimination.**

a.  It will make the airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities, including commercial aeronautical activities offering services to the public at the airport.

b.  In any agreement, contract, lease, or other arrangement under which a right or privilege at the airport is granted to any person, firm, or corporation to conduct or to engage in any aeronautical activity for furnishing services to the public at the airport, the sponsor will insert and enforce provisions requiring the contractor to:

1.  Furnish said services on a reasonable, and not unjustly discriminatory, basis to all users thereof, and

2.  Charge reasonable, and not unjustly discriminatory, prices for each unit or service, provided that the contractor may be allowed to make reasonable and nondiscriminatory discounts, rebates, or other similar types of price reductions to volume purchasers.

c.  Each fixed-based operator at the airport shall be subject to the same rates, fees, rentals, and other charges as are uniformly applicable to all other fixed-based operators making the same or similar uses of such airport and utilizing the same or similar facilities.

d.  Each air carrier using such airport shall have the right to service itself or to use any fixed-based operator that is authorized or permitted by the airport to serve any air carrier at such airport.

e.  Each air carrier using such airport (whether as a tenant, non-tenant, or subtenant of another air carrier tenant) shall be subject to such nondiscriminatory and substantially comparable rules, regulations, conditions, rates, fees, rentals, and other charges with respect to facilities directly and substantially related to providing air transportation as are applicable to all such air carriers

which make similar use of such airport and utilize similar facilities, subject to reasonable classifications such as tenants or non-tenants and signatory carriers and non-signatory carriers. Classification or status as tenant or signatory shall not be unreasonably withheld by any airport provided an air carrier assumes obligations substantially similar to those already imposed on air carriers in such classification or status.

f.   It will not exercise or grant any right or privilege which operates to prevent any person, firm, or corporation operating aircraft on the airport from performing any services on its own aircraft with its own employees (including, but not limited to maintenance, repair, and fueling) that it may choose to perform.

g.   In the event the sponsor itself exercises any of the rights and privileges referred to in this assurance, the services involved will be provided on the same conditions as would apply to the furnishing of such services by commercial aeronautical service providers authorized by the sponsor under these provisions.

h.   The sponsor may establish such reasonable, and not unjustly discriminatory, conditions to be met by all users of the airport as may be necessary for the safe and efficient operation of the airport.

i.   The sponsor may prohibit or limit any given type, kind or class of aeronautical use of the airport if such action is necessary for the safe operation of the airport or necessary to serve the civil aviation needs of the public.

## 23. Exclusive Rights.

It will permit no exclusive right for the use of the airport by any person providing, or intending to provide, aeronautical services to the public. For purposes of this paragraph, the providing of the services at an airport by a single fixed-based operator shall not be construed as an exclusive right if both of the following apply:

a.   It would be unreasonably costly, burdensome, or impractical for more than one fixed-based operator to provide such services, and

b.   If allowing more than one fixed-based operator to provide such services would require the reduction of space leased pursuant to an existing agreement between such single fixed-based operator and such airport. It further agrees that it will not, either directly or indirectly, grant or permit any person, firm, or corporation, the exclusive right at the airport to conduct any aeronautical activities, including, but not limited to charter flights, pilot training, aircraft rental and sightseeing, aerial photography, crop dusting, aerial advertising and surveying, air carrier operations, aircraft sales and services, sale of aviation petroleum products whether or not conducted in conjunction with other aeronautical activity, repair and maintenance of aircraft, sale of aircraft parts, and any other activities which because of their direct relationship to the operation of aircraft can be regarded as an aeronautical activity, and that it will terminate any exclusive right to conduct an aeronautical activity now existing at such an airport before the grant of any assistance under Title 49, United States Code.

## 24. Fee and Rental Structure.

It will maintain a fee and rental structure for the facilities and services at the airport which will make the airport as self-sustaining as possible under the circumstances existing at the particular airport, taking into account such factors as the volume of traffic and economy of collection. No part of the Federal share of an airport development, airport planning or noise compatibility project for

which a Grant is made under Title 49, United States Code, the Airport and Airway Improvement Act of 1982, the Federal Airport Act or the Airport and Airway Development Act of 1970 shall be included in the rate basis in establishing fees, rates, and charges for users of that airport.

**25. Airport Revenues.**

a.  All revenues generated by the airport and any local taxes on aviation fuel established after December 30, 1987, will be expended by it for the capital or operating costs of the airport; the local airport system; or other local facilities which are owned or operated by the owner or operator of the airport and which are directly and substantially related to the actual air transportation of passengers or property; or for noise mitigation purposes on or off the airport. The following exceptions apply to this paragraph:

1.  If covenants or assurances in debt obligations issued before September 3, 1982, by the owner or operator of the airport, or provisions enacted before September 3, 1982, in governing statutes controlling the owner or operator's financing, provide for the use of the revenues from any of the airport owner or operator's facilities, including the airport, to support not only the airport but also the airport owner or operator's general debt obligations or other facilities, then this limitation on the use of all revenues generated by the airport (and, in the case of a public airport, local taxes on aviation fuel) shall not apply.

2.  If the Secretary approves the sale of a privately owned airport to a public sponsor and provides funding for any portion of the public sponsor's acquisition of land, this limitation on the use of all revenues generated by the sale shall not apply to certain proceeds from the sale. This is conditioned on repayment to the Secretary by the private owner of an amount equal to the remaining unamortized portion (amortized over a 20-year period) of any airport improvement grant made to the private owner for any purpose other than land acquisition on or after October 1, 1996, plus an amount equal to the federal share of the current fair market value of any land acquired with an airport improvement grant made to that airport on or after October 1, 1996.

3.  Certain revenue derived from or generated by mineral extraction, production, lease, or other means at a general aviation airport (as defined at 49 U.S.C. § 47102), if the FAA determines the airport sponsor meets the requirements set forth in Section 813 of Public Law 112-95.

b.  As part of the annual audit required under the Single Audit Act of 1984, the sponsor will direct that the audit will review, and the resulting audit report will provide an opinion concerning, the use of airport revenue and taxes in paragraph (a), and indicating whether funds paid or transferred to the owner or operator are paid or transferred in a manner consistent with Title 49, United States Code and any other applicable provision of law, including any regulation promulgated by the Secretary or Administrator.

c.  Any civil penalties or other sanctions will be imposed for violation of this assurance in accordance with the provisions of 49 U.S.C. § 47107.

**26. Reports and Inspections.**

It will:

a.  submit to the Secretary such annual or special financial and operations reports as the Secretary may reasonably request and make such reports available to the public; make available to the

3-36-0102-135-2025

public at reasonable times and places a report of the airport budget in a format prescribed by the Secretary;

b. for airport development projects, make the airport and all airport records and documents affecting the airport, including deeds, leases, operation and use agreements, regulations and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request;

c. for noise compatibility program projects, make records and documents relating to the project and continued compliance with the terms, conditions, and assurances of this Grant Agreement including deeds, leases, agreements, regulations, and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request; and

d. in a format and time prescribed by the Secretary, provide to the Secretary and make available to the public following each of its fiscal years, an annual report listing in detail:

1. all amounts paid by the airport to any other unit of government and the purposes for which each such payment was made; and

2. all services and property provided by the airport to other units of government and the amount of compensation received for provision of each such service and property.

**27. Use by Government Aircraft.**

It will make available all of the facilities of the airport developed with Federal financial assistance and all those usable for landing and takeoff of aircraft to the United States for use by Government aircraft in common with other aircraft at all times without charge, except, if the use by Government aircraft is substantial, charge may be made for a reasonable share, proportional to such use, for the cost of operating and maintaining the facilities used. Unless otherwise determined by the Secretary, or otherwise agreed to by the sponsor and the using agency, substantial use of an airport by Government aircraft will be considered to exist when operations of such aircraft are in excess of those which, in the opinion of the Secretary, would unduly interfere with use of the landing areas by other authorized aircraft, or during any calendar month that:

a. Five (5) or more Government aircraft are regularly based at the airport or on land adjacent thereto; or

b. The total number of movements (counting each landing as a movement) of Government aircraft is 300 or more, or the gross accumulative weight of Government aircraft using the airport (the total movement of Government aircraft multiplied by gross weights of such aircraft) is in excess of five million pounds.

**28. Land for Federal Facilities.**

It will furnish without cost to the Federal Government for use in connection with any air traffic control or air navigation activities, or weather-reporting and communication activities related to air traffic control, any areas of land or water, or estate therein as the Secretary considers necessary or desirable for construction, operation, and maintenance at Federal expense of space or facilities for such purposes. Such areas or any portion thereof will be made available as provided herein within four months after receipt of a written request from the Secretary.

3-36-0102-135-2025

**29. Airport Layout Plan.**

    a.   The airport owner or operator will maintain a current airport layout plan of the airport showing:

        1.   boundaries of the airport and all proposed additions thereto, together with the boundaries of all offsite areas owned or controlled by the sponsor for airport purposes and proposed additions thereto;

        2.   the location and nature of all existing and proposed airport facilities and structures (such as runways, taxiways, aprons, terminal buildings, hangars and roads), including all proposed extensions and reductions of existing airport facilities;

        3.   the location of all existing and proposed non-aviation areas and of all existing improvements thereon; and

        4.   all proposed and existing access points used to taxi aircraft across the airport's property boundary.

    b.   Subject to subsection 49 U.S.C. § 47107(x), the Secretary will review and approve or disapprove the plan and any revision or modification of the plan before the plan, revision, or modification takes effect.

    c.   The owner or operator will not make or allow any alteration in the airport or any of its facilities unless the alteration—

        1. is outside the scope of the Secretary's review and approval authority as set forth in subsection (x); or

        2. complies with the portions of the plan approved by the Secretary.

    d.   When the airport owner or operator makes a change or alteration in the airport or the facilities which the Secretary determines adversely affects the safety, utility, or efficiency of any federally owned, leased, or funded property on or off the airport and which is not in conformity with the airport layout plan as approved by the Secretary, the owner or operator will, if requested, by the Secretary:

        1.   eliminate such adverse effect in a manner approved by the Secretary; or

        2.   bear all costs of relocating such property or its replacement to a site acceptable to the Secretary and of restoring the property or its replacement to the level of safety, utility, efficiency, and cost of operation that existed before the alteration was made, except in the case of a relocation or replacement of an existing airport facility due to a change in the Secretary's design standards beyond the control of the airport sponsor.

**30. Civil Rights.**
It will promptly take any measures necessary to ensure that no person in the United States shall, on the grounds of race, color, and national origin (including limited English proficiency) in accordance with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d to 2000d-4); creed and sex per 49 U.S.C. § 47123 and related requirements; age per the Age Discrimination Act of 1975 and related requirements; or disability per the Americans with Disabilities Act of 1990 and related requirements, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination in any program and activity conducted with, or benefiting from, funds received from this Grant.

3-36-0102-135-2025

a. Using the definitions of activity, facility, and program as found and defined in 49 CFR §§ 21.23(b) and 21.23(e), the sponsor will facilitate all programs, operate all facilities, or conduct all programs in compliance with all non-discrimination requirements imposed by or pursuant to these assurances.

b. Applicability

   1. Programs and Activities. If the sponsor has received a grant (or other federal assistance) for any of the sponsor's program or activities, these requirements extend to all of the sponsor's programs and activities.

   2. Facilities. Where it receives a grant or other federal financial assistance to construct, expand, renovate, remodel, alter, or acquire a facility, or part of a facility, the assurance extends to the entire facility and facilities operated in connection therewith.

   3. Real Property. Where the sponsor receives a grant or other Federal financial assistance in the form of, or for the acquisition of real property or an interest in real property, the assurance will extend to rights to space on, over, or under such property.

c. Duration.

   The sponsor agrees that it is obligated to this assurance for the period during which Federal financial assistance is extended to the program, except where the Federal financial assistance is to provide, or is in the form of, personal property, or real property, or interest therein, or structures or improvements thereon, in which case the assurance obligates the sponsor, or any transferee for the longer of the following periods:

   1. So long as the airport is used as an airport, or for another purpose involving the provision of similar services or benefits; or

   2. So long as the sponsor retains ownership or possession of the property.

d. Required Solicitation Language. It will include the following notification in all solicitations for bids, Requests For Proposals for work, or material under this Grant Agreement and in all proposals for agreements, including airport concessions, regardless of funding source:

   "The (**County of Monroe**), in accordance with the provisions of Title VI of the Civil Rights Act of 1964 ( 42 U.S.C. §§ 2000d to 2000d-4) and the Regulations, hereby notifies all bidders or offerors that it will affirmatively ensure that for any contract entered into pursuant to this advertisement, all businesses will be afforded full and fair opportunity to submit bids in response to this invitation and no businesses will be discriminated against on the grounds of race, color, national origin (including limited English proficiency), creed, sex , age, or disability in consideration for an award."

e. Required Contract Provisions.

   1. It will insert the non-discrimination contract clauses requiring compliance with the acts and regulations relative to non-discrimination in Federally-assisted programs of the Department of Transportation (DOT), and incorporating the acts and regulations into the contracts by reference in every contract or agreement subject to the non-discrimination in Federally-assisted programs of the DOT acts and regulations.

   2. It will include a list of the pertinent non-discrimination authorities in every contract that is subject to the non-discrimination acts and regulations.

3-36-0102-135-2025

3. It will insert non-discrimination contract clauses as a covenant running with the land, in any deed from the United States effecting or recording a transfer of real property, structures, use, or improvements thereon or interest therein to a sponsor.

4. It will insert non-discrimination contract clauses prohibiting discrimination on the basis of race, color, national origin (including limited English proficiency), creed, sex, age, or disability as a covenant running with the land, in any future deeds, leases, license, permits, or similar instruments entered into by the sponsor with other parties:

   a. For the subsequent transfer of real property acquired or improved under the applicable activity, project, or program; and

   b. For the construction or use of, or access to, space on, over, or under real property acquired or improved under the applicable activity, project, or program.

f. It will provide for such methods of administration for the program as are found by the Secretary to give reasonable guarantee that it, other recipients, sub-recipients, sub-grantees, contractors, subcontractors, consultants, transferees, successors in interest, and other participants of Federal financial assistance under such program will comply with all requirements imposed or pursuant to the acts, the regulations, and this assurance.

g. It agrees that the United States has a right to seek judicial enforcement with regard to any matter arising under the acts, the regulations, and this assurance.

**31. Disposal of Land.**

a. For land purchased under a grant for airport noise compatibility purposes, including land serving as a noise buffer, it will dispose of the land, when the land is no longer needed for such purposes, at fair market value, at the earliest practicable time. That portion of the proceeds of such disposition which is proportionate to the United States' share of acquisition of such land will be, at the discretion of the Secretary, (1) reinvested in another project at the airport, or (2) transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

   1. Reinvestment in an approved noise compatibility project;

   2. Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. § 47117(e);

   3. Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. §§ 47114, 47115, or 47117;

   4. Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

   5. Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

   If land acquired under a grant for noise compatibility purposes is leased at fair market value and consistent with noise buffering purposes, the lease will not be considered a disposal of the land. Revenues derived from such a lease may be used for an approved airport development project that would otherwise be eligible for grant funding or any permitted use of airport revenue.

b. For land purchased under a grant for airport development purposes (other than noise compatibility), it will, when the land is no longer needed for airport purposes, dispose of such land at fair market value or make available to the Secretary an amount equal to the United

3-36-0102-135-2025

States' proportionate share of the fair market value of the land. That portion of the proceeds of such disposition which is proportionate to the United States' share of the cost of acquisition of such land will, upon application to the Secretary, be reinvested or transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

1. Reinvestment in an approved noise compatibility project;

2. Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. § 47117(e);

3. Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. §§ 47114, 47115, or 47117;

4. Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

5. Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

c. Land shall be considered to be needed for airport purposes under this assurance if (1) it may be needed for aeronautical purposes (including runway protection zones) or serve as noise buffer land, and (2) the revenue from interim uses of such land contributes to the financial self-sufficiency of the airport. Further, land purchased with a grant received by an airport operator or owner before December 31, 1987, will be considered to be needed for airport purposes if the Secretary or Federal agency making such grant before December 31, 1987, was notified by the operator or owner of the uses of such land, did not object to such use, and the land continues to be used for that purpose, such use having commenced no later than December 15, 1989.

d. Disposition of such land under (a), (b), or (c) will be subject to the retention or reservation of any interest or right therein necessary to ensure that such land will only be used for purposes which are compatible with noise levels associated with operation of the airport.

**32. Engineering and Design Services.**

If any phase of such project has received Federal funds under Chapter 471 subchapter 1 of Title 49 U.S.C., it will award each contract, or sub-contract for program management, construction management, planning studies, feasibility studies, architectural services, preliminary engineering, design, engineering, surveying, mapping or related services in the same manner as a contract for architectural and engineering services is negotiated under Chapter 11 of Title 40 U S.C., or an equivalent qualifications-based requirement prescribed for or by the sponsor of the airport.

**33. Foreign Market Restrictions.**

It will not allow funds provided under this Grant to be used to fund any project which uses any product or service of a foreign country during the period in which such foreign country is listed by the United States Trade Representative as denying fair and equitable market opportunities for products and suppliers of the United States in procurement and construction.

**34. Policies, Standards, and Specifications.**

It will carry out any project funded under an Airport Improvement Program Grant in accordance with policies, standards, and specifications approved by the Secretary including, but not limited to, current FAA Advisory Circulars (https://www.faa.gov/sites/faa/files/aip-pfc-checklist_0.pdf) for AIP projects as of **May 19, 2025.**

35. **Relocation and Real Property Acquisition.**

   a. It will be guided in acquiring real property, to the greatest extent practicable under State law, by the land acquisition policies in Subpart B of 49 CFR Part 24 and will pay or reimburse property owners for necessary expenses as specified in Subpart B.

   b. It will provide a relocation assistance program offering the services described in Subpart C of 49 CFR Part 24 and fair and reasonable relocation payments and assistance to displaced persons as required in Subpart D and E of 49 CFR Part 24.

   c. It will make available within a reasonable period of time prior to displacement, comparable replacement dwellings to displaced persons in accordance with Subpart E of 49 CFR Part 24.

36. **Access By Intercity Buses.**

   The airport owner or operator will permit, to the maximum extent practicable, intercity buses or other modes of transportation to have access to the airport; however, it has no obligation to fund special facilities for intercity buses or for other modes of transportation.

37. **Disadvantaged Business Enterprises.**

   The sponsor shall not discriminate on the basis of race, color, national origin, or sex, in the award and performance of any DOT-assisted contract covered by 49 CFR Part 26, or in the award and performance of any concession activity contract covered by 49 CFR Part 23. In addition, the sponsor shall not discriminate on the basis of race, color, national origin or sex in the administration of its Disadvantaged Business Enterprise (DBE) and Airport Concessions Disadvantaged Business Enterprise (ACDBE) programs or the requirements of 49 CFR Parts 23 and 26. The sponsor shall take all necessary and reasonable steps under 49 CFR Parts 23 and 26 to ensure nondiscrimination in the award and administration of DOT-assisted contracts, and/or concession contracts. The sponsor's DBE and ACDBE programs, as required by 49 CFR Parts 26 and 23, and as approved by DOT, are incorporated by reference in this agreement. Implementation of these programs is a legal obligation and failure to carry out its terms shall be treated as a violation of this agreement. Upon notification to the sponsor of its failure to carry out its approved program, the Department may impose sanctions as provided for under Parts 26 and 23 and may, in appropriate cases, refer the matter for enforcement under 18 U.S.C. § 1001 and/or the Program Fraud Civil Remedies Act of 1986 (31 U.S.C. §§ 3801-3809, 3812).

38. **Hangar Construction.**

   If the airport owner or operator and a person who owns an aircraft agree that a hangar is to be constructed at the airport for the aircraft at the aircraft owner's expense, the airport owner or operator will grant to the aircraft owner for the hangar a long term lease that is subject to such terms and conditions on the hangar as the airport owner or operator may impose.

39. **Competitive Access.**

   a. If the airport owner or operator of a medium or large hub airport (as defined in 49 U.S.C. § 47102) has been unable to accommodate one or more requests by an air carrier for access to gates or other facilities at that airport in order to allow the air carrier to provide service to the airport or to expand service at the airport, the airport owner or operator shall transmit a report to the Secretary that:

      1. Describes the requests;

      2. Provides an explanation as to why the requests could not be accommodated; and

3-36-0102-135-2025

    3. Provides a time frame within which, if any, the airport will be able to accommodate the requests.

b. Such report shall be due on either February 1 or August 1 of each year if the airport has been unable to accommodate the request(s) in the six month period prior to the applicable due date.

**40. Access to Leaded Aviation Gasoline**

a. If 100-octane low lead aviation gasoline (100LL) was made available at an airport, at any time during calendar year 2022, an airport owner or operator may not restrict or prohibit the sale of, or self-fueling with, 100-octane low lead aviation gasoline.

b. This requirement remains until the earlier of December 31, 2030, or the date on which the airport or any retail fuel seller at the airport makes available an unleaded aviation gasoline that has been authorized for use by the FAA as a replacement for 100-octane low lead aviation gasoline for use in nearly all piston-engine aircraft and engine models; and meets either an industry consensus standard or other standard that facilitates the safe use, production, and distribution of such unleaded aviation gasoline, as determined appropriate by the FAA.

c. An airport owner or operator understands and agrees, that any violation of this grant assurance is subject to civil penalties as provided for in 49 U.S.C. § 46301(a)(8).

3-36-0102-135-2025

ARP SOP No. 6.00                                    Effective Date: 10/1/2015

# AIP Grant Application Checklist

**AIRPORT NAME:** **Frederick Douglass Greater Rochester International** **DATE:** **05/13/2025**

**SYSTEM FOR AWARD MANAGEMENT (SAM) CAGE CODE #:** **69UP1**

**SYSTEM FOR AWARD MANAGEMENT (SAM) EXPIRATION DATE:** **10/01/2025**

This checklist (and attached instructions) is a tool to assist a grantee (airport sponsor) in identifying the requirements and considerations associated with preparing an Airport Improvement Program (AIP) grant application package for submittal to the FAA. Airport sponsors should read and consider each of the items carefully. **Some of the items can be answered by simply checking the "Yes" and "No" boxes while others require providing additional information as part of the airport's request for AIP funds.**

| Ref. | ITEMS REQUIRED TO COMPLETE APPLICATION REVIEW: | Yes | No | N/A | Comments Attached |
|------|------------------------------------------------|-----|----|----|-------------------|
| 1. | Standard Form 424 *(signed)* | ☒ | ☐ | ☐ | ☐ |
| 2. | Project Cost Breakdown *(attached)* | ☒ | ☐ | ☐ | ☐ |
| 3. | Project Sketch *(at the request of the ADO)* | ☒ | ☐ | ☐ | ☐ |
| 4. | Project Narrative *(attached or within Form 5100-100/101 Part IV)* | ☒ | ☐ | ☐ | ☐ |
| 5. | Form 5100-100 (parts II – IV) *(airport development grants)* Form 5100-101 (parts II- IV) *(planning grants)* | ☒ | ☐ | ☐ | ☐ |
| 6. | Bid Tabulations/Negotiated Amounts *(attached or previously submitted to the ADO)* | ☒ | ☐ | ☐ | ☐ |
| 7. | Exhibit A *(attached or previously submitted to the ADO)* | ☒ | ☐ | ☐ | ☐ |
| 8. | Title Certificate or Long Term Lease Agreement *(at the request of the ADO)* | ☐ | ☐ | ☒ | ☐ |

OMB Number: 4040-0004
Expiration Date: 11/30/2025

**Application for Federal Assistance SF-424**

| *1. Type of Submission: | *2. Type of Application | * If Revision, select appropriate letter(s): |
|---|---|---|
| ☐ Preapplication | ☒ New | |
| ☒ Application | ☐ Continuation | * Other (Specify) |
| ☐ Changed/Corrected Application | ☐ Revision | |

*3. Date Received:      4. Applicant Identifier:
05/13/2025

| 5a. Federal Entity Identifier: | *5b. Federal Award Identifier: |
|---|---|
| 3-36-0102-___-2025 | |

**State Use Only:**

| 6. Date Received by State: | 7. **State** Application Identifier: 4908 |
|---|---|

**8. APPLICANT INFORMATION:**

*a. Legal Name:  County of Monroe

| *b. Employer/Taxpayer Identification Number (EIN/TIN): | *c. UEI: |
|---|---|
| 16-6002563 | DYHNLRKCH117 |

**d. Address:**

| *Street 1: | 1200 Brooks Avenue |
|---|---|
| Street 2: | |
| *City: | Rochester |
| County/Parish: | Monroe |
| *State: Province: | NY |
| *Country: | USA |
| *Zip / Postal Code | 14624-1000 |

**e. Organizational Unit:**

| Department Name: | Division Name: |
|---|---|

**f. Name and contact information of person to be contacted on matters involving this application:**

| Prefix: | Mrs. | *First Name: | Allison |
|---|---|---|---|
| Middle Name: | | | |
| *Last Name: | Lia | | |
| Suffix: | | | |

Title:  Airport Engineer

Organizational Affiliation:
County of Monroe

*Telephone Number: (585) 753-7109      Fax Number:

*Email:  allisonlia@monroecounty.gov

**Application for Federal Assistance SF-424**

**\*9. Type of Applicant 1: Select Applicant Type:**

  B: County Government

Type of Applicant 2:  Select Applicant Type:

  Pick an applicant type

Type of Applicant 3:  Select  Applicant Type:

  Pick an applicant type

\*Other (Specify)

**\*10. Name of Federal Agency:**

  Federal Aviation Administration

**11. Catalog of Federal Domestic Assistance Number:**

  20-106

CFDA Title:

  Airport Improvement Program

**\*12.  Funding Opportunity Number:**

\*Title:

**13. Competition Identification Number:**

Title:

**14. Areas Affected by Project (Cities, Counties, States, etc.):**

**\*15.  Descriptive Title of Applicant's Project:**

  Rehabilitation of the Airfield Rescue & Firefighting Station - Design and Construction

**Attach supporting documents as specified in agency instructions.**

**Application for Federal Assistance SF-424**

**16. Congressional Districts Of:**

*a. Applicant: NY-25               *b. Program/Project:  NY-25

Attach an additional list of Program/Project Congressional Districts if needed.

**17.  Proposed Project:**

*a. Start Date:                      *b. End Date:

**18. Estimated Funding ($):**

| | |
|---|---|
| *a.  Federal | $ 703,440 |
| *b.  Applicant | $ 39,080 |
| *c.  State | $ 39,080 |
| *d.  Local | $ 0 |
| *e.  Other | $ 0 |
| *f.  Program Income | $ 0 |
| *g.  TOTAL | $ 781,600 |

**\*19.  Is Application Subject to Review By State Under Executive Order 12372 Process?**

☐  a.  This application was made available to the State under the Executive Order 12372 Process for review on _____ .

☐  b.  Program is subject to E.O. 12372 but has not been selected by the State for review.

☒  c.  Program is not covered by E.O. 12372.

**\*20.  Is the Applicant Delinquent On Any Federal Debt?**
    ☐ Yes  ☒ No

**If "Yes", explain:**

21. *By signing this application, I certify (1) to the statements contained in the list of certifications** and (2) that the statements herein are true, complete and accurate to the best of my knowledge.  I also provide the required assurances** and agree to comply with any resulting terms if I accept an award.  I am aware that any false, fictitious, or fraudulent statements or claims may subject me to criminal, civil, or administrative penalties.  (U. S. Code, Title 218, Section 1001)

☒ ** I AGREE

** The list of certifications and assurances, or an internet site where you may obtain this list, is contained in the announcement or agency specific instructions.

**Authorized Representative:**

| | | | |
|---|---|---|---|
| Prefix: | Mrs. | *First Name: | Allison |
| Middle Name: | | | |
| *Last Name: | Lia | | |
| Suffix: | | | |

*Title: Airport Engineer

| | |
|---|---|
| *Telephone Number: (585) 753-7109 | Fax Number: |

* Email: allisonlia@monroecounty.gov

| | |
|---|---|
| *Signature of Authorized Representative: | *Date Signed: 5/19/25 |



U.S. Department of Transportation
**Federal Aviation Administration**

OMB CONTROL NUMBER: 2120-0569
EXPIRATION DATE: 12/31/2026

## Application for Federal Assistance (Development and Equipment Projects)

### PART II – PROJECT APPROVAL INFORMATION

| Part II - SECTION A |
|---|
| The term "Sponsor" refers to the applicant name provided in box 8 of the associated SF-424 form. |

| | |
|---|---|
| **Item 1.**<br>Does Sponsor maintain an active registration in the System for Award Management (www.SAM.gov)? | ☒ Yes  ☐ No |
| **Item 2.**<br>Can Sponsor commence the work identified in the application in the fiscal year the grant is made or within six months after the grant is made, whichever is later? | ☒ Yes  ☐ No  ☐ N/A |
| **Item 3.**<br>Are there any foreseeable events that would delay completion of the project? If yes, provide attachment to this form that lists the events. | ☐ Yes  ☒ No  ☐ N/A |
| **Item 4.**<br>Will the project(s) covered by this request have impacts or effects on the environment that require mitigating measures? If yes, attach a summary listing of mitigating measures to this application and identify the name and date of the environmental document(s). | ☐ Yes  ☒ No  ☐ N/A |

**Item 5.**
Is the project covered by this request included in an approved Passenger Facility Charge (PFC) application or other Federal assistance program? If yes, please identify other funding sources by checking all applicable boxes.
☐ Yes  ☒ No  ☐ N/A

☐ The project is included in an *approved* PFC application.

If included in an approved PFC application,

does the application *only* address AIP matching share?  ☐ Yes  ☐ No

☐ The project is included in another Federal Assistance program. Its CFDA number is below.

**Item 6.**
Will the requested Federal assistance include Sponsor indirect costs as described in 2 CFR Appendix VII to Part 200, States and Local Government and Indian Tribe Indirect Cost Proposals?
☐ Yes  ☒ No  ☐ N/A

If the request for Federal assistance includes a claim for allowable indirect costs, select the applicable indirect cost rate the Sponsor proposes to apply:

☐ De Minimis rate of 10% as permitted by 2 CFR § 200.414.

