1
ANDREW JANZ (SBN 287672)
Fresno City Attorney
andrew.janz@fresno.gov
CITY OF FRESNO
2600 Fresno Street
Fresno, CA 93721
Telephone: (559) 621-7500
Facsimile:  (559) 457-1084
*Attorney for Plaintiff*
CITY OF FRESNO

JONATHAN V. HOLTZMAN (SBN 99795)
jholtzman@publiclawgroup.com
JAMES R. ROSS (SBN 149199)
jross@publiclawgroup.com
RYAN P. McGINLEY-STEMPEL (SBN 296182)
rmcginleystempel@publiclawgroup.com
JAKE D. FREITAS (SBN 341837)
jfreitas@publiclawgroup.com
MARIBEL LOPEZ (SBN 340907)
mlopez@publiclawgroup.com
RENNE PUBLIC LAW GROUP
350 Sansome Street, Suite 300
San Francisco, California 94104
Telephone: (415) 848-7200
Facsimile:  (415) 848-7230
*Attorneys for Plaintiffs*
CITY OF FRESNO; CITY OF EUREKA; CITY OF SOUTH
LAKE TAHOE; COUNTY OF SACRAMENTO; COUNTY OF
MONROE; MONROE COUNTY AIRPORT AUTHORITY;
COUNTY OF SAN DIEGO, COUNTY OF MARIN, CITY OF
ALAMEDA, CITY OF REDWOOD CITY

YIBIN SHEN (SBN 233545)
Alameda City Attorney
yshen@alamedaca.gov
CARA SILVER (SBN 136992)
Special Counsel
csilver@alamedaca.gov
DANIEL J. TURNER (SBN 336499)
Deputy City Attorney
dturner@alamedaca.gov
2263 Santa Clara Avenue, Rm 280
Alameda, CA 94501
Telephone: (510) 747-4750
*Attorneys for Plaintiff*
CITY OF ALAMEDA

MELISSA C. ALLISON (MA Bar No. 657470)*
mallison@andersonkreiger.com
CHRISTINA S. MARSHALL (MA Bar No. 688348)*
cmarshall@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, Floor 21
Boston, MA 02109
Telephone: (617) 621-6500
*Attorneys for Plaintiffs*
COUNTY OF MONROE
MONROE COUNTY AIRPORT AUTHORITY
* *Appearing pro hac vice*

BRIAN E. WASHINGTON (SBN 146807)
Marin County Counsel
KATE K. STANFORD (SBN 302825)
Deputy County Counsel
kate.stanford@marincounty.gov
EDWARD F. SEARS (SBN 297775)
Deputy County Counsel
ned.sears@marincounty.gov
OFFICE OF THE COUNTY COUNSEL
COUNTY OF MARIN
3501 Civic Center Drive, Room 275
San Rafael, CA 94903
Telephone:  (415) 473-6117
Facsimile:  (415) 473-3796
*Attorneys for Plaintiff*
COUNTY OF MARIN

LYNDSEY OLSON (MN Lic. #0332288)*
Saint Paul City Attorney
Lyndsey.olsen@ci.stpaul.mn.us
KELSEY MCELVEEN (MN Lic. #0396744)*
Assistant City Attorney
Kelsey.McElveen@ci.stpaul.mn.us
SAINT PAUL CITY ATTORNEY'S OFFICE
400 City Hall and Courthouse
15 Kellogg Boulevard West
Saint Paul, Minnesota 55102
Telephone: (651) 266-8710
Facsimile:  (651) 298-5619
*Attorneys for Plaintiff*
CITY OF SAINT PAUL
* *Appearing pro hac vice*

RENNE PUBLIC LAW GROUP
Attorneys at Law

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CITY OF FRESNO; CITY OF EUREKA; CITY OF SOUTH LAKE TAHOE; CITY OF SAINT PAUL; COUNTY OF SACRAMENTO; COUNTY OF MONROE; MONROE COUNTY AIRPORT AUTHORITY; COUNTY OF SAN DIEGO, COUNTY OF MARIN; CITY OF ALAMEDA; CITY OF REDWOOD CITY,

     Plaintiffs,

v.

SCOTT TURNER in his official capacity as Secretary of the U.S. Department of Housing and Urban Development; the U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; SEAN DUFFY in his official capacity as Secretary of the U.S. Department of Transportation; the U.S. DEPARTMENT OF TRANSPORTATION; MARCUS J. MOLINARO in his official capacity as the Administrator of the Federal Transit Administration ; the FEDERAL TRANSIT ADMINISTRATION; GLORIA M. SHEPHERD in her official capacity as the Executive Director of the Federal Highway Administration; the FEDERAL HIGHWAY ADMINISTRATION; BRYAN BEDFORD in his official capacity as the Administration of the Federal Aviation Administration; the FEDERAL AVIATION ADMINISTRATION; ROBERT F. KENNEDY, JR. in his official capacity as Secretary of the U.S. Department of Health and Human Services; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; LEE ZELDIN in his official capacity as Administrator of the Environmental Protection Agency; and the U.S. ENVIRONMENTAL PROTECTION AGENCY,

    Defendants.

Case No.: 3:25-cv-07070-RS

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Complaint Filed: August 20, 2025
FAC Filed: September 8, 2025

Hon. Richard Seeborg

Hearing Date:   September 23, 2025
Hearing Time:   1:30 p.m.
Location:      Zoom Videoconference

RENNE PUBLIC LAW GROUP
Attorneys at Law

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ..................................................................................................1

II.   ARGUMENT ........................................................................................................1

    A.    Defendants Fail to Grasp the Challenged Unlawful Action and the Relief Requested .......................................................................................................1

    B.    This Court Has Jurisdiction to Review the Lawfulness of Defendants' Grant Conditions ........................................................................................3

        1.    This Court Can Enjoin the DOT and FAA from Imposing the Unlawful Grant Conditions .................................................................3

        2.    The Tucker Act Does Not Prevent This Court from Setting Aside the Unlawful Agency Directives at Issue ....................................5

    C.    Plaintiffs Are Likely to Prevail on the Merits of Their Claims.....................9

        1.    Plaintiffs' Constitutional Claims Are Likely to Succeed .................9

            a.    The Federal Grant Conditions are unconstitutionally vague. ..............9

            b.    The Federal Grant Conditions violate the Separation of Powers. .....................................................................................13

            c.    The Federal Grant Conditions violate the Spending Clause.............15

            d.    The Immigration Enforcement Conditions violate the Tenth Amendment..............................................................................16

        2.    Plaintiffs' APA Claims Are Likely to Succeed...............................17

            a.    The federal agency actions at issue are "final agency action" reviewable under the APA. ................................17

            b.    Defendants' unlawful grant conditions are not committed to agency discretion by law..........................................18

            c.    The Federal Grant Conditions are in excess of statutory jurisdiction. ...................................................................19

            d.    The Federal Grant Conditions are arbitrary and capricious................21

    D.    Injunctive Relief Is Necessary to Prevent Irreparable Harm to Plaintiffs...................22

    E.    The Equities Weigh in Plaintiffs' Favor .....................................................23

    F.    Plaintiffs Seek an Appropriately Tailored Prohibitory Preliminary Injunction ...................................................................................................24

    G.    A Preliminary Injunction Serves the Public Interest; a Bond or Stay Does Not...........................................................................................................24

III.   CONCLUSION..................................................................................................25

RENNE PUBLIC LAW GROUP
Attorneys at Law

PLAINTIFFS' REPLY ISO MOTION FOR PRELIMINARY INJUNCTION – CASE NO. 3:25-cv-07070-RS

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*,
  75 F.4th 760 (7th Cir. 2023) ...................................................................................................15

*American Assoc. of Physics Teachers, Inc. v. Nat'l Science Foundation*,
  No. 25-cv-1923 (JMC), 2025 WL 2615054 (D.D.C. Sept. 10, 2025) ......................................7, 8, 9

*Ariz. Dream Act Coal. v. Brewer*,
  757 F.3d 1053 (9th Cir. 2014) ............................................................................................23, 24

*Biden v. Nebraska*,
  600 U.S. 477 (2023)...................................................................................................................21

*Biden v. Texas*,
  597 U.S. 785 (2022)...................................................................................................................17

*Bostock v. Clayton Cnty., Georgia*,
  590 U.S. 644 (2020)...................................................................................................................15

*California v. U.S. Dep't of Transp.*,
  No. 25-cv-000208-JJM-PAS, --- F. Supp. 3d ---, 2025 WL 1711531 (D.R.I. June 19, 2025).....4, 25

*City & Cnty. of San Francisco v. Trump*,
  897 F.3d 1225 (9th Cir. 2018) ................................................................................13, 14, 20

*City of Chicago v. Morales*,
  527 U.S. 41 (1999)....................................................................................................................11

*City of Los Angeles v. Barr*,
  941 F.3d 931 (9th Cir. 2019) ...................................................................................................14

*Climate United Fund v. Citibank, N.A.*,
  --- F.4th ---, 2025 WL 2502881 (D.C. Cir. Sept. 2, 2025).......................................................8, 9

*Clinton v. City of New York*,
  524 U.S. 417 (1998)...................................................................................................................15

*Cnty. of Santa Clara v. Trump*,
  250 F. Supp. 3d 497 (N.D. Cal. 2017) ................................................................................12, 16

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
  321 F.3d 878 (9th Cir. 2003) ...................................................................................................25

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
  603 U.S. 799 (2024)...................................................................................................................17

*Dalton v. Specter*,
  511 U.S. 462 (1994)...................................................................................13, 14, 20

RENNE PUBLIC LAW GROUP
Attorneys at Law

-ii-

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019) ..................................................................................................19, 22

*Department of Education v. California*,
    145 S. Ct. 966 (2025) ...............................................................................................6

*F.E.R.C. v. Mississippi*,
    456 U.S. 742 (1982) ..................................................................................................16

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*,
    82 F.4th 664 (9th Cir. 2023) ....................................................................................24

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010) ..................................................................................................19

*Gay Men's Health Crisis v. Sullivan*,
    792 F. Supp. 278 (S.D.N.Y. 1992) ........................................................................9, 10

