CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
JEVECHIUS D. BERNARDONI (CABN 281892)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7224
    Facsimile: (415) 436-6748
    jevechius.bernardoni@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY OF FRESNO, *et al.*, | Case No. 3:25-cv-07070-RS |
|     Plaintiffs, | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |
|   v. | |
| SCOTT TURNER, *et al.*, | The Honorable Richard Seeborg |
|     Defendants. | |

**<u>TABLE OF CONTENTS</u>**

I.      Introduction ........................................................................................................ 1

II.     Background ......................................................................................................... 2

        A.      Procedural Background ........................................................................... 2

        B.      Other Grant Conditions Lawsuits Involving These Same Agency Defendants .......... 4

                1.      *Martin Luther King, Jr. County, et al. v. Turner, et al.*,
                        No. 25-cv-00814-BJR (W.D. Wash.) .......................................... 4

                2.      *City and County of San Francisco, et al. v. Trump, et al.*,
                        No. 3:25-cv-01350-WHO (N.D. Cal.) ......................................... 5

                3.      *Housing Authority of the County of San Diego, et al. v. Turner, et al.*,
                        No. 3:25-cv-008859-JST (N.D. Cal.) ........................................... 5

III.    Legal Standards .................................................................................................. 6

        A.      Leave To Amend ..................................................................................... 6

        B.      Transfer Under 28 U.S.C. § 1404(a) ...................................................... 7

IV.     Amendment Should Be Denied Because The Claims In The PSAC Are Futile ................... 7

        A.      The Court Should Deny Leave To Amend Because All Claims Against EPA
                Would Be Subject To Dismissal .............................................................. 8

        B.      The Court Should Deny Leave To Amend Because The PSAC Seeks To
                Improperly Join Six New Agency Defendants And Fourteen New Plaintiffs ........... 9

        C.      Many Of The Current Or New Proposed Plaintiffs' Claims Are Subject To
                Dismissal For Improper Claims Splitting ................................................. 12

V.      If The Court Allows Amendment, The Case Should Be Transferred To The United States
        District Court For The District Of Columbia In Its Entirety Under 28 U.S.C. § 1404(a) ..... 14

VI.     Conclusion ........................................................................................................ 18

# TABLE OF AUTHORITIES

## CASES

*Adams v. California Department of Health Services*, 487 F.3d 684 (9th Cir. 2007)......................... 13, 14

*Alltrade, Inc. v. Uniweld Prods. Inc.*, 946 F.2d 622 (9th Cir. 1991) ........................................ 14

*Baltimore S.S. Co. v. Philips*, 274 U.S. 316 (1927) ........................................................... 12

*Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995) ................................................................ 7

*Chinn v. Giant Food, Inc.*, 100 F. Supp. 2d 331 (D. Md. 2000) .............................................. 12

*Chippewa Cree Tribe of Rocky Boy's Rsrv., Montana v. U.S. Dep't of Interior*,

    900 F.3d 1152 (9th Cir. 2018) ............................................................................. 10

*Christison v. Biogen Idec, Inc.*, No. 11-cv-4382 RS, 2011 WL 5600510 (N.D. Cal. Nov. 17, 2011) ..... 16

*City & Cnty. of San Francisco v. Trump*,

    No. 25-cv-01350-WHO, 2025 WL 2243619 (N.D. Cal. Aug. 5, 2025) .................................... 11

*Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321 (9th Cir. 1995) ................................. 13

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000) .................................................. 9

*Coughlin v. Rogers*, 130 F.3d 1348 (9th Cir. 1997) ............................................................. 9

*Davis v. Sun Oil Co.*, 148 F.3d 606 (6th Cir. 1998) ............................................................ 12

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) ............................... 16

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ...................................... 7

*Enomoto v. Siemens Indus.*, No. 23-cv-03779-JSC, 2023 WL 6278876 (N.D. Cal. Sept. 25, 2023)....... 17

*Foman v. Davis*, 371 U.S. 178 (1962) ........................................................................... 7

*Gerin v. Aegon USA, Inc.*, No. 06-cv-5407-SBA, 2007 WL 1033472 (N.D. Cal. Apr. 4, 2007)............. 17

*Grossman v. Johnson & Johnson*,

    No. 14-cv-03557-VC, 2015 WL 1743116 (N.D. Cal. Apr. 13, 2015)......................................... 17

*Grover Products LLC v. Air Horns of Texas, LLC*,

    No. 24-cv-08002, 2025 WL 1384256 (C.D. Cal. March 24, 2025)............................................ 7

*Hartsel Springs Ranch of Colorado v. Bluegreen Corp.*, 296 F.3d 982 (10th Cir. 2002) .................. 12, 13

*Hatch v. Reliance Ins. Co.*, 758 F.2d 409 (9th Cir. 1985) ..................................................... 15

*Hernandez v. City of San Jose*, No. 16-cv-03957-LHK, 2017 WL 2081236 (N.D. Cal. May 15, 2017)... 9

*Hoffman v. Blaski*, 363 U.S. 335 (1960) ................................................................................ 15

*Johns v. Panera Bread Co.*, No. 08-cv-1071-SC, 2008 WL 2811827 (N.D. Cal. July 21, 2008)............ 18

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000)................................................. 15

*Karlen v. Wells Fargo Bank, N.A.*,

    No. 22-cv-02127-JSC, 2022 WL 2756671 (N.D. Cal. July 14, 2022)......................................... 17

*Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987) ...................................................................... 15

*May Chen v. Xiyan Zhang*, No. 24-cv-03942-JST, 2024 WL 4894294 (N.D. Cal. Nov. 25, 2024)......... 14

*Mendoza v. Amalgamated Transit Union International*, 30 F.4th 879 (9th Cir. 2022) ..................... 13, 14

*Miles v. Dep't of Army*, 881 F.2d 777 (9th Cir. 1989) .............................................................. 7

*Missouri ex rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017) ................................................. 7

*Morris v. Safeco Ins. Co.*, No. 07-cv-2890-PJH, 2008 WL 5273719 (N.D. Cal. Dec. 19, 2008) ........... 15

*Nunes v. Ashcroft*, 348 F.3d 815 (9th Cir. 2003) .................................................................... 7

*Our Children's Earth Found. v. EPA*,

    No. 08-cv-01461-SBA, 2008 WL 3181583 (N.D. Cal. Aug. 4, 2008) .................................... 7, 17

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049 (9th Cir. 2008) .................................. 7

*Rugila v. Mayorkas*, No. 24-cv-01218-MMC, 2024 WL 1446457 (N.D. Cal. Apr. 2, 2024) ................. 15

*S. Dakota v. Dole*, 483 U.S. 203 (1987) ............................................................................... 10

