ANDREW JANZ (SBN 287672)
Fresno City Attorney
andrew.janz@fresno.gov
CITY OF FRESNO
2600 Fresno Street
Fresno, CA 93721
Telephone: (559) 621-7500
Facsimile: (559) 457-1084
*Attorney for Plaintiff*
CITY OF FRESNO

KELSEY MCELVEEN (MN BN 0396744)*
Assistant City Attorney
Kelsey.McElveen@ci.stpaul.mn.us
SAINT PAUL CITY ATTORNEY'S OFFICE
400 City Hall and Courthouse
15 Kellogg Boulevard West
Saint Paul, Minnesota 55102
Telephone: (651) 266-8710
Facsimile: (651) 298-5619
*Attorneys for Plaintiff*
CITY OF SAINT PAUL
* *Appearing pro hac vice*

MELISSA C. ALLISON (MA BN 657470)*
mallison@andersonkreiger.com
CHRISTINA S. MARSHALL
(MA BN 688348)*
cmarshall@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, Floor 21
Boston, MA 02109
Telephone: (617) 621-6500
*Attorneys for Plaintiffs*
COUNTY OF MONROE
MONROE COUNTY AIRPORT
AUTHORITY
* *Appearing pro hac vice*

JONATHAN V. HOLTZMAN (SBN 99795)
jholtzman@publiclawgroup.com
JAMES R. ROSS (SBN 149199)
jross@publiclawgroup.com
RYAN P. McGINLEY-STEMPEL (SBN 296182)
rmcginleystempel@publiclawgroup.com
JAKE D. FREITAS (SBN 341837)
jfreitas@publiclawgroup.com
MARIBEL LOPEZ (SBN 340907)
mlopez@publiclawgroup.com
RENNE PUBLIC LAW GROUP
350 Sansome Street, Suite 300
San Francisco, California 94104
Telephone: (415) 848-7200
Facsimile: (415) 848-7230
*Attorneys for Plaintiffs*
CITY OF FRESNO; CITY OF EUREKA; CITY OF
SOUTH LAKE TAHOE; COUNTY OF
SACRAMENTO; COUNTY OF MONROE;
MONROE COUNTY AIRPORT AUTHORITY;
COUNTY OF SAN DIEGO, COUNTY OF MARIN;
CITY OF ALAMEDA; CITY OF REDWOOD
CITY; CITY OF ATLANTA; CITY OF
BEAVERTON; CITY OF CORVALLIS; CITY OF
HILLSBORO; CITY OF MOUNTAIN VIEW; CITY
OF SALEM; CITY OF SAN MATEO; CITY OF
SANTA CLARA; CITY OF SANTA CRUZ; CITY
OF STOCKTON; CITY OF SUNNYVALE; CITY
OF VACAVILLE; COUNTY OF LOS ANGELES;
COUNTY OF SANTA BARBARA

BRIAN E. WASHINGTON (SBN 146807)
Marin County Counsel
KATE K. STANFORD (SBN 302825)
Deputy County Counsel
kate.stanford@marincounty.gov
EDWARD F. SEARS (SBN 297775)
Deputy County Counsel
ned.sears@marincounty.gov
OFFICE OF THE COUNTY COUNSEL
COUNTY OF MARIN
3501 Civic Center Drive, Room 275
San Rafael, CA 94903
Telephone: (415) 473-6117
Facsimile: (415) 473-3796
*Attorneys for Plaintiff*
COUNTY OF MARIN

RENNE PUBLIC LAW GROUP
Attorneys at Law

1  ALLEGRA J. LAWRENCE
   (GA BN 439797)**
2  lawrence@khlawfirm.com
   MICHELLE McCLAFFERTY
3  (ASB-0880-N10I)**
   McClafferty@khlawfirm.com
4  KREVOLIN & HORST, LLC
   1201 West Peachtree St., Suite 3500
5  Atlanta, GA 30309
   Telephone: (404) 400-3350
6  *Attorneys for Plaintiff*
   CITY OF ATLANTA
7  **Application for pro hac vice forthcoming

   YIBIN SHEN (SBN 233545)
   Alameda City Attorney
   yshen@alamedaca.gov
   CARA SILVER (SBN 136992)
   Special Counsel
   csilver@alamedaca.gov
   DANIEL J. TURNER (SBN 336499)
   Deputy City Attorney
   dturner@alamedaca.gov
   2263 Santa Clara Avenue, Rm 280
   Alameda, CA 94501
   Telephone: (510) 747-4750
   *Attorneys for Plaintiff*
   CITY OF ALAMEDA

8

9            IN THE UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11  CITY OF FRESNO; CITY OF EUREKA; CITY
    OF SOUTH LAKE TAHOE; CITY OF SAINT
12  PAUL; COUNTY OF SACRAMENTO; COUNTY
    OF MONROE; MONROE COUNTY AIRPORT
13  AUTHORITY; COUNTY OF SAN DIEGO,
    COUNTY OF MARIN; CITY OF ALAMEDA;
14  CITY OF REDWOOD CITY; CITY OF
    ATLANTA; CITY OF BEAVERTON; CITY OF
15  CORVALLIS; CITY OF HILLSBORO; CITY OF
    MOUNTAIN VIEW; CITY OF SALEM; CITY OF
16  SAN MATEO; CITY OF SANTA CLARA; CITY
    OF SANTA CRUZ; CITY OF STOCKTON; CITY
17  OF SUNNYVALE; CITY OF VACAVILLE;
    COUNTY OF LOS ANGELES; COUNTY OF
18  SANTA BARBARA,

19          Plaintiffs,

20  v.

21  SCOTT TURNER in his official capacity as
    Secretary of the U.S. Department of Housing and
22  Urban Development; the U.S. DEPARTMENT OF
    HOUSING AND URBAN DEVELOPMENT;
23  SEAN DUFFY in his official capacity as Secretary
    of the U.S. Department of Transportation; the U.S.
24  DEPARTMENT OF TRANSPORTATION;
    MARCUS J. MOLINARO in his official capacity
25  as the Administrator of the Federal Transit
    Administration ; the FEDERAL TRANSIT
26  ADMINISTRATION; GLORIA M. SHEPHERD in
    her official capacity as the Executive Director of
27  the Federal Highway Administration; the
    FEDERAL HIGHWAY ADMINISTRATION;
28  BRYAN BEDFORD in his official capacity as the

    Case No.: 3:25-cv-07070-RS

    **PLAINTIFFS' NOTICE OF MOTION AND
    MOTION FOR SECOND PRELIMINARY
    INJUNCTION AND FOR PRELIMINARY
    RELIEF UNDER 5 U.S.C. § 705**

    Complaint Filed: August 20, 2025
    FAC Filed: September 8, 2025
    SAC Filed: February 9, 2026

    Hon. Richard Seeborg

    Hearing Date:   April 16, 2026
    Hearing Time:   1:30 p.m.
    Location:       Zoom Videoconference

RENNE PUBLIC LAW GROUP
Attorneys at Law

1  Administration of the Federal Aviation
   Administration; the FEDERAL AVIATION
2  ADMINISTRATION; DAVID FINK, in his official
   capacity as the Administrator of the Federal
3  Railroad Administration; the FEDERAL
   RAILROAD ADMINISTRATION; JONATHAN
4  MORRISON in his official capacity as the
   Administrator of the National Highway Traffic
5  Safety Administration; the NATIONAL
   HIGHWAY TRAFFIC SAFETY
6  ADMINISTRATION; ROBERT F. KENNEDY,
   JR. in his official capacity as Secretary of the U.S.
7  Department of Health and Human Services; U.S.
   DEPARTMENT OF HEALTH AND HUMAN
8  SERVICES; LEE ZELDIN in his official capacity
   as Administrator of the Environmental Protection
9  Agency; and the U.S. ENVIRONMENTAL
   PROTECTION AGENCY,

10        Defendants.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RENNE PUBLIC LAW GROUP
Attorneys at Law

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ............................................................................... ii

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION ........................ vi

I. ....... INTRODUCTION .................................................................................... 1

II. ...... STATEMENT OF FACTS ........................................................................ 1

III. ..... LEGAL STANDARD ............................................................................... 4

IV. ..... ARGUMENT .......................................................................................... 4

    A.    Preliminary Injunctive Relief Should Extend to Additional Plaintiffs and Against New Defendants ................................................................. 4

        1.    The Additional Plaintiffs Are Likely to Succeed on the Merits of Their Claims ................................................................. 4

        2.    Additional and Existing Plaintiffs Will Suffer Immediate and Irreparable Harm in the Absence of Injunctive Relief ................... 9

        3.    The Balance of Equities and Public Interest Favor Both Additional and Existing Plaintiffs ................................................ 12

    B.    The Agency Action in Question Should Likewise Be Postponed Under the APA Pending Conclusion of this Action .................................... 12

    C.    Defendants' Previous Arguments Regarding Claim Splitting and Venue Transfer Should Not Forestall Extending Preliminary Relief to the Additional Plaintiffs .. 14

        1.    The Claim Splitting Doctrine Does Not Bar Plaintiffs' Claims ............... 14

        2.    Transfer Is Unwarranted ........................................................ 18

V. ...... CONCLUSION ...................................................................................... 21

RENNE PUBLIC LAW GROUP<br>Attorneys at Law

## <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*Adobe Sys. Inc. v. Wowza Media Sys., LLC,*
    72 F. Supp. 3d 989 (N.D. Cal. 2014) .....................................................................17

*Amini Innovation Corp. v. JS Imports, Inc.,*
    497 F. Supp. 2d 1093 (C.D. Cal. 2007) ..................................................................19

*Anunciato v. Trump,* No. 20-cv-07869-RS,
    2020 WL 13547186 (N.D. Cal. Dec. 23, 2020).............................................18, 19, 20

