1    CRAIG H. MISSAKIAN (CABN 125202)
     United States Attorney
2    PAMELA T. JOHANN (CABN 145558)
     Chief, Civil Division
3    JEVECHIUS D. BERNARDONI (CABN 281892)
     Assistant United States Attorney
4
         450 Golden Gate Avenue, Box 36055
5        San Francisco, California 94102-3495
         Telephone: (415) 436-7224
6        Facsimile: (415) 436-6748
         jevechius.bernardoni@usdoj.gov
7
     Attorneys for Defendants
8

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11                      SAN FRANCISCO DIVISION

12   CITY OF FRESNO, *et al.*,                Case No. 3:25-cv-07070-RS

13          Plaintiffs,               **DEFENDANTS' NOTICE OF MOTION
                                      AND MOTION TO DISMISS OR, IN THE
14      v.                            ALTERNATIVE, TRANSFER;
                                      MEMORANDUM OF POINTS AND
15   SCOTT TURNER, *et al.*,          AUTHORITIES**

16          Defendants.              The Honorable Richard Seeborg

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION TO DISMISS OR TRANSFER ................................................. 1

I.    Introduction ....................................................................................................................... 1

II.   Background ........................................................................................................................ 2

    A.    Procedural Background ......................................................................................... 2

    B.    Overlapping Lawsuits Involving The Same/Related Plaintiffs Against The Same Agencies Challenging The Same Grant Conditions ............................................... 4

        1.    *Martin Luther King, Jr. County, et al. v. Turner, et al.*, No. 25-cv-00814-BJR (W.D. Wash.) ................................................................................................. 4

        2.    *City and County of San Francisco, et al. v. Trump, et al.*, No. 3:25-cv-01350-WHO (N.D. Cal.) ............................................................................................. 6

        3.    *Housing Authority of the County of San Diego, et al. v. Turner, et al.*, No. 3:25-cv-008859-JST (N.D. Cal.) ..................................................................... 8

    C.    EPA Plaintiffs' Claims ......................................................................................... 9

III.  Legal Standards ............................................................................................................... 11

    A.    Federal Rule Of Civil Procedure 12(b)(6) ......................................................... 11

    B.    Motions To Transfer Under The First-To-File Rule And 28 U.S.C. § 1404(a) ............... 12

    C.    Motions To Dismiss Under Rule 12(b)(1) For Lack Of Subject Matter Jurisdiction ....... 12

IV.   Argument ......................................................................................................................... 13

    A.    Dismissal Of Certain Plaintiffs Is Warranted Because They Impermissibly Split Their Claims Across Multiple Federal Court Lawsuits ............................................. 13

    B.    In The Alternative To Dismissal Of Certain Plaintiffs, The Whole Case Should Be Transferred To The Western District Of Washington Under The First-To-File Rule ...... 16

    C.    Transfer To The District Court For The District Of Columbia Would Also Be Appropriate Pursuant To 28 U.S.C. § 1404(a) .................................................... 17

    D.    The Court Should Dismiss All Claims Against EPA For Lack Of Jurisdiction .............. 21

        1.    Some Of The EPA Plaintiffs Do Not Have EPA Grants, And Their Claims Are Thus Not Ripe For Article III Adjudication ............................................... 22

        2.    Some Of The EPA Plaintiffs Cannot Identify An Injury In Fact Or An Injury That Is Fairly Traceable To The Challenged Conduct ......................................... 22

        3.    EPA Eliminated The DEI Condition On August 25, 2025, And Plaintiffs' Claims Against EPA Are All Moot ..................................................................... 24

V.    Conclusion ...................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Adams v. California Department of Health Services*, 487 F.3d 684 (9th Cir. 2007) ............................. 14

*Alltrade, Inc. v. Uniweld Prods. Inc.*, 946 F.2d 622 (9th Cir. 1991) ................................. 12, 16

*Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29 (2019) ............................................. 23

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) ..................................... 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................. 11

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) ................................... 11

*Baltimore S.S. Co. v. Philips*, 274 U.S. 316 (1927) ................................................. 13

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007) ................................... 24

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... 11

*Benson v. JPMorgan Chase Bank, N.A.*,
        No. 09-cv-5272-EMC, 2010 WL 1445532 (N.D. Cal. Apr. 7, 2010) ........................... 16

*Bodley v. Whirlpool Corp.*,
        No. 17-cv-05436-JST, 2018 WL 2357640 (N.D. Cal. May 24, 2018) ................... 16, 17

*Burns v. Unum Life Ins. Co. of Am.*,
        No. 07-cv-00122-SI, 2007 WL 1793779 (N.D. Cal. June 19, 2007) ........................... 24

*Cal. ex rel. Younger v. Andrus*, 608 F.2d 1247 (9th Cir. 1979) ...................................... 12

*Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939 (9th Cir. 2011) ................................ 24

*Chinn v. Giant Food, Inc.*, 100 F. Supp. 2d 331 (D. Md. 2000) ...................................... 13

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ............................................. 22, 24

*Clark v. City of Seattle*, 899 F.3d 802 (9th Cir. 2018) ............................................. 23

*Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321 (9th Cir. 1995) ......................... 14, 15

*CRU Acquisition Grp., LLC v. Mykey Tech. Inc.*,
        No. 11-cv-05743, 2012 WL 441293 (W.D. Wash. Feb. 10, 2012) ............................ 17

*D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031 (9th Cir. 2008) ........................ 22

*Davis v. Sun Oil Co.*, 148 F.3d 606 (6th Cir. 1998) ................................................. 14

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) ......................... 20

1  *Doe v. Hagee*, 473 F. Supp. 2d 989 (N.D. Cal. 2007) ............................................................... 12

2  *Dreier v. United States*, 106 F.3d 844 (9th Cir. 1997) ............................................................... 13

3  *Ecological Rights Found. v. United States EPA*,

4      No. 19-cv-04242-RS, 2019 WL 5295124 (N.D. Cal. Oct. 19, 2019) ..................................... 19, 20

5  *Enomoto v. Siemens Indus.*,

6      No. 23-cv-03779-JSC, 2023 WL 6278876 (N.D. Cal. Sept. 25, 2023) ................................. 20, 21

7  *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862 (9th Cir. 2014) ........................... 24

8  *FBI v. Fikre*, 601 U.S. 234 (2004) .......................................................................................... 25

9  *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,

10      82 F.4th 664 (9th Cir. 2023) ............................................................................................... 24, 25

11  *Flast v. Cohen*, 392 U.S. 83 (1968) ........................................................................................ 24

12  *Flowers Industries, Inc. v. FTC*, 835 F.2d 775 (11th Cir. 1987) ............................................... 18

13  *Gerin v. Aegon USA, Inc.*, No. 06-cv-5407-SBA, 2007 WL 1033472 (N.D. Cal. Apr. 4, 2007) ........... 21

14  *Gill v. Whitford*, 585 U.S. 48 (2018) ...................................................................................... 23

15  *Grossman v. Johnson & Johnson*,

16      No. 14-cv-03557-VC, 2015 WL 1743116 (N.D. Cal. Apr. 13, 2015) ......................................... 21

17  *Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582 (1983) ......................... 25

18  *Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303 (D.D.C. 2015) ................................... 20

19  *Hartsel Springs Ranch of Colorado v. Bluegreen Corp.*, 296 F.3d 982 (10th Cir. 2002) ............. 14

20  *Hatch v. Reliance Ins. Co.*, 758 F.2d 409 (9th Cir. 1985) ......................................................... 19

21  *Hayday Farms, Inc. v. FeeDx Holdings, Inc.*, 55 F.4th 1232 (9th Cir. 2022) ............................. 12

22  *Hoffman v. Blaski*, 363 U.S. 335 (1960) ................................................................................. 19

23  *Hollingsworth v. Perry*, 570 U.S. 693 (2013) .......................................................................... 24

24  *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093 (N.D. Cal. 2006) ......................... 17

25  *J.F. v. New Haven Unified Sch. Dist.*,

26      No. 13-cv-03808-SI, 2014 WL 6485643 (N.D. Cal. Nov. 19, 2014) ......................................... 24

27  *Johns v. Panera Bread Co.*, No. 08-cv-1071-SC, 2008 WL 2811827 (N.D. Cal. July 21, 2008) ........... 21

28  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) ................................................. 19

*Karlen v. Wells Fargo Bank, N.A.*,

    No. 22-cv-02127-JSC, 2022 WL 2756671 (N.D. Cal. July 14, 2022) .......................................... 21

*Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237 (9th Cir. 2015) .................. 16

*Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375 (1994) ............................................................. 12

*Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987) ...................................................................................... 19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................................... 22, 23

*Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668 (9th Cir. 2021) ......................................................... 24

*May Chen v. Xiyan Zhang*,

    No. 24-cv-03942-JST, 2024 WL 4894294 (N.D. Cal. Nov. 25, 2024) ....................... 12, 16, 17

*Mendoza v. Amalgamated Transit Union International*, 30 F.4th 879 (9th Cir. 2022) ..................... 14, 15

*Mitchell v. Dupnik*, 75 F.3d 517 (9th Cir. 1996) .................................................................................... 24

*Morris v. Safeco Ins. Co.*, No. 07-cv-2890-PJH, 2008 WL 5273719 (N.D. Cal. Dec. 19, 2008) ...... 19, 20

*Murthy v. Missouri*, 603 U.S. 43 (2024) ................................................................................................ 21

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) .................................................................................... 11

*O'Shea v. Littleton*, 414 U.S. 488 (1974) .............................................................................................. 24

