CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
JEVECHIUS D. BERNARDONI (CABN 281892)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7224
Facsimile: (415) 436-6748
jevechius.bernardoni@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY OF FRESNO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SCOTT TURNER, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-07070-RS<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR SECOND PRELIMINARY INJUNCTION AND FOR PRELIMINARY RELIEF UNDER 5 U.S.C. § 705**<br><br>The Honorable Richard Seeborg |

# TABLE OF CONTENTS


I. Introduction ..... 1

II. Background ..... 2

A. Procedural Background ..... 2

B. Factual Background ..... 3

1. Additional Plaintiffs' HUD Grants ..... 4

2. Additional Plaintiffs' HHS Grants ..... 5

3. Additional Plaintiffs' DOT, FAA, FHWA, And FTA Grants ..... 7

4. All Plaintiffs' FRA And NHTSA Grants ..... 8

III. Legal Standard ..... 9

IV. Plaintiffs Do Not—And Cannot—Demonstrate Entitlement To Preliminary Injunctive Relief ..... 9

A. Plaintiffs Do Not Face Irreparable Harm ..... 9

1. The Conclusory Assertions Of Irreparable Harm In The Second PI Motion And The Boilerplate Harm Assertions In Plaintiffs' Declarations Are Deficient ..... 10

2. There Is No Imminent Risk Of Irreparable Harm Where The Challenged Conditions Are Already Enjoined By Other Federal Court Orders ..... 13

3. Certifying Compliance With Federal Anti-Discrimination Law Is Not An Irreparable Harm ..... 14

B. Plaintiffs Do Not Demonstrate Likelihood Of Success On The Merits Of Their Claims ..... 14

1. Plaintiffs Cannot Demonstrate A Likelihood Of Success To The Extent They Seek Injunctive Relief For Grant Programs In Which They Do Not Participate ..... 15

2. Plaintiffs Cannot Show A Likelihood Of Success With Respect To HHS's Anti-Discrimination Condition ..... 17

3. Venue Is Improper For The Claims Against HHS, And This Court Cannot Issue Injunctive Relief Against HHS And/Or Its Components ..... 18

C. The Balance Of Equities And The Public Interest Favors The Government ..... 18

D. Plaintiffs' Arguments Regarding Claim Splitting And Transfer Are Procedurally Improper ..... 19

V. Conclusion ..... 19

# TABLE OF AUTHORITIES

## CASES

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) .......... 9
*Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29 (2019) .......... 15
*Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668 (9th Cir. 1988) .......... 10
*Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483 (9th Cir. 2010) .......... 1, 11
*Clark v. City of Seattle*, 899 F.3d 802 (9th Cir. 2018) .......... 15
*Conceptus, Inc. v. Hologic, Inc.*, No. 09-cv-02280 WHA, 2009 WL 3740713 (N.D. Cal. Nov. 6, 2009) .......... 10, 11
*Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166 n.6 (9th Cir. 2011) .......... 10
*Department of Education v. California*, 604 U.S. 650 (2025) .......... 18
*Flowers Industries, Inc. v. FTC*, 835 F.2d 775 (11th Cir. 1987) .......... 18
*Gill v. Whitford*, 585 U.S. 48 (2018) .......... 15
*Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582 (1983) .......... 14
*Harris v. Atchley*, No. 22-cv-00529-EMC, 2023 WL 7312969 (N.D. Cal. Oct. 18, 2023) .......... 10, 11
*Hawai'i v. Trump*, 233 F. Supp. 3d 850 (D. Haw. 2017) .......... 13
*Heckler v. Turner*, 468 U.S. 1305 (1984) .......... 18
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......... 15
*Maryland v. King*, 567 U.S. 1301 (2012) .......... 19
*Matsumoto v. Labrador*, 122 F.4th 787 (9th Cir. 2024) .......... 15
*McKinleyville Union Sch. Dist. v. United States Dep't of Educ.*, No. 25-cv-09105-YGR, 2025 WL 4110868 (N.D. Cal. Dec. 29, 2025) .......... 13
*Murthy v. Missouri*, 603 U.S. 43 (2024) .......... 15
*Nat'l Ass'n of Diversity Officer s in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Feb. 6, 2026) .......... 15
*Nat'l TPS Alliance v. Noem*, 150 F.4th 1000 (9th Cir. 2025) .......... 9
*National Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025) .......... 14
*National Institutes of Health v. American Public Health Association*, 145 S. Ct. 2658 (2025) .......... 18

*Nken v. Holder*, 556 U.S. 418 (2009) .......... 9, 18

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .......... 15

*Starbucks Corp. v. McKinney*, 602 U.S. 339 (2024).......... 9

*Sustainability Institute v. Trump*, No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025) .......... 18

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......... 15

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517 (9th Cir. 2023) .......... 15

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .......... 1, 9, 10, 18

**STATUTES**

42 U.S.C. § 2000d-1 .......... 14

**REGULATIONS**

2 C.F.R. § 200.211(c)(1)(ii) .......... 14

2 C.F.R. § 200.300(a).......... 14

## I. Introduction

Supreme Court precedent requires that preliminary injunctive relief is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). As applicable here, the extraordinary preliminary relief that Plaintiffs request may not be issued en masse, and it cannot be granted absent each Plaintiff demonstrating immediate and likely irreparable harm with respect to each Defendant, each grant program, and each grant condition that Plaintiffs seek to enjoin preliminarily.

On its face, Plaintiffs' second motion for preliminary injunction (ECF No. 71, "Second PI Mot.") falls woefully short of those requirements. Indeed, other than conclusory string citations to declarations (without any factual development) and a handful of non-representative and incomplete "examples," the Second PI Motion fails to include any individualized discussion of the relevant grant programs, the grant conditions at issue, or the purported immediate irreparable harm that each Plaintiff will face absent preliminary relief with respect to each such grant program/grant condition. And although "[j]udges are not like pigs, hunting for truffles buried in briefs," *Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010), the approximately 1,500 pages of declarations and exhibits filed in support of the Second PI Motion are similarly superficial, boilerplate, and deficient. Further, putting aside the Second PI Motion's failure to meet *Plaintiffs'* burden of introducing evidence of immediate irreparable harm, there can be no immediate irreparable harm because these Defendants are already subject to injunctions from other federal district courts that prevent imposition or enforcement of *many* of the challenged conditions at issue with respect to Additional Plaintiffs.

