UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY OF FRESNO, *et al.*,<br>Plaintiffs,<br>v.<br>SCOTT TURNER, *et al.*,<br>Defendants. | Case No. 3:25-cv-07070-RS<br><br>The Honorable Richard Seeborg |

**DECLARATION OF CLAUDETTE FERNANDEZ IN SUPPORT OF DEFEDANTS' OPPOSITION TO SECOND MOTION FOR PRELIMINARY INJUNCTION**

I, Claudette Fernandez, hereby declare as follows:

1. I am employed by the U.S. Department of Housing and Urban Development ("HUD") as the General Deputy Assistant Secretary ("GDAS") for the Office of Community Planning and Development ("CPD"). I have served in this capacity for over three years. CPD seeks to develop viable communities by promoting integrated approaches that provide decent housing, a suitable living environment, and expand economic opportunities for low and moderate-income people. The primary means towards this end is the development of partnerships among all levels of government and the private sector, including for-profit and nonprofit organizations. Within CPD are the Continuum of Care ("CoC"), Community Development Block Grant ("CDBG"), Emergency Solutions Grant ("ESG"), Housing Opportunities for Persons With AIDS ("HOPWA') and HOME Investment Partnerships ("HOME") programs (together, "Programs").

2. My responsibilities and duties include nationally overseeing these programs and guiding leaders who manage the workforce that administers grant funding for each one.

3. My statements are based on my personal knowledge and/or my evaluation of information provided to me in my official capacity; on reasonable inquiry; information obtained from various records,

systems, databases; or program employees and information portals maintained and relied upon by HUD in the regular course of business.

4. As the GDAS, I am fully familiar with HUD's process for annually awarding CoC, CDBG, ESG, HOPWA and HOME grants, as appropriated by Congress.

*A. CoC Program*

5. The CoC Program is designed to promote communitywide commitment to the goal of ending homelessness by awarding funds to nonprofit providers, Indian Tribes, Tribally Designated Housing Entities, States, and local governments to quickly rehouse homeless individuals and families while minimizing the trauma and dislocation caused to individuals, families, and communities by homelessness, to promote access to and effect utilization of mainstream programs by homeless individuals and families, and to optimize self-sufficiency among those experiencing homelessness.

6. CoC grant funds are typically awarded for a 12-month budget period. A project may be extended based on compelling reasons that are aligned with the program regulations such as local conditions that affected grant implementation. For FY 2023, and FY 2024 funds, HUD may grant extension requests.

7. Under the Consolidated Appropriations Act for Fiscal Year 2024 (Public Law 118-42, approved March 9, 2024), HUD has until September 30, 2026, to obligate the FY 2024 CoC funds. Grantees must meet conditions and sign grant agreements for HUD to finalize awards and allow access to funds. All FY2024 CoC funds have been obligated in HUD's financial system.

*B. CDBG Program*

8. The CDBG Program provides annual grants on a formula basis to states, cities, counties, and insular areas to develop viable communities by providing decent housing, suitable living environment, and by expanding economic opportunities, principally for low- and moderate-income people. The program is authorized under Title 1 of the Housing and Community Development Act of 1974, Public Law 93-383, as amended 42 U.S.C. § 5301, *et seq*. The CDBG Program was designed to reinforce several important principles of community development: (a) CDBG's flexibility empowers people and communities to design and implement strategies tailored to their own local needs and priorities; (b) CDBG's emphasis on

consolidated planning expands and strengthens partnerships among all levels of government and the private sector in enhancing community development; and (c) CDBG's technical assistance activities and set-aside for grantees builds the capacity of these partners to achieve intended program outcomes.

*C. ESG Program*

9. The ESG program provides annual grants on a formula basis and is designed to assist people with quickly regaining stability in permanent housing after experiencing a housing crisis and/or homelessness.

*D. HOME Program*

10. HOME provides annual grants on a formula basis to states and local governments to create affordable housing for low-income households.

*E. HOPWA Program*

11. HOPWA provides annual grants on a formula basis and through competitive awards to states, metropolitan areas, and nonprofit organizations to provide housing assistance and supportive services for low-income people living with HIV/AIDS and their families. See 42 U.S.C. §§ 12901; 12903.

