UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CITY OF FRESNO, *et al.*,

Plaintiffs,

v.

SCOTT TURNER, *et al.*,

Defendants.

Case No. 3:25-cv-07070-RS

**DECLARATION OF DAVID F. CUSHING**

The Honorable Richard Seeborg

I, DAVID F. CUSHING, pursuant to 28 U.S.C. section 1746, hereby declare as follows:

1. I have been employed by the U.S. Department of Transportation ("DOT"), Federal Aviation Administration ("FAA"), since September 30, 1996. Currently, I am the manager of the Airports Financial Assistance Division in the Office of Planning and Programming for FAA's Office of Airports in Washington, D.C. I make this declaration based upon personal knowledge and information made known to me in the course of my duties.

2. As the manager of the FAA Office of Airports' Financial Assistance Division, my duties and responsibilities include the administration of FAA's Federal financial assistance programs as well as providing FAA guidance and technical assistance regarding the administration of such FAA financial assistance.

3. FAA currently administers two primary airport development financial assistance programs: the Airport Improvement Program (AIP), 49 U.S.C. § 47101 *et seq.*, and programs authorized under the Infrastructure Investment and Jobs Act (IIJA), P.L. 117-58 (2021). The FAA provides grants under both programs directly to airport grant recipients, known as airport sponsors.

4. Depending on the grant program, some grants are discretionary, while others are "formula" grants, in which Congress designates specific amounts to be made available for certain aviation projects based on a statutory formula through apportionment.

5. While the two financial assistance programs overlap regarding eligibility of specific airport owning entities; certain airport development projects; and overall financial implementation requirements, each is subject to separate statutory requirements. For example, funds made available by the FAA as part of AIP under subchapter I of chapter 471 or chapter 475 of title 49, United States Code, are not subject to the requirement to issue a Notice of Funding Opportunity. 49 U.S.C. § 47101 note.

6. IIJA comprises both discretionary and formula grant programs. Title VIII of Division J of the IIJA provides $25 billion for the National Airspace System. Five billion dollars of the IIJA funds are administered by FAA's Air Traffic Organization. FAA's Office of Airports (ARP) administers the remaining approximately $20 billion in funds for grants supporting airport infrastructure, terminal development, including multimodal terminal development and on-airport rail access projects, and airport owned control towers. Of the ARP grant amount, $1 billion annually ($5 billion total) is for the Airport Terminal Program (ATP); $20 million annually ($100 million total) is for the Airport-owned FAA Contract Tower (FCT) Program. The remainder of the $20 billion dollars is for formula grants under the Airport Infrastructure Grant (AIG) grant program.

7. The IIJA directs funds that are unobligated at the end of the fourth fiscal year after the funds first were made available under the Airport Infrastructure grant program to be converted to a new competitive funding program for the fifth and final fiscal year of availability. Of those amounts converted, the first $100 million will be made available to the IIJA's Airport-owned FAA Contract Tower Program grant program. Funds exceeding $100 million will then be

awarded through the new competitive grant program, called the Airport Infrastructure Grant Funding Reallocation Program (AFR).

8. In general, to apply for discretionary grants under IIJA, an eligible applicant must submit an application in response to a Notice of Funding Opportunity (NOFO). *See, e.g.*, 89 FR 22468 (4/01/2024). A NOFO describes the overall grant program, including the Assistance Listing Number (ALN), the grant program's objectives, which largely reflect the program's statute, and the grant program's policy priorities. The NOFO establishes what applicants need to do to apply for the fiscal year funds advertised in the NOFO; how FAA will evaluate applications for such funds; and FAA's priorities for funding grant awards made available under that specific NOFO for a particular grant program. It also provides a general overview of the types of noteworthy terms and policy requirements that will be in the grant agreement.

9. AIP was established by the Airport and Airway Improvement Act of 1982 (P.L. 97-248). It is a hybrid non-competitive discretionary program (49 U.S.C. § 47115) and formula grant program (49 U.S.C. § 47114) that provides federal funding for airport infrastructure and equipment projects across the United States. AIP grants support airport capital development projects such as the construction and improvement of runways, taxiways, and lighting systems, as well as the acquisition of necessary equipment. Funds obligated for AIP are drawn from the Airport and Airway Trust Fund, which is supported by user fees, fuel taxes, and other aviation-related sources.

