CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
JEVECHIUS D. BERNARDONI (CABN 281892)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7224
Facsimile: (415) 436-6748
jevechius.bernardoni@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY OF FRESNO, *et al.*, | Case No. 3:25-cv-07070-RS |
| Plaintiffs, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER** |
| v. | |
| SCOTT TURNER, *et al.*, | The Honorable Richard Seeborg |
| Defendants. | |

**TABLE OF CONTENTS**

I.    Introduction ................................................................................................................ 1

II.   City Of Saint Paul, County Of Marin, City Of Santa Cruz, County Of Los Angeles, County Of Sacramento, And County Of San Diego Are Impermissibly Splitting Their Claims ............... 1

    A.    *CCSF* Involves Three Identical Plaintiffs; Challenges The Same Immigration-Related Grant Conditions; And Seeks To Enjoin HUD, DOT, And HHS From Imposing Those Same Conditions In The Same Grant Programs ..................................................... 1

        1.    In *CCSF*, Plaintiffs Invoke The Same Grant Programs And The Same Immigration-Related Conditions By The Same Agencies As This Case ............. 2

        2.    *CCSF* Involves The Same Parties Or Their Privies ................................................ 4

    B.    *King County* Involves Identical Claims Against Identical Defendants, Involving Identical Grant Conditions By An Entity Created By County Of Los Angeles ................ 5

    C.    *San Diego Housing Authority* Involves The Same Claims, The Same HUD Grant Conditions, And Is Being Litigated By Two Closely Related Entities .............................. 8

III.  Venue Is Improper Here For Claims Against HHS, EPA, FTA, FAA, FRA, And NHTSA .......... 9

IV.   Transfer To The Western District Of Washington Is Proper Under The First-To-File Rule ....... 11

V.    In The Alternative, Transfer To The District Court For The District Of Columbia Is Proper Under 28 U.S.C. § 1404(a) .................................................................................................. 12

VI.   The Court Lacks Article III Jurisdiction Over The Claims Against EPA ................................... 13

VII.  Conclusion .................................................................................................................. 15

## TABLE OF AUTHORITIES

### CASES

*Aero Advanced Paint Tech., Inc. v. Int'l Aero Prods., LLC.*, 351 F. Supp. 3d 1067 (S.D. Ohio 2018) ... 11

*Behring Regional Ctr. LLC v. Wolf*,
No. 20-cv-09263-JSC, 2021 WL 1164839 (N.D. Cal. Mar. 26, 2021) .......................................... 11

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ................................................................. 15

*Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321 (9th Cir. 1995) ................................... 6

*Consumer Financial Protection Bureau v. Nationwide Biweekly Administration, Inc.*,
No. 15-cv-02106-RS, 2015 WL 4463790 (N.D. Cal. July 21, 2015) .......................................... 13

*Ecological Rights Found. v. United States EPA*,
No. 19-cv-04242-RS, 2019 WL 5295124 (N.D. Cal. Oct. 19, 2019) .......................................... 13

*FBI v. Fikre*, 601 U.S. 234 (2004) ....................................................................................... 15

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
82 F.4th 664 (9th Cir. 2023) ................................................................................................ 15

*Gonzalez v. Unitedhealth Grp., Inc.*, No. 19-cv-00700, 2020 WL 2992174 (W.D. Tex. June 3, 2020) .. 11

*Google Inc. v. Rockstar Consortium U.S. LP*,
No. 13-cv-5933-CW, 2014 WL 1571807 (N.D. Cal. Apr. 17, 2014) .......................................... 11

*Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303 (D.D.C. 2015) ..................................... 13

*Hermanson v. Lenovo Grp. Ltd.*, No. 23-cv-05890-JSW, 2024 WL 819566 (N.D. Cal. Feb. 27, 2024) . 11

*Lamont v. Haig*, 590 F.2d 1124 (D.C. Cir. 1978) ................................................................... 10

*Mendoza v. Amalgamated Transit Union International*, 30 F.4th 879 (9th Cir. 2022) ..................... passim

*Murthy v. Missouri*, 603 U.S. 43 (2024) ................................................................................ 14

*Nat'l Ass'n of Diversity Officer s in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Feb. 6, 2026) ......... 12

*Preiser v. Newkirk*, 422 U.S. 395 (1975) ............................................................................... 15

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237 (1952) ............................................... 15

*SRH Holdings, LLC v. Gov't Emps. Ins. Co.*,
No. 23-cv-10325, 2023 WL 4706176 (D. Mass. July 24, 2023) ................................................. 11

*Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381 (1940) .................................................... 7

*Taylor v. Sturgell*, 553 U.S. 880 (2008) .............................................................................. passim

*Tex. Ins. Co. v. Ares Ins. Managers LLC*,
No. 23-cv-01473, 2023 WL 8237113 (W.D. Wash. Nov. 28, 2023) .......................................... 11

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) ............................................................................. 4

*Tyler v. Travelers Commercial Ins. Co.*, 499 F. Supp. 3d 693 (N.D. Cal. 2020) ................................. 5, 11

*United States v. Wanland*, 830 F.3d 947 (9th Cir. 2016) ................................................................... 5

*Urbain v. Knapp Bros. Mfg. Co.*, 217 F.2d 810 (6th Cir. 1954) ............................................... 11

*West v. Sec'y of Dep't of Transp.*, 206 F.3d 920 (9th Cir. 2000) ................................................ 15

*Wyles v. Sussman*, 661 F. App'x 548 (10th Cir. 2016) ......................................................... 6

