ANDREW JANZ (SBN 287672)
Fresno City Attorney
andrew.janz@fresno.gov
CITY OF FRESNO
2600 Fresno Street
Fresno, CA 93721
Telephone: (559) 621-7500
Facsimile: (559) 457-1084

*Attorney for Plaintiff*
CITY OF FRESNO

KELSEY MCELVEEN (MN BN 0396744)*
Assistant City Attorney
Kelsey.McElveen@ci.stpaul.mn.us
AARON WINTER (MN BN 0390914)*
Assistant City Attorney
aaron.winter@ci.stpaul.mn.us
SAINT PAUL CITY ATTORNEY'S OFFICE
400 City Hall and Courthouse
15 Kellogg Boulevard West
Saint Paul, Minnesota 55102
Telephone: (651) 266-8710
Facsimile: (651) 298-5619

*Attorneys for Plaintiff*
CITY OF SAINT PAUL
* *Appearing pro hac vice*

MELISSA C. ALLISON (MA BN 657470)*
mallison@andersonkreiger.com
CHRISTINA S. MARSHALL
(MA BN 688348)*
cmarshall@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, Floor 21
Boston, MA 02109
Telephone: (617) 621-6500

*Attorneys for Plaintiffs*
COUNTY OF MONROE
MONROE COUNTY AIRPORT AUTHORITY
* *Appearing pro hac vice*

JONATHAN V. HOLTZMAN (SBN 99795)
jholtzman@publiclawgroup.com
JAMES R. ROSS (SBN 149199)
jross@publiclawgroup.com
RYAN P. McGINLEY-STEMPEL (SBN 296182)
rmcginleystempel@publiclawgroup.com
MAXWELL S. PELTZ (SBN 183662)
mpeltz@publiclawgroup.com
JAKE D. FREITAS (SBN 341837)
jfreitas@publiclawgroup.com
MARIBEL LOPEZ (SBN 340907)
mlopez@publiclawgroup.com
RENNE PUBLIC LAW GROUP
350 Sansome Street, Suite 300
San Francisco, California 94104
Telephone: (415) 848-7200
Facsimile: (415) 848-7230

*Attorneys for Plaintiffs*
CITY OF FRESNO; CITY OF EUREKA; CITY OF SOUTH LAKE TAHOE; COUNTY OF SACRAMENTO; COUNTY OF MONROE; MONROE COUNTY AIRPORT AUTHORITY; COUNTY OF SAN DIEGO, COUNTY OF MARIN; CITY OF ALAMEDA; CITY OF REDWOOD CITY; CITY OF ATLANTA; CITY OF BEAVERTON; CITY OF CORVALLIS; CITY OF HILLSBORO; CITY OF MOUNTAIN VIEW; CITY OF SALEM; CITY OF SAN MATEO; CITY OF SANTA CLARA; CITY OF SANTA CRUZ; CITY OF STOCKTON; CITY OF SUNNYVALE; CITY OF VACAVILLE; COUNTY OF LOS ANGELES; COUNTY OF SANTA BARBARA

BRANDON W. HALTER (SBN 289687)
Marin County Counsel
KATE K. STANFORD (SBN 302825)
Deputy County Counsel
kate.stanford@marincounty.gov
EDWARD F. SEARS (SBN 297775)
Deputy County Counsel
ned.sears@marincounty.gov
OFFICE OF THE COUNTY COUNSEL
COUNTY OF MARIN
3501 Civic Center Drive, Room 275
San Rafael, CA 94903
Telephone: (415) 473-6117
Facsimile: (415) 473-3796

*Attorneys for Plaintiff*
COUNTY OF MARIN

ALLEGRA J. LAWRENCE
(GA BN 439797)*
lawrence@khlawfirm.com
MICHELLE McCLAFFERTY
(ASB-0880-N10I)*
McClafferty@khlawfirm.com
KREVOLIN & HORST, LLC
1201 West Peachtree St., Suite 3500
Atlanta, GA 30309
Telephone: (404) 400-3350

*Attorneys for Plaintiff*
CITY OF ATLANTA
* *Appearing pro hac vice*

DANIEL J. TURNER (SBN 336499)
Deputy City Attorney
dturner@alamedaca.gov
2263 Santa Clara Avenue, Rm 280
Alameda, CA 94501
Telephone: (510) 747-4750

*Attorneys for Plaintiff*
CITY OF ALAMEDA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CITY OF FRESNO et al.,

Plaintiffs,

v.

SCOTT TURNER in his official capacity as Secretary of the U.S. Department of Housing and Urban Development, et al.,

Defendants.

Case No. 3:25-cv-07070-RS

**DECLARATION OF JAMES R. ROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Judge: Hon. Richard Seeborg
Hearing Date: April 1, 2027
Hearing Time: 1:30 p.m.
Location: 450 Golden Gate Avenue
San Francisco, CA 94102
Courtroom 12, 19th Floor

Complaint Filed: August 20, 2025
FAC Filed: September 8, 2025
SAC Filed: February 9, 2026



RENNE PUBLIC LAW GROUP

I, James R. Ross, declare:

1. I am a duly licensed attorney admitted to the bar in the State of California and to practice before the United States District Court for the Northern District of California, among others. I am an attorney with Renne Public Law Group and represent Plaintiffs[1] in this action. I submit this declaration in support of Plaintiffs' Motion for Summary Judgment.

2. I have personal knowledge of the facts stated in this declaration. I could and would competently testify to these facts if called upon to do so.

3. I personally participated in the below-described email communications with Jevechius Bernardoni, counsel for Defendant U.S. Department of Housing and Urban Development ("HUD"). My descriptions of HUD contract documents and email correspondence are based on my review of those documents.

4. **HUD transmits grant agreements containing enjoined terms.** In or about the first week of September, 2026, I received from multiple Plaintiffs copies of HUD's FY2026 CPD Formula Grant Agreements ("FY2026 Award Agreements") together with a HUD transmittal letter. A true and correct copy of FY2026 Award Agreement obtained from the City of Santa Clara is attached here to as **Exhibit A**.

5. **Plaintiffs' request that HUD remove enjoined terms from grant agreements.** On September 18, 2026, I emailed Mr. Bernardoni a letter stating that the FY2026 Award Agreements contained the following "unlawful provision that violates the preliminary injunctions":

> In the event the enjoinment of such provisions is stayed, dissolved, or reversed, the full terms of this Agreement, including such provisions, will automatically become effective. This clause is self-executing and will become effective, binding, and enforceable automatically upon execution of this Agreement.

The letter explained that this "self-executing clause is designed to do precisely what the injunction forbids: cause the enjoined Challenged Conditions to attach automatically as binding contractual terms, without any separate offer or acceptance." The letter described the provision as "an impermissible end-

[1] With the exception that Renne Public Law Group does not represent the City of Saint Paul.





RENNE PUBLIC LAW GROUP

run around the Court's order" based on the conclusions of multiple courts that had previously considered whether such provisions violated injunctions in those cases.