☐ Negotiated Rate equal to        % as approved by                              (the Cognizant Agency)
on                (Date) (2 CFR part 200, appendix VII).

*Note: Refer to the instructions for limitations of application associated with claiming Sponsor indirect costs.*

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| PART II - SECTION B |
|---|
| **Certification Regarding Lobbying** |

The declarations made on this page are under the signature of the authorized representative as identified in box 21 of form SF-424, to which this form is attached. The term "Sponsor" refers to the applicant name provided in box 8 of the associated SF-424 form.

The Authorized Representative certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the Sponsor, to any person for influencing or attempting to influence an officer or employee of an agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan, or cooperative agreement, the Authorized Representative shall complete and submit Standard Form-LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Authorized Representative shall require that the language of this certification be included in the award documents for all sub-awards at all tiers (including subcontracts, subgrants, and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by section 1352, title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| PART II – SECTION C |
|---|

The Sponsor hereby represents and certifies as follows:

**1. Compatible Land Use** – The Sponsor has taken the following actions to assure compatible usage of land adjacent to or in the vicinity of the airport:

This project will not impact the land adjacent to the airport.

**2. Defaults** – The Sponsor is not in default on any obligation to the United States or any agency of the United States Government relative to the development, operation, or maintenance of any airport, except as stated herewith:

Monroe County is not in default on any obligation to the United States or any agency of the United States.

**3. Possible Disabilities** – There are no facts or circumstances (including the existence of effective or proposed leases, use agreements or other legal instruments affecting use of the Airport or the existence of pending litigation or other legal proceedings) which in reasonable probability might make it impossible for the Sponsor to carry out and complete the Project or carry out the provisions of the Grant Assurances, either by limiting its legal or financial ability or otherwise, except as follows:

No agreements or other legal instruments will make it impossible for Monroe County to carry out & complete project.

**4. Consistency with Local Plans** – The project is reasonably consistent with plans existing at the time of submission of this application) of public agencies that are authorized by the State in which the project is located to plan for the development of the area surrounding the airport.

The project is consistent with both the 2016 Airport Master Plan Update and the Airport Layout Plan, as amended.

**5. Consideration of Local Interest** – It has given fair consideration to the interest of communities in or near where the project may be located.

No adverse public comments were received at the public meeting presented as part of the master plan process.

**6. Consultation with Users** – In making a decision to undertake an airport development project under Title 49, United States Code, it has consulted with airport users that will potentially be affected by the project (§ 47105(a)(2)).

Users will be consulted during the design process.

**7. Public Hearings** – In projects involving the location of an airport, an airport runway or a major runway extension, it has afforded the opportunity for public hearings for the purpose of considering the economic, social, and environmental effects of the airport or runway location and its consistency with goals and objectives of such planning as has been carried out by the community and it shall, when requested by the Secretary, submit a copy of the transcript of such hearings to the Secretary. Further, for such projects, it has on its management board either voting representation from the communities where the project is located or has advised the communities that they have the right to petition the Secretary concerning a proposed project.

The project does not require a public hearing.

**8. Air and Water Quality Standards** – In projects involving airport location, a major runway extension, or runway location it will provide for the Governor of the state in which the project is located to certify in writing to the Secretary that the project will be located, designed, constructed, and operated so as to comply with applicable and air and water quality standards. In any case where such standards have not been approved and where applicable air and water quality standards have been promulgated by the Administrator of the Environmental Protection Agency, certification shall be obtained from such Administrator. Notice of certification or refusal to certify shall be provided within sixty days after the project application has been received by the Secretary.

This project does not involve relocation of the airport or major runway extension.

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| PART II – SECTION C (Continued) |
| --- |

9. **Exclusive Rights** – There is no grant of an exclusive right for the conduct of any aeronautical activity at any airport owned or controlled by the Sponsor except as follows:

There is no grant of exclusive right for the conduct of any aeronautical activity.

---

10. **Land** – (a) The sponsor holds the following property interest in the following areas of land, which are to be developed or used as part of or in connection with the Airport subject to the following exceptions, encumbrances, and adverse interests, all of which areas are identified on the aforementioned property map designated as Exhibit "A". [1]

The sponsor further certified that the above is based on a title examination by a qualified attorney or title company and that such attorney of title company has determined that the sponsor holds the above property interest.

The Sponsor further certifies that the above is based on a title examination by a qualified attorney or title company and that such attorney or title company has determined that the Sponsor holds the above property interests.

(b) The Sponsor will acquire within a reasonable time, but in any event prior to the start of any construction work under the Project, the following property interest in the following areas of land on which such construction work is to be performed, all of which areas are identified on the aforementioned property map designated as Exhibit "A". [1]

This project is entirely on existing airport property.

(c) The Sponsor will acquire within a reasonable time, and if feasible prior to the completion of all construction work under the Project, the following property interest in the following areas of land which are to be developed or used as part of or in connection with the Airport as it will be upon completion of the Project, all of which areas are identified on the aforementioned property map designated as Exhibit "A". [1]

This project is entirely on existing airport property.

---

[1] State the character of property interest in each area and list and identify for each all exceptions, encumbrances, and adverse interests of every kind and nature, including liens, easements, leases, etc. The separate areas of land need only be identified here by the area numbers shown on the property map.

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

## PART III – BUDGET INFORMATION – CONSTRUCTION

| SECTION A – GENERAL | |
|---|---|
| 1. Assistance Listing Number: | 20.106 |
| 2. Functional or Other Breakout: | |

| SECTION B – CALCULATION OF FEDERAL GRANT | | | |
|---|---|---|---|
| Cost Classification | Latest Approved Amount (Use only for revisions) | Adjustment + or (-) Amount (Use only for revisions) | Total Amount Required |
| 1.   Administration expense | 10,000 | 0 | 10,000 |
| 2.   Preliminary expense | 0 | 0 | 0 |
| 3.   Land, structures, right-of-way | 0 | 0 | 0 |
| 4.   Architectural engineering basic fees | 96,900 | 0 | 96,900 |
| 5.   Other Architectural engineering fees | 0 | 0 | 0 |
| 6.   Project inspection fees | 136,700 | 0 | 136,700 |
| 7.   Land development | 0 | 0 | 0 |
| 8.   Relocation Expenses | 0 | 0 | 0 |
| 9.   Relocation payments to Individuals and Businesses | 0 | 0 | 0 |
| 10. Demolition and removal | 0 | 0 | 0 |
| 11. Construction and project improvement | 538,000 | 0 | 538,000 |
| 12. Equipment | 0 | 0 | 0 |
| 13. Miscellaneous | 0 | 0 | 0 |
| 14. **Subtotal** (Lines 1 through 13) | 781,600 | 0 | 781,600 |
| 15. Estimated Income (if applicable) | 0 | 0 | 0 |
| 16. Net Project Amount (Line 14 minus 15) | 781,600 | 0 | 781,600 |
| 17. **Less**: Ineligible Exclusions (Section C, line 23 g.) | 0 | 0 | 0 |
| 18. **Subtotal** (Lines 16 through 17) | 781,600 | 0 | 781,600 |
| 19. Federal Share requested of Line 18 | 703,440 | 0 | 703,440 |
| 20. Grantee share | 39,080 | 0 | 39,080 |
| 21. Other shares | 39,080 | 0 | 39,080 |
| 22. **TOTAL PROJECT** (Lines 19, 20 & 21) | 781,600 | 0 | 781,600 |

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| SECTION C – EXCLUSIONS | |
|---|---|
| **23. Classification (Description of non-participating work)** | **Amount Ineligible for Participation** |
| a. | 0 |
| b. | 0 |
| c. | 0 |
| d. | 0 |
| e. | 0 |
| f. | 0 |
| g.                                                             **Total** | 0 |

| SECTION D – PROPOSED METHOD OF FINANCING NON-FEDERAL SHARE | |
|---|---|
| **24. Grantee Share – Fund Categories** | **Amount** |
| a. Securities | 0 |
| b. Mortgages | 0 |
| c. Appropriations (by Applicant) | 39,080 |
| d. Bonds | 0 |
| e. Tax Levies | 0 |
| f. Non-Cash | 0 |
| g. Other (Explain): | 0 |
| h. **TOTAL -** Grantee share | 39,080 |
| **25. Other Shares** | **Amount** |
| a. State | 39,080 |
| b. Other | 0 |
| c. **TOTAL -** Other Shares | 39,080 |
| **26. TOTAL NON-FEDERAL FINANCING** | 78,160 |

| SECTION E – REMARKS |
|---|
| (Attach sheets if additional space is required) |
| |

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

## PART IV – PROGRAM NARRATIVE
*(Suggested Format)*

---

**PROJECT:**  Rehabilitation of the Airfield Rescue & Firefighting Station - Design and Construction

---

**AIRPORT:**  Frederick Douglass Greater Rochester International Airport

---

**1. Objective:**

The project consists of the design and rehabilitation construction of the existing Airfield Rescue and Firefighting (ARFF) station. The ARFF facility is approximately 15,500 sf, including 7,000 sf of garage area and provides Index C service. The project will consider rehabilitation and replacement of several items throughout the building. This includes repair of the windows, reconfiguration and updates to interior spaces and finishes throughout, replacement of a portion of the building Heating, Ventilation and Air Conditioning and mechanical systems, and replacement of the lighting fixtures in the firefighter bunk rooms.

---

**2. Benefits Anticipated:**

The existing ARFF facility was originally constructed in 2000 and has not been significantly updated since the original construction.  The proposed project would comprehensively rehabilitate the ARFF building, address the operational deficiencies, and provide a modern energy efficient facility.

---

**3. Approach:** (See approved Scope of Work in Final Application)

---

**4. Geographic Location:**

Frederick Douglass - Greater Rochester International Airport (ROC) is located in Monroe County, New York

---

**5. If Applicable, Provide Additional Information:**

---

**6. Sponsor's Representative:** (include address & telephone number)

Allison Lia, Airport Engineer, Monroe County
1200 Brooks Avenue, Rochester, New York 14624,
585-753-7109

---

## PROJECT NARRATIVE

### FREDERICK DOUGLASS GREATER ROCHESTER INTERNATIONAL AIRPORT

### REHABILITATION OF THE AIRFIELD RESCUE & FIREFIGHTING STATION – DESIGN/CONSTRUCTION

**Project Narrative**

The project consists of the design and rehabilitation construction of the existing Airfield Rescue and Firefighting (ARFF) station. The ARFF facility is approximately 15,500 sf, including 7,000 sf of garage area and provides Index C service. The project will consider rehabilitation and replacement of several items throughout the building. This includes repair of the windows, reconfiguration and updates to interior spaces and finishes throughout, replacement of a portion of the building Heating, Ventilation and Air Conditioning and mechanical systems, and replacement of the lighting fixtures in the firefighter bunk rooms.

**Project Justification**

The existing ARFF facility was originally constructed in 2000 and has not been significantly updated since the original construction. The proposed project would comprehensively rehabilitate the ARFF building, address the operational deficiencies, and provide a modern energy efficient facility.

**RE BD RF**

| Project Cost Estimate | | |
|---|---|---|
| Project Administration | $ | 10,000 |
| Engineering | $ | 96,900 |
| Construction Inspection | $ | 136,700 |
| Construction Cost | $ | 538,000 |
| **Total Cost:** | **$** | **781,600** |

| Project Cost Breakdown | | | |
|---|---|---|---|
| FAA | 90% | $ | 703,440 |
| Local/PFC (AIP Match) | 5% | $ | 39,080 |
| NYSDOT (AIP Match) | 5% | $ | 39,080 |
| **Total** | **100%** | **$** | **781,600** |

Monroe County
Frederick Douglass Greater Rochster Airport
Rehabilitate Existing ARFF Facility (Design/Construction)

## PROJECT COST BREAKDOWN

| Description | Work Code | Admin Cost | Engineering | Construction Inspection | Construction | Total Cost | AIP 90% | NYS SHARE 5% | LOCAL SHARE 5% |
|---|---|---|---|---|---|---|---|---|---|
| ARFF Facility Improvements | RE BD RF | $10,000.00 | $96,900.00 | $136,700.00 | $538,000.00 | $781,600.00 | $703,440 | $39,080 | $39,080 |
| Totals | | $10,000.00 | $96,900.00 | $136,700.00 | $538,000.00 | $781,600.00 | $703,440 | $39,080 | $39,080 |

## Existing Conditions

The Airfield Rescue and Fire Fighting Station's heating, ventilation and air conditioning (HVAC) system over twenty years old and is inefficient and need regular service.

The windows overlooking the airfield allow drafts the allow warm air to enter in the summer and cold air in winter make the living are uncomfortable and inefficient.



## Proposed Improvements

Update the mechanical system by adding variable refrigerant flow (VFR) units in firefighter bunk rooms so they can manually adjust temperature

New rooftop exhaust fans and kitchen hood

New light fixtures in the firefighter bunk rooms

New windows in the watch room area and improvements to existing windows to prevent drafts

# EXHIBIT F

3-36-0102-136-2025

 **U.S. Department
of Transportation
Federal Aviation
Administration**

**Airports Division
Eastern Region
New York**

**New York Airports
District Office:
159-30 Rockaway
Blvd, Rm 111
Jamaica, NY 11434-
4848**

Mr. Adam Bello
County Executive
Monroe County
1200 Brooks Avenue
Rochester, NY 14624

Dear Mr. Bello:

The Grant Offer for Airport Improvement Program (AIP) Project No. 3-36-0102-136-2025 at Frederick Douglass/Greater Rochester International Airport is attached for execution. This letter outlines the steps you must take to properly enter into this agreement and provides other useful information. Please read the conditions, special conditions, and assurances that comprise the grant offer carefully.

**You may not make any modification to the text, terms or conditions of the grant offer.**

***Steps You Must Take to Enter Into Agreement.***

To properly enter into this agreement, you must do the following:

1. The governing body must give authority to execute the grant to the individual(s) signing the grant, i.e., the person signing the document must be the sponsor's authorized representative(s) (hereinafter "authorized representative").

2. The authorized representative must execute the grant by adding their electronic signature to the appropriate certificate at the end of the agreement.

3. Once the authorized representative has electronically signed the grant, the sponsor's attorney(s) will automatically receive an email notification.

4. On the **same day or after** the authorized representative has signed the grant, the sponsor's attorney(s) will add their electronic signature to the appropriate certificate at the end of the agreement.

5. If there are co-sponsors, the authorized representative(s) and sponsor's attorney(s) must follow the above procedures to fully execute the grant and finalize the process. Signatures must be obtained and finalized no later than **August 28, 2025**.

6. The fully executed grant will then be automatically sent to all parties as an email attachment.

***Payment.*** Subject to the requirements in 2 CFR § 200.305 (Federal Payment), each payment request for reimbursement under this grant must be made electronically via the Delphi eInvoicing System. Please see the attached Grant Agreement for more information regarding the use of this System.

3-36-0102-136-2025

**Project Timing.** The terms and conditions of this agreement require you to complete the project without undue delay and no later than the Period of Performance end date (1,460 days from the grant execution date). We will be monitoring your progress to ensure proper stewardship of these Federal funds. <u>We expect you to submit payment requests for reimbursement of allowable incurred project expenses consistent with project progress.</u> Your grant may be placed in "inactive" status if you do not make draws on a regular basis, which will affect your ability to receive future grant offers. Costs incurred after the Period of Performance ends are generally not allowable and will be rejected unless authorized by the FAA in advance.

**Reporting.** Until the grant is completed and closed, you are responsible for submitting formal reports as follows:

- ➢ For all grants, you must submit by December 31st of each year this grant is open:
   1. A signed/dated SF-270 (Request for Advance or Reimbursement for non-construction projects) or SF-271 or equivalent (Outlay Report and Request for Reimbursement for Construction Programs), and
   2. An SF-425 (Federal Financial Report).

- ➢ For non-construction projects, you must submit <u>FAA Form 5100-140, Performance Report</u> within 30 days of the end of the Federal fiscal year.

- ➢ For construction projects, you must submit <u>FAA Form 5370-1, Construction Progress and Inspection Report</u>, within 30 days of the end of each Federal fiscal quarter.

**Audit Requirements.** As a condition of receiving Federal assistance under this award, you must comply with audit requirements as established under 2 CFR Part 200. Subpart F requires non-Federal entities that expend <u>$1,000,000 or more in Federal awards</u> to conduct a single or program specific audit for that year. Note that this includes Federal expenditures made under other Federal-assistance programs. Please take appropriate and necessary action to ensure your organization will comply with applicable audit requirements and standards.

**Closeout.** Once the project(s) is completed and all costs are determined, we ask that you work with your FAA contact indicated below to close the project without delay and submit the necessary final closeout documentation as required by your Region/Airports District Office.

**FAA Contact Information.** Glen Conacchio, (718) 995-5761, glen.l.conacchio@faa.gov is the assigned program manager for this grant and is readily available to assist you and your designated representative with the requirements stated herein.

We sincerely value your cooperation in these efforts and look forward to working with you to complete this important project.

Sincerely,

Ms. Evelyn Martinez
Manager, New York Airports District Office

2

3-36-0102-136-2025



**U.S. Department
of Transportation
Federal Aviation
Administration**

**FEDERAL AVIATION ADMINISTRATION AIRPORT IMPROVEMENT PROGRAM (AIP)**

**FY 2025 AIP**

**GRANT AGREEMENT**

**Part I - Offer**

Federal Award Offer Date

Airport/Planning Area | Frederick Douglass/Greater Rochester International Airport

Airport Infrastructure Grant Number | 3-36-0102-136-2025

Unique Entity Identifier | DYHNLRKCH117

TO: | County of Monroe

(herein called the "Sponsor") (For Co-Sponsors, list all Co-Sponsor names. The word "Sponsor" in this Grant Agreement also applies to a Co-Sponsor.)

FROM: **The United States of America** (acting through the Federal Aviation Administration, herein called the "FAA")

**WHEREAS**, the Sponsor has submitted to the FAA a Project Application dated April 04, 2025, for a grant of Federal funds for a project at or associated with the Frederick Douglass/Greater Rochester International Airport, which is included as part of this Grant Agreement; and

**WHEREAS**, the FAA has approved a project for the Frederick Douglass/Greater Rochester International Airport (herein called the "Project") consisting of the following:

Remove On Airport Tree Obstructions from the RPZ Approach Surfaces - Construction

which is more fully described in the Project Application.

**NOW THEREFORE**, Pursuant to and for the purpose of carrying out the Title 49, United States Code (U.S.C.), Chapters 471 and 475; 49 U.S.C. §§ 40101 et seq., and 48103; FAA Reauthorization Act of 2018

3

3-36-0102-136-2025

(Public Law Number (P.L.) 115-254); the Department of Transportation Appropriations Act, 2021 ( P.L. 116-260, Division L); the Consolidated Appropriations Act, 2022 ( P.L. 117-103); Consolidated Appropriations Act, 2023 ( P.L. 117-328); Consolidated Appropriations Act, 2024 (P.L. 118-42); FAA Reauthorization Act of 2024 (P.L. 118-63); and the representations contained in the Project Application; and in consideration of: (a) the Sponsor's adoption and ratification of the Grant Assurances dated April 2025, interpreted and applied consistent with the FAA Reauthorization Act of 2024; (b) the Sponsor's acceptance of this Offer; and (c) the benefits to accrue to the United States and the public from the accomplishment of the Project and compliance with the Grant Assurance and conditions as herein provided;

**THE FEDERAL AVIATION ADMINISTRATION, FOR AND ON BEHALF OF THE UNITED STATES, HEREBY OFFERS AND AGREES to pay (90) % of the allowable costs incurred accomplishing the Project as the United States share of the Project.**

**Assistance Listings Number (Formerly CFDA Number): 20.106**

**This Offer is made on and SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS:**

## CONDITIONS

1. **Maximum Obligation.** The maximum obligation of the United States payable under this Offer is $256,122.

   The following amounts represent a breakdown of the maximum obligation for the purpose of establishing allowable amounts for any future grant amendment, which may increase the foregoing maximum obligation of the United States under the provisions of 49 U.S.C. § 47108(b):
   $0 for planning
   $256,122 for airport development or noise program implementation; and,
   $0 for land acquisition.

2. **Grant Performance.** This Grant Agreement is subject to the following Federal award requirements:

   a. Period of Performance:

      1. Shall start on the date the Sponsor formally accepts this Agreement and is the date signed by the last Sponsor signatory to the Agreement. The end date of the Period of Performance is 4 years (1,460 calendar days) from the date of acceptance. The Period of Performance end date shall not affect, relieve, or reduce Sponsor obligations and assurances that extend beyond the closeout of this Grant Agreement.

      2. Means the total estimated time interval between the start of an initial Federal award and the planned end date, which may include one or more funded portions or budget periods (2 Code of Federal Regulations (CFR) § 200.1) except as noted in 49 U.S.C § 47142(b).

   b. Budget Period:

      1. For this Grant is 4 years (1,460 calendar days) and follows the same start and end date as the Period of Performance provided in paragraph 2(a)(1). Pursuant to 2 CFR § 200.403(h), the Sponsor may charge to the Grant only allowable costs incurred during the Budget Period except as noted in 49 U.S.C § 47142(b).

      2. Means the time interval from the start date of a funded portion of an award to the end date of that funded portion during which the Sponsor is authorized to expend the funds awarded, including any funds carried forward or other revisions pursuant to 2 CFR § 200.308.

   c. Close Out and Termination

4

Unless the FAA authorizes a written extension, the Sponsor must submit all Grant closeout documentation and liquidate (pay-off) all obligations incurred under this award no later than 120 calendar days after the end date of the Period of Performance. If the Sponsor does not submit all required closeout documentation within this time period, the FAA will proceed to close out the grant within one year of the Period of Performance end date with the information available at the end of 120 days (2 CFR § 200.344). The FAA may terminate this agreement and all of its obligations under this agreement if any of the following occurs:

(a) (1) The Sponsor fails to obtain or provide any Sponsor grant contribution as required by the agreement;

(2) A completion date for the Project or a component of the Project is listed in the agreement and the Recipient fails to meet that milestone by six months after the date listed in the agreement;

(3) The Sponsor fails to comply with the terms and conditions of this agreement, including a material failure to comply with the Project Schedule even if it is beyond the reasonable control of the Sponsor;

(4) Circumstances cause changes to the Project that the FAA determines are inconsistent with the FAA's basis for selecting the Project to receive a grant; or

(5) The FAA determines that termination of this agreement is in the public interest.

(b) In terminating this agreement under this section, the FAA may elect to consider only the interests of the FAA.

(c) The Sponsor may request that the FAA terminate the agreement under this section.

3. **Ineligible or Unallowable Costs.** In accordance with 49 U.S.C. § 49 U.S.C. § 47110, the Sponsor is prohibited from including any costs in the grant funded portions of the project that the FAA has determined to be ineligible or unallowable, including costs incurred to carry out airport development implementing policies and initiatives repealed by Executive Order 14148, provided such costs are not otherwise permitted by statute.

4. **Indirect Costs - Sponsor.** The Sponsor may charge indirect costs under this award by applying the indirect cost rate identified in the project application as accepted by the FAA, to allowable costs for Sponsor direct salaries and wages.

5. **Determining the Final Federal Share of Costs.** The United States' share of allowable project costs will be made in accordance with 49 U.S.C. § 47109, the regulations, policies, and procedures of the Secretary of Transportation ("Secretary"), and any superseding legislation. Final determination of the United States' share will be based upon the final audit of the total amount of allowable project costs and settlement will be made for any upward or downward adjustments to the Federal share of costs.

6. **Completing the Project Without Delay and in Conformance with Requirements.** The Sponsor must carry out and complete the project without undue delays and in accordance with this Agreement, 49 U.S.C. Chapters 471 and 475, the regulations, policies, and procedures of the Secretary. Per 2 CFR §

200.308, the Sponsor agrees to report and request prior FAA approval for any disengagement from performing the project that exceeds three months or a 25 percent reduction in time devoted to the project. The report must include a reason for the project stoppage. The Sponsor also agrees to comply with the grant assurances, which are part of this Agreement.

7. **Amendments or Withdrawals before Grant Acceptance.** The FAA reserves the right to amend or withdraw this offer at any time prior to its acceptance by the Sponsor.

8. **Offer Expiration Date.** This offer will expire and the United States will not be obligated to pay any part of the costs of the project unless this offer has been accepted by the Sponsor on or before August 28, 2025, or such subsequent date as may be prescribed in writing by the FAA.

9. **Improper Use of Federal Funds and Mandatory Disclosure.**

    a. The Sponsor must take all steps, including litigation if necessary, to recover Federal funds spent fraudulently, wastefully, or in violation of Federal antitrust statutes, or misused in any other manner for any project upon which Federal funds have been expended. For the purposes of this Grant Agreement, the term "Federal funds" means funds however used or dispersed by the Sponsor, that were originally paid pursuant to this or any other Federal grant agreement. The Sponsor must obtain the approval of the Secretary as to any determination of the amount of the Federal share of such funds. The Sponsor must return the recovered Federal share, including funds recovered by settlement, order, or judgment, to the Secretary. The Sponsor must furnish to the Secretary, upon request, all documents and records pertaining to the determination of the amount of the Federal share or to any settlement, litigation, negotiation, or other efforts taken to recover such funds. All settlements or other final positions of the Sponsor, in court or otherwise, involving the recovery of such Federal share require advance approval by the Secretary.

    b. The Sponsor, a recipient, and a subrecipient under this Federal grant must promptly comply with the mandatory disclosure requirements as established under 2 CFR § 200.113, including reporting requirements related to recipient integrity and performance in accordance with Appendix XII to 2 CFR Part 200.

10. **United States Not Liable for Damage or Injury.** The United States is not responsible or liable for damage to property or injury to persons which may arise from, or be incident to, compliance with this Grant Agreement.

11. **System for Award Management (SAM) Registration and Unique Entity Identifier (UEI).**

    a. Requirement for System for Award Management (SAM): Unless the Sponsor is exempted from this requirement under 2 CFR § 25.110, the Sponsor must maintain the currency of its information in the SAM until the Sponsor submits the final financial report required under this Grant, or receives the final payment, whichever is later. This requires that the Sponsor review and update the information at least annually after the initial registration and more frequently if required by changes in information or another award term. Additional information about registration procedures may be found at the SAM website (currently at http://www.sam.gov).

    b. Unique entity identifier (UEI) means a 12-character alpha-numeric value used to identify a specific commercial, nonprofit or governmental entity. A UEI may be obtained from SAM.gov at https://sam.gov/content/entity-registration.

12. **Electronic Grant Payment(s).** Unless otherwise directed by the FAA, the Sponsor must make each payment request under this Agreement electronically via the Delphi eInvoicing System for Department of Transportation (DOT) Financial Assistance Awardees.

13. **Informal Letter Amendment of AIP Projects.** If, during the life of the project, the FAA determines that the maximum grant obligation of the United States exceeds the expected needs of the Sponsor by $25,000 or five percent (5%), whichever is greater, the FAA can issue a letter amendment to the Sponsor unilaterally reducing the maximum obligation.

    The FAA can also issue a letter to the Sponsor increasing the maximum obligation if there is an overrun in the total actual eligible and allowable project costs to cover the amount of the overrun provided it will not exceed the statutory limitations for grant amendments. The FAA's authority to increase the maximum obligation does not apply to the "planning" component of Condition No. 1, Maximum Obligation.

    The FAA can also issue an informal letter amendment that modifies the grant description to correct administrative errors or to delete work items if the FAA finds it advantageous and in the best interests of the United States.

    An informal letter amendment has the same force and effect as a formal grant amendment.

14. **Environmental Standards.** The Sponsor is required to comply with all applicable environmental standards, as further defined in the Grant Assurances, for all projects in this grant. If the Sponsor fails to comply with this requirement, the FAA may suspend, cancel, or terminate this Grant Agreement.

15. **Financial Reporting and Payment Requirements.** The Sponsor will comply with all Federal financial reporting requirements and payment requirements, including submittal of timely and accurate reports.

16. **Buy American.** Unless otherwise approved in advance by the FAA, in accordance with 49 U.S.C. § 50101, the Sponsor will not acquire or permit any contractor or subcontractor to acquire any steel or manufactured goods produced outside the United States to be used for any project for which funds are provided under this Grant. The Sponsor will include a provision implementing Buy American in every contract and subcontract awarded under this Grant.

17. **Build America, Buy America.** The Sponsor must comply with the requirements under the Build America, Buy America Act (P.L. 117-58).

18. **Maximum Obligation Increase.** In accordance with 49 U.S.C. § 47108(b), as amended, the maximum obligation of the United States, as stated in Condition No. 1, Maximum Obligation, of this Grant:

    a. May not be increased for a planning project;

    b. May be increased by not more than 15 percent for development projects, if funds are available;

    c. May be increased by not more than the greater of the following for a land project, if funds are available:

        1. 15 percent; or

        2. 25 percent of the total increase in allowable project costs attributable to acquiring an interest in the land.

If the Sponsor requests an increase, any eligible increase in funding will be subject to the United States Government share as provided in 49 U.S.C. § 47110, or other superseding legislation if applicable, for the fiscal year appropriation with which the increase is funded. The FAA is not responsible for the same Federal share provided herein for any amount increased over the initial grant amount. The FAA may adjust the Federal share as applicable through an informal letter of amendment.

19. **Audits for Sponsors.**

PUBLIC SPONSORS. The Sponsor must provide for a Single Audit or program-specific audit in accordance with 2 CFR Part 200. The Sponsor must submit the audit reporting package to the Federal Audit Clearinghouse on the Federal Audit Clearinghouse's Internet Data Entry System at http://harvester.census.gov/facweb/. Upon request of the FAA, the Sponsor shall provide one copy of the completed audit to the FAA. Sponsors that expend less than $1,000,000 in Federal awards and are exempt from Federal audit requirements must make records available for review or audit by the appropriate Federal agency officials, State, and Government Accountability Office. The FAA and other appropriate Federal agencies may request additional information to meet all Federal audit requirements.