*Gilmore v. Wells Fargo Bank, N.A.*,
    No. C 14-2389 CW, 2014 WL 3749984 (N.D. Cal. July 29, 2014) .......................25

*Grimm v. Gloucester Cnty. Sch. Bd.*,
    972 F.3d 586 (4th Cir. 2020) ...................................................................................15

*Hernandez v. Sessions*,
    872 F.3d 976 (9th Cir. 2017) ...................................................................................23

*Jajati v. U.S. Customs & Border Prot.*,
    102 F.4th 1011 (9th Cir. 2024) ................................................................................19

*Johnson v. United States*,
    576 U.S. 591 (2015) ..................................................................................................10

*Kidwell v. Dep't of Army, Bd. for Correction of Military Records*,
    56 F.3d 279 (D.C. Cir. 1995) ...................................................................................6

*King County v. Turner*,
    --- F. Supp. 3d ---, 2025 WL 1582368 (W.D. Wash. June 3, 2025) ....................... *passim*

*Latif v. Holder*,
    686 F.3d 1122 (9th Cir. 2012) .................................................................................4

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ..................................................................................................18

*Martin Luther King, Jr. Cnty. v. Turner*,
    No. 2:25-CV-814, 2025 WL 2322763 (W.D. Wash. Aug. 12, 2025) ......................15

RENNE PUBLIC LAW GROUP
Attorneys at Law

-iii-

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) .................................................................................................23

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983).................................................................................................................22

*Murphy Co. v. Biden*,
   65 F.4th 1122 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1111 (2024)..................................14

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*,
   767 F. Supp. 3d 243 (D. Md.), *opinion clarified*, 769 F. Supp. 3d 465 (D. Md. 2025)............2, 9, 10

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
   567 U.S. 519 (2012)...............................................................................................................17

*National Endowment for the Arts v. Finley*,
   524 U.S. 569 (1998)...............................................................................................................13

*National Institutes of Health v. American Public Health Association*,
   145 S. Ct. 2658 (2025)....................................................................................................6, 7, 25

*Newsom v. Trump*,
   141 F.4th 1032 (9th Cir. 2025) ..............................................................................................14

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004).................................................................................................................18

*Ohio v. Env't Prot. Agency*,
   603 U.S. 279 (2024)...............................................................................................................22

*President & Fellows of Harvard Coll. v. United States Dep't of Health & Hum. Servs.*,
   --- F. Supp. 3d ----, 2025 WL 2528380 (D. Mass. Sept. 3, 2025) ........................... *passim*

*Printz v. United States*,
   521 U.S. 898 (1997)...............................................................................................................16

*Roe v. Critchfield*,
   137 F.4th 912 (9th Cir. 2025) ................................................................................................15

*San Francisco A.I.D.S. Found. v. Trump*,
   --- F.Supp.3d ----, 2025 WL 1621636 (N.D. Cal. June 9, 2025) .........................10, 14, 20

*San Francisco Unified Sch. Dist. v. AmeriCorps*,
   --- F.Supp.3d ----, 2025 WL 1713360 (N.D. Cal. June 18, 2025) ..............................10, 25

*San Francisco Unified Sch. Dist. v. AmeriCorps*,
   No. 25-cv-02425-EMC, 2025 WL 1180729 (N.D. Cal. Apr. 23, 2025)................................5, 19, 25

RENNE PUBLIC LAW GROUP
Attorneys at Law

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Sierra Club v. Glickman*,
  156 F.3d 606 (5th Cir. 1998) ...................................................................................................19

*Sierra Club v. Trump*,
  929 F.3d 670 (9th Cir. 2019) ...................................................................................................14

*State of N.Y. v. U.S. Dep't of Just.*,
  No. 1:25-CV-00345-MSM-PAS, 2025 WL 2618023 (D.R.I. Sept. 10, 2025) ........................17

*United Aeronautical Corp. v. U.S. Air Force*,
  80 F.4th 1017 (9th Cir. 2023) ...................................................................................................5

*United States Conference of Catholic Bishops v. U.S. Dep't of State*,
  770 F. Supp. 3d 155 (D.D.C. 2025) ...........................................................................................8

*United States v. California*,
  921 F.3d 865 (9th Cir. 2019) ...................................................................................................12

*Washington v. Trump*,
  768 F. Supp. 3d 1239 (W.D. Wash. 2025)................................................................................13

*Webster v. Doe*,
  486 U.S. 592 (1988) .................................................................................................................19

*West Virginia v. EPA*,
  597 U.S. 697 (2022) .................................................................................................................21

*Whitman v. Am. Trucking Associations*,
  531 U.S. 457 (2001) .................................................................................................................20

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952).............................................................................................................1, 12

**Statutes**

5 U.S.C. § 553(a)(2) ......................................................................................................................22

5 U.S.C. § 706(2) ..........................................................................................................................18

5 U.S.C. § 706(2)(a-c) .....................................................................................................................7

23 U.S.C § 24112 ..........................................................................................................................19

42 U.S.C. § 254b ...........................................................................................................................19

42 U.S.C. § 254b(k)(1) ..................................................................................................................20

42 U.S.C. § 300a-6.........................................................................................................................15

RENNE PUBLIC LAW GROUP
Attorneys at Law

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

42 U.S.C. § 300ff-15(a) ................................................................................................20

42 U.S.C. § 300ff-15(b) ................................................................................................20

42 U.S.C. §§ 5303–5 .....................................................................................................19

42 U.S.C. § 9604(k) .......................................................................................................19

42 U.S.C. § 11372 ..........................................................................................................19

42 U.S.C. § 11374 ..........................................................................................................19

42 U.S.C. § 11375 ..........................................................................................................19

42 U.S.C. § 12475 ..........................................................................................................19

42 U.S.C. § 12476 ..........................................................................................................19

42 U.S.C. § 12742 ..........................................................................................................19

42 U.S.C. § 12744 ..........................................................................................................19

42 U.S.C. §§ 12903(d)(1)–(6) .......................................................................................19

49 U.S.C. § 5301 ............................................................................................................20

49 U.S.C. § 46110(c) .......................................................................................................4

49 U.S.C. § 47106 ..........................................................................................................19

49 U.S.C. § 47107 ..........................................................................................................20

49 U.S.C. § 47107(g)(1) ................................................................................................21

49 U.S.C. § 47108 ..........................................................................................................20

**Other Authorities**

24 C.F.R. § 1.4(b)(6)(ii) ..................................................................................................3

24 C.F.R. § 10.1 .............................................................................................................22

24 C.F.R. § l.4(b)(6)(i) ....................................................................................................3

49 C.F.R. § 21.5(b)(7) .....................................................................................................3

RENNE PUBLIC LAW GROUP
Attorneys at Law

PLAINTIFFS' REPLY ISO MOTION FOR PRELIMINARY INJUNCTION – CASE NO. 3:25-cv-07070-RS

## I.    INTRODUCTION

Plaintiffs submit this reply in further support of their motion for a preliminary injunction.  Absent such relief, the existing temporary restraining order (Dkt. 28, "TRO") will expire, leaving Plaintiffs exposed to the very irreparable harms the TRO was designed to prevent.

Defendants' opposition fails to meaningfully engage with the agency actions Plaintiffs challenge or the relief Plaintiffs seek.  Rather than address the lawfulness of the internal agency directives that impose the new and unauthorized Federal Grant Conditions (or, for that matter, the conditions themselves), Defendants attempt to reframe this dispute as a contractual disagreement over individual grant agreements.  That framing is incorrect.  Plaintiffs do not seek damages or specific performance of any particular grant contract; they seek equitable relief prohibiting Defendants from enforcing unlawful and ambiguous conditions on the federal grants awarded to Plaintiffs while this case proceeds.

Neither Defendants' jurisdictional arguments nor their arguments on the merits undermine Plaintiffs' showing that they are likely to prevail.  The challenged conditions violate the Constitution and the Administrative Procedure Act ("APA") by converting congressionally appropriated funds into a tool for advancing the administration's efforts to rewrite federal spending and anti-discrimination law by executive fiat.  Defendants' unpersuasive effort to find statutory authority for these conditions reveals that they rely on a seemingly boundless conception of Article II power that runs headlong into Justice Jackson's evergreen warning more than 70 years ago:

> With all its defects, delays and inconveniences, men have discovered no technique for long preserving free government except that the Executive be under the law, and that the law be made by parliamentary deliberations.
>
> Such institutions may be destined to pass away.  But it is the duty of the Court to be last, not first, to give them up.

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) (Jackson, J., concurring).

Because Defendants' opposition confirms rather than cures the unlawfulness of the challenged agency actions, and because Plaintiffs continue to suffer ongoing irreparable harm, this Court should issue a preliminary injunction maintaining the status quo pending final judgment.

## II.    ARGUMENT

### A.    Defendants Fail to Grasp the Challenged Unlawful Action and the Relief Requested

Defendants argue, throughout their opposition, that Plaintiffs' challenge is "fundamentally a

-1-

RENNE PUBLIC LAW GROUP
Attorneys at Law

contractual dispute" and complain that "this is not a challenge to a specific Notice of Funding Opportunity." Dkt. at 10:14–15, 30:15.  These arguments reveal Defendants' misunderstanding of the agency actions Plaintiffs' challenge and the relief they seek.  Although the challenged agency action affects individual grant agreements, and Plaintiffs have identified numerous specific Notice of Funding Opportunities ("NOFO") and grant agreements in their supporting declarations and the First Amended Complaint ("FAC"), Plaintiffs' challenge is not to any single grant agreement because this action is fundamentally *not* a contractual dispute.  Plaintiffs do not seek to enforce contractual rights or compel payment by the government, as any ruling on a particular grant agreement would not prevent Defendants from imposing the unlawful conditions on Plaintiffs in the future.  This point is squarely demonstrated by several new grant agreements, which include the challenged conditions, that Plaintiffs have received since filing the FAC.[1]  Rather, Plaintiffs seek prohibitory injunctive relief and ultimately an order setting aside the internal agency directives to impose the new, unauthorized, and unlawful conditions on federal grants.  The preliminary relief requested, an order enjoining Defendants from imposing or enforcing the Federal Grant Conditions or any materially similar terms or conditions to any federal funds received by or awarded to Plaintiffs, is necessary to prevent irreparable harm while Plaintiffs' challenges to the internal agency directives are adjudicated.