*Shaver v. F.W. Woolsworth Co.*, 840 F.2d 1361 (7th Cir. 1988)................................................... 12

*Southard v. Kipper Tool Co.*,

    No. 15-cv-03621-JSC, 2023 WL 6959145 (N.D. Cal. Oct. 19, 2023) .............................. 7, 15, 17

*Stark v. Starr*, 94 U.S. 477 (1876) ...................................................................................... 12

*State v. DOJ*, 951 F.3d 84 (2d Cir. 2020) ............................................................................. 10

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293 (9th Cir. 1998) .................................................. 7

*Stith v. California*, No. 23-cv-947, 2023 WL 4274043 (E.D. Cal. June 29, 2023) ............................. 11

*Taylor v. Sturgell*, 553 U.S. 880 (2008)............................................................................... 13

*Union Pac. R. Co. v. Nevada Power Co.*, 950 F.2d 1429 (9th Cir. 1991) .................................... 7, 10, 11

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) .......................................................................... 7

*Van Mourik v. Big Heart Pet Brands, Inc.*,

No. 17-cv-03889-JD, 2018 WL 3549122 (N.D. Cal. July 24, 2018)............................................ 16

*Williams v. Bowman*, 157 F. Supp. 2d 1103 (N.D. Cal. 2001) ................................................... 16

*WMATA v. Ragonese*, 617 F.2d 828 (D.C. Cir. 1980)............................................................. 12

*Zhang v. Chertoff*, No. 08-cv-02589, 2008 WL 5271995 (N.D. Cal. Dec. 15, 2008) ............................ 15

## **STATUTES**

28 U.S.C. § 1391(e)(1)............................................................................................. 15

28 U.S.C. § 1391(e)(1)(A) ......................................................................................... 15

28 U.S.C. § 1391(e)(1)(B) ......................................................................................... 15

28 U.S.C. § 1404(a) ...................................................................................... 7, 14, 17, 18

## **OTHER AUTHORITIES**

Restatement (Second) of Judgments § 24 ........................................................................... 13

## **RULES**

Federal Rule of Civil Procedure 15(a) ............................................................................... 6

Federal Rule of Civil Procedure 20(a) ................................................................... 9, 11, 12, 14

Federal Rule of Civil Procedure 21 ................................................................................. 9

## I.    Introduction

When this lawsuit was first filed, it involved only seven plaintiffs, six of which were located outside the Northern District of California.  After the Court issued a temporary restraining order, four new plaintiffs were added to the case, and those new plaintiffs immediately moved (along with the seven original plaintiffs) for a preliminary injunction.  And now, three months after the Court's order partly granting those eleven plaintiffs' preliminary injunction motion, a new set of fourteen plaintiffs (more than half of which would lack venue in this district if they filed a stand-alone complaint) seek to join the case.  The proposed second amended complaint would balloon from 311 paragraphs of factual allegations in the original complaint, to 368 paragraphs in the first amended complaint, to a staggering 647 such paragraphs in the proposed new pleading.  *See* ECF No. 63-2 ("PSAC").  But the PSAC does not allege any facts about intervening events that require the addition of new plaintiffs at this stage of the case.  And even a cursory review of the PSAC demonstrates that the proposed claims against the new proposed defendants generally are not brought by the existing eleven plaintiffs, but rather by the fourteen plaintiffs who belatedly seek to join this case.  *See, e.g., id.* ¶ 286 (defining "FRA Plaintiffs"), ¶ 292 (defining "NTHSA Plaintiffs"), ¶ 396 (defining "DHS Plaintiffs"), ¶ 410 (defining "DOI Plaintiffs"), ¶ 463 (defining "DOJ Plaintiffs").  The new plaintiffs should have filed these claims in a separate lawsuit or lawsuits in the appropriate forum, which would have been assigned to a randomly selected judge.

The Court should not grant leave to amend because the claims in the PSAC would be futile.  First, this Court already found that the current plaintiffs' DEI-related grant condition claims fail against EPA because EPA revised its General Terms and Conditions on August 25, 2025 to remove the DEI condition.  Yet, the PSAC fails to reference or even acknowledge EPA's revised General Terms and Conditions that are in effect and instead focuses on prior terms and conditions that are inoperable.  Second, the PSAC seeks to join—improperly—six new agency defendants and fourteen new cities and counties as plaintiffs, but the challenged conduct of the new agency defendants does not arise out of the same transaction and occurrence as the claims at issue against the original defendants.  Third, even if the Court finds joinder to be proper, the claims of seven of the plaintiffs would be futile under the claims-splitting doctrine because they simultaneously pursue at least three duplicative federal court lawsuits challenging what they contend to be similar (if not identical) federal grant conditions.

1    Finally, if the Court is inclined to permit amendment here, creating a behemoth, unwieldy lawsuit

2    in which 75% of the plaintiffs have no link to this District, the Court should transfer the lawsuit, in its

3    entirety, to the United States District Court for the District of Columbia ("District Court for the District

4    of Columbia") under 28 U.S.C. § 1404(a), as *all* defendants are located there and it is the venue in which

5    *all* the challenged grant conditions decisions were made.

6    **II.    Background**

7    **A.    Procedural Background**

8    In the initial complaint, seven plaintiffs—City of Fresno; City of South Lake Tahoe; City of Saint

9    Paul, Minnesota; County of Sacramento; County of Monroe, New York; Monroe County Airport

10   Authority; and City of Eureka (collectively, "Original Plaintiffs")—initiated this lawsuit against four

11   federal agencies (and three operating administrations) on August 20, 2025.  ECF No. 1 ("Original

12   Complaint").  Of the Original Plaintiffs, only the City of Eureka is located in the Northern District of

13   California, and it is thereby the *sole* basis for venue in this District.  *Id.* ¶ 2.  This Court issued a temporary

14   restraining order on August 27, 2025, which, *inter alia*, enjoined the current defendants (Housing and

15   Urban Development ("HUD"), Department of Transportation ("DOT"), Federal Transit Administration

16   ("FTA"), Federal Highway Administration ("FHWA"), Federal Aviation Administration ("FAA"),

17   Department of Health and Human Services ("HHS"), and Environmental Protection Agency ("EPA"), as

18   well as each agency head (collectively, "Current Defendants")) from imposing or enforcing the Grant

19   Condition Executive Orders, as defined therein.  ECF No. 28.

20   Twelve days after the temporary restraining order was entered, the Original Plaintiffs filed a first

21   amended complaint as of right (ECF No. 35 ("FAC")), adding four new plaintiffs:  County of San Diego,

22   County of Marin, City of Alameda, and City of Redwood City (together with the Original Plaintiffs, the

23   "Current Plaintiffs").  *Id.*  Simultaneously, they filed a motion for a preliminary injunction (ECF No. 36),