*Brenston v. Dedelow,*
    No. 2:03-cv-156, 2005 WL 2204870 (N.D. Ind. Sept. 7, 2005).............................17

*California v. United States Dep't of Transportation,*
    No. 25-CV-208-JJM-PAS,
    2025 WL 3072541 (D.R.I. Nov. 4, 2025)...............................................................13

*In re Chamber of Com. of United States of Am.,*
    105 F.4th 297 (5th Cir. 2024) .................................................................................21

*City & Cnty. of San Francisco v. Trump,*
    25-cv-01350-WHO, 2025 WL 2426858 (N.D. Cal. Aug. 22, 2025) ........................9

*City & Cnty. of San Francisco v. Trump,*
    783 F. Supp. 3d 1148 (N.D. Cal. 2025) ...............................................................9, 13

*City and County of San Francisco. v. Trump,*
    No. 3:25-cv-01350-WHO (N.D. Cal.) .....................................................15, 18, 19

*City of Chicago v. United States Dep't of Just.,*
    No. 25 C 13863, 2026 WL 114294 (N.D. Ill. Jan. 15, 2026) ................................13

*Clements v. Housing Auth. of the Borough of Princeton,*
    532 F. Supp. 2d 700 (D.N.J. 2007) .........................................................................17

*Cnty. of Santa Clara v. Noem,* No. 25-CV-08330-WHO,
    2025 WL 3251660 (N.D. Cal. Nov. 21, 2025) .......................................................13

*Cnty. of Santa Clara v. Trump,*
    250 F. Supp. 3d 497 (N.D. Cal. 2017) ....................................................................10

*Consumer Financial Protection Bureau v. Nationwide Biweekly Administration, Inc.,*
    No. 15-cv-02106-RS, 2015 WL 4463790 (N.D. Cal. July 21, 2015) .....................18

*Doe v. Epic Games, Inc.,*
    435 F. Supp. 3d 1024 (N.D. Cal. 2020) ..................................................................20

RENNE PUBLIC LAW GROUP
Attorneys at Law

-ii-

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
  82 F.4th 664 (9th Cir. 2023) ............................................................................4

*Geo Group, Inc. v. Newsom*,
  50 F.4th 745 (9th Cir. 2022) ............................................................................4

*Hous. Auth. of City of Los Angeles v. City of Los Angeles*,
  38 Cal. 2d 853 (1952) ....................................................................................16

*Illinois v. Fed. Emergency Mgmt. Agency*,
  801 F. Supp. 3d 75 (D.R.I. 2025)...................................................................13

*Illinois v. Noem*, No. 1:25-CV-00495-MSM-PAS,
  2025 WL 3707011 (D.R.I. Dec. 22, 2025) ...................................................13

*Lynch v. San Francisco Housing Auth.*,
  55 Cal. App. 4th 527 (1997) ..........................................................................16

*Martin Luther King, Jr. Cnty.*, No. 2:25-CV-814,
  2025 WL 1582368 (2025)................................................................................6

*Martin Luther King, Jr. County v. Turner*,
  No. 25-3664 (9th Cir. 2025) ..............................................................2, 5, 8, 9

*McLemore v. Marin Housing Authority*,
  No. 20-cv-05431-JD, 2021 WL 4124210 (N.D. Cal. Sept. 9, 2021) ...........15

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) ........................................................................12

*Mendoza v. Amalgamated Transit Union Int'l*,
  30 F.4th 879 (9th Cir. 2022) ...................................................................15, 17

*Michigan v. Noem*, No. 6:25-CV-02053-AP,
  2025 WL 3720147 (D. Or. Dec. 23, 2025) ...................................................13

*Nat'l TPS All. v. Noem*,
  166 F.4th 739 (9th Cir. 2026) ........................................................................14

*Nat'l TPS Alliance v. Noem*,
  150 F.4th 1000 (9th Cir. 2025) ................................................................4, 12

*New York v. U.S. Dep't of Just.*,
  804 F. Supp. 3d 294 (D.R.I. 2025)................................................................13

*Nken v. Holder*,
  556 U.S. 418 (2009)......................................................................................12

*Ohio v. Environmental Protection Agency*,
  603 U.S. 279 (2024)........................................................................................5

RENNE PUBLIC LAW GROUP
Attorneys at Law

-iii-

*Rhode Island Coal. Against Domestic Violence v. Bondi,*
  794 F. Supp. 3d 58 (D.R.I. 2025) ........................................................................13

*Rhode Island Coal. Against Domestic Violence v. Kennedy*, No. 25-CV-342-MRD-PAS,
  2025 WL 2988705 (D.R.I. Oct. 23, 2025) ...........................................................13

*Roe v. Housing Authority of City of Boulder,*
  909 F. Supp. 814 (D. Colo. 1995) .......................................................................17

*San Diegans for Open Government v. City of San Diego,*
  242 Cal. App. 4th 416 (2015) .............................................................................16

*San Francisco Unified Sch. Dist. v. AmeriCorps*, No. 25-CV-02425-EMC,
  2025 WL 1713360 (N.D. Cal. June 18, 2025) .......................................................5

*Taylor v. Sturgell,*
  553 U.S. 880 (2008) ...........................................................................................17

*Trump v. CASA, Inc.,*
  606 U.S. 831 (2025) ....................................................................................14, 20

*Waldman v. Village of Kiryas Joel,*
  39 F. Supp. 2d 370 (S.D.N.Y. 1999) ...................................................................17

*Washington State Ass'n of Head Start & Early Childhood Assistance & Educ. Program v.
  Kennedy,*
  No. C25-781-RSM, 2026 WL 35858 (W.D. Wash. Jan. 6, 2026) ...........................14

*White v. City of Annapolis by and through City Council,*
  439 F. Supp. 3d 522 (D. Md. 2020) .....................................................................17

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) .........................................................................................9, 12

**Statutes**

5 U.S.C.
  § 705............................................................................................... *passim*
  § 706............................................................................................13
  § 706(2)(A) .....................................................................................5
  § 706(2)(B).....................................................................................8
  § 706(2)(C).....................................................................................6
  § 705............................................................................................12

23 U.S.C.
  § 402.............................................................................................6
  § 405.............................................................................................6

-iv-

28 U.S.C.
 § 1391(e)(1)(C) ................................................................................................18
 § 1404(a) ..........................................................................................................18

42 U.S.C.
 §§ 247b–13a .......................................................................................................6
 § 247d–3b ...........................................................................................................6
 § 254c-8 ...............................................................................................................6
 § 1437u ...............................................................................................................6
 § 4852 .................................................................................................................6

49 U.S.C.
 § 22909 ...............................................................................................................6
 § 46110 ...............................................................................................................5

Cal. Gov't Code
 § 6507 ...............................................................................................................16
 § 6508 ...............................................................................................................16

Cal. Health & Saf. Code
 §§ 34200 et seq. ..........................................................................................15, 16
 § 34240 .............................................................................................................16
 § 34310 .............................................................................................................16

**Other Authorities**

Fed. R. Civ. P.
 65 ......................................................................................................................21
 65(d)(2) .............................................................................................................13

U.S. Constitution, Fifth Amendment ....................................................................8

Renne Public Law Group
Attorneys at Law

-v-

RENNE PUBLIC LAW GROUP
Attorneys at Law

<u>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION**</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take note that on Thursday, April 16, 2026 at 1:30pm via Zoom videoconference and in San Francisco Courthouse, Courtroom 3 – 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 65, Civil Local Rule 65-2, and 5 U.S.C. § 705 for a Second Preliminary Injunction enjoining Defendants U.S. Department of Housing and Urban Development ("HUD"), the Department of Health and Human Services ("HHS"), and the U.S. Department of Transportation ("DOT")—including its operating administrations the Federal Transit Administration ("FTA"), Federal Highway Administration ("FHWA"), and Federal Aviation Administration ("FAA") (collectively, the "Defendants") from imposing or enforcing the unlawful and unauthorized federal grant conditions or any materially similar terms or conditions to any federal funds received by or awarded to the Additional Plaintiffs[1], directly or indirectly.  In addition, all Plaintiffs move the Court to extend the Preliminary Injunction to enjoin additional Defendants DOT operating administrations the Federal Railroad Administration ("FRA") and the National Highway Traffic Safety Administration ("NHTSA").

This Motion presents the following four issues to be decided: (1) whether Plaintiffs have shown a likelihood of success on the merits of their claims that the Federal Grant Conditions violate the United States Constitution; (2) whether Plaintiffs have shown a likelihood of success on the merits of their claims that the Federal Grant Conditions violate the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)-(C); (3) whether Plaintiffs face a likelihood of irreparable harm in the absence of a preliminary injunction; and (4) whether the balance of equities and public interest favor preliminary injunctive relief. Plaintiffs' Motion is based on the supporting Memorandum of Points and Authorities ("MPA") declarations and exhibits in support of the MPA, and all pleadings, arguments, and matters before the Court.

---

[1] "Additional Plaintiffs," newly included in the Second Amended Complaint, *see* Dkt. 68, are the City of Atlanta, City of Beaverton, City of Corvallis, City of Hillsboro, City of Mountain View, City of Salem, City of San Mateo, City of Santa Clara, City of Santa Cruz, City of Stockton, City of Sunnyvale, City of Vacaville, County of Los Angeles, and County of Santa Barbara.