*Our Children's Earth Found. v. EPA*,

    No. 08-cv-01461-SBA, 2008 WL 3181583 (N.D. Cal. Aug. 4, 2008) .................................. 12, 21

*Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982) ..................................................... 16

*Pub. Utils. Comm'n v. Fed. Energy Regulatory Comm'n*, 100 F.3d 1451 (9th Cir.1996) ...................... 24

*Robinson v. United States*, 586 F.3d 683 (9th Cir. 2009) ....................................................................... 13

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ............................................................. 12

*Savage v. Glendale Union High School*, 343 F.3d 1036 (9th Cir. 2003) ................................................. 12

*Scott v. Pasadena Unified School Dist.*, 306 F.3d 646 (9th Cir. 2002) ................................................... 22

*Shaver v. F.W. Woolsworth Co.*, 840 F.2d 1361 (7th Cir. 1988) ............................................................. 14

*Southard v. Kipper Tool Co.*,

    No. 15-cv-03621-JSC, 2023 WL 6959145 (N.D. Cal. Oct. 19, 2023) ............................. 12, 19, 21

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ........................................................................................ 23

*Stark v. Starr*, 94 U.S. 477 (1876) ........................................................................................................ 13

1   *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ........................................................ 11

2   *Taylor v. Sturgell*, 553 U.S. 880 (2008) ............................................................... 14

3   *Texas v. United States*, 523 U.S. 296 (1998) ........................................................ 22

4   *Tosco Corp. v. Communities for Better Environment*, 236 F.3d 495 (9th Cir. 2001) ............ 12

5   *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ................................................ 23

6   *United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) .............................. 24

7   *United States v. Juv. Male*, 564 U.S. 932 (2011) .................................................. 22

8   *Updike v. Multnomah Cty.*, 870 F.3d 939 (9th Cir. 2017) .......................... 21, 22, 23

9   *Van Dusen v. Barrack*, 376 U.S. 612 (1964) ....................................................... 12

10  *Van Mourik v. Big Heart Pet Brands, Inc.*,

11      No. 17-cv-03889-JD, 2018 WL 3549122 (N.D. Cal. July 24, 2018) ........................ 20

12  *White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) ....................................................... 13

13  *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517 (9th Cir. 2023) ............... 23

14  *WMATA v. Ragonese*, 617 F.2d 828 (D.C. Cir. 1980) ...................................... 2, 14, 15

15  *Wyles v. Sussman*, 661 F. App'x 548 (10th Cir. 2016) ...................................... 14, 15

16                                **STATUTES**

17  28 U.S.C. § 1404(a) ................................................................................ passim

18  42 U.S.C. § 1437 ........................................................................................... 8

19  42 U.S.C. § 2000d-1 .................................................................................... 25

20                          **OTHER AUTHORITIES**

21  Restatement (Second) of Judgments § 24 .......................................................... 14

22                                  **RULES**

23  Federal Rule of Civil Procedure 12(b)(1) ..................................................... 1, 12, 13

24  Federal Rule of Civil Procedure 12(b)(3) ........................................................ 1, 18

25  Federal Rule of Civil Procedure 12(b)(6) ........................................................ 1, 11

26                             **REGULATIONS**

27  2 C.F.R. § 200.211(c)(1)(ii) .......................................................................... 25

28  2 C.F.R. § 200.300(a) ................................................................................. 25

**NOTICE OF MOTION AND MOTION TO DISMISS OR TRANSFER**

PLEASE TAKE NOTICE that on April 23, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 3, 17th Floor, Phillip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Richard Seeborg, defendants U.S. Department of Housing and Urban Development ("HUD"); Scott Turner, in his official capacity as Secretary of HUD; U.S. Department of Transportation ("DOT"); Sean Duffy, in his official capacity as Secretary of DOT; Federal Transit Administration ("FTA"); Marcus J. Molinaro, in his official capacity as the Administrator of FTA; Federal Highway Administration ("FHWA"); Gloria M. Shepherd, in her official capacity as the Executive Director of FHWA; Federal Aviation Administration ("FAA"); Bryan Bedford, in his official capacity as the Administrator of FAA; Federal Railroad Administration ("FRA"); David Fink, in his official capacity as the Administrator of the FRA; National Highway Traffic Safety Administration ("NHTSA"); Jonathan Morrison, in his official capacity as the Administrator of NHTSA; U.S. Department of Health and Human Services ("HHS"); Robert F. Kennedy, Jr., in his official capacity as Secretary of HHS; U.S. Environmental Protection Agency ("EPA"); Lee Zeldin, in his official capacity as Administrator of EPA (collectively, "Defendants"), will and hereby do move to dismiss, in part, the above-captioned action pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(1), and/or 12(b)(3) or transfer to the United States District Court for the Western District of Washington ("Western District of Washington") pursuant to the first-to-file rule or to the United States District Court for the District of Columbia ("District Court for the District of Columbia") under 28 U.S.C. § 1404(a).

This motion is based on this Notice; the Memorandum of Points and Authorities; the pleadings, records, and files in this case; other matters of which the Court may take judicial notice, including *Martin Luther King, Jr. County, et al. v. Turner, et al.*, No. 25-cv-00814-BJR (W.D. Wash.), *City and County of San Francisco, et al. v. Trump, et al.*, No. 3:25-cv-01350-WHO (N.D. Cal.), and *Housing Authority of the County of San Diego, et al. v. Turner, et al.*, No. 3:25-cv-008859-JST (N.D. Cal.); and such other written or oral argument as may be presented at or before the time the Court takes this motion under submission.

## I.    Introduction

Notwithstanding the Court's prior warning that Plaintiffs should be "mindful" of claim-splitting issues and a potential transfer under 28 U.S.C. § 1404(a) in any amended complaint (*see* ECF No. 63 at 4

n.3), the Second Amended Complaint adds all fourteen of the cities and counties that Plaintiffs previously sought to join in their motion for leave to amend—the majority of which are not located in this District—and continues to challenge the same grant conditions against the same agencies that some of these same Plaintiffs or their privies are litigating in at least three other simultaneous federal district court actions. ECF No. 68 ("SAC"). This is not just an ill-advised demand on limited federal judicial resources; it is a practice that is forbidden by the claim-splitting doctrine because "[c]onsiderations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously." *WMATA v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980). The claim-splitting doctrine strongly counsels against allowing Plaintiffs to pursue this lawsuit in the Northern District of California.

But even if the Court is not inclined to dismiss under the claim-splitting doctrine, there is another tool the Court can use to ensure conservation of limited judicial resources and comprehensive disposition of litigation: the first-to-file rule. Here, the same challenged grant conditions by the same agencies (with the exception of EPA) are already being litigated in the Western District of Washington by at least one related entity, and the case thus should be transferred to that district in its entirety. In any event, this District has minimal local interest in this nationwide controversy (especially where more than 95% of the population represented by these Plaintiffs is not located here), and this case alternatively should be transferred to the District Court for the District of Columbia under 28 U.S.C. § 1404(a).

Finally, the Court should dismiss all claims against EPA for lack of subject matter jurisdiction for three separate reasons: (1) some of the EPA Plaintiffs do not have *any* EPA grants, (2) some of the EPA Plaintiffs' grants do not include any of the conditions challenged in this lawsuit, and (3) EPA updated its General Terms and Conditions on August 25, 2025 to remove all references to diversity, equity, and inclusion ("DEI") for all EPA grants nationwide and there is thus no risk of future repeated harm. In short, there is no Article III case or controversy with respect to EPA.

## II. Background

### A. Procedural Background

In the initial complaint, seven plaintiffs—City of Fresno; City of South Lake Tahoe; City of Saint Paul, Minnesota; County of Sacramento; County of Monroe, New York; Monroe County Airport Authority; and City of Eureka—initiated this lawsuit against four federal agencies (and three operating

administrations) on August 20, 2025.  ECF No. 1.  Of the original plaintiffs, only the City of Eureka is located in the Northern District of California, and it served as the sole basis for venue in this District.  *Id.* ¶ 2.  City of Eureka, however, did not (and still does not) assert any claims against defendants HHS and EPA.  This Court issued a temporary restraining order on August 27, 2025, which, *inter alia*, enjoined HUD, DOT, FTA, FHWA, FAA, HHS, and EPA, as well as each agency head, from imposing or enforcing the Grant Condition Executive Orders, as defined therein.  ECF No. 28.

Twelve days after the temporary restraining order was entered, the original plaintiffs filed a first amended complaint as of right adding four new plaintiffs:  County of San Diego, County of Marin, City of Alameda, and City of Redwood City.  ECF No. 35 ("FAC").  Simultaneously, Plaintiffs filed a motion for a preliminary injunction (ECF No. 36), which the Court granted, in part, on September 23, 2025.  ECF No. 45 ("PI Order").  The Court declined to enter a preliminary injunction against EPA, finding the claims "fail[ed]" as a result of (1) EPA's revision of its General Terms and Conditions on August 25, 2025 and (2) because "there is no evidence that the EPA is still enforcing its DEI Conditions or interprets its Anti-Discrimination Condition to prohibit promotion of DEI."  *Id.* at 11.