Even assuming Plaintiffs had introduced evidence of immediate and likely irreparable harm for each Plaintiff, each grant program, and each challenged grant condition, Plaintiffs' request for a second preliminary injunction also fails to demonstrate a likelihood of success. First, to preserve the record, Defendants incorporate the legal arguments already presented to this Court during the temporary restraining order and first preliminary injunction motion stages of the case. *See* ECF Nos. 24 & 40. Second, Plaintiffs' Second PI Motion is patently overbroad because many Plaintiffs seek to enjoin grant conditions by agencies from which they do not receive funds—simply stated, Article III standing principles prevent Plaintiffs from obtaining preliminary injunctive relief in circumstances where they are not participants in the grant programs at issue. Third, HHS revised its Grants Policy Statement in July

2025 to remove reference to diversity, equity, and inclusion ("DEI"), and HHS's anti-discrimination certification now simply requires grantees to certify compliance with federal anti-discrimination laws. This Court previously declined to issue a preliminary injunction against EPA in an identical posture, and the same result should apply to HHS with regard to its anti-discrimination certification. Fourth, venue has always been improper in this lawsuit as to HHS, and the Court thus does not have authority to issue preliminary injunctive relief as to HHS or its components.

Finally, the balance of equities element weighs against issuing preliminary injunctive relief because Plaintiffs do not promise to return the expended federal funding to the extent Defendants ultimately prevail in this lawsuit.

In sum, Plaintiffs fail to fulfill any of the necessary elements for the "extraordinary remedy" of preliminary injunctive relief, and the Second PI Motion should be denied.

## II. Background

### A. Procedural Background

In the initial complaint, seven plaintiffs—City of Fresno, City of South Lake Tahoe, City of Saint Paul, County of Sacramento, County of Monroe, Monroe County Airport Authority, and City of Eureka—initiated this lawsuit against four federal agencies (and three operating administrations) on August 20, 2025. ECF No. 1. This Court issued a temporary restraining order on August 27, 2025, which, *inter alia*, enjoined HUD, DOT, FTA, FHWA, FAA, HHS, and EPA, as well as each agency head, from imposing or enforcing the Grant Condition Executive Orders, as defined therein. ECF No. 28.

Twelve days after the temporary restraining order was entered, the original plaintiffs filed a first amended complaint as of right, adding four new plaintiffs: County of San Diego, County of Marin, City of Alameda, and City of Redwood City. ECF No. 35 ("FAC"). Simultaneously, Plaintiffs filed their first motion for preliminary injunction (ECF No. 36), which the Court granted, in part, on September 23, 2025. ECF No. 45 ("First PI Order"). The Court declined to enter a preliminary injunction against EPA, finding the claims "fail[ed]" as a result of (1) EPA's revision of its General Terms and Conditions on August 25, 2025 and (2) because "there is no evidence that the EPA is still enforcing its DEI Conditions or interprets its Anti-Discrimination Condition to prohibit promotion of DEI." *Id.* at 11.

In the interest of judicial efficiency, Defendants stipulated to allow Plaintiffs to file a second

amended complaint (ECF No. 66), which Plaintiffs filed on February 9, 2026 (ECF 68, "SAC"). The SAC adds fourteen new cities and counties as plaintiffs: City of Atlanta, City of Beaverton, City of Corvallis, City of Hillsboro, City of Mountain View, City of Salem, City of San Mateo, City of Santa Clara, City of Santa Cruz, City of Stockton, City of Sunnyvale, City of Vacaville, County of Los Angeles, and County of Santa Barbara (collectively, "Additional Plaintiffs"). Notwithstanding this Court's order limiting any amendment to claims against Original Defendants or their operating administrators for funding administered through programs subject to . . . the same authorizing statutes and rules as the Original Plaintiffs" (ECF No. 65 at 4), the SAC adds two new defendants: the Federal Railroad Administration ("FRA") and the National Highway Traffic Safety Administration ("NHTSA").

Defendants filed a motion to dismiss or transfer the SAC on March 9, 2026. ECF No. 75. As established in that pending motion, Plaintiffs impermissibly seek to split their claims between at least three overlapping and duplicative federal court lawsuits, and this lawsuit thus should be dismissed, in part, under the claim-splitting doctrine or transferred in its entirety to the United States District Court for the Western District of Washington under the first-to-file rule. *Id.* Further, venue is improper in this District with respect to all claims against EPA and HHS because City of Eureka—the only in-District original Plaintiff—did not assert claims against those Defendants. *Id.* And Plaintiffs' venue choice as to the remaining Defendants is anomalous given that less than 1% of the population represented by the original Plaintiffs (and approximately 5% of the population represented by the current Plaintiffs) resides in this District. *Id.*

The Second PI Motion seeks to enjoin all Defendants (other than EPA) "from imposing or enforcing the unlawful and unauthorized federal grant conditions or any materially similar terms or conditions to any federal funds received by or awarded to the Additional Plaintiffs, directly or indirectly." Second PI Mot. at vi. On behalf of "all Plaintiffs," the Second PI Motion also seeks to extend the existing preliminary injunction to FRA and NHTSA (*i.e.*, the two new Defendants added in the SAC). *Id.*

**B. Factual Background**

The relevant portion of Plaintiffs' "Statement of Facts" is confined to two paragraphs. *See* Second PI Mot. at 3. Without citation to any evidence whatsoever, Plaintiffs contend that "Additional Plaintiffs face irreparable harm during the pendency of this litigation from the imposition of these conditions." *Id.*

Wholly absent from Plaintiffs' Statement of Facts is any discussion of, *inter alia*, (1) which grants, from which Defendant(s), each Plaintiff invokes, (2) which challenged conditions are contained in each of the (unidentified) grant agreements, (3) when each Plaintiff was awarded each of the (unidentified) grants, (4) what actions each Plaintiff took (or chose not to take) from the date each grant was awarded, (5) the reasons for the delay between the issuance of each grant award and the instant request for preliminary injunctive relief, (6) the current status of any of those (unidentified) grants, (7) any communication between Plaintiffs and Defendants regarding the challenged conditions in each of the grants at issue, and/or (8) upcoming deadlines that necessitate the immediate judicial intervention requested by Plaintiffs.

In contrast to Plaintiffs' attempt to obtain injunctive relief untethered to the facts of each Plaintiff, each Defendant, and each grant program, an analysis of the status of each Defendant's grant conditions and each Plaintiff's grant awards paints a very different picture.

### 1. Additional Plaintiffs' HUD Grants[1]

As an initial matter, the SAC does not define Additional Plaintiff City of Salem as a HUD Plaintiff (SAC ¶ 217), nor does City of Salem claim to be a recipient of HUD grant funding (*id.* ¶ 68).