*F. All Formula Grants*

12. Formula grants are mandatory block grants that HUD is generally required to distribute pursuant to a statutory formula for each program and their respective eligible grantees. See e.g., 42 U.S.C. § 5306 and 42 U.S.C. §12747. After an annual appropriation is enacted by Congress, HUD uses the statutory formula for each program to determine the allocation amount each eligible grantee is entitled to receive. Congress generally requires that allocated amounts for each eligible grantee be announced by HUD within 60 days of the Appropriations Act's enactment. Once annual allocation amounts are announced, grantees, generally, begin submitting their Consolidated Plans or Annual Action Plans to HUD, which informs how they intend on using their respective CPD formula funding according to program requirements. HUD provides technical assistance to eligible grantees to fulfill program requirements when submitting Consolidated Plan or Annual Action Plan to HUD for HUD's review. See 42 U.S.C. § 12705(a) and 24 CFR part 91. To access formula funds, HUD must receive all Consolidated Plan or Annual Action Plan from eligible grantees by the statutory deadline of August 16 of every fiscal

year. HUD has limited ability to disapprove a Consolidated Plan: 1) if the Plan is not consistent with the purposes of the Cranston-Gonzalez National Affordable Housing Act; 2) the Plan or a portion of the Plan is substantially incomplete; or 3) a CDBG certification is not satisfactory to the Secretary in accordance with 24 CFR § 570.304, § 570.429(g), or § 570.485(c).

13. To calculate formula allocation for each grantee under CDBG, HOME, ESG, and HOPWA, HUD must consider the required statutory and regulatory data and methods for each program. For example, CDBG must be divided between metropolitan cities and urban counties[1] (about 70%) and states (about 30%) and generally considers population, poverty, and housing data. HOME on the other hand also considers housing construction costs. ESG considers incidence of homelessness, while HOPWA must consider number of people with HIV/AIDS. Each program has varying types and number of eligible grantees which also inform how the funds are calculated and allocated. The various community data, target population, and level of overall appropriation per program could also affect the amount a grantee could receive annually.

14. I reviewed agency records concerning each HUD CPD grant program that "Additional Plaintiffs"[2] identify in their First Amended Complaint. Those programs include CoC, CDBG, ESG, HOPWA and HOME. Each grant program has varying announcement dates and obligation deadlines as determined by law. Accordingly, each grant and grantee have differing grant agreement execution timelines. For competitive programs such as CoC, timing of NOFO publication, application deadlines, and volume of applicants to review and process could affect timing of grant agreement issuance and execution. For formula programs, allocation amounts must be announced within 60 days after enactment of the Appropriations Act and all Consolidated plans must be submitted by August 16 for HUD's review prior to issuing grant

[1] Urban Counties function the same as Metropolitan Cities, the other type of CDBG Entitlement community, except that they are comprised of units of general local government (UGLGs) that contain the majority of low- and moderate-income residents in the county. Two other key differences are: 1) Urban Counties operate at a larger geographic scale (county-wide) and 2) Urban Counties are made up of the county government itself, its unincorporated areas, and units of general local government (UGLGs) in the county that choose to participate in the Urban County. There are currently 197 Urban Counties which can participate in CDBG, HOME and ESG programs.

[2] Per the Second Amended Complaint, the "Additional Plaintiffs" are the City of Atlanta, City of Beaverton, City of Corvallis, City of Hillsboro, City of Mountain View, City of Salem, City of San Mateo, City of Santa Clara, City of Santa Cruz, City of Stockton, City of Sunnyvale, City of Vacaville, County of Los Angeles, and County of Santa Barbara. ECF No. 68.

agreements. In general, any grant that must be awarded and obligated must comply with the program's applicable statutes, regulations, and executive orders including meeting conditions before grant agreements can be fully executed to allow grantee access to funds.