10. Eligible airport sponsors are entitled to a certain amount of AIP funding each year, based primarily on passenger and cargo volume. If their capital project needs exceed their available entitlement funds, then the FAA can supplement their entitlements with discretionary funding. For large and medium primary hub airports, the AIP grant covers 75 percent of eligible costs (or 80 percent for noise program implementation). For small primary, reliever,

and general aviation airports, the AIP grant covers a range of 90-95 percent of eligible costs, based on statutory requirements.

11. The demand for AIP funds exceeds the availability. FAA bases the distribution of these funds on national priorities and objectives, focusing on safety projects as our highest priority. AIP funds are typically first apportioned into major entitlement categories of airports such as primary, cargo, and general aviation. The remaining funds fill a noncompetitive discretionary fund. FAA's authorizing statute sets aside certain funding by formula into a noncompetitive discretionary fund for specific purposes such as noise and environmental projects as defined by FAA's authorizing statute. The authorizing statute distributes remaining funds according to a national prioritization formula.

12. The period of availability of primary and cargo entitlements is three years total (current year and 2 years) while nonprimary entitlements remain available for 4 years total (current year plus 3 years), as set forth in 49 U.S.C. § 47117(b).

13. DOT, including FAA, has been permanently enjoined from implementing or enforcing the immigration enforcement condition. *California v. Duffy*, 1:25-cv-208-JJM-PAS, ECF No. 74 (D.R.I.) (Nov. 4, 2025). Accordingly, FAA does not include any grant conditions requiring cooperation with federal civil immigration enforcement in any grant agreements presented to recipients for signature on or after November 4, 2025. To the extent any such conditions were included in any grant agreement that was executed or presented for signature prior to November 4, 2025, FAA will not enforce those conditions, the conditions have no legal effect, and the conditions should be considered stricken from the agreements.

14. City of Atlanta, GA: To the best of my knowledge and belief, the City of Atlanta is an FAA airport sponsor. The City of Atlanta owns and operates Hartsfield-Jackson Atlanta International Airport (ATL). In FY 2025, the City of Atlanta was not awarded any grants by

the FAA. On March 6, 2026, the City of Atlanta submitted pre-applications for four FY 2026 AIP/AIG grants. Three of the preapplications concerned Reconstruction of Runway 9L/27R: one for $30,685,345; one for $42,281,574; and one for $30,780,000. One of the preapplications concerned Central Passenger Terminal Complex Restroom Enhancement Phases 8&9 for $25,680,000. A preapplication is not required before submitting a formal grant application, nor is it a commitment of Federal financial assistance. In FY 2026, the City of Atlanta has not submitted a formal grant application, nor does it currently have any grants in process.

15. County of Santa Barbara, CA: To the best of my knowledge and belief, the County of Santa Barbara is an FAA airport sponsor. The County of Santa Barbara owns and operates the Santa Ynez Valley Airport (IZA). In FY 2023, the County of Santa Barbara was awarded AIP Grant 3-06-0243-023-2023 for $129,222. FAA and the County of Santa Barbara executed a grant agreement, which did not include any of the challenged conditions, and the funds have been paid in full to the County of Santa Barbara. In FY 2025, the County of Santa Barbara was awarded two grants: AIP Grant 3-06-0243-024-2025 to Reseal/Resurface Runway 8/26 and Reseal/Resurface Taxiway for $332,595 and AIG Grant 3-06-0243-025-2025 to Reseal/Resurface Apron for $455,778. FAA and the County of Santa Barbara executed a grant agreement, which did include the discrimination condition and follow executive orders condition. In FY 2026, the County of Santa Barbara does not currently have any grants in process.

16. County of Los Angeles, CA: To the best of my knowledge and belief, the County of Los Angeles is an FAA airport sponsor. The County of Los Angeles owns and operates five airports eligible for FAA airport grants: Brackett Field Airport (POC), Compton/Woodley Airport (CPM), San Gabriel Valley Airport (EMT), General William J. Fox Airfield (WJF),

and Whiteman Airport (WHP). In FY 2025, the County of Los Angeles was awarded three grants: AIG Grant 3-06-0049-017-2025 to Reseal/Resurface Apron and Reseal/Resurface Taxiway at CPM for $300,388, AIG Grant 3-06-0068-023-2025 to Reseal/Resurface Apron at EMT for $1,497,535, and AIP Grant 3-06-0118-023-2025 to Reconstruct Apron at WJF for $589,433. With respect to AIG Grant 3-06-0049-017-2025 to Reseal/Resurface Apron and Reseal/Resurface Taxiway at CPM, the County was originally awarded $1,156,319, but the grant amount was subsequently reduced by $855,931 at the County's request. FAA and the County of Los Angeles executed a grant agreement for each award. The grant agreements included the discrimination condition and follow executive orders condition. In FY 2026, the County of Los Angeles does not currently have any grants in process.