**STATUTES**

28 U.S.C. § 1391(e) ............................................................................................................ 9, 10

28 U.S.C. § 1404(a) ............................................................................................................ 1, 12

**OTHER AUTHORITIES**

Executive Order 14,218 ............................................................................................................ 2

Restatement (Second) of Judgments § 24 ............................................................................... 6

**RULES**

Federal Rule of Civil Procedure 12(b)(3) ............................................................................... 12

Federal Rule of Civil Procedure 20(a) ................................................................................ 10, 12

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER
No. 3:25-cv-07070-RS                                              iii

## I.      Introduction

This case raises the question of whether Plaintiffs can simultaneously pursue overlapping federal court actions to challenge identical federal grant conditions imposed by the same federal agencies/components.  Under the claim-splitting doctrine, the answer is no.  The Court should not permit Plaintiffs to litigate their duplicative grant conditions claims here and should dismiss all claim-splitting Plaintiffs or, in the alternative, transfer this case under the first-to-file rule or under 28 U.S.C. § 1404(a).

Plaintiffs' opposition (ECF No. 77, "Opp.") opens with the observation that the instant motion "omits . . . any meaningful discussion of the merits."  That misses the point of this threshold motion.  Defendants intend to address the merits in the proper forum, exercising responsible utilization of limited judicial resources.  However, the significance of the standing, venue, and other procedural concerns posed here cannot be ignored.  Simply stated, "[c]onsiderations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously," *WMATA v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980), and the claim-splitting doctrine thus strongly counsels against allowing Plaintiffs to pursue this lawsuit in the Northern District of California.  The Opposition also fails to rebut Defendants' arguments regarding the first-to-file rule, Section 1404(a) transfer, dismissal for improper venue, and dismissal for lack of Article III jurisdiction.

## II.     City Of Saint Paul, County Of Marin, City Of Santa Cruz, County Of Los Angeles, County Of Sacramento, And County Of San Diego Are Impermissibly Splitting Their Claims

Plaintiffs argue that "Defendants fail to establish both elements" of the *Mendoza v. Amalgamated Transit Union International*, 30 F.4th 879 (9th Cir. 2022), claim-splitting test. Opp. at 8.  Under *Mendoza*, a lawsuit cannot proceed if it involves "(1) the same causes of action as the first; and (2) the same parties or their privies."  *Mendoza*, 30 F.4th at 886.  Plaintiffs' argument that their multiple overlapping lawsuits fall outside the purview of the claim-splitting doctrine is incorrect both factually and legally.

### A.    *CCSF* Involves Three Identical Plaintiffs; Challenges The Same Immigration-Related Grant Conditions; And Seeks To Enjoin HUD, DOT, And HHS From Imposing Those Same Conditions In The Same Grant Programs

City of Saint Paul, County of Marin, and City of Santa Cruz contend that *City and County of San Francisco, et al. v. Trump, et al.*, No. 3:25-cv-01350-WHO (N.D. Cal.) ("*CCSF*")—a case in which each of those municipalities unquestionably is a direct plaintiff—does not qualify for the claim-splitting bar.

But Plaintiffs' factually inaccurate and legally untenable interpretation of the doctrine should be rejected.

**1.      In *CCSF*, Plaintiffs Invoke The Same Grant Programs And The Same Immigration-Related Conditions By The Same Agencies As This Case**

For the first prong of *Mendoza* (*i.e.*, whether the cases involve "the same causes of action"), the Opposition correctly acknowledges that *CCSF* challenges "executive orders regarding 'sanctuary jurisdictions' *and related immigration conditions*." Opp. at 1 (emphasis added); *see also id*. at 9 (recognizing that *CCSF* involves challenges to "the efforts of agencies to impose immigration conditions based on those orders"). Plaintiffs' admissions easily satisfy the first prong of *Mendoza*. Simply stated, *CCSF* and this case both involve challenges to the same immigration-related conditions in federal grant funding, and the Court need look no further than Plaintiffs' admissions for the first prong of the claim-splitting test to apply.

Nevertheless, Plaintiffs attempt to distinguish *CCSF* and this case, arguing that the two cases "do not arise out of the same transactional nucleus of facts" because "this case is not directly challenging any executive order." Opp. at 9. That is a red herring. Even assuming the case before this Court does not challenge Executive Order 14,218 directly, Plaintiffs admit that *both* cases challenge the same immigration-related conditions on federal funding that stemmed from that Executive Order (Opp. at 1 & 9). Plaintiffs cannot evade the claim-splitting doctrine by pointing to nuanced differences while ignoring the overwhelming commonalities between the two cases.[1] In any event, Plaintiffs fail to accurately characterize the pleadings in these two cases, both of which implicate Executive Order 14,218. *Compare* ECF No. 68 ("SAC") ¶ 340 *with CCSF*, ECF No. 193 ¶¶ 3, 10, 341-43, 395-96, 399.