6. The letter requested that "HUD immediately remove the self-executing reinstatement provision . . . from each FY2026 agreement transmitted to our clients, and reissue conforming agreements with a provision confirming that HUD will comply with all applicable injunctions and orders and will not implement or enforce the challenged or vacated conditions consistent with those orders while those orders are in effect." The letter further stated that "[i]f HUD does not remove this provision, we will be forced to bring a motion to enforce the injunction" and insisting "that any requirements or deadlines to execute these agreements be extended until after the court has an opportunity to resolve this issue." A true and correct copy of this letter is attached hereto as **Exhibit B**.

7. **HUD's response.** On September 23, 2026, Mr. Bernardoni responded via email to my September 18, 2026 letter, stating that "HUD has reviewed your letter and declines to remove the referenced provision" and including an explanation for its position. A true and correct copy of that email is attached hereto as **Exhibit C**.

8. **Plaintiffs' proposal for conforming language**. On October 7, 2026, I sent Mr. Bernardoni an email describing Plaintiffs' continued objections to the above-identified FY2026 Award Agreements language, identifying language compliant with the preliminary injunctions that HUD had previously used in last year's agreements and a "Special Term" that the U.S. Department of Transportation ("DOT") had previously used in its award agreements, and proposing that "HUD include, as an addendum or special term to the FY2026 Award Agreements, [language] modeled on the terms HUD and DOT have already included in their previous agreements under this injunction." My email again stated that if the parties "cannot reach an agreement to modify these award agreements, we will likely be forced to seek the Court's assistance to enforce the injunction." In this and a follow-up email dated October 13, 2026, I noted that HUD had imposed agreement-execution deadlines that expired within days and requested that HUD extend these deadlines until the Court could resolve the issue. True and correct copies of my October 7 and 13, 2026 emails are attached hereto as **Exhibit D**.

9. **HUD's Further Responses.**

a. On October 14, 2026, Mr. Bernardoni emailed a response stating that "HUD is willing to pull back the 'snap back' provision," that it was "currently working on language to address that issue," and that it was "waiting for input from the program office before providing a formal response." A true and correct copy of that email is attached hereto as **Exhibit E**.

b. On October 15, 2026, Mr. Bernardoni emailed a further response stating:

> Pursuant to the court's preliminary injunction in *City of Fresno v. Turner*, 3:25-cv-07070 (N.D. Calif.), ECF No. 46 (September 23, 2025), as amended by ECF No. 89 (Apr. 28, 2026), and notwithstanding other provisions, terms, or conditions of the Agreement, HUD has not and will not impose or enforce the challenged conditions or any materially similar enjoined or vacated terms and conditions to any grant funds awarded to the *City of Fresno* HUD Plaintiffs and their subrecipients, or otherwise rescind, withhold, cancel, not process, pause, freeze, impede, block, terminate, delay, or condition HUD funds based on such challenged conditions to the *City of Fresno* HUD Plaintiffs or their subrecipients while subject to the said injunction. Further, HUD will not require the *City of Fresno* HUD Plaintiffs or their subrecipients to make any certification or other representation related to compliance with said challenged conditions, nor will HUD refuse to issue, process, or sign grant agreements based on the *City of Fresno* HUD Plaintiffs' participation in this litigation. Should HUD ultimately prevail, then HUD will require that recipients agree to the original terms and conditions if they wish to continue with the grant in place.

A true and correct copy of that email is attached hereto as **Exhibit F**.

c. On October 15, 2026, in response to an email from me asking for clarification regarding whether Plaintiffs may strike out the "snap-back" provision from the FY2026 Award Agreements given their requirement that any amendments may only be amended in writing executed by all parties, Mr. Bernardoni confirmed that "Plaintiffs can strike out or modify the grant terms." A true and correct copy of that email is attached hereto as **Exhibit G**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in Santa Cruz, California on November 23, 2026.

By: *James R. Ross*
JAMES R. ROSS

# Exhibit A

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
OFFICE OF COMMUNITY PLANNING AND DEVELOPMENT
**FEDERAL AWARD AGREEMENT**

**Formula Grant**

**A. General Federal Award Information**

| | |
|---|---|
| 1. Recipient name (must match Unique Entity Identifier name) and address:<br>Santa Clara<br>1500 Warburton Avenue<br>Santa Clara, CA 95050-3796 | 12. Assistance listing number and title:<br>14.239, HOME Investment Partnerships Program |
| 2. Recipient's Unique Entity Identifier:<br>RK62GLSXRUK9 | 13. Amount of federal funds obligated by this action:<br>$351,301.66 |
| 3. Tax identification number:<br>946000426 | 14. Total amount of federal funds obligated:<br>$351,301.66 |
| 4. Federal Award Identification Number (FAIN):<br>M26MC060217 | 15. Total approved cost sharing (if applicable):<br>See Addendum 2 |
| 5. Instrument type:<br>Grant ☒ Cooperative agreement ☐<br>Loan Guarantee ☐ | 16. Total federal award amount, including approved cost sharing:<br>$351,301.66 |
| 6. Period of performance start and end date:<br>- 09/30/2035 | 17. Budget approved by HUD: |
| 7. Budget period start and end date:<br>FY 2026 through FY 2034 | 18. Fiscal year:<br>See Addendum 2 |
| 8. Initial Agreement ☒ Amendment ☐ # | 19. Statutory authority:<br>42 U.S.C. 12701 et seq |
| 9. Indirect cost rate (per § 200.414):<br>Recipients must complete Addendum 3: Indirect Cost Rate Schedule | 20. Applicable appropriations act(s):<br>Public Law 118-158, Public Law 119-75 |
| 10. Is this award for research and development (per 2 C.F.R. § 200.1)? Yes ☐ No ☒ | 21. Notice/notice of funding opportunity this award is made under (if applicable):<br>N/A |
| 11. Awarding official name and title: | 22. Program regulations (if applicable):<br>24 C.F.R. Part 92 |
| 23. Federal award description:<br>Under the HOME Investment Partnerships Program, HUD allocates funds by formula among eligible State and local governments to strengthen public-private partnerships and to expand the supply of decent, safe, sanitary, and affordable housing, with primary attention to rental housing, for very low-income and low-income families.<br><br>• Addendum 1. Policy Requirements<br>• Addendum 2. Program-Specific Requirements<br>• Addendum 3. Indirect Cost Rate Schedule | |

NOW, THEREFORE, in consideration of the premises and the mutual covenants set forth herein, the parties hereto hereby agree as follows:

*Authority and Agreement*. This U.S. Department of Housing and Urban Development, Office of Community Planning and Development, Federal Award Agreement (Agreement) between the U.S. Department of Housing and Urban Development (HUD) and the grant recipient hereinabove named (Recipient), collectively

(the parties hereto or the Parties), regarding the award of Federal funding hereinabove described (Federal Award) is made pursuant to the statutory authority above (box 19) and is subject to the applicable appropriations act(s) (box 20). This Agreement incorporates by reference program statute (box 19), the program regulations (box 22) (as now in effect and as may be amended from time to time), the Recipient's consolidated plan/action plan, any attached Specific Terms and Conditions, and the attached addenda (box 23).