20. **Suspension or Debarment.** When entering into a "covered transaction" as defined by 2 CFR § 180.200, the Sponsor must:

   a. Verify the non-Federal entity is eligible to participate in this Federal program by:

   1. Checking the System for Award Management (SAM.gov) exclusions to determine if the non-Federal entity is excluded or disqualified; or
   2. Collecting a certification statement from the non-Federal entity attesting they are not excluded or disqualified from participating; or
   3. Adding a clause or condition to covered transactions attesting the individual or firm are not excluded or disqualified from participating.

   b. Require prime contractors to comply with 2 CFR § 180.330 when entering into lower-tier transactions with their contractors and sub-contractors.

   c. Immediately disclose in writing to the FAA whenever (1) the Sponsor learns they have entered into a covered transaction with an ineligible entity or (2) the Public Sponsor suspends or debars a contractor, person, or entity.

21. **Ban on Texting While Driving.**

   a. In accordance with Executive Order 13513, Federal Leadership on Reducing Text Messaging While Driving, October 1, 2009, and DOT Order 3902.10, Text Messaging While Driving, December 30, 2009, the Sponsor is encouraged to:

   1. Adopt and enforce workplace safety policies to decrease crashes caused by distracted drivers including policies to ban text messaging while driving when performing any work for, or on behalf of, the Federal government, including work relating to a grant or subgrant.
   2. Conduct workplace safety initiatives in a manner commensurate with the size of the business, such as:

      i. Establishment of new rules and programs or re-evaluation of existing programs to prohibit text messaging while driving; and

3-36-0102-136-2025

      ii.    Education, awareness, and other outreach to employees about the safety risks associated with texting while driving.

  b.  The Sponsor must insert the substance of this clause on banning texting while driving in all subgrants, contracts, and subcontracts funded with this Grant.

22. **Trafficking in Persons.**

  1.  *Posting of contact information.*

    a.  The Sponsor must post the contact information of the national human trafficking hotline (including options to reach out to the hotline such as through phone, text, or TTY) in all public airport restrooms.

  2.  *Provisions applicable to a recipient that is a private entity.*

    a.  Under this Grant, the recipient, its employees, subrecipients under this Grant, and subrecipient's employees must not engage in:

      i.    Severe forms of trafficking in persons;

      ii.   The procurement of a commercial sex act during the period of time that the grant or cooperative agreement is in effect;

      iii.  The use of forced labor in the performance of this grant; or any subaward; or

      iv.  Acts that directly support or advance trafficking in persons, including the following acts:

        a)  Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;

        b)  Failing to provide return transportation of pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:

          1.  Exempted from the requirement to provide or pay for such return transportation by the federal department or agency providing or entering into the grant; or

          2.  The employee is a victim of human trafficking seeking victim services or legal redress in the country of employment or witness in a human trafficking enforcement action;

        c)  Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;

        d)  Charging recruited employees a placement or recruitment fee; or

        e)  Providing or arranging housing that fails to meet the host country's housing and safety standards.

    b.  The FAA may unilaterally terminate this Grant or take any remedial actions authorized by 22 U.S.C. § 7104b(c), without penalty, if any private entity under this Grant:

      i.    Is determined to have violated a prohibition in paragraph (2)(a) of this Grant; or

      ii.   Has an employee that is determined to have violated a prohibition in paragraph(2)(a) of this Grant through conduct that is either:

        a)  Associated with the performance under this Grant; or

     b) Imputed to the recipient or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR Part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by the FAA at 2 CFR Part 1200.

3. *Provisions applicable to a recipient other than a private entity.*

   a. The FAA may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C. § 7104b(c), without penalty, if subrecipient than is a private entity under this award:

     i. Is determined to have violated a prohibition in paragraph (2)(a) of this Grant or

     ii. Has an employee that is determined to have violated a prohibition in paragraph (2)(a) of this Grant through conduct that is either:

       a) Associated with the performance under this Grant; or

       b) Imputed to the recipient or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR Part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by the FAA at 2 CFR Part 1200.

4. *Provisions applicable to any recipient.*

   a. The recipient must inform the FAA and the DOT Inspector General immediately of any information you receive from any source alleging a violation of a prohibition in paragraph (2)(a) of this Grant.

   b. The FAA's right to unilaterally terminate this Grant as described in paragraphs (2)(b) or (3)(a) of this Grant, implements the requirements of 22 U.S.C. chapter 78, and is in addition to all other remedies for noncompliance that are available to the FAA under this Grant.

   c. The recipient must include the requirements of paragraph (2)(a) of this Grant award term in any subaward it makes to a private entity.

   d. If applicable, the recipient must also comply with the compliance plan and certification requirements in 2 CFR 175.105(b).

5. *Definitions. For purposes of this Grant award, term:*

   a. "Employee" means either:

     i. An individual employed by the recipient or a subrecipient who is engaged in the performance of the project or program under this Grant; or

     ii. Another person engaged in the performance of the project or program under this Grant and not compensated by the recipient including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing requirements.

   b. "Private Entity" means:

3-36-0102-136-2025

    i.    Any entity, including for-profit organizations, nonprofit organizations, institutions of higher education, and hospitals. The term does not include foreign public entities, Indian Tribes, local governments, or states as defined in 2 CFR 200.1.

    ii.    The terms "severe forms of trafficking in persons," "commercial sex act," "sex trafficking," "Abuse or threatened abuse of law or legal process," "coercion," "debt bondage," and "involuntary servitude" have the meanings given at section 103 of the TVPA, as amended (22 U.S.C. § 7102).

23. **AIP Funded Work Included in a PFC Application.** Within 120 days of acceptance of this Grant Agreement, the Sponsor must submit to the FAA an amendment to any approved Passenger Facility Charge (PFC) application that contains an approved PFC project also covered under this Grant Agreement as described in the project application. The airport sponsor may not make any expenditure under this Grant Agreement until project work addressed under this Grant Agreement is removed from an approved PFC application by amendment.

24. **Exhibit "A" Property Map.** The Exhibit "A" Property Map dated June 07, 2021, is incorporated herein by reference or is submitted with the project application and made part of this Grant Agreement.

25. **Employee Protection from Reprisal.** In accordance with 2 CFR § 200.217 and 41 U.S.C. § 4701, an employee of a grantee, subgrantee contractor, recipient or subrecipient must not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (a)(2) of 41 U.S.C. 4712 information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant. The grantee, subgrantee, contractor, recipient, or subrecipient must inform their employees in writing of employee whistleblower rights and protections under 41 U.S.C. § 4712. See statutory requirements for whistleblower protections at 10 U.S.C. § 4701, 41 U.S.C. § 4712, 41 U.S.C. § 4304, and 10 U.S.C. § 4310.

26. **Prohibited Telecommunications and Video Surveillance Services and Equipment.** The Sponsor agrees to comply with mandatory standards and policies relating to use and procurement of certain telecommunications and video surveillance services or equipment in compliance with the National Defense Authorization Act [P.L. 115-232 § 889(f)(1)] and 2 CFR § 200.216.

27. **Critical Infrastructure Security and Resilience.** The Sponsor acknowledges that it has considered and addressed physical and cybersecurity and resilience in its project planning, design, and oversight, as determined by the DOT and the Department of Homeland Security (DHS). For airports that do not have specific DOT or DHS cybersecurity requirements, the FAA encourages the voluntary adoption of the cybersecurity requirements from the Transportation Security Administration and Federal Security Director identified for security risk Category X airports.

28. **Title VI of the Civil Rights Act.** As a condition of a grant award, the Sponsor shall demonstrate that it complies with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d et seq) and implementing regulations (49 CFR part 21), the Airport and Airway Improvement Act of 1982 (49 U.S.C. § 47123), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 et seq.), the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101, et seq.), U.S. Department of Transportation and Federal Aviation Administration (FAA) Assurances, and other relevant civil rights statutes, regulations, or authorities, including any amendments or updates thereto. This may include, as applicable, providing a current Title VI

Program Plan to the FAA for approval, in the format and according to the timeline required by the FAA, and other information about the communities that will be benefited and impacted by the project. A completed FAA Title VI Pre-Grant Award Checklist is required for every grant application, unless excused by the FAA. The Sponsor shall affirmatively ensure that when carrying out any project supported by this grant that it complies with all federal nondiscrimination and civil rights laws based on race, color, national origin, sex, creed, age, disability, genetic information, in consideration for federal financial assistance. The Department's and FAA's Office of Civil Rights may provide resources and technical assistance to recipients to ensure full and sustainable compliance with Federal civil rights requirements. Failure to comply with civil rights requirements will be considered a violation of the agreement or contract and be subject to any enforcement action as authorized by law.

29. **FAA Reauthorization Act of 2024.** This grant agreement is subject to the terms and conditions contained herein including the terms known as the Grant Assurances as they were published in the Federal Register on April 2025. On May 16, 2024, the FAA Reauthorization Act of 2024 made certain amendments to 49 U.S.C. chapter 471. The Reauthorization Act will require FAA to make certain amendments to the assurances in order to best achieve consistency with the statute. Federal law requires that FAA publish any amendments to the assurances in the Federal Register along with an opportunity to comment. In order not to delay the offer of this grant, the existing assurances are attached herein; however, FAA shall interpret and apply these assurances consistent with the Reauthorization Act. To the extent there is a conflict between the assurances and Federal statutes, the statutes shall apply. The full text of the FAA Reauthorization Act of 2024 is at https://www.congress.gov/bill/118th-congress/house-bill/3935/text.

30. **Applicable Federal Anti-Discrimination Laws.** The sponsor agrees:

    a. that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code; and

    b. to certify that it does not operate any programs promoting diversity, equity, and inclusion (DEI) that violate any applicable Federal anti-discrimination laws.

31. **Federal Law and Public Policy Requirements.** The Sponsor shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Sponsor will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in and the enforcement of Federal immigration law.

32. **National Airspace System Requirements**

    a. The Sponsor shall cooperate with FAA activities installing, maintaining, replacing, improving, or operating equipment and facilities in or supporting the National Airspace System, including

waiving permitting requirements and other restrictions affecting those activities to the maximum extent possible, and assisting the FAA in securing waivers of permitting or other restrictions from other authorities. The Sponsor shall not take actions that frustrate or prevent the FAA from installing, maintaining, replacing, improving, or operating equipment and facilities in or supporting the National Airspace System.

b. If FAA determines that the Sponsor has violated subsection (a), the FAA may impose a remedy, including:

    (1) additional conditions on the award;

    (2) consistent with 49 U.S.C chapter 471,.any remedy permitted under 2 C.F.R. 200.339–200.340, including withholding of payments; disallowance of previously reimbursed costs, requiring refunds from the Recipient to the DOT; suspension or termination of the award; or suspension and debarment under 2 C.F.R. part 180; or

    (3) any other remedy legally available.

c. (In imposing a remedy under this condition, the FAA may elect to consider the interests of only the FAA.

d. The Sponsor acknowledges that amounts that the FAA requires the Sponsor to refund to the FAA due to a remedy under this condition constitute a debt to the Federal Government that the FAA may collect under 2 C.F.R. 200.346 and the Federal Claims Collection Standards (31 C.F.R. parts 900–904).

33. **Signage Costs for Construction Projects.** The Sponsor agrees that it will require the prime contractor of a Federally- assisted airport improvement project to post signs consistent with a DOT/FAA-prescribed format, as may be requested by the DOT/FAA, and further agrees to remove any signs posted in response to requests received prior to February 1, 2025.

34. **Title 8 - U.S.C., Chapter 12, Subchapter II - Immigration**. The sponsor will follow applicable federal laws pertaining to Subchapter 12, and be subject to the penalties set forth in 8 U.S.C. § 1324, Bringing in and harboring certain aliens, and 8 U.S.C. § 1327, Aiding or assisting certain aliens to enter

## SPECIAL CONDITIONS

35. **Airport Layout Plan.** The Sponsor understands and agrees to update the Airport Layout Plan to reflect the construction to standards satisfactory to the FAA and submit it in final form to the FAA as prescribed by 49 U.S.C. § 47107(a)(16). It is further mutually agreed that the reasonable cost of developing said Airport Layout Plan Map is an allowable cost within the scope of this project, if applicable. Airport Sponsors Grant Assurance 29 further addresses the Sponsor's statutory obligations to maintain an airport layout plan in accordance with 49 U.S.C. § 47107(a)(16).

36. **Disadvantaged Business Enterprise (DBE)/Airport Concessions Disadvantaged Business Enterprise (ACDBE) Program.** The Sponsor understands and agrees that it will not submit payment reimbursement requests until the Sponsor has received from the FAA Office of Civil Rights approval

of its DBE Program (reflecting compliance with 49 CFR Part 26 including any amendments thereto), and if applicable, its ACDBE program (reflecting compliance with 49 CFR Part 23, including any amendments thereto).

37. **Obstruction Removal.** The Sponsor agrees to clear Parcel(s) R/W 10 Runway Protection Zone as shown on Exhibit "A" Property Map, of the following obstructions: trees prior to final payment under the project. The Sponsor also agrees that it will not erect, nor permit the erection of any permanent structures that results in an obstruction on the airport except those required for aids to air navigation or those which have been specifically approved by the FAA.

38. **Plans and Specifications Prior to Bidding.** The Sponsor agrees that it will submit plans and specifications for FAA review prior to advertising for bids.

39. **Plans and Specifications Approval Based Upon Certification.** The FAA and the Sponsor agree that the FAA's approval of the Sponsor's Plans and Specification is based primarily upon the Sponsor's certification to carry out the project in accordance with policies, standards, and specifications approved by the FAA. The Sponsor understands that:

    a. The Sponsor's certification does not relieve the Sponsor of the requirement to obtain prior FAA approval for modifications to published FAA airport development grant standards or to notify the FAA of any limitations to competition within the project;

    b. The FAA's acceptance of a Sponsor's certification does not limit the FAA from reviewing appropriate project documentation for the purpose of validating the certification statements; and

    c. If the FAA determines that the Sponsor has not complied with their certification statements, the FAA will review the associated project costs to determine whether such costs are allowable under this Grant and associated grants.

40. **Consultant Contract and Cost Analysis.** The Sponsor understands and agrees that no reimbursement will be made on the consultant contract portion of this Grant until the FAA has received the consultant contract, the Sponsor's analysis of costs, and the independent fee estimate.

41. **Mothers' Rooms.** As a small, medium, or large hub airport, the sponsor certifies it is in compliance with 49 U.S.C. § 47107(w).

42. **Buy American Executive Orders.** The Sponsor agrees to abide by applicable Executive Orders in effect at the time this Grant Agreement is executed, including Executive Order 14005, Ensuring the Future Is Made in All of America by All of America's Workers.

43. **Usable Unit of Development**. The FAA and the Sponsor agree this Grant only funds a portion of the overall project. The FAA makes no commitment of funding beyond what is provided herein. In accepting this award, the Sponsor understands and agrees that the work described in this Grant Agreement must be incorporated into a safe, useful, and usable unit of development completed within a reasonable timeframe [49 USC § 47106(a)(4)]. This safe, useful, usable unit of development must be completed regardless of whether the Sponsor receives any additional federal funding.

44. **Duffy Plaintiff Special Term**. Pursuant to the court's preliminary injunction order in State of California v. Duffy, 1:25-cv-00208-JJM-PAS (D.R.I.) (June 19, 2025), DOT will not impose or enforce the challenged immigration enforcement condition* or any materially similar terms and conditions, to any grant funds awarded, directly or indirectly, to Plaintiff States or local government entities within those States (collectively referred to as "Plaintiff State Entities"), or otherwise rescind, withhold, terminate, or take other adverse action, absent specific statutory authority, based on the

3-36-0102-136-2025

challenged immigration enforcement condition while DOT is subject to an injunction. DOT will not require Plaintiff State Entities to make any certification or other representation related to compliance with the challenged immigration enforcement condition nor will DOT construe acceptance of funding from DOT as certification as to the challenged immigration enforcement condition.

*The challenged immigration enforcement condition:

"[T]he Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law."

3-36-0102-136-2025

The Sponsor's acceptance of this Offer and ratification and adoption of the Project Application incorporated herein shall be evidenced by execution of this instrument by the Sponsor, as hereinafter provided, and this Offer and Acceptance shall comprise a Grant Agreement, constituting the contractual obligations and rights of the United States and the Sponsor with respect to the accomplishment of the Project and compliance with the Grant Assurances, terms, and conditions as provided herein. Such Grant Agreement shall become effective upon the Sponsor's acceptance of this Offer.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[1]

**UNITED STATES OF AMERICA**
**FEDERAL AVIATION ADMINISTRATION**

_____
*(Signature)*

_____
*(Typed Name)*

_____
*(Title of FAA Official)*

---

[1] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

16

3-36-0102-136-2025

### Part II - Acceptance

The Sponsor does hereby ratify and adopt all assurances, statements, representations, warranties, covenants, and agreements contained in the Project Application and incorporated materials referred to in the foregoing Offer, and does hereby accept this Offer and by such acceptance agrees to comply with all of the Grant Assurances, terms, and conditions in this Offer and in the Project Application.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[2]

Dated _____

County of Monroe
_____
*(Name of Sponsor)*


_____
*(Signature of Sponsor's Authorized Official)*

By: _____
*(Typed Name of Sponsor's Authorized Official)*

Title: _____
*(Title of Sponsor's Authorized Official)*

---

[2] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

3-36-0102-136-2025

## CERTIFICATE OF SPONSOR'S ATTORNEY

I, _____, acting as Attorney for the Sponsor do hereby certify:

That in my opinion the Sponsor is empowered to enter into the foregoing Grant Agreement under the laws of the State of ___New York___. Further, I have examined the foregoing Grant Agreement and the actions taken by said Sponsor and Sponsor's official representative, who has been duly authorized to execute this Grant Agreement, which is in all respects due and proper and in accordance with the laws of the said State; and Title 49, United States Code (U.S.C.), Chapters 471 and 475; 49 U.S.C. §§ 40101 et seq., and 48103; FAA Reauthorization Act of 2018 (P.L. 115-254); the Department of Transportation Appropriations Act, 2021 (P.L. 116-260, Division L); the Consolidated Appropriations Act, 2022 ( P.L. 117-103); Consolidated Appropriations Act, 2023 ( P.L. 117-328); Consolidated Appropriations Act, 2024 (P.L. 118-42); FAA Reauthorization Act of 2024 (P.L. 118-63); and the representations contained in the Project Application. In addition, for grants involving projects to be carried out on property not owned by the Sponsor, there are no legal impediments that will prevent full performance by the Sponsor. Further, it is my opinion that the said Grant Agreement constitutes a legal and binding obligation of the Sponsor in accordance with the terms thereof.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[3]

Dated at _____

By: _____
*(Signature of Sponsor's Attorney)*

---

[3] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

3-36-0102-136-2025

# ASSURANCES
## AIRPORT SPONSORS

**A. General.**

1. These assurances shall be complied with in the performance of grant agreements for airport development, airport planning, and noise compatibility program grants for airport sponsors.

2. These assurances are required to be submitted as part of the project application by sponsors requesting funds under the provisions of Title 49, U.S.C., subtitle VII, as amended. As used herein, the term "public agency sponsor" means a public agency with control of a public-use airport; the term "private sponsor" means a private owner of a public-use airport; and the term "sponsor" includes both public agency sponsors and private sponsors.

3. Upon acceptance of this grant offer by the sponsor, these assurances are incorporated in and become part of this Grant Agreement.

**B. Duration and Applicability.**

**1. Airport Development or Noise Compatibility Program Projects Undertaken by a Public Agency Sponsor.**

The terms, conditions and assurances of this Grant Agreement shall remain in full force and effect throughout the useful life of the facilities developed or equipment acquired for an airport development or noise compatibility program project, or throughout the useful life of the project items installed within a facility under a noise compatibility program project, but in any event not to exceed twenty (20) years from the date of acceptance of a grant offer of Federal funds for the project. However, there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport. There shall be no limit on the duration of the terms, conditions, and assurances with respect to real property acquired with federal funds. Furthermore, the duration of the Civil Rights assurance shall be specified in the assurances.

**2. Airport Development or Noise Compatibility Projects Undertaken by a Private Sponsor.**

The preceding paragraph (1) also applies to a private sponsor except that the useful life of project items installed within a facility or the useful life of the facilities developed or equipment acquired under an airport development or noise compatibility program project shall be no less than ten (10) years from the date of acceptance of Federal aid for the project.

**3. Airport Planning Undertaken by a Sponsor.**

Unless otherwise specified in this Grant Agreement, only Assurances 1, 2, 3, 5, 6, 13, 18, 23, 25, 30, 32, 33, 34, 37, and 40 in Section C apply to planning projects. The terms, conditions, and assurances of this Grant Agreement shall remain in full force and effect during the life of the project; there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport.

3-36-0102-136-2025

## C.  Sponsor Certification.

The sponsor hereby assures and certifies, with respect to this grant that:

### 1.  General Federal Requirements

It will comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds for this Grant. Performance under this agreement shall be governed by and in compliance with the following requirements, as applicable, to the type of organization of the Sponsor and any applicable sub-recipients. The applicable provisions to this agreement include, but are not limited to, the following:

**FEDERAL LEGISLATION**

a.  49 U.S.C. subtitle VII, as amended.

b.  Davis-Bacon Act, as amended — 40 U.S.C. §§ 3141-3144, 3146, and 3147, et seq.[1]

c.  Federal Fair Labor Standards Act – 29 U.S.C. § 201, et seq.

d.  Hatch Act – 5 U.S.C. § 1501, et seq.[2]

e.  Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601, et seq.[1, 2]

f.  National Historic Preservation Act of 1966 – Section 106 – 54 U.S.C. § 306108.[1]

g.  Archeological and Historic Preservation Act of 1974 – 54 U.S.C. § 312501, et seq.[1]

h.  Native Americans Grave Repatriation Act – 25 U.S.C. § 3001, et seq.

i.  Clean Air Act, P.L. 90-148, as amended – 42 U.S.C. § 7401, et seq.

j.  Coastal Zone Management Act, P.L. 92-583, as amended – 16 U.S.C. § 1451, et seq.

k.  Flood Disaster Protection Act of 1973 – Section 102(a) - 42 U.S.C. § 4012a.[1]

l.  49 U.S.C. § 303, (formerly known as Section 4(f)).

m.  Rehabilitation Act of 1973 – 29 U.S.C. § 794.

n.  Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.) (prohibits discrimination on the basis of race, color, national origin).

o.  Americans with Disabilities Act of 1990, as amended, (42 U.S.C. § 12101 et seq.) (prohibits discrimination on the basis of disability).

p.  Age Discrimination Act of 1975 – 42 U.S.C. § 6101, et seq.

q.  American Indian Religious Freedom Act, P.L. 95-341, as amended.

r.  Architectural Barriers Act of 1968, as amended – 42 U.S.C. § 4151, et seq.[1]

s.  Powerplant and Industrial Fuel Use Act of 1978 – Section 403 – 42 U.S.C. § 8373.[1]

t.  Contract Work Hours and Safety Standards Act – 40 U.S.C. § 3701, et seq.[1]

u.  Copeland Anti-kickback Act – 18 U.S.C. § 874.[1]

3-36-0102-136-2025

v.   National Environmental Policy Act of 1969 – 42 U.S.C. § 4321, et seq.[1]

w.   Wild and Scenic Rivers Act, P.L. 90-542, as amended – 16 U.S.C. § 1271, et seq.

x.   Single Audit Act of 1984 – 31 U.S.C. § 7501, et seq.[2]

y.   Drug-Free Workplace Act of 1988 – 41 U.S.C. §§ 8101 through 8105.

z.   The Federal Funding Accountability and Transparency Act of 2006, as amended (P.L. 109-282, as amended by section 6202 of P.L. 110-252).

aa.  Civil Rights Restoration Act of 1987, P.L. 100-259.

bb.  Infrastructure Investment and Jobs Act, P.L. 117-58, Title VIII.

cc.  Build America, Buy America Act, P.L. 117-58, Title IX.

dd.  Endangered Species Act – 16 U.S.C. 1531, et seq.

ee.  Title IX of the Education Amendments of 1972, as amended – 20 U.S.C. 1681–1683 and 1685–1687.

ff.  Drug Abuse Office and Treatment Act of 1972, as amended – 21 U.S.C. 1101, et seq.

gg.  Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, P.L. 91-616, as amended – 42 U.S.C. § 4541, et seq.

hh.  Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, P.L. 91-616, as amended – 42 U.S.C. § 4541, et seq.

ii.  Appropriated Funds to Influence Certain Federal Contracting and Financial Transactions – 31 U.S.C. § 1352.


**EXECUTIVE ORDERS**

a.   Executive Order 11990 – Protection of Wetlands

b.   Executive Order 11988 – Floodplain Management

c.   Executive Order 12372 – Intergovernmental Review of Federal Programs

d.   Executive Order 12699 – Seismic Safety of Federal and Federally Assisted New Building Construction[1]

e.   Executive Order 14005 – Ensuring the Future is Made in all of America by All of America's Workers

f.   Executive Order 14149 – Restoring Freedom of Speech and Ending Federal Censorship

g.   Executive Order 14151 – Ending Radical and Wasteful Government DEI Programs and Preferencing

h.   Executive Order 14154 – Unleashing American Energy

i.   Executive Order 14168 – Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government

j.   Executive Order 14173 – Ending Illegal Discrimination and Restoring Merit-Based Opportunity

**FEDERAL REGULATIONS**

a. 2 CFR Part 180 – OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement).

b. 2 CFR Part 200 and 1201 – Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards. [3, 4, 5]

c. 2 CFR Part 1200 – Nonprocurement Suspension and Debarment.

d. 14 CFR Part 13 – Investigative and Enforcement Procedures.

e. 14 CFR Part 16 – Rules of Practice for Federally-Assisted Airport Enforcement Proceedings.

f. 14 CFR Part 150 – Airport Noise Compatibility Planning.

g. 28 CFR Part 35 – Nondiscrimination on the Basis of Disability in State and Local Government Services.

h. 28 CFR § 50.3 – U.S. Department of Justice Guidelines for the Enforcement of Title VI of the Civil Rights Act of 1964.

i. 29 CFR Part 1 – Procedures for Predetermination of Wage Rates.[1]

j. 29 CFR Part 3 – Contractors and Subcontractors on Public Building or Public Work Financed in Whole or in Part by Loans or Grants from the United States.[1]

k. 29 CFR Part 5 – Labor Standards Provisions Applicable to Contracts Covering Federally Financed and Assisted Construction (Also Labor Standards Provisions Applicable to Nonconstruction Contracts Subject to the Contract Work Hours and Safety Standards Act).[1]

l. 41 CFR Part 60 – Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor (Federal and Federally-assisted contracting requirements).[1]

m. 49 CFR Part 20 – New Restrictions on Lobbying.

n. 49 CFR Part 21 – Nondiscrimination in Federally-Assisted Programs of the Department of Transportation - Effectuation of Title VI of the Civil Rights Act of 1964.

o. 49 CFR Part 23 – Participation by Disadvantage Business Enterprise in Airport Concessions.

p. 49 CFR Part 24 – Uniform Relocation Assistance and Real Property Acquisition for Federal and Federally-Assisted Programs.[1, 2]

q. 49 CFR Part 26 – Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs.

r. 49 CFR Part 27 – Nondiscrimination on the Basis of Disability in Programs or Activities Receiving Federal Financial Assistance.[1]

s. 49 CFR Part 28 – Enforcement of Nondiscrimination on the Basis of Handicap in Programs or Activities Conducted by the Department of Transportation.

t. 49 CFR Part 30 – Denial of Public Works Contracts to Suppliers of Goods and Services of Countries That Deny Procurement Market Access to U.S. Contractors.

u. 49 CFR Part 32 – Governmentwide Requirements for Drug-Free Workplace (Financial Assistance).

v.   49 CFR Part 37 – Transportation Services for Individuals with Disabilities (ADA).

w.   49 CFR Part 38 – Americans with Disabilities Act (ADA) Accessibility Specifications for Transportation Vehicles.

x.   49 CFR Part 41 – Seismic Safety.

### FOOTNOTES TO ASSURANCE (C)(1)

1   These laws do not apply to airport planning sponsors.
2   These laws do not apply to private sponsors.
3   2 CFR Part 200 contains requirements for State and Local Governments receiving Federal assistance. Any requirement levied upon State and Local Governments by this regulation shall apply where applicable to private sponsors receiving Federal assistance under Title 49, United States Code.
4   Cost principles established in 2 CFR Part 200 subpart E must be used as guidelines for determining the eligibility of specific types of expenses.
5   Audit requirements established in 2 CFR Part 200 subpart F are the guidelines for audits.

### SPECIFIC ASSURANCES

Specific assurances required to be included in grant agreements by any of the above laws, regulations or circulars are incorporated by reference in this Grant Agreement.

2.   **Responsibility and Authority of the Sponsor.**

   a.   Public Agency Sponsor:

   It has legal authority to apply for this Grant, and to finance and carry out the proposed project; that a resolution, motion or similar action has been duly adopted or passed as an official act of the applicant's governing body authorizing the filing of the application, including all understandings and assurances contained therein, and directing and authorizing the person identified as the official representative of the applicant to act in connection with the application and to provide such additional information as may be required.

   b.   Private Sponsor:

   It has legal authority to apply for this Grant and to finance and carry out the proposed project and comply with all terms, conditions, and assurances of this Grant Agreement. It shall designate an official representative and shall in writing direct and authorize that person to file this application, including all understandings and assurances contained therein; to act in connection with this application; and to provide such additional information as may be required.

3.   **Sponsor Fund Availability.**

   It has sufficient funds available for that portion of the project costs which are not to be paid by the United States. It has sufficient funds available to assure operation and maintenance of items funded under this Grant Agreement which it will own or control.

4.   **Good Title.**

   a.   It, a public agency or the Federal government, holds good title, satisfactory to the Secretary, to the landing area of the airport or site thereof, or will give assurance satisfactory to the Secretary that good title will be acquired.

b. For noise compatibility program projects to be carried out on the property of the sponsor, it holds good title satisfactory to the Secretary to that portion of the property upon which Federal funds will be expended or will give assurance to the Secretary that good title will be obtained.