Similarly, Defendants assert throughout their opposition that the conditions "generally require them to comply with otherwise applicable federal law." Dkt. 37:9–10.  This is another misunderstanding of Plaintiffs' dispute.  Plaintiffs do not contend that requiring grant recipients to comply with existing federal law is unlawful.  Despite Defendants' claims to the contrary, the challenged conditions, although vague, clearly implicate a broader range of conduct than covered by applicable federal law.  *See Nat'l*

---

[1] Plaintiffs County of Marin, County of San Diego, City of Alameda, and City of Redwood City joined this litigation on September 8, 2025, after issuance of the temporary restraining order.  See Dkt. 28. Shortly after filing this motion, these Plaintiffs received multiple communications from Defendants imposing compliance deadlines imposing the challenged conditions that would expire before the September 23, 2025 preliminary injunction hearing.  *See* Paran Decl. ¶ 14; Thomas Supp. Decl. ¶ 7; Salmons Supp. Decl. ¶ 7; Stevenson Diaz Supp. Decl. ¶ 12; Ott Supp. Decl. ¶ 6.  Following a meet-and-confer, the parties agreed to extend those deadlines to September 25, 2025.  Plaintiffs appreciate Defendants' counsel's good-faith efforts, allowing this Court to address the merits of Plaintiffs' claims before irreparable harm occurs.  Nonetheless, Defendants' actions reflect a troubling pattern of retaliatory conduct.  *See President & Fellows of Harvard Coll. v. United States Dep't of Health & Hum. Servs.*, --- F. Supp. 3d ----, 2025 WL 2528380, at *21–28 (D. Mass. Sept. 3, 2025).

RENNE PUBLIC LAW GROUP
Attorneys at Law

*Ass'n of Diversity Officers in Higher Educ. v. Trump*, 767 F. Supp. 3d 243, 278 (D. Md.), *opinion clarified*, 769 F. Supp. 3d 465 (D. Md. 2025) ("'equity' is a concept that transcends issues of diversity, inclusion, and accessibility.  It also extends beyond areas addressed by anti-discrimination efforts and civil rights laws").  Defendants' expansive reinterpretation of nondiscrimination law is evident when compared to the prior, long-standing interpretation reflected in their regulations.  Both HUD's and DOT's Title VI regulations expressly permit and, in some instances, require equity and inclusion initiatives.  For instance, both agencies' regulations state they "do[] not prohibit the consideration of race, color, or national origin" to "overcome the consequences" of past discrimination in federal programs, and require recipients to take "affirmative action" to "overcome" such "effects."  49 C.F.R. § 21.5(b)(7); 24 C.F.R. § l.4(b)(6)(i).  Absent past discrimination, recipients "should take affirmative action" to overcome conditions that resulted in "limiting participation by persons of a particular race, color, or national origin."  24 C.F.R. § 1.4(b)(6)(ii); 49 C.F.R. § 21.5(b)(7) (similar).

Furthermore, the record shows that Defendants are enforcing the conditions against Plaintiffs in a manner that exceeds applicable federal law.  *See* Skei Decl. ¶¶ 13–14; Diaz Decl. ¶ 15; Bacher Decl. ¶ 19–20; Thomas Decl. ¶ 11; Thomas Supp. Decl. ¶ 7; *see also* Dkt. 36-24 ("RJN"), Ex. B (Press Release No. 25-059), L (Bondi Letter Feb. 5, 2025), M (Bondi Letter Jul. 29, 2025), P (Duffy Letter), Q (Fernandez Letter).  Defendants' fundamental misunderstanding of the agency actions that Plaintiffs challenge, and the relief they seek, undermines the arguments advanced in their opposition, which fail to meaningfully address the actual legal issues presented.

### B.    This Court Has Jurisdiction to Review the Lawfulness of Defendants' Grant Conditions

Defendants do not dispute that Plaintiffs have standing or that non-APA claims for equitable relief are independently actionable.  *See* Dkt. 36 at 32-35.  Rather, they contend that jurisdiction lies either with the circuit courts or the Court of Federal Claims since Plaintiffs "challenge FAA grant agreements" and "[s]eek the [p]ayment of [f]ederal [g]rants."  Dkt. 40 at 10, 18.  Not so.

#### 1.    This Court Can Enjoin the DOT and FAA from Imposing the Unlawful Grant Conditions

Defendants assert that "there is no subject matter jurisdiction in this Court" over Plaintiffs'

-3-

RENNE PUBLIC LAW GROUP
Attorneys at Law

challenges to "FAA grant agreements" because "Congress has vested exclusive jurisdiction over FAA orders in federal circuit courts." Dkt. 40 at 17-18 (citing 49 U.S.C. § 46110(c)). But they conspicuously fail to address the plain language of section 46110—which only applies to "order[s]" issued "under" certain statutes—and the only decision that Plaintiffs are aware of involving how that statute interacts with the unlawful grant conditions. *See California v. U.S. Dep't of Transp.*, No. 25-cv-000208-JJM-PAS, --- F. Supp. 3d ---, 2025 WL 1711531 (D.R.I. June 19, 2025); Dkt. 36 at 29. As that court explained in concluding that it had jurisdiction to issue a preliminary injunction preventing the DOT and Secretary Duffy from imposing the Immigration Enforcement Condition on federal transportation grants:

> Defendants contend that some of the States' claims may be subject to statutory provisions that confer exclusive jurisdiction on federal appellate courts to hear challenges to, for example, orders issued by the Federal Aviation Administration. The statutes cited specify that federal appellate courts have exclusive jurisdiction only for a narrow set of challenges to an "order" issued "under" the specific statutes listed. These jurisdictional statutes do not apply here because the U.S. DOT is not exercising its authority "under" the specific statutes listed in these jurisdictional provisions. Rather, it is the Duffy Directive issued by the U.S. DOT that the States challenge, and thus jurisdiction is proper in the district court. *Loan Syndications & Trading Ass'n v. S.E.C.*, 818 F.3d 716, 722 (D.C. Cir. 2016).

*Id.* at *1; *compare with* Defs' Opp'n to Pltfs' Mot. for Prelim. Injunction, No. 25-cv-000208-JJM-PAS, 2025 WL 2019188, at *6-7 (D.R.I. June 5, 2025) (relying on 49 U.S.C. § 46110 and same authority as Defendants here). Defendants' interpretation would nullify those limitations by applying this jurisdictional provision to any challenge to a broader DOT action, despite Congress's intentional decision to bestow federal appellate jurisdiction on only specific agency orders, not all of them.

Indeed, Defendants also fail to address the well-established exception to section 46110 for claims that "'involve agencies not covered by § 46110.'" Dkt. 36 at 29 (quoting *Magassa v. Mayorkas*, 52 F.4th 1156, 1165 (9th Cir. 2022)). They appear to contend that Plaintiffs' claims are "inescapably intertwined with a review of the procedures and merits surrounding [the agency's] order." Dkt. 40 at 18 (quoting *Latif v. Holder*, 686 F.3d 1122, 1128 (9th Cir. 2012)). But that rule applies to "damages claims." *Latif*, 686 F.3d at 1128. And regardless, *Latif* recognized that when "[p]laintiffs raise broad constitutional claims that do not require the review of the merits of their individual DHS TRIP grievances," and "any remedy requires judicial review of orders issued both by" agencies named in section 46110 and agencies that are not, then the circuit courts "lack jurisdiction under § 46110" and jurisdiction resides in the district courts. *See id.* at 1128-29.

RENNE PUBLIC LAW GROUP
Attorneys at Law

### 2. The Tucker Act Does Not Prevent This Court from Setting Aside the Unlawful Agency Directives at Issue

Again, Defendants argue that the Tucker Act divests this Court of jurisdiction over some—but concededly not all (*see* Dkt. 40 at 18 n.3)—of Plaintiffs' claims.  Dkt. 40 at 18-22.  Defendants continue to misunderstand the nature of Plaintiffs' claims, which do not challenge grant terminations, do not advance a claim for breaching preexisting grant agreements, and are not "seeking to enforce an obligation of the United States to pay money pursuant to federal grant[]" agreements.  Dkt. 40 at 10, 20. Rather, Plaintiffs' claims are instead concerned with preventing Defendants from relying on unlawful agency guidance to foist impermissible and ambiguous grant conditions onto Plaintiffs.  The fact that Plaintiffs' harm flows in part from possibly having to forego funds to which they would otherwise be entitled without such unlawful conditions does not transform this case into one founded on contract.

Indeed, "whether a case is, in some sense, 'about the money' is not necessarily dispositive of the issue of jurisdiction."  *President and Fellows of Harvard College*, 2025 WL 2528380, at *13-14.  "[T]he determinative jurisdictional question is '[w]hether [the Plaintiffs'] claim is 'at its essence' contractual,' which 'depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate).'"  *Id.* (quoting *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106 (D.C. Cir. 2022); *accord United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1025-26 (9th Cir. 2023).  Here, the source of the rights upon which Plaintiffs base their claims and the relief sought make clear that this case belongs in this Court, not the Court of Federal Claims.

*First*, the Constitution and the APA are the source of Plaintiffs' rights, not the grant agreements that contain the unlawful conditions.  Plaintiffs seek to vindicate their rights to participate in congressionally authorized grant programs pursuant to the eligibility criteria Congress authorized, free from unlawful conditions that violate the separation of powers, the Spending Clause, the Fifth Amendment, the Tenth Amendment, and the APA.  *See San Francisco Unified Sch. Dist. v. AmeriCorps* ("*SFUSD*"), No. 25-cv-02425-EMC, 2025 WL 1180729, at *7-8 (N.D. Cal. Apr. 23, 2025) ("The source of Plaintiffs' claims does not lie in any contractual provision of their grants.  Instead, the sources of their rights claimed reside in statute and the Constitution, not the contractual obligations of the agency."); *President and Fellows of Harvard College*, 2025 WL 2528380, at *14 n.11 ("the rights at issue are constitutional and do not require the Court to consider the terms of the grants"); *King County v. Turner*, -

RENNE PUBLIC LAW GROUP
Attorneys at Law

-- F. Supp. 3d ---, 2025 WL 1582368, at *9 (W.D. Wash. June 3, 2025) ("the source of Plaintiffs' rights resides in statutes and the Constitution, not in any contractual provisions in the Grant Agreements").