24   which the Court granted, in part, on September 23, 2025.  ECF No. 45 ("PI Order").  However, the Court

25   declined to enter a preliminary injunction against EPA, finding the Current Plaintiffs' claims "fail[ed]":

26   (1) due to EPA's revision of its General Terms and Conditions on August 25, 2025 and (2) because "there

27   is no evidence that the EPA is still enforcing its DEI Conditions or interprets its Anti-Discrimination

28   Condition to prohibit promotion of DEI."  *Id.* at 11.

Almost three months after the Court issued the preliminary injunction, the Current Plaintiffs now file the instant motion for leave to file a second amended complaint, which seeks to add fourteen additional cities and counties as plaintiffs:  City of Atlanta, Georgia; City of Beaverton, Oregon; City of Corvallis, Oregon; City of Hillsboro; City of Mountain View; City of Salem, Oregon; City of San Mateo; City of Santa Clara; City of Santa Cruz; City of Stockton; City of Sunnyvale; City of Vacaville; County of Los Angeles; and County of Santa Barbara (collectively, the "New Proposed Plaintiffs").  More than half of the New Proposed Plaintiffs (eight of fourteen) are not located in this District.

Notwithstanding this Court's prior holding that the claims against EPA were not likely meritorious (in fact, the Court expressly found that the EPA claims "fail[ed]," *see* PI Order at 5 & 11) and the Court's citation to the controlling revised terms and conditions, the PSAC continues to assert the same deficient claims against EPA.  PSAC ¶ 363.  The PSAC continues to cite EPA's now-outdated terms and conditions (PSAC ¶¶ 565-68) and fails to even mention EPA's August 25, 2025 revisions to its General Terms and Conditions, which removed references to DEI and simply required grant recipients to "certify that [they] do not operate any programs violating applicable Federal antidiscrimination law or promoting any such violation" (PI Order at 11 (citing ECF No. 36-24 at Ex. Z (Plaintiffs' Request for Judicial Notice))).

The PSAC also seeks to add six new federal departments and agencies:  the Federal Railroad Administration ("FRA"), the National Highway Traffic Safety Administration ("NHTSA"), the U.S. Department of Homeland Security ("DHS"), the Federal Emergency Management Agency ("FEMA"), the U.S. Department of the Interior ("DOI"), and the U.S. Department of Justice ("DOJ") along with the heads of those departments and agencies sued in their official capacities ("New Proposed Defendants").[1]  Most of the proposed claims brought against the New Proposed Defendants will be pursued by New Proposed Plaintiffs rather than Current Plaintiffs; in the case of FRA, the *only* plaintiffs who seek to pursue new claims are City of Santa Cruz and City of Atlanta, both of which would be new plaintiffs in this case.  *See* PSAC ¶¶ 286, 292, 396, 410, & 463.  While FRA and NHTSA are "operating administrations" within DOT (*see* PSAC n.1), the PSAC does not allege any facts showing that grant programs specifically administered by FRA and NHTSA impose grant conditions similar to those challenged in the FAC.  *See*

---

[1] For the avoidance of doubt, this Opposition is filed only on behalf of the Current Defendants, and the New Proposed Defendants are not hereby appearing in this matter.

*id.* ¶¶ 502-50.  Similarly, the PSAC does not allege facts showing that FEMA's grant programs incorporate grant conditions like those at issue in the FAC.  *Id.* ¶¶ 569-74.

### B.    Other Grant Conditions Lawsuits Involving These Same Agency Defendants

This lawsuit is not the first or only legal proceeding challenging the alleged conduct.  In fact, at least three other cases filed by the same and/or related plaintiffs challenge the same or similar grant conditions by many of the same agency defendants.

### 1.    *Martin Luther King, Jr. County, et al. v. Turner, et al.*, No. 25-cv-00814-BJR (W.D. Wash.)

On May 2, 2025, a group of eight local governmental entities sued HUD, DOT, and FTA as well as each agency head.  *Martin Luther King, Jr. County, et al. v. Turner, et al.*, No. 25-cv-00814-BJR (W.D. Wash.) ("*King County*").  Across four successive complaints, *King County* ballooned into a 75-plaintiff lawsuit and added HHS as a defendant.  *Id.* at ECF No. 369 (Third Amended Complaint).  Each of the agency defendants in *King County* is also a defendant in this proceeding and is subject in *King County* to the same challenges of the same grant terms and conditions at issue here.  *See id.*  At least one plaintiff in *King County* appears to be a governmental subdivision of New Proposed Plaintiff County of Los Angeles.  *See id.* ¶ 284 (plaintiff Los Angeles Homeless Services Authority "is a joint powers authority of the . . . County of Los Angeles").  Moreover, the preliminary injunction issued in *King County* is not limited, in some respects, to named plaintiffs, but instead applies to all members of every challenged Continuum of Care or Urban County (for example, Los Angeles—city and county—would be in the same Continuum of Care).[2]  *See King County* at ECF No. 338 (Third Preliminary Injunction).  A motion seeking a fourth preliminary injunction is currently pending in *King County*.  *See King County* at ECF No. 346.

After the Current Defendants appealed this Court's PI Order in the instant case, they moved to

---

[2] HUD defines a Continuum of Care as the group organized to carry out the responsibilities prescribed in the CoC Program Interim Rule for a defined geographic area, which is typically composed of representatives of organizations including:  nonprofit homeless providers, victim service providers, faith-based organizations, governments, businesses, advocates, public housing agencies, school districts, social service providers, mental health agencies, hospitals, universities, affordable housing developers, law enforcement, organizations that serve homeless and formerly homeless veterans, and homeless and formerly homeless persons.  *See* https://www.hudexchange.info/faqs/1545/what-is-a-continuum-of-care/#:~:text=A%20Continuum%20of%20Care%20(CoC,Tags:%20CoC%20Program%20Administration%20%2D%20General (last visited Jan. 2, 2026).