Dated: March 5, 2026

RENNE PUBLIC LAW GROUP


By: _____/s/ Jonathan V. Holtzman_____
        JONATHAN V. HOLTZMAN

Attorneys for Plaintiffs
City of Fresno; City of Eureka; City of South Lake Tahoe; City of Saint Paul; County of Sacramento; County of Monroe; Monroe County Airport Authority; County of San Diego, County of Marin; City of Alameda; City of Redwood City; City of Atlanta; City of Beaverton; City of Corvallis; City of Hillsboro; City of Mountain View; City of Salem; City of San Mateo; City of Santa Clara; City of Santa Cruz; City of Stockton; City of Sunnyvale; City of Vacaville; County of Los Angeles; County of Santa Barbara

Dated: March 5, 2026

FRESNO CITY ATTORNEY'S OFFICE


By: _____/s/ Andrew Janz_____
        ANDREW JANZ

Attorney for Plaintiff
CITY OF FRESNO

Dated: March 5, 2026

SAINT PAUL CITY ATTORNEY'S OFFICE


By: _____/s/ Kelsey McElveen_____
        KELSEY MCELVEEN *
* Appearing pro hac vice

Attorneys for Plaintiff
City of Saint Paul

Dated: March 5, 2026

ANDERSON & KREIGER LLP


By: _____/s/ Melissa C. Allison_____
        MELISSA C. ALLISON *
        CHRISTINA S. MARSHALL *
* Appearing pro hac vice

Attorneys for Plaintiffs
County of Monroe and Monroe County Airport Authority

RENNE PUBLIC LAW GROUP
Attorneys at Law

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SECOND PRELIMINARY INJUNCTION AND FOR PRELIMINARY RELIEF UNDER 5 U.S.C. § 705 – CASE NO. 3:25-cv-07070-RS

Dated:  March 5, 2026                    OFFICE OF THE COUNTY COUNSEL
                                         COUNTY OF MARIN

                                         By:      /s/ Brian E. Washington
                                              BRIAN E. WASHINGTON
                                              KATE K. STANFORD

                                         *Attorneys for Plaintiff*
                                         COUNTY OF MARIN

Dated:  March 5, 2026                    KREVOLIN & HORST, LLC


                                         By:      /s/ Allegra J. Lawrence
                                              ALLEGRA J. LAWRENCE*
                                              MICHELLE McCLAFFERTY*
                                         *Application for pro hac vice forthcoming

                                         Attorneys for Plaintiff
                                         City of Atlanta

Dated:  March 5, 2026                    ALAMEDA CITY ATTORNEY'S OFFICE


                                         By:      /s/ Yibin Shen
                                              YIBIN SHEN
                                              CARA SILVER
                                              DANIEL J. TURNER

                                         Attorneys for Plaintiff
                                         City of Alameda

RENNE PUBLIC LAW GROUP
Attorneys at Law

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SECOND PRELIMINARY INJUNCTION AND FOR
PRELIMINARY RELIEF UNDER 5 U.S.C. § 705 – CASE NO. 3:25-cv-07070-RS

1  **I.    INTRODUCTION**

2      The current administration continues to impose unlawful conditions on an ever-increasing number

3  of federal grants that local governments rely on, without regard for constitutional or statutory guardrails

4  or the havoc such actions are wreaking on local jurisdictions.  In the past year, an increasing number of

5  local public entities have realized that the federal funding they have relied on for decades to support

6  critical public services is threatened and are seeking relief in federal court.  Plaintiffs' Second Amended

7  Complaint ("SAC") added 14 additional cities and counties (collectively, "Additional Plaintiffs")[1] to this

8  action, challenging the same or materially similar grant conditions imposed by Defendant federal

9  agencies.  Dkt. 68.  In addition, the SAC added the Federal Railroad Administration ("FRA") and the

10  National Highway Traffic Safety Administration ("NHTSA")— two DOT operating administrations

11  subject to the same DOT Conditions challenged in the FAC— as Defendants.  *Id*.

12      The Additional Plaintiffs seek the same preliminary relief this Court has already determined is

13  warranted for the existing Plaintiffs, based on materially similar facts and identical legal claims.  The

14  absence of relief continues to create uncertainty for the Additional Plaintiffs, including potential

15  liabilities associated with drawing down allocated federal funds, accepting pending awards, and whether

16  future grant applications and funding opportunities, which public entities must budget for in advance,

17  will be subject to the same or materially similar conditions.  Accordingly, Plaintiffs respectfully request

18  that the Court issue a second preliminary injunction extending the existing injunction to the Additional

19  Plaintiffs and Defendants.  Additionally, Plaintiffs respectfully request that the Court extend the

20  preliminary injunction to include a stay of the challenged agency action pursuant to 5 U.S.C. § 705.

21  **II.   STATEMENT OF FACTS**

22      As detailed in Plaintiffs' prior motions for a temporary restraining order and preliminary

23  injunction, this action challenges unlawful grant conditions that federal agencies have imposed on grants

24  they administer pursuant to congressional authority.  These conditions effectively force Plaintiffs to

25  advance President Trump's policy objectives enumerated in the series of Executive Orders ("EO") he

26

27  [1] "Additional Plaintiffs," newly included in the Second Amended Complaint, *see* Dkt. 68, are the City of Atlanta, City of Beaverton, City of Corvallis, City of Hillsboro, City of Mountain View, City of Salem, City of San Mateo, City of Santa Clara, City of Santa Cruz, City of Stockton, City of Sunnyvale, City of Vacaville, County of Los Angeles, and County of Santa Barbara.

28

RENNE PUBLIC LAW GROUP
Attorneys at Law

issued shortly after inauguration.  *See* SAC at ¶¶ 336–45.  Initially, seven cities, counties, and a county airport authority brought this action on August 20, 2025, seeking declaratory and injunctive relief based on the imposition of the unlawful conditions on grants from Defendant agencies HUD, HHS, EPA, and DOT, and its operating administrations FTA, FHWA, and FAA.  Dkt. 1.  On August 27, 2025, the Court issued a TRO ruling that Plaintiffs were likely to succeed on the merits of their claims and that they faced imminent and irreparable harm absent immediate relief.  *See* Dkt. 28.  Shortly thereafter, four more cities and counties joined the original Plaintiffs in the FAC.  *See* Dkt. 35.

On September 23, 2025, the Court ordered a preliminary injunction in favor of all eleven Plaintiffs (and against all defendants except for EPA) enjoining the imposition and enforcement of the unlawful conditions on the federal grants.  Dkt. 45.  Defendants filed a notice of appeal of the preliminary injunction in the United States Court of Appeals for the Ninth Circuit.  Dkt. 60.  A few weeks after the notice, Defendants filed an unopposed motion to hold appellate proceedings before the Ninth Circuit in abeyance pending the court's resolution of the appeal in the *Martin Luther King, Jr. County v. Turner*, No. 25-3664 ("*King County*").[2]

On December 19, 2025, Plaintiffs filed a motion seeking leave to file a proposed Second Amended Complaint adding additional plaintiffs and three cabinet-level agencies to the action, as well as FEMA, FRA, and NHTSA.  On January 8, 2026, the Court denied Plaintiffs' motion for leave to amend, finding that "DHS, FEMA, DOI, and DOJ are executive agencies that are entirely new to this proceeding" and that "the complaint may not be amended to join defendants related to agencies that are new to the proceeding."  *See* Dkt. 65.  However, the Court advised, "[t]o the extent the New Proposed Plaintiffs assert claims against Original Defendants or their operating administrators for funding administered through programs subject to the same or substantially similar grant conditions and the same authorizing statutes and rules as the Original Plaintiffs, the complaint may be amended to add those plaintiffs and claims."  *See id*. (footnotes omitted).

Plaintiffs met and conferred with Defendants' counsel and proposed a new SAC following the Court's direction.  On February 9, 2026, the Court issued an order granting the parties' joint stipulation

---

[2] The Ninth Circuit heard oral argument in *King County* on February 9, 2026.  The appeal is now under submission.

RENNE PUBLIC LAW GROUP
Attorneys at Law

RENNE PUBLIC LAW GROUP
Attorneys at Law

1   to file the SAC.  The SAC was filed that same day, adding the Additional Plaintiffs to this lawsuit as well

2   as the following new Defendants:  FRA, its administrator David Fink, NHTSA, and its administrator

3   Jonathan Morrison.[3]  Dkt. 67-68.  Both of these new defendants are operating administrations of DOT,

4   which has been a defendant in this action since its original filing.  The Additional Plaintiffs added to the

5   SAC challenge the same or similar unlawful conditions through the same legal claims as the FAC.  Dkt.

6   68.

7       Like the existing Plaintiffs, Additional Plaintiffs face irreparable harm during the pendency of

8   this litigation from the imposition of these conditions.  The grants support a wide range of essential

9   public service initiatives that require long-term planning, multi-year budgeting, and sustained financial

10  commitments.  In addition, these critical projects often require Plaintiffs to enter into contractual

11  relationships with subcontractors to accomplish the projects and provide services.  Further, because

12  Defendants administer and allocate grant funds according to established timelines, several Additional

13  Plaintiffs face approaching administrative deadlines to execute their grant agreements.  Additional

14  Plaintiffs also have access to allocated federal funding and must decide whether to draw down these

15  funds, weighing the risk of liability arising from the unlawful conditions against the necessity of

16  continuing to fund their crucial projects and programs.

17      The day following the filing of the SAC, in an effort to avoid further contested proceedings

18  before the Court, Plaintiffs' counsel asked Defendants' counsel if they would stipulate to extend the

19  preliminary injunctive relief already granted in this case to the Additional Plaintiffs and against the new

20  DOT operating administration Defendants.  All Defendants declined to extend preliminary relief.  *See*

21  Ross Decl. ¶¶ 5–7.  Plaintiffs' counsel continued efforts to obtain an extension of injunctive relief

22  through the month of February.  *See* Ross Decl. ¶¶ 8–15.

23      Without the extension of injunctive relief, Additional Plaintiffs will be forced to either forgo

24  hundreds of millions of dollars in federal funds or attempt to comply with unlawful conditions that are

25  impermissibly vague and conflict with the grant programs' authorizing statutes.  Accordingly, Plaintiffs

26

27  [3] Additionally, the existing Plaintiff County of San Diego added claims against the existing Defendant
    HHS regarding funds the County receives from the Ryan White HIV/AIDS Program, a program that is
28  already subject to the first preliminary injunction.  *See* Dkt. 68.