Almost three months after the Court issued the preliminary injunction, Plaintiffs filed a motion for leave to file a second amended complaint, which sought to add fourteen additional cities and counties as plaintiffs:  City of Atlanta, Georgia; City of Beaverton, Oregon; City of Corvallis, Oregon; City of Hillsboro; City of Mountain View; City of Salem, Oregon; City of San Mateo; City of Santa Clara; City of Santa Cruz; City of Stockton; City of Sunnyvale; City of Vacaville; County of Los Angeles; and County of Santa Barbara as well as add six new federal departments and agencies to the lawsuit.  ECF No. 63. Defendants opposed the motion for leave to file a second amended complaint, arguing (1) the claims against EPA were futile because EPA had already revised its general terms and conditions to remove the challenged DEI provision, (2) the new plaintiffs and new defendants were improperly joined, (3) Plaintiffs were impermissibly splitting their claims between multiple federal court lawsuits, and (4) the case should be transferred because a significant proportion of Plaintiffs had no connection to this District.  ECF No. 64.

The Court denied Plaintiffs' motion for leave to amend without prejudice.  ECF No. 63. Specifically, the Court held that Plaintiffs could not amend "to join defendants related to agencies that are new to the proceeding" (*e.g.*, DHS, FEMA, DOI, and DOJ).  *Id.* at 4.  But the Court permitted Plaintiffs,

in a to-be-filed motion for leave to amend, to add new plaintiffs and claims related to the existing defendants, provided that they relate to "funding administered through programs subject to . . . the same authorizing statutes and rules as the" First Amended Complaint. *Id.* at 4. The Court further found that Plaintiffs could retain their claims against EPA in an amended pleading but that EPA was free to challenge those claims in a noticed motion to dismiss. *Id.* at 4 n.2. Nevertheless, the Court cautioned Plaintiffs that any amendment "should be mindful of the claim-splitting doctrine[.]" *Id.* at 4 n.3. The Court further advised Plaintiffs to "keep in mind the Defendants' compelling argument as to transfer were the number of plaintiffs outside the Northern District of California to swell." *Id.*

In the interest of judicial efficiency, Defendants stipulated to allow Plaintiffs to file a second amended complaint but reserved the right to challenge the amended pleadings on all applicable grounds. ECF No. 66. Plaintiffs then filed the SAC on February 9, 2026. Notwithstanding this Court's cautionary notes regarding Defendants' "compelling" arguments regarding claim-splitting and transfer, the SAC added all fourteen of the cities and counties that Plaintiffs previously sought to add in their motion for leave to amend. *Id.* As such, less than half of the current Plaintiffs are located in this District. Moreover, the SAC's claims continue to overlap with the claims in at least three other federal court grant conditions cases brought by some of these same Plaintiffs or their privies.

**B.    Overlapping Lawsuits Involving The Same/Related Plaintiffs Against The Same Agencies Challenging The Same Grant Conditions**

This lawsuit is not the first or only legal proceeding challenging the alleged conditions. In fact, at least three other cases filed by the same and/or related plaintiffs challenge many of the same grant conditions imposed by these same agency defendants.

**1.    *Martin Luther King, Jr. County, et al. v. Turner, et al.*, No. 25-cv-00814-BJR (W.D. Wash.)**

On May 2, 2025, a group of eight local governmental entities sued HUD, DOT, and FTA as well as each agency head in the United States District Court for the Western District of Washington. *Martin Luther King, Jr. County, et al. v. Turner, et al.*, No. 25-cv-00814-BJR (W.D. Wash.) ("*King County*"). Across four successive complaints, *King County* ballooned into a 75-plaintiff lawsuit and added HHS as a defendant. *Id.* at ECF No. 369 ("*King County* TAC"). Each of the agency defendants in *King County*

is also a defendant in this proceeding and is subject, in *King County*, to the same challenges to many of the same grant terms and conditions to those at issue here. *See id.* Moreover, the legal claims in the two lawsuits overlap entirely (and recycle language practically verbatim), *compare*:

| SAC | *King County* TAC |
|---|---|
| ¶¶ 494-505: "Count 1: Separation of Powers" | ¶¶ 697-710: "Count 1: Separation of Powers" |
| ¶¶ 506-12: "Count 2: Spending Clause" | ¶¶ 711-19: "Count 2: Spending Clause" |
| ¶¶ 513-16: "Count 3: Tenth Amendment" | ¶¶ 720-25: "Count 3: Tenth Amendment" |
| ¶¶ 517-28: "Count 4: Fifth Amendment Due Process – Vagueness" | ¶¶ 726-37: "Count 4: Fifth Amendment Due Process (Vagueness)" |
| ¶¶ 529-43: "Count 5: Administrative Procedure Act, 5 U.S.C. § 706(2) – Arbitrary and Capricious" | ¶¶ 738-56: "Count 5: Administrative Procedure Act, 5 U.S.C. § 706(2) Arbitrary and Capricious" |
| ¶¶ 544-47: "Count 6: Administrative Procedure Act, 5 U.S.C. § 706(2) – Contrary to the Constitution" | ¶¶ 757-62: "Count 6: Administrative Procedure Act, 5 U.S.C. § 706(2) Contrary to Constitution" |
| ¶¶ 548-55: "Count 7: Administrative Procedure Act, 5 U.S.C. § 706(2) – In Excess of Statutory Authority" | ¶¶ 763-71: "Count 7: Administrative Procedure Act, 5 U.S.C. § 706(2) In Excess of Statutory Authority" |
| ¶¶ 556-60: "Count 8: Administrative Procedure Act, 5 U.S.C. § 706(2) – Agency Action Contrary to Regulation" | ¶¶ 772-79: "Count 8: Administrative Procedure Act, 5 U.S.C. § 706(2) Agency Action Contrary to Regulation" |
| ¶¶ 561-72: "Count 9: Administrative Procedure Act, 5 U.S.C. § 706(2) – Agency Action Without Procedure Required By Law" | ¶¶ 780-92: "Count 9: Administrative Procedure Act, 5 U.S.C. § 706(2) Agency Action Without Procedure Required By Law" |

Finally, the permanent injunctive relief requested by Plaintiffs here and by the *King County* plaintiffs is essentially identical. *Compare* SAC at Prayer for Relief *with King County* TAC at Prayer for Relief.

At least one plaintiff in *King County* was created by County of Los Angeles (a Plaintiff in the above-captioned case). *See King County* TAC ¶ 284 (Los Angeles Homeless Services Authority ("LAHSA") "is a joint powers authority of the . . . County of Los Angeles"). The *King County* TAC alleges that "LAHSA is the lead agency in the HUD-funded Los Angeles Continuum of Care (LA CoC)" and defines LAHSA as one of the "CoC Plaintiffs." *Id.* ¶¶ 285 & 360. In *King County*, LAHSA sought relief not only on behalf of itself, but also on behalf of non-party "members of CoC Plaintiffs'

Continuums," which includes the County of Los Angeles.[1]  *Id.* at Prayer for Relief ¶ B.  The *King County* court issued an injunction not just with respect to the CoC Plaintiffs, like LAHSA, but also to all non-party "members of their Continuums," including County of Los Angeles.  *King County*, ECF No. 338 at 36. Additionally, the *King County* preliminary injunction covered all HUD programs, and all members (whether a named plaintiff or not) of CoC continuums, urban county, consortia, and subrecipients.  *Id.*

>    **2.**    ***City and County of San Francisco, et al. v. Trump, et al.*, No. 3:25-cv-01350-WHO (N.D. Cal.)**

Three Plaintiffs in the above-captioned case (City of Santa Cruz, City of Saint Paul, and County of Marin) are direct participants in *City and County of San Francisco, et al. v. Trump, et al.*, No. 3:25-cv-01350-WHO (N.D. Cal.) ("*CCSF*"), which was initiated on February 7, 2025.  *CCSF* presents a broad challenge to the administration's executive orders and grant conditions relating to "sanctuary" jurisdictions.  *Id.* at ECF No. 193 ("*CCSF* SAC").  The operative complaint in *CCSF* claims that City of Saint Paul receives "significant funding from EPA, HUD, and DOT" that is impacted by immigration-related conditions on federal grant funding.  *Id.* ¶ 551.  County of Marin also alleges that it receives federal funding from HHS, HUD, and DOT that is, again, purportedly at risk as a result of immigration conditions imposed on federal grant funding.  *Id.* ¶ 643.  In the *CCSF* SAC, City of Santa Cruz identifies federal grant funding only from non-party DOJ (*id.* ¶¶ 527-32) but, as discussed below, the City of Santa Cruz's federal funding from HUD and DOT is also covered within the terms of the *CCSF* preliminary injunctive relief.  Finally, a fourth Plaintiff in the above-captioned case, County of Sacramento, is within the Sacramento HUD continuum of care that is actively being litigated in the *CCSF* matter.

The agencies from which City of Saint Paul, County of Marin, and City of Santa Cruz claim they receive federal funds (and challenge conditions attached to that federal grant funding) in the *CCSF* case

---

[1] HUD defines a Continuum of Care as the group organized to carry out the responsibilities prescribed in the CoC Program Interim Rule for a defined geographic area, which is typically composed of representatives of organizations including:  nonprofit homeless providers, victim service providers, faith-based organizations, governments, businesses, advocates, public housing agencies, school districts, social service providers, mental health agencies, hospitals, universities, affordable housing developers, law enforcement, organizations that serve homeless and formerly homeless veterans, and homeless and formerly homeless persons.  *See* https://www.hudexchange.info/faqs/1545/what-is-a-continuum-of-care/#:~:text=A%20Continuum%20of%20Care%20(CoC,Tags:%20CoC%20Program%20Administration%20%2D%20General.

are also Defendants in the above-captioned lawsuit (*e.g.*, HHS, HUD, DOT, and EPA).[2]

Judge Orrick granted two preliminary injunctions in *CCSF*. The first preliminary injunction enjoined "any federal agency or official" from "directly or indirectly taking any action to withhold, freeze, or condition federal funds from the Cities and Counties based on (1) the first sentence of Section 17 of Executive Order 14,159, (2) Section 2(a)(ii) of Executive Order 14,218, or (3) the Preamble and Section I of the February 5, 2025 Memorandum from the Attorney General entitled "Sanctuary Jurisdictions Directives[.]" *CCSF*, ECF Nos. 111 & 126. Judge Orrick subsequently clarified that the first *CCSF* preliminary injunction enjoined not only the relevant portions of the Executive Orders, but also "*any Executive Order or agency directive that purports to attempt to cut off federal funding from States or localities that meet the Government's definition of 'sanctuary' jurisdiction*[.]" *CCSF*, ECF Nos. 136 & 225 (emphasis in original). After additional plaintiffs joined the *CCSF* matter, Judge Orrick issued a second preliminary injunction, which extended the prior order to the new plaintiffs and expanded the terms of the injunction to cover HUD's CoC grants and HUD Community Development Block Grants ("CDBG"). *CCSF*, ECF No. 225.