As to the remaining Additional Plaintiffs' HUD grants, HUD issued grant awards in September 2025. Declaration of Claudette Fernandez ("Fernandez Decl.") ¶ 16. Seven of the Additional Plaintiffs (*e.g.*, City of Vacaville, City of Sunnyvale, City of San Mateo, City of Santa Clara, City of Hillsboro, City of Corvallis, and County of Santa Barbara) have not signed/returned the FY25 formula grant agreements. *Id.* ¶¶ 16, 22, & Ex. A. The remaining Additional Plaintiffs (*e.g.*, City of Atlanta, City of Beaverton, City of Mountain View, City of Stockton, City of Santa Cruz, and County of Los Angeles) have signed the HUD grant agreements; many of them signed without any amendments, thereby agreeing to the challenged grant conditions. *Id.* ¶ 22 & Ex. A. Nevertheless, as to all Additional Plaintiffs, there are no pending or outstanding deadlines that prohibit or would lead to the cessation of previously obligated grant monies.

[1] It is not clear that each Additional Plaintiff has submitted a declaration regarding each Defendant and each grant program that that Additional Plaintiff seeks to enjoin. Solely by way of example, Defendants have not located a declaration submitted on behalf of Additional Plaintiff County of Los Angeles that describes its HUD grant funding. Similarly, County of Santa Barbara failed to submit a declaration regarding its purported FTA and/or NHTSA grant funding. To the extent any aspect of any Additional Plaintiff's request for preliminary relief is unsupported by evidence, the request should be summarily denied.

*Id.* ¶ 22. Further, to the extent HUD grant funds are obligated, Additional Plaintiffs have access to and are free to draw down those funds. *Id.* ¶ 23.

Finally, each of the challenged conditions in Additional Plaintiffs' HUD grant awards are already enjoined by other federal court orders, including orders in *Martin Luther King, Jr. County, et al. v. Turner, et al.*, No. 25-cv-00814-BJR (W.D. Wash.) ("*King County*") at ECF Nos. 338 & 381; *Rhode Island Coalition Against Domestic Violence v. Trump*, No. 25-cv-00342 (D.R.I.) ("*RICADV*") at ECF Nos. 72 & 77; and *State of New York, et al. v. DOJ, et al.*, No. 25-cv-00345 (D.R.I.) at ECF Nos. 64 & 80. Fernandez Decl. ¶ 21. HUD currently abides by—and will continue to abide by—all injunctive relief issued with respect to these grant conditions. *Id.* ¶ 23. As a result, it is presently impossible for HUD to impose or enforce any of the challenged conditions on Additional Plaintiffs' HUD grants.

**2. Additional Plaintiffs' HHS Grants**

County of Los Angeles and County of Santa Barbara are the only Additional Plaintiffs that claim they have HHS grants. *See* SAC ¶¶ 95, 100, & 323. Existing Plaintiff County of San Diego also added claims against HHS that were not included in the prior two iterations of the above-captioned complaint. Second PI Mot. at 3 n.3.

With respect to the types of HHS grants held by County of Los Angeles, County of Santa Barbara, and County of San Diego, the SAC challenges only the DEI, Title IX/gender ideology, and Executive Order conditions, and Defendants thus limit their discussion of the HHS grant conditions in this brief accordingly.[2] *See* SAC ¶¶ 423-35. To the extent any HHS grants held by County of Los Angeles, County of Santa Barbara, and/or County of San Diego incorporate the Title IX condition related to gender ideology, HHS presently cannot enforce or impose that condition as a result of the *RICADV* injunction. Declaration of Cynthia Baugh ("Baugh Decl.") ¶¶ 28-29; Declaration of Jamie Legier ("Legier Decl.") ¶ 13; Declaration of Jennifer Hannah ("Hannah Decl.") ¶¶ 14-15; *see also RICADV*, ECF Nos. 72 & 77. And even assuming HHS were not already enjoined from imposing or enforcing the Title IX gender ideology condition, County of Los Angeles, County of San Diego, and County of Santa Barbara's HPP

[2] The SAC alleges that SAMHSA grants include the immigration condition (SAC ¶ 430), but County of Los Angeles, County of Santa Barbara, and County of San Diego do not claim to have grants awarded by SAMHSA (*see* SAC ¶¶ 45, 95, & 100).

awards do not include the Title IX gender ideology condition. Hannah Decl. ¶¶ 10-11 & 15.

Moreover, while a prior iteration of HHS's Grants Policy Statement included a reference to DEI, HHS revised that condition on July 24, 2025, and the revised condition now states:

> By applying for or accepting federal funds from HHS, recipients certify compliance with all federal antidiscrimination laws and these requirements and that complying with those laws is a material condition of receiving federal funding streams. Recipients are responsible for ensuring subrecipients, contractors, and partners also comply.

Baugh Decl. ¶¶ 26-27; Hannah Decl. ¶ 13; Legier Decl. ¶ 12. Further, HHS made clear that this revision was retroactive to April 16, 2025, thereby encompassing all HHS grant awards that previously included the DEI language. Baugh Decl. ¶¶ 26 n.1; Hannah Decl. ¶ 13 n.1; Legier Decl. ¶ 12 n.1.

Plaintiffs' supporting declarations include little description of when the HHS grant awards were issued or how Plaintiffs responded at that time, nor do they identify any current, immediately impending irreparable harm with respect to their HHS grant awards, including (for example) any upcoming deadlines or any explanation about the delay between the issuance of the grant award and County of Los Angeles, County of Santa Barbara, and County of San Diego's instant request for preliminary relief. Indeed, Plaintiffs' supporting declarations are limited to vague and boilerplate claims of irreparable harm, untied to any timeframe or the grant conditions at issue in this case. *See, e.g.*, ECF No. 71-8 ¶ 5 (Santa Barbara HHS declaration); ECF No. 71-15 ¶ 7 (Santa Barbara HHS declaration); ECF No. 71-21 ¶ 7 (Santa Barbara declaration); ECF No. 71-24 ¶ 6 (Santa Barbara HHS declaration); ECF No. 71-13 ¶ 5 (Santa Barbara HHS declaration); ECF No. 71-18 ¶¶ 7-8 (Los Angeles HHS declaration). While County of San Diego's declaration invokes the Title IX/gender ideology condition, it neglects to mention that that condition is already enjoined by the *RICADV* order. ECF No. 71-23 ¶ 8 (San Diego declaration). The San Diego declaration also contains a vague claim that HHS's grant conditions require compliance with federal anti-discrimination law, but it does not identify any circumstances under which being required to comply with federal anti-discrimination law would constitute an irreparable harm. ECF No. 71-23 ¶ 8.