15. All grant agreements that HUD issues to each recipient establish the conditions relevant for each grant program for a specific fiscal year. Grant agreements cite statutes, regulations and requirements relevant to each program and explain that, by signing, the recipients acknowledge the requirement to administer the program in compliance with those rules and conditions. HUD will not require grantees to expend grant funds or undertake any activities that are not in accordance with the applicable appropriations act and program requirements. For this reason, CoC, CDBG, HOME, HOPWA, and ESG do not mandate nor require fundings for abortions, diversity inclusion, illegal immigrants, or preclude the use of Systematic Alien Verification for Entitlements (SAVE) to ensure the responsible administration of federal funds.

16. HUD announced the formula allocation amounts for all eligible grantees for FY 25 in May 2025. The grant agreement is for a specific fiscal year, FY 25, and applies the conditions therein to FY 25 funding. Eligible grantees were required to submit a Consolidated Plan and/or Annual Action Plans for HUD's review by August 16, 2025, the statutory deadline for CDBG funds. In September 2025, HUD issued grant agreements to the Additional Plaintiffs, many of whom have yet to execute their grant agreements, thereby precluding obligation and availability of the grant funds.

17. For all FY25 formula grants, the funds become obligated upon the complete execution of a grant agreement – grantee must sign first, then HUD second. All grant funds are obligated via the Line of Credit Control System (LOCCS). The process for grant fund obligation is outlined in the CPD Funds Control Matrix.

*G. Policy Requirements*

18. Grant agreements have been issued for the FY25 formula programs and for FY24 CoC competition (issuance started as early as March 2025), containing, generally, the following policy requirements:

i. The Recipient shall not use grant funds to promote "gender ideology," as defined in Executive Order (E.O.) 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government.

ii. The Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

iii. The Recipient certifies that it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964.

iv. The Recipient shall not use any grant funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment.

v. Notwithstanding anything in the NOFO or Application, this Grant shall not be governed by Executive Orders revoked by E.O. 14154, including E.O. 14008, or NOFO requirements implementing Executive Orders that have been revoked.

vi. The Recipient must administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) (PRWORA) and any applicable requirements that HUD, the Attorney General, or the U.S. Citizenship and Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws.

vii. No state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or shields illegal aliens from deportation, including by maintaining policies or practices that materially impede enforcement of federal immigration statutes and regulations.

viii. The Recipient must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.

ix. Faith-based organizations may be subrecipients for funds on the same basis as any other organization. Recipients may not, in the selection of subrecipients, discriminate against an organization based on the organization's religious character, affiliation, or exercise.

Given court injunctions, HUD included transmittal letters to accompany those grant agreements covered by the injunction(s), assuring grantees that policy requirements above are not going to be enforced. As noted above, no program mandates or requires fundings for these policy requirements.

19. All funds must be executed according to each program's obligation deadline which is generally dictated by each Appropriation enactment.

20. As with all grant conditions, if CPD grantees have questions about these policy requirements or other aspects of their grants, they may contact their local CPD field office.

21. HUD notes the following:

***a.*** By *Martin Luther King, Jr. Cnty. v. Trump*, No. 2:25-CV-814, 2025 WL 1582368 (2025), as set forth in the court ordered notice to all HUD employees (ECF No. 383), the court's fourth preliminary injunction (extending the third preliminary injunction to the new plaintiffs added in the third amended complaint) enjoined the same conditions challenged by Plaintiffs, here, from being implemented or enforced for all HUD programs and grants, as to the named plaintiffs in *Kings County*, as well as to all members of CoC continuums, urban counties, consortia, or subrecipients (whether such members or subrecipients were named as a plaintiff or not). *Id.*

b. Further, all of the "Additional Plaintiffs" are protected, as HUD has been enjoined from implementing or enforcing the challenged conditions at issue, here, for all HUD CPD grants per the preliminary injunction in *Rhode Island Coalition Against Domestic Violence v. Trump*, No. 25-cv-00342 (D.R.I. Oct. 23, 2025) ("*RICADV*") at ECF Nos. 72 & 77 which applies whether a grant recipient is a named plaintiff or not. Simply, the "Additional Plaintiffs" are already protected.