17. City of Salem, OR: To the best of my knowledge and belief, the City of Salem is an FAA airport sponsor. The City of Salem operates McNary Field (SLE). In FY 2025, the City of Salem was awarded three grants: AIG Grant 3-41-0055-031-2025 to Construct Perimeter Fencing and Reconstruct Apron for $1,115,417, AIP Grant 3-41-0055-032-2025 to Rehabilitate Taxiway for $510,809, and AIP Grant 3-41-0055-034-2025 to Construct Perimeter Fencing and Reconstruct Apron for $350,989. FAA and the City of Salem executed a grant agreement for each award. The grant agreements included the discrimination condition and follow executive orders condition. In FY 2026, the City of Salem has three grant applications in process: AIP Grant 3-41-0055-035-2026 to Expand Terminal for $850,000, AIG Grant 3-41-0055-036-2026 to Update Airport Master Plan for $124,678, and AIG Grant 3-41-0055-038-2026 to Rehabilitate Taxiway for $200,000. FAA has not yet awarded any funding associated with these applications.

18. City of Corvallis, OR: To the best of my knowledge and belief, the City of Corvallis is an FAA airport sponsor. The City of Corvallis operates Corvallis Municipal Airport (CVO). In

FY 2022, the City of Corvallis was awarded ARPA Grant 3-41-0014-026-2022 for $59,000. In FY 2025, the City of Corvallis was awarded two grants: AIG Grant 3-41-0014-028-2025 to Construct Taxilane for $255,550 and AIG Grant 3-41-0014-029-2025 to Reseal Taxiway Pavement for $85,500. FAA and the City of Corvallis executed a grant agreement for each award. The grant agreements included the discrimination condition and follow executive orders condition. In FY 2026, the City of Corvallis has two grant applications in process: AIP Grant 3-41-0014-030-2026 to Reseal Taxiway Pavement for $600,000 and AIG Grant 3-41-0014-031-2026 to Construct Taxilane for $245,950. FAA has not yet awarded any funding associated with these applications.

19. General End of Year Process Summary: To the best of my knowledge and belief, the Federal FY ended on September 30, 2025. Each year, depending on the grant program, FAA performs actions to ensure the timely closeout and expenditure of funds per statutory and administrative requirements. Under AIP, a single-year grant program, FAA will obligate (put under award) all funds available for grants that were originally appropriated in the FY. For FY 2025, FAA obligated $9.079B.

20. To the best of my knowledge and belief, in early September 2026, FAA will begin financial end-of-year processing. This means FAA will work with airports to finalize the remaining grant offers and obligate those funds. For any grant offers that do not go forward for various reasons (e.g., an airport withdraws its application), FAA must withdraw the grant offer, protect the funds as allowed under statute, and redistribute to other projects to ensure all funds are awarded in the given year. The FAA's grant accounting system typically will shut down for the end-of-year reconciliation the week of September 21, 2026 (estimated), after which no further grant obligations can be processed. This ensures FAA can make final

adjustments, issue Congressional notifications as required by law, and have grant offers signed before the FAA's grant accounting system shuts down for end-of-year reconciliation.

21. To the best of my knowledge and belief, for funds under the IIJA, ATP funds that were awarded as part of a competitive discretionary process can be held pending the outcome of litigation. AIG formula funds originally made available in FYs 2024-2026 can also be held through FY 2027. However, under the AIG Funding Reallocation (AFR) program, AIG formula funds originally made available for FY 2023 will be reallocated at the end of the fourth year (FY 2026) and become unavailable as entitlement funds to those airports to which they were originally allocated.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge. Executed on March 19, 2026.

DAVID F CUSHING Digitally signed by DAVID F CUSHING
Date: 2026.03.19 15:37:33 -04'00'

DAVID F. CUSHING