Plaintiffs similarly argue that this case involves a different transactional nucleus of facts because "Plaintiffs here challenge discrete agency actions taken by the named defendant agencies . . . [which] consists of agency directives, guidance, and funding conditions imposed by those agencies, not the issuance or validity of any executive order." Opp. at 9. That argument cannot be squared with the factual

---

[1] The 687 distinct references to "fund," "funds," "funded," or "funding" in the *CCSF* operative complaint demonstrate that *CCSF* is not limited to a challenge to Executive Orders (as Plaintiffs appear to contend), but rather that its motivating purpose is for local jurisdictions to receive federal grant funding from agencies without the same immigration-related grant conditions that Plaintiffs challenge in the duplicative lawsuit before this Court.

allegations in the operative complaints in *CCSF* and this case, as both invoke and challenge the *exact same* agency directives, guidance, and funding conditions. *See CCSF*, ECF No. 193 ¶ 395 (alleging that HUD "has issued immigration-related grant conditions for its Continuum of Care program"); ¶ 396 (invoking immigration conditions in HUD's "Community Development Block Grant funds"); ¶¶ 397-99 (claiming that DOT, FTA, FRA, FAA, and FHWA have incorporated "immigration-specific terms" into "specific grant programs and grant agreements that some Plaintiffs have received"). The grant programs, agency directives, guidance, and funding conditions alleged in *CCSF* are some of the *identical* grant programs, agency directives, guidance, and funding conditions at issue in this case. *See* SAC ¶ 32 (County of Marin's HHS grant funding); ¶ 33 (County of Marin's CoC and CDBG funding from HUD); ¶¶ 76-77 (City of Santa Cruz's CDBG and HOME funding from HUD and grant funding from DOT, FRA, and FHWA); ¶¶ 21-22 (City of Saint Paul's CDBG, HOME, and ESG funding from HUD and DOT funding).

And if there is any doubt that these two cases involve the same transactional nucleus of facts, the relief granted by Judge Orrick's preliminary injunction orders unambiguously demonstrates that the same facts give rise to both complaints. Indeed, if the *CCSF* lawsuit were not intended to touch "agency directives, guidance, and funding conditions imposed by those agencies" and instead sought solely to challenge immigration-related Executive Orders, Judge Orrick would have had no occasion to enjoin "*any* . . . agency directive" that purports to attempt to cut off federal funding for local governments that meet the definition of a "sanctuary" jurisdiction. Yet that is precisely what occurred in *CCSF*. *See CCSF*, No. 136 & 225 (emphasis in original). The injunctions issued by Judge Orrick indisputably cover DOT, HHS, and HUD, and they expressly enjoin HUD from imposing immigration-related conditions in the same grant programs that County of Marin, City of Santa Cruz, and City of Saint Paul challenge here.

In short, Plaintiffs' assertion that *CCSF* and the instant case "do not 'arise out of the same transactional nucleus of facts" (Opp. at 9) does not accurately reflect these disputes. City of Saint Paul, County of Marin, and City of Santa Cruz's claims in *CCSF* and here are expressly predicated on *identical* grant programs, *identical* agency directives and guidance, and *identical* immigration-related grant conditions required by HUD, DOT, FRA, FHWA, and HHS. Any plausible interpretation of these lawsuits leads to the unavoidable conclusion that they arise out of the same transactional nucleus of facts.

**2.    *CCSF* Involves The Same Parties Or Their Privies**

With respect to the second prong of the *Mendoza* test (*i.e.*, whether the cases involve the same parties or their privies), Plaintiffs acknowledge that City of Saint Paul, County of Marin, and City of Santa Cruz are plaintiffs in both cases, but they nevertheless contend that the claim-splitting doctrine does not apply because "HHS, HUD, and DOT are *not* defendants in *CCSF*." Opp. at 10-11 (emphasis in original). This assertion ignores the operative allegations of the *CCSF* complaint and the *CCSF* plaintiffs' actions and requests for relief. To ignore the role of HHS, HUD, and DOT in *CCSF* would create an untenable and unwarranted exception to the claim-splitting doctrine. An examination of the *CCSF* complaint illustrates that these two lawsuits seek the same relief against the same entities.

First, City of Saint Paul, County of Marin, and City of Santa Cruz included allegations about HHS, HUD, and DOT and their federal grant programs in the *CCSF* complaint, clearly indicating that they sought to implicate those agencies. *See CCSF*, ECF No. 193 ¶ 551 (City of Saint Paul's HUD and DOT grant funding); ¶ 643 (County of Marin's HHS, HUD, and DOT grant funding); *see also id.* ¶¶ 395-99 (allegations regarding agency actions implementing various grant conditions).

Second, City of Saint Paul, County of Marin, and City of Santa Cruz sought to bind HHS, HUD, and DOT to an injunction in *CCSF* by repeatedly filing motions for preliminary relief seeking court orders instructing "*all federal departments and agencies* . . . that they may not take steps to withhold, freeze, or condition funds to any jurisdiction having the policies described in the preceding paragraph[.]" *CCSF*, ECF Nos. 61-1, 128-3 (emphasis added).[2]

In sum, City of Saint Paul, County of Marin, and City of Santa Cruz alleged in the *CCSF* matter that they participate in the exact same grant programs, with the exact same agencies (*i.e.*, HUD, HHS, and DOT), with the exact same immigration-related conditions that they now seek to litigate here. And City of Saint Paul, County of Marin, and City of Santa Cruz then asked Judge Orrick to issue injunctive relief against non-parties HUD, HHS, and DOT; Judge Orrick did so. Refusing to apply the claim-splitting doctrine under these facts would create a loophole that would swallow the rule. Plaintiffs could make

---

[2] Relatedly, City of Saint Paul, County of Marin, and City of Santa Cruz suggest that *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), prevents courts from issuing injunctive relief against non-parties (*see* Opp. at 2 & 4), yet that is the exact type of third-party relief that they sought and obtained in *CCSF*.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER
No. 3:25-cv-07070-RS                    4

overbroad allegations about non-parties in complaints (preventing the non-parties from defending themselves), obtain injunctions against the non-parties as a result, file a duplicative lawsuit against those non-parties involving the same transaction, and then prevent those non-parties from arguing that the subsequent lawsuit is barred under preclusion principles.  That is the outcome Plaintiffs now advocate.