## B. Terms and Conditions

1. *General terms and requirements*. The Recipient must comply with all applicable federal laws, regulations, and requirements, unless otherwise provided through HUD's formal waiver authorities. This Agreement, including any attachments and addenda, may only be amended in writing executed by parties to this Agreement and any addenda.
2. *Compliance with Administrative Requirements*. The Recipient shall comply with requirements established by the Office of Management and Budget (OMB) concerning the Unique Entity Identifier (UEI); the System for Award Management (SAM.gov.); the Federal Funding Accountability and Transparency Act as provided in 2 C.F.R. part 25, Universal Identifier and General Contractor Registration; and 2 C.F.R. part 170, Reporting Subaward and Executive Compensation Information. The Recipient is responsible for updating and maintaining current and accurate information in SAM.gov, including updating the UEI or Employer Identification Number (EIN), as necessary, if administration of the award is transferred to a different subcomponent, division, or location within the Recipient's organization that uses a different UEI or EIN. Recipients must require Subrecipients to comply with the requirements in this paragraph, as applicable. "Subrecipient" for purposes of this agreement has the same meaning as it is used in 2 CFR § 200.1 and means an entity that receives a subaward from a pass-through entity to carry out part of a Federal award. The term subrecipient does not include a beneficiary or participant. A subrecipient may also be a recipient of other Federal awards directly from a Federal agency.
3. *Compliance with 2 C.F.R. part 200*. The Recipient must comply with the applicable requirements at 2 C.F.R. part 200, as may be amended from time to time. If any previous or future amendments to 2 C.F.R. part 200 replace or renumber any part 200 section cited in HUD's regulations in Title 24 of the Code of Federal Regulations, the amended part 200 requirements will govern award activities carried out after the amendments' effective date.
4. *Future budget periods*. If the period of performance spans multiple budget periods, subsequent budget periods are subject to the availability of funds, program authority, satisfactory performance, and compliance with the terms and conditions of the Federal Award.
5. *Indirect Cost Rate*. If the Recipient intends to use a negotiated or de minimis rate for indirect costs, the Recipient must submit an Indirect Cost Rate form to HUD, with this Agreement using Addendum #3 "Indirect Cost Rate Schedule". The submitted form/addendum will be incorporated into and made part of this Agreement, provided that the rate information is consistent with the applicable requirements under 2 C.F.R. § 200.414. If there is any change in the Recipient's indirect cost rate, it must immediately notify HUD and execute an amendment to this Agreement to reflect the change if necessary.
6. *Recipient integrity and performance matters*. If the Federal share of this award is more than $500,000 over the period of performance (box 6), the terms and conditions in 2 C.F.R. part 200 Appendix XII apply to this Agreement.
7. *Recordkeeping and Access to Records*:
    a. *Generally:* The Recipient hereby agrees to maintain complete and accurate documentation for this Federal Award and related activities to include, without limitation, financial records,

supporting documentation, statistical records, books of account, ledgers, financial and project reports, records, statements, data, the originals of all agreements between the Recipient and any and all individuals or entities which receive funding pursuant to or arising out of this Agreement, whether directly from Recipient or from individuals or entities to whom Recipient has provided funding, any and all data on any individual or entity that receives money, in-kind assistance or services, or any benefit of any kind from or as a direct or indirect result of the Federal Award, including, without limitation, a Subrecipient or other entity that receives a subaward from a pass-through entity to carry out part of the Federal Award; contractor, vendor, consultant, any other entity performing activities funded in whole or in part under this Federal award; and any beneficiaries, participants, and other end-users of the funds, to the fullest extent permitted by law, and all such other documentation in such a manner as to permit the Recipient to prepare statements and reports in compliance with applicable HUD requirements and OMB requirements in 2 CFR part 200 for recordkeeping and reporting, which may be amended from time to time, (Grant Documentation). Recipient further agrees that the term “Grant Documentation” includes all Subrecipient data consistent with the above and 2 CFR 200.332 and to ensure that it obtains and maintains access to such Subrecipient data. Recipient agrees that the creation, maintenance, preservation, and disclosure by Recipient of Grant Documentation is fundamental to the prevention of fraud, waste, and abuse and to the satisfaction of its obligations to prevent fraud, waste, and abuse and the performance of its obligations under this Agreement and applicable HUD rules and regulations.

b. *Access to Records and Personnel*: In addition to the foregoing, and in no way a limitation of anything contained in the foregoing or in this Agreement, or of HUD’s rights and remedies available to it under the terms of this Agreement, applicable statutes, laws and regulations, and otherwise at law or equity, HUD, Inspectors General, the Comptroller General of the United States, or any of their authorized representatives shall have the right of prompt, full, and complete access to any and all records of the Recipient and any other entities doing business with Recipient or otherwise receiving funds or benefits from Recipient, as specified in subsection a, and that are pertinent to the Federal Award to the fullest extent permitted by law, including records relevant to the administration, receipt, and use of this award and award activities, in order to perform audits, reviews and investigations, execute site visits, make or obtain copies thereof, or for any other official use. Such records include those that identify the source and application of funds, including relevant Grant Documentation data to the extent disclosure is not prohibited by law, in such a manner as to allow HUD to determine that all funds are and have been expended in accordance with program requirements and in a manner consistent with applicable law. The right of access includes prompt, full, and complete access as HUD may require to the Recipient and other entities and persons identified in subsection and their personnel, for the purpose of interview and discussion at such dates, times, and locations as HUD may require related to such documents or the Federal Award in general, to the fullest extent permitted by law. In lieu of or in addition to an on-site inspection, Recipient also agrees to furnish HUD such financial and project reports, records, statements, data, and documents in such form, from Recipient or other entity or person identified above, and accompanied by such reporting data as required by HUD. Recipient shall supply to HUD any and all Grant Documentation in legible and usable form as HUD may specify and within the time specified by HUD and at Recipient’s expense. Recipient shall also make certifications, as HUD may request at such times and in such manner and format as required by HUD, that all Documentation which Recipient supplies to HUD is true, accurate, and complete in all aspects and regards.

c. *New Reporting Tools*: Further, the Recipient hereby acknowledges that HUD is in the process of implementing new grants management and reporting tools for all Documentation and other documents and records pertinent to the Federal Award. Recipient agrees to report on grant performance and financial activities (including vendor and cash disbursement supporting details for the Recipient and its Subrecipients) using these new tools when they are released, and as updated, and to satisfy all requests for records pertinent to the Federal Award as described above. HUD will work with the Recipient to support the Recipient's transition to the new reporting tools. Once such new tools are implemented, Recipient shall make timely reporting utilizing such new reporting tools and such other reporting as is required by this Agreement and applicable statutes, laws, and regulations. HUD reserves the right to exercise all of its available rights and remedies for any noncompliance with these grants management and financial reporting requirements, to include, without limitation, requiring 100% review, additional or more detailed reports, suspension or termination of disbursements, and all other legally available remedies, to the furthest extent permitted by law. Recipient shall also make certifications at such times and in such manner and format as required by HUD that its reporting and the information contained therein is true, accurate, and complete in all aspects and regards.