5. **Preserving Rights and Powers.**

a. It will not take or permit any action which would operate to deprive it of any of the rights and powers necessary to perform any or all of the terms, conditions, and assurances in this Grant Agreement without the written approval of the Secretary, and will act promptly to acquire, extinguish or modify any outstanding rights or claims of right of others which would interfere with such performance by the sponsor. This shall be done in a manner acceptable to the Secretary.

b. Subject to 49 U.S.C. § 47107(a)(16) and (x), it will not sell, lease, encumber, or otherwise transfer or dispose of any part of its title or other interests in the property shown on Exhibit A to this application or, for a noise compatibility program project, that portion of the property upon which Federal funds have been expended, for the duration of the terms, conditions, and assurances in this Grant Agreement without approval by the Secretary. If the transferee is found by the Secretary to be eligible under Title 49, United States Code, to assume the obligations of this Grant Agreement and to have the power, authority, and financial resources to carry out all such obligations, the sponsor shall insert in the contract or document transferring or disposing of the sponsor's interest, and make binding upon the transferee all of the terms, conditions, and assurances contained in this Grant Agreement.

c. For all noise compatibility program projects which are to be carried out by another unit of local government or are on property owned by a unit of local government other than the sponsor, it will enter into an agreement with that government. Except as otherwise specified by the Secretary, that agreement shall obligate that government to the same terms, conditions, and assurances that would be applicable to it if it applied directly to the FAA for a grant to undertake the noise compatibility program project. That agreement and changes thereto must be satisfactory to the Secretary. It will take steps to enforce this agreement against the local government if there is substantial non-compliance with the terms of the agreement.

d. For noise compatibility program projects to be carried out on privately owned property, it will enter into an agreement with the owner of that property which includes provisions specified by the Secretary. It will take steps to enforce this agreement against the property owner whenever there is substantial non-compliance with the terms of the agreement.

e. If the sponsor is a private sponsor, it will take steps satisfactory to the Secretary to ensure that the airport will continue to function as a public-use airport in accordance with these assurances for the duration of these assurances.

f. If an arrangement is made for management and operation of the airport by any agency or person other than the sponsor or an employee of the sponsor, the sponsor will reserve sufficient rights and authority to ensure that the airport will be operated and maintained in accordance with Title 49, United States Code, the regulations and the terms, conditions and assurances in this Grant Agreement and shall ensure that such arrangement also requires compliance therewith.

g. Sponsors of commercial service airports will not permit or enter into any arrangement that results in permission for the owner or tenant of a property used as a residence, or zoned for residential use, to taxi an aircraft between that property and any location on airport. Sponsors

of general aviation airports entering into any arrangement that results in permission for the owner of residential real property adjacent to or near the airport must comply with the requirements of Sec. 136 of Public Law 112-95 and the sponsor assurances.

6. **Consistency with Local Plans.**

The project is reasonably consistent with plans (existing at the time of submission of this application) of public agencies that are authorized by the State in which the project is located to plan for the development of the area surrounding the airport.

7. **Consideration of Local Interest.**

It has given fair consideration to the interest of communities in or near where the project may be located.

8. **Consultation with Users.**

In making a decision to undertake any airport development project under Title 49, United States Code, it has undertaken reasonable consultations with affected parties using the airport at which project is proposed.

9. **Public Hearings.**

In projects involving the location of an airport, an airport runway, or a major runway extension, it has afforded the opportunity for public hearings for the purpose of considering the economic, social, and environmental effects of the airport or runway location and its consistency with goals and objectives of such planning as has been carried out by the community and it shall, when requested by the Secretary, submit a copy of the transcript of such hearings to the Secretary. Further, for such projects, it has on its management board either voting representation from the communities where the project is located or has advised the communities that they have the right to petition the Secretary concerning a proposed project.

10. **Metropolitan Planning Organization.**

In projects involving the location of an airport, an airport runway, or a major runway extension at a medium or large hub airport, the sponsor has made available to and has provided upon request to the metropolitan planning organization in the area in which the airport is located, if any, a copy of the proposed amendment to the airport layout plan to depict the project and a copy of any airport master plan in which the project is described or depicted.

11. **Pavement Preventive Maintenance-Management.**

With respect to a project approved after January 1, 1995, for the replacement or reconstruction of pavement at the airport, it assures or certifies that it has implemented an effective airport pavement maintenance-management program and it assures that it will use such program for the useful life of any pavement constructed, reconstructed or repaired with Federal financial assistance at the airport. It will provide such reports on pavement condition and pavement management programs as the Secretary determines may be useful.

12. **Terminal Development Prerequisites.**

For projects which include terminal development at a public use airport, as defined in Title 49, it has, on the date of submittal of the project grant application, all the safety equipment required for certification of such airport under 49 U.S.C. § 44706, and all the security equipment required by rule or regulation, and has provided for access to the passenger enplaning and deplaning area of such airport to passengers enplaning and deplaning from aircraft other than air carrier aircraft.

13. **Accounting System, Audit, and Record Keeping Requirements.**

   a. It shall keep all project accounts and records which fully disclose the amount and disposition by the recipient of the proceeds of this Grant, the total cost of the project in connection with which this Grant is given or used, and the amount or nature of that portion of the cost of the project supplied by other sources, and such other financial records pertinent to the project. The accounts and records shall be kept in accordance with an accounting system that will facilitate an effective audit in accordance with the Single Audit Act of 1984.

   b. It shall make available to the Secretary and the Comptroller General of the United States, or any of their duly authorized representatives, for the purpose of audit and examination, any books, documents, papers, and records of the recipient that are pertinent to this Grant. The Secretary may require that an appropriate audit be conducted by a recipient. In any case in which an independent audit is made of the accounts of a sponsor relating to the disposition of the proceeds of a grant or relating to the project in connection with which this Grant was given or used, it shall file a certified copy of such audit with the Comptroller General of the United States not later than six (6) months following the close of the fiscal year for which the audit was made.

14. **Minimum Wage Rates.**

   It shall include, in all contracts in excess of $2,000 for work on any projects funded under this Grant Agreement which involve labor, provisions establishing minimum rates of wages, to be predetermined by the Secretary of Labor under 40 U.S.C. §§ 3141-3144, 3146, and 3147, Public Building, Property, and Works), which contractors shall pay to skilled and unskilled labor, and such minimum rates shall be stated in the invitation for bids and shall be included in proposals or bids for the work.

15. **Veteran's Preference.**

   It shall include in all contracts for work on any project funded under this Grant Agreement which involve labor, such provisions as are necessary to insure that, in the employment of labor (except in executive, administrative, and supervisory positions), preference shall be given to Vietnam era veterans, Persian Gulf veterans, Afghanistan-Iraq war veterans, disabled veterans, and small business concerns owned and controlled by disabled veterans as defined in 49 U.S.C. § 47112. However, this preference shall apply only where the individuals are available and qualified to perform the work to which the employment relates.

16. **Conformity to Plans and Specifications.**

   It will execute the project subject to plans, specifications, and schedules approved by the Secretary. Such plans, specifications, and schedules shall be submitted to the Secretary prior to commencement of site preparation, construction, or other performance under this Grant Agreement, and, upon approval of the Secretary, shall be incorporated into this Grant Agreement. Any modification to the approved plans, specifications, and schedules shall also be subject to approval of the Secretary, and incorporated into this Grant Agreement.

17. **Construction Inspection and Approval.**

   It will provide and maintain competent technical supervision at the construction site throughout the project to assure that the work conforms to the plans, specifications, and schedules approved by the Secretary for the project. It shall subject the construction work on any project contained in an approved project application to inspection and approval by the Secretary and such work shall be in

accordance with regulations and procedures prescribed by the Secretary. Such regulations and procedures shall require such cost and progress reporting by the sponsor or sponsors of such project as the Secretary shall deem necessary.

18. **Planning Projects.**

In carrying out planning projects:

a. It will execute the project in accordance with the approved program narrative contained in the project application or with the modifications similarly approved.

b. It will furnish the Secretary with such periodic reports as required pertaining to the planning project and planning work activities.

c. It will include in all published material prepared in connection with the planning project a notice that the material was prepared under a grant provided by the United States.

d. It will make such material available for examination by the public, and agrees that no material prepared with funds under this project shall be subject to copyright in the United States or any other country.

e. It will give the Secretary unrestricted authority to publish, disclose, distribute, and otherwise use any of the material prepared in connection with this grant.

f. It will grant the Secretary the right to disapprove the sponsor's employment of specific consultants and their subcontractors to do all or any part of this project as well as the right to disapprove the proposed scope and cost of professional services.

g. It will grant the Secretary the right to disapprove the use of the sponsor's employees to do all or any part of the project.

h. It understands and agrees that the Secretary's approval of this project grant or the Secretary's approval of any planning material developed as part of this grant does not constitute or imply any assurance or commitment on the part of the Secretary to approve any pending or future application for a Federal airport grant.

19. **Operation and Maintenance.**

a. The airport and all facilities which are necessary to serve the aeronautical users of the airport, other than facilities owned or controlled by the United States, shall be operated at all times in a safe and serviceable condition and in accordance with the minimum standards as may be required or prescribed by applicable Federal, state, and local agencies for maintenance and operation. It will not cause or permit any activity or action thereon which would interfere with its use for airport purposes. It will suitably operate and maintain the airport and all facilities thereon or connected therewith, with due regard to climatic and flood conditions. Any proposal to temporarily close the airport for non-aeronautical purposes must first be approved by the Secretary. In furtherance of this assurance, the sponsor will have in effect arrangements for:

1. Operating the airport's aeronautical facilities whenever required;

2. Promptly marking and lighting hazards resulting from airport conditions, including temporary conditions; and

3. Promptly notifying pilots of any condition affecting aeronautical use of the airport. Nothing contained herein shall be construed to require that the airport be operated for aeronautical use during temporary periods when snow, flood, or other climatic conditions

interfere with such operation and maintenance. Further, nothing herein shall be construed as requiring the maintenance, repair, restoration, or replacement of any structure or facility which is substantially damaged or destroyed due to an act of God or other condition or circumstance beyond the control of the sponsor.

b.  It will suitably operate and maintain noise compatibility program items that it owns or controls upon which Federal funds have been expended.

**20. Hazard Removal and Mitigation.**

It will take appropriate action to assure that such terminal airspace as is required to protect instrument and visual operations to the airport (including established minimum flight altitudes) will be adequately cleared and protected by removing, lowering, relocating, marking, or lighting or otherwise mitigating existing airport hazards and by preventing the establishment or creation of future airport hazards.

**21. Compatible Land Use.**

It will take appropriate action, to the extent reasonable, including the adoption of zoning laws, to restrict the use of land adjacent to or in the immediate vicinity of the airport to activities and purposes compatible with normal airport operations, including landing and takeoff of aircraft. In addition, if the project is for noise compatibility program implementation, it will not cause or permit any change in land use, within its jurisdiction, that will reduce its compatibility, with respect to the airport, of the noise compatibility program measures upon which Federal funds have been expended.

**22. Economic Nondiscrimination.**

a.  It will make the airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities, including commercial aeronautical activities offering services to the public at the airport.

b.  In any agreement, contract, lease, or other arrangement under which a right or privilege at the airport is granted to any person, firm, or corporation to conduct or to engage in any aeronautical activity for furnishing services to the public at the airport, the sponsor will insert and enforce provisions requiring the contractor to:

  1.  Furnish said services on a reasonable, and not unjustly discriminatory, basis to all users thereof, and

  2.  Charge reasonable, and not unjustly discriminatory, prices for each unit or service, provided that the contractor may be allowed to make reasonable and nondiscriminatory discounts, rebates, or other similar types of price reductions to volume purchasers.

c.  Each fixed-based operator at the airport shall be subject to the same rates, fees, rentals, and other charges as are uniformly applicable to all other fixed-based operators making the same or similar uses of such airport and utilizing the same or similar facilities.

d.  Each air carrier using such airport shall have the right to service itself or to use any fixed-based operator that is authorized or permitted by the airport to serve any air carrier at such airport.

e.  Each air carrier using such airport (whether as a tenant, non-tenant, or subtenant of another air carrier tenant) shall be subject to such nondiscriminatory and substantially comparable rules, regulations, conditions, rates, fees, rentals, and other charges with respect to facilities directly and substantially related to providing air transportation as are applicable to all such air carriers

which make similar use of such airport and utilize similar facilities, subject to reasonable classifications such as tenants or non-tenants and signatory carriers and non-signatory carriers. Classification or status as tenant or signatory shall not be unreasonably withheld by any airport provided an air carrier assumes obligations substantially similar to those already imposed on air carriers in such classification or status.

f.   It will not exercise or grant any right or privilege which operates to prevent any person, firm, or corporation operating aircraft on the airport from performing any services on its own aircraft with its own employees (including, but not limited to maintenance, repair, and fueling) that it may choose to perform.

g.   In the event the sponsor itself exercises any of the rights and privileges referred to in this assurance, the services involved will be provided on the same conditions as would apply to the furnishing of such services by commercial aeronautical service providers authorized by the sponsor under these provisions.

h.   The sponsor may establish such reasonable, and not unjustly discriminatory, conditions to be met by all users of the airport as may be necessary for the safe and efficient operation of the airport.

i.   The sponsor may prohibit or limit any given type, kind or class of aeronautical use of the airport if such action is necessary for the safe operation of the airport or necessary to serve the civil aviation needs of the public.

**23. Exclusive Rights.**

It will permit no exclusive right for the use of the airport by any person providing, or intending to provide, aeronautical services to the public. For purposes of this paragraph, the providing of the services at an airport by a single fixed-based operator shall not be construed as an exclusive right if both of the following apply:

a.   It would be unreasonably costly, burdensome, or impractical for more than one fixed-based operator to provide such services, and

b.   If allowing more than one fixed-based operator to provide such services would require the reduction of space leased pursuant to an existing agreement between such single fixed-based operator and such airport. It further agrees that it will not, either directly or indirectly, grant or permit any person, firm, or corporation, the exclusive right at the airport to conduct any aeronautical activities, including, but not limited to charter flights, pilot training, aircraft rental and sightseeing, aerial photography, crop dusting, aerial advertising and surveying, air carrier operations, aircraft sales and services, sale of aviation petroleum products whether or not conducted in conjunction with other aeronautical activity, repair and maintenance of aircraft, sale of aircraft parts, and any other activities which because of their direct relationship to the operation of aircraft can be regarded as an aeronautical activity, and that it will terminate any exclusive right to conduct an aeronautical activity now existing at such an airport before the grant of any assistance under Title 49, United States Code.

**24. Fee and Rental Structure.**

It will maintain a fee and rental structure for the facilities and services at the airport which will make the airport as self-sustaining as possible under the circumstances existing at the particular airport, taking into account such factors as the volume of traffic and economy of collection. No part of the Federal share of an airport development, airport planning or noise compatibility project for

which a Grant is made under Title 49, United States Code, the Airport and Airway Improvement Act of 1982, the Federal Airport Act or the Airport and Airway Development Act of 1970 shall be included in the rate basis in establishing fees, rates, and charges for users of that airport.

**25. Airport Revenues.**

a. All revenues generated by the airport and any local taxes on aviation fuel established after December 30, 1987, will be expended by it for the capital or operating costs of the airport; the local airport system; or other local facilities which are owned or operated by the owner or operator of the airport and which are directly and substantially related to the actual air transportation of passengers or property; or for noise mitigation purposes on or off the airport. The following exceptions apply to this paragraph:

1. If covenants or assurances in debt obligations issued before September 3, 1982, by the owner or operator of the airport, or provisions enacted before September 3, 1982, in governing statutes controlling the owner or operator's financing, provide for the use of the revenues from any of the airport owner or operator's facilities, including the airport, to support not only the airport but also the airport owner or operator's general debt obligations or other facilities, then this limitation on the use of all revenues generated by the airport (and, in the case of a public airport, local taxes on aviation fuel) shall not apply.

2. If the Secretary approves the sale of a privately owned airport to a public sponsor and provides funding for any portion of the public sponsor's acquisition of land, this limitation on the use of all revenues generated by the sale shall not apply to certain proceeds from the sale. This is conditioned on repayment to the Secretary by the private owner of an amount equal to the remaining unamortized portion (amortized over a 20-year period) of any airport improvement grant made to the private owner for any purpose other than land acquisition on or after October 1, 1996, plus an amount equal to the federal share of the current fair market value of any land acquired with an airport improvement grant made to that airport on or after October 1, 1996.

3. Certain revenue derived from or generated by mineral extraction, production, lease, or other means at a general aviation airport (as defined at 49 U.S.C. § 47102), if the FAA determines the airport sponsor meets the requirements set forth in Section 813 of Public Law 112-95.

b. As part of the annual audit required under the Single Audit Act of 1984, the sponsor will direct that the audit will review, and the resulting audit report will provide an opinion concerning, the use of airport revenue and taxes in paragraph (a), and indicating whether funds paid or transferred to the owner or operator are paid or transferred in a manner consistent with Title 49, United States Code and any other applicable provision of law, including any regulation promulgated by the Secretary or Administrator.

c. Any civil penalties or other sanctions will be imposed for violation of this assurance in accordance with the provisions of 49 U.S.C. § 47107.

**26. Reports and Inspections.**

It will:

a. submit to the Secretary such annual or special financial and operations reports as the Secretary may reasonably request and make such reports available to the public; make available to the

public at reasonable times and places a report of the airport budget in a format prescribed by the Secretary;

b. for airport development projects, make the airport and all airport records and documents affecting the airport, including deeds, leases, operation and use agreements, regulations and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request;

c. for noise compatibility program projects, make records and documents relating to the project and continued compliance with the terms, conditions, and assurances of this Grant Agreement including deeds, leases, agreements, regulations, and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request; and

d. in a format and time prescribed by the Secretary, provide to the Secretary and make available to the public following each of its fiscal years, an annual report listing in detail:

1. all amounts paid by the airport to any other unit of government and the purposes for which each such payment was made; and

2. all services and property provided by the airport to other units of government and the amount of compensation received for provision of each such service and property.

**27. Use by Government Aircraft.**

It will make available all of the facilities of the airport developed with Federal financial assistance and all those usable for landing and takeoff of aircraft to the United States for use by Government aircraft in common with other aircraft at all times without charge, except, if the use by Government aircraft is substantial, charge may be made for a reasonable share, proportional to such use, for the cost of operating and maintaining the facilities used. Unless otherwise determined by the Secretary, or otherwise agreed to by the sponsor and the using agency, substantial use of an airport by Government aircraft will be considered to exist when operations of such aircraft are in excess of those which, in the opinion of the Secretary, would unduly interfere with use of the landing areas by other authorized aircraft, or during any calendar month that:

a. Five (5) or more Government aircraft are regularly based at the airport or on land adjacent thereto; or

b. The total number of movements (counting each landing as a movement) of Government aircraft is 300 or more, or the gross accumulative weight of Government aircraft using the airport (the total movement of Government aircraft multiplied by gross weights of such aircraft) is in excess of five million pounds.

**28. Land for Federal Facilities.**

It will furnish without cost to the Federal Government for use in connection with any air traffic control or air navigation activities, or weather-reporting and communication activities related to air traffic control, any areas of land or water, or estate therein as the Secretary considers necessary or desirable for construction, operation, and maintenance at Federal expense of space or facilities for such purposes. Such areas or any portion thereof will be made available as provided herein within four months after receipt of a written request from the Secretary.

**29. Airport Layout Plan.**

  a.  The airport owner or operator will maintain a current airport layout plan of the airport showing:

  1.  boundaries of the airport and all proposed additions thereto, together with the boundaries of all offsite areas owned or controlled by the sponsor for airport purposes and proposed additions thereto;

  2.  the location and nature of all existing and proposed airport facilities and structures (such as runways, taxiways, aprons, terminal buildings, hangars and roads), including all proposed extensions and reductions of existing airport facilities;

  3.  the location of all existing and proposed non-aviation areas and of all existing improvements thereon; and

  4.  all proposed and existing access points used to taxi aircraft across the airport's property boundary.

  b.  Subject to subsection 49 U.S.C. § 47107(x), the Secretary will review and approve or disapprove the plan and any revision or modification of the plan before the plan, revision, or modification takes effect.

  c.  The owner or operator will not make or allow any alteration in the airport or any of its facilities unless the alteration—

  1. is outside the scope of the Secretary's review and approval authority as set forth in subsection (x); or

  2. complies with the portions of the plan approved by the Secretary.

  d.  When the airport owner or operator makes a change or alteration in the airport or the facilities which the Secretary determines adversely affects the safety, utility, or efficiency of any federally owned, leased, or funded property on or off the airport and which is not in conformity with the airport layout plan as approved by the Secretary, the owner or operator will, if requested, by the Secretary:

  1.  eliminate such adverse effect in a manner approved by the Secretary; or

  2.  bear all costs of relocating such property or its replacement to a site acceptable to the Secretary and of restoring the property or its replacement to the level of safety, utility, efficiency, and cost of operation that existed before the alteration was made, except in the case of a relocation or replacement of an existing airport facility due to a change in the Secretary's design standards beyond the control of the airport sponsor.

**30. Civil Rights.**
It will promptly take any measures necessary to ensure that no person in the United States shall, on the grounds of race, color, and national origin (including limited English proficiency) in accordance with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d to 2000d-4); creed and sex per 49 U.S.C. § 47123 and related requirements; age per the Age Discrimination Act of 1975 and related requirements; or disability per the Americans with Disabilities Act of 1990 and related requirements, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination in any program and activity conducted with, or benefiting from, funds received from this Grant.

3-36-0102-136-2025

a.  Using the definitions of activity, facility, and program as found and defined in 49 CFR §§ 21.23(b) and 21.23(e), the sponsor will facilitate all programs, operate all facilities, or conduct all programs in compliance with all non-discrimination requirements imposed by or pursuant to these assurances.

b.  Applicability

   1.  Programs and Activities. If the sponsor has received a grant (or other federal assistance) for any of the sponsor's program or activities, these requirements extend to all of the sponsor's programs and activities.

   2.  Facilities. Where it receives a grant or other federal financial assistance to construct, expand, renovate, remodel, alter, or acquire a facility, or part of a facility, the assurance extends to the entire facility and facilities operated in connection therewith.

   3.  Real Property. Where the sponsor receives a grant or other Federal financial assistance in the form of, or for the acquisition of real property or an interest in real property, the assurance will extend to rights to space on, over, or under such property.

c.  Duration.

   The sponsor agrees that it is obligated to this assurance for the period during which Federal financial assistance is extended to the program, except where the Federal financial assistance is to provide, or is in the form of, personal property, or real property, or interest therein, or structures or improvements thereon, in which case the assurance obligates the sponsor, or any transferee for the longer of the following periods:

   1.  So long as the airport is used as an airport, or for another purpose involving the provision of similar services or benefits; or

   2.  So long as the sponsor retains ownership or possession of the property.

d.  Required Solicitation Language. It will include the following notification in all solicitations for bids, Requests For Proposals for work, or material under this Grant Agreement and in all proposals for agreements, including airport concessions, regardless of funding source:

   "The (**County of Monroe**), in accordance with the provisions of Title VI of the Civil Rights Act of 1964 ( 42 U.S.C. §§ 2000d to 2000d-4) and the Regulations, hereby notifies all bidders or offerors that it will affirmatively ensure that for any contract entered into pursuant to this advertisement,  all businesses will be afforded full and fair opportunity to submit bids in response to this invitation and no businesses will be discriminated against on the grounds of race, color, national origin (including limited English proficiency), creed, sex , age, or disability in consideration for an award."

e.  Required Contract Provisions.

   1.  It will insert the non-discrimination contract clauses requiring compliance with the acts and regulations relative to non-discrimination in Federally-assisted programs of the Department of Transportation (DOT), and incorporating the acts and regulations into the contracts by reference in every contract or agreement subject to the non-discrimination in Federally-assisted programs of the DOT acts and regulations.

   2.  It will include a list of the pertinent non-discrimination authorities in every contract that is subject to the non-discrimination acts and regulations.

3. It will insert non-discrimination contract clauses as a covenant running with the land, in any deed from the United States effecting or recording a transfer of real property, structures, use, or improvements thereon or interest therein to a sponsor.

4. It will insert non-discrimination contract clauses prohibiting discrimination on the basis of race, color, national origin (including limited English proficiency), creed, sex, age, or disability as a covenant running with the land, in any future deeds, leases, license, permits, or similar instruments entered into by the sponsor with other parties:

    a. For the subsequent transfer of real property acquired or improved under the applicable activity, project, or program; and

    b. For the construction or use of, or access to, space on, over, or under real property acquired or improved under the applicable activity, project, or program.

f. It will provide for such methods of administration for the program as are found by the Secretary to give reasonable guarantee that it, other recipients, sub-recipients, sub-grantees, contractors, subcontractors, consultants, transferees, successors in interest, and other participants of Federal financial assistance under such program will comply with all requirements imposed or pursuant to the acts, the regulations, and this assurance.

g. It agrees that the United States has a right to seek judicial enforcement with regard to any matter arising under the acts, the regulations, and this assurance.

**31. Disposal of Land.**

a. For land purchased under a grant for airport noise compatibility purposes, including land serving as a noise buffer, it will dispose of the land, when the land is no longer needed for such purposes, at fair market value, at the earliest practicable time. That portion of the proceeds of such disposition which is proportionate to the United States' share of acquisition of such land will be, at the discretion of the Secretary, (1) reinvested in another project at the airport, or (2) transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

    1. Reinvestment in an approved noise compatibility project;

    2. Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. § 47117(e);

    3. Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. §§ 47114, 47115, or 47117;

    4. Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

    5. Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

    If land acquired under a grant for noise compatibility purposes is leased at fair market value and consistent with noise buffering purposes, the lease will not be considered a disposal of the land. Revenues derived from such a lease may be used for an approved airport development project that would otherwise be eligible for grant funding or any permitted use of airport revenue.

b. For land purchased under a grant for airport development purposes (other than noise compatibility), it will, when the land is no longer needed for airport purposes, dispose of such land at fair market value or make available to the Secretary an amount equal to the United

States' proportionate share of the fair market value of the land. That portion of the proceeds of such disposition which is proportionate to the United States' share of the cost of acquisition of such land will, upon application to the Secretary, be reinvested or transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

1. Reinvestment in an approved noise compatibility project;

2. Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. § 47117(e);

3. Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. §§ 47114, 47115, or 47117;

4. Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

5. Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

c. Land shall be considered to be needed for airport purposes under this assurance if (1) it may be needed for aeronautical purposes (including runway protection zones) or serve as noise buffer land, and (2) the revenue from interim uses of such land contributes to the financial self-sufficiency of the airport. Further, land purchased with a grant received by an airport operator or owner before December 31, 1987, will be considered to be needed for airport purposes if the Secretary or Federal agency making such grant before December 31, 1987, was notified by the operator or owner of the uses of such land, did not object to such use, and the land continues to be used for that purpose, such use having commenced no later than December 15, 1989.

d. Disposition of such land under (a), (b), or (c) will be subject to the retention or reservation of any interest or right therein necessary to ensure that such land will only be used for purposes which are compatible with noise levels associated with operation of the airport.

## 32. Engineering and Design Services.

If any phase of such project has received Federal funds under Chapter 471 subchapter 1 of Title 49 U.S.C., it will award each contract, or sub-contract for program management, construction management, planning studies, feasibility studies, architectural services, preliminary engineering, design, engineering, surveying, mapping or related services in the same manner as a contract for architectural and engineering services is negotiated under Chapter 11 of Title 40 U S.C., or an equivalent qualifications-based requirement prescribed for or by the sponsor of the airport.

## 33. Foreign Market Restrictions.

It will not allow funds provided under this Grant to be used to fund any project which uses any product or service of a foreign country during the period in which such foreign country is listed by the United States Trade Representative as denying fair and equitable market opportunities for products and suppliers of the United States in procurement and construction.

## 34. Policies, Standards, and Specifications.

It will carry out any project funded under an Airport Improvement Program Grant in accordance with policies, standards, and specifications approved by the Secretary including, but not limited to, current FAA Advisory Circulars (https://www.faa.gov/sites/faa.gov/files/aip-pfc-checklist_0.pdf) for AIP projects as of April 04, 2025.

3-36-0102-136-2025

35. **Relocation and Real Property Acquisition.**

    a. It will be guided in acquiring real property, to the greatest extent practicable under State law, by the land acquisition policies in Subpart B of 49 CFR Part 24 and will pay or reimburse property owners for necessary expenses as specified in Subpart B.

    b. It will provide a relocation assistance program offering the services described in Subpart C of 49 CFR Part 24 and fair and reasonable relocation payments and assistance to displaced persons as required in Subpart D and E of 49 CFR Part 24.

    c. It will make available within a reasonable period of time prior to displacement, comparable replacement dwellings to displaced persons in accordance with Subpart E of 49 CFR Part 24.

36. **Access By Intercity Buses.**

The airport owner or operator will permit, to the maximum extent practicable, intercity buses or other modes of transportation to have access to the airport; however, it has no obligation to fund special facilities for intercity buses or for other modes of transportation.

37. **Disadvantaged Business Enterprises.**

The sponsor shall not discriminate on the basis of race, color, national origin, or sex in the award and performance of any DOT-assisted contract covered by 49 CFR Part 26, or in the award and performance of any concession activity contract covered by 49 CFR Part 23. In addition, the sponsor shall not discriminate on the basis of race, color, national origin or sex in the administration of its Disadvantaged Business Enterprise (DBE) and Airport Concessions Disadvantaged Business Enterprise (ACDBE) programs or the requirements of 49 CFR Parts 23 and 26. The sponsor shall take all necessary and reasonable steps under 49 CFR Parts 23 and 26 to ensure nondiscrimination in the award and administration of DOT-assisted contracts, and/or concession contracts. The sponsor's DBE and ACDBE programs, as required by 49 CFR Parts 26 and 23, and as approved by DOT, are incorporated by reference in this agreement. Implementation of these programs is a legal obligation and failure to carry out its terms shall be treated as a violation of this agreement. Upon notification to the sponsor of its failure to carry out its approved program, the Department may impose sanctions as provided for under Parts 26 and 23 and may, in appropriate cases, refer the matter for enforcement under 18 U.S.C. § 1001 and/or the Program Fraud Civil Remedies Act of 1986 (31 U.S.C. §§ 3801-3809, 3812).

38. **Hangar Construction.**

If the airport owner or operator and a person who owns an aircraft agree that a hangar is to be constructed at the airport for the aircraft at the aircraft owner's expense, the airport owner or operator will grant to the aircraft owner for the hangar a long term lease that is subject to such terms and conditions on the hangar as the airport owner or operator may impose.