*Second*, Plaintiffs seek only equitable relief, not the payment of money damages. *See* Dkt. 35 at 106. A request for equitable relief does not become subject to the Tucker Act merely because "success on the merits may obligate the United States to pay the complainant." *Kidwell v. Dep't of Army, Bd. for Correction of Military Records*, 56 F.3d 279, 284 (D.C. Cir. 1995); *see also Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (per curiam) ("True, a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds" (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 909-10 (1988)); *President and Fellows of Harvard College*, 2025 WL 2528380, at *13 ("Plaintiffs seek relief beyond enforcement of an ' 'obligation to pay money' pursuant to . . . grants'" (quoting *National Institutes of Health v. American Public Health Association*, 145 S. Ct. 2658, 2659 (2025) ("*NIH*")); *King County*, 2025 WL 1582368, at *9 ("Contrary to what Defendants argue, Plaintiffs are not seeking an order from this Court directing payment of the grant funds to them. Instead, the relief Plaintiffs seek is an order from this Court *declaring* that the *new funding conditions* are unlawful and *enjoining* Defendants from imposing them in the Grant Agreements."); *id.* at *12 ("while it is true that a preliminary injunction may ultimately result in payment by the government to Plaintiffs, the injunction, itself, will not direct such payment").

Unsurprisingly, Defendants invoke the "multiple recent occasions" that the "Supreme Court has emphasized the preclusive scope of the Tucker Act in litigation brought by recipients of federal grants." Dkt. 40 at 19 (citing *California*, 145 S. Ct. 966 and *NIH*, 145 S. Ct. 2658). Plaintiffs have already explained why *California* is distinguishable and *NIH* supports this Court's jurisdiction here. *See* Dkt. 36 at 29-32. Indeed, "Plaintiffs frequently seek vacatur of internal agency guidance on arbitrary-and-capricious grounds in district court or directly in the D.C. Circuit." *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring). "That the agency guidance discusses internal policies related to grants does not transform a challenge to that guidance into a claim 'founded … upon' contract that only the CFC can hear." *Id.* (quoting 28 U.S.C. § 1491(a)(1)).

Defendants' response is twofold, but neither persuades. First, they appear to contend Justice Barrett's explanation that "APA challenges to the guidance belong in district court" is entitled to less

RENNE PUBLIC LAW GROUP
Attorneys at Law

deference because it reflected her "preliminary judgment."  Dkt. 40 at 22 (quoting *NIH*, 145 S. Ct. at 2662 (Barrett, J., concurring)).  But that logic proves far too much and would call into question all "decisions regarding interim relief" like *California* and *NIH*.  *Cf. NIH*, 145 S. Ct. at 2663-64 (Gorsuch, J., concurring and dissenting in part) ("even probabilistic holdings—such as *California*'s top-line conclusion that the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA—must inform how a lower court proceeds" (cleaned up)).

Second, Defendants contend that Plaintiffs "do not challenge any 'internal guidance documents describing [agency] priorities.'"  Dkt. 40 at 22 (quoting *NIH*, 145 S. Ct. at 2661).  But that is precisely what Plaintiffs seek in conjunction with their APA claims.  *See* Dkt. 35 ¶¶ 418, 422, 430, 447 & Prayer for Relief; 5 U.S.C. § 706(2)(a-c) (permitting a court to "hold unlawful and set aside agency action" found to be arbitrary and capricious, contrary to constitutional right, power, privilege, or immunity, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right).  Contrary to Defendants' contention, Plaintiffs have described in in detail the specific final agency actions taken to implement the challenged conditions, including the Duffy Letter (RJN, Ex. P), the Fernandez Letter (*id.*, Ex. Q), and modifications to the General Administrative, National, and Departmental Policy Requirements and Terms for HUD's Financial Assistance Programs (*id.*, Ex. A), FTA's Master Agreement (*id.*, Ex. D), FWHA's Competitive Grant Program General Terms and Conditions (id., Ex. E), FAA's Airport Improvement Program Grant Assurances (*id.*, Ex. G), HHS's Grants Policy Statements (*id.*, Ex. H, U, & V), and EPA's General Terms and Conditions (*id.*, Ex. Z).

In the weeks since the *NIH* decision, various courts—including this Court—have recognized that the Tucker Act does not bar claims for prospective relief like those asserted by Plaintiffs here.  *See* Dkt. 28; *President and Fellows of Harvard College*, 2025 WL 2528380, at *10-14 ("In light of the Supreme Court's per curiam decision in *APHA* [*NIH*], the Court holds that it has jurisdiction over Plaintiffs' arbitrary and capricious claims that challenge the Freeze Orders, because it views those orders, as discussed further *infra*, as agency guidance documents that set the federal government's policy moving forward as to grant funding at Harvard."); *American Assoc. of Physics Teachers, Inc. v. Nat'l Science Foundation*, No. 25-cv-1923 (JMC), 2025 WL 2615054, at *12 (D.D.C. Sept. 10, 2025) (recognizing that while court likely lacked jurisdiction "to order the reinstatement of the already-

terminated grant relationships," it "likely does have jurisdiction over Plaintiffs' other claims at issue here, namely:  (1) their APA claims challenging prospective agency action and (2) their constitutional claims"); *cf. King County v. Turner*, 2025 WL 1582368, at *12 (explaining why *California* does not apply to new funding conditions).[2]  Indeed, even Defendants concede they "are not arguing that challenges to purely future contracts that do not seek the actual payment of grant awards on Plaintiffs' preferred terms (including, for example, challenges to Notices of Funding Opportunities) would be exclusively committed to the Court of Federal Claims."  Dkt. 40 at 18 n.3.

Nevertheless, citing *Climate United Fund v. Citibank, N.A.*, --- F.4th ---, 2025 WL 2502881 (D.C. Cir. Sept. 2, 2025), Defendants contend that "Plaintiffs' artful pleading cannot overcome the Tucker Act's clear jurisdictional bar."  *See* Dkt. 40 at 20-21.  But *Citibank* is of little help to Defendants here.  In *Citibank*, the plaintiffs alleged that the EPA's termination of their grant agreements violated Office of Management and Budget regulations because the agency "relied on a basis for termination not set forth in the grant agreements, in violation of 2 C.F.R. § 200.340(a)(4)"; "failed to provide written notice of termination as required by 2 C.F.R. § 200.341(a)"; and was arbitrary and capricious under the APA. *Citibank*, 2025 WL 2502881, at *5, *7.  A divided panel concluded that these claims were "essentially contractual" because the "the grantees' [termination] claim turn[ed] on the government's rights under the agreements—a question of contract interpretation that the parties fiercely dispute[d]"; the notice claim "'could be phrased' as a claim that the government stopped performing on the contract without sufficient warning"; "in substance, the grantees are seeking specific performance of their agreements with the government"; and the "APA's substantive bar on arbitrary and capricious action does not give the grantees an independent right to specific performance of their grant agreements." *Id.* at *5-7.[3]  Here, by contrast, Plaintiffs are not challenging grant terminations based on a purported breach of the grant agreements.  Instead, Plaintiffs are challenging the lawfulness of the administration's insistence of

---

[2] *American Association of Physics Teachers* proceeded to conclude that the plaintiffs were not likely to succeed on the merits of their claims for a variety of reasons that—as explained in more detail below— do not apply here.  *See Am. Assoc. of Physics Teachers*, 2025 WL 2615054, at *15-19.

[3] The other case cited by Defendants regarding government grants likewise dealt with efforts to reinstate grant agreements that were terminated.  *See United States Conference of Catholic Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155, 164 (D.D.C. 2025) ("the Conference asks the Court to order the Government to cancel the termination, pay money due, and reinstate the contracts").

RENNE PUBLIC LAW GROUP
Attorneys at Law

imposing unlawful and ambiguous conditions on future grant agreements.  Plaintiffs' claims stem from provisions of the Constitution and statute, not their grant agreements.

Finally, even where the Tucker Act applies, it only divests district courts of jurisdiction over claims under the APA or the APA's waiver of sovereign immunity.  It does not divest district courts of jurisdiction over claims for equitable relief to enjoin federal officers from violating the law.  *See* Dkt. 36 at 33-35; *Citibank*, 2025 WL 2502881, at *10 (recognizing that "the district court had jurisdiction over this claim" that the "EPA violated the 'Separation of Powers' by not enforcing the Inflation Reduction Act"); *President and Fellows of Harvard College*, 2025 WL 2528380, at *13-14 ("Given the nature of the First Amendment claims (purely constitutional) and the Title VI claims (statutory), these claims do not belong in the Court of Federal Claims"); *Am. Assoc. of Physics Teachers, Inc.*, 2025 WL 2615054, at *13 ("The Court also has jurisdiction to hear Plaintiffs' constitutional claims challenging the Change in Priorities Decision and Mass Termination Action under the separation of powers, procedural due process, and void for vagueness doctrines").

For all of these reasons, this Court has jurisdiction to decide Plaintiffs' claims on the merits.