1    hold those appellate proceedings in abeyance pending the Ninth Circuit's resolution of the appeal in *King*

2    *County*.  *See* No. 25-7378 (9th Cir.) at Dkt. No. 6.1.  The Current Plaintiffs did not oppose the motion to

3    hold the appeal in abeyance.  *Id.*

4         **2.    *City and County of San Francisco, et al. v. Trump, et al.*, No. 3:25-cv-01350-WHO (N.D. Cal.)**

5

6         Four of the Current or New Proposed Plaintiffs in the above-captioned case (City of Sacramento,

7    City of Santa Cruz, City of Saint Paul, and County of Marin) are direct participants in *City and County of*

8    *San Francisco, et al. v. Trump, et al.*, No. 3:25-cv-01350-WHO (N.D. Cal.) ("*CCSF*"), which was initiated

9    on February 7, 2025.  *CCSF* presents a broad challenge to the administration's grant conditions for

10   "sanctuary" jurisdictions.  *Id.* at ECF No. 193 (Second Amended Complaint).  The operative complaint in

11   *CCSF* claims that the City of Sacramento receives federal funding from DOJ, HUD, FHWA, and DHS,

12   and alleges that the City of Sacramento would suffer harm if it is deprived of those federal funds as a

13   result of the same or similar grant conditions challenged in the PSAC.  *Id.* ¶¶ 522-526.  Similarly, the City

14   of Santa Cruz alleges that it receives federal funds from DOJ, and complains that it will face "a dire

15   financial situation" if it does not receive those funds as a result of challenged grant conditions.  *Id.* ¶¶ 527,

16   529.  The City of Saint Paul also claims that it receives "significant funding from EPA, HUD, and DOT"

17   that could be impacted by the same or similar challenged conditions that are at issue in the above-captioned

18   lawsuit.  *Id.* ¶ 552.  Finally, the County of Marin alleges that it receives federal funding from HHS, HUD,

19   FEMA, DOT, and DOJ.  *Id.* ¶ 643.  Each of the agencies from which City of Sacramento, City of Santa

20   Cruz, City of Saint Paul, and County of Marin claim that they receive federal funds (and challenge

21   conditions attached to those federal funds) in the *CCSF* case are also Current or New Proposed Defendants

22   in the above-captioned lawsuit.

23        **3.    *Housing Authority of the County of San Diego, et al. v. Turner, et al.*, No. 3:25-cv-008859-JST (N.D. Cal.)**

24

25        On October 15, 2025, lead counsel for Plaintiffs in the above-captioned matter initiated a second

26   lawsuit against HUD and Secretary Scott Turner on behalf of eight local governmental entities.  *Housing*

27   *Authority of the County of San Diego, et al. v. Turner, et al.*, No. 3:25-cv-008859-JST (N.D. Cal.) ("*San*

28

*Diego Housing Authority*").[3]    At least three of the plaintiffs in *San Diego Housing Authority* are governmental subdivisions of the Current Plaintiffs or New Proposed Plaintiffs in the instant case.  *See id.* at ECF No. 1 ¶ 6 (identifying plaintiff Housing Authority of the County of San Diego as an agency "created by resolution of the San Diego County Board of Supervisors"), ¶ 12 (identifying plaintiff Los Angeles County Development Authority as an agency "created by resolution of the Los Angeles County Board of Supervisors"); ¶ 18 (identifying plaintiff Housing Authority of the City of Salem as an agency "created by resolution of the Council of the City of Salem").  Moreover, the instant PSAC appears to be challenging the same or similar HUD grant conditions that are currently being litigated by the governmental subdivisions in *San Diego Housing Authority*.  For example, the PSAC claims that Current and New Proposed Plaintiffs County of San Diego and County of Los Angeles receive HUD funding, and they seek to challenge grant conditions (the same conditions at issue in *San Diego Housing Authority*) imposed on that funding.  PSAC ¶¶ 46, 107.  And while the City of Salem does not appear to be challenging HUD grant conditions in the instant action (PSAC ¶ 77), its subdivision Housing Authority of the City of Salem is challenging similar grant conditions in the *San Diego Housing Authority* case.

On October 16, 2025, the *San Diego Housing Authority* plaintiffs filed an administrative motion to consider whether it should be related to this case pursuant to Civil Local Rule 3-12.  ECF No. 54.  This Court denied that administrative motion in a minute order, finding that "no cases are related, and no reassignments shall occur."  ECF No. 56.  Accordingly, *San Diego Housing Authority* is currently proceeding before Judge Tigar.

## III.    Legal Standards

### A.    Leave To Amend

After a party has amended a pleading once as a matter of course, it may only amend further after obtaining leave of the court, or by consent of the adverse party.  Fed. R. Civ. P. 15(a).  Courts consider five factors, known as the "*Foman* factors," when deciding whether to permit an amendment to a complaint:  (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments previously permitted; (4) undue prejudice to the opposing party; and (5) futility of

---

[3] Only one of the plaintiffs in *San Diego Housing Authority* is located in this district.

1   amendment.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman*

2   *v. Davis*, 371 U.S. 178, 182 (1962)).  However, each factor "is not given equal weight."  *Bonin v. Calderon*,

3   59 F.3d 815, 845 (9th Cir. 1995).  Rather, "[f]utility of amendment can, by itself, justify the denial of a

4   motion for leave to amend" without requiring any showing of prejudice.  *Id.*; *Steckman v. Hart Brewing,*

5   *Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998); *Nunes v. Ashcroft*, 348 F.3d 815, 818 (9th Cir. 2003) ("Futility

6   alone can justify the denial of a motion to amend.").

7          Further, the Ninth Circuit distinguishes between "[a]mendments seeking to add claims," which are

8   more liberally granted, and "amendments adding parties."  *Grover Products LLC v. Air Horns of Texas,*

9   *LLC*, No. 24-cv-08002, 2025 WL 1384256, at *4 (C.D. Cal. March 24, 2025).  "Amendments seeking to

10  add claims are to be granted more freely than amendments adding parties."  *Union Pac. R. Co. v. Nevada*

11  *Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991) (citing *Miles v. Dep't of Army*, 881 F.2d 777, 782 (9th

12  Cir. 1989)).

13         **B.      Transfer Under 28 U.S.C. § 1404(a)**

14         For the convenience of parties and witnesses and in the interest of justice, a court may transfer a

15  civil action to any other district where it might have been brought.  28 U.S.C. § 1404(a).  "Section 1404(a)

16  was designed to protect litigants, witnesses and the public against unnecessary inconvenience and

17  expense[,] ensure systemic integrity and fairness in the judicial process, and the efficient administration

18  of the court system."  *Our Children's Earth Found. v. EPA*, No. 08-cv-01461-SBA, 2008 WL 3181583,

19  at *4 (N.D. Cal. Aug. 4, 2008) (cleaned up); *see also Southard v. Kipper Tool Co.*, No. 15-cv-03621-JSC,

20  2023 WL 6959145, at *3 (N.D. Cal. Oct. 19, 2023) ("Section 1404(a) exists to 'prevent the waste of time,

21  energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience

22  and expense.'") (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

23  **IV.    Amendment Should Be Denied Because The Claims In The PSAC Are Futile**

24         Futility arises when the amendment is legally insufficient, *Missouri ex rel. Koster v. Harris*, 847

25  F.3d 646, 656 (9th Cir. 2017), or where the amended complaint would be subject to dismissal.  *Platt Elec.*

26  *Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008).  Here, the claims in the PSAC

27  would be futile for three distinct reasons.  First, the Court has already found that the claims against EPA

28  are legally deficient, and the PSAC does not address any of the inadequacies previously identified by this

1  Court.  Second, Plaintiff's PSAC seeks to improperly join six new agency defendants and fourteen new

2  cities and counties as plaintiffs.  Third, assuming the Court finds that joinder is proper, the claims of at

3  least seven of the Current or New Proposed Plaintiffs would be futile under the claims-splitting doctrine.