-3-

bring this motion seeking to extend injunctive relief to Additional Plaintiffs and against new Defendants to prevent irreparable harm to themselves and their residents.

## III.    LEGAL STANDARD

"To obtain a preliminary injunction, a plaintiff must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities favors the plaintiff, and (4) that an injunction is in the public interest." *Geo Group, Inc. v. Newsom*, 50 F.4th 745, 753 (9th Cir. 2022) (en banc) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  Where "the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest—'merge.'" *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023).

"On such conditions as may be required and to the extent necessary to prevent irreparable injury," courts reviewing agency action under the APA "may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings."  5 U.S.C. § 705.  "The postponement of agency action under the APA is governed by the preliminary injunction factors." *Nat'l TPS Alliance v. Noem*, 150 F.4th 1000, 1015 (9th Cir. 2025).

## IV.    ARGUMENT

### A.    Preliminary Injunctive Relief Should Extend to Additional Plaintiffs and Against New Defendants

#### 1.    The Additional Plaintiffs Are Likely to Succeed on the Merits of Their Claims

The Court's September 23, 2025 preliminary injunction order concluded that Plaintiffs were likely to succeed "on the merits for Plaintiffs' arbitrary and capricious, in excess of statutory authority, and contrary to the Constitution claims" as to HUD, DOT, and HHS.  Dkt. 45 at 11:9–11.  That determination rested on the Court's analysis of the challenged agency actions, including the text of the conditions imposed, the agencies' statutory authorization, and the constitutional defects inherent in those conditions.  Those same legal and factual defects apply with equal force to the Additional Plaintiffs.

##### a.  The Agency Actions at Issue Are Reviewable Under the APA

As a threshold matter, Defendants' jurisdictional and procedural arguments raised in opposition to

-4-

the initial preliminary injunction, including the asserted applicability of 49 U.S.C. § 46110, the Tucker Act, and the claimed lack of reviewability under the APA, have already been considered and rejected by this Court.  *See* Dkt. 45 at 8–14.  Those same arguments apply no differently to the request for a second preliminary injunction and fail for the same reasons set forth in the Court's prior order.

### b.  The Challenged Conditions Are Arbitrary and Capricious

This Court concluded that Plaintiffs were likely to succeed on the merits of their arbitrary and capricious claim because Defendants HUD, HHS, and DOT provided "no substantive reasons for justifying [their] radical change of course other than [] rote recitation of the need to implement the Executive Orders."  Dkt. 45 at 16: 21-24; *see also San Francisco Unified Sch. Dist. v. AmeriCorps*, No. 25-CV-02425-EMC, 2025 WL 1713360, at *26 (N.D. Cal. June 18, 2025).  Under the APA, agency action must be set aside and held unlawful if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Agency action is arbitrary and capricious if it is not "'reasonable and reasonably explained.'" *Ohio v. Environmental Protection Agency*, 603 U.S. 279, 292 (2024) (citing *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423, (2021)).  This Court reasoned that because "Defendant agencies have announced their conditions without explanation" and it is apparent that Defendants did not "consider[] reliance interests, possible waste or loss to the public, alternatives, or other important factors," Plaintiffs are likely to succeed on their claims that the HUD, DOT, and HHS Grant Conditions are arbitrary and capricious in violation of the APA.  Dkt. 45 at 17–18.

The same is true for the Additional Plaintiffs, who are subject to the same HUD, HHS, and DOT grant conditions challenged in the original action.  Like the original Plaintiffs, they have received little to no explanation for these conditions, and Defendants appear not to have considered the Additional Plaintiffs' reliance interests, alternative approaches, or other important factors.  As a result, the Additional Plaintiffs are equally likely to succeed on their arbitrary and capricious claims under the APA, as the agencies' actions are not "reasonable and reasonably explained" and lack the deliberation and justification required by law.  *See King County*, 798 F. Supp.3d 1224, 1246 (W.D. Wash. 2025) ("The Court has already determined that Defendants' attempt to impose the challenged funding conditions on the CoC and DOT grants violated the APA. . . . Defendants present no argument as to why this conclusion should not apply equally to the New CoC and DOT Plaintiffs; thus, the Court concludes that

RENNE PUBLIC LAW GROUP
Attorneys at Law

1  the New CoC and DOT Plaintiffs are also likely to succeed on the merits of their APA claim . . . ."
2  (citation omitted)).

3          c.  **The Challenged Conditions Are in Excess of Defendants' Statutory**
4              **Authority**

5          In addition, this Court previously concluded that Plaintiffs were likely to succeed on the merits of
6  their claims that the grant conditions are in excess of each Defendant's statutory authority.  Under the
7  APA, a court may set aside an agency action that is "in excess of statutory jurisdiction, authority, or
8  limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).  The Court stated that Plaintiffs had
9  "demonstrate[d] . . . that the relevant authorizing statues do not authorize the Defendants to condition
10 funding on requirements to prohibit the promotion of DEI, gender ideology, or elective abortion or to
11 cooperate with federal immigration enforcement and that in some cases the statutes even contradict the
12 conditions."  Dkt. 45 at 18: 12-15.  Moreover, the Court concluded that Defendants' reliance on agency
13 regulation and broad authorizations of grantmaking discretion failed "to rebut effectively Plaintiffs'
14 showings."  Dkt. 45 at 18.  "'[A]n agency *regulation* cannot create *statutory* authority; only Congress can
15 do that.'"  Dkt. 45 at 18:19-21 (quoting *Martin Luther King, Jr. Cnty.*, No. 2:25-CV-814, 2025 WL
16 1582368, at *15).

17         The same reasoning applies to the Additional Plaintiffs who challenge the same grant programs
18 and conditions.  Although there are additional federal grant programs administered by the existing
19 Defendants at issue in the SAC, like all previously identified programs, there is no statutory authorization
20 for Defendants to impose the challenged conditions on these additional programs.  *See* SAC at ¶¶ 198–
21 207 (HUD's Family Self-Sufficiency Program); 42 U.S.C. § 1437u; SAC ¶¶ 208–13 (HUD's Lead
22 Hazard Reduction Grant Program); 42 U.S.C. § 4852; SAC ¶¶ 255–58 (FRA grant programs); 49 U.S.C.
23 § 22909; SAC ¶¶ 259–64 (NHTSA Grant Programs); 23 U.S.C. §§ 402, 405; SAC ¶¶ 295–301 (HHS's
24 Maternal Mental Health and Substance Use Disorders Program); 42 U.S.C. §§ 247b–13a; SAC ¶¶ 302–
25 306 (HHS's Health Start Program); 42 U.S.C. § 254c-8; SAC ¶¶ 315–20 (HHS's Hospital Preparedness
26 Program); 42 U.S.C. § 247d–3b.  The relevant statutes do not empower Defendants to condition funding
27 on requirements related to DEI, gender ideology, abortion, or immigration enforcement.  As the Court
28 recognized in its previous order, regulatory authority or Defendants' broad reading of the statutes "fail[s]

RENNE PUBLIC LAW GROUP
Attorneys at Law

-6-

1  to rebut effectively Plaintiffs' showings." *See* Dkt. 45 at 18–19.

2          Despite Defendants' continued assertions that the challenged conditions only require compliance

3  with existing law, like existing Plaintiffs (*see* Dkt. 36 at 25–26 (Pls.' MPA ISO of First Prelim. Inj.)),

4  these conditions are being enforced on the Additional Plaintiffs to impose new, extra-statutory

5  requirements that go well beyond any existing law.  For example, the HUD Office of Community

6  Planning and Development Office of Field Operations sent an email notice to Additional Plaintiff, the

7  City of Sunnyvale, "questioning the accuracy of the City of Sunnyvale's certification" that CDBG funds

8  "will be administered in conformity with applicable laws, including Executive Orders."  Sztolz Decl. at

9  ¶ 6.  Specifically, the notice stated that Sunnyvale's Fiscal Year 2025 Consolidated Plan/Action Plan "is

10 not consistent with Executive Order 14168 *Defending Women From Gender Ideology Extremism and*

11 *Restoring Biological Truth to the Federal Government* and Executive Order 14218 *Ending Taxpayer*

12 *Subsidization of Open Borders*." *Id.*

13         The purported inconsistencies arose from routine descriptive statements in the City's Plan.  For

14 example, the Plan reported demographic information about homelessness in the City, including the

15 statement:

16         Men were more likely to be homeless: 66% self-identified as male
           compared to 32% of females and 2% who identified as transgender or non-
           singular or questioning. Additionally, only 3% self-reported that they were
17         currently pregnant while experiencing homelessness.

18 The Plan also described partnerships with local service providers, including the statement:

19         Sunnyvale Community Services (SCS) partners with PARS Immigration to
           assist refugees, immigrants, and asylum seekers with legal issues and in
20         applying for benefits and accessing food pantries.

21 *Id.*  Based solely on these passages, HUD required the City to revise its Plan.  The notice required the

22 City to remove all "transgender" references throughout the document, replace all "immigrant" references

23 with "legal/documented immigrant," and require the City to include specific written assurances that grant

24 funds would not be used to promote "gender ideology" as defined by the Defending Women Executive

25 Order.  *Id.*  In addition, the City was required to include specific assurances that the grant would be

26 administered with "applicable immigration restrictions and requirements," including any other

27 immigration executive orders that may be established from "time to time."  *Id.*

28         These directives from HUD bear no relation to any statutory requirements governing the CDBG

-7-

RENNE PUBLIC LAW GROUP
Attorneys at Law

program or existing laws passed by Congress. HUD's directives do not implement existing law; they impose new policy mandates untethered to congressional authorization or the efficient administration of these funds. Sunnyvale's experience, like that of many of the Plaintiffs, confirms that the challenged conditions do not simply require compliance with existing law. Rather, Defendants are invoking those conditions to enforce sweeping policy directives that exceed the limits of the governing statutes and that bear no reasonable relationship to the administration of the underlying grant programs.