Although the *CCSF* injunctions cover "*any . . . agency directive that purports to attempt to cut off federal funding from States or localities that meet the Government's definition of 'sanctuary' jurisdiction*" and expressly apply to HUD's CoC and CDBG grants (*see CCSF*, ECF Nos. 136 & 225, emphasis in original), and although it is a direct party to *CCSF*, County of Marin once again invokes the exact same HUD grant funding (CoC and CDBG grant programs) in support of its duplicative challenges to HUD grant conditions before this Court. *See* SAC ¶ 33. City of Santa Cruz (again, a direct party to *CCSF*) similarly invokes HUD grant funding (CDBG and HOME programs) as well as DOT grant funding in the above-captioned lawsuit. *Id.* ¶¶ 76-77. City of Saint Paul also invokes HUD grant funding (CDBG, HOME, and ESG grant programs) and DOT grant funding even though it is directly challenging the same HUD and DOT grant conditions in those same grant programs in *CCSF*. *Id.* ¶¶ 21-22. And the County of Sacramento alleges that it "receives HUD funding for the support of critical and essential homeless services and housing programs and projects as a passthrough subrecipient entity" from "the lead agency

---

[2] The City of Saint Paul's allegations regarding EPA grant funding in *CCSF* are curious because EPA does not have—and has not had during the relevant period—immigration-related grant conditions.

1   for Sacramento's Continuum of Care." *Id.* ¶ 13.

2       **3.**    ***Housing Authority of the County of San Diego, et al. v. Turner, et al.*, No. 3:25-
        cv-008859-JST (N.D. Cal.)**

3

4       On October 15, 2025, lead counsel for Plaintiffs in the above-captioned matter initiated a second

5   lawsuit against HUD and Turner on behalf of eight local governmental entities.  *Housing Authority of the*

6   *County of San Diego, et al. v. Turner, et al.*, No. 3:25-cv-008859-JST (N.D. Cal.) ("*San Diego Housing*

7   *Authority*").  Two of the plaintiffs in *San Diego Housing Authority* were legally created by Plaintiffs

8   County of San Diego and County of Los Angeles.  *See id.* at ECF No. 1 ¶ 6 (identifying plaintiff Housing

9   Authority of the County of San Diego as an agency "created by resolution of the San Diego County Board

10  of Supervisors"), ¶ 12 (identifying plaintiff Los Angeles County Development Authority as an agency

11  "created by resolution of the Los Angeles County Board of Supervisors").[3]   Moreover, the

12  above-captioned SAC is challenging the same HUD grant conditions that are currently being litigated by

13  the related governmental entities in *San Diego Housing Authority*.  For example, the SAC claims that

14  County of San Diego and County of Los Angeles receive HUD funding, and they seek to challenge grant

15  conditions (the same conditions at issue in *San Diego Housing Authority*) imposed on that funding.  SAC

16  ¶¶ 44 & 92.  And just like the duplication of claims in *King County*, the legal claims in the above-captioned

17  lawsuit and in *San Diego Housing Authority* are substantially verbatim and entirely overlapping.  *Compare*

18  SAC ¶¶ 494-572 *with San Diego Housing Authority* Compl. ¶¶ 128-83.

19      The *San Diego Housing Authority* case demonstrates that the efficient use of federal judicial

20  resources, claim-splitting, and venue concerns present in the case before this Court are not unique.  Just

21  like this case, when *San Diego Housing Authority* was first filed, only one of the plaintiffs (Housing

22  Authority of the City and County of San Francisco) was located in this District, and that entity similarly

23  was splitting its claims between *San Diego Housing Authority*, *King County*, and *CCSF*.  Defendants in

24

25      [3] HUD recognizes that by 42 U.S.C. § 1437(a), HUD provides funding to assist States and political
    subdivisions of States to remedy unsafe housing conditions and shortage of decent and safe dwellings for
26  low-income families by vesting in public housing agencies the maximum amount of responsibility and
    flexibility in program administration, with appropriate accountability to public housing residents,
27  localities, and the general public.  Public housing agency means any State, county, municipality, or other
    governmental entity or public body (or agency or instrumentality thereof) which is authorized to engage
28  in or assist in the development or operation of public housing, or a consortium of such entities or bodies
    as approved by the Secretary.  42 U.S.C. § 1437a(A)(6).

*San Diego Housing Authority* recently filed a motion to dismiss or transfer on similar grounds to the motion currently before the Court. *See San Diego Housing Authority*, ECF No. 41. That motion is fully briefed and awaiting decision from Judge Tigar.

### C.    EPA Plaintiffs' Claims

Unlike the other agency defendants in this lawsuit, EPA's Fiscal Year ("FY") 2025 and FY 2026 General Terms and Conditions do not speak to immigration enforcement, gender ideology, and/or abortion. *See* Declaration of Gregg A. Treml ("Treml Decl.") ¶ 8. Thus, the *only* EPA-related challenged condition in this lawsuit is an amendment to EPA's FY 2025 General Terms and Conditions on April 3, 2025, which required EPA grant recipients to certify that they do "not operate any programs promoting [DEI] that violate any applicable Federal anti-discrimination laws." SAC ¶ 438; Treml Decl. ¶ 3.

The SAC recognizes, however, that this DEI condition no longer exists in *any* EPA grants issued on or after October 1, 2025. SAC ¶ 440. Specifically, the SAC acknowledges that as of October 1, 2025, this condition was updated to state "the recipient certifies that it does not operate any programs violating any applicable Federal antidiscrimination law or promoting any such violation." *Id.*; Treml Decl. ¶¶ 4-6. As such, the parties are in agreement that for all grants (or monetary amendments) issued on or after October 1, 2025, there are no EPA conditions that include the challenged DEI language. The SAC, however, gets the timing wrong. SAC ¶ 440. EPA, in fact, revised its FY 2025 General Terms and Conditions on August 25, 2025 to remove the DEI language challenged in the SAC.[4] Treml Decl. ¶ 4. In revising the General Terms and Conditions on August 25, 2025, EPA made clear, through an instruction, that the updated Terms and Conditions applied to: "all new awards and funding amendments (incremental and supplemental) made on or after April 3, 2025." *Id.* ¶ 6. EPA's removal of the DEI language—not just for the EPA Plaintiffs here, but instead for all EPA grants nationwide issued on or after April 3, 2025 (and, for the sake of clarity, the Federal anti-discrimination clause did not exist for EPA grants issued *prior* to April 3, 2025)—was unrelated to the above-captioned lawsuit. *Id.* ¶ 7; SAC ¶ 441 (acknowledging

---

[4] Oddly, Plaintiffs allege a different date, October 1, 2025, in the SAC (SAC ¶ 440) despite being well aware that EPA's General Terms and Conditions were revised on August 25, 2025 to remove the challenged DEI condition—a fact that has been previously recognized both by this Court and by Defendants. *See* ECF No. 45 (Preliminary Injunction Order) at 5; ECF No. 64 (Defendants' Opposition to Motion for Leave to Amend).

that EPA's removal of the DEI condition was "voluntary").

Rather than accept that the challenged DEI condition is inoperable, Plaintiffs renew their claims against EPA in the SAC and contend that EPA's removal of that condition "does not provide the relief and protection that the requested injunctive and declaratory relief would, and it does not moot Plaintiffs' claims." SAC ¶ 441.

The SAC defines City of Fresno, City of Redwood City, City of Alameda, City of Atlanta, City of Beaverton, City of Hillsboro, City of Santa Clara, City of Santa Cruz, City of Sunnyvale, and County of Los Angeles as the "EPA Plaintiffs." SAC ¶ 335. However, some of those EPA Plaintiffs do not, in fact, have any EPA grants at all and some of the EPA Plaintiffs' EPA grants do not include any of the conditions challenged in this lawsuit.

**Putative EPA Plaintiffs without EPA grants**:

- City of Redwood City, City of Santa Clara, and City of Sunnyvale do not have any active or pending grants with EPA. Treml Decl. ¶¶ 11, 15, & 17.

- City of Alameda alleges that it "applied for a $2,497,000 EPA grant to fund local partnerships to build a system for advancing sustainable development at Alameda Point, the former Naval Air Station Alameda, with meaningful community engagement." SAC ¶ 36. However, all unobligated funding under that EPA grant program was rescinded by the One Big Beautiful Bill Act, Pub. L. 119-21, 139 Stat. 72, Sec. 60016 (July 4, 2025), and EPA is no longer processing applications for that program. Treml Decl. ¶ 10.b. Accordingly, City of Alameda does not have a grant under this program.