In any event, HHS awarded many of County of Los Angeles, County of Santa Barbara, and County of San Diego's HHS grants months ago. Baugh Decl. ¶¶ 14, 16, 18, 20, & 22; Hannah Decl. ¶ 11; Legier Decl. ¶ 14. And these Plaintiffs have already affirmed their acceptance of the challenged conditions contained in some of those grants by continuing to draw down funds. Hannah Decl. ¶ 11; Baugh Decl.

¶¶ 25 & 30.

Finally, the supporting declarations for County of Los Angeles are internally inconsistent even where they do address the challenged conditions. For example, one County of Los Angeles declaration suggests that merely certifying compliance with "all federal antidiscrimination laws" is legally problematic. ECF No. 71-17 ¶ 8. In contrast, another County of Los Angeles Declaration claims—incorrectly—that HHS's grant conditions still contain the challenged DEI language. ECF No. 71-38 ¶ 8. In any event, County of Los Angeles acknowledges that it already agreed to the challenged conditions, and its irreparable harm claims are based solely on speculative future events that may or may not come to pass. *Id.* ¶¶ 10-12.

**3. Additional Plaintiffs' DOT, FAA, FHWA, And FTA Grants**

The SAC does not define Additional Plaintiffs City of San Mateo or City of Stockton as DOT Plaintiffs (SAC ¶ 268), nor do these cities claim to be recipients of grant funding from DOT (*id.* ¶¶ 70 & 80). Similarly, Additional Plaintiffs City of Beaverton, City of Hillsboro, City of Mountain View, City of Salem, City of San Mateo, City of Santa Clara, City of Stockton, City of Sunnyvale, and County of Los Angeles are not defined "FTA Plaintiffs," nor do those entities claim to be recipients of FTA grant funding. *Id.* ¶ 232. City of San Mateo, City of Stockton, and City of Sunnyvale are not defined "FHWA Plaintiffs," and they do not claim to be recipients of FAA funding. *Id.* ¶ 246. City of Beaverton, City of Hillsboro, City of Mountain View, City of San Mateo, City of Santa Clara, City of Santa Cruz, City of Stockton, City of Sunnyvale, City of Vacaville are not defined "FAA Plaintiffs," and those Additional Plaintiffs do not claim to be recipients of FAA funding. *Id.* ¶ 254.

City of Atlanta has already agreed to the challenged terms and conditions in at least some of its DOT grant agreements. *See* Declaration of Robert Hyman ("Hyman Decl.") ¶¶ 6 & 7. Although City of Beaverton has not agreed to the DOT grant conditions in its awards, there are no DOT-imposed impending deadlines for City of Beaverton to do so. *Id.* ¶ 5. The SAC also identifies a further ten Additional Plaintiffs as "DOT Plaintiffs" (SAC ¶ 268), but those entities' identified grant programs are not actually with DOT; they are instead with various DOT components, and those grant programs are addressed in the components' declarations filed herewith. *Id.* ¶ 8. Finally, DOT's immigration condition has already been permanently enjoined pursuant to court order in *California v. Duffy*, No. 25-cv-208 (D.R.I.) ("*Duffy*") at

ECF No. 74, and DOT either does not include that condition in new grant agreements or will not enforce that condition in prior agreements. Hyman Decl. ¶ 4.

Although included within the defined "FAA Plaintiffs" term (SAC ¶ 254), the City of Atlanta does not, in fact, have any active FAA grants or FAA grant applications for FY 2026 (*see id.* ¶ 51; *see also* Declaration of David Cushing ("Cushing Decl.") ¶ 14). Moreover, FAA's immigration condition also has been permanently enjoined in *Duffy*, and FAA either does not include that condition in new grant agreements or will not enforce that condition in prior agreements. Cushing Decl. ¶ 13.

Some of the FHWA Plaintiffs' FHWA grants do not include the challenged conditions (*see* Declaration of Arlan Finfrock ("Finfrock Decl.") ¶¶ 17 & 21) and some of the FHWA Plaintiffs have not executed agreements for their FHWA awards (*id.* ¶¶ 16, 19-20, 22-24). Other FHWA Plaintiffs receive formula funds, which are administered by state departments of transportation. *Id.* ¶¶ 18, 26-35. FHWA's immigration condition also has been permanently enjoined in *Duffy*, and FHWA either does not include that condition in new grant agreements or will not enforce that condition in prior agreements. *Id.* ¶ 15.

County of Santa Barbara is a defined "FTA Plaintiff" (SAC ¶ 232), but it does not identify any FTA grant funding in the SAC (*id.* ¶ 100), and it failed to submit a declaration in support of the Second PI Motion establishing that it receives FTA grant funding. *See* Declaration of Jamie Pfister ("Pfister Decl.") ¶ 17. Similarly, City of Santa Cruz is a defined "FTA Plaintiff" (SAC ¶ 232), but it also does not identify any FTA grants in the SAC (*id.* ¶ 77), and FTA does not, in fact, have any grants with City of Santa Cruz. Pfister Decl. ¶ 17. Moreover, City of Atlanta, City of Vacaville, and City of Corvallis have already executed grant agreements with FTA that include the challenged terms, thereby agreeing to those terms. *Id.* ¶¶ 14-16. Finally, FTA is also subject to the *Duffy* injunction, and it either does not include that condition in new grant agreements or will not enforce that condition in prior agreements. *Id.* ¶ 13.

#### 4. All Plaintiffs' FRA And NHTSA Grants

The only FRA Plaintiffs identified in the SAC are City of Santa Cruz and City of Atlanta (SAC ¶ 258), and the only NHTSA Plaintiffs are City of Beaverton, City of Hillsboro, City of Santa Clara, City of Santa Cruz, and County of Santa Barbara (*id.* ¶ 264). However, although it is a defined NHTSA Plaintiff (SAC ¶ 264), the SAC does not identify any NHTSA grant funding that County of Santa Barbara receives (*id.* ¶ 98), and County of Santa Barbara has not submitted a declaration in connection with the

Second PI Motion establishing that it receives NHTSA funding. Declaration of Barbara Sauers ("Sauers Decl.") ¶ 4.