c. Finally, as a defendant in *State of New York, et al. v. DOJ, et al.*, 1:25-cv-00345 (D.R.I.), HUD must to comply with that court's injunction and the stipulation in that matter, both of which prohibit HUD from enforcing or applying in the 22 "Plaintiff States" HUD's PRWORA Notice "including the interpretations of PRWORA expressed in that Notice" which covers the requirement to use the Systemic Alien Verification for Entitlements (SAVE) program. ECF Nos. 64 and 80. See also, *City and County of San Francisco, et al. v. Trump, et al.*, No. 3:25-cv-01350-WHO (N.D. Cal.) ("*State of New York*"). The 22 "Plaintiff States" in *State of New York* include each of the states in which each of the Additional Plaintiffs are located. Thus, the HUD PRWORA provision is stayed and enjoined for the "Additional Plaintiffs."

22. Please find attached a summary of the grant status of each Additional Plaintiffs. Please note that most plaintiffs fully executed their grant agreements, meaning they have access to their funding (i.e., grant is "contracted"). *See* Exhibit A. For those that have not, including Corvallis, Santa Clara, and Sunnyvale, a grant agreement was sent to them, and HUD awaits an executed agreement from each one. HUD will then process and the funds will be obligated and available. "Additional Plaintiffs" that have not signed/returned the FY25 formula grant agreements thereby negate HUD's ability to process those agreements until they are so executed. However, even with those cities and the remaining Additional

Plaintiffs that have executed their grant agreements, there are no pending or outstanding dates that prohibit or would lead to the cessation of previously obligated grant monies. I also reviewed the statements set forth in pages 7, 11 and 12 of Plaintiffs' memorandum in support of their motion to extend the preliminary injunction. Notwithstanding my knowledge and experience in the operation of these programs, it is not possible to respond to the non-specific factual assertions or their alleged "limitation" on their programs. Nonetheless, as to certain allegations set forth on these pages, we note the following:

- *City of Sunnyvale, CA*: This plaintiff sent an email to HUD, on August 25, 2025, which merely noted they revised their action plan. The field office issued their grant agreement on September 15, 2025, which included the challenged conditions. At this point, HUD awaits the grantee's returned signed agreement to process.
- *City of Corvallis, OR*: There were no executive order ("EO") related flags to their action plan that it submitted to HUD on June 30, 2025. Accordingly, HUD did not send them any notice for EO related items. The city did have technical compliance issues with their plan (i.e., unrelated to the conditions being challenged) but once they corrected those technical issues, the field office issued their grant agreement on September 18, 2025. At this point, HUD awaits the grantee's returned signed agreement to process.
- *City of Santa Clara, CA*: There were no executive order ("EO") related concerns to their action plan that it submitted to HUD on July 14, 2025. Accordingly, HUD did not send them any notice for EO related items. The city also had technical compliance issues with their plan (i.e., unrelated to the conditions being challenged) but once they corrected those technical issues, the field office issued their grant agreement on September 18, 2025. At this point, HUD awaits the grantee's returned signed agreement to process.

23. As noted above, to the extent grant funds are obligated to Additional Plaintiffs, they are fully available to them. In administering its programs, HUD abides by all injunctive relief.

Executed on this 19th day of March 2026 in Washington, D.C.

Claudette Fernandez
Digitally signed by Claudette Fernandez
Date: 2026.03.19 16:17:46 -04'00'

Claudette Fernandez
General Deputy Assistant Secretary
Office of Community Planning & Development
U.S. Department of Housing & Urban Development