In a similar vein, Plaintiffs assert that President Trump—the defendant in *CCSF*—is not a privy for HUD, HHS, and DOT in this case because it is "folly [to treat] the government as a single entity in which representation by one government agent is necessarily representation for all segments of the government."  Opp. at 11 (quoting *United States v. Wanland*, 830 F.3d 947, 956 (9th Cir. 2016)).  If this is "folly," it is a folly of City of Saint Paul, County of Marin, and City of Santa Cruz's own making because *they* treated President Trump as a privy for HUD, HHS, and DOT in *CCSF*.  Those Plaintiffs sued President Trump as a proxy for the entire executive branch; declined to name HUD, HHS, and DOT as defendants; but nevertheless requested—and also obtained—injunctive relief against those agencies.  City of Saint Paul, County of Marin, and City of Santa Cruz cannot ignore their prior treatment of President Trump as a privy in an effort to defeat the claim-splitting doctrine in this case.

**B.    *King County* Involves Identical Claims Against Identical Defendants, Involving Identical Grant Conditions By An Entity Created By County Of Los Angeles**

The Opposition does not dispute that *Martin Luther King, Jr. County v. Turner*, No. 25-cv-00814-BJR (W.D. Wash.) ("*King County*") involves the same cause of action as the instant lawsuit.  *See* Opp. at 9-10.  By failing to oppose this argument regarding the first prong of *Mendoza*, Plaintiffs concede the issue.  *Tyler v. Travelers Commercial Ins. Co.*, 499 F. Supp. 3d 693, 701 (N.D. Cal. 2020) ("As an initial matter, Plaintiff concedes these arguments by failing to address them in her opposition").

With respect to *Mendoza*'s second prong, Plaintiffs contend that "none of the Plaintiffs in this action is a plaintiff in" *King County*, and they further argue that Los Angeles Homeless Services Authority ("LAHSA"), which *is* a plaintiff in *King County*, is not a privy of Plaintiff County of Los Angeles.  Opp. at 11-13.  Principally relying on the purported "simple fact" that LAHSA and County of Los Angeles "have distinct factual and legal interests," Plaintiffs argue that Defendants "fall woefully short" of the preclusion standard established in *Taylor v. Sturgell*, 553 U.S. 880 (2008).  Opp. at 12.  Plaintiffs misapprehend the governing law and ignore both LAHSA's requests for relief on behalf of County of Los

Angeles in *King County* and the court's resulting orders in that lawsuit.

As an initial matter, the Supreme Court's *Taylor* decision does not involve the claim-splitting doctrine; it instead establishes the federal *res judicata* standard under which non-parties can be prevented from bringing post-final-judgment repetitive lawsuits. *See Taylor*, 553 U.S. at 892-93. Here, there is no final-judgment bar, and Defendants do not seek to preclude County of Los Angeles from litigating its claims against HUD. Defendants instead assert that County of Los Angeles should be required to litigate its challenges to HUD's grant conditions in the Western District of Washington, where LAHSA is simultaneously suing HUD over identical grant conditions and programs. Granting this motion thus would not preclude County of Los Angeles from seeking relief, but rather consolidate that challenge in the Western District of Washington, consistent with the objectives of the claim-splitting rule, *i.e.*, "to protect the defendant from being harassed by repetitive actions based on the same claim" and promote judicial economy and convenience. *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 328 (9th Cir. 1995); Restatement (Second) of Judgments § 24; *see also Wyles v. Sussman*, 661 F. App'x 548, 550 (10th Cir. 2016) (claim-splitting rule "exists to allow district courts to manage their docket").

More fundamentally, even applying *Taylor* to the claim-splitting analysis here, the Supreme Court's *res judicata* standard teaches that County of Los Angeles is not allowed to pursue this overlapping lawsuit in the Northern District of California.

The Opposition never squarely addresses the first prong of the *Taylor* test (*i.e.*, whether the "interests of the nonparty and her representative are aligned"). *Taylor*, 553 U.S. at 900. At most, the Opposition makes the conclusory assertion that

> joint powers authorities and housing authorities are independent government entities with distinct legal and factual interests from the cities and counties that create them— specifically, they have an independent interest in the federal funds they separately and directly receive, which, in large part, are administered through separate grant programs authorized by different statutes.

Opp. at 1; *see also id.* at 12 (same). Even assuming that to be true, Plaintiffs fail to describe how *any* of those interests differ as applied to this case and *King County*; Plaintiffs never elucidate a material difference between County of Los Angeles's interests here and LAHSA's interests in *King County*. Regardless, *Taylor*'s first prong does not address whether the two parties may have, in a vacuum, "distinct legal and factual interests" (as Plaintiffs frame the issue) but rather whether the parties' interests in the

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER
No. 3:25-cv-07070-RS                                          6

respective lawsuits are "aligned." *Taylor*, 553 U.S. at 900. Here, there is no doubt that the interests of LAHSA and the County of Los Angeles are "aligned" in their simultaneous lawsuits against HUD since both entities sue the exact same defendants (HUD and HUD Secretary Turner) in separate federal district court lawsuits and seek to enjoin the exact same HUD grant conditions. Moreover, the legal claims and requests for relief in the two lawsuits overlap entirely, recycling language substantially verbatim. *See* Mot. at 5 (chart).