8. *Noncompliance*. If the Recipient fails to comply with the provisions of this Agreement, HUD may take any and all remedial actions authorized by applicable statutes, regulations, or 2 C.F.R. § 200.339, as applicable. Nothing in this Agreement shall limit any remedies otherwise available to HUD in the case of noncompliance by the Recipient. No delay or omissions by HUD in exercising any right or remedy available to it under this Agreement shall impair any such right or remedy or constitute a waiver of or acquiescence in any Recipient noncompliance.
9. *Termination provisions*. Unless superseded by program statutes or regulations, the termination provisions in 2 C.F.R. § 200.340 apply.
10. *Build America, Buy America*. The Recipient must comply with the requirements of the Build America, Buy America (BABA) Act, 41 U.S.C. § 8301 note, and all applicable rules and notices, as may be amended, if applicable. Pursuant to HUD's Notice, "Public Interest Phased Implementation Waiver for FY 2022 and 2023 of Build America, Buy America Provisions as Applied to Recipients of HUD Federal Financial Assistance" (88 Fed. Reg. 17001), BABA requirements apply to any infrastructure projects HUD has obligated funds for after the effective dates, unless excepted by a waiver.
11. *Fiduciary Relationship*. Recipient acknowledges and agrees that it stands in a fiduciary relationship to HUD and the American people with respect to the Federal Award. Recipient shall act solely for the benefit of HUD and the American people with respect to the Federal Award, and undertakes a duty of absolute loyalty, trust, and confidence. In performing its obligations under this Agreement, Recipient shall act in good faith, avoid all conflicts of interest, exercise the due care required of a fiduciary, and make full and complete disclosure of all material facts and business opportunities and other matters required to be disclosed by this Agreement and applicable law relating to this Agreement, the Federal Award and all funds derived therefrom.
12. *Waste, Fraud, and Abuse*. Recipient acknowledges and agrees that the prevention, discovery, exposure, and prosecution of waste, fraud, and abuse in Federal grant programs and procurement and the activities which Federal funding supports, and recoveries therefrom, are in the best interests of Recipient and the American people. Accordingly, Recipient agrees to cooperate fully with HUD and the Task Force to Eliminate Fraud established in Executive Order 14395 of March 16, 2026, *Establishing the Task Force To Eliminate Fraud*, in all manners and respects as required by HUD.

13. *Whistleblower Protections.* Any person who becomes aware of the existence or apparent existence of fraud, waste, or abuse of any HUD award must report such incidents to both the HUD official responsible for the award and to HUD's Office of Inspector General (OIG). Allegations of fraud, waste, and abuse related to HUD programs can be reported to the HUD OIG hotline via phone at 1-800-347-3735 or online hotline form. The Recipient must comply with 41 U.S.C. § 4712, which includes informing employees in writing of their rights and remedies, in the predominant native language of the workforce. Under 41 U.S.C. § 4712, employees of a government contractor, subcontractor, recipient, and Subrecipient—as well as a personal services contractor—who make a protected disclosure about a Federal Award or contract cannot be discharged, demoted, or otherwise discriminated against if they reasonably believe the information they disclose is evidence of (1) gross mismanagement of a Federal contract or award; (2) waste of Federal funds; (3) abuse of authority relating to a Federal contract or award; (4) substantial and specific danger to public health and safety; or (5) violations of law, rule, or regulation related to a Federal contract or award.
14. *Third-Party Claims.* Nothing in this Agreement shall be construed as creating or justifying any claim against the federal government or the Recipient by any third party.
15. *Rule of Construction and No Construction Against Drafter.* Notwithstanding anything contained in this Agreement, the terms and conditions hereof are to be construed to have full and expansive effect in both interpretation and application, and the parties agree that the principle of interpretation that holds that ambiguities in terms or conditions are construed against the drafter shall not apply in interpreting this Agreement.
16. *Miscellaneous Provisions.*
    a. Headings are for convenience of reference only and shall not affect the construction, meaning, or interpretation of this Agreement.
    b. No modification of this Agreement shall be effective unless it is in writing and signed by both Parties. Further, the Recipient agrees to not change, edit, or modify this Agreement or its terms before or after executing it and returning it to HUD. The Recipient agrees that any such changes shall be null and void and not binding upon HUD.
    c. If any part or provision of this Agreement is enjoined or held to be void or unenforceable in any jurisdiction, it shall be ineffective as to such jurisdiction and only to the extent of such prohibition or enjoinment and shall not invalidate or affect the legality or enforceability of the remaining provisions and applications of this Agreement. In the event the enjoinment of such provisions is stayed, dissolved, or reversed, the full terms of this Agreement, including such provisions, will automatically become effective. This clause is self-executing and will become effective, binding, and enforceable automatically upon execution of this Agreement.

[REST OF PAGE INTENTIONALLY BLANK]

**C. Federal Award Performance Goals**
The Recipient must meet any applicable performance goals, indicators, targets, and baseline data as required by applicable program requirements.

**D. Specific Terms and Conditions** Not applicable ☒ Attached ☐

| | | |
|---|---|---|
| For the U.S. Department of HUD<br>(name and title of authorized official) | Signature | Date |
| For the Recipient<br>(name and title of authorized official) | Signature | Date |

**ADDENDUM 1. POLICY REQUIREMENTS**

If applicable:

1. The Recipient shall not use grant funds to promote "gender ideology," as defined in Executive Order (E.O.) 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government.

2. The Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

3. The Recipient certifies that it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964.

4. The Recipient shall not use any grant funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment.

5. This Grant shall not be governed by Executive Orders revoked by E.O. 14154, including E.O. 14008, or any requirements implementing Executive Orders that have been revoked.

6. The Recipient must administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) (PRWORA) and any applicable requirements that HUD, the Attorney General, or the U.S. Citizenship and Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws.

7. No state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or shields illegal aliens from deportation, including by maintaining policies or practices that materially impede enforcement of federal immigration statutes and regulations.

8. The Recipient must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.

9. Faith-based organizations may be Subrecipients for funds on the same basis as any other organization. Recipients may not, in the selection of Subrecipients, discriminate against an organization based on the organization's religious character, affiliation, or exercise.

**ADDENDUM 3. INDIRECT COST RATE SCHEDULE**

As the duly authorized representative of the Recipient, I certify that the Recipient:

☐ Will not use an indirect cost rate to calculate and charge indirect costs under the grant.

☐ Will calculate and charge indirect costs under the grant by applying a *de minimis* rate as provided by 2 C.F.R. § 200.414(f), as may be amended from time to time.

☐ Will calculate and charge indirect costs under the grant using the indirect cost rate(s) listed below, and each rate listed is included in an indirect cost rate proposal developed in accordance with the applicable appendix to 2 C.F.R. part 200 and, *if required*, was approved by the cognizant agency for indirect costs.

| Agency/department/major function | Indirect cost rate | Type of Direct Cost Base |
|---|---|---|
| | % | |
| | % | |
| | % | |

Instructions for the Recipient:
The Recipient must mark the one (and only one) checkbox above that best reflects how the Recipient's indirect costs will be calculated and charged under the grant. Do not include indirect cost rate information for Subrecipients.