39. **Competitive Access.**

    a. If the airport owner or operator of a medium or large hub airport (as defined in 49 U.S.C. § 47102) has been unable to accommodate one or more requests by an air carrier for access to gates or other facilities at that airport in order to allow the air carrier to provide service to the airport or to expand service at the airport, the airport owner or operator shall transmit a report to the Secretary that:

        1. Describes the requests;

        2. Provides an explanation as to why the requests could not be accommodated; and

3-36-0102-136-2025

   3. Provides a time frame within which, if any, the airport will be able to accommodate the
      requests.

b. Such report shall be due on either February 1 or August 1 of each year if the airport has been
   unable to accommodate the request(s) in the six month period prior to the applicable due date.

## 40. Access to Leaded Aviation Gasoline

a. If 100-octane low lead aviation gasoline (100LL) was made available at an airport, at any time
   during calendar year 2022, an airport owner or operator may not restrict or prohibit the sale of,
   or self-fueling with, 100-octane low lead aviation gasoline.

b. This requirement remains until the earlier of December 31, 2030, or the date on which the
   airport or any retail fuel seller at the airport makes available an unleaded aviation gasoline that
   has been authorized for use by the FAA as a replacement for 100-octane low lead aviation
   gasoline for use in nearly all piston-engine aircraft and engine models; and meets either an
   industry consensus standard or other standard that facilitates the safe use, production, and
   distribution of such unleaded aviation gasoline, as determined appropriate by the FAA.

c. An airport owner or operator understands and agrees, that any violation of this grant assurance
   is subject to civil penalties as provided for in 49 U.S.C. § 46301(a)(8).

3-36-0102-136-2025



# AIP Grant Application

## Monroe County, NY Aviation Department
### Frederick Douglass Greater Rochester International Airport (ROC)

#3-36-0102-  -2025

*April 4, 2025*

**Projects:**

**Runway 10 Obstruction Removals (Construction)**

**Prepared For:**

Federal Aviation Administration
New York Airports District Office



**Prepared By:**



April 4, 2025

Glen L. Conacchio
Civil Engineer
New York Airports District Office
Federal Aviation Administration
1 Aviation Plaza, RM 111
Jamaica, NY 11434

RE: Final Grant Application
    Runway 10 Obstruction Removals (Construction)
    Frederick Douglass Greater Rochester International Airport (ROC)

Dear Mr. Conacchio,

I am submitting the Final Grant Application for AIP Grant 3-36-0102-    -2025 on behalf of Monroe County, NY Aviation Department and Frederick Douglass Greater Rochester International Airport (ROC) for the Runway 10 Obstruction Removals (Construction) project.

The contents of this Application are as follows:

- AIP Grant Application Checklist
- Application for Federal Assistance SF-424
- FAA Form 5100-100
- Project Cost Breakdown
- Supporting Documentation
    - Statement by the Sponsor of Cost Reasonableness
    - Professional Services Negotiated Agreement
    - Bid Recommendation Letter & Bid Received
    - Project Sketch
    - Environmental Documentation
    - Project Data Sheet
    - Exhibit A
- Sponsor Certifications
    - FAA Forms 5100-130, -132, -134, -135
    - Certification Regarding Lobbying
- FAA Advisory Circulars & Grant Assurances

Thank you,

Allison Lia
Airport Engineer
Frederick Douglass Greater Rochester International Airport (ROC)

# AIP Grant Application Checklist

**AIRPORT NAME:**   **Frederick Douglass Greater Rochester International Airport (ROC)**    **DATE:**  **April 4, 2025**

**SYSTEM FOR AWARD MANAGEMENT (SAM) CAGE CODE #:**  <u>69UP1</u>

**SYSTEM FOR AWARD MANAGEMENT (SAM) EXPIRATION DATE:**  <u>October 1, 2025</u>

| Ref. | | Yes | No | N/A | Comments Attached |
|---|---|---|---|---|---|
| | **ITEMS REQUIRED TO COMPLETE APPLICATION REVIEW:** | | | | |
| 1. | Standard Form 424 *(signed)* | X | | | |
| 2. | Project Cost Breakdown *(attached)* | X | | | |
| 3. | Project Sketch *(at the request of the ADO)* | X | | | |
| 4. | Project Narrative *(attached or within Form 5100-100 Part IV)* | X | | | |
| 5. | Form 5100-100 (parts II – IV) *(airport development grants)* | X | | | |
| 6. | Bid Tabulations/Negotiated Amounts *(attached or previously submitted to the ADO)* | X | | | |
| 7. | Exhibit A *(attached or previously submitted to the ADO)* | X | | | On-File |
| 8. | Title Certificate or Long-Term Lease Agreement *(at the request of the ADO)* | | | X | |

OMB Number: 4040-0004
Expiration Date: 11/30/2025

## Application for Federal Assistance SF-424

**\*1. Type of Submission:**
☐ Preapplication
☒ Application
☐ Changed/Corrected Application

**\*2. Type of Application**
☒ New
☐ Continuation
☐ Revision

**\* If Revision, select appropriate letter(s):**

**\* Other (Specify)**

**\*3. Date Received:**
04/04/2025

**4. Applicant Identifier:**
ROC

**5a. Federal Entity Identifier:**
36-0102

**\*5b. Federal Award Identifier:**
FY-2025

### State Use Only:

**6. Date Received by State:**

**7. State Application Identifier:**

### 8. APPLICANT INFORMATION:

**\*a. Legal Name:** Monroe County, NY Aviation Department

**\*b. Employer/Taxpayer Identification Number (EIN/TIN):**
16-60002563

**\*c. UEI:**
DYHNLRKCH117

**d. Address:**

| | |
|---|---|
| \*Street 1: | 1200 Brooks Avenue |
| Street 2: | |
| \*City: | Rochester |
| County/Parish: | Monroe County |
| \*State: | NY |
| \*Province: | |
| \*Country: | USA: United States |
| \*Zip / Postal Code | 14624-0000 |

**e. Organizational Unit:**

| Department Name: | Division Name: |
|---|---|

**f. Name and contact information of person to be contacted on matters involving this application:**

| | | | |
|---|---|---|---|
| Prefix: | Ms. | \*First Name: | Allison |
| Middle Name: | | | |
| \*Last Name: | Lia | | |
| Suffix: | | | |

Title: Airport Engineer

Organizational Affiliation:
Frederick Douglass Greater Rochester International Airport (ROC)

**\*Telephone Number:** (585) 753-7109    **Fax Number:**

**\*Email:** allisonlia@monroecounty.gov

**Application for Federal Assistance SF-424**

**\*9. Type of Applicant 1: Select Applicant Type:**

B: County Government

Type of Applicant 2:  Select Applicant Type:

Pick an applicant type

Type of Applicant 3:  Select  Applicant Type:

Pick an applicant type

\*Other (Specify)

**\*10. Name of Federal Agency:**

Federal Aviation Administration

**11. Catalog of Federal Domestic Assistance Number:**

20.106

CFDA Title:

Airport Improvement Program

**\*12.  Funding Opportunity Number:**

-

\*Title:

-

**13. Competition Identification Number:**

-

Title:

-

**14. Areas Affected by Project (Cities, Counties, States, etc.):**

**\*15.  Descriptive Title of Applicant's Project:**

Runway 10 Obstruction Removals (Construction)

**Attach supporting documents as specified in agency instructions.**

**Application for Federal Assistance SF-424**

**16. Congressional Districts Of:**

*a. Applicant: NY-025                              *b. Program/Project:  NY-025

Attach an additional list of Program/Project Congressional Districts if needed.

**17.  Proposed Project:**

*a. Start Date: 02/16/2023                         *b. End Date:  03/24/2023

**18. Estimated Funding ($):**

| | |
|---|---|
| *a.  Federal | $ 256,122 |
| *b.  Applicant | $ 14,229 |
| *c.  State | $ 14,229 |
| *d.  Local | $ 0 |
| *e.  Other | $ 0 |
| *f.  Program Income | $ 0 |
| *g.  TOTAL | $ 284,580 |

**\*19.  Is Application Subject to Review By State Under Executive Order 12372 Process?**

☐ a. This application was made available to the State under the Executive Order 12372 Process for review on _____.

☐ b. Program is subject to E.O. 12372 but has not been selected by the State for review.

☒ c. Program is not covered by E.O. 12372.

**\*20.  Is the Applicant Delinquent On Any Federal Debt?**

☐ Yes   ☒ No

**If "Yes", explain:**

21. *By signing this application, I certify (1) to the statements contained in the list of certifications** and (2) that the statements herein are true, complete and accurate to the best of my knowledge.  I also provide the required assurances** and agree to comply with any resulting terms if I accept an award.  I am aware that any false, fictitious, or fraudulent statements or claims may subject me to criminal, civil, or administrative penalties.  (U. S. Code, Title 218, Section 1001)

☒ ** I AGREE

** The list of certifications and assurances, or an internet site where you may obtain this list, is contained in the announcement or agency specific instructions.

**Authorized Representative:**

Prefix: _____      *First Name:  Allison

Middle Name: _____

*Last Name:  Lia

Suffix: _____

*Title: Airport Engineer

*Telephone Number: (585) 753-7109                    Fax Number:

* Email: allisonlia@monroecounty.gov

*Signature of Authorized Representative:  [Sign Here]        *Date Signed:  04/04/2025



U.S. Department of Transportation
**Federal Aviation Administration**

OMB CONTROL NUMBER: 2120-0569
EXPIRATION DATE: 12/31/2026

## Application for Federal Assistance (Development and Equipment Projects)

## PART II – PROJECT APPROVAL INFORMATION

| Part II - SECTION A |
|---|
| The term "Sponsor" refers to the applicant name provided in box 8 of the associated SF-424 form. |

**Item 1.**
Does Sponsor maintain an active registration in the System for Award Management (www.SAM.gov)?
☒ Yes   ☐ No

**Item 2.**
Can Sponsor commence the work identified in the application in the fiscal year the grant is made or within six months after the grant is made, whichever is later?
☒ Yes   ☐ No   ☐ N/A

**Item 3.**
Are there any foreseeable events that would delay completion of the project? If yes, provide attachment to this form that lists the events.
☐ Yes   ☒ No   ☐ N/A

**Item 4.**
Will the project(s) covered by this request have impacts or effects on the environment that require mitigating measures? If yes, attach a summary listing of mitigating measures to this application and identify the name and date of the environmental document(s).
☐ Yes   ☒ No   ☐ N/A

**Item 5.**
Is the project covered by this request included in an approved Passenger Facility Charge (PFC) application or other Federal assistance program? If yes, please identify other funding sources by checking all applicable boxes.
☐ Yes   ☒ No   ☐ N/A

☐ The project is included in an *approved* PFC application.

If included in an approved PFC application,

does the application *only* address AIP matching share?   ☐ Yes   ☐ No

☐ The project is included in another Federal Assistance program. Its CFDA number is below.

**Item 6.**
Will the requested Federal assistance include Sponsor indirect costs as described in 2 CFR Appendix VII to Part 200, States and Local Government and Indian Tribe Indirect Cost Proposals?
☐ Yes   ☒ No   ☐ N/A

If the request for Federal assistance includes a claim for allowable indirect costs, select the applicable indirect cost rate the Sponsor proposes to apply:

☐ De Minimis rate of 10% as permitted by 2 CFR § 200.414.

☐ Negotiated Rate equal to        % as approved by                        (the Cognizant Agency)
on                        (Date) (2 CFR part 200, appendix VII).

*Note: Refer to the instructions for limitations of application associated with claiming Sponsor indirect costs.*

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| PART II - SECTION B |
| --- |
| **Certification Regarding Lobbying** |

The declarations made on this page are under the signature of the authorized representative as identified in box 21 of form SF-424, to which this form is attached. The term "Sponsor" refers to the applicant name provided in box 8 of the associated SF-424 form.

The Authorized Representative certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the Sponsor, to any person for influencing or attempting to influence an officer or employee of an agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan, or cooperative agreement, the Authorized Representative shall complete and submit Standard Form-LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Authorized Representative shall require that the language of this certification be included in the award documents for all sub-awards at all tiers (including subcontracts, subgrants, and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by section 1352, title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| PART II – SECTION C |
|---|

The Sponsor hereby represents and certifies as follows:

**1. Compatible Land Use** – The Sponsor has taken the following actions to assure compatible usage of land adjacent to or in the vicinity of the airport:

The project is contained within airport-owned property.

**2. Defaults** – The Sponsor is not in default on any obligation to the United States or any agency of the United States Government relative to the development, operation, or maintenance of any airport, except as stated herewith:

The Sponsor is not in default on any obligation to the U.S. or any agency of the U.S. Government relative to the development, operation, or maintenance of any airport.

**3. Possible Disabilities** – There are no facts or circumstances (including the existence of effective or proposed leases, use agreements or other legal instruments affecting use of the Airport or the existence of pending litigation or other legal proceedings) which in reasonable probability might make it impossible for the Sponsor to carry out and complete the Project or carry out the provisions of the Grant Assurances, either by limiting its legal or financial ability or otherwise, except as follows:

The Sponsor has no facts/circumstances which would prevent completion of the project or compliance with Assurances

**4. Consistency with Local Plans** – The project is reasonably consistent with plans existing at the time of submission of this application) of public agencies that are authorized by the State in which the project is located to plan for the development of the area surrounding the airport.

The project is consistent with plans of public agencies authorized by the State of New York.

**5. Consideration of Local Interest** – It has given fair consideration to the interest of communities in or near where the project may be located.

The Project has given fair consideration of the interest of the communities in or near the project area.

**6. Consultation with Users** – In making a decision to undertake an airport development project under Title 49, United States Code, it has consulted with airport users that will potentially be affected by the project (§ 47105(a)(2)).

Yes, consultation has occurred.

**7. Public Hearings** – In projects involving the location of an airport, an airport runway or a major runway extension, it has afforded the opportunity for public hearings for the purpose of considering the economic, social, and environmental effects of the airport or runway location and its consistency with goals and objectives of such planning as has been carried out by the community and it shall, when requested by the Secretary, submit a copy of the transcript of such hearings to the Secretary. Further, for such projects, it has on its management board either voting representation from the communities where the project is located or has advised the communities that they have the right to petition the Secretary concerning a proposed project.

N/A

**8. Air and Water Quality Standards** – In projects involving airport location, a major runway extension, or runway location it will provide for the Governor of the state in which the project is located to certify in writing to the Secretary that the project will be located, designed, constructed, and operated so as to comply with applicable and air and water quality standards. In any case where such standards have not been approved and where applicable air and water quality standards have been promulgated by the Administrator of the Environmental Protection Agency, certification shall be obtained from such Administrator. Notice of certification or refusal to certify shall be provided within sixty days after the project application has been received by the Secretary.

N/A

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| PART II – SECTION C (Continued) |
| --- |

9. **Exclusive Rights** – There is no grant of an exclusive right for the conduct of any aeronautical activity at any airport owned or controlled by the Sponsor except as follows:

There is no grant of an exclusive right for the conduct of any aeronautical activity.

10. **Land** – (a) The sponsor holds the following property interest in the following areas of land, which are to be developed or used as part of or in connection with the Airport subject to the following exceptions, encumbrances, and adverse interests, all of which areas are identified on the aforementioned property map designated as Exhibit "A". [1]

N/A

The Sponsor further certifies that the above is based on a title examination by a qualified attorney or title company and that such attorney or title company has determined that the Sponsor holds the above property interests.

(b) The Sponsor will acquire within a reasonable time, but in any event prior to the start of any construction work under the Project, the following property interest in the following areas of land on which such construction work is to be performed, all of which areas are identified on the aforementioned property map designated as Exhibit "A". [1]

N/A

(c) The Sponsor will acquire within a reasonable time, and if feasible prior to the completion of all construction work under the Project, the following property interest in the following areas of land which are to be developed or used as part of or in connection with the Airport as it will be upon completion of the Project, all of which areas are identified on the aforementioned property map designated as Exhibit "A". [1]

N/A

---

[1] State the character of property interest in each area and list and identify for each all exceptions, encumbrances, and adverse interests of every kind and nature, including liens, easements, leases, etc. The separate areas of land need only be identified here by the area numbers shown on the property map.

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

## PART III – BUDGET INFORMATION – CONSTRUCTION

| SECTION A – GENERAL | |
|---|---|
| 1. Assistance Listing Number: | 20.106 |
| 2. Functional or Other Breakout: | AIP |

| SECTION B – CALCULATION OF FEDERAL GRANT | | | |
|---|---|---|---|
| Cost Classification | Latest Approved Amount (Use only for revisions) | Adjustment + or (-) Amount (Use only for revisions) | Total Amount Required |
| 1.  Administration expense | | | $ 5,580 |
| 2.  Preliminary expense | | | |
| 3.  Land, structures, right-of-way | | | |
| 4.  Architectural engineering basic fees | | | 60,000 |
| 5.  Other Architectural engineering fees | | | |
| 6.  Project inspection fees | | | |
| 7.  Land development | | | |
| 8.  Relocation Expenses | | | |
| 9.  Relocation payments to Individuals and Businesses | | | |
| 10. Demolition and removal | | | |
| 11. Construction and project improvement | | | 219,000 |
| 12. Equipment | | | |
| 13. Miscellaneous | | | |
| 14. **Subtotal** (Lines 1 through 13) | | | $ 284,580 |
| 15. Estimated Income (if applicable) | | | |
| 16. Net Project Amount (Line 14 minus 15) | | | |
| 17. **Less**: Ineligible Exclusions (Section C, line 23 g.) | | | |
| 18. **Subtotal** (Lines 16 through 17) | | | $ 284,580 |
| 19. Federal Share requested of Line 18 | | | 256,122 |
| 20. Grantee share | | | 14,229 |
| 21. Other shares | | | 14,229 |
| 22. **TOTAL PROJECT** (Lines 19, 20 & 21) | | | $ 284,580 |

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| SECTION C – EXCLUSIONS | |
|---|---|
| 23. Classification (Description of non-participating work) | Amount Ineligible for Participation |
| a. | |
| b. | |
| c. | |
| d. | |
| e. | |
| f. | |
| g.                                                    Total | |

| SECTION D – PROPOSED METHOD OF FINANCING NON-FEDERAL SHARE | |
|---|---|
| 24. Grantee Share – Fund Categories | Amount |
| a. Securities | |
| b. Mortgages | |
| c. Appropriations (by Applicant) | 14,229 |
| d. Bonds | |
| e. Tax Levies | |
| f. Non-Cash | |
| g. Other (Explain): | |
| h. **TOTAL** - Grantee share | $ 14,229 |
| 25. Other Shares | Amount |
| a. State | 14,229 |
| b. Other | |
| c. **TOTAL** - Other Shares | $ 14,229 |
| 26. TOTAL NON-FEDERAL FINANCING | $ 28,458 |

| SECTION E – REMARKS |
|---|
| (Attach sheets if additional space is required) |
| Exhibit A: On-File with FAA [10/29/20 ]<br><br>DBE Requirement/Goal = 5.0% |

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

## PART IV – PROGRAM NARRATIVE
*(Suggested Format)*

| | |
|---|---|
| **PROJECT:** Runway 10 Obstruction Removals (Construction | |

| |
|---|
| **AIRPORT:** Frederick Douglass Greater Rochester International Airport (ROC) |

**1. Objective:**

This project will include the construction, administration and resident project representative activities for the removal of tree obstructions on airport property for Runway 10.

**2. Benefits Anticipated:**

This project addresses the requirement to protect and maintain the airspace related to the approach and departure corridors of the existing runways.

**3. Approach:** (See approved Scope of Work in Final Application)

The removals include several small stands of trees as well as a number of large individual trees. Provisions will be included to avoid impacts to wetlands via winter clearing during frozen ground, and/or nonmechanized removal techniques.

See Scope of Services, attached.

**4. Geographic Location:**

Frederick Douglass Greater Rochester International Airport (ROC)
43° 7' 8.917" N / 77° 40' 18.728" W

**5. If Applicable, Provide Additional Information:**

-

**6. Sponsor's Representative:** (include address & telephone number)

Representative: Allison Lia
Address: 1200 Brooks Avenue; Rochester, NY 14624
Phone Number: (585) 753-7109

**Frederick Douglass Greater Rochester International Airport (ROC)**
**Runway 10 Obstruction Removals (Construction)**

## Project Cost Breakdown

| | |
|---|---:|
| Administration | $5,580 |
| Engineering (CA-RPR) | $60,000 |
| Construction | $219,000 |
| **TOTALS** | **$284,580** |
| Federal Share | $256,122 |
| Non-Federal Share | $28,458 |
| State | $14,229 |
| Sponsor | $14,229 |

# EXHIBIT G

3-36-0102-139-2025



| U.S. Department | Airports Division | New York Airports |
|---|---|---|
| of Transportation | Eastern Region | District Office: |
| Federal Aviation | New York | 159-30 Rockaway |
| Administration | | Blvd, Rm 111 |
| | | Jamaica, NY 11434- |
| | | 4848 |

Mr. Adam Bello, County Executive
Monroe County
1200 Brooks Avenue
Rochester, New York 14624

Dear Mr. Adam Bello:

The Grant Offer for the Airport Improvement Program (AIP) Supplemental Grant Program Project No. 3-36-0102-139-2025 at Frederick Douglass/Greater Rochester International Airport is attached for execution. This letter outlines the steps you must take to properly enter into this agreement and provides other useful information. Please read the conditions, special conditions, and assurances that comprise the grant offer carefully.

**You may not make any modification to the text, terms or conditions of the grant offer.**

*Steps You Must Take to Enter Into Agreement.*

To properly enter into this agreement, you must do the following:

1. The governing body must give authority to execute the grant to the individual(s) signing the grant, i.e., the person signing the document must be the sponsor's authorized representative(s) (hereinafter "authorized representative").

2. The authorized representative must execute the grant by adding their electronic signature to the appropriate certificate at the end of the agreement.

3. Once the authorized representative has electronically signed the grant, the sponsor's attorney(s) will automatically receive an email notification.

4. On the **same day or after** the authorized representative has signed the grant, the sponsor's attorney(s) will add their electronic signature to the appropriate certificate at the end of the agreement.

5. If there are co-sponsors, the authorized representative(s) and sponsor's attorney(s) must follow the above procedures to fully execute the grant and finalize the process. Signatures must be obtained and finalized no later than **August 29, 2025.**

6. The fully executed grant will then be automatically sent to all parties as an email attachment.

*Payment.* Subject to the requirements in 2 CFR § 200.305 (Federal Payment), each payment request for reimbursement under this grant must be made electronically via the Delphi eInvoicing System. Please see the attached Grant Agreement for more information regarding the use of this System.

1

3-36-0102-139-2025

***Project Timing.*** The terms and conditions of this agreement require you to complete the project without undue delay and no later than the Period of Performance end date (1,460 days from the grant execution date). We will be monitoring your progress to ensure proper stewardship of these Federal funds. <u>We expect you to submit payment requests for reimbursement of allowable incurred project expenses consistent with project progress.</u> Your grant may be placed in "inactive" status if you do not make draws on a regular basis, which will affect your ability to receive future grant offers. Costs incurred after the Period of Performance ends are generally not allowable and will be rejected unless authorized by the FAA in advance.

***Reporting.*** Until the grant is completed and closed, you are responsible for submitting formal reports as follows:

- ➢ For all grants, you must submit by December 31st of each year this grant is open:
  1. A signed/dated SF-270 (Request for Advance or Reimbursement for non-construction projects) or SF-271 or equivalent (Outlay Report and Request for Reimbursement for Construction Programs), and

  2. An SF-425 (Federal Financial Report).

- ➢ For non-construction projects, you must submit <u>FAA Form 5100-140, Performance Report</u> within 30 days of the end of the Federal fiscal year.

- ➢ For construction projects, you must submit <u>FAA Form 5370-1, Construction Progress and Inspection Report,</u> within 30 days of the end of each Federal fiscal quarter.

***Audit Requirements.*** As a condition of receiving Federal assistance under this award, you must comply with audit requirements as established under 2 CFR Part 200. Subpart F requires non-Federal entities that expend <u>$1,000,000 or more in Federal awards</u> to conduct a single or program specific audit for that year. Note that this includes Federal expenditures made under other Federal-assistance programs. Please take appropriate and necessary action to ensure your organization will comply with applicable audit requirements and standards.

***Closeout.*** Once the project(s) is completed and all costs are determined, we ask that you work with your FAA contact indicated below to close the project without delay and submit the necessary final closeout documentation as required by your Region/Airports District Office.

***FAA Contact Information.*** Glen Conacchio, (718) 995-5761, glen.l.conacchio@faa.gov is the assigned program manager for this grant and is readily available to assist you and your designated representative with the requirements stated herein.

We sincerely value your cooperation in these efforts and look forward to working with you to complete this important project.

Sincerely,

Ms. Evelyn Martinez
Manager, New York Airports District Office

2

3-36-0102-139-2025



**U.S. Department
of Transportation
Federal Aviation
Administration**

### FEDERAL AVIATION ADMINSTRATION AIRPORT IMPROVEMENT PROGRAM (AIP)
### FY 2023 SUPPLEMENTAL GRANT AGREEMENT
### Part I - Offer

Federal Award Offer Date

Airport/Planning Area          Frederick Douglass/Greater Rochester International Airport

Airport Terminal Program
Grant Number                   3-36-0102-139-2025

Unique Entity Identifier       DYHNLRKCH117

TO:    County of Monroe

(herein called the "Sponsor") (For Co-Sponsors, list all Co-Sponsor names. The word "Sponsor" in this Grant Agreement also
applies to a Co-Sponsor.)

FROM:  **The United States of America** (acting through the Federal Aviation Administration, herein
called the "FAA")

**WHEREAS**, the Sponsor has submitted to the FAA a Project Application dated June 30, 2025, for a grant
of Federal funds for a project at or associated with the Frederick Douglass/Greater Rochester
International Airport, which is included as part of this Grant Agreement; and

**WHEREAS**, the FAA has approved a project for the Frederick Douglass/Greater Rochester International
Airport (herein called the "Project") consisting of the following:

**Reconstruct existing Terminal B by replacing the existing exterior window glass - Design and
Construction**

which is more fully described in the Project Application.

**NOW THEREFORE**,

Pursuant to and for the purpose of carrying out the Title 49, United States Code (U.S.C.), Chapters 471
and 475; 49 U.S.C. §§ 40101 et seq.,; FAA Reauthorization Act of 2018 (Public Law Number (P.L.) 115-
254); the Department of Transportation Appropriations Act, 2021 ( P.L. 116-260, Division L); the
Consolidated Appropriations Act, 2022 (P.L. 117-103); Consolidated Appropriations Act, 2023 (P.L. 117-
328); Consolidated Appropriations Act 2024 (P.L. 118-42); FAA Reauthorization Act of 2024 (P.L. 118-63);

1

3-36-0102-139-2025

and the representations contained in the Project Application; and in consideration of: (a) the Sponsor's adoption and ratification of the attached Grant Assurances dated April 2025, interpreted and applied consistent with the FAA Reauthorization Act of 2024; (b) the Sponsor's acceptance of this Offer; and (c) the benefits to accrue to the United States and the public from the accomplishment of the Project and compliance with the Grant Assurance and conditions as herein provided;

**THE FEDERAL AVIATION ADMINISTRATION, FOR AND ON BEHALF OF THE UNITED STATES, HEREBY OFFERS AND AGREES to pay (90)% of the allowable costs incurred accomplishing the Project as the United States share of the Project.**

**Assistance Listings Number (Formerly CFDA Number): 20.106**

**This Offer is made on and SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS**:

**CONDITIONS**

1. **Maximum Obligation.** The maximum obligation of the United States payable under this Offer is $288,393.

   The following amounts represent a breakdown of the maximum obligation for the purpose of establishing allowable amounts for any future grant amendment, which may increase the foregoing maximum obligation of the United States under the provisions of 49 U.S.C. § 47108(b):
   $0 for planning
   $288,393 for airport development; and,
   $0 for land acquisition.

2. **Grant Performance.** This Grant Agreement is subject to the following Federal award requirements:

   a. Period of Performance:

      1. Shall start on the date the Sponsor formally accepts this Agreement and is the date signed by the last Sponsor signatory to the Agreement. The end date of the Period of Performance is 4 years (1,460 calendar days) from the date of acceptance. The Period of Performance end date shall not affect, relieve, or reduce Sponsor obligations and assurances that extend beyond the closeout of this Grant Agreement.

      2. Means the total estimated time interval between the start of an initial Federal award and the planned end date, which may include one or more funded portions or budget periods. (2 Code of Federal Regulations (CFR) § 200.1).

   b. Budget Period:

      1. For this Grant is 4 years (1,460 calendar days) and follows the same start and end date as the Period of Performance provided in paragraph (2)(a)(1). Pursuant to 2 CFR § 200.403(h), the Sponsor may charge to the Grant only allowable costs incurred during the Budget Period. All project costs must be incurred after the grant execution date unless specifically permitted under 49 U.S.C. § 47110(c). Certain airport development costs incurred before execution of the grant agreement, but after November 15, 2021, are allowable only if certain conditions under 49 U.S.C. § 47110(c) are met.

      2. Means the time interval from the start date of a funded portion of an award to the end date of that funded portion during which the Sponsor is authorized to expend the funds awarded, including any funds carried forward or other revisions pursuant to 2 CFR § 200.308.

2

3-36-0102-139-2025

c.  Close Out and Termination:

Unless the FAA authorizes a written extension, the Sponsor must submit all Grant closeout documentation and liquidate (pay-off) all obligations incurred under this award no later than 120 calendar days after the end date of the period of performance. If the Sponsor does not submit all required closeout documentation within this time period, the FAA will proceed to close out the grant within one year of the Period of Performance end date with the information available at the end of 120 days. (2 CFR § 200.344). The FAA may terminate this agreement and all of its obligations under this agreement if any of the following occurs:

(a)(1) The Sponsor fails to obtain or provide any Sponsor grant contribution as required by the agreement;

(2) A completion date for the Project or a component of the Project is listed in the agreement and the Recipient fails to meet that milestone by six months after the date listed in the agreement;

(3) The Sponsor fails to comply with the terms and conditions of this agreement, including a material failure to comply with the Project Schedule even if it is beyond the reasonable control of the Sponsor;

(4) Circumstances cause changes to the Project that the FAA determines are inconsistent with the FAA's basis for selecting the Project to receive a grant; or

(5) The FAA determines that termination of this agreement is in the public interest.