## C.      Plaintiffs Are Likely to Prevail on the Merits of Their Claims

### 1.      Plaintiffs' Constitutional Claims Are Likely to Succeed

#### a.      The Federal Grant Conditions are unconstitutionally vague.

Defendants' opposition fails to refute Plaintiffs' showing that the challenged funding conditions are unconstitutionally vague.  First, Defendants fail to meaningfully address Plaintiffs' vagueness claim under the spending clause.  *See infra*, I(C)(1)(c).  Second, Defendants argue that the Due Process Clause's vagueness doctrine has no application in a case about federal funding conditions.  *See* Dkt. 40 at 23.  This assertion is incorrect and lacks support in case law.  In fact, courts have applied the Due Process Clause's vagueness doctrine to federal grant terms in several cases.  *See e.g.*, *Gay Men's Health Crisis v. Sullivan*, 792 F. Supp. 278 at 292–304 (S.D.N.Y. 1992); *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 767 F. Supp. 3d at 277.  In *Gay Men's Health Crisis v. Sullivan*, plaintiffs challenged the constitutionality of certain guidelines applicable to Centers for Disease Control (the "CDC") grants for educational materials related to AIDS.  *Gay Men's Health Crisis*, 792 F. Supp. at 279.  The challenged grant term provided that materials regarding HIV transmission should not be "offensive to a majority of

-9-

RENNE PUBLIC LAW GROUP
Attorneys at Law

the intended audience or to a majority of adults outside the intended audience." *Id*. at 281. The Court found, under the Fifth Amendment, "the grant terms are too vague to apply in a non-arbitrary manner," recipients were "forced to censor themselves and concentrate on proposals that will pass the 'offensiveness' test with room to spare, and that the terms "have no core meaning that can reasonably be understood by a person of ordinary intelligence." *Id*. at 302–304. The challenged grant conditions here suffer from the same infirmities. *See* Dkt. 36 at 35–39; *see also Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 767 F. Supp. 3d at 278 ("The meaning of the word 'equity' is unclear to a degree that risks arbitrary and discriminatory enforcement, particularly absent any definitions or other guidance to clarify the meaning of the term"); *San Francisco Unified Sch. Dist. v. AmeriCorps*, --- F.Supp.3d ----, 2025 WL 1713360, at *22 (N.D. Cal. June 18, 2025); *San Francisco A.I.D.S. Found. v. Trump*, --- F.Supp.3d ----, 2025 WL 1621636 at *21 (N.D. Cal. June 9, 2025).

Third, Defendants argue that speculation about possible vagueness in hypothetical situations does not support Plaintiffs' facial vagueness challenge. *See* Dkt. 40 at 23. However, the barrier to a facial challenge for vagueness is not as absolute as Defendants contend. The Supreme Court in *Johnson v. United States*, clarified that "although statements in some of our opinions could be read to suggest otherwise, our holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." 576 U.S. 591, 602 (2015).

Nevertheless, Defendants ignore the specific examples Plaintiffs have provided of Defendants' arbitrary and overbroad enforcement of the challenged conditions.[4] For example, on August 18, 2025, HUD notified Fresno that it "question[ed] the accuracy of the City of Fresno's certification that the Community Development Block Grant (CDBG) funds described in its Fiscal Year 2025 Consolidated Plan/Action Plan (the Plan) will be administered in conformity with applicable laws, including Executive Orders" and that the plan would not be approved unless the City removed references to "equity," "environmental justice," and "transgender," and certified compliance with EO 14168. Skei Decl. ¶¶ 13–14. The only justification HUD provided for this notice were the following statements, which it asserted

---

[4] Plaintiffs allege that the challenged grant conditions are unconstitutionally vague on their face. Accordingly, evidence of how the regulatory scheme has been implemented is relevant, but not necessary to establish Plaintiffs' facial vagueness claim. *See Gay Men's Health Crisis*, 792 F. Supp. at 301.

RENNE PUBLIC LAW GROUP
Attorneys at Law

were not "consistent" with the cited executive orders:

> "The DRIVE Plan has goals to improve housing affordability and stability, reduce **racial** and economic isolation and support **environmental justice** and sustainability, most of which are addressed in the strategic plan."

> "Emergency shelter for **all genders and their dependent children** who are fleeing domestic violence."

*Id*. ¶ 13(emphasis added by HUD).  It is not obvious to Plaintiffs, or any person of ordinary intelligence, that having a plan with "goals to improve housing affordability and stability, reduce racial and economic isolation and support environmental justice and sustainability" promotes unlawful DEI activities or that a program that provides emergency shelter "for all genders and their dependent children who are fleeing domestic violence" promotes gender ideology.  Such programs certainly do not violate any existing federal law.  Plaintiffs the City of Redwood City, City of Saint Paul, and the County of Marin have received similar notices from HUD.  Diaz Decl. ¶ 15; Bacher Decl. ¶ 19–20; Thomas Decl. ¶ 11.

Additionally, on September 11, 2025, Plaintiff the County of Marin received an email from the Substance Abuse and Mental Health Services Administration ("SAMHSA") alerting the County that SAMHSA identified "costs and activities related to diversity, equity, and inclusion (DEI)" in the County's Adult Drug Court grant continuation application.  Paran Decl. ¶ 5.  However, the email from SAMHSA did not identify any specific costs or activities.  *Id*.  Additionally, SAMHSA requested that Marin affirm acceptance of the following DEI Certification Statement:

> Recipient acknowledges that SAMHSA funding recipients must not spend SAMHSA funds on Diversity, Equity and Inclusion (DEI) activities.  Recipient certifies that funds will not be spent on DEI activities and acknowledges that doing so will lead to enforcement actions, up to and including termination of the award.

*Id*. ¶ 7.  The "DEI Certification Statement" does not define "DEI activities" or limit such activities to those prohibited by existing discrimination laws.  *Id*.  This arbitrary enforcement, untethered to any specific conduct without a discernible standard, is precisely the type of harm the vagueness doctrine is intended to prevent.  *See City of Chicago v. Morales*, 527 U.S. 41, 71 (1999) (Breyer, J., concurring) ("if every application of the ordinance represents an exercise of unlimited discretion, then the ordinance is invalid in all its applications.")

Defendants' overbroad and arbitrary enforcement of these ambiguous conditions is not "hyperbolic speculation."  It is a demonstrated harm that Plaintiffs are currently suffering.  The record

-11-

RENNE PUBLIC LAW GROUP
Attorneys at Law

here supports both a facial and an as-applied vagueness challenge because it shows (1) that the challenged conditions fail to provide any clear standard of conduct for grant recipients, rendering them unconstitutionally vague in all applications, and (2) that Defendants have applied these conditions to Plaintiffs in a manner that is wholly arbitrary and not grounded in any ascertainable legal requirement, thereby depriving Plaintiffs of fair notice and subjecting them to unpredictable and discriminatory enforcement.

Fourth, Defendants assert that Plaintiffs have failed "to establish a protectable property interest." Dkt. 40 at 24. Not so. *See Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 536 (N.D. Cal. 2017) ("The Counties have a legitimate property interest in federal funds that Congress has already appropriated and that the Counties have accepted."). As already shown above, courts have applied the Due Process Clause's vagueness doctrine to federal grant terms in several cases. The vagueness doctrine necessarily implicates a protected interest because due process entitles every person subject to government restrictions to fair notice of what conduct is prohibited or required. Moreover, the conditions at issue here expose Plaintiffs to potentially severe penalties under the False Claims Act ("FCA") and even criminal prosecution.

Fifth, Defendants argue that Plaintiffs cannot establish a due process vagueness claim because the challenged conditions "simply require compliance with existing federal law." Dkt. 40 at 24–25. As discussed above and in Plaintiffs' Memorandum of Points and Authorities (Dkt. 36 at 40), the challenged conditions do more than require compliance with existing federal law. Even the cherry-picked provisions Defendants cite in their opposition demonstrate that the conditions impose requirements beyond mere compliance with existing law. *See* Dkt. 40 at 24:19-25. The HUD EO Condition providing that "[r]ecipients of Federal Awards must comply with applicable existing and future Executive Orders" does not require compliance with existing federal law because, despite Defendants' assertions otherwise, executive orders are not laws. *Youngstown Sheet & Tube Co.*, 343 U.S. at 589. Additionally, there is no federal law that requires local governments to "cooperate" with the enforcement of federal immigration laws. *United States v. California*, 921 F.3d 865, 889 (9th Cir. 2019) ("Federal law provides states and localities the option, not the requirement, of assisting federal immigration authorities"). Furthermore, simply placing a savings clause, such as "with applicable laws," at the end of a condition does not

-12-

RENNE PUBLIC LAW GROUP
Attorneys at Law

insulate it from judicial review.  *See City & Cnty. of San Francisco v. Trump* (*"San Francisco I"*), 897 F.3d 1225, 1239–1240 (9th Cir. 2018); *Washington v. Trump*, 768 F. Supp. 3d 1239, 1278–79 (W.D. Wash. 2025).

Finally, Defendants, citing *National Endowment for the Arts v. Finley*, 524 U.S. 569 (1998), argue that even though the government uses "opaque" language in its funding conditions, so long as the government "is acting as patron rather than as sovereign, the consequences of imprecision are not constitutionally severe."  *See* Dkt. 40 at 25–26.  However, *Finley* involved a narrow challenge to the National Endowment for the Arts's ("NEA") discretionary decision-making process for awarding selective arts grants based on subjective criteria, including "artistic excellence" and "decency."  *Finley*, 524 U.S. at 572–573.  The Court emphasized that Congress had granted the NEA broad latitude to make individualized, competitive funding decisions and that the challenged statutory language "merely adds some imprecise considerations to an already subjective selection process."  *Id*. at 589–90.

By contrast, the federal grant programs at issue here are not subjective, selective, or discretionary subsidies aimed at promoting the artistic projects of a limited number of applicants.  They are formula or competitive grants designed to support essential public services—such as social services, affordable housing, hospitals, and transportation infrastructure—according to specific, detailed statutory and regulatory criteria.  FAC ¶¶ 54–214; *see also* Dkt. 40-1, Fernandez Decl. ¶¶ 5–13; Dkt. 40-3, Cushing Decl. ¶¶ 3–10; Dkt. 40-6, Baugh Decl. ¶¶ 5, 9–10; Dkt. 40-7, Legier Decl. ¶ 5; Dkt. 40-8, Crocker Decl. ¶¶ 4–5, 9–12.  Congress has defined with precision which entities are eligible to receive funding and the allowable uses of funds, leaving little room for the kind of open-ended, subjective determinations present in *Finley*.  Imposing vague, extra-statutory conditions that threaten to withhold or terminate funding unless local governments remove policy references or certify compliance with ambiguous executive directives under penalty of FCA liability goes far beyond the limited, pre-award discretion upheld in *Finley*.  Defendants' arguments fail to overcome Plaintiffs' showing that their claims that the challenged conditions are unconstitutionally vague under both the Due Process Clause and the Spending Clause are likely to succeed.