4  **A.    The Court Should Deny Leave To Amend Because All Claims Against EPA Would**
   **Be Subject To Dismissal**

5

6  The Court should deny leave to amend because the alleged claims against EPA in the PSAC are

7  futile.[4]  This Court previously found that the claims related to EPA "fail" because EPA revised its General

8  Terms and Conditions on August 25, 2025 and "there is no evidence that the EPA is still enforcing its DEI

9  Conditions or interprets its Anti-Discrimination Condition to prohibit promotion of DEI."  PI Order at 11.

10  The Court based this decision on its review of Current Plaintiffs' own request for judicial notice, which

11  established that EPA revised its General Terms and Conditions on August 25, 2025 to remove reference

12  to DEI.  *Id.* (citing Plaintiffs' Request for Judicial Notice, ECF No. 36-24 at Ex. Z).

13  The PSAC fails to state a valid claim against EPA since the only grant condition at issue in the

14  claims against EPA—the DEI provision—is no longer operable.  *See* PI Order at 11 & ECF No. 35-24 at

15  Ex. Z (stating the revised Federal Anti-Discrimination General Term and Condition "applies to all new

16  awards and funding amendments (incremental and supplemental) made on or after April 3, 2025").  As

17  noted above, EPA revised its General Terms and Conditions in August 2025 and those revisions apply to

18  any grants awarded on or after April 3, 2025.[5]  Indeed, notwithstanding the fact that the Current Plaintiffs

19  are aware that EPA revised its General Terms and Conditions on August 25, 2025, the PSAC continues to

20  cite the outdated terms and conditions (PSAC ¶¶ 565-68), and it does not even mention EPA's subsequent

21  revision—a revision that the Current Plaintiffs themselves brought to the Court's attention.  In short, there

22  are no facts alleged in the PSAC that could possibly alter this Court's prior finding that the Current

23  Plaintiffs' claims against EPA are legally deficient.  PI Order at 11.  And to the extent the New Proposed

24

25  [4] Although the PSAC also fails to allege *facts* about grant program terms and conditions specific

26  to FRA, NHTSA, and FEMA, the Current Defendants are not presently advancing a futility argument on
   that basis with respect to those New Proposed Defendants.

27  [5] This lawsuit purports to challenge non-DEI-related grant conditions imposed by other agencies,
   but the allegations in the PSAC related to EPA are limited to a DEI grant condition that is inoperable, and

28  neither Current nor New Proposed Plaintiffs have identified a specific grant agreement with the challenged
   term and condition.  *See* PSAC ¶¶ 565-68.

1  Plaintiffs City of Atlanta, City of Beaverton, City of Hillsboro, City of Santa Clara, City of Santa Cruz,

2  City of Sunnyvale, and County of Los Angeles seek to assert claims against EPA, their claims would fail

3  for the same reason—the EPA no longer imposes the DEI condition upon which the New Proposed

4  Plaintiffs' claims are premised. *See id.*

5      Simply stated, the claims against EPA in the PSAC are futile, and leave to amend should be denied.

6  Thus, far from allowing a further amendment permitting claims that the Court has already determined are

7  futile to proceed, the Court should dismiss EPA from this lawsuit, with prejudice. If the claims against

8  EPA are not otherwise dismissed, EPA intends to file a formal motion to dismiss in the near future.

9      **B.    The Court Should Deny Leave To Amend Because The PSAC Seeks To Improperly Join Six New Agency Defendants And Fourteen New Plaintiffs**

10

11      Under Federal Rule of Civil Procedure 20(a), joinder is appropriate where "(1) the plaintiffs

12  asserted a right to relief arising out of the same transaction and occurrence and (2) some question of law

13  or fact common to all the plaintiffs will arise in the action." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271,

14  1296 (9th Cir. 2000); Fed. R. Civ. P. 20(a). "If the test for permissive joinder is not satisfied, a court, in

15  its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the

16  severance." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). Under Federal Rule of Civil

17  Procedure 21, the Court has broad discretion to sever any claim against a party. Fed. R. Civ. P. 21;

18  *Coleman*, 232 F.3d at 1297. In deciding whether severance is appropriate, courts typically consider

19  "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present

20  some common questions of law or fact; (3) whether settlement of the claims or judicial economy would

21  be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different

22  witnesses and documentary proof are required for the separate claims." *Hernandez v. City of San Jose*,

23  No. 16-cv-03957-LHK, 2017 WL 2081236, at *4 (N.D. Cal. May 15, 2017) (quoting *SEC v. Leslie*,

24  No. 07-cv-3444-JF, 2010 WL 2991038, at *4 (N.D. Cal. July 29, 2010), *clarified on denial of*

25  *reconsideration*, 2010 WL 3259375 (N.D. Cal. Aug. 18, 2010)).

26      Although the Motion claims that the PSAC should be allowed because it "challenges materially

27  similar grant conditions" (Mot. at 5), that conclusion is belied by the fact that the Motion seeks to add six

28  new agency defendants to this lawsuit. An amendment seeking to add new defendants is held to a higher

1    standard in the Ninth Circuit than an amendment seeking to add claims. *Union Pac. R. Co.*, 950 F.2d at

2    1432. This higher standard demonstrates that amendment (and joinder) is improper here.

3           While proposed claims against New Proposed Defendants FRA and NHTSA arguably are related

4    to the current claims because those entities are "operating administrations" within DOT (PSAC n.1), four

5    of the New Proposed Defendants—DHS, FEMA, DOI, and DOJ—are executive agencies that are entirely

6    new to this proceeding, each of which has distinct authorizing statutes, grant programs, and grant

7    conditions. The factual background covering the relevant statutory authorization, grant programs, and

8    grant conditions requires more than 120 paragraphs of explanation in the PSAC and is thus far from being

9    "materially similar" to the existing grant programs, as Plaintiffs contend. *See* PSAC ¶¶ 364-463 & 569-

10   598 (alleging facts regarding DHS, FEMA, DOI, & DOJ). And the grant programs of the new defendant

11   operating administrations of DOT (FRA and NHTSA) are authorized by different statutory frameworks,

12   each of which would require individualized scrutiny to determine whether the proposed new claims are

13   plausible. *Id.* ¶¶ 283-292.