For these reasons, Plaintiffs, including Additional Plaintiffs, are equally likely to succeed on their claims that the agencies acted in excess of statutory authority. *See King County*, *supra*, 798 F. Supp. 3d at 1248 ("Plaintiffs argue that the statutes authorizing the grants at issue do not confer on Defendants the kind of authority they are attempting to assert. For the reasons explained below, and in its June 3, 2025 order, the Court agrees.").

### d. The Challenged Conditions Are Contrary to the Constitution

As previously stated by this Court, "[u]nder the APA, a court may set aside an agency action that is 'contrary to constitutional right, power, privilege, and immunity.'" Dkt. 45 at 23:13-14, *see* 5 U.S.C. § 706(2)(B). This Court concluded in its order granting Plaintiffs' motion for the existing preliminary injunction that "Plaintiffs are likely to succeed on their claims that the Grant Conditions violate Separation of Powers as in excess of statutory authority as set [sic] forth . . . [in] the Fifth Amendment." Dkt. 45 at 23:14-16. The Court found that the conditions were not only vague but also "seemed to demand that each Plaintiff certify their compliance generally across all federal grants, and so failure to satisfy a condition" could result in "potential loss of all federal grants administered by the Defendant agency." Dkt. 45 at 27: 2-6. Further, the Court found that "the Grant Conditions are not related to the expertise of the Defendant agencies or Congress' intent in authorizing the grant programs" making the vagueness harder to resolve and impacting Plaintiffs' due process claims. Dkt. 45 at 27: 8-10.

The same analysis applies to the Additional Plaintiffs, who challenge the identical conditions imposed by HUD, HHS, and DOT. Like the other Plaintiffs, they face requirements that are vague, expansive, and untethered to the agencies' expertise or Congress' intent in authorizing the relevant grant programs. Accordingly, the Additional Plaintiffs are equally likely to succeed on their claims under the APA that the conditions violate constitutional rights, including Separation of Powers and due process, as

RENNE PUBLIC LAW GROUP
Attorneys at Law

they are applied to the Additional Plaintiffs. *See King County*, *supra*, 798 F. Supp. 3d at 1251–52 (extending preliminary relief to new plaintiffs challenging unlawful conditions imposed on different grants as violating the separation of powers doctrine); *City & Cnty. of San Francisco v. Trump*, 25-cv-01350-WHO, 2025 WL 2426858, at *2 (N.D. Cal. Aug. 22, 2025) ("That coercive threat (and any actions agencies take to realize that threat, or additional Executive Orders the President issues to the same end) is unconstitutional, so I enjoined its effect. I do so again today for the protection of the new parties in this case."); *City & Cnty. of San Francisco v. Trump*, 783 F. Supp. 3d 1148, 1190–1201 (N.D. Cal. 2025).

***

For the reasons discussed above, Plaintiffs satisfy the first *Winter* factor, warranting a second preliminary injunction extending relief to the Additional Plaintiffs.

### 2.    Additional and Existing Plaintiffs Will Suffer Immediate and Irreparable Harm in the Absence of Injunctive Relief

The same unlawful conditions that caused the original Plaintiffs irreparable harm are also inflicting irreparable harm on Additional Plaintiffs by upending their budgetary planning and spending decisions, suppressing their constitutional rights, and forcing them into an untenable position. As this Court previously found, "Plaintiffs here must choose between attempting compliance with unlawful conditions or forgoing millions of dollars of key federal grant funding." Dkt. 45 34:11-12. "This choice causes irreparable harm because the Grant Conditions likely violate Separation of Powers as in excess of statutory authority and Due Process as impermissibly vague, and 'deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Dkt. 45 at 34:12-15, quoting *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017); *see* Barragan Decl. at ¶ 5 (Santa Barbara); Cabell Decl. at ¶¶ 15–18 (City of Santa Cruz); Carlisle Decl. at ¶ 7 (County of Santa Barbara); Caviness Decl. at ¶ 29 (City of Atlanta); Colden Decl. at ¶ 5 (City of Vacaville); DaMassa Decl. at ¶ 7 (City of Vacaville); Dzvonik Decl. at ¶ 10 (County of Santa Barbara); English Decl. at ¶ 5 (County of Santa Barbara); Estaji Decl. at ¶ 5 (County of Santa Barbara); Ferrer Decl. at ¶¶ 10–13 (County of Los Angeles); Ghaly Decl. a ¶ 9-12 (County of Los Angeles); Hammond Decl. at ¶¶ 9–10 (City of Hillsboro); Hardy Decl. at ¶ 7 (County of Los Angeles); Horst Decl. at ¶ 6 (City of San Mateo); Hurtado Decl. at ¶ 7 (County of Santa Barbara); Jepson Decl. at ¶ 8 (City of Beaverton); Lagerquist Decl. at ¶ 5 (County of Santa Barbara); Lee Decl. at

-9-

RENNE PUBLIC LAW GROUP
Attorneys at Law

¶¶ 17–19 (City of Santa Clara). Loose Decl. at ¶¶ 13–14 (County of San Diego); Martin Decl. at ¶ 7 (City of Salem); McCarty Decl. at ¶ 8 (City of Stockton); D. Ng Decl. at ¶¶ 10–11 (City of Sunnyvale); J. Ng Decl. at ¶ 4 (City of Mountain View); Oxley Decl. at ¶ 8 (City of Vacaville); Pestrella Decl. at ¶¶ 12–16 (County of Los Angeles); Seifert Decl. at ¶ 6 (County of Santa Barbara); Shepard Decl. at ¶¶ 17–19 (City of Corvallis); Tuttle Decl. at ¶ 5 (County of Santa Barbara); Weinheimer Decl. at ¶ 5 (City of Beaverton).

Even if Plaintiffs tried to comply with the vague conditions, the uncertainty in their application could easily result in withdrawal, blockage, and denial of reimbursement, in violation of the Due Process and Spending Clauses and subjecting them to liability under the False Claims Act. "This uncertainty as to whether the Defendant agencies will consider conditions satisfied creates irreparable injury not just in the form of constitutional injury." Dkt. 45 34:17-19. The uncertainty, further, "interferes with Plaintiffs' ability to budget, plan for the future, and properly serve their residents and requires placing funds in reserve and making cuts to services which constitutes irreparable harm." *Id.* at 19-20; *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 537 (N.D. Cal. 2017).

The Additional Plaintiffs also face "disruption [that] cannot be remedied down the line with money alone . . . because by then projects on which millions of taxpayer dollars have already been spent, and which require years to complete and coordination across many parties, will have been compromised." Dkt. 45 at 34: 22-25; *see* Cabell Decl. at ¶¶ 15–18 (City of Santa Cruz); W. Chen Decl. at ¶¶ 9–10 (City of Mountain View); Caviness Decl. at ¶¶ 9, 14–15, 26–29 (City of Atlanta); Hardy Decl. at ¶ 8 (County of Los Angeles); Horst Decl. at ¶ 6 (City of San Mateo); Loose Decl. at ¶ 11 (County of San Diego); D. Ng Decl. at ¶¶ 10–11 (City of Sunnyvale); Smith Decl. at ¶¶ 32–36, 41-43; 47 (City of Atlanta); Sztoltz Decl. ¶ 9 (City of Sunnyvale).

Further, even where Plaintiffs currently have access to allocated funds, they face ongoing uncertainty as to whether Defendants consider the challenged conditions applicable to those funds or whether Defendants will require Plaintiffs to submit a "recertification" incorporating those conditions during the grant period. *See* J. Ng Decl. at ¶ 6 (City of Mountain View); Loose Decl. at ¶¶ 10–13 (County of San Diego); Smith Decl. at ¶¶ 38–40 (City of Atlanta). For example, Vacaville's Safe Streets for All ("SS4A") grant application was prepared in accordance with the NOFO issued by DOT in February 2024, which directed applicants to address equity considerations, including equitable

RENNE PUBLIC LAW GROUP
Attorneys at Law

Renne Public Law Group
Attorneys at Law

investment in the safety needs of underserved communities.  Oxley Decl. at ¶ 4.  Consistent with those requirements, Vacaville's application included an Action Plan Update with an equity-focused component describing the City's efforts to address transportation-related disparities.  *Id.*

However, after the grant was awarded, FHWA provided Vacaville with comments on the project scope, requesting that the City remove the equity-focused Action Plan Update component.  *Id.* at ¶ 5.  Vacaville prepared and submitted its grant application in good-faith reliance on the requirements set forth in the February 2024 NOFO, which expressly required applicants to incorporate equity considerations as a condition of eligibility.  FHWA's subsequent request to remove that same equity component reflects the type of shifting and conflicting federal grant requirements that have placed Plaintiffs in an untenable position with respect to their use of these funds.