**EPA Plaintiffs with EPA grants without challenged conditions (*i.e.*, not only no provision regarding DEI, but no provision regarding Federal anti-discrimination laws)**:

- City of Alameda has a San Francisco Bay Water Quality Improvement Fund grant that has been in place since 2023, which does not include any terms and conditions challenged in this lawsuit. *Id.* ¶ 10.a.

- City of Atlanta has a Clean Heavy-Duty Vehicles grant that has been in place since January 2025, which does not include any terms and conditions challenged in this lawsuit. *Id.* ¶ 12.a.

- City of Hillsboro has a Brownfields Assessment grant that has been in place since 2022, which

1    does not include any terms and conditions challenged in this lawsuit.  *Id.* ¶ 14.b.

2    • City of Santa Cruz has a Community Project Funding (CPF)/Congressionally Directed

3    Spending Item (CDSI) grant that has been in place since September 2023, which does not

4    include any terms and conditions challenged in this lawsuit.  *Id.* ¶ 16.a.

5    • County of Los Angeles has four active EPA grants issued under various EPA programs that do

6    not include any terms and conditions challenged in this lawsuit.  *Id.* ¶ 18.a.

7    **III.    Legal Standards**

8    **A.    Federal Rule Of Civil Procedure 12(b)(6)**

9    A Rule 12(b)(6) challenge disputes "the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d

10   729, 732 (9th Cir. 2001).  Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where there

11   is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable

12   legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  The Supreme Court's

13   decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662

14   (2009), make clear that conclusory allegations are not sufficient to withstand a challenge under

15   Rule 12(b)(6).  To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible

16   on its face."  *Twombly*, 550 U.S. at 570.  A claim has "facial plausibility" only if the complaint pleads

17   facts sufficient to allow "the court to draw the reasonable inference that the defendant is liable for the

18   misconduct alleged."  *Iqbal*, 556 U.S. at 678.  While the Court must treat all factual allegations as true for

19   purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a

20   factual allegation."  *Id.*

21   In light of *Twombly* and *Iqbal*, the Ninth Circuit has articulated a two-part test that the plaintiff

22   must pass to survive a motion to dismiss.

23   First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim
24   may not simply recite the elements of a cause of action, but must contain sufficient
     allegations of underlying facts to give fair notice and to enable the opposing party to defend
     itself effectively.  Second, the factual allegations that are taken as true must plausibly
25   suggest an entitlement to relief, such that it is not unfair to require the opposing party to be
     subjected to the expense of discovery and continued litigation.
26

27   *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

28

**B.      Motions To Transfer Under The First-To-File Rule And 28 U.S.C. § 1404(a)**

A district court may transfer, stay, or dismiss an action pursuant to the "first-to-file" rule when a similar complaint has been filed in another federal court.  *May Chen v. Xiyan Zhang*, No. 24-cv-03942-JST, 2024 WL 4894294, at *3 (N.D. Cal. Nov. 25, 2024) (citing *Alltrade, Inc. v. Uniweld Prods. Inc.*, 946 F.2d 622, 623 (9th Cir. 1991)).  In the alternative to the first-to-file rule, for the convenience of parties and witnesses and in the interest of justice, a court may transfer a civil action to any other district where it might have been brought.  28 U.S.C. § 1404(a).  "Section 1404(a) was designed to protect litigants, witnesses and the public against unnecessary inconvenience and expense[,] ensure systemic integrity and fairness in the judicial process, and the efficient administration of the court system." *Our Children's Earth Found. v. EPA*, No. 08-cv-01461-SBA, 2008 WL 3181583, at *4 (N.D. Cal. Aug. 4, 2008) (cleaned up); *see also Southard v. Kipper Tool Co.*, No. 15-cv-03621-JSC, 2023 WL 6959145, at *3 (N.D. Cal. Oct. 19, 2023) ("Section 1404(a) exists to 'prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'") (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

**C.      Motions To Dismiss Under Rule 12(b)(1) For Lack Of Subject Matter Jurisdiction**

A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the court.  *Savage v. Glendale Union High School*, 343 F.3d 1036, 1039-40 (9th Cir. 2003); *Doe v. Hagee*, 473 F. Supp. 2d 989, 994 (N.D. Cal. 2007).  A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears.  *Cal. ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979).  Courts will not infer evidence supporting subject matter jurisdiction.  *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [the federal court's] limited jurisdiction.").  "Lack of subject matter jurisdiction can be asserted by any party at any time or raised by a court sua sponte."  *Hayday Farms, Inc. v. FeeDx Holdings, Inc.*, 55 F.4th 1232, 1238 (9th Cir. 2022)) (citation omitted).

"When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion."  *Tosco Corp. v. Communities for Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A

facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* A factual challenge, on the other hand, allows the court to look beyond the complaint without "presum[ing] the truthfulness of the plaintiff's allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). On a Rule 12(b)(1) motion, the Court can hear evidence outside the pleadings and resolve factual disputes, if necessary, without treating the motion as one for summary judgment. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) .

## IV.    Argument[5]

### A.    Dismissal Of Certain Plaintiffs Is Warranted Because They Impermissibly Split Their Claims Across Multiple Federal Court Lawsuits

Plaintiffs should not be permitted to split their challenges to identical grant conditions imposed by the same agencies between multiple federal district court actions, but that is clearly happening here. City of Saint Paul, County of Marin, and City of Santa Cruz are directly challenging immigration-related grant conditions imposed by HHS, HUD, and DOT in *CCSF*. Nevertheless, they filed this duplicative lawsuit challenging those same grant conditions by the same agencies. Additionally, privies of County of Los Angeles (in *King County* and in *San Diego Housing Authority*), County of Sacramento (in *CCSF*), and County of San Diego (in *San Diego Housing Authority*) are challenging the same grant conditions in multiple federal court lawsuits. Not only are these duplicative efforts an inefficient, improper, and burdensome use of limited federal judicial resources, but they also have created a nationwide patchwork of overlapping (and potentially inconsistent) injunctions that are (1) challenging for federal agencies to administer and adhere to and (2) difficult for plaintiffs themselves to keep track of and navigate.

A party seeking to enforce a claim "is not at liberty to split up his demand and prosecute it by piecemeal." *Baltimore S.S. Co. v. Philips*, 274 U.S. 316, 320 (1927) (quoting *Stark v. Starr*, 94 U.S. 477, 485 (1876)); *see also Chinn v. Giant Food, Inc.*, 100 F. Supp. 2d 331, 333 (D. Md. 2000) ("The cases are

[5] The Court was clear in its order denying leave to amend, without prejudice, that it would grant Plaintiffs leave to amend "[t]o the extent the New Proposed Plaintiffs assert claims against Original Defendants . . . for funding administered through programs subject to … *the same authorizing statutes and rules* as the Original Plaintiffs." ECF No. 65 at 4 (emphasis added). Instead of complying with that directive, the SAC asserts claims regarding three new HHS grant programs that were not challenged in the FAC (*compare* FAC ¶¶ 170-202 *with* SAC ¶¶ 295-306, 315-20), including a program administered by an HHS Operating Division, the Administration for Strategic Preparedness and Response, that does not administer any programs at issue in the FAC (*see* SAC ¶¶ 315-20).

1    legion that a party may not institute new actions duplicating existing litigation") (citing cases); *WMATA*,

2    617 F.2d at 830 ("Considerations of comity and orderly administration of justice dictate that two courts

3    of equal authority should not hear the same case simultaneously").  The rule against claim splitting is a

4    "facet of the res judicata doctrine." *Davis v. Sun Oil Co.*, 148 F.3d 606, 613 (6th Cir. 1998) (per curiam).

5    Thus, "the appropriate inquiry in the claim-splitting context is whether, assuming that the first suit were

6    already final, the second suit could be precluded pursuant to claim preclusion." *Hartsel Springs Ranch of*

7    *Colorado v. Bluegreen Corp.*, 296 F.3d 982, 987 n.1 (10th Cir. 2002); *see also Shaver v. F.W. Woolsworth*

8    *Co.*, 840 F.2d 1361, 1365 (7th Cir. 1988) ("This application of the doctrine of res judicata prevents the

9    splitting of a single cause of action and the use of several theories of recovery as the basis for separate

10   suits.").  The difference is that the rule against claim splitting applies whether or not a final judgment has

11   been entered in one of the actions.  *See Hartsel Springs*, 296 F.3d at 987 ("It is clear that a motion to

12   dismiss based on improper claim-splitting need not — indeed, often cannot — wait until the first suit

13   reaches final judgment.").  The ultimate objectives of the rule are "to protect the defendant from being

14   harassed by repetitive actions based on the same claim" and promote judicial economy and convenience.

15   *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 328 (9th Cir. 1995); Restatement (Second) of

16   Judgments § 24.  The rule also "exists to allow district courts to manage their docket." *Wyles v. Sussman*,

17   661 F. App'x 548, 550 (10th Cir. 2016).

18          In *Adams v. California Department of Health Services*, the Ninth Circuit held a repetitive action

19   may be dismissed for improper claim splitting.  487 F.3d 684, 688 (9th Cir. 2007), *overruled on other*

20   *grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008) ("Plaintiffs generally have no right to maintain

21   two separate actions involving the same subject matter at the same time in the same court and against the

22   same defendant.") (citations and internal quotations marks omitted); *see also Mendoza v. Amalgamated*

23   *Transit Union International*, 30 F.4th 879, 886 (9th Cir. 2022) (reaffirming the Ninth Circuit's rule against

24   claim splitting and its test for determining when improper claim-splitting is present).  "Under the federal

25   claim-preclusion principles that apply in these federal-question-based suits, the bar of claim-splitting is

26   applicable if the second suit involves (1) the same causes of action as the first; and (2) the same parties or

27   their privies." *Mendoza*, 30 F.4th at 886.