City of Atlanta's FRA grant was issued in January 2025; although City of Atlanta has not yet executed a grant agreement, the award is not at risk of expiring due to lapse of time. Declaration of Paul Nissenbaum ("Nissenbaum Decl.") ¶¶ 11 & 13. City of Santa Cruz claims that it has $4,852,609 in Rail Trail Segments from FRA, but it does not identify a specific grant agreement (ECF No. 71-16 ¶ 5), and FRA is not aware of any FRA grants awarded to City of Santa Cruz. Nissenbaum Decl. ¶ 14. FRA is subject to the *Duffy* injunction, and it either does not include that condition in new grant agreements or will not enforce that condition in prior agreements. *Id.* ¶ 12.

NHTSA has not entered into direct grant agreements with any of the NHTSA Plaintiffs in this lawsuit. Sauers Decl. ¶ 4. Instead, NHTSA has issued grants to the State of California and the State of Oregon, and the NHTSA Plaintiffs claim to be subrecipients of those grants. *Id.* ¶¶ 4, 6-7, 10-11. NHTSA approved both the State of California's and the State of Oregon's highway safety grant funds on September 30, 2024 for FY 2025 and on September 18, 2025 for FY 2026. *Id.* ¶¶ 10-11. NHTSA is subject to the *Duffy* injunction, and it either does not include that condition in new grant agreements or will not enforce that condition in prior agreements. *Id.* ¶ 8.

## III. Legal Standard

Emergency injunctive relief, such as a preliminary injunction, is "an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. Plaintiffs must make a clear showing that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter*, 555 U.S. at 20). The final two factors merge when the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "The postponement of agency action under the APA is governed by the preliminary injunction factors." *Nat'l TPS Alliance v. Noem*, 150 F.4th 1000, 1015 (9th Cir. 2025).

## IV. Plaintiffs Do Not—And Cannot—Demonstrate Entitlement To Preliminary Injunctive Relief

### A. Plaintiffs Do Not Face Irreparable Harm

The "most important" *Winter* factor Plaintiffs have the burden of demonstrating is irreparable

harm. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1171 n.6 (9th Cir. 2011) (a showing of irreparable harm is "necessary"). That standard requires a plaintiff seeking the extraordinary remedy of a preliminary injunction to "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). The "possibility" of such harm is insufficient, *id.*, as is "[s]peculative injury"; Plaintiffs must show both immediacy and likelihood that they will be irreparably harmed absent preliminary relief. *See Baldrige*, 844 F.2d at 674.

Here, Plaintiffs' claims of irreparable harm fail for a multitude of reasons.

### 1. The Conclusory Assertions Of Irreparable Harm In The Second PI Motion And The Boilerplate Harm Assertions In Plaintiffs' Declarations Are Deficient

At the preliminary injunction stage, there is no presumption of irreparable harm, nor is it Defendants' burden to show that a risk of irreparable harm *does not* exist. Instead, Plaintiffs have the burden to introduce affirmative evidence of imminent irreparable harm to meet this element of the *Winter* test. *Harris v. Atchley*, No. 22-cv-00529-EMC, 2023 WL 7312969, at *2 & 5 (N.D. Cal. Oct. 18, 2023) ("*Winter* makes clear that it is a plaintiff's burden to fulfill all the elements for a preliminary injunction"); *Conceptus, Inc. v. Hologic, Inc.*, No. 09-cv-02280 WHA, 2009 WL 3740713, at *5 (N.D. Cal. Nov. 6, 2009) ("This failure of proof falls on plaintiff, not defendant. It is plaintiff's burden on a motion for a preliminary injunction"). Nor can Plaintiffs simply establish irreparable harm with respect to one Plaintiff, one grant program, or one challenged condition and then ask the Court to extrapolate additional—but unarticulated and unsupported—irreparable harms with respect to other Plaintiffs, other grant programs, or other grant conditions. But that is precisely what the Second PI Motion asks the Court to do.

As an initial matter, the face of the Second PI Motion fails to demonstrate any cognizable irreparable harm. The background Statement of Fact section is limited to two paragraphs of attorney *ipse dixit* assertions without a single citation to evidence. Second PI Mot. at 3. And the irreparable harm section of Plaintiffs' brief broadly consists of threadbare irreparable harm allegations supported by conclusory string citations to the approximately 1,500 pages of declarations, without any factual development or any Plaintiff-specific or grant-specific evidence. *Id.* at 9-12. This "failure of proof falls on plaintiff, not defendant," and this is sufficient reason to deny the Second PI Motion from the outset.

*Conceptus*, 2009 WL 3740713, at *5; *Harris*, 2023 WL 7312969, at *2 & 5.

Even if the Court is inclined to go "hunting for truffles" in the 1,500 pages of supporting documents, *Wu*, 626 F.3d at 488, the result is no different. Plaintiffs' supporting declarations generally consist of conclusory and boilerplate harm allegations, without (1) providing timing guideposts (*i.e.*, what deadlines, if any, are impending or describing how long Plaintiffs waited after being awarded specific grants before filing the instant request for preliminary injunctive relief), (2) stating the current status of the grants or including any communication between Plaintiffs and Defendants regarding the challenged conditions in each of the grants, and/or (3) tying Plaintiffs' generalized harm allegations to the specific grants and conditions challenged in this case. *See* Second PI Mot. at 9-12 (citing ECF No. 71-8 ¶ 5; ECF No. 71-16 ¶¶ 15-18; ECF No. 71-15 ¶ 7; ECF No. 71-5 ¶ 29; ECF No. 71-19 ¶ 1; ECF No. 71-11 ¶ 7; ECF No. 71-12 ¶ 10; ECF No. 71-20 ¶ 5; ECF No. 71-30 ¶ 5; ECF No. 71-17 ¶¶ 10-13; ECF No. 71-30 ¶¶ 9-12; ECF No. 71-31 ¶¶ 9-10; ECF No. 71-18 ¶ 7; ECF No. 71-36 ¶ 6; ECF No. 71-21 ¶ 7; ECF No. 71-26 ¶ 8; ECF No. 71-22 ¶ 5; ECF No. 71-37 ¶¶ 17-19; ECF No. 71-23 ¶¶ 13-14; ECF No. 71-32 ¶ 7; ECF No. 71-29 ¶ 8; ECF No. 71-10 ¶¶ 10-11; ECF No. 71-4 ¶ 4; ECF No. 71-28 ¶ 8; ECF No. 71-27 ¶¶ 12-16; ECF No. 71-24 ¶ 6; ECF No. 71-33 ¶¶ 17-19; ECF No. 71-13 ¶ 5; ECF No. 71-7 ¶ 5; ECF No. 71-14 ¶¶ 9-10; ECF No. 71-25 ¶¶ 32-36, 41-43, 47; ECF No. 71-34 ¶ 9; ECF No. 71-6 ¶ 8). To the extent Plaintiffs claim that the number of Plaintiffs, Defendants, and/or grants at issue prevent them from making a more particularized showing here, that failure of proof not only falls on Plaintiffs (*Conceptus*, 2009 WL 3740713, at *5), but it is a defining feature of this blunderbuss lawsuit, in which Plaintiffs improperly join 25 disparate Plaintiffs from across the country (each with a unique set of facts, federal grant programs, and purported harms) and nine federal agencies/components (each of which, similarly, has a unique set of authorizing statutes, grant programs, and grant conditions). Injunctive relief—either preliminary or final—cannot be issued en masse, but that is how Plaintiffs pursue this litigation.