# Exhibit A

| Complaint | Municipality | HUD Programs (red font indicates add'l CPD programs after CPD validated) | Funding | MLK County plaintiff? | CPD validation/check; additional Notes | Grant Agreement Status (Date Executed/Modified Y/N | Agreement Modified by Grantee (Y/N) |
|---|---|---|---|---|---|---|---|
| OC | Fresno, CA | CDBG, ESG, HOME, HOPWA | $11.7 million (CPD) | NO | Yes; 2025 allocation accurate | HOME - Contracted 9/23/25<br>CDBG+ESG+HOPWA - Contracted 9/24/25 | Y (all) |
| OC | County of Sacramento, CA | CoC, CDBG and ESG, HOME | $277,500 ESG, $363,000 CDBG | NO | No, Funding is not accurate. Sacramento receives CDBG, HOME, ESG totalling over $6 million in FY25. | CDBG+ESG+HOME - Contracted 9/19/25<br>CoC - Contracted 6/3/25 (1 grant) and 7/1/25 (1 grant) | N |
| OC | Eureka, CA | CDBG and CoC | | YES | Not a direct recipient of CPD's formula programs. They have no active awards in CPD's Line of Credit systems. | N/A | N/A |
| OC | Saint Paul, MN | CDBG, HOME, ESG,Congressional directed earmark funding. Rescue Plan funds | $1.1 million ESG funds, and $2.6 million Congressionally Directed Spending. $45.1 million: $27.1 million CDBG funds, $7.2 million HOME program, $5.7 million HOME– American | NO | No, Funding is not accurate. Their FY25 allocations around $6.75 million; total open awards ~$77 million) | CDBG+ESG+HOME - Contracted 9/24/25<br>CPF - Contracted 3/18/25 (3 FY24 grants); 12/11/24 (1 FY23 grant) | CDBG/ESG/HOME - Y<br>CPF - N |
| OC | Monroe County - | CDBG, HOME, and ESG grants | $3.1 million: $1.8 million CDBG, Section 108 loan payments, $1.1 million HOME, CHDO housing development, Tenant-Based Rental Assistance, and administration and compliance, $164,000 in its ESG | Yes | Yes; 2025 funding is accurate | CDBG+ESG+HOME - Contracted 9/25/25 | Y (all) |
| FAC | Marin County | CoC, CDBG and HOME | $5 million annually; $1.5 million CDBG , $700,000 in HOME | Yes | Specific numbers for CDBG and HOME are accurate, but this does not total $5 million; County may receive additional CPD funds as a subrecipient of the state of CA | CDBG+HOME - Contracted 9/26/25<br>CoC - Not contracted as of 3/17/26 (with Grantee to sign) | CDBG/HOME - Y<br>CoC - N/A |
| FAC | City of Alameda . | CDBG and HOME | $2 million in CDBG funds annually $547,060 annually in HOME | County not City | No, Funding is not accurate. City received around $1 million for CDBG only in FY25. | CDBG - Contracted 11/24/25 | Y |
| FAC | Redwood City | CDBG and HOME | $6.2 million: $2 million CDBG, $3 million HOME grants | NO | Funding the City receives total $650k CDBG and $234k HOME in FY25; open balance for CDBG is $1.9 million, for HOME is $2.7 million. | CDBG+HOME - Contracted 12/15/25 | Y (all) |
| FAC | County of San Diego | CDBG, ESG, HOME, and HOPWA | $4,283,065 in CDBG funding and $371,576 in ESG funding, $2,870,446 in HOME funds , $6,369,845 in HOPWA , $631,547 in ESG | Yes | Yes; 2025 funding is roughly accurate. They are slightly but not meaningfully off from FY25 allocations. | HOME - Contracted 9/25/25<br>CDBG+ESG+HOPWA - Contracted 12/11/25 | HOME - Y<br>CDBG/ESG/HOPWA - N |
| SAC | Atlanta | CDBG, HOME, ESG, HOPWA | Y2023, FY2024, and FY2025 combined, $6.5 million in HOME , $45 million in HOPWA , Lead Hazard Reduction Grant Program $1,753,802.27 for FY2024 and $1,857,651 FY2025. $6,811,222 in CDBG funds for FY2024, $6,971,235 for FY2023, and $6,602,130 for FY2025, $615,584 in ESG funds in FY2023, $612,698 in FY2024, and $598,623 in FY2025 | NO | CPD formula numbers are accurate. We are unsure about Lead Hazard grant as that is not a CPD program. | CDBG+ESG+HOME+HOPWA - Contracted 2/12/26 | N (all) |