Plaintiffs' arguments regarding *Taylor*'s second prong are similarly inapposite. Plaintiffs— quoting a case decided 85 years ago—argue that "Defendants fail to demonstrate that LAHSA . . . 'had authority to represent [Los Angeles County's] interests in a final adjudication of the issue in controversy' in *King County*[.]" Opp. at 15 (quoting *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 403 (1940)). But that is not the preclusion standard clarified by the Supreme Court's 2008 decision in *Taylor*. *See Taylor*, 553 U.S. at 900 (holding that preclusive effect applies where "the party understood herself to be acting in a representative capacity"). As such, rather than limiting the analysis to the statutes allowing for LAHSA's creation as an independent entity—as Plaintiffs would have it—the Court must look to the plaintiffs' actual conduct in *King County* to determine whether LAHSA "understood [itself] to be acting in a representative capacity" in that litigation. *Id.* Analyzed under the correct rubric, LAHSA clearly understood itself to be acting in a representative capacity. For example, LAHSA alleged that it

> is the lead agency in the HUD-funded Los Angeles Continuum of Care (LA CoC), and coordinates and manages federal, state, county, and city funds for programs providing shelter, housing, and services to people experiencing homelessness. LAHSA has been designated by the LA CoC as the Collaborative Applicant eligible to apply for more than $200 million in federal HUD CoC Program funding on behalf of the LA CoC. LAHSA relies on nearly $89 million annually in HUD CoC grant funds to house and stabilize residents exiting homelessness. LAHSA also receives approximately $8 million in HUD formula grants through the ESG program.

*King County* TAC ¶ 285. Further, LAHSA unquestionably invoked alleged harms to other recipients of HUD funds—including arguably County of Los Angeles—to support its claims for relief, thereby acting in a representative capacity. *See id.* ¶ 693 ("Subrecipients of these [HUD] funds such as food banks, mental health providers, senior centers, and affordable housing agencies could face operational disruptions and be unable to meet the needs of low-income families"). And LAHSA's proposed order submitted along with the third motion for preliminary injunction expressly sought relief on behalf of non-party continuums,

their consortia, and subrecipients. *King County*, ECF No. 186-1. In short, LAHSA understood itself to be acting in a representative capacity in *King County*, thereby meeting the second prong of the *Taylor* test.

Plaintiffs attempt to sidestep LAHSA's representative actions in *King County*, contending that "Los Angeles County is not seeking relief in connection with Continuum of Care funding in this action." Opp. at 13. But while Los Angeles County may not be seeking CoC funding relief here, the *King County* injunction is not limited to CoC funding. Instead, non-parties covered by the *King County* preliminary injunction also include consortia and subrecipients. *King County*, ECF Nos. 338 & 381. County of Los Angeles does not even try to claim that it does not receive HUD funding from LAHSA as part of LAHSA's consortia and/or as a subrecipient. Further, even if the Court accepts Plaintiffs' contention that LAHSA did not understand itself to be acting in a representative capacity in *King County* (notwithstanding the contradictory allegations on the face of the *King County* TAC and in plaintiffs' proposed order), the *King County* court understood LAHSA to be doing so, and it took care to protect the interests of non-party recipients of HUD funding in that case. *See Taylor*, 553 U.S. at 900 (holding that the second prong of the preclusion test can also be met where "the original court took care to protect the interests of the nonparty").

### C.   *San Diego Housing Authority* Involves The Same Claims, The Same HUD Grant Conditions, And Is Being Litigated By Two Closely Related Entities

Finally, the Opposition contends that Plaintiffs are not splitting their claims with the *Housing Authority of the County of San Diego, et al. v. Turner, et al.*, No. 3:25-cv-008859-JST (N.D. Cal.) ("*San Diego Housing Authority*") matter. Once again, Plaintiffs are incorrect.

With regard to the first *Mendoza* prong, Plaintiffs acknowledge that *San Diego Housing Authority* challenges "discrete agency actions taken by HUD" but they nevertheless contend that case does not involve the same transaction or occurrence because it deals with "different timelines, different grants, different grant agreements, and different authorizing statutes governing the funding at issue." Opp. at 10. That position is irreconcilable with Plaintiffs' Federal Rule of Civil Procedure 20(a) joinder practices in this very case. Here, Plaintiffs joined 25 disparate municipalities from across the country (each with a unique set of facts, federal grant programs, and purported harms) and nine federal agencies/components (each of which has a unique set of authorizing statutes, grant programs, and grant conditions) into one omnibus lawsuit. The only way that Plaintiffs can do so is if they establish that each Plaintiff's claims

against each of these discrete Defendants involves a "right to relief jointly, severally, or in the alternative with respect to or *arising out of the same transaction, occurrence, or series of transactions or occurrences*." Fed. R. Civ. P. 20(a) (emphasis added). Indeed, Plaintiffs have previously represented to this Court that they should be permitted to join all these parties in one lawsuit because these different municipalities each seek to challenge "materially similar grant conditions" by multiple agencies. ECF No. 63 at 5. Plaintiffs cannot defeat application of the claim-splitting doctrine in this motion on the grounds that "different timelines, different grants, different grant agreements, and different authorizing statutes"—all of which arise as a result of identical grant conditions imposed by one agency, HUD—do not relate to the same transactional nucleus of fact while simultaneously joining 25 plaintiffs and nine agencies/components in a single lawsuit under the fundamentally inconsistent logic that each such agency's and each such Plaintiff's separate and distinct "timelines," "grants," and "grant agreements" are "materially similar" and thus qualify for joinder under Rule 20(a).