The table following the third box must be completed only if that box is checked. When listing a rate in the table, enter both the percentage amount (e.g., 10%) and the type of direct cost base to be used. For example, if the direct cost base used for calculating indirect costs is Modified Total Direct Costs, then enter "MTDC" in the "Type of Direct Cost Base" column.

If using the Simplified Allocation Method for indirect costs, enter the applicable indirect cost rate and type of direct cost base in the first row of the table.

If using the Multiple Allocation Base Method, enter each major function of the organization for which a rate was developed and will be used under the grant, the indirect cost rate applicable to that major function, and the type of direct cost base to which the rate will be applied.

If the Recipient is a government and more than one agency or department will carry out activities under the grant, enter each agency or department that will carry out activities under the grant, the indirect cost rate(s) for that agency or department, and the type of direct cost base to which each rate will be applied.

To learn more about the indirect cost requirements, see 2 C.F.R. part 200, subpart E and Appendix VII to Part 200 (for state and local governments).

10. Awards to Subrecipients made under, relating to or arising out of the Federal Award will not be used to engage in illegal racial discrimination, including racial preferences.

11. Awards to Subrecipients made under, relating to, or arising out of the Federal Award will not be distributed in a way that violates or otherwise is used to interfere with constitutional protections guaranteed for speech and religious beliefs and the free exercise of religion.

12. Awards made under, relating to, or arising out of the Federal Award will not be used to fund any project, service provider, or organization that operates illegal drug injection sites or "safe consumption sites" in violation of 21 U.S.C. § 856, knowingly permits the use or distribution of illicit drugs on property under their control in violation of 21 U.S.C. 856(a)(2), or knowingly distributes drug paraphernalia in violation of 21 USC 863. This is not a requirement that program participants must be sober in order to receive assistance, participate in treatment in order to receive assistance, or be evicted or exited from assistance for a first-time violation of a drug-related program policy or lease requirement.

13. All agreements or contracts made under, relating to, or arising out of the Federal Award must contain the same terms and conditions as those in the grant agreement issued by HUD. Any conflicting terms and conditions must be approved by HUD.

14. Recipient shall comply with all applicable workforce management requirements, regulations and statutes, including, without limitation, Title VII of the Civil Rights Act of 1964, 8 U.S.C. § 1324a, the Copeland "Anti-Kickback" Act, and the Drug-Free Workplace Act of 1988, as they may apply.

**ADDENDUM 2. PROGRAM-SPECIFIC REQUIREMENTS**

**Assistance Listing 14.239, HOME Investment Partnerships Program**

1. For the purposes of this Agreement and any applicable addenda, the term "recipient" shall have the meaning of "grantee", "participating jurisdiction" as defined in 24 C.F.R. 92.2., or "insular area" as defined in 24 C.F.R. 92.2.

2. *Community Housing Development Organizations (CHDOs)*. When 42 U.S.C. 12771(b) is suspended by a given year's appropriations, the Secretary shall not deduct funds set aside for CHDOs from the Recipient's HOME Investment Trust Fund for failure to reserve those funds for projects owned, developed, or sponsored by CHDOs within 24 months after the last day of the month in which HUD notifies the Recipient of HUD's execution of this Agreement.

3. *Commitment*. When 42 U.S.C. 12749(g) is suspended by a given year's appropriations, the Recipient's ability to commit funds provided through this Agreement will not expire 24 months after the last day of the month in which such funds are deposited in the jurisdiction's HOME Investment Trust Fund.

4. *Deobligations*. To the extent authorized by HUD regulations at 24 C.F.R. Part 92, HUD may, by its execution of an amendment to this Agreement, deobligate funds previously awarded to the Recipient without the Recipient's execution of the amendment or other consent.

5. *State Environmental Review*. If a Recipient is a State, as defined in 24 C.F.R. 92.2, and the Recipient provides HOME funds to a "State recipient", as that term is defined in 24 CFR 92.2, then the Recipient must require that the "State recipient" shall assume responsibility for the environmental review in accordance with 24 CFR 92.352 in the written agreement entered into pursuant to 24 CFR 92.504. Notwithstanding the foregoing, as per 24 CFR 92.504(c)(1)(vi), the "State recipient" shall not assume the Recipient's responsibilities for release of funds under 24 CFR 92.352.

6. *Reallocations*. All funds for the specified Fiscal Year provided by HUD by formula reallocation are covered by this Agreement upon execution of an amendment by HUD, without the Recipient's execution of the amendment or other consent.

7. *Repayments*. The Recipient agrees that funds invested in affordable housing under 24 C.F.R. Part 92 are repayable when the housing no longer qualifies as affordable housing. Repayment shall be made as specified in 24 C.F.R. Part 92.

8. *Cost Sharing*. This award is subject to match provisions in 24 C.F.R. 92.64(a)(1) and 24 C.F.R. 92.218-222, as applicable. The amount of match that a recipient may be required to provide in a year is not based upon the amount of the recipient's award. Under 24 C.F.R. 92.218, the amount of match that a recipient may be required to provide is determined by the type of eligible costs incurred by the recipient and the amount of funds drawn from the HOME Investment Trust Fund Treasury Account in that year. Since these factors are fact-sensitive, the amount of match is not included in either Box 15 or Box 16 of this Agreement.

9. *Funding Information*:

| Source of Funds | Appropriation Code | PAS Code | Amount |
|---|---|---|---|
| *2026* | *86 6/9 0205* | *HMF(Q)* | $351,301.66 |

# Exhibit B

RPLG Renne Public Law Group®

350 Sansome Street | Suite 300
San Francisco, CA 94104

James R. Ross
Partner and Head of Affirmative Litigation Practice
415-848-7200
jross@publiclawgroup.com

September 18, 2026

Jevechius Doherty Bernardoni
United States Attorney's Office
450 Golden Gate Ave., Box 36055
San Francisco, CA 94102

**Re: HUD FY2026 Grant Agreements Contain Self-Executing Reinstatement Clause in Violation of the Preliminary Injunction**

Counsel,

I write on behalf of the Plaintiffs in *City of Fresno v. Turner*, No. 25-CV-07070-RS ("*Fresno I*"), regarding the FY2026 Federal Award agreements that HUD's Office of Community Planning and Development recently sent to our clients for execution. Those agreements contain an unlawful provision that violates the preliminary injunction now in effect. We ask that HUD remove this provision and include a provision in the agreement, not only in a transmittal letter, confirming that HUD will comply with all applicable injunctions and orders and will not implement or enforce the challenged or vacated conditions consistent with those orders while those orders are in effect.