(b) In terminating this agreement under this section, the FAA may elect to consider only the interests of the FAA.

(c) The Sponsor may request that the FAA terminate the agreement under this section.

3.  **Ineligible or Unallowable Costs.** The Sponsor must not include any costs in the project that the FAA has determined to be ineligible or unallowable.

4.  **Indirect Costs - Sponsor.** The Sponsor may charge indirect costs under this award by applying the indirect cost rate identified in the project application as accepted by the FAA, to allowable costs for Sponsor direct salaries and wages.

5.  **Determining the Final Federal Share of Costs.** The United States' share of allowable project costs will be made in accordance with 49 U.S.C. § 47109, the regulations, policies, and procedures of the Secretary of Transportation ("Secretary"), and any superseding legislation. Final determination of the United States' share will be based upon the final audit of the total amount of allowable project costs and settlement will be made for any upward or downward adjustments to the Federal share of costs.

6.  **Completing the Project Without Delay and in Conformance with Requirements.** The Sponsor must carry out and complete the project without undue delays and in accordance with this Agreement, 49 U.S.C. Chapters 471 and 475, the regulations, policies, and procedures of the Secretary. Per 2 CFR § 200.308, the Sponsor agrees to report and request prior FAA approval for any disengagement from performing the project that exceeds three months or a 25 percent reduction in time devoted to the project. The report must include a reason for the project stoppage. The Sponsor also agrees to comply with the grant assurances, which are part of this Agreement.

3-36-0102-139-2025

7. **Amendments or Withdrawals before Grant Acceptance.** The FAA reserves the right to amend or withdraw this offer at any time prior to its acceptance by the Sponsor.

8. **Offer Expiration Date.** This offer will expire and the United States will not be obligated to pay any part of the costs of the project unless this offer has been accepted by the Sponsor on or before August 29, 2025, or such subsequent date as may be prescribed in writing by the FAA.

9. **Improper Use of Federal Funds and Mandatory Disclosure.**

   a. The Sponsor must take all steps, including litigation if necessary, to recover Federal funds spent fraudulently, wastefully, or in violation of Federal antitrust statutes, or misused in any other manner for any project upon which Federal funds have been expended. For the purposes of this Grant Agreement, the term "Federal funds" means funds however used or dispersed by the Sponsor, that were originally paid pursuant to this or any other Federal grant agreement. The Sponsor must obtain the approval of the Secretary as to any determination of the amount of the Federal share of such funds. The Sponsor must return the recovered Federal share, including funds recovered by settlement, order, or judgment, to the Secretary. The Sponsor must furnish to the Secretary, upon request, all documents and records pertaining to the determination of the amount of the Federal share or to any settlement, litigation, negotiation, or other efforts taken to recover such funds. All settlements or other final positions of the Sponsor, in court or otherwise, involving the recovery of such Federal share require advance approval by the Secretary.

   b. The Sponsor, a recipient, and a subrecipient under this Federal grant must promptly comply with the mandatory disclosure requirements as established under 2 CFR § 200.113, including reporting requirements related to recipient integrity and performance in accordance with Appendix XII to 2 CFR Part 200.

10. **United States Not Liable for Damage or Injury.** The United States is not responsible or liable for damage to property or injury to persons which may arise from, or be incident to, compliance with this Grant Agreement.

11. **System for Award Management (SAM) Registration and Unique Entity Identifier (UEI).**

   a. Requirement for System for Award Management (SAM): Unless the Sponsor is exempted from this requirement under 2 CFR § 25.110, the Sponsor must maintain the currency of its information in the SAM until the Sponsor submits the final financial report required under this Grant, or receives the final payment, whichever is later. This requires that the Sponsor review and update the information at least annually after the initial registration and more frequently if required by changes in information or another award term. Additional information about registration procedures may be found at the SAM website (currently at http://www.sam.gov).

   b. Unique entity identifier (UEI) means a 12-character alpha-numeric value used to identify a specific commercial, nonprofit or governmental entity. A UEI may be obtained from SAM.gov at https://sam.gov/content/entity-registration.

12. **Electronic Grant Payment(s).** Unless otherwise directed by the FAA, the Sponsor must make each payment request under this Agreement electronically via the Delphi eInvoicing System for Department of Transportation (DOT) Financial Assistance Awardees.

4

3-36-0102-139-2025

13. **Informal Letter Amendment of Supplemental Appropriation Projects.** If, during the life of the project, the FAA determines that the maximum grant obligation of the United States exceeds the expected needs of the Sponsor by $25,000 or five percent (5%), whichever is greater, the FAA can issue a letter amendment to the Sponsor unilaterally reducing the maximum obligation.

The FAA can also issue a letter to the Sponsor increasing the maximum obligation if there is an overrun in the total actual eligible and allowable project costs to cover the amount of the overrun provided it will not exceed the statutory limitations for grant amendments. The FAA's authority to increase the maximum obligation does not apply to the "planning" component of Condition No. 1, Maximum Obligation.

The FAA can also issue an informal letter amendment that modifies the grant description to correct administrative errors or to delete work items if the FAA finds it advantageous and in the best interests of the United States.

An informal letter amendment has the same force and effect as a formal grant amendment.

14. **Environmental Standards.** The Sponsor is required to comply with all applicable environmental standards, as further defined in the Grant Assurances, for all projects in this grant. If the Sponsor fails to comply with this requirement, the FAA may suspend, cancel, or terminate this Grant Agreement.

15. **Financial Reporting and Payment Requirements.** The Sponsor will comply with all Federal financial reporting requirements and payment requirements, including submittal of timely and accurate reports.

16. **Buy American.** Unless otherwise approved in advance by the FAA, in accordance with 49 U.S.C. § 50101, the Sponsor will not acquire or permit any contractor or subcontractor to acquire any steel or manufactured goods produced outside the United States to be used for any project for which funds are provided under this Grant. The Sponsor will include a provision implementing Buy American in every contract.and subcontract awarded under this Grant.

17. **Build America, Buy American.** The Sponsor must comply with the requirements under the Build America, Buy America Act (P.L. 117-58).

18. **Maximum Obligation Increase.** In accordance with 49 U.S.C. § 47108(b), as amended, the maximum obligation of the United States, as stated in Condition No. 1, Maximum Obligation, of this Grant:

   a.   May not be increased for a planning project;

   b.   May be increased by not more than 15 percent for development projects, if funds are available;

   c.   May be increased by not more than the greater of the following for a land project, if funds are available:

   1.   15 percent; or

   2.   25 percent of the total increase in allowable project costs attributable to acquiring an interest in the land.

If the Sponsor requests an increase, any eligible increase in funding will be subject to the United States Government share as provided in IIJA (P.L. 117-58), or other superseding legislation if applicable, for the fiscal year appropriation with which the increase is funded. The FAA is not

responsible for the same Federal share provided herein for any amount increased over the initial grant amount. The FAA may adjust the Federal share as applicable through an informal letter of amendment.

19. **Audits for Sponsors.**

    PUBLIC SPONSORS. The Sponsor must provide for a Single Audit or program-specific audit in accordance with 2 CFR Part 200. The Sponsor must submit the audit reporting package to the Federal Audit Clearinghouse on the Federal Audit Clearinghouse's Internet Data Entry System at http://harvester.census.gov/facweb/. Upon request of the FAA, the Sponsor shall provide one copy of the completed audit to the FAA. Sponsors that expend less than $1,000,000 in Federal awards and are exempt from Federal audit requirements must make records available for review or audit by the appropriate Federal agency officials, State, and Government Accountability Office. The FAA and other appropriate Federal agencies may request additional information to meet all Federal audit requirements.

20. **Suspension or Debarment.** When entering into a "covered transaction" as defined by 2 CFR § 180.200, the Sponsor must:

    a. Verify the non-Federal entity is eligible to participate in this Federal program by:

        1. Checking the Responsibility/Qualification records in the Federal Awardee Performance and Integrity Information System (FAPIIS) as maintained within the System for Award Management (SAM) to determine if the non-Federal entity is excluded or disqualified; or

        2. Collecting a certification statement from the non-Federal entity attesting they are not excluded or disqualified from participating; or

        3. Adding a clause or condition to covered transactions attesting the individual or firm are not excluded or disqualified from participating.

    b. Require prime contractors to comply with 2 CFR § 180.330 when entering into lower-tier transactions with their contractors and sub-contractors.

    c. Immediately disclose in writing to the FAA whenever (1) the Sponsor learns it has entered into a covered transaction with an ineligible entity or (2) the Public Sponsor suspends or debars a contractor, person, or entity.

21. **Ban on Texting While Driving.**

    a. In accordance with Executive Order 13513, Federal Leadership on Reducing Text Messaging While Driving, October 1, 2009, and DOT Order 3902.10, Text Messaging While Driving, December 30, 2009, the Sponsor is encouraged to:

        1. Adopt and enforce workplace safety policies to decrease crashes caused by distracted drivers including policies to ban text messaging while driving when performing any work for, or on behalf of, the Federal government, including work relating to a grant or subgrant.

        2. Conduct workplace safety initiatives in a manner commensurate with the size of the business, such as:

            i. Establishment of new rules and programs or re-evaluation of existing programs to prohibit text messaging while driving; and

      ii.   Education, awareness, and other outreach to employees about the safety risks associated with texting while driving.

  b.  The Sponsor must insert the substance of this clause on banning texting while driving in all subgrants, contracts, and subcontracts funded with this Grant.

22. **Trafficking in Persons.**

    *1.  Posting of contact information.*

      a.  The Sponsor must post the contact information of the national human trafficking hotline (including options to reach out to the hotline such as through phone, text, or TTY) in all public airport restrooms.

    *2.  Provisions applicable to a recipient that is a private entity.*

      a.  Under this Grant, the recipient, its employees, subrecipients under this Grant, and subrecipients employees must not engage in:

        i.   Severe forms of trafficking in persons;

        ii.  The procurement of commercial sex act during the period of time that the grant or cooperative agreement is in effect;

        iii.  The use of forced labor in the performance of this grant; or any subaward; or

        iv.  Acts that directly support or advance trafficking in person, including the following acts;

          a)  Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;

          b)  Failing to provide return transportation of pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:

            1.  Exempted from the requirement to provide or pay for such return transportation by the federal department or agency providing or entering into the grant; or

            2.  The employee is a victim of human trafficking seeking victim services or legal redress in the country of employment or witness in a human trafficking enforcement action;

          c)  Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;

          d)  Charging recruited employees a placement or recruitment fee; or

          e)  Providing or arranging housing that fails to meet the host country's housing and safety standards.

      b.  The FAA, may unilaterally terminate this Grant, or take any remedial actions authorized by 22 U.S.C 7104b(c), without penalty, if any private entity under this Grant;

        i.   Is determined to have violated a prohibition in paragraph (2)(a) of this Grant;

3-36-0102-139-2025

    ii.  Has an employee that is determined to have violated a prohibition in paragraph (2)(a) of this Grant through conduct that is either:

       .  Associated with performance under this Grant; or

       .  Imputed to the recipient or subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR Part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by the FAA at 2 CFR Part 1200.

3. *Provision applicable to a recipient other than a private entity.*

    a.  The FAA may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C 7104b(c), without penalty, if subrecipient than is a private entity under this award;

      i.  Is determined to have violated a prohibition in paragraph (b)(1) of this Grant or

      ii.  Has an employee that is determined to have violated a prohibition in paragraph (b)(1) of this Grant through conduct that is either:

        a)  Associated with performance under this Grant; or

        b)  Imputed to the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR Part 180, "OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)," as implemented by our agency at 2 CFR Part 1200.

4. *Provisions applicable to any recipient.*

    a.  The recipient must inform the FAA and the DOT Inspector General, immediately of any information you receive from any source alleging a violation of a prohibition in paragraph (b)(1) of this Grant.

    b.  The FAA's right to unilaterally terminate this Grant as described in paragraph (2)(a) or (3)(a) of this Grant, implements the requirements of 22 U.S.C. chapter 78 and is addition to all other remedies for noncompliance that are available to the FAA under this Grant:

    c.  The recipient must include the requirements of paragraph (2)(a) of this Grant award term in any subaward it makes to a private entity.

    d.  If applicable, the recipient must also comply with the compliance plan and certification requirements in 2 CFR 175.105(b).

5. *Definitions.* For purposes of this Grant award, term:

    a.  "Employee" means either:

      i.  An individual employed by the recipient or a subrecipient who is engaged in the performance of the project or program under this Grant; or

      ii.  Another person engaged in the performance of the project or program under this Grant and not compensated by the recipient including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing or requirements.

    b.  "Private entity" means:

    i.   Any entity, including for profit organizations, nonprofit organizations, institutions of higher education, and hospitals. The term does not include foreign public entities, Indian Tribes, local governments, or states as defined in 2 CFR 200.1.

    ii.   The terms "severe forms of trafficking in persons," "commercial sex act," "sex trafficking," "Abuse or threatened abuse of law or legal process," "coercion," "debt bondage," and "involuntary servitude" have the meaning given at section 103 of the TVPA, as amended (22 U.S.C. 7102).

23. **Grant Funded Work Included in a PFC Application.** Within 120 days of acceptance of this Grant Agreement, the Sponsor must submit to the FAA an amendment to any approved Passenger Facility Charge (PFC) application that contains an approved PFC project also covered under this Grant Agreement as described in the project application. The airport sponsor may not make any expenditure under this Grant Agreement until project work addressed under this Grant Agreement is removed from an approved PFC application by amendment.

24. **Exhibit "A" Property Map.** The Exhibit "A" Property Map dated 5/9/2016, is incorporated herein by reference or is submitted with the project application and made part of this Grant Agreement.

25. **Employee Protection from Reprisal.** In accordance with 2 CFR § 200.217 and 41 U.S.C. § 4701, an employee of a grantee, subgrantee contractor, recipient or subrecipient must not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (a)(2) of 41 U.S.C. 4712 information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant. The grantee, subgrantee, contractor, recipient, or subrecipient must inform their employees in writing of employee whistleblower rights and protections under 41 U.S.C. § 4712. See statutory requirements for whistleblower protections at 10 U.S.C. § 4701, 41 U.S.C. § 4712, 41 U.S.C. § 4304, and 10 U.S.C. § 4310.

26. **Prohibited Telecommunications and Video Surveillance Services and Equipment.** The Sponsor agrees to comply with mandatory standards and policies relating to use and procurement of certain telecommunications and video surveillance services or equipment in compliance with the National Defense Authorization Act [Public Law 115-232 § 889(f)(1)] and 2 CFR § 200.216.

27. **Critical Infrastructure Security and Resilience.** The Sponsor acknowledges that it has considered and addressed physical and cybersecurity and resilience in their project planning, design, and oversight, as determined by the DOT and the Department of Homeland Security (DHS). For airports that do not have specific DOT or DHS cybersecurity requirements, the FAA encourages the voluntary adoption of the cybersecurity requirements from the Transportation Security Administration and Federal Security Director identified for security risk Category X airports.

28. **Title VI of the Civil Rights Act.** As a condition of a grant award, the Sponsor shall demonstrate that it complies with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq) and implementing regulations (49 CFR part 21), the Airport and Airway Improvement Act of 1982 (49 U.S.C. 47123), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794 et seq.), the Americans with Disabilities Act of 1990 (42 U.S.C. 12101 et seq.), U.S. Department of Transportation and Federal Aviation Administration (FAA)

Assurances, and other relevant civil rights statutes, regulations, or authorities. This may include, as applicable, providing a current Title VI Program Plan to the FAA for approval, in the format and according to the timeline required by the FAA, and other information about the communities that will be benefited and impacted by the project. A completed FAA Title VI Pre-Grant Award Checklist is required for every grant application, unless excused by the FAA. The Sponsor shall affirmatively ensure that when carrying out any project supported by this grant that it complies with all federal nondiscrimination and civil rights laws based on race, color, national origin, sex, creed, age, disability, genetic information, or environmental justice in consideration for federal financial assistance. The Department's and FAA's Office of Civil Rights may provide resources and technical assistance to recipients to ensure full and sustainable compliance with Federal civil rights requirements. Failure to comply with civil rights requirements will be considered a violation of the agreement or contract and be subject to any enforcement action as authorized by law.

29. **FAA Reauthorization Act of 2024**. This grant agreement is subject to the terms and conditions contained herein including the terms known as the Grant Assurances as they were published in the Federal Register on April 2025. On May 16, 2024, the FAA Reauthorization Act of 2024 made certain amendments to 49 U.S.C. chapter 471. The Reauthorization Act will require the FAA to make certain amendments to the assurances in order to best achieve consistency with the statute. Federal law requires that the FAA publish any amendments to the assurances in the Federal Register along with an opportunity to comment. In order not to delay the offer of this grant, the existing assurances are attached herein; however, the FAA shall interpret and apply these assurances consistent with the Reauthorization Act. To the extent there is a conflict between the assurances and Federal statutes, the statutes shall apply. The full text of the FAA Reauthorization Act of 2024 is at

https://www.congress.gov/bill/118th-congress/house-bill/3935/text

30. **Applicable Federal Anti-Discrimination Laws**. The sponsor agrees:
    a. that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code; and
    b. to certify that it does not operate any programs promoting diversity, equity, and inclusion (DEI) that violate any applicable Federal anti-discrimination laws.

31. **Federal Law and Public Policy Requirements.** The Sponsor shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Sponsor will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in and the enforcement of Federal immigration law.

32. **National Airspace System Requirements.**
    a. The Sponsor shall cooperate with FAA activities installing, maintaining, replacing, improving, or operating equipment and facilities in or supporting the National Airspace System, including waiving permitting requirements and other restrictions affecting those activities to the

maximum extent possible, and assisting the FAA in securing waivers of permitting or other restrictions from other authorities. The Sponsor shall not take actions that frustrate or prevent the FAA from installing, maintaining, replacing, improving, or operating equipment and facilities in or supporting the National Airspace System.

b. If the FAA determines that the Sponsor has violated subsection (a), the FAA may impose a remedy, including:

1. additional conditions on the award;

2. consistent with 49 U.S.C. chapter 471, any remedy permitted under 2 CFR 200.339–200.340, including withholding of payments; disallowance of previously reimbursed costs; requiring refunds from the Recipient to the DOT; suspension or termination of the award; or suspension and debarment under 2 CFR part 180; or

3. any other remedy legally available.

c. In imposing a remedy under this condition, the FAA may elect to consider the interests of only the FAA.

d. The Sponsor acknowledges that amounts that the FAA requires the Sponsor to refund to the FAA due to a remedy under this condition constitute a debt to the Federal Government that the FAA may collect under 2 CFR 200.346 and the Federal Claims Collection Standards (31 CFR parts 900–904).

33. **Signage Costs for Construction Projects.** The Sponsor agrees that it will require the prime contractor of a Federally assisted airport improvement project to post signs consistent with a DOT/FAA-prescribed format, as may be requested by the DOT/FAA, and further agrees to remove any signs posted in response to requests received prior to February 1, 2025.

34. **Title 8 - U.S.C., Chapter 12, Subchapter II - Immigration**. The sponsor will follow applicable federal laws pertaining to Subchapter 12 and be subject to the penalties set forth in 8 U.S.C. § 1324, Bringing in and harboring certain aliens, and 8 U.S.C. § 1327, Aiding or assisting certain aliens to enter.

3-36-0102-139-2025

# SPECIAL CONDITIONS

35. **Airport Layout Plan (ALP).** The Sponsor understands and agrees to update the ALP to reflect the construction to standards satisfactory to the FAA and submit it in final form to the FAA as described by 49 U.S.C. § 47107(a)(16). It is further mutually agreed that the reasonable cost of developing said ALP is an allowable cost within the scope of this project, if applicable. Airport Sponsors Grant Assurance 29 further addresses the Sponsor's statutory obligations to maintain an ALP in accordance with 49 U.S.C. § 47107(a)(16).

36. **Disadvantaged Business Enterprise (DBE)/Airport Concessions Disadvantaged Business Enterprise (ACDBE) Program.** The Sponsor understands and agrees that the FAA will not make nor be obligated to make any payments on this Grant until the Sponsor has received from the FAA Office of Civil Rights approval of its DBE Program (reflecting compliance with 49 CFR Part 26), and, if applicable, its ACDBE program (reflecting compliance with 49 CFR Part 23).

37. **Equipment Acquisition.** The Sponsor understands and agrees that any equipment acquired through this Grant is considered a *facility* as that term is used in the Grant Assurances. Further, the equipment must be only operated by the Sponsor. The Sponsor agrees that it will maintain the equipment and use it exclusively at the airport for airport purposes.

38. **Protection of Runway Protection Zone - Airport Property.** The Sponsor agrees to prevent the erection or creation of any structure, place of public assembly, or other use in the Runway Protection Zone, as depicted on the Exhibit "A": Property Map, except for Navigational Aids (NAVAIDS) that are fixed by their functional purposes or any other structure permitted by the FAA. The Sponsor further agrees that any existing structures or uses within the Runway Protection Zone will be cleared or discontinued by the Sponsor unless approved by the FAA.

39. **Plans and Specifications Prior to Bidding.** The Sponsor agrees that it will submit plans and specifications for FAA review prior to advertising for bids.

40. **Plans and Specifications Approval Based Upon Certification.** The FAA and the Sponsor agree that the FAA's approval of the Sponsor's Plans and Specification is based primarily upon the Sponsor's certification to carry out the project in accordance with policies, standards, and specifications approved by the FAA. The Sponsor understands that:

   a. The Sponsor's certification does not relieve the Sponsor of the requirement to obtain prior FAA approval for modifications to any published FAA airport development grant standards or to notify the FAA of any limitations to competition within the project;

   b. The FAA's acceptance of a Sponsor's certification does not limit the FAA from reviewing appropriate project documentation for the purpose of validating the certification statements; and

   c. If the FAA determines that the Sponsor has not complied with their certification statements, the FAA will review the associated project costs to determine whether such costs are allowable under this Grant and associated grants.

3-36-0102-139-2025

41. **Consultant Contract and Cost Analysis.** The Sponsor understands and agrees that no reimbursement will be made on the consultant contract portion of this Grant until the FAA has received the consultant contract, the Sponsor's analysis of costs, and the independent fee estimate.

42. **Mothers' Rooms.** As a small, medium, or large hub airport, the sponsor certifies it is in compliance with 49 U.S.C. § 47107(w).

43. **Buy American Executive Orders.** The Sponsor agrees to abide by applicable Executive Orders in effect at the time this Grant Agreement is executed, including Executive Order 14005, Ensuring the Future Is Made in All of America by All of America's Workers.

44. **Usable Unit of Development**. The FAA and the Sponsor agree this Grant only funds a portion of the overall project. The FAA makes no commitment of funding beyond what is provided herein. In accepting this award, the Sponsor understands and agrees that the work described in this Grant Agreement must be incorporated into a safe, useful, and usable unit of development completed within a reasonable timeframe [49 USC § 47106(a)(4)]. This safe, useful, usable unit of development must be completed regardless of whether the Sponsor receives any additional federal funding.

45. **Duffy Plaintiff Special Term**. Pursuant to the court's preliminary injunction order in State of California v. Duffy, 1:25-cv-00208-JJM-PAS (D.R.I.) (June 19, 2025), DOT will not impose or enforce the challenged immigration enforcement condition* or any materially similar terms and conditions, to any grant funds awarded, directly or indirectly, to Plaintiff States or local government entities within those States (collectively referred to as "Plaintiff State Entities"), or otherwise rescind, withhold, terminate, or take other adverse action, absent specific statutory authority, based on the challenged immigration enforcement condition while DOT is subject to an injunction. DOT will not require Plaintiff State Entities to make any certification or other representation related to compliance with the challenged immigration enforcement condition nor will DOT construe acceptance of funding from DOT as certification as to the challenged immigration enforcement condition.

*The challenged immigration enforcement condition:

"[T]he Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law."

3-36-0102-139-2025

The Sponsor's acceptance of this Offer and ratification and adoption of the Project Application incorporated herein shall be evidenced by execution of this instrument by the Sponsor, as hereinafter provided, and this Offer and Acceptance shall comprise a Grant Agreement, constituting the contractual obligations and rights of the United States and the Sponsor with respect to the accomplishment of the Project and compliance with the Grant Assurances, terms, and conditions as provided herein. Such Grant Agreement shall become effective upon the Sponsor's acceptance of this Offer.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[1]

**UNITED STATES OF AMERICA**
**FEDERAL AVIATION ADMINISTRATION**

_____
*(Signature)*

_____
*(Typed Name)*

_____
*(Title of FAA Official)*

---

[1] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

14

3-36-0102-139-2025

**Part II - Acceptance**

The Sponsor does hereby ratify and adopt all assurances, statements, representations, warranties, covenants, and agreements contained in the Project Application and incorporated materials referred to in the foregoing Offer, and does hereby accept this Offer and by such acceptance agrees to comply with all of the Grant Assurances, terms, and conditions in this Offer and in the Project Application.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[2]

Dated _____

County of Monroe _____

*(Name of Sponsor)*

_____

*(Signature of Sponsor's Authorized Official)*

By: _____

*(Typed Name of Sponsor's Authorized Official)*

Title: _____

*(Title of Sponsor's Authorized Official)*

---

[2] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

15

3-36-0102-139-2025

## CERTIFICATE OF SPONSOR'S ATTORNEY

I, _____ , acting as Attorney for the Sponsor do hereby certify:

That in my opinion the Sponsor is empowered to enter into the foregoing Grant Agreement under the laws of the State of ___New York___ . Further, I have examined the foregoing Grant Agreement and the actions taken by said Sponsor and Sponsor's official representative, who has been duly authorized to execute this Grant Agreement, which is in all respects due and proper and in accordance with the laws of the said State, and Title 49, United States Code (U.S.C.), Chapters 471 and 475; 49 U.S.C. §§ 40101 et seq., and 48103; FAA Reauthorization Act of 2018 (P.L. 115-254); the Department of Transportation Appropriations Act, 2021 (P.L. 116-260, Division L); the Consolidated Appropriations Act, 2022 (P.L. 117-103); Consolidated Appropriations Act, 2023 (P.L. 117-328); Consolidated Appropriations Act, 2024 (P.L. 118-42); FAA Reauthorization Act of 2024 (P.L. 118-63); and the representations contained in the Project Application. In addition, for grants involving projects to be carried out on property not owned by the Sponsor, there are no legal impediments that will prevent full performance by the Sponsor. Further, it is my opinion that the said Grant Agreement constitutes a legal and binding obligation of the Sponsor in accordance with the terms thereof.

**Please read the following information:** By signing this document, you are agreeing that you have reviewed the following consumer disclosure information and consent to transact business using electronic communications, to receive notices and disclosures electronically, and to utilize electronic signatures in lieu of using paper documents. You are not required to receive notices and disclosures or sign documents electronically. If you prefer not to do so, you may request to receive paper copies and withdraw your consent at any time.

I declare under penalty of perjury that the foregoing is true and correct.[3]

Dated at _____

By: _____
*(Signature of Sponsor's Attorney)*

---

[3] Knowingly and willfully providing false information to the Federal government is a violation of 18 U.S.C. § 1001 (False Statements) and could subject you to fines, imprisonment, or both.

16

3-36-0102-139-2025

# ASSURANCES

**AIRPORT SPONSORS**

## A. General.

1. These assurances shall be complied with in the performance of grant agreements for airport development, airport planning, and noise compatibility program grants for airport sponsors.

2. These assurances are required to be submitted as part of the project application by sponsors requesting funds under the provisions of Title 49, U.S.C., subtitle VII, as amended. As used herein, the term "public agency sponsor" means a public agency with control of a public-use airport; the term "private sponsor" means a private owner of a public-use airport; and the term "sponsor" includes both public agency sponsors and private sponsors.

3. Upon acceptance of this grant offer by the sponsor, these assurances are incorporated in and become part of this Grant Agreement.

## B. Duration and Applicability.

1. **Airport Development or Noise Compatibility Program Projects Undertaken by a Public Agency Sponsor.**

   The terms, conditions, and assurances of this Grant Agreement shall remain in full force and effect throughout the useful life of the facilities developed or equipment acquired for an airport development or noise compatibility program project, or throughout the useful life of the project items installed within a facility under a noise compatibility program project, but in any event not to exceed twenty (20) years from the date of acceptance of a grant offer of Federal funds for the project. However, there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport. There shall be no limit on the duration of the terms, conditions, and assurances with respect to real property acquired with federal funds. Furthermore, the duration of the Civil Rights assurance shall be specified in the assurances.

2. **Airport Development or Noise Compatibility Projects Undertaken by a Private Sponsor.**

   The preceding paragraph (1) also applies to a private sponsor except that the useful life of project items installed within a facility or the useful life of the facilities developed or equipment acquired under an airport development or noise compatibility program project shall be no less than ten (10) years from the date of acceptance of Federal aid for the project.

3. **Airport Planning Undertaken by a Sponsor.**

   Unless otherwise specified in this Grant Agreement, only Assurances 1, 2, 3, 5, 6, 13, 18, 23, 25, 30, 32, 33, 34, 37, and 40 in Section C apply to planning projects. The terms, conditions, and assurances of this Grant Agreement shall remain in full force and effect during the life of the project; there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport.