   **b.**  **The Federal Grant Conditions violate the Separation of Powers.**

Defendants argue that Plaintiffs' Separation of Powers claim is impermissible under *Dalton v.*

RENNE PUBLIC LAW GROUP
Attorneys at Law

*Specter*, 511 U.S. 462 (1994) because it alleges that Defendants do not have statutory authority to impose conditions on federal grants.  *See* Dkt. 40 at 26.  That is not an accurate summary of Plaintiffs' Separation of Powers claim.  Plaintiffs do not allege that Defendants simply exceed their statutory authority.  Rather, Plaintiffs' claims are based on the executives' unauthorized use of grant funds, which directly impinges on Congress's Article I spending powers.  Plaintiffs' claim that Defendants have converted funds appropriated by Congress for specific grant programs into leverage for the executive branch to pursue unrelated policy goals that Congress has either declined to enact into law or chosen to address differently.  In so doing, Defendants usurp Congress's "power of the purse" and seek to rewrite federal spending and anti-discrimination law by executive fiat.

"Contemporary Ninth Circuit jurisprudence weighs in favor of justiciability by taking an expansive view of the constitutional category of claims highlighted in *Dalton*."  *Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1111 (2024).  The *Dalton* Court made clear that not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution," 511 U.S. at 472, but by no means found that executive action in excess of statutory authority *never* gives rise to a constitutional claim.  *See Murphy Co.*, 65 F.4th at 1130 ("While an action taken by the President in excess of his statutory authority does not necessarily violate the Constitution, specific allegations regarding separation of powers may suffice." (cleaned up)).  The statute at issue in *Dalton* granted the President unreviewable discretion to approve or disapprove base closure packages, and thus, the Court in *Dalton* had no occasion to address constitutional claims challenging actions taken without statutory authority.  In contrast, no such discretionary delegation exists here.  Accordingly, *Dalton* is inapposite.  *See Newsom v. Trump*, 141 F.4th 1032, 1046-47 (9th Cir. 2025) (distinguishing *Dalton* on the grounds that the statute at issue there "authorized unfettered discretion" by the President (cleaned up)); *Sierra Club v. Trump*, 929 F.3d 670, 696–97 (9th Cir. 2019) (holding *Dalton* does not foreclose plaintiffs' claim that the Executive lacks any constitutional authority to reappropriate funds).  The federal spending power is vested exclusively in Congress.  *San Francisco I*, 897 F.3d at 1231; *City of Los Angeles v. Barr*, 941 F.3d 931, 945 (9th Cir. 2019) (agency grant conditions imposed without statutory authority were "ultra vires").  Federal agencies do not have discretion to condition federal grants based on the extra-statutory priorities, and in doing so, change the

RENNE PUBLIC LAW GROUP
Attorneys at Law

purposes Congress has enacted, absent a congressional delegation of such authority.

Moreover, here, the executive branch is attempting to essentially amend existing laws through executive order and changes to internal agency guidance.  For example, the Gender Ideology Conditions attempt to utilize provisions of the Civil Rights Act of 1964 as a means of prohibiting "gender ideology" as defined in Executive Order 14168.  *See* Dkt. 36 at 49–50.  However, no provisions of the Civil Rights Act prohibit the recognition of a non-binary conception of gender.  To the contrary, courts have recognized that transgender individuals are a protected category under provisions of the Civil Rights Act. *See e.g., Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 683 (2020); *Roe v. Critchfield*, 137 F.4th 912, 928 (9th Cir. 2025); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616–17 (4th Cir. 2020); *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 769 (7th Cir. 2023).  Similarly, the Elective Abortion Conditions purport to "enforce" the Hyde Amendment, but go far beyond what that statute requires, prohibiting grantees from using federal grants to "fund or promote elective abortions" in all contexts, extending the restriction beyond the prohibitions of the Hyde Amendment, which says nothing about the "promotion" of abortion and includes exceptions in cases of rape, incest, or where the life of the mother is at risk.  *See* 42 U.S.C. § 300a–6 (and related appropriations provisions).  These conditions impose broader restrictions on recipients than required by existing law.  *See Martin Luther King, Jr. Cnty. v. Turner*, No. 2:25-CV-814, 2025 WL 2322763 at *13 n.9 (W.D. Wash. Aug. 12, 2025).

The Executive cannot "repeal[ ] or amend[ ] parts of duly enacted statutes" after they become law.  *Clinton v. City of New York*, 524 U.S. 417, 439 (1998).  Defendants are not merely misinterpreting these federal statutes.  They are creating prohibitions that go beyond the statutes' text and leveraging congressionally appropriated grant funds—which carry significant FCA liability—to pressure recipients into complying with the administration's policy priorities.  This conduct violates the Separation of Powers by usurping Congress's exclusive lawmaking power as well as its spending authority under Article I of the Constitution.  Allowing such executive overreach would undermine the checks and balances of the Constitution, allowing executive branch officials to bypass the legislative process and essentially enact law through executive fiat.

### c.    The Federal Grant Conditions violate the Spending Clause.

As discussed above, Defendants provide few (if any) meaningful answers to Plaintiffs' argument

-15-

RENNE PUBLIC LAW GROUP
Attorneys at Law

RENNE PUBLIC LAW GROUP
Attorneys at Law

that the ambiguity of the grant conditions renders them infirm under the Spending Clause. *See* Dkt. 36 at 35–39. Instead, Defendants focus on the nexus requirement, arguing that the conditions relate to the overarching federal interest in preventing the expenditure of federal funds on activities that violate the law. *See* Dkt. 40 at 26–28. For starters, as discussed above, the challenged grant conditions require more than compliance with existing federal law. *Supra*, II(C)(1)(a). Furthermore, another court in this District has already found that "there is no nexus between [federal immigration enforcement] and most categories of federal funding, including without limitation funding related to Medicare, Medicaid, transportation, child welfare services, immunization and vaccination programs, and emergency preparedness." *Cnty. of Santa Clara*, 250 F. Supp. 3d at 532. Similarly, prohibitions on DEI, elective abortion, and gender ideology have even less nexus to the categories of federal funding at issue here, which are directed toward essential public health, social services, and transportation infrastructure programs. Nothing in the authorizing statutes of these programs suggests a connection to Defendants' ideological restrictions.

### d. The Immigration Enforcement Conditions violate the Tenth Amendment.

Defendants argue that the immigration conditions do not violate the Tenth Amendment because Plaintiffs may decline to apply for the specific grants to which any offensive conditions are attached. *See* Dkt. 40 at 28. Defendants' argument ignores the constitutional distinction between permissible encouragement and impermissible coercion/commandeering. The immigration conditions at issue do not merely incentivize participation in a federal program; they require Plaintiffs to affirmatively assist in federal law enforcement. The Tenth Amendment prohibits commandeering state and local officials to administer or enforce federal law. *See Printz v. United States*, 521 U.S. 898, 935 (1997).

Defendants' reliance on *F.E.R.C. v. Mississippi*, 456 U.S. 742 (1982), is misplaced. The statute at issue in *F.E.R.C.* required state regulatory agencies to "consider" federal standards, but did not compel the states to adopt or enforce federal law. *Id*. at 765. The Supreme Court expressly emphasized that the statute contained nothing "directly compelling" the States to enact a legislative program." *Id*. By contrast, the challenged immigration conditions require local jurisdictions to "cooperate" with federal immigration enforcement. As discussed above, the conditions themselves are vague; however, to the extent that they require recipients to affirmatively assist in federal law enforcement, they violate the

-16-

Tenth Amendment's anticommandeering principles.  Furthermore, the cases relied on by Defendants dealt with conditions in a single grant program, whereas here, the immigration conditions have been implemented across essentially all federal grants administered by Defendants.  The cumulative coercive effect of the conditions implemented across virtually all available grants does not leave Plaintiffs with a "genuine choice."  *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 588 (2012); *see also State of N.Y. v. U.S. Dep't of Just.*, No. 1:25-CV-00345-MSM-PAS, 2025 WL 2618023 at *20 (D.R.I. Sept. 10, 2025) (finding the scale of threatened loss caused by federal agencies' reinterpretation of PRWORA left States with no real option but to comply).

### 2. Plaintiffs' APA Claims Are Likely to Succeed

#### a. The federal agency actions at issue are "final agency action" reviewable under the APA.

Defendants summarily assert that Plaintiffs fail to identify with sufficient particularity the relevant final agency action.  *See* Dkt. 40 at 29.  However, Defendants fail to address the specific agency actions identified in Plaintiffs' FAC and memorandum of points and authorities.  *See* FAC ¶¶ 215–319; Dkt. 36 at 16–25.  The requirement to identify a final agency action is not as onerous as Defendants suggest.  The Supreme Court has held that even internal memoranda that bind staff constitute "final agency action."  *Biden v. Texas*, 597 U.S. 785, 808–09 (2022).  Here, Plaintiffs are challenging each Defendant agency's imposition of the challenged conditions.  These actions include the issuance of agency guidance, such as the Duffy Letter (RJN, Ex. P) and the Fernandez Letter (*id.*, Ex. Q), as well as amendments to published agency guidance and policy documents such as the General Administrative, National, and Departmental Policy Requirements and Terms for HUD's Financial Assistance Programs (*id.*, Ex. A), FTA's Master Agreement (*id.*, Ex. D), FWHA's Competitive Grant Program General Terms and Conditions (*id.*, Ex. E), FAA's Airport Improvement Program Grant Assurances (*id.*, Ex. G), HHS's Grants Policy Statements (*id.*, Ex. H, U, & V), and EPA's General Terms and Conditions (*id.*, Ex. Z).  Each of these modifications to agency guidance satisfies the two criteria for final agency action: that it "marks the consummation of the agency's decisionmaking process," and either is an action "by which rights or obligations have been determined, or from which legal consequences will flow."  *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024) (cleaned up).