14          Claims challenging a federal agency's statutory authority to add conditions to funding inevitably

15   arise out of separate transactions or occurrences and are thus improperly joined. *See Chippewa Cree Tribe*

16   *of Rocky Boy's Rsrv., Montana v. U.S. Dep't of Interior*, 900 F.3d 1152, 1156 (9th Cir. 2018) (government

17   must conduct investigation to determine if grantee violated grant conditions prior to reclaiming the funds).

18   And to assess the "coercive" nature of a funding condition, an adjudicator must assess a locality's policies

19   to see if they are in conflict with a funding condition and may need to review what portion of the locality's

20   budget the conditioned funding effects. *See S. Dakota v. Dole*, 483 U.S. 203, 211 (1987) ("Our decisions

21   have recognized that in some circumstances the financial inducement offered by Congress might be so

22   coercive as to pass the point at which 'pressure turns into compulsion.'") (internal citation omitted);

23   *Chippewa Cree Tribe*, 900 F.3d at 1161 (finding that while the stimulus grant funded a project that was

24   important to the Tribe, an offer is not coercive just because it is attractive); *State v. DOJ*, 951 F.3d 84, 116

25   (2d Cir. 2020) (analyzing what percentage of a local government budget may be impacted by federal

26   withholding to evaluate plaintiffs' Tenth Amendment commandeering claims).

27          Because the claims in the PSAC—especially claims alleged against the New Proposed

28   Defendants—do not arise out of the same transaction and occurrence and will require an individualized

analysis to determine the nature and extent to which the claims establish a plausible entitlement to relief, they would be improperly joined. A proposed amendment to misjoin new parties and claims that subsequently should be severed should be rejected as futile. *See Stith v. California*, No. 23-cv-947, 2023 WL 4274043, at *3-4 (E.D. Cal. June 29, 2023) (holding severance of claims was warranted because "[t]he joinder of multiple Plaintiffs with varying factual allegations does not promote judicial economy and confuses and complicates the issues because there are questions of fact and causation unique to each of their alleged injuries"); *see also Union Pac. R. Co.*, 950 F.2d at 1432 (applying a higher standard to motions for leave to add defendants).

Indeed, this Court implicitly reached the same conclusion when it declined to relate *San Diego Housing Authority* to the above-captioned case. *See* ECF No. 56. If cases brought by different plaintiffs that nevertheless involve the exact same agency defendants and many of the same grant programs are not related for purposes of Civil Local Rule 3-12—as this Court found with respect to *San Diego Housing Authority*—a proposed amendment to add fourteen new plaintiffs that also seeks to add six new agency defendants (each with a separate statutory background, grant programs, and grant conditions) similarly would fail to meet the "same transaction and occurrence" requirement for joinder under Federal Rule of Civil Procedure 20(a).[6]

Finally, allowing 14 additional cities and counties from across the country to join this action after this Court issued a preliminary injunction—following the addition of four new plaintiffs immediately after this Court issued the temporary restraining order—inevitably raises the specter of forum- and judge-shopping. There is no reason that these new claims by new plaintiffs against new defendants could not have been filed as a separate action or actions in the appropriate forum where those plaintiffs reside (again, more than half of the New Proposed Plaintiffs are not located in this District). If the 18 plaintiffs who either already joined or now seek to join following the entry of preliminary injunctive relief actually believe that their claims arise out of the same transaction and occurrence as the Original Plaintiffs' claims,

---

[6] Current Defendants recognize that another court in this District recently granted leave to amend to add 34 new plaintiffs in a grant conditions case following entry of a preliminary injunction. *City & Cnty. of San Francisco v. Trump*, No. 25-cv-01350-WHO, 2025 WL 2243619 (N.D. Cal. Aug. 5, 2025). That decision is distinguishable insofar as it—unlike this case—did not involve the addition of six new agency defendants, each of which involved new grant programs and grant conditions.

1    they should have (and could have) entered the litigation at the outset. Instead, they are seeking to attach

2    themselves to an existing complaint and pre-select the judge assignment. These forum-shopping concerns

3    are especially troubling for the 75% of the Current or New Proposed Plaintiffs that *are not located in the*

4    *Northern District of California*—there is no reason that municipalities and counties such as the City of

5    Atlanta, the County of Los Angeles, the County of San Diego, or the City of Beaverton could not have

6    initiated their claims in their home districts. Nor is there a convincing reason that this District should take

7    on the mantle of a super-grant-conditions destination where out-of-district plaintiffs can obtain court

8    orders dictating how the federal government administers grants to local governments from New York to

9    San Diego and Atlanta to Corvallis (and many places in between), especially for entities that wait until

10   after a court issues preliminary relief to join the fray.

11   ## C.    Many Of The Current Or New Proposed Plaintiffs' Claims Are Subject To Dismissal
12   For Improper Claims Splitting

13   If the Court finds that joinder is proper under Federal Rule of Civil Procedure 20(a), any grant

14   conditions claims asserted by the County of Los Angles, City of Sacramento, City of Santa Cruz, City of

15   Saint Paul, County of Marin, County of San Diego, and City of Salem in the present lawsuit would be

16   rendered futile under the claim-splitting doctrine because those entities or their privies are currently

17   litigating duplicative grant conditions claims in other federal court lawsuits.

18   A party seeking to enforce a claim "is not at liberty to split up his demand and prosecute it by

19   piecemeal." *Baltimore S.S. Co. v. Philips*, 274 U.S. 316, 320 (1927) (quoting *Stark v. Starr*, 94 U.S. 477,

20   485 (1876)); *see also Chinn v. Giant Food, Inc.*, 100 F. Supp. 2d 331, 333 (D. Md. 2000) ("The cases are

21   legion that a party may not institute new actions duplicating existing litigation.") (citing cases); *WMATA*

22   *v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) ("Considerations of comity and orderly administration

23   of justice dictate that two courts of equal authority should not hear the same case simultaneously"). The

24   rule against claim splitting is a "facet of the res judicata doctrine." *Davis v. Sun Oil Co.*, 148 F.3d 606,

25   613 (6th Cir. 1998) (per curiam). Thus, "the appropriate inquiry in the claim-splitting context is whether,

26   assuming that the first suit were already final, the second suit could be precluded pursuant to claim

27   preclusion." *Hartsel Springs Ranch of Colorado v. Bluegreen Corp.*, 296 F.3d 982, 987 n.1 (10th Cir.