Moreover, lack of future funding certainty is causing harm now, including where Additional Plaintiffs are facing structural budget deficits and are deeply reliant on federal funds, or where Additional Plaintiffs have to make choices now to terminate/delay programs or to pay for them from local funds without knowing if the federal government will reimburse.  *See* Cabell Decl. at ¶ 16 (City of Santa Cruz); Caviness Decl. ¶¶ 26-29 (City of Atlanta); Ferrer Decl. at ¶ 10–13 (County of Los Angeles); Horst Decl. at ¶ 6 (City of San Mateo); Pestrella Decl. at ¶ 16 (County of Los Angeles); Smith Decl. at ¶ 32 (City of Atlanta); Varner Decl. ¶ 8 (City of Beaverton).  For example, the City of Corvallis has been forced to pause or delay HUD-funded services to residents and has been unable to provide funds to subgrantees, such as food banks, that provide critical services to vulnerable populations in the community.  Shepard Decl. at ¶ 17.  The City of Corvallis has also had to take backfill from other funding sources to cover City Staff wages that are billed to CDBG and HOME grant funds.  *Id.*  The City of Corvallis has also paused taking new applications for its Home Repair Loan Program due to a lack of funding.  *Id.*  This pause is affecting multiple households in dire need of home repairs.  *Id.*  In addition, the City of Corvallis has delayed starting its HOME tenant-based rental assistance program due to a lack of funding.  *Id.*

Similarly, the City of Santa Clara has been forced to pause several programs due to the change in federal funding conditions, including the DUI Checkpoint, DUI Saturation Patrol, Distracted Driving, and Bicycle/Pedestrian Safety Operations programs.  Lee Decl. at ¶ 17.  The pause in grant funding has directly impacted the Police Department's ability to conduct enhanced traffic operations.  *Id.*  The change

in federal funding conditions has also forced the City to pause several programs usually funded by CDBG grants, including six public service grants for nonprofit organizations that provide a range of services to low-income and vulnerable residents, its support for Rebuilding Together Silicon Valley's Minor Repair Grant Program, which helps vulnerable homeowners fund critical repairs, safety-related repairs, and accessibility improvements, and the NCIP Major Rehabilitation Loan Program. *Id*. at ¶18.

The ongoing uncertainty surrounding future funding presently harms (and will harm in the future) Additional Plaintiffs' ability to conduct capital planning, execute contracts, and retain qualified staff, and undermines long-term funding plans. These harms, which mirror those the Court previously found to warrant preliminary relief, satisfy the second prong of the *Winter* test. *See* Dkt. 45.

### 3. The Balance of Equities and Public Interest Favor Both Additional and Existing Plaintiffs

As stated previously in the Court's preliminary injunction order and Plaintiffs' TRO and preliminary injunction motions, the equities and public interest merge when the government is a party and tip decisively in favor of the Additional Plaintiffs. Dkt. 45 at 35:2-4; *Nken v. Holder*, 556 U.S. 418, 435 (2009). Further, "the public interest is served by giving [additional] Plaintiffs the budgetary clarity needed to deliver key public services to their constituents." Dkt. 45 at 35:5-6. Lastly, it is also "in the public interest to prevent violation of a party's constitutional rights" as to the Additional Plaintiffs. *See* Dkt. 45 at 35:6-7; *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (cleaned up). Therefore, the final two *Winter* prongs are met.

### B. The Agency Action in Question Should Likewise Be Postponed Under the APA Pending Conclusion of this Action

For the same reasons discussed above, preliminary relief is warranted under 5 U.S.C. § 705. Section 705 authorizes courts to stay an agency action pending review where necessary to prevent irreparable injury, and courts routinely stay or tailor relief to maintain the status quo while an APA challenge proceeds. "The postponement of agency action under the APA is governed by the preliminary injunction factors." *Nat'l TPS Alliance v. Noem*, *supra*, 150 F.4th at 1015.

District courts across the country have granted similar preliminary relief against recently challenged federal agency actions, recognizing that such relief is consistent with established equitable

RENNE PUBLIC LAW GROUP
Attorneys at Law

principles and the APA's statutory text.  *See California v. United States Dep't of Transportation*, No. 25-CV-208-JJM-PAS, 2025 WL 3072541, at *13 (D.R.I. Nov. 4, 2025) (order granting plaintiffs' motion for summary judgment and declaring the Immigration Enforcement Condition unlawful and vacated from all grant agreements administered by DOT); *City & Cnty. of San Francisco v. Trump*, 783 F. Supp. 3d 1148,1203–04 (N.D. Cal. 2025) (order clarifying preliminary injunction that enjoins defendants from taking any action to withhold, freeze, or condition federal funds "to the maximum extent provided for by Federal Rule of Civil Procedure 65(d)(2) and 5 U.S.C. §§ 705 and 706"); *City of Chicago v. United States Dep't of Just.*, No. 25 C 13863, 2026 WL 114294, at *11 (N.D. Ill. Jan. 15, 2026) (order granting plaintiffs' motion for preliminary injunction and staying the effective date of any action to adopt, issue, or enforce the challenged grant conditions as to plaintiffs or their subrecipients); *Cnty. of Santa Clara v. Noem*, No. 25-CV-08330-WHO, 2025 WL 3251660, at *45 (N.D. Cal. Nov. 21, 2025) (order granting plaintiffs' motion for preliminary injunction enjoining defendants from "taking any action to withhold, freeze, or condition funds from the plaintiffs based on [the challenged grant conditions]…to the maximum extent provided for by Federal Rule of Civil Procedure 65(d)(2) and 5 U.S.C. §§ 705 and 706"); *Illinois v. Fed. Emergency Mgmt. Agency*, 801 F. Supp. 3d 75, 97–98 (D.R.I. 2025) (order granting plaintiffs' motion for summary judgment and declaring the contested grant conditions arbitrary and capricious under the APA, unconstitutional under the Spending Clause, and vacated); *Illinois v. Noem*, No. 1:25-CV-00495-MSM-PAS, 2025 WL 3707011, at *19 (D.R.I. Dec. 22, 2025) (order granting plaintiffs' motion for summary judgment and declaring certain agency decisions and the Population Certification Requirement unlawful and vacated); *Michigan v. Noem*, No. 6:25-CV-02053-AP, 2025 WL 3720147, at *13–14 (D. Or. Dec. 23, 2025) (order granting plaintiffs' motion for summary judgment and vacating the challenged certification from plaintiffs' award notices); *New York v. U.S. Dep't of Just.*, 804 F. Supp. 3d 294, 334 (D.R.I. 2025) (order granting plaintiffs' motion for preliminary injunction and enjoining defendants from enforcing challenged PRWORA Notices "to the maximum extent provided for by Federal Rule of Civil Procedure 65(d)(2) and 5 U.S.C. §§ 705 and 706"); *Rhode Island Coal. Against Domestic Violence v. Bondi*, 794 F. Supp. 3d 58, 73 (D.R.I. 2025) (order granting plaintiffs' motion for preliminary injunction finding "that it is necessary and appropriate, for now, to grant the Coalitions' request for a preliminary stay of the challenged conditions on all FY 2025 grants"); *Rhode Island Coal.*

RENNE PUBLIC LAW GROUP
Attorneys at Law

*Against Domestic Violence v. Kennedy*, No. 25-CV-342-MRD-PAS, 2025 WL 2988705, at *15 (D.R.I. Oct. 23, 2025) (order granting plaintiffs' request for a preliminary stay of the challenged grant conditions pursuant to 5 U.S.C. § 705); *Washington State Ass'n of Head Start & Early Childhood Assistance & Educ. Program v. Kennedy*, No. C25-781-RSM, 2026 WL 35858, at *13 (W.D. Wash. Jan. 6, 2026) (order granting plaintiffs' motion for preliminary injunction and postponing the effective dates of Defendants' DEIA ban pursuant to 5 U.S.C. § 705).[4]

Notably, in *National TPS Alliance v. Noem*, the Ninth Circuit affirmed a district court's judgment setting aside under 5 U.S.C. § 706 the Secretary's vacatur and termination of Temporary Protected Status for Venezuelan and Haitian beneficiaries, holding that the agency exceeded its statutory authority and that setting aside the unlawful action under the APA was appropriate. *Nat'l TPS All. v. Noem*, 166 F.4th 739, 767–69 (9th Cir. 2026). This decision, issued in January 2026, illustrates that courts can grant broad relief under the APA because vacatur under § 706 addresses the legal status of the agency action itself and is rooted in statutory mandate, in contrast to the universal injunction now disfavored under *Trump v. CASA*. Thus, consistent with this Circuit's practice, relief under § 705 is proper here to prevent irreparable injury and to preserve the status quo pending final adjudication of this action.

## C. Defendants' Previous Arguments Regarding Claim Splitting and Venue Transfer Should Not Forestall Extending Preliminary Relief to the Additional Plaintiffs

### 1. The Claim Splitting Doctrine Does Not Bar Plaintiffs' Claims

In opposition to Plaintiffs' motion for leave to file the previously proposed Second Amended Complaint, Defendants argued that the claims of the Additional Plaintiffs City of Santa Cruz, City of Salem, and County of Los Angeles are subject to dismissal for improper claim splitting. *See* Dkt. 64 at

---

[4] Given the several district courts across the country that have entered preliminary injunctions or judgments enjoining enforcement of the same or materially similar grant conditions challenged in this action, the Additional Plaintiffs may presently receive some measure of protection from the challenged conditions by virtue of those orders. Nevertheless, further relief in this action remains warranted. It is not clear that the scope of the existing injunctions are coextensive with the specific grant programs, conditions, and agency actions at issue here, nor that those injunctions extend to all funding streams implicated in this case. Moreover, if Defendants violate those orders as to Plaintiffs here, they will not have an adequate mechanism to enforce the orders in actions in which they are not Plaintiffs. Additionally, many of the injunctions on which such protection might depend are currently pending appeal and therefore subject to modification, narrowing, or reversal. In light of that uncertainty, and to ensure that effective and complete relief is available with respect to the particular programs and conditions affecting Plaintiffs, a second preliminary injunction is appropriate.

RENNE PUBLIC LAW GROUP
Attorneys at Law

17–19. Because Plaintiffs did not have an opportunity to respond to that argument, they address it now given the Court's admonition in its order denying leave to amend that "Plaintiffs should be mindful of the claim splitting doctrine to the extent an amended complaint would include claims by plaintiffs currently suing Defendants."  Dkt. 65 at 4 n.3.

The claim splitting doctrine only applies "if the second suit involves (1) the same causes of action as the first; and (2) the same parties or their privies."  *Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 886 (9th Cir. 2022).  Only the City of Santa Cruz is a plaintiff in both this action and another action raised by Defendants, *City and County of San Francisco. v. Trump*, No. 3:25-cv-01350-WHO (N.D. Cal.) ("*CCSF*").  However, the instant case and *CCSF* are brought against different defendants and bring different causes of action challenging different governmental actions arising from distinct transactions and occurrences.