28          The claim-splitting doctrine requires dismissal of the claims asserted by City of Saint Paul, County

of Marin, City of Santa Cruz, County of Los Angeles, County of Sacramento, and County of San Diego because those entities or their privies are currently litigating duplicative grant conditions claims against the same agencies in *King County*, *San Diego Housing Authority*, and/or *CCSF*.  *See supra* Part II.B.  This Court previously advised Plaintiffs to "be mindful of the claim-splitting doctrine to the extent an amended complaint would include claims by plaintiffs currently suing Defendants" (ECF No. 4 n.3), but Plaintiffs failed to heed that advice and instead advance claims in the SAC against the same agencies, based on the same challenged conditions, that they (or their privies) simultaneously pursue before other Article III judges.  Such claims should be dismissed for claim splitting.

Additionally, application of the claim-splitting doctrine would further the ultimate objectives of the rule, *i.e.*, "to protect the defendant from being harassed by repetitive actions based on the same claim" and promote judicial economy and convenience.  *Clements*, 69 F.3d at 328.  And enforcing the claim-splitting doctrine here would also allow this Court to "manage [its] docket" and further "[c]onsiderations of comity and orderly administration of justice."  *Wyles*, 661 F. App'x at 550; *WMATA*, 617 F.2d at 830.  As the D.C. Circuit observed, "two courts of equal authority should not hear the same case simultaneously," but that is the exact dynamic that is playing out here, if the claim-splitting doctrine is not applied to this case.  *WMATA*, 617 F.2d at 830.

Finally, to the extent County of Los Angeles, County of Sacramento, and County of San Diego contend that they may pursue this duplicative lawsuit because they are separate legal entities from the housing authorities that brought the claims in *King County* and *San Diego Housing Authority*, they ignore that Ninth Circuit precedent teaches that the claim-splitting doctrine applies to "the same parties *or their privies*."[6]  *Mendoza*, 30 F.4th at 886 (emphasis added).  Given the claims alleged and the preliminary relief awarded in *King County* and *San Diego Housing Authority*, the plaintiffs in those actions are unquestionably acting as the privies of County of Los Angeles, County of Sacramento, and County of San Diego.  Plaintiffs' challenges here to the same grant conditions against the same agencies are barred.  *Mendoza*, 30 F.4th at 886.

---

[6] In any event, this logic does not apply to City of Saint Paul, County of Marin, and City of Santa Cruz, each of which is a plaintiff in *CCSF* and thus *directly* challenging the same immigration-related grant conditions imposed by HHS, HUD, and DOT in that lawsuit.

1

2

### B.    In The Alternative To Dismissal Of Certain Plaintiffs, The Whole Case Should Be Transferred To The Western District Of Washington Under The First-To-File Rule

3       If the Court does not elect to dismiss the claims asserted by City of Saint Paul, County of Marin,

4    City of Santa Cruz, County of Los Angeles, County of Sacramento, and/or County of San Diego under

5    the claim-splitting doctrine, it nevertheless should transfer this entire case to the Western District of

6    Washington under the first-to-file rule so that the claims raised here can be litigated in parallel with the

7    *King County* matter.  Courts examine three threshold factors in deciding whether to apply the first-to-file

8    rule:  "(1) the chronology of the two actions, (2) the similarity of the parties, and (3) the similarity of the

9    issues."  *May Chen*, 2024 WL 4894294, at *3 (citing *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93,

10   95 (9th Cir. 1982) and *Alltrade*, 946 F.2d at 625-26).  "'The principle underlying the federal comity

11   doctrine is wise judicial administration, giving regard to conservation of judicial resources and

12   comprehensive disposition of litigation."  *Id.* (quoting *Benson v. JPMorgan Chase Bank, N.A.*, No. 09-cv-

13   5272-EMC, 2010 WL 1445532, at *2 (N.D. Cal. Apr. 7, 2010)).

14       There is no question that the first factor, chronology, weighs in favor of applying the first-to-file

15   rule.  The *King County* lawsuit was initiated on May 2, 2025; Plaintiffs initiated the above-captioned

16   lawsuit more than three months later, on August 20, 2025.  *See May Chen*, 2024 WL 4894294, at *3

17   (finding chronology factor weighed in favor of applying first-to-file rule); *Bodley v. Whirlpool Corp.*,

18   No. 17-cv-05436-JST, 2018 WL 2357640, at *2 (N.D. Cal. May 24, 2018) (same).

19       The second factor, similarity of the parties, also weighs in favor of transfer.  LAHSA (a plaintiff

20   in *King County*) was created by Plaintiff County of Los Angeles, and it claims to be "a joint powers

21   authority of the . . . County of Los Angeles[.]"  *See King County* TAC ¶ 284.  Moreover, LAHSA, among

22   the other plaintiffs, asked for and obtained preliminary injunctive relief in *King County* on behalf of all its

23   continuum of care members, which for LAHSA includes County of Los Angeles.  *Id.* at Prayer for Relief

24   ¶ B; *King County*, ECF No. 338 at 36; *see supra* Part II.B.1.  Parties "need only be 'substantially similar,'

25   not identical" for this prong of the first-to-file test to apply.  *May Chen*, 2024 WL 4894294, at *3 (quoting

26   *Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015)).

27       The third factor, similarity of issues, also favors application of the first-to-file rule because the

28   issues in the two lawsuits need not be identical, but rather "only substantially similar."  *Id.*  As discussed

above, the *King County* lawsuit challenges many of the identical grant terms imposed by HUD, DOT, FTA, and HHS that are at issue in this lawsuit. *Supra* Part II.B.1.

Finally, none of the equitable exceptions to the first-to-file rule apply. There is no allegation or evidence that the federal government has engaged in bad faith, anticipatory filing, or forum shopping. *See May Chen*, 2024 WL 4894294, at *4; *Bodley*, 2018 WL 2357640, at *3. Nor are there any additional expenses or inconvenience that Plaintiffs may suffer if they are forced to litigate their case in the Western District of Washington, especially considering that Plaintiffs span the country from north to south and east to west (*e.g.*, New York, Atlanta, San Diego, and Oregon, among other far-flung locations). *May Chen*, 2024 WL 4894294, at *4. And to the extent there could be any "minor inconvenience" to Plaintiffs in litigating in the Western District of Washington, that inconvenience "is greatly outweighed by 'the importance of conservation of judicial resources and the comprehensive disposition of litigation.'" *Id.* (quoting *CRU Acquisition Grp., LLC v. Mykey Tech. Inc.*, No. 11-cv-05743, 2012 WL 441293, at *1 (W.D. Wash. Feb. 10, 2012)); *see also Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1102 (N.D. Cal. 2006) ("Additionally, to transfer the suit to New Jersey would further the first-to-file rule's purpose of promoting efficiency and avoiding the duplication of litigation").

While *CCSF* was filed before *King County*, transferring the case to the Western District of Washington would be the most appropriate way to implement the principles underlying the first-to-file rule. *May Chen*, 2024 WL 4894294, at *3 ("wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation") (citation omitted). Specifically, *King County* already includes almost all Defendants sued herein and there is broader overlap between the challenged grant conditions here and in that lawsuit. *CCSF*, in contrast, addresses only immigration-related conditions on federal funding.

Accordingly, the Court should transfer this matter, in its entirety, to the Western District of Washington under the first-to-file rule.

## C.    Alternatively, Transfer To The District Court For The District Of Columbia Would Also Be Appropriate Pursuant To 28 U.S.C. § 1404(a)

In the alternative, the Court should transfer this lawsuit in its entirety to the District Court for the District of Columbia under 28 U.S.C. § 1404(a). This forum has always been—and continues to be—an

odd (and, with respect to the claims against HHS and EPA, an improper) choice in which to litigate these claims.[7]  When this lawsuit was filed, only the City of Eureka (population approximately 30,000) was located here; in contrast, the other six original out-of-District plaintiffs had a combined population of approximately 3.2 million.  In other words, the original plaintiffs chose a forum in which less than 1% of the represented population resided and, with respect to HHS and EPA, a venue in which no in-District plaintiff maintained grant agreements.  Moreover, absent City of Eureka, the six out-of-District original plaintiffs—representing more than 99% of the population—would have had no right to file a standalone complaint here.

Through two subsequent complaints (which occurred only *after* this Court granted preliminary relief, thereby suggesting that the new plaintiffs were attempting to pre-select the judge assignment), Plaintiffs increased the number of in-District counties and municipalities, but it remains a very unbalanced ledger.  The ten in-District municipalities have a combined population of less than 1 million, whereas the 15 out-of-District municipalities have a combined population of almost 18 million.  County of Sacramento alone has more residents than all the in-District entities put together, and County of Sacramento is only the third-largest out-of-District Plaintiff.  In short, contrary to this Court's warning, "the number of plaintiffs outside the Northern District of California" has continued "to swell."  ECF No. 63 at 4 n.3.  Currently, the in-District Plaintiffs comprise approximately 5.5% of the total represented population.  Simply, this case lacks a nexus in the Northern District of California and should be transferred to the District Court for the District of Columbia under 28 U.S.C. § 1404(a).