The handful of "examples" raised in the Second PI Motion fare no better in the irreparable harm analysis—not only do those examples fail to show a likelihood of irreparable harm for that specific Plaintiff/grant program, but those non-representative samples also cannot be extended to support injunctive relief against all Defendants and all grant programs, as Plaintiffs seek in this motion.

Plaintiffs first invoke a series of communications between HUD and City of Sunnyvale. Second

PI Mot. at 7-8. But what the Second PI Motion fails to acknowledge is that those communications occurred in August 2025. *Compare id. with* ECF No. 71-34 ¶ 6. In the interim, all the challenged HUD grant conditions have been enjoined by other district court orders, and HUD thus cannot impose or enforce the challenged conditions against City of Sunnyvale. Fernandez Decl. ¶¶ 21-22. Accordingly, this example does not suggest that City of Sunnyvale is at an imminent risk of irreparable harm. And even assuming this anecdotal example was representative of all other Additional Plaintiffs' interactions with HUD, it has no bearing on any Plaintiff's interactions with the other Defendants.

Plaintiffs next note that FHWA awarded City of Vacaville a Safe Streets for All grant and that FHWA subsequently requested that Vacaville "remove the equity-focused Action Plan Update component." Second PI Mot. at 10-11. But FHWA's request happened in March 2025 (*i.e.*, over a year ago, *see* ECF No. 71-28 at Ex. B), and neither the Second PI Motion nor City of Vacaville's supporting declaration details what has changed in the intervening one year of delay such that City of Vacaville now has an *immediate* risk of irreparable harm requiring preliminary judicial intervention.

City of Corvallis also claims that it has had to "pause or delay HUD-funded services," "backfill from other sources to cover City Staff wages that are billed to [HUD] grant funds," and "delayed starting its HOME tenant-based rental assistance program." Second PI Mot. at 11. But these HUD grants appear to have been awarded in September of last year, and those grant awards expressly recognized federal court injunctions preventing the enforcement of the challenged conditions here. ECF No. 71-33 ¶¶ 4-11; Fernandez Decl. ¶ 22. For the avoidance of doubt, the challenged HUD grant conditions at issue in City of Corvallis's HUD grants have been enjoined by other district court orders, and HUD thus currently cannot impose or enforce the challenged conditions against City of Corvallis. Fernandez Decl. ¶¶ 21-22.

Finally, City of Santa Clara claims that it "has been forced to pause several programs due to the change in federal funding conditions, including the DUI Checkpoint, DUI Saturation Patrol, Distracted Driving, and Bicycle/Pedestrian Safety Operations programs." Second PI Mot. at 11. But the supporting declaration does not detail which grant awards these paused programs relate to, nor does it describe how this "pause" was caused by the grant conditions in any of those (unidentified) grants. ECF No. 71-37. And to the extent City of Santa Clara invokes alleged irreparable harm as a result of HUD's grant conditions (Second PI Mot. at 12), City of Santa Clara's own declaration undermines any such claim of

harm because it recognizes that City of Santa Clara "intends to submit signed and redlined HUD grant agreement(s) with reservation of rights." ECF No. 71-37 ¶ 16; *see also* Fernandez Decl. ¶¶ 21-22.

In short, neither the Second PI Motion nor the supporting declarations demonstrates an immediate likelihood of irreparable harm as to any Plaintiff, much less do Plaintiffs submit evidence of irreparable harm for each Plaintiff, with respect to each grant program, and with regard to each challenged condition. The Second PI Motion thus should be denied.

### 2. There Is No Imminent Risk Of Irreparable Harm Where The Challenged Conditions Are Already Enjoined By Other Federal Court Orders

All the challenged conditions in Plaintiffs' HUD grants are currently enjoined as a result of prior court orders in *King County*, *RICADV*, and *State of New York*. *See supra* Part II.B.1 (discussing *King County*, ECF Nos. 338 & 381; *RICADV*, ECF Nos. 72 & 77; *State of New York*, ECF Nos. 64 & 80). Similarly, HHS's Title IX/gender ideology condition was enjoined by the *RICADV* court. *Supra* Part II.B.2. And DOT and its components (FTA, FHWA, FAA, FRA, and NHTSA) are already permanently enjoined from imposing the immigration condition as a result of the injunction in *Duffy*. *See supra* Part II.B.3-4; *Duffy*, ECF No. 74; Hyman Decl. ¶ 4; Pfister Decl. ¶ 13; Cushing Decl. ¶ 13; Sauers Decl. ¶ 8; Nissenbaum Decl. ¶ 12; Finfrock Decl. ¶ 15. As a result, there is no current possibility of irreparable harm for any of the grant conditions that are already enjoined by other court orders. *See, e.g.*, *Hawai'i v. Trump*, 233 F. Supp. 3d 850, 853 (D. Haw. 2017) ("[T]he Western District of Washington's nationwide injunction already provides the State with the comprehensive relief it seeks in this lawsuit. As such, the State will not suffer irreparable damage.").

Judge Gonzalez Rogers recently denied a similarly duplicative preliminary injunction motion in a federal grant termination case. *See McKinleyville Union Sch. Dist. v. United States Dep't of Educ.*, No. 25-cv-09105-YGR, 2025 WL 4110868 (N.D. Cal. Dec. 29, 2025). There, a court in the Western District of Washington had previously issued a preliminary injunction granting "all the substantive relief requested" by the plaintiff in the case before Judge Gonzalez Rogers. *Id.* at 1. Nevertheless, the plaintiff brought a duplicative lawsuit in the Northern District of California "as a prophylactic measure in the event that a subsidiary legal argument on standing, which was rejected by that court, prevails some time in the future." *Id.* Judge Gonzalez Rogers denied the requested preliminary injunction, finding that "[s]uch concerns are

too speculative to satisfy the element of imminent harm required for such extraordinary relief." *Id.* (cleaned up). The same logic—and the same result—applies here. Plaintiffs do not have (and cannot show) a risk of irreparable harm as long as the grant conditions they challenge are already enjoined.