| SAC | Beaverton | CDBG, CPF | $679,728 CDBG, $3 million Community Project Funding | NO | Yes; funding is accurate. | CDBG - Transmitted to grantee 9/18/25, awaiting grantee signature to be contracted<br>CPF - Contracted 5/22/23 (1 FY22 grant); 9/25/23 (1 FY22 grant) | CDBG - N/A<br>CPF - N/A (FY22 grant conditions not impacted by this case) |
| SAC | Corvallis | CDBG and HOME | $343,303.22 HOME Investments Partnership Program , $581,812.00 CDBG | NO | Yes; 2025 allocation accurate. | CDBG+HOME - Transmitted to grantee 9/18/25, awaiting grantee signature to be contracted | N/A |
| SAC | Hillsboro | CDBG | CDBG $681,847. | NO | Yes; 2025 allocation accurate. Hillsboro, OR. | CDBG - Transmitted to grantee 9/18/25, awaiting grantee signature to be contracted | N/A |
| SAC | Mountain View | CDBG and HOME | FY 25-26 $617,916 CDBG funds, and $604,684 for FY 24-25, $610,539 for FY 23-24, $624,777 for FY 22-23, and $609,773 for FY 21-22 with varying remaining balances. HOME $230,385.94 for FY 25-26, $237,782.16 for FY 24-25, $285,869 for FY 23-24, $297,598 for FY 22-23, $271,350 for FY 21-22, $273,103 for FY 20-21, and $263,732 for FY 19-20, HOME Investment Partnerships Program American Rescue Plan $983,655 and the Economic Development Initiative Community Project Funding $1,616,279 | NO | Yes; 2025 allocation accurate | CDBG+HOME - Contracted 2/17/26 | Y (all) |
| SAC | San Mateo | CDBG | CDBG $766,315 | Yes | Yes; 2025 allocation accurate | CDBG- Transmitted to grantee 9/12/25, awaiting grantee signature to be contracted | N/A |
| SAC | Santa Clara | CDBG and HOME | FY2025/2026, $1,019,135 CDBG grants and $356,007 HOME grants. | Yes | Yes; 2025 allocation accurate | CDBG+HOME- Transmitted to grantee 9/17/25, awaiting grantee signature to be contracted | N/A |
| SAC | Santa Cruz | CDBG and HOME | $3,229,216 CDBG , $248,821 ESG, and $1,382,561 HOME | Yes | 1. Yes. 2. No. Santa Cruz, CA received $527,892 (CDBG), $255,978.30 (HOME) in FY25, no ESG | CDBG+HOME - Contracted 12/22/25 | Y (all) |
| SAC | Stockton | CDBG, HOME, ESG | | No | Yes; $3,229,216 (CDBG), $1,382,561.08(HOME), $284,821 (ESG) | CDBG+ESG+HOME - Contracted 9/24/25 | N (all) |
| SAC | Sunnyvale | CDBG and HOME | $1,038,891 CDBG and $383,900 HOME | No | Yes; 2025 allocation accurate | CDBG+HOME - Transmitted to grantee 9/15/25, awaiting grantee signature to be contracted | N/A |
| SAC | Vacaville | CDBG, HOME, FSS | $2,638,400 CDBG, $500,000 HOME Investment Partnership Program, $312,654 Family Self Sufficiency (FSS) Program. | No | No, Funding is not accurate.Vacaville, CA received only $527,680 in 2025 CDBG and receives no other formula programs. Note, FSS is not a CPD program. | CDBG - Transmitted to grantee 9/29/25, awaiting grantee signature to be contracted | N/A |
| SAC | Los Angeles County | CDBG, HOME, ESG | ESG ($1,725,321 for FY 2025-26), CDBG ($19,508,115 for FY 2025-26), and HOME Investment Partnerships ($7,427,175.63 for FY 2025-26). | City not County | Yes; 2025 allocation accurate | CDBG+ESG+HOME - Contracted 9/23/25 | N (all) |
| SAC | Santa Barbara County | CDBG and HOME | $1,177,513 CDBG , $1,073,695 HOME | No | Yes; 2025 allocation accurate | CDBG+HOME - Transmitted ot grantee 9/25/25, awaiting grantee signature to be contracted | N/A |