The analysis for the second prong of the *Mendoza* test is similar for the housing authority plaintiffs in *San Diego Housing Authority* and for LAHSA in *King County*. *See supra* Part II.B. Briefly, Plaintiffs do not describe how the interests of Housing Authority of the County of San Diego and Los Angeles County Development Authority in *San Diego Housing Authority* differ from the interests of County of San Diego and County of Los Angeles in the above-captioned case. Nor do Plaintiffs show that Housing Authority of the County of San Diego and Los Angeles County Development Authority did not understand themselves to be acting in a representative capacity in that lawsuit when they sought relief with respect to "*any* application submitted by Plaintiffs, and *any* funds awarded or received by Plaintiffs, *directly or indirectly*." *San Diego Housing Authority*, ECF No. 1 at Prayer for Relief ¶ C (emphasis added).

## III.　Venue Is Improper Here For Claims Against HHS, EPA, FTA, FAA, FRA, And NHTSA

Plaintiffs argue that solely because City of Eureka is located in this District, 28 U.S.C. § 1391(e) provides a free pass to add as many out-of-district co-plaintiffs as possible, and then leverage these out-of-district co-plaintiffs—none of which could file a stand-alone complaint here—to engraft additional defendants with no alleged connection and no alleged federal grant agreements with the lone in-district plaintiff. Opp. at 16-17. None of the authorities cited by Plaintiffs support this position. Those authorities instead stand for the unremarkable legal standard that Section 1391(e) permits out-of-district plaintiffs to

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER
No. 3:25-cv-07070-RS　　　　　　　　　　9

litigate claims against the federal government that "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" in any district where one plaintiff resides. *See* 28 U.S.C. § 1391(e) ("Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure"); *see also Lamont v. Haig*, 590 F.2d 1124, 1129 (D.C. Cir. 1978) ("Joinder of 'additional persons' must conform to standard practice"). In other words, underlying the Section 1391(e) venue requirements are the separate joinder obligations established in Federal Rule of Civil Procedure 20(a). But those dual venue and joinder requirements do not encompass the original Plaintiffs' claims against HHS, EPA, FTA, FAA, FRA, and/or NHTSA in this case.

To be clear, Defendants are not contesting venue as to City of Eureka's claims against HUD, DOT, and FHWA. *See* SAC ¶ 217 (defining City of Eureka as one of the "HUD Plaintiffs"); ¶ 246 (same for "FHWA Plaintiffs"); ¶ 268 (same for "DOT Plaintiffs"). Defendants also are not contesting venue as to other Plaintiffs' claims against HUD, FHWA, and/or DOT to the extent those Plaintiffs' claims against those Defendants arise out of the same transaction or occurrence (*i.e.*, that they are properly joined under Rule 20(a)). However, in their Opposition, Plaintiffs now disavow their Rule 20(a) joinder of the out-of-district original Plaintiffs even as to the claims against HUD, DOT, and FHWA because—in their efforts to defeat the claim-splitting doctrine—they contend that the claim-splitting bar does not apply wherever claims involve "different timelines, different grants, different grant agreements, and different authorizing statutes[.]" Opp. at 10. But Plaintiffs' very argument invalidates Plaintiffs' joinder theory from the outset.

Putting aside Plaintiffs' impermissible joinder practices as to HUD, DOT, and FHWA, Plaintiffs identify no authority that would allow them to expand the scope of Section 1391(e) to allow out-of-district Plaintiffs to join additional defendants with no connection to the lone in-district Plaintiff. Moreover, this Court has already found that similar grant condition claims against different agencies with "distinct authorizing statutes, grant programs, and grant condition policies" are not properly joined in this lawsuit under Rule 20(a). *See* ECF No. 65 (order denying Plaintiffs' motion for leave to file second amended complaint to add DOJ, DHS, DOI, and FEMA, among others). The result is no different with respect to the original out-of-district Plaintiffs' improper joinder in an improper venue of Defendants for which no connection with City of Eureka has been alleged (HHS, EPA, FTA, FAA, FRA, and NHTSA). Thus, claims against those Defendants are subject to dismissal under Rule 12(b)(3) for lack of venue.

**IV.    Transfer To The Western District Of Washington Is Proper Under The First-To-File Rule**

Plaintiffs do not contest either the first (chronology) or third (similarity of issues) elements of the first-to-file rule (Opp. at 18), and they thus concede any arguments in opposition. *Tyler*, 499 F. Supp. 3d at 701.    With respect to the second element (similarity of parties), Plaintiffs simply reference their discussion of the claim-splitting doctrine.  Opp. at 18.  But the claim-splitting doctrine *does* apply under these facts, including under the Supreme Court's *Taylor* standard.  *See supra* Part II.B.  And Plaintiffs' assertion that courts do not transfer "a case under the first-to-file rule when there was no overlap in parties on one side of the 'v'" (Opp. at 18, quoting *Behring Regional Ctr. LLC v. Wolf*, No. 20-cv-09263-JSC, 2021 WL 1164839, at *2 (N.D. Cal. Mar. 26, 2021)), is belied by the actual practice of courts, which routinely apply the first-to-file rule, including to privies, where the plaintiffs in the two lawsuits are different. *See, e.g.*, *Gonzalez v. Unitedhealth Grp., Inc.*, No. 19-cv-00700, 2020 WL 2992174, at *3 (W.D. Tex. June 3, 2020) (applying the first-to-file rule even where the two cases involved "unique plaintiffs"); *Urbain v. Knapp Bros. Mfg. Co.*, 217 F.2d 810, 815 (6th Cir. 1954) (invoking privity among the defendants as a factor to invoke the first-to-file rule); *SRH Holdings, LLC v. Gov't Emps. Ins. Co.*, No. 23-cv-10325, 2023 WL 4706176, at *3 (D. Mass. July 24, 2023) (applying first-to-file rule where the plaintiff was not a party to the first-filed lawsuit); *Tex. Ins. Co. v. Ares Ins. Managers LLC*, No. 23-cv-01473, 2023 WL 8237113, at *6-7 (W.D. Wash. Nov. 28, 2023); *Aero Advanced Paint Tech., Inc. v. Int'l Aero Prods., LLC.*, 351 F. Supp. 3d 1067, 1071 (S.D. Ohio 2018); *Google Inc. v. Rockstar Consortium U.S. LP*, No. 13-cv-5933-CW, 2014 WL 1571807, at *9 (N.D. Cal. Apr. 17, 2014) (noting, in *dicta*, that parties in privity are subject to the first-to-file rule); *Hermanson v. Lenovo Grp. Ltd.*, No. 23-cv-05890-JSW, 2024 WL 819566, at *4 (N.D. Cal. Feb. 27, 2024) (under the first-to-file rule, courts "examine[] whether the causes of action and relief sought, as well as the parties or privies to the action, are the same") (citation and quotation marks omitted).  Accordingly, the similarity of parties element—and, thus, *all* elements—weigh in favor of transfer here.