Each of the FY2026 agreements includes the following self-executing reinstatement language in its miscellaneous terms:

> *"In the event the enjoinment of such provisions is stayed, dissolved, or reversed, the full terms of this Agreement, including such provisions, will automatically become effective. This clause is self-executing and will become effective, binding, and enforceable automatically upon execution of this Agreement."*

This provision appears in each FY2026 agreement sent to our clients, including the CDBG, HOME, and ESG awards. Although the transmittal letters that accompanied these agreements state that "HUD will comply with all applicable injunctions and orders and will not implement or enforce the challenged or vacated conditions consistent with those orders while those orders are in effect," that assurance does not appear anywhere in the agreement itself and is contradicted by the self-executing provision above.

The self-executing clause is designed to do precisely what the injunction forbids: cause the enjoined Challenged Conditions to attach automatically as binding contractual terms, without

any separate offer or acceptance. That mechanism is an impermissible end-run around the Court's order.

As another district court explained, "…here, the standard conditions for a contract have not been met because, either they have not accepted the Government's proposed Challenged Conditions, or they have accepted the grant award after this Court entered a temporary restraining order prohibiting the Challenged Conditions from taking effect for the time being," and that "[e]ither way, the Challenged Conditions have yet to become the actual terms to any grant agreement and, instead, must be viewed as offers that have not been accepted by most Plaintiffs." *Rhode Island Coal. Against Domestic Violence v. Kennedy*, 812 F. Supp. 3d 180, 189 (D.R.I. 2025).

A similar provision was also found in violation of a court's injunction in *Illinois v. Fed. Emergency Mgmt. Agency*, No. CV 25-206 WES, 2025 WL 2908807, at *1 (D.R.I. Oct. 14, 2025), where the court admonished the defendants that "[d]espite the Court's order, Defendants have now inserted the contested conditions into Plaintiff States' award letters for DHS grants, along with statements promising that '[i]f the injunction is stayed, vacated, or extinguished, the [contested conditions] will immediately become effective.' *See* Pl. States' Mot. Enforce J. or, in Alt., Clarify Scope Inj. ("Pls.' Mot.") Ex. 4, at 36, Dkt. No. 73-4. …In effect, Defendants have done precisely what the Memorandum and Order forbids…Defendants' new condition is not a good faith effort to comply with the order; it is a ham-handed attempt to bully the states into making promises they have no obligation to make at the risk of losing critical disaster and other funding already appropriated by Congress."

HUD's attempt to make an end-run around this court's injunction is very concerning and, frankly, disappointing. We insist that HUD immediately remove the self-executing reinstatement provision quoted above from each FY2026 agreement transmitted to our clients, and reissue conforming agreements with a provision confirming that HUD will comply with all applicable injunctions and orders and will not implement or enforce the challenged or vacated conditions consistent with those orders while those orders are in effect. Please confirm that HUD will comply with this request no later than September 22, 2026. While I understand the requested timeline for a response is short it is consistent with HUD's time requirements for the plaintiffs in Fresno I to review and execute its agreements.

If HUD does not remove this provision, we will be forced to bring a motion to enforce the injunction. In which case, we must also insist that any requirements or deadlines to execute these agreements be extended until after the court has an opportunity to resolve this issue.

RPLG Renne Public Law Group®



Regards,

James R Ross

James R. Ross
Partner, Renne Public Law Group

# Exhibit C

**From:** Bernardoni, Jevechius (USACAN)
**To:** James Ross
**Cc:** Ryan McGinley-Stempel; Jake Freitas; Maribel Lopez; Taylor Cole; Monica Schneck; Max Peltz
**Subject:** RE: City of Fresno v. Turner, No. 25-CV-07070-RS ("Fresno I")
**Date:** Wednesday, September 23, 2026 1:11:50 PM
**Attachments:** image001.png
image002.png
image003.png

---

Jim,

HUD has reviewed your letter and declines to remove the referenced provision. Nevertheless, HUD reiterates—as it has done repeatedly and uniformly in this case—that it will comply with any injunctive relief issued, and that it will comply as long as that injunctive relief is in effect. To that end, HUD is currently in compliance with the preliminary injunction issued in this case, and it does not currently seek to impose the challenged terms on Plaintiffs, consistent with the terms of that preliminary injunction.

Your letter suggests that the preliminary relief issued in this case permanently prevents HUD from applying the challenged conditions to these grants. But that *preliminary* relief does not *permanently* alter the parties' contractual relationship. To the extent the challenged conditions are found to be lawful such that the preliminary injunction no longer applies, HUD would then have the lawful right to insist upon compliance with the challenged terms in exchange for continued receipt of federal grant funding. It has long been HUD's position that the conditions are lawful and that it intends to impose those conditions in the absence of the injunctive relief; Plaintiffs are perfectly aware of HUD's intention, and that knowledge, in fact, is why they brought this lawsuit. The impact of the provision referenced in your letter is simply to reserve HUD's rights to impose the challenged conditions to these grants if and when further developments occur to vacate that preliminary relief. For the sake of clarity, I again reiterate that HUD does not seek to—and will not—impose the challenged conditions as long as the preliminary injunction is in effect.

Nor is it accurate to characterize the referenced provision as irrevocably forcing Plaintiffs to agree to the challenged conditions if the preliminary injunction is vacated. If that happens, Plaintiffs can provide written notice of award termination pursuant to 2 C.F.R. § 200.340(a)(3), at which point Plaintiffs would reject the award, forfeit receipt of future federal monies under that award, and avoid imposition of the challenged conditions (and the challenged conditions would, in that case, no longer be enjoined and would be fully within HUD's rights to impose). In other words, the referenced provision does not harm Plaintiffs in any way: (1) during the existence of the preliminary injunction, the challenged conditions do not apply to Plaintiffs, and Plaintiffs can continue receiving federal funding; (2) if the preliminary injunction is upheld and the conditions are subject to a final finding that they are unlawful, the challenged conditions will not apply to Plaintiffs, and Plaintiffs can again continue receiving federal funding; but (3) if the

preliminary injunction is vacated, Plaintiffs will have an opportunity to choose whether to continue receiving federal funding for those grants (in which case Plaintiffs will have accepted the challenged conditions that Plaintiffs have known from the beginning would form part of the federal grant contract but for the existence of the preliminary injunction) OR provide written notice of termination of the grant, thereby avoiding imposition of the challenged conditions.

Respectfully,

Jevechius D. Bernardoni
Assistant United States Attorney
United States Attorney's Office
Northern District of California

# Exhibit D

**From:** James Ross
**To:** "Bernardoni, Jevechius (USACAN)"
**Cc:** Ryan McGinley-Stempel; Jake Freitas; Maribel Lopez; Taylor Cole; Monica Schneck; Max Peltz
**Subject:** RE: Response from HUD Regarding Spring-back provision
**Date:** Tuesday, October 13, 2026 1:39:07 PM
**Attachments:** image001.png
image002.png
image003.png

---

Hi Jev,

Given that HUD did not respond to our October 7, 2026 email (below) which requested a response by October 9, 2026, 2:00 p.m. PST, it appears HUD is unwilling to agree to the proposed Special Term. As previously stated, we prefer to resolve the issue by agreement rather than seek the Court's intervention. However, we have Plaintiffs with fast approaching deadlines to execute HUD contracts. The County of San Diego has a deadline of October 16, 2026 to execute HUD contracts and the Housing Authority of the County of San Diego has a deadline of October 21, 2026 to execute HUD contracts. As such, we will move forward with our motion to enforce the preliminary injunction. We request that HUD grant an extension to these deadlines until the Court resolves the issue.