**C. Sponsor Certification.**

The sponsor hereby assures and certifies, with respect to this grant that:

**1. General Federal Requirements**

The Sponsor will comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds for this Grant. Performance under this agreement shall be governed by and in compliance with the following requirements, as applicable, to the type of organization of the Sponsor and any applicable sub-recipients. The applicable provisions to this agreement include, but are not limited to, the following:

**FEDERAL LEGISLATION**

a. 49 U.S.C. subtitle VII, as amended.

b. Davis-Bacon Act, as amended — 40 U.S.C. §§ 3141-3144, 3146, and 3147, et seq.[1]

c. Federal Fair Labor Standards Act – 29 U.S.C. § 201, et seq.

d. Hatch Act – 5 U.S.C. § 1501, et seq.[2]

e. Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. 4601, et seq.[1, 2]

f. National Historic Preservation Act of 1966 – Section 106 – 54 U.S.C. § 306108.[1]

g. Archeological and Historic Preservation Act of 1974 – 54 U.S.C. § 312501, et seq.[1]

h. Native Americans Grave Repatriation Act – 25 U.S.C. § 3001, et seq.

i. Clean Air Act, P.L. 90-148, as amended – 42 U.S.C. § 7401, et seq.

j. Coastal Zone Management Act, P.L. 92-583, as amended – 16 U.S.C. § 1451, et seq.

k. Flood Disaster Protection Act of 1973 – Section 102(a) - 42 U.S.C. § 4012a.[1]

l. 49 U.S.C. § 303, (formerly known as Section 4(f)).

m. Rehabilitation Act of 1973 – 29 U.S.C. § 794.

n. Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.) (prohibits discrimination on the basis of race, color, national origin).

o. Americans with Disabilities Act of 1990, as amended, (42 U.S.C. § 12101 et seq.) (prohibits discrimination on the basis of disability).

p. Age Discrimination Act of 1975 – 42 U.S.C. § 6101, et seq.

q. American Indian Religious Freedom Act, P.L. 95-341, as amended.

r. Architectural Barriers Act of 1968, as amended – 42 U.S.C. § 4151, et seq.[1]

s. Powerplant and Industrial Fuel Use Act of 1978 – Section 403 – 42 U.S.C. § 8373.[1]

t. Contract Work Hours and Safety Standards Act – 40 U.S.C. § 3701, et seq.[1]

u. Copeland Anti-kickback Act – 18 U.S.C. § 874.[1]

v. National Environmental Policy Act of 1969 – 42 U.S.C. § 4321, et seq.[1]

w.  Wild and Scenic Rivers Act, P.L. 90-542, as amended – 16 U.S.C. § 1271, et seq.

x.  Single Audit Act of 1984 – 31 U.S.C. § 7501, et seq.[2]

y.  Drug-Free Workplace Act of 1988 – 41 U.S.C. §§ 8101 through 8105.

z.  The Federal Funding Accountability and Transparency Act of 2006, as amended (P.L. 109-282, as amended by section 6202 of P.L. 110-252).

aa.  Civil Rights Restoration Act of 1987, P.L. 100-259.

bb.  Infrastructure Investment and Jobs Act, P.L. 117-58, Title VIII.

cc.  Build America, Buy America Act, P.L. 117-58, Title IX.

dd.  Endangered Species Act – 16 U.S.C. 1531, et seq.

ee.  Title IX of the Education Amendments of 1972, as amended – 20 U.S.C. 1681–1683 and 1685–1687.

ff.  Drug Abuse Office and Treatment Act of 1972, as amended – 21 U.S.C. 1101, et seq.

gg.  Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, P.L. 91-616, as amended – 42 U.S.C. § 4541, et seq.

hh.  Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, P.L. 91-616, as amended – 42 U.S.C. § 4541, et seq.

ii.  Appropriated Funds to Influence Certain Federal Contracting and Financial Transactions – 31 U.S.C. § 1352.

**EXECUTIVE ORDERS**

a.  Executive Order 11990 – Protection of Wetlands

b.  Executive Order 11988 – Floodplain Management

c.  Executive Order 12372 – Intergovernmental Review of Federal Programs

d.  Executive Order 12699 – Seismic Safety of Federal and Federally Assisted New Building Construction[1]

e.  Executive Order 14005 – Ensuring the Future is Made in all of America by All of America's Workers

f.  Executive Order 14149 – Restoring Freedom of Speech and Ending Federal Censorship

g.  Executive Order 14151 – Ending Radical and Wasteful Government DEI Programs and Preferencing

h.  Executive Order 14154 – Unleashing American Energy

i.  Executive Order 14168 – Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government

j.  Executive Order 14173 – Ending Illegal Discrimination and Restoring Merit-Based Opportunity

**FEDERAL REGULATIONS**

a.  2 CFR Part 180 – OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement).

b.  2 CFR Part 200 and 1201 – Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards. [3, 4, 5]

c.  2 CFR Part 1200 – Nonprocurement Suspension and Debarment.

d.  14 CFR Part 13 – Investigative and Enforcement Procedures.

e.  14 CFR Part 16 – Rules of Practice for Federally-Assisted Airport Enforcement Proceedings.

f.  14 CFR Part 150 – Airport Noise Compatibility Planning.

g.  28 CFR Part 35 – Nondiscrimination on the Basis of Disability in State and Local Government Services.

h.  28 CFR § 50.3 – U.S. Department of Justice Guidelines for the Enforcement of Title VI of the Civil Rights Act of 1964.

i.  29 CFR Part 1 – Procedures for Predetermination of Wage Rates. [1]

j.  29 CFR Part 3 – Contractors and Subcontractors on Public Building or Public Work Financed in Whole or in Part by Loans or Grants from the United States. [1]

k.  29 CFR Part 5 – Labor Standards Provisions Applicable to Contracts Covering Federally Financed and Assisted Construction (Also Labor Standards Provisions Applicable to Nonconstruction Contracts Subject to the Contract Work Hours and Safety Standards Act). [1]

l.  41 CFR Part 60 – Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor (Federal and Federally-assisted contracting requirements). [1]

m.  49 CFR Part 20 – New Restrictions on Lobbying.

n.  49 CFR Part 21 – Nondiscrimination in Federally-Assisted Programs of the Department of Transportation - Effectuation of Title VI of the Civil Rights Act of 1964.

o.  49 CFR Part 23 – Participation by Disadvantage Business Enterprise in Airport Concessions.

p.  49 CFR Part 24 – Uniform Relocation Assistance and Real Property Acquisition for Federal and Federally-Assisted Programs. [1, 2]

q.  49 CFR Part 26 – Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs.

r.  49 CFR Part 27 – Nondiscrimination on the Basis of Disability in Programs or Activities Receiving Federal Financial Assistance. [1]

s.  49 CFR Part 28 – Enforcement of Nondiscrimination on the Basis of Handicap in Programs or Activities Conducted by the Department of Transportation.

t.  49 CFR Part 30 – Denial of Public Works Contracts to Suppliers of Goods and Services of Countries That Deny Procurement Market Access to U.S. Contractors.

u.  49 CFR Part 32 – Governmentwide Requirements for Drug-Free Workplace (Financial Assistance).

v.  49 CFR Part 37 – Transportation Services for Individuals with Disabilities (ADA).

w.  49 CFR Part 38 – Americans with Disabilities Act (ADA) Accessibility Specifications for Transportation Vehicles.

3-36-0102-139-2025

x.   49 CFR Part 41 – Seismic Safety.

*FOOTNOTES TO ASSURANCE (C)(1)*

[1]   These laws do not apply to airport planning sponsors.
[2]   These laws do not apply to private sponsors.
[3]   2 CFR Part 200 contains requirements for State and Local Governments receiving Federal assistance. Any requirement levied upon State and Local Governments by this regulation shall apply where applicable to private sponsors receiving Federal assistance under Title 49, United States Code.
[4]   Cost principles established in 2 CFR Part 200 subpart E must be used as guidelines for determining the eligibility of specific types of expenses.
[5]   Audit requirements established in 2 CFR Part 200 subpart F are the guidelines for audits.

## SPECIFIC ASSURANCES

Specific assurances required to be included in grant agreements by any of the above laws, regulations or circulars are incorporated by reference in this Grant Agreement.

**2.   Responsibility and Authority of the Sponsor.**

a.   Public Agency Sponsor:

It has legal authority to apply for this Grant, and to finance and carry out the proposed project; that a resolution, motion or similar action has been duly adopted or passed as an official act of the applicant's governing body authorizing the filing of the application, including all understandings and assurances contained therein, and directing and authorizing the person identified as the official representative of the applicant to act in connection with the application and to provide such additional information as may be required.

b.   Private Sponsor:

It has legal authority to apply for this Grant and to finance and carry out the proposed project and comply with all terms, conditions, and assurances of this Grant Agreement. It shall designate an official representative and shall in writing direct and authorize that person to file this application, including all understandings and assurances contained therein; to act in connection with this application; and to provide such additional information as may be required.

**3.   Sponsor Fund Availability.**

It has legal authority to apply for this Grant and to finance and carry out the proposed project and comply with all terms, conditions, and assurances of this Grant Agreement. It shall designate an official representative and shall in writing direct and authorize that person to file this application,

**4.   Good Title.**

a.   It, a public agency or the Federal government, holds good title, satisfactory to the Secretary, to the landing area of the airport or site thereof, or will give assurance satisfactory to the Secretary that good title will be acquired.

3-36-0102-139-2025

    b.  For noise compatibility program projects to be carried out on the property of the sponsor, it holds good title satisfactory to the Secretary to that portion of the property upon which Federal funds will be expended or will give assurance to the Secretary that good title will be obtained.

**5. Preserving Rights and Powers.**

    a.  It will not take or permit any action which would operate to deprive it of any of the rights and powers necessary to perform any or all of the terms, conditions, and assurances in this Grant Agreement without the written approval of the Secretary, and will act promptly to acquire, extinguish or modify any outstanding rights or claims of right of others which would interfere with such performance by the sponsor. This shall be done in a manner acceptable to the Secretary.

    b.  Subject to the 49 U.S.C. § 47107(a)(16) and (x), it will not sell, lease, encumber, or otherwise transfer or dispose of any part of its title or other interests in the property shown on Exhibit A to this application or, for a noise compatibility program project, that portion of the property upon which Federal funds have been expended, for the duration of the terms, conditions, and assurances in this Grant Agreement without approval by the Secretary. If the transferee is found by the Secretary to be eligible under Title 49, United States Code, to assume the obligations of this Grant Agreement and to have the power, authority, and financial resources to carry out all such obligations, the sponsor shall insert in the contract or document transferring or disposing of the sponsor's interest, and make binding upon the transferee all of the terms, conditions, and assurances contained in this Grant Agreement.

    c.  For all noise compatibility program projects which are to be carried out by another unit of local government or are on property owned by a unit of local government other than the sponsor, it will enter into an agreement with that government. Except as otherwise specified by the Secretary, that agreement shall obligate that government to the same terms, conditions, and assurances that would be applicable to it if it applied directly to the FAA for a grant to undertake the noise compatibility program project. That agreement and changes thereto must be satisfactory to the Secretary. It will take steps to enforce this agreement against the local government if there is substantial non-compliance with the terms of the agreement.

    d.  For noise compatibility program projects to be carried out on privately owned property, it will enter into an agreement with the owner of that property which includes provisions specified by the Secretary. It will take steps to enforce this agreement against the property owner whenever there is substantial non-compliance with the terms of the agreement.

    e.  If the sponsor is a private sponsor, it will take steps satisfactory to the Secretary to ensure that the airport will continue to function as a public-use airport in accordance with these assurances for the duration of these assurances.

    f.  If an arrangement is made for management and operation of the airport by any agency or person other than the sponsor or an employee of the sponsor, the sponsor will reserve sufficient rights and authority to ensure that the airport will be operated and maintained in accordance with Title 49, United States Code, the regulations and the terms, conditions and assurances in this Grant Agreement and shall ensure that such arrangement also requires compliance therewith.

g. Sponsors of commercial service airports will not permit or enter into any arrangement that results in permission for the owner or tenant of a property used as a residence, or zoned for residential use, to taxi an aircraft between that property and any location on airport. Sponsors of general aviation airports entering into any arrangement that results in permission for the owner of residential real property adjacent to or near the airport must comply with the requirements of Sec. 136 of Public Law 112-95 and the sponsor assurances.

6. **Consistency with Local Plans.**

The project is reasonably consistent with plans (existing at the time of submission of this application) of public agencies that are authorized by the State in which the project is located to plan for the development of the area surrounding the airport.

7. **Consideration of Local Interest.**

It has given fair consideration to the interest of communities in or near where the project may be located.

8. **Consultation with Users.**

In making a decision to undertake any airport development project under Title 49, United States Code, it has undertaken reasonable consultations with affected parties using the airport at which project is proposed.

9. **Public Hearings.**

In projects involving the location of an airport, an airport runway, or a major runway extension, it has afforded the opportunity for public hearings for the purpose of considering the economic, social, and environmental effects of the airport or runway location and its consistency with goals and objectives of such planning as has been carried out by the community and it shall, when requested by the Secretary, submit a copy of the transcript of such hearings to the Secretary. Further, for such projects, it has on its management board either voting representation from the communities where the project is located or has advised the communities that they have the right to petition the Secretary concerning a proposed project.

10. **Metropolitan Planning Organization.**

In projects involving the location of an airport, an airport runway, or a major runway extension at a medium or large hub airport, the sponsor has made available to and has provided upon request to the metropolitan planning organization in the area in which the airport is located, if any, a copy of the proposed amendment to the airport layout plan to depict the project and a copy of any airport master plan in which the project is described or depicted.

11. **Pavement Preventive Maintenance-Management.**

With respect to a project approved after January 1, 1995, for the replacement or reconstruction of pavement at the airport, it assures or certifies that it has implemented an effective airport pavement maintenance-management program, and it assures that it will use such program for the useful life of any pavement constructed, reconstructed, or repaired with Federal financial assistance at the airport. It will provide such reports on pavement condition and pavement management programs as the Secretary determines may be useful.

**12. Terminal Development Prerequisites.**

For projects which include terminal development at a public use airport, as defined in Title 49, it has, on the date of submittal of the project grant application, all the safety equipment required for certification of such airport under 49 U.S.C. 44706, and all the security equipment required by rule or regulation, and has provided for access to the passenger enplaning and deplaning area of such airport to passengers enplaning and deplaning from aircraft other than air carrier aircraft.

**13. Accounting System, Audit, and Record Keeping Requirements.**

a.  It shall keep all project accounts and records which fully disclose the amount and disposition by the recipient of the proceeds of this Grant, the total cost of the project in connection with which this Grant is given or used, and the amount or nature of that portion of the cost of the project supplied by other sources, and such other financial records pertinent to the project. The accounts and records shall be kept in accordance with an accounting system that will facilitate an effective audit in accordance with the Single Audit Act of 1984.

b.  It shall make available to the Secretary and the Comptroller General of the United States, or any of their duly authorized representatives, for the purpose of audit and examination, any books, documents, papers, and records of the recipient that are pertinent to this Grant. The Secretary may require that an appropriate audit be conducted by a recipient. In any case in which an independent audit is made of the accounts of a sponsor relating to the disposition of the proceeds of a grant or relating to the project in connection with which this Grant was given or used, it shall file a certified copy of such audit with the Comptroller General of the United States not later than six (6) months following the close of the fiscal year for which the audit was made.

**14. Minimum Wage Rates.**

It shall include, in all contracts in excess of $2,000 for work on any projects funded under this Grant Agreement which involve labor, provisions establishing minimum rates of wages, to be predetermined by the Secretary of Labor under 40 U.S.C. 3141-3144, 3146, and 3147, Public Building, Property, and Works), which contractors shall pay to skilled and unskilled labor, and such minimum rates shall be stated in the invitation for bids and shall be included in proposals or bids for the work.

**15. Veteran's Preference.**

It shall include in all contracts for work on any project funded under this Grant Agreement which involve labor, such provisions as are necessary to insure that, in the employment of labor (except in executive, administrative, and supervisory positions), preference shall be given to Vietnam era veterans, Persian Gulf veterans, Afghanistan-Iraq war veterans, disabled veterans, and small business concerns owned and controlled by disabled veterans as defined in 49 U.S.C. 47112. However, this preference shall apply only where the individuals are available and qualified to perform the work to which the employment relates.

**16. Conformity to Plans and Specifications.**

It will execute the project subject to plans, specifications, and schedules approved by the Secretary. Such plans, specifications, and schedules shall be submitted to the Secretary prior to commencement of site preparation, construction, or other performance under this Grant Agreement, and, upon approval of the Secretary, shall be incorporated into this Grant Agreement.

Any modification to the approved plans, specifications, and schedules shall also be subject to approval of the Secretary, and incorporated into this Grant Agreement.

**17. Construction Inspection and Approval.**

It will provide and maintain competent technical supervision at the construction site throughout the project to assure that the work conforms to the plans, specifications, and schedules approved by the Secretary for the project. It shall subject the construction work on any project contained in an approved project application to inspection and approval by the Secretary and such work shall be in accordance with regulations and procedures prescribed by the Secretary. Such regulations and procedures shall require such cost and progress reporting by the sponsor or sponsors of such project as the Secretary shall deem necessary.

**18. Planning Projects.**

In carrying out planning projects:

a. It will execute the project in accordance with the approved program narrative contained in the project application or with the modifications similarly approved.

b. It will furnish the Secretary with such periodic reports as required pertaining to the planning project and planning work activities.

c. It will include in all published material prepared in connection with the planning project a notice that the material was prepared under a grant provided by the United States.

d. It will make such material available for examination by the public and agrees that no material prepared with funds under this project shall be subject to copyright in the United States or any other country.

e. It will give the Secretary unrestricted authority to publish, disclose, distribute, and otherwise use any of the material prepared in connection with this grant.

f. It will grant the Secretary the right to disapprove the sponsor's employment of specific consultants and their subcontractors to do all or any part of this project as well as the right to disapprove the proposed scope and cost of professional services.

g. It will grant the Secretary the right to disapprove the use of the sponsor's employees to do all or any part of the project.

h. It understands and agrees that the Secretary's approval of this project grant or the Secretary's approval of any planning material developed as part of this grant does not constitute or imply any assurance or commitment on the part of the Secretary to approve any pending or future application for a Federal airport grant.

**19. Operation and Maintenance.**

a. The airport and all facilities which are necessary to serve the aeronautical users of the airport, other than facilities owned or controlled by the United States, shall be operated at all times in a safe and serviceable condition and in accordance with the minimum standards as may be required or prescribed by applicable Federal, state, and local agencies for maintenance and operation. It will not cause or permit any activity or action thereon which would interfere with its use for airport purposes. It will suitably operate and maintain the airport and all facilities thereon or connected therewith, with due regard to climatic and flood conditions. Any proposal

to temporarily close the airport for non-aeronautical purposes must first be approved by the Secretary. In furtherance of this assurance, the sponsor will have in effect arrangements for:

1. Operating the airport's aeronautical facilities whenever required;

2. Promptly marking and lighting hazards resulting from airport conditions, including temporary conditions; and

3. Promptly notifying aviators of any condition affecting aeronautical use of the airport. Nothing contained herein shall be construed to require that the airport be operated for aeronautical use during temporary periods when snow, flood, or other climatic conditions interfere with such operation and maintenance. Further, nothing herein shall be construed as requiring the maintenance, repair, restoration, or replacement of any structure or facility which is substantially damaged or destroyed due to an act of God or other condition or circumstance beyond the control of the sponsor.

b. It will suitably operate and maintain noise compatibility program items that it owns or controls upon which Federal funds have been expended.

## 20. Hazard Removal and Mitigation.

It will take appropriate action to assure that such terminal airspace as is required to protect instrument and visual operations to the airport (including established minimum flight altitudes) will be adequately cleared and protected by removing, lowering, relocating, marking, or lighting or otherwise mitigating existing airport hazards and by preventing the establishment or creation of future airport hazards.

## 21. Compatible Land Use.

It will take appropriate action, to the extent reasonable, including the adoption of zoning laws, to restrict the use of land adjacent to or in the immediate vicinity of the airport to activities and purposes compatible with normal airport operations, including landing and takeoff of aircraft. In addition, if the project is for noise compatibility program implementation, it will not cause or permit any change in land use, within its jurisdiction, that will reduce its compatibility, with respect to the airport, of the noise compatibility program measures upon which Federal funds have been expended.

## 22. Economic Nondiscrimination.

a. It will make the airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities, including commercial aeronautical activities offering services to the public at the airport.

b. In any agreement, contract, lease, or other arrangement under which a right or privilege at the airport is granted to any person, firm, or corporation to conduct or to engage in any aeronautical activity for furnishing services to the public at the airport, the sponsor will insert and enforce provisions requiring the contractor to:

1. Furnish said services on a reasonable, and not unjustly discriminatory, basis to all users thereof, and

2. Charge reasonable, and not unjustly discriminatory, prices for each unit or service, provided that the contractor may be allowed to make reasonable and nondiscriminatory discounts, rebates, or other similar types of price reductions to volume purchasers.

c. Each fixed-based operator at the airport shall be subject to the same rates, fees, rentals, and other charges as are uniformly applicable to all other fixed-based operators making the same or similar uses of such airport and utilizing the same or similar facilities.

d. Each air carrier using such airport shall have the right to service itself or to use any fixed-based operator that is authorized or permitted by the airport to serve any air carrier at such airport.

e. Each air carrier using such airport (whether as a tenant, non-tenant, or subtenant of another air carrier tenant) shall be subject to such nondiscriminatory and substantially comparable rules, regulations, conditions, rates, fees, rentals, and other charges with respect to facilities directly and substantially related to providing air transportation as are applicable to all such air carriers which make similar use of such airport and utilize similar facilities, subject to reasonable classifications such as tenants or non-tenants and signatory carriers and non-signatory carriers. Classification or status as tenant or signatory shall not be unreasonably withheld by any airport provided an air carrier assumes obligations substantially similar to those already imposed on air carriers in such classification or status.

f. It will not exercise or grant any right or privilege which operates to prevent any person, firm, or corporation operating aircraft on the airport from performing any services on its own aircraft with its own employees (including, but not limited to maintenance, repair, and fueling) that it may choose to perform.

g. In the event the sponsor itself exercises any of the rights and privileges referred to in this assurance, the services involved will be provided on the same conditions as would apply to the furnishing of such services by commercial aeronautical service providers authorized by the sponsor under these provisions.

h. The sponsor may establish such reasonable, and not unjustly discriminatory, conditions to be met by all users of the airport as may be necessary for the safe and efficient operation of the airport.

i. The sponsor may prohibit or limit any given type, kind or class of aeronautical use of the airport if such action is necessary for the safe operation of the airport or necessary to serve the civil aviation needs of the public.

**23. Exclusive Rights.**

It will permit no exclusive right for the use of the airport by any person providing, or intending to provide, aeronautical services to the public. For purposes of this paragraph, the providing of the services at an airport by a single fixed-based operator shall not be construed as an exclusive right if both of the following apply:

a. It would be unreasonably costly, burdensome, or impractical for more than one fixed-based operator to provide such services, and

b. If allowing more than one fixed-based operator to provide such services would require the reduction of space leased pursuant to an existing agreement between such single fixed-based

operator and such airport. It further agrees that it will not, either directly or indirectly, grant or permit any person, firm, or corporation, the exclusive right at the airport to conduct any aeronautical activities, including, but not limited to charter flights, pilot training, aircraft rental and sightseeing, aerial photography, crop dusting, aerial advertising and surveying, air carrier operations, aircraft sales and services, sale of aviation petroleum products whether or not conducted in conjunction with other aeronautical activity, repair and maintenance of aircraft, sale of aircraft parts, and any other activities which because of their direct relationship to the operation of aircraft can be regarded as an aeronautical activity, and that it will terminate any exclusive right to conduct an aeronautical activity now existing at such an airport before the grant of any assistance under Title 49, United States Code.

## 24. Fee and Rental Structure.

It will maintain a fee and rental structure for the facilities and services at the airport which will make the airport as self-sustaining as possible under the circumstances existing at the particular airport, taking into account such factors as the volume of traffic and economy of collection. No part of the Federal share of an airport development, airport planning or noise compatibility project for which a Grant is made under Title 49, United States Code, the Airport and Airway Improvement Act of 1982, the Federal Airport Act or the Airport and Airway Development Act of 1970 shall be included in the rate basis in establishing fees, rates, and charges for users of that airport.

## 25. Airport Revenues.

a.  All revenues generated by the airport and any local taxes on aviation fuel established after December 30, 1987, will be expended by it for the capital or operating costs of the airport; the local airport system; or other local facilities which are owned or operated by the owner or operator of the airport and which are directly and substantially related to the actual air transportation of passengers or property; or for noise mitigation purposes on or off the airport. The following exceptions apply to this paragraph:

   1.  If covenants or assurances in debt obligations issued before September 3, 1982, by the owner or operator of the airport, or provisions enacted before September 3, 1982, in governing statutes controlling the owner or operator's financing, provide for the use of the revenues from any of the airport owner or operator's facilities, including the airport, to support not only the airport but also the airport owner or operator's general debt obligations or other facilities, then this limitation on the use of all revenues generated by the airport (and, in the case of a public airport, local taxes on aviation fuel) shall not apply.

   2.  If the Secretary approves the sale of a privately owned airport to a public sponsor and provides funding for any portion of the public sponsor's acquisition of land, this limitation on the use of all revenues generated by the sale shall not apply to certain proceeds from the sale. This is conditioned on repayment to the Secretary by the private owner of an amount equal to the remaining unamortized portion (amortized over a 20-year period) of any airport improvement grant made to the private owner for any purpose other than land acquisition on or after October 1, 1996, plus an amount equal to the federal share of the current fair market value of any land acquired with an airport improvement grant made to that airport on or after October 1, 1996.

   3.  Certain revenue derived from or generated by mineral extraction, production, lease, or other means at a general aviation airport (as defined at 49 U.S.C. 47102), if the FAA

determines the airport sponsor meets the requirements set forth in Section 813 of Public Law 112-95.

b.  As part of the annual audit required under the Single Audit Act of 1984, the sponsor will direct that the audit will review, and the resulting audit report will provide an opinion concerning, the use of airport revenue and taxes in paragraph (a), and indicating whether funds paid or transferred to the owner or operator are paid or transferred in a manner consistent with Title 49, United States Code and any other applicable provision of law, including any regulation promulgated by the Secretary or Administrator.

c.  Any civil penalties or other sanctions will be imposed for violation of this assurance in accordance with the provisions of 49 U.S.C. 47107.

## 26. Reports and Inspections.

It will:

a.  submit to the Secretary such annual or special financial and operations reports as the Secretary may reasonably request and make such reports available to the public; make available to the public at reasonable times and places a report of the airport budget in a format prescribed by the Secretary;

b.  for airport development projects, make the airport and all airport records and documents affecting the airport, including deeds, leases, operation and use agreements, regulations and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request;

c.  for noise compatibility program projects, make records and documents relating to the project and continued compliance with the terms, conditions, and assurances of this Grant Agreement including deeds, leases, agreements, regulations, and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request; and

d.  in a format and time prescribed by the Secretary, provide to the Secretary and make available to the public following each of its fiscal years, an annual report listing in detail:

1.  all amounts paid by the airport to any other unit of government and the purposes for which each such payment was made; and

2.  all services and property provided by the airport to other units of government and the amount of compensation received for provision of each such service and property.

## 27. Use by Government Aircraft.

It will make available all of the facilities of the airport developed with Federal financial assistance and all those usable for landing and takeoff of aircraft to the United States for use by Government aircraft in common with other aircraft at all times without charge, except, if the use by Government aircraft is substantial, charge may be made for a reasonable share, proportional to such use, for the cost of operating and maintaining the facilities used. Unless otherwise determined by the Secretary, or otherwise agreed to by the sponsor and the using agency, substantial use of an airport by Government aircraft will be considered to exist when operations of such aircraft are in excess of those which, in the opinion of the Secretary, would unduly interfere with use of the landing areas by other authorized aircraft, or during any calendar month that:

a.  Five (5) or more Government aircraft are regularly based at the airport or on land adjacent thereto; or

b.  The total number of movements (counting each landing as a movement) of Government aircraft is 300 or more, or the gross accumulative weight of Government aircraft using the airport (the total movement of Government aircraft multiplied by gross weights of such aircraft) is in excess of five million pounds.

**28. Land for Federal Facilities.**

It will furnish without cost to the Federal Government for use in connection with any air traffic control or air navigation activities, or weather-reporting and communication activities related to air traffic control, any areas of land or water, or estate therein as the Secretary considers necessary or desirable for construction, operation, and maintenance at Federal expense of space or facilities for such purposes. Such areas or any portion thereof will be made available as provided herein within four months after receipt of a written request from the Secretary.

**29. Airport Layout Plan.**

a.  Subject to the FAA Reauthorization Act of 2018, Public Law 115-254, Section 163, The airport owner or operator maintain a current airport layout plan of the airport showing:

 1.  boundaries of the airport and all proposed additions thereto, together with the boundaries of all offsite areas owned or controlled by the sponsor for airport purposes and proposed additions thereto;

 2.  the location and nature of all existing and proposed airport facilities and structures (such as runways, taxiways, aprons, terminal buildings, hangars and roads), including all proposed extensions and reductions of existing airport facilities;

 3.  the location of all existing and proposed non-aviation areas and of all existing improvements thereon; and

 4.  all proposed and existing access points used to taxi aircraft across the airport's property boundary.

b.  Subject to subsection 49 U.S.C. § 47107(x), the Secretary will review and each amendment, approve or disapprove the plan and any revision, or modification thereof, shall be subject to the approval of the Secretary which approval shall be evidenced by the signature of a duly authorized representative of the Secretary on the face of the airport layout plan. plan before the plan, revision, or modification takes effect.

c.  The owner or operator will not make or allow any alteration in the airport or any of its facilities unless the alteration—

 1.  is outside the scope of the Secretary's review and approval authority as set forth in subsection (x); or

 2.  complies with the portions of the plan approved by the Secretary

d.  When the airport owner or operator makes a change or alteration in the airport or the facilities which the Secretary determines adversely affects the safety, utility, or efficiency of any federally owned, leased, or funded property on or off the airport and which is not in conformity

with the airport layout plan as approved by the Secretary, the owner or operator will, if requested, by the Secretary:

1. eliminate such adverse effect in a manner approved by the Secretary; or

2. bear all costs of relocating such property or its replacement to a site acceptable to the Secretary and of restoring the property or its replacement to the level of safety, utility, efficiency, and cost of operation that existed before the alteration was made, except in the case of a relocation or replacement of an existing airport facility due to a change in the Secretary's design standards beyond the control of the airport sponsor.