Renne Public Law Group
Attorneys at Law

-17-

Defendants have not even attempted to explain how the published letters and agency guidance documents are not final agency action "by which rights or obligations have been determined," given the fact that Defendants are already applying the conditions to Plaintiffs. *See* Skei Decl. ¶¶ 13–14; Diaz Decl. ¶ 15; Bacher Decl. ¶ 19–20; Thomas Decl. ¶ 11; Thomas Supp. Decl. ¶ 7. Instead of meaningfully engaging with the several agency actions that Plaintiffs have identified, Defendants, citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004), summarily accuse Plaintiffs of making an impermissible "broad programmatic attack against agency grant conditions writ large." *See* Dkt. 40 at 30. Not so. Plaintiffs have identified the specific conditions that they challenge and the final agency actions that implemented them. In *Norton*, the Southern Utah Wilderness Alliance sought sweeping, programmatic relief compelling the Bureau of Land Management ("BLM") to manage vast expanses of federal land "so as to protect the areas' wilderness character." *Id*. at 66–67. The Supreme Court rejected that claim because it effectively invited the judiciary to assume general supervisory authority over BLM's day-to-day land management decisions, ongoing oversight that the APA does not authorize. *Id*.

In contrast, the relief sought here does not ask the Court to oversee Defendants' ongoing administration of federal programs. Rather, Plaintiffs seek straightforward prohibitory relief to prevent Defendants from imposing unlawful and vague funding conditions on them while this litigation proceeds. This type of discrete, negative injunction—preserving the status quo by prohibiting enforcement of challenged conditions—is the traditional and appropriate form of equitable relief under the APA. *See* 5 U.S.C. § 706(2) (authorizing courts to "hold unlawful and set aside" unlawful agency action).

### b. Defendants' unlawful grant conditions are not committed to agency discretion by law.

Defendants claim that the Supreme Court has long recognized that an agency's determination of how to condition congressionally appropriated funds "is classic discretionary agency action." Dkt. 40 at 31. Yet they fail to identify any case in which the Supreme Court has issued such a holding. *Lincoln v. Vigil*, 508 U.S. 182 (1993), merely held that the decision to discontinue a regional program, which Congress never expressly authorized or appropriated funds for, in order to establish a nationwide treatment program, was committed to agency discretion by law and therefore not subject to judicial review under the APA. However, an agency's "discretion to make the final substantive decision under

-18-

RENNE PUBLIC LAW GROUP
Attorneys at Law

its program authorities does not mean that the agency has unlimited, unreviewable discretion." *Sierra Club v. Glickman*, 156 F.3d 606, 617 (5th Cir. 1998).

Courts "read the § 701(a)(2) exception for action committed to agency discretion quite narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Dep't of Com. v. New York*, 588 U.S. 752, 772 (2019) (cleaned up); *see also Webster v. Doe*, 486 U.S. 592, 592 (1988). Only in those "rare instances" in which there is "truly no law to apply" is it appropriate to follow section 701(a)(2). *Jajati v. U.S. Customs & Border Prot.*, 102 F.4th 1011, 1017 (9th Cir. 2024).

Here, the grant programs' authorizing statutes provide the standard against which to judge the agency's exercise of discretion, such as the programs' purpose, selection criteria, recipient requirements, and applicable grant conditions. *See, e.g.*, 23 U.S.C § 24112 (SS4A); 42 U.S.C. §§ ¶ 5303–5 (CDBG); *id.* §§ 11372, 11374–11375 (ESG); *id.* §§ 12742, 12744, 12475, 12476 (HOME); *id.* §§ 12903(d)(1)–(6) (HOPWA); *id.* § 254b(HCP); *id.* § 9604(k) (Brownfields); 49 U.S.C. § 47106 (IIJA). Because the statutes provide a basis for this Court to exercise judicial review, Defendants' actions are not "committed to agency discretion by law" and thus section 701(a)(2) does not preclude Plaintiffs' APA claim. *See King County*, 2025 WL 1582368 at *12-13 ("each of these enabling statutes provides substantial guidance as to how the agencies' discretion should be exercised in implementing these programs, and for the Court to evaluate whether that discretion is being exercised in a reasonable manner"); *SFUSD*, 2025 WL 1180729, at *3–5 (concluding similarly in APA challenge to AmeriCorps grant conditions).

### c.    The Federal Grant Conditions are in excess of statutory jurisdiction.

Defendants argue that the challenged grant conditions are not in excess of their statutory authority because "[t]he Executive has a constitutional duty to enforce Congressional mandates and does so through its officers and agents." Dkt. 40 at 32 (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492 (2010)). However, *Free Enterprise Fund* was specifically addressing the executives' Article II authority. *See Free Enter. Fund*, 561 U.S. at 492 ("The landmark case of *Myers v. United States* reaffirmed the principle that Article II confers on the President 'the general administrative control

RENNE PUBLIC LAW GROUP
Attorneys at Law

of those executing the laws.'").[5]  Courts recognize that, absent an express delegation of congressional authority, the President's power to impose conditions on grants "is at its lowest ebb."  *San Francisco I*, 897 F.3d at 1233 (cleaned up).  Accordingly, if Defendants have any authority to impose terms on the grants they implement, it must originate in a statute enacted by Congress.

Contrary to Defendants' arguments, the authorizing statutes for the grant programs at issue impose specific conditions and confer only narrow discretion—limited to terms "necessary" to carry out the programs' stated purposes and objectives.  *See* 49 U.S.C. §§ 47107, 47108.  First, statutory sections, such as 42 U.S.C. §§ 254b(k)(1), 300ff-15(a) & (b), that require recipients to prepare and submit an application "at such time, in such form, and containing such information as the Secretary shall require," plainly do not confer broad discretion to impose conditions on the grant programs.  Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."  *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001).

Similarly, the other statutes Defendants identify, 42 U.S.C. § 11386(b)(8) and 49 U.S.C. §§ 5334, 47107(g), 47108(a), do not grant unfettered authority to use the programs as vehicles for advancing unrelated and even contradictory executive policy objectives not contemplated by Congress.  *See* Dkt. 28 at 8 (this Court finding that "in many cases the conditions squarely contradict the congressional acts that establish the grant programs in the first instance.").  The limited discretion authorized by these provisions is evident in the plain language of the statutes.  For example, although 49 U.S.C. § 5334 provides the DOT Secretary "general authority" to "prescribe terms for a project that receives Federal financial assistance," the authority is limited only to when the Secretary is "carrying out this chapter," which has as its stated purpose "to foster the development and revitalization of public transportation systems."  *See* 49 U.S.C. § 5301; *see also King County*, 2025 WL 1582368, at *16 ("Properly read, the statute does not confer the unbounded discretion that Defendants claim and indeed, require." (citing 49 U.S.C. § 5334)).

Similarly, 49 U.S.C. § 47107(g)(1)(A), which Defendants assert authorizes the DOT Secretary to "prescribe requirements for sponsors that the Secretary considers necessary," is constrained to

---

[5] The fact that Defendants ultimately premise their authority on Article II principles further underscores why *Dalton v. Specter* does not bar Plaintiffs' separation of powers claim here.  *See* 511 U.S. at 473.

RENNE PUBLIC LAW GROUP
Attorneys at Law

"ensur[ing] compliance with this section." *See id*. § 47107(g)(1).  Defendants have notably omitted this limiting language.  Upon closer inspection, 49 U.S.C. § 47107 provides an extensive list of specific requirements and assurances applicable to grant recipients, such as "fixed-base operators similarly using the airport will be subject to the same charges" and that "a proposal to close the airport temporarily for a nonaeronautical purpose must first be approved by the Secretary."  Read in context, 49 U.S.C. § 47107(g))(1)(A), and the other statutes that Defendants identify, confer limited authority to impose specific restrictions on grant recipients to advance the purposes and objectives of the chapters and subchapters in which those provisions appear.  42 U.S.C. § 11386(b)(8) and 49 U.S.C. § 47108(a) are similarly constrained.  *See King County*, 2025 WL 1582368, at *15 (concluding that the new funding conditions were not authorized by 42 U.S.C. § 11386(b)'s "'catchall' provision" because "[s]ubstantive conditions implicating controversial policy matters that are unrelated to the authorizing statute, such as prohibitions on DEI initiatives and 'promot[ing] elective abortion,' are simply not 'of the same kind' as conditions that require recipients to monitor and report the progress of their program").

Defendants' broad reading of these statutes flouts basic statutory interpretation principles.  Congress "rarely accomplishe[s]" "[e]xtraordinary grants of regulatory authority" through "modest words, vague terms, or subtle devices."  *West Virginia v. EPA*, 597 U.S. 697, 723 (2022) (cleaned up).  Indeed, the Supreme Court recently made clear that major questions of "economic and political significance" require an explicit congressional delegation of authority.  *Biden v. Nebraska*, 600 U.S. 477, 504–06 (2023) (cleaned up).  Such "economic and political" questions include an agency's claim of authority to "'unilaterally alter" millions of dollars in congressionally authorized grants based on its views of hotly contested policy issues on which Congress has not spoken.  *See id*. at 507.

Defendants have not identified any statute authorizing them to condition grants intended to improve public health, social services, affordable housing, and transportation infrastructure with unrelated and contradictory conditions prohibiting all forms of DEI, facilitating enforcement of federal immigration laws, verification of immigration status, or prohibiting the "promot[ion]" of "gender ideology" or "elective abortion," let alone an explicit delegation of authority.

### d.    The Federal Grant Conditions are arbitrary and capricious.

Defendants contend that the conditions they've imposed are not subject to the arbitrary and

-21-

RENNE PUBLIC LAW GROUP
Attorneys at Law

capricious standard because grants are excluded from APA rule-making requirements under 5 U.S.C. § 553(a)(2).[6]  *See* Dkt. 40 at 35.  This argument is entirely without merit.  The prohibition of arbitrary or capricious agency action arises directly from the judicial review provision of the APA.  Whether an agency is required to follow certain rule-making requirements or not, it must meet the requirements of title 5 U.S.C. § 706(2)(A).  "An agency action qualifies as 'arbitrary' or 'capricious' if it is not 'reasonable and reasonably explained.'"  *Ohio v. Env't Prot. Agency*, 603 U.S. 279, 292 (2024).  To satisfy this requirement, an agency must offer "a satisfactory explanation for its action" and can neither "rel[y] on factors which Congress has not intended it to consider" nor simply ignore "an important aspect of the problem . . . ."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  In their opposition, Defendants do not offer any explanation for the imposition of the new grant conditions beyond the "general grantmaking requirements that the recipients of such funds follow federal law."  Dkt. 40 at 35.  This not a satisfactory explanation because (1) the challenged conditions exceed the prohibitions and requirements of existing law and (2) recipients of grant funds already agreed to follow federal law before these new conditions were implemented.  Defendants have not shown that the agencies "considered the relevant factors" or "articulated a rational connection between the facts found and the choice made," *State Farm*, 463 U.S. at 43; see also *Dep't of Com. v. New York*, 588 U.S. 752, 780–85 (2019) (agency's decision to add a citizenship question to the census was arbitrary and capricious where its stated rationale was pretextual and failed to reflect the agency's actual reasoning).  Accordingly, Plaintiffs are likely to succeed in establishing that attaching the challenged grant conditions was arbitrary and capricious.