28   2002); *see also Shaver v. F.W. Woolsworth Co.*, 840 F.2d 1361, 1365 (7th Cir. 1988) ("This application

1   of the doctrine of res judicata prevents the splitting of a single cause of action and the use of several

2   theories of recovery as the basis for separate suits."). The difference is that the rule against claim splitting

3   applies whether or not a final judgment has been entered in one of the actions. *See Hartsel Springs*, 296

4   F.3d at 987 ("It is clear that a motion to dismiss based on improper claim-splitting need not — indeed,

5   often cannot — wait until the first suit reaches final judgment."). The ultimate objectives of the rule are

6   "to protect the defendant from being harassed by repetitive actions based on the same claim" and promote

7   judicial economy and convenience. *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 328 (9th

8   Cir. 1995); Restatement (Second) of Judgments § 24. The rule also "exists to allow district courts to

9   manage their docket." *Wyles v. Sussman*, 661 F. App'x 548, 550 (10th Cir. 2016).

10      In *Adams v. California Department of Health Services*, the Ninth Circuit held a repetitive action

11  may be dismissed for improper claim splitting. 487 F.3d 684, 688 (9th Cir. 2007), *overruled on other*

12  *grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008) ("Plaintiffs generally have no right to maintain

13  two separate actions involving the same subject matter at the same time in the same court and against the

14  same defendant.") (citations and internal quotations marks omitted); *see also Mendoza v. Amalgamated*

15  *Transit Union International*, 30 F.4th 879, 886 (9th Cir. 2022) (reaffirming the Ninth Circuit's rule against

16  claim splitting and its test for determining when improper claim-splitting is present). "Under the federal

17  claim-preclusion principles that apply in these federal-question-based suits, the bar of claim-splitting is

18  applicable if the second suit involves (1) the same causes of action as the first; and (2) the same parties or

19  their privies." *Adams*, 487 F.3d at 689; *Mendoza*, 30 F.4th at 886.

20      To the extent the Court finds that the proposed claims in the PSAC are appropriately joined in the

21  above-captioned lawsuit because they arise out of the same transaction and occurrence (notwithstanding

22  that those claims involve different plaintiffs and separate agencies/departments, statutory authorizations,

23  grant programs, and grant conditions), the claims-splitting doctrine would require dismissal of any grant

24  conditions claims asserted by the County of Los Angeles, City of Sacramento, City of Santa Cruz, City of

25  Saint Paul, County of Marin, County of San Diego, and City of Salem in the above-captioned lawsuit.

26  Each of those entities—or their privies (in the case of County of San Diego and the City of Salem)—is

27  actively pursuing duplicative federal court litigation challenging what they purport to be materially similar

28  (if not identical) grant conditions in *King County*, *CCSF*, and/or *San Diego Housing Authority*.

1    These proposed plaintiffs cannot argue that the claims are simultaneously properly joined here and

2    not subject to the claims-splitting doctrine.  This is an either-or proposition.  Either joinder *is improper*

3    because these claims do not arise out of the same transaction and occurrence; in that case, the inquiry

4    would be at an end, and the Court should deny leave to amend.  Or joinder *is proper* under Federal Rule

5    of Civil Procedure 20(a) because the claims arise out of the same transaction and occurrence; in that case,

6    well-established claims preclusion principles would bar the duplicative proposed amendment by those

7    same entities.  *Adams*, 487 F.3d at 689; *Mendoza*, 30 F.4th at 886.  Simply stated, any grant conditions

8    claims asserted by the County of Los Angeles, City of Sacramento, City of Santa Cruz, City of Saint Paul,

9    County of Marin, County of San Diego, and City of Salem are subject to dismissal because such claims

10   are either (1) improperly joined or (2) subject to the claims-splitting doctrine.

11   **V.    If The Court Allows Amendment, The Case Should Be Transferred To The United States
           District Court For The District Of Columbia In Its Entirety Under 28 U.S.C. § 1404(a)**

12

13   If the Court permits the Current Plaintiffs to file the PSAC (thereby continuing to add out-of-

14   district plaintiffs to this Northern District of California lawsuit), fully 75% of the plaintiffs in this case

15   will be located outside of this District, there would be no distinct local interest in the lawsuit, and there

16   would thus be no compelling reason for this Court to determine how the federal government may condition

17   federal funding to local municipalities and counties nationwide.  But there is a United States District Court

18   that would be a proper venue, where all defendants reside, and where all grant conditions decisions at

19   issue in this lawsuit were made.  That district—the District Court for the District of Columbia—thus has

20   a compelling interest in how those federal funding decisions are made and applied on a nationwide basis.

21   Accordingly, if the Court is inclined to permit amendment here, the entire lawsuit should be transferred

22   to the District Court for the District of Columbia under 28 U.S.C. § 1404(a).[7]

23   In analyzing a transfer motion under Section 1404(a), a court must determine, as a threshold matter,

24   if the action subject to the motion to transfer "might have been brought" in the transferee district (*i.e.*, the

25

26   ───────────────
     [7] In the alternative, the lawsuit could be transferred to the Western District of Washington under
     the first-to-file rule because the *King County* litigation is proceeding there.  *May Chen v. Xiyan Zhang*,

27   No. 24-cv-03942-JST, 2024 WL 4894294, at *3 (N.D. Cal. Nov. 25, 2024); *Alltrade, Inc. v. Uniweld
     Prods. Inc.*, 946 F.2d 622, 623 (9th Cir. 1991).  Although *CCSF* was filed before *King County*, *King*

28   *County* already includes more of the defendants sued herein and broadly challenges the same grant
     programs and conditions.

district to which the moving party seeks to transfer the action).  *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).  Next, a court must analyze whether the transfer would serve "the interest of justice" and "the convenience of parties and witnesses."  *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). Courts decide motions for Section 1404(a) transfer "based on an individualized, case-by-case consideration of convenience and fairness."  *Southard*, 2023 WL 6959145, at *3.   In analyzing convenience, courts may consider:

> (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum.

*Id.* (quoting *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)).

Here, this lawsuit could have been filed in the District Court for the District of Columbia because that is where all Current and New Proposed Defendants reside[8] (28 U.S.C. § 1391(e)(1)(A)) and where "a substantial part of the events or omissions giving rise to the claim[s] occurred" (28 U.S.C. § 1391(e)(1)(B)); *see also* PSAC ¶ 2 (citing 28 U.S.C. § 1391(e)(1) as the basis for venue for this lawsuit).

The individualized, case-by-case consideration of convenience and fairness factors at issue in this case weigh heavily in favor of transfer to the District Court for the District of Columbia.