None of the defendants in this action is a defendant in *CCSF*, which names President Trump as the defendant and directly challenges the constitutionality of his executive orders targeting so-called "sanctuary jurisdictions," specifically Executive Orders Nos. 13768 and 14159.  By contrast, this case is not directly challenging any executive order, and President Trump is not a defendant.  Instead, Plaintiffs here challenge discrete agency actions taken by the named defendant agencies—DOT and its operating administrations, HUD, HHS, and EPA—imposing grant conditions and funding restrictions related to DEI, so-called "gender ideology," elective abortion, and immigration enforcement.  The challenged conduct consists of agency directives, guidance, and funding conditions imposed by those agencies, not the issuance or validity of any executive order.  The legal theories, operative facts, and relief sought in this case differ materially from those at issue in *CCSF*.  There is no overlap between defendants or causes of action.  Thus, claim splitting does not apply.

The remainder of Defendants' claim splitting argument rests on the faulty premise that legally and factually independent public entities, such as cities, counties, and their related independent public housing agencies or joint powers authorities, are in privity with one another.  However, the law is clear that public housing agencies are distinct legal entities that have independent legal interests from the cities and counties that create them.  *See* Cal. Health & Safety Code §§ 34200 et seq.; *see also McLemore v. Marin Housing Authority*, No. 20-cv-05431-JD, 2021 WL 4124210, at *2 (N.D. Cal. Sept. 9, 2021) ("It

-15-

Renne Public Law Group
Attorneys at Law

is well-established in California that a housing authority is a separate state agency and 'not an agent of the city in which it functions.'" (quoting *Hous. Auth. of City of Los Angeles v. City of Los Angeles*, 38 Cal. 2d 853, 861 (1952)).

California's Housing Authorities Law establishes housing authorities as independent public corporations distinct from county or city government. *See* Cal. Health & Safety Code §§ 34200 et seq. Sections 34240 and 34310 of the California Health and Safety Code expressly state that a public housing authority is "a corporate and politic public body." *Id.* §§ 34240, 34310. Housing authorities have independent legal status with the power to sue and be sued (*id.* § 34311), enter contracts (*id.*), and seize property (*id.* § 34325). Public housing authorities may borrow money or accept grants or other financial assistance from the federal government (*id.* § 34327), may issue their own bonds (*id.* § 34350), and their debts and obligations are not those of any city or county (*id.* § 34353). "For the legal services it requires, an authority may call upon the chief law officer of the city or the county or may employ its own counsel and legal staff." *Id.* § 34279.

The California "legislature enacted the laws under which housing authorities are created in order to access *federal* money available under the United States Housing Act of 1937." *Lynch v. San Francisco Housing Auth.*, 55 Cal. App. 4th 527, 541 (1997) (citing *Housing Auth. of City of Los Angeles v. City of Los Angeles*, 38 Cal.2d 853, 860 (1952)) (original emphasis). Similarly, under California law, a Joint Powers Authority is a distinct public agency, not a department, subdivision, or arm of any one member agency, such as the County Department of Public Health. *See* Cal. Gov't Code §§ 6507, 6508; *San Diegans for Open Government v. City of San Diego*, 242 Cal. App. 4th 416, 438 (2015) ("Under the Joint Exercise of Powers Act, the Financing Authority has a genuine separate existence from the City.").

Similar to California law, Oregon's statutory scheme governing housing authorities provides that "[a] housing authority shall constitute a public body corporate and politic," with various powers, including to "sue and be sued" and make and execute contracts (Or. Rev. Stats. § 456.120), to issue bonds which "shall not be a debt of the city, the county, the state or any political subdivision thereof" (*id.* §§ 456.175, 456.180(2)), to "[b]orrow money or accept grants or other financial assistance from the federal government" (*id.* § 456.215(1)(a)), to issue subpoenas (*id.* § 456.130), to license its rights in intellectual property (*id.* § 456.128), and to seize property (*id.* § 456.145).

RENNE PUBLIC LAW GROUP
Attorneys at Law

These independent government entities apply for and receive federal funding directly, separate and apart from the Plaintiffs in this action. The fact that some of these entities have filed separate lawsuits on their own behalf concerning distinct federal grant programs specific to those entities, and not at issue here, does not implicate the claim splitting doctrine.

> A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit. The application of claim and issue preclusion to nonparties thus runs up against the "deep-rooted historic tradition that everyone should have his own day in court." *Richards*, 517 U.S., at 798 (internal quotation marks omitted). Indicating the strength of that tradition, we have often repeated the general rule that "one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry*, 311 U.S., at 40.

*Taylor v. Sturgell*, 553 U.S. 880, 892–93 (2008).[5] Thus, "[a] party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) The interests of the nonparty and her representative are aligned, [citation]; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty, [citation]." *Id*. at 900; *see also Mendoza*, 30 F.4th at 887–88. Defendants cannot meet this standard.

Furthermore, Courts have repeatedly rejected claims that housing authorities are in privity with the municipality that created them. *See Waldman v. Village of Kiryas Joel*, 39 F. Supp. 2d 370, 381–82 (S.D.N.Y. 1999) (finding no privity between housing authority and village that created it); *Brenston v. Dedelow*, No. 2:03-cv-156, 2005 WL 2204870, at *5 (N.D. Ind. Sept. 7, 2005) ("This (apparent) independent legal status suggests that the legal interests of [the Hammond Housing Authority], the City and Mayor Dedelow are *not* so intertwined as to be the 'same' for purposes of finding privity."); *Roe v. Housing Authority of City of Boulder*, 909 F. Supp. 814, 819 (D. Colo. 1995) ("BHA is an independent governmental entity over which the City exercised neither direct nor indirect control over the affairs of the BHA and its relationship with Roe."); *cf. White v. City of Annapolis by and through City Council*, 439 F. Supp. 3d 522, 541 n.21 (D. Md. 2020) ("Because the alleged conspiracies here involve two separate government entities, HACA and the City, the intracorporate conspiracy doctrine is not applicable."); *Clements v. Housing Auth. of the Borough of Princeton*, 532 F. Supp. 2d 700, 710 (D.N.J.

---

[5] The claim splitting doctrine is a "sub-species" of the doctrine of claim preclusion. *Adobe Sys. Inc. v. Wowza Media Sys., LLC*, 72 F. Supp. 3d 989, 993–94 (N.D. Cal. 2014).

-17-

RENNE PUBLIC LAW GROUP
Attorneys at Law

2007) (rejecting argument that housing authority and city were single employer under the FMLA because "the HAP must also be considered a separate, independent entity from the Borough that created it").

### 2.    Transfer Is Unwarranted

Defendants also previously argued that "the entire lawsuit should be transferred to the District Court for the District of Columbia under 28 U.S.C. § 1404(a)." *See* Dkt. 64 19–23.  Because Plaintiffs did not have an opportunity to respond to that argument and this Court noted "the Defendants' compelling argument as to transfer were the number of plaintiffs outside the Northern District of California to swell," (Dkt. 65 at 5), Plaintiffs address it here.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).  "If venue is proper in either district, a district court evaluates several further (private and public) factors: (1) plaintiff's choice of forum; (2) convenience to the parties; (3) convenience to witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum." *Consumer Financial Protection Bureau v. Nationwide Biweekly Administration, Inc.*, No. 15-cv-02106-RS, 2015 WL 4463790, at *2 (N.D. Cal. July 21, 2015).

Defendants do not dispute that venue is proper in the Northern District.  Nor could they, since 9 of the 25 Plaintiffs reside in and have been injured in the Northern District, the Defendants are federal agencies and officials, and this action does not involve real property.  *See* 28 U.S.C. § 1391(e)(1)(C); *CCSF*, 2025 WL 2243619, at *6 ("The clear weight of federal authority holds that venue is proper in a multi-plaintiff case if any plaintiff resides in the District" (quotation marks omitted)).  As a result, Defendants' transfer argument "hinges on [their] showing that these further factors weigh in favor of transfer." *Consumer Financial Protection Bureau*, 2015 WL 4463790, at *2.  They fail to do so.

"The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Anunciato v. Trump*, No. 20-cv-07869-RS, 2020 WL 13547186, at *3 (N.D. Cal. Dec. 23, 2020) (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986), *superseded by statute on other grounds by* 28 U.S.C. § 1391); *see also Consumer Financial Protection*

-18-

RENNE PUBLIC LAW GROUP
Attorneys at Law

1   *Bureau*, 2015 WL 4463790, at *3 ("Ordinarily, a court treats a plaintiff's choice of forum with

2   significant deference."). "[T]he fact that a plaintiff has filed suit in the district where it resides is a

3   sufficient connection to accord its choice of forum deference." *Amini Innovation Corp. v. JS Imports,*

4   *Inc.*, 497 F. Supp. 2d 1093, 1110 (C.D. Cal. 2007).

5         First, Defendants took issue with the fact that 8 of the 14 new Plaintiffs do not reside in this

6   District and accused Plaintiffs of forum shopping because they sought to join the litigation after the entry

7   of a preliminary injunction.  Dkt. 64 at 21.  But Defendants concede that they "likely would not seek

8   transfer if the case remains as currently pleaded in the FAC" (Dkt. 64 at 21) even though seven of the

9   eleven Plaintiffs in the FAC did not reside in this District.  If Defendants' concern was the relative

10  percentage of nonresident plaintiffs, then those concerns were unwarranted since the share of resident

11  plaintiffs has remained virtually same from the FAC—36.36% (4÷11)—to the SAC—36% (9÷25).