In analyzing a transfer motion under Section 1404(a), a court must determine, as a threshold matter, if the action subject to the motion to transfer "might have been brought" in the transferee district (*i.e.*, the district to which the moving party seeks to transfer the action).  *Hoffman v. Blaski*, 363 U.S. 335, 343-44

---

[7] City of Eureka—the only in-District Plaintiff in the original complaint—claims to be a recipient of HUD and DOT grant funding only, and it thus did not assert claims (and still does not assert claims) against HUD and DOT.  Compl. ¶¶ 14, 91, 116 & 126; SAC ¶¶ 19, 217, 246, & 268.  As such, venue was improper in the Northern District of California for the original complaint's grant conditions claims against HHS and EPA because no in-District Plaintiff asserted claims against those agencies.  And because venue must be analyzed based on the facts at the time of filing, Plaintiffs cannot rectify this venue deficiency by later joining additional in-District plaintiffs that possess grant agreements with HHS and/or EPA.  *See Flowers Industries, Inc. v. FTC*, 835 F.2d 775, 776 n.2 (11th Cir. 1987).  The claims against HHS and EPA are subject to dismissal for improper venue under Federal Rule of Civil Procedure 12(b)(3).

1   (1960).  Next, a court must analyze whether the transfer would serve "the interest of justice" and "the

2   convenience of parties and witnesses." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).

3   Courts decide motions for Section 1404(a) transfer "based on an individualized, case-by-case

4   consideration of convenience and fairness." *Southard*, 2023 WL 6959145, at *3.   In analyzing

5   convenience, courts may consider:

> (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the
> witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the
> applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in
> the controversy, and (8) the relative court congestion and time to trial in each forum.

9   *Id.* (quoting *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)).  Here, this lawsuit could

10  have been filed in the District Court for the District of Columbia because that is where all Defendants

11  reside (28 U.S.C. § 1391(e)(1)(A)) and where "a substantial part of the events or omissions giving rise to

12  the claim[s] occurred" (28 U.S.C. § 1391(e)(1)(B)).

13          The individualized, case-by-case consideration of convenience and fairness factors at issue in this

14  case all weigh heavily in favor of transfer to the District Court for the District of Columbia.

15          **The plaintiffs' choice of forum is accorded minimal consideration where, as here, the forum**

16  **lacks a significant connection to the action**:  Although courts traditionally give deference to a plaintiff's

17  choice of forum, that deference "is slight, if any, when . . . the plaintiff's chosen forum lacks a significant

18  connection to the events that gave rise to the complaint." *Morris v. Safeco Ins. Co.*, No. 07-cv-2890-PJH,

19  2008 WL 5273719, at *3 (N.D. Cal. Dec. 19, 2008); *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir.

20  1987) (plaintiff's chosen venue is given substantially less deference if the operative facts have not

21  occurred within the forum and the forum has no interest in the parties or subject matter of the litigation);

22  *Southard*, 2023 WL 6959145, at *3 ("If the operative facts have not occurred within the forum and the

23  forum has no interest in the parties or subject matter, the plaintiff's forum choice is entitled to only

24  minimal consideration") (citation and quotation marks omitted).  As this Court has previously held,

25  deference to plaintiffs' choice of forum in APA cases of national import, where the impacts are felt equally

26  across the country, and where the agency decisions did not occur in this District is "diminished."

27  *Ecological Rights Found. v. United States EPA*, No. 19-cv-04242-RS, 2019 WL 5295124, at *3 (N.D.

28  Cal. Oct. 19, 2019).

This is an APA review case of national import where the impacts are felt equally across the country and where the agency actions did not occur here.  As such, Plaintiffs' choice of forum is entitled to "diminished" deference from the outset.  *Id.*  Adding to that diminished deference are the facts that (1) at least two of the in-District Plaintiffs' claims (*i.e.*, of City of Santa Cruz and County of Marin) are subject to dismissal under the claim-splitting doctrine (*supra* Part IV.A), (2) the in-District Plaintiffs, collectively, represent less than 6% of the overall population, and (3) venue was originally improper—and thus remains improper—with respect to the claims against EPA and HHS.  At base, then, the "chosen forum lacks a significant connection to the events that gave rise to the complaint," and Plaintiffs' forum selection should be given minimal deference under the attenuated facts of this case.  *Morris*, 2008 WL 5273719, at *3.

**The District of Columbia has a local interest in any merits adjudication of this controversy**: Each of the agency defendants in this lawsuit has its headquarters in the District of Columbia, and that is where all or nearly all the federal grant condition decisions at issue in this lawsuit occurred.  As such, this case involves local interests in the District of Columbia.  *Cf. Van Mourik v. Big Heart Pet Brands, Inc.*, No. 17-cv-03889-JD, 2018 WL 3549122, at *1 (N.D. Cal. July 24, 2018) (finding a "local interest in having localized controversies decided at home.") (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).  As this Court found in an analogous case, "this is not a 'local' controversy" and "this district does not have any special interest in the outcome of this litigation" because no party "has any contacts with this district *related* to the facts underlying this case."  *Ecological Rights Found.*, 2019 WL 5295124, at *3 (emphasis in original).  Instead, "citizens in every district are equally affected by" Defendants' grant conditions, and in APA cases "courts generally focus on where the decisionmaking process occurred to determine where the claims arose."  *Id.* (quoting *Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 313 (D.D.C. 2015)).

Moreover, this Court has no local interest in adjudicating grant conditions lawsuits for the approximately 94.5% of the population represented by Plaintiffs that are located outside of this District.  *See Enomoto v. Siemens Indus.*, No. 23-cv-03779-JSC, 2023 WL 6278876, at *6 (N.D. Cal. Sept. 25, 2023) (transferring case under Section 1404(a) where the transferee district's "interest in this controversy is much stronger, as the case involves individuals presumably residing there and a corporation employing people there").  This factor weighs significantly in favor of transfer.

1      **The interest of justice and judicial economy strongly favor transfer to the District Court for**

2  **the District of Columbia**:  "The 'interests of justice' consideration is the most important factor a court

3  must consider, and may be decisive in a transfer motion even when all other factors point the other way."

4  *Enomoto*, 2023 WL 6278876, at *6 (quoting *Gerin v. Aegon USA, Inc.*, No. 06-cv-5407-SBA, 2007 WL

5  1033472, at *6 (N.D. Cal. Apr. 4, 2007)).  Transferring this case to the District Court for the District of

6  Columbia would allow any adjudication of this case to occur in the forum where all or nearly all the federal

7  grant funding decisions were made, thereby "ensur[ing] systemic integrity and fairness in the judicial

8  process, and the efficient administration of the court system."  *Our Children's Earth Found.*, 2008 WL

9  3181583, at *5-6 (cleaned up).  And Plaintiffs here cannot raise convincing concerns about multiplicity

10 of lawsuits, given that many of them (or their privies) are simultaneously litigating duplicative claims in

11 other federal court grant conditions cases.  *See supra* Part II.A.

12     **The convenience of witnesses and access to proof weigh in favor of transfer**:  "'The

13 convenience of the witnesses . . . is often the most important factor' in ruling on a motion to transfer venue

14 under § 1404(a)."  *Southard*, 2023 WL 6959145, at *4 (quoting *Grossman v. Johnson & Johnson*, No. 14-

15 cv-03557-VC, 2015 WL 1743116, at *1 (N.D. Cal. Apr. 13, 2015)).  Here, given the disparate geographic

16 makeup of the Plaintiffs, they cannot demonstrate that the convenience of witnesses and access to proof

17 weigh in favor of keeping this lawsuit in the Northern District of California.  And, in contrast to the

18 nationwide scope on the plaintiff side, Defendants, and nearly the entirety of their administrative records,

19 are located in the District of Columbia.  As such, this case "finds its center of gravity" in the District Court

20 for the District of Columbia because all or nearly all the relevant grant condition decisions indisputably

21 occurred in the District of Columbia and the administrative record is located there.  *Karlen v. Wells Fargo*

22 *Bank, N.A.*, No. 22-cv-02127-JSC, 2022 WL 2756671, at *3 (N.D. Cal. July 14, 2022) (quoting *Johns v.*

23 *Panera Bread Co.*, No. 08-cv-1071-SC, 2008 WL 2811827, at *5 (N.D. Cal. July 21, 2008)).

24     **D.     The Court Should Dismiss All Claims Against EPA For Lack Of Jurisdiction**

25     "Article III of the Constitution limits federal courts to hearing only cases and controversies."

26 *Updike v. Multnomah Cty.*, 870 F.3d 939, 947 (9th Cir. 2017); *Murthy v. Missouri*, 603 U.S. 43, 56 (2024)

27 ("Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'").

28 "It is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages

1    of review, not merely at the time the complaint is filed.'" *United States v. Juv. Male*, 564 U.S. 932, 936

2    (2011) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)).  As the Supreme Court

3    has observed, "those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold

4    requirements imposed by Article III of the Constitution by alleging an actual case or controversy." *City*

5    *of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *see also D'Lil v. Best Western Encina Lodge & Suites*,

6    538 F.3d 1031, 1036 (9th Cir. 2008) ("A party invoking federal jurisdiction has the burden of establishing

7    that it has satisfied the 'case-or-controversy' requirement of Article III of the Constitution") (quoting

8    *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  To establish standing to sue, a plaintiff must

9    show:  "(1) an injury that is concrete and particularized and actual or imminent; (2) a causal connection

10   between the injury and defendant's challenged action; and (3) redressability." *Updike*, 870 F.3d at 947

11   (citing *Lujan*, 504 U.S. at 560-61).