### 3. Certifying Compliance With Federal Anti-Discrimination Law Is Not An Irreparable Harm

Some Additional Plaintiffs with HHS grants have submitted declarations claiming that simply being required to comply with federal anti-discrimination laws constitutes an irreparable harm. *See, e.g.*, ECF No. 71-23 ¶ 8; ECF No. 71-17 ¶ 8. That is neither a plausible nor a colorable position, especially since all recipients of federal funds are required, by statute, to comply with federal anti-discrimination laws. 42 U.S.C. § 2000d-1; *Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582, 629-30 (1983) (Marshall, J., dissenting) ("Every application for Federal financial assistance must, as a condition to its approval . . . contain assurances that the program will comply with Title VI and . . . the executive regulations under Title VI"); 2 C.F.R. § 200.300(a); 2 C.F.R. § 200.211(c)(1)(ii); 2 C.F.R. § 200.303(b).

## B. Plaintiffs Do Not Demonstrate Likelihood Of Success On The Merits Of Their Claims

This Court is familiar with Defendants' likelihood of success arguments from the temporary restraining order and first motion for preliminary injunction stages of this case. Defendants expressly preserve the legal arguments in their prior briefing but, rather than reiterate those arguments wholesale here and in the interest of judicial efficiency, Defendants incorporate those briefs and arguments by reference. *See* ECF Nos. 24 & 40.

In addition to their prior legal arguments on these issues, Defendants highlight that at least one appellate court has rejected Plaintiffs' overbroad interpretation of the DEI condition at issue in this case. Under similar facts, the Fourth Circuit granted the government's motion for a stay of a preliminary injunction entered in a case challenging Executive Order 14,173, which directs federal agencies to require grant recipients to certify that they do not operate unlawful DEI programs. *See* Order Granting Defendants' Motion for a Stay Pending Appeal, *National Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025); *see id.* at 7 (Harris, J. concurring) (explaining that the challenged provision "appl[ies] only to conduct that violates existing federal anti-discrimination law").

The Fourth Circuit subsequently vacated the preliminary injunction that had enjoined that certification requirement. *See Nat'l Ass'n of Diversity Officer s in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Feb. 6, 2026) ("Plaintiffs suggest that defendants view all DEI programs as illegal under existing antidiscrimination law. Perhaps, but the Certification Provision doesn't say that").

Finally, the First PI Order does not account for the distinct procedural posture of the instant motion, nor has this Court had an opportunity to analyze how intervening factual developments have altered Plaintiffs' likelihood of success on the merits in the Second PI Motion.

### 1. Plaintiffs Cannot Demonstrate A Likelihood Of Success To The Extent They Seek Injunctive Relief For Grant Programs In Which They Do Not Participate

Simply stated, Plaintiffs do not have Article III standing to seek *any* relief—much less the extraordinary preliminary relief requested here—if they are not participants in the specific grant programs at issue. "At the preliminary injunction stage, then, the plaintiff must make a 'clear showing' that she is 'likely' to establish each element of standing." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024); *see also Matsumoto v. Labrador*, 122 F.4th 787, 821 (9th Cir. 2024) (Bea, concurring and dissenting in part).

"Foremost among" the Article III standing requirements "is injury in fact—a plaintiff's pleading and proof that he has suffered the 'invasion of a legally protected interest' that is 'concrete and particularized.'" *Gill v. Whitford*, 585 U.S. 48, 65 (2018) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The Supreme Court and the Ninth Circuit have repeatedly noted that Article III standing cannot be based on abstract harms. *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (Article III injury "must actually exist" and cannot be "abstract"); *Lujan*, 504 U.S. at 583 ("abstract injury is not enough"); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("Federal courts do not possess a roving commission to publicly opine on every legal question. Federal courts do not exercise general legal oversight of the Legislative and Executive Branches"); *Clark v. City of Seattle*, 899 F.3d 802, 810 (9th Cir. 2018) ("a bare procedural violation, divorced from any concrete harm, does not satisfy the injury-in-fact requirement of Article III") (citation and quotation marks omitted); *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023); *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 80-81 (2019).

The Second PI Motion seeks an injunction against HUD, HHS, DOT, FTA, FHWA, and FAA on

behalf of all "Additional Plaintiffs." Second PI Mot. at vi. That is a facially overbroad request, and is not supported by the case or controversy requirement inherent in Article III of the Constitution. At minimum, the following Additional Plaintiffs' requests for preliminary injunctive relief against the following Defendants should be denied for lack of Article III standing because these Additional Plaintiffs do not purport to have or do not in fact have grants with these Defendants:

- **HUD**: City of Salem's request for preliminary injunctive relief against HUD—City of Salem does not purport to be a HUD Plaintiff. SAC ¶¶ 68 & 217.
- **HHS**: City of Atlanta, City of Beaverton, City of Corvallis, City of Hillsboro, City of Mountain View, City of Salem, City of San Mateo, City of Santa Clara, City of Santa Cruz, City of Stockton, City of Sunnyvale, and City of Vacaville's requests for preliminary injunctive relief against HHS and/or its components—these Additional Plaintiffs do not claim to have HHS grants. *See, e.g.*, *id.* ¶¶ 95, 100, & 323.
- **DOT**: City of San Mateo and City of Stockton's requests for preliminary relief against DOT—neither of those cities claims to be recipients of DOT grant funding. *Id.* ¶¶ 70, 80, & 268.
- **FTA**: City of Beaverton, City of Hillsboro, City of Mountain View, City of Salem, City of San Mateo, City of Santa Clara, City of Stockton, City of Sunnyvale, and County of Los Angeles's requests for preliminary injunctive relief against FTA—these entities are not "FTA Plaintiffs" and do not claim to be recipients of FTA grant funding. *Id.* ¶ 232. Additionally, County of Santa Barbara and City of Santa Cruz are defined "FTA Plaintiffs" (SAC ¶ 232), but neither entity identifies any FTA grant funding in the SAC (*id.* ¶¶ 100 & 77); City of Santa Cruz does not, in fact, have any grants with FTA (Pfister Decl. ¶ 17), and County of Santa Barbara failed to submit a declaration in support of the Second PI Motion establishing that it receives FTA grant funding (*id.*).
- **FHWA**: City of San Mateo, City of Stockton, and City of Sunnyvale's requests for preliminary injunctive relief against FHWA—these cities are not defined "FHWA Plaintiffs" and they do not claim to be recipients of FHWA funding. *Id.* ¶ 246.
- **FAA**: City of Beaverton, City of Hillsboro, City of Mountain View, City of San Mateo,

City of Santa Clara, City of Santa Cruz, City of Stockton, City of Sunnyvale, City of Vacaville's requests for preliminary relief against FAA—these cities are not defined "FAA Plaintiffs" and they do not claim to be recipients of FAA funding. *Id.* ¶ 254. Further, City of Atlanta does not have any active or pending FAA grant agreements for FY 2026, and it thus does not have Article III standing to seek an injunction against FAA. SAC ¶ 51; Cushing Decl. ¶ 14.