Finally, Plaintiffs argue that "judicial economy would not be served by transfer, given that this Court has already invested resources in this litigation by issuing a temporary restraining order and a preliminary injunction[.]"  Opp. at 18.  But that argument just perpetuates the judicial inefficiencies that Plaintiffs themselves created by filing overlapping lawsuits challenging the exact same grant conditions

before multiple Article III judges.  Plaintiffs should not be permitted to compound the burden they have imposed on the judiciary simply because they already asked this Court (now *three* times—in one TRO and two PI motions) to duplicate work already being done by other federal judges.

## V.    In The Alternative, Transfer To The District Court For The District Of Columbia Is Proper Under 28 U.S.C. § 1404(a)

Plaintiffs also argue that transfer to the District Court for the District of Columbia under 28 U.S.C. § 1404(a) is not warranted.  None of their arguments persuade.

**Plaintiffs' choice of forum**:  Plaintiffs first seek to establish that the choice of forum element weighs against transfer, stating they "have already explained why the claim-splitting and improper venue arguments are meritless."  Opp. at 19.  Not so.  *See supra* Parts II-III.  Plaintiffs next argue that "Defendants' claims of forum and judge-shopping ring hollow given the patent illegality of the conditions at issue and the fact that a litany of district courts across the country have enjoined similar conditions."  Opp. at 20.  But this argument could be made in *every* Section 1404(a) case because presumably every lawsuit challenges allegedly improper conduct.  The alleged conduct prompting the lawsuit has nothing to do with the original Plaintiffs' calculated choice to litigate in what they perceive to be a favorable forum but in which only a tiny fraction of the represented population resides (much less the later-added Plaintiffs' pre-selection of the judge assignment by joining after preliminary relief had already been granted).[3]

**The District of Columbia's local interest and the interests of justice and judicial economy**:  Plaintiffs attempt to refute the fact that all or nearly all the nationwide grant condition decisions at issue here were made in Washington, D.C. with the conclusory assertion that "enforcement of the challenged conditions occurs at regional offices and fails to account for the harm these conditions pose to numerous local governments in the Northern District and the population they serve."  Opp. at 21.  But Plaintiffs proffer no factual support for these assertions, nor do they connect the purported—but unidentified— enforcement actions made at regional offices with the grant conditions challenges at issue.  And to the extent Plaintiffs' venue decision was animated by the "population" served by local governments (*id.*),

---

[3] Even if district courts in a handful of jurisdictions—broadly hand-picked by similar coalitions of grant condition plaintiffs engaging in similar forum shopping—have granted injunctions, appellate courts have begun overturning those decisions.  *See, e.g.*, *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Feb. 6, 2026).

Plaintiffs should look elsewhere given that almost 95% of the population represented by the current Plaintiffs that is purportedly harmed by these grant conditions do not reside in the Northern District of California. In reality, as this Court found in a similar context, "this is not a 'local' controversy" and "this district does not have any special interest in the outcome of this litigation" because no party "has any contacts with this district *related* to the facts underlying this case." *Ecological Rights Found. v. United States EPA*, No. 19-cv-04242-RS, 2019 WL 5295124, at *3 (N.D. Cal. Oct. 19, 2019) (emphasis in original). Instead, "citizens in every district are equally affected by" Defendants' grant conditions, and in APA cases "courts generally focus on where the decisionmaking process occurred to determine where the claims arose." *Id.* (quoting *Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 313 (D.D.C. 2015)).

**Convenience of witnesses and access to evidence**: Plaintiffs contend that the effect of transfer would be to shift the inconvenience to Plaintiffs. Opp. at 22. But it is not clear how this could be so given the nationwide distribution of Plaintiffs—this District is no more convenient for this group of Plaintiffs than any other. And because this is an APA review case, the lawsuit will be resolved on cross-motions for summary judgment, rendering any appearance by employees of in-district Plaintiffs unnecessary. Finally, Plaintiffs conclude that Defendants would not be inconvenienced because they have "a regional presence in California." Opp. at 21. Plaintiffs do not identify any facts about the purported "regional presence" of each Defendant, nor do they establish that each Defendant maintains an office in the Northern District of California. Nor do Plaintiffs proffer any evidence that Defendants' purported "regional presence" would "provide resources that make litigating in this District more convenient" than the District of Columbia. Opp. at 21 (quoting *Consumer Financial Protection Bureau v. Nationwide Biweekly Administration, Inc.*, No. 15-cv-02106-RS, 2015 WL 4463790, at *5 (N.D. Cal. July 21, 2015)). To be clear, only the undersigned Assistant United States Attorney resides in this District, and the Department of Justice is not one of the defendants in this case—all case coordination with Defendants occurs through agency contacts based in the District of Columbia. And if the case is transferred, it would be assigned to a different Assistant United States Attorney. There is thus no "regional presence" that would make litigating this case in the Northern District of California convenient for Defendants.