As HUD imposes deadlines on other clients, we will likely have to seek extensions for those parties as well.

Regards,

Jim

---

RPLG
Renne Public Law Group®
Named a Top 20 Boutique Law Firm by the Daily Journal

**James (Jim) R. Ross (he/him/his)**
Partner and Head of Affirmative Litigation Practice
jross@publiclawgroup.com
(415) 848-7200
(415) 919-6452 (Direct)

**Confidentiality Notice**: This transmittal is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this transmittal is not the intended recipient or the employee or agent responsible for delivering the transmittal to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

---

**From:** James Ross
**Sent:** Wednesday, October 7, 2026 2:16 PM
**To:** Bernardoni, Jevechius (USACAN) <Jevechius.Bernardoni@usdoj.gov>
**Cc:** Ryan McGinley-Stempel <rmcginleystempel@publiclawgroup.com>; Jake Freitas <jfreitas@publiclawgroup.com>; Maribel Lopez <mlopez@publiclawgroup.com>; Taylor Cole <tcole@publiclawgroup.com>; Monica Schneck <mschneck@publiclawgroup.com>; Max Peltz <mpeltz@publiclawgroup.com>

**Subject:** Response from HUD Regarding Spring-back provision

Jev,

Thank you for the response below. We appreciate HUD's renewed confirmation that it intends to remain in compliance with the preliminary injunction and does not currently seek to impose the Challenged Conditions on Plaintiffs. That assurance, however, does not resolve our objection. HUD's letter defends the self-executing clause as a benign reservation of rights that "if the preliminary injunction is vacated, Plaintiffs will have an opportunity to choose whether to continue receiving federal funding for those grants (in which case Plaintiffs will have accepted the challenged conditions .....)." However, the clause at issue says the opposite.

This provision is a material change in the approach Defendants have taken previously under the same Preliminary Injunction. In last year's agreements, HUD's CDBG grants included a provision that preserved the agency's position *without* self-execution. That provision stated:

> City of Fresno v. Turner. Pursuant to the court's temporary restraining order (TRO) in *City of Fresno v. Turner*, 3:25-cv-07070-RS (N.D. Calif.), ECF No. 28 (August 27, 2025), HUD will not impose or enforce the challenged conditions included in the TRO (challenged conditions listed below), or any materially similar terms and conditions, to any grant funds awarded, directly or indirectly, to the Plaintiffs and subrecipients, or otherwise rescind, withhold, cancel, or otherwise not process, pause, freeze, impede, block, cancel, terminate, delay, or condition funds based on such conditions to the Plaintiffs or their subrecipients while subject to a TRO or subsequently issued injunction. Further, HUD will not require the Plaintiffs or their subrecipients to make any certification or other representation related to compliance with such terms and conditions nor will HUD refuse to issue, process, or sign grant agreements based on the Plaintiffs' participation in this litigation. Should HUD prevail in the District Court or on appeal, then HUD will require that recipients agree to the original terms and conditions if they wish to continue with the grant in place but will not retroactively impose any such terms and conditions on funds that have already been disbursed to Plaintiffs.

Likewise, DOT included a similar "Special Term" that provided:

> "Pursuant to the court's preliminary injunction in *City of Fresno v. Turner*, 3:25-cv-07070-RS (N.D. Calif.), ECF No. 46 (September 23, 2025), as amended by ECF No. 89 (Apr. 28, 2026), DOT will not be imposing or enforcing the challenged conditions or any materially similar terms and conditions, to any grant funds awarded, directly or indirectly, to the DOT Plaintiffs and subrecipients, or otherwise rescinding, withholding, cancelling, not processing, pausing, freezing, impeding, blocking, cancelling, terminating, delaying, or conditioning DOT funds based on such conditions to the DOT Plaintiffs or their subrecipients while subject to an injunction. Further, DOT will not require the DOT Plaintiffs or their subrecipients to make any certification or other representation related to compliance with such terms and conditions nor will DOT refuse to issue, process, or sign grant agreements based on the DOT Plaintiffs' participation in this litigation. Should DOT prevail in the District Court or on appeal, then DOT will require that recipients agree to the original terms and conditions if they wish to continue with the grant in place. Further, pursuant to the ruling in *State of California v. Duffy*, 1:25-cv-00208-JJM-PAS (D.R.I.), DOT grant agreements have been modified to remove terms and conditions pertaining to cooperation with federal immigration enforcement."

Furthermore, several of the Challenged Conditions HUD is requiring Plaintiffs to agree to have already been vacated pursuant to 5 U.S.C. § 706. *See Rhode Island Coalition Against Domestic Violence v. Kennedy, Jr.,* No. 1:25-cv-00342-MRD-PAS (D.R.I.) Judgment, ECF No. 105 (D.R.I. Aug. 14, 2026); *National Alliance to End Homelessness v. Turner*, 827 F.Supp.3d 281 (D.R.I. 2026) (gender ideology, cooperation with federal immigration enforcement, and not

operating drug injection sites); *see also California v. United States Department of Transportation*, 808 F.Supp.3d 291 (D.R.I. 2025) (cooperation with federal immigration enforcement); *Illinois v. Federal Emergency Management Agency*, 801 F.Supp.3d 75 (D.R.I. 2025) (same).

The HUD FY2026 clause abandons the previous model. Where the former terms provided recipients with an opportunity to agree to the original terms and conditions if they wished to continue, the new HUD clause appears to make those terms binding and enforceable automatically with no subsequent agreement step. HUD offers no explanation for why the same government, under the same injunctions, has replaced a consent-based reservation with a self-executing one. The change matters, and it is the reason our clients have concerns about executing the agreements as drafted.

HUD's new provision would cause the Challenged Conditions, which are presently unlawful, to automatically and immediately become enforceable if the injunction is removed. Plaintiffs, whether they wish to comply with the Challenged Conditions or forgo future funding, must have the opportunity to evaluate the possibility of compliance and the effect of forgoing funds when the injunction is removed. Plaintiffs cannot make those evaluations now without knowing when, or whether, they would have to make those changes to their programming and budgets. Additionally, there are practical considerations, such as Plaintiffs may need to return to their governing bodies in order for a decision to be made about the path forward after staff conducts their evaluations and, if required, that process takes time and must comply with open meeting laws.

While we appreciate that you may be willing to make certain assurances outside of the terms of the agreement, Plaintiffs do not know what enforcement or other legal actions HUD will take if the injunction is removed. As currently drafted, HUD may try to argue under the new provision that the challenged conditions apply to the entire term of the agreement rather than only if the entity affirmatively accepts the new terms. These concerns can be addressed with language that clearly states Plaintiffs are not agreeing to the Challenged Condition or making any certifications, and that, if the injunction is removed, they will have the opportunity to agree at that time if they wish to continue with the grant in place.