**30. Civil Rights.**

It will promptly take any measures necessary to ensure that no person in the United States shall, on the grounds of race, color, and national origin (including limited English proficiency) in accordance with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d to 2000d-4); creed and sex per 49 U.S.C. 47123 and related requirements; age per the Age Discrimination Act of 1975 and related requirements; or disability per the Americans with Disabilities Act of 1990 and related requirements, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination in any program and activity conducted with, or benefiting from, funds received from this Grant.

a. Using the definitions of activity, facility, and program as found and defined in 49 CFR 21.23(b) and 21.23(e), the sponsor will facilitate all programs, operate all facilities, or conduct all programs in compliance with all non-discrimination requirements imposed by or pursuant to these assurances.

b. Applicability

1. Programs and Activities. If the sponsor has received a grant (or other federal assistance) for any of the sponsor's program or activities, these requirements extend to all of the sponsor's programs and activities.

2. Facilities. Where it receives a grant or other federal financial assistance to construct, expand, renovate, remodel, alter, or acquire a facility, or part of a facility, the assurance extends to the entire facility and facilities operated in connection therewith.

   Real Property. Where the sponsor receives a grant or other Federal financial assistance in the form of, or for the acquisition of real property or an interest in real property, the assurance will extend to rights to space on, over, or under such property

c. Duration.

The sponsor agrees that it is obligated to this assurance for the period during which Federal financial assistance is extended to the program, except where the Federal financial assistance is to provide, or is in the form of, personal property, or real property, or interest therein, or structures or improvements thereon, in which case the assurance obligates the sponsor, or any transferee for the longer of the following periods:

1. So long as the airport is used as an airport, or for another purpose involving the provision of similar services or benefits; or

2. So long as the sponsor retains ownership or possession of the property.

3-36-0102-139-2025

d. Required Solicitation Language. It will include the following notification in all solicitations for bids, Requests For Proposals for work, or material under this Grant Agreement and in all proposals for agreements, including airport concessions, regardless of funding source:

"The (**County of Monroe**), in accordance with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d to 2000d-4) and the Regulations, hereby notifies all bidders or offerors that it will affirmatively ensure that for any contract entered into pursuant to this advertisement, all businesses will be afforded full and fair opportunity to submit bids in response to this invitation and no businesses will be discriminated against on the grounds of race, color, national origin (including limited English proficiency), creed, sex , age, or disability in consideration for an award."

e. Required Contract Provisions.

1. It will insert the non-discrimination contract clauses requiring compliance with the acts and regulations relative to non-discrimination in Federally-assisted programs of the Department of Transportation (DOT), and incorporating the acts and regulations into the contracts by reference in every contract or agreement subject to the non-discrimination in Federally-assisted programs of the DOT acts and regulations.

2. It will include a list of the pertinent non-discrimination authorities in every contract that is subject to the non-discrimination acts and regulations.

3. It will insert non-discrimination contract clauses as a covenant running with the land, in any deed from the United States effecting or recording a transfer of real property, structures, use, or improvements thereon or interest therein to a sponsor.

4. It will insert non-discrimination contract clauses prohibiting discrimination on the basis of race, color, national origin (including limited English proficiency), creed, sex, age, or disability as a covenant running with the land, in any future deeds, leases, license, permits, or similar instruments entered into by the sponsor with other parties:

    a. For the subsequent transfer of real property acquired or improved under the applicable activity, project, or program; and

    b. For the construction or use of, or access to, space on, over, or under real property acquired or improved under the applicable activity, project, or program.

f. It will provide for such methods of administration for the program as are found by the Secretary to give reasonable guarantee that it, other recipients, sub-recipients, sub-grantees, contractors, subcontractors, consultants, transferees, successors in interest, and other participants of Federal financial assistance under such program will comply with all requirements imposed or pursuant to the acts, the regulations, and this assurance.

g. It agrees that the United States has a right to seek judicial enforcement with regard to any matter arising under the acts, the regulations, and this assurance.

**31. Disposal of Land.**

a. For land purchased under a grant for airport noise compatibility purposes, including land serving as a noise buffer, it will dispose of the land, when the land is no longer needed for such purposes, at fair market value, at the earliest practicable time. That portion of the proceeds of such disposition which is proportionate to the United States' share of acquisition of such land

3-36-0102-139-2025

will be, at the discretion of the Secretary, (1) reinvested in another project at the airport, or (2) transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

1. Reinvestment in an approved noise compatibility project;

2. Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. 47117(e);

3. Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. 47114, 47115, or 47117;

4. Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

5. Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

If land acquired under a grant for noise compatibility purposes is leased at fair market value and consistent with noise buffering purposes, the lease will not be considered a disposal of the land. Revenues derived from such a lease may be used for an approved airport development project that would otherwise be eligible for grant funding or any permitted use of airport revenue.

b. For land purchased under a grant for airport development purposes (other than noise compatibility), it will, when the land is no longer needed for airport purposes, dispose of such land at fair market value or make available to the Secretary an amount equal to the United States' proportionate share of the fair market value of the land. That portion of the proceeds of such disposition which is proportionate to the United States' share of the cost of acquisition of such land will, upon application to the Secretary, be reinvested or transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

1. Reinvestment in an approved noise compatibility project;

2. Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. 47117(e);

3. Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. 47114, 47115, or 47117;

4. Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

5. Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

c. Land shall be considered to be needed for airport purposes under this assurance if (1) it may be needed for aeronautical purposes (including runway protection zones) or serve as noise buffer land, and (2) the revenue from interim uses of such land contributes to the financial self-sufficiency of the airport. Further, land purchased with a grant received by an airport operator or owner before December 31, 1987, will be considered to be needed for airport purposes if the Secretary or Federal agency making such grant before December 31, 1987, was notified by the operator or owner of the uses of such land, did not object to such use, and the land continues to be used for that purpose, such use having commenced no later than December 15, 1989.

3-36-0102-139-2025

   d.  Disposition of such land under (a), (b), or (c) will be subject to the retention or reservation of any interest or right therein necessary to ensure that such land will only be used for purposes which are compatible with noise levels associated with operation of the airport.

**32. Engineering and Design Services.**

If any phase of such project has received Federal funds under Chapter 471 subchapter 1 of Title 49 U.S.C., it will award each contract, or sub-contract for program management, construction management, planning studies, feasibility studies, architectural services, preliminary engineering, design, engineering, surveying, mapping or related services in the same manner as a contract for architectural and engineering services is negotiated under Chapter 11 of Title 40 U.S.C., or an equivalent qualifications-based requirement prescribed for or by the sponsor of the airport.

**33. Foreign Market Restrictions.**

It will not allow funds provided under this Grant to be used to fund any project which uses any product or service of a foreign country during the period in which such foreign country is listed by the United States Trade Representative as denying fair and equitable market opportunities for products and suppliers of the United States in procurement and construction.

**34. Policies, Standards, and Specifications.**

It will carry out any project funded under an Airport Improvement Program Grant in accordance with policies, standards, and specifications approved by the Secretary including, but not limited to, current FAA Advisory Circulars (https://www.faa.gov/sites/faa.gov/files/aip-pfc-checklist_0.pdf) for AIP projects as of June 30, 2025.

**35. Relocation and Real Property Acquisition.**

   a.  It will be guided in acquiring real property, to the greatest extent practicable under State law, by the land acquisition policies in Subpart B of 49 CFR Part 24 and will pay or reimburse property owners for necessary expenses as specified in Subpart B.

   b.  It will provide a relocation assistance program offering the services described in Subpart C of 49 CFR Part 24 and fair and reasonable relocation payments and assistance to displaced persons as required in Subpart D and E of 49 CFR Part 24.

   c.  It will make available within a reasonable period of time prior to displacement, comparable replacement dwellings to displaced persons in accordance with Subpart E of 49 CFR Part 24.

**36. Access By Intercity Buses.**

The airport owner or operator will permit, to the maximum extent practicable, intercity buses or other modes of transportation to have access to the airport; however, it has no obligation to fund special facilities for intercity buses or for other modes of transportation.

**37. Disadvantaged Business Enterprises.**

The sponsor shall not discriminate on the basis of race, color, national origin, sex, in the award and performance of any DOT-assisted contract covered by 49 CFR Part 26, or in the award and performance of any concession activity contract covered by 49 CFR Part 23. In addition, the sponsor shall not discriminate on the basis of race, color, national origin or sex in the administration of its Disadvantaged Business Enterprise (DBE) and Airport Concessions Disadvantaged Business Enterprise (ACDBE) programs or the requirements of 49 CFR Parts 23 and 26. The sponsor shall take

all necessary and reasonable steps under 49 CFR Parts 23 and 26 to ensure nondiscrimination in the award and administration of DOT-assisted contracts, and/or concession contracts. The sponsor's DBE and ACDBE programs, as required by 49 CFR Parts 26 and 23, and as approved by DOT, are incorporated by reference in this agreement. Implementation of these programs is a legal obligation and failure to carry out its terms shall be treated as a violation of this agreement. Upon notification to the sponsor of its failure to carry out its approved program, the Department may impose sanctions as provided for under Parts 26 and 23 and may, in appropriate cases, refer the matter for enforcement under 18 U.S.C. § 1001 and/or the Program Fraud Civil Remedies Act of 1986 (31 U.S.C. §§ 3801-3809, 3812).

**38. Hangar Construction.**

If the airport owner or operator and a person who owns an aircraft agree that a hangar is to be constructed at the airport for the aircraft at the aircraft owner's expense, the airport owner or operator will grant to the aircraft owner for the hangar a long term lease that is subject to such terms and conditions on the hangar as the airport owner or operator may impose.

**39. Competitive Access.**

a. If the airport owner or operator of a medium or large hub airport (as defined in 49 U.S.C. § 47102) has been unable to accommodate one or more requests by an air carrier for access to gates or other facilities at that airport in order to allow the air carrier to provide service to the airport or to expand service at the airport, the airport owner or operator shall transmit a report to the Secretary that:

1. Describes the requests;

2. Provides an explanation as to why the requests could not be accommodated; and

3. Provides a time frame within which, if any, the airport will be able to accommodate the requests.

b. Such report shall be due on either February 1 or August 1 of each year if the airport has been unable to accommodate the request(s) in the six month period prior to the applicable due date.

**40. Access to Leaded Aviation Gasoline.**

a. An airport owner or operator that made any 100-octane low lead aviation gasoline (100LL) available at such airport, at any time during calendar year 2022, may not restrict or prohibit the sale of, or self-fueling with, 100-octane low lead aviation gasoline.

b. This requirement remains until the earlier of December 31, 2030, or the date on which the airport or any retail fuel seller at the airport makes available an unleaded aviation gasoline that has been authorized for use by the Administrator of the Federal Aviation Administration as a replacement for 100-octane low lead aviation gasoline for use in nearly all piston-engine aircraft and engine models; and meets either an industry consensus standard or other standard that facilitates the safe use, production, and distribution of such unleaded aviation gasoline, as determined appropriate by the Administrator.

c. An airport owner or operator understands and agrees, that any violation of this grant assurance is subject to civil penalties as provided for in 49 U.S.C. § 46301(a)(8).

3-36-0102-139-2025



# AIP Supplemental Apportionment Grant Application

Monroe County, NY Aviation Department
Frederick Douglass Greater Rochester International Airport (ROC)

#3-36-0102-  -2025

*June 23, 2025*

**Projects:**

**Terminal Improvements Project (Terminal Window Glazing Replacement) - Design and Construction**

**Prepared For:**

Federal Aviation Administration
New York Airports District Office



**Prepared By:**



June 23, 2025

Glen L. Conacchio
Civil Engineer
New York Airports District Office
Federal Aviation Administration
1 Aviation Plaza, RM 111
Jamaica, NY 11434

RE: Final Grant Application (AIP Supplemental Apportionment)
    Terminal Improvements Project (Terminal Window Glazing Replacement) - Design
    Frederick Douglass Greater Rochester International Airport (ROC)

Dear Mr. Conacchio,

I am submitting the Final Grant Application for Grant 3-36-0102-   -2025 on behalf of Monroe
County, NY Aviation Department and Frederick Douglass Greater Rochester International Airport
(ROC) for the *Terminal Improvements Project (Terminal Window Glazing Replacement) - Design
and Construction* project.

The contents of this Application are as follows:

- Grant Application Checklist
- Application for Federal Assistance SF-424
- FAA Form 5100-100
- Project Cost Breakdown
- Supporting Documentation
    - Statement by the Sponsor of Cost Reasonableness
    - Professional Services Negotiated Agreement
    - Bid Recommendation Letter & Bids Received
    - Project Sketch
    - Environmental Documentation
    - Project Data Sheet
    - Exhibit A
- Sponsor Certifications
    - FAA Forms 5100-130, -132, -134, -135
    - Certification Regarding Lobbying
- FAA Advisory Circulars & Grant Assurances

Thank you,

Sign Here →

_____

Allison Lia
Airport Engineer
Frederick Douglass Greater Rochester International Airport (ROC)

# Grant Application Checklist

**AIRPORT NAME:**   **Frederick Douglass Greater Rochester International Airport (ROC)**    **DATE:**   **June 23, 2025**

**SYSTEM FOR AWARD MANAGEMENT (SAM) CAGE CODE #:**   <u>69UP1</u>

**SYSTEM FOR AWARD MANAGEMENT (SAM) EXPIRATION DATE:**   <u>October 1, 2025</u>

| Ref. | | Yes | No | N/A | Comments Attached |
|---|---|---|---|---|---|
| | **ITEMS REQUIRED TO COMPLETE APPLICATION REVIEW:** | | | | |
| 1. | Standard Form 424 *(signed)* | X | | | |
| 2. | Project Cost Breakdown *(attached)* | X | | | |
| 3. | Project Sketch *(at the request of the ADO)* | X | | | |
| 4. | Project Narrative *(attached or within Form 5100-100 Part IV)* | X | | | |
| 5. | Form 5100-100 (parts II – IV) *(airport development grants)* | X | | | |
| 6. | Bid Tabulations/Negotiated Amounts *(attached or previously submitted to the ADO)* | X | | | |
| 7. | Exhibit A *(attached or previously submitted to the ADO)* | X | | | On-File |
| 8. | Title Certificate or Long-Term Lease Agreement *(at the request of the ADO)* | | | X | |

OMB Number: 4040-0004
Expiration Date: 11/30/2025

## Application for Federal Assistance SF-424

| *1. Type of Submission: | *2. Type of Application | * If Revision, select appropriate letter(s): |
|---|---|---|
| ☐ Preapplication | ☒ New | |
| ☒ Application | ☐ Continuation | * Other (Specify) |
| ☐ Changed/Corrected Application | ☐ Revision | |

| *3. Date Received: | 4. Applicant Identifier: |
|---|---|
| 06/23/2025 | ROC |

| 5a. Federal Entity Identifier: | *5b. Federal Award Identifier: |
|---|---|
| 36-0102 | FY-2025 |

### State Use Only:

| 6. Date Received by State: | 7. State Application Identifier: |
|---|---|
| | |

### 8. APPLICANT INFORMATION:

*a. Legal Name: Monroe County, NY Aviation Department

| *b. Employer/Taxpayer Identification Number (EIN/TIN): | *c. UEI: |
|---|---|
| 16-60002563 | DYHNLRKCH117 |

**d. Address:**

| | |
|---|---|
| *Street 1: | 1200 Brooks Avenue |
| Street 2: | |
| *City: | Rochester |
| County/Parish: | Monroe County |
| *State: | NY |
| *Province: | |
| *Country: | USA: United States |
| *Zip / Postal Code | 14624-0000 |

**e. Organizational Unit:**

| Department Name: | Division Name: |
|---|---|
| | |

**f. Name and contact information of person to be contacted on matters involving this application:**

| Prefix: Ms. | *First Name: Allison |
|---|---|
| Middle Name: | |
| *Last Name: Lia | |
| Suffix: | |

Title: Airport Engineer

Organizational Affiliation:
Frederick Douglass Greater Rochester International Airport (ROC)

| *Telephone Number: (585) 753-7109 | Fax Number: |
|---|---|

*Email: allisonlia@monroecounty.gov

**Application for Federal Assistance SF-424**

**\*9. Type of Applicant 1: Select Applicant Type:**

B: County Government

Type of Applicant 2: Select Applicant Type:

Pick an applicant type

Type of Applicant 3: Select Applicant Type:

Pick an applicant type

\*Other (Specify)

**\*10. Name of Federal Agency:**

Federal Aviation Administration

**11. Catalog of Federal Domestic Assistance Number:**

20.106

CFDA Title:

Airport Improvement Program

**\*12. Funding Opportunity Number:**

-

\*Title:

Supplemental Apportionment

**13. Competition Identification Number:**

-

Title:

-

**14. Areas Affected by Project (Cities, Counties, States, etc.):**

**\*15. Descriptive Title of Applicant's Project:**

Terminal Improvements Project (Terminal Window Glazing Replacement)

**Attach supporting documents as specified in agency instructions.**

**Application for Federal Assistance SF-424**

**16. Congressional Districts Of:**

*a. Applicant: NY-025          *b. Program/Project:  NY-025

Attach an additional list of Program/Project Congressional Districts if needed.

**17. Proposed Project:**

*a. Start Date:  03/18/2025          *b. End Date:  12/31/2025

**18. Estimated Funding ($):**

| | |
|---|---|
| *a. Federal | $ 288,393 |
| *b. Applicant | $ 16,022 |
| *c. State | $ 16,022 |
| *d. Local | $ 0 |
| *e. Other | $ 0 |
| *f. Program Income | $ 0 |
| *g. TOTAL | $ 320,437 |

**\*19.  Is Application Subject to Review By State Under Executive Order 12372 Process?**

☐ a. This application was made available to the State under the Executive Order 12372 Process for review on _____ .

☐ b. Program is subject to E.O. 12372 but has not been selected by the State for review.

☒ c. Program is not covered by E.O. 12372.

**\*20.  Is the Applicant Delinquent On Any Federal Debt?**
☐ Yes   ☒ No

**If "Yes", explain:**

21. *By signing this application, I certify (1) to the statements contained in the list of certifications** and (2) that the statements herein are true, complete and accurate to the best of my knowledge.  I also provide the required assurances** and agree to comply with any resulting terms if I accept an award.  I am aware that any false, fictitious, or fraudulent statements or claims may subject me to criminal, civil, or administrative penalties. (U. S. Code, Title 218, Section 1001)

☒ ** I AGREE

** The list of certifications and assurances, or an internet site where you may obtain this list, is contained in the announcement or agency specific instructions.

**Authorized Representative:**

| | |
|---|---|
| Prefix: | *First Name:  Allison |
| Middle Name: | |
| *Last Name:  Lia | |
| Suffix: | |

*Title: Airport Engineer

| *Telephone Number: (585) 753-7109 | Fax Number: |
|---|---|

* Email: allisonlia@monroecounty.gov

| *Signature of Authorized Representative: | *Date Signed:  06/30/2025 |
|---|---|



U.S. Department of Transportation
**Federal Aviation Administration**

OMB CONTROL NUMBER: 2120-0569
EXPIRATION DATE: 12/31/2026

## Application for Federal Assistance (Development and Equipment Projects)

### PART II – PROJECT APPROVAL INFORMATION

| Part II - SECTION A |
|---|
| The term "Sponsor" refers to the applicant name provided in box 8 of the associated SF-424 form. |

**Item 1.**
Does Sponsor maintain an active registration in the System for Award Management (www.SAM.gov)?  ☒ Yes  ☐ No

**Item 2.**
Can Sponsor commence the work identified in the application in the fiscal year the grant is made or within six months after the grant is made, whichever is later?  ☒ Yes  ☐ No  ☐ N/A

**Item 3.**
Are there any foreseeable events that would delay completion of the project? If yes, provide attachment to this form that lists the events.  ☐ Yes  ☒ No  ☐ N/A

**Item 4.**
Will the project(s) covered by this request have impacts or effects on the environment that require mitigating measures? If yes, attach a summary listing of mitigating measures to this application and identify the name and date of the environmental document(s).  ☐ Yes  ☒ No  ☐ N/A

**Item 5.**
Is the project covered by this request included in an approved Passenger Facility Charge (PFC) application or other Federal assistance program? If yes, please identify other funding sources by checking all applicable boxes.  ☐ Yes  ☒ No  ☐ N/A

☐ The project is included in an *approved* PFC application.

If included in an approved PFC application,

does the application *only* address AIP matching share?  ☐ Yes  ☐ No

☐ The project is included in another Federal Assistance program. Its CFDA number is below.

**Item 6.**
Will the requested Federal assistance include Sponsor indirect costs as described in 2 CFR Appendix VII to Part 200, States and Local Government and Indian Tribe Indirect Cost Proposals?  ☐ Yes  ☒ No  ☐ N/A

If the request for Federal assistance includes a claim for allowable indirect costs, select the applicable indirect cost rate the Sponsor proposes to apply:

☐ De Minimis rate of 10% as permitted by 2 CFR § 200.414.

☐ Negotiated Rate equal to _____ % as approved by _____ (the Cognizant Agency)
on _____ (Date) (2 CFR part 200, appendix VII).

*Note: Refer to the instructions for limitations of application associated with claiming Sponsor indirect costs.*

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| PART II - SECTION B |
|---|
| **Certification Regarding Lobbying** |

The declarations made on this page are under the signature of the authorized representative as identified in box 21 of form SF-424, to which this form is attached. The term "Sponsor" refers to the applicant name provided in box 8 of the associated SF-424 form.

The Authorized Representative certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the Sponsor, to any person for influencing or attempting to influence an officer or employee of an agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan, or cooperative agreement, the Authorized Representative shall complete and submit Standard Form-LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Authorized Representative shall require that the language of this certification be included in the award documents for all sub-awards at all tiers (including subcontracts, subgrants, and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by section 1352, title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| PART II – SECTION C |
|---|

The Sponsor hereby represents and certifies as follows:

**1. Compatible Land Use** – The Sponsor has taken the following actions to assure compatible usage of land adjacent to or in the vicinity of the airport:

The project is contained within airport-owned property.

**2. Defaults** – The Sponsor is not in default on any obligation to the United States or any agency of the United States Government relative to the development, operation, or maintenance of any airport, except as stated herewith:

The Sponsor is not in default on any obligation to the U.S. or any agency of the U.S. Government relative to the development, operation, or maintenance of any airport.

**3. Possible Disabilities** – There are no facts or circumstances (including the existence of effective or proposed leases, use agreements or other legal instruments affecting use of the Airport or the existence of pending litigation or other legal proceedings) which in reasonable probability might make it impossible for the Sponsor to carry out and complete the Project or carry out the provisions of the Grant Assurances, either by limiting its legal or financial ability or otherwise, except as follows:

The Sponsor has no facts/circumstances which would prevent completion of the project or compliance with Assurances

**4. Consistency with Local Plans** – The project is reasonably consistent with plans existing at the time of submission of this application) of public agencies that are authorized by the State in which the project is located to plan for the development of the area surrounding the airport.

The project is consistent with plans of public agencies authorized by the State of New York.

**5. Consideration of Local Interest** – It has given fair consideration to the interest of communities in or near where the project may be located.

The Project has given fair consideration of the interest of the communities in or near the project area.

**6. Consultation with Users** – In making a decision to undertake an airport development project under Title 49, United States Code, it has consulted with airport users that will potentially be affected by the project (§ 47105(a)(2)).

Yes, consultation has occurred.

**7. Public Hearings** – In projects involving the location of an airport, an airport runway or a major runway extension, it has afforded the opportunity for public hearings for the purpose of considering the economic, social, and environmental effects of the airport or runway location and its consistency with goals and objectives of such planning as has been carried out by the community and it shall, when requested by the Secretary, submit a copy of the transcript of such hearings to the Secretary. Further, for such projects, it has on its management board either voting representation from the communities where the project is located or has advised the communities that they have the right to petition the Secretary concerning a proposed project.

N/A

**8. Air and Water Quality Standards** – In projects involving airport location, a major runway extension, or runway location it will provide for the Governor of the state in which the project is located to certify in writing to the Secretary that the project will be located, designed, constructed, and operated so as to comply with applicable and air and water quality standards. In any case where such standards have not been approved and where applicable air and water quality standards have been promulgated by the Administrator of the Environmental Protection Agency, certification shall be obtained from such Administrator. Notice of certification or refusal to certify shall be provided within sixty days after the project application has been received by the Secretary.

N/A

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| PART II – SECTION C (Continued) |
| --- |

9. **Exclusive Rights** – There is no grant of an exclusive right for the conduct of any aeronautical activity at any airport owned or controlled by the Sponsor except as follows:

There is no grant of an exclusive right for the conduct of any aeronautical activity.

10. **Land** – (a) The sponsor holds the following property interest in the following areas of land, which are to be developed or used as part of or in connection with the Airport subject to the following exceptions, encumbrances, and adverse interests, all of which areas are identified on the aforementioned property map designated as Exhibit "A". [1]

N/A

The Sponsor further certifies that the above is based on a title examination by a qualified attorney or title company and that such attorney or title company has determined that the Sponsor holds the above property interests.

(b) The Sponsor will acquire within a reasonable time, but in any event prior to the start of any construction work under the Project, the following property interest in the following areas of land on which such construction work is to be performed, all of which areas are identified on the aforementioned property map designated as Exhibit "A". [1]

N/A

(c) The Sponsor will acquire within a reasonable time, and if feasible prior to the completion of all construction work under the Project, the following property interest in the following areas of land which are to be developed or used as part of or in connection with the Airport as it will be upon completion of the Project, all of which areas are identified on the aforementioned property map designated as Exhibit "A". [1]

N/A

---

[1] State the character of property interest in each area and list and identify for each all exceptions, encumbrances, and adverse interests of every kind and nature, including liens, easements, leases, etc. The separate areas of land need only be identified here by the area numbers shown on the property map.

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

## PART III – BUDGET INFORMATION – CONSTRUCTION

| SECTION A – GENERAL |
| --- |
| 1. Assistance Listing Number: |
| 2. Functional or Other Breakout:          AIP Supplemental Apportionment |

| SECTION B – CALCULATION OF FEDERAL GRANT | | | |
| --- | --- | --- | --- |
| Cost Classification | Latest Approved Amount (Use only for revisions) | Adjustment + or (-) Amount (Use only for revisions) | Total Amount Required |
| 1.  Administration expense | | | $ 5,765 |
| 2.  Preliminary expense | | | |
| 3.  Land, structures, right-of-way | | | |
| 4.  Architectural engineering basic fees | | | 122,772 |
| 5.  Other Architectural engineering fees | | | |
| 6.  Project inspection fees | | | |
| 7.  Land development | | | |
| 8.  Relocation Expenses | | | |
| 9.  Relocation payments to Individuals and Businesses | | | |
| 10. Demolition and removal | | | |
| 11. Construction and project improvement | | | 191,900 |
| 12. Equipment | | | |
| 13. Miscellaneous | | | |
| 14. **Subtotal** (Lines 1 through 13) | | | $ 320,437 |
| 15. Estimated Income (if applicable) | | | |
| 16. Net Project Amount (Line 14 minus 15) | | | 320,437 |
| 17. **Less**: Ineligible Exclusions (Section C, line 23 g.) | | | |
| 18. **Subtotal** (Lines 16 through 17) | | | $ 320,437 |
| 19. Federal Share requested of Line 18 | | | 288,393 |
| 20. Grantee share | | | 16,022 |
| 21. Other shares | | | 16,022 |
| 22. **TOTAL PROJECT** (Lines 19, 20 & 21) | | | $ 320,437 |

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

## PART IV – PROGRAM NARRATIVE
*(Suggested Format)*

| | |
|---|---|
| **PROJECT:** | Terminal Improvements Project (Terminal WIndow Glazing Replacement) |

| | |
|---|---|
| **AIRPORT:** | Frederick Douglass Greater Rochester International Airport (ROC) |

**1. Objective:**

This project includes the Architectural Design Services and construction for the proposed "glazing" (glass panels only, not including the framing or other structural components) replacement in "Concourse B" at ROC. This project encompasses the concourse exterior window system, both ribbon glazing and curved areas of the window systems.

**2. Benefits Anticipated:**

The project will replace the clear insulated glazing and seals with new enhanced clear glazing and seals.

**3. Approach:** (See approved Scope of Work in Final Application)

This project will consist of the Architectural Design Services (30%, 60%, 90% Design), construction documents and permitting, bid phase services, construction administration/observation, and construction.

See Scope of Services, attached.

**4. Geographic Location:**

Frederick Douglass Greater Rochester International Airport (ROC)
43° 7' 8.917" N / 77° 40' 18.728" W

**5. If Applicable, Provide Additional Information:**

-

**6. Sponsor's Representative:** (include address & telephone number)

Representative: Allison Lia
Address: 1200 Brooks Avenue; Rochester, NY 14624
Phone Number: (585) 753-7109

OMB CONTROL NUMBER: 2120-0569
OMB EXPIRATION DATE: 12/31/2026

| SECTION C – EXCLUSIONS | |
|---|---|
| **23. Classification (Description of non-participating work)** | **Amount Ineligible for Participation** |
| a. | |
| b. | |
| c. | |
| d. | |
| e. | |
| f. | |
| g.                                                    **Total** | |

| SECTION D – PROPOSED METHOD OF FINANCING NON-FEDERAL SHARE | |
|---|---|
| **24. Grantee Share – Fund Categories** | **Amount** |
| a. Securities | |
| b. Mortgages | |
| c. Appropriations (by Applicant) | 16,022 |
| d. Bonds | |
| e. Tax Levies | |
| f. Non-Cash | |
| g. Other (Explain):  Grantee Funds | |
| h. **TOTAL** - Grantee share | $ 16,022 |
| **25. Other Shares** | **Amount** |
| a. State | 16,022 |
| b. Other | |
| c. **TOTAL** - Other Shares | $ 16,022 |
| **26. TOTAL NON-FEDERAL FINANCING** | $ 32,044 |

| SECTION E – REMARKS |
|---|
| (Attach sheets if additional space is required) |
| Exhibit A: On file with the FAA [10/29/20] <br><br> DBE Requirement/Goal = 5.9% |

# Frederick Douglass Greater Rochester International Airport (ROC)
### *Terminal Improvements Project (Terminal Window Glazing Replacement)*

## Project Cost Breakdown

| | |
|---|---:|
| Administration | $5,765 |
| Engineering | $122,772 |
| Construction | $191,900 |
| **TOTALS** | **$320,437** |
| Federal Share | $288,393 |
| Non-Federal Share | $32,098 |
| State | $16,022 |
| Sponsor | $16,022 |