### D.    Injunctive Relief Is Necessary to Prevent Irreparable Harm to Plaintiffs

Defendants assert that Plaintiffs have failed to make a showing of irreparable harm because the harms they assert are economic.  Dkt. 40 at 36.  Again, Defendants misunderstand Plaintiffs' claims.  Defendants have put Plaintiffs in the position of having to choose between accepting unconstitutional

---

[6] Although 5 U.S.C. § 553(a)(2) exempts APA rule-making requirements as to certain matters, HUD has waived this exemption through its own regulations.  *See, e.g.*, 24 C.F.R. § 10.1 ("It is the policy of [HUD] to provide for public participation in rulemaking with respect to all HUD programs and functions, including matters that relate to . . . grants . . . even though such matters would not otherwise be subject to rulemaking by law or Executive policy.").  Accordingly, Defendants argument based on the lack of rule-making requirements, which fails for the reasons stated above, also does not apply to HUD.

RENNE PUBLIC LAW GROUP
Attorneys at Law

conditions or risking the loss of hundreds of millions of dollars in federal grant funding, including funding that they have already budgeted and are committed to spending. Moreover, even if Plaintiffs accepted the vague and unlawful conditions, they would still be at risk of arbitrary enforcement and legal liability under the FCA. The constitutional violations and looming uncertainty are the harms for which Plaintiffs seek preliminary relief. Furthermore, without injunctive relief, thousands of residents will likely be cut off from essential services provided by Plaintiffs. *See* Dkt. 36 at 52–53.

The fact that Plaintiffs also risk losing access to hundreds of millions of dollars in federal funds to which they would otherwise be entitled does not lessen the significance of the additional, non-economic harms for which preliminary injunctive relief is warranted. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017).

### E.    The Equities Weigh in Plaintiffs' Favor

Defendants argue that public interest will suffer "substantial harm" by an "injunction interfering with the President's priorities," and when the United States is forced to pay out funds, it may not be able to recover. *See* Dkt. 40 at 37–38. However, Defendants also insist that the challenged conditions only require compliance with existing federal law and that they do not intend to reject or terminate Plaintiffs' grant agreements. *See* Dkt. 40 at 24–25; *see also* Dkt. 28 at 12 n.7. There is no indication that Plaintiffs are violating existing federal law, and so, according to Defendants, there is little risk that they will be harmed by enjoining the threats and conduct Defendants suggest it does not intend to pursue. The harm Defendants invoke is purely speculative and, by their own account, unlikely.

In contrast, the harm to Plaintiffs is certain without an injunction. The public interest is served by allowing the Plaintiffs clarity about their budgets and programmatic capacities, which provide key services to the public. Furthermore, preserving Plaintiffs' constitutional rights and preventing the government from enforcing potentially unlawful conditions clearly serves the public interest. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.") (cleaned up). As the Ninth Circuit has recognized, "by establishing a likelihood that [the government's] policy violates the U.S. Constitution," Plaintiffs have also "established that both the public interest and the balance of the equities favor a preliminary injunction." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014). Accordingly, the

-23-

RENNE PUBLIC LAW GROUP
Attorneys at Law

balance of equities and the public interest decisively support interim relief here.

### F.    Plaintiffs Seek an Appropriately Tailored Prohibitory Preliminary Injunction

Defendants argue that any injunctive relief should be narrowly tailored.  Dkt. 40 at 38.  The relief sought is tailored to the harm caused.  Defendants have imposed vague and unlawful conditions without the authority to do so.  Accordingly, Plaintiffs seek a prohibitory injunction to maintain the status quo.  The status quo is "the legally relevant relationship between the parties *before* the controversy arose." *Ariz. Dream Act Coal.*, 757 F.3d at 1060 (cleaned up) (emphasis added).  Here, Plaintiffs challenge Defendants' new conditions and, thus, a preliminary injunction prohibiting Defendants from attaching or enforcing these conditions preserves the status quo.  *See Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*, 82 F.4th 664, 684 (9th Cir. 2023) (district court erred in applying mandatory burden of proof to plaintiffs' motion for a preliminary injunction barring Arizona officials from implementing new policy preventing DACA recipients from obtaining driver's licenses).

Defendants request that any injunction issued should be limited to the specific grants previously identified does not provide the relief necessary because Plaintiffs are frequently receiving additional grant agreements.  In the past two weeks, Plaintiffs County of Marin, County of San Diego, City of Alameda, and City of Redwood City[7] have received eight new grant agreements.  Paran Decl. ¶ 4; Salmons Supp. Decl. ¶ 4; Stevenson Diaz Supp. Decl. ¶ 9; Ott Supp. Decl. ¶ 3.  Any effective relief must enjoin Defendants from imposing or enforcing the challenged grant conditions against Plaintiffs in any circumstance, whether the condition is present in a pending or future grant offer, existing programs utilizing grant funds, or in a future grant application.

### G.    A Preliminary Injunction Serves the Public Interest; a Bond or Stay Does Not

The public interest favors an order enjoining Defendants from imposing their new unlawful grant conditions without undermining the protections of such an order with a bond or stay.  *See King County v. Turner*, --- F. Supp. 3d ---, 2025 WL 1582368, at *20 (denying enjoined federal defendants' request for

---

[7] Redwood City was inadvertently omitted from the list of "DOT Plaintiffs" in Plaintiffs' Memorandum of Points and Authorities.  However, the FAC describes in detail the FHWA grants Redwood City receives (¶ 34) and identifies Redwood City as a "DOT Plaintiff" (¶ 168).  In addition, the Declaration of Stevenson Diez submitted in support of this motion further describes Redwood City's FHWA funding. Any injunctive relief entered against DOT should include Redwood City as a protected party.

RENNE PUBLIC LAW GROUP
Attorneys at Law

bond); *SFUSD*, 2025 WL 1713360, at *26 (same); *California v. U.S. DOT*, 2025 WL 1711531, at *4 (same).  It is within the district court's "wide discretion" to waive the bond requirement "if there is no evidence the party will suffer damages from the injunction," *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (citations omitted), or if "there is a high probability of success that equity compels waiving the bond, the balance of the equities overwhelmingly favors the movant . . . or the requirement of a bond would negatively impact the movant's constitutional rights," *Gilmore v. Wells Fargo Bank, N.A.*, No. C 14-2389 CW, 2014 WL 3749984, at *6 (N.D. Cal. July 29, 2014).  Alternatively, if the Court decides a bond is needed, Plaintiffs request a nominal bond to reflect the resulting hardship of losing access to the very funds Plaintiffs seek to protect.

Just as a bond would undermine the preliminary injunction, so too would Defendants' requested seven-day administrative stay.  *See* Dkt. 40 at 39.  Even a one-week lapse in Plaintiffs' protections against the challenged grant conditions would entirely undermine the relief a preliminary injunction would provide and impose further irreparable harm, as Defendants have issued several pending deadlines to Plaintiffs that require action within the week.  *See* Paran Decl. ¶ 14; Thomas Supp. Decl. ¶ 7; Salmons Supp. Decl. ¶ 7; Stevenson Diaz Supp. Decl. ¶ 12; Ott Supp. Decl. ¶ 6.

What's more, in seven days, the federal government could re-impose the new conditions.  *See SFUSD*, 2025 WL 1713360, at *26 ("Plaintiffs have demonstrated that a stay would irreparably harm Plaintiffs because, *inter alia*, '[i]n seven days, the federal government could re-impose the new conditions, identify some purported violation by Plaintiffs, [or] terminate Plaintiffs' grants entirely.'"); *cf. NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring) ("the Government is not entitled to a stay of the judgments insofar as they vacate the guidance documents").

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue a preliminary injunction enjoining Defendants from imposing or enforcing the Federal Grant Conditions or any materially similar terms or conditions to any federal funds received by or awarded to Plaintiffs, directly or indirectly.

RENNE PUBLIC LAW GROUP
Attorneys at Law

Dated:  September 22, 2025

RENNE PUBLIC LAW GROUP


By: _____/s/ Jonathan V. Holtzman_____
     JONATHAN V. HOLTZMAN

Attorneys for Plaintiffs
City of Fresno; City of Eureka; City of South
Lake Tahoe; County of Sacramento; County of
Monroe; Monroe County Airport Authority;
County of San Diego; County of Marin; City of
Alameda; City of Redwood City

Dated:  September 22, 2025

FRESNO CITY ATTORNEY'S OFFICE


By: _____/s/ Andrew Janz_____
     ANDREW JANZ

Attorney for Plaintiff
CITY OF FRESNO

Dated:  September 22, 2025

SAINT PAUL CITY ATTORNEY'S OFFICE


By: _____/s/ Kelsey McElveen_____
     LYNDSEY OLSON *
     KELSEY MCELVEEN *
* Appearing pro hac vice

Attorneys for Plaintiff
City of Saint Paul

Dated:  September 22, 2025

ANDERSON & KREIGER LLP


By: _____/s/ Melissa C. Allison_____
     MELISSA C. ALLISON *
     CHRISTINA S. MARSHALL *
* Appearing pro hac vice

Attorneys for Plaintiffs
County of Monroe and Monroe County Airport
Authority

**ECF ATTESTATION**

I, JONATHAN V. HOLTZMAN, am the ECF user whose identification and password are being used to file this PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION.  Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other above-named signatories concur in this filing.

Dated:  September 22, 2025                    RENNE PUBLIC LAW GROUP


By: _____/s/ Jonathan V. Holtzman_____
        JONATHAN V. HOLTZMAN