**The plaintiffs' choice of forum is accorded minimal consideration where, as here, the forum would lack a significant connection to the action**:  Although courts traditionally give deference to a plaintiff's choice of forum, that deference "is slight, if any, when . . . the plaintiff's chosen forum lacks a significant connection to the events that gave rise to the complaint."  *Morris v. Safeco Ins. Co.*, No. 07-cv-2890-PJH, 2008 WL 5273719, at *3 (N.D. Cal. Dec. 19, 2008); *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (plaintiff's chosen venue is given substantially less deference if the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter of the litigation); *Southard*, 2023 WL 6959145, at *3 ("If the operative facts have not occurred within the

---

[8] *See Zhang v. Chertoff*, No. 08-cv-02589, 2008 WL 5271995, at *3 (N.D. Cal. Dec. 15, 2008) (collecting cases); *Rugila v. Mayorkas*, No. 24-cv-01218-MMC, 2024 WL 1446457, at *1 (N.D. Cal. Apr. 2, 2024) ("Under established caselaw, where, as here, an action is brought against a federal officer in his or her official capacity, the officer's residency is the place in which the federal agency is located.") (collecting cases).

forum and the forum has no interest in the parties or subject matter, the plaintiff's forum choice is entitled to only minimal consideration") (citation and quotation marks omitted).

The Current Defendants have not previously moved to transfer this lawsuit, and likely would not seek transfer if the case remains as currently pleaded in the FAC.  But the proposed addition of eight new out-of-district plaintiffs in the PSAC—which occurred only months *after* this Court issued a preliminary injunction order—would create a material change in the local nature of this lawsuit.  Indeed, this Court previously has observed that the "policy behind not deferring to a nonresident plaintiff's choice of venue appears tied into the notion that plaintiffs should be discouraged from forum shopping."  *Christison v. Biogen Idec, Inc.*, No. 11-cv-4382 RS, 2011 WL 5600510, at *1 (N.D. Cal. Nov. 17, 2011) (quoting *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1107 (N.D. Cal. 2001)).  As such, "if there is any indication that a plaintiff is forum shopping, its choice will be given little deference."  *Id.*

Here, other than the fact that a dwindling percentage of plaintiffs is located in this District (if amendment is allowed, only 25% will be), there is no significant connection between this District and the operative facts of this lawsuit; indeed, none of the federal government's grant conditions decisions at issue here was made in this District.

**The District of Columbia has a local interest in any merits adjudication of this controversy**: Each of the agency defendants in this lawsuit has its headquarters in the District of Columbia, and that is where all the federal grant condition decisions at issue in this lawsuit occurred.  As such, this case involves local interests in the District of Columbia.  *Cf. Van Mourik v. Big Heart Pet Brands, Inc.*, No. 17-cv-03889-JD, 2018 WL 3549122, at *1 (N.D. Cal. July 24, 2018) (finding a "local interest in having localized controversies decided at home.") (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).  In contrast, while the Northern District of California may have a local interest in adjudicating grant conditions disputes for the 25% of the proposed plaintiffs that are located here, it has no interest in adjudicating grant conditions lawsuits for the 75% of the proposed plaintiffs who are located outside of this District.[9]  *See Enomoto v. Siemens Indus.*, No. 23-cv-03779-JSC, 2023 WL 6278876, at *6

---

[9] *I.e.,* City of Fresno, City of South Lake Tahoe, City of Saint Paul, County of Sacramento, County of Monroe, Monroe County Airport Authority, County of San Diego, City of Atlanta, City of Beaverton, City of Corvallis, City of Salem, City of Stockton, City of Vacaville, County of Los Angeles, and County of Santa Barbara.

1    (N.D. Cal. Sept. 25, 2023) (transferring case under Section 1404(a) where the transferee district's "interest

2    in this controversy is much stronger, as the case involves individuals presumably residing there and a

3    corporation employing people there").  This factor weighs significantly in favor of transfer to the District

4    Court for the District of Columbia.

5         **The interest of justice and judicial economy strongly favor transfer to the District Court for**

6    **the District of Columbia**:  "The 'interests of justice' consideration is the most important factor a court

7    must consider, and may be decisive in a transfer motion even when all other factors point the other way."

8    *Enomoto*, 2023 WL 6278876, at *6 (quoting *Gerin v. Aegon USA, Inc.*, No. 06-cv-5407-SBA, 2007 WL

9    1033472, at *6 (N.D. Cal. Apr. 4, 2007)).  Transferring this case to the District Court for the District of

10   Columbia would allow any adjudication of this case to occur in the forum where all the federal grant

11   funding decisions were made, thereby "ensur[ing] systemic integrity and fairness in the judicial process,

12   and the efficient administration of the court system."  *Our Children's Earth Found.*, 2008 WL 3181583,

13   at *5-6 (cleaned up).  And the plaintiffs here cannot raise convincing concerns about multiplicity of

14   lawsuits, given that they (or their privies) are simultaneously litigating duplicative claims in at least three

15   other grant conditions cases (*King County*, *CCSF*, and *San Diego Housing Authority*).  *See supra* Parts II.B

16   and IV.C.

17        **The convenience of witnesses and access to proof weigh in favor of transfer**:  "'The

18   convenience of the witnesses . . . is often the most important factor' in ruling on a motion to transfer venue

19   under § 1404(a)."  *Southard*, 2023 WL 6959145, at *4 (quoting *Grossman v. Johnson & Johnson*, No. 14-

20   cv-03557-VC, 2015 WL 1743116, at *1 (N.D. Cal. Apr. 13, 2015)).  Here, given the wildly disparate

21   geographic makeup of the plaintiffs and proposed plaintiffs, they cannot demonstrate that the convenience

22   of witnesses and access to proof weigh in favor of keeping this lawsuit in the Northern District of

23   California.  And, in contrast to the nationwide scope of witnesses and evidentiary proof on the plaintiff

24   side, all Defendants, and their entire administrative records, are located in the District of Columbia.  As

25   such, if leave to amend is granted, this case will "find[] its center of gravity" in the District Court for the

26   District of Columbia because the relevant grant condition decisions indisputably all occurred in the

27   District of Columbia and the administrative record is located there.  *Karlen v. Wells Fargo Bank, N.A.*,

28   No. 22-cv-02127-JSC, 2022 WL 2756671, at *3 (N.D. Cal. July 14, 2022) (quoting *Johns v. Panera Bread*

*Co.*, No. 08-cv-1071-SC, 2008 WL 2811827, at *5 (N.D. Cal. July 21, 2008)).

Accordingly, assuming this Court grants leave to amend, it should transfer the lawsuit, in its entirety, to the District Court for the District of Columbia under Section 1404(a) in the interest of justice and for the convenience of the parties and witnesses.

## VI.    Conclusion

For the foregoing reasons, the Court should deny Plaintiffs' motion for a leave to file a second amended complaint.  In the alternative, and to the extent the Court finds that amendment is appropriate, the lawsuit should be transferred to the United States District Court for the District of Columbia.

DATED:  January 2, 2026                                  Respectfully submitted,

                                                         CRAIG H. MISSAKIAN
                                                         United States Attorney

                                                         */s/ Jevechius D. Bernardoni*
                                                         JEVECHIUS D. BERNARDONI
                                                         Assistant United States Attorney

                                                         Attorneys for Defendants