12        Regardless, the relative share of resident plaintiffs to nonresident plaintiffs in this action presents

13  no reason to disturb Plaintiffs' choice of forum.  As this Court explained in rejecting a similar argument

14  by federal government defendants seeking to transfer an action challenging Presidential Proclamations to

15  the District of Columbia:

16              Defendants ask us to disturb Plaintiffs' choice of forum on the grounds that
               only four of the over two hundred Plaintiffs reside here and that none of the
17              Defendants live or discharge their duties here.  They encourage "Plaintiffs'
               selection [of forum] in this case should be scrutinized," insinuating a
18              sinister motive on the Plaintiffs' part to select a forum in which so few
               individual Plaintiffs reside.  *See* Motion at 13.  As Plaintiffs argue, this
19              point should be given no weight.  These two-hundred odd Plaintiffs, spread
               out as they are around the country and the world, chose to participate in
20              this action in this district.

21  *Anunciato*, 2020 WL 13547186, at *3 (footnote omitted); *cf. CCSF*, 2025 WL 2243619, at *6 (rejecting

22  argument that venue was improper in Northern District "when 'the majority' of plaintiffs reside outside

23  of the District" since "[r]equiring every plaintiff in an action against the federal government or an agent

24  thereof to independently meet section 1391(e)'s standards would result in an unnecessary multiplicity of

25

26

27

28

-19-

litigation" (quotation marks omitted)).[6]

Next, Defendants argued that the District of Columbia has a local interest in this lawsuit since "all the federal grant condition decisions at issue in this lawsuit occurred" there. Dkt. 64 at 21. However, as this Court has previously recognized in an APA challenge to Presidential Proclamations, "Defendants' reliance on the proposition that Plaintiffs' choice should be given less weight because the challenged decision making occurred in the District of Columbia is similarly misplaced. While it may be true that less deference is appropriate where the conduct out of which the case arises occurred in a different forum, for APA cases where the decision making process occurred, Defendants have not demonstrated what great inconvenience will follow adjudication of this matter in this district." *Anunciato*, 2020 WL 13547186, at *3. Additionally, the implementation of the challenged conditions likely occurs at Defendants' regional offices.

Defendants also argued that the convenience of witnesses and access to proof weigh in favor of transfer to the District of Columbia because "the administrative record is located there." Dkt. 64 at 22. However, "transfer should not be granted if the effect is simply to shift the inconvenience to the plaintiff." *Doe v. Epic Games, Inc.,* 435 F. Supp. 3d 1024, 1042 (N.D. Cal. 2020) (quotation marks omitted). In addition, as this Court has recognized, "discretion counsels against disturbing Plaintiffs' selection" since "[a]ny administrative record in this case would be produced electronically in any event and any witnesses, depositions, or other live discovery can take place telephonically or by videoconference…" *Anunciato*, 2020 WL 13547186, at *3; *accord Behring Reg'l Ctr. LLC*, 2021 WL

---

[6] It also bears mentioning that the diverse coalition of local government plaintiffs that Defendants oppose is a natural result of the administration's victory in *CASA*. *See Trump v. CASA, Inc.*, 606 U.S. 831, 855 (2025) (abolishing universal injunctions despite argument that "forcing plaintiffs to proceed on an individual basis can result in confusion or piecemeal litigation that imposes unnecessary costs on courts and others"). Following that decision, local governments have reasonably sought to protect their interests and residents by bringing their own actions or joining others rather than relying on relief obtained by other jurisdictions. The result has been that several coalitions of various local entities have filed similar suits advancing related legal theories. Although local public entities have endeavored to bring such challenges in a manner that conserves limited public resources, practical constraints have made universal coordination impossible. Different grant programs operate on distinct administrative timelines, and local entities often determine at different points which specific federal programs and conditions affect them. Additionally, not all entities rely on the same federal grant programs. Those programmatic differences, combined with staggered awareness of potential impacts, prevent all affected public entities from joining a single action and have led to the very "unnecessary costs on courts and others" that the administration dismissed in *CASA*.

-20-

RENNE PUBLIC LAW GROUP
Attorneys at Law

1164839, at *3 ("By Defendants' reasoning nearly all APA action should be decided in the District of Columbia, but there is no such rule."); *In re Chamber of Com. of United States of Am.*, 105 F.4th 297, 307 (5th Cir. 2024) ("If Congress wants to enshrine D.D.C. as a venue for APA challenges or cases where a federal agency or other D.C.-based government actor is the defendant, it can easily do so. But it hasn't.").

***

Defendants' claim splitting and transfer arguments rest on incorrect legal premises and fail under settled law. Because venue is proper in this District and the relevant factors weigh decisively against transfer, Defendants' objections provide no basis to deny issuing a second preliminary injunction.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue preliminary relief under Fed. R. Civ. P. 65 and 5 U.S.C. § 705 enjoining Defendants HUD, HHS, DOT and its operating administrations FTA, FHWA, FAA, FRA, and NHTSA from imposing or enforcing the Federal Grant Conditions or any materially similar terms or conditions to any federal funds received by or awarded to Additional Plaintiffs, directly or indirectly, in accordance with Plaintiffs' Proposed Preliminary Injunction Order accompanying this filing. Immediate relief is necessary to preserve the status quo, prevent irreparable harm to Plaintiffs and their residents, and uphold the constitutional and statutory limits on executive authority.

-21-

PLAINTIFFS' MPA ISO MOTION FOR SECOND PRELIMINARY INJUNCTION AND FOR PRELIMINARY RELIEF UNDER 5 U.S.C. § 705 – CASE NO. 3:25-cv-07070-RS

Dated:  March 5, 2026                              RENNE PUBLIC LAW GROUP


                                                   By: _____ */s/ Jonathan V. Holtzman* _____
                                                        JONATHAN V. HOLTZMAN

                                                   Attorneys for Plaintiffs
                                                   City of Fresno; City of Eureka; City of South
                                                   Lake Tahoe; City of Saint Paul; County of
                                                   Sacramento; County of Monroe; Monroe County
                                                   Airport Authority; County of San Diego, County
                                                   of Marin; City of Alameda; City of Redwood
                                                   City; City of Atlanta; City of Beaverton; City of
                                                   Corvallis; City of Hillsboro; City of Hillsboro;
                                                   City of Mountain View; City of Salem; City of
                                                   San Mateo; City of San Mateo; City of Santa
                                                   Clara; City of Santa Cruz; City of Stockton; City
                                                   of Sunnyvale; City of Vacaville; County of Los
                                                   Angeles; County of Santa Barbara

Dated:  March 5, 2026                              FRESNO CITY ATTORNEY'S OFFICE


                                                   By: _____ */s/ Andrew Janz* _____
                                                        ANDREW JANZ

                                                   Attorney for Plaintiff
                                                   CITY OF FRESNO

Dated:  March 5, 2026                              SAINT PAUL CITY ATTORNEY'S OFFICE


                                                   By: _____ */s/ Kelsey McElveen* _____
                                                        LYNDSEY OLSON *
                                                        KELSEY MCELVEEN *
                                                   * *Appearing pro hac vice*

                                                   Attorneys for Plaintiff
                                                   City of Saint Paul

Dated:  March 5, 2026                              ANDERSON & KREIGER LLP


                                                   By: _____ */s/ Melissa C. Allison* _____
                                                        MELISSA C. ALLISON *
                                                        CHRISTINA S. MARSHALL *
                                                   * *Appearing pro hac vice*

                                                   Attorneys for Plaintiffs
                                                   County of Monroe and Monroe County Airport
                                                   Authority

RENNE PUBLIC LAW GROUP
Attorneys at Law

1    Dated:  March 5, 2026                                OFFICE OF THE COUNTY COUNSEL
                                                          COUNTY OF MARIN

2
                                                          By: _____/s/ Brian E. Washington_____
3                                                              BRIAN E. WASHINGTON
                                                              KATE K. STANFORD
4
                                                          *Attorneys for Plaintiff*
5                                                          COUNTY OF MARIN

6    Dated:  March 5, 2026                                KREVOLIN & HORST, LLC

7
                                                          By: _____/s/ Allegra J. Lawrence_____
8                                                              ALLEGRA J. LAWRENCE*
                                                              MICHELLE McCLAFFERTY*
9                                                          *Application for pro hac vice forthcoming

10                                                         Attorneys for Plaintiff
                                                          City of Atlanta
11   Dated:  March 5, 2026                                ALAMEDA CITY ATTORNEY'S OFFICE

12
                                                          By: _____/s/ Yibin Shen_____
13                                                             YIBIN SHEN
                                                              CARA SILVER
14                                                            DANIEL J. TURNER

15                                                         Attorneys for Plaintiff
                                                          City of Alameda
16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MPA ISO MOTION FOR SECOND PRELIMINARY INJUNCTION AND FOR PRELIMINARY RELIEF
UNDER 5 U.S.C. § 705 – CASE NO. 3:25-cv-07070-RS

RENNE PUBLIC LAW GROUP
Attorneys at Law

1

**ECF ATTESTATION**

2       I, JONATHAN V. HOLTZMAN, am the ECF user whose identification and password are being

3   used to file this PLAINTIFFS' SECOND MOTION FOR PRELIMINARY INJUNCTION AND FOR

4   PRELIMINARY RELIEF UNDER 5 U.S.C. § 705.  Pursuant to Civil Local Rule 5-1(i)(3), I hereby

5   attest that the other above-named signatories concur in this filing.

6

7    Dated:  March 5, 2026                          RENNE PUBLIC LAW GROUP

8

9                                                   By:  _____/s/ Jonathan V. Holtzman_____
10                                                        JONATHAN V. HOLTZMAN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' ECF ATTESTATION REGARDING MOTION FOR SECOND PRELIMINARY INJUNCTION AND FOR
PRELIMINARY RELIEF UNDER 5 U.S.C. § 705 – CASE NO. 3:25-cv-07070-RS

RENNE PUBLIC LAW GROUP
Attorneys at Law