12            **1.    Some Of The EPA Plaintiffs Do Not Have EPA Grants, And Their Claims Are**
               **Thus Not Ripe For Article III Adjudication**
13

14            A claim is not ripe "if it rests upon contingent future events that may not occur as anticipated,

15   or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotes and

16   citation omitted).  "The basic rationale of the ripeness doctrine is to prevent courts, through avoidance

17   of premature adjudication, from entangling themselves in abstract disagreements." *Scott v. Pasadena*

18   *Unified School Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) (internal quotes and citation omitted).

19            Here, Redwood City's, Santa Clara's, and Sunnyvale's EPA-related claims should be dismissed

20   because they are not ripe.  None of these municipalities has any active or pending grants with EPA.  Treml

21   Decl. ¶¶ 11, 15 & 17.  City of Redwood City suggests that it is preparing application materials for an EPA

22   grant, but it has not yet submitted that application and even if it does, any resulting grant would not have

23   the challenged DEI condition.  In short, these Plaintiffs' EPA-related claims "rest[] upon contingent future

24   events that may not occur as anticipated, or indeed may not occur at all," and they are thus unripe for

25   Article III adjudication. *Texas*, 523 U.S. at 300.

26            **2.    Some Of The EPA Plaintiffs Cannot Identify An Injury In Fact Or An Injury**
               **That Is Fairly Traceable To The Challenged Conduct**
27

28            "Foremost among" the Article III standing requirements "is injury in fact—a plaintiff's pleading

and proof that he has suffered the 'invasion of a legally protected interest' that is 'concrete and particularized.'" *Gill v. Whitford*, 585 U.S. 48, 65 (2018) (quoting *Lujan*, 504 U.S. at 560). The Supreme Court and the Ninth Circuit have repeatedly noted that Article III standing cannot be based on abstract harms. *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (Article III injury "must actually exist . . . and not 'abstract'"); *Lujan*, 504 U.S. at 583 ("abstract injury is not enough"); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("Federal courts do not possess a roving commission to publicly opine on every legal question. Federal courts do not exercise general legal oversight of the Legislative and Executive Branches"); *Clark v. City of Seattle*, 899 F.3d 802, 810 (9th Cir. 2018) ("a bare procedural violation, divorced from any concrete harm, does not satisfy the injury-in-fact requirement of Article III") (citation and quotation marks omitted); *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023); *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 80-81 (2019).

City of Alameda alleges that it applied for an EPA grant under an EPA grant program that had unobligated funding rescinded in the One Big Beautiful Bill Act, and EPA is no longer processing applications for that program. Treml Decl. ¶ 10.b. EPA therefore did not issue a grant to the City of Alameda under this program. Accordingly, not only does it lack any cognizable concrete injury—for merely submitting a grant application—any claimed injury is also not fairly traceable to the challenged conduct or *any* conduct by EPA and thus cannot support Article III standing. *Updike*, 870 F.3d at 947.

Further, City of Alameda has a separate San Francisco Bay Water Quality Improvement Fund grant that has been in place since 2023, which does not include any terms and conditions challenged in this lawsuit as the provision regarding Federal anti-discrimination laws was added on April 3, 2025, and the grant has not undergone any monetary amendments on or after that date. *Id.* ¶ 10.a. The same is true for City of Atlanta's Clean Heavy-Duty Vehicles grant, City of Hillsboro's Brownfields Assessment grant, City of Santa Cruz's CPF/CDSI grant, and four of the EPA grants held by County of Los Angeles as these grants were issued before the term and condition regarding Federal anti-discrimination laws was added on April 3, 2025, and they have not undergone any monetary amendments on or after that date. *Id.* ¶¶ 12.a, 14.b, 16.a, & 18.a. Accordingly, there is no cognizable Article III injury for these EPA grants, and the Plaintiffs' claims related to these EPA grants should be dismissed.

1

### 3.    EPA Eliminated The Challenged DEI Condition On August 25, 2025, And Plaintiffs' Claims Against EPA Are All Moot

2

3        Finally, assuming *arguendo* that the EPA Plaintiffs' claims are ripe and that the EPA Plaintiffs

4   have suffered a cognizable Article III injury, post-filing developments have mooted the entire EPA-related

5   case or controversy presented here.  "Standing must 'persist throughout all stages of [the] litigation.'"

6   *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 674 (9th Cir. 2021) (quoting *Hollingsworth v. Perry*,

7   570 U.S. 693, 705 (2013)).  The concept of mootness is "the doctrine of standing set in a time frame."

8   *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *United States Parole*

9   *Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).  "A claim is moot if it has lost its character as a present,

10  live controversy, and if no effective relief can be granted:  'Where the question sought to be adjudicated

11  has been mooted by developments subsequent to filing of the complaint, no justiciable controversy is

12  presented.'"  *Burns v. Unum Life Ins. Co. of Am.*, No. 07-cv-00122-SI, 2007 WL 1793779, at *2 (N.D.

13  Cal. June 19, 2007) (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)).  If a court is unable to grant effective

14  relief as a result of subsequent developments, "it lacks jurisdiction and must dismiss[.]"  *J.F. v. New Haven*

15  *Unified Sch. Dist.*, No. 13-cv-03808-SI, 2014 WL 6485643, at *3 (N.D. Cal. Nov. 19, 2014) (quoting *Pub.*

16  *Utils. Comm'n v. Fed. Energy Regulatory Comm'n*, 100 F.3d 1451, 1458 (9th Cir.1996)).  "Where

17  injunctive relief is involved, questions of mootness are determined in light of the present circumstances."

18  *Burns*, 2007 WL 1793779, at *2 (citing *Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996)).

19        Further, where—as here—a plaintiff seeks permanent injunctive relief, Article III standing also

20  requires a plaintiff to show "a real and immediate threat of repeated injury."  *Id.* (quoting *O'Shea v.*

21  *Littleton*, 414 U.S. 488, 496 (1974)); *see also Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 948

22  (9th Cir. 2011) (same); *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867 (9th Cir.

23  2014) (same).  A plaintiff seeking injunctive relief "cannot rely solely on past injury and instead must

24  demonstrate 'a sufficient likelihood that [he] will again be wronged in a similar way' and a 'real and

25  immediate threat of repeated injury.'"  *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd.*

26  *of Educ.*, 82 F.4th 664, 723 (9th Cir. 2023) (quoting *Bates*, 511 F.3d at 985).  "[P]ast wrongs do not in

27  themselves amount to [a] real and immediate threat of injury," unless accompanied by "continuing, present

28  adverse effects."  *Lyons*, 461 U.S. at 102-03 (citation omitted).  A threatened injury "'must be *certainly*

1   *impending* to constitute injury in fact,' and 'allegations of *possible* future injury are not sufficient.'"

2   *Fellowship of Christian Athletes*, 82 F.4th at 723 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398,

3   409 (2013)) (emphasis in original); *see also FBI v. Fikre*, 601 U.S. 234, 241 (2004) (voluntary cessation

4   moots Article III jurisdiction where the defendant shows that challenged "practice cannot reasonably be

5   expected to recur") (citation and quotation marks omitted).

6         Here, on August 25, 2025—and unrelated to this lawsuit—EPA revised its General Terms and

7   Conditions to remove the reference to DEI in the clause regarding Federal anti-discrimination laws.  Treml

8   Decl. ¶¶ 4-7.  That revision applies to all EPA grants (and monetary amendments) nationwide, including

9   Plaintiffs' grants that were issued on or after April 3, 2025.  Specifically, the revised FY 2025 General

10  Terms and Conditions includes an instruction that the revised Federal anti-discrimination clause applies

11  to "all new awards and funding amendments (incremental and supplemental) made on or after April 3,

12  2025." *Id.* ¶ 6.  The FY 2026 General Terms and Conditions includes the language that EPA revised on

13  August 25, 2025 related to Federal anti-discrimination laws and does not reference DEI.  *Id.* ¶¶ 4-5.  To

14  be sure, the FY 2025 and FY 2026 General Terms and Conditions require EPA grant recipients to certify

15  that they do not operate programs violating applicable Federal anti-discrimination law or promoting any

16  such violation (*id.*), but that is a requirement that is incorporated into all federal grant funding.  42 U.S.C.

17  § 2000d-1; *Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582, 629-30 (1983)

18  (Marshall, J., dissenting); 2 C.F.R. § 200.300(a); 2 C.F.R. § 200.211(c)(1)(ii); 2 C.F.R. § 200.303(b).

19        Under these facts, there is no future, impending risk of repeated conduct for the Court to

20  permanently enjoin and there is no case or controversy to decide with respect to EPA.  *See Fikre*, 601 U.S.

21  at 241 (dispute is moot where there is no reasonable expectation that the challenged conduct will reoccur).

22  Simply stated, Plaintiffs have no risk of *future* repeated injury, and any dispute that might have previously

23  existed is moot.  All claims against EPA thus should be dismissed for lack of subject matter jurisdiction.

24  **V.    Conclusion**

25        The Court should dismiss all the claim-splitting Plaintiffs or transfer this lawsuit to the Western

26  District of Washington under the first-to-file doctrine.  In the alternative, the Court should dismiss EPA

27  (for lack of an Article III case or controversy and for improper venue) and HHS (for improper venue) or

28  transfer this matter to the District Court for the District of Columbia under Section 1404(a).

1    DATED: March 9, 2026                    Respectfully submitted,

2

3                                            CRAIG H. MISSAKIAN
                                             United States Attorney

4                                            _/s/ Jevechius D. Bernardoni_
5                                            JEVECHIUS D. BERNARDONI
                                             Assistant United States Attorney

6                                            Attorneys for Defendants

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28