The Second PI Motion also seeks to extend the First PI Order to FRA and NHTSA on behalf of "all Plaintiffs" (Second PI Mot. at vi), but that is once again an impermissibly overbroad request. The only defined FRA Plaintiffs in the SAC are City of Santa Cruz and City of Atlanta (SAC ¶ 258) and the only NHTSA Plaintiffs identified in the SAC are City of Beaverton, City of Hillsboro, City of Santa Clara, City of Santa Cruz, and County of Santa Barbara (*id.* ¶ 264). As such, the dictates of Article III require that the 18 other Plaintiffs in this lawsuit do not have standing to seek injunctive relief against these DOT components. Additionally, FRA is not aware of any FRA grants awarded to City of Santa Cruz, thereby precluding City of Santa Cruz from obtaining preliminary relief against FRA. Nissenbaum Decl. ¶ 14. And County of Santa Barbara has not submitted a declaration in connection with the Second PI Motion establishing that it receives NHTSA funding. Sauers Decl. ¶ 4.

**2. Plaintiffs Cannot Show A Likelihood Of Success With Respect To HHS's Anti-Discrimination Condition**

This Court declined to enter the first preliminary injunction against EPA, finding that EPA's "DEI Conditions are no longer in effect following August 25, 2025 revisions to the EPA General Terms and Conditions . . . and there is no evidence that EPA is still enforcing its DEI Conditions or interprets its Anti-Discrimination Condition to prohibit DEI[.]" First PI Order at 11. Similarly, following the July 24, 2025 revision to HHS's Grants Policy Statement to remove reference to DEI, the HHS DEI condition that Plaintiffs challenge is "no longer in effect" and Plaintiffs have provided no evidence that HHS "is still enforcing its DEI Conditions or interprets its Anti-Discrimination Condition to prohibit DEI." *Compare id. with* Baugh Decl. ¶¶ 26-27; Hannah Decl. ¶ 13; Legier Decl. ¶ 12. As a result, Plaintiffs' request to enjoin the current version of HHS's anti-discrimination condition likewise "fail[s]." First PI Order at 11.

**3. Venue Is Improper For The Claims Against HHS, And This Court Cannot Issue Injunctive Relief Against HHS And/Or Its Components**

As established in more depth in Defendants' pending motion to dismiss, venue must be analyzed based on the facts at the time the lawsuit was filed. ECF No. 75 at 18 n.7 (citing *Flowers Industries, Inc. v. FTC*, 835 F.2d 775, 776 n.2 (11th Cir. 1987)). At the time this lawsuit was filed, the only in-District plaintiff was City of Eureka, and City of Eureka did not assert claims against HHS. As such, venue has always been improper as to HHS (and EPA), and Plaintiffs' claims against HHS and its components are subject to dismissal under Federal Rule of Civil Procedure 12(b)(3) for improper venue.

**C. The Balance Of Equities And The Public Interest Favors The Government**

Plaintiffs must also demonstrate that "the balance of equities tips in [its] favor" and "an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citation omitted). These "factors merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. Plaintiffs do not meet this burden.

The Supreme Court in *California* explained that the balance of the equities favors the federal government in this context. The public interest is harmed when the United States is forced to pay out funds that it may not be able to recover. *Department of Education v. California*, 604 U.S. 650, 652 (2025). Plaintiffs have the choice of whether "to keep the programs operating," and if they choose not to, "then any ensuing irreparable harm would be of their own making." *Id.*; *see also Heckler v. Turner*, 468 U.S. 1305, 1307-08 (1984) (Rehnquist, J., in chambers) (prospect of the government being forced to make $1.3 million in improper payments per month supported a stay of injunction); *cf. Sustainability Institute v. Trump*, No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025) ("[T]he Government has demonstrated irreparable harm because it is being forced to disburse funds from a finite appropriation and will not be able to recoup those funds once expended."). In *NIH*, the Supreme Court reaffirmed this conclusion, emphasizing that the federal government is irreparably harmed if its funds "cannot be recouped," such as when federal grant recipients "do not state that they will repay grant money if the Government ultimately prevails." *National Institutes of Health v. American Public Health Association*, 145 S. Ct. 2658, 2660 (2025); *see also id.* at 2666 (Kavanaugh, J., concurring in part).

This is all in addition to the fact that any injunction interfering with the administration's priorities is itself a substantial harm in the balance of the equities analysis. For, "[a]ny time [the Government] is

enjoined by a court from effectuating [laws], it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted).

**D. Plaintiffs' Arguments Regarding Claim Splitting And Transfer Are Procedurally Improper**

Finally, the Second PI Motion devotes approximately eight pages to a preemptive rebuttal to Defendants' later-filed motion to dismiss or transfer. Second PI Mot. at 14-21. Defendants will reserve their responses to Plaintiffs' legally and factually incorrect arguments for the forthcoming reply in support of Defendants' pending motion.[3] ECF No. 75. However, Defendants note that the inclusion of those arguments in the Second PI Motion is procedurally improper because, in violation of Local Civil Rule 7-3(b), plaintiffs only have one opposition brief (and Plaintiffs' approach here would allow them two such briefs). The Court should ignore those extraneous arguments.

## V. Conclusion

For the foregoing reasons, this Court should deny Plaintiffs' second motion for a preliminary injunction.

DATED: March 19, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Jevechius D. Bernardoni*
JEVECHIUS D. BERNARDONI
Assistant United States Attorney

Attorneys for Defendants

[3] For example, Plaintiffs contend that "[o]nly the City of Santa Cruz is a plaintiff in both this action and another action raised by Defendants[.]" Second PI Mot. at 15. That is an indisputably incorrect assertion: Plaintiffs City of Santa Cruz, City of Saint Paul, and County of Marin are all plaintiffs in *City and County of San Francisco, et al. v. Trump, et al.*, No. 3:25-cv-01350-WHO (N.D. Cal.).