## VI.    The Court Lacks Article III Jurisdiction Over The Claims Against EPA

Once again, Plaintiffs seek to adjudicate their claims in bulk, without regard to Plaintiffs'

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER
No. 3:25-cv-07070-RS                                13

individual circumstances and Plaintiffs' individual harms. But as the Supreme Court has recently established, "standing is not dispensed in gross." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024).

Plaintiffs first argue that only one plaintiff needs to have Article III standing before a claim brought by all plaintiffs can proceed. Opp. at 22. This raises the question why the SAC defines only 10 of the 25 Plaintiffs as "EPA Plaintiffs," as there would be no need to limit the SAC if all plaintiffs can obtain relief against EPA if only one plaintiff has standing. *See* SAC ¶ 335. It also raises the question of what relief Plaintiffs believe the Court is authorized to fashion against EPA in this case—a permanent injunction on behalf of all Plaintiffs, on behalf of the defined "EPA Plaintiffs," or only on behalf of the subset of "EPA Plaintiffs" that actually have grants with EPA? The Opposition raises more questions than it answers and again demonstrates Plaintiffs' failure to litigate this case in a manner appropriately tailored to the parties and claims at issue.

In any event, EPA does not seek dismissal of all claims against EPA on ripeness and injury-in-fact grounds; it only seeks dismissal on those grounds of the claims against EPA brought by specific Plaintiffs that (1) do not have grants with EPA, (2) allege they *applied* for an EPA grant under an EPA grant program that had unobligated funding rescinded, or (3) have EPA grants that do not include any of the challenged conditions. Mot. at 22-23. In response, Plaintiffs submitted three declarations establishing that (1) City of Redwood City does not have an EPA grant because it has not yet submitted its application materials, (2) City of Sunnyvale is in receipt of loans provided through the WIFIA and SRF programs and does not have any active grant agreements with EPA with the challenged terms and conditions, and (3) City of Santa Clara does not have an EPA grant because it is a subrecipient. ECF Nos. 77-1, 77-2, & 77-3. Moreover, Plaintiffs do not dispute that City of Alameda, City of Hillsboro, City of Atlanta, City of Santa Cruz, and County of Los Angeles all have EPA grants *without* any of the challenged conditions, as they were awarded prior to April 3, 2025 and have undergone no monetary amendments on or after that date. Further, as EPA explained in the Treml Declaration, EPA removed its DEI language (ECF No. 75-1 ¶¶ 4-7), and there is no current possibility that these existing grant awards would require Plaintiffs to certify that they do not operate DEI programs that violate federal anti-discrimination laws. As a result, there is no cognizable Article III injury that these Plaintiffs can identify. These Plaintiffs are free to apply for EPA grants and/or continue receiving EPA funds without being required to make a DEI certification.

Plaintiffs respond that, while these awards (or applications) have not included a DEI certification in the past and they do not require a DEI certification in the present, Plaintiffs *might*, at some undetermined point in the future, be asked to make a DEI certification on unspecified and unknowable terms. Opp. at 24. But before future injunctive relief can be issued, a threatened injury "'must be *certainly impending* to constitute injury in fact,' and 'allegations of *possible* future injury are not sufficient.'" *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 723 (9th Cir. 2023) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)) (emphasis in original). In effect, Plaintiffs ask this Court to issue an advisory opinion as to these grant awards, but federal courts are not empowered to do so under Article III of the Constitution. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (Federal courts lack "the power to render advisory opinions . . . advising what the law would be upon a hypothetical state of facts.") (cleaned up); *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952) ("The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them."); *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 924 (9th Cir. 2000) ("The parties' "controversy must be definite and concrete" to avoid an impermissible advisory "opinion advising what the law would be upon a hypothetical state of facts.").

Finally, Plaintiffs argue that EPA has not met the "stringent voluntary cessation standard," and the claims against EPA are thus not moot as a result of EPA's August 2025 revision of its General Terms and Conditions to remove the reference to DEI in the clause regarding federal anti-disfcrimination laws. Opp. at 25. But Plaintiffs fail to recognize that EPA's revisions had nothing to do with this lawsuit: (1) they were put in motion far before Plaintiffs initiated this case, (2) they were finalized and implemented on the same day that EPA first appeared in the case, and (3) they are not limited to the Plaintiffs in this lawsuit— they instead apply to all EPA grants and monetary amendments nationwide issued on or after April 3, 2025. ECF No. 75-1 ¶¶ 4-7. Under these facts, the challenged "practice cannot reasonably be expected to recur," and the claims against EPA are thus moot. *FBI v. Fikre*, 601 U.S. 234, 241 (2004) (citation and quotation marks omitted).

## VII.   Conclusion

For the foregoing reasons, and as established in the motion, the Court should grant the motion.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER
No. 3:25-cv-07070-RS                                    15

DATED:  March 30, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Jevechius D. Bernardoni*
JEVECHIUS D. BERNARDONI
Assistant United States Attorney

Attorneys for Defendants