Towards that end, we propose HUD include, as an addendum or special term to the FY2026 Award Agreements, the following term, modeled on the terms HUD and DOT have already included in their previous agreements under this injunction:

> *City of Fresno et al. v. Turner, et al.*, 25-cv-07070-RS, Special Term:
>
> Pursuant to the court's preliminary injunction in *City of Fresno v. Turner*, 3:25-cv-07070-RS (N.D. Calif.), ECF No. 46 (September 23, 2025), as amended by ECF No. 89 (Apr. 28, 2026), and notwithstanding other provisions, terms, or conditions of the Agreement, HUD will not be imposing or enforcing the challenged conditions or any materially similar terms and conditions to any grant funds awarded, directly or indirectly, to the HUD Plaintiffs and subrecipients, or otherwise rescinding, withholding, canceling, not processing, pausing, freezing, impeding, blocking, canceling, terminating, delaying, or conditioning HUD funds based on such conditions to the HUD Plaintiffs or their subrecipients while subject to an injunction. Further, HUD will not require the HUD Plaintiffs or their subrecipients to make any certification or other representation related to compliance with such terms and conditions, nor will HUD refuse to issue, process, or sign grant agreements based on the HUD Plaintiffs' participation in this litigation. Should HUD prevail in the District Court or on appeal, then HUD will require that recipients agree to the original terms and conditions if they wish to continue with the grant in place. As of the date of execution of this Agreement, similar HUD Conditions have been found unlawful and vacated pursuant to 5 U.S.C. § 706. *See Rhode Island Coalition Against Domestic Violence v. Kennedy, Jr.*, No. 1:25-cv-00342-MRD-PAS (D.R.I.), Judgment, ECF No. 105 (D.R.I. Aug. 14, 2026); *National Alliance to End Homelessness v. Turner*, 827 F.Supp.3d 281 (D.R.I. 2026). The Parties

acknowledge that such vacated HUD Conditions are currently unlawful and are not presently applicable to this Agreement.

Similarly, if HUD agrees to remove the self-executing provision and include the proposed Special Term for *Fresno I* plaintiffs, HUD will also agree to make the same modifications for the plaintiffs in *Housing Authority of the County of San Diego v. Turner*, 25-cv-08859-JST, and the above provision would be modified accordingly for those plaintiffs.

Please confirm by 2:00 p.m. PST on October 9, 2026 whether HUD will agree to remove the self-executing provision and include the proposed Special Term. If we cannot reach an agreement to modify these award agreements, we will likely be forced to seek the Court's assistance to enforce the injunction, and we will ask that any deadline to execute the FY2026 agreements be extended until the Court resolves the issue. We would, of course, prefer to resolve this by agreement, and remain available to discuss.

Regards,

Jim

---

RPLG
Renne Public Law Group®
Named a Top 20 Boutique Law Firm by the Daily Journal

**James (Jim) R. Ross (he/him/his)**
Partner and Head of Affirmative Litigation Practice
jross@publiclawgroup.com
(415) 848-7200
(415) 919-6452 (Direct)

**Confidentiality Notice**: This transmittal is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this transmittal is not the intended recipient or the employee or agent responsible for delivering the transmittal to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

---

.

# Exhibit E

**From:** Bernardoni, Jevechius (USACAN)
**To:** James Ross
**Cc:** Ryan McGinley-Stempel; Jake Freitas; Maribel Lopez; Taylor Cole; Monica Schneck; Max Peltz
**Subject:** RE: Response from HUD Regarding Spring-back provision
**Date:** Wednesday, October 14, 2026 4:09:26 PM
**Attachments:** image001.png
image002.png
image003.png

---

Jim,

HUD is willing to pull back the "snap back" provision. It is currently working on language to address that issue, and it is waiting for input from the program office before providing a formal response.

Respectfully,

Jevechius D. Bernardoni
Assistant United States Attorney
United States Attorney's Office
Northern District of California

# Exhibit F

**From:** Bernardoni, Jevechius (USACAN)
**To:** James Ross
**Cc:** Ryan McGinley-Stempel; Jake Freitas; Maribel Lopez; Taylor Cole; Monica Schneck; Max Peltz
**Subject:** RE: Response from HUD Regarding Spring-back provision
**Date:** Thursday, October 15, 2026 11:13:14 AM
**Attachments:** image001.png
image002.png
image003.png

---

Jim,

Pursuant to the court's preliminary injunction in *City of Fresno v. Turner*, 3:25-cv-07070 (N.D. Calif.), ECF No. 46 (September 23, 2025), as amended by ECF No. 89 (Apr. 28, 2026), and notwithstanding other provisions, terms, or conditions of the Agreement, HUD has not and will not impose or enforce the challenged conditions or any materially similar enjoined or vacated terms and conditions to any grant funds awarded to the *City of Fresno* HUD Plaintiffs and their subrecipients, or otherwise rescind, withhold, cancel, not process, pause, freeze, impede, block, terminate, delay, or condition HUD funds based on such challenged conditions to the *City of Fresno* HUD Plaintiffs or their subrecipients while subject to the said injunction. Further, HUD will not require the *City of Fresno* HUD Plaintiffs or their subrecipients to make any certification or other representation related to compliance with said challenged conditions, nor will HUD refuse to issue, process, or sign grant agreements based on the *City of Fresno* HUD Plaintiffs' participation in this litigation. Should HUD ultimately prevail, then HUD will require that recipients agree to the original terms and conditions if they wish to continue with the grant in place.

Respectfully,

Jevechius D. Bernardoni
Assistant United States Attorney
United States Attorney's Office
Northern District of California

# Exhibit G

**From:** Bernardoni, Jevechius (USACAN)
**To:** James Ross
**Cc:** Ryan McGinley-Stempel; Jake Freitas; Maribel Lopez; Taylor Cole; Monica Schneck; Max Peltz
**Subject:** RE: Response from HUD Regarding Spring-back provision
**Date:** Thursday, October 15, 2026 1:19:45 PM
**Attachments:** image001.png
image002.png
image003.png

---

Jim,

HUD is confident that it can make the same commitment in the *Housing Authority* case, but HUD is conferring internally before issuing a formal response. What is the earliest deadline for the *Housing Authority* case?

With respect to the *Turner* case, the provisions raised in your email are not the "snap back" provision. Instead, those provisions only concern the requirement that amendments must in writing by both parties. That is addressed in and amended by the transmittal letter, saying Plaintiffs can strike or modify the grant terms. If Plaintiffs need to strike the language in Section B.1., stating "This Agreement, including any attachments and addenda, may only be amended in writing executed by parties to this Agreement and any addenda" and in Section B.16.b., stating "No modification of this Agreement shall be effective unless it is in writing and signed by both Parties," Plaintiffs can do so and add a note saying "per the transmittal letter" or something to that effect. HUD will advise CPD to accept the modification.

Respectfully,

Jevechius D. Bernardoni
Assistant United States Attorney
United States Attorney's Office
Northern District of California